20

## IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | Case No.  01-CR-794 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| | ) | Judge Stuard |
| NATHANIEL JACKSON , | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MOTION FOR SEQUESTRATION
### OF JURORS FOR DURATION OF TRIAL

Defendant, through counsel, moves this Court to order the sequestration of the jury panel throughout the proceedings in the above–styled case.  It is further requested that this Court order that the jury finally impaneled shall not be allowed to communicate with anyone except the Court or the bailiff.  Finally, it is further requested (1) that any communications between jurors and the Court or the bailiff be placed on the record as soon thereafter as possible with Defendant and counsel for the parties present; and (2) that any contact or conversations between jurors and anyone other than the Court or bailiff shall be reported to the attorneys for the Defendant and placed upon the record as soon thereafter as possible with Defendant and counsel for the parties present.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761

ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

<u>MEMORANDUM IN SUPPORT</u>

Before submission of a case to the jury, the Court, upon its own motion or the motion of a party may sequester the jury.  Ohio R. Crim. P. 24(G)(1); Ohio Rev. Code Ann. § 2945.31.  It is well-established that the decision to sequester a jury is clearly within the sound discretion of the trial court.  <u>Parker v. State</u>, 18 Ohio St. 88 (1868); <u>State v. Osborne</u>, 49 Ohio St. 2d 135, 359 N.E.2d 78 (1976); <u>State v. Jenkins</u>, 15 Ohio St. 3d 164, 234, 473 N.E.2d 264, 322-323 (1984).  The discretion of the Court with respect to allowing sequestration of the jury should, especially in trials for capital offenses, be exercised with the utmost caution.  Any doubt as to the propriety of ordering that the jury be sequestered should be resolved in favor or sequestering the jury in order to further ensure a fair trial untainted by non-judicial influences on the jury – especially when, as here, there is a substantial likelihood that this trial will be heavily publicized.

The Defendant submits that the publicity attendant to his arrest, and indictment certainly will increase during his trial.  Unless sequestered, the

jury will be tainted by pervasive newspaper, radio, and television reports of matters prejudicial to the Defendant which will never be presented at trial.

The Supreme Court of the United States has recognized that where there is a reasonable likelihood that prejudicial news prior to and during the trial will prevent a fair trial, sequestration of the jury is an effective manner to assure that publicity during the trial does not impinge upon the fair trial of the Defendant. Sheppard v. Maxwell, 384 U.S. 333 (1966). Sequestration also "enhances the likelihood of dissipating the impact of pretrial publicity and emphasizes the elements of the jurors' oaths." Nebraska Press Ass'n. v. Stuart, 427 U.S. 539, 564 (1976). The Defendant submits that the circumstances of this case require that the trial court implement the extraordinary measure of sequestration of the jury throughout the trial phase and, if necessary, the penalty phase.

In addition, an individual's participation in a case of this magnitude and duration will become well known to the jurors' families, friends and colleagues. Despite admonitions by the Court, there will be great pressures from the families, friends and colleagues to discuss the case and its progress. Because of the notoriety of the instant case within this county, many people will have preconceived notions as to the Defendant's guilt which they will attempt to pass on to the jurors. In order to insure that the Defendant is tried by a fair and impartial jury and to protect the jurors from undue community pressures, it is necessary to sequester the jury throughout the trial phase and, if it becomes necessary, the penalty phase.

When a defendant is being tried for a capital offense, his life is placed in jeopardy. Accordingly, a higher level of due process must be

afforded the defendant on trial for a capital offense than that required in the trial of a non-capital offense.  Woodson v. North Carolina, 428 U.S. 280, 305 (1976); Beck v. Alabama, 447 U.S. 625 (1980).

Therefore, Defendant's right to a fair trial as guaranteed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I Section 16 of the Ohio Constitution can only be protected by the sequestration of the jury.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION FOR SEQUESTRATION OF JURORS FOR DURATION OF TRIAL was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this _2nd_ day of _Jan_, 2002.

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

21

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )      Case No.  01-CR-794
                                  )
              Plaintiff,          )
VS.                               )
                                  )
                                  )      Judge Stuard
NATHANIEL JACKSON ,               )
                                  )
              Defendant.          )

### DEFENDANT'S MOTION TO PERMIT DEFENSE TO ADMIT
### ALL RELEVANT EVIDENCE AT MITIGATION PHASE

Defendant, through counsel, respectfully moves this Court to permit him to admit evidence in the sentencing phase which may not necessarily be admissible under strict interpretations of the Ohio Rules of Evidence. Defendant asks that he be permitted to admit any mitigating evidence which is relevant, minimally reliable and trustworthy.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

## MEMORANDUM IN SUPPORT

A review of authority concerned with the production of mitigating evidence shows that the rules of evidence may not be interpreted strictly to exclude such evidence.  The Ohio Rules of Evidence, Ohio case law, and federal constitutional precedent demonstrate that mitigating evidence must be admitted where it is relevant and demonstrates a minimal degree of trustworthiness and reliability.

Ohio R. Evid. 101(C)(3) states that the Rules of Evidence do not apply to sentencing hearings.  Pertinent case law can fairly be construed as standing for the proposition that the Defendant's constitutional right to due process prevents the State from introducing unfairly prejudicial evidence at the mitigation hearing while at the same time allowing the Defendant to introduce all arguably relevant evidence in mitigation of death.

In State v. Williams, 23 Ohio St. 2d 16, 490 N.E.2d 906 (1986), the court addressed an issue arising from the fact that the prosecution admitted Defendant's presentence investigation report into evidence at the mitigation hearing.  In a concurring opinion, the Chief Justice explained that the non-applicability of the Rules of Evidence at the mitigation hearing was only for the protection of the Defendant:

> The United States Supreme Court stated in
> Gregg v. Georgia (1976), 428 U.S. 153, 203-204, 96
> S.Ct. 2909, 2939, 49 L.Ed.2d 859 that "[s]o long as the

> evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions." (Emphasis added.) The important protections provided by the Rules of Evidence can not be swept out the door in the penalty phase of a capital case because they are reflective in many instances of important constitutional and procedural safeguards. As illustrated by the foregoing, Fed. R. Evid. 1101 and its counterparts, Ohio Evid. R. 101, restrict the application of the hearsay rule in sentencing proceedings but are not meant to deny the application of the Rules of Evidence altogether during the penalty phase of a capital trial.
>
> Accordingly, I agree with the majority that appellant's pre-sentence investigative and mental examination reports were admissible during the penalty phase. See R.C. 2929.03(D). I caution, however, that today's holding is not a carte blanche waiver of all the critical protections afforded by our Rules of Evidence which are crucial to the fair and just determination of the truth in all criminal proceedings. See Evid. R. 102.

Williams, 23 Ohio St. 3d 16, 32, 490 N.E.2d 906, 920.

The Eighth Amendment requires that a capital sentencing authority "be allowed to consider on the basis of all relevant evidence not only why a death sentence should be imposed, but also why it should not be imposed." (Emphasis added.) Jurek v. Texas, 428 U.S. 262, 271 (1976). Elaborating on this principle in Woodson v. North Carolina, 428 U.S. 280 (1976), the joint opinion of Justices Stewart, Powell and Stevens made clear that "the fundamental respect for humanity underlying the Eighth Amendment ... requires consideration of the character and record of the individual offender ... as a constitutionally indispensable part of the process of inflicting the penalty of death." Id. at 304.

Two years later, a plurality of the court held explicitly that a state legislature may not place restrictions on a capital defendant's introduction of mitigating circumstances which support reasons why the defendant's life should be spared.  Writing for the plurality in Lockett v. Ohio, 438 U.S. 586 (1978), the Chief Justice explicated that the Eighth Amendment principles of Jurek and Woodson require:

> That the sentencer, in all but the rarest kind of capital case, not be precluded from considering *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.

Id. at 604.  The Lockett plurality opinion continued:

> A statute that prevents the sentencer in all capital cases from giving independent mitigating weight to aspects of the defendant's character and record and to circumstances of the offense proffered in mitigation creates the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty.  When the choice is between life and death, that risk is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments.

Id. at 605.

Since Lockett, the United States Supreme Court has consistently struck down death sentences in which the sentencer has not been permitted to consider all relevant information.  In Green v. Georgia, 442 U.S. 95 (1979), the trial court used a hearsay rule to exclude substantial mitigating evidence.  The United States Supreme Court concluded that this application of the hearsay rule deprived the defendant of a fair trial as to the issue of punishment.

In <u>Eddings v. Oklahoma</u>, 455 U.S. 104 (1982), the trial court ruled that as a matter of law it could not consider the defendant's unhappy upbringing and emotional disturbance.  The United States Supreme Court held when reversing the conviction:

> Just as the state may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence.  In this instance, it was as if the trial judge had instructed a jury to disregard the mitigating evidence Eddings proffered on his behalf.  The sentencer, and the Court of Criminal Appeals on review, may determine the weight to be given relevant mitigating evidence.  But they may not give it no weight by excluding such evidence from their consideration.

<u>Eddings</u> at 113-115.

