The burden of proof imposed in the instant case should be proof beyond <u>all</u> doubt.  The jury should be instructed during both the trial phase and sentencing phase that the law requires proof beyond all doubt.  Thus, a capital conviction cannot rest but upon proof beyond all doubt of all of the elements of the crime and that the aggravating circumstances outweigh all matters in mitigation.

Proof beyond all doubt, a higher standard than proof beyond a reasonable doubt, must be used as the standard of proof in a capital case.  The absolute need for reliability in both the guilt and the penalty phases requires that the higher standard of proof be applied.  The irrevocability of the penalty requires absolute reliability.  Absent absolute reliability, the accused may be subjected to a sentence of death in a manner violative of [his/her] Eighth and Fourteenth Amendment rights and [his/her] companion rights under the Ohio Constitution.

The proof beyond a reasonable doubt standard has been constitutionally required in criminal cases "to safeguard men from dubious and unjust convictions," <u>In re Winship</u>, 397 U.S. 358, 363 (1970), in recognition that the "accused during a criminal prosecution has at stake interest of immense importance, both because of the possibility that he may <u>lose his liberty upon conviction</u> and because of the certainty that he would be <u>stigmatized</u> by the conviction." <u>Id.</u> (emphases added).  This standard of proof commends "the respect and confidence of the community in applications of the criminal law.  <u>Id.</u> at 364, (emphasis added).

In <u>Winship</u>, the Court was dealing with a juvenile facing a possible six years imprisonment, and thus discussed the matter of deprivation of <u>liberty</u> under the Fourteenth Amendment.  Given the interests at stake in

a capital case, i.e., the loss of <u>life</u> as opposed to liberty, and the necessity that the community not be left "<u>in doubt whether innocent men are being condemned</u>," <u>id.</u> at 364, the assessment of interests favors in the guilty-determination process a standard for taking life which reduces the margin of error as much as possible, i.e., to that of proof beyond <u>all</u> doubt. (Emphasis added.)

Ohio law provides standard jury instructions setting forth "reasonable doubt" and "proof beyond a reasonable doubt" as the applicable burden of proof in capital cases. O.R.C. §§ 2901.05(A), 2929.03(B), 2929.03(D)(1), and 2929.03(D)(2). It is the Defendant's contention that these instructions are inadequate and fail to satisfy the requirement of reliability in a capital case. <u>Cf.</u> <u>State v. Jenkins</u>, 15 Ohio St. 3d 164, 473 N.E.2d 264 (1984).

The significant examples illustrate the problem of the "reasonable doubt" burden in capital cases. In <u>State v. Miller</u>, 49 Ohio St. 2d 198, 361 N.E.2d 419 (1977), the defendant was sentenced to death solely upon fingerprint evidence that he had explained in an exculpatory manner. While a majority of the Ohio Supreme Court (5 members) concluded that "there was sufficient substantial evidence for the triers of fact to conclude that Miller was the criminal agent of the crimes charged, at 203, and therefore affirmed the conviction and sentence of death, two members of the Court dissented on the ground that the evidence did not exclude "every reasonable hypothesis except that of guilt," and went on to set forth several such hypotheses of innocence and listed other evidence inconsistent with Miller's guilt. The dissent in <u>Miller</u> stated that the majority's result was the "imposition of the death penalty on evidence insufficient to sustain conviction." <u>Id.</u> at 206. George Miller's death

sentence was eventually commuted by the <u>Locket</u> decision and actions of the Ohio Supreme Court subsequent thereto.  If no such decision had been rendered by the united States Supreme Court, however, Miller would (barring a pardon or commutation) have been executed.

A second, more timely example is of even greater significance.  In a capital case tried under the new law, <u>State v. Herman Ray Rucker</u>, No. 82CR-018 (Wayne C.P., 1982), the jury attempted to reverse itself.  After reaching a unanimous verdict on guilt, the jury returned for the sentencing hearing, heard the testimony, deliberated, and then asked the Court for instruction as the jury was <u>no longer in agreement as to the question of guilt</u>.  After instruction by the Court that they could only determine sentence at the second hearing, the jury opted for the least restrictive sentencing alternative, life with 20-year parole eligibility.

In <u>Miller</u> and <u>Rucker</u>, doubt existed as to guilt of the accused.  Yet Miller received a death sentence affirmed on appeal, and Rucker, after an apparently agonizing jury decision, received a life sentence.  Doubt as to guilt is absolutely untenable in a capital case.  The accused's interest not merely in liberty, but in life, and the state's interest in justice are too vital to be infringed upon by doubt as to guilt.  The compromise verdict of <u>Beck v. Alabama</u>, <u>id.</u>, the compromise sentence in <u>Rucker</u> exact too great a price from the accused and too heavy a blow to the public's faith in justice to be tolerated.

For the foregoing reasons, the Defendant respectfully moves this Court to increase the burden of proof in the trial and sentencing phases to proof "beyond all doubt" and to instruct the jury accordingly.

Respectfully submitted,

_Daniel H. Bodiker / VPC_

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing DEFENDANT'S
MOTION TO INCREASE THE BURDEN OF PROOF TO PROOF BEYOND ALL DOUBT IN
BOTH THE TRIAL AND SENTENCING PHASES was delivered to the Prosecutor's
Office, 160 High Street, Warren, Ohio, 44481, on this _23_ day of _Jan_,

2002.

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

34

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,              )        Case No. 01-CR-794
                           )
           Plaintiff        )
VS.                        )
                           )
                           )        Judge Stuard
NATHANIEL JACKSON ,         )
                           )
           Defendant.       )

## DEFENDANT'S MOTION FOR ALL MOTIONS TO BE HEARD ON THE RECORD

Defendant, through counsel, respectfully requests that all motions, whether oral or written, be heard on the record prior to disposition by this Court.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

<u>MEMORANDUM IN SUPPORT</u>

The Defendant faces multiple counts of Aggravated Murder with Death Penalty Specifications. A case of this magnitude requires that all Motions and all legal proceedings of any nature be heard on the record.

The availability of counsel is necessary to fundamental fairness. <u>Powell v. Alabama</u>, 287 U.S. 45 (1932); <u>Hamilton v. Alabama</u>, 368 U.S. 52 (1961); <u>Gideon v. Wainwright</u>, 372 U.S. 335 (1963). In order for counsel to effectively represent the Defendant, it is necessary to place all of the issues in this case on the record by way of evidence adduced and/or oral argument presented.

Therefore, Defendant requests oral and/or evidentiary hearings with respect to all Motions made in this case.

Respectfully submitted,

DAVID H. BODIKER #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER

328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION FOR ALL MOTIONS TO BE HEARD ON THE RECORD was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this 23rd day of _____, 2002.

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

35

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )        Case No.  01-CR-794
                                  )
            Plaintiff,            )
vs.                               )
                                  )
                                  )        Judge Stuard
NATHANIEL JACKSON ,               )
                                  )
            Defendant.            )

<u>DEFENDANT'S REQUEST FOR RULINGS</u>
<u>ON ALL MOTIONS PRIOR TO COMMENCEMENT OF TRIAL</u>

Defendant, through counsel, respectfully moves this Court for
rulings on all of his pretrial motions prior to the commencement of trial.

Respectfully submitted,

_____
DAVID.H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

_____
ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

_____
JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

## MEMORANDUM IN SUPPORT

Ohio R. Crim. P. 12(E) explains, regarding a ruling on motion, "[a] motion made before trial other than a motion for change of venue, shall be <u>timely</u> <u>determined</u> <u>before</u> <u>trial</u>. Where factual issues are involved in determining a motion, the court shall state its essential findings on the record. (Emphasis added.) Ohio R. Crim. P. 12(E) mandates a statement of essential findings and requires that a ruling be made on a pretrial motion under Ohio R. Crim. P. 12 <u>before</u> <u>trial</u>. <u>See</u> <u>City of Akron v. Milewski</u>, 21 Ohio App. 3d 140, 487 N.E.2d 582 (1985); <u>City of Bryan v. Knapp</u>, 21 Ohio St. 3d 64, 488 N.E.2d 142 (1986). In <u>Bryan v. Knapp</u>, the Ohio Supreme Court succinctly stated, "Crim. R. 12(E) mandates that the court state its essential findings on the record. Without such findings, neither the court of appeals nor this court can properly review the propriety of the trial court's ruling." (Footnote omitted.)

Ohio R. Crim. P. 48(B) states a similar requirement, "**Dismissal by the court**. If the court over objection of the state dismisses an indictment, information, or complaint, it shall state on the record its finding of fact and reasons for the dismissal." Ohio R. Crim. P. 48 has been construed to require a trial court to state, on the record, its findings of fact and conclusions of law where the court refuses to dismiss an indictment upon a pretrial motion of the Defendant. In <u>State v. Messenger</u>, 49 Ohio App. 2d 341, 361 N.E.2d 465 (1976), the syllabus by the court stated:

> If a trial court, over the objection of the defendant, refuses to dismiss an indictment, information, or complaint upon the motion of the defendant therefor, it must state, on the record, its findings of fact and reasons for the refusal so that a reviewing court can determine the propriety thereof.

The Ohio Supreme Court implicitly adopted the Messenger holding in Bryan v. Knapp, id.

Under this authority, the trial court may not defer a ruling on the defense motions until after trial has commenced. Such procedure would violate the clear mandate of Ohio R. Crim. P. 12(E) which states that such motions "shall" be timely determined before trial. The Ohio Supreme Court has noted that the word "shall" in a statute "must be construed as imposing a mandatory duty" unless there is a legislative intent otherwise. State ex rel. City of Niles v. Bernard, 53 Ohio St. 2d 31, 372 N.E.2d 339 (1978).

