IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )    CASE NO.    :01-CR-794
                                        )
          Plaintiff,                    )    JUDGE:      :JOHN M. STUARD
                                        )
-vs-                                    )    MEMORANDUM IN OPPOSITION TO
                                        )    DEFENDANT'S MOTION FOR
NATHANIEL E. JACKSON,                   )    DISCLOSURE OF PROSECUTOR'S
                                        )    JURY SELECTION DATA
          Defendant.                    )    (Motion No. 70)

The defendant requests the Court to order the Prosecuting Attorney to disclose to the

defendant any information and data compiled on prospective jurors in the instant case. The

State of Ohio opposes this motion for several reasons.

The statutory and case law of Ohio provide that the defendant in a criminal prosecution

is entitled to the statements of the defendant and co-defendants made to police officers, the prior

record of the defendant, reports of examinations and tests, evidence favorable to the defendant,

and in camera inspection of witnesses' statements. The discovery rules do not authorize the

discovery of reports, memorandums, or other internal documents made by the prosecuting

attorney or his agents.

The defense counsel cannot compel the prosecuting attorney' to disclose information he

has with respect to prospective jurors. *United States v. Costello*, (1958 CA2 NY) 255 F.2d 876,

888, *cert. den*. 357 U.S. 937, 2L.ed. 2d. 1551, 78 S.Ct. 1385, *reh. den*, 358 U.S. 858, 3 L.ed.2d

93, 79 S. Ct. 16. In *Costello*, the defendant contended on appeal that the trial was unfair because

during the jury examination, the government had access to information not available to him or

even to the wealthiest defendant. The court rejected this contention and stated that not all

information properly available to the prosecutor must be made available to the defendant. The

court added that district court decisions refusing to permit defendants to inspect F.B.I. reports on prospective jurors were upheld in *Best v. United States* (1950, Cal Mass.) 184 F.2d 131, *cert. den.* 340 U.S. 939 and in *Christoffel v. United States*, 84 App. D.C. 132 171 F.2d 1004 (1948).

Most states, including Ohio, adhere to the rule that the prosecutor's investigatory report on prospective jurors is not discoverable by the defendant. *See: People v. Quicke*, 71 Cal. 2d 502, 455 P.2d 787, 799; *Robertson v. State* (Fla. App.), 262 So. 2d 692; *Commonwealth v. Smith* (Mass. 215 N.E. 2d 897; *Commonwealth v. Foster*, 219 PA Super 127, 280 A.2d 602, 604-605; *Couser v. State*, (Md. App. 1977), 374 A 2d 399, 403. Therefore the Court should deny Defendant's request.

Respectfully Submitted,
STATE OF OHIO, by

_____
DENNIS WATKINS (#0009949)
Trumbull County Prosecuting Attorney

and

_____
CHARLES L. MORROW (#0040575)
Assistant Prosecutor
Trumbull County Prosecutor's Office
160 High Street, NW
3rd Floor Administration Bldg.
Warren, Ohio 44481
(330)-675-2426

## CERTIFICATION

This is to certify that a copy of the foregoing motion was hand delivered to counsel for the Defendant, this March 19, 2002.

_____
CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
Trumbull County, Ohio 44485

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,           )     **CASE NO.**   :01-CR-794

     Plaintiff,        )     **JUDGE:**   **:JOHN M. STUARD**

-vs-             )     **MEMORANDUM IN OPPOSITION TO**
                )     **DEFENDANT'S MOTION FOR**
NATHANIEL E. JACKSON,  )     **DISCLOSURE OF GRAND JURY**
                )     **TRANSCRIPTS**
     Defendant.      )     **Motion No. 19)**

Now comes the State of Ohio, by and through its Prosecuting Attorney, and moves the Court for an order denying Defendant's motion to allow inspection of Grand Jury Proceedings including a transcript of all testimony presented.

Disclosure of testimony before the Grand Jury is controlled by Ohio Rules of Criminal Procedure 6(E). *State v Muenick*, (1985), 26 Ohio App. 3d3. It can only be disclosed at the discretion of the trial court, upon a clear showing that there is a "particularized need" for disclosure which outweighs the need for secrecy. *State v. Greer*, (1981), 66 Ohio St. 2d 139.

Defendant's motion alleges that he has a particularized need for disclosure of the transcripts "because the State procured a capital murder indictment" and to obtain "evidence favorable to the defendant and material to either guilt or punishment". The Defendant is seeking nothing more than to conduct an unlicensed fishing expedition through the grand jury transcripts to see what he can find.

For the reasons thus stated, the State respectfully requests that Defendant's Motion To Inspect Grand Jury Proceedings and request for an evidentiary hearing be denied.

Respectfully Submitted,
STATE OF OHIO, by

_____

DENNIS WATKINS (#0009949)
Trumbull County Prosecuting Attorney

and

_____

CHARLES L. MORROW (#0040575)
Assistant Prosecutor
Trumbull County Prosecutor's Office
160 High Street, NW
3rd Floor Administration Bldg.
Warren, Ohio  44481
(330)-675-2426

## CERTIFICATION

This is to certify that a copy of the foregoing motion was hand delivered to counsel for the Defendant,  this March 19, 2002.

_____

CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
Trumbull County, Ohio 44485

2

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | **CASE NO.** :01-CR-794 |
| | ) | |
| Plaintiff, | ) | **JUDGE:** :JOHN M. STUARD** |
| | ) | |
| -vs- | ) | **MEMORANDUM IN OPPOSITION TO** |
| | ) | **DEFENDANT'S MOTION TO** |
| NATHANIEL E. JACKSON, | ) | **PROHIBIT DEATH QUALIFICATION:** |
| | ) | **OR IN THE ALTERNATIVE TO SEAT** |
| Defendant. | ) | **A SEPARATE JURY DURING THE** |
| | ) | **PENALTY PHASE OF THE TRIAL** |
| | | **(Motion No. 69)** |

Defendant has moved this Court to prohibit death qualification of the jury unless and until the prosecution has shown probable cause that the case will proceed to mitigation.

The main issue is whether a jury selected pursuant to *Witherspoon v. Illinois* (1968), 391 U.S. 510 guidelines is "guilt prone" and therefore not impartial. The Supreme Court has considered this very issue and rejected the contention the defendant has advanced saying:

> The data adduced by the petitioner, however, are too tentative and fragmentary to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt. We simply cannot conclude, either on the basis of the record now before us or as a matter of judicial notice, that the exclusion of jurors opposed to capital punishment results in an unrepresentative jury on the issue of guilt or substantially increases the risk of conviction."
> *Witherspoon*, at pp. 517-518. (Emphasis added).

The Supreme Court reaffirmed that position in *Bumper v. North Carolina* (1968), 391 U.S. 543.

Since *Witherspoon*, numerous courts have considered the "guilty-bias" argument raised by defendant and rejected it. The United States Court of Appeals, First Circuit, rejected the argument in *Spinkellink v. Wainwright* (1978), 578 F.2d 582, rehearing denied, 441 U.S. 937. The court was of the opinion that even after consideration of additional psychological studies

conducted by Bronson, Goldberg, and Jurow, the very studies cited by the defendant, the proof was "far from conclusive." *Id.* at pp. 593-594. Also, see footnote 15 at pp. 593-594. *Hooks v. State of Delaware* (1980), Del. Supv., 416 A.2d 189. Also see, *United States, ex rel. Clarke v. Fike* (7th Cir., 1976), 538 F.2d 750, *cert. denied*, 429 U.S. 1064, 97 S. Ct. 791 (1977); *Craig v. Wyse* (D. Colo. 1974), 373 F. Supp. 1008; *Pandilla v. People of the State of Colorado* (1970), 470 P.2d 846; *People v. Lewis* (Ill. 1981), 430 N.E.2d 1346; *Justus v. Commonwealth* (1981), 222 Va. 677, 283 S.E.2d 905.

Before the enactment of the current death penalty laws, the proposition that a *voir dire* procedure conducted pursuant to *Witherspoon* would result in a prosecution-prone jury was viewed by the Supreme Court of Ohio. *State v. Carver*, 30 Ohio St. 2d 280, 59 Ohio Ops. 2d 343, *cert. denied,* 409 U.S. 1044 (1972). The Ohio court held that such a procedure would not have embedded in the minds of prospective jurors that defendant is guilty and that they will merely be determining the penalty. *Id.*

The Ohio Supreme Court re-examined the issue again and in *State v. Jenkins, supra,* held that:

> "to death qualify a jury prior to the guilt phase of a bifurcated capital prosecution does not deny a capital defendant a trial by an impartial jury.

Moreover, the defendant could only cite one federal district court case to support his contention that death qualified juries are "conviction-pron." *Grigsby v. Maby* (E.D. Ark., 1983), 569 F. Supp. 1273. However, defendant admitted in his memorandum that the United States Supreme Court had overruled that case. *Lockhart v McCree* (1986), 106 S. Ct. 1758.

In accordance with the above, certainly the great weight of the authority follows the rule

2

that the available "scientific" psychological sociological studies are not acceptable testing methods which are determinative of the issue, in Trumbull County, or any place else. Therefore, the contention that death qualified jurors result in a "prosecution-pron," or "guilt-bias" jury cannot be substantiated by psychological and sociological studies as defendant would have this Court believe.

Defendant also claims that persons who can be excluded from the panel under *Witherspoon* constitute a distinctive class in the community. This statement is remarkably bold, as it directly contradicts a United States Supreme Court case which the defendant himself cites. *Lockhart v. McCree, supra*. In that case, the court stated that

> "In our view, groups defined solely in terms of shared attitudes that would prevent or substantially impair members of the group from performing one of their duties as jurors, such as the "*Witherspoon-excludables*" at issue here, are not `distinctive groups' for fair-section purposes." *Lockhart*, at 1765.

Thus, it appears that questioning prospective jurors concerning their attitudes toward the death penalty does not violate the constitutional right to a jury that is drawn from a fair cross-section of the community.

Finally, the guarantee of equal protection means that no person shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances. *Roth v. Public Employees Retirement Board*, 44 Ohio App. 2d 155. To show that death qualifying the jury violates the equal protection clause, the defendant here must show that death penalty juries are more likely to convict defendants than juries in non-death penalty cases. *Fay v. People of the State of New York* (1946), 332 U.S. 261, 67 S. Ct. 1613. Such a showing has not been made by any substantive facts, but rather, merely by

3

inference and flawed logic. It is inconceivable how a jury automatically becomes conviction prone, thereby denying equal protection of the laws, simply by being death qualified during *voir dire*. The jury is presumed impartial unless a showing to the contrary can be advanced. Here, defendant has made no such showing. Therefore, no reasons exists for the Court to fashion any methods which will change the process of death qualifying the jury during *voir dire*.

For the foregoing reasons, the State respectfully requests the Court to overrule defendant's motion.

Respectfully Submitted,
STATE OF OHIO, by

_____
DENNIS WATKINS (#0009949)
Trumbull County Prosecuting Attorney

and

_____
CHARLES L. MORROW (#0040575)
Assistant Prosecutor
Trumbull County Prosecutor's Office
160 High Street, NW
3rd Floor Administration Bldg.
Warren, Ohio 44481
(330)-675-2426

## CERTIFICATION

This is to certify that a copy of the foregoing motion was hand delivered to counsel for the Defendant, this March 19, 2002.

_____
CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
Trumbull County, Ohio 44485

4

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | **CASE NO.    :01-CR-794** |
| | ) | |
| Plaintiff, | ) | **JUDGE:    :JOHN M. STUARD** |
| | ) | |
| -vs- | ) | **S T A T E ' S   R E S P O N S E   T O** |
| | ) | **DEFENDANT'S MOTION TO ALLOW** |
| NATHANIEL E. JACKSON, | ) | **THE DEFENSE TO ARGUE FIRST** |
| | ) | **AND LAST AT PENALTY PHASE** |
| Defendant. | ) | **(Motion No. 71)** |

The defendant states in his motions that the defense should argue last to the jury and during the mitigation phase of the trial. The basis of his argument is that he claims he has the burden of proving sufficient mitigating material to outweigh enough of the aggravating circumstances so that reasonable doubt exists in the minds of the jurors. It is the state's position that the defendant's motion is without merit.

It is clearly stated in R.C 2945.10 (F) that the State, in a criminal case, shall conclude the argument to the jury. Section 2945.10 (F) provides:

> "When the evidence is concluded, unless the case is submitted without argument, the counsel for the state shall commence, the defendant or his counsel follow and the counsel for the state conclude the argument to the jury.

Furthermore, the State of Ohio has the burden of proving that the aggravating circumstances outweigh the mitigating factors. section 2929.03 (D) of the Ohio Revised Code, states:

> "The prosecution shall have the burden of proving, by proof beyond a reasonable doubt, that the aggravating circumstances the defendant was found guilty of committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death."

The defendant, at the second portion of trial, merely has the burden of going forward;

that is, producing evidence of mitigating factors. But even if the defendant should fail to offer or show any evidence of mitigating factors at this stage of the trial it would not necessarily result in the jury recommending the penalty of death. Section 2929.03 (D) of the Ohio Revised Code, provides that the jury shall consider the relevant evidence raised at the trial stage of the proceedings and can recommend a number of sentences other than death.

Unlike the defendant, the State must present a case at this stage of the proceedings, for the State has the burden of proving, beyond a reasonable doubt, that the aggravating circumstances outweigh the mitigating factors, thereby warranting a death sentence. Thus, the burden of proof rests solely upon the State and not the defendant, and thereby affording the State the right to open and close arguments to the jury. *State v Rogers* (1985), 17 Ohio St. 3d 174.

This issue was specifically addressed by the Ohio Supreme Court in *State v. Rogers* (1985), 17 Ohio St. 3d 174 at 183. There the court held:

> "During the sentencing phase of a capital trial the state, having the burden of proving that aggravating circumstances outweigh the mitigating factor, has the right to open and close arguments to the jury."

It is for these reasons that the state respectfully requests that the court overrule the defendant's motion to argue last.

