## CourtView® 2000

### General Inquiry

| Summary | Parties | Events | Dockets | Fields | Notes | Disposition | |

New Se

## Docket Search

2004 TR 00089 STATE OF OHIO -VS- JACKSON, NATHANIEL

Search Criteria

Docket Desc. | ALL

**Begin Date** | [          ]

**End Date** | [          ]

**Sort**
○ Ascending
● Descending

[ Search ]

**Search Results**    34 Docket(s) found matching search criteria.

| Docket Date | Docket Text | Amount | Amount Due | Images |
|---|---|---|---|---|
| 11/16/2006 | 61/323 ENTRY FROM SUPREME COURT FILED; RE: THE COURT DECLINES JURISDICTION TO HEAR THE CASE AND DISMISSES THE APPEAL AS NOT INVOLVING ANY SUBSTANTIAL CONSTITUTIONAL QUESTION. SEE JE COPY TO COURT OF APPEALS | 0.00 | 0.00 | |
| 07/27/2006 | 60/536 ENTRY FROM SUPREME COURT FILED RE: IT IS ORDERED BY THE COURT, SUA SPONTE, THAT THIS CAUSE IS DISMISSED. IT IS FURTHER ORDERED BY THE COURT THAT THE MOTION FOR STAY IS DENIED AS MOOT. COPY TO COURT OF APPEALS | 0.00 | 0.00 | |
| 07/19/2006 | NOTICE OF APPEAL TO SUPREME COURT FILED. COPY TO COURT OF APPEALS | 0.00 | 0.00 | |
| 07/13/2006 | ORIGINAL PAPERS RETURNED TO COMMON PLEAS (16 VOL TP TAKEN TO EVIDENCE ROOM) | 0.00 | 0.00 | |

Jackson Apx. Vol. 16
Page 1

| Date | Description | | |
|---|---|---|---|
| 05/30/2006 | MANDATE ISSUED TO COMMON PLEAS | 0.00 | 0.00 |
| 05/30/2006 | 60/88 OPINION FOR RECONSIDERATION FROM ELEVENTH DISTRICT COURT OF APPEALS FILED. JUDGMENT: AFFIRMED. SEE OPINION AND JE COPY TO ATTYS | 0.00 | 0.00 |
| 05/03/2006 | 59/933 UPON PROPER CONSIDERATION, THIS COURT CONCLUDES THAT APPELLANT'S MOTION TO RECONSIDER OUR PRIOR OPINION AND JUDGMENT ENTRY IN THE INSTANT APPEAL HAS MERIT. THEREFORE, THE MOTION TO RECONSIDER IS GRANTED. IT IS ORDER OF THIS COURT THAT OUR OPINION AND JE OF 03/06/06 IS HEREBY VACATED. CONSISTENT WITH THE FOREGOING, THE CLERK OF COURTS IS INSTRUCTED TO STRIKE THE OPINION AND JE FROM THE RECORD. A NEW OPINION WILL BE RENDERED IN THIS MATTER, BASED UPON THE PARTIES' PRIOR SUBMISSIONS. SEE JE COPY TO ATTYS OPINION STRICKEN | 0.00 | 0.00 |
| 04/20/2006 | NOTICE OF APPEAL TO SUPREME COURT FILED. COPY TO COURT OF APPEALS | 0.00 | 0.00 |
| 03/21/2006 | ANSWER TO APPELLANT'S APPLICATION TO RE-OPEN AND CERTIFICATION FILED BY ATTY L ANNOS | 0.00 | 0.00 |
| 03/16/2006 | MOTION FOR RECONSIDERATION AND CERTIFICATION FILED BY ATTY R PORTER | 0.00 | 0.00 |
| 03/06/2006 | ****MANDATE ISSUED TO COMMON PLEAS***(STRICKEN PER JE OF 05/03/06) | 0.00 | 0.00 |
| 03/06/2006 | ****59/359 OPINION FROM ELEVENTH DISTRICT COURT OF APPEALS FILED. JUDGMENT: AFFIRMED. SEE OPINION AND JE****(STRICKEN PER JE OF 05/03/06) COPY TO ATTYS | 0.00 | 0.00 |
| 02/01/2006 | THIRD NOTICE OF ADDITIONAL AUTHORITY AND CERTIFICATION FILED BY ATTY R PORTER | 0.00 | 0.00 |
| 10/26/2005 | NOTICE OF ADDITIONAL | 0.00 | 0.00 |

Jackson Apx. Vol. 16
Page 2

AUTHORITY AND CERTIFICATION
FILED BY ATTY R PORTER

| | | | |
|---|---|---|---|
| 09/23/2005 | 58/378 APPELLAN'T NOTICE OF ADDITIONAL AUTHORITY IS HEREBY GRANTED INSTANTER TO THE EXTENT THAT THE NEW CASE AUTHORITY WILL BE CONSIDERED, AND THE COMMENTS ARE HREBY STRICKEN. THE CLERK OF COURTS IS INSTRUCTED TO STRIKE THE COMMENTS FROM THE RECORD. SEE JE COPY TO ATTYS | 0.00 | 0.00 |
| 09/21/2005 | 09/23/05) ****NOTICE OF ADDITIONAL AUTHORITY AND CERTIFICATION FILED BY ATTY R PORTER****(COMMENTS IN THE MOTION ARE HEREBY STRICKEN PER JE OF | 0.00 | 0.00 |
| 07/27/2005 | 57/916 ORDER FROM THE SUPREME COURT RE: CERTIFICATE OF ASSIGNMENT SEE JE COPY OF COURT OF APPEALS | 0.00 | 0.00 |
| 12/13/2004 | CORRECTED BRIEF AND CERTIFICATION FILED BY ATTY R PORTER | 0.00 | 0.00 |
| 11/24/2004 | REPLY BRIEF FILED WITH CERTIFICATE OF SERVICE FILED ATTY R PORTER | 0.00 | 0.00 |
| 11/19/2004 | 56/334 ON 11/15/04, APPELLEE FILED A MOTION TO EXCEED THE PAGE LENGTH. UPON CONSIDERATION OF APPELLEE'S MOTION, AND FOR GOOD CAUSE SHOWN, IT IS ORDERED THAT THE MOTION IS HEREBY GRANTED. COPY TO ATTYS | 0.00 | 0.00 |
| 11/19/2004 | 56/332 ON 09/08/04, APPELLANT FILED A MOTION TO EXCEED THE PAGE LENGTH OF HIS BRIEF. ON 09/13/04, THIS COURT PUT ON AN ENTRY HOLDING THE MOTION IN ABEYANCE. ON 09/13/04, THE BRIEF WAS FILED. THEREFORE, UPON CONSIDERATION APPELLANT'S MOTION IS HEREBY GRANTED. IT IS THE FURTHER ORDER OF THIS COURT THAT THE BRIEF OF APPELLANT IS HEREBY, SUA SPONTE STRICKEN FROM THE RECORD. THE CLERK OF COURTS IS INSTRUCTED TO STRIKE APPELLANT'S BRIEF FROM THE | 0.00 | 0.00 |

Jackson Apx. Vol. 16
Page 3

|  | RECORD. APPELLANT IS GRANTED LEAVE TO FILE A CORRECTED BRIEF ON OR BEFORE 12/13/04. SEE JE COPY TO ATTYS BRIEF STRICKEN |  |  |
| 11/15/2004 | BRIEF OF APPELLEE AND CERTIFICATION FILED BY ATTY L ANNOS | 0.00 | 0.00 |
| 11/15/2004 | MOTION FOR LEAVE TO FILE OVERSIZED BRIEF AND CERTIFICATION FILED BY ATTY L ANNOS | 0.00 | 0.00 |
| 10/15/2004 | 56/124 MOTION GRANTED TO FILE BRIEF BY 11/12/04. COPY TO ATTYS | 0.00 | 0.00 |
| 10/12/2004 | MOTION FOR EXTENSION OF TIME TO FILE BRIEF AND CERTIFICATION FILED BY ATTY L ANNOS | 0.00 | 0.00 |
| 09/23/2004 | 55/905 MOTION GRANTED TO FILE BRIEF INSTANTER. COPY TO ATTYS | 0.00 | 0.00 |
| 09/22/2004 | MOTION TO FILE BRIEF INSTANTER WITH CERTIFICATION FILED BY ATTY R PORTER | 0.00 | 0.00 |
| 09/20/2004 | ****MERIT BRIEF OF APPELLANT AND CERTIFICATION FILED BY ATTY R PORTER****(STRICKEN PER JE OF 11/19/04) | 0.00 | 0.00 |
| 09/13/2004 | 55/817 ON 09/08/04, APPELLANT, BY AND THROUGH APPOINTED COUNSEL FILED A MTOION FOR LEAVE TO EXCEED THE PAGE LIMIT OF HIS BRIEF. UPON CONSIDERATION, IT IS HEREBY ORDERED THAT APPELLAN'TS MOTION FOR LEAVE WILL BE HELD IN ABEYANCE PENDING THE FILING OF THE BRIEF, AT WHICH TIME THIS COURT WILL MAKE ITS DETERMINATION AS TO WHETHER APPELLANT SHALL BE PERMITTED TO EXCEED THE PAGE LIMIT. SEE JE COPY TO ATTYS | 0.00 | 0.00 |
| 09/08/2004 | MOTION FOR EXTENSION OF PAGE LIMITATION FOR HIS MERIT BRIEF AND CERTIFICATION FILED BY ATTY R PORTER | 0.00 | 0.00 |
| 08/23/2004 | RECORD FILED WITH 16 VOL TP NOTICE OF FILING TO COURT OF APPEALS AND ATTORNEYS | 0.00 | 0.00 |
| 07/16/2004 | 55/552 APPELLANT'S MOTION REQUESTING APPOINTED COUNSEL IS HEREBY GRANTED. IT IS ORDERED THAT ASST. STATE | 0.00 | 0.00 |

Jackson Apx. Vol. 16
Page 4

> PUBLIC DEFENDER RANDALL L.
> PORTER, IS HEREBY APPOINTED TO
> REPRESENT APPELLANT FOR
> PURPOSES OF APPEAL TO THIS
> COURT. SEE JE COPY TO ATTYS

| | | | |
|---|---|---|---|
| 07/14/2004 | NATHANIEL JACKSON'S MOTION TO CONTINUE THE APPOINTMENT OF POST-CONVICTION COUNSEL WITH CERTIFICATION FILED BY ATTY RANDALL PORTER | 0.00 | 0.00 |
| 07/12/2004 | NOTICE OF APPEAL TO 11TH DIST. APP. CT. WITH DOCKETING STATEMENT, POVERTY AFFIDAVIT, PRECIPE AND COPY OF JE FILED BY ATTY RANDALL PORTER. COPIES TO ATTY ANNOS AND COURT OF APPEALS Amount Owed: $100.00 Paid Before Conversion: $0.00 Receipt Number: | 100.00 | 100.00 |

Jackson Apx. Vol. 16
Page 5

# NOTICE OF APPEAL

## IN THE COURT OF APPEALS
## TRUMBULL COUNTY, OHIO

*2004 TR 89*

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Case No. 01-CR-794 |
| | ) | |
| -vs- | ) | |
| | ) | |
| NATHANIEL JACKSON, | ) | F I L E D |
| | ) | COURT OF APPEALS |
| Defendant-Petitioner. | ) | JUL 1 2 2004 |

TRUMBULL COUNTY OHIO
MARGARET R. O'BRIEN, Clerk

### NOTICE OF APPEAL TO THE ELEVENTH DISTRICT
### COURT OF APPEALS FROM A FINAL JUDGMENT ENTRY

Notice is hereby given that Nathaniel Jackson appealed to the Eleventh District Court of Appeals from the trial court Judgement Entry dated June 14, 2004 denying Nathaniel Jackson post-conviction relief.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER – 0005835
Assistant State Public Defender
Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, Ohio 43215
(614) 466-5394
Facsimile:  614-644-0708

COUNSEL FOR NATHANIEL JACKSON

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. N.W., 4th Floor
Warren, Ohio 44481
Telephone No. (330) 675-2426
Telefax No. (330) 675-2431
COUNSEL FOR THE STATE OF OHIO

___X___  Check here is court-appointed and attach copy of appointment and Affidavit of Indigency.

_____  Check here is any co-counsel for Appellant and attach separate sheet indicating name, address and telephone number.

TRANSCRIPT INFORMATION (App. R. 9[B]) (TO BE COMPLETED BY ATTORNEY

_____  I have ordered a complete transcript from the court reporter as evidenced by the completion of the Court Reporter Acknowledgment below.

_____  I have ordered a partial transcript from the court reporter as evidenced by the completion of the Court Reporter Acknowledgment below.

_____  A statement pursuant to App. R. 9(C) or (D) is to be prepared in lieu of transcript.

_____  Video tapes to be filed.  (See App. R. 9[A] or [B].)

_____  No transcript or statement pursuant to either App. R. 9(C) or (D) is necessary.

___X___  Transcript has been completed and already made part of the record.  This is a post-conviction case.  The trial court did not conduct an evidentiary hearing.  The transcript was prepared for the direct appeal.

July 12, 2004
Date

Randall L. Porter

COURT REPORTER ACKNOWLEDGEMENT – MUST BE COMPLETED BY COURT REPORTER BEFORE FILING NOTICE OF APPEAL

Date Order Received _____

Estimated Completion Date

_____          _____
(Give specific date)                          Court Reporter's Signature

Estimated Number of Pages

2

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the foregoing NOTICE OF APPEAL TO THE

ELEVENTH DISTRICT COURT OF APPEALS FROM A FINAL JUDGMENT ENTRY was

forwarded first-class U.S. Mail to LuWayne Annos, Assistant Prosecuting Attorney, Trumbull

County Prosecutor's Office, 160 High St., N.W., 4th Floor, Warren, Ohio 42481, this 12th day of

July, 2004.

COUNSEL FOR PETITIONER

#201412

ELEVENTH DISTRICT COURT OF APPEALS
DOCKETING STATEMENT
(To be attached to and filed with Notice of Appeal)

(CAPTION-must be complete)

State of Ohio
_____

_____
        Plaintiff-Appellee
_____

__vs.
Nathaniel Jackson
_____
        Defendant-Appellant       |

(NAME, ADDRESS, TELEPHONE NO. AND
ATTORNEY REGISTRATION NUMBER FOR
**ALL** COUNSEL)
Randall Porter, (0005835) 8 East Long St.,
Columbus, Ohio  43215 (614) 466-5394)
LuWayne Annos, (0055651)Trumbull County,
150 High Street, N.W. Warren, Ohio 44481
(330) 675-2426
APPEAL NO.
TRIAL COURT NO.  01-CR-794

TYPE OF CASE: (Please indicate)

_____ A.  No transcript of proceedings required.
__X__ B.  Length of transcript is such that preparation time will not be a source of delay. Transcript already
            completed for direct appeal.
_____ C.  Agreed or narrative statement to be submitted pursuant to App.R. 9(C) or (D).
_____ D.  Record was made in administrative hearing and filed with trial court.
_____ E.  All parties to case approve assignment to accelerated calendar.
__X__ F.  Criminal cases involving:
            _____ 1.  Crim. R. 11 challenges.
            __X__ 2.  Post-conviction appeals alleging ineffective assistance of counsel, Capital case.
            _____ 3.  Challenges to sentencing to revocation of probation or to failure to grant probation.
            _____ 4.  Crim.R. 29 or weight of evidence challenges, especially with lesser crimes.
            _____ 5.  Routine DUI cases and other minor traffic offenses.
            _____ 6.  Expungement cases.
_____ G.  Civil cases involving:
            _____ 1.  Routine administrative appeals.
            _____ 2.  Actions on account.
            _____ 3.  Slip and fall.
            _____ 4.  Civ.R. 60(B) motions.
            _____ 5.  Simple contract cases.
            _____ 6.  Minor negligence actions.
            _____ 7.  Property division in divorce case or post-decree support motions.
_____ H.  App. R. 11.2 abortion, adoption or parental rights appeal.
_____ I.  Other _____

F I L E D
COURT OF APPEALS
JUL 1 2 2004
TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

PROBABLE ISSUE FOR REVIEW:  1) Ineffective assistance of counsel; 2) racially biased charging
decision; 3) improper selection of grand jury venire, petit jury venire and grand jury foreperson; 4)
prosecutor's suppression of evidence; 5) denial of experts; 6) denial of motion for substitution of counsel;
7) constitutionality of lethal injection; 8) trial court's inaccurate sentencing opinion; and 9) post-conviction
court's failure to appoint experts, grant discovery and conduct an evidentiary hearing.
NOTE: Information re Record (and Court Reporter's Certification, if applicable) MUST be completed on
Notice of Appeal.

Copy of Judgment Entry being appealed MUST be attached to Notice of Appeal.

CERTIFICATE OF SERVICE:  I certify that I have mailed or otherwise delivered a copy of this Docketing
Statement to all counsel of record or the parties if unrepresented.

DATE:  __July 12, 2004_____              SIGNATURE _____
                                                              Randall L. Porter
[Effective July 1, 1991; amended effective July 1, 1994; July 1, 2003]

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    :

     Plaintiff-Appellee       :

-v-                               :        Case No. 01-CR-794

NATHANIEL JACKSON,                :

     Defendant-Appellant      :        JOURNAL ENTRY

This matter comes before this Court upon Nathaniel Jackson's Motion for Appointment of Counsel. The Court, after being fully advised in the matter GRANTS the Motion and appoints Assistant State Public Defender Randall L. Porter. The Order is effective nun pro tunc to July 9, 2003.

JUDGE JOHN M. STUARD

Proposed Entry Prepared By:

RANDALL L. PORTER – 0005835
Assistant State Public Defender Office of the Ohio Public Defender
8 East Long St., 11th Floor
Columbus, Ohio  4315
(614) 466-5394
(614) 728-3670 Facsimile

TO THE CLERK OF COURTS: YOU ARE ORDERED TO SERVE
COPIES OF THIS JUDGMENT ON ALL COUNSEL OF RECORD
OR UPON THE PARTIES WHO ARE UNREPRESENTED FORTH-
WITH BY ORDINARY MAIL

## IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,      )
     )
Plaintiff-Respondent,      )    Case No. 01-CR-794
     )
     -vs-      )    Judge John Stuard
     )
NATHANIEL JACKSON      )
     )
     Defendant-Petitioner.      )

### AFFIDAVIT OF INDIGENCY

I, Nathaniel Jackson do solemnly swear that I presently, this 12th day of July, 2004, have

no means of financial support and no assets of any value and, therefore, cannot afford to pay for

any legal services, fees, or costs on my behalf in the above-styled case; that I am presently

incarcerated at the Mansfield Correctional Institution; and that I have $ ___3.00___ income per

month.

_Nathaniel Jackson_

NATHANIEL JACKSON
#440-891
P.O. Box 788
Mansfield, Ohio 44901

Sworn and subscribed in my presence this 12th day of July 2004.

NOTARY PUBLIC

RANDALL L. PORTER   Attorney At Law
Notary Public, State of Ohio
MY COMMISSION HAS NO EXPIRING

#201414

THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                                    )
                                                 )
    Plaintiff-Respondent,                        )    CASE NO. 2001 CR 794
                                                 )
-vs-                                             )    JUDGE JOHN M. STUARD
                                                 )
NATHANIEL JACKSON,                               )    FINDINGS OF FACT AND
                                                 )    CONCLUSIONS OF LAW
    Defendant-Petitioner.                        )    DISMISSING PETITIONER'S
                                                 )    ORIGINAL AND AMENDED
                                                 )    PETITION FOR POSTCONVICTION
                                                 )    RELIEF

This matter came before the Court on Defendant-Petitioner Nathaniel Jackson (hereinafter, "Petitioner") Postconviction Petition, Volume I & II (hereinafter, "original Petition") filed with this Court January 5, 2004.  Pursuant to two extensions permitted by this Court, Plaintiff-Respondent State of Ohio's (hereinafter, the "State") filed its motion to dismiss the original petition on March 30, 2004. However, before the State filed its motion to dismiss the original petition, Petitioner filed an Amended Postconviction Petition, Volume I & II ("amended Petition") on March 29, 2004.  This Court permitted the State one extension to respond to the amended Petition.  The State filed its motion to dismiss the amended Petition on April 13, 2004, and the Petitioner followed with his Memorandum Contra to the Prosecutor's Motion to Dismiss("Memo Contra"). This Court has reviewed these submissions, the court file, the record and applicable law.

Revised Code 2953.21(C) provides as follows:

> "Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the

clerk of the court, and the court reporter's transcript."

Furthermore, "[b]road assertions and general conclusory allegations without more to establish the requisite elements of incompetence and prejudice are inadequate to warrant a hearing on the petition." *State v. Davie* (Sept. 25, 1998), 11th Dist. No. 97-T-0175, citing *State v. Jackson* (1980), 64 Ohio St. 2d 107, 111.

In accordance with this authority, this Court has reviewed the above-listed materials so as to determine whether there are substantive grounds for relief warranting a hearing on the Petitioner's original and amended Petition. Based upon this review, the Court finds Petitioner has failed to show substantive grounds for relief as to the Fourteen Causes of Action set forth in his Petition, and in his Fifteen Causes of Action set forth in the amended Petition. Therefore, both submissions[1] are subject to dismissal without a hearing. In accordance with R.C. 2953.21(G), the Court's Findings of Fact and Conclusions of Law are set forth herein.

This Court makes the following findings of fact with respect to Petitioner's original Petition and amended Petition.

1)    On December 28, 2001, the Trumbull County Grand Jury returned an indictment charging Petitioner with: Count One, Aggravated Murder in violation of R.C. 2903.01(A); Count Two, Aggravated Murder, in violation of R.C. 2903. 01(B); Count Three, Aggravated Burglary (F1),

---

[1]This Court acknowledges that pursuant to R.C. 2953.21(F) a postconviction petitioner may amend his original petition at any time before the State files its answer or motion. This Court will certainly consider any new exhibits and arguments made on Petitioner's behalf in the amended Petition. However, this Court would request that Petitioner's counsel refrain from formatting the amended Petition in such a manner as to merely scramble earlier causes of actions, and in reality, add few new arguments or exhibits. Fashioning an entry in response to Petitioner's claims has proven to be a logistical nightmare and an unnecessary repetitive waste of resources for all parties concerned.

-2-

with a firearm specification, in violation of R.C. 2911.(A)(1)(2) & R.C. 2945.145 and Count Four, Aggravated Robbery (F1) with a firearm specification in violation of R.C. 2929.04 (A)(7) & R.C. 2945.145. All charges stem from the shooting death of Robert Fingerhut, which occurred Dec.11, 2001, at a residence which he shared with Petitioner's co-defendant, Donna Roberts ("Roberts"), in Howland Township, Trumbull County, Ohio.

2)      Jury selection in Petitioner's case commenced October 8, 2002. He was initially represented at trial by Atty. James Lewis and Atty. Anthony Consoldane.   After presentation of evidence on November 8, 2002, the jury returned a guilty verdict on all counts and specifications finding that Petitioner was both the principal offender and acted with prior calculation and design. Because Counts One and Two of the indictment merged for sentencing purposes, the State elected to dismiss Count Two and proceed to the mitigating hearing on Count One alone.  At mitigation, Petitioner was represented by Atty. Consoldane and Atty. Thomas Wright.  Atty. Wright substituted for Atty. Lewis who had unexpectedly taken ill.

3)      During his mitigation phase, Petitioner called six witnesses including one expert witness, Dr. Sandra McPherson and five lay witnesses.

4)      After due deliberation, the jury returned a recommendation of a death sentence for the aggravated murder of Robert Fingerhut.

5)      On December 9, 2002, this Court imposed the sentence of death on Petitioner for Count One of the indictment, a ten-year sentence on Count Three of the indictment to be preceded by a three-year sentence on a firearms specification and a ten-year sentence on Count Four, also preceded by a three-year sentence of a firearm specification. The principal sentences on Counts Three and Four were to be served consecutive to one another, and the firearms specifications

-3-

merged for sentencing purposes.

6)     Petitioner's appellate counsel, John P. Laczko and Dennis Day Lager, filed timely notice of appeal and with the Supreme Court of Ohio under case number 03-137. Both Petitioner and the State have filed their merit briefs and are awaiting an oral arguments date at this writing. Petitioner's appellate brief contains Twelve Propositions of Law which Petitioner has listed at paragraph 12 of his original and his amended Petition. This Court would adopt and incorporate that listing here.

7)     Petitioner's amended and original Petition is filed by Atty. David Bodiker and Atty. Randall Porter, of the Office of the Ohio Public Defender. Petitioner proposes Fourteen Causes of Action in his original Petition, and in his Fifteen Causes of Action in the amended Petition which this Court will now address individually and where possible simultaneously.

## FIRST CAUSE OF ACTION (original Petition)
## FOURTEENTH CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this First Cause of Action (original Petition) and the Fourteenth Cause of Action (amended Petition).

1)     In his first Cause of Action in the original Petition, and Fourteenth Cause of Action in the Amended Petition, Petitioner argues that his sentence is void or voidable because Ohio's current postconviction scheme is cursory, inadequate and ineffective.

2)     He attaches no exhibits to support this claim and makes a request for discovery.

Based upon these findings, the Court makes the following conclusions of law as to The First Cause of Action (original Petition) and the Fourteenth Cause of Action (amended Petition):

1)     Revised Code § 2953.21(C) provides that before granting a hearing on a petition for postconviction relief, the trial court is required to determine whether there are substantive grounds for relief.

2)     The doctrine of res judicata applies to postconviction proceedings. *State v. Perry* (1967), 10 Ohio St.2d 175; *State v. Cole* (1982), 2 Ohio St. 3d 112.

-4-

3) Res judicata is a proper basis upon which to dismiss a claim for relief in a postconviction petition where the claim was raised or could have been raised at trial or on direct appeal, and where the claim could fairly have been determined without resort to evidence dehors the record. *Cole* supra at *112; *Perry*, supra at 180.

4) Throughout the original Petition and the amended Petition, Petitioner made numerous non-specific requests for discovery.  The Eleventh District Court of Appeals held in *State v. Lorraine* (Feb. 23, 1996), 11th Dist. No. 95-T-5196, at *5 - 6. that the burden is on the petitioner to submit evidentiary documents to support a postconviction claim.  It further held that the trial court has no statutory authority to compel discovery.  Unless a hearing is granted, the petitioner is not entitled to discovery.

5) Likewise, the Ohio Supreme Court has held courts are not required to provide petitioners discovery in postconviction proceedings. *State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office* (1999), 87 Ohio St.3d 158, 159. "Whether discovery may be had on a postconviction claim is a matter committed to the discretion of the trial court." *State v. Wiles* (1998), 126 Ohio App.3d 71, 79.  As this Court dismisses both the original and amended Petition without hearing, Petitioner is not entitled to conduct discovery.  Therefore, this Court will not order discovery to support this claim.

6) This action is barred by the doctrine of res judicata.  Petitioner is not entitled to discovery.  Petitioner does not demonstrate substantive grounds for relief.

## SECOND CAUSE OF ACTION (original Petition)
## FIRST CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this Second Cause of Action (original Petition) and First Cause of Action (amended Petition):

1) Petitioner argues that his judgment and sentence are void or voidable because the Trumbull County Prosecutor employed discretion in capital cases in a racially discriminatory manner.

2) To his Second Cause of Action (original Petition), he attaches Ex. 1 (Census Bureau breakdown of Trumbull County's Population by race, Ex. 2 (Ohio Public Defender Office's breakdown of Death Row inmate by race and sex and the race of their victims) Ex. 3 (Affidavit by Randall Porter, Assistant State Public Defender and counsel of record for this Postconviction claim).  To his First Cause of Action in the Amended Petition, Petitioner attaches the same Ex. 1 and Ex 2.  Ex. 3 through Ex. 34 appear to be a rouge's gallery collection of prison identification photographs along with miscellaneous filings from the Trumbull County Court of Common Pleas. All of the inmates are serving time

for some form of homicide, the most common charge being Aggravated Murder.  Ex. 35 is the Porter affidavit referenced previously.

3)  Petitioner in his direct appeal before the Ohio Supreme Court argues at page 76 of his brief that "the Ohio system has resulted in the imposition of death penalties in a racially discriminatory manner, with blacks and those who killed white victims being much more likely to get the death penalty." At page 88-89 of his brief, he argues that 49% of Ohio's Death Row inmates are African American, and that the victim's race influences prosecutorial discretion in charging decisions.

4)  Petitioner's co-defendant, Donna Roberts, is a Caucasian female who was also indicted by the grand jury on identical charges and specifications under Trumbull County Common Pleas Court No. 01-CR-793, and who was ultimately tried before this Court and sentenced to death.

The Court makes the following Conclusions of Law as to this Second Cause of Action (original Petition) and First Cause of Action amended Petition:

1)  Petitioner's statistics and photographs contribute no operative *facts* to his argument that a defendant's or a victim's race had any influence over the prosecutor's discretion in pursuing a death penalty.  Taking his evidence at face value, it is apparent that Trumbull County has sent both African Americans and Caucasians to Death Row, and has imposed life sentences for both African-Americans and Caucasians. Relying upon the Petitioner's pictorial evidence, it appears that five of Trumbull County's African American murderers are on Death Row, while another eight Trumbull County African American murders received life sentences.  At paragraph 21 of his amended petition, Petitioner lists sixteen defendants serving life prison terms for homicides wherein the victim was Caucasian. This evidence fails gives no credence to Petitioner's theory that his race or Mr. Fingerhut's race influenced the State's election to seek the death penalty in this matter. With a lack of operative facts, this Court finds no substantive grounds for relief. This claim is dismissed without hearing.  R.C. 2953.21 (C).

2)  "To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.' " (Quoting *United States v. Berrios* [C.A. 2, 1974] 501 F 2d 1207, 1211).  Petitioner's co-defendant, a white female, received the same death penalty for the same crime.  This Court is completely unpersuaded by Petitioner's argument that Roberts was possibly offered a plea to a life sentence in this

-6-

case, or that the State offered her a life sentence because of her race.  Justice was ultimately as color blind as it could be in this case.  Both of Fingerhut's killers, one white, one black, are awaiting execution.

3) Petitioner offers no proof whatsoever that he was singled out for prosecution or that the prosecution's election to pursue the death penalty in this matter was made in bad faith, or based on any impermissible considerations such as his race or the race of his victim. Petitioner states in his Memorandum Contra to the Prosecutor's Motion to Dismiss at page 10 that nine of ten Trumbull County Death Row inmates are there as a result of killing a Caucasian.  Petitioner's own Ex. 1 helps explain why:  Over 90% of Trumbull County's population is white, so by pure population sampling it is likely that 90% of Death Row inmates' victims will be Caucasian as well. This Court sentenced Roderick Davie for the death of an African American, and a fellow judge in this Court sentenced Sean Carter to death for killing African American.  Therefore, Petitioner can establish no pattern of discrimination on the part of the Trumbull County Prosecutor's Office for seeking the death penalty.

4) As the alleged racial disparity was raised in Petitioner's merit brief to the Ohio Supreme this claim is barred by the doctrine of res judicata.  *Cole, Perry,* supra.  Petitioner claims in his Memorandum Contra at page 10 that "[d]irect appeal counsel made a theoretical, as opposed to factual argument.  Counsel was limited to making that argument, as opposed to the factual argument that Nathaniel Jackson now makes, because the facts upon which Nathaniel Jackson relies are not contained in the trial record."  However.  in order to overcome a res judicata bar, the evidence dehors the record must not be evidence which was in existence and available for use at the time of trial and which could have been submitted at trial if the defendant wished to use it.  *State v. Cowan* (2002) 151 Ohio App. 3d 228, ¶15.  Clearly, Petitioner's pictorial evidence and racial statistics would have been available for pre-trial consideration and therefore, this claim is subject to a res judicata bar.

5) Petitioner's request for discovery is denied.  *Lorraine, Love, Wiles,* supra.

**THIRD CAUSE OF ACTION (original Petition)**
**SECOND CAUSE OF ACTION (amended Petition)**

The Court makes the following Findings of Fact as to this Third Cause of Action (original Petition) and Second Cause of Action (amended Petition):

1) Petitioner alleges that the grand jury venire which indicted him disproportionately excluded African-Americans.

2) To support this claim he affixes Ex. 3 (original petition) and Ex. 35 (amended Petition)

-7-

(detailed in previous cause of action); Ex. 4 (original Petition) and Ex. 54 (amended Petition) a petit court jurors list which makes no reference to anyone's race; Ex. 5 (original Petition) and Ex. 37 (amended Petition) (original Petition), an Ohio News Bureau article from Feb. 20, 1992 entitled "Potential juror raises race question, a Tribune Chronicle article from Murder trial jury pool makeup questioned (Ex. 36, amended Petition), and an Akron Beacon Journal article from Feb. 20, 1992, entitled" Potential juror asks about lack of blacks" (Ex. 38, amended Petition); Ex. 6 (original Petition) and Ex. 39 (amended Petition), Affidavit of Diane Wiley, president of the National Jury Project Midwest, who opines that Trumbull County African Americans were "seriously underrepresented" in the Roderick Davie venire.

3) Prior to trial, Petitioner filed a motion entitled, "Defendant's Motion to Reduce Bias in Annual Jury List." (T.d. #174). This motion took issue with Trumbull County's method of compiling a jury list, from which both petit and grand jurors are selected. This Court denied the motion. (T.d. #176).

4) Petitioner attaches no evidence detailing the actual racial composition of the grand jury which indicted him.

5) Petitioner requests discovery and the appointment of experts to support this claim.

The Court makes the following Conclusions of Law as to this Third Cause of Action (original Petition) and Second Cause of Action (amended Petition):

1) None of the exhibits submitted make any reference to the racial composition of Petitioner's grand jury panel, much less that African Americans, or anyone else for that matter, were impermissibly excluded from his grand jury venire. Therefore, Petitioner fails to present sufficient operative facts to support substantive grounds for relief on this claim and this Court dismisses this claim without hearing. R.C. 2953.21(C); *Kapper,* supra, at 38.

2) In *State v. Williams* (1997), 79 Ohio St. 3d. 1, 17, the Supreme Court of Ohio held, "not every grand jury has to represent a 'fair cross-section,' so long as the selection process is nondiscriminatory." The Ohio Supreme Court in *State v. Issa* (2001), 93 Ohio St. 3d 49, 62, ruled that the use of voter registration roles as a source for grand and petit jurors does not intentionally exclude any specific racial group. Since both whites and blacks are equally entitled to register to vote, the process is nondiscriminatory. Petitioner fails to demonstrate that selecting his grand jurors from a list of registered voters intentionally excluded any African American or any other racial minority.

3) Furthermore, this issue was raised at trial and could have been raised on direct appeal. As such, res judicata bars this claims from further consideration by this Court. *Perry,* supra, at 180, *Cole,* supra, at paragraph one of the syllabus. Clearly, all of these exhibits would

have been available to Petitioner at the time of trial and could have been raised in the form of a pre-trial motion.  Therefore, the res judicata bar is applicable.  *Cowan, supra.*

4) In Ex. 36, 37, 38, and 39 (amended Petition), Petitioner relies on newspaper articles and one affidavit concerning alleged racial bias in the Roderick Davie capital case and its juror selection process.  The Davie case was tried in this Court in 1992.  Despite the newspaper coverage and the affidavit by Ms. Wiley, the Ohio Supreme Court specifically held that there was no racial bias in the Davie case. "Davie's claim that exclusive use of voter registration lists in jury selection deprived him of an impartial jury representing a fair cross-section also lacks merit. Utilization of voter rolls alone to choose prospective jurors is constitutional. See, *e.g., State v. Johnson* (1972), 31 Ohio St.2d 106, 60 O.O.2d 85, 285 N.E.2d 751, paragraph two of the syllabus; *State v. Hill* (1992), 64 Ohio St.3d 313, 325-326, 595 N.E.2d 884, 895. Davie has not demonstrated an unfair lack of representation of African Americans in Trumbull County juries, nor has he shown that such alleged underrepresentation resulted from a systematic exclusion by the state of that particular group.  See *State v. Puente* (1982), 69 Ohio St. 2d 136, 138." *State v. Davie* (1997), Ohio St. 3d 311, 316-317

5) If the Ohio Supreme Court could find no racial discrimination in the Davie case, it would make positively no sense for this Court to construe Petitioner's submissions generated as a result of the Davie case as having any applicability to the case at bar.