Other evidence often mistakenly excluded from information available to the sentencer concerns facts about the defendant's personality and background offered by the family and friends of the defendant.  Such evidence is relevant to demonstrate how an accused got to be the person he is, and how his involvement in crime came to pass.  Such evidence is likely critical to the successful mitigation of a death sentence, even though it is evidence independent from the facts of the offense itself.  Without such testimony, a defendant may be left without sufficient support under the statute to plead for his life.  The Eighth Amendment prohibits exclusion of evidence which is critical to establishing the personal background of the defendant.  Such evidence is necessary because it is at the core of a mitigation case-in-chief.

Exclusion of such evidence will deny the accused his right to due process, to a fair trial, to compulsory process, and to present a defense.

Traditionally, "more due process" has been afforded in death penalty cases because of the finality of the punishment. In <u>Woodson v. North Carolina</u>, 428 U.S. 280, 305 (1976), the court stated:

> Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of the only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.

Similarly, in <u>Lockett v. Ohio</u>, 438 U.S. 586, 604 (1976), the court called for "greater degree of reliability when the sentence of death is imposed."

The United States Supreme Court will stringently evaluate sentencing practices in capital cases to determine whether they meet the heightened standard of reliability required by the Due Process Clause. The failure to allow the Defendant to admit relevant mitigation evidence will unconstitutionally prevent him from presenting a defense, and deny him his right to due process, to a fair trial, and against cruel and unusual punishment under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 9, 10 and 16, Article I of the Ohio Constitution.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076



## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION TO PERMIT DEFENSE TO ADMIT ALL RELEVANT EVIDENCE AT MITIGATION PHASE was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this _____ day of _____, 2002.

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

22

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )        Case No. 01-CR-794
                                        )
                Plaintiff,              )
vs.                                     )
                                        )
                                        )        Judge Stuard
NATHANIEL JACKSON ,                     )
                                        )
                Defendant.              )

### DEFENDANT'S MOTION TO REQUIRE THE JURY TO ARTICULATE THE METHOD BY WHICH IT WEIGHS THE AGGRAVATING AGAINST THE MITIGATING CIRCUMSTANCES

Defendant, through counsel, respectfully requests this Court to instruct the jury at the mitigation phase – should it become necessary – to articulate the method by which it determines that the aggravating circumstances outweigh the mitigating circumstances in the event that deliberations lead the jury to the death penalty. This instruction is necessary so that this Court and courts of review can determine whether or not the verdict was reached in a manner that comported with the federal and Ohio constitutional provisions concerning due process and cruel and unusual punishment.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

_Somer K. Lewis_

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON




<u>MEMORANDUM IN SUPPORT</u>

Were the jury to reach a Death Verdict, it should be required to articulate the method by which it determines that the aggravating circumstances outweigh the mitigating factors.  In <u>Crampton v. Ohio</u>, <u>sub nom.</u> <u>McGautha v. California</u>, 402 U.S. 183 (1971), Justice Brennan stated in his dissent that due process first requires that individuals be protected from the arbitrary exercise of state power.  This is accomplished by ensuring that state policies underlying the exercise of power are made by "some responsible organ of government."  The second due process concern is that the appellate review must not be frustrated by obscure procedures carried out at the trial level.  Thirdly, due process protections encompass vindication of other federal rights.  In particular Justice Brennan noted that due process is frustrated by state procedures which render federal judicial review ineffective where federally protected rights are at stake.

When the methods to be used to weigh aggravating circumstances against mitigating factors remain unarticulated, all three due process requirements described above are violated. Although the body (jury or judge) employing the unarticulated weighing method may be a responsible organ of government, the policy underlying the method is by definition inexplicit and the weighing procedure, therefore, does not lend itself to proper appellate review. Without a clear articulation of the methods used in the lower court, it is impossible for a reviewing court ascertain whether the capital punishment policy of the state has been properly applied. An obscured weighing method prevents adequate judicial review.

Beginning with Furman v. Georgia, 408 U.S. 238 (1972), the Supreme Court adopted more stringent procedural requirements to guarantee the constitutionality of capital sentencing procedures. In Lockett v. Ohio, 438 U.S. 586 (1978), a plurality of the court invalidated Ohio's capital sentencing statute on the ground that its exclusive categorization of mitigating circumstances violated the Eighth and Fourteenth Amendments. The Ohio statute in Lockett mandated the death penalty in the presence of at least one aggravating circumstance and the absence of any of the three statutory mitigating factors. Sentencers were not permitted to consider any other evidence in mitigation. Chief Justice Burger writing for the court found that the statute's failure to include such factors as age and the accused's role in the crime, created a constitutionally unacceptable risk that death would be imposed in spite of factors calling for leniency. The decision insured that the sentencer in a capital case would be apprised of any relevant facts and would weigh then independently.

Two years later in <u>Godfrey v. Georgia</u>, 446 U.S. 420 (1980), the accused was sentenced to death under a Georgia statute approved in <u>Gregg v. Georgia</u>, 428 U.S. 153 (1976).  The death sentence was imposed by a jury on the basis of instructions reciting the statute's definition of an aggravating circumstance.  The Georgia Supreme Court affirmed despite the accused's claim that the jury finding was a constitutionally inadequate statement of the aggravating circumstances involved.  A plurality of the Supreme Court reversed, holding that in affirming the sentence, the Georgia Supreme Court had adopted an unconstitutionally broad and vague construction of the aggravating circumstance.  Justice Stewart began his analysis with the principle that a capital sentencing procedure requires clear distinctions between those "cases in which death is imposed and those in which it is not."  States wishing to impose the death penalty must provide guidance to sentencers in the form of "clear and objective standards" that make the procedure involved "rationally reviewable."

The <u>Godfrey</u> court emphasized appellate review of the death penalty decision.  Justice Stewart noted, as a separate ground for reversal, the Georgia Supreme Court's failure to assess independently the evidence that supposedly supported the jury's finding of an aggravating circumstance.  He also criticized the Georgia court for not following its own practice of detailed review to narrow the construction of the aggravating circumstance in question.

Taken together, the <u>Lockett</u> and <u>Godfrey</u> decisions indicate that the Supreme Court is mandating consistency in the punitive aspect of capital sentencing while calling for a concern for individualization in the leniency aspect of these procedures.

In Eddings v. Oklahoma, 455 U.S. 104 (1982), the majority of the court declared that sentencers may not as a matter of law preclude any relevant mitigating factors offered by defendants. Eddings, a sixteen year old runaway stopped for a traffic violation, fatally shot an Oklahoma state patrolman at close range. He was certified as an adult and found guilty of first degree murder. He initially based his appeal on the ground that the Eighth Amendment barred execution of anyone who was sixteen at the time of the crime. The Supreme Court reversed, not on the issues of his age, but on the flawed process of imposing the death penalty. The Supreme Court held that the Oklahoma court violated the Eighth Amendment in refusing to consider evidence of Edding's troubled childhood as a mitigating factor. Justice Powell noted in the majority opinion that the Eighth Amendment prohibited not only legislative exclusion of mitigating evidence but sentencer exclusion of any relevant mitigating evidence. The Court instructed the Oklahoma courts on remand to consider any relevant mitigating evidence and to weigh it against evidence of aggravating circumstances. The lower courts could determine the weight to give any mitigating evidence, but the Supreme Court admonished the lower courts not to deny such evidence weight by exclusion.

Eddings indicates that where both the sentencing and appellate courts have the power to determine the weight of the proffered evidence (as in Ohio, Chapter 2929.03 and 2929.05, Ohio Revised Code), the method of weighing becomes crucial to the accused in order to prevent arbitrariness on the part of the sentencing body.

The arbitrariness incident to a system of independent, individualized capital sentencing is remediable at three stages. First, the legislature may

determine the crimes and circumstances accompanying those crimes for which death may be a punishment.  Second, courts can develop rational procedures to guide the sentencer when selecting who will be punished by death.  The final opportunity to reduce arbitrariness is appellate review.  The Godfrey and Eddings decisions indicate that the Court is concentrating its attention on this point in capital sentencing dispositions. An effective appellate process safeguards the Constitution when it requires the sentencer to detail the process by which it reached a determination.  To this end, articulation of the weighing methods used by the sentencer in making its determination is essential.

In Zant v. Stephens, 462 U.S. 862 (1983), the Supreme Court upheld the imposition of the death sentence where the jury found two aggravating circumstances, one of which was subsequently declared unconstitutional by Georgia's highest court.  The Supreme Court had before it a record clearly setting forth the jury's findings.  This enabled the Court to assess the constitutionality of the factors relied on by the jury and allowed the Court to conclude that there was no violation of the federal constitution despite the Georgia court's decision to negate one of the two aggravating circumstances.  The Supreme Court said its "decision in this case depends in part on the existence of an important procedural safeguard, the mandatory appellate review of each death sentence by the Georgia Supreme Court to avoid arbitrariness and assure proportionality." Zant, 462 U.S. 862, 890 (footnote omitted).

Providing the reviewing court with a complete record of the sentencer's findings is necessary to ensure "reliability in the determination that death is the appropriate punishment in a specific case." Woodson v. North Carolina, 428 U.S. 280, 305 (1976).  "It is of vital importance to the

defendant and the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." Gardner v. Florida, 430 U.S. 349, 358 (1977).