In adopting the Ohio Rules of Criminal Procedure, Ohio used the Federal Rules of Criminal Procedure as a model. See, e.g., Ohio Legislative Service Commission Research Report No. 82, Criminal Laws and Procedure: An Interim Report (1967); France, Rules of Criminal Procedure: The Background of Draftsmanship, 23 Cleve. St. L. Rev. 32 (1974). The drafters of the Ohio Rules apparently believed that the reasoning and language employed in the Federal Rules were sound enough to become Ohio's procedural law. Departures from the wording of the Federal Rules must therefore be regarded as indicating a desire to change their thrust in Ohio. Fed. R. Crim. P. 12(e) states in part that a motion made before trial shall be determined before trial unless the court, for good cause, orders that it be deferred for determination at the trial of the general issue or until after verdict, but no such determination shall be deferred if a party's

<u>right</u> <u>to</u> <u>appeal</u> <u>is</u> <u>adversely</u> <u>affected</u>.  Where factual issues are involved in determining a motion, the court shall state its essential findings on the record.

It is apparent that in adopting Ohio R. Crim. P. 12(E), it was specifically intended that the Federal Rule not be used, and that all motions filed must be decided before trial under Ohio R. Crim. P. 12, not deferred.

Moreover, Ohio R. Crim. P. 1(B) states, "**Purpose and construction.** These rules are intended to provide for the just determination of every criminal proceeding.  They shall be construed and applied to secure the fair, impartial, speedy, and sur administration of justice, simplicity in procedure, and the elimination of unjustifiable expense and delay."

By ruling on pretrial motions prior to trial, the Court assists counsel in trial preparation and narrows the issues that will be raised during trial.  Pretrial rulings, therefore, insure the speedy and orderly administration of justice and facilitate the fair and impartial determination of the issues presented by this case.

For these reasons, the defendant moves this Court to rule on all pretrial motions prior to the commencement of trial.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

_(signature)_
JAMES F. LEWIS #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio 44483
(330)393-7727 FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing DEFENDANT'S REQUEST FOR RULINGS ON ALL MOTIONS PRIOR TO COMMENCEMENT OF TRIAL was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this 23rd day of January, 2002.

_(signature)_
ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

36

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | Case No.  01-CR-794 |
| | ) | |
| Plaintiff, | ) | |
| VS. | ) | |
| | ) | |
| | ) | Judge Stuard |
| NATHANIEL JACKSON , | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR TRANSCRIPTS

Now comes the Defendant, by and through counsel, and respectfully moves this Court for an order allowing transcription of all pre-trial evidentiary hearings and daily transcription of all trial proceedings in the above-styled case, including the entire evidentiary phase of the trial and, if there is a conviction, the entire penalty phase of the trial, with such transcripts to be provided to counsel for use during trial.

Respectfully submitted,

_David H. Bodiker /TF_
DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

_Anthony V. Consoldane_
ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

_James F. Lewis_
JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio 44483
(330)393-7727 FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

MEMORANDUM IN SUPPORT

The Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution mandate that an accused in a criminal case have the assistance of counsel. The United States Supreme Court has recognized that this right to counsel is a right to effective assistance of counsel. Powell v. Alabama, 287 U.S. 45 (1982); Gideon v. Wainwright, 372 U.S. 335 (1963).

The Supreme Court has also recognized that the right to effective assistance of counsel requires that a transcript of the trial proceedings be provided at no cost to an indigent defendant for the purposes of an appeal. Griffin v. Illinois, 351 U.S. 12 (1956). Although the holding in Griffin dealt with the right of a transcript at no cost to an indigent defendant on appeal, the requirement of a free transcript has been extended to state criminal prosecutions. The Supreme Court, in Britt v. North Carolina, 404 U.S. 226 (1971), in refusing to apply the rule to that particular case, nevertheless held that:

> Griffin v. Illinois and its progeny establish the principle that the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners. While the outer limits of that principle are not clear there can be no doubt that the state

must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal.

404 U.S. at 227, (footnote omitted).

The rule established in Britt, id., was follow by the Ohio Supreme Court in State v. Arrington, 42 Ohio St. 2d 114, 326 N.E.2d 667 (1975).  The Court in Arrington further held that the burden was on the State to show that the transcript requested by an indigent defendant was not needed for an effective defense.  42 Ohio St. 2d at 114, syllabus 2.  See also, State v. Thacker, 54 Ohio St. 2d 43, 374 N.E.2d 642 (1978).

The Defendant respectfully submits that, due to the seriousness of the offenses with which this defendant is charged and the irrevocable nature of the potential penalty, the standard for effective assistance of counsel is substantially increased.  Because of the complexity of the proceedings in a capital case, the resultant increased risk of error and inconsistent testimony, and the vast quantity of issues upon which the record must be protected by defense counsel, extraordinary measures are required in order to assure a fair trial.  These extraordinary measures should reasonably include the provision for transcripts of all pre-trial evidentiary hearings and daily transcripts of all trial proceedings.

The Defendant further submits that, pursuant to his constitutional right of confrontation of witnesses, he is entitled to an opportunity to cross-examine and impeach, if possible, all witnesses who testify against him.  This right is rendered substantially meaningless without access to verbatim transcripts of the direct and re-direct testimony of the witnesses.  The Supreme Court stated, in Chambers v. Mississippi, 410 U.S. 284 (1973) that:

"(t)he right of cross-examination is more than a
desirable rule of trial procedure.  It is implicit in the
constitutional right of confrontation, and helps
assure the 'accuracy of the truth determining
process' ... It is, indeed, 'an essential and
fundamental requirement for the kind of fair trial
which is the country's constitutional goal.' "

410 U.S. at 295 (quoting from Dutton v. Evans, 400 U.S. 74, 89 (1970) and

Pointer v. Texas, 380 U.S. 400, 405 (1965).

For the foregoing reasons, the Defendant respectfully moves this

Court for an order allowing transcription of all pre-trial evidentiary

hearings and daily transcripts of all trial proceedings.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION FOR TRANSCRIPTS was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this _____ day of _____, 2002.

_____
ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

37

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )    Case No.  01-CR-794
                                  )
            Plaintiff,            )
VS.                               )
                                  )
                                  )    Judge Stuard
NATHANIEL JACKSON ,               )
                                  )
            Defendant.            )

### DEFENDANT'S MOTION FOR AN INCREASE IN THE NUMBER OF PEREMPTORY CHALLENGES

Defendant, through counsel, respectfully moves this Court to allow him individually, twenty-four (24) peremptory challenges of prospective jurors.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-707

Jackson Apx. Vol. 2
Page 95

-1-

COUNSEL FOR NATHANIEL JACKSON

<u>MEMORANDUM IN SUPPORT</u>

This is a capital case.  It is of utmost importance that a fair and impartial jury be selected to decide the issues in a trial where the accused's life is at stake.  The peremptory challenge is one of the most important rights secured to the accused.  Its function is "not only to eliminate extremes of partiality on both sides, but to assure the parties that the jurors before whom they try the case will decide on the basis of the evidence before them, and not otherwise." <u>Swain v. Alabama</u>, 380 U.S. 202, 219 (1968).  Also, "[peremptory] challenges traditionally have been viewed as one means of assuring the selection of a qualified and unbiased jury." <u>Batson v. Kentucky</u>, 476 U.S. 79, 91 (1986), citing <u>Swain</u> at 219.  As this is a capital offense, community opinion, publicity or other matters may have prejudiced prospective jurors.  Additional challenges are required to combat these prejudices.

Under previous Ohio statutory law, when a capital jury was required to deliver both guilt and penalty determinations at the same time, defense counsel was entitled to exercise up to twenty-three (23) peremptory challenges.  Ohio Rev. Statutes, Chapter 88, § IX (Swan, 1841) (twenty-three peremptory challenges); Ohio Rev. Statutes, Chapter 81, § IX (Swan and Critchfield, 1860) (twenty-three peremptory challenges); Ohio Rev. Statutes, § 7272 (Daugherty, Brasee and Okey, 1880) (twenty-three peremptory challenges); Ohio Rev. Statutes, § 7272 (Giauge, 1890) (sixteen peremptory challenges); Ohio General Code § 13647 (1910) (sixteen peremptory challenges); Ohio General Code §13647 (Throckmorton, 1926) (sixteen peremptory challenges).

An increase in the number of peremptory challenges for the defense is necessary to preserve the accused's rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and of Section 16, Article I of the Ohio Constitution.    This motion must be considered with a view that this is a case asking for the death penalty.  The United States Supreme Court recognized that "death is a different kind of punishment than any other which may be involved."    See Winnick, Prosecutorial Peremptory Challenge Practices in Capital Cases:  An Empirical Study and a Constitutional Analysis, 91 Mich. L. Rev. 1, 19-20 (1982) (... the use of peremptory challenges in capital cases should be subjected to closer scrutiny than in non-capital cases).

The Court has also recognized that in death cases, "the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause," Gardner v. Florida, 430 U.S. 349 (1977). Most importantly, the Supreme Court has recognized that standards of procedural fairness evolve with our society, "[T]his court has acknowledged its obligation to reexamine capital sentencing procedures against evolving standards of procedural fairness in a civilized society." Id. at 357, (footnote omitted). The Ohio Supreme Court has buttressed this stating that "[t]o death qualify a jury prior to guilt phase of a bifurcated capital prosecution does not deny a capital defendant a trial by an impartial jury."  State v Maurer, 15 Ohio St. 3d 239, 473 N.E.2d 768 (1984), quoting State v. Jenkins, 15 Ohio St. 3d 164, syllabus, para. 2, 473 N.E.2d 264 (1984).

In a capital case the jury has the responsibility to reach a decision not only in the guilt phase of the trial, but also in the sentencing phase, an area which in a non-capital case a jury has no authority.  In essence, this authority creates two trials with separate deliberations for which the jury

in a capital case has responsibility. The allowance of the use of death-qualifying techniques and the additional responsibility that a jury in a capital case has in the sentencing phase make the need for twenty-four (24) peremptory challenges (to insure that responsible jurors are selected from the venire) all the more evident.