Respectfully Submitted,

*[signature]*

DENNIS WATKINS, (#0009949)
Prosecuting Attorney

2

and

CHARLES L. MORROW (#0040575)
Assistant Prosecutor
Trumbull County Prosecutor's Office
160 High Street, NW
3rd Floor Administration Bldg.
Warren, Ohio  44481
(330)-675-2426

## CERTIFICATION

This is to certify that a copy of the foregoing motion was hand delivered to counsel for the Defendant,  this March 19, 2002.

CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
Trumbull County, Ohio 44485

3

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO.    :01-CR-794 |
| | ) | |
| Plaintiff, | ) | JUDGE:    :JOHN M. STUARD |
| | ) | |
| -vs- | ) | MEMORANDUM IN OPPOSITION TO |
| | ) | DEFENDANT'S MOTION TO INSTRUCT |
| NATHANIEL E. JACKSON, | ) | THE JURY REGARDING PAROLE |
| | ) | (Motion No. 50) |
| Defendant. | ) | |

The defendant requests that the Court instruct the jury regarding parole. The State of

Ohio opposes this motion.

The argument has been heard and rejected by the Ohio Supreme Court on numerous

occasions . In *State v. Goff* (1998), 82 Ohio St.3d 123, 694 N.E. 2d 916, the Court stated: "We

have consistently held that consideration of parole and consecutive or concurrent sentences is

not for the jury's consideration.  See *State v Mills* (1992), 62 Ohio St.3d 357, 374, 582 N.E.2d

972, 987; *State v. Mitts* (1998), 81 Ohio St.3d 223, 229-230, 690 N.E.2d 522, 528-529."

Therefore the Court should deny Defendant's request.

Respectfully Submitted,
STATE OF OHIO, by


_____
DENNIS WATKINS (#0009949)
Trumbull County Prosecuting Attorney

and

_____
CHARLES L. MORROW (#0040575)
Assistant Prosecutor
Trumbull County Prosecutor's Office
160 High Street, NW
3rd Floor Administration Bldg.
Warren, Ohio  44481
(330)-675-2426

## CERTIFICATION

This is to certify that a copy of the foregoing motion was hand delivered to counsel for the Defendant,  this March 20, 2002.

_____
CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
Trumbull County, Ohio 44485

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO.  01-CR-794 |
| | ) | |
|     Plaintiff | ) | JUDGE  JOHN M. STUARD |
| | ) | |
| -vs- | ) | PLAINTIFF'S SUPPLEMENTAL |
| | ) | RESPONSE TO DEFENDANT'S |
| NATHANIEL JACKSON, | ) |  REQUEST FOR DISCOVERY |
| | ) | |
|     Defendant | ) | |

    Now comes the Plaintiff, the State of Ohio, by and through the Prosecuting Attorney of Trumbull County, Ohio, and submits the following Supplemental Discovery pursuant to Rule 16 of the Ohio Rules of Criminal Procedure:

    (1)  Copy of investigative notes by Detective Jeff  Hoolihan regarding the arrest and subsequent interrogation of Defendant, Nathaniel Jackson (3 pages).

                              Respectfully submitted,

                              _____

DENNIS WATKINS
Prosecuting Attorney
Trumbull Co. Prosecutor's Office
160 High Street - 4th Floor
Warren, OH  44481
330-675-2426

                              _____

CHARLES L. MORROW
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High Street - 4th Floor
Warren, OH   44481
330-675-2426

DENNIS WATKINS
PROSECUTING
ATTORNEY
TRUMBULL COUNTY
WARREN, OHIO 44481
TELEPHONE
330-675-2426
FAX (330) 675-2431

<u>CERTIFICATION</u>

I hereby certify that a copy of the foregoing Plaintiff's Supplemental Response to Discovery was mailed this 9th day of April, 2002, to the attorney for the defendant, Attorney Anthony V. Consoldane and James F. Lewis, Ohio Public Defender's Office, 328 Mahoning Avenue, Warren, OH 44483, by regular U.S. mail.

DENNIS WATKINS
Assistant Prosecuting Attorney
Trumbull County, Ohio

CHARLES L. MORROW
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office

DENNIS WATKINS
PROSECUTING
ATTORNEY
TRUMBULL COUNTY
WARREN, OHIO 44481
TELEPHONE
330-675-2426
FAX (330) 675-2431

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )    CASE NO.    :01-CR-794
                                  )
        Plaintiff,                )    JUDGE:    :JOHN M. STUARD
                                  )
-vs-                              )    STATE'S SECOND SUPPLEMENTAL
                                  )    RESPONSE TO DEFENDANT'S
NATHANIEL E. JACKSON,             )    REQUEST FOR DISCOVERY
                                  )
        Defendant.                )

Now comes the Plaintiff, the State of Ohio, by and through the Prosecuting Attorney of

Trumbull County, Ohio, and submits the following in answer to the *Defendant's Request For*

*Discovery* pursuant to Rule 16 of the Ohio Rules of Criminal Procedure:

1.)    Pursuant to Crim. R. 16 (B)(1)(a), the State responds as follows:

        (ii)    Written summaries of statements. The State is providing to Counsel for the

Defendant the following written summaries:

        The State has provided to Counsel for the Defendant part of Dectective Hoolihan's

report, regarding the arrest and subsequent interrogation of the Defendant.  Those three pages

are being resubmitted, bearing Nos. 226-228.

        The Supplemental reports of Officer Paul Monroe bearing the Nos. 229 to 233 are also

being provided, as they contain summaries of statements taken from either the Defendant or the

Co-Defendant.

Respectfully Submitted,
STATE OF OHIO, by

_____

DENNIS WATKINS ( (#0009949)
Trumbull County Proescuting Attorney

and

_____

CHARLES L. MORROW (#0040575)
Assistant Prosecutor
Trumbull County Prosecutor's Office
160 High Street, NW
3rd Floor Administration Bldg.
Warren, Ohio 44481
(330) 675-2426

## CERTIFICATION

This is to certify that a copy of the foregoing *State's Supplemental Response to Defendant's Request for Discovery* was hand delivered to counsel for the Defendant, this April 15, 2002.

_____

CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO.  01-CR-794 |
| | ) | |
| Plaintiff | ) | JUDGE JOHN M. STUARD |
| | ) | |
| -vs- | ) | MOTION FOR AN ORDER |
| | ) | TO TAKE  HANDWRITING |
| NATHANIEL E. JACKSON, | ) | EXEMPLARS |
| | ) | |
| Defendant | ) | |

    Now comes the Plaintiff, the State of Ohio, by and through the Prosecuting Attorney of Trumbull County, Ohio, and moves that the Court order the Defendant, Nathaniel E. Jackson, to submit a handwriting exemplar in this case to be used solely for identification purposes.

DENNIS WATKINS
Trumbull County Prosecutor
160 High Street, 4th Floor
Warren, OH  44481
330-675-2426

CHARLES L/ MORROW
Assistant Trumbull County Prosecutor
160 High Street, 4th Floor
Warren, OH  44481
330-675-2426

DENNIS WATKINS
PROSECUTING
ATTORNEY
TRUMBULL COUNTY
WARREN, OHIO 44481
TELEPHONE
330-675-2426
FAX (330) 675-2431

## MEMORANDUM IN SUPPORT OF MOTION

The Defendant, in the above captioned case, has been indicted for Aggravated Murder, Aggravated Burglary, and Aggravated Robbery, and as part of the State's evidence are letters allegedly written by the Defendant to the Co-Defendant Donna Roberts. The State further believes these letters are relevant and material to the aforementioned charges and will be offered as evidence at trial. In order to develop additional foundational evidence and ascertain the truth regarding the letters, handwriting exemplars are needed from the Defendant.

Under a line of cases from the United States Supreme Court, it is clear that handwriting exemplars are not protected under the Fourth Amendment or Fifth Amendment proscriptions. In U.S. v Mara (1973), 410 U.S. 19, 35 Led (2d) 99, the court stated: "Handwriting like speech, is repeatly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person's script that there is in the tone of his voice." In accord, the nation's highest court again in U.S. v Euge (1980) 444 U.S. 707, 718, 63 Led(2d) 141 said: "Compulsion of handwriting exemplars in neither a search or seizure subject to Fourth Amendment protections." (See also: Gilbert v. California (1967) 388 U.S. 263, 267 holding that there is no right to an attorney at taking of handwriting exemplars).

In Ohio, the State Supreme Court has held that the taking of a handwriting exemplar does not violate the Fifth Amendment. State v. Kiser (1968) 13 Ohio St. 2d 126. Also a trial court may order a defendant to give handwriting exemplars and a refusal to give them would be punishable by contempt. State v. Flinn (1983), 7 Ohio App 3d 294. (See also: Hawk v. Superior Court (Cal. App 1974) 116 Cal. Rptr 713, 718, cert. denied, 421 U.S. 1012.

Wherefore, for the above-given reasons and law, the State respectfully requests that the Court Order the Defendant to give handwriting exemplars at the Trumbull County Jail to

DENNIS WATKINS
PROSECUTING
ATTORNEY
TRUMBULL COUNTY
WARREN, OHIO 44481
TELEPHONE
330-675-2426
FAX (330) 675-2431

Detective Sgt. Peter Pizullo of the Trumbull County Sheriff's Department or some other officer of the Sheriff's Department or Howland Township Police Department designated by said Peter Pizullo.

Respectfully submitted,

*[signature]*

DENNIS WATKINS
Trumbull County Prosecutor
160 High Street, 4th Floor
Warren, OH  44481
330-675-2426

*[signature]*

CHARLES L. MORROW
Assistant Trumbull County Prosecutor
160 High Street, 4th Floor
Warren, OH  44481
330-675-2426

## CERTIFICATION

I hereby certify that a copy of the State's Motion For Order To Take Handwriting Exemplars was hand delivered to the counsel for the Defendant, Attorney Anthony V. Consoldane and Attorney James F. Lewis, this 17th day of April, 2002.

*[signature]*

DENNIS WATKINS
Trumbull County Prosecutor

*[signature]*

CHARLES L. MORROW
Assistant Trumbull County Prosecutor

DENNIS WATKINS
PROSECUTING
ATTORNEY
TRUMBULL COUNTY
WARREN, OHIO 44481
TELEPHONE
330-675-2426
FAX (330) 675-2431

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | **CASE NO.** :01-CR-794 |
| | ) | |
| Plaintiff, | ) | **JUDGE:** :JOHN M. STUARD |
| | ) | |
| -vs- | ) | **STATE'S THIRD SUPPLEMENTAL** |
| | ) | **RESPONSE TO DEFENDANT'S** |
| NATHANIEL E. JACKSON, | ) | **REQUEST FOR DISCOVERY** |
| | ) | |
| Defendant. | ) | |

Now comes the Plaintiff, the State of Ohio, by and through the Prosecuting Attorney of Trumbull County, Ohio, and submits the following in answer to the *Defendant's Request For Discovery* pursuant to Rule 16 of the Ohio Rules of Criminal Procedure:

1.)     Pursuant to Crim. R. 16 (B)(1)(a), the State responds as follows:

(ii)     Written summaries of statements: The State is providing to Counsel for the Defendant the following written summaries:

The Supplemental reports of Officer Paul Monroe bearing the Nos. 234 to 235 are also being provided, as they contain summaries of statements taken from either the Defendant or the Co-Defendant.

2.)     Pursuant to Crim. R. 16 (B)(1)(d), the State responds as follows: Copies of any reports, examinations and/or tests or experiments performed are attached hereto as exhibit 236-246.

3.)     Pursuant to Crim. R. 16 (B)(1)(e), the State intends to call the following witnesses, whose criminal record, if any, is as follows:

In addition to the witness list previously provided the State has provided to counsel for the Defendant a supplemental witness list numbered 247.

Respectfully Submitted,
STATE OF OHIO, by

_____

DENNIS WATKINS ( (#0009949)
Trumbull County Proescuting Attorney


and

_____

CHARLES L. MORROW (#0040575)
Assistant Prosecutor
Trumbull County Prosecutor's Office
160 High Street, NW
3rd Floor Administration Bldg.
Warren, Ohio  44481
(330)-675-2426


## CERTIFICATION

This is to certify that a copy of the foregoing *State's Third Supplemental Response to Defendant's Request for Discovery* was hand delivered to counsel for the Defendant, this April 18, 2002.

_____

CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. 01-CR-794 |
| | ) | |
| Plaintiff | ) | JUDGE JOHN M. STUARD |
| | ) | |
| -vs- | ) | |
| | ) | |
| NATHANIEL E. JACKSON, | ) | JUDGEMENT ENTRY |
| | ) | ORDER |
| Defendant | ) | |

The Court having considered the State's Motion For An Order To Take Handwriting Exemplars from the Defendant, and arguments from counsel for the parties, finds that the motion is proper and well taken.

Therefore, it is hereby ORDERED, ADJUDGED and DECREED that the Defendant, Nathaniel E. Jackson, forthwith at the Trumbull County Jail, provide handwriting exemplars to Detective Sgt. Peter Pizullo of the Trumbull County Sheriff's Department or some other officer of the Sheriff's Department or Howland Police Department designated by Sgt. Pizullo.

__4/23/02__
DATE

HONORABLE  JOHN M. STUARD
JUDGE, COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

4/24/02 - copies
sent to:
Pros.
a. Consoldene

## INSTRUCTIONS TO THE CLERK OF COURTS

The Clerk of Courts is hereby ordered to serve copies upon Sgt. Peter Pizullo of the Trumbull County Sheriff's Department, 150 High Street, Warren, Ohio 44481; Trumbull County Prosecutor Dennis Watkins, 160 High Street, Warren, Ohio 44481; and Attorneys for the Defendant, Attorney James F. Lewis and Anthony V. Consoldane, Ohio Public Defender's Officer, 328 Mahoning Avenue, Warren, Ohio 44483. issued 4/24/02

cc
Pros

TO THE CLERK OF COURTS: YOU ARE ORDERED TO SERVE
COPIES OF THIS JUDGMENT UPON ALL COUNSEL OF RECORD
OR UPON THE PARTIES WHO ARE NOT REPRESENTED FORTH-
WITH BY ORDINARY MAIL.
JUDGE

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )        CASE NO.    :01-CR-794
                                  )
            Plaintiff,            )        JUDGE:      :JOHN M. STUARD
                                  )
-vs-                              )        STATE'S FOURTH
                                  )        SUPPLEMENTAL RESPONSE TO
NATHANIEL E. JACKSON,             )        DEFENDANT'S REQUEST FOR
                                  )        DISCOVERY
            Defendant.            )

        Now comes the Plaintiff, the State of Ohio, by and through the Prosecuting Attorney of

Trumbull County, Ohio, and submits the following in answer to the *Defendant's Request For*

*Discovery* pursuant to Rule 16 of the Ohio Rules of Criminal Procedure:

2.)     Pursuant to Crim. R. 16 (B)(1)(d), the State responds as follows: Copies of the report

of Det. Sgt. Peter J. Pizzulo, dated Wednesday, May 01,2002 has provided to counsel for the

Defendant as Exhibit number 248 -249.