6) These exhibits and averments  do nothing to warrant an order for discovery in this case. *Lorraine, supra,* at *5, *Love; Wiles.*  Nor do the arguments and exhibits compel discovery. The Eleventh District Court of Appeals has held that because postconviction proceedings are civil in nature, a petitioner has no constitutional right to court-appointed counsel. "Consequently, a petitioner would have no corresponding right to expert assistance." *State v. Williams* (Oct. 19, 1998), 11th Dist. No. 97-T-0153, at 9.

7) Therefore, Petitioner's Third Cause of Action, (original Petition), and Second Cause of Action (amended Petition) are dismissed  without hearing.

## FOURTH CAUSE OF ACTION (original Petition)
## THIRD CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this Fourth  Cause of Action (original Petition) and Third Cause of Action (amended Petition):

1) Petitioner next complains that his grand jury foreperson may have been selected in a racially discriminatory manner.

2) To support this claim, he includes Petitioner's indictment (Ex. 7, original Petition; Ex. 40 amended Petition), an affidavit of Mark Rooks wherein he ascertained that the foreperson

-9-

of the grand jury which indicted Petitioner was Caucasian (Ex. 8, original Petition; Ex. 41 amended Petition), a second affidavit from Diane Wiley, previously identified, who opined in 1998 that Hamilton County's capital grand juries were underrepresented by African Americans (Ex. 9, original Petition, Ex. 42, amended Petition), and an article from Columbus Alive magazine quoting members of the Ohio Public Defender's Office alleging the Hamilton County grand jury forepersons are selected in a racially discriminatory manner. (Ex. 10, original Petition, Ex. 43, amended Petition).

3)    R.C. 2939.02 permits the presiding common pleas judge to select grand jury foreperson for capital cases from outside the annual grand jury lists.

The Court makes the following Conclusions of Law as to this Fourth Cause of Action (original Petition) and Third Cause of Action (amended Petition):

1)    None of the exhibits Petitioner relies upon suggest that The Trumbull County Common Pleas Court has *ever* utilized R.C. 2939.02 to go beyond the annual jury list to facilitate the selection of a grand jury foreman or forewoman. They do not present one scintilla of evidence that Petitioner's grand jury forewoman was selected in a racially discriminatory manner. Therefore, this claim is subject to dismissal without hearing. *Kapper*, supra, R.C. 2953.21(C).

2)    Petitioner seeks to have this Court extrapolate from the fact that Hamilton County's presiding judge may have hand-picked white, male grand jury foremen, the same practice must have occurred here. Such a proposition is far too tangential to be substantive. None of his exhibits remotely support this theory, nor is this Court aware of any instance where any of the four general division judges of this Court selected a grand jury foreman or forewoman from a source other than the annual jury list. Indeed, the only way this Court, or the other three common pleas judges, would ever reach beyond the jury list to fill the foreman's or forewoman's position would be if no qualified citizens appeared on the list to serve in that capacity. In the thirteen years this judge has been on the bench, there has never been a need to exercise this judge's prerogative of hand selecting a foreman or forewoman from a source other than the jury list.

3)    Furthermore, the First Appellate District in *State v. Hughbanks* (Jan. 17, 2003), 1ˢᵗ Dist. No. C-010372, ruled that Hughbanks' claim based on the identical theory was barred by the doctrine of res judicata as the information regarding the composition of the grand jury would have been available to Hughbanks at the time of trial.

4)    This Court agrees that this matter is barred by the doctrine of res judicata. See *Perry, Cole*, supra. Certainly the Wiley affidavit and the Columbus Alive article were available to Petitioner at the time of his trial and could have been used to raise the appropriate challenge during pre-trial proceedings.

5)  Finally, Petitioner's far fetched speculation of a racially biased grand jury, rooted solely in  Wiley's and the Ohio Public Defender's Office's obvious  dissatisfaction with a perfectly legal method of foreman or forewoman selection, does not warrant an order of discovery in this case.  See *Lorraine, Cowan,* supra.

6)  The claim is equally unworthy of the appointment of court-funded experts. As this Court will not be setting a hearing for this claim, Petitioner has no constitutional or statutory right to expert assistance. *Williams,* supra.  The Martha Phillips affidavit attached to Petitioner's Memorandum Contra shows only that Ms. Phillips experienced some difficulties in tracking down information concerning the procedures used to draw the Roderick Davie trial jury.  The Court gives little weight to this affidavit as it has no direct bearing on this case.

7)  For these reasons, these Causes of Actions are dismissed without hearing, and without court-appointed experts or court-order discovery.

VOL **1032** PAGE **888**

-11-

### FIFTH CAUSE OF ACTION (original Petition)
### FOURTH CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this Fifth Cause of Action (original Petition) and Fourth Cause of Action (amended Petition):

1) Petitioner maintains that law enforcement agencies suppressed a report that Mr. Fingerhut had "plans" to "fake" his own death. He claims that as such, the prosecution failed to disclose "favorable" evidence to the defense as required by *Brady v. Maryland* (1963), 373 U.S. 83, 86.

2) To support this allegation, Counsel of record Randall Porter attaches his own affidavit (Ex. 3, Ex. 35) to the petition stating Atty. John Juhasz, trial counsel for co-defendant Donna Roberts, told him of the existence of a police report which stated Fingerhut supposedly had planned to fake his own death by use of a body double. The Porter affidavit does not state that Atty. Juhasz said the report was withheld from him, nor does Petitioner's trial counsel provide an affidavit stating that they never saw the purported document or that they saw it and elected not to use it at trial.

3) Petitioner does not attach the police report in question. Therefore, there is no confirmation as to the existence of the police report as Petitioner states in his Memorandum Contra at page 16. To the contrary, Atty. Juhasz's hearsay statement offers no competent, credible evidence before this Court that a formal police report containing the body double story was *ever* filed with *any* police department.

4) In his amended Petition, Petitioner attaches Ex. 44, an unsigned, handwritten letter wherein the author states that "RSF" had an "obsession about faking his own death." This letter does not appear to be a police report, nor does it suggest that the police or the prosecutor was aware of this "obsession" or the existence of this letter. In Ex. 3 attached to Petitioner's Memorandum Contra Petitioner identifies the author of this letter as co-defendant Donna Roberts and claims she sent it to him.

The Court makes the following Conclusions of Law for the Fifth Cause of Action (original Petition) and Fourth Cause of Action (amended Petition):

1) Petitioner supplies no evidence to this Court to support his claim that the State withheld any evidence from him, exculpatory or otherwise. Petitioner supplies no credible evidence to suggest that a police report stating that Mr. Fingerhut planned to fake his own death ever existed Therefore, this Cause of Action is subject to dismissal without hearing. *Kapper*, R.C. 2953.21(C).

2) Petitioner in his Memorandum Contra tries to excuse his lack of evidence on this point by citing to *State ex rel Steckman v. Jackson* (1994) 70 Ohio St. 3d 420 and arguing that he

-12-

has been unable to review relevant law enforcement files to find this evidence. This Court finds this claim disingenuous because despite *Steckman,* Petitioner was still able to secure such exhibits as amended Petition Ex. 67, 68, 69, 70, 71, 72 and 74 which police are reports. This Court will not find a discovery violation for a report that he cannot prove ever existed.

3) Additionally, in *State v. Calhoun* (1999) 86 Ohio St. 3d 279, 285, the Ohio Supreme Court lists several guidelines a trial court may follow in determining the credibility of a postconviction affidavit. Among those factors are whether the affidavit relies on hearsay, and whether the affiant has an interest in the outcome of the case. Id. With respect to this issue, the affiant, Atty. Porter, relies upon hearsay evidence as supplied by Atty. Juhasz who has never backed up Atty. Porter's claim with his own affidavit. Secondly, Atty. Porter has a clear interest in the outcome of this case as the Petitioner's counsel of record. Therefore, this Court concludes that the Porter affidavit contains no competent, credible evidence for this Court to believe that such a report ever existed.

4) Furthermore, the evidence is not exculpatory. Even if Mr. Fingerhut engaged in musings regarding a "body double" homicide, and even if these musings were memorialized in a police report, Petitioner admitted to shooting a man in Robert Fingerhut's home who he identified as Fingerhut. Even in the most unlikely occurrence that Petitioner shot a "body double," he still planned and executed an aggravated murder of a man who a forensic pathologist conclusively concluded was dead, and the evidence overwhelmingly demonstrates that Petitioner is responsible for that death. The unfounded and baseless theory that Robert Fingerhut may be still roaming the face of the earth and enjoying his own insurance proceeds does not exonerate Petitioner from causing the death of another during the course of an aggravated burglary and aggravated robbery with well documented prior calculation and design.

5) Moreover, even if this Court gave any credibility to allegation that this story appeared in an official police report, Petitioner obviously was on notice that Fingerhut had discussed the "body double" scenario because Petitioner claims to have received this information in a letter he insists is from co-defendant, Donna Roberts. Memorandum Contra, Ex. 3.

6) In his amended Petition at paragraph 54, Petitioner again makes a request for discovery to support this claim. This will request will be denied pursuant to the previously stated rationale that Petitioner is not entitled to discovery because he is not entitled to a hearing. *Lorraine,* at *5, *Love, Wiles.*

-13-

## FIFTH CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this Fifth Cause of Action (amended Petition):

1) Petitioner claims he was denied effective assistance of counsel because he did not have a "meaningful" relationship with his attorneys.

2) To support that claim to his amended Petition he attaches undated letter, Ex. 45, wherein Petitioner complains that Atty. Anthony Consoldane, one of two Ohio Public Defenders assigned to his case, failed to visit him frequently in jail and failed to play the audio-tape telephone conversations of himself co-defendant Donna Roberts.

3) In an affidavit submitted with his Memorandum Contra, Ex. 3 Petitioner claims Atty. Consoldane not only visited him, but visited him on weekends. He claims he sent Ex. 45 to this Court in February, 2001, which was ten months before Robert Fingerhut was murdered.

The Court makes the following Conclusions of Law as to this Fifth Cause of Action (amended Petition)

1) When a petitioner asserts a claim of ineffective assistance of counsel, he bears the initial burden to submit evidence to demonstrate that his defense was prejudiced by counsel's ineffectiveness. If he fails to do so, no evidentiary hearing is required. *State. v. Pankey* (1981), 68 Ohio St. 2d 58, 59 citing *Jackson, supra*, at syllabus.

2) In *State v. Pierce* (1998), 128 Ohio App. 3d 578, 586, the Eleventh District Court of Appeals held that in asserting an ineffective assistance claim, the petitioner must submit materials containing sufficient operative facts to demonstrate both prongs of the two-part test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 687: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. Prejudice will not be found unless appellant demonstrates there is a reasonable possibility that, if not for counsel's errors, the result of the trial would have been different.

3) "In the absence of positive proof to the contrary, certainly there is a reasonable inference that one licensed by the state to practice law and appointed by a court to represent an accused did competently and properly represent such accused during his trial." *Vaughn v. Maxwell* (1965), 2 Ohio St. 2d 299, 301. In order to overcome this presumption of effectiveness, the petitioner must submit sufficient operative facts or evidentiary documents that, if proven would show that the petitioner was prejudiced by ineffective assistance of counsel. *State v. Smith* (1987), 36 Ohio App. 3d 152, 163)

4) This Court finds that neither Ex. 45 nor Ex 3 suggest that either Atty. Consoldane or Atty. Lewis' performance was deficient pursuant to *Strickland*. They merely suggest that

-14-

Petitioner felt his attorneys were not paying enough attention to him ten months before he was even arrested for this crime, or, if the February 2001 date is in error, eight months before his trial started.

5) This Court has no independent recollection of reviewing this letter. This would be the sole explanation why the letter was not addressed within the record before this Court. However, this Court does specifically recall that during pre-trial hearings, voir dire, the guilt and penalty phase Petitioner made no complaints concerning either Atty. Lewis or Atty. Consoldane. This Court observed Petitioner communicating and interacting with them. In fact, there are references in the transcript where Petitioner communicated with Atty. Consoldane.     (T.p. Vol. 16, p. 4, 5, 196). Therefore, based on this Court's own observations and the lack of evidence to the contrary in the record, this Court cannot find that communication had broken down, nor was there an irreconcilable conflict.

6) Incarcerated defendants commonly find much to complain about with both publicly funded, and even privately retained attorneys. One complaint of dissatisfaction is not tantamount to ineffective assistance of counsel.

7) "A client and an attorney need not share "rapport" or a "meaningful relationship." *State v. McNeill* (1998), 83 Ohio St. 3d 438, 452; *State v. Herness* (1997), 79 Ohio St. 3d 53, 66 citing *Morris v. Slappy* (1983), 461 U.S. 1, 13. "To discharge a court- appointed attorney, the defendant must show 'a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Coleman* (1988), 37 Ohio St. 3d 286, 292."

8) This Court finds nothing in Ex. 45 or Ex. 3 to suggest that there was a "breakdown" in the attorney-client relationship, just a dissatisfaction common among defendants in situations similar to Petitioner's. Having provided no operative facts to support his claim, this Court finds no substantive grounds for relief and dismisses this claim without hearing.

## SIXTH CAUSE OF ACTION (original Petition)
## SEVENTH CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this Sixth Cause of Action (original Petition) and Seventh Cause of Action (amended Petition):

1) Petitioner argues that African Americans were systematically culled from the jury process.

2) Petitioner attaches the census data cited previously by the Court (Ex. 1 in amended and original Petitions), newspaper articles concerning the lack of African Americans in the Roderick Davie jury pool (Ex. 3, 4, 5,  original Petition, Ex. 36, 37, 38), the Diane Wiley

affidavit (Ex. 6 original Petition, Ex. 39 amended Petition), and an affidavit from Atty. Dennis Day Lager stating that all of the jurors in co-defendant Roberts' case were Caucasian.

The Court makes the following Conclusions of Law as to this Sixth Cause of Action (original Petition) and Seventh Cause of Action (amended Petition):

1) None of the exhibits submitted by Petitioner support his claim that African Americans, or any other minority members, were "systematically culled" from the jury selection process. The fact that no African American was ultimately *seated* on either the Davie, Roberts or Jackson juries is not indicative of a systemic *removal* of any potential juror. Because Petitioner provides no operative facts to support this claim, this Court finds no substantive grounds for relief and dismisses it without hearing.

2) Furthermore, the claim of underrepresentation of African Americans in the jury pool would have been evident at the time of trial, and therefore could have been raised on direct appeal. The claim is thus barred by res judicata. *State v. Wilson* (June 24, 1998), C.A. No.97CA006683, at *7; *Cole, Perry*, supra.

3) Also, the Ohio Supreme Court found the Wiley affidavit unpersuasive in the Davie case, and specifically held that Davie had not demonstrated an unfair lack of representation of African Americans in Trumbull County juries, nor did he show that such alleged underrepresentation resulted from a systematic exclusion by the state of that particular group. *State v. Davie* (1997), 80 Ohio St. 3d 311, 316-317. If Wiley's opinion failed to convince the panel reviewing Davie's allegation of underrepresentation, it is axiomatic that it must fail to persuade this Court in the case sub judice.

4) Finally, this Court again rejects Petitioner's request for discovery. He is not entitled to a hearing therefore he is not entitled to discovery. See *Lorraine*, supra, at *5

## SIXTH CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this Sixth Cause of Action (amended Petition):

1) Petitioner argues his death sentence is void or voidable because his counsel failed to retain the services of a "mitigation specialist."

2) To his amended Petition he includes Ex. 46-53 which are fully described in the court's response to the Seventh/Eighth Cause of action.

-16-

3)    He attaches as part of his Memorandum Contra an order of this Court dated Jan. 18, 2002 authorizing $5,000 in public funds to hire Dr. Sandra McPherson and Donald McPherson "as expert assistance to aid in the Defense." Ex. 5.

The Court makes the following Conclusions of Law with respect to Petitioner's Sixth Cause of Action:

1)    Petitioner's exhibits fail to provide sufficient operative facts to suggest counsel did not obtain a "mitigation specialist." Dr. McPherson was Petitioner's handpicked expert. She told the jury, "my purpose was to understand the Defendant and to develop information for this trial."

2)    Dr. McPherson has testified in numerous capital murder cases as a mitigation expert in the State of Ohio. *State v. Tresh* (2001), 90 Ohio St. 3d 460; *State v. Carter* (2000), 89 Ohio St. 593; *State v. McNeill* (1998), 83 Ohio St. 3d 438; *State v. Otte* (1996), 74 Ohio St. 3d 555; *State v. Jenkins* (1984), 15 Ohio St. 3d 164.

3)    This Court finds that Dr. McPherson qualifies as a mitigation specialist as a result of her training, expertise, education, experience and prior testimony on behalf of capital defendants.

4)    Furthermore, any challenges to Dr. McPerhson's qualifications could have been raised in Petitioner's direct appeal and is therefore barred by the doctrine of res judicata. *Perry, Cole,* supra.

5)    Not only does Petitioner fail to raise sufficient operative facts pursuant to *Kapper,* supra, he raises a claim that is specifically belied by the record. He submits no evidence that trial counsel's selection of Dr. McPherson was not a reasonable trial strategy, particularly in light of her previous profession experience. This Claim is void of substantive grounds for relief and is hereby dismissed without hearing.


**SEVENTH CAUSE OF ACTION (original Petition)**
**EIGHTH  CAUSE OF ACTION (amended Petition)**

The Court makes the following Findings of Fact as to this Seventh  Cause of Action (original Petition) and Eighth Cause of Action (amended Petition):

1)    Petitioner alleges his trial counsel was ineffective for a variety of so called failures at several phases of his trial proceedings.

2)    To support this claim, Petitioner affixes the following exhibits to his Petitions: His Youngstown Public Schools Psychological Report from 1986 (age 13) listing his full

scale I.Q. at 73 (Ex. 11, original Petition, Ex.53 amended Petition ); His Youngstown Public Schools Psychological Report from 1989 (age 17) listing his full scale I.Q. at 70 (Ex. 12, original Petition, Ex.57, amended Petition); Affidavit of Public Defender Investigator Jessica Love (Ex. 13, original Petition, Ex.58, amended Petition); Affidavit of Dorian Hall Ohio Public Defender Mitigation Specialist (Ex. 14, original Petition Ex. 59, amended Petition); Testimony of Forensic Social Worker Jill Miller from the Lawrence Landrum evidentiary hearing (Ex. 15, original Petition, Ex 60. amended Petition), Report of Dr. Sandra McPherson (Ex. 16, original Petition, Ex 61, amended Petition); Affidavit of Forensic Psychologist Dr. Robert Kaplan (Ex. 17, original Petition, Ex. 64,amended Petition); Testimony of Dr. Robert Smith (Ex. 18, original Petition, 62 Amended Petition); Testimony of Dr. Theodore Van Doran Parran (Ex. 19, original Petition, Ex.63, amended Petition). In the amended Petition, Petitioner adds Ex. 46, a Youngstown City School record of his Individualized Education Program; Ex. 47, a compilation of Petitioner's various adult and juvenile records and probation reports as maintained in Mahoning County; Ex. 48 - Petitioner's discharge summary from Neil Kennedy Recovery Clinic dated 3/22/00;Ex. 49 Affidavit of Pauline Korneagay, mother of Petitioner; Ex. 50, Affidavit of Tausha Korneagay, sister of Petitioner; Ex. 51, Affidavit of Anthony Korneagay, brother of Petitioner; Ex. 52, Affidavit of Raymond Dickerson, friend of Petitioner's mother; Ex. 53, Affidavit of Kevin Perry, fiancee of Tausha Korneagay.

The Court makes the following Conclusions of Law as to this Seventh Cause of Action (original Petition) and Eighth Cause of Action (amended Petition):

1)  When a petitioner asserts a claim of ineffective assistance of counsel, he bears the initial burden to submit evidence to demonstrate that his defense was prejudiced by counsel's ineffectiveness. If he fails to do so, no evidentiary hearing is required. *Pankey, Jackson,* supra. .

2)  In asserting an ineffective assistance claim, the petitioner must submit materials containing sufficient operative facts to demonstrate both prongs of the two-part test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 687: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. Prejudice will not be found unless appellant demonstrates there is a reasonable possibility that, if not for counsel's errors, the result of the trial would have been different. *Pierce,* supra.

3)  In order to overcome a presumption of effectiveness, the petitioner must submit sufficient operative facts or evidentiary documents that, if proven would show that the petitioner was prejudiced by ineffective assistance of counsel. *Maxwell, Smith,* supra.

4)  None of the exhibits attached to Petitioner's Petitions even remotely suggest that his trial counsel was ineffective. In fact, the Hall affidavit, Miller testimony, and Van Doran

Parran testimony make no mention whatsoever of Petitioner, let alone his counsel and their trial performance. These exhibits are wholly irrelevant to Petitioner's claim of ineffective assistance of counsel.

5) With respect to the Smith and Parron testimony and the Kaplan affidavit, this Court finds any reference to Petitioner's drug abuse as merely cumulative of the testimony offered by Dr. McPherson. It is painfully obvious from the trial testimony that the killing of Robert Fingerhut was not the product of a cocaine abuse episode. Petitioner and Roberts clearly planned this murder while Petitioner was in prison, and then executed Fingerhut in a manner essentially consistent with that plan. These factors alone suggest that if Petitioner had ingested cocaine before this killing that he was able to commit this crime in spite of the cocaine, not because of it. Thus, counsel was not ineffective for not trying to blame this crime on cocaine.

6) The remaining exhibits, which actually reference Petitioner, do not support a claim of ineffectiveness.

7) As an example, Petitioner's two I.Q. tests placing him at a 70 and 73 when he was 13 and 17 years of age would not have changed this Court's opinion that he gave a voluntary and self-serving statement to investigators. The fact that Petitioner sought portray himself as the victim in the Fingerhut shooting, and to promote his own interests by claiming self defense and by clearly attempting to minimize the involvement of his co-defendant, Roberts, far outweighs any import this Court would have placed upon his seventh and tenth grade I.Q. scores in determining the voluntariness of his statement. This Court finds no example of deficient performance or prejudice to Petitioner at the suppression hearing. Furthermore, this issue could have been raised in Petitioner's direct appeal, and is therefore barred by res judicata, *Cole, Perry,* supra.

8) This Court finds no example of ineffectiveness in trial counsel's "failure" to challenge the venire from which the grand or petit juries were drawn. First of all, trial counsel *did* challenge the jury array by making the following objection: "MR. CONSOLDANE: I also have – I make another objection to the array of the Jury picked. We only had one person for color on that Jury and he was excused because he couldn't believe in enforcing the death penalty, and this is far less than what the population is in the Trumbull County. I don't think that is respective of what the black population is in Trumbull County, nor is it fair to my client to have all elderly white people judging him."   (T.p. Vol. 7, p. 1846).When directly questioned by this Court has to whether there was anything prejudicial or unconstitutional about the method employed by the Trumbull County Common Pleas Court for selecting jurors, trial counsel admitted they had nothing to support their theory. (T.p. Vol. 7, p. 1849). These Petitions present no evidence to counter trial counsel's admissions. Again, this Court can find no *Strickland* violation with respect to trial counsel's handling of the issue as to the racial make up of his jury or grand jury.

-19-

9)      Likewise, these Petitions are totally devoid of any examples of impropriety in the selection of the grand jury forewoman. Therefore, no ineffective assistance of counsel claim will stand.

10)     The Petitions' exhibits offer no proof of racially influenced charging practices on the part of the Trumbull County Prosecutor's Office. This particularly true in this case where by the Petitioner, and his co-defendant, a Caucasian woman, were indicted on identical charges. Therefore, trial counsel was not ineffective for failing to challenge the charging practices.

11)     Allegations that trial counsel failed to adequately prepare for mitigation are not supported by the trial record. Per motion of trial counsel, this Court authorized the expenditure of public funds to hire Dr. Sandra McPherson to assistant trial counsel in uncovering potentially helpful information to Petition in his mitigation phase. Now, Petitioner uses affidavits from two Ohio Public Defender employees, Hall and Love, to suggest that either Dr. McPherson or trial counsel somehow dropped the ball in mitigation. This Court is wholly unimpressed with such criticism, particularly coming from two individuals who are not as credentialed or as experienced as Dr. McPherson in assessing mental health issues which are frequently fodder for mitigation arguments. Dr. McPherson is a licensed clinical forensic psychologist. Neither Hall nor Love are so qualified. Neither Hall nor Love are attorneys. Therefore, this Court cannot seriously consider Hall's boiler plate statement (which does not even reference this trial), or Love's post-sentence collection of affidavits to serve as a competent critique of either McPherson or counsel's performance. This Court finds absolutely no merit to the claim that trial counsel failed to hire a "mitigation specialist." Based on her training and experience, Dr. McPherson is eminently qualified as a mitigation specialist, and any argument that she is not wholly feckless.

12)     Thanks to Dr. McPherson's efforts, the jury heard testimony concerning Petitioner's low I.Q. scores attained in adolescence, his drug addiction, his criminal history, and an explanation for his attraction to and involvement with Roberts. Through both Dr. McPherson's and the lay witness' testimony, trial counsel sought to portray Petitioner in a more sympathetic light to the jury than is being suggested in these Petitions, i.e., that counsel should have delegated blame for the Fingerhut killing to Petitioner's drug habit. In its sarcasm-laden argument in response, the State properly points out that an over-emphasis of Petitioner's history of drug abuse may have backfired on Petitioner. This Court agrees and will not brand trial counsel as ineffective for its strategic decision to downplay, though not entirely dismiss, Petitioner's drug habit and the life of crime he voluntarily elected to embark upon to support it. Petitioner submits no evidence to this Court that the outcome of his mitigation phase would have been different had counsel chosen to place more emphasis on Petitioner's drug use than they ultimately did. According to Petitioner's Ex. 16 (original Petition) and Ex. 61(amended Petition), Dr. McPherson or her assisting psychologist, administered a battery of tests to Petitioner,

-20-

including the Thematic Apperception Test, WAIS-3, MMPI-2, WRAT-3, Bender Gestalt, and Rorschach tests. This Court defers to Dr. McPherson's professional judgment as to which tests were appropriate in this matter. This Court finds no reason to infer ineffective assistance when trial counsel did likewise.

13) This Court also declines to find that counsel was ineffective for not arguing that Petitioner's mother was an alcoholic who neglected him. Regrettably, in our society far too many individuals blessed with the gift of children choose the drink or the drug over their precious children's welfare. However, not all of these children grow up to commit aggravated murder. This Court does not view Petitioner's mother's purported alcoholism and resulting neglect of Petitioner as outcome determinative to the mitigation phase. Therefore, this Court cannot find that counsel's performance was deficient in failing to bring this to the jury's attention. Furthermore, counsel sought to call Petitioner's mother to the stand as a mitigation witness, undoubtedly to humanize and engender sympathy for her son who was literally in a battle for his life. Portraying her as a drunk and neglectful mother would have seriously jeopardized her credibility before the jury.

14) Debatable trial tactics generally do not constitute a deprivation of effective assistance of counsel. *State v. Phillips* (1995), 74 Ohio St. 3d 72, 85. The decision of trial counsel not to pursue every possible trial tactic for reasons of strategy does not result in ineffective assistance of counsel. *State v. Brown* (1988), 38 Ohio St. 3d 305, 319. Though the family and friends who supplied affidavits to the amended Petition claim defense counsel did not interview them at all, or asked different questions from those posed during their interviews, their allegations do not support an ineffective assistance of counsel claim. This Court does not even find it "debatable" trial strategy to withhold information from the jury that Petitioner socialized with drug dealers and was alienated from the entire family because he would steal to support his habit (amended Petition Ex. 49), was a drug rehabilitation drop out (amended Petition Ex. 50), forced his family to leave their home because of Petitioner's stealing to support his habit (amended Petition. Ex. 51), lived on the streets because of his drug habit (amended Petition Ex. 52), or that he bragged about being a member of the "crips" street gang. (amended Petition Ex. 53). None of these facts would place Petitioner in a more favorable light for a jury who is trying to decide if the aggravating circumstances of his crime outweigh mitigating factors.

15) Petitioner's exhibits also do not support the claim that his trial counsel did not conduct an independent guilt phase investigation. The very exhibits submitted by Petitioner show that Dr. McPherson conducted a full and complete investigation into Petitioner's background. Petitioner submits no evidence, such as an affidavit from trial counsel, as to what they did or did not do by way of independent investigation. Therefore, he fails to demonstrate ineffectiveness.

16) For the reasons above, Petitioner has failed to submit evidence of ineffectiveness, therefore, this claim is dismissed without hearing and the Court denies any request for discovery. See *Jackson, Lorraine,* supra.

-21-

## EIGHTH CAUSE OF ACTION (original Petition)
## NINTH CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this Eighth Cause of Action (original Petition) and Ninth Cause of Action (amended Petition):

1) Petitioner argues his trial counsel was ineffective for failing discuss with jurors the dynamics of the relationship between Petitioner and Donna Roberts, Roberts' motive for killing fingerhut, Roberts' affinity for African American males, Roberts' supposed superior intelligence and Roberts' full participation in the homicide.

2) To support this claim, Petitioner attaches the following Exhibits: Larry Southwick's interview with Det. Hoolihan and Sgt. Dillon (original Petition Ex. 20, amended Petition Ex. 65); Christine Ellington's interview with Hoolihan and Dillon (original Petition. Ex. 21, amended Petition Ex. 66); Complaint filed by Roberts against Santiago Mason after he purportedly declined her invitation for sex (original Petition Ex. 22, amended Petition Ex. 67); Supplemental Howland Police report in which Roberts claims Fingerhut knew of her relationship with Petitioner (original Petition Ex. 23, amended Petition Ex.68); Supplemental Howland Police report wherein Janet Clay states she saw Petitioner and Roberts smoking crack cocaine at her home (original Petition Ex. 24, amended Petition Ex. 69); Supplemental Howland Police report of Roberts' initial police interview at the scene (original Petition Ex. 25, amended Petition Ex. 70); Investigative notes made by Dillon (original Petition Ex. 26, amended Petition Ex. 71); A list of prescriptions recovered from the Fingerhut residence after the homicide (original Petition Ex. 27, amended Petition Ex. 72); An unsigned note regarding a supposed "rush to judgment" in the Fingerhut homicide (original Petition Ex. 28, amended Petition 73); Supplement Trumbull County Sheriff's report of possible bloodstains at the Fingerhut residence (original Petition Ex. 29, amended Petition Ex. 74); Supplemental Trumbull County Sheriff's Department stating Petitioner was uncooperative in completing handwriting exemplars (original Petition Ex. 30, amended Petition 75); A copy of Petitioner's Proposition of Law No. 2 as it appears in his pending brief to the Ohio Supreme Court (original Petition Ex. 31, amended Petition Ex. 76); Report of Forensic Scientist Donna L. Rose stating "[g]un shot residue was not conclusively identified" on Roberts' hands (amended Petition Ex. 77).

3) Petitioner requests discovery to support his claim.

The Court makes the following Conclusions of Law as to this Eighth Cause of Action (original Petition) and Ninth Cause of Action (amended Petition):

1) The doctrine of res judicata applies to postconviction proceedings. *State v. Perry* (1967), 10 Ohio St.2d 175.

-22-

2)  Res judicata is a proper basis upon which to dismiss a claim for relief in a postconviction petition where the claim was raised or could have been raised at trial or on direct appeal, and where the claim could fairly have been determined without resort to evidence dehors the record. *State v. Cole* (1982), 2 Ohio St. 3d 112; *Perry,* supra at 180.

3)  Petitioner raised an ineffective assistance of counsel argument in his brief to the Ohio Supreme Court.  Therefore, the doctrine of res judicata applies.

4)  Even though Petitioner attempts to raise new examples of ineffectiveness in his Petition, such of a lack of questioning of potential jurors, or Roberts' alleged propensity to take advantage young, African-American males, such would have been apparent from the face of the trial record and could have been raised on appeal.

5)  Furthermore, in order to succeed on a claim of ineffective assistance of counsel, a petitioner must demonstrate that ineffective performance and prejudice to the defendant, or the claim is subject to dismissal without hearing. *Jackson, Pankey, Pierce,* supra.

6)  None of these examples persuades this Court of trial counsel's ineffectiveness.  The jury was well informed of Roberts' planning and participation in this homicide even if she was not the actual killer.  Petitioner admitted to killing Fingerhut.  Though Petitioner argues a crime scene reconstructionist *may* have yielded a new theory about the homicide, such a theory would undoubtedly pale in contrast to the premeditated killing and Petitioner's admission that he shot Fingerhut. Nor do his exhibits suggest what that theory might be.  His own Ex. 77 states that no experts found no gunshot residue on Roberts' hands, lending credence to Petitioner's own statement that he was the lone shooter in this killing. Because Petitioner has failed to submit documents containing sufficient operative facts of his trial counsel's ineffectiveness, there are no substantive grounds for relief and this claim must be dismissed without hearing.

7)  Because Petitioner is not entitled to a hearing, he is also not entitled to discovery, *Lorraine,* supra at * 5.

## NINTH CAUSE OF ACTION (original Petition)
## TENTH CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact with respect to Petitioner's Ninth Cause of Action (original Petition) and Tenth Cause of Action (amended Petition):

1)  Petitioner argues ineffective assistance of counsel at the mitigation phase.

2)  To support this claim, he attaches Exhibits 44, 49-53, 56-59, 66-67 to his amended Petition and Exhibits 11, 12, 13, 14, 21, 22, and 23 to the original Petition and these exhibits have been already described in previous Causes of Actions.

-23-

3)     Petitioner again requests discovery to support this claim.

The Court makes the following Conclusions of Law with respect to Petitioner's  Ninth  Cause of Action (original Petition) and Tenth Cause of Action (amended Petition):

1)     As stated in the previous Cause of Action, the doctrine of res judicata applies to postconviction proceedings. *Perry,* supra, and this Court finds that the issue of deficiencies in the trial counsel's mitigation performance could have been raised in Petitioner's direct appeal. Petitioner fashioned an ineffective assistance of counsel claim within his Proposition of Law II, though for whatever reasons, did not address his counsel's performance in mitigation.

2)     None of the Exhibits submitted with the Amended Petition overcome this bar.  There is no evidence before this Court that trial counsel was aware of the Robert's letter saying Fingerhut intended to fake his own death. (Ex. 44) Even if they were, Petitioner fails to suggest how this is applicable to mitigation.  If Fingerhut had faked his own death (and all the available evidence is to the contrary), such evidence would be germane to the guilt, not the mitigation phase.  This Court is equally unpersuaded by the series of affidavits from Petitioner's friend's and family. (Ex. 49-53).   Nothing in these affidavits offer mitigating factors at all, let alone enough to outweigh the aggravating circumstances. Petitioner's disruptive behavior, poor academic performance and absenteeism are not mitigating, and do little to augment Dr. McPherson's mitigation testimony.  (Ex. 56, 57). Ex. 58 & 59 are discounted here for the same reasons as appears in the Seventh/Sixth Cause of Action.  Finally, Ex. 66- 67 are simply irrelevant to a claim of ineffective assistance of counsel.  While these exhibits may be been generated de hors the record, they still offer no operative facts to overcome a res judicata bar.

3)     Because these exhibits offer no operative facts supportive of a claim of ineffective assistance of trial counsel, Petitioner fails to demonstrate sufficient grounds for relief. Therefore, this claim is subject to dismissal without hearing. R.C. 2953.21(C), *Kapper,* supra.