In the case at bar, the failure to require the jury to articulate the reasons why it recommends a sentence leaves the accused, the public, and the reviewing court wondering why this defendant must die when others do not. Without a record disclosing the factors underlying the sentencer's decision, a reviewing court cannot determine whether the decision is reasonable and the penalty proportional.

The sentencer's decision to impose the death penalty must be a demonstrably reasonable decision.    For example, if the sentencer regarded race or religion as an additional, statutory aggravating circumstance, the death penalty would violate both the State and Federal Constitutions.   Without a record disclosing aggravating and ratifying circumstances considered by the sentencer, a reviewing court has no way of knowing whether the decision is rational or arbitrary, proportional or improper.

Sentencers in capital cases must state explicitly the manner in which they weigh the evidence which balances life against death.  If this is not done in the case at bar and Defendant is sentenced to death, he will be deprived of a proper review of the decision ordering his execution in the event this Court approved the jury's recommendation.

Consequently, for the reasons set out above, the Accused respectfully requests that this Court instruct the jury that they must, if they reach a death verdict, articulate the method by which they determine that the aggravating circumstances outweigh the mitigating circumstances.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing DEFENDANT'S
MOTION TO REQUIRE THE JURY TO ARTICULATE THE METHOD BY WHICH IT
WEIGHS THE AGGRAVATING AGAINST THE MITIGATING CIRCUMSTANCES was
delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481,
on this 23 day of Jan , 2002.

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

23

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )        Case No.  01-CR-794
                                  )
                Plaintiff,        )
VS.                               )
                                  )
                                  )        Judge Stuard
NATHANIEL JACKSON ,               )
                                  )
                Defendant.        )

<u>DEFENDANT'S MOTION REQUESTING MITIGATION PHASE
INSTRUCTIONS ON REMNANT DOUBT ABOUT GUILT
AND MERCY AS MITIGATING FACTORS</u>

Defendant, through counsel, respectfully requests that this Court recognize remnant doubt as to guilt and mercy as mitigation factors and to instruct the jury on these facts should this case culminate in a mitigation phase proceeding.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER

32

328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

MEMORANDUM IN SUPPORT

This Motion is a corollary to DEFENDANT'S MOTION TO PERMIT DEFENSE TO ADMIT ALL RELEVANT EVIDENCE AT MITIGATION PHASE, which is incorporated by reference herein as if fully re-written.

The Ohio Capital Sentencing scheme by its very language gives the defense extremely wide latitude about that which may be admitted into evidence during the penalty hearing and afforded weight as a mitigating factor:  "The Defendant shall be given great latitude in the presentation of evidence of the factors listed in division (B) of this section and of any other factors in mitigation of the imposition of the sentence of death." Ohio Rev. Code Ann. §. 2929.05 (C).

Indeed, it was the prior statute's limitation on what could be advanced in mitigation that led the United States Supreme Court to strike down the old capital sentencing scheme.  See Lockett v. Ohio, 438 U.S. 586, 601-05 (1978).  See also Eddings v. Oklahoma, 455 U.S. 104, 110-12 (1982); and Franklin v. Lynaugh, 487 U.S. 164, 178, 108 S. Ct. 2320, 2330 (1988).  It was with this constitutional requirement in mind that the legislature drafted and enacted subsection (B) of O.R.C. § 2929.04 which provides in pertinent part:

> If one or more ... aggravating circumstances ... is specified ... and proved ... the ... trial jury ... shall consider, and weigh against the aggravating circumstances ... the nature and circumstances of the offense, the history, character, and background of the offender, and ... (7).  Any other factors that

are relevant to the issue of whether the offender should be sentenced to death.

The term "relevant" is here used in its common legal sense as defined in Ohio R. Evid. 401:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the actions more probable or less probable than it would be without the evidence.

Evidence, argument and jury instructions on remnant doubt and mercy easily meet the relevancy definition when it comes to the jury's decision between life and death during the mitigation deliberation.

Controlling Ohio case law recognizes the right of Defendant's counsel to argue "remnant doubt" and "mercy" without forbidding or requiring the trial court from instructing the jury on these concepts.  State v. Garner, 74 Ohio St. 3d 49, 56-57, 656 N.E.2d 623, 632 (1995).  Albeit true that the Garner Court found no error in the trial court's refusal to instruct on these concepts, it did not go so far as to rule that a trial court may not or should not give such instructions.

To the extent that the State may construe Garner to say no such instruction shall be given, Defendant asserts such a rule violates Defendant's Federal and Ohio Constitutional rights to due process and equal protection.  Indeed, Defendant challenges the Garner holding on Federal and Ohio Constitutional due process and equal protection grounds insofar as it failed to find error in the absence of jury instructions on matters expressly permitted in argument.  If a subject is deemed proper for argument then *a fortiori* it is a proper topic for jury instructions.  To the extent that Ohio law applies this basic rule for determining the

propriety of proposed jury instructions in other cases while at the same time, through Garner, unfairly discriminating against defendants whose very life is at stake, it violates not only Defendant's Ohio and Federal Constitutional rights to due process and equal protection, but it also constitutes cruel and unusual punishment. U.S. Const. amend. V, VIII and XIV; Ohio Const. art. I, §§ 2, 9 and 16, and art. II, § 26 of the Ohio Constitution.

For these reasons, Defendant requests that this Court sustain the instant Motion and, once sustained, entertain proposed jury instructions on "remnant doubt" and "mercy" if a mitigation hearing becomes necessary.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION REQUESTING MITIGATION PHASE INSTRUCTIONS ON REMNANT DOUBT ABOUT GUILT AND MERCY AS MITIGATING FACTORS was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this _____day of _____,2002.

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

24

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | Case No. 01-CR-794 |
| | ) | |
| Plaintiff, | ) | |
| VS. | ) | |
| | ) | |
| | ) | Judge Stuard |
| NATHANIEL JACKSON , | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION IN LIMINE TO LIMIT THE STATE'S
ARGUMENT AT MITIGATION TO THE AGGRAVATING
CIRCUMSTANCES PROVEN AT THE TRIAL PHASE

Now comes Defendant, by and through counsel, and respectfully moves this Court to prohibit the State at the mitigation phase from presenting evidence, or arguing to this Court, or to the jury, on any subject other than the aggravating circumstance proven at trial and proper rebuttal to the defense presentation at mitigation.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

## MEMORANDUM IN SUPPORT

The only evidence which the State may offer at the mitigation phase is that of the aggravating circumstance alleged and proven at the trial phase.  Ohio Rev. Code Ann. § 2929.04(A) states:

> (A)     Imposition of the death penalty for aggravated murder is precluded, unless one or more of the following is specified in the indictment or count in the indictment pursuant to Section 2941.12 of the Revised Code and proved beyond a reasonable doubt ...

By requiring that the indictment must specify any aggravating circumstances before death may be considered, the legislature has decided the only circumstances under which such evidence is admissible. It has precluded any admission of evidence in the sentencing phase that is not first alleged in the indictment and proved in the State's case-in-chief. The legislative purpose seems obvious.  Aggravating evidence has such a serious effect on the sentencing determination that admission is permissible only under narrow constraints.

In Lonberger v. Jago, 635 F.2d 1189 (6th Cir. 1980), the Court held that where it is necessary to charge a prior offense in the indictment for purposes of enhanced punishment, as a matter of state law, the prior

offense becomes an element of the second offense.  Under Lonberger, then, any evidence characterized by O.R.C. § 2929.04(A)(5) must be proved as an element of the offense.  Any attempt by the State to introduce the other evidence at the sentencing stage is improper.  Otherwise, the punishment for which Defendant is liable would be enhanced without satisfying the legislature's important procedural safeguard.

The statutory language which discusses how the Court is to make a determination at the sentencing phase of a capital trial is contained in O.R.C. § 2929.04(B), which states that:

> (B)  If one or more of the aggravating circumstances listed in division (A) of this section is specified in the indictment or count in the indictment and proved beyond a reasonable doubt, ... the court, trial jury, or panel of three judges shall consider, and weigh against the aggravating circumstances of the offense the history, character, and background of the offender, and all of the following facts:
>
> (1)  Whether the victim of the offense induced or facilitated it;
>
> (2)  Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;
>
> (3)  Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;
>
> (4)  The youth of the offender;
>
> (5)  The offender's lack of significant history of prior criminal convictions and delinquency adjudications;

(6)  If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the facts that led to the death of the victim;

(7)  Any other factors that are relevant to the issues of whether the offender should be sentenced to death.

A logical analysis of this language demonstrates that this section provides for mitigating factors to be introduced at the sentencing phase of the trial.  The provisions of Section (B) only come into effect if at the trial phase the Defendant is found guilty beyond a reasonable doubt of one or more of the aggravating specifications listed in Section (A).  The trier of fact must then "weigh against the aggravating circumstances proved beyond a reasonable doubt" certain other factors.  The only possible aggravating circumstances that could have been proved beyond a reasonable doubt are those specifications in Section (A) that were charged and that the Defendant was found guilty of at trial.  Any other reading of the language of O.R.C. § 2929.04(B) would be contrary to standard rules of construction.  Therefore, O.R.C. § 2929.04(B) does not permit the introduction of evidence of additional aggravating circumstances that are not listed in O.R.C. § 2929.04(A) and which were not proved beyond a reasonable doubt at the guilt phase of the trial.