Analysis of other jurisdictions is instructive. In Mississippi, Rule 5.06 of the Uniform Circuit Court Rules, grants each side twelve (12) peremptory challenges in a capital case. The court, however, has the discretion to increase the number in order to avoid an injustice. Additionally, the defense is entitled to more challenges than the prosecution in the federal courts and in twenty states, including Alabama, Alaska, Arkansas, Delaware, Georgia, Kentucky, Maine, Maryland, Michigan, Minnesota, Missouri, Nebraska, New Hampshire, New Jersey, New Mexico, North Carolina, Oregon, South Carolina, Tennessee and West Virginia. J. Van Dyke, Jury Selection Procedures, 282-3 (Bellinger 1977). The following list of cases compiled in Bonora and Krauss, Jury Work: Systematic Techniques, Figure 2.5, p. 2-42.1 through 2-42.3 (1983) demonstrates that the practice of granting additional peremptory challenges to the defense is not uncommon:

Number Of Additional Challenges
For The Defense Only

| | |
|---|---|
| United States v. Ahmad, et al., M.D. Pa. 1971 | 18 |
| United States v. Anderson, 356 F. Supp. 1311 (D.N.J. 1973) | 15 |
| United States v. Mitchell, 372 F. Supp. 1239 (S.D.N.Y. 1974) | 8 |
| United States v. Blanton, 719 F.2d 815 (6th Cir. 1983), | |
|     cert. denied, 465 U.S. 1099 (1984) | 20 |
| United States v. Means, 409 F. Supp. 115 (D.N.D. 1976) | 16 |
| United States v. Mitchell, 559 F.2d 31 (D.C. Cir. 1976) | |
|     cert. denied, 431 U.S. 1120 (1977) | 5 |
| United States v. Fischback, CR-83-169 (W.D. Wash. 1983) | 22 |
| United States v. Ehrlichman, 546 F.2d 910, (D.C. Cir. 1976) | |

<u>cert. denied</u>, 429 U.S. 1120 (1977)                          5
<u>United States v. Chimeranga</u>, S. 84 Cr. 818 (S.D.N.Y. 1985)     7
<u>United States v. Goldfarb, et al.</u>,464 F. Supp. 565 (E.D. Mich. 1979)
     8

Thus, a request that this Court grant additional defense challenges is not a novel procedure, but is merely a request to employ a practice already recognized in many courts as necessary to protect an accused's right to a fair trial.

Standard 8-3.5(c) of the American Bar Association Standards for Criminal Justice states:  "Whenever there is a substantial likelihood that, due to substantial publicity the regularly allowed number of peremptory challenges is inadequate, the court shall permit additional challenges to the extent necessary for the impanelling of an impartial jury."  In the case at bar, there is a substantial liklihood that the regularly allotted number of peremptory challenges is inadequate to insure the impanelling of an impartial jury.  In order to protect a defendant's right to a fair trial and to aid in the selection of an impartial jury, the Defendant submits that the number of peremptory challenges for the defense should be increased to twenty-four.

                    Respectfully submitted,


                    _David H. Bodiker / SPL_
                    DAVID H. BODIKER  #0016590
                    OHIO PUBLIC DEFENDER

                    _Anthony V. Consoldane_
                    ANTHONY V. CONSOLDANE #0000761
                    ASSISTANT STATE PUBLIC DEFENDER
                    LEAD COUNSEL

_(signature)_

JAMES F. LEWIS #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio 44483
(330)393-7727 FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION FOR AN INCREASE IN THE NUMBER OF PEREMPTORY CHALLENGES was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this 23 day of _____, 2002.

_(signature)_

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

38

## IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | Case No. 01-CR-794 |
| Plaintiff, | ) | |
| VS. | ) | |
| | ) | Judge Stuard |
| NATHANIEL JACKSON , | ) | |
| Defendant. | ) | |

### DEFENDANT'S MOTION FOR ALTERNATING VOIR DIRE

The instant Motion correlates with DEFENDANT'S MOTION FOR INDIVIDUAL SEQUESTERED VOIR DIRE. If that Motion is granted, then Defendant requests that this Court allow counsel to examine venirepersons in an alternating manner, whereby the Defendant is permitted to voir dire the first venireperson before the prosecution, then the State is allowed to voir dire the second venireperson before the defense, the Defendant would then go first for the next prospective juror, and so on.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR  NATHANIEL JACKSON


MEMORANDUM IN SUPPORT

Traditionally, but for no legal reason, the prosecution is allowed to voir dire the venire first and the Defendant follows.  This motion asks that the parties be allowed to alternate asking questions first in voir dire.  There is no legal rationale for always allowing the prosecution to examine veniremen before the defense:  no Criminal Rule or Ohio Statute mandates that the State must always be allowed to voir dire prospective jurors before the defense.  Ohio R. Crim. P. 24(A) provides only that the parties must be allowed to participate in voir dire.  No specific voir dire procedures are mandated or suggested by the Rule.  Similarly, Ohio Rev. Code Ann. § 2945.27 does not specify voir dire procedures except to state that voir dire must be allowed.  (By comparison, Pennsylvania requires voir dire to be conducted in an alternating manner, Pennsylvania R. Crim. P. 1106(e)(1)(B) in an effort to ensure that juries are seated in the fairest possible way.)  Voir dire procedure is a matter largely left to the discretion of the trial court.  In the absence of any specified guidelines, the trial court may establish any trial procedures that it sees fit.  O.R.C. §§ 2945.03 and 2945.10 make it clear that unless trial procedures are specified by Rule or Statute, the Court may run the trial according to its discretion.

Upon request of the defense, and in the absence of any law to the contrary, an alternating voir dire procedure should be adopted. Otherwise, in a capital case with individual voir dire, the prosecutor will quickly gain the advantage of hearing defense counsels' questions and, with successive jurors, the prosecutor will be in a position to ask questions he anticipates the defense will ask to 'steal the thunder.' Thus, by the time the voir dire is over, it is likely that the selected jurors taken as a whole body will develop a greater rapport with the prosecuting attorneys than with defense counsel. Overall, any potential tilt to the scale can be corrected by a balanced voir dire, achieved through alternating opportunities to address each venireperson first. Were the tables turned, the prosecutors would certainly cry foul – all Defendant asks is a balanced approach which removes an unfair advantage for either party during voir dire.

The denial of this request would have to be based upon some articulable, relevant reason; without which it would arguably be an abuse of discretion. An "abuse of discretion" implies an unreasonable or arbitrary attitude. State v. Maurer, 15 Ohio St. 3d 239, 250, 473 N.E.2d 768, 780 (1984), quoting Steiner v. Custer, 137 Ohio St. 448, 31 N.E.2d 855 (1940). There does not seem to be any articulable, relevant reasons for denying alternating voir dire.

THEREFORE, the Defendant respectfully requests that this Court allow his counsel to ask the first questions of every other prospective juror.

Respectfully submitted,

_(signature)_

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

_(signature)_

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

_(signature)_

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON


## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION FOR ALTERNATING VOIR DIRE was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this _23_ day of _____, 2002.

_(signature)_

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

39

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )        Case No.  01-CR-794
                                  )
              Plaintiff,          )
VS.                               )
                                  )
                                  )        Judge Stuard
NATHANIEL JACKSON ,               )
                                  )
              Defendant.          )

## DEFENDANT'S MOTION TO REDUCE BIAS IN THE ANNUAL JURY LIST

Now comes the Defendant, by and through counsel, and respectfully moves this Court to order the commissioners of jurors to supplement the annual jury list, pursuant to Ohio Rev. Code Ann. § 2313.09, with the names of all county residents aged 18 or older who hold valid Ohio driver's licenses.

Respectfully submitted,


DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER


ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL


JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue

Warren, Ohio 44483
(330)393-7727 FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

### MEMORANDUM IN SUPPORT

O.R.C. § 2313.09 provides as follows:

> The commissioners of jurors may by order to
> the court of common pleas, file in their office
> supplementary lists, certified by them as
> containing names of persons qualified to serve as
> jurors, which have been added to the annual jury
> list or other supplementary list on file in their
> office, and these names shall be prepared and
> deposited in the jury wheel, automation data
> processing storage drawer, or other automated
> date processing information storage device, as
> provided by section 2313.01 to 2313.46, inclusive, of
> the Revised Code, and used for the residue of the
> jury year, provided such names are selected in the
> manner prescribed by such sections.

As the Ohio Supreme Court has stated in State v. Puente, 69 Ohio St. 2d 136, 139, 431 N.E.2d 987, 989 (1982), cert. denied, 457 U.S. 1109 (1982): "R.C. Chapter 2313 contemplates a random selection of jurors from all sections of each county." Clearly, the Court was referring to the desirability of a demographic, rather than geographic, random selection, because Puente dealt with the automatic exclusion of doctors, dentists, and lawyers from the array of jurors in Trumbull County.

The Ohio Supreme Court has also stated, in State v. Strodes, 48 Ohio St. 2d 113, 115-116, 357 N.E.2d 375, 377-378 (1976):

> Unless prejudice to the defendant or the
> systematic and intentional exclusion of a group is
> shown, we will not reverse a judgment because of

minor and technical defects in jury-selection procedures.

A strongly worded dissent by Chief Justice Celebrezze in <u>State v. Puente</u>, however, lends some uncertainty to the prevailing theory that the Defendant must show prejudice in order to attain a reversal based upon non-compliance with O.R.C. § 2313. The Chief Justice argued that:

> Controlling precedent of the United States Supreme Court indicates that appellee should not be required to demonstrate actual prejudice in order to prevail in a juror selection challenge. <u>This is a burden that could never be met</u>.