                                          Respectfully Submitted,
                                          STATE OF OHIO, by 


                                          _____
                                          DENNIS WATKINS ( (#0009949)
                                          Trumbull County Proescuting Attorney


                                          and


                                          _____
                                          CHARLES L. MORROW (#0040575)
                                          Assistant Prosecutor
                                          Trumbull County Prosecutor's Office
                                          160 High Street, NW
                                          3rd Floor Administration Bldg.
                                          Warren, Ohio  44481
                                          (330)-675-2426

## CERTIFICATION

This is to certify that a copy of the foregoing *State's Fourth Supplemental Response to Defendant's Request for Discovery* was hand delivered to counsel for the Defendant, this May 3, 2002.

CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                )        CASE NO.    :01-CR-794
                              )
        Plaintiff,            )        JUDGE JOHN M. STUARD
                              )
-vs-                          )        STATE BRIEF IN OPPOSITION TO
                              )        DEFENDANT'S MOTION TO
NATHANIEL E. JACKSON,         )        SUPPRESS
                              )
        Defendant.            )

This matter came before the Court on the Defendant's *Motion to Suppress* on April 17,

2002. Specifically, the Defendant is seeking to suppress "all statements that the Defendant gave

to law enforcement authorities," as well as [a]nything derivative from that," also known as fruits

from the poisonous tree. (T.P. 4-5) The Defendant does not challenge the lawfulness of the

warrant or the probable cause presented in the Affidavit justifying the issuance of the arrest

warrant.

During the hearing, the State offered the testimony of Detective Jeff Hoolihan, of the

Warren Police Department, and submitted into evidence a total of five (5) exhibits, including

a video taped statement (Exhibit "5") and the transcript thereof (Exhibit "4"). The Defense

called Detective Sargent Paul Monroe of the Howland Township Police Department, along with

the Defendant himself.

The State does not contest that the Defendant's *Motion to Suppress* was timely filed, and

agrees that the State bears the burden of establishing, by a preponderance of the evidence, that

the statements made by the Defendant are admissible.  The court is to make its determinations

Page -1-

of fact based upon the totality of the circumstances surrounding the questioning or interrogation. *Fare v. Michael C.* (1979), 442 U.S. 707. The preponderance of the evidence standard applies when the voluntariness of a confession or compliance with *Miranda* requirements is challenged. *Lego v. Twomey* (1972), 404 U.S. 477; *State v. Beam* (1991), 77 Ohio App.3d 200, appeal dismissed by 62 Ohio St.3d 1500.

The trial court, on a motion to suppress, is the trier of fact, resolves all questions of fact and determines the weight to be given the evidence and the credibility to be accorded to each witness. *State* v. *Fanning* (1982), 1 Ohio St.3d 19.

Factually, this matter arose from the murder of Robert Fingerhut, which had occurred on December 12, 2001, and in Howland Township, Ohio. (T.P. 11-12.). On December 11, 2001, a warrant had been issued by the Trumbull County Court of Common Pleas for the arrest of Nathaniel Jackson for his involvement in the aggravated murder of Robert Fingerhut.

Officers learned of the Defendant's whereabouts from the Co-Defendant, Donna Roberts, who provided police with a telephone number and an address where the Defendant was hiding. On December 21, 2001, at approximately 12:10 a.m., officers from the Mahoning Valley Crimes Task Force, Trumbull County Sheriff's Office, Howland Township Police Department and the Warren, without any shots being fired or the use of force, effectuated an arrest of the Defendant at 791 Wirt Street, Youngstown, Ohio. The Defendant was handcuffed, advised of his *Miranda* rights, and placed into the back of a Youngstown Police vehicle. (T.P. 19-23). The Defendant was advised that he had been arrested pursuant to an arrest warrant for aggravated murder. He was then placed into a Trumbull County Sheriff's vehicle and transported to the Trumbull County Jail. (T.P. 24.)

Detective Hoolihan of the Warren City Police Department was aware that the Defendant had a criminal record, including repeat occurrences with law enforcement, including having been "just released from a prison facility." (T.P. 12-13.) Detective Hoolihan was of the opinion that the Defendant was able to understand Detective Hoolihan's conversation and respond. He did not smell of alcohol, and Detective Hoolihan did not notice anything about the Defendant was under any disability. (T.P. 25.)

After being advised of his *Miranda* rights, including his right to counsel, the Defendant made an unsolicited statement to Detective Hoolihan.  Detective Hoolihan testified "He volunteered this information after his *Miranda* warning.  The Defendant stated "man, I did not kill anybody, man,***." (T.P. 26-27.) Detective Hoolihan summarized this conversation in his investigative notes, Exhibit 1.

After he arrived at the Trumbull County Sheriff's Department, he was placed into the weight room for approximately one hour.  During this time, the Defendant did not ask for any attorney, and he was polite, very cooperative, very alert, and did not have any complaints.  He did not appear to be nervous or intimidated as a result of being in police custody. (T.P. 29–32.) The Defendant was offered something to drink, given coffee and cigarettes. (T.P. 33-34.)

At approximately 1:45 a.m., the Defendant was then interviewed by Detective Hoolihan and Detective Sargent. Paul Monroe of the Howland Township Police Department.  This statement was summarized in State's exhibit No. 2, which was identified by Detective Hoolihan. (T.P. 37.) Then at approximately 2:13 a.m., the Defendant was provided with a *Miranda* form, Exhibit 3, which was read by Detective Sargent. Monroe to the Defendant. (T.P. 40-41.) As Detective Monroe read the form to the Defendant, including each of his Constitutional Rights,

the Defendant initialed each line, before signing the document which indicated " I waive my rights and agree to make a statement." This was recorded on video tape. (T.P. 42-3.)

The Defendant gave a statement to Detective Hoolihan and Detective Sargent. Monroe, which was also recorded on video tape, Exhibit 5., and which was transcribed in Exhibit 4.  A review of the video tape reveals that the Defendant,  freely and voluntarily executed the *Miranda* rights forms.  Nothing on the tape reveals that the Defendant was in any manner coerced or threatened into giving the statement.  The tape further shows that the  Defendant did not, any time, unequivocally ask that the questioning cease or that he be afforded an attorney.

The Defendant claims that when he was initially questioned, he was not advised of his *Miranda* rights, that he informed Detective Hoolihan that he wanted an attorney, and that he did not want to answer anymore questions.  He also states that he did not execute his rights waiver until the video taped statement was about over.  (T.P. 139.)  However, such statements are not supported by the evidence.  Indeed the evidence clearly shows that the Defendant was advised of his *Miranda* rights at the onset of the video taped statement rather then the end.  Furthermore, the testimony of Detective Hoolihan is more persuasive.

There was no evidence, other than the Defendant's own self serving statement that the Defendant was under the influence of any drugs or alcohol which would cause him not be understand the colloquy between Detective Hoolihan and him regarding his constitutional rights.

The defendant, at approximately 12:10 a.m. of the December 21, 2001, immediately upon his arrest was given an oral *Miranda* warning.  The defendant responded and stated that "man I did not kill anybody."  He further inquired whether had the right to an attorney. Detective told him yes. Jackson continued to talk telling the officer how he was on the phone

when he saw all the police cruisers.  Clearly, Det. Hoolihan's version of the events showed that the defendant was given a sufficient oral *Miranda* warning and that the defendant knowingly and voluntarily made a statement to Det. Hoolihan which was exculpatory in nature.

The defendant challenged the action of Det. Hoolihan for several reasons including the lack of his having an arrest warrant to serve on the defendant and his failure to give a written *Miranda* warning to the defendant.

Crim. R.  4(D)(3) clearly establishes that a law enforcement officer "need not have the warrant in the officer's possession at the time of the arrest."  Also the law does not require that Det. Hoolihan secure a written waiver of defendant's *Miranda* rights.  In *State v. Scott* (1980), 61 Ohio St.2d 155, the Ohio Supreme Court held, in paragraph one of the syllabus:

> "An express written or oral statement of waiver of the right to remain silent or the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver.  <u>The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in</u> *Miranda v. Arizona*,  384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (*North Carolina v. Butler*, 441 U.S.369, 99 S. Ct. 1755, 60 L. Ed.2d 286, 292, followed) (Emphasis     added).  See also: *Connecticut v. Barrett* (1987), 479 U.S. 523."

Moreover, the defendant's statement following his arrest in the police cruiser was voluntarily given without incriminating questioning by Det. Hoolihan.  Further even if the narrative between Hoolihan and defendant were construed as an interrogation, the testimony of Det. Hoolihan showed that following his *Miranda* warning the defendant gave a knowing and voluntary statement under the "totality of circumstances test."  *State v. Eley*  (1966), 77 Ohio St.3d 174, 178.  Indeed, the test regarding the sufficiency of a *Miranda* warning is substantial compliance.  *Duckworth v. Eagan* (1989), 492 U.S. 195.

Page -5-

Under the totality of the circumstances test the reviewing court should consider: (1) the age, mentality, and prior criminal experience of the individual; (2) the length, intensity, and frequency of the interrogation; (3) the existence of physical deprivation or mistreatment; and (4) the existence of threat or inducement.  See: *State v. Edwards* (1976), 49 Ohio St.2d 31, 40.

Though the defendant testified at the Suppression Hearing in this matter that he did not receive a *Miranda* warning until the end of his interview, Exhibit No. 4, and the transcript of the proceedings, Exhibit No. 4, show otherwise.  Furthermore, the defendant admitted he had a great experience with police having been arrested numerous times.

Regarding the defendant's conversation with police officers in the police cruiser in Youngstown and at the Trumbull County Sheriff's Department, initially they were not recorded. The State asserts that for the same reasons supporting the admissibility of the police cruiser conversation, the first oral statement at the Sheriff's Department to Dets. Hoolihan and Monroe is also admissible.  See: *State v. Eley supra*.

It is important to note that the law did not require the police officers to give another a *Miranda* warning since Det. Hoolihan had already given a rights warning at 12:10 a.m. Approximately one and one-half (1 ½) hours had past before the interrogation session began at the Sheriff's Department.  In *State v. Cooey* (1989), 46 Ohio St.3d 20, certiorari denied, 499 U.S. 954 (1991), the Ohio Supreme Court found that under the totality of the circumstances the initial warnings never became too stale so as to fail to protect the defendant from the subsequent custodial interrogation sessions.  See also: *State v. Brewer* (1990), 48 Ohio St.3d 50, certiorari denied 498 U.S. 881 (1990) and *State v. Dixon* (Lucas 1995), 101 Ohio App. 3d 552.

Because the defendant testified at the suppression hearing that he was not given any

*Miranda* warning upon his arrest by Det. Hoolihan, there is total contradiction between his sworn version and Hoolihan's sworn testimony. In short, the Court must decide who to believe. If Hoolihan did not give the defendant his constitutional rights under *Miranda* then, the statement in the car and the first statement at the Sheriff's Department would be inadmissible. *Oregon v. Elstad* (1985), 470 U.S. 298. On the other hand, if the Court would believe Det. Hoolihan's testimony and conclude the warning was properly given then the statements would be admissible. The State bears the burden of proving the admissibility of any the defendant's statements made to law enforcement officials in this matter. This Court will make its determinations of fact based upon the totality of the circumstances surrounding the questioning or interrogation. *Fare v. Michael C* (1979), 442 U.S. 707. The preponderance of the evidence standard applies when the voluntariness of a confession or compliance with *Miranda* requirements is challenged. *Lego v Twomey* (1972), 404 U.S. 477. The trial court, on a motion to suppress, is the trier of fact and resolves all questions of fact and determines the weight of the evidence, including the credibility of witnesses. *State v. Farnning* (1992), 1 Ohio St.3d 19.

The video tape transcript of the conversation between Detectives Hoolihan and Monroe and the defendant on December 21, 2001 at 2:13 a.m. at the Trumbull County Sheriff's Dept. reads:

Det. Hoolihan:   Not too smokey in here, is it?

JACKSON:   No, huh, uh.

Det. Hoolihan:   You want the door cracked?

JACKSON:   It's alright.

Det. Hoolihan:   You got enough coffee and everything?

JACKSON:      (No response)

Det. Monroe:  It's, uh, December 21st, the year 2001, at 2:13 a.m.  OK, I'm gonna read your rights, Nate.  Before we ask you any questions, you must understand your rights.  You have the right to remain silent.  Anything you say can be used against you in court.  You have the right to talk to a lawyer for advise before we ask you any questions, and to have him with you during questioning. If you cannot afford a lawyer, one will be appointed for you before questioning, if you wish.  If you decide to answer questions now, without a lawyer present, you still have the right to stop answering at any time until you have talked to a lawyer.  I've read this statement, and my Constitutional Rights, and understand what my Rights are.  I'm willing to make a statement and to answer questions.  I do not want a lawyer at this time.  I understand and know what I am doing. No promises or threats have been made or used against me; no pressure, coercion of any kind has been used against me.  I, therefore, waive my Rights, and agree to make a statement.  Do you understand that, Nate?

JACKSON:      Yeah.

Furthermore, the defendant was then asked to initial the lines on the rights form which signified that the rights were understood by the defendant.  The video tape (Exhibit No. 4) showed not only that the defendant was given his rights and understood them, it portrayed him anxiously wanting to tell the officers that he did not mean to kill the victim.  Specifically, the Video Tape Transcript reads at pages 1-2:

Det. Monroe:  Could you look this over?  Put your initials on each one of these lines, sign it down here.  Make some room here...At the end of each little line here, put your initials.  That means the form was read and showing that you understand it, okay?