4)     In order to demonstrate counsel's ineffectiveness, Petitioner must prove that (1) counsel's performance was deficient, and that (2) he was prejudiced by that performance. *Strickland, Bradley,* supra.  Petitioner fails to develop either prong of the *Strickland* test in his Petition.

5)     This Court will not find trial counsel's performance deficient just because Dr. McPherson's relied upon a psychological assistant to gather part of the data used to compile her report.  With the aid of her assistant, Dr. McPherson conducted a thorough review of Petitioner's background in an effort to uncover potentially mitigating evidence. Even Petitioner's post-trial exhibits make it abundantly clear that she omitted no

-24-

information which would have been outcome determinative at the mitigation phase. To an extent, the information is cumulative, and much of it is certainly negative information regarding Petitioner's character and background.

6) Despite claims in two affidavits (Ex. 49, 52) that trial counsel spent a relatively short time interviewing family members prior to the mitigation hearing, this Court finds no deficiency in their performance as per *Strickland*. This Court is unpersuaded that more lengthy or in depth interviews would have unearthed any additional facts about the Petitioner which would have actually proved helpful to him. Furthermore, as part of the myriad of paperwork Petitioner filed as Ex. 5 along with his Memorandum Contra, this Court notices a typewritten note to "the Family of Nathaniel Jackson" urging them to contact either the McPhersons' professional offices, or Petitioner's trial counsel for purposes of preparing for mitigation. Obviously, the McPhersons were making every effort to contact family members to supplement their evaluations or to have them called as mitigation witnesses. This Court will not brand trial counsel ineffective if Petitioner's family members made themselves unavailable for pre-trial interviews.

7) Parenthetically, the very nature of the testimony offered by family members and friends hardly requires exhaustive preparation.     Essentially, the family members were brought forward to give insight into Petitioner's background and to tug at the jury's heartstrings by saying how much he would be missed if ultimately executed. Such testimony does not require lengthy interrogations.

8) Nevertheless, it was trial counsel's theory that Petitioner's anti-social tendencies stemmed from a lack of a father figure, his untreated Attention Deficit disorder, and his infatuation with Donna Roberts. (T.p. Vol 16, p. 130-135) Petitioner now suggests mitigation strategy should have focused on his drug abuse and alcoholic mother. This Court cannot find that counsel was deficient or that Petitioner was prejudiced by trial counsel's election to paint Petitioner in the most positive light possible rather than to try to excuse his actions through his own self inflicted drug abuse.

9) This trial court also finds no colorable claim of ineffective assistance of counsel through the substitution of Atty. Thomas Wright at the mitigation phase. Atty. Consoldane, who had acted as trial counsel from the onset of this prosecution, remained on the case and acted as lead counsel in the penalty phase. He conducted direct examination of all mitigation witnesses and gave closing arguments. The fact that Mr. Wright was not certified by the Ohio Supreme Court as a death penalty litigant, or that he was brand new to the case, did not equate to deficient performance by either Atty. Wright or Atty. Consoldane. Petitioner's exhibits offer no examples of deficient performance or prejudice to Petitioner. Therefore, he had failed to demonstrate the *Strickland* standard for ineffectiveness.

10) Furthermore, this Court personally inquired of Petitioner as to whether he wished to

-25-

accept Atty. Wright's representation and proceed as scheduled, or whether he preferred this Court to continue the matter for several days to await Atty. Lewis' return. Petitioner specifically and unequivocally stated he wanted the matter to proceed as scheduled with Atty. Wright substituting for Atty. Lewis. (T.p. Vol 16, p. 5-6). Petitioner only reinforces his desire to decline the offered continuance when he writes "[b]y that time I was so upset with my attorneys I just wanted to get it over." (Memorandum Contra, Ex. 3). Pursuant to the doctrine of invited error, Petitioner may not argue prejudice over a situation which he clearly facilitated. See *State v. Campbell* (2000), 90 Ohio St. 3d 323, 324.

11) Petitioner argues Atty. Consoldane knew little about the evidence at mitigation, made no opening statement, and called only four lay witnesses who offered incomplete and inaccurate testimony. None of these claims are tantamount to a deficient performance. First, the record does not reveal that Atty. Consoldane "knew little" about the mitigation evidence, only that he felt Dr. McPherson knew more about the family dynamics as a result of her extensive interviews pursuant to psychological testing. (T.p. Vol 16, p. 7). Second, the Supreme Court of Ohio has held that a waiver of opening statements at the penalty phase is not tantamount to ineffective assistance of trial counsel. *State v. Brewer* (1988), 48 Ohio St. 3d 50, 63. Finally, Petitioner called five, not four, lay witnesses at trial. They were (1) Raymond Dickerson, (2) Taushia Kornegay, (3)Lorraine Rue, (4) Shaylese Townsend Jackson and (5)Pauline Kornegay. The Kornegays and Dickerson supplied affidavits for the amended Petition. (Ex.49, 50, 52). The Court finds nothing in these affidavits which would have been more useful to Petitioner at mitigation beyond their testimony of record. Again, examples of Petitioner's drug use and the life crime he embarked upon to support it hardly mitigating.

12) This Court gives absolutely no weight to Dorian Hall's affidavit (Amended Petition Ex. 59) criticizing Dr. McPherson's decision to administer an I.Q. test as part of her evaluation. In light of the U.S. Supreme Court's decision in *Atkins v. Virginia* (2002) 536 U.S. 304, it may well have been tantamount to malpractice to forego I.Q. testing, especially when the Petitioner's academic performance was below average and he previously scored in the 70s on two prior I.Q. tests. Ms. Hall has completely eroded her own credibility in this Court's eyes by even suggesting that a forensic psychologist forego I.Q. testing in this instance.

13) Finally, this Court denies Petitioner's request for discovery per *Lorraine, Love,* and *While,* supra.

14) This claim is dismissed without hearing because it is barred by the doctrine of res judicata, *Perry,* supra, and because Petitioner's exhibits de hors record do not provide sufficient operative facts to demonstrate substantive grounds for relief. *Kapper,* supra, R.C. 2953.21(C).

### TENTH CAUSE OF ACTION (original Petition)
### ELEVENTH CAUSE OF ACTION (amended Petition)

The Court make the following Findings of Fact as to this Tenth Cause of Action (original Petition) and Eleventh Cause of Action (amended Petition):

1) Petitioner again alleges ineffective assistance of trial counsel at the mitigating phase, this time due to purported short-comings in the evaluations conducted by Dr. McPherson.

2) To support these allegations, he attaches the previously described Ex. 13, 14, 15, 18 and 19 to the original petition and Ex. 49, 58, 59, 60, 62, 63, 64 to the amended petition.

3) Petitioner requests discovery to support his claim.

The Court makes the following Conclusions of Law as to this Tenth Cause of Action (original Petition) and Eleventh Cause of Action (amended Petition):

1) The Court adopts and incorporates paragraphs 1 through 3 from its Conclusions of Law from the Seventh/Sixth Cause of Action.

2) Petitioner seeks to label his trial counsel ineffective because he has found a social worker and a second psychologist to state that Dr. McPherson either administered the wrong tests or scored tests incorrectly. This Court will not and does not find trial counsel ineffective pursuant to the *Strickland* standard for professional decisions made by their expert, Dr. McPherson.

3) None of the exhibits provided directly assess trial counsel's performance. Therefore, Petitioner fails to support his claim with evidence de hors the record and this claim is subject to dismissal without hearing. *Kapper*, supra, R.C. 2953.21(C)

4) Ex. 78, the affidavit of Dr. Thomas Andrew Boyd, states that Dr. McPherson improperly scored Petitioner's I.Q. test. While it is refreshing to review an exhibit which actually references the participants and performances in *Petitioner's* case, this Court does not find that Dr. Boyd's recalculated I.Q. score of 75 in any way diminishes the overall value of Dr. McPherson's evaluation or testimony. The five-point deviation between Dr. McPherson's score and Dr. Boyd's score is not outcome determinative, and certainly has no impact on whether his trial counsel was ineffective. Furthermore, "[a] postconviction petition does not show ineffective assistance merely because it presents a new expert opinion that is different from the theory used at trial. *State v. Combs* (1994), 100 Ohio App. 3d 90, 104. Therefore, Petitioner does not demonstrate ineffective assistance of counsel pursuant the *Strickland* standard.

5) This Court gives no credence to Ms. Hall's criticism that Dr. McPherson should have

-27-

abandoned the Bendt Gestalt Test for the Trails Making Test.  Nothing in Ms. Hall's affidavit suggests that she is even remotely qualified to critique the professional decisions of the licensed forensic psychologist, whether it be Dr. McPherson, or any other mental health professional potentially covered by her boilerplate affidavit which references this case only in its caption.

6)      Petitioner's request for discovery is denied pursuant to *Lorraine, Love,* and *Wiles, supra.*

## ELEVENTH CAUSE OF ACTION (original Petition only)

The Court makes the following Findings of Facts as to this Eleventh Cause of Action:

1)      Petitioner argues his sentence is void or voidable because he was mentally retarded at the time of his trial and cannot be sentenced to death.

2)      Petitioner attaches Ex. 11 and 12 to support this claim.

The Court makes the following Conclusions of Law as to this Eleventh Cause of Action.

1)      *Atkins v. Virginia* (2002), 536 U.S. 302, which bars the execution of mentally retarded persons was decided in June of 2002, approximately four months before Petitioner's trial began.  If Petitioner had a viable claim of mental retardation, he could have raised this bar at trial and on appeal.  Therefore, as a post-*Atkins* capital defendant, Petitioner's claim is barred by the doctrine of res judicata.  See *Perry, supra.*

2)      In a footnote, the *Atkins* decision printed the following definition of mental retardation: "***characterized by significantly subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18." Mental Retardation: Definition, Classification, and Systems of Supports 5 (9th ed.1992).  Atkins at 305, FN 3.

3)      The Supreme Court of Ohio adopted this definition in *State v. Lott* (2002), 97 Ohio St. 3d 303, and further stated that a capital defendant is rebuttably presumed to *not* be mentally retarded if his or her I.Q. is above 70.

4)      The record before this Court, and Petitioner's own exhibits show that Petitioner's full scale I.Q. at age 13 was 73, and at age 17 was 70. (Ex. 11, 12).  When tested just before trial, Petitioner score an 84.  McPherson testified at trial that Petitioner *never* tested in a range for mental retardation.  (T.p. Vol. 16, p. 82).  Dr. McPherson twice testified that Petitioner's "actual ability is probably better than the test would indicate." (T.p. Vol. 16, p. 83, 48). Dr. Boyd does not label Petitioner mentally retarded .   Therefore, Petitioner

3)    Petitioner attaches no evidence de hors the record to support this claim.  He therefore fails to offer sufficient operative facts to support his argument, nor does he establish substantive grounds for relief.  This claim is dismissed without hearing.  *Kapper*, R.C. 2953.21(C).

## TWELFTH CAUSE OF ACTION (amended Petition only)

The Court makes the following Findings of Fact with regard to Petitioner's Twelfth Cause of Action, amended Petition only:

1)    Petitioner argues that his death sentence is void or voidable because the jury did not receive all of the relevant information concerning the appropriate sentence.

2)    Petitioner references Amended Petition Ex. 46, 47, 49-53, 58, 78-79, which have been previously described, excepting 79 which this Court is unable to locate.

The Court makes the following Conclusions of Law with regard to Petitioner's Twelfth Cause of Action, amended Petition only:

1)    For the reasons already stated in response to Petitioner's Seventh/Sixth and Tenth/Eleventh Causes of Action, this Court finds that these exhibits do not supply this Court with sufficient operative facts to support this claim.  Petitioner establishes no substantive grounds for relief, and this cause is dismissed without hearing.  *Kapper*, R.C. 2953.21(C).

2)    To suggest that any of the information presented in any of these exhibits would have swayed the jury to recommend a life, rather than death sentence is wholly speculative and do not render Petitioner's death sentence void or voidable.

3)    Furthermore, this Court disagrees with Petitioner's characterization that Dr. McPherson's report lacks a social history.  Dr. McPherson, in her testimony and report, described his family environment, his academic history, interpersonal relationships with his children and significant others, his drug use, ADHD, anti-social personality disorder and criminal history.  The fact that Dr. McPherson did not link Petitioner's drug use to his mother's alcoholism is not indicative of a lack of a social history.  Petitioner ignores the very distinct possibility that his election "self medicate" with cocaine or other illegal substances was a personal choice wholly independent of his mother's purported problems. Perhaps the reason no expert testified to this nexus is because it does not exist.

## THIRTEENTH CAUSE OF ACTION (original and amended Petitions)

The Court makes the following Findings of Fact with respect to Petitioner's Thirteenth Cause of Action:

1) Petitioner argues that his death sentence is void or voidable because lethal injection, Ohio's present method of execution, is violative of the Eighth Amendment to the U.S. Constitution.

2) Petitioner submits a Letter from James Haviland, warden of the Southern Ohio Correctional Facility (Ex. 32, original Petition, Ex. 82, amended Petition) which details the intravenous equipment and pharmaceuticals used in the executions of Jay Scott and John Byrd, a letter from Vincent Lagana, Staff Counsel for the Ohio Department of Corrections (Ex. 33, original Petition, Ex. 83, amended Petition) which discusses the drugs and dosage used by the Department of Corrections in an execution, and finally, an affidavit from Dr. Mark J.S. Heath, an anesthesiologist. Dr. Heath composed this affidavit for the late Lewis Williams and John G. Roe's habeas proceedings, wherein Dr. Heath opines that if the condemned is not properly anesthetized, he may suffer excruciating pain during the execution process and that his distress may not be readily apparent to execution witnesses. This Exhibit is also labeled "82."

The Court makes the following Conclusions of Law with respect to Petitioner's Thirteenth Cause of Action:

1) This claim is barred by the doctrine of res judicata as the constitutionality of lethal injection could have been raised in Petitioner's direct appeal and was not. *Perry, Cole,* supra.

2) The Supreme Court of Ohio has previously held that the Eighth Amendment to the U.S. Constitution does not bar lethal injection as a method of execution in Ohio. *State v. Carter* (2000), 89 Ohio St. 3d 593, 608. Petitioner offers no authority to suggest that *any* court in the 37 states which use lethal injection as a method of execution has found it to be contrary to the Eighth Amended proscription against cruel and unusual punishment.

3) Petitioner's three exhibits do not provide this Court with sufficient operative facts to support his claim that lethal injection constitutes cruel and unusual punishment. The two letters from the Ohio Department of Corrections simply do not address whether the condemned suffers or not during the administration of the lethal dose of drugs. Dr. Heath's affidavit certainly raises the *possibility* that the condemned, under certain circumstances, may suffer. However, the affidavit offers no empirical evidence that in Ohio, or in any other state, a condemned inmate actually suffered in a manner consistent with his hypothetical scenarios. The Sixth Circuit Court of Appeals labeled Dr. Heath's concerns as "purely speculative." *Cooper v. Rimmer* (2004), 358 F. 3d 655, 659. Dr.

-31-

Heath's affidavit did not persuade the Sixth Circuit to block the execution of Lewis Williams. *In Re Williams* (2004), 359 F. 3d 811, 814.

4)   This Court must concur with the Sixth Circuit Court of Appeals and find that Dr. Heath's opinion is merely speculative. Furthermore, it is contingent upon several variables which may or may not occur at Petitioner's execution or any other. Included in that speculation is the use of the "cut-down" procedure which the U.S. Supreme Court recognized in its implementation of a stay of execution in *Nelson v. Campbell*, 2004 U.S. Lexis 3600, to determine whether the procedure violates the Eighth Amendment. It should be noted that unlike Nelson, Petitioner has never contended that his veins are compromised due to drug use, or any other malady, or that he might be subject to this procedure at the time of his execution.

5)   This Court cannot guarantee Petitioner a pain free execution, and neither does the U.S. constitution. The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishment. "Punishments are cruel when they involve torture or a lingering death...." *In Re Kemmler* (1890), 136 U.S. 436, 447. As used in the Constitution, "cruel" implies "something inhuman and barbarous, something more than the mere extinguishment of life." Id. None of Petitioner's exhibits convince this Court that lethal injection is torturous, inhuman or barbarous.

6)   As a result, Petitioner fails to present operative facts to support this claim, and fails to demonstrate substantive grounds for relief. This Cause of Action is therefore dismissed without hearing. *Kapper*, R.C. 2953.21(C).

## FOURTEENTH CAUSE OF ACTION (original Petition)
## FIFTEENTH CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact with respect to Petitioner's Fourteenth Cause of Action (original Petition) and Fifteenth Cause of Action (amended Petition):

1)   Petitioner argues that the cumulative effect of all the grounds for relief and the totality of the exhibits demonstrate that his conviction and sentences are void or voidable.

2)   Petitioner re-incorporates all of his exhibits and arguments.

3)   Petitioner renews his request for discovery.

The Court makes the following Conclusions of Law with respect to Petitioner's Fourteenth Cause of Action (original Petition) and Fifteenth Cause of Action (amended Petition):

-32-

1)    Petitioner fails to demonstrate that one single Cause of Action merits relief, nor does the cumulative effect of all the exhibits and arguments taken together.

2)    The exhibits from both the original and amended Petitions fail to supply this Court with sufficient operative facts to support any claim.  Petitioner demonstrates no substantive grounds for relief.  Therefore, both Petitions are subject to dismissal without hearing. *Kapper*, R.C. 2953.21(C)

3)    Petitioner's request for discovery is denied pursuant to *Lorraine, Love* and *Wiles*.

This Court finds that State's motion to dismiss is well-taken with respect to all Fourteen Causes of Actions in the original Petition, and all Fifteen Causes of Action in the Amended Petition.  . It is therefore ORDERED, ADJUDGED and DECREED that  Petitioner's  Petition to Vacate or Set Aside Sentence  Pursuant to R.C. 2953.21 is hereby dismissed without a hearing.

IT IS SO ORDERED,

_____
DATE

JOHN M. STUARD, JUDGE
Of the Common Pleas Court Trumbull
County, Ohio

TO THE CLERK OF COURTS: YOU ARE ORDERED TO SERVE
COPIES OF THIS JUDGMENT ON ALL COUNSEL OF RECORD
OR UPON THE PARTIES WHO ARE UNREPRESENTED FORTH-
WITH BY ORDINARY MAIL.

JUDGE

-33-

**IN THE COURT OF APPEALS**
**TRUMBULL COUNTY, OHIO**



FILED
COURT OF APPEALS

JUL 1 2 2004

TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

| | |
|---|---|
| STATE OF OHIO, | ) |
| | ) |
| Plaintiff-Respondent, | ) Case No. 01-CR-794 |
| | ) |
| -vs- | ) |
| | ) |
| NATHANIEL JACKSON, | ) |
| | ) |
| Defendant-Petitioner. | ) |

---

### PRAECIPE

---

This is to direct the Clerk of the Trumbull County Common Pleas Court to prepare a record of the original papers and exhibits filed in the trial court, a copy of any post-conviction proceedings before the court, a certified copy of the docket and all journal entries, and a certified copy of the trial transcript, including exhibits, in the above-captioned case, pursuant to Appellate Rule 9, along with the affidavit of indigency and all documents necessary under the Local Appellate Rules. These documents are to be forwarded to the Eleventh District Court of Appeals, Trumbull County, Ohio.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER – 0005835
Assistant State Public Defender
Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, Ohio 43215
(614) 466-5394
Facsimile: 614-644-0708
COUNSEL FOR NATHANIEL JACKSON

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing PRAECIPE was sent by regular U.S. Mail

to LuWayne Annos, Assistant Trumbull County Prosecuting Attorney, 160 High Street, N.W. 4th

Floor Administration Building, Warren, Ohio 44481 on this 12th day of July, 2004.

RANDALL L. PORTER
COUNSEL FOR NATHANIEL JACKSON

TO:    ATTORNEY LUWAYNE ANNOS
160 HIGH ST NW
WARREN, OH 44481

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

COURT NOTICE OF FILING

Warren, Ohio, AUGUST 23, 2004

Case No. 2004 TR 00089

In Case of:

**STATE OF OHIO, APPELLEE**
Plaintiff

VS.

**NATHANIEL JACKSON, APPELLANT**
Defendant

This is to notify that the Court of APPEALS has this day
made the following entry in the above entitled case.

RECORD FILED WITH 16 VOL TP

MARGARET R. O'BRIEN
Clerk of Courts

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**IN THE COURT OF APPEALS
TRUMBULL COUNTY, OHIO**

STATE OF OHIO,                            )
                                          )
    Plaintiff-Appellee,               )        Case No. 2004 TR 89
                                          )
    -vs-                              )
                                          )
NATHANIEL JACKSON,                        )
                                          )
    Defendant-Appellant.              )

---

**NATHANIEL JACKSON'S MOTION TO CONTINUE
THE APPOINTMENT OF POST-CONVICTION COUNSEL**

---

Now comes Petitioner Nathaniel Jackson and moves this Court to continue the trial

court's appointment of Randall L. Porter for purposes of this appeal. A memorandum of law is

attached and incorporated herein.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER # 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, Ohio 43215
Voice: (614) 466-5394
Facsimile: 614-644-0708

COUNSEL FOR NATHANIEL JACKSON

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

On December 9, 2002, the trial court imposed a sentence of death upon Petitioner-Appellant, Nathaniel Jackson.   The trial court had appointed counsel for Nathaniel Jackson through out his capital trial proceedings.

On January 5, 2004, Nathaniel Jackson filed with the trial court, pursuant to O.R.C. § 2953.21, a post-conviction petition that contained fourteen violations of the Ohio and Federal Constitutions that rendered his convictions and sentences void or voidable.  On March 29, 2004, he filed an amended post-conviction petition.

On April 22, 2004, Nathaniel Jackson moved the trial court to appoint post-conviction counsel for him.  On April 27, 2004 the trial court appointed counsel nunc pro tunc to July 9, 2003 [Exhibit A].

Nathaniel Jackson remains indigent  [Exhibit B].  For the reasons identified herein he requests this Court to continue the appointment of undersigned counsel.

### II.    NATHANIEL JACKSON IS ENTITLED TO APPOINTED COUNSEL.

#### A.    O.R.C. § 2953.21(1) Mandates Appointed Counsel.

In 1996, the Ohio Legislature amended Ohio's post-conviction statutes, Ohio Revised Code Section 2953.21, et. seq.  This law was originally enacted in 1965 as an emergency measure to provide a "new procedure" to protect constitutional rights and provide an "orderly method of hearing such matters."  See Section 2 of Amended S.B. 383, 106th General Assembly; see also Kott v. Maxwell, 3 Ohio App. 2d 337 (1965).  The right to post-conviction relief is set forth in Section (A)(1) of Ohio Revised Code § 2953.21, provides:

> Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief.  The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

Moreover, the Ohio Legislature recognized that indigent capital post-conviction petitioners are entitled to the appointment of counsel when pursuing their statutory right to post-conviction relief:

> If a person who has received the death penalty intends to file a petition under this section, the court shall appoint counsel to represent the person upon a finding that the person is indigent and that the person either accepts the appointment of counsel or is unable to make a competent decision whether to accept or reject the appointment of counsel.  The court may decline to appoint counsel for the person only upon a finding, after a hearing if necessary, that the person rejects the appointment of counsel and understands the legal consequences of that decision or upon a finding that the person is not indigent.

O.R.C. § 2953.21(I)(1).  Nathaniel Jackson, who is sentenced to death, is therefore entitled to appointed counsel to represent him in this appeal to this Court.

### B.     The Eighth and Fourteenth Amendments Mandate Appointment of Counsel.

The courts have recognized that though a state is not required to create an appellate review system for criminal cases, once it erects such a right, it must do so consistent with the Due Process Clause of the Fourteenth Amendment.  Evitts v. Lucey, 469 U.S. 387, 393 (1984); Griffin v. Illinois, 351 U.S. 12, 18 (1956). When a defendant has a right, it includes the meaningful exercise of that right.  For instance the right to counsel includes the right to effective assistance of counsel.  Powell v. Alabama, 287 U.S. 45, 58 (1932). The right of confrontation

includes the opportunity to cross examine witnesses. Pointer v. Texas, 380 U.S. 400, 406-407 (1965). Thus Nathaniel Jackson must be given a meaningful opportunity to pursue his statutory right to post-conviction relief which would include appointment of post-conviction counsel to pursue this application.

A defendant may not be denied his access to the court due to his indigency status. Griffin v. Illinois, 351 U.S. 12, 17-18 (1956); Burns v. Ohio, 360 U.S. 252, 257 (1959). This right of access of impoverished defendants to the courts extends to post-conviction proceedings. Smith v. Bennett, 365 U.S. 708, 712-713 (1961); Long v. Iowa, 385 U.S. 192, 194 (1966).

There is a need for more exacting procedures in capital cases because the penalty demands fact-finding at a "heightened standard of reliability." Ford v. Wainwright, 477 U.S. 399, 411 (1986); Parker v. Delo, 33 F.3d 933, 939, n.6 (8th Cir. 1994)

The fact that the trial court has already dismissed Nathaniel Jackson's amended post-conviction petition does not abrogate the right to, and the need for, appointed counsel on this appeal of right to this Court. Just as the assistance of counsel is essential to a fair trial, the right to be represented by counsel on appeal is fundamental and essential to the adequate and effective review. Douglas v. California, 372 U.S. 353, 356 (1963). One of the basic premises of the criminal justice system is that strong advocacy by both parties will best promote the ultimate objective that the guilty be convicted and the innocent go free. United States v. Cronic, 466 U.S. 648, 655 (1984).

Nathaniel Jackson in this appeal seeks to demonstrate that his conviction and loss of liberty is unlawful. Evitts v. Lucey, 469 U.S. at 396 (1985). To do so he faces an adversary proceeding that is governed by intricate rules and rules which are hopelessly forbidding to a layperson. Id. Counsel's expertise is necessary if Nathaniel Jackson is to obtain a decision at all

– much less a favorable decision – on the merits of the case. Id. 469 U.S. at 394 n.6. Appellate counsel must be more of an active advocate than trial counsel who acted as a shield. Appellate counsel instead must act as a sword to upset the conviction. Ross v. Moffitt, 417 U.S. 600, 610-611, (1974).

It is counsel's job, not the Court's job, to review the record for error and present legal argument. Jones v. Barnes, 463 U.S. 745, 754 (1983). The Court's processes will be aided, not impeded if a counsel has advocated upon behalf of the accused. The mere fact that the Court may be obligated to review the record cannot be considered a substitute for the legal reasoning and authority found in a brief. Mylor v. Alabama, 671 F.2d 1299, 1302 (11th Cir. 1982). Appellate counsel frequently raises issues that might otherwise escape the attention of busy appellate courts. People v. Emmett, 254 N.E.2d 744, 745 (N.Y., 1969). The Court must act as an arbitrator between the prosecutor and accused. It cannot successfully and constitutionally perform that function unless it considers briefs devoted to argument for the accused, leaving it to the Court to determine whether and to what extent they have merit. Suggs v. United States, 391 F.2d 971, 975 (D.C. Circuit 1968).

Thus pursuant to the Eighth and Fourteenth Amendments, Nathaniel Jackson is entitled to the appointment of counsel for purposes of this appeal.

## IV.  CONCLUSION: THE COURT SHOULD CONTINUE THE APPOINTMENT OF UNDERSIGNED COUNSEL.

The trial court appointed undersigned counsel. He has read the transcript and is familiar with the issues raised in the trial court. The best use of judicial resources would be for the Court to undersigned counsel. This would save the Court substantial funding in having to appoint an attorney who would have to read the entire record in the present case and which would cause delay in this deciding this appeal.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER – 0005835
Assistant State Public Defender
Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, Ohio 43215
Voice: (614) 466-5394
Facsimile:  614-644-0708

COUNSEL FOR NATHANIEL JACKSON

6

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **PETITIONER NATHANIEL JACKSON'S MOTION TO CONTINUE THE APPOINTMENT OF POST-CONVICTION COUNSEL** was sent by regular U.S. Mail to LuWayne Annos, Trumbull County Assistant Prosecuting Attorney, 160 High Street, N.W. 3rd Floor Administration Building, Warren, Ohio 44481 on this 13th day of July, 2004.

RANDALL L. PORTER
COUNSEL FOR NATHANIEL JACKSON

#201402

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    :

    Plaintiff-Appellee        :

-v-                               :        Case No. 01-CR-794

NATHANIEL JACKSON,                :

    Defendant-Appellant       :        JOURNAL ENTRY

 

This matter comes before this Court upon Nathaniel Jackson's Motion for Appointment

of Counsel.  The Court, after being fully advised in the matter GRANTS the Motion and appoints

Assistant State Public Defender Randall L. Porter.  The Order is effective nun pro tunc to July 9,

2003.

 

_____
JUDGE JOHN M. STUARD

 

Proposed Entry Prepared By:

RANDALL L. PORTER – 0005835
Assistant State Public Defender Office of the Ohio Public Defender
8 East Long St., 11th Floor
Columbus, Ohio  4315
(614) 466-5394
(614) 728-3670 Facsimile

TO THE CLERK OF COURTS: YOU ARE ORDERED TO SERVE
COPIES OF THIS JUDGMENT ON ALL COUNSEL OF RECORD
OR UPON THE PARTIES WHO ARE UNREPRESENTED FORTH-
WITH BY ORDINARY MAIL.



EXHIBIT
Jackson Apx. Vol 16
A
Page 54

1

## IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | Case No. 01-CR-794 |
| | ) | |
| -vs- | ) | Judge John Stuard |
| | ) | |
| NATHANIEL JACKSON | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

**F I L E D**
COURT OF APPEALS

JUL 1 2 2004

TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

### <u>AFFIDAVIT OF INDIGENCY</u>

I, Nathaniel Jackson do solemnly swear that I presently, this 12th day of July, 2004, have

no means of financial support and no assets of any value and, therefore, cannot afford to pay for

any legal services, fees, or costs on my behalf in the above-styled case; that I am presently

incarcerated at the Mansfield Correctional Institution; and that I have $ ___3.00___ income per

month.

*Nathaniel Jackson*
NATHANIEL JACKSON
#440-891
P.O. Box 788
Mansfield, Ohio 44901

Sworn and subscribed in my presence this 12th day of July 2004.

NOTARY PUBLIC

RANDALL L. PORTER  Attorney At Law
Notary Public, State of Ohio
MY COMMISSION HAS NO EXPIRING

#201414

**EXHIBIT**
Jackson Apx. Vol. 16
**B**
Page 55

STATE OF OHIO           )
                             ) SS.
COUNTY OF TRUMBULL   )

STATE OF OHIO,

     Plaintiff-Appellee,

     -vs-

NATHANIEL JACKSON,

     Defendant-Appellant.

**IN THE COURT OF APPEALS**

**ELEVENTH DISTRICT**

**JUDGMENT ENTRY**

**CASE NO. 2004-T-0089**

Appellant's motion requesting that Assistant State Public Defender Randall L. Porter continue as appointed counsel in representing him in his post-conviction appeal is hereby granted. It is ordered that Assistant State Public Defender Randall L. Porter, 8 East Long Street, Columbus, Ohio 43215, is hereby appointed to represent Appellant for purposes of appeal to this Court.

_Donald R. Ford_
ADMINISTRATIVE JUDGE DONALD R. FORD

F I L E D
COURT OF APPEALS

JUL 1 6 2004

TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                      )
                                    )
    Appellee-Appellee,          )
                                    )
-vs-                                )        Case No. 2004-TR-89
                                    )
NATHANIEL JACKSON,                  )
    Defendant-Appellant.        )
                                    )

_____

**NATHANIEL JACKSON 'S MOTION FOR EXTENSION
OF PAGE LIMITATION FOR HIS MERIT BRIEF**

_____

       Now comes Nathaniel Jackson, by an through counsel and moves this Court to extend the

page limitation to permit him to file an Merit Brief of fifty (50) pages.

                           Respectfully submitted,

                           DAVID H. BODIKER
                           Ohio Public Defender

                           RANDALL L. PORTER - 0005835
                           Assistant State Public Defender

                           Office of the Ohio Public Defender
                           8 East Long Street - 11th Floor
                           Columbus, Ohio 43215-2998
                           (614) 466-5394

                           COUNSEL FOR NATHANIEL JACKSON

## MEMORANDUM IN SUPPORT

Nathaniel Jackson has been sentenced to death.  On June 14, 2004 the trial court denied his Amended Post-conviction Petition. On July 12, 2004 Nathaniel Jackson timely appealed to this Court

On August 23, 2004 the Clerk filed the record from the trial court. Nathaniel Jackson's Merit Mrief is currently due September 12, 2004.

Local Rule 12(D) limits initial briefs to thirty-five (35) pages in length and commands that the "maximum may be exceeded only with the permission of the court granted upon written application and for good cause shown." Nathaniel Jackson has been sentenced to death.  The record consists of the following: trial court file 1081 pages, transcript 3,844 pages, and four hundred and four State's Exhibits.  The Amended Post-conviction Petition contains fifteen causes of action and is supported by eighty-two exhibits.  Given the gravity of the sentence and the length of the record, Nathaniel Jackson cannot reasonably present the issues to the court in less than fifty pages.

The Court granted a similar request in another capital post-conviction case.  State v. Davie, No. 2000 TR 0014 (Nov. 29, 2000). The Court permitted the Appellant to file a brief not to exceed forty-eight pages [Exhibit A]. It extended the time for the filing of the Merit Brief until seven days after the granting of the Motion for the Page Extension [Exhibit B].

Nathaniel Jackson would have filed his Merit Brief in a timely manner, except for the need for additional pages.  He has requested no other continuances in which to file the Merit Brief and does not anticipate any additional requests.

WHEREFORE, Nathaniel Jackson requests that the Court grant him a page extension of fifteen pages so he may file a fifty page Merit Brief.  Petitioner further requests an extension of

seven days from the date of the Court's ruling on this Motion to permit him to comply with that

Order.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER – 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio  43215-2998
(614) 466-5394

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **NATHANIEL JACKSON'S MOTION FOR EXTENSION OF PAGE LIMITATION FOR INITIAL BRIEF** was forwarded by first-class, postage prepaid U.S. Mail to Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio 44481 on this ____ day of September, 2004.

RANDALL L. PORTER
COUNSEL FOR NATHANIEL JACKSON

#204738

TRUM.CO.PUBLIC DEFENDER    ID:3937076                    SEP 07'04   13:12 No.001 P.02

F I L E D
COURT OF APPEALS

NOV 2 9 2000

TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

STATE OF OHIO          )
                       ) ss.
COUNTY OF TRUMBULL     )

IN THE COURT OF APPEALS

ELEVENTH DISTRICT

STATE OF OHIO,

    Plaintiff-Appellee,

JUDGMENT ENTRY

- vs -

CASE NO. 2000-T-0104

RODERICK DAVIE,

    Defendant-Appellant.

Appellant's motion to exceed the maximum page length of his brief pursuant to Loc.R. 12(D) of the Eleventh District Court of Appeals to forty-eight (48) pages is hereby granted.

It is further ordered that Appellee is granted leave to extend the page limitation for its answer brief to forty-eight pages, should it so desire.

Donald R. Ford

PRESIDING JUDGE DONALD R. FORD

VOL 047 PAGE 6C1

Jackson Trial Vol. 16
Page 60

EXHIBIT
A

STATE OF OHIO     )         IN THE COURT OF APPEALS
               ) ss.
COUNTY OF TRUMBULL   )        ELEVENTH DISTRICT

STATE OF OHIO,

       Plaintiff-Appellee,       JUDGMENT ENTRY

   - vs -

                   CASE NO. 2000-T-0104

RODERICK DAVIE,

       Defendant-Appellant.