This analysis is confirmed by decision of the Ohio Supreme Court.  In State v. Jenkins, 15 Ohio St. 3d 164, 473 N.E.2d 264 (1984), the Court held that the State cannot, in the mitigation phase, present proof of aggravating factors other than those of which the appellant was found guilty of committing in the trial phase.

Further, the language of O.R.C. § 2929.04(B) mandates that the Defendant shall be permitted to introduce evidence of mitigating factors to be weighed against those already proven aggravating circumstances. The statute provides some general areas of mitigation and certain specific areas in which the defendant may introduce evidence and the Court shall consider as mitigation if the evidence is introduced. The language contained in the statute is almost identical to the language used by the United States Supreme Court in Lockett v. Ohio, 438 U.S. 586, 604 (1978):

> (1b) We are not faced with those questions and we conclude that the Eighth and Fourteenth Amendments require that the sentences, in all but the rarest kind of capital case, not be precluded from considering as a mitigating factor, any aspect of the defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.

To use this language which defines possible mitigation in order to permit the State to introduce evidence of additional aggravating circumstances would be contrary to the spirit of Lockett and to the clear legislative intent of the statute.

The State of Ohio has specifically mandated that the trial court, the Court of Appeals, and the Supreme Court of Ohio make an independent weighing of the aggravating circumstances of which the Defendant was found guilty against the mitigating factors presented in order to determine whether death is warranted. To give a semblance of order and reliability to this process, the aggravating circumstances must be confined to those enumerated in the statute. If this is not the case, the inconsistent findings and rulings could render the process meaningless. Theoretically, the trial court could base its decision on one set of statutory

and non-statutory aggravating circumstances.  The Court of Appeals could reject those and find additional non-statutory factors which in its opinion warranted a death sentence.  Finally, the Supreme Court of Ohio could reject the appellate court's findings and list other non-statutory aggravating circumstances.  The arbitrariness feared in <u>Furman v. Georgia</u>, 408 U.S. 238 (1972) is inevitable unless, at all stages, the aggravating circumstances are limited to those specifically outlined in O.R.C. § 2929.04(A).

O.R.C. § 2929.03(D)(1) and (2) state in part:

> The defendant shall have the burden of going forward with the evidence of any factors in mitigation of the imposition of the sentence of death.
>
> The prosecution shall have the burden of proving, by proof beyond a reasonable doubt, that the aggravating circumstances the defendant was found guilty of committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death.
>
> (2) Upon the consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the trial jury, if the offender was tried by a jury, shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigation factors present in the case.  If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender.

The intent of the legislature is clear. In an attempt to guide discretion, the legislature made it plain which factors merit death. The Court can consider only those aggravating circumstances the Defendant was found guilty of committing which are specifically listed in O.R.C. § 2929.04(A). The Defendant in the trial phase will only have been found guilty beyond a reasonable doubt of the specific statutory aggravating circumstances for which he was indicted and no others. To then allow the State, during the mitigation phase, to discuss or attempt to prove other aggravating circumstances would be a violation of Ohio statutes and both Federal and State constitutional law.

By the time a case reaches the mitigation phase, the State must already have proven its aggravating circumstances to support a consideration of death by the jury. In the second phase, the State's burden is to prove that those aggravating circumstances outweigh, beyond a reasonable doubt, factors in mitigation put on by the defense. This is done when the State properly rebuts only the evidence introduced by the defense at the mitigation phase. If the defense does not present evidence on a mitigating factor, there is no evidence to rebut. Of course, the rebuttal must be limited to discussion of those statutory aggravating circumstances already proved that outweigh the proffered mitigating factors.

The theory of the mitigation phase of the proceeding is to give the Defendant a chance to show the jury or court why he should not be put to death, not for the State to show why he should die. If the State is permitted to argue non-statutory aggravating circumstances to the jury, the theory underlying the mitigation phase will be subverted. The defendant will suffer substantial prejudice and be denied his

-7-

constitutional rights to fair trial and due process under both State and Federal Constitutions.

Prior trial courts in Ohio which have considered this question have instructed the jury only on those potential mitigating factors upon which the defendant had actually presented evidence.  In <u>State v. Thompson</u>, No. 82-L-15216, 1988 WL 131764, (Licking App.1988), the prosecution attempted to admit the Defendant's prior conviction of rape at the mitigation phase. The Common Pleas Court excluded this evidence and was subsequently upheld on appeal. In the sentencing phase instructions from the cases of <u>State v. Leonard Jenkins</u>, Cuyahoga County Case No. 16874; <u>State v. Drewey Kiser</u>, Ross County No. 82CR-69; <u>State v. Randy Fellows</u>, Trumbull County No. 82CR-470, the trial court instructed the jury only on those specific mitigating factors listed in Section 2929.04(B) of the Ohio Revised Code upon which the Defendant presented evidence.  Any other reading of the statutory scheme destroys the entire concept of having a mitigation phase of the trial.

The death penalty statute, O.R.C. § 2929.03(D)(1), provides that the jury or trial court shall decide whether to execute the Defendant and that they should make this determination based upon a weighing of the aggravating circumstances the Defendant was found guilty of committing at the first trial versus the mitigating factors produced during the sentencing phase of the trial.  It would be a violation of the Defendant's Eighth and Fourteenth Amendment rights, and similar provisions under the Ohio Constitution and the Ohio statutory scheme, if the State is allowed to argue or produce evidence of non-statutory aggravating circumstances found at the trial phase during the sentencing phase.

Where the Court considers non-statutory aggravating circumstances during the sentencing phase and does not explain how it determined that the aggravating specification(s) outweighed the mitigating factors, there are no clear and objective standards that provide the specific detailed guidance in the sentencing scheme as is constitutionally required. <u>Gregg v. Georgia</u>, 428 U.S. 153 (1976); <u>Proffitt v. Florida</u>, 428 U.S. 242, 251 (1976). Further, to allow the State to submit evidence on non-statutory aggravating circumstances prevents a rational review of the process that results in the death sentence. <u>Woodson v. North Carolina</u>, 428 U.S. 280, 303 (1976).

For the foregoing reasons, Defendant requests that the State not be permitted to introduce any evidence on, or to argue to the Court or jury, anything but the aggravating circumstances proven at trial.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483

(330)393-7727  FAX (330)393-7076

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION IN LIMINE TO LIMIT THE STATE'S ARGUMENT AT MITIGATION TO THE AGGRAVATING CIRCUMSTANCES PROVEN AT THE TRIAL PHASE was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this _____ day of _____, 2002.

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

25

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | Case No. 01-CR-794 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| | ) | Judge Stuard |
| NATHANIEL JACKSON , | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO PROHIBIT PROSECUTOR FROM
COMMENTING ON DEFENDANT'S UNSWORN STATEMENT

In the event that a mitigation hearing becomes necessary in this case, Defendant, through counsel, respectfully moves this Court to prohibit the prosecuting attorney from commenting on the Defendant's decision to make an unsworn statement should he choose to do so, rather than testifying under oath and subjecting himself to cross-examination. This motion is being made to contest the constitutionality of the Ohio Supreme Court ruling in State v. Mapes, 19 Ohio St. 3d 108, 484 N.E.2d 140 (1985). This motion is also made to protect the Defendant's right to allocution. The reasons in support of this motion are set forth more fully in the accompanying memorandum.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

34

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

<u>MEMORANDUM IN SUPPORT</u>

Ohio Rev. Code Ann. § 2929.03(D)(1) provides that at the sentencing trial, a defendant can testify under oath or make an unsworn statement. Defendant may choose to make an unsworn statement in the event that this case reaches the mitigation phase.  If the prosecutor is allowed to comment on any unsworn statement, the comment would undermine the purpose behind the provision of an unsworn statement and would violate Defendant's rights to remain silent, to due process and to allocution.

For years, although a defendant had the right to remain silent, the prosecution was allowed to comment on his failure to do so.  Finally, the United States Supreme Court in <u>Griffin v. California</u>, 380 U.S. 609 (1965), overturned this rule.  It is no longer tolerable for the prosecution to make such comment.

This Court is faced with a similar situation.  "When a defendant effectively communicates his desire to the trial judge to speak prior to the imposition of sentence, it is a denial of due process not to grant the defendant's request."  <u>Ashe v. North Carolina</u>, 586 F.2d 334, 336 (4th Cir.

1978), <u>cert. denied</u>, 441 U.S. 966 (1979).  A defendant has the right to testify under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, <u>Alicea v. Gagnon</u>, 675 F.2d 913 (7th Cir. 1982), and he cannot be penalized for exercising this right.  Defendant asks this Court to follow the lead of the United States Supreme Court and prohibit such comment by the prosecution, thereby affirming the spirit of the rule announced in <u>Griffin v. California</u>.  Defense counsel are aware that the court in <u>Mapes</u> authorized such comment by the prosecutor.  Counsel question the validity of this decision under applicable federal law, however.