69 Ohio St. 2d at 141, 431 N.E.2d 987 at 991 (emphasis added).

The Defendant suggests that the statutory authorization for supplementing the annual jury lists is responsive to the Sixth and Fourteenth Amendments to the United States Constitution, which provide an accused the right to an impartial jury. This language has been construed to encompass a jury chosen from a fair cross-section of his community. <u>Duren v. Missouri</u>, 439 U.S. 357 (1979); <u>Taylor v. Louisiana</u>, 419 U.S. 522 (1975); <u>State v. Johnson</u>, 31 Ohio St. 2d 106, 285 N.E.2d 751 (1972). The Defendant must meet a three-pronged test to demonstrate a violation of the fair cross-section requirements, by showing:

> (1) that the group alleged to be excluded is a "distinctive" group in the community;
>
> (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and
>
> (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

<u>Duren v. Missouri</u>, 439 U.S. at 364.

The equal protection clause of the Fourteenth Amendment may also be utilized to challenge discriminatory selection of petit juries in state courts. Alexander v. Louisiana, 405 U.S. 625 (1972). The Duren fair cross-section test also establishes a prima-facie violation of the equal protection clause. The two analyses differ only in the manner in which the prima-facie case is rebutted. Gibson v. Zant, 705 F. 2d 1543, 1546 (n.4 and accompanying text) (11th Cir. 1983). Although this memorandum is phrased in fair cross-section terminology, the defendant asserts that a petit jury selection taken solely from voter registration lists causes such disproportionate representation as to violate [his/her] rights under the equal protection clause.

Census Bureau analysis of the 1972 election returns indicated that certain distinctive groups tend to be disproportionately represented by voter registration lists:

> Higher levels of registration and voting were associated with persons who were male, white, those in the middle age group (35-64), those persons with at least a high school diploma, those in families with incomes greater than $10,000, and those in white collar occupations. Conversely, females, Negroes, persons of Spanish ethnic origin, the youngest (18-34) and oldest age groups (65 or older), those who did not complete elementary school education, those in families with incomes greater than $5,000 and those in unskilled occupations, such as laborers and private household workers, were less likely to be registered and vote.

Bureau of the Census, U.S. Department of Commerce, Voting and Registration in the Election of November, 1972, Series P. 20, No. 253, at 1 (1973). Examples of classes which have been found to be "cognizable" are those based upon: race and ancestry; socioeconomic or class status

(including occupational categories such as daily wage earners); sex; age; education; residency; religion and political belief and values.  National Jury Project, Inc., Jurywork: Systematic Techniques, Section 5.05 (2nd Ed. 1983).

Age groups in particular are difficult to place in the fair cross-section analysis because of the difficulty in defining the appropriate class.  United States v. Test, 550 F.2d 577 (10th Cir. 1976) (en banc).  The fact remains: "... young adults are substantially under-represented on the nation's jury rolls."  Ziegler, Young Adults as a Cognizable Group in Jury Selection, 76 Mich. L. Rev. 1045 (1978).  Persons ranging in age from 21 to 34 have been held to be a cognizable group by the United States First Circuit Court of Appeals.  In United States v. Burton, 420 F.2d 564, 570 (1970), the Court found that:

> Young adults constitute a cognizable – though admittedly ill-defined-group for purposes of defendant's prima facie case.  We cannot allow the requirement of a 'distinct' group to be applied so stringently with regard to age grouping that possible discrimination against a large class of persons – in our case, those between 21 and 34 – will be insulated from attack.  Nor can we close our eyes to the contemporary national preoccupation with a 'generation gap,' which creates the impression that the attitudes of young adults are in some sense distinct from those of older adults.  That apparent distinctness is sufficient for us to say that neither class could be excluded from jury pools without some justification.

The commentators are in accord.  See Himelrick, Underrepresentation of Young Adults on Juror Source Lists, 19 Wayne L. Rev. 1287 (1973); Ziegler, Young Adults as a Cognizable Group in Jury Selection, 76 Mich. L. Rev. 1045 (1978); Jurywork: Systematic Techniques, supra.

The second prong of the Duren fair cross-section analysis requires a showing that the cognizable group is not represented fairly and reasonably in venires in relation to the group's proportional share of the general population.  Studies have consistently shown that, in general, blacks, women, and young adults are underrepresented on voter registration lists.

The United States Supreme Court has underscored the value of preserving on the jury the range of human experience available in the general population.  The Court in Peters v. Kiff, 407 U.S. 493, 503 (1972) stated that:

> When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable.

The three-prong test of the Duren fair cross-section analysis requires a showing that the underrepresentation of the cognizable group is a result of systematic exclusion in the jury selection process.  Athough the exclusive use of voter registration lists for venire pools is common throughout the United States, "...all available studies and data indicate that voter registration lists do not represent a cross section of our commmunites and are substantially underinclusive." Kairys, et al., Jury Representativeness: A Mandate for Multiple Source Lists, 65 Calif. L. Rev. 776, 805 (1977).

The Eleventh Circuit Court of Appeals directed that a writ of habeas corpus issue because Georgia's "opt-out" system of jury selection systematically excluded women and, thus, deprived the appellant of an impartial jury.  In Machetti v. Linahan, 679 F.2d 236 (11th Cir. 1982), the

Court of Appeals relied upon Taylor v. Louisiana, 419 U.S. 522 (1975), in which an "opt-in" statute was held constitutional under fair cross-section analysis. Similarly, a jury selection system in that begins with a source list composed solely of registered voters is unlikely to produce an impartial jury which represents a cross-section of the community.

When a voter's registration list is cross-referenced to a driver's license listing for those 18 and over, however, the resulting jury source list can be expected to be highly inclusive. For example, a study done by the University of Connecticut in 1980 encompassing that state indicated that while only 79 percent of the subjects reported that they were registered to vote, and only 91 percent held driver's licenses, a combined list was 98 percent inclusive. Logan and Cole, Reducing Bias in a Jury Source List by Combining Voters and Drivers, 67 Judicature 87, 90 (Aug., 1983). If this Court suspects that the population of this county differs markedly from the population sampled in the Connecticut survey, the Defendant would request an evidentiary hearing on the factual issues.

The subjective notion that those registered to vote are in some sense better citizens than those who are not registered (and therefore more qualified to determine criminality and impose sentence) is open to debate. In any event, this notion has no place in an equal protection/fair cross-section analysis. As the author of one treatise has stated:

> The rationale of the jury system is to lend legitimacy to justice through verdicts reached by a cross-section of the community. Excluding certain people from participation in that process because, for one reason or another, they have not voted or do not want to vote contradicts the system itself. It further alienates those who may already be alienated, instead of providing them with an opportunity to participate and thus, ideally, to become more involved in society. Serving on a jury

> is not meant to be a reward for good citizenship; it is an opportunity and a responsibility that derives from citizenship itself.  In addition, some people fail to register to vote because they want to avoid jury duty, and thus the exclusive use of the voter list as a source for jurors is in some sense a tax on the right to vote, and certainly a totally inappropriate one.

Van Dyke, Jury Selection Procedures (Cambridge: Ballinger Publishing, 1977) p. 91.

In ordering a new indictment and a new trial because Georgia's "key man" system for choosing grand and petit jurors resulted in a substantial underrepresentation of women and blacks, the Eleventh Circuit Court of Appeals observed that, "the importance of non-discriminatory jury composition is magnified in capital cases ... ." Gibson v. Zant, 705 F.2d 1543 at 1546.  The Court in Gibson further noted that:

> Instead of proceeding 'full steam ahead' to try this petitioner, the trial judge could have found these lists unconstitutionally composed and ordered the jury commissioners of Jones County to immediately revise these jury lists in accordance with Georgia laws and Supreme Court...decisions. Now eight years after petitioner's original trial, he must be reindicted and tried by juries drawn from constitutionally composed venires.  Due regard for the petitioner's constitutional rights in the first instance would also have served the interest of the larger community in prompt prosecution and minimization of needless public expense.

705 F.2d at 1549. For the foregoing reasons, the Defendant respectfully moves this Court to order the commissioner of jurors to supplement the jury source list with all those county residents aged 18 and over who hold a valid Ohio driver's license.

Respectfully submitted,

_David H. Bodiker / TFL_

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

_Anthony V. Consoldane_

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

_James F. Lewis_

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION TO REDUCE BIAS IN THE ANNUAL JURY LIST was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this ⟨23rd⟩ day of ⟨July⟩, 2002.

_Anthony V. Consoldane_

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

40

STATE OF OHIO,                    )        Case No.  01-CR-794
                                  )
              Plaintiff,          )
vs.                               )
                                  )
                                  )        Judge Stuard
NATHANIEL JACKSON ,               )
                                  )
              Defendant.          )

## DEFENDANT'S MOTION FOR INDIVIDUAL
## SEQUESTERED VOIR DIRE ON SELECT TOPICS

Defendant, through counsel, moves this Court for an order permitting the defense and prosecution to undertake individual voir dire of prospective members of the jury outside the presence and hearing of other members of the venire on at least two critical topics:  (1) attitudes towards the death penalty (often referred to as the "Witherspoon" issue); and (2) pretrial publicity about the instant case.  This motion is made to prevent the questions asked of prospective jurors and any answer given from prejudicing or influencing other members of the panel.  After completing individual inquiry into these sensitive topics, Defendant asks that [he/she] be permitted to conduct a general group voir dire of all venirepersons who survive challenges for cause during the individual, sequestered voir dire.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

Jackson Apx. Vol. 2
Page 114

_(signature)_

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

_(signature)_

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

## MEMORANDUM IN SUPPORT

The trial court is afforded great latitude and discretion in structuring the method in which voir dire will be conducted.  Rosales-Lopez v. United States, 451 U.S. 182 (1981); State v. Mapes, 19 Ohio St. 3d 108, 484 N.E.2d 140 (1985); Ohio Rev. Code Ann. § 2945.27; Ohio R. Crim. P. 24.  It is the position of the Defendant that the Court should grant this motion because individual voir dire is best designed to achieve the objective of eliminating jurors biased by reason of pretrial publicity or excludable by reason of an unacceptable attitude towards the death penalty.

Voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. Without adequate voir dire, the trial judge's responsibility to remove prospective jurors who will not be able to follow the Court's instructions and evaluate the evidence cannot be fulfilled.  Rosales-Lopez, id.  The entire voir dire should be directed to determine whether, for any reason,

a juror has a bias of mind in favor or against either party such that this impartiality as to guilt would be impaired.  State v. Ellis, 98 Ohio St. 21, 120 N.E. 18 (1918).

Based on these concerns and the serious nature of proceedings in which a death sentence may be imposed, many courts allow the individual sequestered voir dire.  This procedure is specifically appropriate in the case against the Defendant for three reasons.

First, the Defendant has the right to a fair and impartial jury.  In capital cases such as this one, venirepersons may be excluded from serving as a juror if they are unable to follow and abide by whatever direction the trial judge might issue in imposing a death sentence.  In Wainwright v. Witt, 469 U.S. 412 (1985), the Supreme Court updated the earlier standard of Witherspoon v. United States, 391 U.S. 510 (1968) as to when venirepersons may be excluded.  The exceptional circumstances of the death-qualification phase of the voir dire requires that it be done individually and in sequestration.  Group voir dire, on the other hand, increases the opportunity for potential bias of prospective jurors and inhibits honest and open responses during questioning.  To minimize these potentially prejudicial effects, voir dire questioning of capital venirepersons should be performed outside the presence of other prospective jurors.

Secondly, in cases such as the one against the Defendant, where there is a substantial likelihood of pretrial publicity, individual voir dire is more effective at ensuring that the jury is not comprised of those with prejudices as a result of media coverage.

Thirdly, individual sequestered voir dire will aid counsel in making their decisions concerning their right to exercise peremptory challenges.

Individual voir dire provides better information concerning the venirepersons because both the questions and the responses tend to be more individualized.

The defense also requests that the individual voir dire be conducted in as informal a surrounding as possible. Counsel respectfully request the use of chambers for this purpose. Voir dire in the Judge's chambers will allow closer proximity between venire members, all counsel and the Court. The informal atmosphere, and this proximity will enhance communication and dispel the likelihood of questions or responses being misunderstood. In addition, the intimidating environment of a large and empty courtroom will be replaced with a facility that is less imposing on venire members, many of whom will have never before been in the courthouse.

WHEREFORE, the Defendant prays this Court grant the motion in all particulars.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing DEFENDANT'S
MOTION FOR INDIVIDUAL SEQUESTERED VOIR DIRE ON SELECTED TOPICS was
delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481,
on this 23, day of _____, 2002.

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

41

# IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,                        )        Case No.  01-CR-794
                                      )
            Plaintiff,                )
VS.                                   )
                                      )
                                      )        Judge Stuard
NATHANIEL JACKSON ,                   )
                                      )
            Defendant                 )

## DEFENDANT'S MOTION TO REQUIRE PROSECUTOR TO STATE REASONS FOR EXERCISING PEREMPTORY CHALLENGES

Now comes the Defendant, by and through counsel, and respectfully moves this Court for an Order directing the prosecutor to state the reasons, on the record, when he exercises peremptory challenges at the jury selection in the case at bar, in order to guarantee that the Defendant receives equal protection of the law and a fair trial by an impartial jury, as guaranteed by the Constitution of the United States and the State of Ohio.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

FILED

JUL 09 2003

MARCIA J. MENGEL, CLERK
SUPREME COURT OF OHIO

Jackson Apx. Vol. 2
Page 119

-1-

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

## MEMORANDUM IN SUPPORT

The Defendant has a right to a jury drawn from a representative cross-section of the community, as guaranteed by Article I, Section 5 and 10 and by Article II, Section 26 of the Ohio Constitution and by the Sixth and Fourteenth Amendments to the United States Constitution.  Further, if the State were to utilize its peremptory challenges to purposefully exclude a cognizable group from the jury, it would engage in discrimination and thereby deprive the accused of [his/her] right to equal protection of the law, as guaranteed by the Fourteenth Amendment of the United States Constitution.  Batson v. Kentucky, 476 U.S. 79, 90 L.Ed.2d 69 (1986).

The harm from discriminatory jury selection extends beyond that inflicted on the Defendant and the excluded juror to affect the entire community.  Selection procedures that purposefully exclude a cognizable group from juries undermines public confidence in the fairness of our system of justice.  Batson, id.

The fact that "tokens" may be left upon the jury does not insulate the State's action from constitutional prohibition:

> Systematic and affirmative racial exclusion of available Black jurors by the State which results in only one Black being seated as a juror is not less constitutionally prohibited than the same procedure which results in the total exclusion of Blacks.  We are not unmindful that some attorney may leave a token Black on the jury after they are

> assured that there are no more Blacks available to be seated.  This type of practice does not lessen the unconstitutionality of the State's initial exclusion of Blacks from the jury solely because they were Blacks.

People v. Payne, 436 N.E.2d 1046, 1054 (Ill. 1982) (emphasis added).

The State, whether acting through the prosecuting attorney or the trial judge, may not commit acts of discrimination.  The improper use of peremptory challenges bars a person from jury service just as effectively as de jure or de facto methods used to restrain or hinder jury service on the basis of race.  Any action of the State to exclude a cognizable group from the jury not only denies the Defendant's right to equal protection of the law, but also violates the Defendant's right to an impartial jury and a fair trial as protected by the Sixth and Fourteenth Amendments to the United States Constitution, as well as by Article I, Sections and 10 and Article II, Section 26 of the Ohio Constitution.

A peremptory challenge may be exercised for reasons of specific bias, such as bias involving the particular case, parties and participants.  These reasons cut across many segments of society.  It is unconstitutional, however, to exercise peremptory challenges for reasons of bias against members of an identifiable group distinguished by race, religion, ethnic origin or similar grounds.  Batson, id.

The Defendant does not claim an entitlement to a petit jury that proportionately represents every group in the community, but [he/she] does claim a constitutional right to a petit jury that is as near an approximation of the ideal cross-section of the community as the process of random draw will permit.  Taylor v. Louisiana, 419 U.S. 522 (1975).  When a group is peremptorily challenged substantially on the basis of group bias

alone, the primary purpose of the representative cross-section requirement, that is, to achieve overall impartiality, is frustrated.  See Commonwealth v. Soares, 387 N.E.2d 499, 512 (Mass. 1979).  The jury becomes dominated by the conscious or unconscious prejudices of the majority.  People v. Wheeler, 583 P.2d 748, 22 Cal. 3d 258, 276 (1978).  Moreover, the Constitution itself is demeaned when it is virtually impossible for a citizen to exercise a constitutionally-protected individual rights.

By way of implementing the rights to a fair trial and to a trial by an impartial jury composed of a representative cross-section of the community, the Fourteenth Amendment mandates that the government may not act in an arbitrary, capricious, or irrational manner.  Accordingly, the government may not discriminate or take any action on the basis of race.  See, e.g., Ward v. Village of Monroeville, 409 U.S. 57 (1972).  This obligation applies directly to the representatives of the government, the prosecuting attorney and the trial judge.  "The duty of the prosecuting attorney is to seek justice, not merely to convict."  ABA Standards, 1.1 (C) (1974).  The Court in People v Payne, id., stated that:

> "when a prosecutor excludes Blacks solely because they are Blacks, he is not primarily seeking justice.  He is only seeking to convict.  This is a clear violation of the professional duty."

436 N.E.2d 1046, 1048 (Ill. 1982).  Indeed, the right to a jury of one's peers has been recognized as a means of protection against "overzealous prosecutors."  Duncan v. Louisiana, 391 U.S. 145, 156 (1968).

Further the trial judge has an obligation not only to see that justice is done, but that it is seen to have been done.  "A judge should respect and comply with the law and should conduct himself at all times in a

-4-

manner that promotes public confidence in the integrity and impartiality of the judiciary." Code of Judicial Conduct, Canon 2(A). Public confidence in the fairness of the criminal justice system is undermined by jury selection procedures that are used to purposefully exclude black persons. Where an inference of purposeful discrimination has been raised, a judge must undertake a factual inquiry into the matter. Alexander v. Louisiana, 405 U.S. 625 (1972). Moreover, requiring judges to be sensitive to the racially discriminatory uses of peremptory challenges enforces the mandates of equal protection and furthers the ends of justice. Batson, id.

Against the constitutional entitlement to equal protection of the law is weighed the statutory procedure of peremptory challenges. The Constitution does not guarantee a right to peremptory challenges. By definition, a peremptory challenge does not require an explanation. In practice, attorneys exercise their peremptory challenges based on only limited information concerning the predispositions and hidden biases of jurors. Consequently, attorneys rely on stereotypes, intuitions, and, unfortunately, common prejudices, in deciding whether a juror with a given age, race, sex, religion or ethnic background will act impartially toward a particular defendant. Accordingly, the State's privilege to strike individual jurors through peremptory challenges is subject to the commands of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The Equal Protection Clause forbids a prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable to impartially consider the State's case against a black defendant. Batson, id. Adherence to the belief that the unfettered exercise of the peremptory challenge is

essential to the criminal justice system would make "equal protection," as mandated by the Constitution, an empty promise.

Competence to serve as a juror ultimately depends on an assessment of individual qualifications and ability to impartially consider evidence presented at trial.  A person's race is unrelated to his fitness as a juror. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice.  The State must demonstrate that "permissible racially neutral selection criteria and procedures have produced the monochromatic result."  Batson, id., 476 U.S. at 94.

While the Supreme Court in Batson held that the defendant was deprived of his rights under the Equal Protection Clause of the Fourteenth Amendment, a defendant is additionally protected by the requirement of an impartial tribunal, as guaranteed by the Sixth Amendment.  The Supreme Court in Batson recognized the growing trend of jurisdictions recognizing that peremptory challenges used to strike black jurors violate the Sixth Amendment.  Id. 476 U.S. 82, n.1.  White Batson was decided on Equal Protection grounds, the Supreme Court did not foreclose the Sixth Amendment requirement of an impartial jury as a grounds of challenging race motivated use of peremptory challenges.  Id. 476 U.S. at 84, n.4.  As such, the Defendant herein is protected by both the Equal Protection Clause and the Sixth Amendment from having potential jurors preempted solely because of his or her race.