JACKSON:      Uh-huh...

Det. Hoolihan:  And I need your signature here.  You left-handed or right-handed?

JACKSON:      Left-handed.

Det. Hoolihan:   Okay.

JACKSON:   And, I didn't mean to do this shit, man...I really didn't mean to do that shit, man.

Det. Hoolihan:   You have any questions regarding your Rights?

JACKSON:   I just didn't mean to do it, man.

Det. Hoolihan:   Okay.

JACKSON:   I didn't, man; I'm sure I didn't, man.  Sorry, man.

After waiving his rights and volunteering to the detectives that he "didn't mean to do it" (Trans. p. 2), the defendant hesitated and in part asserted; "<u>I told you, I told you...I don't even like talking about it...you know what I'm saying, discuss no more about it, man, you, cause it ain't gonna, you know, it ain's gonna to bring, ain't gonna bring the man back.</u>"  (Emphasis added)

Det. Monroe then asked the defendant to go over the events that occurred on December 11, 2001.  (It is important to note that the defendant was hesitant to talk at that time because he had already told his story-i.e. "I told you, I told you."  In short the defendant, prior to turning on the video recording, had given his version of the events and was reluctant to give it again.)

The defendant continued at pp. 2-3:

JACKSON:   It's over, man, you know what I'm saying; I say what I had to say, man.  You know what I'm saying; that's it, man.  Anything else, man, you know, we just, man, you know, argue that, you know what I'm saying, whatever my attorney be, man, you know what I'm saying, ma, you know, right know, man, I'm just saying, you know, I mean, I ain't, I ain't fully...

Det. Monroe:   I know...

JACKSON:   you know what I'm saying; I'm fucked up, man, you know?

Det. Monroe:    Alright, I know it's tough for you. Could you, now that we got the camera rolling, could you just talk about this with me one more time, we got to clear it up, alright. This is your side. Robert picks you up, right?

JACKSON:    Uh huh.

Det. Monroe:    Okay, where's he pick you up at?

JACKSON:    Down at, by C-Staples.

Det. Monroe:    Oh, C-Staples? Okay...

JACKSON:    Yeah.

Det. Monroe:    I thought you were talking about another place.

JACKSON:    No, C-Staples is like a little eatery, man.

Obviously, the defendant, who seconds before had waived his constitutional rights under *Miranda* and was volunteering to officers that he did not mean to do it, was being ambiguous or equivocal with his responses. In one breath he says he didn't mean to kill the victim and in the next breath he says "I told you" and "I don't even like talking about it." He was not clearly and unequivocally asserting that he did not want to talk to the officers anymore or that he specifically wanted an attorney. In fact when Det. Monroe (on page 3 of the Transcript) asked: "<u>Could you, now that we got the camera rolling, could you just talk about this with me one more time, we got to clear it up, alright. This is your side.</u> Robert picks you up, right?" the defendant began to talk and freely repeated what he had told the officers earlier. (Emphasis added)

The State would cite *State v. George Foster* (Dec. 21, 2001), Trumbull App. No. 2000-T-0033, unreported, where the Eleventh District Court of Appeals affirmed the trial court's denial of defendant's motion to suppress statements because he had asked "twice if could go home and once whether he could have an attorney present at questioning." At one point during

Page -10-

the interrogation Foster had asked the interrogating detective, "Well, can I have a lawyer present?" The detective replied "If that's what you want, you know. It's just that I'm not gonna go into anything we haven't already talked about." Foster replied "OK."

This was similar to the situation the defendant faced when Det. Monroe said "Could you, now that we got the camera rolling, could you just talk about this with me one more time..." There is case law dealing with the ambiguous or equivocal reference to an attorney.

In *Davis v. U.S.* (1994), 114 S.Ct. 2350, the defendant waived his rights to remains silent and to counsel, both orally and in writing. About one and one-half hours into the interview, he said "Maybe I should talk to a lawyer." *Id.* at 2353. The U.S. Supreme Court stated:

> "The right to counsel established in *Miranda* was one of a "series of recommended 'procedural safeguards'...[that] were not themselves rights protected by the constitution but were instead measures to insure that the right against compulsory self incrimination was protected." If a suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him. But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation. This "second layer of prophylaxis for the <u>Miranda</u> right to counsel," is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights."*Id.* at 2354-2355 (citations omitted).

The *Davis* court went on to state:

> "The applicability of the "'rigid' prophylactic rule" of *Edwards* requires courts to "determine whether the accused *actually invoked* his right to counsel." To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. Invocation of the *Miranda* right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be involving the right to counsel, our precedents do not require the cessation of questioning." *Id.* at 2355 (citations omitted).

The *Davis* court stated that:

> "Rather, the suspect must unambiguously request counsel ***Although a suspect need not "speak with the discrimination of an Oxford don," he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards* does not require that the officers stop questioning the suspect.

" *Id.* (citations omitted).

The *Davis* court went on to hold that "after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney." *Id.* at 2356. Furthermore, the Court declined to hold that officers ask clarifying questions of a suspect if the suspect makes an ambiguous or equivocal statement regarding counsel. Id.

In *State v. Henness* (1997), 79 Ohio St.3d 53, the Ohio Supreme Court followed *Davis* when it held that the defendant's statement "I think I need a lawyer because if I tell everything I know, how do I know I'm not going to wind up with a complicity charge?" was just as ambiguous as the statement made by the defendant in *Davis*. *Id.* at 63.

In *State v. Salinas* (Ohio App. 11 Dist. 1997), 124 Ohio App.3d379,the Eleventh District Court of Appeals found the defendant's statement "Maybe I want a lawyer, maybe I should talk to a lawyer," to parrot the statement made by the defendant in *Davis* so as to render it to ambiguous to invoke the right to counsel. Id. at 386-387. See also: *State v. Wilkerson*, No. 80 AP-295 (10TH Dist. Ct. App. Franklin, 12-31-80).

After responding affirmatively to Det. Monroe's request to tell his story on video tape one more time, the video recording demonstrates in a clear way that the defendant is freely and voluntarily giving a statement. In fact, many of his answers to questioning are very lengthy. Additionally having a video tape reproduction of the interrogation of the defendant on December 21st proves that the concerns of *Miranda* and its progeny of decisions to protect helpless persons from ruthless tactics of unscrupulous or overbearing police officers do not exist in this case. The defendant is definitely in control of his actions and words.

After his initial concern about giving a video taped account, the defendant talked at length for approximately 40 minutes before anything of legal significance occurred. At that point (Transcript p. 29) the following took place:

Det. Hoolihan:   Okay, but then she goes to Walgreens and brings the        stuff

Page -12-

to the room?

JACKSON:       (Mumbles)...I, you know, I, I, I told you, you know what I'm
saying, but what I had to say, man, I mean, I mean, I can't just sit
here, you know what I'm saying, I mean, just, keep on, you know
what I'm saying, backtracking, I mean, I don't even want to talk
about it no more, man.  I'm, I'm, I'm through with it, man, just,
man, you know what I mean, police, you know, I mean, I, I
talked to a lawyer or something, man, you know what I mean,
'cause I, I mean, I ain't got time to just, just keep on, over and
over, man, I'm, I'm through, man, I'm through, man, you know
what I'm saying.  I say, I mean, I, I ain't mean to do it, I'm sorry
I did it, you know what I'm saying, I mean, but, I was left, I had
no choice, man.  And that's it.  End of discussion, man.

Det. Monroe:    Anything else you want to say?

JACKSON:       (Inaudible)...all I got to say, man, I didn't mean to do it, man.  I
mean, I mean, I'm sorry it happened.

Det. Monroe:    Nate, uh, these guys found a pair of gloves over at Shelia's
house.  Do you know anything about those?

JACKSON:       Nah...

Det. Monroe:    The pair of gloves got a hole in the finger.  Those yours?

JACKSON:       Nah.

Det. Monroe:    Got a hole in this finger.  Same one that you got shot in.  Did you
have those on when you got shot?

JACKSON:       I don't remember anything about doing that, you know what I'm
saying.

Det. Monroe:    You don't know anything about those gloves?

JACKSON:       (Mumble)...

Det. Monroe:    Is your blood on 'em?

JACKSON:       Shit, man.  Why should my blood be on them?

Det. Monroe:    Well, if they're, if they're your gloves, and you got shot while
you were wearing them, then blood would be on them, right?

JACKSON:       (No response)

Det. Hoolihan:  They would be powdery, you know, there would be gun, gunshot
residue on the glove, too.

Page -13-

| | |
|---|---|
| JACKSON: | (No response) |
| Det. Monroe: | Did you take the pot back off of Robert after you shot him? |
| JACKSON: | Man, I don't... |
| Det. Monroe: | Or did you leave it on him? |
| JACKSON: | Fucked up and threw it. it was disgusting man, you know what I'm saying, I mean... |
| Det. Monroe: | Well, there's, there's more here that we didn't get to... |
| JACKSON: | We, we just sum it up like I said, man, when, when I talk to my lawyer, man, you know what I'm saying. Other than that, man, you know, I mean... |

Again the defendant hesitates for a moment and continues to talk to officers. (See Trans. pp. 30-31). It is the State's position that the defendant when viewing the totality of questioning and the defendant's attitude or demeanor is not unambiguously requesting counsel as required by *Davis, supra.* In fact, he just keeps talking rather than invoking his right to counsel or right to remain silent. See *State v. Davis* (1997&, 80 Ohio St.3d 311,320, holding that a waiver to the right to remain silent can be inferred when a suspect initiates conversation with the interrogating officer.

Assuming however the Court would find that the defendant was at this time (i.e. page 29 of Transcript) invoking his right to counsel under the facts then the State would argue that the two oral statements and the video taped statement up to page 29 would be deemed proper and admissible (and the remainder i.e. bottom of page 29 to 38 would be ordered redacted from the tape).

However, to reiterate, the State believes the actual video tape establishes that the Defendant did not invoke his right to remain silent or his right to counsel. Rather, the Defendant, when asked for clarification by the officer, continued to talk to the officer. Importantly, the Defendant chose to speak on video tape for only one (1) hour. The total time that the Defendant was in police custody was approximately three (3) hours. He was never

mistreated or denied comforts such as cigarettes or something to drink. Most significantly, his final minutes with officers were memorialized on video tape. Lastly, when the Defendant decided to end the conversation, he did so. It was apparent that the Defendant was in control of the decision making process of when and what to say. In the end - at page 38 of the transcripts- the words and body language led to him for the first time to invoke his constitutional right to stop questioning, Detective Hoolihan said to the Defendant: "Alright, you want to stop, then? The Defendant replied: "Yeah," and the questioning stopped.

Wherefore the State of Ohio respectfully requests that the Defendant's *Motion to Suppress* is denied.

Respectfully Submitted,
STATE OF OHIO, by

DENNIS WATKINS (#0009949)
Trumbull County Prosecuting Attorney

and

CHARLES L. MORROW (#0040575)
Assistant Prosecutor
Trumbull County Prosecutor's Office
160 High Street, NW
3rd Floor Administration Bldg.
Warren, Ohio 44481
(330)-675-2426

## CERTIFICATION

This is to certify that a copy of the foregoing *State's Response to Defendant's Request for Bill of Particulars* was mailed to counsel for the Defendant, this May 31, 2002.

CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
Trumbull County, Ohio 44485

## IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | **CASE NO.**   :01-CR-794 |
| | ) | |
| Plaintiff, | ) | **JUDGE:**    :JOHN M. STUARD |
| | ) | |
| -vs- | ) | **STATE'S FIFTH SUPPLEMENTAL** |
| | ) | **RESPONSE TO DEFENDANT'S** |
| NATHANIEL E. JACKSON, | ) | **REQUEST FOR DISCOVERY** |
| | ) | |
| Defendant. | ) | |

Now comes the Plaintiff, the State of Ohio, by and through the Prosecuting Attorney of Trumbull County, Ohio, and submits the following in answer to the *Defendant's Request For Discovery* pursuant to Rule 16 of the Ohio Rules of Criminal Procedure:

1.)     Pursuant to Crim. R. 16 (B)(1)(d), the State responds as follows: The state has provided copies of the following reports to Counsel for the Defendant:

Report of D. Steven Greene dated May 29, 2002, numbered 250.

Property Control form, Dated April 17, 2002, numbered 251-252.

2.)     Pursuant to Crim. R. 16 (B)(1)(e), the State intends to call the following witnesses, whose criminal record, if any, is as follows:

The State is providing to counsel for the Defendant a supplemental witness list, numbered 253.

Respectfully Submitted,
STATE OF OHIO, by

DENNIS WATKINS ( (#0009949)
Trumbull County Prosecuting Attorney

and

CHARLES L. MORROW (#0040575)
Assistant Prosecutor
Trumbull County Prosecutor's Office
160 High Street, NW
3rd Floor Administration Bldg.
Warren, Ohio 44481
(330)-675-2426

## CERTIFICATION

This is to certify that a copy of the foregoing *State's Fourth Supplemental Response to Defendant's Request for Discovery* was delivered to counsel for the Defendant, this July 29, 2002.

CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO.:  01-CR-794 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN STUARD |
| | ) | |
| v. | ) | |
| | ) | |
| NATHANIEL JACKSON, | ) | NOTICE OF REQUEST |
| | ) | FOR SPECIFIC DISCOVERY |
| Defendant. | ) | |

Now comes the Defendant, Nathaniel Jackson, by and through his counsel,
Attorney Anthony V. Consoldane and Attorney James F. Lewis, of the Trumbull County
Branch of the Ohio Public Defender's Office, and hereby requests of the Court an Order
directed to the Plaintiff, State of Ohio, by and through the Prosecuting Attorney of
Trumbull County, to provide to the undersigned, pursuant to Rule 16 of the Ohio Rules of
Criminal Procedure, the expert opinions to be rendered by Dr. Humphrey Germaniuk,
M.D., Forensic Pathologist, who conducted the autopsy on Robert S. Fingerhut and will be
called as a witness by the Plaintiff, State of Ohio.  Defendant would further state as
follows:

1.  Dr. Humphrey D. Germaniuk, M.D., Forensic Pathologist, conducted the
    autopsy on Robert S. Fingerhut, case number 01-200 and submitted his
    report to the Trumbull County Coroner's Office, which in turn, was
    submitted to the undersigned by the Trumbull County Prosecutor's Office.
    The autopsy report contains the medical findings, along with radiology
    reports, toxicology report, microscopic examination and various diagrams
    depicting the location and projectory of projectiles referred to in the autopsy
    report;

2.  Dr. Humphrey D. Germaniuk, M.D., also examined the scene where the
    body of Robert S. Fingerhut was found, which was located at 254 Fonderlac

*159*

Dr., Howland, Ohio, and described the physical findings along with the location of the body within the residence;

3.  Dr. Humphrey D. Germaniuk, M.D., describes in the autopsy report his medical findings, to and including, but not limited to, the location, size of the gunshot wounds, lacerations, abrasions, contusions, and so forth;

4.  Dr. Humphrey D. Germaniuk, M.D., will be called to testify on behalf of the Plaintiff, State of Ohio, and will be certainly called upon to render conclusionary expert opinions drawn from the aforementioned medical findings and the physical layout and location of the body in the residence. Such expert opinions will delineate the position of the victim and the Defendant, the location of the victim and the Defendant, the sequence of events between the victim and the Defendant, and the manner and cause of the gunshot wounds, lacerations, abrasions and contusions to the victim and other such matters;

5.  These expert opinions and conclusions to be drawn by Dr. Humphrey D. Germaniuk, M.D., Forensic Pathologist, are not contained within the documents or other information provided to the undersigned by way of discovery given by the Plaintiff, State of Ohio;

6.  The discovery of the aforementioned expert opinions to be offered by Dr. Humphrey D. Germaniuk, M.D., are discoverable information and are of crucial importance to the Defendant, Nathaniel Jackson, in order to adequately prepare his defense and to, if need be, secure the services of a Forensic Pathologist to review the autopsy report and to evaluate the conclusions and opinions drawn by Dr. Humphrey D. Germaniuk, M.D.

WHEREFORE, Defendant, Nathaniel Jackson, hereby moves this Honorable Court for an Order directed to the Plaintiff, State of Ohio, by and through the Prosecuting Attorney, to provide to the undersigned all of the expert opinions to be elicited and given by Dr. Humphrey D. Germaniuk, M.D., Forensic Pathologist, derived from his personal observations at the scene, any other information regardless of source, and his medical findings.  Further, any such conclusions or opinions to be offered by Dr. Humphrey D. Germanuik, M.D., as an expert witness should include such expert opinion and all the

personal observations, information, and/or medical findings that support such conclusions and expert opinion.

Respectfully submitted,

DAVID H. BODIKER #0016590
OHIO PUBLIC DEFENDER

ANTHONY V. CONSOLDANE #0000761
ASSISTANT STATE PUBLIC DEFENDER

JAMES F. LEWIS #0024314
ASSISTANT STATE PUBLIC DEFENDER
BRANCH OFFICE OF THE OHIO PUBLIC
DEFENDER
328 MAHONING AVE.
WARREN, OHIO 44483
(330) 393-7727  FAX  (330) 393-7076
COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATION

I hereby certify that a copy of the foregoing Motion was delivered to the Trumbull County Prosecutor's Office, 160 High Street, Warren, Ohio, 44481, this 7th day of August, 2002.

JAMES F. LEWIS #0024314
Attorney for Defendant

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO. :01-CR-794 |
| | ) | |
| Plaintiff, | ) | JUDGE: :JOHN M. STUARD |
| | ) | |
| -vs- | ) | STATE'S SIXTH SUPPLEMENTAL |
| | ) | RESPONSE TO DEFENDANT'S |
| NATHANIEL E. JACKSON, | ) | REQUEST FOR DISCOVERY |
| | ) | |
| Defendant. | ) | |

Now comes the Plaintiff, the State of Ohio, by and through the Prosecuting Attorney of

Trumbull County, Ohio, and submits the following in answer to the *Defendant's Request For*

*Discovery* pursuant to Rule 16 of the Ohio Rules of Criminal Procedure:

1.) Pursuant to Crim. R. 16 (B)(1)(d), the State responds as follows: The state has provided

copies of the following reports to Counsel for the Defendant:

Supplemental 1 Corrected Copy of Brenda K. Gerardi, Dated 3/28/02, numbered 254-

255.

Supplemental 2 of Brenda K. Gerardi, Dated 6/17/02, numbered 256-258.


Respectfully Submitted,
STATE OF OHIO, by

_____

DENNIS WATKINS ( (#0009949)
Trumbull County Prosecuting Attorney

and

CHARLES L. MORROW (#0040575)
Assistant Prosecutor
Trumbull County Prosecutor's Office
160 High Street, NW
3rd Floor Administration Bldg.
Warren, Ohio 44481
(330) 675-2426

## CERTIFICATION

This is to certify that a copy of the foregoing *State's Fourth Supplemental Response to Defendant's Request for Discovery* was delivered to counsel for the Defendant, this August 23, 2002.

CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney



**Attorney General**
**Betty D. Montgomery**

BCI-30 (Rev. 3-95)

| Bureau of Criminal Identification and Investigation | Laboratory Report |
|---|---|

To:     Howland Police Department
        169 Niles Cortland Road N.E.
        Warren, OH  44484
        **Attn: Det. Sgt. Monroe**

BCI Lab Number:     01-35755 and 01-35755-C
                    **Supplemental 1**
                    **Corrected Copy**

Date:               3/28/02

Re:     Homicide
        Subject:  Nathaniel E. Jackson
        Victim:  Robert S. Fingerhut

Agency Number:      2001-078868

**Submitted 12/14/01 by Det. Sgt. Monroe for Serology/DNA (01-35755)**
10.  Plastic bag containing blood standard from victim
        10  Blood standard of Robert S. Fingerhut
28.  One sealed 2001 Chrysler 300m, license plate no. CPA 8225, VIN # 2C3AE66G81H526861
        28.8.1  Two swabs from visor (blood indicated - see report dated 2/15/02)

**Submitted 12/24/01 by Det. Sgt. Monroe for Serology/DNA (01-35755-C)**
C2.  Brown paper envelope containing swabs from the mouth of Nathaniel E. Jackson
        C2  Oral standard of Nathaniel E. Jackson

**Results**
DNA profiling using the polymerase chain reaction at the loci D3S1358, vWA, FGA, Amelogenin, D8S1179, D21S11, D18S51, D5S818, D13S317, D7S820, D16S539, THO1, TPOX, and CSF1PO was performed on samples from Items 10, 28 and C2 .

DNA profiling results appear in the following tables:

| Item | Description | vWA | FGA | D8S1179 | D21S11 | D18S51 | D5S818 | D13S317 |
|---|---|---|---|---|---|---|---|---|
| 28.8.1 | Visor | 15,16,17 | 21 (23) (24) | 14 (10) (12) | 28,29 (30) (32.2) | 14 (16) (19) | 11 (8)  * | 11 (9) (13) |
| 10 | Robert Fingerhut | 17 | 21,23 | 10,14 | 30,32.2 | 14,16 | 11 | 9,11 |
| C2 | Nathaniel Jackson | 15,16 | 21,24 | 12,14 | 28,29 | 14,19 | 8,11 | 11,13 |

\* = Additional DNA detected, but below reporting standards
( ) = Signal less intense

Please address inquiries to the office indicated, using the BCI case number.

[ ] BCI & I-Bowling Green Office
    1616 E. Wooster St.. #18
    Bowling Green, OH 43402
    Phone: (419) 353-5603

[ ] BCI & I-London Office
    P. O. Box 365
    London, Ohio 43 140
    Phone: (740) 845-2000

[X] BCI & I-Richfield Office
    4055 Highlander Parkway
    Richfield, Ohio 44286
    Phone: (330) 659-4600

[ ] BCI & I-Cambridge Office
    60788 Southgate Road
    Byesville, Ohio 43723
    Phone: (614) 439-36



(254)

Page 2
RE: Homicide
BCI Lab Number: 01-35755 and 01-35755-C **Supplemental 1 Corrected Copy**

| Item | Description | D3S1358 | D16S539 | Amel. | THO1 | TPOX | CSF1PO | D7S820 |
|------|-------------|---------|---------|-------|------|------|--------|--------|
| 28.8.1 | Visor | 16,17,18 (14) | 9,10,11 | XY | 7 (6) | 6,8 (9) | 10 (7) | 10,11 (9) (12) |
| 10 | Robert Fingerhut | 14,17 | 11 | XY | 6 | 8,9 | 10 | 9,12 |
| C2 | Nathaniel Jackson | 16,18 | 9,10 | XY | 7 | 6,8 | 7 (10) | 10,11 |

\* = Additional DNA detected, but below reporting standards
( ) = Signal less intense


## Statistical Information

~~Based on a national database provided by the Federal Bureau of Investigation, the approximate frequencies of occurrence of the DNA mixture identified on the visor (Item 28.8.1) are as follows:~~

**Based on a national database provided by the Federal Bureau of Investigation, the proportions of the population which cannot be excluded as contributors to the mixture of DNA profiles on the visor (Item 28.8.1) are as follows:**

| Caucasian | 1 in 16,010,000 people |
|-----------|------------------------|
| African American | 1 in 5,491,000 people |
| Hispanic | 1 in 6,835,000 people |


## Remarks

The remaining portions of each item will be retained in the laboratory.


Brenda K. Gerardi
Forensic Scientist
(330) 659-4600 ext. 231
T-061702



**Attorney General**
**Betty D. Montgomery**

BCI-30 (Rev. 3-95)

**Bureau of Criminal Identification and Investigation** | **Laboratory Report**

To: Howland Police Department
169 Niles Cortland Road N.E.
Warren, OH 44484
**Attn: Detective Sergeant Monroe**

BCI Lab Number:  01-35755 and 01-35755-C
**Supplemental 2**

Date:  6/17/02

Re: Homicide
Subject: Nathaniel E. Jackson
Victim: Robert S. Fingerhut

Agency Number:  2001-078868

**<u>Submitted 12/14/01 by Detective Sergeant Monroe for Serology/DNA (01-35755)</u>**
8. Brown paper bag containing jacket from victim
10. Plastic bag containing blood standard from victim
10 Blood standard of Robert S. Fingerhut
28. One sealed 2001 Chrysler 300m, license plate no. CPA 8225, VIN # 2C3AE66G81H526861
28.7 Two swabs from a stain above the trunk release inside the car (blood indicated - see BCI report dated 2/15/02)

**<u>Submitted 12/24/01 by Detective Sergeant Monroe for Serology/DNA (01-35755-C)</u>**
C2. Brown paper envelope containing swabs from the mouth of Nathaniel E. Jackson
C2 Oral standard of Nathaniel E. Jackson

**<u>Results</u>**
Presumptive testing indicated the presence of blood on a stain from the back of the jacket (Item 8s1).

DNA profiling using the polymerase chain reaction at the loci D3S1358, vWA, FGA, Amelogenin, D8S1179, D21S11, D18S51, D5S818, D13S317, D7S820, D16S539, THO1, TPOX, and CSF1PO was performed on samples from Items 8, 10, 28 and C2 .

Please address inquiries to the office indicated, using the BCI case number.

[ ] BCI & I-Bowling Green Office
1616 E. Wooster St.. #18
Bowling Green, OH 43402
Phone: (419) 353-5603

[ ] BCI & I-London Office
P. O. Box 365
London, Ohio 43140
Phone: (740) 845-2000

[X] BCI & I-Richfield Office
4055 Highlander Parkway
Richfield, Ohio 44286
Phone: (330) 659-4600

[ ] BCI & I-Cambridge Office
60788 Southgate Road
Byesville, Ohio 43723
Phone: (614) 439-365


256

**Page 2**
RE: Homicide
BCI Lab Number:  01-35755 and 01-35755-C **Supplemental 2**

DNA profiling results appear in the following tables:

| Item | Description | VWA | FGA | D8S1179 | D21S11 | D18S51 | D5S818 | D13S317 |
|------|-------------|-----|-----|---------|--------|--------|--------|---------|
| 8s1 | Jacket | 17 | 21,23 | 10,14 | 30,32.2 | 14,16 | 11 | 9 (11) |
| 28.7 | Inside Car | 15,16 (17) | 21 (24) * | 12,14 (10) | 28,29 (30) * | 14,19 * | 8,11 | 11 (9) (13) |
| 10^ | Robert Fingerhut | 17 | 21,23 | 10,14 | 30,32.2 | 14,16 | 11 | 9,11 |
| C2^ | Nathaniel Jackson | 15,16 | 21,24 | 12,14 | 28,29 | 14,19 | 8,11 | 11,13 |

| Item | Description | D3S1358 | D16S539 | Amel. | THO1 | TPOX | CSF1PO | D7S820 |
|------|-------------|---------|---------|-------|------|------|--------|--------|
| 8s1 | Jacket | 14,17 | NP | XY | NP | NP | NP | 9,12 |
| 28.7 | Inside Car | 16,18 (14) (17) | 9,10 (11) | XY | 7 * | (6) 8 * | 7,10 | 10,11 * |
| 10^ | Robert Fingerhut | 14,17 | 11 | XY | 6 | 8,9 | 10 | 9,12 |
| C2^ | Nathaniel Jackson | 16,18 | 9,10 | XY | 7 | 6,8 | 7 (10) | 10,11 |

\*  = Additional DNA detected, but below reporting standards
( ) = Signal less intense
NP = Not Performed
 ^  = Results taken from BCI report dated 3/5/02

The DNA profile from a stain on the back of the jacket (Item 8s1) is consistent with Robert Fingerhut.

The DNA profile from a stain above the trunk release inside the car (Item 28.7) is a mixture.
The major profile is consistent with Nathaniel Jackson.  The partial minor profile is consistent with Robert Fingerhut.