    Pursuant to this Court's entry of November 29, 2000, granting Appellant leave to file a forty-eight (48) page brief, it is the further order of this Court that Appellant is granted leave to file his brief within seven (7) days from the date of this entry.

                                  _____
                                 JUDGE WILLIAM M. O'NEILL

## FILED
COURT OF APPEALS

DEC 11 2000

TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

VOL. 047 PG 712

EXHIBIT
Jackson App. Vol. 16
B
Page 61

STATE OF OHIO　　　　　　　)　　　　IN THE COURT OF APPEALS
　　　　　　　　　　　　　　　　) ss.
COUNTY OF TRUMBULL　　　　)　　　　ELEVENTH DISTRICT


STATE OF OHIO,

　　　　　　Plaintiff-Appellee,　　　　　　　　**JUDGMENT ENTRY**

　　- vs -

　　　　　　　　　　　　　　　　　　**CASE NO. 2004-T-0089**

NATHANIEL JACKSON,

　　　　　　Defendant-Appellant.


　　　　　　On September 8, 2004, Appellant, Nathaniel Jackson, by and
through appointed counsel of record, Assistant State Public Defender Randall L.
Porter, filed a motion for leave to exceed the page limit of his brief pursuant to
Loc.R. 12(D) of the Eleventh District Court of Appeals to fifty (50) pages.

　　　　　　Upon consideration, it is hereby ordered that Appellant's motion for
leave to file a brief in excess of the thirty-five-page limit will be held in abeyance
pending the filing of Appellant's brief, at which time this Court will make its
determination as to whether Appellant shall be permitted to exceed the page limit.


**F I L E D**
**COURT OF APPEALS**　　　_Donald R. Ford_
SEP 1 3 2004　　　　　　ADMINISTRATIVE JUDGE DONALD R. FORD

TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                                    )
                                                  )
         Appellee-Appellee,                       )
                                                  )
-vs-                                              )         Case No. 2004-TR-89
                                                  )
NATHANIEL JACKSON,                                )         *FILED 9/20/2004*
                                                  )         *OUR BRF. DUE October 12, 2004*
         Defendant-Appellant.                     )

---

## MERIT BRIEF OF APPELLANT NATHANIEL JACKSON

---

DENNIS WATKINS - 0009949                    DAVID H. BODIKER
Trumbull County Prosecuting Attorney        Ohio Public Defender

LUWAYNE ANNOS - 0055651                     RANDALL L. PORTER - 0005835
Assistant Prosecuting Attorney              Assistant State Public Defender

Trumbull County Prosecutor's Office         Office of the Ohio Public Defender
160 High Street, N.W.                       8 East Long Street - 11th Floor
4th Floor Administration Building           Columbus, Ohio  43215-2998
Warren, Ohio 44481                          (614) 466-5394
                                            Facsimile:  (614) 644-0708

COUNSEL FOR APPELLEE                         COUNSEL FOR APPELLANT

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

STATEMENT OF THE CASE............................................................................................1

ASSIGNMENT OF ERROR NO. I.....................................................................................3

    THE TRIAL COURT ERRED WHEN IT DENIED PETITIONER'S POST-CONVICTION PETITION WITHOUT FIRST AFFORDING HIM THE OPPORTUNITY TO CONDUCT DISCOVERY.  [T.d. 322, pp. 5, 7, 9, 11, 13, 16, 21, 23, 26, 33. ...................................................................................................3

    ISSUE PRESENTED FOR REVIEW ............................................................................3

A Trial Court Must Provide A Post-Conviction Petitioner With The Opportunity To Conduct Discovery Pursuant To The Civil Rules Prior To Considering A Dispositive Motion Filed By The State Of Ohio.  Fifth, Sixth, Eighth and Fourteenth Amendments To The United States Constitution. ...............................3

        Eighth Amendment to the United States Constitution...................................................3

        Evitts v. Lucey, 469 US. 387 (1985) ...........................................................................3

        Fifth Amendment to the United States Constitution .....................................................3

        Fourteenth Amendment to the United States Constitution ............................................4

        Goldberg v. Kelly, 397 U.S. 254 (1970)......................................................................3

        Sixth Amendment to the United States Constitution .....................................................3

        State v. Cole, 2 Ohio St. 3d 112 (1982)........................................................................4

        State v. Jackson, 64 Ohio St. 2d 107 (1980).................................................................4

        State v. Kapper, 5 Ohio St. 3d 36 (1983)......................................................................3

        State v. Lorraine, No. 95-T-5196, 1996 WL 207676 (Trumbull App. Feb. 23, 1996) ...................................................................................................................4

        State v. Pankey, 68 Ohio St. 2d 58 (1981)....................................................................4

        State v. Wiles, 126 Ohio App. 3d 71 (1998)..................................................................4

        State, ex rel Love v. Cuyahoga County Prosecutor's Office, 87 Ohio St. 3d 158 (1999)..........................................................................................................4

ASSIGNMENT OF ERROR NO. II...................................................................................5

THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT
PETITIONER FUNDS TO EMPLOY EXPERTS. [T.d. 322, pp. 9, 11.]...............................5

ISSUE PRESENTED FOR REVIEW .....................................................................................5

A Trial Court In A Post-Conviction Proceeding, Prior To Considering A
Dispositive Motion filed By The State Of Ohio, Must Provide The Indigent
Petitioner With Adequate Funding To Retain All Reasonable And Necessary
Experts. Fifth, Sixth, Eighth And Fourteenth Amendments To The United
States Constitution. ..............................................................................................................5

    Ake v. Oklahoma, 470 U.S. 68 (1985) ................................................................................5

    Britt v. North Carolina, 404 U.S. 226 (1992) ....................................................................5

    Burns v. Ohio, 360 U.S. 252, 258 (1959) ...........................................................................5

    Eighth Amendment to the United States Constitution .........................................................5

    Fifth Amendment to the United States Conseitution ...........................................................5

    Fourteenth Amendment to the United States Constitution ...............................................5, 6

    Griffin v. Illinois, 351 U.S. 12 (1956) ................................................................................5

    Long v. Iowa, 385 U.S. 192 (1966) ....................................................................................5

    O.R.C. § 2953.21 .................................................................................................................6

    Sixth Amendment to the United States Constitution ...........................................................5

    Smith v. Bennett, 365 U.S. 708 (1961)................................................................................5

    State v. Cole, 2 Ohio St. 3d 112 (1982) ..............................................................................6

    State v. Kapper, 5 Ohio St. 3d 36 (1983) ...........................................................................5

    State v. Lott, 97 Ohio St. 3d 303 (2002) .............................................................................6

ASSIGNMENT OF ERROR NO. III..........................................................................................7

    THE POST-CONVICTION ASSISTANT PROSECUTOR ERRED BY NOT
    PROVIDING PETITIONER WITH THE INFORMATION CONTAINED
    IN THE PROSECUTOR'S FILES WHICH WAS NECESSARY TO
    SUPPORT THE CLAIMS CONTAINED IN THE AMENDED PETITION.
    [T.d. 309, pp. 8, 15-16].......................................................................................................7

    ISSUE PRESENTED FOR REVIEW .....................................................................................7

ii

The Prosecutor's Duty To Disclose Exculpatory Evidence Extends To Post Trial Proceedings.  Fifth, Sixth, Eighth and Fourteenth Amendments.................................7

    Banks v. Dretke, 124 S. Ct. 1256 (2004) ...............................................................9

    Brady v. Maryland, 373 U.S. 83 (1963) ...............................................................7

    High v. Head, 209 F.3d 1257 (11th Cir. 208) ......................................................7

    Imbler v. Pachtmon, 424 U.S. 409 (1976) ............................................................7

    Kyles v. Whitley, 514 U.S. 437 (1995).................................................................7

    Miller-El v. Cockell, 537 U.S. 322 (2003) ...........................................................9

    Smith v. Roberts, 115 F.3d 818 (10th Cir. 1997) ................................................7

    Thomas v. Goldsmith, 979 F.2d 746 (9th Cir. 1992)............................................7

    United States v. Bagley, 473 U.S. 667 (1985) ....................................................7

ASSIGNMENT OF ERROR NO. IV ...............................................................................10

    THE POST-CONVICTION TRIAL JUDGE ERRED BY NOT RECUSING HIMSELF.  [T.d. 322, p. 10]................................................................................10

    ISSUED PRESENTED FOR REVIEW ...................................................................10

    A Judge Should Recuse Himself When He Has Personal Knowledge Of Issues Being Raised Before The Court..................................................................10

    2003 ABA Death Penalty Guideline....................................................................12

    Campbell v. Louisiana, 523 U.S. 392 (1988) ....................................................11

    Code of Professional Conduct, Cannon 3 ...........................................................10

    Fourteenth Amendment to the United States Constitution ..................................10

    In re Disqualification of Celebrese, 74 Ohio St. 3d 1233 (1991) .......................11

    In re Disqualification of Crawford, 81 Ohio St. 3d 1204 (1996)........................11

    In re Disqualification of McMonagle, 74 Ohio St. 3d 1226 (1990) ....................11

    In re Disqualification of Morrissey, 77 Ohio St. 3d 1252 (1996)........................11

    In re Disqualification of O'Neill, 81 Ohio St. 3d 1213 (1997)............................11

iii

In re Murchison, 349 U.S. 133 (1955) ....................................................................10

Marshall v. Jerrice Inc., 446 U.S. 238 (1980) .......................................................10

ASSIGNMENT OF ERROR NO. V ..............................................................................14

THE TRIAL COURT ERRED BY APPLYING THE DOCTRINE OF RES JUDICATA TO BAR CERTAIN OF PETITIONER'S CAUSES OF ACTION. [T.d. 322, pp. 5, 7, 8-9, 10, 17, 23, 24, 25] ........................................14

ISSUE PRESENTED FOR REVIEW ....................................................................14

When a petitioner presents sufficient evidence dehors the record in support of meritorious claims in a post-conviction petition, it is inappropriate for the trial court to bar the claims through the application of the doctrine of res judicata? ..........................................................................................................14

Evitts v. Lucey, 469 U.S. 387 (1985) ....................................................................20

Lockett v. Ohio, 438 U.S. 586 (1978) ...................................................................20

State v. Carter, 89 Ohio St. 3d 593 (2000) ...........................................................19

State v. Cooperrider, 4 Ohio St. 3d 226 (1984) ....................................................14

State v. Cowans, 151 Ohio App. 3d 228 (2002) ............................................14, 15

State v. Ishmail, 54 Ohio St. 2d 402 (1978) ..........................................................20

State v. Keith, 79 Ohio St. 3d 514 (1997) ......................................................18, 20

State v. Madrigal, 87 Ohio St. 3d 378 (2000) .......................................................19

State v. Milanovich, 42 Ohio St. 2d 46 (1975) .....................................................14

State v. Perry, 10 Ohio St. 2d 175 (1967) ......................................................17, 20

State v. Scott, 63 Ohio App. 3d 304 (1989) ..........................................................18

State v. Smith, 17 Ohio St. 3d 98 (1985) ...............................................14, 15, 18

ASSIGNMENT OF ERROR NO. VI ............................................................................21

THE TRIAL COURT ERRED IN DISMISSING PETITIONER'S AMENDED POST-CONVICTION PETITION WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT RELIEF OR, AT A MINIMUM, AN EVIDENTIARY HEARING. .....................................................21

ISSUE PRESENTED FOR REVIEW ....................................................................21

iv

A petitioner is entitled to relief, or in the alternative an evidentiary hearing when he presents sufficient operative facts articulating meritorious claims in his post-conviction petition that are supported by evidence dehors the record. ....................21

2003 ABA Death Penalty Guidelines .................................................................33

ABA Death Penalty Guidelines ........................................................................30

Ake v. Oklahoma, 470 U.S. 68 (1985) ...............................................31, 42, 43

Alexander v. Louisiana, 405 U.S. 625 (1972) ...................................................25

Article I, § 1 of the Ohio Constitution ............................................ ..............27

Article I, § 2 of the Ohio Constitution .............................................................27

Article I, § 5 of the Ohio Constitution .............................................................27

Article I, § 9 of the Ohio Constitution .............................................................27

Article I, § 10 of the Ohio Constitution ...........................................................27

Article I, § 16 of the Ohio Constitution ...........................................................27

Article I, § 20 of the Ohio Constitution ...........................................................27

Atwell v. Blackburn, 800 F.2d 502 (5th Cir. 1986) .........................................25

Beasley v. United States, 491 F.2d 687 (6th Cir. 1974) ...................................33

Blackburn v. Foltz, 828 F.2d 1177 (6th Cir. 1987) ..........................................33

Brady v. Maryland, 373 U.S. 83 (1963) .....................................................27, 28

Britt v. North Carolina, 404 U.S. 276 (1971) ..................................................42

Campbell v. Louisiana, 523 U.S. 392 (1998) ...................................................26

Case v. Nebraska, 381 U.S. 336 (1965) ...........................................................46

Castaneda v. Partida, 430 U.S. 482 (1977) ......................................................25

Duke v. Sanymetal Products Company, Inc., 31 Ohio App. 2d 78 (1972).......21

Eighth Amendment to the United States Constitution......................................23

Fourth Amendment to the United States Constitution......................................47

Frazier v. Huffman, 343 F.3d 780 (6th Cir. 2004)...........................................44

v

Glenn v. Tate, 71 F.3d 1204 (6th Cir. 1995)........................................................42

Kordenbrock v. Scroggy, 919 F.2d 1091 (6th Cir. 1990) ....................................42

Kyles v. Whitley, 514 U.S. 419 (1995)................................................................27

Linton v. Perini, 656 F.2d 207 (6th Cir. 1981) ...................................................28

Machetti v. Linahan, 679 F.2d 236 (11th Cir. 1982) ...........................................25

Monroe v. United States, 389 A.2d 811 (D.C. Cir. 1978) ...................................28

Nelson v. Campbell, 124 S. Ct. 2117 (2004) .......................................................45

Ninth Amendment to the United States Constitution ...........................................27

O.R.C. § 2113.07 ................................................................................................25

O.R.C. § 2313.08 ................................................................................................25

O.R.C. § 2313.35 ................................................................................................25

O.R.C. § 2929.03 ................................................................................................44

O.R.C. § 2939.02 ................................................................................................25

O.R.C. § 2939.02 ................................................................................................26

O.R.C. § 2953.21 ................................................................................................22

O.R.C. § 2953.21 ................................................................................................46

Ohio R. Civ. P. 56..............................................................................................21

Ohio Sup. R. 20..................................................................................................30

Oyler v. Boles, 368 U.S. 448 (1962)...................................................................23

Peters v. Kiff, 470 U.S. 493 (1972) ....................................................................32

Sims v. Livesay, 970 F.2d 1575 (6th Cir. 1992)..................................................33

State v. Bunch, 62 Ohio App. 3d 801 (1989).......................................................47

State v. Combs, 100 Ohio App. 3d 90 (1994).......................................................43

State v. Cooperrider, 4 Ohio St. 3d 226 (1994) ..................................................22

State v. Davie 80 Ohio St. 3d 311, 316 (1977).....................................................32

vi

State v. Davie, Trumbull C.P. No. 91 CR 288 ................................................24

State v. Deal, 17 Ohio St. 2d 17 (1969) ......................................................28

State v. DeMarco, 31 Ohio St. 3d 191 (1987) .............................................47

State v. Hester, 45 Ohio St. 2d 71 (1976) ...................................................22

State v. Jackson, 64 Ohio St. 2d 107 (1980) ...............................................22

State v. Kapper, 5 Ohio St. 3d 36, 38 (1983) ..............................................22

State v. Lorraine, No. 95-T-5196, 1996 WL 207676 (Trumbull App. Feb.
    23, 1996) ..............................................................................................46

State v. Milanovich, 42 Ohio St. 2d 46 (1975) ...........................................21

State v. Pruitt, 18 Ohio App. 3d 50 (1984) .................................................28

State v. Renshaw, 276 Md. 259, 347 A.2d 219 (Md. 1975) .......................29

State v. Wiles, 126 Ohio App. 3d 71 (1998) ...............................................46

State v. Wolery, 46 Ohio St. 2d 316 (1976) ................................................23

Strickland v. Washington, 486 U.S. 668 (1984) ................................... passim

Taylor v. Louisiana, 419 U.S. 522 (1975) ............................................25, 32

United States v. Bagley, 473 U.S. 667 (1985) .............................................27

United States v. Weltz, 674 F.2d 185 (3rd Cir. 1982) .................................28

United States v. Young, 482 F.2d 993 (5th Cir. 1973) ................................28

Vahila v. Hall, 77 Ohio St. 3d 421 (1997) .................................................21

Vasquez v. Hiller, 474 U.S. 254, 263 (1986) ..............................................25

Wayte v. United States, 470 U.S. 598 (1985) .............................................23

Wiggins v. Smith, 123 S. Ct. 2527 (2003) ......................................30, 40, 44

Workman v. Tate, 957 F.2d 1339 (6th Cir. 1992) ......................................33

Zant v. Stephens, 462 U.S. 862 (1983) .......................................................23

CONCLUSION ..................................................................................................47

CERTIFICATE OF SERVICE ...........................................................................48

**APPENDIX:**

Findings of Fact, Conclusion of Law of Trial Court ............................................... A-1

Notice of Appeal ..................................................................................................... A-34

Fifth Amendment to the United States Constitution ............................................. A-40

Sixth Amendment to the United States Constitution ............................................ A-41

Eighth Amendment to the United States Constitution .......................................... A-42

Fourteenth Amendment to the United States Constitution ................................... A-43

Article I, Section 1 of the Ohio Constitution ....................................................... A-44

Article I, Section 2 of the Ohio Constitution ....................................................... A-45

Article I, Section 5 of the Ohio Constitution ....................................................... A-46

Article I, Section 9 of the Ohio Constitution ....................................................... A-47

Article I, Section 10 of the Ohio Constitution ..................................................... A-48

Article I, Section 16 of the Ohio Constitution ..................................................... A-49

Article I, Section 20 of the Ohio Constitution ..................................................... A-50

Ohio R. Civ. P. 56 ................................................................................................. A-51

Ohio Rule of Superintendence 20 ........................................................................ A-53

Ohio Code of Judicial conduct, Cannon 3 ............................................................ A-59

O.R.C. § 2313.07 .................................................................................................. A-62

O.R.C. § 2313.08 .................................................................................................. A-63

O.R.C. § 2313.35 .................................................................................................. A-64

O.R.C. § 2929.03 .................................................................................................. A-65

O.R.C. § 2939.02 .................................................................................................. A-68

O.R.C. § 2953.21 .................................................................................................. A-69

State v. Lorraine, No. 95-T-5196, 1996 WL 207676 (Trumbull App.
    Feb. 23, 1996) .................................................................................................. A-72

## STATEMENT OF THE CASE

### I.    PROCEDURAL POSTURE

On January 5, 2004, Nathaniel E. Jackson ("Petitioner") timely filed his initial post-conviction petition which was supported by two volumes of exhibits [T.d. 299, 300]. On March 29, 204 he filed an Amended Petition with supporting exhibits. [T.d. 306, 307]. On March 30, 2004, the assistant prosecutor filed a Motion to Dismiss [T.d. 309] which she subsequently amended [T.d. 312]. On May 20, 2004 Petitioner filed his Memorandum Contra to the State's Motion to Dismiss [T.d. 318, 320]. On June 14, 2004 the trial court issued its findings of fact, conclusions of law dismissing the Amended Post-Conviction Petition. [T.d. 322].

### II.   STATEMENT OF FACTS

Petitioner's conviction for capital murder and death sentence are constitutionally flawed. There are four themes in this case that contribute to his infirm convictions and sentence.

**1.    Racial Considerations:**  The Trumbull County Prosecutor in a racially discriminatory manner has systematically sought death sentences against African-Americans, especially when the victim was Caucasian. [T.d. 307, Exhibit 2]. African-Americans have been systematically excluded from petit jury venires including Petitioner's case. [Id. at 39, 55, T.p. 2846-2848]. Petitioner believes that this exclusion may extend to the grand jury venire and foreperson positions.

**2.    Prosecutorial Misconduct:**  The Trumbull County Prosecutor offered a plea bargain to the Caucasian co-defendant, but did not to Petitioner, who is African-American [T.d. 307, Exhibit 35]. The prosecutor did not provide defense counsel with exculpatory evidence despite claims that he maintained a "modified" open file policy. [Id.] The prosecutor has continued to suppress exculpatory evidence in the post-conviction process including a report concerning the

victim and the fact that the Prosecutor's Office offered the Caucasian co-defendant a plea bargain. [T.d. 309, pp. 8, 15-16].

3.    <u>Ineffective assistance of Counsel</u>:  Trial counsel failed to interview all but one members of Petitioner's family.   [T.d. 307, Exhibits 49-503].   Counsel did not retain a sentencing investigator. [<u>Id.</u> , Exhibit 58].  The trial investigator made insulting, racially oriented remarks to Petitioner.  [T.d. 320, Exhibit 2].  The psychologist, that trial counsel retained incorrectly scored the testing she conducted. [T.d. 78].

4.    <u>The Trial Court Failed To Maintain Fair Procedures</u>:  It has repeatedly accepted venires in capital cases that suffered from a gross underrepresentation of African-Americans. [T.d. 307, Exhibits 39, 55, T.p. 1846-1847]. The trial court on the day of sentencing hearing permitted an attorney to be substantiated who knew nothing about the case. [Sent. T.p. 7]. In this proceeding the Court refused to appoint experts and permit discovery.  [T.d. 322, pp. 5, 7, 9, 11, 13, 16, 21, 26, 33].  The court instead supplemented its post-conviction findings with his own personal observations. [<u>Id.</u>, pp. 10, 15, 25, 26].

<u>ASSIGNMENT OF ERROR NO. I</u>

**THE TRIAL COURT ERRED WHEN IT DENIED PETITIONER'S AMENDED POST-CONVICTION PETITION WITHOUT FIRST AFFORDING HIM THE OPPORTUNITY TO CONDUCT DISCOVERY. [T.d. 322, pp. 5, 7, 9, 11, 13, 16, 21, 23, 26, 33.**

<u>ISSUE PRESENTED FOR REVIEW</u>

A Trial Court Must Provide A Post-Conviction Petitioner With The Opportunity To Conduct Discovery Pursuant To The Civil Rules Prior To Considering A Dispositive Motion Filed By The State Of Ohio. Fifth, Sixth, Eighth and Fourteenth Amendments To The United States Constitution.

On March 29, 2004, Petitioner filed his Amended Post-conviction Petition. [T.d. 306-307]. In his prayer for relief he requested the opportunity to conduct discovery. [<u>Id.</u> at p. 46.] In addition, throughout the body of the petition he requested leave of court to conduct discovery. [<u>Id.</u> at ¶¶ 8, 10, 13, 16, 24, 27, 30, 33, 36, 44, 45]. He also filed a separate motion requesting discovery. [T.d. 321]. The trial court, in its findings of facts and conclusions of law, denied Petitioner the opportunity to conduct discovery. [T.d. 322, pp. 5, 7, 9, 11, 13, 16, 21, 23, 26, 33].

When a state establishes a program or procedure, that program or procedure must be operated within the confines of the Due Process Clause of the Fourteenth Amendment. <u>Goldberg v. Kelly</u>, 397 U.S. 254, 262 (1970). When a state creates a right to appellate review (even though the state is not so required), that system of appellate review must meet the requirements of due process. <u>Evitts v. Lucey</u>, 469 US. 387, 401 (1985). Accordingly, the State of Ohio's post-conviction system, pursuant to <u>Evitts</u> and <u>Goldberg</u>, must meet the requirements of due process.

In the State of Ohio, the petitioner in a post-conviction proceeding has the initial burden of submitting documentation dehors the record to demonstrate that a hearing is warranted as to the constitutional violations alleged in the petition. <u>State v. Kapper</u>, 5 Ohio St. 3d 36, 38 (1983);

State v. Cole, 2 Ohio St. 3d 112, 114 (1982); State v. Pankey, 68 Ohio St. 2d 58, 59 (1981); State v. Jackson, 64 Ohio St. 2d 107, 111 (1980).

The State, consistent with the Due Process Clause of the Fourteenth Amendment, cannot place this initial evidentiary burden upon a petitioner and subsequently deny the Petitioner a meaningful opportunity to meet that burden. To deny a petitioner the opportunity to meet this burden is to emasculate his right to pursue his post-conviction remedies.

The trial court in the present case, when it denied discovery, relied upon this Court's decisions in State v. Wiles, 126 Ohio App. 3d 71, 79 (1998), and State v. Lorraine, No. 95-T-5196, 1996 WL 207676 (Trumbull App. Feb. 23, 1996).  Petitioner met the standard enunciated in these cases (he was entitled to an evidentiary hearing), so he should have been granted discovery.  [See Assignment of Error No. VI].  To the extent he did not meet that standard, then the Court should reconsider its holdings in Wiles and Lorraine.  It is exceedingly unfair for the trial court to deny a petitioner discovery because he has been precluded access the documents that would entitle him to conduct discovery. The Ohio Supreme Court has never addressed the issue of the right to post-conviction discovery with the exception of in the comfort of original action which by its nature imposes a higher burden of proof upon the petitioner.  State, ex rel Love v. Cuyahoga County Prosecutor's Office, 87 Ohio St. 3d 158, 159 (1999).

The trial court erred when it dismissed Petitioner Jackson's Amended Petition without first affording Petitioner discovery.  [T.d. 322]. This Court should vacate the judgment of the trial court and remand the matter with instructions that Petitioner be permitted to conduct discovery after receiving appointed counsel.

4

## ASSIGNMENT OF ERROR NO. II

## THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT PETITIONER FUNDS TO EMPLOY EXPERTS. [T.d. 322, pp. 9, 11.]

### ISSUE PRESENTED FOR REVIEW

A Trial Court In A Post-Conviction Proceeding, Prior To Considering A Dispositive Motion filed By The State Of Ohio, Must Provide The Indigent Petitioner With Adequate Funding To Retain All Reasonable And Necessary Experts. Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution.

On March 29, 2004, Petitioner filed his Amended Post-conviction Petition and two volumes of supporting exhibits. [T.d. 306-307]. He concurrently requested the appointment of experts. [T.d. 306, ¶¶ 33, 43]. In addition he submitted the affidavit of an expert who identified the need for appointment of a psychological expert. [T.d. 307, Exhibit 64].

The Fourteenth Amendment entitles indigent persons to an adequate opportunity to present their claims within the adversary system. This includes the right to court-appropriated funding when the retention of experts is necessary for the indigent individual to present their claims. Britt v. North Carolina, 404 U.S. 226, 227 (1992); Ake v. Oklahoma, 470 U.S. 68, 76-77 (1985).

Likewise, the courts have long recognized that a defendant may not be denied access to the court due to his indigency status. Griffin v. Illinois, 351 U.S. 12, 18 (1956); Burns v. Ohio, 360 U.S. 252 (1959). This right of access of impoverished defendants to the courts extends to post-conviction proceedings. Smith v. Bennett, 365 U.S. 708, 712 (1961); Long v. Iowa, 385 U.S. 192, 194 (1966).

Capital petitioners face a serious dilemma under Ohio's post-conviction scheme. The text of the statute provides that a petitioner must include affidavits or evidence in support of the claim in a petition. State v. Kapper, 5 Ohio St. 3d 36, 38 (1983); State v. Cole, 2 Ohio St. 3d 112, 114

5

(1982). The State, consistent with the Due Process and Equal Protection Clauses of the Fourteenth Amendment, cannot place this initial evidentiary burden upon a petitioner and subsequently deny him a meaningful opportunity to meet that burden by denying him access to funding for expert assistance.

The trial court concluded that it had no authority to grant funding, "The Eleventh District Court of Appeals has held that 'because postconviction proceedings are civil in nature, a petitioner has no constitutional right to court-appointed counsel. Consequently, a petitioner would have no corresponding right to expert assistance'." [T.d. 322, p. 9].

The trial court's legal conclusion was flawed because Petitioner did have a right to appointed counsel. O.R.C. § 2953.21(I). Petitioner, in fact moved the court for appointment pursuant to O.R.C. § 2953.21(I) [T.d. 313] and the trial court granted that motion. [T.d. 315].

Trial courts in the State of Ohio do have the authority to appoint experts during post-conviction proceedings. State v. Lott, 97 Ohio St. 3d 303, 306 (2002) ("The trial court should . . . consider expert testimony, appointing experts if necessary, in deciding this [post-conviction] matter.")

The trial court erred when it dismissed the Amended Petition without appointing experts. U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20. This Court should vacate the judgment of the trial court and remand the matter with instructions that the trial court appoint all reasonable and necessary experts.

## ASSIGNMENT OF ERROR NO. III

**THE POST-CONVICTION ASSISTANT PROSECUTOR ERRED BY NOT PROVIDING PETITIONER WITH THE INFORMATION CONTAINED IN THE PROSECUTOR'S FILES WHICH WAS NECESSARY TO SUPPORT THE CLAIMS CONTAINED IN THE AMENDED PETITION. [T.d. 309, pp. 8, 15-16].**

ISSUE PRESENTED FOR REVIEW

The Prosecutor's Duty To Disclose Exculpatory Evidence Extends To Post Trial Proceedings. Fifth, Sixth, Eighth and Fourteenth Amendments.

Petitioner, in his Amended Petition, raised Causes of Actions that alleged that the Trumbull County Prosecutor's Office engaged in a racially discriminatory application of the death penalty [T.d. 306, ¶¶ 16-24] and in the present case had failed to provide trial counsel with exculpatory evidence [Id. at ¶¶ 45-54]. Petitioner's arguments relied upon and cited to specific information that was in the exclusive possession of the prosecutor  The assistant prosecutor, in her response to these claims, refused to acknowledge or deny the existence of the evidence in question. [T.d. 309, pp. 8, 15-16].

A prosecutor is required to disclose favorable evidence to an accused in a criminal proceeding.  Brady v. Maryland, 373 U.S. 83, 87 (1963).  The duty of disclosure includes impeachment evidence as well as exculpatory evidence.  United States v. Bagley, 473 U.S. 667, 676 (1985).  In conjunction with this duty of disclosure, a prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police.  Kyles v. Whitley, 514 U.S. 437 (1995).  Finally, the prosecutor's duty of disclosure extends to post-conviction proceedings.  Imbler v. Pachtman, 424 U.S. 409, 427, n.25 (1976); High v. Head, 209 F.3d 1257, 1264, n.8 (11th Cir. 208); Smith v. Roberts, 115 F.3d 818, 820 (10th Cir. 1997); Thomas v. Goldsmith, 979 F.2d 746, 749-50 (9th Cir. 1992).

Petitioner, in his First Cause of Action alleged that the Trumbull County Prosecutor's Office has selectively targeted African-Americans in capital cases. [T.d. 306, ¶¶ 16-24]. A critical piece of evidence in support of his argument was that the Trumbull County Prosecutor in the instant case offered a plea bargain to the Caucasian defendant (Donna Roberts) but had not offered a similar plea bargain to the African-American defendant (Petitioner) [Id. at ¶ 23]. Petitioner was unable to obtain an affidavit from counsel for the co-defendant to confirm the offer of a plea bargain, even though that counsel had orally acknowledged the same. [T.d. 307, Exhibit 35].

The assistant prosecutor instead of admitting to the existence of the relevant exculpatory information, as the Constitution obligated her, attacked the credibility of counsel for Petitioner:

> Petitioner argues that his case is a quintessential case of racial discrimination because his Caucasian co-defendant was purportedly offered a plea agreement which would have spared her life. The only evidence offered is an affidavit containing the hearsay statements of an Ohio Public Defender who is representing Petitioner in the postconviction proceedings. The public defender, Randall Porter, states he was told of the Roberts plea offer by her trial counsel, Atty. John Juhasz. Even if this Court excepts this statement as credible, there is no submission from Atty. Juhasz, hearsay or otherwise, that the plea offer was based on her race. If, in fact, such a plea offer existed, it may well have been due to the fact that Roberts, unlike Petitioner, was not the actual shooter in this homicide, nor did she have Petitioner's lengthy criminal history.

[T.d. 309, p. 8].

The prosecutor adopted a similar tactic with respect to the Fourth Cause in which Petitioner alleged that the prosecutor suppressed exculpatory evidence. [T.d. 306, ¶¶ 45-64]. The trial court did not grant Petitioner access to the trial or police files to support this Cause of Action. [See Assignment of Error No. I]. Petitioner was unable, through his post-trial investigation, to obtain an exculpatory police report that the victim had planned to "fake" his own death, [T.d. 306,

¶ 53]. The prosecutor instead of acknowledging the existence of the report again evaded the issue by questioning the credibility of post-conviction counsel.

> First, the "evidence" as presented is pure hearsay and would not be admissible in any court of law. If, in fact, the prosecutor's office withheld a police report, why is the report itself not attached to the Petition? Furthermore, it should be considered highly suspect by this Court that if, in fact, Atty. Juhasz was willing to make such a statement to Atty. Porter, why Atty. Juhasz himself did not back up this allegation with an affidavit of his own . . . The Porter affidavit on the body double topic is nothing but hearsay, which could have been easily supported with the actual police report supposedly withheld by the State, or an affidavit from Atty. Juhasz. Furthermore, the affidavit was submitted by someone with a clear interest in the outcome of this petition, namely, its author. Therefore, the credibility of the affidavit is highly suspect.

[T.d. 309, pp. 15-16].

The United States Supreme Court has twice recently vacated death sentences as a result of improper prosecutor practices, including racism and suppression of evidence. Miller-El v. Cockell, 537 U.S. 322, 344-346 (2003), Banks v. Dretke, 124 S. Ct. 1256, 1279 (2004). The Assistant Prosecutor instead of addressing the merits of the claims, disingenuously refused to confirm either the existence or deny the plea offer and police report.

The trial court erred when it dismissed the First and Fourth Causes of Action. The Court should remand the case with instructions that the lower court order the Assistant Prosecutor to unequivocally confirm or deny the existence of the two pieces of evidence and other relevant exculpatory evidence that she has and continues to suppress. U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

## ASSIGNMENT OF ERROR NO. IV

**THE POST-CONVICTION TRIAL JUDGE ERRED BY NOT RECUSING HIMSELF. [T.d. 322, p. 10].**

### ISSUED PRESENTED FOR REVIEW

A Judge Should Recuse Himself When He Has Personal Knowledge Of Issues Being Raised Before The Court.

Petitioner raised in his Amended Post-conviction Petition the constitutional claim that the Trumbull County Common Pleas Court Judges improperly selected grand jury forepersons. [T.d. 306, ¶¶ 35-44]. Petitioner also raised the issue that the trial court had failed to conduct the required pretrial hearing concerning a letter that Petitioner had sent the trial court requesting substitution of counsel. [T.d. 306, ¶¶ 55-62]. These two causes of action were "off the record issues". There was no evidence contained in the record that factually addressed these issues. The trial judge presented a personal recollection of the missing facts when he entered the Findings of Fact, Conclusions of Law. [T.d. 322, pp. 10-15]. The trial judge should have recused himself when he became aware that he personally possessed material facts concerning two of the Causes of Action.

A fair trial in a fair tribunal is a basic requirement of due process. In re Murchison, 349 U.S. 133, 136 (1955). The Due Process Clause of the Fourteenth Amendment guarantees the appearance and reality of fairness. Marshall v. Jerrice Inc., 446 U.S. 238, 242 (1980). A trial judge should recuse himself when his impartiality might reasonably be questioned, or in instances where he possessed personal knowledge of evidentiary facts that are in dispute. Code of Professional Conduct, Cannon 3(E)(1)(a).