Prosecutorial comment of this nature is also improper because it infringes upon a criminal defendant's rights to allocution and due process. The Common Law doctrine of Allocution provided criminal defendants with the right to make a statement before being sentenced.  This doctrine is preserved in Ohio by Rule 32(A)(1), Ohio Rules of Criminal Procedure and O.R.C. § 2947.05.  The failure to let the Defendant speak on his own behalf or present further mitigating information prior to the imposition of sentence constitutes reversible error.  See <u>Silsby v. State</u>, 119 Ohio St. 314, 164 N.E. 232 (1928); <u>State v. Ausberry</u>, 83 Ohio App. 514, 82 N.E.2d 751 (1948); <u>Columbus v. Herrel</u>, 18 Ohio App. 2d 149, 247 N.E.2d 770 (1969).

The United States Supreme Court has endorsed this view, holding that denial of allocution may constitute a denial of due process.  <u>McGautha v. California</u>, 402 U.S. 183 (1971).  See also <u>Ashe v. North Carolina</u>, <u>id.</u>

The bifurcated nature of a capital trial requires special provisions to allow the Defendant to exercise his right to make a statement in his own behalf.  Such statements are not intended as the presentation of evidence but are meant to give the jury and/or the court the opportunity to hear from the Defendant why he should not be put to death.  This was the

intent of the legislature. O.R.C. § 2929.03(D)(1) states that the defendant is not subject to cross-examination unless he makes the statement under oath. Under the statute, if a defendant wishes to give evidence, he is subject to cross-examination. If he wishes only to exercise his right to allocution, however, no cross-examination is permitted. Thus, an attempt by the State to challenge the defendant's statement is allowed only if the statement is offered as evidence.

The implication of O.R.C. § 2929.03(D)(1) is clear. Capital defendants are freely invited to make unsworn statements not subject to adversarial challenge or other penalty during the sentencing phase of the trial. Indeed, the language of the statute implies that statements subject to adversarial challenge are the exception. A defendant's right to unchallenged allocution is assumed unless he attempts to make a sworn testimonial statement and offer it as evidence.

However, prosecutors regularly use the defendant's unsworn statement against him in closing argument. In effect, the defendant is penalized for exercising his right to allocution. The constitutional significance of allocution in a capital case has been discussed in McGautha v. California, id. To give a capital defendant his right to allocution and then to use the exercise of that right to impeach him violates the defendant's rights to a fair trial and to due process under the Fifth and Fourteenth Amendments to the United States Constitution and under Sections 10 and 16, Article I, of the Ohio Constitution.

Therefore, Defendant respectfully moves this Court to prohibit the prosecutor from making any unfavorable reference to the fact that this statement was not made under oath.

Respectfully submitted,

_____
DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

_____
ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

_____
JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION TO PROHIBIT PROSECUTOR FROM COMMENTING ON DEFENDANT'S UNSWORN STATEMENT was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this _____ day of _____, 2002.


_____
ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

26

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )     Case No. 01-CR-794
                                  )
              Plaintiff,          )
VS.                               )
                                  )
                                  )     Judge Stuard
NATHANIEL JACKSON ,               )
                                  )
              Defendant.          )

## DEFENDANT'S MOTION FOR A SECOND VOIR DIRE OF THE JURY IF THE DEFENDANT IS FOUND GUILTY AT THE TRIAL PHASE

Defendant, through counsel, respectfully moves this Honorable Court for an order allowing a second voir dire of the jury, if necessary, prior to the commencement of the penalty hearing.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

35

COUNSEL FOR NATHANIEL JACKSON

<u>MEMORANDUM IN SUPPORT</u>

It is vital to inquire of each juror after a finding of guilt whether he or she would automatically vote in favor of the Defendant's death.   The question is more likely to elicit a realistic and honest response if asked prior to sentencing rather than as an abstract, hypothetical question during the regular voir dire.   A juror who would return an automatic imposition of death must be excused for cause because such absolution would prevent compliance with the law regarding mitigating factors.

The United States Supreme Court, in <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961), held that the Fourteenth Amendment to the United States Constitution "guarantees to the criminal Defendant a fair trial by a panel of impartial, 'indifferent' jurors."   The Defendant is to be tried by a jury free from prejudice or predisposition.  Similarly, he should be free from the effects of bias in the sentencing stage after guilt has been determined.  As stated in <u>Crawford v. Bounds</u>, 395 F.2d 297, 304 (4th Cir. 1968):

> Where the state chooses to make the degree of punishment a jury question in the event of conviction, ... the guarantee that a juror be impartial, 'indifferent;' is as applicable to the issue of punishment as to the issue of guilt.

Despite an initial selection of an impartial panel of jurors, if after guilt is determined, any of the jurors become predisposed to impose sentence in a certain way, the Defendant has been deprived of due process. "To permit a juror whose mind is foreclosed on one side of [the

issue of punishment] to serve, ... [is] not the [way] to achieve the constitutional objective." Id. at 304.  If a juror's sentencing determination is automatic, the juror is no longer able to participate fairly in the deliberations as to punishment.  The juror's view must not "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." Wainwright v. Witt, 469 U.S. 412, 424 (1985).

This procedure was employed in State v. Tony T. Thomas  No. 87-135, 1989 WL 63750 (Delaware C.P. May 25, 1989.)  The trial judge conducted a limited voir dire of the jury between the guilt and mitigation phases.

Before allowing a jury to enter the mitigation phase of the trial, a second voir dire should be permitted to insure that the sentence is determined by a jury which has not become predisposed by their initial determination.  The jury must be impartial at the outset.  If they have already decided on death then  nothing the defense does can possibly make any difference, and the entire process is a sham.  If death is to be imposed, then it should be imposed by a jury that is unbiased and can fairly determine whether the mitigating circumstances outweigh the aggravating factors.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

_(signature)_

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON


CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION FOR A SECOND VOIR DIRE OF THE JURY IF THE DEFENDANT IS FOUND GUILTY AT THE TRIAL PHASE was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this _3rd_ day of _Jan_ , 2002.

_(signature)_

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

27

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                              )       Case No.  01-CR-794
                                           )
              Plaintiff,                   )
VS.                                        )
                                           )
                                           )       Judge Stuard
NATHANIEL JACKSON ,                        )
                                           )
              Defendant.                   )

### DEFENDANT'S MOTION TO ALLOW FULL STATEMENT OF DEFENSE OBJECTIONS AT TRIAL AND TO REQUIRE A STATEMENT OF REASON FOR OVERRULING SAME ON THE RECORD

Now comes the Defendant, by and through counsel, and moves this Court to allow full exposition of defense objections at trial. Further, counsel requests that the Court state its reasons for overruling said objections on the record.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER

36

328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

MEMORANDUM IN SUPPORT

Adequate, effective representation of an accused in a capital case must include a complete compilation of the record of every step and every event at the trial level.  Defense counsel cannot wait until the death sentence is imposed before counsel shifts thoughts of strategy to the appellate process.  The framework for an appeal must be built at trial.  To preserve issues, defense counsel must make a complete record.  The appellate courts of this state will not review issues, other than "plain error" which could have been, but were not properly presented at trial.  State v. Williams, 51 Ohio St. 2d 112, 364 N.E.2d 1364 (1977).  See also Ohio R. Crim. P. 52.

The Ohio Supreme Court has reaffirmed the non-review-ability of errors not in the trial record, including those errors with constitutional dimensions.  The syllabus of State v. Awan, 22 Ohio St. 3d 120, 489 N.E.2d 277 (1986), states, "Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue...and therefore need not be heard for the first time on appeal.  (Emphasis added.)  The Ohio Supreme Court, during its discussions of the Awan case, cites a long series of Ohio cases supporting this result.  22 Ohio St. 3d, 122, 489 N.E.2d, 279.  The Sixth District Court of Appeals, in State v. Pryor, No. WD-85-83, 1986 WL 5374, 1986 WL 5374 (Wood App. May 9, 1986), explicitly followed Awan in

ruling constitutional errors raised on appeal, but not at trial, are "moot and not well-taken."

An adequate record for appeal mandates that all aspects of all proceedings (motions, voir dire, opening and closing statements, reasons for objections and reasons for overruling them, bench conferences, and in-chamber discussions) be recorded by the court reporter. In order to ensure that the Defendant's constitutional right to life, liberty and property are fully protected, the trial court must require that specific grounds for objections be stated and that his grounds for each ruling are fully stated on the record.

The Court of Appeals will not review any claimed error absent a record thereupon. A full, adequate record cannot be reconstructed after trial. In order to fully preserve an issue for appellate review, counsel must raise the issue and present the argument in support. The immediate case contemplates the death penalty. As such, the trial court must be vigilant to ensure that the Defendant's constitutional rights are fully protected prior to the imposition of the ultimate sanction.

Counsel notes that the ordinary practice of conferences at benchside is wholly unsatisfactory in a case of this nature. Such practice, occurring as it does in the presence of the jury and often "off the record," may be acceptable in a normal felony case. It does not meet the higher standard of practice required in a death penalty case. Therefore, counsel requests that during the trial, and upon suggestion to the Court of the need for discussion of a non-jury matter, that the Court remove the jury from the courtroom and allow full exposition of the defense objection and argument in support thereof. The Defendant further requests that the Court state its reasons for overruling any objections on the record.