In Peters v. Kiff, 407 U.S. 493 (1972), the Supreme Court recognized that a defendant had standing to challenge his conviction by a jury from which blacks allegedly were systematically excluded.  The Sixth Circuit Court of Appeals recognized that; " A petit jury that is the product of the

-6-

systematic use of peremptory challenges, by either the prosecution of defense counsel, to excuse propsective jurors solely on the basis of their race is not an impartial jury within the meaning of the Sixth Amendment." Booker v. Jabe, 775 F. 2d 762 (1985), certiorari granted and judgment vacated, 39 Cr. L. 4091 (June 30, 1986), (remanded to lower court for further consideration in light of Allen v. Hardy, 478 U.S. 255, 39 Cr. L. 4089 (1986) and Batson, id.)).

The Court in Booker recognized that jury competence is an individual rather than a group or class matter. This concept lies at the very heart of the jury system and to disregard it is to open the door to class distinction and discrimination which are abhorrent to the democratic ideals of trial by jury. Thiel v. Southern Pacific, 328 U.S. 217 (1946). It is this rationale from Thiel which the Court in Booker felt equally supports the conclusion that an impartial jury is one which is selected "without systematic and intentional exclusion of any of these groups". Booker, 775 F.2d at 768.

The Defendant is not suggesting that the prosecutor be required to state his reasons for exercising peremptory challenges in every case. Under the unique circumstances of this particular case, and in light of the Supreme Court's decision in Batson, id., it is clearly appropriate to require the prosecutor in this case to state his reasons for exercising his peremptory challenges. The Defendant here is charged with Aggravated Murder and, if convicted, could be sentenced to death. Before a sentence of death may be imposed, the trial court has a duty to insure that the procedures are not arbitrary or capricious.

Under the mandates of Batson, id., the Defendant is entitled to rely on the undisputable fact that peremptory challenges constitute a jury

selection practice that permits "those to discriminate who are of a mind to discriminate." Applying the analysis outlined by the Supreme Court in Batson, id., these circumstances justify placing the burden on the prosector, in voir dire for the Defendant's pending trial, to state an explanation when exercising his peremptory challenges. It is essential to note that the Defendant is not requesting that the prosecutor's explanations rise to the level of justifying exercise of a challenge for cause during voir dire.

For the forgoing reasons, the Defendant respectfully moves this Court to order that the prosecutor be required to state, for the record, the basis for each peremptory challenge that he exercises. Without requiring the prosecutor to state the reason for his challenges, it is impossible for this Court, or any other, to determine whether the prosecutor is excusing jurors for reasons impermissible under the Constitutions of Ohio and the United States. This procedure will insure that the State does not engage in prohibited discrimination, in violation of equal protection of the law and, at the same time, provide the defendant with an impartial and representative jury.

Respectfully submitted,

_David H. Bodiker / JFL_

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

_Anthony V. Consoldane_

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

_(signature)_

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION TO REQUIRE PROSECUTOR TO STATE REASONS FOR EXERCISING PEREMPTORY CHALLENGES was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this _____ day of _____, 2002.

_(signature)_

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

L\2

| | | |
|---|---|---|
| STATE OF OHIO, | ) | Case No.  01-CR-794 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| | ) | Judge Stuard |
| NATHANIEL JACKSON , | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MOTION TO SUBMIT
### QUESTIONNAIRE TO PROSPECTIVE JURORS

Defendant, through counsel, respectfully moves this Court to order that the attached questionnaire be sent to all prospective jurors called on this case.  Upon return thereof, the completed questionnaire will be provided to both the defense and the prosecution to assist in an efficient and effective voir dire.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio 44483
(330)393-7727 FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

<u>MEMORANDUM IN SUPPORT</u>

Defendant is charged with Aggravated Murder, with specifications, and if convicted could be sentenced to death. As such, this case requires great care throughout all proceedings to ensure that the defendant is tried in a manner that does not violate his constitutionally guaranteed rights, ensures that the verdict is certain, and ensures that the penalty is imposed in a manner that is neither discriminatory, capricious, nor cruel. <u>Furman v. Georgia</u>, 408 U.S. 238 (1972); <u>Woodson v. North Carolina</u>, 428 U.S. 280 (1976); <u>Lockett v. Ohio</u>, 438 U.S. 586 (1978).

Ohio R. Crim. P. 24(A) requires that "[a]ny person called as a juror for the trial of any cause shall be examined under oath *** as to his qualifications." By granting this motion and requiring each individual drawn for the special venire to complete the questionnaire, this Court will ensure that the specific rights guaranteed a capital defendant are exercised in an informed, meaningful fashion.

The information derived therefrom will expedite voir dire, ensure proper excusal for cause, promote the judicious use of peremptory challenges, and reduce the likelihood of prejudicial error. Typically in death penalty cases, voir dire is extensive and time-consuming: death is at issue on both sides of the courtroom. The questionnaire will benefit both the defense and the State in ensuring that a qualified jury is chosen in the most fair and expeditious manner possible.

The use of the proposed questionnaire, by providing more detailed information, will assist defense counsel and the prosecution in the jury selection process which, in turn, will help protect the Defendant's right to a fair trial by an impartial jury. The advance completion of the questionnaire will benefit both the State and the defense counsel by allowing a preliminary review of all potential jurors, thus limiting voir dire to more specific grounds of questioning. Voir dire on basic information about the venire is eliminated and the jury selection process is expedited through the use of the attached questionnaire.

For these reasons, Defendant moves this Court to grant this motion and require those chosen to serve on the venire to complete the attached questionnaire in advance of the actual voir dire procedure. In the alternative, the Defendant requests that this Court hold a hearing in which evidence concerning the need for such expansion of the juror questionnaire can be presented, and through which the Court can decide the acceptability of alternative questions.

Respectfully submitted,

DAVID H. BODIKER #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing DEFENDANT'S MOTION TO
SUBMIT QUESTIONNAIRE TO PROSPECTIVE JURORS was delivered to the
Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this _____ day
of _____, 2002.

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

## CONFIDENTIAL JUROR QUESTIONNAIRE
### INSTRUCTIONS

The attached questions must be answered by you.  They will assist the Judge and lawyers in selecting a jury.  Your complete written answers will save a great deal of time for the Judge, for the lawyers, and for you.

Take your time.  Answer all the questions to the best of your ability.  **DO NOT ASK FOR HELP.**

There are no right or wrong answers.  They only requirement is that the answers be full and honest.

We need your candid answers so that we pick a fair and impartial jury for a trial involving criminal accusations.  The Judge and the lawyers realize that every person has beliefs and prejudices concerning many things.  You should answer with your true feelings, whatever they may be.  Do not assume that any of your answers will qualify you or disqualify you from serving on this jury.

Do not assume anything from these questions.  The fact that they are being asked does not necessarily have anything to do with the evidence that you will hear.

Please answer each question fully and to the best of your ability.  Write or print clearly.  You must not ask anyone for help.  Do the best you can. That will be good enough.

If you cannot answer a questions because you do not understand it, write "DO NOT UNDERSTAND" in the space after the question.  If you cannot

answer because you do not know, write "DO NOT KNOW" in the space after the question.

We are sure you understand the importance of juries to our American system of justice. We are confident that you also appreciate your duty as a citizen to serve as a juror if you are eligible. Your cooperation in completing and returning this "Juror Questionnaire" is a part of that duty. Without your help our Courts cannot operate properly in accordance with the United States Constitution.

**Number**_____

## PROSPECTIVE JUROR QUESTIONNAIRE

**GENERAL BACKGROUND:**

1. Name_____
2. Date of Birth _____
3. Place of Birth_____
4. Daytime telephone_____
5. Address_____

  _____
  (nearest intersection)

6. How long have you lived at your current address?_____
7. How long have you lived in Trumbull County?_____

**EDUCATION**

  _____less than high school   _____B.A.   _____B.S.
  _____high school   _____M.A.   _____M.S.
  _____some college   _____other graduate degree
  Please describe:_____

8. If you attended college or graduate school, which one, when, and where?_____
9. What did you study?_____
10. Have you received any special training?_____yes   _____no.  If yes, please describe:_____

**EMPLOYMENT**

11. Are you currently employed, unemployed, retired, disabled, a homemaker, or a student?  (Circle One)

    **If retired, presently unemployed, or disabled, please answer the questions below for your last job(s).**

    How long?_____
    Where is your employment located?_____
    What do you do?_____

**MARITAL STATUS:**

12. Please check on:

    _____Married          _____Separated

    _____Single           _____Widowed

    _____Divorced         _____Living with non-marital mate

13. If employed, please describe what type of work your spouse/mate does, including name and location of employer, and length of time at the position: _____

    _____

    _____

**CHILDREN**

14. How many?_____
    Please list the age, sex and last grade completed for each child:

    1. _____      3. _____

    2. _____      4. _____

15. Their occupations, locations of employment, and marital status, if adults:

1. _____

2. _____

3. _____

4. _____

## MILITARY SERVICE

16. Have you ever served in the military?

_____Yes _____No

When_____ Where_____

How Long_____ Branch_____

Highest Rank_____ Your Job_____

## HEALTH

17. Do you have any specific health problems of a serious nature that might make it difficult or uncomfortable for you to sit as a juror in the case?