**Conclusions**
Nathaniel Jackson cannot be excluded as the major source of the DNA from the stain above the trunk release inside the car.

Robert Fingerhut cannot be excluded as the minor source of the DNA from the stain above the trunk release inside the car.

Robert Fingerhut cannot be excluded as the source of the DNA from a stain on the back of the jacket.

**Statistical Information**
Based on a national database provided by the Federal Bureau of Investigation, the approximate frequencies of occurrence of the major DNA profile from the stain above the trunk release inside the car (Item 28.7) is as follows:

| | |
|---|---|
| Caucasian | 1 in 45,170,000,000,000,000,000 people |
| African American | 1 in 29,860,000,000,000,000 people |
| Hispanic | 1 in 22,400,000,000,000,000 people |

257

Page 3
RE: Homicide
BCI Lab Number:  01-35755 and 01-35755-C **Supplemental 2**

**Remarks**
The remaining portions of each item will be retained in the laboratory.

Brenda K. Gerardi
Forensic Scientist
(330) 659-4600 ext. 231

258

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,          )      CASE NO. 01-CR-794
                    )
    Plaintiff      )
                    )      JUDGE JOHN M. STUARD
-vs-              )
                    )
NATHANIEL E. JACKSON,    )      MOTION TO CONTINUE
                    )       MOTIONS HEARING
    Defendant     )

    Now comes the State of Ohio by and through the Prosecuting Attorney and moves the Court for an order continuing the Motion hearing presently scheduled for Thursday August 29, 2002 at 1:00 p.m.  The reason for the request is due to the fact that Assistant Prosecuting Charles Morrow has a doctor's appointment scheduled for the same time and said motion is not being made for purposes of delay.

                      Respectfully submitted,

                      _____
                      CHARLES L. MORROW
                      Assistant Prosecuting Attorney
                      Trumbull Co. Prosecutor's Office
                      160 High Street - 3rd Floor
                      Warren, OH  44481
                      (330) 675-2426

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )        CASE NO. 01-CR-794
                                  )
        Plaintiff                 )
                                  )        JUDGE JOHN M. STUARD
-vs-                              )
                                  )
NATHANIEL E. JACKSON,             )        JOURNAL ENTRY
                                  )
        Defendant                 )

This cause came before the Court on the State's Motion To Continue. The Court finds that the State's Motion is well taken.

It is therefore ORDERED, ADJUDGED, and DECREED that this matter be rescheduled for Hearing on Motions for Thursday, September 5, 2002 at 1:00 p.m.

_____
DATED

_____
HONORABLE JOHN M. STUARD
JUDGE, COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )    CASE NO.    :01-CR-794
                                  )
          Plaintiff,              )    JUDGE:      :JOHN M. STUARD
                                  )
-vs-                              )    MEMORANDUM IN OPPOSITION TO
                                  )    DEFENDANT'S  MOTION  FOR
NATHANIEL E. JACKSON,             )    SPECIFIC DISCOVERY
                                  )
          Defendant.              )

The Defendant, in the instant motion is seeking to obtain " all of the expert opinions to be elicited and given by Dr. Humphrey D. Germaniuk, M.D., Forensic Pathologist, derived from his personal observations at the scene, any other information regardless of source, and his medical findings."

Initially, it should be noted that the Defendant does not cite to any rule or opinion which would entitle him to the items which he requests. To the contrary, Crim R. 16 provides in relevant part:

"**(B)**   **Disclosure of Evidence by Prosecuting Attorney.**
"**(1)**   **Information subject to disclosure.**
"***
"(d)   *Reports of examinations and tests.*  Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and the scientific tests or experiments, made in connection with the particular case, or copies thereof, available to or within the possession, custody or control of the state, the existence of which is known or by the exercise of due diligence may be come known to the prosecuting attorney."

This is the sole provision in the Criminal Rules with respect to the discovery of expert opinions. Clearly this does not contain any provision for producing that which the Defendant seeks. To the contrary, in *State v. Mullen* (Aug 12, 1994), 4th Appellate District, unreported,

Judge Harsha, in the concurring opinion noted:

"As appellant correctly argues, it is difficult to test expert testimony at trial without advance notice and preparation. In recognition of this impediment to the accurate determination of guilt, Fed.R.Crim.P. 16 has been amended to broaden discovery of expert opinion testimony. The 1993 amendments added subdivisions which require disclosure of a written summary of the expert testimony which a party intends to use at trial. The summary must describe the witnesses' opinions, the bases and the reasons therefor, and the witnesses' qualifications."

"However, regardless of personal perspectives, I am forced to admit the obvious, i.e., that Ohio Crim.R. 16 does not contain similar discovery requirements."

As noted, the Ohio Criminal Rules do not provide for that which counsel for the Defendant is requesting.  The rule only requires the State to produce "scientific tests or experiments."  Other than those provided to the Defendant, Dr. Germaniuk has not performed any other such tests or experiments.  As the majority noted in *Mullen:*

"In the case sub judice, we are similarly unwilling to state that Ferguson's calculations constitute a "scientific test." Although Ferguson utilized mathematics rather than general common sense, he performed work using the laboratory test results.

"In State v. Davis (1991), 62 Ohio St.3d 326, 341, 581 N.E.2d 1362, 1376, the court commented:

"'Most, if not all, scientific tests involve objective measurements, such as blood or genetic typing or gunshot residue.'

"In the case sub judice, Ferguson did not analyze blood or gunshot residue. He did not collect any data using the scientific method. Ferguson merely ran calculations on the results of the laboratory tests.  Mullen.

As such, the *Mullen* Court did not find error in allowing the testimony based upon observations made by Ferguson, a toxicologist concerning his determination of the amount of drug in defendant's system at the time her blood was sampled.  Applying the same rationale to the instant action, the Defendant is not entitled. To that which he is seeking.

It should also be noted that the State has provided the Defendant with a list of its witnesses.  Counsel for te Defendant is not prohibited from contacting these witnesses, and as such, could simply inquire of Dr. Germaniuk.

Wherefore, the State respectfully requests that the Defendant's *Motion for Specific Discovery* be denied..

Respectfully Submitted,
STATE OF OHIO, by


DENNIS WATKINS (#0009949)
Trumbull County Prosecuting Attorney

and

CHARLES L. MORROW (#0040575)
Assistant Prosecutor
Trumbull County Prosecutor's Office
160 High Street, NW
3rd Floor Administration Bldg.
Warren, Ohio  44481
(330)-675-2426


## CERTIFICATION

This is to certify that a copy of the foregoing motion was hand delivered to counsel for the Defendant,  this September 5, 2002.

CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
Trumbull County, Ohio 44485

Not Reported in N.E.2d
**(Cite as: 1994 WL 465801 (Ohio App. 4 Dist.))**

**H**
Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Fourth District, Meigs County.

STATE of Ohio, Plaintiff-Appellee,
v.
D. Michael MULLEN, Defendant-Appellant.

**No. 93 CA 518.**

Aug. 12, 1994.

Herman A. Carson, Sowash, Carson & Shostak, Athens, OH.

William H. Safranek, Athens, OH.

John R. Lentes, Pomeroy, OH.

DECISION AND JUDGMENT ENTRY

PER CURIAM.

**\*1** This is an appeal from a judgment of conviction and sentence entered by the Meigs County Common Pleas Court finding D. Michael Mullen, defendant below and appellant herein, guilty of four counts of corrupting another with drugs in violation of R.C. 2925.02(A)(4)(a), a second degree felony.

Appellant assigns the following errors:
FIRST ASSIGNMENT OF ERROR:
"THE FINDINGS OF GUILTY FOR FOUR VIOLATIONS OF O.R.C. 2925.02, CORRUPTING ANOTHER WITH DRUGS, ARE NOT SUSTAINED BY PROOF BEYOND A REASONABLE DOUBT AND ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
SECOND ASSIGNMENT OF ERROR:
"APPELLANT WAS DENIED HIS CONSTITUTIONAL DUE PROCESS RIGHT TO A FAIR TRIAL AND TO PREPARE AN ADEQUATE DEFENSE BY THE FAILURE OF THE PROSECUTION TO OBSERVE A CONTINUING DUTY TO DISCLOSE EVIDENCE FAVORABLE TO THE DEFENDANT."

On March 13, 1993, Melissa King, age thirteen, and her sister Michelle King, age eleven, suffered from drug overdoses. Emergency medical personnel transported the children from Melissa's boyfriend's home to Veterans Memorial Hospital. Emergency Room Supervisor Jenna Diddle testified that both Melissa and Michelle said that appellant gave them the drugs. When Diddle asked Michelle why she had taken drugs, Michelle replied, "Because Michael told me it would make me feel good." Michelle further explained that she thought she took three yellow and two blue pills. Melissa said she took four yellow and two blue pills.

On March 16, 1993, Meigs County Prosecuting Attorney's Office Investigator Gary Wolfe interviewed appellant concerning his interactions with the two children. Appellant denied giving the children drugs, but admitted he taught thirteen-year-old Melissa to drive, and let her drive his car to pick up her boyfriend, DeAngelo Thompson. Appellant admitted that Melissa, Michelle, and DeAngelo visited his home on Saturday, March 13, 1993. Appellant explained that Melissa and Michelle "stop by all the time." Although appellant at first denied that Melissa and Michelle visited him on Friday, March 12, 1993, he later recalled that they did visit on that day.

On April 6, 1993, the Meigs County Grand Jury indicted appellant on twelve counts, including eight counts of corrupting another with drugs, one count of aggravated menacing, two counts of contributing to the delinquency of a minor, and one count of compelling prostitution. The court tried the matter without a jury beginning on August 10, 1993. [FN1]

FN1. Appellant waived his right to a jury trial.

Both Melissa and Michelle testified that appellant gave them blue pills and round yellow pills at various times on March 12, 1993 and March 13, 1993. Melissa and Michelle further testified that they swallowed the pills. Melissa's boyfriend DeAngelo corroborated their testimony. Melissa and Michelle testified appellant called the pills "V"s. DeAngelo testified that some of the yellow pills had a "V" on them, and one little yellow pill had a "Z" on it. Michelle testified that the blue pills appellant gave her were oval in shape. Melissa

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

and Michelle testified they used beer to swallow some of the pills.  Melissa testified she drank two beers at appellant's house on March 13, 1993.  Michelle also testified she drank beer at appellant's house that day.

*2 Melissa, Michelle, and DeAngelo testified that at one point on March 12, 1993, appellant pointed a small gun at Melissa's head and said "boom."  The trio further testified that appellant permitted Melissa and DeAngelo to drive appellant's car at various times during the two days.  At one point, Melissa and DeAngelo drove away and left Michelle alone with appellant in his house.

When Melissa and DeAngelo returned, they found the front door locked.  Michelle testified that when she was alone with appellant, he had asked her what was the wildest thing she had done with her boyfriend.  Michelle further testified that appellant showed her a lingerie catalog and offered to buy her anything in the catalog if he could see her wearing it.  Michelle and Melissa both testified that on Saturday, appellant observed Melissa dancing and commented she would look better dancing nude.

DeAngelo testified that Melissa arrived at his house at approximately 8:00 or 8:30 p.m.  on March 13, 1993.  Upon arrival, Melissa could barely talk and had a pale white face.  She was red and cold from walking through the record snow that had fallen that day.  Within thirty minutes of her arrival, Melissa passed out and quit breathing.  Michelle arrived at DeAngelo's house shortly before emergency medical personnel arrived for Melissa.  The emergency medical personnel transported Melissa and Michelle by ambulance to Veterans Memorial Hospital.

Dr. Thomas Spencer testified he interviewed Melissa and Michelle at the hospital.  Both children admitted ingesting yellow and blue pills.  Dr. Spencer testified that the five milligram Valium is yellow, the ten milligram Valium is blue, and the one milligram Xanax is oval and blue.  On cross- examination, Dr. Spencer testified that the laboratory report indicated Melissa's blood alcohol level was .09, Melissa's blood Valium level was .71, and Michelle's blood Valium level was .38.  The report did not include a test for the presence of Xanax.

Pharmacist Kenneth McCullough corroborated Dr. Spencer's testimony concerning the appearance of Valium and Xanax pills.  He further testified that the "N" in "XANAX" looks like a "Z" when the pill is rotated forty-five degrees.

Toxicologist James Ferguson testified that the

generally accepted clearance rate for Valium is .38 milligrams per minute.  Ferguson testified that by using the clearance rate, the amount of Valium in each child, and the weight of each child, he calculated the amount of Valium in each child's bloodstream at the time her blood sample was drawn.  According to Ferguson, Melissa had 40.4 milligrams of Valium in her body and Michelle had 17.9 milligrams of Valium in her body when their blood was drawn.  Ferguson further testified that by using these results and further details from the laboratory report, he calculated that the children received their dosages of Valium at approximately the same time during the afternoon of March 13, 1993.

Appellant presented several witnesses.  Connie Higham testified she observed Melissa purchasing little blue pills in the Old Liberty Bar on March 12, 1993 and again between 3:00 and 3:30 p.m.  on March 13, 1993.  Ken Hartley, a client of appellant, testified he was with appellant at a bar in the evening of March 12, 1993 for a couple of hours, and appellant was still in the bar when Hartley left at 9:30 p.m.  Darla Griffith, a neighbor of appellant, testified that appellant came home at 10:45 on March 12, 1993.  She further testified that she saw Melissa and Michelle spend only three to five minutes at appellant's house on March 13, 1993.  Vickie Payne testified she saw Melissa in the Old Liberty Bar on March 12, 1993 asking for "V"s from a boy.  Accordingly to Payne, the boy gave Melissa six to ten blue Valiums.

*3 Appellee presented two witnesses on rebuttal.  Diane Bachtel, an employee at the Old Liberty Bar, testified that the record snowfall on March 13, 1993 caused the bar to close at 1:00 p.m.  that afternoon.  Michelle Watkins testified that when Michelle King called her at approximately 6:00 p.m.  on March 13, 1993, she could hear appellant's voice in the background.