The Ohio Supreme Court has routinely recused trial judges where their impartiality "might reasonably be questioned" or where they have "personal knowledge of disputed evidentiary facts

concerning the proceedings." In re Disqualification of Celebrese, 74 Ohio St. 3d 1233 (1991); In re Disqualification of McMonagle, 74 Ohio St. 3d 1226 (1990); In re Disqualification of O'Neill, 81 Ohio St. 3d 1213 (1997); In re Disqualification of Crawford, 81 Ohio St. 3d 1204 (1996); and In re Disqualification of Morrissey, 77 Ohio St. 3d 1252 (1996).

In his Second Cause of action, Petitioner alleged that the common pleas judges in Trumbull County have traditionally used race as a criteria for selecting forepersons for the Trumbull County Grand Juries. [T.d. 306, ¶¶ 35-44]. The United States Supreme Court has condemned this practice. Campbell v. Louisiana, 523 U.S. 392, 398 (1988). The National Jury Project determined that the discrimination in the selection of grand jury forepersons exists in Hamilton County [T.d. 307, Exhibit 39]. The trial judge in the present case became both a witness and judge when he supplied the following evidence in his Findings of Fact, Conclusions of Law:

> . . . nor is this Court aware of any instance where any of the four general division judges of this Court selected a grand jury foreman or forewoman from a source other than the annual jury list. Indeed, the only way this Court, or the other three common pleas judges, would ever reach beyond the jury list to fill the foreman's or forewoman's position would be if no qualified citizens appeared on the list to serve in that capacity. In the thirteen years this judge has been on the bench, there has never been a need to exercise this judge's prerogative of hand selecting a foreman or forewoman from a source other than the jury list. (Emphasis added).

[T.d. 322, p. 10].

In his Fifth Cause of Action Petitioner alleged that the trial court failed to conduct a hearing on the letter requesting a change of counsel that Petitioner sent to the trial court. [T.d. 306, ¶¶ 55-62]. Petitioner in an affidavit swore that he mailed the letter to the trial judge. [T.d. 320, Exhibit 3]. At some point the letter was rerouted from the Judge to trial counsel. [Id.] The trial court supplied the following information in its finding of facts. "This Court has no independent recollection of reviewing this letter." [T.d. 322, p. 15]. Because of the manner in

which the trial judge resolved the issue, it is unclear as to whether the Judge's recollection could be refreshed or another member of the Judge's Office forwarded the letter to trial counsel.

The trial court, in its Findings of Facts, concluded the conducting of a mitigation investigation that "the very nature of the testimony offered by family members and friends hardly requires exhaustive preparation . . .  Such testimony does not require lengthy interrogations." [T.d. 322, p. 25].  The trial court's interjection of this opinion was completely incorrect.  A mitigation investigation requires multiple visits with some individuals because the investigator needs to develop a relationship of trust and confidence with interviewees so that they will disclose sometimes very private and very sensitive and shameful information.  [T.d. 307, Exhibit 60]. "Counsel should bear in mind that much of the information that must be elicited for the sentencing phase is very personal and may be exceedingly difficult for the client to discuss . . . .  Obtaining such information requires overcoming considerable barriers . . . ." Commentary to 2003 ABA Death Penalty Guideline 10.7.

The trial court then proceeded to address the prevailing standards for psychologists, "In light of the U.S. Supreme Court's decision in Atkins v. Virginia (2002), 536 U.S. 304, it may well have been tantamount to malpractice to forego I.Q. testing, especially when the Petitioner's academic performance was below average and he previously scored in the 70s on two prior I.Q. tests." [T.d. 322, p. 26].  Again the trial court's interjection of information was not only incorrect, but the information itself was wrong.  In an Atkins proceeding, the party who the most recent IQ tested favorable, will not want the defendant retested.  In the present case the two most recent tests were favorable with respect to a finding of mental retardation.

The trial court's interjection of opinion information was presented without affording Petitioner the opportunity to cross examine the trial court concerning his personal observations.

12

Further Petitioner was not able to question the judge concerning his qualifications and basis for knowledge of the prevailing standards in capital cases.

The trial judge erred when instead of recusing himself, he dismissed the petition.  The Court should vacate the judgment of the trial court and remand the case for a disinterested judge to preside.  U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

## ASSIGNMENT OF ERROR NO. V

**THE TRIAL COURT ERRED BY APPLYING THE DOCTRINE OF RES JUDICATA TO BAR CERTAIN OF PETITIONER'S CAUSES OF ACTION. [T.d. 322, pp. 5, 7, 8-9, 10, 17, 23, 24, 25].**

### ISSUE PRESENTED FOR REVIEW

When a petitioner presents sufficient evidence dehors the record in support of meritorious claims in a post-conviction petition, it is inappropriate for the trial court to bar the claims through the application of the doctrine of res judicata?

Petitioner filed an Amended Post-conviction Petition that contained fifteen causes of action.  [T.d. 306] and was supported by eighty-two exhibits.  [T.d. 307].  The trial court erroneously ruled that eight of those causes of action could have been raised on direct appeal and therefore were barred by res judicata.  [T.d. 322, pp. 5, 7, 8-9, 10, 17, 23, 24, 25].

If a post-conviction issue is supported by evidence outside the record, as well as evidence appearing in the record, the issue is not subject to the bar of res judicata.  State v. Smith, 17 Ohio St. 3d 98, 101, n.1 (1985); State v. Cooperrider, 4 Ohio St. 3d 226, 228 (1984); State v. Milanovich, 42 Ohio St. 2d 46, 50 (1975).

The trial court's misapplications of the doctrine of res judicata is at least partially attributable to the incorrect definition that it applied.  The court concluded that evidence, to preclude the bar of res judicata, must "not have been" in existence and available for use at the time of trial.  State v. Cowans, 151 Ohio App. 3d 228 (2002), ¶15."  [T.d. 322, p. 7, See also pp. 8-9].  This definition is incorrect.  A court can only grant post-conviction relief if the evidence in dispute was available at the time of trial.  For instance, in a post-conviction case involving a claim of ineffective assistance of counsel, a court could not find counsel ineffective for not requesting DNA testing, if the trial was conducted prior to the advent of DNA testing.  Yet pursuant to the definition adopted by the trial court, defense counsel could only be found ineffective pursuant to

14

such a scenario. Likewise if a defense attorney failed to call alibi witnesses, even though he had been informed of the identity of the same by defendant, defense counsel could not be deemed to be ineffective because the witnesses were evaluated at the time of trial. This is contrary to established precedent of the Ohio Supreme Court. State v. Smith, 17 Ohio St. 3d at 101, n.1.

This Court's holding in Cowans regarding the definition of "evidence dehors the record" was dicta and not dispositive of the issue. In Cowans the Court held that the trial court had no jurisdiction to address the post-conviction petition. Cowans, 151 Ohio App. 3d at 232. The majority conceded that the second assignment of error in Cowans (in which the Court addressed the nature of the evidence attached to the post-conviction petition) was "moot". Id. Judge Grendall in her concurring opinion correctly observed:

> I concur with the majority's decision to affirm the lower court's ruling in this case on the grounds that the trial court lacked jurisdiction . . . I also concur with the majority's determination that the trial court's lack of jurisdiction renders appellant's second assignment of error moot. I do not agree with the majority's decision to address the merits of appellant's second assignment of error.

Id. at 234.

When the trial court's res judicata rulings are viewed in this context of the improper definition it employed, it becomes apparent those ruling were incorrect.

1. **The State of Ohio Has An Infirm Post-Conviction System** [T.d. 306, ¶¶162-169].

The trial court erroneously concluded that "This action is barred by the doctrine of res judicata". [T.d. 322, p. 5]. The basis for the trial court's conclusion is unclear. Trial counsel had no reason to raise the constitutionality of Ohio's post-conviction petition prior to trial. Such a challenge would have been premature. Direct appeal counsel has no reason to raise this issue.

2. **The Trumbull County Prosecutor Seeks The Death Penalty In A Racially Discriminatory Manner.** [T.d. 306, ¶¶25-34].

15

Petitioner submitted thirty-five exhibits in support of this Cause of Action. [T.d. 307, Exhibits 1-35]. The trial court found this Cause of Action was raised on direct appeal and barred by res judicata. [T.d. 322, p. 7]. The trial court, however, conceded that the evidence that was the basis of the post-conviction claim was not in the direct appeal record. [Id.] However, the trial court concluded that it could have been placed in the record if trial counsel so desired (and had conducted the necessary investigation). [Id.] Therefore because the issue could not have been fairly and fully litigated on direct appeal.

3.  **The Grand Jury Contained An Underpresentation Of African-Americans.** [T.d. 306, ¶¶35-44.]

Petitioner submitted four exhibits [T.d. 307, Exhibits 36-39] in support of the Second Cause of Action including the affidavit of Diane Wiley, President of the National Jury Project, Midwest, documenting the existence of racial bias in the selection of another capital venire in Trumbull County. [T.d. 307, Exhibit 39]. The trial court found that trial counsel had mounted a challenge to the grand jury venire. [T.d. 322, p. 8]. Trial counsel, without any evidence, challenged only the petitioner's jury venire. [T.d. 48]. Therefore the evidence upon which Petitioner based his post-conviction claim was not in the direct appeal record. The trial court conceded this fact, "Clearly, all of these exhibits would have been available to Petitioner at the time of trial and could have been raised in the form of a pretrial motion." (Emphasis added.) [T.d. 322, pp. 9-10]. The logical conclusion from the trial court's factual finding is that 1) the issue is not barred by res judicata because it could not have been fully and fairly litigated on direct appeal, and 2) trial counsel was ineffective for not fully litigating this issue at the time of trial.

4.  **The Trumbull County Common Pleas Court Selected Grand Jury Forepersons in a Racially Discriminatory Manner.** [T.d. 306, ¶¶25-34.]

Petitioner supported this Cause of Action with four exhibits. [T.d. 307, Exhibits 41-43, T.d. 320, Exhibit 2]. This includes the affidavit of Diane Wiley, the President of the National Jury Project, in which she found the foreperson selection procedure that the State of Ohio employs, has permitted racial discrimination in Trumbull County. [T.d. 307, Exhibit 39]. The trial court applied the doctrine of res judicata because the supporting exhibits were available at the time of trial. [T.d. 322, p. 10]. However trial counsel did not challenge the foreperson selection procedure. Therefore trial counsel did not place the exhibits in the record that would have permitted the issue to be fully and fairly litigated on direct appeal. State v. Perry, 10 Ohio St. 2d 175 (1967). This conclusion is buttressed by the fact that the trial judge, in order to resolve the factual issue, personally added facts to the record. [See Assignment of Error No. IV].

5. **The Petit Jury Venire Was Selected In A Racially Discriminatory Manner**. [T.d. 306, ¶¶72-84].

Petitioner submitted six exhibits to buttress his claim that the underrepresentation of African-Americans in his venire was not due to chance. [T.d. 307, Exhibits 1, 36-39, 55]. This included the affidavit of Diane Wiley, President of the National Jury Project, Midwest. She documented that minorities had been systemically culled from the petit jury venire in another capital case before the same trial judge. [Id. at 39].

Trial counsel challenged the venire, but only as to limit issue of use of the voter registration lists as the source list. Counsel submitted no exhibits in support of the claim. [T.d. 48.] Therefore the Ohio Supreme Court and counsel for petitioner on direct appeal did not have a factual basis for raising the post-conviction issue that minorities were systematically culled from the venire. Thus the trial court erred [T.d. 322, p. 26] when it determined that the issue was barred by res judicata.

6. **Petitioner Did Not Receive Effective Assistance Of Counsel In The Trial Phase. [T.d. 306, ¶¶98-109].**

Petitioner submitted thirteen exhibits in support of his trial ineffectiveness claim. [T.d. 307, Exhibits 65-77]. These exhibits included nine police reports that documented evidence dehors the record that trial counsel should have placed in the record for the jury's consideration. [Id.]

The trial court found that "Petitioner raised an ineffective assistance of counsel claim in his brief to the Ohio Supreme Court. Therefore the doctrine of res judicata applies." [T.d. 322, p. 23]. The trial court failed to explain in its findings the reason that the new examples of ineffective assistance of counsel, which were supported solely by the police reports were barred by res judicata. [Id.] These allegations were in fact not subject to the bar. State v. Smith, 17 Ohio St. 3d 98, 101, n.1 (1985).

7. **Petitioner Did Not Receive In The Mitigation Phase Effective Assistance Of Counsel. [T.d. 306, ¶¶110-122].**

Petitioner submitted seven exhibits in support of the Tenth Cause of Action, that trial counsel was ineffective in the mitigation phase. [T.d. 307, Exhibits 44, 49-53, 56-59, 66-67]. The exhibits included the affidavits of five family members [Id. Exhibits 49-53] and two mitigation specialists [Id. Exhibits 58-59].

When a defendant raises a claim of ineffective assistance of counsel in the mitigation phase that is dependent upon the affidavits of individuals who would have provided additional testimony, the claim is not subject to the bar of res judicata. State v. Keith, 79 Ohio St. 3d 514, 536-537 (a "claim of failure to present mitigating evidence is properly considered in a post-conviction proceeding"), See also State v. Scott, 63 Ohio App. 3d 304, 308 (1989). The trial court erred when it applied the bar of res judicata to the Tenth Cause of Action [T.d. 322, p. 24].

8.    **The State Of Ohio's Use Of Lethal Injection Is Constitutionally Infirm.** [T.d. 306, ¶¶ 153-161].

Petitioner submitted three exhibits in support of the Thirteenth Cause of Action which challenged lethal injection as a means of execution. [T.d. 307, Exhibits 82, 83]. This included the affidavit of Dr. Mark J.S. Heath, M.D. who concluded within a reasonable degree of medical certainty "it can and should be presumed that the lethal injection procedure Ohio employs creates medically unacceptable risks of infliction excruciating pain and suffering on inmates during the lethal injection procedure". [Id. Exhibit 82, p. 26].

The trial court concluded that "the claim is barred by the doctrine of res judicata as the constitutionality of lethal injection could have been raised in Petitioner's direct appeal and was not. Perry, Cole, supra". [T.d. 322, ¶31]. Petitioner's post-conviction claim was dependent upon the affidavit of Dr. Heath. A claim based upon the affidavit testimony of an expert who was not called at trial must be raised in post-conviction because a direct appeal court, absent speculation, has "no way of knowing, what if anything the expert testimony would have demonstrated". State v. Carter, 89 Ohio St. 3d 593, 606 (2000); See also State v. Madrigal, 87 Ohio St. 3d 378, 391 (2000) (establishing prejudice from lack of expert testimony "would require proof outside the record, such as affidavits demonstrating the probable testimony.)"

The trial court erred when it found that the Thirteenth Cause of Action was barred by res judicata.

9.    **This Court Should Remand The Case For A Merits Review Of These Causes Of Action That The Trial Court Improperly Found To be Procedurally Barred.**

Because the evidence supporting the First, Second, Third, Seventh, Ninth, Tenth, Thirteenth and Fourteenth Causes of Action was outside the record, these Causes could not have been raised by his counsel on direct appeal. The direct appeal is limited to issues and evidence on

the trial record.  State v. Ishmail, 54 Ohio St. 2d 402, 405 (1978); State v. Keith, 79 Ohio St. 3d 514, 536-537 (1997).  Furthermore, Petitioner requested discovery to obtain additional evidence in support of these causes of action.  See Assignment of Error No. I.  These causes of action could be "fully litigated" on direct appeal within the meaning of State v. Perry, 10 Ohio St. 2d 175 (1967).

Ohio established a post-conviction procedure to effectuate constitutional rights for those defendants convicted of felonies.  These procedures must "operate in accord with the dictates of the Constitution – and, in particular, in accord with the Due Process Clause."  Evitts v. Lucey, 469 U.S. 387, 401 (1985);  Lockett v. Ohio, 438 U.S. 586, 604-605 (1978).

The trial court violated Petitioner's constitutional rights for the reasons set forth in this Assignment of Error.  Thus, in the alternative to granting relief under the errors raised in the remaining Assignments of Error, Petitioner requests that this court grant relief by way of finding that the trial court improperly applied res judicata to dismiss Petitioner's grounds for relief.  U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

## ASSIGNMENT OF ERROR NO. VI

THE TRIAL COURT ERRED IN DISMISSING PETITIONER'S AMENDED POST-CONVICTION PETITION WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT RELIEF OR, AT A MINIMUM, AN EVIDENTIARY HEARING.

### ISSUE PRESENTED FOR REVIEW

A petitioner is entitled to relief, or in the alternative an evidentiary hearing when he presents sufficient operative facts articulating meritorious claims in his post-conviction petition that are supported by evidence dehors the record.

The trial court erred in dismissing Petitioner's Amended Post-Conviction Petition for the following reasons: (1) Petitioner raised violations of his constitutional rights that warranted relief; (2) the amended petition contained causes of action that were supported by sufficient operative facts which required discovery, the funding of experts, and an evidentiary hearing.

In construing the post-conviction statutes, the Ohio Supreme Court has held that Ohio R. Civ. P. 56, sets out the procedures on a motion for summary judgment, applies to post-conviction, as well as other civil cases. State v. Milanovich, 42 Ohio St. 2d 46, 51 (1975) Summary judgment and motion to dismiss are only appropriate where no genuine issue of fact exists. See Duke v. Sanymetal Products Company, Inc., 31 Ohio App. 2d 78 (1972).. The nonmoving party is entitled to have the evidence construed most strongly in its favor. Id. There must be a "complete failure of proof concerning an essential element of the nonmoving party's case," for summary judgment should be granted. Dresher v. Burt, 75 Ohio St. 3d 280, 288 (1996). See also Vahila v. Hall, 77 Ohio St. 3d 421 (1997). Each ground for relief must be considered separately. Ohio R. Civ. P. 56(D).[1]

To obtain an evidentiary hearing, a petitioner bears the initial burden of submitting evidentiary documents that contain sufficient operative facts to the existence of a constitutional

violation.  Broad assertions, without further demonstrating prejudice, do not warrant a hearing for all post-conviction petitions.  State v. Jackson, 64 Ohio St. 2d 107, 111 (1980); State v. Kapper, 5 Ohio St. 3d 36 (1983).  Unlike the petitioners in Jackson and Kapper, however, Petitioner pled sufficient operative facts to warrant a hearing.  He specifically pled the deprivation of constitutional rights and submitted evidence demonstrating the resulting harm.

The statute directs that a hearing shall be held "[u]nless the petition and the files and records of the case show the petitioner is not entitled to relief." O.R.C. § 2953.21(E).  The plain language of the statute *creates a presumption in favor of a hearing* in this case and against dismissal or summary judgment for the State.

Petitioner is not required to **prove** his claims and prejudice based solely on his petition, and to adopt such a position simply reads the evidentiary hearing provision out of the statute. While a petitioner is required to raise sufficient operative facts demonstrating prejudice, an evidentiary hearing, with proper discovery, is the proper forum for a post-conviction petitioner to **prove** prejudice. State v. Cooperrider, 4 Ohio St. 3d 226, 228 (1994) citing State v. Hester, 45 Ohio St. 2d 71 (1976).

Petitioner supported the causes of action in his Amended Petition with facts adequate to justify relief. In the alternative he submitted sufficient documentation to be entitled to discovery and an evidentiary hearing.

**First Cause Of Action:  The Trumbull County Prosecutor's Charging Decisions Have Resulted In The Death Penalty Being Imposed In A Racially Discriminatory Manner.** [T.d. 306, ¶¶16-24.]

The population of Trumbull County is 7.9% African-American [T.d. 307, Exhibit 1].  In nine of the ten cases in which the trial courts of that County have sentenced a defendant to death

---

[1] Even though the State as filed a pleading entitled "Motion to Dismiss" the Court should apply the standard contained in Civ. R. 56 because the prosecutor has argued the merits of issues.

there was a victim who was Caucasian [Id. at Exhibit 2]. In almost all of thirty-six cases in which the prosecutor has sought the death penalty, at least one of the victims was Caucasian [Id. at Exhibits 2-36]. In five of the ten cases the defendant was African-American. [Id. at Exhibit 2]. The prosecutor in the present case offered the Caucasian co-defendant a plea bargain, but did not similarly offer Nathaniel Jackson, who is African-American,. a plea bargain. [Id., at Exhibit 35].

The prosecutor is forbidden by the Fourteenth Amendment from basing his choice of whom to prosecute upon "impermissible factors" such as race or religion. Wayte v. United States, 470 U.S. 598, 607 (1985), citing Oyler v. Boles, 368 U.S. 448, 456 (1962). The Ohio Supreme Court has also recognized that a prosecutor may not choose whom to indict based upon "an unjustifiable standard . . . or . . . arbitrary classification" such as race. State v. Wolery, 46 Ohio St. 2d 316, 324, (1976), citing Oyler, 368 U.S. at 456. A death sentence which is based even in part upon "factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as . . . the race . . . of the defendant" violates the Eighth Amendment. Zant v. Stephens, 462 U.S. 862, 885 (1983).

The trial court, in granting the State's Motion to Dismiss, held that the proof Petitioner submitted to did not constitute operative facts of racial discrimination. [T.d. 322, pp. 6-7]. The court cited to the fact because "over 90% of Trumbull County population is white . . . it is likely that 90% of death row inmates' victim's will be Caucasian as well" [Id. at p. 7]. The trial court ignores the fact that ninety percent of the defendants who receive the death penalty are not Caucasian.

The trial court held that Petitioner had failed to prove "that others similarly situated" did not face the death penalty". Petitioner relied upon the fact that the Caucasian co-defendant Donna Roberts was offered a deal, which if she had accepted she would not have faced the death penalty.

23

[T.d. 307, Exhibit 35 at ¶4]. The trial court held this was irrelevant because she ultimately received the death penalty. [T.d. 322, pp. 6-7]. But the trial court's reasoning was erroneous, the focus of the claim was on the charging decision. The fact that the co-defendant ultimately received the death penalty highlights the selectivity in the charging decision. The white co-defendant was equally culpable, but yet the prosecutor made a plea offer to her.

Petitioner's judgment and sentence are void or voidable because the Trumbull County Prosecutor has employed his discretion in capital cases in a racially discriminatory manner. Capital cases are limited almost exclusively to those cases in which the victim is Caucasian and disproportionately when the victim is African-American. U.S. Const. amends. V, VI, VIII, IX, and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20

**Second Cause Of Action: The Grand Jury That Indicted Nathaniel Jackson Was Drawn From A Venire In Which There Was An Underrepresentation Of African Americans.** [T.d. 306 ¶¶25-34.].

The Court summoned four hundred jurors to serve on the petit jury venire [T.d. 307, Exhibit 54.] One-hundred-forty persons appeared for jury duty [Tp. 1846-1848.] The parties initially agreed that only one African-American was questioned during individual voir dire [Tp. 1846-1848.] African Americans comprised 7.9 percent of the population in Trumbull County [T.d. 307, Exhibit 1.] Consequently there should have been approximately eleven African-Americans in the one-hundred-forty-persons who appeared for jury duty. This same underrepresentation of African-Americans in the venire has occurred in other capital cases. State v. Davie, Trumbull C.P. No. 91 CR 288. [T.d. 307, Exhibits 36-38.] Not one African-American appeared for jury duty. [Id.] In co-defendant Donna Roberts' case there were no African-Americans on the jury [Id. Exhibit 55].

The same court officials who selected the petit jury venires in the above cases selected the grand jury venire in the present case. They employed the same flawed procedures. O.R.C. § 2939.02, 2113.07, 2313.08 and 2313.35. Consequently it was most likely that the underrepresentation of African Americans continued in the grand jury venire in the present case.

The Supreme Court, in an unbroken line of cases, has held that a criminal conviction cannot stand under the Equal Protection Clause if it is based on an indictment returned by a grand jury from which individuals were excluded on the basis of race. Alexander v. Louisiana, 405 U.S. 625, 628 (1972); Castaneda v. Partida, 430 U.S. 482, 492-495 (1977). To achieve an impartial grand jury, the panels from which grand jurors are chosen must also be drawn from a "fair cross section" of the community. Taylor v. Louisiana, 419 U.S. 522, 527 (1975); Atwell v. Blackburn, 800 F.2d 502, 505 (5th Cir. 1986) (fair cross section requirement applies to grand jury panels); Machetti v. Linahan, 679 F.2d 236, 239 (11th Cir. 1982) (same). If racial discrimination occurs in the selection process of the grand jury, the conviction must be reversed notwithstanding "overwhelming" evidence of guilt. Vasquez v. Hiller, 474 U.S. 254, 263 (1986).

The trial court held that Petitioner had not demonstrated a systemic problem of underrepresentation. [T.d. 322, pp. 8-9]. Diane Wiley of the National Jury Project, Midwest documented that there was such a problem in 1992. [T.d. 307, Exhibit 39]. The underrepresentation problem persists eleven years later in both Petitioner's case, and the co-defendant's case. [T.d. 307, Exhibit 55]. This evidence was sufficient to warrant discovery and to avoid summary dismissal.

The trial court stated that it refused to accord Ms. Wiley's affidavit any weight because it erroneously believed that the Ohio Supreme Court offered it no weight in the Davie case. [T.d.

322, p. 9]. The Ohio Supreme Court never considered her affidavit in that case. The Ohio Supreme Court decided the Davie case in 1992. [Id.] Ms. Wiley signed her affidavit on June 14, 2000. [T.d. 307, Exhibit 39].

Petitioner's convictions and sentence are void or voidable because the grand jury that indicted him was drawn from a venire in which African-Americans were disproportionately excluded. U.S. Const. amends. V, VI, VIII, IX, and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

**Third Cause Of Action: It Is The Good Faith Belief Of Counsel That The Trumbull County Common Pleas Court Has Employed A System To Choose Grand Jury Forepersons That Can Lead To The Discrimination In The Selection Process.** [T.d. 306, ¶¶35-44.]

In the State of Ohio, the common pleas court judge may select anyone to be the grand jury foreperson who satisfies the qualifications of a juror. See O.R.C. § 2939.02. A foreperson selection procedure that results in the underrepresentation of African-Americans because the state court judges select predominantly Caucasians renders the conviction invalid. Campbell v. Louisiana, 523 U.S. 392, 398 (1998)

Janice Winons, who is Caucasian, was the foreperson of the grand jury that capitally indicted Nathaniel Jackson. [T.d. 307, Exhibit 41.]

The trial court dismissed this Cause of Action based upon its own personal observations concerning the selection system. [T.d. 322, p. 10]. Even assuming that the trial court's observations are correct, that the judges do not go outside the venire, Petitioner's claim can still succeed if the judges exercise racial discrimination in selecting the foreperson from the venire. Campbell v. Louisiana, 523 U.S. at 396 ("In Louisiana . . . the judge selects the foreperson from the grand jury before the remaining members of the grant jury have been chosen by lot"). It is undisputed that the foreperson in the present case is Caucasian. [T.d. 307, Exhibit 41].

Petitioner Jackson's convictions and sentence are void or voidable because the grand jury foreperson may have been chosen in a racially discriminatory manner. U.S. Const. amends. V, VI, VIII, IX, and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

**Fourth Cause Of Action:  The Trial Prosecutors Failed To Provide Trial Counsel With Exculpatory Evidence.** [T.d. 306 ¶¶45-44.]

The law enforcement agencies suppressed a police report indicating that the decedent had made plans to fake his own death. Trial counsel for Ms. Roberts confirmed the existence of such a police report.  [T.d. 307, Exhibit 35.]  Ms. Roberts subsequent to Petitioner's trial herself confirmed the existence of such a plot by the decedent.  [T.d. 307, Exhibit 2.]  Because the trial court refused to grant Petitioner discovery, he was unable to identify other suppressed evidence. See Second Cause of Action.

The prosecution has a constitutional obligation to disclose evidence favorable to the accused.  Brady v. Maryland, 373 U.S. 83, 86 (1963).  Favorable evidence for Brady purposes includes both exculpatory and impeachment evidence.  Kyles v. Whitley, 514 U.S. 419, 433 (1995).  Constitutional error results when the favorable evidence that is suppressed by the government lead to the conclusion that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Kyles v. Whitley, 514 U.S. at 433 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

The trial court denied relief, partially based upon the fact that Petitioner could not produce the report in question.  [T.d. 322, p. 13].  This is exactly the reason that Petitioner needed discovery.  [See Assignment of Error No. I].  The fact that the Assistant Prosecutor would not confirm or deny the existence of the report certainly adds credence to the conclusion the report exists. [T.d. 309, pp. 15-16].

The trial court proceeded to determine that if the report did exist, it was not exculpatory because Petitioner killed someone who at least looked like Mr. Fingerhut. [T.d. 322, p. 13]. However the State had to prove beyond a reasonable doubt that Petitioner shot Fingerhut and not a "body double" as the trial court suggested.

The convictions and sentences against Petitioner are void and/or voidable because the Trumbull County Prosecutor's Office failed to provide trial counsel with exculpatory evidence. U.S. Const. Amends. V, VIII, IX, XIV, Ohio Const. Art. I, §§ 1, 2, 5, 9, 10, 16, and 20, Brady v. Maryland, 373 U.S. 83 (1963). The Court should remand Petitioner's case with instructions that he be permitted to conduct discovery to support the Fourth Ground for Relief.

**Fifth Cause Of Action:  The Court Failed To Hold A Hearing Concerning Nathaniel Jackson's Request To Discharge His Trial Counsel.** [T.d. 306 ¶¶55-62.]

Petitioner Jackson communicated or attempted to communicate to the trial court his dissatisfaction with Attorney Consoldane and his desire to have new counsel appointed. The trial court never addressed the issue. [T.d. 320, Exhibit 2.]

Although the right to appointed counsel of one's own choice is not absolute, a court may not infringe upon such right in an arbitrary or unreasonable manner. Linton v. Perini, 656 F.2d 207 (6th Cir. 1981). Whenever a defendant attempts to discharge his attorney, it is the duty of the trial judge to inquire into the complaint and to make such inquiry a part of the record. State v. Deal, 17 Ohio St. 2d 17 (1969) Syllabus. See also State v. Pruitt, 18 Ohio App. 3d 50 (1984).

In Monroe v. United States, 389 A.2d 811 (D.C. Cir. 1978) the court held that, "where no more than a cursory colloquy transpires between appellant and the trial court, and where the trial court fails to conduct a meaningful inquiry into appellant's claim, reversible error is present." See also United States v. Weltz, 674 F.2d 185, 197 (3rd Cir. 1982); (United States v. Young, 482 F.2d 993, 995 (5th Cir. 1973); State v. Renshaw, 276 Md. 259, 270 n.6, 347 A.2d 219 (Md.

28

1975); <u>Monroe v. United States</u>, <u>supra</u> at 820-821. The trial court did not made the necessary inquiry in the present case.

The trial court, when it granted the prosecutor's motion to dismiss, converted the Cause of Action into an ineffectiveness claim.  [T.d. 322, p. 14].  Thus the trial court applied an inapposite legal standard.

The trial court then stated that it "has no <u>current</u> recollection of reviewing the letter" (emphasis added).  [<u>Id.</u> at p. 15].  This was an impermissible observation since the trial court at this point took on the role of witness.  <u>See</u> Assignment of Error No. V.  The Court then observed that Petitioner appeared to be getting along with his attorneys.  [<u>Id.</u>]  Again the court adopted the role of witness.  Petitioner has now offered evidence to the contrary.  [T.d. 320, Exhibit 3]. Petitioner had no choice after the trial court did not act on his letter.

Finally, the court suggested that "incarcerated defendants commonly find much to complain about with both publicly funded and even privately retained attorneys."  [T.d. 322, p. 15].  The court's stereotyping explains the reasons that Petitioner did not receive a fair hearing of his grievances.

Petitioner's convictions and sentences are void or voidable because the trial court did not conduct a hearing on his motion to dismiss counsel.  As a result he proceeded to trial with a pair of attorneys with whom he could not effectively communicate.  U.S. Const. amends, V, VIII, IX, XIV, Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

**Sixth Cause Of Action:  Trial Counsel Failed To Retain A Competent Mitigation Specialist And As A Result The Mitigation Investigation Was Incomplete.**  [T.d. 306, ¶¶63-71.

Trial counsel and their agents interviewed only one member of Nathaniel Jackson's family prior to the day of the mitigation hearing.  [T.d. 307, Exhibits 49-53.)  During the course of the mitigation "investigation", defense counsel collected very few records that were relevant

to the sentencing proceedings.  [Id., Exhibits 46-48.].  Trial counsel failed to retain the services of a competent mitigation specialist to conduct the sentencing phase investigation personally.

Recently the Supreme Court granted sentencing phase relief in capital case.  Wiggins v. Smith, 123 S. Ct. 2527 (2003). The Court established that counsel's performance was to be judged via the ABA Standards for Performance of Counsel in a Capital Case.  Id. at 2537.  The Relevant 2003 Guidelines provides that counsel in capital cases should assemble a defense team which includes "at least one mitigation specialist."  ABA Death Penalty Guidelines 10.4(C)(2)(a) The Ohio Supreme Court has also recognized the need for appointment of mitigation specialists in capital cases.  "The appointing court shall provide appointed counsel, as required by Ohio law or the federal Constitution, federal statutes, and professional standards with the investigator, mitigation specialists, . . . ." Ohio Sup. R. 20(IV)(D).  (Emphasis added.)

Trial counsel's failure to retain a competent mitigation investigator resulted in little record collection and the interviewing of only one witness.  The scope of this "investigation" was unreasonable. The 2003 ABA Death Penalty Standards provide that "Counsel at every stage have an obligation to conduct thorough and independent investigation relating to the issues of both guilt and punishment."  2003 Guideline 10.7(A).  The Commentary to this Guideline clarifies that the "penalty phase investigation requires extensive and generally unparalleled investigation into personal and family history.(citations omitted)"

The trial court denied this Cause of Action because "This Court finds that Dr. McPherson qualifies as a mitigation specialist as a result of her training, expertise, education, experience and prior testimony on behalf of capital defendants."  [Id.]

Dr. McPherson was a psychologist, not a mitigation specialist as the trial court suggested. It was her job to psychologically evaluate Petitioner, not to interview for purposes of creating a social history for a psychologist to review.

The trial court erred in dismissing this Cause of Action. Petitioner's sentence is void or voidable. He lacked the appointment of an investigator (as opposed to a psychologist) who would have conducted the necessary sentencing investigation. He was thereby prejudiced. U.S. Const. amends. V, VI, VIII, IX and XI√; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20; Strickland v. Washington, 486 U.S. 668, 686 (1984); Ake v. Oklahoma, 470 U.S. 68, 83 (1985).

**Seventh Cause Of Action:  The Petit Jury That Convicted Nathaniel Jackson Of Capital Murder And Recommended That He Be Sentenced To Death Was Drawn From A Venire That Contained An Underrepresentation Of African Americans. [T.d. 306, ¶¶72-84.]**

The trial court in the present case summoned four hundred jurors to serve on the venire [T.d. 307, Exhibit 54.] One-hundred-forty persons appeared for jury duty [Tp. 1846-1848.]

The parties agreed that only one African-American was questioned during individual voir dire [Tp. 1846-1848.] The prosecutor stated that "I'm positive we had one other black juror that was excused". [Tp. 1854.] Subsequently the prosecutors made an effort to preclude this constitutional challenge by stating "I meant the representation of one, and I want to say there were two, maybe three." [Tp. 1855.] African Americans comprised 7.9 percent of the population in Trumbull County [T.d. 307, Exhibit 1.] Consequently there should have been approximately eleven African-Americans in the one-hundred-forty-persons who appeared for jury duty. Even if the prosecutor's second statement was accurate, there was still a substantial underrepresentation of African-Americans.

The underrepresentation of a cognizable group in a petit jury venire constitutes a denial of the Due Process Clause of the Fourteenth Amendment, Peters v. Kiff, 470 U.S. 493, 501

(1972); the Fair Cross Section requirement of the Sixth Amendment, <u>Taylor v. Louisiana</u>, 419 U.S. 522, 531 (1975); and the Equal Protection Clause of the Fourteenth Amendment, <u>Taylor v. Louisiana</u>, 419 U.S. at 531.