For the foregoing reasons, the Defendant respectfully moves this Court to grant the Defendant's requests.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076
COUNSEL FOR NATHANIEL JACKSON

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION TO ALLOW FULL STATEMENT OF DEFENSE OBJECTIONS AT TRIAL AND TO REQUIRE A STATEMENT OF REASON FOR OVERRULING SAME ON THE RECORD was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this 23 day of Jan  2002.

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

28

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )        Case No.  01-CR-794
                                 )
            Plaintiff,           )
VS.                              )
                                 )
                                 )        Judge Stuard
NATHANIEL JACKSON ,              )
                                 )
            Defendant.           )

## DEFENDANT'S MOTION FOR CLOSURE OF PRETRIAL HEARINGS AND TO INSULATE VENIRE AND JURY

Now comes the Defendant, by and through counsel, and respectfully moves this Court in Branch I, to issue an order which prohibits the attendance of the press at all pretrial evidentiary hearings; and in Branch II, to issue an order which prohibits the publication of the names, addresses and telephone numbers of members of the venire to be drawn and of the jurors once selected herein.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

37

BRANCH OFFICE OF THE OHIO PUBLIC DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

MEMORANDUM IN SUPPORT

BRANCH I:  CLOSURE OF PRETRIAL EVIDENTIARY HEARINGS

In this branch, the defense seeks to exclude the media from the courtroom during any and all non-procedural hearings where evidence may be adduced or argument made thereupon by counsel.  As a practical matter, the defense will seek to suppress certain evidence and widespread dissemination of such evidence by the media.  If the media is present, it will defeat the very purpose of the hearing regardless of the outcome.

Obviously, if the defense is successful in suppressing evidence, it should not be made known to any potential or actual juror, either in or out of court.  Even if the defense is unsuccessful in suppressing the evidence, it should only be made known to potential or actual jurors in court, under the Rules of Evidence and subject to cross-examination.  None of the traditional procedural guarantees nor any circumstantial guarantee of trustworthiness is present in a news broadcast or news article.  Rather, the limiting and controlling factors are things such as deadlines, brevity, and sensationalism.

The United States Supreme Court has sanctioned closure of pretrial proceedings in criminal cases.  Thus, while there is an admittedly strong social interest in open criminal proceedings, the Sixth and Fourteenth

Amendments right to a public trial is a personal right of the accused and does not inhere in the public or the press. Gannet Co., Inc. v. DePasquale, 443 U.S. 368 (1979). The Court in Gannet Co., Inc. applied a balancing test: to the extent there may be a constitutional dimension to a right of access, it was nevertheless outweighed by the defendant's right to a fair trial.

The Supreme Court has distinguished pretrial proceedings from the trial itself. Richmond Newspapers, Inc., v. Va., 448 U.S. 555 (1980). It is further apparent that closure of even part of the trial itself will be very closely scrutinized. Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982). The Defendant does not seek this sanction, however. The defense requested closure only of the pretrial proceedings for the reasons hereinbefore stated. It is anticipated that sequestration of the venire once drawn, and of the panel once selected, will be an adequate protection of the defendant's due process rights and is less intrusive upon the competing societal interests.

The United States Supreme Court has recently addressed this issue in Press Enterprise Co. v. Superior Court, 478 U.S. 1 (1986). (Hereinafter to be called Press Enterprise, II.)

While the defense feels that the dissent in Press Enterprise, II strikes a fairer balance between the interests at issue, even the majority opinion states that the right of access by the press to jury selection and voir dire is not absolute:

> while open criminal proceedings given assurances of fairness to both the public and the accused, there are some limited circumstances in which the right of the accused to a fair trial might be undermined by publicity. In such cases, the trial court must determine whether the situation is such that the rights of the accused override the qualified First Amendment right of access.

-3-

478 U.S. 1 at 9 (footnote omitted). Counsel asserts that this is the type of case to which the Press Enterprise, II majority refers. It is, therefore, incumbent upon the Court to hold a hearing and determine whether:

> ... 'closure is essential to preserve higher values and is narrowly tailored to serve that interest' ... If the interest asserted is the right of the accused to a fair trial, the preliminary hearing shall be closed only if specific findings are made demonstrating that, first, there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights.

478 U.S. 1 at 13-14, quoting from Press Enterprise Co. v. Superior Court, 464 U.S. 501, 510 (1984)

The defense seeks a forum and an opportunity to meet its burden of proof on this issue.

BRANCH II: INSULATION OF THE VENIRE AND JURY

Counsel for the defense represents to this Court that there exists a clear and present danger of jury contamination which would be brought about by the publication of the names, addresses, and telephone numbers of potential jurors in this case. This is a case involving the death penalty and will attract a great deal of media attention. Because of the inflammatory nature of this case, release of this information to the community would result in contamination of the venire which would not be cured through *voir dire* under any circumstances.

The freedom of the press protected by the First Amendment is not absolute. New York Times Co. v. United States, 403 U.S. 713 (1971); Organization for a Better Austin v. Keefe, 402 U.S. 415 (1971); Near v. Minnesota ex rel. Olson, 283 U.S. 697 (1931).

The United States Supreme Court, in Press-Enterprise Co. v. Superior Court, 464 U.S. 501, (1984) (hereinafter referred to as Press-Enterprise I), dealt with a case involving the closure of the voir dire proceedings in a criminal trial. The Court in Press-Enterprise I, id. concluded that the guarantees of open public hearings in criminal trials cover the voir dire proceedings. The Court went on to state, however, that, "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." 464 U.S. at 510. The Court went on, "To preserve fairness and at the same time protect legitimate privacy, a trial judge must at all times maintain control of the process of jury selection..." 464 U.S., 512.

The Supreme Court, in Nebraska Press Association v. Stuart, 427 U.S. 539 (1976), set up guidelines for determining when a prior restraint on publication would be appropriate to preserve a defendant's right to a fair trial. In making the determination whether "the gravity of the 'evil,' discounted by its improbability, justifies such invasion of free speech as is necessary to avoid danger ..." (quoting from United States v. Dennis, 183 F.2d 201, 212 (1950), aff'd, 341 U.S. 494 (1951), the Court in Nebraska Press Association, id., concluded that there must be an examination of the evidence on three issues:

(a) the nature and extent of pretrial news coverage;

(b) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; and

(c) how effectively a restraining order would operate to prevent the threatened danger.

427 U.S. at 562.  See also Press-Enterprise I, id.

Defense counsel asserts that the foregoing caselaw gives this Court the authority to grant the relief requested if the defense meets its burden of proof.  It is the Defendant's contention that the dangers inherent in the publication of the names, addresses and telephone numbers of potential jurors in this case justify the limited restraint on the press if the requested relief is granted.

For the foregoing reasons, the Defendant respectfully moves this Court to issue the requested orders.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION FOR CLOSURE OF PRETRIAL HEARINGS AND TO INSULATE VENIRE AND JURY was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this 23. day of _____, 2002.

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

29

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )        Case No. 01-CR-794
                                  )
            Plaintiff,            )
vs.                               )
                                  )
                                  )        Judge Stuard
NATHANIEL JACKSON ,               )
                                  )
            Defendant.            )

## DEFENDANT'S MOTION IN LIMINE
## TO EXCLUDE PHOTOGRAPHS OF THE DECEDENTS

Now comes the Defendant, by and through counsel, and respectfully moves this Court *in limine* to issue an order prohibiting the State from introducing into evidence photographs of the decedents from either from the autopsy or the crime scene. These photographs would effectively deny the Defendant a fair trial because they would inflame the passions of the jurors, resulting in a decision reached on an improper basis. The Defendant requests a hearing on this motion, at which time the photographs will be displayed for and reviewed by the Court.

Respectfully submitted,

DAVID H. BODIKER #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

28

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON


<u>MEMORANDUM IN SUPPORT</u>

The trial court has the discretion to determine whether photographs are admissible for some salutary evidentiary purpose. <u>State v. Woodards</u>, 6 Ohio St. 2d 14, 215 N.E.2d 568 (1966); <u>State v. Maurer</u>, 15 Ohio St. 3d 239, 473 N.E.2d 768 (1984) <u>cert. denied</u>, 105 S. Ct. 2714 (1985) <u>reh'g denied</u>, 106 S. Ct. 15 (1985).  Such discretion will not be overruled on review unless it has been abused.  <u>Woodards</u>, <u>id.</u>  The Defendant contends that it would be an abuse of this Court's discretion to allow the State to introduce into evidence any of the gruesome photographs at issue here.

In <u>State v. Maurer</u>, <u>id.</u>, the Ohio Supreme Court delineated the standard to be used by trial judges when dealing with the admissibility of gruesome photographs.  The Court stated that:

> ...authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative to testimony and other evidence, <u>as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number</u>.

Maurer, at 266, (emphasis added).  See also, State v. Mann, 19 Ohio St. 3d 34, 482 N.E.2d 592 (1985); State v. Martin, 19 Ohio St. 3d 122, 483 N.E.2d 1157 (1985); and State v. Williams, 23 Ohio St. 3d 16, 490 N.E.2d 906 (1986).