_____Yes _____No If yes, please describe:

_____

## AFFILIATION

18. Do you belong or have you ever belonged to any social, fraternal, recreational, athletic groups?

_____Yes _____No

If so, please name the state and when:

_____

_____

**SPARE TIME**

19.  When you have the time, how do you choose to relas and enjoy yourself?

_____

_____

20.  What are your hobbies and interests?

_____

_____

21.  What television programs do you watch?

_____

_____

22.  What type of books do you enjoy reading?

_____

23.  Which magazines do you read?

_____

**MEDIA**

24.  Do you get more of your news from:  (Circle One)

A.  Newspapers

B.  Magazines

C.  Radio/Television

**JURY EXPERIENCE**

25.  Have you served as a juror before?

_____Yes _____No  If yes,

When_____

43

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,               )
                             )
            Plaintiff,       )     Case No.  01-CR-794
                             )
VS.                          )
                             )
                             )     Judge Stuard
NATHANIEL JACKSON ,          )
                             )
            Defendant.       )

## DEFENDANT'S MOTION TO PROHIBIT THE STATE FROM USING PEREMPTORY CHALLENGES TO EXCLUDE JURORS WHO EXPRESS CONCERNS ABOUT CAPITAL PUNISHMENT

Defendant, through counsel, respectfully moves this Court for an order prohibiting the State from excluding, through the use of peremptory challenges, all prospective jurors who express concerns over the imposition of the death penalty and/or capital punishment in general. The Defendant contends that said exclusion violates his right to a fair and impartial jury, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.  The reasons in support of this motion are set out in the accompanying memorandum.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

<u>MEMORANDUM IN SUPPORT</u>

Under present Ohio Law, a defendant convicted of Aggravated Murder with specifications may be punished by death.  With the State's decision to impose the death penalty, however, comes the enhanced responsibility to ensure that the constitutional rights of capital defendants are meticulously preserved.  Because death is different than other penalties, "there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." <u>Woodson v. North Carolina</u>, 428 U.S. 280, 305 (1976). When death is a possible penalty, all constitutional safeguards must be scrupulously observed. <u>Keeton v. Garrison</u>, 578 F. Supp. 1164, 1167.

Voir dire is an area which has been subjected to constitutional scrutiny since the Supreme Court decision in <u>Witherspoon v. Illinois</u>, 391 U.S. 510 (1968).  The composition of the capital jury is crucial to the fairness of the death penalty.  Systematic exclusion of jurors who express opposition to the death penalty implicates a number of constitutional rights, including the Fifth and Fourteenth Amendment due process rights

and the "fair cross-section" right inherent in the Sixth and Eighth Amendment guarantees.

One of the most effective means by which the State can exclude "death scrupled" jurors is through the use of peremptory challenges. The essential nature of the peremptory challenge is that it is one exercised without inquiry, and without being subject to the Court's control. Swain v. Alabama, 380 U.S. 202, 220 (1964); State v. Thompson, 68 Ariz. 386, 206 P.2d 1037 (1949); Lewis v. United States, 146 U.S. 370, 378 (1892). While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory challenge permits rejection for a real or imagined partiality that is less easily designated or demonstrable. Swain, id., at 220; Hayes v. Missouri, 120 U.S. 68, 70 (1887).

The use of peremptory challenges by the prosecution to select a jury which does not oppose and may even favor the death penalty is a common practice. Most recently, the United States Supreme Court in Gray v. Mississippi, 481 U.S. 648, 107 S. Ct. 2045, 2056, 95 L. Ed. 2d 622 (1987) indicated that: "It appears that prosecutors often use peremptory challenges" to "remove all venire members who expressed any degree of hesitation against the death penalty." Such a tactic permits the State to select what the Supreme Court condemned: a "tribunal organized to return a verdict of death." Witherspoon, id., at 521 (footnote omitted).

The removal of prospective jurors for cause whose opposition to the death penalty is so strong that it would prevent or substantially impair performance of their duties as jurors is permitted. Lockhart v. McCree, 476 U.S. 162 (1986); State v. Jenkins, 15 Ohio St. 3d 164, 473 N.E.2d 264 (1984). The Supreme Court, however, has ruled out the removal for cause of

Jackson Apx. Vol. 2
Page 140

potential jurors who merely express general opposition to the death penalty but who are willing to consider the possibility of its imposition in at least some cases and to make an impartial decision on the issue of the Defendant's guilt.  Witherspoon, 391 U.S. at 522-532, n. 21.

In Witherspoon, the Defendant was tried pursuant to a statute which gave the jury wide discretion in choosing between life imprisonment and the death penalty, and also permitted the prosecutor to challenge for cause any juror who stated "that he has conscientious scruples against capital punishment, or that he is opposed to the same."  The trial court eliminated forty-seven (47) potential jurors because of their opposition to the death penalty.  Of those eliminated, only five stated that they would not vote for the death penalty under the appropriate facts despite their general opposition to the death penalty.  According to the Supreme Court, this violated one of the "basic requirements of procedural fairness ... that the decision whether a man deserves to live or die must be made on scales that are not deliberately tipped toward death."  Witherspoon, id., at 521-522, n. 20.

The exclusion, by use of peremptory challenges, of jurors who are not subject to removal for cause has precisely the same result as that condemned in Witherspoon.  There is more than one way to select a jury "deliberately tipped toward death," and when the prosecutor accomplishes indirectly through use of the peremptory challenge the precise result prohibited in Witherspoon through the use of challenges for cause, the constitutional consequences should be the same.

The State's primary interest in the peremptory challenge – the avoidance of jurors biased against the State – is similar to the interest protected in Witherspoon.  As in Witherspoon, this interest is fully

protected by limiting exclusion in such a way that jurors may not systematically be removed because of their views on capital punishment on "any broader basis than inability to follow the law or abide by their oaths." Adams v. Texas, 448 U.S. 38, 48 (1980). Thus, the purpose of the peremptory challenge – attempting "to obtain a fair and impartial jury to try the case before the court," Swain, 380 U.S. at 222 – can be preserved while the Defendant's rights to a fair trial and impartial jury are protected.

The use of peremptory challenges to exclude "scrupled" jurors creates further unfairness when used in combination with the challenges for cause allowed under Witherspoon. The prosecution has an initial advantage in being able to exclude a substantial number of death penalty opponents for cause before using the first peremptory challenge. That advantage, designed to protect the State's interest in enforcing its death penalty laws, makes the jury more death-prone than the general population. It is unlikely that the defense challenges, even if used exclusively against death penalty advocates, are adequate to offset this initial bias. Further, the prosecution has a higher duty than the defense of assuring a fair trial. United States v. Agurs, 427 U.S. 97, 110-111 (1976); Berger v. United States, 295 U.S. 78-88 (1935). The use of peremptory challenges to systematically remove jurors solely because of death penalty opposition (not rising to the Witherspoon standard) is not justifiable by any standard in attempting to offset defense peremptory practices.

The defense must be allowed to establish a prima facie case of systematic exclusion of "death–scrupled" jurors based upon the prosecutor's conduct during voir dire. Such a standard is similar to the approach adopted by the United States Supreme Court in Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986). The prima facie showing can

be established through a "pattern" of strikes against "death-scrupled" jurors or by examining the prosecutor's questions and statements during voir dire.  Once the Defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging "death-scrupled" jurors.  Imposing such a burden would not unduly limit the State in its selection of a fair jury.  In Batson, id., the court noted that while requiring the State to justify the challenge of black jurors "imposes a limitation in some cases on the full peremptory character of the historic challenge, we emphasize the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause."  Batson, 106 S. Ct. at 1723.  The prosecutor may not, however, "rebut the defendant's case merely by denying that he had a discriminatory motive or 'affirming his good faith in individual selections.' "  Batson, 106 S. Ct. at 1723; see also, Alexander v. Louisiana, 405 U.S. 625 (1972).

It is important to note that in Batson the Supreme Court expressly declined to address the "fair cross-section" challenge to the discriminatory use of peremptory challenges.  Nor did the decision in Lockhart v. McCree, id., resolve this issue.  Although the court in McCree determined that it was proper to remove "Witherspoon excludables" from juries, the analysis was limited to that group.  The Court noted that:

> (i)t is important to remember that not all who oppose the death penalty are subject  to removal for cause in capital cases; those who firmly believe that the death penalty is unjust may nevertheless serve as jurors in capital cases so long as they state clearly that they are willing to temporarily set aside their own beliefs in deference to the rule of law. Because the group of "Witherspoon excludables" includes only those who cannot and will not conscientiously obey the law with respect to one of the issues in a capital case, "death qualification"

Jackson Apx. Vol. 2
Page 143

hardly can be said to create an "appearance of unfairness."

•••

In sum, "Witherspoon excludables," or for that matter any other group defined solely in terms of shared attitudes that render members of the group unable to serve as jurors in a particular case, may be excluded from jury service without contravening any of the basic objectives of the fair cross-section requirement.

Id. at 1766.

The Sixth Circuit, however, has specifically held on remand by the United States Supreme Court for reconsideration in light of Lockhart v. McCree that discriminatory use of peremptory challenges can result in a Sixth Amendment fair cross-section violation.  See Booker v. Jabe, 775 F.2d 762 (6th Cir. 1985), vacated and remanded sub nom. Michigan v. Booker, 478 U.S. 1001 (1986), reaff'd, Booker v. Jabe, 801 F.2d 871 (6th Cir. 1986), cert. denied, Michigan v. Booker, 479 U.S. 1046 (1987).  Discriminating against scrupled jurors has the obvious effect of denying the capitally charged defendant  a jury composed of a fair cross-section of the community.  It "stacks the deck" in favor of death.