The court found appellant guilty on the four counts of corrupting Melissa and Michelle on March 12, 1993 and March 13, 1993 with Valium.  The court found appellant not guilty of the remaining counts in the indictment.  On September 20, 1993, the court sentenced appellant to five to fifteen years on each count, sentences to be served concurrently.  The court suspended two years on each count, but ordered appellant to serve three years actual incarceration and placed him on probation for five years after his release.

Appellant filed a timely notice of appeal.

I

In his first assignment of error, appellant asserts that

.the judgment is against the manifest weight of the evidence. In this regard, appellant cites *State v. Mattison* (1985), 23 Ohio App.3d 10, 490 N.E.2d 926, where the court listed eight factors to guide appellate courts deciding whether a judgment is against the weight of the evidence. Those factors include whether the evidence is uncontradicted, whether a witness was impeached, and the general certainty and reliability of the evidence.

Appellant notes that the record in the case *sub judice* contains many inconsistencies. Although Melissa testified she went to appellant's home at 7:00 p.m. on March 12, 1993, she previously stated she arrived at 8:00 p.m. that evening. Although Melissa testified that appellant took some pills from his pocket and gave one to her, Michelle testified that the first pills appellant gave them were located under a coffee table. Melissa and Michelle gave testimony that conflicted with DeAngelo's testimony concerning who was in appellant's automobile when Melissa drove to DeAngelo's house and how many times Melissa drove to his house.

Melissa, Michelle and DeAngelo gave conflicting testimony concerning when and for how long Melissa and Michelle's six-yearold sister accompanied them to appellant's house on March 12, 1993. Although Melissa stated that she went to McDonald's Restaurant once that evening, DeAngelo testified that Melissa went twice.

Melissa testified that the gun appellant pointed at her was black, but Michelle testified the gun was silver. DeAngelo testified that the gun was chrome.

Although Melissa and Michelle testified they woke up at 1:30 p.m. on March 13, 1993, in her March 16, 1993 statement Melissa said she woke up at 11:30 a.m. on March 13, 1993. Although Melissa testified that she went to appellant's home at 3:30 or 4:00 p.m. on March 13, 1993, in her statement she said she did not go to appellant's home until 5:30 p.m. that afternoon. Although Melissa testified that she wore orange pants with polka dots and a polka dot shirt on March 13, 1993, Michelle testified that she thought she wore the polka dot outfit on that day.

*4 Appellant also notes that the record contains evidence that Melissa was less than truthful. Melissa asked a friend's father to lie to Melissa's mother about whether Melissa was present in the friend's home. Melissa lied about DeAngelo's age. Melissa gave conflicting reports about the number and color of pills she ingested. Appellant argues that he presented evidence demonstrating that Melissa obtained the

Valium not from appellant as she testified, but rather from someone at the Old Liberty Bar.

When considering an appellant's claim that his conviction is against the weight of the evidence, we must defer to the trier of fact. In *State v. Thomas* (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356, 1357, the court wrote:

"It is emphasized that an appellate court may not reverse the judgment of conviction unless reasonable minds could not fail to find reasonable doubt of the defendant's guilt. It is fundamental that the weight to be given the evidence and credibility of the witnesses are primarily for the trier of facts. * * *"

In *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus, the court held:

"A reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."

See, also, *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492; *State v. Tyler* (1990), 50 Ohio St.3d 24, 553 N.E.2d 576; *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. In *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009, 1010-11, motion for leave to appeal overruled (Mar. 25, 1987), No. 87-137, unreported, the court discussed the manner in which courts should determine whether a **criminal** conviction is against the manifest weight of the evidence:

"In determining whether a **criminal** conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

Moreover, where there is substantial evidence upon which a trier of fact has based its verdict, a reviewing court abuses its discretion in substituting its judgment for that of the trier of fact as to the weight and the sufficiency of the evidence. See, generally, *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54; *State v. Nicely* (1988), 39 Ohio St.3d 147, 529 N.E.2d 1236.

In the case *sub judice,* we find substantial competent, credible evidence to support the trial court's judgment finding appellant guilty of four counts of corrupting another with drugs in violation of R.C. 2925.02(A)(4)(a). Although the three children gave conflicting testimony regarding many details

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

.surrounding the crimes, the children never wavered from their assertions that appellant supplied the blue and yellow pills that made Melissa and Michelle sick. The statute provides in pertinent part as follows:

**\*5** (A) No person shall do any of the following:
\* \* \*

(4) By any means, do any of the following:

(a) Furnish or administer a controlled substance to a juvenile who is at least two years his junior, when the offender knows the age of the juvenile or is reckless in that regard;

Appellee presented substantial competent, credible evidence to support the trial court's judgment that appellant furnished controlled substances to two children ages eleven and thirteen.   The credibility of the testimony was an issue for the trial of fact to determine.   We may not reverse the judgment where substantial competent, credible evidence exists to support the judgment.

Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II

In his second assignment of error, appellant asserts that appellee failed to observe a continuing duty to disclose evidence favorable to appellant.   In particular, appellant contends appellee failed to disclose that its expert witness, Toxicologist James Ferguson, would testify concerning the results of tests he performed to determine the amount of drug that was in the children's bodies at the time their blood was sampled and would testify concerning his calculations of the time each child last ingested the drug.

Appellant claims that both Crim.R. 16(B)(1)(d) and (f) required appellee to disclose Ferguson's testimony to appellant prior to trial.   Crim.R. 16(B)(1)(d) provides in pertinent part as follows:

(B) Disclosure of evidence by the prosecuting attorney.

(1) Information subject to disclosure.
\* \* \*

(d) Reports of examination and tests.   Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of *scientific tests or experiments,* made in connection with the particular case, or copies thereof, available to or within the possession, custody or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney.

(Emphasis added.)

Appellant argues that Ferguson's testimony concerning his determination of the amount of drug in Melissa's system at the time her blood was sampled was a "scientific test or experiment" as those terms as used in Crim.R. 16(B)(1)(d).   We note that when objecting to Ferguson's testimony in this regard, appellant's counsel conceded that Ferguson's calculations were not a scientific experiment.   At one point appellant's counsel questioned whether the calculations were a test.   The record reveals the following exchange between counsel:

"MR. CARSON: The objection, Your Honor, is that these test results were not disclosed in the discovery to us, and our request does include for any test results that they intend to introduce.     These are computations.     These are results that have been obtained through his uh, *I don't know if 'testing' is the right word,* but it is an analysis of evidence and they were not provided in discovery to us.

**\*6** \* \* \*

MR. LENTES:  He [Ferguson] will answer on the record that he did no tests or experiments at our direction.

MR. CARSON:  Well I understand what your are saying he did.   But I think, Your Honor, that the intent of this rule is is where they are going to results or reports of scientific test, I think that this is, you know, this is a scientific analysis of these records.   *It is not an experiment, I would agree with that.*

MR. LENTES:  There was no scientific test done.   The test was done by Med Path which was provided to you.     All he [Ferguson] is doing is merely analyzing the test done by someone else.

MR. CARSON:  Which I think in itself is a test."
(Emphasis added.)

Appellant cites no authority for the proposition that Ferguson's calculations constitute a "scientific test" as that phrase isemployed in Crim.R. 16(B)(1)(d).

In *State v. Goble* (1982), 5 Ohio App.3d 197, 450 N.E.2d 722, the court held that investigative work performed by a detective does not constitute a "scientific test."   The court wrote:

" \* \* \* [I]t appeared reasonable for the prosecution to present testimony from a detective, who, utilizing common sense, had performed investigative work regarding possible routes taken by defendant and the times of travel involved therein.   *We are unwilling to state that such work constituted a 'scientific test' or* 'experiment' as is referred to in Crim.R. 16(B)(1)(d).   Further, however, defendant had amply opportunity to cross-examine Detective Sobie.   Avenues of refutation of this testimony were not foreclosed to defendant." (Emphasis added.)

*Id.,* 5 Ohio App.3d at 198, 450 N.E.2d at 724.   In the

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

, case *sub judice*, we are similarly unwilling to state that Ferguson's calculations constitute a "scientific test." Although Ferguson utilized mathematics rather than general common sense, he performed work using the laboratory test results.

In *State v. Davis* (1991), 62 Ohio St.3d 326, 341, 581 N.E.2d 1362, 1376, the court commented:

"Most, if not all, scientific tests involve objective measurements, such as blood or genetic typing or gunshot residue."

In the case *sub judice*, Ferguson did not analyze blood or gunshot residue. He did not collect any data using the scientific method. Ferguson merely ran calculations on the results of the laboratory tests.

We note that when cross-examining Dr. Spencer, appellant's counsel asked similar questions:

"Q. Doctor, from that test score or lab report score, are you able to make a determination of how many Valiums a person would have taken to score or have that type of score from their test, urinalysis?

A. Me, personally, no, I cannot.

Q. There is no way or you cannot extrapolate back to how many milligrams they would have ingested to reach that level?

A. I could not do that. If it can be done, I can't do that."

Appellant apparently was aware of the possibility that an expert witness might be able to make calculations regarding how many milligrams of Valium the children would have had to ingest to reach the levels of Valium discovered in their blood.

**\*7** We will now address appellant's assertion that Ferguson's calculations were favorable evidence discoverable under Crim.R. 16(B)(1)(f). The rule provides in pertinent part as follows:

(B) Disclosure of evidence by the prosecuting attorney.

(1) Information subject to disclosure.

* * *

(f) Disclosure of evidence favorable to defendant. Upon motion of the defendant before trial the court shall order the prosecuting attorney to disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment. * * *

The drafters of the rule intended it to fulfill the due process requirements enunciated in *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, where the court held that a defendant has a due process right to the discovery of favorable evidence. See *State v. Allen* (1990), 69 Ohio App.3d 366, 590 N.E.2d 1272; *State v. Today's Bookstore, Inc.* (1993), 86 Ohio

App.3d 810, 621 N.E.2d 1283.

Appellant claims that Ferguson's calculations were favorable to him because the calculations demonstrated that the children ingested the drugs at about the same time. Appellant notes that the children testified that they ingested the drugs at different times. We agree with appellant that Ferguson's calculation were somewhat favorable to appellant. We find, however, that the fact appellant did not learn about those calculations until trial did not deprive him of fair trial.

In *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraphs four and five of the syllabus, the court held:

"4. The suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. (*Brady v. Maryland* [1963], 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, followed.) 5. In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the results of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense. (*United States v. Bagley* [1985], 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481, followed.)"

In *Chillicothe v. Knight* (1992), 75 Ohio App.3d 544, 550, 599 N.E.2d 871, 875-876, we commented that the materiality test is stringent:

"Although *United States v. Bagley* (1985), 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481, further extends the Brady pretrial discovery rule to impeachment evidence, the test remains stringent so that '[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish "materiality" in the constitutional sense.' "

**\*8** The defendant must demonstrate that if the item of favorable evidence had been disclosed in a timely manner, the outcome of the trial would have been different.

In the case *sub judice*, although appellant did not learn about Ferguson's calculations until trial, appellant had ample opportunity to cross-examine Ferguson. Appellant did not request a continuance to allow him time to reassess his trial strategy. Appellant did not attempt to recall any witnesses for further cross-examination. Appellant does not specify how or

Jackson Apx. Vol. 4
Page 223

why the trial would have been different if appellee had disclosed Ferguson's calculations prior to trial. Rather, appellant asserts that because Ferguson's expert testimony indicates the time of day that the children ingested the drugs and that this fact is inconsistent with the children's testimony, the children's entire testimony concerning the crime should be rejected. We disagree with appellant's assertion. Any inconsistency in the children's testimony affects their credibility. The children's credibility is a matter for the trier of fact.

Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

*JUDGMENT AFFIRMED.*

### JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

STEPHENSON, J. & ABELE, J.: Concur in Judgment and Opinion

HARSHA, P.J.: Concurs with Concurring Opinion

### NOTICE TO COUNSEL

Pursuant to Local Rule No. 12, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.

HARSHA, Presiding Judge, concurring:

I concur in judgment and opinion with some hesitation. While recognizing that for historical reasons **criminal discovery** has been much more restricted than that in civil proceedings, see Wright, Federal Practice and Procedure: **Criminal** 2d Section 252, I join Justice Fortas in his belief that 'disclosure, rather than

suppression, of relevant materials ordinarily promotes the proper administration of **criminal** justice." *Dennis v. United States* (1966), 384 U.S. 855, 871. As appellant correctly argues, it is difficult to test expert testimony at trial without advance notice and preparation. In recognition of this impediment to the accurate determination of guilt, Fed.R.Crim.P. 16 has been amended to broaden **discovery** of **expert opinion** testimony. The 1993 amendments added subdivisions which require disclosure of a written summary of the expert testimony which a party intends to use at trial. The summary must describe the witnesses' opinions, the bases and the reasons therefor, and the witnesses' qualifications.

However, regardless of personal perspectives, I am forced to admit the obvious, *i.e.,* that Ohio Crim.R. 16 does not contain similar discovery requirements. Accordingly, I concur in judgment and opinion.

1994 WL 465801 (Ohio App. 4 Dist.)

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

# IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,                )
                             )     CASE NO.01-CR-794
   Plaintiff              )
                             )     JUDGE JOHN M. STUARD
-vs-                          )
                             )     **JUDGMENT ENTRY**
NATHANIEL E. JACKSON,        )     MOTION FOR WRITTEN JURY
                             )     INSTRUCTION AND OPPORTUNITY
   Defendant              )     TO REVIEW

Defendant's "Motion for Written Jury Instruction and Opportunity to Review" came before and was heard by this court on March 20, 2002.

Upon hearing arguments of counsel and for good cause shown, the Court hereby GRANTS Defendant's Motion.

DATED: _9/6/02_

_____
HON. JOHN M. STUARD
Judge, Court of Common Pleas

cc:    Trumbull Co. Prosecutor's Office
       Ohio Public Defenders Office (Trumbull Co. Branch)

# IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )
                                            )      CASE NO.01-CR-794

   Plaintiff                   )

                                            )      JUDGE JOHN M. STUARD

-vs-                                )

                                            )      **JUDGMENT ENTRY**

NATHANIEL E. JACKSON,       )      MOTION TO INSTRUCT ON

                                            )      SPECIFIC MITIGATING FACTORS

   Defendant                )      RAISED BY DEFENSE

Defendant's "Motion to Instruct on Specific Mitigating Factors Raised by Defense" came before and was heard by this court on March 20, 2002.