The trial court, in its dismissal entry observed that "None of the exhibits submitted by Petitioner support his claim that African Americans, or any other minority members, were "systematically culled" from the jury selection process. The fact that no African American was ultimately *seated* on either the Davie, Roberts or Jackson juries is not indicative of a systemic *removal* of any potential juror." [T.d. 322, p. 16]. Diane Wiley, the President of the National Jury Project, Midwest, in her affidavit states otherwise, "It is disturbing to find a venire of this size without even one African American juror being included in a jurisdiction with 6% African Americans. This simply should not occur unless there was some kind of <u>systematic discrimination</u>." (Emphasis added.) [T.d. 307, Exhibit 39, ¶10]. Ms. Wiley's opinion constituted direct evidence of intentional discrimination.

The trial judge attempted to discredit Ms. Wiley's affidavit because the "Ohio Supreme Court found the Wiley affidavit unpersuasive in the Davie case, and specifically held that Davie had not demonstrated an unfair lack of representation of African Americans in Trumbull County juries, nor did he show that such alleged underrepresentation resulted from a systematic exclusion by the state of that particular group." <u>State v. Davie</u> 80 Ohio St. 3d 311, 316, 317 (1977). [T.d. 322, p. 16]. Ms. Wiley executed her affidavit in 2000. [T.d. 307, Exhibit 39]. Therefore the Ohio Supreme Court did not review her affidavit in 1992 when it denied Roderick Davie relief. The Ohio Supreme Court's finding as to racial discrimination may well have been different if it had the benefit of her affidavit.

Petitioner's convictions and sentences are void and/or voidable because Petitioner was denied his right to a fair and impartial jury and equal protection because there was an underrepresentation of African Americans in the venire from which his jury was drawn. U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

**Eighth Cause Of Action:  Trial Counsel Failed To Provide Effective Assistance Of Counsel In The Pretrial Stages Of The Proceedings.** [T.d. 306, ¶¶ 85-97.]

Counsel did not conduct an independent investigation and instead for the most part relied upon the discovery provided by the prosecution. Counsel interviewed very few witnesses.  As a result counsel did not develop any significant information concerning co-defendant Roberts' role in the homicide, 2) the illegal activities of the victim Robert Fingerhut, 3) the dysfunctional relationship of Roberts and Fingerhut, 4) the significant mental impairment of Petitioner Jackson and 5) the impact that impairment had upon his actions and involvement with Roberts.  [See T.d. 307, Exhibits 49-53, 58, 65-75].

To protect an accused's constitutional rights, defense counsel must conduct a reasonable pretrial investigation.  Sims v. Livesay, 970 F.2d 1575, 1580 (6th Cir. 1992) (counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unreasonable).  At a minimum, a reasonable pretrial investigation for purposes of the trial phase includes interviewing the state's witnesses and identifying and interviewing potential defense witnesses.  Workman v. Tate, 957 F.2d 1339, 1345-46 (6th Cir. 1992); Blackburn v. Foltz, 828 F.2d 1177, 1182-83 (6th Cir. 1987); Beasley v. United States, 491 F.2d 687 (6th Cir. 1974) (defense counsel has a duty to investigate "all apparently substantial defenses").  See also 2003 ABA Death Penalty Guidelines 10.7(A).

Trial counsel did not challenge the grand jury and petit jury venire nor the selection of the grand jury foreperson.  As a result, the trial court did not hear a factual challenge to the

underrepresentation of African-Americans in the grand jury and petit jury venires and the position of grand jury foreperson until Nathaniel Jackson filed his initial and Amended Petitions [See Second, Third and Seventh Cause of Action]. The record now, for the first time, contains an opinion from a nationally recognized expert concerning the selection processes for venires in Trumbull County [T.d. 307, Exhibit 39.] The same reasoning applies to trial counsel's failure to challenge the prosecutor's charging decision. [First Cause of Action]. It is now apparent that the prosecutor's office treats Caucasian and African-American co-defendants differently for purposes of the death penalty. [T.d. 307, Exhibit 35].

Trial counsel failed to adequately challenge the admissibility of Nathaniel Jackson's statement to the police. Counsel, at the motion to suppress did not place Nathaniel Jackson's school records into evidence that document his IQ scores of 70 and 72 [T.d. 307, Exhibits 56, 57]. The Court, at the Motion to Suppress, did not hear that Nathaniel Jackson performed very poorly academically and spent most of his academic career in special education classes. [T.d. 307, Exhibit 46].

Trial counsel did not conduct a reasonable investigation and as a result the jury and the trial court did not hear that co-defendant Donna Roberts was much more intelligent than Nathaniel Jackson. She had managed a medical office [T.d. 307, Exhibit 60]. Nathaniel was in special education classes. [Id. 56 and 57]. She "played him" by giving him drugs, money and cars [Id., Exhibits 50, 51, 53.] Donna Roberts had initially attempted to get another African American to commit the murder [Id. at Exhibit 67]. Because defense counsel conducted an unreasonable "investigation" the jury knew nothing about Ms. Roberts and her manipulation of Nathaniel Jackson.

The mitigation investigation suffered equally.  No family members except Petitioner's mother were interviewed [Id. at Exhibits 49-53].  Dr. McPherson's testimony was based upon an inadequate and incomplete social history.  [T.d. 320, Exhibit 5].  It was also based upon incorrectly scored tests [T.d. 307, Exhibit 78].  Dr. McPherson, because of the incomplete social history, never linked Petitioner's dysfunctional upbringing to his relationship with Donna Roberts' and her manipulation of him that ultimately led to his involvement in the homicide.  Dr. McPherson's incomplete and inaccurate testimony is to be contrasted with the testimony of psychological experts whose testimony was based upon accurate testing and a complete social history.  [Id. at Exhibit 62 and 63].

The trial court, when dismissing the post-conviction petition, initially determined that the affidavit of Dorian Hall, the testimony of Jill Miller and Dr. Parran had nothing to do with the instant case.  [T.d. 307, Exhibits 59, 60 and 63].  To the contrary the affidavit of Ms. Hall and testimony of Jill Miller, Dr. Smith and Dr. Parran [Id., Exhibits 59, 60] established a standard for the testimony of a psychologist in the mitigation phase.  The testimony of Ms. Miller and Drs. Parran and Smith [Id., Exhibits 60, 62 and 63] produced a model of what testing could have been provided in a case after a reasonable mitigation investigation was conducted.  Petitioner would have liked to have submitted affidavits that were case specific to the present case, but the trial court incorrectly held that as a matter of law it had no jurisdiction to grant funding for experts. [See Assignment of Error No. II.]

The court then asserted (after acknowledging the relevance of Smith and Parran's testimony and Dr. Kaplan's affidavit) that any testimony concerning Petitioner's drug use would have been cumulative.  [T.d. 322, p. 19].  However there was no testimony (as the Court

subsequently conceded), [T.d. 322, pp. 30-31] linking Petitioner's substance abuse to the environment in which he was raised and the choices he made later in life.

The trial court speculated that evidence of Petitioner's low IQ would not have changed its opinion concerning the voluntariness of his statement.  [Id. at p. 11].  It may, however, have changed a reviewing court's opinion concerning the Miranda issue.  A person who is borderline mentally retarded may lack the mental ability to knowingly and intelligently waive his Miranda right (which is a separate issue from the voluntariness issue).

The trial court stated that trial counsel was effective in challenging the grand and petit jury venires.  [Id. at p. 19].  Yet counsel only challenged the source list and not the systematic exclusion of minorities.  [T.d. 48].  As the Court noted "trial counsel admitted they had nothing to support their theory".  Petitioner, in his Amended Petition, submitted evidence to support his theory.  [See T.d. 306, ¶¶25-34 and 72-84, T.d. 307, Exhibits 1, 36-39, 55].

The trial court stated in its Findings of Fact that there was no proof of racially motivated charging practices.  [T.d. 322, p. 20].  Petitioner has already addressed this issue.  See Cause of Action No. I, supra.  The trial court contended that because "the Petitioner, and his co-defendant, a Caucasian, were indicted on identical charges" supported the conclusion that there was no racial discrimination.  [Id.]  The trial court however ignored the critical fact, that the Trumbull County Prosecutor offered the Caucasian defendant a plea bargain, but not the African-American defendant.

The trial court found that the mitigation investigation conducted by Dr. McPherson was appropriate.  [T.d. 322, p. 20-21].  But again Dr. McPherson was not a mitigation phase investigator.  She was a psychologist.  See Section infra.  Her own file documents that she interviewed only one person.  [T.d. 320, Exhibit 5].  The family members confirm this fact.  [T.d.

307, Exhibits 49-53], as does Jessica Love.  [Id., Exhibit 58].  The failure to interview all but one person does not meet the ABA Death Penalty Standard that provides "penalty phase investigation requires extensive and generally unparalleled investigation into personal and family history (citations omitted)" (emphasis added) 2003 Guideline 107(A).

The trial court also concluded that "Petitioner's exhibits also do not support the claim that his trial counsel did not conduct an independent guilt phase investigation.  The very exhibits submitted by Petitioner show that Dr. McPherson conducted a full and complete investigation into Petitioner's background."  [T.d. 322, p. 21].  Dr. McPherson was not the trial phase investigator.

Trial counsel's choices were not preceded by a reasonable investigation.  Therefore trial counsel made no strategic decisions.  The Court erred when it granted the prosecutor's Motion to Dismiss this Cause of Action.

Petitioner's convictions and sentences are void and/or voidable because he was denied the effective assistance of counsel during the pretrial stage of his capital case.  U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20; Strickland v. Washington, 486 U.S. 668 (1984).

**Ninth Cause Of Action:  The Actions Of Trial Counsel During The Culpability Stage Of The Proceedings Denied Nathaniel Of His Right To Effective Assistance Of Counsel.** [T.d. 306, ¶¶98-109.]

The prosecutor's theory left the jury with the mistaken impression that Petitioner was more culpable than co-defendant Donna Roberts. This was incorrect.

Trial counsel failed to introduce evidence of Ms. Roberts' prior relationships. She had a lengthy history of currying favor with African-American males by supplying them with clothes, money, fast cars and sex [T.d. 307, Exhibits 65, 66, 67].  She supplied Nathaniel Jackson with

37

money, clothes, and a car [Id. 49-53, 58, 69].  Donna Roberts was much more intelligent than Nathaniel Jackson [Id. Exhibits 44, 68, 56, 57].  Her history of manipulating African-American males and her superior intelligence would certainly have provided the jury with an explanation as to the reason Petitioner was involved in the commencement of a murder for which he had nothing to gain.

Trial counsel made no effort to link the physical evidence from the shootings to Donna Roberts.  While counsel made an issue concerning the blood, they never attempted to link Donna Roberts to the crime scene.

The trial court in its Findings of Fact claimed that "The jury was well informed of Roberts' planning and participation in the homicide."  [T.d. 322, p. 23].  The court made no citations to the record to support its conclusion.  The jury never heard of Roberts' superior intelligence and her history of dominating African-American males.

The court misconstrued the content of the Amended Petition Exhibit 77 claiming that, "His own Ex. 77 states that no experts found no gunshot residue on Roberts' hands".  [Id. at p. 23].  The Exhibit instead states that "gunshot was not conclusively identified as the 'left hand' or 'right hand' samples".  [T.d. 307, Exhibit 77].  In other words, the tests were inconclusive.

Finally the Court suggests that Petitioner cannot demonstrate prejudice as a result "of his admission that he shot Fingerhut."  [T.d. 322, p. 23].  But Petitioner in that statement that the shooting involved self-defense not that it was a "premeditated killing" as the Court claimed.  [Id.]  Thus the facts surrounding the shooting, including all of the information surrounding Roberts' involvement, was critical.

Petitioner's convictions and sentences are void and/or voidable because Petitioner was denied the effective assistance of counsel during the trial stage of his capital case. U.S. Const.

amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20; Strickland v. Washington, 486 U.S. 668, 686 (1984).

**Tenth Cause Of Action:  The Actions Of Trial Counsel During The Culpability Stage Of The Proceedings Denied Nathaniel Of His Right To Effective Assistance Of Counsel.** [T.d. 306 ¶¶110-122].

One of Petitioner's attorneys became ill prior to the mitigation hearing and new counsel was substituted for him [Sent. Tp. 4-6.]  New counsel was not certified by the Ohio Supreme Court to provide representation in a capital case. [Id.]

Remaining trial counsel met with the mitigation witnesses for the first time just prior to the start of the mitigation hearing [Amended Petition Exhibits 49-53, 58].  Trial counsel met with the witnesses as a group and asked questions that were unrelated to the questions that would be asked of them a few minutes later in the mitigation hearing. [Id.]

Counsel who remained on the case admitted to knowing little about the evidence that was to be presented to the jury.  [Sent. Tp. 7.]  As a result he requested that the psychologist be permitted to sit at counsel table.  [Sent. Tp. 8.]

Trial counsel gave no opening statement at the mitigation phase.  [Sent. Tp. 23.]  Trial counsel called five lay witnesses.  The cumulative length of their testimony was ten pages. [Sent. Tp. 23-33].  Their testimony was incomplete and inaccurate in all respects.  [See Sixth Cause of Action].

Trial counsel called as his last witness Dr. Sandra McPherson.  She testified that Petitioner was not mentally retarded, but instead anti-social. [Sent. Tp. 45-52].  The witness had improperly scored his IQ test. [T.d. 307, Exhibit 78].  She provided no meaningful testimony concerning Petitioner's dysfunctional childhood, the reason that he abused substances, co-

39

defendant Roberts' manipulation of him with sex, drugs and cars, or his involvement in the offense in terms of his character, history, background and psychological development.

The United States Supreme Court recently granted sentencing phase relief in a capital case. Wiggins v. Smith, 123 S. Ct. 2527 (2003). The Supreme Court concluded that trial counsel's investigation did not meeting the prevailing ABA standards and therefore counsel was ineffective. Id. at 2544. The Court should reach the same conclusion in this case.

The trial court, in dismissing this cause of action determined that trial counsel was not aware that the victim had intended to "fake his own death." [T.d. 322, p. 24]. Since they were unaware [T.d. 307, Exhibit 35], the trial court should have granted relief on the Brady claim. See Fourth Cause of Action supra.

The trial court again found that Dr. McPherson "conducted a thorough review of Petitioner's background". [T.d. 322, p. 9]. Petitioner twice addressed this issue. See Sixth and Eighth Causes of Action. Dr. McPherson's file reflected that she contacted only one witness. [T.d. 320, Exhibit 5]. This is not surprising given the fact that she is a psychologist and not an investigator. See Sixth Cause of Action.

The trial court, after making its third finding that Dr. McPherson conducted a "full blown" sentencing investigation, inexplicably found that she conducted only an abbreviated sentencing phase investigation because Petitioner's family did not cooperate. [T.d. 322, p. 25]. The trial court arrived at this "conclusion" as a result of a single letter contained in Dr. McPherson's file. The document which was not dated was only addressed "To: Family of Nathaniel Jackson" indicated that Donald McPherson (her husband) was here at "your house". Dr. McPherson's letter does not indicate whose residence, if anyone's, Donald McPherson or another individual left the letter. Petitioner's family members obviously resided at more than

one house. There is no evidence in the file that the family failed to cooperate. They have fully cooperated with the post-conviction investigation. [T.d. 307, Exhibit 58]. The family members, other than the mother, were not aware of any other effort by anyone to contact them. [Id., Exhibits 50-53]. The trial court's finding as to lack of cooperation, is not supported by the record and is the product of speculation.

The trial court made findings that the prevailing standard of practice does "not require lengthy interrogations" or interviews of family members. [T.d. 322, p. 25] and that Dr. McPherson, if she had failed to conduct all the psychological testing that she did, would "have been tantamount to malpractice". [Id. at 268]. Petitioner has already addressed this erroneous finding. See Assignment of Error No. V.

The trial court found that it was appropriate to substitute Attorney Wright even though according to the trial court "he was not certified by the Ohio Supreme court . . ." and "he was brand new to the case". [Id. at p. 25]. The trial court reasoned Petitioner suffered no harm because Attorney Consoldane did all the work in the mitigation phase, "he conducted direct examination of all mitigation witnesses and gave closing argument." [Id. at p. 25]. The fact that Attorney Wright did nothing is not an indication that he was effective or that Petitioner was not prejudiced. Petitioner was entitled to the benefit of two prepared attorneys.

Finally, the trial court found that Attorney Consoldane's request to have Dr. McPherson at counsel table did not reflect that Attorney Consoldane had little knowledge about the mitigation presentation but that "Dr. McPherson knew more about the family dynamics as a result of her extensive interviews pursuant to psychological testing." [Id. at p. 26]. The Court's fact finding is correct, only because prior to the day of the mitigation hearing, Attorney Consoldane had spoken to no one. [T.d. 307, Exhibits 49-53, 58] and Dr. McPherson had spoken

41

to one person. [Id.] The combined knowledge of both individuals did not meet the standards for a capital case.

Petitioner's sentences are void and/or voidable because Petitioner was denied the effective assistance of counsel during the mitigation stage of his capital case. U.S. Const. amends. V, VI, VIII, IX, and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20; Strickland v. Washington, 486 U.S. 668, 686 (1984).

**Eleventh Cause Of Action:  Dr. McPherson Did Not Provide Nathaniel Jackson With The Level Of Assistance Guaranteed By The Constitution.** [T.d. 306 ¶¶123-135].

Dr. McPherson did not perform the appropriate testing, score the testing correctly that she did administer, and more importantly provide any meaningful psychological insight into the developmental aspects of Nathaniel Jackson's life. [T.d. 307, Exhibit 78, T.d. 320, Exhibit 5]. The 2003 ABA standards direct counsel to attempt to "establish a direct cause and effect between" mitigating factors and the homicide through the testing of experts . 2003 Guideline 10.11, Commentary.

The state must as a matter of equal protection provide indigent prisoners with the basic tools of an adequate defense on appeal, when those tools are available for a price to other prisoners. Britt v. North Carolina, 404 U.S. 276, 227 (1971).  Ake v. Oklahoma, 470 U.S. 68, 76 (1985). Ake applies to expert testimony in the penalty phase of a capital case.  See Kordenbrock v. Scroggy, 919 F.2d 1091, 1104 (6th Cir. 1990); Glenn v. Tate, 71 F.3d 1204 (6th Cir. 1995).

The trial court in dismissing this Cause of Action observed that "it is refreshing to review an exhibit which references the participants and performers in Petitioner's case" (emphasis in original). [T.d. 322, p. 27]. The trial court's failure to provide funds for experts was the reason the trial court did not have to review more affidavits from experts specific to this case. See Third

Cause of Action. However, after noting that Petitioner submitted case specific affidavits, the trial court then dismissed all efforts to submit new affidavits, "a post-conviction petitioner does not show ineffective assistance merely because it presents a new expert opinion" citing State v. Combs, 100 Ohio App. 3d 90, 104 (1994). [T.d. 322, p. 27].

The trial court in dismissing the petition partially misconstrued the nature of this claim. Twice the court stated the Causes of Action involved only an ineffectiveness of counsel claim. [T.d. 322, p. 27].  Petitioner also plead a due process claim for failure to appoint competent experts.  Thus the errors of Dr. McPherson constitute a violation of the Fourteenth Amendment regardless of whether her errors can be attributed to counsel.

Petitioner's convictions and sentences are void and/or voidable because Petitioner was denied the effective assistance of counsel and an expert assistance during the mitigation stage of his capital case.  U.S. Const. amends. V, VI, VIII, IX, and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20; Ake v. Oklahoma, 470 U.S. 68, 83 (1985); Strickland v. Washington, 486 U.S. 668 (1984).

**Twelfth Cause Of Action:  The Trial Court's Opinion Imposing A Sentence Of Death Was Based Upon Incomplete And Inaccurate Information.** [T.d. 322, pp. 136-152].

A comparison of the information contained in the Amended Petition and the trial court's sentencing opinion reveals that the trial court relied upon incomplete and inaccurate information when sentencing Petitioner to death.  The fault is directly attributable to the ineffective assistance of counsel and the deficient performance of Dr. McPherson.  The trial court's opinion highlights the prejudice that inured to Petitioner as a result of the deficient performance of trial counsel and the expert.

The trial court, when analyzing this cause of action, did not dispute the underlying premise that the post-conviction petition and exhibits contained additional information that the

jury did not hear. The court instead concluded that this additional information would not "have swayed the jury to reconsider a life sentence." [T.d. 322 p. 30]. The trial court applied the wrong legal standard. The test was whether additional information would have influenced a single juror.   A sentence of death is only appropriate in the State of Ohio if the jury is unanimously convinced beyond a reasonable doubt that the aggravating facts outweigh the mitigating factors.   O.R.C. § 2929.03(D)(2).  Thus prejudice is demonstrated if there is a reasonable probability that one juror would have voted differently in the sentencing phase. Frazier v. Huffman, 343 F.3d 780, 799 (6th Cir. 2004); Wiggins v. Smith, 123 S. Ct. 2527, 2543 (2003).

The trial court when it dismissed this Cause of Action cited to the fact Dr. McPherson's testimony and report it provided the jury with a sufficient social history. There was no mitigation investigation (Sixth Cause of Action).  Dr. McPherson interviewed only one person.  [T.d. 307, Exhibit 49-52, 58] and counsel interviewed no one prior to the day of the mitigation hearing. [Id.] Therefore the jury did not receive an adequate social history.

Finally the trial court speculated "perhaps the reason no expert testified to the nexus "between his environment and substance abuse is because it does not exist" (emphasis added) [T.d. 322, p. 30].  Since trial counsel never presented the evidence of Nathaniel's substance abuse and the trial court refused to appoint a psychological expert for purposes of post-conviction, this court can only speculate as to the answer.  See Second Assignment of Error.

Petitioner's death sentence is void or voidable because the jury did not receive all of the relevant information concerning the appropriate sentence.  U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 98, 10, 16, and 20.

**Thirteenth Cause Of Action:   The State's Present Method For Implementing Lethal Injection Constitutes Cruel And Unusual Punishment.** [T.d. 306 ¶¶153-161].

The current execution protocol that the State of Ohio uses to execute inmates includes the administration of three drugs. [T.d. 307, Exhibits 81 and 82]. One of these drugs—pancuronium bromide—will likely force Petitioner into a state of "chemical entombment" while he consciously experiences suffocation and the pain of cardiac arrest. Mark J.S. Heath, a medical doctor board certified in anesthesiology, maintains that "Ohio's lethal injection protocol creates an unacceptable risk that the inmate will not be anesthetized to the point of being unconscious and unaware of pain for the duration of the execution procedure. If the inmate is not first successfully anesthetized . . . the pancuronium will paralyze all voluntary muscles and mask external, physical indications of the excruciating pain being experienced by the inmate during the process of suffocating (caused by the pancuronium) and having a cardiac arrest (caused by the potassium chloride)." [T.d. 307, Exhibit 82.]

The trial court dismissed this Cause of Action because it did not find Dr. Mark J.S. Heath offered credible [T.d. 322, pp. 31-32]. The trial court erred in making a credibility determination concerning a medical expert it has never observed testify.

On May 24, 2004, the United States Supreme Court determined that a petitioner who filed a civil complaint which was supported by an affidavit from Dr. Mark Heath was entitled to an evidentiary hearing concerning the State of Alabama's lethal injection procedure. Nelson v. Campbell, 124 S. Ct. 2117, 2111, 2112 (2004). The issue in Nelson involved a more limited issue (the cut-down procedure), than the issue contained in the Thirteenth Cause of Action in the present case. The unanimous Court in Nelson, however, recognized that the complainant in that case may decide ultimately to expand his claim to include a broader challenge to lethal injection. The Court did not indicate that the a more broader challenge would be  barred by existing precedent or an incredible expert. Id. at 2124.

The trial court erred when it dismissed this Cause of Action.  The death sentence against Petitioner is void and/or voidable because the death penalty as administered by lethal injection violates his constitutional rights to protection from cruel and unusual punishment as guaranteed by the Eighth Amendment and to due process of law.  U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

**Fourteenth Cause Of Action:  The State Of Ohio's System For Post-Conviction Review Does Not Provide An Effective Remedy.**  [T.d. 306, ¶¶162-169].

O.R.C. § 2953.21 et. seq. does not offer Petitioner a fair and full opportunity to contest the constitutional validity of his convictions and death sentence.  The requirements of due process are not fulfilled by the cursory, inadequate, and ineffective process provided for in the post-conviction statutes, nor do the state courts, in practice, historically provide meaningful review in such proceedings. See Case v. Nebraska, 381 U.S. 336 (1965).  Since 1982, only one death row inmate has been granted relief from a trial court on a post-conviction petition.

The trial court dismissed this Cause of Action in reliance upon this Court's decisions in State v. Wiles, 126 Ohio App. 3d 71, 79 (1998) and State v. Lorraine, No. 95-T-5196, 1996 WL 207676 (Trumbull App. Feb. 23, 1996).  Petitioner would request that this Court reconsider those decisions to the extent that they are on point. The Ohio Supreme Court has never passed on the constitutionality of Ohio's post-conviction system.

The trial court erred when it dismissed the Fourteenth Cause of Action in the Amended Petition.  Petitioner's judgment and sentence are void or voidable because Ohio's post-conviction procedures do not provide an adequate corrective process, in violation of the constitution.  U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

**Fifteenth Cause Of Action: Cumulative Constitutional Prejudicial Error Infected The Instant Proceedings.** [T.d. 306, ¶¶170-172].

Petitioner asserts that, assuming *arguendo* none of the Grounds for Relief in his Amended Post-Conviction Petition individually warrant relief, the cumulative effects of the errors and omissions and violated his constitutional rights. State v. DeMarco, 31 Ohio St. 3d 191, syl. 2 (1987); see also State v. Bunch, 62 Ohio App. 3d 801, 809, 810 (1989).

The trial court erred when it dismissed this Cause of Action. U.S. Const. amends. IV, V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 9, 10, 16, and 20  The trial court erred by denying Appellant relief on this ground for relief.

## CONCLUSION

The trial court's decisions to deny post-conviction relief, and to dismiss Nathaniel Jackson's Amended Post-conviction Petition without discovery, funds for experts, or an evidentiary hearing were error. This Court should reverse the trial court's dismissal of the Amended Petition and grant him a new trial or mitigation hearing;  or alternatively, remand his post-conviction case to the trial court with instructions to allow Petitioner to conduct discovery and, funding for any reasonable requests for experts, followed by an evidentiary hearing on the merits of his cause of action.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio 43215-2998
(614) 466-5394

47

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **MERIT BRIEF OF APPELLANT NATHANIEL JACKSON** was forwarded by first-class, postage prepaid U.S. Mail to Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio 44481 on this _3rd_ day of September, 2004.

RANDALL L. PORTER
COUNSEL FOR NATHANIEL JACKSON

#204931

# APPENDIX

THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )

    Plaintiff-Respondent,          )     CASE NO. 2001 CR 794

    -vs-                                )     JUDGE JOHN M. STUARD

NATHANIEL JACKSON,                 )     FINDINGS OF FACT AND
                                             )     CONCLUSIONS OF LAW
    Defendant-Petitioner.           )     DISMISSING PETITIONER'S
                                             )     ORIGINAL AND AMENDED
                                             )     PETITION FOR POSTCONVICTION
                                             )     RELIEF

       This matter came before the Court on Defendant-Petitioner Nathaniel Jackson (hereinafter, "Petitioner") Postconviction Petition, Volume I & II (hereinafter, "original Petition") filed with this Court January 5, 2004.  Pursuant to two extensions permitted by this Court, Plaintiff-Respondent State of Ohio's (hereinafter, the "State") filed its motion to dismiss the original petition on March 30, 2004. However, before the State filed its motion to dismiss the original petition, Petitioner filed an Amended Postconviction Petition, Volume I & II ("amended Petition") on March 29, 2004.  This Court permitted the State one extension to respond to the amended Petition.  The State filed its motion to dismiss the amended Petition on April 13, 2004, and the Petitioner followed with his Memorandum Contra to the Prosecutor's Motion to Dismiss("Memo Contra"). This Court has reviewed these submissions, the court file, the record and applicable law.

       Revised Code 2953.21(C) provides as follows:

       "Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the

VOL 1032 PAGE 878
A-1

clerk of the court, and the court reporter's transcript."

Furthermore, "[b]road assertions and general conclusory allegations without more to establish the requisite elements of incompetence and prejudice are inadequate to warrant a hearing on the petition." *State v. Davie* (Sept. 25, 1998), 11th Dist. No. 97-T-0175, citing *State v. Jackson* (1980), 64 Ohio St. 2d 107, 111.

In accordance with this authority, this Court has reviewed the above-listed materials so as to determine whether there are substantive grounds for relief warranting a hearing on the Petitioner's original and amended Petition.  Based upon this review, the Court finds Petitioner has failed to show substantive grounds for relief as to  the Fourteen Causes of Action set forth in his Petition, and in his Fifteen Causes of Action set forth in the amended Petition. Therefore, both submissions[1] are  subject to dismissal without a hearing.  In accordance with R.C. 2953.21(G), the Court's Findings of Fact and Conclusions of Law are set forth herein.

This Court makes the following findings of fact with respect to Petitioner's original Petition and amended Petition.

1)      On December 28, 2001, the Trumbull County Grand Jury returned an indictment charging Petitioner with: Count One, Aggravated Murder in violation of R.C. 2903.01(A); Count Two, Aggravated Murder, in violation of R.C. 2903. 01(B); Count Three, Aggravated Burglary (F1),

---

[1]This Court acknowledges  that pursuant to R.C. 2953.21(F)  a postconviction petitioner may amend his original petition at any time before the State files its answer or motion.  This Court will certainly consider any new exhibits and arguments made on Petitioner's behalf in the amended Petition.  However, this Court would request that Petitioner's counsel refrain from formatting the amended Petition in such a manner as to merely scramble earlier causes of actions, and in reality, add few new arguments or exhibits. Fashioning an entry in response to Petitioner's claims has proven to be a logistical nightmare and an unnecessary repetitive waste of resources for all parties concerned.

with a firearm specification, in violation of R.C. 2911.(A)(1)(2) & R.C. 2945.145 and Count Four, Aggravated Robbery (F1) with a firearm specification in violation of R.C. 2929.04 (A)(7) & R.C. 2945.145. All charges stem from the shooting death of Robert Fingerhut, which occurred Dec.11, 2001, at a residence which he shared with Petitioner's co-defendant, Donna Roberts ("Roberts"), in Howland Township, Trumbull County, Ohio.

2)      Jury selection in Petitioner's case commenced October 8, 2002. He was initially represented at trial by Atty. James Lewis and Atty. Anthony Consoldane.   After presentation of evidence on November 8, 2002, the jury returned a guilty verdict on all counts and specifications finding that Petitioner was both the principal offender and acted with prior calculation and design. Because Counts One and Two of the indictment merged for sentencing purposes, the State elected to dismiss Count Two and proceed to the mitigating hearing on Count One alone. At mitigation, Petitioner was represented by Atty. Consoldane and Atty. Thomas Wright. Atty. Wright substituted for Atty. Lewis who had unexpectedly taken ill.

3)      During his mitigation phase, Petitioner called six witnesses including one expert witness, Dr. Sandra McPherson and five lay witnesses.

4)      After due deliberation, the jury returned a recommendation of a death sentence for the aggravated murder of Robert Fingerhut.

5)      On December 9, 2002, this Court imposed the sentence of death on Petitioner for Count One of the indictment, a ten-year sentence on Count Three of the indictment to be preceded by a three-year sentence on a firearms specification and a ten-year sentence on Count Four, also preceded by a three-year sentence of a firearm specification. The principal sentences on Counts Three and Four were to be served consecutive to one another, and the firearms specifications

-3-

merged for sentencing purposes.

6)      Petitioner's appellate counsel, John P. Laczko and Dennis Day Lager, filed timely notice of appeal and with the Supreme Court of Ohio under case number 03-137. Both Petitioner and the State have filed their merit briefs and are awaiting an oral arguments date at this writing. Petitioner's appellate brief contains Twelve Propositions of Law which Petitioner has listed at paragraph 12 of his original and his amended Petition. This Court would adopt and incorporate that listing here.

7)      Petitioner's amended and original Petition is filed by Atty. David Bodiker and Atty. Randall Porter, of the Office of the Ohio Public Defender. Petitioner proposes Fourteen Causes of Action in his original Petition, and in his Fifteen Causes of Action in the amended Petition which this Court will now address individually and where possible simultaneously.

## FIRST CAUSE OF ACTION (original Petition)
## FOURTEENTH CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this First Cause of Action (original Petition) and the Fourteenth Cause of Action (amended Petition).

1)      In his first Cause of Action in the original Petition, and Fourteenth Cause of Action in the Amended Petition, Petitioner argues that his sentence is void or voidable because Ohio's current postconviction scheme is cursory, inadequate and ineffective.

2)      He attaches no exhibits to support this claim and makes a request for discovery.

Based upon these findings, the Court makes the following conclusions of law as to The First Cause of Action (original Petition) and the Fourteenth Cause of Action (amended Petition):

1)      Revised Code § 2953.21(C) provides that before granting a hearing on a petition for postconviction relief, the trial court is required to determine whether there are substantive grounds for relief.

2)      The doctrine of res judicata applies to postconviction proceedings. *State v. Perry* (1967), 10 Ohio St.2d 175; *State v. Cole* (1982), 2 Ohio St. 3d 112.

3)  Res judicata is a proper basis upon which to dismiss a claim for relief in a postconviction petition where the claim was raised or could have been raised at trial or on direct appeal, and where the claim could fairly have been determined without resort to evidence dehors the record. *Cole* supra at 112; *Perry,* supra at 180.

4)  Throughout the original Petition and the amended Petition, Petitioner made numerous non-specific requests for discovery.  The Eleventh District Court of Appeals held in *State v. Lorraine* (Feb. 23, 1996), 11th Dist. No. 95-T-5196, at *5 - 6. that the burden is on the petitioner to submit evidentiary documents to support a postconviction claim.  It further held that the trial court has no statutory authority to compel discovery.  Unless a hearing is granted, the petitioner is not entitled to discovery.

5)  Likewise, the Ohio Supreme Court has held courts are not required to provide petitioners discovery in postconviction proceedings. *State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office* (1999), 87 Ohio St.3d 158, 159. "Whether discovery may be had on a postconviction claim is a matter committed to the discretion of the trial court." *State v. Wiles* (1998), 126 Ohio App.3d 71, 79.  As this Court dismisses both the original and amended Petition without hearing, Petitioner is not entitled to conduct discovery. Therefore, this Court will not order discovery to support this claim.

6)  This action is barred by the doctrine of res judicata.  Petitioner is not entitled to discovery.  Petitioner does not demonstrate substantive grounds for relief.

## SECOND CAUSE OF ACTION (original Petition)
## FIRST CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this Second Cause of Action (original Petition) and First Cause of Action (amended Petition):

1)  Petitioner argues that his judgment and sentence are void or voidable because the Trumbull County Prosecutor employed discretion in capital cases in a racially discriminatory manner.

2)  To his Second Cause of Action (original Petition), he attaches Ex. 1 (Census Bureau breakdown of Trumbull County's Population by race, Ex. 2 (Ohio Public Defender Office's breakdown of Death Row inmate by race and sex and the race of their victims) Ex. 3 (Affidavit by Randall Porter, Assistant State Public Defender and counsel of record for this Postconviction claim).   To his First Cause of Action in the Amended Petition, Petitioner attaches the same Ex. 1 and Ex 2.  Ex. 3 through Ex. 34 appear to be a rouge's gallery collection of prison identification photographs along with miscellaneous filings from the Trumbull County Court of Common Pleas.  All of the inmates are serving time

for some form of homicide, the most common charge being Aggravated Murder.  Ex. 35 is the Porter affidavit referenced previously.