In State v. Thompson, 33 Ohio St. 3d 1, 514 N.E.2d 407 (1987), the Court reiterated that there is a higher standard for the admission of such photographs in a capital trial.  Although the error was found to be harmless in Thompson, the Court issued a very strongly-worded warning to trial judges and prosecutors, cautioning that too little attention was being paid to the true probative value of photos on issues constituting elements required to be proved by the State.  The Court's holding in Maurer, id. is based on Ohio R. Evid. 403, which provides as follows:

Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time.

(A) Exclusion Mandatory.  Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.

(B) Exclusion Discretionary.  Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.

Therefore, under Ohio R. Evid. 403(A), exclusion is mandatory if the probative value of otherwise relevant evidence is substantially outweighed by any one of three dangers:  (1) unfair prejudice; (2) confusion of issues; or (3) the misleading of the jury.  Exclusion is discretionary if the probative value is substantially outweighed by consideration of undue or needless presentation of cumulative evidence.

Ohio R. Evid. 403(B). The clear premise behind this Rule is to insure that the trier of fact does not reach its decision on an improper basis, thereby denying a defendant his right to due process and his right to a fair and impartial trial.

The Defendant submits that the photographs of the decedents at issue here should not be admitted into evidence, either under the standard set forth in Maurer, id., or under Ohio R. Evid. 403. For the foregoing reasons, the Defendant respectfully moves this Court *in limine* to prohibit the State from introducing into evidence any photographs of the decedents from the crime scene or during the autopsies.

Respectfully submitted,

DAVID H. BODIKER #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC DEFENDER
328 Mahoning Avenue
Warren, Ohio 44483
(330)393-7727 FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION IN LIMINE TO EXCLUDE  PHOTOGRAPHS OF THE DECEDENTS was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this 23rd day of _____, 2002.

_____
ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

30

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )
                                  )
            Plaintiff,            )        Case No.  01-CR-794
VS.                               )
                                  )
                                  )        Judge Stuard
NATHANIEL JACKSON ,               )
                                  )
            Defendant.            )

## DEFENDANT'S MOTION TO RESTRAIN CERTAIN PARTIES
## FROM DISCUSSING THE CASE WITH DEFENDANT

Defendant, through counsel, respectfully moves this Court for an Order restraining the State, its agents, employees, the prosecutors, the police, any social workers and psychiatric clinic personnel, corrections officers, Sheriff's Department employees, and all inmates and institution personnel from initiating or engaging in conversations with the Defendant relating in any way to the pending charges without the presence of counsel.  Defendant specifically requests an order restraining any and all persons from discussing with the Defendant the facts, the investigation, court proceedings and any other information about the case without the consent and/or presence of defense counsel.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

34

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

<u>MEMORANDUM IN SUPPORT</u>

Defendant hereby gives notice to the Court that he wishes to exert his Fifth, Sixth and Fourteenth Amendment rights to remain silent, to effective assistance of counsel, and to due process of law.  He further states that he does not wish to be questioned, interviewed or otherwise interrogated concerning this or any other crimes by any city, counsel, state or federal authorities or law enforcement personnel.

Defendant will suffer irreparable injury for which he has no present adequate remedy at law if the requested order is not made.  Because of the serious consequences of any attempt to interfere with the Defendant's constitutional right to due process through the exercise of the right to silence and to the advice of counsel, the preservation of these fundamentals rights overrides any slight inconvenience in enforcing such an order.

In exercising his right to silence and the right to counsel, the Defendant must deal with the realities of incarceration with its lack of privacy and its curiosity seekers.  State and county employees wander

freely throughout the jail facility and the court house performing their individual jobs. Because of the notoriety of Aggravated Murder cases, and of this case in particular, the curiosity toward an accused charged with capital murder, and the temptation by others to discuss the details of the case, the various personnel could knowingly or ever unwittingly entice Defendant into a discussion of the case.

In addition to the precarious position of the Defendant surrounded by jail and other personnel, he continues to be isolated from family, friends, and familiar surroundings. In this stressful situation, he would naturally seek the companionship of those who appear interested and concerned about his welfare, regardless of their sincerity. No matter how benevolent these persons might appear to the Defendant, the institutional and court personnel are still employees of the State who might use their access to otherwise inaccessible areas to knowingly or unknowingly entice Defendant into a discussion of the case.

The New York Court of Appeals has recognized the need for judicial action in such instances, and has acted to prohibit the police from questioning a suspect absent an affirmative waiver in the presence of his attorney. People v. Hobson, 39 N.Y.2d 479, 348 N.E.2d 894, 898, 899 (1976).

Nor may the State use a private citizen inmate as an agent to obtain information from the defendant. Main v. Moulton, 474 U.S. 159 (1985); United States v. Henry, 447 U.S. 264 (1980); Massiah v. United States, 377 U.S. 201 (1964). Any inmate acting on his own or under State direction based on the hope or promise that information obtained from the Defendant can be traded for favorable treatment in his own case or, while incarcerated, acts as an agent for the State. This type of action must be

prohibited in order to protect the Defendant's right to silence and the right to effective assistance of counsel.

Such an order as requested here is consistent with Ohio case law. In State v. Gooden, 16 Ohio App. 3d 153, 474 N.E.2d 1237 (1983), while affirming the Defendant's conviction on other grounds, the court recognized that admission of inculpating statements made by the Defendant to prison officials while in custody and without Miranda warnings was error. Any statements made by the Defendant, while in custody, are inadmissible unless the Defendant is explicitly advised of his Miranda rights and he knowingly, intelligently and voluntarily chooses to waive these rights.

Finally, as the highest court of New York recognized, once an accused is represented by counsel, as the Defendant herein is, then any waiver of the right to counsel obtained without the presence or assistance of counsel is insufficient to meet the degree of voluntariness. A right too easily waived is no right at all. Hobson, 39 N.Y.2d 479 at 422.

Defendant sits in constant jeopardy of misconstruing the intentions of those who might discuss the case with him and of involuntarily waiving his fundamental rights. Once he speaks to anyone about the case, he loses control over the passage of that conversation to other State authorities. "The danger [here] is not only the risk of unwise waivers ... but the more significant risk of inaccurate, sometimes false, and inevitable incomplete description of the events described." Id.

In light of the seriousness of this case and the wishes of the Defendant to exercise his constitutional rights, Defendant respectfully requests this Court to order all State agents, employees, and all jail personnel to refrain from initiating or discussing the case with the

-4-

Defendant and all jail personnel to refrain from initiating or discussing the case with the Defendant without the presence of counsel.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION TO RESTRAIN CERTAIN PARTIES FROM DISCUSSING THE CASE WITH DEFENDANT was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this ___ day of _____, 2002.

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

31

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                      )      Case No.  01-CR-794
                                    )
              Plaintiff,            )
vs.                                 )
                                    )
                                    )      Judge Stuard
NATHANIEL JACKSON ,                 )
                                    )
              Defendant.            )

<u>DEFENDANT'S MOTION FOR AN ORDER REGULATING THE
TRANSFER OF DEFENDANT FROM JAIL TO THE COURTROOM</u>

Defendant, through counsel, respectfully requests an order
regulating the procedures followed when transferring the Defendant
from the jail to the courtroom for all court proceedings.  Specifically,
Defendant requests that all necessary precautions be taken to ensure that
the jury never sees him shackled – whether with ankle cuffs, handcuffs, or
any other physical restraints.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

## MEMORANDUM IN SUPPORT

The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment, Drope v. Missouri, 420 U.S. 162 (1975), and a basic component of that right is the presumption of innocence.  Estelle v. Williams, 425 U.S. 501 (1976).  For this presumption to be effective, courts must guard against practices which unnecessarily mark the Defendant as a dangerous character or suggest that his guilt is a foregone conclusion. Generally, the Defendant has a right to be tried in an atmosphere free of partiality created by use of excessive guards.  Kennedy v. Cardwell, 487 F.2d 101 (6th Cir. 1973), cert. denied, 416 U.S. 959 (1974).

The employment of a minimum number of deputies will not cause any security problems.  On the other hand, parading the Accused through the courtroom, while restrained, with an excessive number of, possibly in the presence of witnesses, jurors and the press, will naturally create an atmosphere of guilt and present dangerousness.

If it should become necessary at some later point in the proceedings to employ a larger number of deputies to transport the Defendant, then it will be requested that the Defendant be transferred prior to the arrival of the jury.  The Defendant could then be sequestered in a room adjoining the courtroom until the commencement of the court session.

The United States Supreme Court, in <u>Illinois v. Allen</u>, 397 U.S. 337, 344 (1970), stated:

> ... no person should be tried while shackled and gagged except as a last resort. Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold.

Shackles – including handcuffs and/or leg shackles – like prison clothes, are a constant reminder of the Defendant's condition which may affect a juror's judgment. <u>Estelle v. Williams</u>, 425 U.S. 501 (1976). Shackling indicates a need to separate a defendant from the community at large. The shackling of a defendant at trial could be interpreted by a juror to mean that the Defendant is particularly dangerous and that guilt is a forgone conclusion. The use of shackles removes the indicia of innocence to which every Defendant is entitled.