Prosecutorial abuse of the peremptory challenge presents very serious constitutional and ethical concerns, including:  Constitutional right to a fair and impartial jury; the constitutional right to be tried by a jury drawn from a representative cross-section of the community; the constitutional right to be tried by a group of individuals capable of performing the purpose and function of a jury; the constitutional right to be free from cruel and unusual punishment; and the professional responsibility of prosecutors to refrain from using peremptory challenges

to intentionally create juries biased in the State's favor. This Court should adopt the procedure proposed by the Defendant to ensure that his constitutional right to a fair and impartial jury is protected. For the foregoing reasons, the Defendant respectfully moves this Court for an Order prohibiting the State from excluding, through the use of peremptory challenges, all prospective jurors who express concerns over the imposition of the death penalty.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION TO PROHIBIT THE STATE FROM USING PEREMPTORY CHALLENGES TO EXCLUDE JURORS WHO EXPRESS CONCERNS ABOUT CAPITAL PUNISHMENT was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this _____ day of _____, 2002

ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

44

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,           )     Case No.  01-CR-794

        Plaintiff,      )

vs.                   )

                    )     Judge Stuard

NATHANIEL JACKSON ,     )

        Defendant.     )

### DEFENDANT'S MOTION TO PROHIBIT DEATH-QUALIFICATION OF POTENTIAL JURORS UNLESS AND UNTIL THE PROSECUTION HAS SHOWN PROBABLE CAUSE THAT THE CASE WILL PROCEED TO MITIGATION

Now comes the Defendant, by and through counsel, and respectfully moves this Court in limine to prohibit the prosecution, defense counsel, and this Court itself from inquiring into the potential jurors' personal opinions concerning the death penalty, unless and until the prosecutor has presented this Court with probable cause to believe that the case will proceed to a mitigation phase.  (The defense has also filed a Motion to Prohibit Death-Qualification of the Jury, or in the Alternative, if Necessary, to Seat a Separate Jury During the Penalty Phase of the Trial, and the Defendant does not concede the constitutionality of the death-qualification process through the filing of this motion.)

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761

53

ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

_____

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL


BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

<u>MEMORANDUM IN SUPPORT</u>

Death-qualification is the process whereby counsel for the Defendant and the State question potential jurors during voir dire to determine their attitudes toward the death penalty.  The object of death-qualification is to seat jurors that can follow their oaths as jurors and fairly consider all penalties available under the law.  <u>State v. Patterson</u>, 28 Ohio St. 2d 181, 277 N.E.2d 201 (1971).  Not all venire persons who express conscientious or religious scruples against the death penalty or who oppose it in principle may be summarily excluded.  A juror is excluded only if he or she:

> "**...** unequivocally (states) that under no circumstances will he follow the instructions of a trial judge and consider fairly the imposition of a sentence of death in a particular case."

Ohio Rev. Code Ann. § 2945.25(C).

The United States Supreme Court, in <u>Witherspoon v. Illinois</u>, 391 U.S. 510 (1968), approved the exclusion for cause of any juror who:

> "would <u>automatically</u> vote against the imposition of capital punishment without regard to any evidence that might be developed at trial of the case before them, or ... (whose) attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's <u>guilt</u>."

391 U.S. at 522, n.21, (emphasis in original); <u>cf.</u> <u>Adams v. Texas</u>, 448 U.S. 38 (1980).

The Supreme Court, in <u>Adams v. Texas</u>, <u>id.</u>, explained the central holding of <u>Witherspoon</u>, <u>id.</u>, as follows:

> "... a State may constitutionally execute a death sentence imposed by a jury culled of all those who revealed during <u>voir dire</u> examination that they had conscientious scruples against or were otherwise opposed to capital punishment. The State was held to have no valid interest in such a broad based rule of exclusion, since(a) man who opposes the death penalty, no less than one who favors it, can make the discretionary judgment entrusted to him ... and can thus obey the oath he takes as a juror.'"

<u>Witherspoon v. Illinois</u>, 391 U.S. at 519; <u>Adams v. Texas</u>, 448 U.S. at 43. This passage from <u>Adams</u> was quoted verbatim and reaffirmed by the majority in the recent case of <u>Lockhart v. McCree</u>, 476 U.S. 162 (1986).

The Defendant contends that a jury from which <u>Witherspoon</u> excludables have been removed is prone to favor the prosecution at the trial phase. <u>See</u> studies presented in <u>Grigsby v. Mabry</u>, 569 F. Supp. 1273, 1287-1305 (hereinafter referred to as <u>Grigsby III</u>). <u>See also</u> <u>Hovey v. Superior Court of Alameda County</u>, 28 Cal. 3d 1, 27-42, 616 P.2d 1301 (1980); Note, <u>Grigsby v. Mabry: Are Death-Qualified Juries No Longer Qualified to Assess Guilty?</u> 59 N.C. L. Rev. 791, 798-99, n.52 and accompany text (1981);

White, Death-Qualified Juries: The "Prosecution Proneness" Argument Reexamined, 41 U. Pitt. L. Rev. 353 (1980).

Furthermore, the death-qualification of the venire itself unquestionably results in a jury which is not impartial because it is not drawn from a fair cross-section of the community, in violation of the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution. Persons opposed to the death penalty constitute a distinct and recognizable group in American society. Witherspoon, 391 U.S. at 520, n.16. Those persons who can be excluded from the panel on the basis of Witherspoon constitute a distinct, definable subset of this group. Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir. 1978); Grigsby III, id., 569 F. Supp. at 1283; Oberer, Does Disqualification of Jurors for Scruples Against Capital Punishment Constitute Denial of Fair Trial on Issue of Guilty?, 39 Tex. L. Rev. 545, 555-564 (1961). This segment of population will undoubtedly be represented in the special venire to be drawn in this case.

The Supreme Court's decision in Lockhart v. McCree, id., does not alter these facts. The majority recognized this stark reality and assumed for purposes of its opinion that: "... 'death qualification' in fact produces juries somewhat more 'conviction-prone' than 'non-death qualified' juries." 476 U.S. at 173. The majority opinion then concludes, in sum, that the State is allowed this advantage in death penalty cases. The Constitution, it can therefore be argued, requires juries impanelled in all criminal cases except capital cases to be impartial, allowing the State the advantage when it seeks to kill the Defendant. This appears to be the distressing truth of the majority opinion in Lockhart v. McCree, id. The Defendant contends however, that the aforementioned arguments against death-qualification of jurors have not been addressed in light of Article I, Section

10 of the Ohio Constitution, and he urges this Court to independently review the death-qualification process of that basis.

The extraordinary fact of the matter is that the State is allowed an advantage in a death case that would not be countenanced in any other situation. Thus, in a case where the State seeks to impose the most extreme sanction against the accused and where the chance to rectify a mistake does not exist, the likelihood of error is greater than in any other type of criminal litigation. Far from having more protection than other criminal defendants, capitally-charged defendants have the least protection from factual error.

It is the position of the defense that the State, if it is to have this advantage at all, should be allowed it only in true capital cases. There must be some protection against the situation where the State secures a capital indictment for the sole purpose of enhancing the changes of conviction. This obvious tactical ruse concerned the dissent in <u>Lockhart v. McCree</u>, 476 U.S. at 188. It should concern this Court. Neither counsel, the Defendant, this Court, nor society in general ought to be forced to rely on the ethical exercise of unbridled prosecutorial discretion.

Therefore, defense counsel requests this Court fashion a remedy in this case to protect the Defendant against the use of unfair tactical ploy: capitally charging the defendant to enhance the probabilities of conviction, in the absence of any realistic belief that the case will progress to a mitigation phase. The State should be allowed access, if at all, to the unfair and highly prejudicial advantage of death-qualification only in true capital cases. A "true capital case" is one wherein it has been established to the satisfaction of the Court that there exists probable cause to believe that the case will mature to the "penalty" or "mitigation" phase. Of course,

this means probable cause not only that the statutory aggravating circumstance is present, but also that an underlying aggravated murder can be proven.

Defense counsel suggests two methods by which this remedy can be achieved. First, a closed hearing should be conducted with the burden upon the State to show probable cause why the specification should not be stricken from the indictment. This is the preferred procedure. The Court is not justified in believing that the grand jury has already performed this function. Prosecutors have robbed the grand jury institution of its independence, and it now functions as nothing more than a compliant tool of the accusatorial branch of government.

The second method suggested herein is complete review of the grand jury minutes. Ohio R. Crim. P. 22 applies to Grand Jury proceedings, and those proceedings must be recorded in all felony cases. State v. Grewell, 45 Ohio St. 3d 4, 543 N.E.2d 93 (1989). A defendant is entitled to disclosure of the Grand Jury minutes upon demonstration of "a particularized need" that outweighs any need for secrecy. State v. Patterson, 28 Ohio St. 2d 181, 277 N.E.2d 201 (1971); State v. Sellards, 17 Ohio St. 3d 169, 478 N.E.2d 781 (1985). The decision to release any grand jury testimony prior to or at trial is within the discretion of the trial court, State v. Greer, 66 Ohio St. 2d 139, 420 N.E.2d 982 (1981). A trial court should order disclosure where "the ends of justice require it." State v. Patterson, id., syllabus. Defendant submits that protection from a more conviction-prone voir dire procedure in a case where probable cause is absent that the trial will proceed to the mitigation phase (thus requiring a death-qualification) is both a particularized need and a worthy objective of the "ends of justice."

The appropriate procedure for reviewing Grand Jury minutes is an <u>in</u> <u>camera</u> review, with the trial court, prosecutor, and defense counsel participating. <u>State v. Greer</u>, <u>id</u>.

For these reasons, the Defendant respectfully moves this Court to prohibit the prosecutor, defense counsel, and this Court itself from inquiring into the potential jurors' opinions concerning the death penalty, unless and until the prosecutor has presented this Court with probable cause to believe that the case will proceed to a mitigation phase.

Respectfully submitted,

DAVID H. BODIKER  #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER
LEAD COUNSEL

JAMES F. LEWIS  #0024314
ASSISTANT STATE PUBLIC DEFENDER
CO-COUNSEL

BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 Mahoning Avenue
Warren, Ohio  44483
(330)393-7727  FAX (330)393-7076

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing DEFENDANT'S MOTION TO PROHIBIT DEATH-QUALIFICATION OF POTENTIAL JURORS UNLESS AND UNTIL THE PROSECUTION HAS SHOWN PROBABLY CAUSE THAT THE CASE WILL PROCEED TO MITIGATION was delivered to the Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, on this ____ day of _____, 2002.

_____
ANTHONY V. CONSOLDANE
COUNSEL FOR DEFENDANT

]