Upon hearing arguments of counsel and for good cause shown, the Court hereby DENIES Defendant's Motion to the extent that Defendant is requesting that the Court instruct the jury on specific mitigating factors not addressed in the standard form Ohio Jury Instructions and instructions given by this Court in the past.

DATED:   __9/6/02__

                                               HON. JOHN M. STUARD
                                             Judge, Court of Common Pleas

cc:    Trumbull Co. Prosecutor's Office
       Ohio Public Defenders Office (Trumbull Co. Branch)

# IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,        )

     )     CASE NO 01-CR-794

     Plaintiff       )

     )     JUDGE JOHN M. STUARD

-vs-          )

     )     **JUDGMENT ENTRY**

NATHANIEL E. JACKSON,    )     MOTION TO INSTRUCT JURY

     )     REGARDING PAROLE

     Defendant     )

Defendant's "Motion to Instruct the Jury Regarding Parole" came before and was heard by this court on March 20, 2002.

Upon hearing arguments of counsel and for good cause shown, the Court hereby DENIES Defendant's Motion.

DATED:     *9/6/02*

                HON. JOHN M. STUARD
                Judge, Court of Common Pleas

cc:    Trumbull Co. Prosecutor's Office
       Ohio Public Defenders Office (Trumbull Co. Branch)

# IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,                  )
                                )       CASE NO.01-CR-794
  Plaintiff                    )
                                )       JUDGE JOHN M. STUARD
-vs-                            )
                                )       **JUDGMENT ENTRY**
NATHANIEL E. JACKSON,           )       CONSTITUTIONAL MOTION TO
                                )       DISMISS
  Defendant                    )

"Defendant's Constitutional Motion to Dismiss" came before and was heard by this court on March 20, 2002.

Upon hearing arguments of counsel and for good cause shown, the Court hereby DENIES Defendant's Motion.

DATED: _____9/6/02_____          _____~~signature~~ M. Stuard_____
                                 HON. JOHN M. STUARD
                                 Judge, Court of Common Pleas

cc:    Trumbull Co. Prosecutor's Office
       Ohio Public Defenders Office (Trumbull Co. Branch)

# IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.01-CR-794 |
| Plaintiff | ) | |
| | ) | JUDGE JOHN M. STUARD |
| -vs- | ) | |
| | ) | **JUDGMENT ENTRY** |
| NATHANIEL E. JACKSON, | ) | MOTION TO COMPEL DISCLOSURE |
| | ) | OF EXCULPATORY AND |
| Defendant | ) | IMPEACHMENT EVIDENCE |

"Defendant's Motion to Compel Disclosure of Exculpatory and Impeachment Evidence"

came before and was heard by this court on March 20, 2002.

Upon hearing arguments of counsel and for good cause shown, the Court hereby

GRANTS Defendant's Motion.  Subject to requirements of Ohio Criminal Rule 16 and <u>Brady</u>

<u>v. Maryland</u> (1963) 373 U.S. 83, the State will provide to the defense any exculpatory material

which comes into its possession.

DATED: 9/6/02

HON. JOHN M. STUARD
Judge, Court of Common Pleas

cc:    Trumbull Co. Prosecutor's Office
       Ohio Public Defenders Office (Trumbull Co. Branch)

## IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,                        )
                                      )    CASE NO.01-CR-794
    Plaintiff                         )
                                      )    JUDGE JOHN M. STUARD
-vs-                                  )
                                      )    **JUDGMENT ENTRY**
NATHANIEL E. JACKSON,                 )    MOTION TO SUBMIT
                                      )    QUESTIONNAIRE TO
    Defendant                         )    PROSPECTIVE JURORS

    "Defendant's Motion to Submit Questionnaire to Prospective Jurors" came before and was heard by this court on March 20, 2002.

    Upon hearing arguments of counsel and for good cause shown, the Court hereby DENIES Defendant's Motion as the Court will provide jurors with the Court's own questionnaire.


DATED: _____9/6/02_____

                           HON. JOHN M. STUARD
                           Judge, Court of Common Pleas


cc:    Trumbull Co. Prosecutor's Office
       Ohio Public Defenders Office (Trumbull Co. Branch)

# IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,          )

                         )    CASE NO.01-CR-794

   Plaintiff          )

                         )    JUDGE JOHN M. STUARD

-vs-                  )

                         )    **JUDGMENT ENTRY**

NATHANIEL E. JACKSON,    )    MOTION TO REQUIRE PROSECUTOR TO

                         )    STATE REASONS FOR EXERCISING

   Defendant      )    PEREMPTORY CHALLENGES

"Defendant's Motion to Require Prosecutor to State Reasons for Exercising Peremptory Challenges" came before and was heard by this court on March 20, 2002.

Upon hearing arguments of counsel and for good cause shown, the Court hereby DENIES Defendant's Motion, save a challenge which would come under the guidelines set forth in <u>Batson v. Kentucky</u> (1986), 476 U.S. 79, or its progeny.   The Court will consider such challenges at the appropriate time.

DATED: ___9/6/02___

HON. JOHN M. STUARD
Judge, Court of Common Pleas

cc:    Trumbull Co. Prosecutor's Office
       Ohio Public Defenders Office (Trumbull Co. Branch)

# IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )

   Plaintiff                          )   CASE NO.01-CR-794

                                  )

-vs-                                    )   JUDGE JOHN M. STUARD

                                  )

NATHANIEL E. JACKSON,                   )   **JUDGMENT ENTRY**

                                  )   MOTION FOR INDIVIDUAL

                                  )   SEQUESTERED VOIR DIRE ON

   Defendant                       )   SELECT TOPICS

     "Defendant's Motion for Individual Sequestered Voir Dire on Select Topics" came before and was heard by this court on March 20, 2002.

     Upon hearing arguments of counsel and for good cause shown, the Court hereby GRANTS Defendant's Motion as to the voir dire of the jury venire relative to matters regarding pretrial publicity, a motion by the Defendant for a change of venue and/or the individual juror's attitudes regarding death penalty qualifications.

DATED:   9/6/02

                                      HON. JOHN M. STUARD
                                      Judge, Court of Common Pleas

cc:    Trumbull Co. Prosecutor's Office
       Ohio Public Defenders Office (Trumbull Co. Branch)

# IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,                      )
                                            )      CASE NO 01-CR-794
   Plaintiff                 )
                                            )      JUDGE JOHN M. STUARD
-vs-                            )
                                            )      **JUDGMENT ENTRY**
NATHANIEL E. JACKSON,      )      MOTION TO PROHIBIT ANY
                                            )      REFERENCES TO THE FIRST
   Defendant             )      PHASE AS THE GUILT PHASE

    Defendant's "Motion to Prohibit any References to the First Phase as the 'Guilt Phase'" came before and was heard by this court on March 20, 2002.

    Upon hearing arguments of counsel and for good cause shown, the Court hereby GRANTS Defendant's Motion.

DATED: ___9/6/02___                 _John M. Stuard_
                                           HON. JOHN M. STUARD
                                           Judge, Court of Common Pleas

cc:    Trumbull Co. Prosecutor's Office
       Ohio Public Defenders Office (Trumbull Co. Branch)

# IN THE COURT OF COMMON PLEAS
# TRUMBULL COUNTY, OHIO

STATE OF OHIO,               )

                        )      CASE NO.01-CR-794

   Plaintiff         )

                        )      JUDGE JOHN M. STUARD

-vs-                 )

                        )      **JUDGMENT ENTRY**

NATHANIEL E. JACKSON,   )      MOTION TO PROHIBIT ANY

                        )      EVIDENCE BEARING ON THE

   Defendant      )      VICTIM OR VICTIM IMPACT

Defendant's "Motion to Prohibit any Evidence Bearing on the Character of the Victim or Victim Impact" came before and was heard by this court on March 20, 2002.

Upon hearing arguments of counsel and for good cause shown, the Court hereby DENIES Defendant's Motion save and except that the State may only introduce such evidence which is found relevant and admissible by the Court prior to its use at trial.

DATED:_____9/6/02_____                    

                                        HON. JOHN M. STUARD

                                        Judge, Court of Common Pleas

cc:    Trumbull Co. Prosecutor's Office
       Ohio Public Defenders Office (Trumbull Co. Branch)

# IN THE COURT OF COMMON PLEAS
# TRUMBULL COUNTY, OHIO

STATE OF OHIO,           )

                       )       CASE NO.01-CR-794

   Plaintiff          )

                       )       JUDGE JOHN M. STUARD

-vs-                  )

                       )       **JUDGMENT ENTRY**

NATHANIEL E. JACKSON,    )       MOTION FOR AUGMENTED

                       )       UNANIMITY INSTRUCTION FOR

   Defendant       )       CAPITAL SPECIFICATION

Defendant's "Motion for Augmented Unanimity Instruction for Capital Specification" came before and was heard by this court on March 20, 2002.

Upon hearing arguments of counsel the Court hereby DENIES Defendant's Motion, however, the Court reserves its right to revisit this Motion prior to instructing the jury.

DATED: _9/6/02_

_____
HON. JOHN M. STUARD
Judge, Court of Common Pleas

cc:    Trumbull Co. Prosecutor's Office
       Ohio Public Defenders Office (Trumbull Co. Branch)

# IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )
                                  )    CASE NO.01-CR-794
  Plaintiff                    )
                                  )    JUDGE JOHN M. STUARD
-vs-                              )
                                  )    **JUDGMENT ENTRY**
NATHANIEL E. JACKSON,             )    MOTION FOR A CHANGE OF
                                  )    VENUE
  Defendant                    )

    Defendant's "Motion for a Change of Venue" came before and was heard by this court on March 20, 2002.

    Upon hearing arguments of counsel and for good cause shown, Defendant's Motion is hereby CONTINUED.  The Court takes this matter under advisement and will consider this motion at the appropriate time.

DATED: ___9/6/02_____        _____
                                   HON. JOHN M. STUARD
                                   Judge, Court of Common Pleas

cc:    Trumbull Co. Prosecutor's Office
       Ohio Public Defenders Office (Trumbull Co. Branch)

# IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,           )

                           )      CASE NO.01-CR-794

   Plaintiff          )

                           )      JUDGE JOHN M. STUARD

-vs-                  )

                           )      **JUDGMENT ENTRY**

NATHANIEL E. JACKSON,   )      MOTION TO CHALLENGE THE

                           )      ARRAY OF THE GRAND JURY

   Defendant      )      AND PETIT JURY

Defendant's "Motion to Challenge the Array of the Grand Jury and Petit Jury" came before and was heard by this court on March 20, 2002.

The Defense was unable to proffer any evidence of discrimination, systematic or otherwise, and upon hearing arguments of counsel and for good cause shown, the Court hereby DENIES Defendant's Motion.

DATED:  _9/6/02_                    _John M. Stuard_

                                         HON. JOHN M. STUARD

                                         Judge, Court of Common Pleas

cc:    Trumbull Co. Prosecutor's Office
       Ohio Public Defenders Office (Trumbull Co. Branch)

# IN THE COURT OF COMMON PLEAS
# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.01-CR-794 |
| Plaintiff | ) | |
| | ) | JUDGE JOHN M. STUARD |
| -vs- | ) | |
| | ) | **JUDGMENT ENTRY** |
| NATHANIEL E. JACKSON, | ) | MOTION TO ALLOW THE DEFENSE |
| | ) | TO ARGUE FIRST AND LAST AT |
| Defendant | ) | THE SENTENCING HEARING |

Defendant's "Motion to Allow the Defense to Argue First and Last at the Sentencing Hearing" came before and was heard by this court on March 20, 2002.

Upon hearing arguments of counsel and for good cause shown, the Court hereby DENIES Defendant's Motion.

DATED: _9/6/02_                     _____
                                    HON. JOHN M. STUARD
                                    Judge, Court of Common Pleas

cc:    Trumbull Co. Prosecutor's Office
       Ohio Public Defenders Office (Trumbull Co. Branch)

# IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,                       )

                              )     CASE NO.01-CR-794

       Plaintiff            )

                              )     JUDGE JOHN M. STUARD

-vs-                          )

                              )     **JUDGMENT ENTRY**

NATHANIEL E. JACKSON,      )     DEFENDANT'S MOTION TO

                              )     PROHIBIT THE USE OF PEREMPTORY

       Defendant.        )     CHALLENGES TO EXCLUDE JURORS

                              )     WHO EXPRESS CONCERNS ABOUT

                              )     CAPITAL PUNISHMENT

"Defendant's Motion to Prohibit the Use of Peremptory Challenges to Exclude Jurors Who Express Concerns about Capital Punishment" came before and was heard by this court on March 20, 2002.

Upon hearing arguments of counsel, the Court hereby DENIES Defendant's Motion.

DATED: _____9/6/02_____                 _John M. Stuard_

                                         HON. JOHN M. STUARD

                                         Judge, Court of Common Pleas

cc:    Trumbull Co. Prosecutor's Office
       Ohio Public Defenders Office (Trumbull Co. Branch)

# IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.01-CR-794 |
| Plaintiff | ) | |
| | ) | JUDGE JOHN M. STUARD |
| -vs- | ) | |
| | ) | **JUDGMENT ENTRY** |
| NATHANIEL E. JACKSON, | ) | DEFENDANT'S MOTION TO |
| | ) | HAVE THE COURT FOLLOW THE |
| Defendant. | ) | OHIO REV. CODE 2945-25(C) |
| | ) | STANDARD FOR "DEATH |
| | ) | QUALIFICATIONS |

"Defendant's Motion to Have the Court Follow the Ohio Rev. Code 2945-25(C) Standard for "Death Qualifications" came before and was heard by this court on March 20, 2002.

Upon hearing arguments of counsel, the Court hereby DENIES Defendant's Motion.

DATED: _9/6/02_

_____
HON. JOHN M. STUARD
Judge, Court of Common Pleas

cc:   Trumbull Co. Prosecutor's Office
      Ohio Public Defenders Office (Trumbull Co. Branch)