3)   Petitioner in his direct appeal before the Ohio Supreme Court argues at page 76 of his brief that "the Ohio system has resulted in the imposition of death penalties in a racially discriminatory manner, with blacks and those who killed white victims being much more likely to get the death penalty." At page 88-89 of his brief, he argues that 49% of Ohio's Death Row inmates are African American, and that the victim's race influences prosecutorial discretion in charging decisions.

4)   Petitioner's co-defendant, Donna Roberts, is a Caucasian female who was also indicted by the grand jury on identical charges and specifications under Trumbull County Common Pleas Court No. 01-CR-793, and who was ultimately tried before this Court and sentenced to death.

The Court makes the following Conclusions of Law as to this Second Cause of Action (original Petition) and First Cause of Action amended Petition:

1)   Petitioner's statistics and photographs  contribute no operative *facts* to his argument that a defendant's or a victim's race had any influence over the prosecutor's discretion in pursuing a death penalty.   Taking his evidence at face value, it is apparent that Trumbull County has sent both African Americans and Caucasians to Death Row, and has imposed life sentences for both African-Americans and Caucasians. Relying upon the Petitioner's pictorial evidence, it appears that five of Trumbull County's African American murderers are on Death Row, while another eight Trumbull County African American murders received life sentences.  At paragraph 21 of his amended petition, Petitioner lists sixteen defendants serving life prison terms for homicides wherein the victim was Caucasian. This evidence fails gives no credence to Petitioner's theory that his race or Mr. Fingerhut's race influenced the State's election to seek the death penalty in this matter. With a lack of operative facts, this Court finds no substantive grounds for relief.This claim is dismissed without hearing. R.C. 2953.21 (C).

2)   "To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.' " (Quoting *United States v. Berrios* [C.A. 2, 1974] 501 F 2d 1207, 1211).  Petitioner's co-defendant, a white female, received the same death penalty for the same crime.  This Court is completely unpersuaded by Petitioner's argument that Roberts was possibly offered a plea to a life sentence in this

case, or that the State offered her a life sentence because of her race. Justice was ultimately as color blind as it could be in this case. Both of Fingerhut's killers, one white, one black, are awaiting execution.

3) Petitioner offers no proof whatsoever that he was singled out for prosecution or that the prosecution's election to pursue the death penalty in this matter was made in bad faith, or based on any impermissible considerations such as his race or the race of his victim. Petitioner states in his Memorandum Contra to the Prosecutor's Motion to Dismiss at page 10 that nine of ten Trumbull County Death Row inmates are there as a result of killing a Caucasian. Petitioner's own Ex. 1 helps explain why: Over 90% of Trumbull County's population is white, so by pure population sampling it is likely that 90% of Death Row inmates' victims will be Caucasian as well. This Court sentenced Roderick Davie for the death of an African American, and a fellow judge in this Court sentenced Sean Carter to death for killing African American. Therefore, Petitioner can establish no pattern of discrimination on the part of the Trumbull County Prosecutor's Office for seeking the death penalty.

4) As the alleged racial disparity was raised in Petitioner's merit brief to the Ohio Supreme this claim is barred by the doctrine of res judicata. *Cole, Perry,* supra. Petitioner claims in his Memorandum Contra at page 10 that "[d]irect appeal counsel made a theoretical, as opposed to factual argument. Counsel was limited to making that argument, as opposed to the factual argument that Nathaniel Jackson now makes, because the facts upon which Nathaniel Jackson relies are not contained in the trial record." However, in order to overcome a res judicata bar, the evidence dehors the record must not be evidence which was in existence and available for use at the time of trial and which could have been submitted at trial if the defendant wished to use it. *State v. Cowan* (2002) 151 Ohio App. 3d 228, ¶15. Clearly, Petitioner's pictorial evidence and racial statistics would have been available for pre-trial consideration and therefore, this claim is subject to a res judicata bar.

5) Petitioner's request for discovery is denied. *Lorraine, Love, Wiles,* supra.

## THIRD CAUSE OF ACTION (original Petition)
## SECOND CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this Third Cause of Action (original Petition) and Second Cause of Action (amended Petition):

1) Petitioner alleges that the grand jury venire which indicted him disproportionately excluded African-Americans.

2) To support this claim he affixes Ex. 3 (original petition) and Ex. 35 (amended Petition)

-7-

Jackson Apx. Vol. 16
Page 127

(detailed in previous cause of action); Ex. 4 (original Petition) and Ex. 54 (amended Petition) a petit court jurors list which makes no reference to anyone's race; Ex. 5 (original Petition) and Ex. 37 (amended Petition) (original Petition), an Ohio News Bureau article from Feb. 20, 1992 entitled "Potential juror raises race question, a Tribune Chronicle article from Murder trial jury pool makeup questioned (Ex. 36, amended Petition), and an Akron Beacon Journal article from Feb. 20, 1992, entitled" Potential juror asks about lack of blacks" (Ex. 38, amended Petition); Ex. 6 (original Petition) and Ex. 39 (amended Petition), Affidavit of Diane Wiley, president of the National Jury Project Midwest, who opines that Trumbull County African Americans were "seriously underrepresented" in the Roderick Davie venire.

3)     Prior to trial, Petitioner filed a motion entitled, "Defendant's Motion to Reduce Bias in Annual Jury List." (T.d. #174). This motion took issue with Trumbull County's method of compiling a jury list, from which both petit and grand jurors are selected. This Court denied the motion. (T.d. #176).

4)     Petitioner attaches no evidence detailing the actual racial composition of the grand jury which indicted him.

5)     Petitioner requests discovery and the appointment of experts to support this claim.

The Court makes the following Conclusions of Law as to this Third Cause of Action (original Petition) and Second Cause of Action (amended Petition):

1)     None of the exhibits submitted make any reference to the racial composition of Petitioner's grand jury panel, much less that African Americans, or anyone else for that matter, were impermissibly excluded from his grand jury venire. Therefore, Petitioner fails to present sufficient operative facts to support substantive grounds for relief on this claim and this Court dismisses this claim without hearing. R.C. 2953.21(C); *Kapper*, supra, at 38.

2)     In *State v. Williams* (1997), 79 Ohio St. 3d. 1, 17, the Supreme Court of Ohio held, "not every grand jury has to represent a 'fair cross-section,' so long as the selection process is nondiscriminatory." The Ohio Supreme Court in *State v. Issa* (2001), 93 Ohio St. 3d 49, 62, ruled that the use of voter registration roles as a source for grand and petit jurors does not intentionally exclude any specific racial group. Since both whites and blacks are equally entitled to register to vote, the process is nondiscriminatory. Petitioner fails to demonstrate that selecting his grand jurors from a list of registered voters intentionally excluded any African American or any other racial minority.

3)     Furthermore, this issue was raised at trial and could have been raised on direct appeal. As such, res judicata bars this claims from further consideration by this Court. *Perry*, supra, at 180, *Cole*, supra, at paragraph one of the syllabus. Clearly, all of these exhibits would

have been available to Petitioner at the time of trial and could have been raised in the form of a pre-trial motion.  Therefore, the res judicata bar is applicable.  *Cowan,* supra.

4)  In Ex. 36, 37, 38, and 39 (amended Petition), Petitioner relies on newspaper articles and one affidavit concerning alleged racial bias in the Roderick Davie capital case and its juror selection process.  The Davie case was tried in this Court in 1992.  Despite the newspaper coverage and the affidavit by Ms. Wiley, the Ohio Supreme Court specifically held that there was no racial bias in the Davie case.  "Davie's claim that exclusive use of voter registration lists in jury selection deprived him of an impartial jury representing a fair cross-section also lacks merit.  Utilization of voter rolls alone to choose prospective jurors is constitutional.  See, *e.g., State v. Johnson* (1972), 31 Ohio St.2d 106, 60 O.O.2d 85, 285 N.E.2d 751, paragraph two of the syllabus; *State v. Hill* (1992), 64 Ohio St.3d 313, 325-326, 595 N.E.2d 884, 895.  Davie has not demonstrated an unfair lack of representation of African Americans in Trumbull County juries, nor has he shown that such alleged underrepresentation resulted from a systematic exclusion by the state of that particular group.  See State v. Puente (1982), 69 Ohio St. 2d 136, 138."  *State v. Davie* (1997), Ohio St. 3d 311, 316-317

5)  If the Ohio Supreme Court could find no racial discrimination in the Davie case, it would make positively no sense for this Court to construe Petitioner's submissions generated as a result of the Davie case as having any applicability to the case at bar.

6)  These exhibits and averments do nothing to warrant an order for discovery in this case.  *Lorraine,* supra, at *5, *Love; Wiles.*  Nor do the arguments and exhibits compel discovery.  The Eleventh District Court of Appeals has held that because postconviction proceedings are civil in nature, a petitioner has no constitutional right to court-appointed counsel.  "Consequently, a petitioner would have no corresponding right to expert assistance."  *State v. Williams* (Oct. 19, 1998), 11th Dist. No. 97-T-0153, at 9.

7)  Therefore, Petitioner's Third Cause of Action, (original Petition), and Second Cause of Action (amended Petition) are dismissed  without hearing.

## FOURTH CAUSE OF ACTION (original Petition)
## THIRD CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this Fourth  Cause of Action (original Petition) and Third Cause of Action (amended Petition):

1)  Petitioner next complains that his grand jury foreperson may have been selected in a racially discriminatory manner.

2)  To support this claim, he includes Petitioner's indictment (Ex. 7, original Petition; Ex. 40 amended Petition), an affidavit of Mark Rooks wherein he ascertained that the foreperson

-9-

of the grand jury which indicted Petitioner was Caucasian (Ex. 8, original Petition; Ex. 41 amended Petition), a second affidavit from Diane Wiley, previously identified, who opined in 1998 that Hamilton County's capital grand juries were underrepresented by African Americans (Ex. 9, original Petition, Ex. 42, amended Petition), and an article from Columbus Alive magazine quoting members of the Ohio Public Defender's Office alleging the Hamilton County grand jury forepersons are selected in a racially discriminatory manner. (Ex. 10, original Petition, Ex. 43, amended Petition).

3)      R.C. 2939.02 permits the presiding common pleas judge to select grand jury foreperson for capital cases from outside the annual grand jury lists.

The Court makes the following Conclusions of Law as to this Fourth Cause of Action (original Petition) and Third Cause of Action (amended Petition):

1)      None of the exhibits Petitioner relies upon suggest that The Trumbull County Common Pleas Court has *ever* utilized R.C. 2939.02 to go beyond the annual jury list to facilitate the selection of a grand jury foreman or forewoman. They do not present one scintilla of evidence that Petitioner's grand jury forewoman was selected in a racially discriminatory manner. Therefore, this claim is subject to dismissal without hearing. *Kapper*, supra, R.C. 2953.21(C).

2)      Petitioner seeks to have this Court extrapolate from the fact that Hamilton County's presiding judge may have hand-picked white, male grand jury foremen, the same practice must have occurred here. Such a proposition is far too tangential to be substantive. None of his exhibits remotely support this theory, nor is this Court aware of any instance where any of the four general division judges of this Court selected a grand jury foreman or forewoman from a source other than the annual jury list. Indeed, the only way this Court, or the other three common pleas judges, would ever reach beyond the jury list to fill the foreman's or forewoman's position would be if no qualified citizens appeared on the list to serve in that capacity. In the thirteen years this judge has been on the bench, there has never been a need to exercise this judge's prerogative of hand selecting a foreman or forewoman from a source other than the jury list.

3)      Furthermore, the First Appellate District in *State v. Hughbanks* (Jan. 17,2003), 1st Dist. No. C-010372, ruled that Hughbanks' claim based on the identical theory was barred by the doctrine of res judicata as the information regarding the composition of the grand jury would have been available to Hughbanks at the time of trial.

4)      This Court agrees that this matter is barred by the doctrine of res judicata. See *Perry, Cole*, supra.  Certainly the Wiley affidavit and the Columbus Alive article were available to Petitioner at the time of his trial and could have been used to raise the appropriate challenge during pre-trial proceedings.

5)   Finally, Petitioner's far fetched speculation of a racially biased grand jury, rooted solely in Wiley's and the Ohio Public Defender's Office's obvious dissatisfaction with a perfectly legal method of foreman or forewoman selection, does not warrant an order of discovery in this case.  See *Lorraine, Cowan*, supra.

6)   The claim is equally unworthy of the appointment of court-funded experts. As this Court will not be setting a hearing for this claim, Petitioner has no constitutional or statutory right to expert assistance. *Williams,* supra.  The Martha Phillips affidavit attached to Petitioner's Memorandum Contra shows only that Ms. Phillips experienced some difficulties in tracking down information concerning the procedures used to draw the Roderick Davie trial jury.  The Court gives little weight to this affidavit as it has no direct bearing on this case.

7)   For these reasons, these Causes of Actions are dismissed without hearing, and without court-appointed experts or court-order discovery.

FIFTH CAUSE OF ACTION (original Petition)
FOURTH CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this Fifth Cause of Action (original Petition) and Fourth Cause of Action (amended Petition):

1)   Petitioner maintains that law enforcement agencies suppressed a report that Mr. Fingerhut had "plans" to "fake" his own death. He claims that as such, the prosecution failed to disclose "favorable" evidence to the defense as required by *Brady v. Maryland* (1963), 373 U.S. 83, 86.

2)   To support this allegation, Counsel of record Randall Porter attaches his own affidavit (Ex. 3, Ex. 35) to the petition stating Atty. John Juhasz, trial counsel for co-defendant Donna Roberts, told him of the existence of a police report which stated Fingerhut supposedly had planned to fake his own death by use of a body double. The Porter affidavit does not state that Atty. Juhasz said the report was withheld from him, nor does Petitioner's trial counsel provide an affidavit stating that they never saw the purported document or that they saw it and elected not to use it at trial.

3)   Petitioner does not attach the police report in question. Therefore, there is no confirmation as to the existence of the police report as Petitioner states in his Memorandum Contra at page 16. To the contrary, Atty. Juhasz's hearsay statement offers no competent, credible evidence before this Court that a formal police report containing the body double story was *ever* filed with *any* police department.

4)   In his amended Petition, Petitioner attaches Ex. 44, an unsigned, handwritten letter wherein the author states that "RSF" had an "obsession about faking his own death." This letter does not appear to be a police report, nor does it suggest that the police or prosecutor was aware of this "obsession" or the existence of this letter. In Ex. 3 attached to Petitioner's Memorandum Contra Petitioner identifies the author of this letter as co-defendant Donna Roberts and claims she sent it to him.

The Court makes the following Conclusions of Law for the Fifth Cause of Action (original Petition) and Fourth Cause of Action (amended Petition):

1)   Petitioner supplies no evidence to this Court to support his claim that the State withheld any evidence from him, exculpatory or otherwise. Petitioner supplies no credible evidence to suggest that a police report stating that Mr. Fingerhut planned to fake his own death ever existed Therefore, this Cause of Action is subject to dismissal without hearing. *Kapper*, R.C. 2953.21(C).

2)   Petitioner in his Memorandum Contra tries to excuse his lack of evidence on this point by citing to *State ex rel Steckman v. Jackson* (1994) 70 Ohio St. 3d 420 and arguing that he

-12-

has been unable to review relevant law enforcement files to find this evidence. This Court finds this claim disingenuous because despite *Steckman*, Petitioner was still able to secure such exhibits as amended Petition Ex. 67, 68, 69, 70, 71, 72 and 74 which police are reports. This Court will not find a discovery violation for a report that he cannot prove ever existed.

3) Additionally, in *State v. Calhoun* (1999) 86 Ohio St. 3d 279, 285, the Ohio Supreme Court lists several guidelines a trial court may follow in determining the credibility of a postconviction affidavit. Among those factors are whether the affidavit relies on hearsay, and whether the affiant has an interest in the outcome of the case. Id. With respect to this issue, the affiant, Atty. Porter, relies upon hearsay evidence as supplied by Atty. Juhasz who has never backed up Atty. Porter's claim with his own affidavit. Secondly, Atty. Porter has a clear interest in the outcome of this case as the Petitioner's counsel of record. Therefore, this Court concludes that the Porter affidavit contains no competent, credible evidence for this Court to believe that such a report ever existed.

4) Furthermore, the evidence is not exculpatory. Even if Mr. Fingerhut engaged in musings regarding a "body double" homicide, and even if these musings were memorialized in a police report, Petitioner admitted to shooting a man in Robert Fingerhut's home who he identified as Fingerhut. Even in the most unlikely occurrence that Petitioner shot a "body double," he still planned and executed an aggravated murder of a man who a forensic pathologist conclusively concluded was dead, and the evidence overwhelmingly demonstrates that Petitioner is responsible for that death. The unfounded and baseless theory that Robert Fingerhut may be still roaming the face of the earth and enjoying his own insurance proceeds does not exonerate Petitioner from causing the death of another during the course of an aggravated burglary and aggravated robbery with well documented prior calculation and design.

5) Moreover, even if this Court gave any credibility to allegation that this story appeared in an official police report, Petitioner obviously was on notice that Fingerhut had discussed the "body double" scenario because Petitioner claims to have received this information in a letter he insists is from co-defendant, Donna Roberts. Memorandum Contra, Ex. 3.

6) In his amended Petition at paragraph 54, Petitioner again makes a request for discovery to support this claim. This will request will be denied pursuant to the previously stated rationale that Petitioner is not entitled to discovery because he is not entitled to a hearing. *Lorraine*, at *5, *Love, Wiles*.

## FIFTH CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this Fifth Cause of Action (amended Petition):

1) Petitioner claims he was denied effective assistance of counsel because he did not have a "meaningful" relationship with his attorneys.

2) To support that claim to his amended Petition he attaches undated letter, Ex. 45, wherein Petitioner complains that Atty. Anthony Consodane, one of two Ohio Public Defenders assigned to his case, failed to visit him frequently in jail and failed to play the audio-tape telephone conversations of himself co-defendant Donna Roberts.

3) In an affidavit submitted with his Memorandum Contra, Ex. 3 Petitioner claims Atty. Consodane not only visited him, but visited him on weekends. He claims he sent Ex. 45 to this Court in February, 2001, which was ten months before Robert Fingerhut was murdered.

The Court makes the following Conclusions of Law as to this Fifth Cause of Action (amended Petition)

1) When a petitioner asserts a claim of ineffective assistance of counsel, he bears the initial burden to submit evidence to demonstrate that his defense was prejudiced by counsel's ineffectiveness. If he fails to do so, no evidentiary hearing is required. *State. v. Pankey* (1981), 68 Ohio St. 2d 58, 59 citing *Jackson, supra,* at syllabus.

2) In *State v. Pierce* (1998), 128 Ohio App. 3d 578, 586, the Eleventh District Court of Appeals held that in asserting an ineffective assistance claim, the petitioner must submit materials containing sufficient operative facts to demonstrate both prongs of the two-part test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 687: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. Prejudice will not be found unless appellant demonstrates there is a reasonable possibility that, if not for counsel's errors, the result of the trial would have been different.

3) "In the absence of positive proof to the contrary, certainly there is a reasonable inference that one licensed by the state to practice law and appointed by a court to represent an accused did competently and properly represent such accused during his trial." *Vaughn v. Maxwell* (1965), 2 Ohio St. 2d 299, 301. In order to overcome this presumption of effectiveness, the petitioner must submit sufficient operative facts or evidentiary documents that, if proven would show that the petitioner was prejudiced by ineffective assistance of counsel. *State v. Smith* (1987), 36 Ohio App. 3d 152, 163)

4) This Court finds that neither Ex. 45 nor Ex 3 suggest that either Atty. Consodane or Atty. Lewis' performance was deficient pursuant to *Strickland.* They merely suggest that

-14-

Petitioner felt his attorneys were not paying enough attention to him ten months before he was even arrested for this crime, or, if the February 2001 date is in error, eight months before his trial started.

5) This Court has no independent recollection of reviewing this letter. This would be the sole explanation why the letter was not addressed within the record before this Court. However, this Court does specifically recall that during pre-trial hearings, voir dire, the guilt and penalty phase Petitioner made no complaints concerning either Atty. Lewis or Atty. Consoldane. This Court observed Petitioner communicating and interacting with them. In fact, there are references in the transcript where Petitioner communicated with Atty. Consoldane.    (T.p. Vol. 16, p. 4, 5, 196).  Therefore, based on this Court's own observations and the lack of evidence to the contrary in the record, this Court cannot find that communication had broken down, nor was there an irreconcilable conflict.

6) Incarcerated defendants commonly find much to complain about with both publicly funded, and even privately retained attorneys. One complaint of dissatisfaction is not tantamount to ineffective assistance of counsel.

7) "A client and an attorney need not share "rapport" or a "meaningful relationship." *State v. McNeill* (1998), 83 Ohio St. 3d 438, 452; *State v. Herness* (1997), 79 Ohio St. 3d 53, 66 citing *Morris v. Slappy* (1983), 461 U.S. 1, 13. "To discharge a court- appointed attorney, the defendant must show 'a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Coleman* (1988), 37 Ohio St. 3d 286, 292."

8) This Court finds nothing in Ex. 45 or Ex. 3 to suggest that there was a "breakdown" in the attorney-client relationship, just a dissatisfaction common among defendants in situations similar to Petitioner's.  Having provided no operative facts to support his claim, this Court finds no substantive grounds for relief and dismisses this claim without hearing.

### SIXTH CAUSE OF ACTION (original Petition)
### SEVENTH CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this Sixth Cause of Action (original Petition) and Seventh Cause of Action (amended Petition):

1) Petitioner argues that African Americans were systematically culled from the jury process.

2) Petitioner attaches the census data cited previously by the Court (Ex. 1 in amended and original Petitions), newspaper articles concerning the lack of African Americans in the Roderick Davie jury pool (Ex. 3, 4, 5,  original Petition, Ex. 36, 37, 38), the Diane Wiley

affidavit (Ex. 6 original Petition, Ex. 39 amended Petition), and an affidavit from Atty. Dennis Day Lager stating that all of the jurors in co-defendant Roberts' case were Caucasian.

The Court makes the following Conclusions of Law as to this Sixth Cause of Action (original Petition) and Seventh Cause of Action (amended Petition):

1)      None of the exhibits submitted by Petitioner support his claim that African Americans, or any other minority members, were "systematically culled" from the jury selection process. The fact that no African American was ultimately *seated* on either the Davie, Roberts or Jackson juries is not indicative of a systemic *removal* of any potential juror. Because Petitioner provides no operative facts to support this claim, this Court finds no substantive grounds for relief and dismisses it without hearing.

2)      Furthermore, the claim of underrepresentation of African Americans in the jury pool would have been evident at the time of trial, and therefore could have been raised on direct appeal. The claim is thus barred by res judicata. *State v. Wilson* (June 24, 1998), C.A. No.97CA006683, at *7; *Cole, Perry, supra.*

3)      Also, the Ohio Supreme Court found the Wiley affidavit unpersuasive in the Davie case, and specifically held that Davie had not demonstrated an unfair lack of representation of African Americans in Trumbull County juries, nor did he show that such alleged underrepresentation resulted from a systematic exclusion by the state of that particular group. *State v. Davie* (1997), 80 Ohio St. 3d 311, 316-317. If Wiley's opinion failed to convince the panel reviewing Davie's allegation of underrepresentation, it is axiomatic that it must fail to persuade this Court in the case sub judice.

4)      Finally, this Court again rejects Petitioner's request for discovery. He is not entitled to a hearing therefore he is not entitled to discovery. See *Lorraine, supra,* at *5

## SIXTH CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this Sixth Cause of Action (amended Petition):

1)      Petitioner argues his death sentence is void or voidable because his counsel failed to retain the services of a "mitigation specialist."

2)      To his amended Petition he includes Ex. 46-53 which are fully described in the court's response to the Seventh/Eighth Cause of action.

-16-

3)      He attaches as part of his Memorandum Contra an order of this Court dated Jan. 18, 2002 authorizing $5,000 in public funds to hire Dr. Sandra McPherson and Donald McPherson "as expert assistance to aid in the Defense." Ex. 5.

The Court makes the following Conclusions of Law with respect to Petitioner's Sixth Cause of Action:

1)      Petitioner's exhibits fail to provide sufficient operative facts to suggest counsel did not obtain a "mitigation specialist." Dr. McPherson was Petitioner's handpicked expert.  She told the jury, "my purpose was to understand the Defendant and to develop information for this trial."

2)      Dr. McPherson has testified in numerous capital murder cases as a mitigation expert in the State of Ohio.  *State v. Tresh* (2001), 90 Ohio St. 3d 460; *State v. Carter* (2000), 89 Ohio St. 593; *State v. McNeill* (1998), 83 Ohio St. 3d 438; *State v. Otte* (1996), 74 Ohio St. 3d 555; *State v. Jenkins* (1984), 15 Ohio St. 3d 164.

3)      This Court finds that Dr. McPherson qualifies as a mitigation specialist as a result of her training, expertise, education, experience and prior testimony on behalf of capital defendants.

4)      Furthermore, any challenges to Dr. McPerhson's qualifications could have been raised in Petitioner's direct appeal and is therefore barred by the doctrine of res judicata. *Perry, Cole,* supra.

5)      Not only does Petitioner fail to raise sufficient operative facts pursuant to *Kapper,* supra, he raises a claim that is specifically belied by the record.  He submits no evidence that trial counsel's selection of Dr. McPherson was not a reasonable trial strategy, particularly in light of her previous profession experience.   This Claim is void of substantive grounds for relief and is hereby dismissed without hearing.


### SEVENTH CAUSE OF ACTION (original Petition)
### EIGHTH  CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact as to this Seventh  Cause of Action (original Petition) and Eighth Cause of Action (amended Petition):

1)      Petitioner alleges his trial counsel was ineffective for a variety of so called failures at several phases of his trial proceedings.

2)      To support this claim, Petitioner affixes the following exhibits to his Petitions: His Youngstown Public Schools Psychological Report from 1986 (age 13) listing his full

scale I.Q. at 73 (Ex. 11, original Petition, Ex.53 amended Petition ); His Youngstown Public Schools Psychological Report from 1989 (age 17) listing his full scale I.Q. at 70 (Ex. 12, original Petition, Ex.57, amended Petition); Affidavit of Public Defender Investigator Jessica Love (Ex. 13, original Petition, Ex.58, amended Petition); Affidavit of Dorian Hall Ohio Public Defender Mitigation Specialist (Ex. 14, original Petition Ex. 59, amended Petition); Testimony of Forensic Social Worker Jill Miller from the Lawrence Landrum evidentiary hearing (Ex. 15, original Petition, Ex 60. amended Petition), Report of Dr. Sandra McPherson (Ex. 16, original Petition, Ex 61, amended Petition); Affidavit of Forensic Psychologist Dr. Robert Kaplan (Ex. 17, original Petition, Ex. 64,amended Petition); Testimony of Dr. Robert Smith (Ex. 18, original Petition, 62 Amended Petition); Testimony of Dr. Theodore Van Doran Parran (Ex. 19, original Petition, Ex.63, amended Petition). In the amended Petition, Petitioner adds Ex. 46, a Youngstown City School record of his Individualized Education Program; Ex. 47, a compilation of Petitioner's various adult and juvenile records and probation reports as maintained in Mahoning County; Ex. 48 - Petitioner's discharge summary from Neil Kennedy Recovery Clinic dated 3/22/00;Ex. 49 Affidavit of Pauline Korneagay, mother of Petitioner; Ex. 50, Affidavit of Tausha Korneagay, sister of Petitioner; Ex. 51, Affidavit of Anthony Korneagay, brother of Petitioner; Ex. 52, Affidavit of Raymond Dickerson, friend of Petitioner's mother; Ex. 53, Affidavit of Kevin Perry, fiancee of Tausha Korneagay.

The Court makes the following Conclusions of Law as to this Seventh Cause of Action (original Petition) and Eighth Cause of Action (amended Petition):

1)     When a petitioner asserts a claim of ineffective assistance of counsel, he bears the initial burden to submit evidence to demonstrate that his defense was prejudiced by counsel's ineffectiveness. If he fails to do so, no evidentiary hearing is required. *Pankey, Jackson,* supra. .

2)     In asserting an ineffective assistance claim, the petitioner must submit materials containing sufficient operative facts to demonstrate both prongs of the two-part test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 687: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. Prejudice will not be found unless appellant demonstrates there is a reasonable possibility that, if not for counsel's errors, the result of the trial would have been different. *Pierce,* supra.

3)     In order to overcome a presumption of effectiveness, the petitioner must submit sufficient operative facts or evidentiary documents that, if proven would show that the petitioner was prejudiced by ineffective assistance of counsel. *Maxwell, Smith,* supra.

4)     None of the exhibits attached to Petitioner's Petitions even remotely suggest that his trial counsel was ineffective. In fact, the Hall affidavit, Miller testimony, and Van Doran

Parran testimony make no mention whatsoever of Petitioner, let alone his counsel and their trial performance. These exhibits are wholly irrelevant to Petitioner's claim of ineffective assistance of counsel.

5) With respect to the Smith and Parron testimony and the Kaplan affidavit, this Court finds any reference to Petitioner's drug abuse as merely cumulative of the testimony offered by Dr. McPherson. It is painfully obvious from the trial testimony that the killing of Robert Fingerhut was not the product of a cocaine abuse episode. Petitioner and Roberts clearly planned this murder while Petitioner was in prison, and then executed Fingerhut in a manner essentially consistent with that plan. These factors alone suggest that if Petitioner had ingested cocaine before this killing that he was able to commit this crime in spite of the cocaine, not because of it. Thus, counsel was not ineffective for not trying to blame this crime on cocaine.

6) The remaining exhibits, which actually reference Petitioner, do not support a claim of ineffectiveness.

7) As an example, Petitioner's two I.Q. tests placing him at a 70 and 73 when he was 13 and 17 years of age would not have changed this Court's opinion that he gave a voluntary and self-serving statement to investigators. The fact that Petitioner sought portray himself as the victim in the Fingerhut shooting, and to promote his own interests by claiming self defense and by clearly attempting to minimize the involvement of his co-defendant, Roberts, far outweighs any import this Court would have placed upon his seventh and tenth grade I.Q. scores in determining the voluntariness of his statement. This Court finds no example of deficient performance or prejudice to Petitioner at the suppression hearing. Furthermore, this issue could have been raised in Petitioner's direct appeal, and is therefore barred by res judicata, Cole, Perry, supra.

8) This Court finds no example of ineffectiveness in trial counsel's "failure" to challenge the venire from which the grand or petit juries were drawn. First of all, trial counsel did challenge the jury array by making the following objection: "MR. CONSOLDANE: I also have – I make another objection to the array of the Jury picked. We only had one person for color on that Jury and he was excused because he couldn't believe in enforcing the death penalty, and this is far less than what the population is in the Trumbull County. I don't think that is respective of what the black population is in Trumbull County, nor is it fair to my client to have all elderly white people judging him." (T.p. Vol. 7, p. 1846).When directly questioned by this Court has to whether there was anything prejudicial or unconstitutional about the method employed by the Trumbull County Common Pleas Court for selecting jurors, trial counsel admitted they had nothing to support their theory. (T.p. Vol. 7, p. 1849). These Petitions present no evidence to counter trial counsel's admissions. Again, this Court can find no Strickland violation with respect to trial counsel's handling of the issue as to the racial make up of his jury or grand jury.

-19-

9)   Likewise, these Petitions are totally devoid of any examples of impropriety in the selection of the grand jury forewoman.  Therefore, no ineffective assistance of counsel claim will stand.

10)  The Petitions' exhibits offer no proof of racially influenced charging practices on the part of the Trumbull County Prosecutor's Office.  This particularly true in this case where by the Petitioner, and his co-defendant, a Caucasian woman, were indicted on identical charges.   Therefore, trial counsel was not ineffective for failing to challenge the charging practices.

11)  Allegations that trial counsel failed to adequately prepare for mitigation are not supported by the trial record.  Per motion of trial counsel, this Court authorized the expenditure of public funds to hire Dr. Sandra McPherson to assistant trial counsel in uncovering potentially helpful information to Petition in his mitigation phase.  Now, Petitioner uses affidavits from two Ohio Public Defender employees, Hall and Love, to suggest that either Dr. McPherson or trial counsel somehow dropped the ball in mitigation.  This Court is wholly unimpressed with such criticism, particularly coming from two individuals who are not as credentialed or as experienced as Dr. McPherson in assessing mental health issues which are frequently fodder for mitigation arguments.  Dr. McPherson is a licensed clinical forensic psychologist.  Neither Hall nor Love are so qualified.  Neither Hall nor Love are attorneys.  Therefore, this Court cannot seriously consider Hall's boiler plate statement (which does not even reference this trial), or Love's post-sentence collection of affidavits to serve as a competent critique of either McPherson or counsel's performance.   This Court finds absolutely no merit to the claim that trial counsel failed to hire a "mitigation specialist."  Based on her training and experience, Dr. McPherson is eminently qualified as a mitigation specialist, and any argument that she is not wholly feckless.

12)  Thanks to Dr. McPherson's efforts, the jury heard testimony concerning Petitioner's low I.Q. scores attained in adolescence, his drug addiction, his criminal history, and an explanation for his attraction to and involvement with Roberts.  Through both Dr. McPherson's and the lay witness' testimony, trial counsel sought to portray Petitioner in a more sympathetic light to the jury than is being suggested in these Petitions, i.e., that counsel should have delegated blame for the Fingerhut killing to Petitioner's drug habit.  In its sarcasm-laden argument in response, the State properly points out that an over-emphasis of Petitioner's history of drug abuse may have backfired on Petitioner.  This Court agrees and will not brand trial counsel as ineffective for its strategic decision to downplay, though not entirely dismiss, Petitioner's drug habit and the life of crime he voluntarily elected to embark upon to support it.  Petitioner submits no evidence to this Court that the outcome of his mitigation phase would have been different had counsel chosen to place more emphasis on Petitioner's drug use than they ultimately did.  According to Petitioner's Ex. 16 (original Petition) and Ex. 61(amended Petition), Dr. McPherson or her assisting psychologist, administered a battery of tests to Petitioner,

-20-

including the Thematic Apperception Test, WAIS-3, MMPI-2, WRAT-3, Bender Gestalt, and Rorschach tests. This Court defers to Dr. McPherson's professional judgment as to which tests were appropriate in this matter. This Court finds no reason to infer ineffective assistance when trial counsel did likewise.

13) This Court also declines to find that counsel was ineffective for not arguing that Petitioner's mother was an alcoholic who neglected him. Regrettably, in our society far too many individuals blessed with the gift of children choose the drink or the drug over their precious children's welfare. However, not all of these children grow up to commit aggravated murder. This Court does not view Petitioner's mother's purported alcoholism and resulting neglect of Petitioner as outcome determinative to the mitigation phase. Therefore, this Court cannot find that counsel's performance was deficient in failing to bring this to the jury's attention. Furthermore, counsel sought to call Petitioner's mother to the stand as a mitigation witness, undoubtedly to humanize and engender sympathy for her son who was literally in a battle for his life. Portraying her as a drunk and neglectful mother would have seriously jeopardized her credibility before the jury.

14) Debatable trial tactics generally do not constitute a deprivation of effective assistance of counsel. *State v. Phillips* (1995), 74 Ohio St. 3d 72, 85. The decision of trial counsel not to pursue every possible trial tactic for reasons of strategy does not result in ineffective assistance of counsel. *State v. Brown* (1988), 38 Ohio St. 3d 305, 319. Though the family and friends who supplied affidavits to the amended Petition claim defense counsel did not interview them at all, or asked different questions from those posed during their interviews, their allegations do not support an ineffective assistance of counsel claim. This Court does not even find it "debatable" trial strategy to withhold information from the jury that Petitioner socialized with drug dealers and was alienated from the entire family because he would steal to support his habit (amended Petition Ex. 49), was a drug rehabilitation drop out (amended Petition Ex. 50), forced his family to leave their home because of Petitioner's stealing to support his habit (amended Petition. Ex. 51), lived on the streets because of his drug habit (amended Petition Ex. 52), or that he bragged about being a member of the "crips" street gang. (amended Petition Ex. 53). None of these facts would place Petitioner in a more favorable light for a jury who is trying to decide if the aggravating circumstances of his crime outweigh mitigating factors.