Because shackles are so inherently prejudicial, they should not be used on a prisoner brought to trial except to prevent escape of a defendant, to protect individuals in the courtroom, and to maintain order during trial. <u>Woodards v. Cardwell</u>, 430 F.2d 978 (6th Cir. 1970). The shackling of a defendant must only be utilized where there is no other alternative to insure a safe, reasonable, and orderly progress of the trial. <u>Allen</u>, <u>id.</u>

This Court should not presume a necessity for the use of either shackles or an excessive number of deputies. If such a suggestion is made, then a hearing should be held to determine whether a need for additional security is required. The Court should then fashion a remedy

which is narrowly tailored to meet the need of security and which does not excessively infringe upon basic and fundamental rights of the Defendant.

WHEREFORE, Defendant requests that Court sustain his motion.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION FOR AN ORDER REGULATING THE TRANSFER OF DEFENDANT FROM JAIL TO THE COURTROOM was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this _____ day of _____, 2002.

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

32

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )      Case No.  01-CR-794
                                  )
            Plaintiff,            )
VS.                               )
                                  )
                                  )      Judge Stuard
NATHANIEL JACKSON ,               )
                                  )
            Defendant.            )

DEFENDANT'S MOTION TO PROHIBIT THE FILMING,
PHOTOGRAPHING OR VIDEOTAPING OF THE
DEFENDANT WHILE IN THE COURTROOM

Defendant, through counsel, hereby notifies this Court of his desire
not to be photographed, filmed, or videotaped while in the courtroom
pursuant to the Code of Judicial Conduct Canon 3(A)(7)(c)(iii) and Supreme
Court Rule of Superintendence for Common Pleas Court 11(C)(2).

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER

328 Mahoning Avenue
Warren, Ohio 44483
(330)393-7727  FAX (330)393-7076

## MEMORANDUM IN SUPPORT

The Code of Judicial Conduct Canon 3(A)(7)(c)(iii) prohibits the filming, videotaping, recording, or taking of photographs of witnesses who object thereto: "The filming, videotaping, recording or taking of photographs of victims or witnesses who object thereto shall not be permitted ...." Supreme Court Rule of Superintendence for Common Pleas Court 11(C)(2) requires the trial judge to inform witnesses of their right not to be filmed, videotaped, recorded, or photographed.

The canons and text of the Code of Judicial Conduct establish mandatory standards unless otherwise specified.  State ex rel. Grinnell Communications Corp. v. Love, 62 Ohio St. 2d 399, 401, 406 N.E.2d 809 (1980), citing the Preface to the Code of Judicial Conduct.  That the language of Code of Judicial Conduct Canon 3A(7)(c)(iii) is mandatory is clear.  At the time of the State ex rel. Grinnell Communications Corp. v. Love decision, Code of Judicial Conduct Canon 3A(7)(c)(iii) was written in discretionary terms.  The Canon has been amended, replacing the discretionary language with the following: "the filming ... of victims or witnesses ... shall not be permitted ... ."

Clearly, a testifying defendant is a witness and as such is entitled to the same protection that is afforded to every other witness.  The fact that Defendant is a potential witness requires that this Court order any media

representatives not to record images of Defendant either while [he/she] is testifiying or at any other time when he is in the courtroom.

The Code of Judicial Conduct Canon 3A(7)(c)(iii) requires the trial court to determine whether or not "the broadcasting, televising, recording, and taking of photographs" would "distract the participants or impair the dignity of the proceedings or otherwise materially interfere with the achievement of a fair trial."  The right to a fair trial is fundamental to the American legal system.  Irvin v. Dowd, 366 U.S. 717, 722 (1961).  Photographing and videotaping the Defendant will distract him, and interfere with his ability to testify and to concentrate on the trial proceedings.  This is reason enough to prohibit it.  See Hutchinson v. Marshall, 573 F. Supp. 496, 497-98 (D.C.S.D. Ohio, 1983), U.S. Const. amend. XIV, and Ohio Const. art. I, §§ 10 and 16

WHEREFORE, Defendant respectfully requests the Court to order the media to not videotape and photograph him while the Defendant is in the courtroom.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

Jackson Apx. Vol. 2
Page 72

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION TO PROHIBIT THE FILMING, PHOTOGRAPHING OR VIDEOTAPING OF THE DEFENDANT WHILE IN THE COURTROOM was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this _____ day of _____, 2002.

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

33

## IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,                  )        Case No.01-CR-794
                                )
            Plaintiff,          )        Judge Stuard
VS.                             )
                                )
NATHANIEL JACKSON,              )
                                )
        Defendant,              )

### DEFENDANT'S MOTION TO INCREASE THE BURDEN
### OF PROOF TO PROOF BEYOND ALL DOUBT IN
### BOTH THE TRIAL AND SENTENCING PHASES

Now comes the Defendant, by and through counsel, and hereby respectfully moves this Court to increase the burden of proof upon the State of Ohio in the case at bar to proof "beyond all doubt" in both the trial and sentencing phases. The Defendant asserts that his constitutionally guaranteed rights to due process and freedom from cruel and unusual punishment, guaranteed by the United States Constitution and the Ohio Constitution will be violated without this increase in the burden of proof.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

MEMORANDUM IN SUPPORT

The United States Supreme Court recognized in <u>Woodson v. North Carolina</u>,

> death, in its finality, differs more from life imprisonment than a 100-year prison terms differs from one of only a year or two.  Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a given case.

428 U.S. at 305.  The Court later noted in <u>Beck v. Alabama</u>, 447 U.S. 625, 637 (1980), "As we have often stated, there is significant constitutional difference between the death penalty and lesser punishment."  It is this constitutional difference that the defendant is moving this Court to recognize by increasing the burden of proof to proof beyond all doubt at the trial and sentencing phases in this case.

Treating a capital case differently is totally consistent with previous constitutional interpretations.  Historically, the United States Supreme Court has noted that "due process calls for such procedural protections as the situation demands. ... (n)ot all situations call for the same kind of procedure."  <u>Gardner v. Florida</u>, 430 U.S. 349, 358, n.9 (1977), quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972).

The death penalty differs from all other criminal sentences in that it is not revocable once inflicted.  The absolute need for reliability in a capital case requires that the high standard of proof be applied.

Insistence on reliability is a vital current in the Supreme Court's decisions in capital cases.  See "Deciding Who Dies," Univ. Pa. L. Rev. 129:1, 60 (Nov. 1980).  In Gardner v. Florida, id., the Court vacated a death sentence because the trial judge, in imposing death, might have considered material not revealed to the defendant.  This possibility was unacceptable in Woodson, id., and Roberts v. Louisiana, 428 U.S. 325 (1976).  The individual has to be considered.  The capital penalty has to be appropriate to both the crime and the accused.

In Lockett v. Ohio, 438 U.S. 586 (1978), the Supreme Court struck down the previous Ohio death penalty statute as violative of the Eighth and Fourteenth Amendments because it unduly limited the admissibility of evidence in mitigation.  The Court stated that given the life and death decision necessary to a capital case, an individualized decision is essential.  The sentencing body should have access to all information available that is to be considered as mitigating factors.  A subsequent decision, Green v. Georgia, 442 U.S. 95 (1979) invalidated an otherwise unobjectionable state hearsay rule in order to consider information Lockett made relevant.

The Supreme Court also reversed a sentence of death in Beck v. Alabama, id.  The Alabama capital statute precluded jury instructions on a lesser included offense.  The Supreme Court reversed, ruling that exclusion of the lesser included instruction inevitably enhanced the risk of unwarranted conviction.

This emphasis on reliability and certainty is a product of the unique decision that must be made in every capital case--the choice of life or

death.  The Supreme Court has consistently emphasized the "qualitative difference" of death as a punishment, stating that death "profoundly differs from all other penalties" and is "unique in its severity and irrevocability." Woodson at 305; Lockett at 605; accord, Gardner at 357; Gregg v. Georgia, 428 U.S. 153, 187 (1976).  Many commentators suggest that the Supreme Court does indeed apply a more stringent standard in review of capital cases, to insure the reliability of the sentencing decision and members of the Court have themselves made this clear.  Justice O'Connor stated, concurring, in Eddings v. Oklahoma, 455 U.S. 104, 117, (1982):

> Because sentences of death are qualitatively different from prison sentences, this court has gone to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake.  (Emphasis added, quotations omitted.)

See also Beck, id. at 637, n.14;. "The Impact of a Sliding Scale Approach to Due Process On Capital Punishment Litigation," 30 Syracuse L. Rev. 675 (1979); "Cruel Punishment and Respect for Persons: Super Due Process for Death," 53 S. Cal. L. Rev. 1143 (1980).

Clearly, the Supreme Court will stringently evaluate guilt and sentence determination practices in capital cases, and if a procedure "enhances the risk of an unwarranted conviction," Beck at 637, or sentence, it will be struck down, even though the same practice may be upheld in a non-capital case.  See Powell v. Alabama, 287 U.S. 45 (1932); cf. Betts v. Brady, 316 U.S. 455 (1942).