15) Petitioner's exhibits also do not support the claim that his trial counsel did not conduct an independent guilt phase investigation. The very exhibits submitted by Petitioner show that Dr. McPherson conducted a full and complete investigation into Petitioner's background. Petitioner submits no evidence, such as an affidavit from trial counsel, as to what they did or did not do by way of independent investigation. Therefore, he fails to demonstrate ineffectiveness.

16) For the reasons above, Petitioner has failed to submit evidence of ineffectiveness, therefore, this claim is dismissed without hearing and the Court denies any request for discovery. See *Jackson, Lorraine,* supra.

-21-

## EIGHTH CAUSE OF ACTION (original Petition)
## NINTH CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact  as to this Eighth  Cause of Action (original Petition) and Ninth Cause of Action (amended Petition):

1) Petitioner argues his trial counsel was ineffective for failing discuss with jurors the dynamics of the relationship between Petitioner and Donna Roberts, Roberts' motive for killing fingerhut, Roberts' affinity for African American males, Roberts' supposed superior intelligence and  Roberts' full participation in the homicide.

2) To support this claim, Petitioner attaches the following Exhibits: Larry Southwick's interview with Det. Hoolihan and Sgt. Dillon (original Petition Ex. 20, amended Petition Ex. 65); Christine Ellington's interview with Hoolihan and Dillon (original Petition. Ex. 21, amended Petition Ex. 66); Complaint filed by Roberts against Santiago Mason after he purportedly declined her invitation for sex (original Petition Ex. 22, amended Petition Ex. 67); Supplemental Howland Police report in which Roberts claims Fingerhut knew of her relationship with Petitioner (original Petition Ex. 23, amended Petition Ex.68); Supplemental Howland Police report wherein Janet Clay states she saw Petitioner and Roberts smoking crack cocaine at her home (original Petition Ex. 24, amended Petition Ex. 69); Supplemental Howland Police report of Roberts' initial police interview at the scene (original Petition Ex. 25, amended Petition Ex. 70); Investigative notes made by Dillon (original Petition Ex. 26, amended Petition Ex. 71); A list of prescriptions recovered from the Fingerhut residence after the homicide (original Petition Ex. 27, amended Petition Ex. 72); An unsigned note regarding a supposed "rush to judgment" in the Fingerhut homicide (original Petition Ex. 28, amended Petition 73); Supplement Trumbull County Sheriff's report of possible bloodstains at the Fingerhut residence (original Petition Ex. 29, amended Petition Ex. 74); Supplemental Trumbull County Sheriff's Department stating Petitioner was uncooperative in completing handwriting exemplars (original Petition Ex. 30, amended Petition 75); A copy of Petitioner's Proposition of Law No. 2 as it appears in his pending brief to the Ohio Supreme Court (original Petition Ex. 31, amended Petition Ex. 76); Report of Forensic Scientist Donna L. Rose stating "[g]un shot residue was not conclusively identified" on Roberts' hands (amended Petition Ex. 77).

3) Petitioner requests discovery to support his claim.

The Court makes the following Conclusions of Law  as to this Eighth  Cause of Action (original Petition) and Ninth Cause of Action (amended Petition):

1) The doctrine of res judicata applies to postconviction proceedings.  *State v. Perry* (1967), 10 Ohio St.2d 175.

-22-

2)   Res judicata is a proper basis upon which to dismiss a claim for relief in a postconviction petition where the claim was raised or could have been raised at trial or on direct appeal, and where the claim could fairly have been determined without resort to evidence dehors the record. *State v. Cole* (1982), 2 Ohio St. 3d 112; *Perry,* supra at 180.

3)   Petitioner raised an ineffective assistance of counsel argument in his brief to the Ohio Supreme Court.  Therefore, the doctrine of res judicata applies.

4)   Even though Petitioner attempts to raise new examples of ineffectiveness in his Petition, such of a lack of questioning of potential jurors, or Roberts' alleged propensity to take advantage young, African-American males, such would have been apparent from the face of the trial record and could have been raised on appeal.

5)   Furthermore, in order to succeed on a claim of ineffective assistance of counsel, a petitioner must demonstrate that ineffective performance and prejudice to the defendant, or the claim is subject to dismissal without hearing. *Jackson, Pankey, Pierce,* supra.

6)   None of these examples persuades this Court of trial counsel's ineffectiveness.  The jury was well informed of Roberts' planning and participation in this homicide even if she was not the actual killer.  Petitioner admitted to killing Fingerhut.  Though Petitioner argues a crime scene reconstructionist *may* have yielded a new theory about the homicide, such a theory would undoubtedly pale in contrast to the premeditated killing and Petitioner's admission that he shot Fingerhut.  Nor do his exhibits suggest what that theory might be.  His own Ex. 77 states that no experts found no gunshot residue on Roberts' hands, lending credence to Petitioner's own statement that he was the lone shooter in this killing. Because Petitioner has failed to submit documents containing sufficient operative facts of his trial counsel's ineffectiveness, there are no substantive grounds for relief and this claim must be dismissed without hearing.

7)   Because Petitioner is not entitled to a hearing, he is also not entitled to discovery, *Lorraine,* supra at * 5.

**NINTH CAUSE OF ACTION (original Petition)**
**TENTH CAUSE OF ACTION (amended Petition)**

The Court makes the following Findings of Fact with respect to Petitioner's Ninth Cause of Action (original Petition) and Tenth Cause of Action (amended Petition):

1)   Petitioner argues ineffective assistance of counsel at the mitigation phase.

2)   To support this claim, he attaches Exhibits 44, 49-53, 56-59, 66-67 to his amended Petition and Exhibits 11, 12, 13, 14, 21, 22, and 23 to the original Petition and these exhibits have been already described in previous Causes of Actions.

3)    Petitioner again requests discovery to support this claim.

The Court makes the following Conclusions of Law with respect to Petitioner's Ninth Cause of Action (original Petition) and Tenth Cause of Action (amended Petition):

1)    As stated in the previous Cause of Action, the doctrine of res judicata applies to postconviction proceedings. *Perry, supra,* and this Court finds that the issue of deficiencies in the trial counsel's mitigation performance could have been raised in Petitioner's direct appeal. Petitioner fashioned an ineffective assistance of counsel claim within his Proposition of Law II, though for whatever reasons, did not address his counsel's performance in mitigation.

2)    None of the Exhibits submitted with the Amended Petition overcome this bar. There is no evidence before this Court that trial counsel was aware of the Robert's letter saying Fingerhut intended to fake his own death. (Ex. 44) Even if they were, Petitioner fails to suggest how this is applicable to mitigation. If Fingerhut had faked his own death (and all the available evidence is to the contrary), such evidence would be germane to the guilt, not the mitigation phase. This Court is equally unpersuaded by the series of affidavits from Petitioner's friend's and family. (Ex. 49-53).  Nothing in these affidavits offer mitigating factors at all, let alone enough to outweigh the aggravating circumstances. Petitioner's disruptive behavior, poor academic performance and absenteeism are not mitigating, and do little to augment Dr. McPherson's mitigation testimony.  (Ex. 56, 57). Ex. 58 & 59 are discounted here for the same reasons as appears in the Seventh/Sixth Cause of Action.  Finally, Ex. 66- 67 are simply irrelevant to a claim of ineffective assistance of counsel.  While these exhibits may be been generated de hors the record, they still offer no operative facts to overcome a res judicata bar.

3)    Because these exhibits offer no operative facts supportive of a claim of ineffective assistance of trial counsel, Petitioner fails to demonstrate sufficient grounds for relief. Therefore, this claim is subject to dismissal without hearing. R.C. 2953.21(C), *Kapper,* supra.

4)    In order to demonstrate counsel's ineffectiveness, Petitioner must prove that (1) counsel's performance was deficient, and that (2) he was prejudiced by that performance. *Strickland, Bradley,* supra.  Petitioner fails to develop either prong of the *Strickland* test in his Petition.

5)    This Court will not find trial counsel's performance deficient just because Dr. McPherson's relied upon a psychological assistant to gather part of the data used to compile her report. With the aid of her assistant, Dr. McPherson conducted a thorough review of Petitioner's background in an effort to uncover potentially mitigating evidence. Even Petitioner's post-trial exhibits make it abundantly clear that she omitted no

information which would have been outcome determinative at the mitigation phase. To an extent, the information is cumulative, and much of it is certainly negative information regarding Petitioner's character and background.

6) Despite claims in two affidavits (Ex. 49, 52) that trial counsel spent a relatively short time interviewing family members prior to the mitigation hearing, this Court finds no deficiency in their performance as per *Strickland*. This Court is unpersuaded that more lengthy or in depth interviews would have unearthed any additional facts about the Petitioner which would have actually proved helpful to him. Furthermore, as part of the myriad of paperwork Petitioner filed as Ex. 5 along with his Memorandum Contra, this Court notices a typewritten note to "the Family of Nathaniel Jackson" urging them to contact either the McPhersons' professional offices, or Petitioner's trial counsel for purposes of preparing for mitigation. Obviously, the McPhersons were making every effort to contact family members to supplement their evaluations or to have them called as mitigation witnesses. This Court will not brand trial counsel ineffective if Petitioner's family members made themselves unavailable for pre-trial interviews.

7) Parenthetically, the very nature of the testimony offered by family members and friends hardly requires exhaustive preparation.  Essentially, the family members were brought forward to give insight into Petitioner's background and to tug at the jury's heartstrings by saying how much he would be missed if ultimately executed. Such testimony does not require lengthy interrogations.

8) Nevertheless, it was trial counsel's theory that Petitioner's anti-social tendencies stemmed from a lack of a father figure, his untreated Attention Deficit disorder, and his infatuation with Donna Roberts. (T.p. Vol 16, p. 130-135) Petitioner now suggests mitigation strategy should have focused on his drug abuse and alcoholic mother. This Court cannot find that counsel was deficient or that Petitioner was prejudiced by trial counsel's election to paint Petitioner in the most positive light possible rather than to try to excuse his actions through his own self inflicted drug abuse.

9) This trial court also finds no colorable claim of ineffective assistance of counsel through the substitution of Atty. Thomas Wright at the mitigation phase. Atty. Consoldane, who had acted as trial counsel from the onset of this prosecution, remained on the case and acted as lead counsel in the penalty phase. He conducted direct examination of all mitigation witnesses and gave closing arguments. The fact that Mr. Wright was not certified by the Ohio Supreme Court as a death penalty litigant, or that he was brand new to the case, did not equate to deficient performance by either Atty. Wright or Atty. Consoldane. Petitioner's exhibits offer no examples of deficient performance or prejudice to Petitioner. Therefore, he had failed to demonstrate the *Strickland* standard for ineffectiveness.

10) Furthermore, this Court personally inquired of Petitioner as to whether he wished to

-25-

accept Atty. Wright's representation and proceed as scheduled, or whether he preferred this Court to continue the matter for several days to await Atty. Lewis' return. Petitioner specifically and unequivocally stated he wanted the matter to proceed as scheduled with Atty. Wright substituting for Atty. Lewis. (T.p. Vol 16, p. 5-6). Petitioner only reinforces his desire to decline the offered continuance when he writes "[b]y that time I was so upset with my attorneys I just wanted to get it over." (Memorandum Contra, Ex. 3). Pursuant to the doctrine of invited error, Petitioner may not argue prejudice over a situation which he clearly facilitated. See *State v. Campbell* (2000), 90 Ohio St. 3d 323, 324.

11)    Petitioner argues Atty. Consoldane knew little about the evidence at mitigation, made no opening statement, and called only four lay witnesses who offered incomplete and inaccurate testimony. None of these claims are tantamount to a deficient performance. First, the record does not reveal that Atty. Consoldane "knew little" about the mitigation evidence, only that he felt Dr. McPherson knew more about the family dynamics as a result of her extensive interviews pursuant to psychological testing. (T.p. Vol 16, p. 7). Second, the Supreme Court of Ohio has held that a waiver of opening statements at the penalty phase is not tantamount to ineffective assistance of trial counsel. *State v. Brewer* (1988), 48 Ohio St. 3d 50, 63. Finally, Petitioner called five, not four, lay witnesses at trial. They were (1) Raymond Dickerson, (2) Taushia Kornegay, (3)Lorraine Rue, (4) Shaylese Townsend Jackson and (5)Pauline Kornegay. The Kornegays and Dickerson supplied affidavits for the amended Petition. (Ex.49, 50, 52). The Court finds nothing in these affidavits which would have been more useful to Petitioner at mitigation beyond their testimony of record. Again, examples of Petitioner's drug use and the life crime he embarked upon to support it hardly mitigating.

12)    This Court gives absolutely no weight to Dorian Hall's affidavit (Amended Petition Ex. 59) criticizing Dr. McPherson's decision to administer an I.Q. test as part of her evaluation. In light of the U.S. Supreme Court's decision in *Atkins v. Virginia* (2002) 536 U.S. 304, it may well have been tantamount to malpractice to forego I.Q. testing, especially when the Petitioner's academic performance was below average and he previously scored in the 70s on two prior I.Q. tests. Ms. Hall has completely eroded her own credibility in this Court's eyes by even suggesting that a forensic psychologist forego I.Q. testing in this instance.

13)    Finally, this Court denies Petitioner's request for discovery per *Lorraine, Love,* and *While, supra.*

14)    This claim is dismissed without hearing because it is barred by the doctrine of res judicata, *Perry, supra,* and because Petitioner's exhibits de hors the record do not provide sufficient operative facts to demonstrate substantive grounds for relief. *Kapper, supra,* R.C. 2953.21(C).

## TENTH CAUSE OF ACTION (original Petition)
## ELEVENTH CAUSE OF ACTION (amended Petition)

The Court make the following Findings of Fact as to this Tenth Cause of Action (original Petition) and Eleventh Cause of Action (amended Petition):

1) Petitioner again alleges ineffective assistance of trial counsel at the mitigating phase, this time due to purported short-comings in the evaluations conducted by Dr. McPherson.

2) To support these allegations, he attaches the previously described Ex. 13, 14, 15, 18 and 19 to the original petition and Ex. 49, 58, 59, 60, 62, 63, 64 to the amended petition.

3) Petitioner requests discovery to support his claim.

The Court makes the following Conclusions of Law as to this Tenth Cause of Action (original Petition) and Eleventh Cause of Action (amended Petition):

1) The Court adopts and incorporates paragraphs 1 through 3 from its Conclusions of Law from the Seventh/Sixth Cause of Action.

2) Petitioner seeks to label his trial counsel ineffective because he has found a social worker and a second psychologist to state that Dr. McPherson either administered the wrong tests or scored tests incorrectly. This Court will not and does not find trial counsel ineffective pursuant to the *Strickland* standard for professional decisions made by their expert, Dr. McPherson.

3) None of the exhibits provided directly assess trial counsel's performance. Therefore, Petitioner fails to support his claim with evidence de hors the record and this claim is subject to dismissal without hearing. *Kapper,* supra, R.C. 2953.21(C)

4) Ex. 78, the affidavit of Dr. Thomas Andrew Boyd, states that Dr. McPherson improperly scored Petitioner's I.Q. test. While it is refreshing to review an exhibit which actually references the participants and performances in *Petitioner's* case, this Court does not find that Dr. Boyd's recalculated I.Q. score of 75 in any way diminishes the overall value of Dr. McPherson's evaluation or testimony. The five-point deviation between Dr. McPherson's score and Dr. Boyd's score is not outcome determinative, and certainly has no impact on whether his trial counsel was ineffective. Furthermore, "[a] postconviction petition does not show ineffective assistance merely because it presents a new expert opinion that is different from the theory used at trial. *State v. Combs* (1994), 100 Ohio App. 3d 90, 104. Therefore, Petitioner does not demonstrate ineffective assistance of counsel pursuant the *Strickland* standard.

5) This Court gives no credence to Ms. Hall's criticism that Dr. McPherson should have

-27-

abandoned the Bendt Gestalt Test for the Trails Making Test. Nothing in Ms. Hall's affidavit suggests that she is even remotely qualified to critique the professional decisions of the licensed forensic psychologist, whether it be Dr. McPherson, or any other mental health professional potentially covered by her boilerplate affidavit which references this case only in its caption.

6)    Petitioner's request for discovery is denied pursuant to *Lorraine, Love,* and *Wiles, supra.*

## ELEVENTH CAUSE OF ACTION (original Petition only)

The Court makes the following Findings of Facts as to this Eleventh Cause of Action:

1)    Petitioner argues his sentence is void or voidable because he was mentally retarded at the time of his trial and cannot be sentenced to death.

2)    Petitioner attaches Ex. 11 and 12 to support this claim.

The Court makes the following Conclusions of Law as to this Eleventh Cause of Action.

1)    *Atkins v. Virginia* (2002), 536 U.S. 302, which bars the execution of mentally retarded persons was decided in June of 2002, approximately four months before Petitioner's trial began. If Petitioner had a viable claim of mental retardation, he could have raised this bar at trial and on appeal. Therefore, as a post-*Atkins* capital defendant, Petitioner's claim is barred by the doctrine of res judicata. See *Perry, supra.*

2)    In a footnote, the *Atkins* decision printed the following definition of mental retardation: "***characterized by significantly subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18." Mental Retardation: Definition, Classification, and Systems of Supports 5 (9th ed.1992). Atkins at 305, FN 3.

3)    The Supreme Court of Ohio adopted this definition in *State v. Lott* (2002), 97 Ohio St. 3d 303, and further stated that a capital defendant is rebuttably presumed to *not* be mentally retarded if his or her I.Q. is above 70.

4)    The record before this Court, and Petitioner's own exhibits show that Petitioner's full scale I.Q. at age 13 was 73, and at age 17 was 70. (Ex. 11, 12). When tested just before trial, Petitioner score an 84. McPherson testified at trial that Petitioner *never* tested in a range for mental retardation. (T.p. Vol. 16, p. 82). Dr. McPherson twice testified that Petitioner's "actual ability is probably better than the test would indicate." (T.p. Vol. 16, p. 83, 48). Dr. Boyd does not label Petitioner mentally retarded . Therefore, Petitioner

-28-

fails to demonstrate significantly subaverage intellectual functioning.

5) Contrary to Petitioner's assertions, Ex. 11 and 12 do not provide examples of limitations in adaptive skills, nor does the trial record. The facts of the homicide alone point to well developed adaptive skills. For example, his series of letters and phone calls to Roberts show that he can effectively communicate love, lust, loneliness, and a desire for a more upscale life style. His ability to conspire with Roberts to murder Fingerhut and to carry out that plan shows his self-directed nature. He apparently chooses to spend his leisure time having sex and abusing drugs, and knew how to use Roberts to get both. This Court finds no deficit in Petitioner's adaptive skills.

6) This Court finds no evidence of onset of mental retardation prior to age 18.

7) Pursuant to *Lott* and *Atkins,* Petitioner fails to overcome the presumption of no mental retardation. Therefore, his claim is dismissed without hearing. *Kapper,* supra. R.C. 2953.21(C).

## TWELFTH CAUSE OF ACTION (original Petition only)

The Court makes the following Findings of Fact with regard to Petitioner's Twelfth Cause of Action, original Petition only:

1) Petitioner argues his death sentence is void or voidable because the jury did not make the requisite decision that he was not mentally retarded.

2) He attaches no exhibits to support this claim.

The Court makes the following Conclusions of Law with regard to Petitioner's Twelfth Cause of Action, original Petition only:

1) Petitioner relies upon the U.S. Supreme Court's decision in *Ring v. Arizona* (2002), 536 U.S. 584 to support this argument. As with the *Atkins* decision, *Ring* was decided in June of 2002, four months before the start of Petitioner's trial. Therefore, this issue could have been raised at trial and/or on direct appeal and is therefore barred by the doctrine of res judicata. *Perry,* supra.

2) Furthermore, courts throughout the country have held, contrary to Petitioner's position, that *Ring* clearly does not require a jury finding of no mental retardation prior to the imposition of the death penalty. See, i.e. *Russell v. State* (2003), 849 So. 2d 95, 148; *Walton v. Johnson* (2003), 269 F. Supp. 2d 692, N3; *Head v. Hill* (2003), 587 S.E.2d 613, 618-620; *Adams v. State* (Aug. 29, 2003), Court of Criminal Appeals of Alabama No. CR-98-0496, FN 9.

-29-

VOL **1032** PAGE **906**
A-29

3)   Petitioner attaches no evidence de hors the record to support this claim. He therefore fails to offer sufficient operative facts to support his argument, nor does he establish substantive grounds for relief. This claim is dismissed without hearing. *Kapper*, R.C. 2953.21(C).

## TWELFTH CAUSE OF ACTION (amended Petition only)

The Court makes the following Findings of Fact with regard to Petitioner's Twelfth Cause of Action, amended Petition only:

1)   Petitioner argues that his death sentence is void or voidable because the jury did not receive all of the relevant information concerning the appropriate sentence.

2)   Petitioner references Amended Petition Ex. 46, 47, 49-53, 58, 78-79, which have been previously described, excepting 79 which this Court is unable to locate.

The Court makes the following Conclusions of Law with regard to Petitioner's Twelfth Cause of Action, amended Petition only:

1)   For the reasons already stated in response to Petitioner's Seventh/Sixth and Tenth/Eleventh Causes of Action, this Court finds that these exhibits do not supply this Court with sufficient operative facts to support this claim. Petitioner establishes no substantive grounds for relief, and this cause is dismissed without hearing. *Kapper*, R.C. 2953.21(C).

2)   To suggest that any of the information presented in any of these exhibits would have swayed the jury to recommend a life, rather than death sentence is wholly speculative and do not render Petitioner's death sentence void or voidable.

3)   Furthermore, this Court disagrees with Petitioner's characterization that Dr. McPherson's report lacks a social history. Dr. McPherson, in her testimony and report, described his family environment, his academic history, interpersonal relationships with his children and significant others, his drug use, ADHD, anti-social personality disorder and criminal history. The fact that Dr. McPherson did not link Petitioner's drug use to his mother's alcoholism is not indicative of a lack of a social history. Petitioner ignores the very distinct possibility that his election "self medicate" with cocaine or other illegal substances was a personal choice wholly independent of his mother's purported problems. Perhaps the reason no expert testified to this nexus is because it does not exist.

-30-

## THIRTEENTH CAUSE OF ACTION (original and amended Petitions)

The Court makes the following Findings of Fact with respect to Petitioner's Thirteenth Cause of Action:

1) Petitioner argues that his death sentence is void or voidable because lethal injection, Ohio's present method of execution, is violative of the Eighth Amendment to the U.S. Constitution.

2) Petitioner submits a Letter from James Haviland, warden of the Southern Ohio Correctional Facility (Ex. 32, original Petition, Ex. 82, amended Petition) which details the intravenous equipment and pharmaceuticals used in the executions of Jay Scott and John Byrd, a letter from Vincent Lagana, Staff Counsel for the Ohio Department of Corrections (Ex. 33, original Petition, Ex. 83, amended Petition) which discusses the drugs and dosage used by the Department of Corrections in an execution, and finally, an affidavit from Dr. Mark J.S. Heath, an anesthesiologist. Dr. Heath composed this affidavit for the late Lewis Williams and John G. Roe's habeas proceedings, wherein Dr. Heath opines that if the condemned is not properly anesthetized, he may suffer excruciating pain during the execution process and that his distress may not be readily apparent to execution witnesses. This Exhibit is also labeled "82."

The Court makes the following Conclusions of Law with respect to Petitioner's Thirteenth Cause of Action:

1) This claim is barred by the doctrine of res judicata as the constitutionality of lethal injection could have been raised in Petitioner's direct appeal and was not. *Perry, Cole,* supra.

2) The Supreme Court of Ohio has previously held that the Eighth Amendment to the U.S. Constitution does not bar lethal injection as a method of execution in Ohio. *State v. Carter* (2000), 89 Ohio St. 3d 593, 608. Petitioner offers no authority to suggest that *any* court in the 37 states which use lethal injection as a method of execution has found it to be contrary to the Eighth Amended proscription against cruel and unusual punishment.

3) Petitioner's three exhibits do not provide this Court with sufficient operative facts to support his claim that lethal injection constitutes cruel and unusual punishment. The two letters from the Ohio Department of Corrections simply do not address whether the condemned suffers or not during the administration of the lethal dose of drugs. Dr. Heath's affidavit certainly raises the *possibility* that the condemned, under certain circumstances, may suffer. However, the affidavit offers no empirical evidence that in Ohio, or in any other state, a condemned inmate actually suffered in a manner consistent with his hypothetical scenarios. The Sixth Circuit Court of Appeals labeled Dr. Heath's concerns as "purely speculative." *Cooper v. Rimmer* (2004), 358 F. 3d 655, 659. Dr.

-31-

Heath's affidavit did not persuade the Sixth Circuit to block the execution of Lewis Williams. *In Re Williams* (2004), 359 F. 3d 811, 814.

4)    This Court must concur with the Sixth Circuit Court of Appeals and find that Dr. Heath's opinion is merely speculative. Furthermore, it is contingent upon several variables which may or may not occur at Petitioner's execution or any other. Included in that speculation is the use of the "cut-down" procedure which the U.S. Supreme Court recognized in its implementation of a stay of execution in *Nelson v. Campbell*, 2004 U.S. Lexis 3600, to determine whether the procedure violates the Eighth Amendment. It should be noted that unlike Nelson, Petitioner has never contended that his veins are compromised due to drug use, or any other malady, or that he might be subject to this procedure at the time of his execution.

5)    This Court cannot guarantee Petitioner a pain free execution, and neither does the U.S. constitution. The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishment. "Punishments are cruel when they involve torture or a lingering death...." *In Re Kemmler* (1890), 136 U.S. 436, 447. As used in the Constitution, "cruel" implies "something inhuman and barbarous, something more than the mere extinguishment of life." Id. None of Petitioner's exhibits convince this Court that lethal injection is torturous, inhuman or barbarous.

6)    As a result, Petitioner fails to present operative facts to support this claim, and fails to demonstrate substantive grounds for relief. This Cause of Action is therefore dismissed without hearing. *Kapper*, R.C. 2953.21(C).


## FOURTEENTH CAUSE OF ACTION (original Petition)
## FIFTEENTH CAUSE OF ACTION (amended Petition)

The Court makes the following Findings of Fact with respect to Petitioner's Fourteenth Cause of Action (original Petition) and Fifteenth Cause of Action (amended Petition):

1)    Petitioner argues that the cumulative effect of all the grounds for relief and the totality of the exhibits demonstrate that his conviction and sentences are void or voidable.

2)    Petitioner re-incorporates all of his exhibits and arguments.

3)    Petitioner renews his request for discovery.

The Court makes the following Conclusions of Law with respect to Petitioner's Fourteenth Cause of Action (original Petition) and Fifteenth Cause of Action (amended Petition):

VOL 1032 PAGE 909
A-32

1)    Petitioner fails to demonstrate that one single Cause of Action merits relief, nor does the cumulative effect of all the exhibits and arguments taken together.

2)    The exhibits from both the original and amended Petitions fail to supply this Court with sufficient operative facts to support any claim.  Petitioner demonstrates no substantive grounds for relief.  Therefore, both Petitions are subject to dismissal without hearing. *Kapper*, R.C. 2953.21(C)

3)    Petitioner's request for discovery is denied pursuant to *Lorraine, Love* and *Wiles*.

This Court finds that State's motion to dismiss is well-taken with respect to all Fourteen Causes of Actions in the original Petition, and all Fifteen Causes of Action in the Amended Petition.  . It is therefore ORDERED, ADJUDGED and DECREED that Petitioner's Petition to Vacate or Set Aside Sentence  Pursuant to R.C. 2953.21 is hereby dismissed without a hearing.

IT IS SO ORDERED,

_____
DATE

JOHN M. STUARD, JUDGE
Of the Common Pleas Court Trumbull
County, Ohio

TO THE CLERK OF COURTS:  YOU ARE ORDERED TO SERVE
COPIES OF THIS JUDGMENT ON ALL COUNSEL OF RECORD
OR UPON THE PARTIES WHO ARE UNREPRESENTED FORTH-
WITH BY ORDINARY MAIL

JUDGE

-33-

# NOTICE OF APPEAL

## IN THE COURT OF APPEALS
## TRUMBULL COUNTY, OHIO

2004 TR 89

|  |  |  |
|---|---|---|
| STATE OF OHIO, | ) | |
| Plaintiff-Respondent, | ) | Case No. 01-CR-794 |
| -vs- | ) | **F I L E D** |
| NATHANIEL JACKSON, | ) | **COURT OF APPEALS** |
| Defendant-Petitioner. | ) | JUL 1 2 2004 |

TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

---

## NOTICE OF APPEAL TO THE ELEVENTH DISTRICT
## COURT OF APPEALS FROM A FINAL JUDGMENT ENTRY

---

Notice is hereby given that Nathaniel Jackson appealed to the Eleventh District Court of Appeals from the trial court Judgement Entry dated June 14, 2004 denying Nathaniel Jackson post-conviction relief.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER – 0005835
Assistant State Public Defender
Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, Ohio 43215
(614) 466-5394
Facsimile: 614-644-0708

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. N.W., 4th Floor
Warren, Ohio 44481
Telephone No. (330) 675-2426
Telefax No. (330) 675-2431
COUNSEL FOR THE STATE OF OHIO

COUNSEL FOR NATHANIEL JACKSON

A-34

___X___ Check here is court-appointed and attach copy of appointment and Affidavit of Indigency.

_____ Check here is any co-counsel for Appellant and attach separate sheet indicating name, address and telephone number.

## TRANSCRIPT INFORMATION (App. R. 9[B]) (TO BE COMPLETED BY ATTORNEY

_____ I have ordered a complete transcript from the court reporter as evidenced by the completion of the Court Reporter Acknowledgment below.

_____ I have ordered a partial transcript from the court reporter as evidenced by the completion of the Court Reporter Acknowledgment below.

_____ A statement pursuant to App. R. 9(C) or (D) is to be prepared in lieu of transcript.

_____ Video tapes to be filed.  (See App. R. 9[A] or [B].)

_____ No transcript or statement pursuant to either App. R. 9(C) or (D) is necessary.

___X___ Transcript has been completed and already made part of the record.  This is a post-conviction case.  The trial court did not conduct an evidentiary hearing.  The transcript was prepared for the direct appeal.

July 12, 2004
Date

Randall L. Porter

## COURT REPORTER ACKNOWLEDGEMENT – MUST BE COMPLETED BY COURT REPORTER BEFORE FILING NOTICE OF APPEAL

Date Order Received _____

Estimated Completion Date

_____                    _____
(Give specific date)                              Court Reporter's Signature

Estimated Number of Pages

A-35

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing NOTICE OF APPEAL TO THE

ELEVENTH DISTRICT COURT OF APPEALS FROM A FINAL JUDGMENT ENTRY was

forwarded first-class U.S. Mail to LuWayne Annos, Assistant Prosecuting Attorney, Trumbull

County Prosecutor's Office, 160 High St., N.W., 4th Floor, Warren, Ohio 44481, this 12th day of

July, 2004.

COUNSEL FOR PETITIONER

#201412

3

A-36

ELEVENTH DISTRICT COURT OF APPEALS
DOCKETING STATEMENT
(To be attached to and filed with Notice of Appeal)

(CAPTION-must be complete)

State of Ohio
_____
            Plaintiff-Appellee
_____
___ vs.
Nathaniel Jackson
_____
            Defendant-Appellant    |

(NAME, ADDRESS, TELEPHONE NO. AND
ATTORNEY REGISTRATION NUMBER FOR
**ALL** COUNSEL)
Randall Porter, (0005835) 8 East Long St.,
Columbus, Ohio 43215 (614) 466-5394)
LuWayne Annos, (0055651)Trumbull County,
150 High Street, N.W. Warren, Ohio 44481
(330) 675-2426
APPEAL NO.
TRIAL COURT NO.  01-CR-794
_____

TYPE OF CASE:  (Please indicate)

___ A.  No transcript of proceedings required.
_X_ B.  Length of transcript is such that preparation time will not be a source of delay. Transcript already
          completed for direct appeal.
___ C.  Agreed or narrative statement to be submitted pursuant to App.R. 9(C) or (D).
___ D.  Record was made in administrative hearing and filed with trial court.
___ E.  All parties to case approve assignment to accelerated calendar.
_X_ F.  Criminal cases involving:
          ___ 1.  Crim. R. 11 challenges.
          _X_ 2.  Post-conviction appeals alleging ineffective assistance of counsel, Capital case.
          ___ 3.  Challenges to sentencing to revocation of probation or to failure to grant probation.
          ___ 4.  Crim.R. 29 or weight of evidence challenges, especially with lesser crimes.
          ___ 5.  Routine DUI cases and other minor traffic offenses.
          ___ 6.  Expungement cases.
___ G.  Civil cases involving:
          ___ 1.  Routine administrative appeals.
          ___ 2.  Actions on account.
          ___ 3.  Slip and fall.
          ___ 4.  Civ.R. 60(B) motions.
          ___ 5.  Simple contract cases.
          ___ 6.  Minor negligence actions.
          ___ 7.  Property division in divorce case or post-decree support motions.
___ H.  App. R. 11.2 abortion, adoption or parental rights appeal.
___ I.  Other _____

F I L E D
COURT OF APPEALS
AUG 1 2 2004
TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

PROBABLE ISSUE FOR REVIEW:  1)  Ineffective assistance of counsel; 2) racially biased charging
decision; 3) improper selection of grand jury venire, petit jury venire and grand jury foreperson; 4)
prosecutor's suppression of evidence; 5) denial of experts; 6) denial of motion for substitution of counsel;
7) constitutionality of lethal injection; 8) trial court's inaccurate sentencing opinion; and 9) post-conviction
court's failure to appoint experts, grant discovery and conduct an evidentiary hearing.
NOTE:  Information re Record (and Court Reporter's Certification, if applicable) MUST be completed on
Notice of Appeal.

Copy of Judgment Entry being appealed MUST be attached to Notice of Appeal.

CERTIFICATE OF SERVICE:  I certify that I have mailed or otherwise delivered a copy of this Docketing
Statement to all counsel of record or the parties if unrepresented.

DATE:   July 12, 2004                              SIGNATURE _____
                                                                        Randall L. Porter

[Effective July 1, 1991; amended effective July 1, 1994; July 1, 2003.]

Jackson Apx. Vol. 16
Page 157

A-37

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                        :

     Plaintiff-Appellee            :

-v-                                   :        Case No. 01-CR-794

NATHANIEL JACKSON,                    :

     Defendant-Appellant           :        JOURNAL ENTRY

This matter comes before this Court upon Nathaniel Jackson's Motion for Appointment

of Counsel.  The Court, after being fully advised in the matter GRANTS the Motion and appoints

Assistant State Public Defender Randall L. Porter.  The Order is effective nun pro tunc to July 9,

2003.

_____
JUDGE JOHN M. STUARD

Proposed Entry Prepared By:

RANDALL L. PORTER – 0005835
Assistant State Public Defender Office of the Ohio Public Defender
8 East Long St., 11th Floor
Columbus, Ohio  4315
(614) 466-5394
(614) 728-3670 Facsimile

TO THE CLERK OF COURTS: YOU ARE ORDERED TO SERVE
COPIES OF THIS JUDGMENT ON ALL COUNSEL OF RECORD
OR UPON THE PARTIES WHO ARE UNREPRESENTED FORTH-
WITH BY ORDINARY MAIL

1

A-38