IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )
                                        )
Plaintiff-Respondent,                   )       Case No. 01-CR-794
                                        )
        -vs-                            )       Judge John Stuard
                                        )
NATHANIEL JACKSON                       )
                                        )
        Defendant-Petitioner.           )


## AFFIDAVIT OF INDIGENCY

I, Nathaniel Jackson do solemnly swear that I presently, this 12th day of July, 2004, have

no means of financial support and no assets of any value and, therefore, cannot afford to pay for

any legal services, fees, or costs on my behalf in the above-styled case; that I am presently

incarcerated at the Mansfield Correctional Institution; and that I have $ 3.00 income per

month.

Nathaniel Jackson
NATHANIEL JACKSON
#440-891
P.O. Box 788
Mansfield, Ohio 44901


Sworn and subscribed in my presence this 12th day of July 2004.

NOTARY PUBLIC

#201414

RANDALL L. PORTER  Attorney At Law
Notary Public, State of Ohio
MY COMMISSION HAS NO EXPIRING

A-39

THE CONSTITUTION OF THE UNITED STATES
AMENDMENTS TO THE CONSTITUTION

US CONST AMENDMENT V

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

A-40

THE CONSTITUTION OF THE UNITED STATES
AMENDMENTS TO THE CONSTITUTION

US CONST AMENDMENT VI

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

A-41

THE CONSTITUTION OF THE UNITED STATES
AMENDMENTS TO THE CONSTITUTION

US CONST AMENDMENT VIII

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

A-42

THE CONSTITUTION OF THE UNITED STATES
AMENDMENTS TO THE CONSTITUTION

US CONST AMENDMENT XIV

Section 1

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section 2

Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

Section 3

No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each house, remove such disability.

Section 4

The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

Section 5

The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

A-43

BALDWIN'S OHIO REVISED CODE ANNOTATED
CONSTITUTION OF THE STATE OF OHIO
ARTICLE I. BILL OF RIGHTS

Current through 1996 portion of 121st G.A., laws passed and filed through 5-1-96.

O CONST I § 1 INALIENABLE RIGHTS

All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety.

A-44

CONSTITUTION OF THE STATE OF OHIO
ARTICLE I. BILL OF RIGHTS

Current through 1995 portion of 121st G.A., laws passed and filed through 12-31-95.

O CONST I § 2 EQUAL PROTECTION AND BENEFIT

All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the General Assembly.

A-45

CONSTITUTION OF THE STATE OF OHIO
ARTICLE I. BILL OF RIGHTS

Current through 1995 portion of 121st G.A., laws passed and filed through 12-31-95.

O CONST I § 5 RIGHT OF TRIAL BY JURY

The right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury.

A-46

CONSTITUTION OF THE STATE OF OHIO
ARTICLE I. BILL OF RIGHTS

Current through 1995 portion of 121st G.A., laws passed and filed through 12-31-95.

O CONST I § 9 BAIL; CRUEL AND UNUSUAL PUNISHMENTS

All persons shall be bailable by sufficient sureties, except for capital offences where the proof is evident, or the presumption great. Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted.

A-47

CONSTITUTION OF THE STATE OF OHIO
ARTICLE I. BILL OF RIGHTS

Current through 1995 portion of 121st G.A., laws passed and filed through 12-31-95.

O CONST I § 10 RIGHTS OF CRIMINAL DEFENDANTS

Except in cases of impeachment, cases arising in the army and navy, or in the militia when in actual service in time of war or public danger, and cases involving offenses for which the penalty provided is less than imprisonment in the penitentiary, no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury; and the number of persons necessary to constitute such grand jury and the number thereof necessary to concur in finding such indictment shall be determined by law. In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed; but provision may be made by law for the taking of the deposition by the accused or by the state, to be used for or against the accused, of any witness whose attendance can not be had at the trial, always securing to the accused means and the opportunity to be present in person and with counsel at the taking of such deposition, and to examine the witness face to face as fully and in the same manner as if in court. No person shall be compelled, in any criminal case, to be a witness against himself; but his failure to testify may be considered by the court and jury and may be the subject of comment by counsel. No person shall be twice put in jeopardy for the same offense.

A-48

CONSTITUTION OF THE STATE OF OHIO
ARTICLE I. BILL OF RIGHTS

Current through 1995 portion of 121st G.A., laws passed and filed through 12-31-95.

O CONST I § 16 REDRESS FOR INJURY; DUE PROCESS

All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Suits may be brought against the state, in such courts and in such manner, as may be provided by law.

A-49

BALDWIN'S OHIO REVISED CODE ANNOTATED
CONSTITUTION OF THE STATE OF OHIO
ARTICLE I. BILL OF RIGHTS

Current through 1995 portion of 121st G.A., laws passed and
filed through 12-31-95.

O CONST I § 20 POWERS NOT ENUMERATED RETAINED BY PEOPLE

This enumeration of rights shall not be construed to impair or deny
others retained by the people; and all powers, not herein delegated, remain with
the people.

A-50

Baldwin's Ohio Revised Code Annotated
Rules of Civil Procedure
**Civ R 56 Summary judgment**

**(A) For party seeking affirmative relief**
A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part of the claim, counterclaim, cross-claim, or declaratory judgment action. A party may move for summary judgment at any time after the expiration of the time permitted under these rules for a responsive motion or pleading by the adverse party, or after service of a motion for summary judgment by the adverse party. If the action has been set for pretrial or trial, a motion for summary judgment may be made only with leave of court.

**(B) For defending party**
A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part of the claim, counterclaim, cross-claim, or declaratory judgment action. If the action has been set for pretrial or trial, a motion for summary judgment may be made only with leave of court.

**(C) Motion and proceedings**
The motion shall be served at least fourteen days before the time fixed for hearing. The adverse party, prior to the day of hearing, may serve and file opposing affidavits. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**(D) Case not fully adjudicated upon motion**
If on motion under this rule summary judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court in deciding the motion, shall examine the evidence or stipulation properly before it, and shall if practicable, ascertain what material facts exist without controversy and what material facts are actually and in good faith controverted. The court shall thereupon make an order on its journal specifying the facts that are without controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

**(E) Form of affidavits; further testimony; defense required**
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

**(F) When affidavits unavailable**
Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

**(G) Affidavits made in bad faith**

A-51

Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

A-52

*OH Sup. R. 20*

PAGE'S OHIO REVISED CODE ANNOTATED
Copyright (c) 2003 Anderson Publishing Company
*** THIS DOCUMENT REFLECTS CHANGES RECEIVED THROUGH JUNE 17, 2003 ***
RULES OF SUPERINTENDENCE FOR THE COURTS OF OHIO

OH Sup. R. 20 (Anderson 2003)
SupR 20. Appointment of Counsel for Indigent Defendants in Capital Cases

-- Courts of Common Pleas.

I. Applicability.

(A) This rule shall apply in cases where an indigent defendant has been charged with or convicted of an offense for which the death penalty can be or has been imposed.

(B) The provisions for the appointment of counsel set forth in this rule apply only in cases where the defendant is indigent, counsel is not privately retained by or for the defendant, and the death penalty can be or has been imposed upon the defendant. This rule does not apply in the case of a juvenile defendant who is indicted for a "capital offense" but because of his or her age cannot be sentenced to death.

(C) If the defendant is entitled to the appointment of counsel, the court shall appoint two attorneys certified pursuant to this rule. If the defendant engages one privately retained attorney, the court shall not appoint a second attorney pursuant to this rule.

(D) The provisions of this rule apply in addition to the reporting requirements created by section 2929.021 of the Revised Code.

II. Qualifications for certification as counsel for indigent defendants in capital cases.

(A) Trial counsel.

(1) At least two attorneys shall be appointed by the court to represent an indigent defendant charged with an offense for which the death penalty may be imposed. At least one of the appointed counsel must maintain a law office in Ohio and have experience in Ohio criminal trial practice.

The counsel appointed shall be designated "lead counsel" and "co-counsel."

(2) Lead counsel shall satisfy all of the following:

(a) Be admitted to the practice of law in Ohio or admitted to practice

pro hac vice

;

(b) Have at least five years of civil or criminal litigation or appellate experience;

(c) Have specialized training, as approved by the committee, on subjects that will assist counsel in the defense of persons accused of capital crimes in the two-year period prior to making application;

(d) Have at least one of the following qualifications:

(i) Experience as "lead counsel" in the jury trial of at least one capital case;

(ii) Experience as "co-counsel" in the trial of at least two capital cases;

(e) Have at least one of the following qualifications:

(i) Experience as "lead counsel" in the jury trial of at least one murder or aggravated murder case;

(ii) Experience as "lead counsel" in ten or more criminal or civil jury trials, at least three of which were felony jury trials;

(iii) Experience as "lead counsel" in either: three murder or aggravated murder jury trials; one murder or aggravated murder jury trial and three felony jury trials; or three aggravated or first- or second-degree felony jury trials in a court of common pleas in the three years prior to making application.

(3) Co-counsel shall satisfy all of the following:

(a) Be admitted to the practice of law in Ohio or admitted to practice

A-53

pro hac vice

;

(b) Have at least three years of civil or criminal litigation or appellate experience;

(c) Have specialized training, as approved by the committee, on subjects that will assist counsel in the defense of persons accused of capital crimes in the two years prior to making application;

(d) Have at least one of the following qualifications:

(i) Experience as "co-counsel" in one murder or aggravated murder trial;

(ii) Experience as "lead counsel" in one first-degree felony jury trial;

(iii) Experience as "lead" or "co-counsel" in at least two felony jury or civil jury trials in a court of common pleas in the three years prior to making application.

(4) As used in this rule, "trial" means a case concluded with a judgment of acquittal under Criminal Rule 29 or submission to the trial court or jury for decision and verdict.

(B) Appellate counsel.

(1) At least two attorneys shall be appointed by the court to appeal cases where the trial court has imposed the death penalty on an indigent defendant. At least one of the appointed counsel shall maintain a law office in Ohio.

(2) Appellate counsel shall satisfy all of the following:

(a) Be admitted to the practice of law in Ohio or admitted to practice

pro hac vice

;

(b) Have at least three years of civil or criminal litigation or appellate experience;

(c) Have specialized training, as approved by the Committee, on subjects that will assist counsel in the defense of persons accused of capital crimes in the two years prior to making application;

(d) Have specialized training, as approved by the Committee, on subjects that will assist counsel in the appeal of cases in which the death penalty was imposed in the two years prior to making application;

(e) Have experience as counsel in the appeal of at least three felony convictions in the three years prior to making application.

(C) Exceptional circumstances.

If an attorney does not satisfy the requirements of divisions (A)(2), (A)(3), or (B)(2) of this section, the attorney may be certified as lead counsel, co-counsel, or appellate counsel if it can be demonstrated to the satisfaction of the Committee that competent representation will be provided to the defendant. In so determining, the Committee may consider the following:

(a) Specialized training on subjects that will assist counsel in the trial or appeal of cases in which the death penalty may be or was imposed;

(b) Experience in the trial or appeal of criminal or civil cases;

(c) Experience in the investigation, preparation, and litigation of capital cases that were resolved prior to trial;

(d) Any other relevant considerations.

(D) Savings clause.

Attorneys certified by the Committee prior to January 1, 1991 may maintain their certification by complying with the requirements of Section VII of this rule, notwithstanding the requirements of Sections II(A)(2)(d), II(A)(3)(b) and (d), and II(B)(2)(d) as amended effective January 1, 1991.

III. Committee on the appointment of counsel for indigent defendants in capital cases.

(A) There shall be a Committee on the Appointment of Counsel for Indigent Defendants in Capital Cases.

(B) Appointment of Committee members.

The Committee shall be composed of five attorneys. Three members shall be appointed by a majority vote of all members of the Supreme Court of Ohio; one shall be appointed by the Ohio State Bar Association; and one shall be appointed by the Ohio Public

A-54

Defender Commission.

(C) Eligibility for appointment to the Committee.

Each member of the Committee shall satisfy all of the following qualifications:

(1) Be admitted to the practice of law in Ohio;

(2) Have represented criminal defendants for not less than five years;

(3) Demonstrate a knowledge of the law and practice of capital cases;

(4) Currently not serving as a prosecuting attorney, city director of law, village solicitor, or similar officer or their assistant or employee, or an employee of any court.

(D) Overall composition.

The overall composition of the Committee shall meet both of the following criteria:

(1) No more than two members shall reside in the same county;

(2) No more than one shall be a judge.

(E) Terms; vacancies.

The term of office for each member shall be five years, each term beginning on the first day of January. Members shall be eligible for reappointment. Vacancies shall be filled in the same manner as original appointments. Any member appointed to fill a vacancy occurring prior to the expiration of a term shall hold office for the remainder of the term.

(F) Election of chair.

The Committee shall elect a chair and such other officers as are necessary. The officers shall serve for two years and may be reelected to additional terms.

(G) Powers and duties of the Committee.

The Committee shall do all of the following:

(1) Prepare and notify attorneys of procedures for applying for certification to be appointed counsel for indigent defendants in capital cases;

(2) Periodically provide all common pleas and

appellate court judges and the Ohio Public Defender with a list of all attorneys who are certified to be appointed counsel for indigent capital defendants;

(3) Periodically review the list of certified counsel, all court appointments given to attorneys in capital cases, and the result and status of those cases;

(4) Develop criteria and procedures for retention of certification including, but not limited to, mandatory continuing legal education on the defense and appeal of capital cases;

(5) Expand, reduce, or otherwise modify the list of certified attorneys as appropriate and necessary in accord with division (G)(4) of this section;

(6) Review and approve specialized training programs on subjects that will assist counsel in the defense and appeal of capital cases;

(7) Recommend to the Supreme Court of Ohio amendments to this rule or any other rule or statute relative to the defense or appeal of capital cases.

(H) Meetings.

The Committee shall meet at the call of the chair, at the request of a majority of the members, or at the request of the Supreme Court of Ohio. A quorum consists of three members. A majority of the Committee is necessary for the Committee to elect a chair and take any other action.

(I) Compensation.

All members of the Committee shall receive equal compensation in an amount to be established by the Supreme Court of Ohio.

IV. Procedures for court appointments of counsel.

(A) Appointing counsel.

Only counsel who have been certified by the Committee shall be appointed to represent indigent defendants charged with or convicted of an offense for which the death penalty may be or has been imposed. Each court may adopt local rules establishing qualifications in addition to and not in conflict with those established by this rule. Appointments of counsel for these cases should be distributed as widely as possible among the certified attorneys in the jurisdiction of the appointing court.

(B) Workload of appointed counsel.

A-55

trial seminar should include, but is not limited to, specialized training in the following areas:

(a) An overview of current developments in death penalty litigation;

(b) Death penalty voir dire;

(c) Trial phase presentation;

(d) Use of experts in the trial and penalty phase;

(e) Investigation, preparation, and presentation of mitigation;

(f) Preservation of the record;

(g) Counsel's relationship with the accused and the accused's family;

(h) Death penalty appellate and post-conviction litigation in state and federal courts.

(B) Programs for specialized training in the appeal of cases in which the death penalty has been imposed.

(1) To be approved by the Committee, a death penalty appeals seminar shall include instruction devoted to the appeal of a case in which the death penalty has been imposed.

(2) The curriculum for an approved death penalty appeal seminar should include, but is not limited to, specialized training in the following areas:

(a) An overview of current developments in death penalty law;

(b) Completion, correction, and supplementation of the record on appeal;

(c) Reviewing the record for unique death penalty issues;

(d) Motion practice for death penalty appeals;

(e) Preservation and presentation of constitutional issues;

(f) Preparing and presenting oral argument;

(g) Unique aspects of death penalty practice in the courts of appeals, the Supreme Court of Ohio, and the United States Supreme Court;

(h) The relationship of counsel with the appellant and

the appellant's family during the course of the appeals.

(i) Procedure and practice in collateral litigation, extraordinary remedies, state post-conviction litigation, and federal habeas corpus litigation.

(C) The sponsor of a death penalty seminar shall apply for approval from the Committee at least sixty days before the date of the proposed seminar. An application for approval shall include the curriculum for the seminar and include biographical information of each member of the seminar faculty.

(D) The Committee shall obtain a list of attendees from the Supreme Court Commission on Continuing Legal Education that shall be used to verify attendance at and grant Sup. R. 20 credit for each Committee-approved seminar. Credit for purposes of this rule shall be granted to instructors using the same ratio provided in Rule X of the Supreme Court Rules for the Government of the Bar of Ohio.

(E) The Committee may accredit programs other than those approved pursuant to divisions (A) and (B) of this section. To receive accreditation, the program shall include instructions in all areas set forth in divisions (A) and (B) of this section. Application for accreditation of an in-state program may be made by the program sponsor or a program attendee and shall be made prior to the program. Application for accreditation of an out-of-state program may be submitted by the program sponsor or a program attendee and may be made prior to or after completion of the program. The request for credit from a program sponsor shall include the program curriculum and individual faculty biographical information. The request for credit from a program attendee shall include all of the following:

(1) Program curriculum;

(2) Individual faculty biographical information;

(3) A written breakdown of sessions attended and credit hours received if the seminar held concurrent sessions;

(4) Proof of attendance.

VII. Standards for retention of Sup. R. 20 certification.

(A)(1) To retain certification, an attorney who has previously been certified by the Committee shall complete at least twelve hours of Committee-

A-57

approved specialized training every two years. To maintain certification as lead counsel or co-counsel, at least six of the twelve hours shall be devoted to instruction in the trial of capital cases. To maintain certification as appellate counsel, at least six of the twelve hours shall be devoted to instruction in the appeal of capital cases.

(2) On the first day of July of each year, the Committee shall review the list of certified counsel and revoke the certification of any attorney who has not complied with the specialized training requirements of this rule. An attorney whose certification has been revoked shall not be eligible to accept future appointment as counsel for an indigent defendant charged with or convicted of an offense for which the death penalty can be or has been imposed.

(B) The Committee may accredit an out-of-state program that provides specialized instruction devoted to the investigation, preparation, and presentation of a death penalty trial or specialized instruction devoted to the appeal of a case in which the defendant received the death penalty, or both. Requests for credit for an out-of-state program may be submitted by the seminar sponsor or a seminar attendee. The request for credit from a program sponsor shall include the program curriculum and individual faculty biographical information. The request for credit from a program attendee shall include all of the following:

(1) Program curriculum;

(2) Individual faculty biographical information;

(3) A written breakdown of sessions attended and credit hours received if the seminar held concurrent sessions;

(4) Proof of attendance.

(C) An attorney who has previously been certified but whose certification has been revoked for failure to comply with the specialized training requirements of this rule must, in order to regain certification, submit a new application that demonstrates that the attorney has completed twelve hours of Committee-approved specialized training in the two year period prior to making application for recertification.

VIII. Reserved.

IX. Effective date.

(A) The effective date of this rule shall be October 1,

1987.

(B) The amendments to Section II(A)(5)(b), Section III(B)(2), and to the Subcommittee Comments following Section II of this Rule adopted by the Supreme Court of Ohio on June 28, 1989, shall be effective on July 1, 1989.

(C) The amendments to Sections I(A)(2), I(A)(3), I(B), and II, and the addition of Sections I(C) and IV, adopted by the Supreme Court of Ohio on December 11, 1990, shall be effective on January 1, 1991.

(D) The amendments to this rule adopted by the Supreme Court of Ohio on April 19, 1995, shall take effect on July 1, 1995.

A-58

Code of Jud. Conduct Canon 3

Baldwin's Ohio Revised Code Annotated
Code of Judicial Conduct

**Canon 3 A judge shall perform the duties of judicial office impartially and diligently**

**A. Judicial duties in general**
The judicial duties of a judge take precedence over all of the judge's other activities. The judge's judicial duties include all the duties of office prescribed by law. In the performance of these duties, the following standards apply.

**B. Adjudicative responsibilities**
(1) A judge shall hear and decide matters assigned to the judge except those in which disqualification is required.
(2) A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.
(3) A judge shall require order and decorum in proceedings before the judge.
(4) A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials, and others subject to the judge's direction and control.

(5) A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, gender, religion, national origin, disability, age, sexual orientation, or socioeconomic status, and shall not permit staff, court officials, and others subject to the judge's direction and control to do so.
(6) A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based upon race, gender, religion, national origin, disability, age, sexual orientation, or socioeconomic status, against parties, witnesses, counsel or others. Division (B)(6) of this canon does not preclude legitimate advocacy when race, gender, religion, national origin, disability, age, sexual orientation, or socioeconomic status, or other similar factors, are issues in the proceeding.
(7) A judge shall not initiate, receive, permit, or consider communications made to the judge outside the presence of the parties or their representatives concerning a pending or impending proceeding except:

(a) Where circumstances require, *ex parte* communications for scheduling, administrative purposes, or emergencies that do not address substantive matters or issues on the merits are permitted if the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the *ex parte* communication.
(b) A judge may obtain the advice of a disinterested expert on the law applicable to the proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice and affords the parties reasonable opportunity to respond.
(c) A judge may consult with court personnel whose function is to aid the judge in carrying out the judge's adjudicative responsibilities or with other judges.
(d) As authorized by law.
(8) A judge shall dispose of all judicial matters promptly, efficiently, and fairly and comply with guidelines set forth in the Rules of Superintendence for the Courts of Ohio.
(9) While a proceeding is pending or impending in any court, a judge shall not make any public comment that might reasonably be expected to affect its outcome or impair its fairness or make any nonpublic comment that might substantially interfere with a fair trial or hearing. The judge shall require similar abstention on the part of court personnel subject to the judge's direction and control. Division (B)(9) of this canon does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court. Division (B)(9) of this canon does not apply to proceedings in which the judge is a litigant in a personal capacity.
(10) A judge shall not commend or criticize jurors for their verdict other than in a court order or opinion in a proceeding.
(11)(a) A judge shall not knowingly disclose or cause to be disclosed, without appropriate authorization, information regarding the probable or actual decision in a case or legal proceeding pending before a court, including the vote of a justice, judge, or court in a case pending before the Supreme Court, a court of appeals, or a panel of judges of a trial court, prior to the announcement of the decision by the court or journalization of an opinion, entry, or other document reflecting that decision under either of the following circumstances:

A-59

(i) The probable or actual decision is confidential because of statutory or rule provisions;
(ii) The probable or actual decision clearly has been designated to the judge as confidential when confidentiality is warranted because of the status of the proceedings or the circumstances under which the information was received and preserving confidentiality is necessary to the proper conduct of court business.
(b) Nothing in division (B)(11)(a) of this canon shall prohibit the disclosure of any of the following:
(i) A decision that has been announced on the record or in open court, but that has not been journalized in a written opinion, entry, or other document;
(ii) Information regarding the probable or actual decision in a pending case or legal proceeding to a judge or employee of the court in which the matter is pending;
(iii) Other information that is a matter of public record or that may be disclosed pursuant to law.

(c) The imposition of discipline upon a judge for violation of division (B)(11)(a) of this canon shall not preclude prosecution for a violation of any applicable provision of the Revised Code, including, but not limited to, division (B) of section 102.03 of the Revised Code.

## C. Administrative responsibilities

(1) A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business.
(2) A judge shall require staff, court officials, and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.
(3) A judge with supervisory authority for the judicial performance of other judges shall take reasonable measures to assure the prompt disposition of matters before all judges and the proper performance of their other judicial responsibilities.
(4) A judge shall not make unnecessary appointments. A judge shall exercise the power of appointment impartially and on the basis of merit. A judge shall avoid nepotism and favoritism. A judge shall not approve compensation of appointees beyond the fair value of services rendered.

## D. Disciplinary responsibilities

(1) A judge who has knowledge that another judge has committed a violation of this Code shall report the violation to a tribunal or other authority empowered to investigate or act upon the violation.

(2) A judge who has knowledge that a lawyer has committed a violation of the Code of Professional Responsibility shall report the violation to a tribunal or other authority empowered to investigate or act upon the violation.
(3) A judge having knowledge of a violation by another judge or a lawyer shall, upon request, fully reveal the violation to a tribunal or other authority empowered to investigate or act upon the violation.

## E. Disqualification

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(b) The judge served as a lawyer in the matter in controversy, a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning the matter;
(c) The judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than a *de minimis* interest that could be substantially affected by the proceeding;
(d) The judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
(i) Is a party to the proceeding, or an officer, director, or trustee of a party;
(ii) Is acting as a lawyer in the proceeding;
(iii) Has acted as a judge in the proceeding;
(iv) Is known by the judge to have an economic interest that could be substantially affected by the proceeding;
(v) Is to the judge's knowledge likely to be a material witness in the proceeding.

(2) A judge shall keep informed about the judge's personal fiduciary and economic interests and make a reasonable effort to keep informed about the personal economic interests of the judge's spouse and minor children residing in the judge's household.

## F. Remittal of disqualification

If, following disclosure of any basis for disqualification other than personal bias or prejudice concerning a party, the parties and lawyers, without participation by the judge, jointly request that the

A-60

judge should remit his or her disqualification, the judge may approve and participate in the proceeding. The request and approval shall be incorporated in the record of the proceeding.

**G. Disqualification--justices of the supreme court**

(1) A justice shall disqualify himself or herself in a proceeding in which the justice's impartiality might reasonably be questioned, including but not limited to instances where:

(a) the justice has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the justice served as a lawyer in the matter in controversy, or a lawyer with whom the justice previously practiced law served during such association as a lawyer concerning the matter, or the justice or such lawyer has been a material witness concerning it;

(c)(i) For merit cases, the justice knows that, individually or as a fiduciary, the justice or the justice's spouse or minor child residing in the justice's household, has an economic interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

(ii) For miscellaneous motions, motions to certify, or similar matters, the justice knows that, individually or as a fiduciary, the justice or the justice's spouse or minor child residing in the justice's household, has a substantial economic interest in the subject matter in controversy or in a party to the proceeding that could be substantially affected by the outcome of the proceeding.

(d) The justice or the justice's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) is acting as a lawyer in the proceeding;

(iii) is known by the justice to have an interest that could be substantially affected by the outcome of the proceeding;

(iv) is to the justice's knowledge likely to be a material witness in the proceeding.

(2) A justice should keep informed about the justice's personal and fiduciary economic interests, and make a reasonable effort to keep informed about the personal economic interests of the justice's spouse and minor children residing in the justice's household.

**H. Remittal of disqualification--justices of the supreme court**

A justice disqualified by the terms of Canon 3(G)(1)(c) or Canon 3(G)(1)(d) may, instead of withdrawing from the proceeding, disclose on the record the basis of disqualification. If, based on such disclosure, the parties and lawyers, independently of the justice's participation, all agree in writing that the justice's relationship is immaterial or that the justice's disqualification should be waived, the justice is no longer disqualified, and may participate in the proceeding. The agreement, signed by all parties and lawyers, shall be incorporated in the record of the proceeding.

Code of Jud. Conduct Canon 3

A-61

R.C. § 2313.07

Baldwin's Ohio Revised Code Annotated
Title XXIII. Courts--Common Pleas
Chapter 2313. Commissioners of Jurors
Commissioners of Jurors

## 02313.07 Construction of jury wheel; data processing equipment

The commissioners of jurors shall not deposit in the jury wheel, in the automation data processing equipment, or other automated data processing information storage device, for service for the ensuing year the names of jurors who have served their legal terms as jurors within the next preceding jury year.

The jury wheel shall be constructed with an aperture large enough only to admit conveniently the hand of the person by whom the ballots are to be drawn, and the aperture shall be provided with a cover so arranged as to be securely sealed when closed. The jury wheel shall be cylindrical in form, and shall be provided with some apparatus by which the ballots can be thoroughly mixed without exposing them, and its form and construction shall be approved by the court of common pleas and may be changed with the approval of the court.

Except as provided in division (C) of this section, the automation data processing equipment, if used, shall consist of the following:

(A) A metal storage drawer for storage of the automation data processing punch card ballots. Such drawer shall be equipped with a double-nose key lock and must be securely sealed by the commissioners of jurors when closed. The keys shall be distributed to the commissioners of jurors. No commissioner of jurors shall possess more than one such key.

(B) Automation data processing equipment which will thoroughly intermix the data processing punch card ballots, without exposing them, when they are inserted into such equipment. In addition, such equipment must then be capable of accepting a designated key number and thereby selecting those ballots, according to the order they are ejected from the equipment, represented by such key number or the multiples thereof. The designation of such key number shall be made by the person or court designating the number of jurors to be drawn in accordance with sections 2313.19 and 2313.24 of the Revised Code. The form and construction of such automation data processing equipment shall be approved by the court of common pleas and may be changed with the approval of such court.

(C) If the court approves the use of automated data processing information storage device, information retrieval system, visual display apparatus, or other similar equipment described in or authorized by division (C) of section 2313.21 of the Revised Code, the process for the selection of names and compiling of lists shall conform as far as practicable to sections 2313.08 and 2313.21 of the Revised Code.

R.C. § 2313.07

A-62

R.C. § 2313.08

Baldwin's Ohio Revised Code Annotated
Title XXIII. Courts--Common Pleas
Chapter 2313. Commissioners of Jurors
Summoning and Excuse of Jurors

### 2313.08 Annual jury list

(A) The jury year in each county shall begin on the first Monday of August of each year, provided the court of common pleas may designate otherwise. A new and complete jury list shall be made up annually by the commissioners of jurors, and shall be certified by them and filed in their office before the beginning of each jury year. The names shall be entered in a suitable book or record, to be known as the "annual jury list," shall be arranged alphabetically so far as practicable and under convenient divisions by precincts, districts, and townships, and shall be properly indexed. With each name shall be recorded the occupation, place of business, place of residence, duration of residence in this state, citizenship status, date of birth, and social security number of the person, as nearly as they can be ascertained. A duplicate of the list shall be certified by the commissioners and filed in the office of the clerk of the court of common pleas. The commissioners may, by order of the court, add to the list, or enter on a supplementary list, the names of persons who shall thereafter be discovered to be qualified to serve as jurors.

(B) In the selection of names for the annual jury list, the commissioners may select all names from the list of electors certified by the board of elections pursuant to section 2313.06 of the Revised Code or may select all names from the list of qualified driver licensees certified by the registrar of motor vehicles pursuant to section 2313.06 of the Revised Code and from the list of electors certified by the board of elections pursuant to section 2313.06 of the Revised Code.

In the selection of the names for the annual jury list, unless otherwise ordered by the court, the commissioners shall assign a consecutive number to each name, starting with one, and shall use a key number that shall be designated by the court. The commissioners shall select the name of each prospective juror, starting with the name that corresponds to a randomly selected number that may range from the number one to the key number, and proceeding accordingly in the numerical sequence of the key number so designated, until the required number of prospective jurors has been selected.

(C) Automation data processing procedures and visual display apparatus may be utilized in the selection of the names for the annual jury list, and in the actual compilation of the list.

R.C. § 2313.08

A-63

R.C. § 2313.35

Baldwin's Ohio Revised Code Annotated
Title XXIII. Courts--Common Pleas
Chapter 2313. Commissioners of Jurors
General Provisions

**2313.35 Destroying of ballots**

When the annual jury list has been prepared and filed as prescribed in section 2313.08 of the Revised Code, the ballots for jurors remaining in the jury wheel or in the automation data processing storage drawer may be destroyed by the commissioners of jurors, on the order of the judges of such county.

The ballots shall be either uniform slips of paper or automation data processing punch cards, and the name of each person on the jury list who is qualified and liable for jury duty, with his residence, shall be included on an individual ballot. The ballots so prepared shall be deposited by the commissioners in the jury wheel kept by the commissioners for that purpose, or in the automation data processing storage drawer if the automation data processing equipment described in divisions (A) and (B) of section 2313.07 of the Revised Code is utilized, and they shall place their seal or lock upon the same.

When other automated data processing equipment and procedures are utilized, the method for disposing of names of persons considered for but not entered upon the annual jury list shall be specified by the court.

R.C. § 2313.35

A-64

R.C. § 2929.03

Baldwin's Ohio Revised Code Annotated
Title XXIX. Crimes--Procedure
Chapter 2929. Penalties and Sentencing
Penalties for Murder

**2929.03 Imposing sentence for a capital offense; procedures; proof of relevant factors; alternative sentences**

(A) If the indictment or count in the indictment charging aggravated murder does not contain one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge of aggravated murder, the trial court shall impose sentence on the offender as follows:

(1) Except as provided in division (A)(2) of this section, the trial court shall impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment on the offender.

(2) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, the trial court shall impose upon the offender a sentence of life imprisonment without parole that shall be served pursuant to section 2971.03 of the Revised Code.

(B) If the indictment or count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, the verdict shall separately state whether the accused is found guilty or not guilty of the principal charge and, if guilty of the principal charge, whether the offender was eighteen years of age or older at the time of the commission of the offense, if the matter of age was raised by the offender pursuant to section 2929.023 of the Revised Code, and whether the offender is guilty or not guilty of each specification. The jury shall be instructed on its duties in this regard. The instruction to the jury shall include an instruction that a specification shall be proved beyond a reasonable doubt in order to support a guilty verdict on the specification, but the instruction shall not mention the penalty that may be the consequence of a guilty or not guilty verdict on any charge or specification.

(C)(1) If the indictment or count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge but not guilty of each of the specifications, and regardless of whether the offender raised the matter of age pursuant to section 2929.023 of the Revised Code, the trial court shall impose sentence on the offender as follows:

(a) Except as provided in division (C)(1)(b) of this section, the trial court shall impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment on the offender.

(b) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, the trial court shall impose upon the offender a sentence of life imprisonment without parole that shall be served pursuant to section 2971.03 of the Revised Code.

(2)(a) If the indictment or count in the indictment contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code and if the offender is found guilty of both the charge and one or more of the specifications, the penalty to be imposed on the offender shall be one of the following:

(i) Except as provided in division (C)(2)(a)(ii) of this section, the penalty to be imposed on the offender shall be death, life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment.

(ii) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, the penalty to be imposed on the offender shall be death or life imprisonment without parole that shall be served pursuant to section 2971.03 of the Revised Code.

(b) A penalty imposed pursuant to division (C)(2)(a)(i) or (ii) of this section shall be determined pursuant to divisions (D) and (E) of this section and shall be determined by one of the following:

A-65

(i) By the panel of three judges that tried the offender upon the offender's waiver of the right to trial by jury;

(ii) By the trial jury and the trial judge, if the offender was tried by jury.

(D)(1) Death may not be imposed as a penalty for aggravated murder if the offender raised the matter of age at trial pursuant to section 2929.023 of the Revised Code and was not found at trial to have been eighteen years of age or older at the time of the commission of the offense. When death may be imposed as a penalty for aggravated murder, the court shall proceed under this division. When death may be imposed as a penalty, the court, upon the request of the defendant, shall require a pre-sentence investigation to be made and, upon the request of the defendant, shall require a mental examination to be made, and shall require reports of the investigation and of any mental examination submitted to the court, pursuant to section 2947.06 of the Revised Code. No statement made or information provided by a defendant in a mental examination or proceeding conducted pursuant to this division shall be disclosed to any person, except as provided in this division, or be used in evidence against the defendant on the issue of guilt in any retrial. A pre-sentence investigation or mental examination shall not be made except upon request of the defendant. Copies of any reports prepared under this division shall be furnished to the court, to the trial jury if the offender was tried by a jury, to the prosecutor, and to the offender or the offender's counsel for use under this division. The court, and the trial jury if the offender was tried by a jury, shall consider any report prepared pursuant to this division and furnished to it and any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing or to any factors in mitigation of the imposition of the sentence of death, shall hear testimony and other evidence that is relevant to the nature and circumstances of the aggravating circumstances the offender was found guilty of committing, the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, and any other factors in mitigation of the imposition of the sentence of death, and shall hear the statement, if any, of the offender, and the arguments, if any, of counsel for the defense and prosecution, that are relevant to the penalty that should be imposed on the offender. The defendant shall be given great latitude in the presentation of evidence of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code and of any other factors in mitigation of the imposition of the sentence of death. If the offender chooses to make a statement, the

offender is subject to cross-examination only if the offender consents to make the statement under oath or affirmation.

The defendant shall have the burden of going forward with the evidence of any factors in mitigation of the imposition of the sentence of death. The prosecution shall have the burden of proving, by proof beyond a reasonable doubt, that the aggravating circumstances the defendant was found guilty of committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death.

(2) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the trial jury, if the offender was tried by a jury, shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case. If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to one of the following:

(a) Except as provided in division (D)(2)(b) of this section, to life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment;

(b) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, to life imprisonment without parole.

If the trial jury recommends that the offender be sentenced to life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment, the court shall impose the sentence recommended by the jury upon the offender. If the sentence is a sentence of life imprisonment without parole imposed under division (D)(2)(b) of this section, the sentence shall be served pursuant to section 2971.03 of the Revised Code. If the trial jury recommends that the sentence of death be imposed upon the offender, the court shall proceed to impose sentence pursuant to division (D)(3) of this section.

A-66

(3) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted to the court pursuant to division (D)(1) of this section, if, after receiving pursuant to division (D)(2) of this section the trial jury's recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt, or if the panel of three judges unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender. Absent such a finding by the court or panel, the court or the panel shall impose one of the following sentences on the offender:

(a) Except as provided in division (D)(3)(b) of this section, one of the following:

(i) Life imprisonment without parole;
(ii) Life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;
(iii) Life imprisonment with parole eligibility after serving thirty full years of imprisonment.
(b) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, life imprisonment without parole that shall be served pursuant to section 2971.03 of the Revised Code.
(E) If the offender raised the matter of age at trial pursuant to section 2929.023 of the Revised Code, was convicted of aggravated murder and one or more specifications of an aggravating circumstance listed in division (A) of section 2929.04 of the Revised Code, and was not found at trial to have been eighteen years of age or older at the time of the commission of the offense, the court or the panel of three judges shall not impose a sentence of death on the offender. Instead, the court or panel shall impose one of the following sentences on the offender:
(1) Except as provided in division (E)(2) of this section, one of the following:
(a) Life imprisonment without parole;
(b) Life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;
(c) Life imprisonment with parole eligibility after serving thirty full years of imprisonment.
(2) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, life imprisonment without parole that shall be served pursuant to section 2971.03 of the Revised Code.
(F) The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. The court or panel, when it imposes life imprisonment under division (D) of this section, shall state in a separate opinion its specific findings of which of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code it found to exist, what other mitigating factors it found to exist, what aggravating circumstances the offender was found guilty of committing, and why it could not find that these aggravating circumstances were sufficient to outweigh the mitigating factors. For cases in which a sentence of death is imposed for an offense committed before January 1, 1995, the court or panel shall file the opinion required to be prepared by this division with the clerk of the appropriate court of appeals and with the clerk of the supreme court within fifteen days after the court or panel imposes sentence. For cases in which a sentence of death is imposed for an offense committed on or after January 1, 1995, the court or panel shall file the opinion required to be prepared by this division with the clerk of the supreme court within fifteen days after the court or panel imposes sentence. The judgment in a case in which a sentencing hearing is held pursuant to this section is not final until the opinion is filed.
(G)(1) Whenever the court or a panel of three judges imposes a sentence of death for an offense committed before January 1, 1995, the clerk of the court in which the judgment is rendered shall deliver the entire record in the case to the appellate court.
(2) Whenever the court or a panel of three judges imposes a sentence of death for an offense committed on or after January 1, 1995, the clerk of the court in which the judgment is rendered shall deliver the entire record in the case to the supreme court.

R.C. § 2929.03

A-67

R.C. § 2939.02

Baldwin's Ohio Revised Code Annotated
Title XXIX. Crimes—Procedure
Chapter 2939. Grand Juries
Grand Jurors

**2939.02 Selection of grand jury**

Grand juries shall consist of fifteen persons who satisfy the qualifications of a juror specified in section 2313.42 of the Revised Code. Persons to serve as grand jurors in the court of common pleas of each county shall be selected from the persons whose names are contained in the annual jury list and from the ballots deposited in the jury wheel, or in the automation data processing storage drawer, or from the names contained in an automated data processing information storage device as prescribed by sections 2313.07, 2313.08, and 2313.35 of the Revised Code.

At the time of the selection of the persons who are to constitute the grand jury, the commissioners of jurors shall draw from the jury wheel, or draw by utilizing the automation data processing equipment and procedures described in section 2313.07 of the Revised Code, ballots containing the names of not less than twenty-five persons. The first fifteen persons whose names are drawn shall constitute the grand jury, if they can be located and served by the sheriff, and if they are not excused by the court or a judge of the court. If any of the first fifteen persons whose names are so drawn are not located or are unable to serve and are for that reason excused by the court or by a judge of the court, whose duty it is to supervise the impaneling of the grand jury, the judge shall then designate the person whose name next appears on the list of persons drawn, to serve in the place of the person not found or excused and shall so continue to substitute the names of the persons drawn in the order in which they were drawn, to fill all vacancies resulting from persons not being found or having been excused by the court or the judge of the court, until the necessary fifteen persons are selected to make up the grand jury. If all of the names appearing on the list of persons drawn are exhausted before the grand jury is complete, the judge shall order the commissioners of jurors to draw such additional names as the judge determines, and shall proceed to fill the vacancies from those names in the order in which they are drawn.

The judge of the court of common pleas may select any person who satisfies the qualifications of a juror and whose name is not included in the annual jury list or on a ballot deposited in the jury wheel or automation data processing storage drawer, or whose name is not contained in an automated data processing information storage device, to preside as foreman of the grand jury, in which event the grand jury shall consist of the foreman so selected and fourteen additional grand jurors selected from the jury wheel or by use of the automation data processing equipment and procedures in the manner provided in this section.

R.C. § 2939.02

A-68

R.C. § 2953.21

Baldwin's Ohio Revised Code Annotated
Title XXIX. Crimes--Procedure
Chapter 2953. Appeals; Other Postconviction Remedies
Postconviction Remedies

### 2953.21 Petition for postconviction relief

(A)(1)(a) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, and any person who has been convicted of a criminal offense that is a felony, who is an inmate, and for whom DNA testing that was performed under sections 2953.71 to 2953.81 of the Revised Code or under section 2953.82 of the Revised Code provided results that establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death, may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
(b) As used in division (A)(1)(a) of this section, "actual innocence" means that, had the results of the DNA testing conducted under sections 2953.71 to 2953.81 of the Revised Code or under section 2953.82 of the Revised Code been presented at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted, or, if the person was sentenced to death, no reasonable factfinder would have found the petitioner guilty of the aggravating circumstance or circumstances the petitioner was found guilty of committing and that is or are the basis of that sentence of death.
(2) Except as otherwise provided in section 2953.23 of the Revised Code, a petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication or, if the direct appeal involves a sentence of death, the date on which the trial transcript is filed in the supreme court. If no appeal is taken, except as otherwise provided in section 2953.23 of the Revised Code, the petition

shall be filed no later than one hundred eighty days after the expiration of the time for filing the appeal.
(3) In a petition filed under division (A) of this section, a person who has been sentenced to death may ask the court to render void or voidable the judgment with respect to the conviction of aggravated murder or the specification of an aggravating circumstance or the sentence of death.
(4) A petitioner shall state in the original or amended petition filed under division (A) of this section all grounds for relief claimed by the petitioner. Except as provided in section 2953.23 of the Revised Code, any ground for relief that is not so stated in the petition is waived.

(5) If the petitioner in a petition filed under division (A) of this section was convicted of or pleaded guilty to a felony, the petition may include a claim that the petitioner was denied the equal protection of the laws in violation of the Ohio Constitution or the United States Constitution because the sentence imposed upon the petitioner for the felony was part of a consistent pattern of disparity in sentencing by the judge who imposed the sentence, with regard to the petitioner's race, gender, ethnic background, or religion. If the supreme court adopts a rule requiring a court of common pleas to maintain information with regard to an offender's race, gender, ethnic background, or religion, the supporting evidence for the petition shall include, but shall not be limited to, a copy of that type of information relative to the petitioner's sentence and copies of that type of information relative to sentences that the same judge imposed upon other persons.
(B) The clerk of the court in which the petition is filed shall docket the petition and bring it promptly to the attention of the court. The clerk of the court in which the petition is filed immediately shall forward a copy of the petition to the prosecuting attorney of that county.

(C) The court shall consider a petition that is timely filed under division (A)(2) of this section even if a direct appeal of the judgment is pending. Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making

A-69

such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. The court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.

(D) Within ten days after the docketing of the petition, or within any further time that the court may fix for good cause shown, the prosecuting attorney shall respond by answer or motion. Within twenty days from the date the issues are raised, either party may move for summary judgment. The right to summary judgment shall appear on the face of the record.

(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending. If the court notifies the parties that it has found grounds for granting relief, either party may request an appellate court in which a direct appeal of the judgment is pending to remand the pending case to the court.

(F) At any time before the answer or motion is filed, the petitioner may amend the petition with or without leave or prejudice to the proceedings. The petitioner may amend the petition with leave of court at any time thereafter.

(G) If the court does not find grounds for granting relief, it shall make and file findings of fact and conclusions of law and shall enter judgment denying relief on the petition. If no direct appeal of the case is pending and the court finds grounds for relief or if a pending direct appeal of the case has been remanded to the court pursuant to a request made pursuant to division (E) of this section and the court finds grounds for granting relief, it shall make and file findings of fact and conclusions of law and shall enter a judgment that vacates and sets aside the judgment in question, and, in the case of a petitioner who is a prisoner in custody, shall discharge or resentence the petitioner or grant a new trial as the court determines appropriate. The court also may make supplementary orders to the relief granted, concerning such matters as rearraignment, retrial, custody, and bail. If the trial court's order granting the petition is reversed on appeal and if the direct appeal of the case has been remanded from an appellate court pursuant to a request under division (E) of this section, the appellate court reversing the order

granting the petition shall notify the appellate court in which the direct appeal of the case was pending at the time of the remand of the reversal and remand of the trial court's order. Upon the reversal and remand of the trial court's order granting the petition, regardless of whether notice is sent or received, the direct appeal of the case that was remanded is reinstated.

(H) Upon the filing of a petition pursuant to division (A) of this section by a person sentenced to death, only the supreme court may stay execution of the sentence of death.

(I)(1) If a person sentenced to death intends to file a petition under this section, the court shall appoint counsel to represent the person upon a finding that the person is indigent and that the person either accepts the appointment of counsel or is unable to make a competent decision whether to accept or reject the appointment of counsel. The court may decline to appoint counsel for the person only upon a finding, after a hearing if necessary, that the person rejects the appointment of counsel and understands the legal consequences of that decision or upon a finding that the person is not indigent.

(2) The court shall not appoint as counsel under division (I)(1) of this section an attorney who represented the petitioner at trial in the case to which the petition relates unless the person and the attorney expressly request the appointment. The court shall appoint as counsel under division (I)(1) of this section only an attorney who is certified under Rule 20 of the Rules of Superintendence for the Courts of Ohio to represent indigent defendants charged with or convicted of an offense for which the death penalty can be or has been imposed. The ineffectiveness or incompetence of counsel during proceedings under this section does not constitute grounds for relief in a proceeding under this section, in an appeal of any action under this section, or in an application to reopen a direct appeal.

(3) Division (I) of this section does not preclude attorneys who represent the state of Ohio from invoking the provisions of 28 U.S.C. 154 with respect to capital cases that were pending in federal habeas corpus proceedings prior to the effective date of this amendment insofar as the petitioners in those cases were represented in proceedings under this section by one or more counsel appointed by the court under this section or section 120.06, 120.16, 120.26, or 120.33 of the Revised Code and those appointed counsel meet the requirements of division (I)(2) of this section.

(J) Subject to the appeal of a sentence for a felony that is authorized by section 2953.08 of the Revised Code, the remedy set forth in this section is the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or

A-70

sentence in a criminal case or to the validity of an adjudication of a child as a delinquent child for the commission of an act that would be a criminal offense if committed by an adult or the validity of a related order of disposition.

R.C. § 2953.21

A-71

Westlaw.

Not Reported in N.E.2d
1996 WL 207676 (Ohio App. 11 Dist.)
(Cite as: 1996 WL 207676 (Ohio App. 11 Dist.))

Page 1

**H**
Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR
REPORTING OF OPINIONS AND WEIGHT OF
LEGAL AUTHORITY. ·

Court of Appeals of Ohio, Eleventh District,
Trumbull County.

STATE of Ohio, Plaintiff-Appellee,
v.
Charles L. LORRAINE, Defendant-Appellant.

No. 95-T-5196

Feb. 23, 1996.

Marc S. Triplett, Bellefontaine, Luigia Tenuta,
Dublin, for defendant-appellant.

Dennis Watkins, Trumbull County Prosecutor,
Patrick F. McCarthy, Assistant County Prosecutor,
Warren, for plaintiff-appellee.

MAHONEY, J.

*1 Appellant, Charles L. Lorraine, appeals the trial
court's decision denying his post-conviction relief
petition brought pursuant to R.C. 2953.21. On
December 9, 1986, appellant was sentenced to
death for the murders of Raymond and Doris
Montgomery. Appellant was also convicted of two
counts of aggravated burglary. On appeal, this
court affirmed the trial court's decision in *State v.
Lorraine* (Aug. 13, 1990), Trumbull App. No. 3838,
unreported. The Supreme Court of Ohio affirmed
these decisions in *State v. Lorraine* (1993), 66 Ohio
St.3d 414.

On September 30, 1994, appellant filed a

post-conviction relief petition in the trial court
claiming twenty-nine violations of his constitutional
rights. Appellee, the State of Ohio, responded to the
application by filing a motion for judgment
pursuant to R.C. 2953.21(C). The court, without
conducting a hearing, denied appellant's petition for
post-conviction relief and filed findings of fact and
conclusions of law on January 5, 1995.

Appellant timely filed a notice of appeal with the
following assignments of error:
"1. The trial court erred in denying appellant an
evidentiary hearing on the claims as raised by his
Section 2953.21 petition for post-conviction
relief."
"2. When denying this petition under Code
Section 2953.21, the trial court erred by failing to
consider the record and by adopting the findings
of fact and conclusions of law submitted by the
State of Ohio. These adopted findings, both
unreasonable and inadequate, further violate
appellant's rights guaranteed by the fifth and
fourteenth amendments to the United States
Constitution."
"3. The trial court erred in its application of the
doctrine of *res judicata* to the claims for relief
raised by appellant."
"4. The trial court erred when it granted the state's
motion for summary judgment by failing to
adhere to Civil Rule 56 when considering the
constitutional violations stated in each claim of
this petition for post-conviction relief under
Section 2953.21 of the code."
"5. The trial court erred when it denied appellant
the opportunity for discovery proceedings that are
necessary to support his claims of constitutional
violations as set forth in this petition for
post-conviction relief under Section 2953.21 of
the code."
"6. The trial court erred in denying appellant's
claims of ineffective assistance of counsel."
"7. The trial court erred by its 'standardized'
dismissal of appellant's Section 2953.21 petition
for relief from a capital conviction, denying the
appellant due process and equal protection under
law."

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

A-72

http://print.westlaw.com/delivery.html?dest=atp&dataid=B00558000000350800004988121BB... 9/13/04

Not Reported in N.E.2d                                                    Page 2
1996 WL 207676 (Ohio App. 11 Dist.)
(Cite as: 1996 WL 207676 (Ohio App. 11 Dist.))

In the first assignment of error, appellant contends that the trial court erred in denying an evidentiary hearing on the claims he raised in his post-conviction relief petition.

R.C. 2953.21 provides, in relevant part:
"(C) Before granting a hearing, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * *
*2 "(D) Within ten days after the docketing of the petition, * * * the prosecuting attorney shall respond by answer or motion.* * *
"(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues * * *."

Thus, it is clear that the court is permitted to dispose of a post-conviction relief petition without holding a hearing. As this court stated in *State v. Hill* (June 19, 1995), Trumbull App. No. 94-T-5116, unreported, at 4:
"[I]f the court can resolve the averments contained within the petitioner's request based upon the material contained within the petition, and the files and records, it may properly dismiss the matter without conducting a hearing. *State v. Milanovich* (1975), 42 Ohio St.2d 46."

Additionally, the Supreme Court of Ohio has held that the doctrine of *res judicata* is applicable in post-conviction relief proceedings. In *State v. Perry* (1967), 10 Ohio St.2d 175, the court held:
"Under the doctrine of *res judicata,* a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial,* which resulted in that judgment of conviction, *or on an appeal* from that judgment. *Id.* at paragraph nine of the syllabus. (Emphasis sic.)

In the case *sub judice,* the first claim made by appellant relates to ineffective assistance of trial counsel. Appellant asserts that his trial counsel were also his appellate counsel and that they made numerous errors in his representation depriving him of a fair trial. However, a review of the court record reveals that appellant had three attorneys from the public defender's office represent him at trial, and four attorneys from the public defender's office represent him on appeal. Of his three trial attorneys, only one was a member of his appellate counsel team. Thus, appellant's three different appellate attorneys could have raised the ineffectiveness of his trial counsel on direct appeal.

The Supreme Court of Ohio has specifically applied the doctrine of *res judicata* to post-conviction proceedings alleging ineffective assistance of counsel. In *State v. Cole* (1982), 2 Ohio St.3d 112, the court held:
"Where defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence *dehors* the record, *res judicata* is a proper basis for dismissing defendant's petition for postconviction relief. (*State v. Hester,* 45 Ohio St.2d 71 [74 O.O.2d 156], modified.)" *Id.* at the syllabus.

Thus, because appellant was represented by three different attorneys on appeal than at the trial level, any claim of ineffective assistance of counsel had to be brought on direct appeal or it was forever waived. In the present case, appellant failed to bring a claim of ineffective assistance of counsel on direct appeal and is, therefore, barred from bringing one in a post-conviction relief petition by the doctrine of *res judicata.*

*3 Appellant argues that because all of his prior counsel worked for the public defender's office, they were, for all practical purposes, the same attorney and, thus, unable to raise an ineffective assistance of counsel claim on direct appeal. This argument, however, has been specifically rejected by the Supreme Court of Ohio in *State v. Lentz* (1994), 70 Ohio St.3d 527, wherein the court stated:
"We hold that when a criminal defendant is represented by two different attorneys from the same public defender's office at trial and on direct

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

A-73

http://print.westlaw.com/delivery.html?dest=atp&dataid=B00558000000350800498812lBB...  9/13/04

Not Reported in N.E.2d
1996 WL 207676 (Ohio App. 11 Dist.)
(Cite as: 1996 WL 207676 (Ohio App. 11 Dist.))

Page 3

appeal, *res judicata* bars a claim of ineffective assistance of trial counsel raised for the first time in a petition for postconviction relief when such claim could have been made on direct appeal without resort to evidence beyond the record, unless the defendant proves that an actual conflict of interest enjoined appellate counsel from raising a claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 529.

In the present case, appellant failed to even allege an actual conflict of interest. Accordingly, appellant's claim of ineffective assistance of counsel must fail and the trial court did not err in denying appellant an evidentiary hearing as to this claim.

Next, appellant argues that he presented claims of "system-wide defects" which affected his conviction and sentence and that there were "numerous pretrial errors" in the proceedings. Appellant contends that these claims depend upon factual allegations that could not be determined from the record. Appellant fails, however, to elaborate or offer any argument as to how it was error for the trial court to dismiss these claims without a hearing.

Accordingly, pursuant to App.R. 16(A)(7) and App.R. 12(A)(2), we decline to address these claims as appellant has not supported these portions of his first assignment of error with necessary arguments. As the Supreme Court of Wisconsin so aptly stated in *State v. Waste Management of Wisconsin, Inc.* (Wisc.1978), 261 N.W.2d 147, 151:
  "An appellate court is not a performing bear, required to dance to each and every tune played on an appeal."

Appellant's first assignment of error is without merit.

In the second assignment of error, appellant contends that the trial court erred by failing to consider the record and by adopting the findings of fact and conclusions of law submitted by the State of Ohio.

The Ohio Revised Code imposes certain mandates upon the trial court in considering a post-conviction relief petition. R.C. 2953.21(C) provides, in relevant part:
  " * * * the court shall consider, in addition to the

petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript."

The trial court, in the case *sub judice,* explicitly stated that in reaching its decision, it considered:
  *4 "Defendant-Petitioner Charles L. Lorraine's 'Petition to Vacate or Set Aside Judgment and/or Sentence Pursuant to Ohio Revised Code Annotated Section 2953.21' filed on September 30, 1994; Defendant-Petitioner's 'Amendment to Petition to Vacate of [*sic* ] Set Aside Judgment and/or Sentence Pursuant to Ohio Revised Code Annotated Section 2953.21'; *the entire record in Trumbull County Common Pleas Court Case No. 86-CR-182;* the direct appeals in Eleventh District Court of Appeals Case No. 3838 and Supreme Court of Ohio Case No. 90-1927[reported at 66 Ohio St.3d 414 (1993)]; the state's 'Motion for Judgment Pursuant to R.C. 2953.21(C),' and 'Petitioner's Memorandum in Opposition to Respondent's Motion for Judgment under R.C. 2953.21(C).' " (Emphasis added.)

Thus, it is clear that the trial court complied with its duty under R.C. 2953.21(C) to consider all the files and records pertaining to the proceedings against the petitioner. Appellant has failed to submit any evidence to support his claim to the contrary.

Furthermore, it should be noted that on April 14, 1995, appellant filed a motion in this court to supplement the record with evidence that would allegedly show that the trial court did not have access to the entire record from the original proceedings. On June 14, 1995, this court denied appellant's motion based upon the general rule of law that a reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and that nothing in appellant's motion indicated that the requested supplemental matter was before the trial court.

Based on the doctrine of *res judicata,* appellant is barred from raising that issue again at this time.

Next, appellant argues that it was error for the trial

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

A-74

Not Reported in N.E.2d
1996 WL 207676 (Ohio App. 11 Dist.)
(Cite as: 1996 WL 207676 (Ohio App. 11 Dist.))

Page 4

court to essentially adopt the state's proposed findings of fact and conclusions of law as its own. By doing so, appellant submits that the court failed in its statutory duty to consider, determine and review the claims made by his petition. Appellant concludes that the trial court's "adopted" findings are inadequate and unreasonable.

In *State v. Sowell* (1991), 73 Ohio App.3d 672, however, the First District Court of Appeals determined that the trial court's adoption of the state's findings of fact and conclusions of law does not, by itself, deprive the petitioner of a meaningful review of his petition for post-conviction relief. *Id.* at 676. See, also, *State v. Powell* (1993), 90 Ohio App.3d 260, 263, *State v. Murphy* (May 12, 1995), Marion App. No. 9-94-52, unreported. We agree. Without showing that the trial court failed to comply with its statutory duty pursuant to R.C. 2953.21(C), appellant has failed to show that the trial court acted inappropriately by merely agreeing with the state.

Appellant's second assignment of error is without merit.

In the third assignment of error, appellant asserts that the trial court erred in its application of *res judicata* to the claims for relief he raised in his post-conviction relief petition.

**\*5** The issue of the application of *res judicata* to a petition for post-conviction relief was addressed in the analysis of appellant's first assignment of error, however, and will not be repeated here. The trial court did not err in its application of *res judicata.*

Appellant's third assignment of error is without merit.

In the fourth assignment of error, appellant maintains that the trial court erred when it granted the state's motion for summary judgment by failing to adhere to Civ.R. 56. Appellant argues that since the state's motion for judgment pursuant to R.C. 2953.21(C) "fundamentally asked for 'judgment as a matter of law,' " the motion should have been considered as a motion for summary judgment pursuant to Civ.R. 56. Thus, appellant asserts that the state needed to demonstrate in its motion that there were no genuine issues of material fact.

Appellant states, in his brief:

"The state does not avoid the prescription [*sic* ] of Civil Rule 56 by simply calling its pleading 'a motion for judgment.' Either the state promotes dismissal for facial insufficiency under Civ. Rule 12(B) or it claims there are no genuine issues of fact debatable by a reasonable mind under Civil Rule 56. The state cannot, now, assert that the motion claims both premises when the motion actually asserts neither."

While appellant is correct that the state's motion was neither a Civ.R. 12(B) nor a Civ.R. 56 motion, it is clear that the motion was properly made pursuant to R.C. 2953.21. As this court previously held in *Hill, supra,*

"R.C. 2953.21(D) permits the appellee to respond by either '*answer or motion*.' It does not specify that the motion be one for summary judgment. Indeed, the language employed clearly permits a pre-answer motion such as a motion to dismiss. Therefore, the court was free to consider appellee's motion." *Id.* at 13. (Emphasis *sic.*)

A review of the trial court's judgment dismissing appellant's post-conviction relief petition reveals that the court properly reviewed the material before it and granted the state's motion for judgment only after it complied with the mandates of R.C. 2953.21(C).

Appellant's fourth assignment of error is without merit.

In the fifth assignment of error, appellant contends that the trial court erred when it denied him the opportunity for discovery. We disagree.

In *State v. Smith* (1986), 30 Ohio App.3d 138, the Ninth District Court of Appeals held that R.C. 2953.21 does not permit the use of interrogatories in determining whether a hearing is warranted in a post-conviction proceeding. *Id.* at 140. Instead, the burden is on the petitioner to submit evidentiary documents containing sufficient operative facts to demonstrate his claim and to merit a hearing. It is well established that the power to conduct and compel discovery is not included within the trial court's statutorily-defined authority. *State v. Lott* (Nov. 3, 1994), Cuyahoga App. Nos. 66388, 66389, 66390, unreported; *State v. Zuern* (Dec. 4, 1991),

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

A-75

Not Reported in N.E.2d
1996 WL 207676 (Ohio App. 11 Dist.)
(Cite as: 1996 WL 207676 (Ohio App. 11 Dist.))

Page 5

Hamilton App. Nos. C-900481, C-910229, unreported; *State v. Robison* (June 19, 1989), Pickaway App. No. 88 CA 15, unreported.

*6 Thus, since the underlying petition was dismissed without a hearing, appellant was not entitled to conduct discovery.

Appellant's fifth assignment of error is without merit.

In the sixth assignment of error, appellant submits that the trial court erred when it denied his claims of ineffective assistance of counsel.

For the reasons set forth in our analysis of appellant's first assignment of error, which will not be repeated here, the trial court did not err in denying appellant's claims of ineffective assistance of counsel.

Appellant's sixth assignment of error is without merit.

In the seventh assignment of error, appellant contends that the trial court erred by its "standardized" dismissal of his petition of post-conviction relief.

Specifically, appellant claims that the trial court used what was essentially the same "standardized" judgment entry dismissing his petition as the one the court used in dismissing the post-conviction relief petition in *State v. Hill*, Trumbull County Case No. 85 CR 317, affirmed by this court in *Hill, supra.* Appellant also argues that the judgment entry was insufficient as it offered no substantive explanation for the court's dismissal.

Regarding appellant's assertion that the trial court's judgment entry was the same as the one used in *Hill*, we are unable to compare the trial court's judgment entry in *Hill* with the one used by the trial court in this case as the former is not part of the record before us. Thus, since appellant has failed to adequately support this claim, it is without merit. Additionally, it should be noted that there is no prohibition against using similar judgment entries in multiple cases if the same law is applicable to various fact scenarios. If separate petitions for post-conviction relief are without merit because of

the application of the doctrine of *res judicata,* for example, the judgment entries dismissing the petitions are bound to be similar.

Regarding appellant's claim that the trial court's judgment entry lacked substantive analysis, our review of the fifty-one page entry indicates otherwise. It is clear that the trial court individually addressed each of the twenty-nine claims for relief submitted by appellant. The fact that none of the claims warranted a hearing as they were either barred by the doctrine of *res judicata* or appellant simply failed to set forth substantive grounds for relief does not equate to error on the part of the trial court to fulfill its statutory obligation.

Appellant's seventh assignment of error is without merit.

The judgment of the trial court is affirmed.

CHRISTLEY, P.J. and DONOFRIO, J., concur.

JUDGMENT ENTRY

For the reasons stated in the opinion of this Court, appellant's assignments of error are without merit; and it is the judgment and order of this Court that the judgment of the trial court is affirmed.

1996 WL 207676 (Ohio App. 11 Dist.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

A-76

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO



F I L E D
COURT OF APPEALS

SEP 2 2 2004

TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

STATE OF OHIO,                    )
                                  )
        Appellee-Appellee,        )
                                  )
-vs-                              )     Case No. 2004-TR-89
                                  )
NATHANIEL JACKSON,                )
                                  )
        Defendant-Appellant.      )

F I L E D
COURT OF APPEALS

SEP 2 3 2004

TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

---

### NATHANIEL JACKSON'S MOTION TO FILE BRIEF INSTANTER

---

Nathaniel Jackson moves this Court to file his brief instanter. The reasons for this

Motion are more fully explained in the attached Memorandum which is incorporated herein.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio  43215-2998
(614) 466-5394

COUNSEL FOR NATHANIEL JACKSON

MOTION GRANTED TO
FILE BRIEF *Instanter*

SEP 2 3 2004

Donald R. Ford
JUDGE

## MEMORANDUM IN SUPPORT

Nathaniel Jackson has been convicted of capital murder and sentenced to death. The instant appeal is from the trial court's denial of Nathaniel Jackson's amended post-conviction petition without the benefit of discovery or an evidentiary hearing.

Mr. Jackson's brief was due on September 13, 2004. A member of the Office of the Ohio Public Defender placed the box containing the briefs to be sent to the Court in the outgoing mail on September 13, 2004. [Exhibit A]. Pursuant to App. R. 13(A) "briefs shall be deemed filed on the day of mailing." The postmark, the cover letter and the certificate of service all reflect the briefs were mailed on that date. Starting September 16, 2004, support personnel from the Ohio Public Defender's Office began to telephone the Clerk's Office to confirm the delivery of the briefs.

The mailman eventually delivered the briefs to the Clerk's Office on September 20, 2004. [Exhibit B]. A member of the Clerk's Office then advised a member of the Ohio Public Defender that the Clerk's office and the Court of Appeals did not recognize the mail box rule. [Exhibit B].

Undersigned counsel then telephoned the Court Administrator's Office. The Deputy Administrator advised counsel to file a Motion to file the brief instanter. She observed that the Court may deem the brief untimely despite the fact that the brief was mailed on the date it was due. [Exhibit C]. The Deputy Administrator stated that the Clerk routinely throws away the envelopes and boxes containing the postage meters which confirm the date that briefs are mailed to the Court. [Id.]. She further stated that the Court would not accept, as proof of the mailing date, the date contained on the cover letter that was enclosed with the briefs or the date on the certificate of service. [Id.].

Undersigned counsel believes that he has complied with all of the applicable Appellate and Local Rules.  The only error that he can fathom was either trusting the United States Postal Service (which the Rule permits) or personally delivering the brief to the Court (and adding six hours plus mileage to his counsel fee application).

WHEREFORE, Nathaniel Jackson requests that the Court deem that his Brief was timely filed because he placed it in the United States mail on September 13, 2004  In the alternative, he requests that the Court order that  the brief be filed instanter, even though it is his understanding that the Brief has now been filed.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio  43215-2998
(614) 466-5394

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I  hereby  certify  that  a  true  copy  of  the  foregoing  **NATHANIEL  JACKSON'S MOTION TO FILE BRIEF INSTANTER** was forwarded by first-class, postage prepaid U.S. Mail to Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio 44481 on this 21st day of September, 2004.

RANDALL L. PORTER

#205596

COUNSEL FOR NATHANIEL JACKSON

4

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )
                                        )
    Appellee-Appellee,              )
                                        )
-vs-                                    )        Case No. 2004-TR-89
                                        )
NATHANIEL JACKSON,                      )
                                        )
    Defendant-Appellant.            )

## AFFIDAVIT OF BRENDA JONES

State of Ohio          :
                       :        ss:
County of Franklin     :

Brenda Jones, after being duly sworn according to law states as follows:

1.    I am the Administrative Assistant for the Death Penalty Division of the Office of the Ohio Public Defender.

2.    On September 13, 2004, Assistant State Public Defender Randall L. Porter requested that I mail the Merit Briefs for the Petitioner in the above case.

3.    I placed the briefs in a box with a cover letter and sealed the box.

4.    I then personally took the box to Office Services to be placed in the evening mail.

Further affiant saith naught.

*Brenda L. Jones*
Brenda L. Jones

Sworn to and subscribed in my presence this 21st day of September, 2004.

*Gloria Govine*
NOTARY PUBLIC

NOTARIAL SEAL
STATE OF OHIO

GLORIA GOVINE
My Commission Expires 7-24-2005

**EXHIBIT**
Jackson Apx. Vol. 16
Page 200
A

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )
                                  )
        Appellee-Appellee,        )
                                  )
-vs-                              )        Case No. 2004-TR-89
                                  )
NATHANIEL JACKSON,                )
                                  )
        Defendant-Appellant.      )

---

## AFFIDAVIT OF GLORIA GOVINE

State of Ohio          :
                       :        ss:
County of Franklin     :

Gloria Govine, after being duly sworn according to law states as follows:

1.      I am the Administrative Assistant with the Office of the Ohio Public Defender.

2.      On September 13, 2004, I completed (including Table of Contents and Authorities) preparing Nathaniel Jackson's Merit Brief.

3.      On September 20, 2004, Assistant State Public Defender Randall L. Porter requested that I check with the Trumbull County Clerk's Office to see if the Court had yet received the Merit Briefs in the above case.

4.      Approximately 2:00 p.m. I spoke with Pam in the Appellate Division of the Clerk's Office.  She informed me that the Office had received Mr. Jackson's Merit Brief, but that the Briefs would be considered untimely (unless counsel filed a motion instanter). She said that the Clerk's Office did not follow a "mailbox" rule.



EXHIBIT
B
Jackson Apx. Vol 16
Page 001

5.    I then notified Assistant State Public Defender Randall L. Porter concerning the statement that the Briefs would be treated as untimely because the Court of Appeals did not follow the "mail box rule."

Further affiant saith naught.

*Gloria Govine*

Gloria Govine

Sworn to and subscribed in my presence this 21st day of September, 2004.

*Brenda L. Jones*

NOTARY PUBLIC

BRENDA L. JONES
Notary Public, State of Ohio
My Commission Expires 9-24-05

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                              )
                                           )
    Appellee-Appellee,                 )
                                           )
-vs-                                       )      Case No. 2004-TR-89
                                           )
NATHANIEL JACKSON,                         )
                                           )
    Defendant-Appellant.               )

---

## AFFIDAVIT OF RANDALL L. PORTER

---

State of Ohio           :
                        :        ss:
County of Franklin      :

Randall L. Porter, after being duly sworn according to law states as follows:

1.    I am a duly licensed attorney who is employed by Office of the Ohio Public Defender as an Assistant State Public Defender. I am assigned to the Death Penalty Division of the Office.

2.    On July 16, 2004, this Court appointed me to represent Nathaniel Jackson in this appeal from the trial court's denial of his amended post-conviction petition.

3.    Mr. Jackson's merit brief was due on September 13, 2004. The brief was completed on that date. I gave Administrative Assistance Brenda Jones the brief with the required number of copies and a cover letter to mail to the Clerk's Office. She later confirmed to me that she placed the briefs and the cover letter in a box, sealed the box and personally delivered the box to Office Services for depositing in the United States postal system.

4.    On September 16 and 17, 2004, I had Joan Hayes, a paralegal with the Death Penalty Division of the Office, telephone the Clerk's Office to ascertain if postal service had

1

Jackson EXHIBIT 16
Page 203
tables
C

delivered the briefs.  She indicated to me that the Clerk's office responded in the negative on both dates.

5.      On September 20, 2004, I requested that Gloria Govine, Administrative Assistant, check with the Clerk's Office concerning receipt of the briefs.  Ms Hayes was not in the Office on that date.

6.      On the afternoon of September 2004, Ms. Govine telephoned me and indicated that the Clerk's Office had received the briefs, but that the Office would treat the briefs as being untimely because the Clerk's Office did not recognize the mailbox rule.

7.      I then telephoned the Deputy Court Administrator, Patricia Sontag.  She notified me that the Court may treat the Briefs as untimely because it too the United States Mail Service a week to deliver the box to that Court.

8.      I requested that the Deputy Court Administrator examine the postage meter on the box to verify that I mailed the briefs to the Court in a timely fashion.  The Deputy Administrator informed me that the Clerk throws away the boxes and envelopes in which parties mail briefs to the Court. She also indicated that the Court would not treat the date on the certificate of service or cover letter as proof that I timely mailed the briefs.

9.      The Deputy Administrator suggested that I prepare a motion to have the Court file the brief instanter.  Pursuant to her suggestion, I have done that.  However I would request that the Court initially consider whether such motion is necessary.  The brief was timely filed (mailed) and I complied with all Appellate Rules.

Further affiant saith naught.

_____
Randall L. Porter

2

Sworn to and subscribed in my presence this 21st day of September, 2004.

*Gloria Govine*
NOTARY PUBLIC

#205606



GLORIA GOVINE
My Commission Expires 7-24-2005

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

**F I L E D**
**COURT OF APPEALS**
SEP 2 2 2004

TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

STATE OF OHIO,              )

      Appellee-Appellee,    )

                      )

-vs-                  )    Case No. 2004-TR-89

                      )

NATHANIEL JACKSON,     )

      Defendant-Appellant.  )

**F I L E D**
**COURT OF APPEALS**
SEP 2 3 2004

TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

---

### NATHANIEL JACKSON'S MOTION TO FILE BRIEF INSTANTER

---

      Nathaniel Jackson moves this Court to file his brief instanter.  The reasons for this Motion are more fully explained in the attached Memorandum which is incorporated herein.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

_____

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio  43215-2998
(614) 466-5394

COUNSEL FOR NATHANIEL JACKSON

MOTION GRANTED TO
FILE BRIEF BY *Instanter*

SEP 2 3 2004

*Donald R. Ford*
JUDGE

COPY

## MEMORANDUM IN SUPPORT

Nathaniel Jackson has been convicted of capital murder and sentenced to death. The instant appeal is from the trial court's denial of Nathaniel Jackson's amended post-conviction petition without the benefit of discovery or an evidentiary hearing.

Mr. Jackson's brief was due on September 13, 2004. A member of the Office of the Ohio Public Defender placed the box containing the briefs to be sent to the Court in the outgoing mail on September 13, 2004. [Exhibit A]. Pursuant to App. R. 13(A) "briefs shall be deemed filed on the day of mailing." The postmark, the cover letter and the certificate of service all reflect the briefs were mailed on that date. Starting September 16, 2004, support personnel from the Ohio Public Defender's Office began to telephone the Clerk's Office to confirm the delivery of the briefs.

The mailman eventually delivered the briefs to the Clerk's Office on September 20, 2004. [Exhibit B]. A member of the Clerk's Office then advised a member of the Ohio Public Defender that the Clerk's office and the Court of Appeals did not recognize the mail box rule. [Exhibit B].

Undersigned counsel then telephoned the Court Administrator's Office. The Deputy Administrator advised counsel to file a Motion to file the brief instanter. She observed that the Court may deem the brief untimely despite the fact that the brief was mailed on the date it was due. [Exhibit C]. The Deputy Administrator stated that the Clerk routinely throws away the envelopes and boxes containing the postage meters which confirm the date that briefs are mailed to the Court. [Id.]. She further stated that the Court would not accept, as proof of the mailing date, the date contained on the cover letter that was enclosed with the briefs or the date on the certificate of service. [Id.].

Undersigned counsel believes that he has complied with all of the applicable Appellate and Local Rules.  The only error that he can fathom was either trusting the United States Postal Service (which the Rule permits) or personally delivering the brief to the Court (and adding six hours plus mileage to his counsel fee application).

WHEREFORE, Nathaniel Jackson requests that the Court deem that his Brief was timely filed because he placed it in the United States mail on September 13, 2004  In the alternative, he requests that the Court order that  the brief be filed instanter, even though it is his understanding that the Brief has now been filed.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio  43215-2998
(614) 466-5394

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **NATHANIEL JACKSON'S MOTION TO FILE BRIEF INSTANTER** was forwarded by first-class, postage prepaid U.S. Mail to Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio 44481 on this 21st day of September, 2004.

RANDALL L. PORTER

COUNSEL FOR NATHANIEL JACKSON

#205596

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )
                                        )
        Appellee-Appellee,              )
                                        )
-vs-                                    )        Case No. 2004-TR-89
                                        )
NATHANIEL JACKSON,                      )
                                        )
        Defendant-Appellant.            )

---

## AFFIDAVIT OF BRENDA JONES

---

State of Ohio          :
                       :        ss:
County of Franklin     :

Brenda Jones, after being duly sworn according to law states as follows:

1.      I am the Administrative Assistant for the Death Penalty Division of the Office of the Ohio Public Defender.

2.      On September 13, 2004, Assistant State Public Defender Randall L. Porter requested that I mail the Merit Briefs for the Petitioner in the above case.

3.      I placed the briefs in a box with a cover letter and sealed the box.

4.      I then personally took the box to Office Services to be placed in the evening mail.

Further affiant saith naught.

*Brenda L. Jones*
Brenda L. Jones

Sworn to and subscribed in my presence this 21st day of September, 2004.

*Gloria Govine*
NOTARY PUBLIC

NOTARIAL SEAL
STATE OF OHIO

GLORIA GOVINE
My Commission Expires 7-24-2005

Jackson Apx. Vol. 16
Page 210

EXHIBIT
A

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                              )
                                            )
    Appellee-Appellee,                      )
                                            )
-vs-                                        )          Case No. 2004-TR-89
                                            )
NATHANIEL JACKSON,                          )
                                            )
    Defendant-Appellant.                    )

---

### AFFIDAVIT OF GLORIA GOVINE

State of Ohio         :
                      :          ss:
County of Franklin    :

Gloria Govine, after being duly sworn according to law states as follows:

1.    I am the Administrative Assistant with the Office of the Ohio Public Defender.

2.    On September 13, 2004, I completed (including Table of Contents and Authorities) preparing Nathaniel Jackson's Merit Brief

3.    On September 20, 2004, Assistant State Public Defender Randall L. Porter requested that I check with the Trumbull County Clerk's Office to see if the Court had yet received the Merit Briefs in the above case.

4.    Approximately 2:00 p.m. I spoke with Pam in the Appellate Division of the Clerk's Office.  She informed me that the Office had received Mr. Jackson's Merit Brief, but that the Briefs would be considered untimely (unless counsel filed a motion instanter). She said that the Clerk's Office did not follow a "mailbox" rule.



EXHIBIT
B

JA XIII Apx. Vol. 16
Page 211

5.    I then notified Assistant State Public Defender Randall L. Porter concerning the statement that the Briefs would be treated as untimely because the Court of Appeals did not follow the "mail box rule."

Further affiant saith naught.

*Gloria Govine*

Gloria Govine

Sworn to and subscribed in my presence this _21st_ day of September, 2004.

*Brenda B. Jones*

NOTARY PUBLIC

BRENDA L. JONES
Notary Public, State of Ohio
My Commission Expires _9-24-05_

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )
                                        )
       Appellee-Appellee,            )
                                        )
-vs-                                    )        Case No. 2004-TR-89
                                        )
NATHANIEL JACKSON,                      )
                                        )
       Defendant-Appellant.          )

---

## AFFIDAVIT OF RANDALL L. PORTER

---

State of Ohio          :
                       :        ss:
County of Franklin     :

     Randall L. Porter, after being duly sworn according to law states as follows:

     1.    I am a duly licensed attorney who is employed by Office of the Ohio Public Defender as an Assistant State Public Defender. I am assigned to the Death Penalty Division of the Office.

     2.    On July 16, 2004, this Court appointed me to represent Nathaniel Jackson in this appeal from the trial court's denial of his amended post-conviction petition.

     3.    Mr. Jackson's merit brief was due on September 13, 2004. The brief was completed on that date. I gave Administrative Assistance Brenda Jones the brief with the required number of copies and a cover letter to mail to the Clerk's Office. She later confirmed to me that she placed the briefs and the cover letter in a box, sealed the box and personally delivered the box to Office Services for depositing in the United States postal system.

     4.    On September 16 and 17, 2004, I had Joan Hayes, a paralegal with the Death Penalty Division of the Office, telephone the Clerk's Office to ascertain if postal Jackson Apx. Vol. 16

1

EXHIBIT
C

delivered the briefs. She indicated to me that the Clerk's office responded in the negative on both dates.

5. On September 20, 2004, I requested that Gloria Govine, Administrative Assistant, check with the Clerk's Office concerning receipt of the briefs. Ms Hayes was not in the Office on that date.

6. On the afternoon of September 2004, Ms. Govine telephoned me and indicated that the Clerk's Office had received the briefs, but that the Office would treat the briefs as being untimely because the Clerk's Office did not recognize the mailbox rule.

7. I then telephoned the Deputy Court Administrator, Patricia Sontag. She notified me that the Court may treat the Briefs as untimely because it too the United States Mail Service a week to deliver the box to that Court.

8. I requested that the Deputy Court Administrator examine the postage meter on the box to verify that I mailed the briefs to the Court in a timely fashion. The Deputy Administrator informed me that the Clerk throws away the boxes and envelopes in which parties mail briefs to the Court. She also indicated that the Court would not treat the date on the certificate of service or cover letter as proof that I timely mailed the briefs.

9. The Deputy Administrator suggested that I prepare a motion to have the Court file the brief instanter. Pursuant to her suggestion, I have done that. However I would request that the Court initially consider whether such motion is necessary. The brief was timely filed (mailed) and I complied with all Appellate Rules.

Further affiant saith naught.

_____
Randall L. Porter

2

Sworn to and subscribed in my presence this 21*st* day of September, 2004.

*Gloria Govine*
NOTARY PUBLIC

#205606



GLORIA GOVINE
My Commission Expires 7-24-2005

IN THE ELEVENTH DISTRICT COURT OF APPEALS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                                              )        CASE NO. 2004-T-0089
    Plaintiff-Appellee                             )
                                                       )
-vs-                                                       )
                                                       )
                                                       )        MOTION FOR EXTENSION
                                                       )        OF TIME TO FILE APPELLEE'S
NATHANIEL JACKSON                                          )        BRIEF
    Defendant-Appellant                            )

MOTION GRANTED TO
FILE BRIEF BY *11-12-2004*

OCT 15 2004

*Donald R. Ford*
JUDGE

**FILED**
COURT OF APPEALS
OCT 15 2004
TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

**FILED**
COURT OF APPEALS
OCT 12 2004
TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

    Now comes the Plaintiff-Appellee, The State of Ohio, by and through the undersigned

counsel, and respectfully moves this Court for an extension of time of 30 days  to file Appellee's

brief.

    For cause, Appellee's brief is currently due Oct. 13, 2004.  Undersigned counsel

continues to work on the State's merit brief in *State v. Donna Roberts*, now pending before the

Ohio Supreme Court in case number 03-1441.  It is due October 18, 2004.  Roberts is

Appellant's co-defendant. The transcript is over 6,000 pages and spans twenty eight volumes.

Since Appellant filed his brief,  undersigned counsel completed a week-long hearing in the

Trumbull County Common Pleas court in *State v. Danny Lee Hill*, case number 85-CR-317, to

determine whether Mr. Hill is an "Atkins excludable" pursuant to *Atkins v. Virginia* (2002) 112

S.Ct. 2242. The hearing is scheduled to resume Oct. 26, 2004.  Undersigned counsel also timely

filed its merit brief in *State v. Timothy Combs*, 2004-PA-00058, with this Court September 29,



2004,  and expects to file its merit brief in *State v. Miller* 04-T-19, 04-T-20, on or before Oct. 18, 2004.  Undersigned counsel is not only the lone assistant prosecutor assigned to these projects (except in the Hill case), but due to county budget constraints, has no assigned law clerks to assist in any of these obligations.

Due to undersigned counsel's above-described workload, Appellee requests that this Court extend its due date for Appellee's brief to November 12, 2004. This extension is not requested for purposes of delay, but to address other demands on undersigned counsel's time. This is the first extension sought by Appellee in this matter. This Court permitted Appellant to file an oversized brief, and permitted him to file instanter. The size of this brief as well as the 16 volume record would require additional time even if counsel did not have other obligations. This extension will not prejudice Appellant as  he remains on Ohio's death row awaiting oral arguments in his direct appeal now pending before  the Ohio Supreme Court in Case No. 03-137. For these reasons, Appellee respectfully request an extension of 30 days to Nov. 12, 2004 to file its brief in this matter.

Respectfully submitted by:
DENNIS WATKINS (#0009949)
Prosecuting Attorney


LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. 4th Floor
Warren, Ohio    44481

Telephone:(330) 675-2426
Facsimile (330) 675-2431

COUNSEL FOR PLAINTIFF-APPELLEE
THE STATE OF OHIO


## PROOF OF SERVICE

I do hereby certify that a copy of the foregoing motion by was sent by ordinary mail to

Atty. Randall Porter and Atty. David Bodiker, Office of the Ohio Public Defender, 8 E. Long St.,

11th Floor, Columbus, Ohio   43215 on this 12th Day of October, 2004.


LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney

IN THE ELEVENTH DISTRICT COURT OF APPEALS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,　　　　　　　　　　　)　　CASE NO. 2004-T-0089
　　　　　Plaintiff-Appellee　　　　　　)
　　　　　　　　　　　　　　　　　　)
-vs-　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　MOTION FOR EXTENSION
　　　　　　　　　　　　　　　　　　)　　OF TIME TO FILE APPELLEE'S
NATHANIEL JACKSON　　　　　　　　)　　BRIEF
　　　　　Defendant-Appellant　　　　　)

MOTION GRANTED TO
FILE BRIEF BY *11-12-2004*

OCT 15 2004

*Donald R. Ford*
JUDGE

FILED
COURT OF APPEALS
OCT 15 2004
TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

FILED
COURT OF APPEALS
OCT 12 2004
TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

　　　　Now comes the Plaintiff-Appellee, The State of Ohio, by and through the undersigned

counsel, and respectfully moves this Court for an extension of time of 30 days  to file Appellee's

brief.

　　　　For cause, Appellee's brief is currently due Oct. 13, 2004.  Undersigned counsel

continues to work on the State's merit brief in *State v. Donna Roberts*, now pending before the

Ohio Supreme Court in case number 03-1441.  It is due October 18, 2004.  Roberts is

Appellant's co-defendant. The transcript is over 6,000 pages and spans twenty eight volumes.

Since Appellant filed his brief,  undersigned counsel completed a week-long hearing in the

Trumbull County Common Pleas court in *State v. Danny Lee Hill*, case number 85-CR-317, to

determine whether Mr. Hill is an "Atkins excludable" pursuant to *Atkins v. Virginia* (2002) 112

S.Ct. 2242. The hearing is scheduled to resume Oct. 26, 2004.  Undersigned counsel also timely

filed its merit brief in *State v. Timothy Combs*, 2004-PA-00058, with this Court September 29,



2004, and expects to file its merit brief in *State v. Miller* 04-T-19, 04-T-20, on or before Oct. 18, 2004. Undersigned counsel is not only the lone assistant prosecutor assigned to these projects (except in the Hill case), but due to county budget constraints, has no assigned law clerks to assist in any of these obligations.

Due to undersigned counsel's above-described workload, Appellee requests that this Court extend its due date for Appellee's brief to November 12, 2004. This extension is not requested for purposes of delay, but to address other demands on undersigned counsel's time. This is the first extension sought by Appellee in this matter. This Court permitted Appellant to file an oversized brief, and permitted him to file instanter. The size of this brief as well as the 16 volume record would require additional time even if counsel did not have other obligations. This extension will not prejudice Appellant as he remains on Ohio's death row awaiting oral arguments in his direct appeal now pending before the Ohio Supreme Court in Case No. 03-137. For these reasons, Appellee respectfully request an extension of 30 days to Nov. 12, 2004 to file its brief in this matter.

Respectfully submitted by:
DENNIS WATKINS (#0009949)
Prosecuting Attorney


LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. 4th Floor
Warren, Ohio    44481

Telephone:(330) 675-2426
Facsimile (330) 675-2431

COUNSEL FOR PLAINTIFF-APPELLEE
THE STATE OF OHIO


### PROOF OF SERVICE

I do hereby certify that a copy of the foregoing motion by was sent by ordinary mail to

Atty. Randall Porter and Atty. David Bodiker, Office of the Ohio Public Defender, 8 E. Long St.,

11th Floor, Columbus, Ohio   43215 on this 12th Day of October, 2004.


LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney



IN THE ELEVENTH DISTRICT COURT OF APPEALS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )        CASE NO: 2004-TR-89
                                  )
        Plaintiff-Appellee,       )
                                  )
vs.                               )
                                  )
NATHANIEL JACKSON                 )        MOTION FOR LEAVE TO FILE
                                  )        OVERSIZED BRIEF
        Defendant-Appellant.      )

**FILED**
COURT OF APPEALS

NOV 1 5 2004

TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

Now comes the Plaintiff-Appellee, the State of Ohio, and asks leave for file a brief which exceeds the page limitation set forth in Loc. R. 12 (D).  For cause, the State submits its merit brief in the above-captioned case runs 47 pages.  The length of the brief was determined by the number of arguments and subarguments in Appellant's brief.  In fact, Appellant's brief runs 48 pages and this Court has already granted him a motion to file a brief which exceeds the 35-page limit promulgated in Loc. R. 12(D).

Therefore, the State also seeks leave to file a 47-brief.

Respectfully submitted,
DENNIS WATKINS (#0009949)
Prosecuting Attorney


LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor, Administration Building
Warren, Ohio  44481
Telephone No.:  (330) 675-2426

COUNSEL FOR PLAINTIFF-APPELLEE
THE STATE OF OHIO


<u>CERTIFICATION</u>

    I do hereby certify that a copy of the foregoing motion   was sent by ordinary U.S. Mail on this November 15, 2004, to Atty. Randall Porter(#0005835), Counsel for Appellant Nathaniel Jackson, Assistant State Public Defender, Office of the Ohio Public Defender, 8 East Long St. 11th Floor, Columbus, Ohio   43215.


LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney

IN THE ELEVENTH DISTRICT COURT OF APPEALS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )          CASE NO: 2004-TR-89
                                        )
    Plaintiff-Appellee,                 )
                                        )
vs.                                     )
                                        )          **F I L E D**
NATHANIEL JACKSON                       )          COURT OF APPEALS
                                        )
    Defendant-Appellant.                )          NOV 1 5 2004

                                              TRUMBULL COUNTY, OHIO
                                            MARGARET R. O'BRIEN, Clerk

## BRIEF OF PLAINTIFF-APPELLEE

DENNIS WATKINS (Atty. Reg. #0009949)
Trumbull County Prosecuting Attorney
LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor, Administration Bldg.
Warren, Ohio 44481
Telephone No. (330) 675-2426
COUNSEL FOR
PLAINTIFF-APPELLEE
THE STATE OF OHIO

DAVID H. BODIKER
Ohio Public Defender
RANDALL L. PORTER (#0005835)
Assistant State Public Defender
Office of the Ohio Public Defender
8 East Long St.
11th Floor
Columbus, Ohio    43215

DEFENDANT-APPELLANT
NATHANIEL JACKSON



TABLE OF CONTENTS AND ASSIGNMENT OF ERROR

PAGE(S)

TABLE OF AUTHORITIES..................................................................................................vi

COMBINED STATEMENT OF THE CASE & FACTS.................................................1

ARGUMENT....................................................................................................................2

APPELLANT'S ASSIGNMENT OF ERROR NO. I:......................................................10
The trial court erred when it denied Petitioner's Amended Post-Conviction Petition without first affording him the opportunity to conduct discovery.

APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:.........................10
A trial court is without authority to compel discovery in a postconviction proceeding.

Authorities
State v. Lorraine (Feb. 23, 1996), 11th Dist. No. 5196.............................................10, 11, 12
State v. Wiles (1998), 126 Ohio App. 3d 71...............................................................10, 11, 12
R.C. 2953.21.......................................................................................................................10, 12
R.C. 2953.21(C)......................................................................................................................10
State v. Jackson (1980), 64 Ohio St.2d 107...........................................................................11
State v. Kapper (1983), 5 Ohio St. 3d 36...............................................................................11
State v. Spirko (1998), 127 Ohio App. 3d 421.......................................................................11
State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office (1999), 87 Ohio St. 158.............12
State v. Byrd (1998), 145 Ohio App. 3d 318..........................................................................12
.................................................................................................................................................12

APPELLANT'S ASSIGNMENT OF ERROR NO. II:....................................................13
The trial court erred when it refused to grant Petitioner funds to employ experts.

APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:.........................13
A postconviction petitioner has no entitlement to court-funded experts to bolster legally deficient claims for relief.

Authorities
State v. Williams (Oct. 19, 1998), 11th Dist. No. 97-T-0153...............................................13
R.C. 2953.21(I)........................................................................................................................13
State v. Steffen (1994), 70 Ohio St.3d 399............................................................................14
State v. Lott (2002), 97 Ohio St. 3d 303................................................................................14

TABLE OF CONTENTS CONT'D

PAGE

**APPELLANT'S ASSIGNMENT OF ERROR NO. III**:...................................................15
The post-conviction assistant prosecutor erred by not providing petitioner with the information
contained in the prosecutor's files which was necessary to support the claims contained in the
amended petition.

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT**:...........................15
Ohio Law places the burden on the petitioner, not the State, to produce evidence sufficient to
withstand a motion to dismiss or motion for summary judgment.

Authorities
*State v. Calhoun* (1999), 86 Ohio St. 279............................................................
*State ex rel. Steckman v. Jackson* (1994), 70 Ohio St. 3d 420........................16
*Imber v. Pachtman* (1976), 424 U.S. 409................................................17
*State v. Flynt* (1980), 63 Ohio St. 3d 132................................................17
*State v. Perry* (1967), 10 Ohio St. 175................................................18
*State v. Cole* (1982), 2 Ohio St. 3d 112................................................20
................................................20

**APPELLANT'S ASSIGNMENT OF ERROR NO. IV**:...........................................21
The post-conviction trial judge erred by not recusing himself.

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT**:...........................21
An experienced jurist's working knowledge of procedures within his own court does
not indicate a bias against a post conviction petitioner and does not merit a sua sponte
recusal by said jurist.

Authorities
*State v. Ramos* (1993), 88 Ohio App. 3d 394................................................21
*State v. Coleman* (March 17, 1993), No. C-910083................................................21
*State v. Ramos* (1993), 88 Ohio App. 3d 394................................................21
R.C. 2701.03(A)................................................21
*United States v. Bernstein* (C.A.2, 1976),533 F.2d 775................................................21
*State v. Smith* (Iowa 1976), 242 N.W.2d 320................................................22
R.C. 2939.02................................................22
**ASSIGNMENT OF ERROR NO. V:**...........................................22, 23
................................................25
The trial court erred by applying the doctrine of res judicata to certain of petitioner's causes of
action.

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT**: .........................25
A trial court properly applies the doctrine of res judicata to dismiss a postconviction claim when
an issue was raised, or could have been raised on direct appeal.

TABLE OF CONTENTS CONT'D

**Authorities**                                                            PAGE

*State v. Perry* (1967), 10 Ohio St. 175 ...............................................

*State v. Cole* (1982), 2 Ohio St. 3d 112 ..................................................25

*State v. Lawson* (1995), 103 Ohio App. 3d 307 ......................................25

*State v. Wiles* (1998) 126 Ohio App. 3d 71 .............................................25

*State v. Roberts* (1982), 1 Ohio St.3d 36 ................................................26

*State v. Steffen* (1994), 70 Ohio St.3d 399 .........................................26, 27

*State v. Cowans* (2002), 151 Ohio App 3d 228 ..................................27, 31

*State v. Hughbanks* (Jan. 17, 2003), 1st Dist. No. C-010372 ..........27, 28 , 29

R.C. 2939.02 ...........................................................................................28

*In Re Kemmler* (1890), 136 U.S. 436 .....................................................31

## APPELLANT'S ASSIGNMENT OF ERROR NO. VI:

The trial court erred in dismissing Petitioner's amended postconviction petition where he presented sufficient operative facts to merit relief, or at minimum, an evidentiary hearing. .......32

## APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT: ....32

A postconviction petitioner is not entitled to relief or an evidentiary hearing when documentary evidence does not support a claim for relief, or when such evidence is non-existent.

**Authorities**

R.C. 2953.21(C) ......................................................................................32

*State v. Jackson* (1980), 64 Ohio St. 2d 107 ..........................................32

*State v. Williams* (1997), 79 Ohio St. 3d. 1 ...........................................32

*State v. Issa* (2001), 93 Ohio St. 3d 49 ..................................................33

*Strickland v. Washington* (1984), 466 U.S. 668 .....................................33

*State v. Kapper* (1983), 5 Ohio St. 3d 36 .........................................35, 36, 37, 42

*Wiggins v. Smith* 123 S.Ct. 2527 ............................................................35

*State v. Tresh* (2001), 90 Ohio St. 3d 460 .............................................36

*State v. Carter* (2000), 89 Ohio St. 593 .................................................36

*State v. McNeill* (1998), 83 Ohio St. 3d 438 ..........................................36

*State v. Otte* (1996), 74 Ohio St. 3d 555 ...............................................36

*State v. Jenkins* (1984), 15 Ohio St. 3d 164 ..........................................36

*State v. Johnson* (1972), 31 Ohio St. 2d 106 .........................................36

*State v. Hill* (1992), 64 Ohio St. 3d 313 ................................................37

*State v. Puente* (1982), 69 Ohio St. 2d 136 ...........................................37

*State v. Davie* (1997), 80 Ohio St.3d. 311 .............................................37

*State. v. Pankey* (1981), 68 Ohio St. 2d 58 ...........................................37

*State v. Bradley* (1989), 42 Ohio St. 3d 136 .........................................37

*Vaughn v. Maxwell* (1965), 2 Ohio St. 2d 299 ..................................37, 38

*State v. Smith* (1987), 36 Ohio App. 3d 152 .........................................38

## TABLE OF CONTENTS CONT'D

PAGE

*State v. Pierce* (1998), 128 Ohio App. 3d 578 ...................................................37

*State v. Phillips* (1995), 74 Ohio St. 3d 72 ........................................................39

*State v. Brown* (1988), 38 Ohio St. 3d 305 ........................................................39

R.C. 2929.04(B) .......................................................................................................39

*State v. Calhoun* (1999), 86 Ohio St. 3d 279 ....................................................44

*State v. Powell* (1993), 90 Ohio App. 3d 260 ....................................................45

*State v. Steffen* (1994), 70 Ohio St. 3d 399 ......................................................45

*State v. Wiles* (1998), 126 Ohio App. 3d 71 ..................................................45, 46

*State v. DeMarco* (1987), 31 Ohio St. 3d 191 ...................................................46

CONCLUSION ..........................................................................................................47

PROOF OF SERVICE .............................................................................................47

APPENDIX

Appx. Page

*State v. Lorraine* (Feb. 23, 1996), 11th Dist. No. 5196 .................................A-1

*State v. Williams* (Oct. 19, 1998), 11th Dist. No. 97-T-0153 ......................A-6

*State v. Coleman* (March 17, 1993), No. C-910083 ........................................A-17

*State v. Hughbanks* (Jan. 17, 2003), 1st Dist. No. C-010372 ....................A-23

TABLE OF AUTHORITIES CONT'D

PAGE

*State v. Issa* (2001), 93 Ohio St. 3d 49.................................................................................33

*State v. Johnson* (1972), 31 Ohio St. 2d 106.....................................................................37

*State v. Lawson* (1995), 103 Ohio App. 3d 307..............................................................25

*State v. Lorraine* (Feb. 23, 1996), 11th Dist. No. 5196.................................10, 11, 12

*State v. Lott* (2002), 97 Ohio St. 3d 303..........................................................................14

*State v. McNeill* (1998), 83 Ohio St. 3d 438...................................................................36

*State v. Otte* (1996), 74 Ohio St. 3d 555..........................................................................36

*State. v. Pankey* (1981), 68 Ohio St. 2d 58......................................................................37

*State v. Perry* (1967), 10 Ohio St. 175.......................................................................20, 25

*State v. Phillips* (1995), 74 Ohio St. 3d 72.....................................................................39

*State v. Pierce* (1998), 128 Ohio App. 3d 578................................................................37

*State v. Powell* (1993), 90 Ohio App. 3d 260..................................................................45

*State v. Puente* (1982), 69 Ohio St. 2d 136.....................................................................37

*State v. Ramos* (1993), 88 Ohio App. 3d 394..................................................................21

*State v. Roberts* (1982), 1 Ohio St.3d 36...................................................................26, 27

*State v. Smith* (Iowa 1976), 242 N.W.2d 320..................................................................22

*State v. Smith* (1987), 36 Ohio App. 3d 152....................................................................38

*State v. Spirko* (1998), 127 Ohio App. 3d 421................................................................12

*State v. Steffen* (1994), 70 Ohio St.3d 399.............................................14, 27, 31, 45, 46

*State v. Tresh* (2001), 90 Ohio St. 3d 460........................................................................36

Jackson Apx. Vol. 16
Page 229

## TABLE OF AUTHORITIES CONT'D

PAGE

*State v. Wiles* (1998), 126 Ohio App. 3d 71...........................................................10, 12, 26, 46

*State v. Williams* (Oct. 19, 1998), 11th Dist. No. 97-T-0153......................................................13

*State v. Williams* (1997), 79 Ohio St. 3d. 1.....................................................................................33

*Strickland v. Washington* (1984), 466 U.S. 668.............................................................35, 36, 37, 42

*United States v. Bernstein* (C.A.2, 1976),533 F.2d 775.................................................................22

*Vaughn v. Maxwell* (1965), 2 Ohio St. 2d 299.........................................................................37, 38

*Wiggins v. Smith* 123 S.Ct. 2527...............................................................................................36

## STATUTES

R.C. 2701.03(A)...............................................................................................................................21

R.C. 2929.04(B)...............................................................................................................................44

R.C. 2939.02...............................................................................................................................22, 23, 28

R.C. 2953.21...................................................................................................................................10

R.C.2953.21(C)...............................................................................................................................11

R.C. 2953.21(I)...............................................................................................................................14

IN THE ELEVENTH DISTRICT COURT OF APPEALS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                      )          CASE NO: 2004-TR-89
                                    )
        Plaintiff-Appellee,         )
                                    )
vs.                                 )
                                    )
NATHANIEL JACKSON                   )
                                    )
        Defendant-Appellant.        )
                                    )

## STATEMENT OF THE CASE

**Procedural Posture:**

Defendant-Appellant Nathaniel Jackson ("Appellant") stands convicted of aggravated murder (Count One) in violation of R.C. 2903.01(A); aggravated murder (Count Two) in violation of R.C. 2903.01(B); aggravated burglary (Count Three), a felony of the first degree, in violation of R.C. 2911.11(A)(1)(2); and aggravated robbery (Count Four), a felony of the first degree, in violation of R.C. 2911.01(A)(1)(3), along with two capital specifications pursuant to R.C. 2929.04(A)(7) and one firearm specification pursuant to R.C. 2945.145. All charges stem from Appellant's role as the principal offender in the December 11, 2001, shooting death of Robert Fingerhut of Howland Township, Trumbull County, Ohio.

Pursuant to a jury recommendation, the trial court sentenced Appellant to death. Appellant appealed his conviction and sentence to the Supreme Court of Ohio. Both sides have submitted their merit briefs and await an oral argument date in case number 03-137. Appellant filed his initial postconviction petition on January 5, 2004, and followed with an amended petition March 29, 2004. Pursuant to a motion by the Plaintiff-Appellee, the State of Ohio ("State"), the

-1-

trial court dismissed both the original and an amended petition without hearing. The trial court

concluded Appellant had failed to support any of his Fifteen Causes of Action with sufficient

operative facts and that he failed to demonstrate substantive grounds for relief. (T.d. # 322).

Appellant appealed the trial court's dismissal to this Court, which permitted him to file his

initial brief instanter September 23, 2004. The State files this brief in response.

**Statement of the Facts:**

During most of 2001, Defendant-Appellant Nathaniel Jackson ("Appellant") was

incarcerated in the Lorain Correctional Institution for an undisclosed offense. (T.p. Vol. 12, p.

2994-3003). Apparently prior to his incarceration, he began an affair with Donna Roberts, a

divorcee 27 years his senior. Roberts' personal life was somewhat unconventional. Though

having divorced her husband, Robert Fingerhut, in 1985, the pair continued to live together in a

home located at 254 Fonderlac Dr., Howland Township, Trumbull County, Ohio. Their shared

residence was solely in Roberts' name. Both drove late model Chrysler 300-M automobiles, yet,

they too were leased to Roberts, not to Fingerhut. Fingerhut ran Greyhound Bus terminals in both

Warren and Youngstown, Ohio, yet both businesses were in Roberts' name as owner/ operator.

Not surprisingly, Fingerhut's $550,000 life insurance policy named Roberts as the sole

beneficiary. (T.p. Vol. 12, p. 2940-2952, State's Ex. 322, 323).

During the course of Appellant's incarceration, he and Roberts hatched a plan to kill

Fingerhut, collect the insurance proceeds, and continue their affair. The plot was memorialized in

a series of letters exchanged between the two, and 19 tape recorded phone calls. (State's Ex. 271-

D-1 to 271-D-139; State's Ex. 261, 362-A-to 380A).

Upon his release from the Lorain Correctional facility December 9, 2001, Roberts and

-2-

Appellant were spotted together several times.  Roberts paid for an evening together at the Wagon Wheel motel on Market Street  in Youngstown, Ohio, where a group of friends would visit him. (T.p. Vol. 11 p. 2590-2597, 2648-2649 State's Ex. 312).  The owner of Final Cut Barber Shop, located near the Warren Greyhound terminal, testified that a woman matching Roberts' description, whom she recognized from the bus terminal, brought in an African American man for a hair cut Dec. 11, 2001. (T.p. Vol. 12, p. 2883-2886).  A server from the Red Lobster restaurant in Niles, Ohio, recalled waiting on a couple matching Roberts' and Appellant's description on Dec. 11, 2001,  from 5:54 p.m. to 6:43 p.m. The server, Jill Kenyon, selected Appellant's picture from a six-man photo line up and identified him in court. (T.p. Vol 12, p. 2903-2908).

Sometime before midnight on Dec. 11, 2001, a 911 dispatcher received a call from a frantic Roberts claiming that her husband had been shot at the Fingerhut/Roberts residence.  (T.p. IX, p. 2102, State's. Ex 1).  Arriving on the scene shortly thereafter was Howland Police Det. Paul Monroe who immediately encountered Roberts.  Det. Monroe described her as intermittently coherent and incoherent.  He discovered Fingerhut lying face down in a pool of his own blood in the kitchen.  Roberts instructed Monroe to do what ever necessary to apprehend the perpetrator. She also stated five or six times that someone had stolen her husband's car. (T.p. Vol. IX, p. 2204 -2208).

Det. Monroe and other officers began to process the crime scene.  (T.p.  Vol. IX , p. 2215-2221, State's 2, 69-144).  Det. Monroe discovered a fully loaded Taurus revolver approximately 18 inches from Fingerhut's body.  (T.p. Vol. IX, p. 2239). Fingerhut's glasses were discovered under the maroon Chrysler 300-M, routinely  driven by Roberts.  (T.p. Vol. IX, p. 2242). Trumbull County Sheriff's Det. Anthony Leshnack removed a bullet from the kitchen wall.  He

also preserved blood and fingerprint evidence. (T.p. Vol. X, p. 2448-2451). Det. Monroe searched Roberts' 300-M Chrysler where he discovered a bag containing 145 handwritten letters from Roberts to Appellant, along with the phone number for the Lorain Correctional Institution and an empty box of handcuffs. The letters in question were specifically addressed to Appellant and were signed by Roberts. Roberts admitted to Monroe that the letters were hers. (T.p. Vol. IX, p. 2230-2233, 2294-2296). Inside the Roberts/Fingerhut residence, Det. Monroe also located a series of letters from Appellant to Roberts in the master bedroom which were mailed from January, 2001, through December 2001, and addressed to a post office box to facilitate the prison pen pal romance. (T.p. Vol. IX, p. 2300-2301).

Many of the letters recovered by Det. Monroe were sexually graphic. Several detailed Roberts' contempt for Fingerhut, and spoke of both parties' desire to kill Fingerhut and to enjoy the benefits of his lucrative insurance proceeds. For example, in a letter dated Oct. 20, 2001, at 11:20 p.m., Roberts wrote, "And I get sick when he is about to come home at night. I wonder what's going to happen in our house....If there was any way I could leave and just live half as well as I do - I would leave that house right now." (State Ex. 271-D-82). Roberts complains in a letter dated Nov. 10, 2001, that she hasn't got enough for marijuana and is accustomed to having $200 on her. "I have got to figure a way to get some money before you get home! That's for sure. He has me on a real short rope here. ...I HAVE TO ASK PERMISSION TO USE A CREDIT CARD OR WRITE A FUCKING CHECK!" (State's Ex. 271-D-35). Fingerhut's curtailment of Roberts' usual spending practices were apparently rooted in business down turns, because in a letter date Nov. 20, 2001, Roberts tells Appellant that business is down $19,000 at the Youngstown terminal. (State's Ex 271-D-20). In a letter dated Oct. 20, 2001, "And I haven't been allowed to

-4-

use any of my 52 charge cards -emergency only.  I am not used to living like this.  I am used to having plenty of cash for whatever I want and buying everything I want.  Maybe those days will return again soon....Do whatever you want to him ASAP. Amen." (State's Ex. 271-D-81).

In another letter to Appellant, Roberts stated she had obtained a map to the Lorain Correctional Institution, a ski mask, boxers, and fleece-lined black gloves.  (State's Ex.271-D-2). Appellant wrote Roberts on Oct. 2, 2001, "...let me do what I was gonna do to him...Its getting done when I come home." (State's Ex. 273-N-58).   Six days later on Oct. 8, 2001, Appellant wrote, "Donna, I got it already planned out on how we're gonna take care of the Robert situation? An baby, it's the best plan ever!....I promise on my kids."  (State's Ex.273-N-53).  On Oct. 14, 2001, Appellant referenced putting "the gun to that dummy's head." (State Ex 273-N-49).  In letters dated Oct. 20 and 23, 2001, Appellant repeated that "Robert has to go."  (State Ex 273-N-42 & 273-N-38).  He promised to carry out his plan Monday, December 10, 2001, in a letter dated Oct. 24, 2001. (State's Ex 273-N-37).  Appellant reiterated the Dec. 10, 2001, target date in another letter dated Oct. 26, 2001, in which he drew a tombstone engraved with "Rest in piss." (State's Ex. 275 B).  Apparently dissatisfied with the selection of Chryslers at the Fingerhut/Roberts residence, Appellant in a letter Oct. 29, 2001, requested that Roberts get him a 2002 Cadillac Deville.  He further wrote, "An even if I gotta come to the house an shoot Robert in his f-ing head you're gonna be with me.  An do you know what mandatory means?....I want you marry me...Will you marry me after I take care of things."  (State Ex 275-A).

As previously stated, Appellant was released from the Lorain Correctional Institution on December 9, 2001,  and that evening spent the night with Roberts at the Wagon Wheel hotel in Youngstown, Ohio.  In an apparent effort to both conceal Appellant and to facilitate time alone

-5-

with him, Roberts thereafter reserved and paid for a room at the Boardman, Ohio, Days Inn. The pair checked in at this second motel on Dec. 11, 2001 and out on Dec. 17, 2001. A search of the motel's dumpster revealed a plastic garbage bag containing stained bandage dressings, a stained washcloth, a plastic cigar mouthpiece, used condoms and a bottle of Walgreens Hydrogen peroxide. (T.p. Vol. IX, p. 2313-2319). Special Agent Edward Lulla, Bureau of Criminal Identification and Investigation ("BCI&I"), processed the room, and even after it had been cleaned by housekeeping, Agent Lulla discovered blood on the bed's comforter, blood stains on the wall, blood stains on the bathroom floor and blood and semen stained towels. (T.p. X, p. 2206-2610).

Fingerhut's silver Chrysler 300-M was located at the corner of Victoria and Pershing Avenues in Youngstown, Ohio, on Dec. 12, 2001. Det. Monroe noticed blood on the passenger's door handle, right front seat, driver's headrest and trunk release. (T.p. Vol. IX, p. 2272-2279).

The State produced several expert witnesses to connect physical evidence collected to Appellant. Brenda Gerardi, BCI & I serologist, established a DNA match of one in 29 quadrillion African Americans to Appellant in blood stains recovered from gauze bandages found in the Days Inn dumpster. She could exclude neither Appellant nor Fingerhut as contributors to a blood stain removed from the visor of Fingerhut's car. Gerardi also found a mixture of Fingerhut's and Appellant's DNA on the trunk release, noting that Appellant was a major contributor and Fingerhut as a minor contributor by a match of one in 29 quintillion in the African American population to Appellant's portion of the mixture. (T.p. Vol. 12, p. 2823, 2833-2840).

Michael Roberts, a firearms expert with BCI & I, concluded that none of the bullets recovered from Fingerhut during his autopsy was fired from the gun found near his body. Roberts also examined a pair of black leather gloves which was recovered from a Wirt Street home in

Youngstown where Appellant was arrested. One of those gloves had damage to the index finger. Roberts noted a "vaporous lead" in the glove which is indicative of a gun having been fired at close range. He also notice blood on the gloves and turned them over to serology. (T.p. Vol. 11, p. 2685-2694).

Also testifying for the State was Cynthia Mayle, a latent finger print expert. She matched Appellant's finger prints to the room key for room 129 at the Days Inn. (T.p. Vol. 11, p. 2726). BCI & I document handler and hand writing expert, Steve Green, testified that he matched known samples of Appellant's handwriting to the letters recovered from the Roberts/Fingerhut home. (T.p. Vol. 12, p. 2875).

Forensic pathologist Dr. Humphrey Germaniuk performed the autopsy on Fingerhut. He noted gunshot wounds to the left side of the top of his head, right side back and chest, and a graze wound to the upper right back. The doctor noted an injury to the webbing of his left hand. He found a laceration to Fingerhut's head which he stated was consistent with being pistol whipped. Dr. Germaniuk also found a v-shaped abrasion to the nose consistent with being struck while wearing eye glasses. He testified that other than the gunshot wounds, the remaining injuries were consistent with those sustained in a struggle. (T.p. Vol. 11, p. 2541-2558, 2577). Trumbull County Coroner Dr. Ted Soboslay ruled the cause of death homicide secondary to multiple gunshot wounds. (T.p. Vol. 11, p. 2519).

Appellant was arrested for Fingerhut's murder December 21, 2001. After being fully Mirandized, Appellant gave a recorded statement to Det. Monroe and Det. Jeffery Hoolihan of the Warren Police Department. In the statement, he claimed that he met Fingerhut at the Youngstown Greyhound terminal to ask him for a job. Fingerhut then drove Appellant to purchase marijuana

for him, and then drove him to the Roberts/Fingerhut residence.  While at the house, Appellant stated the two became embroiled in a bitter argument when Fingerhut became disrespectful to him.  Fingerhut pulled a gun on Appellant, and a struggle ensued during which Appellant was shot in the finger, and Fingerhut sustained numerous gunshot wounds.  He claimed he tossed the murder weapon out the car window while driving Fingerhut's silver Chrysler 300-M back to Youngstown after the shooting.(State's Ex. 325).   When arrested, Appellant's right hand index finger was bandaged. (T.p. Vol. X, p. 2415).

Several witnesses disputed various details of Appellant's statement.  For example, Dr. Germaniuk testified that Fingerhut had no drugs or alcohol present in his system at the time of the autopsy.  (T.p. Vol. 11, p. 2555).  Despite claims of Appellant looking for a job at the Youngstown Greyhound terminal, a WTRA security guard claimed he never saw Appellant there the day of murder, but had seen him there previously with Roberts.  (T.p. Vol. IX, p.2150, 2156).

Based on the above evidence, the jury returned guilty verdicts on all charges and attendant specifications.  The case proceeded to a mitigation hearing wherein a variety of conflicting testimony was offered by the Appellant for the jury's consideration.  For example, Appellant's sister, Taushia Korneagay, testified that Appellant was never a street person as he relayed to defense-hired pyschologist, Dr. Sandra McPherson. (T.p. Vol. 16, p. 27, 40).  His mother, Pauline Korneagay, testified Appellant did well in school until he decided to drop out.  To the contrary, Dr. McPherson testified Appellant suffered from Attention Deficit Hyperactivity Disorder (ADHD) and exhibited "fairly serious behavioral problems" from the first grade.  (T.p. Vol. 16, p. 37).  Appellant also told the doctor that he lived in a violent neighborhood, claiming to have been shot four or five times, yet his mother adamantly denied that the family lived in a rough

neighborhood.  (T.p. Vol. 16, p. 32, 68).  Dr. McPherson testified that Appellant had no mental disease or defect, was not physically abused as a child, abused drugs, and did not learn from his mistakes.  (T.p. Vol. 16, p. 38-39, 78-79, 88).  Despite defense counsel's closing argument in the trial phase that there was no "plan" between Roberts and Appellant to murder Fingerhut, Dr. McPherson testified that Appellant planned to kill Fingerhut for money and to be with Roberts.  (T.p. Vol. 16, p. 98).

Based on the above testimony, the jury found that the aggravating circumstances outweighed the mitigating factors and recommended a death sentence.  The trial court concurred and imposed the death sentence.  Other pertinent facts will be brought to the Court's attention in the argument portion of this brief.

## ARGUMENT

**APPELLANT'S ASSIGNMENT OF ERROR NO. I:** The trial court erred when it denied Petitioner's Amended Post-Conviction Petition without first affording him the opportunity to conduct discovery.

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:** A trial court is without authority to compel discovery in a postconviction proceeding.

Appellant in Assignment of Error No. I argues the trial court improperly denied him an opportunity to conduct discovery to support his petition with the facts necessary to support his baseless Causes of Action.  This argument lacks merit.

As Appellant concedes in his brief, authority from this very Court totally emasculates his argument.  He argues this Court should reconsider its decisions in *State v. Lorraine* (Feb. 23, 1996), 11th Dist. No. 5196, and *State v. Wiles* (1998), 126 Ohio App. 3d 71, to allow postconviction petitioners to *first*  submit wholly unsupported, statutorily deficient  claims for relief, and to *then* proceed to a court-ordered fishing expedition.  The State submits this Court should decline Appellant's request to re-write its well-reasoned precedent in this arena.

The purpose of postconviction relief proceedings under Ohio R.C. 2953.21 is set forth in subsection (A), which provides:

> (A) Any person convicted of a criminal offense or adjudicated delinquent claiming that there was such a denial or infringement of his rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, may file for relief relied upon, and asking the court to vacate or set aside judgment or sentence or to grant other appropriate relief.

Subsection (C) of 2953.21 provides that before a hearing is granted on such a petition, the trial court "shall determine whether there are substantive grounds for relief."  In making this determination, the trial court is to consider the allegations of the petition for postconviction relief

-10-

and the particular facts upon which a petitioner bases his claim.  The court is also required to consider "in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court and the court reporter's transcript." R.C.2953.21(C). If, upon such consideration, the trial court finds that there are no substantive grounds for relief which would warrant a hearing, the court may dismiss the petition without a hearing.  *State v. Jackson* (1980), 64 Ohio St.2d 107, 110.

In addition, the Ohio Supreme Court has determined that it is incumbent upon a petitioner to do more than simply assert a claim to be entitled to a hearing on his petition.  Where the record indicates that the petitioner is not entitled to relief, the petitioner must also support the allegations in a petition for postconviction relief with evidentiary documents containing sufficient operative facts to support the allegations or claims for relief.  Otherwise, the petition is subject to dismissal without a hearing.  *State v. Kapper* (1983), 5 Ohio St. 3d 36, 38.

Appellant can cite to no authority from this Court or any other which permits a petitioner to file a facially deficient and unsupported claim, and then follow at a later date with materials which may, or may not, support the claim.  However, this Court has made it crystal clear that the burden rests with the petitioner to support his claims at the initial phase of the postconviction proceedings, not at some unknown point in time:

> "[T]he burden is on the petitioner to submit evidentiary documents containing sufficient operative facts to demonstrate his claim and to merit a hearing. It is well established that the power to conduct and compel discovery is not included within the trial court's statutorily-defined authority.***Thus, since the underlying petition was dismissed without a hearing, appellant was not entitled to conduct discovery." (Internal cites omitted).

-11-

*Lorraine,* supra, at *5, 6.

The Third Appellate District concurred with this logic in another capital case, *State v. Spirko* (1998), 127 Ohio App. 3d 421, 429.

> "Spirko's argument for discovery is not well taken. Postconviction petitions are special civil actions governed exclusively by statute. R.C. 2953.21 and 2953.23. There are no provisions in the statute for a postconviction petitioner to obtain discovery. *State v. Smith* (1986), 30 Ohio App.3d 138, 140, 30 OBR 256, 258-259, 506 N.E.2d 1205, 1207-1208. Accordingly, the trial court did not err when refusing discovery upon Spirko's filing a successor postconviction petition."

The Supreme Court of Ohio relied upon *Spirko,* supra, when it succinctly held, "there is no requirement of civil discovery in postconviction proceedings." *State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office* (1999), 87 Ohio St. 158, 159. Likewise, the Sixth District Court of Appeals found the late John Byrd, Jr., was not entitled to discovery in a postconviction proceeding:

> "***This court has repeatedly held that trial courts are not statutorily required to compel discovery so that a petitioner may gather evidence to prove that an evidentiary hearing is warranted on his postconviction petition. Given that discovery is not available in the initial stages of a postconviction proceeding and that the trial court determined here that it had no jurisdiction to entertain Byrd's successive postconviction petition, we cannot say that the trial court erred in refusing to allow Byrd to engage in discovery shortly after he had filed his successive petition."

*State v. Byrd* (1998), 145 Ohio App. 3d 318, 332, 333.

Finally, this Court has held that "[w]hether discovery may be had on a postconviction claim is a matter committed to the discretion of the trial court. *Wiles,* supra, at 79. The court below did not abuse its discretion in this matter. Appellant was not entitled to discovery; the court did not order discovery. The trial courts should not be placed in a position of rewarding baseless postconviction petitions with court-ordered discovery. Such is contrary to the letter and to intent of R.C. 2953.21. Appellant's first assignment of error is without merit.

**APPELLANT'S ASSIGNMENT OF ERROR NO. II:** The trial court erred when it refused to grant Petitioner funds to employ experts.

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:** A postconviction petitioner has no entitlement to court-funded experts to bolster legally deficient claims for relief.

In Assignment of Error of No. II, Appellant claims he was "entitled" to the appointment of experts to prop up his spurious claims advanced in his voluminous, yet baseless, postconviction petition.

Through its Findings of Fact, the Court below declined to appoint experts to ferret out some semblance of evidence to support the unsupportable. In his petition, Appellant sought the appointment of experts to investigate whether there was "racial bias" in the grand jury process which ultimately led to Appellant's indictment, trial, conviction and death sentence.   The court based its decision on this Court's decision in *State v. Williams* (Oct. 19, 1998), 11th Dist. No. 97-T-0153 at 9. Williams, it should be noted, was another Trumbull County capital case. Williams enjoyed the benefit of court-appointed counsel to file his post-conviction petition, and sought the appointment of a court-funded investigator, a mitigation specialist and a neuropsychologist.   In *Williams,* this Court found no error in the trial court's denial of expert assistance to support death row inmate Andre Williams' postconviction claim.  This Court reasoned as follows:

> "***We find no constitutional violation of appellant's constitutional rights in this ruling.  The right to expert assistance is linked to the constitutional right to counsel.  See *State v. Richey* (1992), 64 Ohio St. 353, 359.  Because postconviction proceedings are civil in nature, a petitioner has no constitutional right to court-appointed counsel. *State v. Mapson* (1987), 41 Ohio App. 3d 390, 391.  Consequently, a petitioner would have no corresponding right to expert assistance.  If the trial court grants a hearing, a petitioner may have a statutory right to legal representation by the public defender's office if his petition is found to have arguable merit.  *State v. Crowder* (1991), 60 Ohio St. 3d 151, paragraph one and two of the syllabus; R.C. 120.16"

*Williams,* supra, at 9.  Appellant argues the trial court's reliance upon *Williams* to deny him expert assistance is "flawed" because the trial court granted Appellant's motion for the appointment of counsel to prepare the post-conviction petition. He incorrectly argues that he has a "right to appointed experts."   Appellant's Brf. at page 6. He construes a "right" to appointed

-13-

counsel by the wording of R.C. 2953.21(I) which, in capital cases only, the trial court is instructed to appoint counsel for an indigent defendant.  However, it is well-settled law that state collateral review itself is not a constitutional right. *State v. Steffen* (1994), 70 Ohio St.3d 399, 410,  citing *Murray v. Giarratano* (1989), 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1. Further, a postconviction proceeding is not an appeal of a criminal conviction but, rather, a collateral civil attack on the judgment. See *Steffen* at 410, citing *State v. Crowder* (1991), 60 Ohio St.3d 151. Therefore, a petitioner receives no more rights than those granted by the statute.

R.C. 2953.21 et seq. lists no "right" to experts in a postconviction proceeding.  Had the Ohio General Assembly intended to grant capital defendants court-appointed experts and court-ordered discovery along with their court appointed attorneys, the statute would have so stated.  It clearly does not.  Ohio statutes do not provide such a "right."

Certainly, trial courts have the authority to appoint experts when the petitions merit such an appointment.  Appellant cites to the Ohio Supreme Court's decision in *State v. Lott* (2002), 97 Ohio St. 3d 303, 306.  But even in *Lott* where the defendant attempted to show that he was mentally retarded in an effort to escape the death penalty, the Ohio Supreme Court stated the trial court should appoint experts "if necessary." Id.

Because the trial court found Appellant failed to demonstrate that there were substantive grounds for relief, it was clearly not necessary to appoint the experts.  Thus, Appellant had no right to court appointed experts and the trial court did not abuse its discretion in declining to appoint same.  Appellant's Assignment of Error No. II is without merit.

**APPELLANT'S ASSIGNMENT OF ERROR NO. III:** The post-conviction assistant prosecutor erred by not providing petitioner with the information contained in the prosecutor's files which was necessary to support the claims contained in the amended petition.

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:** Ohio Law places the burden on the petitioner, not the State, to produce evidence sufficient to withstand a motion to dismiss or motion for summary judgment.

In his third Assignment of Error, Petitioner attempts to impermissibly shift the burden of proof to the State in an effort to support the outlandish claim that the victim, Robert Fingerhut, orchestrated the demise of a "body double" to collect his own insurance proceeds, along with the thoroughly feckless allegation that Appellant's co-defendant, Donna Roberts, was offered a plea agreement because she is white. These allegations are wholly unsupported by the record, the voluminous exhibits submitted with the petition, Ohio postconviction jurisprudence and simple common sense.

In his brief, Appellant devotes more space to attacking undersigned counsel than to finding legal flaws within the trial court's Findings of Fact. Apparently ignoring the most basic tenets of postconviction procedure, Appellant repeatedly challenges the State to prove the non-existence of a police report which Appellant himself failed to produce. The State restates the obvious: the burden is upon the defendant to prove that his convictions are void or voidable. There is no burden upon the State to disprove the unproven.

Nevertheless, it is obvious from the face of the trial court's opinions that Appellant's claims lacked any credibility whatsoever. Appellant again argues that the State withheld "exculpatory" evidence that Robert Fingerhut intended to fake his own death and then collect the insurance proceeds. He totally ignores the fact that the policies introduced at trial named Donna Roberts as the beneficiary, and fails to explain away the obvious hurdle that a dead person cannot collect the insurance proceeds on his own life insurance policy.

Nevertheless, this purported evidence supposedly appeared in some phantom police report which Appellant has been unable to locate, review or produce. The only shred of

verification that such a document existed was an affidavit from the postconviction/postconviction appellate counsel, Randall Porter,  who claimed he learned about it in a conversation  with  John Juhasz, a Youngstown attorney who represented co-defendant Donna Roberts at trial. Appellant never produced the report, and not insignificantly, Atty. Juhasz did not verify the existence of said report with an affidavit of his own.

The State is unsure of what possible definition Appellant is affixing to "exculpatory" in the context of the above scenario.  Nevertheless, even assuming arguendo that the report ever existed and that Atty. Porter captured the essence of said report in his affidavit, the court below did not view the "evidence" as "exculpatory:"

> "Furthermore, the evidence is not exculpatory.  Even if Mr. Fingerhut engaged in musings regarding a "body double" homicide, and even if these musings were memorialized in a police report, Petitioner admitted to shooting a man in Robert Fingerhut's home who he identified as Fingerhut. Even in the most unlikely occurrence that Petitioner shot a 'body double,' he still planned and executed an aggravated murder of a man who a forensic pathologist conclusively concluded was dead, and the evidence overwhelmingly demonstrates that Petitioner is responsible for that death.  The unfounded and baseless theory that Robert Fingerhut may be still roaming the face of the earth and enjoying his own insurance proceeds does not exonerate Petitioner from causing the death of another during the course of an aggravated burglary and aggravated robbery with well documented  prior calculation and design."

(T.d. #322, p. 13).

Additionally, the trial court below has the duty to weigh the credibility of the affidavits which are attached to postconviction claims.  In *State v. Calhoun* (1999), 86 Ohio St. 279, 285, the Ohio Supreme Court set forth several criteria in evaluating the credibility of post conviction affidavits:

> "Among those factors are (1) whether the judge reviewing the postconviction relief petition also presided at the trial, (2) whether multiple affidavits contain nearly identical language, or otherwise appear to have been drafted by the same person, (3) whether the affidavits contain or rely on hearsay, (4) whether the affiants are relatives of the petitioner, or otherwise interested in the success  of the petitioner's efforts, and (5) whether the affidavits contradict evidence proffered by the defense at trial. Moreover, a trial court may find sworn testimony in an affidavit to be contradicted by evidence in the record by the same witness, or to be internally inconsistent, thereby weakening the credibility of that testimony."

The same judge who reviewed the postconviction petition was the judge who presided at trial. This judge found serious credibility problems with the Porter affidavit:

> "With respect to this issue, the affiant, Atty. Porter, relies upon hearsay evidence as supplied by Atty. Juhasz who has never backed up Atty. Porter's claim with his own affidavit.  Secondly, Atty. Porter has a clear interest in the outcome of this case as the Petitioner's counsel of record.  Therefore, this Court concludes that the Porter affidavit contains no competent,  credible evidence for this Court to believe that such a report ever existed."

(T.d. #322, p. 13).  Appellant does not even challenge this finding in his brief. Nor does he challenge the court's labeling "disingenuous" his claim that because of *Steckman v. Jackson* (1994), 70 Ohio St. 3d 420, he was unable to review relevant law enforcement files.  The court cited to *seven* police reports which Appellant attached to his petition regardless of any *Steckman* obstructions.

Appellant relies upon a footnote in the  U.S. Supreme Court decision of *Imber v. Pachtmon* (1976), 424 U.S. 409 to support his theory that "the prosecutor's duty of disclosure extends to post-conviction proceedings."  Appellant's Brf. at 7.  The footnote in question reads as follows:

> "The possibility of personal liability also could dampen the prosecutor's exercise of his duty to bring to the attention of the court or of proper officials all significant evidence suggestive of innocence or mitigation. At trial this duty is enforced by the requirements of due process, *but after a conviction the prosecutor also is bound by the ethics of his office to inform the appropriate authority of after-acquired or other information that casts doubt upon the correctness of the conviction.* Cf. ABA Code of Professional Responsibility s EC 7-13 (1969); ABA Standards, supra, s 3.11. Indeed, the record in this case suggests that respondent's recognition of this duty led to the post-conviction hearing which in turn resulted ultimately in the District Court's granting of the writ of habeas corpus."

*Imber,* supra, at fn 25. (Emphasis added).  The correctness of Appellant's conviction is simply not at issue here.  As previously quoted in the court's findings,  Appellant was convicted and sentenced to death with overwhelming evidence which included letters and taped telephone conversations with Appellant's paramour, Donna Roberts, wherein the two clearly planned the murder of Robert Fingerhut so that they would collect the insurance

proceeds. Furthermore, Appellant was obviously aware of the "body double" theory because his co-defendant addressed this issue is a personal letter to *Appellant himself*! (T.d. #322, p. 12, Petition Ex. 44). Therefore, the petitioner failed to offer any proof whatsoever that the "body double" report ever existed, or that it was withheld from the Appellant.

Appellant also makes the down right offensive, not to mention completely unsupported, allegation that the Trumbull County Prosecutor's Office has "selectively targeted African-Americans in capital cases." Appellant's Brf. 8. The Office of the Prosecuting Attorney cannot choose the race of the murderers who present themselves for prosecution.  Further, the decision to indict a case with capital specifications rests not with the prosecutor, but with the grand jury.  Nevertheless, the very evidence submitted by Petitioner shows that the Trumbull County Prosecutor's Office is color blind in prosecuting capital cases once the grand jury hands up an indictment. (See Petitioner's Ex. 1 & 2)

Trumbull County's death row inmates currently include five African Americans and five Caucasians.(T.d. #322, p. 6).  A more evenly divided racial grouping one could not find. Trumbull County is the only county in Ohio which has a woman on death row, who, coincidentally, is Petitioner's co-defendant.

Appellant claims  his Caucasian co-defendant was purportedly offered a plea agreement which would have spared her life.  Once again the only evidence offered is an affidavit containing the hearsay statements of Atty. Porter.  Even if this Court excepts this statement as credible, there is no submission  from Atty. Juhasz, hearsay or other wise, that the plea offer was based on her race.  If, in fact, such a plea offer existed, it may well have been due to the fact that Roberts, unlike Petitioner, was not the actual shooter in this homicide, nor did she have Petitioner's lengthy criminal history.

The Ohio Supreme Court, in *State v. Flynt* (1980), 63 Ohio St. 3d 132, 134, established the following criteria for determining whether a prosecuting authority has engaged in either selective or discriminatory prosecution:

-18-

> "To support a defense of selective or discriminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.' " (Quoting *United States v. Berrios* [C.A. 2, 1974] 501 F 2d 1207, 1211).

Appellant cannot argue that he was "singled out" for prosecution. Nor does he argue bad faith on the State's part.  The grand jury not only indicted both Appellant and Roberts, but two separate juries convicted them, and the same trial judge sentenced both of them to death row.

The trial court found as follows with respect to unfounded allegation of racially biased charging practices of this office:

> "Petitioner's statistics and photographs  contribute no operative *facts* to his argument  that a defendant's or a victim's race had any influence over the prosecutor's discretion in pursuing a death penalty.   Taking his evidence at face value, it is apparent that Trumbull County has sent both African Americans and Caucasians to Death Row, and has imposed life sentences for both African-Americans and Caucasians. Relying upon the Petitioner's pictorial evidence, it appears that five of Trumbull County's African American murderers are on Death Row, while another eight Trumbull County African American murders received life sentences.  At paragraph 21 of his amended petition, Petitioner lists sixteen defendants serving life prison terms for homicides wherein the victim was Caucasian. This evidence fails gives no credence to Petitioner's theory that his race or Mr. Fingerhut's race influenced the State's election to seek the death penalty in this matter.  With a lack of operative facts, this Court finds no substantive grounds for relief.This claim is dismissed without hearing.  R.C. 2953.21 (C).  *** This Court is completely unpersuaded by Petitioner's argument that Roberts was possibly offered a plea to a life sentence in this case, or that the State offered her a life sentence because of her race.  Justice was ultimately as color blind as it could be in this case.  Both of Fingerhut's killers, one white, one black, are awaiting execution." (Italics original).

(T.d. #322, p. 6-7).

Even if Roberts was offered a plea agreement, the State submits this argument is rendered moot by the fact that Roberts never accepted any plea agreement, but went to trial before the very court that ultimately sentenced her to death just like Appellant.

That having been said, Appellant's cause of action  on this issue is barred by the

doctrine of res judicata.  Appellant raised the "racial disparity" issue in his merit brief before the Supreme Court of Ohio in Propositions of Law No. 11 and 12.  (Appellant's Merit brief pages 76, 88-89).  Therefore, this argument is barred by the doctrine of res judicata.  See *State v. Perry* (1967), 10 Ohio St. 175, 180, *State v. Cole* (1982), 2 Ohio St. 3d 112, at paragraph one of the syllabus.

Moreover, it is patently obvious that Appellant is on death row not because he is African American, but because he planned and calculated Robert Fingerhut's murder from prison, and then personally entered Fingerhut's home and shot him to death.  His motivation in this murder was his desire for Roberts' and her share of Fingerhut's insurance proceeds. These factors have nothing to do with Appellant's race.  None of Appellant's three exhibits affixed to his petition in the lower court demonstrate that he was "selectively targeted."

Indeed, the only party selectively targeted for execution was Robert Fingerhut.  He was selectively targeted by Appellant and Roberts because he was financially stable enough to invest in $550,000 worth of life insurance and generous enough to name Roberts as the sole beneficiary in the event of his demise.

For these reasons, the trial court issued legally and factually supported findings that Appellant failed to produce any evidence of suppressed exculpatory evidence or racially biased indictment or sentencing procedures.  This assignment of error is wholly without merit.

**APPELLANT'S ASSIGNMENT OF ERROR NO. IV**:  The post-conviction trial judge erred by not recusing himself.

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT**:
An experienced jurist's working knowledge of procedures within his own court does not indicate a bias against a post conviction petitioner and does not merit a sua sponte recusal by said jurist.

Appellant next argues that the judge presiding over the postconviction claim should have recused himself from the postconviction proceedings because (1) he knows how his own court operates, (2) he knows he did not see a letter Appellant claims to submitted prior to trial complaining about his attorneys, and (3) he used common sense in determining the time and effort necessary in unearthing potentially mitigating evidence to aid a capital defendant.  This argument is without merit.

Initially, the State submits that there is well-settled law that a court of appeals is without authority to pass upon disqualification or to void the judgment of the trial court on that basis.  *State v. Ramos* (1993), 88 Ohio App. 3d 394, 398.  Furthermore, "[t]he claimed error does not concern any act or omission occurring at trial, and is, therefore, not an appropriate claim in an appeal from the dismissal of a petition for postconviction relief." *State v. Coleman* (March 17, 1993), No. C-910083, at * 7.  Therefore, Appellant has raised an issue in this Court over which it has no authority to pass judgment, and should be found to be without merit on this basis alone.

Should this Court disagree, the State would merely point out that the party seeking the recusal of a judge must demonstrate some bias on the judge's part:

"(A) If a judge of the court of common pleas allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party to the proceeding or the party's counsel may *file an affidavit of disqualification with the clerk of the supreme court* in accordance with division (B) of this section." (Emphasis added.)

R.C. 2701.03(A).  The comments about which Appellant now complains do not

reveal an interest, bias or prejudice on the trial court's part.

Appellant first takes issue with the fact that the trial court noted that contrary to the absolutely unsubstantiated claims by the Appellant that some unknown, and unnamed Trumbull County Common Pleas judge had handpicked a white grand jury foreman who indicted Appellant solely because of his race, he was personally unaware of any instance where one of the general division judges had exercised their prerogative pursuant to R.C. 2939.02 to name a grand jury foreperson. Appellant essentially insinuates that an experienced trial judge should consider these petitions in some never land vacuum and permit blatant misstatements of process and procedure to go unaddressed. If a judge does otherwise, by Appellant's analysis, he or she is guilty of bias. This concept untenable. Furthermore, the same trial counsel who apparently sees nothing wrong with attaching his own affidavit to transform hearsay conversations into postconviction "evidence" attempts to disqualify the trial judge claiming the judge has turned himself into a "witness" in this matter. Unbelievable.

By way of analogy, the U.S. Second Circuit Court of Appeals found that even when a judge is familiar with the facts of a case, due to pre-trials or assignment to co-defendants' cases, no recusal is required. "[W]hat a judge learns in his judicial capacity--whether by way of guilty pleas of codefendants or alleged coconspirators, or by way of pretrial proceedings, or both--is a proper basis for judicial observations, and the use of such information is not the kind of matter that results in disqualification." *United States v. Bernstein* (C.A.2, 1976),533 F.2d 775, 785. Since "evidence presented in the trial of a prior cause ... do[es] not stem from an extrajudicial source,' it creates no personal bias requiring recusal. *State v. Smith* (Iowa 1976), 242 N.W.2d 320, 324." The trial court in the case sub judice is obviously more familiar with how grand jury foremen and forewomen are selected in his own court than is Appellant. He does not demonstrate bias in trying to clarify and correct Appellant's obvious efforts to muddy the record with unsupported misstatements of practice and procedure.

Nonetheless, the trial court found Appellant's claim baseless for other reasons, including the fact that Appellant failed to present documentation that R.C.2939.02 was ever utilized in the Trumbull County Common Pleas Court, that he failed to present "one scintilla of evidence" that Petitioner's grand jury forewoman was selected in a racially discriminatory manner, that his exhibits failed to support his claim of racial discrimination, and that the entire claim was barred by the doctrine of res judicata. (T.d. #322, 10).

Likewise, with respect to the letter Appellant "swore" he sent to the judge regarding his dissatisfaction with his trial counsel, the trial judge stated he had not seen this letter. But again, the trial court did not dismiss Appellant's claim of ineffective assistance of counsel solely because he did not see the letter. The trial court dismissed the claim because Appellant failed to provide operative facts that there was a breakdown in the attorney-client relationship:

> "This Court has no independent recollection of reviewing this letter. This would be the sole explanation why the letter was not addressed within the record before this Court. However, this Court does specifically recall that during pre-trial hearings, voir dire, the guilt and penalty phase Petitioner made no complaints concerning either Atty. Lewis or Atty. Consoldane. This Court observed Petitioner communicating and interacting with them. In fact, there are references in the transcript where Petitioner communicated with Atty. Consoldane. (T.p. Vol. 16, p. 4, 5, 196). Therefore, based on this Court's own observations and the lack of evidence to the contrary in the record, this Court cannot find that communication had broken down, nor was there an irreconcilable conflict.***'To discharge a court- appointed attorney, the defendant must show 'a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel.' *State v. Coleman* (1988), 37 Ohio St. 3d 286, 292 This Court finds nothing in Ex. 45 or Ex. 3 to suggest that there was a "breakdown" in the attorney-client relationship, just a dissatisfaction common among defendants in situations similar to Petitioner's. Having provided no operative facts to support his claim, this Court finds no substantive grounds for relief and dismisses this claim without hearing."

(T.d. 322, p. 15). Furthermore, there is nothing in the record or in the postconviction petition and exhibits to indicate that Appellant was bound and gagged during pre-trial or trial proceedings and could not have raised the issue on the record directly with the court. The trial court's independent observations of Appellant communicating and interacting with his

-23-

attorneys were supported by the record.  No reasonable inference could be made that the trial judge disposed of this issue merely because the letter never reached his desk.

Lastly, Appellant complains of the trial court's opinions as to trial counsel's mitigation phase preparation.  Appellant fails to pin point any evidence of bias, prejudice or interest in the outcome of the postconviction procedure.  The trial court has expressed an opinion with which Appellant may disagree, and even raise on appeal, but nothing in the court's opinion at pages 25 and 26 indicate that the court was not fairly and impartially considering the evidence, or in this case, profound lack thereof.

For the above stated reasons, Appellant has miserably failed to demonstrate a basis for sua sponte recusal of the trial court in this case.  The matter is  improperly before this tribunal in the first place.  Appellant's Assignment of Error No. IV is without merit.

**ASSIGNMENT OF ERROR NO. V:** The trial court erred by applying the doctrine of res judicata to certain of petitioner's causes of action.

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:** A trial court properly applies the doctrine of res judicata to dismiss a postconviction claim when an issue was raised, or could have been raised on direct appeal.

In Assignment of Error No. V, Appellant contends the trial improperly found that several of his postconviction claims were barred by the doctrine of res judicata. The State submits not only did the trial court properly hold that the res judicata bar applied, but repeatedly cited other legally sound reasons for dismissing his claim without hearing.

By way of background, it is well-settled law that the doctrine of res judicata is applicable to postconviction relief proceedings. In *State v. Perry* (1967), 10 Ohio St. 175, the Ohio Supreme Court held that:

> "Under the doctrine of *res judicata,* a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except on appeal from that judgement, any defense or claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in the judgment of conviction or on appeal from that judgment." Id. at 180.

In *State v. Cole* (1982), 2 Ohio St. 3d 112, the court clarified that res judicata is a proper basis upon which to dismiss a petition for postconviction relief where the issue sought to be presented could have been raised at trial or on direct appeal,  and where "such issue could fairly have been determined without resort to evidence de hors the record."  *Cole* at paragraph one of the syllabus.  Evidence de hors the record must demonstrate that these claims could not have been raised on appeal based on the information in the original record. *State v. Lawson* (1995), 103 Ohio App. 3d 307, 315.

Based on the above authority, the trial court properly applied the doctrine of res judicata in dismissing Appellant's claims. For the sake of clarity and continuity only, the State will utilize Appellant's sub headings to address his individual complaints.

1. **The State of Ohio has an infirm postconviction system:**

Appellant postulates in his brief that "[t]rial counsel had no reason to raise the constitutionality of Ohio's postconviction petition [sic] prior to trial." Appellant's Brf. at 15. This argument is wholly disingenuous. The reason for raising the issue pre-conviction is to preserve the issue for further appellate review, just as his trial counsel did with a myriad of other provisions within Ohio's death penalty scheme. These already rejected arguments consume over half of Appellant's brief (pages 47 to 107) pending before the Ohio Supreme Court. Like these other discounted challenges, Ohio's postconviction scheme could have been included in the boilerplate mix. For this reasons, the res judicata bar applies.

Additionally, the trial court found no substantive grounds for relief for this claim. Appellant failed to meet his evidentiary burden by omitting any substantive evidentiary documents. Furthermore, this Court has held that an appeal of a post-conviction dismissal is not the proper vehicle to challenge a violation of federal constitutional rights. "The argument is designed to be made in an original action for habeas corpus and has no place in a direct appeal from the dismissal of a petition for postconviction relief." *State v. Wiles* (1998) 126 Ohio App. 3d 71, 83.

Moreover, postconviction relief is not designed as a forum to litigate constitutional issues which could have been raised on direct appeal, thus relegating "courts to disposition of the action on technicalities or collateral issues, as opposed to the merits." *State v. Roberts*

(1982), 1 Ohio St.3d 36, 39 There is, further, no constitutional right to postconviction state

collateral review. *State v. Steffen* (1994), 70 Ohio St.3d 399, 410.  Therefore, not only is there

a res judicata bar to raising this issue, there is a constitutional one as well.

2.    **The Trumbull County Prosecutor seeks the death penalty in a racially discriminatory manner.**

Appellant raised this issue in his direct appeal to the Ohio Supreme Court in

Propositions of Law 11 and 12.  (Appellant's Merit brief pages 76, 88-89).  Furthermore,

Appellant's Ex. 1-35 were available at the time of trial, and this Court has clearly held that

the res judicata bar applies if the exhibits were available to the petitioner at the time of trial.

> "Further 'the evidence dehors the record must not be evidence which was in
> existence and available for use at the time of trial and which could and should
> have been submitted at trial if the defendant wished to use it.' *State v. Slagle*
> (Aug. 10, 2000), 8th Dist. No. 76834, 2000 WL 1144947, at * 3. In the instant
> matter, appellant fails to identify any new evidence with respect to the conduct
> of the trial that would overcome res judicata."

*State v. Cowans* (2002), 151 Ohio App 3d 228, at ¶15, 16.

Appellant did not argue in the Court below, nor does he argue here, that his 35

exhibits, mostly prison photographs of fellow  Trumbull County's murderers, would not have

been available at the time of trial.  Thus, pursuant to *Cowans,* the res judicata bar applies.

The court below also dismissed the claim because Appellant offered no operative

facts that a victim's or a defendant's race had any bearing on the charges instituted by the

prosecuting attorney.  (T.d. #322, p. 6).

3.    **The grand jury contained an underpresentation [sic]of African Americans.**

Not only did the trial court opine that this issue could have been raised on direct

appeal, the trial court pointed out that Appellant failed to present any evidence whatsoever as

to the racial composition of the grand jury that indicted him.  Thus, the trial court found Appellant had failed to present operative facts to support the claim. With respect to the res judicata bar, the trial court, consistent with *Cowans* held, that the information used to support the claim  would have been available to Appellant at the time of trial.

The State submits Appellant's claim that his counsel was "ineffective" for failing to litigate this issue is completely speculative and unsupported by the record or his exhibits.  In order to brand counsel ineffective for failing to raise the issue, Appellant would have to prove that he was in fact the victim of a racially motivated indictment, something he has repeatedly failed to do in his Petition or in his direct appeal.

4.    **The Trumbull County Common Pleas Court selected grand jury forepersons in a racially discriminatory manner.**

The trial court below relied upon a decision from the First District Court of Appeals, *State v. Hughbanks* (Jan. 17, 2003), 1st Dist. No. C-010372,  which unequivocally supports the dismissal of this claim based on res judicata.  The fact that trial counsel may have elected to foregoing challenging a fact which they could not change, the race of the grand jury forewoman, does not mean the issue could not have been addressed at the trial court level and preserved for the direct appeal.

In addition to the res judicata bar, the trial court found that he failed to prove that any common pleas judge had ever utilized R.C. 2939.02 at all, let alone in a racially discriminatory manner.

5.    **The petit jury venire was selected in a racially discriminatory manner:**

The trial court properly found that a res judicata bar applies here.  Trial counsel noted

-28-

an absence of African Americans in the jury for the record and the trial court recognized that fact. (T.d. #322, p. 19;T.p. Vol. 7, p. 1846).  Therefore, the issue could have been raised on direct appeal but was not.

Furthermore, Appellant's characterization that Diane Wiley, President of the National Jury Project, Midwest, "documented that minorities had been systematically culled from the petit jury venire in another capital case before the same trial judge" (Appellant's Brf. at p. 17), is an absolute misstatement of his own exhibit #39.  While Wiley opines that minorities were underrepresented in the Roderick Davie case, and that such underrepresentation was unlikely due to chance, she never stated that minorities had been "systematically culled" from the jury pool.  She certainly offered no proof thereof.   Furthermore, it cannot go without mention that the Wiley affidavit, which was clearly available to Appellant at the time of trial, has yet to convince any tribunal that Davie's jury was "systematically culled" of African Americans. His appeal is pending in the U.S. Sixth Circuit Court of Appeals.

6.    **Petitioner did not receive effective assistance of counsel in the trial phase.**

Appellant next argues that even though he raised an ineffective assistance of counsel argument in the Ohio Supreme Court he should be exempted from a res judicata bar because he included nine police reports with "new" evidence of ineffective assistance of counsel. However, the trial court opined that because Appellant's "new" exhibits raised facts and theories  patently  obvious from the face of the record which could have been raised on appeal the res judicata bar should apply.  (T.d. #322, p 23). Appellant does not argue that these exhibits were not available to trial counsel, thereby subjecting him to a *Cowans* res judicata bar.

-29-

The trial court also found that Appellant's exhibits failed to establish a claim for ineffective assistance of counsel. The documents, according to the court, did not contain operative facts or sufficient grounds for relief.  Id.

7.     **Petitioner did not receive in the mitigation phase effective assistance of counsel.**

The court below noted that while Appellant raised an ineffective assistance of counsel claim within his Proposition of Law II, he did not challenge the attorneys' mitigation performance.  The trial then addressed each and every exhibit referenced in this Assignment of Error and concluded Appellant failed to overcome a res judicata bar:

> "None of the Exhibits submitted with the Amended Petition overcome this bar.  There is no evidence before this Court that trial counsel was aware of the Robert's letter saying Fingerhut intended to fake his own death. (Ex. 44) Even if they were, Petitioner fails to suggest how this is applicable to mitigation.  If Fingerhut had faked his own death (and all the available evidence is to the contrary), such evidence would be germane to the guilt, not the mitigation phase.  This Court is equally unpersuaded by the series of affidavits from Petitioner's friend's [sic] and family. (Ex. 49-53).  Nothing in these affidavits offer mitigating factors at all, let alone enough to outweigh the aggravating circumstances. Petitioner's disruptive behavior, poor academic performance and absenteeism are not mitigating, and do little to augment Dr. McPherson's mitigation testimony.  (Ex. 56, 57).  Ex. 58 & 59 are discounted here for the same reasons as appears in the Seventh/Sixth Cause of Action.  Finally, Ex. 66- 67 are simply irrelevant to a claim of ineffective assistance of counsel.  While these exhibits may be [sic] been generated de hors the record, they still offer no operative facts to overcome a res judicata bar."

(T.d. #322, p. 24).  Again, in addition to res judicata, the claim falls short with a lack of operative facts.

8.     **The State of Ohio's use of lethal injection is constitutionally infirm:**

Appellant essentially argues that his entire argument regarding the constitutional infirmity of Ohio's lethal injection execution  rises and falls around the affidavit submitted by Dr. Mark J.S. Heath.  Nevertheless, Appellant had the opportunity to challenge the

-30-

constitutionality of Ohio's method of execution in his direct appeal, with or without the Heath affidavit, and did not do so. Thus, the res judicata bar applies.

Additionally, even though the Heath affidavit is dated after Appellant's trial, the trial court found that it failed to overcome the res judicata bar because it did not demonstrate that lethal injection is tortuous, inhuman or barbarous pursuant to *In Re Kemmler* (1890), 136 U.S. 436, 477. (T.d. #322, p. 32). Furthermore, the court found Appellant failed to present operative facts and did not demonstrate substantive grounds for relief. Id.

9. **This Court should remand the case for a merits review of these causes of action that the trial court improperly found to be procedurally barred.**

The mere fact that a postconviction petitioner augments a postconviction petition with "evidence" does not automatically require the trial court to hold a hearing; nor does such "evidence" automatically overcome a res judicata bar. This is clearly the case when the "evidence" relied upon by a petitioner was available at the time of trial. As the Ohio Supreme Court noted in *Steffen*, "death row inmates have seized upon and used to their advantage" a "web of procedures so involved they threaten to engulf the penalty itself." Id. at 407. The State submits the doctrine of res judicata helps to untangle this web, and was properly applied by the court below in all instance cited by Appellant. As such, this Assignment of Error is without merit.

**APPELLANT'S ASSIGNMENT OF ERROR NO. VI:** The trial court erred in dismissing Petitioner's amended postconviction petition where he presented sufficient operative facts to merit relief, or at minimum, an evidentiary hearing.

**APPELLEE'S ISSUE PRESENTED FOR REVIEW AND ARGUMENT:** A postconviction petitioner is not entitled to relief or an evidentiary hearing when documentary evidence does not support a claim for relief, or when such evidence is non-existent.

In Appellant's Sixth and final Assignment of Error, he argues that the trial court erred in dismissing his claim without hearing.  This assignment lacks merit.

It is well settled law that "the right to an evidentiary hearing on a petition for postconviction relief is not automatic. * * * Before a trial court grants a hearing, it 'shall determine whether there are substantive grounds for relief.' R.C. 2953.21(C)." *State v. Jackson* (1980), 64 Ohio St. 2d 107, 110.  Very simply, the trial court concluded that Appellant failed to establish substantive grounds for relief, and thereby properly dismissed the petition without hearing.

In his brief, Appellant essentially restates his fifteen Causes of Action in an attempt to demonstrate that, in fact, his petition contained substantive grounds for relief.  The State will briefly address each Cause of Action using the numbering as it appears in his brief.

**First Cause of Action:**

Appellant supplies absolutely no operative facts, nor substantive grounds for relief, to suggest that the charges against him, as they appeared in the indictment, were racially motivated.  This is blatantly obvious by the fact that his Caucasian, middle-class, well-educated co-defendant was not just "similarly" indicted, she was indicted on death penalty

specifications.  Appellant claims his co-defendant was offered a plea bargain.  Appellant fails to prove this claim.  Even assuming arguendo Roberts was offered a plea bargain which would have spared her life, Appellant would have to demonstrate that the offer came about because Roberts is white and Appellant is black. None of Appellant's exhibits remotely suggest this, and therefore the court had before it no operative facts of a racially motivated charging system.

As has been previously stated, Appellant was not indicted because of race, but because of his actions.

**Second Cause of Action:**

Appellant alleges an underrepresentation of minorities  in the pool from which his grand jury was selected, yet submitted no evidence to the trial court, or this court, as to the racial composition of his jury.  Therefore, any claim of underrepresentation is unsupported and subject to dismissal.

Furthermore, as the court below noted in *State v. Williams* (1997), 79 Ohio St. 3d. 1, 17, the Supreme Court of Ohio held, "not every grand jury has to represent a 'fair cross-section,' so long as the selection process is nondiscriminatory."  The Ohio Supreme Court in *State v. Issa* (2001), 93 Ohio St. 3d 49, 62, ruled that the use of voter registration roles as a source for grand and petit jurors does not intentionally exclude any specific racial group.  Since both whites and blacks are equally entitled to register to vote, the process is nondiscriminatory.   "Petitioner fails to demonstrate that selecting his grand jurors from a list of registered voters intentionally excluded any African American or any other racial minority." (T.d. #322, p. 8).

Jackson Apx. Vol. 16
Page 263

Appellant properly states that his Ex. 39, the affidavit by Diane Wiley, would not have been available to the Ohio Supreme Court when it decided the Roderick Davie case. However, it nevertheless fails to prove any systematic or intentional culling of minorities from the jury pool. Nor can it go unmentioned that Roderick Davie's case has nothing to do with Appellant's case. To follow this logic and to give any credence to the Wiley affidavit would require this Court to pre-suppose juror misconduct in all cases just because one incident surfaced in an unrelated case. Therefore, because Appellant failed to document an intentional exclusion, he failed to support his claim.

**Third Cause of Action:**

The State does not dispute the fact that the forewoman of the grand jury which indicted Appellant was Caucasian. But Appellant fails to prove that any judge in the common pleas court handpicked the forewoman, that she was selected *because* she was white, or that she rallied her fellow grand jurors to indict Appellant because of his race. Therefore, he cannot support his claim of "discrimination in the selection process," and the trial court properly found that "[s]uch a proposition is far too tangential to be substantive." (T.d #322, p. 10).

**Fourth Cause of Action**

As discussed previously, Appellant's claim that the State withheld "exculpatory evidence" contained in  a police report that Robert Fingerhut intended to fake his own death to collect his insurance proceeds was not supported by competent, credible evidence. The only support for this outlandish claim was an affidavit from the attorney who authored the petition and later, the appellate brief. If such a bias was not enough for the trial court

-34-

question the credibility of this allegation, the fact that Atty. John Juhasz, the supposed source of this information, apparently refused to back up his statement with a signed affidavit is all the more reason to look askance at this claim.

As for the complaint that the trial court should, post-trial, order discovery on this issue, the claim is vague and unsupported enough that no viable order could be issued.

**Fifth Cause of Action:**

Appellant argues that the trial court erred because it failed to hold a hearing on a pre-trial letter in which he complained that one of his trial attorneys, Anthony Consoldane, was not paying enough attention to him.  He accuses the trial court of converting his cause of action into "an ineffectiveness claim," yet in his Amended Petition writes, "Petitioner Jackson had a right to effective assistance of counsel in both stages of his trial" and cites to *Strickland v. Washington* (1984), 466 U.S. 668, the core case on effective assistance of counsel.  (T.d. #306, ¶56, Legal Authority).  Therefore, any criticism of the trial court's analysis is wholly unwarranted and tantamount to invited error.

Nonetheless, Appellant continues to argue in his brief as he did in his petition that he could not communicate with his trial counsel.  The record does not demonstrate this.  Furthermore, a petitioner's own self-serving statement will not compel a hearing.  *State v. Kapper* (1983), 5 Ohio St. 3d 36, 37-38.

Appellant takes issue with the fact that the trial court not only cited the record as to the on-going communications, but stated personal observations that Appellant appeared to be communicating.  First, Appellant submits no authority to suggest such a practice is not permitted.  Even absent these observations, Appellant fails to demonstrate that he could not

-35-

communicate with his counsel.  Therefore,  Appellant has demonstrated no prejudice from a lack of a hearing.

**Sixth Cause of Action:**

Appellant complains that his own handpicked expert, Dr. Sandra McPherson, did not qualify as a "mitigation specialist" as required by *Wiggins v. Smith* 123 S.Ct. 2527, and therefore, trial counsel's performance fell below the standards set forth in *Strickland*, supra in selecting her.  . He argues that Dr. McPherson is a mere psychologist, and he was entitled to a "mitigation investigator."  The State submits this is a distinction without a difference.  As the court below noted, Dr. McPherson has testified in numerous Ohio capital cases as a "mitigation expert" including *State v. Tresh* (2001), 90 Ohio St. 3d 460; *State v. Carter* (2000), 89 Ohio St. 593; *State v. McNeill* (1998), 83 Ohio St. 3d 438; *State v. Otte* (1996), 74 Ohio St. 3d 555; *State v. Jenkins* (1984), 15 Ohio St. 3d 164.  (T.d. #322, p. 17). The court concluded that her "training, expertise, education, experience and prior testimony on behalf of capital defendants qualified her as a mitigation specialist." Id.

Furthermore, in *Wiggins,* trial counsel failed to investigate the capital defendant's troubled background which included severe abuse before age 6, an alcoholic mother, sexual molestation, diminished capacities and homelessness.  *Wiggins* at 2542.  Appellant does not allege that a mitigation "investigator" would have unearthed equally compelling mitigation evidence for him.  In fact, he does not argue one piece of concrete mitigating evidence which Dr. McPherson overlooked.

As such,  Appellant has failed to demonstrate that the selection of Dr. McPherson was not reasonable trial strategy or that a different expert would have prompted a different result.

Therefore, he cannot support a claim of ineffective assistance of counsel.

**Seventh Cause of Action:**

The State has addressed the jury-race issue to the point of ad nauseam.  Suffice it to say that the Ohio Supreme Court has repeatedly sanctioned the selection of potential jurors from the voter registration roles, the source for Appellant's jury.  The fact that there may appear to be an underrepresentation of any particular race when the pool reports for jury duty is not per se evidence of racial discrimination or of a deliberate effort to extract certain persons from the pool. See *State v. Johnson* (1972), 31 Ohio St. 2d 106, paragraph two of the syllabus; *State v. Hill* (1992), 64 Ohio St. 3d 313, 325-326, *State v. Puente* (1982), 69 Ohio St. 2d 136, 138, *State v. Davie* (1997), 80 Ohio St. 3d. 311, 316, 317.

**Eighth Cause of Action**

It is well-settled law where a postconviction  petitioner asserts a claim of ineffective assistance of counsel, he bears the initial burden to submit evidence to demonstrate that his defense was prejudiced by counsel's ineffectiveness.  If he fails to do so, no evidentiary hearing is required. *State. v. Pankey* (1981), 68 Ohio St. 2d 58, 59 citing *Jackson, supra,* at syllabus.

This Court explained in *State v. Pierce* (1998), 128 Ohio App. 3d 578, 586, that in asserting an ineffective assistance claim, the petitioner must submit materials containing sufficient operative facts to demonstrate both prongs of the two-part test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 687: (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. Prejudice will not be found unless appellant demonstrates there is a reasonable possibility that, if not for counsel's

-37-

errors, the result of the trial would have been different. *State v. Bradley* (1989), 42 Ohio St. 3d 136, 143. "In the absence of positive proof to the contrary, certainly there is a reasonable inference that one licensed by the state to practice law and appointed by a court to represent an accused did competently and properly represent such accused during his trial." *Vaughn v. Maxwell* (1965), 2 Ohio St. 2d 299, 301. In order to overcome this presumption of effectiveness, the petitioner must submit sufficient operative facts or evidentiary documents that, if proven would show that the petitioner was prejudiced by ineffective assistance of counsel. *State v. Smith* (1987), 36 Ohio App. 3d 152, 163.

Appellant argues his counsel failed to develop any significant information concerning Roberts' role in the homicide. The State submits that the jury heard ample evidence as to the conspiracy between Roberts and Appellant to murder Robert Fingerhut so that Roberts might collect his insurance proceeds, and that Appellant would reap the benefit of this windfall by moving in with Roberts without having to sidestep Fingerhut to carry on their affair. The jury also heard Appellant admit that he shot Fingerhut in his own home, supposedly in an act of self defense. Appellant presented no additional evidence in his Petition, nor in his own statement to police, as to the role Roberts had in the actual killing.

He further alleges Fingerhut was involved in illegal activities, yet fails to elucidate this Court or the trial court as to what those nefarious activities were, or what possible bearing they had on Appellant's calculated, cold-blooded killing of him. Appellant further claims that Roberts and Fingerhut had a "dysfunctional" relationship. The State submits this dysfunction is self-evident by the fact that the couple had divorced, yet continued to live together, while Roberts engaged in an affair with Appellant. Further, Roberts clearly

-38-

attempted to convince Appellant that Fingerhut was abusive toward her.  How much more

dysfunction trial counsel could have possibly unearthed is not revealed in the Petition, the

trial record or in Appellant's brief.

Appellant  also cites to his "significant mental impairment" and that said impairment

had an impact on his actions and involvement with Roberts.   The State submits Appellant

was unimpaired enough to plan Fingerhut's murder for insurance proceeds, carry out said

murder, flee the scene in Fingerhut's automobile which he had the good sense to abandon in

Youngstown, and to give a self-serving statement to police concerning his involvement in the

killing.

Appellant next complains that his trial counsel did not challenge the grand jury or

petit jury venire or the selection of the grand jury foreperson.  As stated numerous times

throughout this brief, Appellant had failed to demonstrate any improprieties in the selection

of his grand jury, petit jury, or his grand jury foreperson.  Therefore, counsel's performance

cannot be deemed ineffective for not raising a non-issue.

Appellant  next complains that his counsel did not base their motion to suppress on

his 70 and 72 I.Q. scores logged by Petitioner when he was 13 and 17 years old. The State

submits such a strategy was reasonable when Appellant  scored 84 on an I.Q. test just weeks

after the Fingerhut homicide.  Even debatable trial tactics generally do not constitute a

deprivation of effective counsel. *State v. Phillips* (1995), 74 Ohio St. 3d 72, 85. The decision

of trial counsel not to pursue every possible trial tactic for reasons of strategy does not result

in ineffective assistance of counsel.  *State v. Brown* (1988), 38 Ohio St. 3d. 305, 319.

In its Findings of Fact and Conclusions of Law filed in relation to the motion to

-39-

suppress, the trial court found, "the video recording demonstrates in a clear way that the defendant is freely and voluntarily giving a statement.  In fact, many of his answers to questioning are very lengthy.***The defendant is definitely in control of his actions and words." (T.d. # 205, p. 12).  "Most significantly, his final minutes with officers were memorialized on video tape, and when the Defendant decided to end the conversation, he did so.  It is apparent that the Defendant was in control of the decision making process of when and what to say." (T.d. #205, p. 14).  Appellant fails to state what possible impact the admission of thirteen and sixteen year-old I.Q. test would have on the trial court's findings that he was in clearly in control of this interview.

Appellant alleges his trial attorneys conducted an "unreasonable investigation" as to the hold co-defendant Roberts had over him with her relentless gifts of drugs, cash and automobiles.  (Appellant's brf. at p. 34).  He makes the unsupported statement in his brief that Roberts manipulated him; yet there is not one shred of evidence within the record or dehors the record which suggests that Appellant acted under anything less than his own free will, greed and lust when he shot and killed Fingerhut.  Indeed, a review of the tapes and letters make it clear that Appellant was in total control of the "Robert situation" which he elected to solve with lethal force.

Appellant next argues that no one interviewed any of his family members, except for his mother, and that as a result, Dr. McPherson's testimony was "incomplete and inaccurate." He fails to share with this Court just how her testimony was inaccurate, yet it cannot go without mention that the primary source for Dr. McPherson's report and testimony was Appellant himself.  The State does not concede that any of Dr. McPherson's testimony was

-40-

inaccurate, but if it were, the fault would lie with Appellant and the information *he* elected to fabricate or withhold.  The error would not lie with Dr. McPherson or with his trial counsel's mitigation preparation.

Appellant argues his trial counsel's failed to meet ABA Death Penalty Standard that provides "penalty phase investigation requires extensive and generally unparalleled investigation into personal and family history."  Appellant's brf. at p. 37. First, there is no evidence from the Appellant that this was not done. Indeed, Appellant paraded five lay witnesses before the jury in an effort to convince the panel to spare Appellant's life.  More significantly, even with the Monday morning quarterbacking afforded through the postconviction process, Appellant fails to cite to any information which his jury did not hear which would have ultimately proved mitigating and changed the outcome of the mitigation.

For these above stated reasons, the trial court properly found that Appellant did not support his allegation of ineffective assistance of counsel with sufficient operative facts and did not demonstrate substantive grounds for relief.

**Ninth Cause of Action:**

Appellant reprises  several of the arguments from the Eighth Cause of Action suggesting that trial counsel did not effectively exploit Donna Roberts' role in Robert Fingerhut's homicide.  The trial court dismissed any such claim:

> "None of these examples persuades this Court of trial counsel's ineffectiveness.  The jury  was well informed of Roberts' planning and participation in this homicide even if  she was not the actual killer.  Petitioner admitted to killing Fingerhut.  Though Petitioner argues a crime scene reconstructionist *may* have yielded a new theory about the homicide, such a theory would undoubtedly pale in contrast to the premeditated  killing and Petitioner's admission that he shot Fingerhut. Nor do his exhibits suggest what that theory might be.  His own Ex. 77 states that no experts

found no gunshot residue on Roberts' hands, lending credence to Petitioner's own statement that he was the lone shooter in this killing. Because Petitioner has failed to submit documents containing sufficient operative facts of his trial counsel's ineffectiveness, there are no substantive grounds for relief and this claim must be dismissed without hearing."

(T.d. # 322, p. 23).

Appellant in his brief attempts to promote two conflicting theories to explain away his shooting and killing of Robert Fingerhut. One is that Donna Roberts hand selected black males for her sexual exploits, and the other states that he shot Fingerhut in self-defense. Both of these theories were before the jury and the fact that the theories were not successful was not indicative of a *Strickland* violation.

## TENTH CAUSE OF ACTION

Appellant again recycles the ineffective assistance of counsel argument arguing this time that the last minute substitution of Atty. Thomas Wright in place of Atty. James Lewis compromised his mitigation. In short, the trial court found that none of the exhibits presented by Appellant demonstrate that Atty. Wright was ineffective. (T.d. #322, p. 25). Furthermore, when offered a continuance by the court to afford the ailing Atty. Lewis a chance to recuperate, Appellant declined the offer and stated he wanted to proceed with Atty. Wright. (T.p. Vol. 16, p. 4,5). Therefore, Appellant should not be heard to complain in a postconviction claim that Atty. Wright was ineffective.

Other of Appellant's complaints that Dr. McPherson did not provide meaningful mitigation testimony as to Appellant's background has been addressed in previous claims and will not be repeated here.

Appellant's failed to establish a *Strickland* violation. He failed to supply operative

-42-

facts to support this claim and the trial court properly found he did not demonstrate substantive grounds for relief.

**Eleventh Cause of Action**

Once again, Appellant accuses the trial court of "misconstruing" his claim in his petition and for not addressing the due process aspect of his hybrid claim of ineffective assistance of counsel and ineffective assistance of handpicked experts. (Appellant's Brf. at 43). Appellant's postconviction petition offers no evidence that an expert other than Dr. McPherson would have ferreted out any more favorable mitigating evidence. Appellant submitted an affidavit with his Petition challenging Dr. McPherson's scoring of his I.Q. test. Essentially, Appellant's postconviction expert found only a five- point discrepancy and Appellant fails to detail how these five-points would have changed the outcome of his mitigation hearing. Appellant received the expert of his choosing, who, though highly qualified, was unable to convince a jury that anything in his background qualified as a mitigating factor significant enough to outweigh the aggravating circumstances of this crime. Such is not dispositive of a due process violation. Again, with no operative facts or substantive grounds for relief, the trial court had no choice by to deny relief in this matter.

**Twelfth Cause of Action:**

Appellant next alleges the trial court relied on inaccurate information in sentencing Appellant. Again, Appellant fails to state what information produced at the mitigation hearing was inaccurate, but given that Appellant was the source for a good deal of this information, his complaints should be given little weight. Appellant misquotes the court by stating that his postconviction exhibits "would not 'have swayed the jury to reconsider a life

sentence'." (Appellant's Brf. at 44).   In fact what the court wrote was:

> "To suggest that any of the information presented in any of these exhibits
> would have swayed the jury to recommend a life, rather than death sentence is
> wholly speculative and do not render Petitioner's death sentence void or
> voidable."

(T.d. #322, p.30).  It is axiomatic that idle speculation does not support a postconviction

claim.  The court thoroughly dismissed allegations that Dr. McPherson had not provided an

adequate social history:

> "Furthermore, this Court disagrees with Petitioner's characterization that
> Dr. McPherson's report lacks a social history.  Dr. McPherson, in her
> testimony and report,  described his family environment, his academic history,
> interpersonal relationships with his children and significant others, his drug
> use, ADHD, anti-social personality disorder and criminal history.  The fact
> that Dr. McPherson did not link Petitioner's drug use to his mother's
> alcoholism is not indicative of a lack of a social history.  Petitioner ignores the
> very distinct possibility that his election 'self medicate' with cocaine or other
> illegal substances was a personal choice wholly independent of his mother's
> purported problems. Perhaps the reason no expert testified to this nexus is
> because it does not exist."

Id.     Furthermore, Appellant's statement "trial counsel never presented the evidence of

Nathaniel's substance abuse" is patently  false.  Dr. McPherson documented Appellant's

substance abuse at page 7 of her report (Ex. 16), and she specifically testified the Appellant

used cocaine. (T.p. Vol. 16, p. 39).  Having stated as much, drug abuse is not a mitigating

factor listed in R.C. 2929.04(B). Furthermore, trial counsel may have deliberately

downplayed his drug abuse as a strategic move.  The trial court noted that "an over emphasis

on Petitioner's history of drug abuse may have backfired on Petitioner."  (T.d. #322, p. 20).

Appellant failed to demonstrate that the trial court relied on inaccurate or incomplete

information for sentencing purposes, and properly held the Appellant failed to demonstrate

ineffective assistance of counsel.

**Thirteenth Cause of Action**

Appellant argues that the trial court erred in making a credibility determination concerning Dr. Mark J.S. Heath's affidavit as to the possible risk of undue pain and suffering incurred in lethal injection. The Supreme Court of Ohio has held just the opposite. "The trial court may, under appropriate circumstances in postconviction relief proceedings, deem affidavit testimony to lack credibility without first observing or examining the affiant. That conclusion is supported by common sense, the interests of eliminating delay and unnecessary expense, and furthering the expeditious administration of justice." *State v. Calhoun* (1999), 86 Ohio St. 3d 279, 284. In fairness to Dr. Heath, the trial court did not hold that his affidavit lacked credibility, but that it offered merely possibilities and speculation without empirical evidence. (T.d. #322, p. 31). The trial court's findings were supported by the U.S. Sixth Circuit of Appeals decision in *Cooper v. Rimmer* (2004), 358 F. 3d 655, 659. As a result, Appellant failed to offer operative *facts* to support his claim that lethal injection is contrary to the Eighth Amendment ban on cruel and unusual punishment.

**Fourteenth Cause of Action:**

The trial court properly found no substantive grounds for relief on Appellant's attack on Ohio's postconviction procedures, for a number of reasons, not the least of which is the fact that Appellant failed to support his claim with any documentary evidence.

At least one Ohio appellate district has held that to successfully argue a postconviction claim the violation must be of a constitutional dimension and the alleged error

-45-

must have occurred at the time of trial. *State v. Powell* (1993), 90 Ohio App. 3d 260, 264. Since there is no constitutional right to postconviction relief, *State v. Steffen* (1994), 70 Ohio St. 3d 399, 410, the violation cannot be of a constitutional dimension.  Since the purported error involves *post conviction* proceedings, the error could not have occurred at trial.  Thus, postconviction relief is an inappropriate legal vehicle to determine the constitutionality of the postconviction scheme.

Moreover, as stated in a previous argument, this Court has found the proper place to attack Ohio postconviction scheme is in a writ of habeas corpus.  *State v. Wiles* (1998), 126 Ohio App. 3d 71, 83.  As such, the trial court's dismissal of this cause of action was legally sound.

**Fifteenth Cause of Action**

Appellant concludes his brief by stating that even if this Court finds that none of the errors previously articulated  warrant relief, the "cumulative effects" of the other fourteen Causes of Action  violated his constitutional rights.  (Appellant's Brf. at 47).  Under the doctrine of cumulative error, a judgment may be reversed where the cumulative effect of errors deprives a defendant of his constitutional rights, even though the errors singularly do not rise to the level of prejudicial error. *State v. DeMarco* (1987), 31 Ohio St. 3d 191, 196-197. The State submits the doctrine of cumulative effect is inapplicable to this cause of action because there is positively no merit any of the previous claims. Therefore, the court below properly held that Appellant failed to supply this Court with sufficient operative facts and did not demonstrate substantive ground for relief.

For the reasons stated above with regard to all fifteen Causes of Action, Appellant

was not entitled to postconviction relief or a postconviction evidentiary hearing because he failed to submit evidentiary documents containing sufficient operative facts of any constitutional violation.  The trial court found accordingly.   Therefore, this Assignment of Error is without merit.

## CONCLUSION

The State urges affirmance of the trial court's dismissal of Appellant's postconviction petition without hearing, along with its decisions to deny court-funded experts or court ordered discovery.

Respectfully submitted,
DENNIS WATKINS (#0009949)
Prosecuting Attorney

LUWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor, Administration Building
Warren, Ohio  44481
Telephone No.:  (330) 675-2426

COUNSEL FOR PLAINTIFF-APPELLEE
THE STATE OF OHIO

## PROOF OF SERVICE

I do hereby certify that a copy of the foregoing brief was sent by ordinary U.S. Mail on this November 15, 2004, to Atty. Randall Porter(#0005835), Counsel for Appellant Nathaniel Jackson, Assistant State Public Defender, Office of the Ohio Public Defender, 8 East Long St. 11th Floor, Columbus, Ohio  43215.

LUWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney

-47-

# APPENDIX

-48-

Westlaw.

Not Reported in N.E.2d
1996 WL 207676 (Ohio App. 11 Dist.)
(Cite as: 1996 WL 207676 (Ohio App. 11 Dist.))

Page 1

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Eleventh District,
Trumbull County.

STATE of Ohio, Plaintiff-Appellee,
v.
Charles L. LORRAINE, Defendant-Appellant.

No. 95-T-5196

Feb. 23, 1996.

Marc S. Triplett, Bellefontaine, Luigia Tenuta, Dublin, for defendant-appellant.

Dennis Watkins, Trumbull County Prosecutor, Patrick F. McCarthy, Assistant County Prosecutor, Warren, for plaintiff-appellee.

MAHONEY.

*1 Appellant, Charles L. Lorraine, appeals the trial court's decision denying his post-conviction relief petition brought pursuant to R.C. 2953.21. On December 9, 1986, appellant was sentenced to death for the murders of Raymond and Doris Montgomery. Appellant was also convicted of two counts of aggravated burglary. On appeal, this court affirmed the trial court's decision in *State v. Lorraine* (Aug. 13, 1990), Trumbull App. No. 3838, unreported. The Supreme Court of Ohio affirmed these decisions in *State v. Lorraine* (1993), 66 Ohio St.3d 414.

On September 30, 1994, appellant filed a post-conviction relief petition in the trial court claiming twenty-nine violations of his constitutional rights. Appellee, the State of Ohio, responded to the application by filing a motion for judgment

pursuant to R.C. 2953.21(C). The court, without conducting a hearing, denied appellant's petition for post-conviction relief and filed findings of fact and conclusions of law on January 5, 1995.

Appellant timely filed a notice of appeal with the following assignments of error:
"1. The trial court erred in denying appellant an evidentiary hearing on the claims as raised by his Section 2953.21 petition for post-conviction relief."
"2. When denying this petition under Code Section 2953.21, the trial court erred by failing to consider the record and by adopting the findings of fact and conclusions of law submitted by the State of Ohio. These adopted findings, both unreasonable and inadequate, further violate appellant's rights guaranteed by the fifth and fourteenth amendments to the United States Constitution."
"3. The trial court erred in its application of the doctrine of *res judicata* to the claims for relief raised by appellant."
"4. The trial court erred when it granted the state's motion for summary judgment by failing to adhere to Civil Rule 56 when considering the constitutional violations stated in each claim of this petition for post-conviction relief under Section 2953.21 of the code."
"5. The trial court erred when it denied appellant the opportunity for discovery proceedings that are necessary to support his claims of constitutional violations as set forth in this petition for post-conviction relief under Section 2953.21 of the code."
"6. The trial court erred in denying appellant's claims of ineffective assistance of counsel."
"7. The trial court erred by its 'standardized' dismissal of appellant's Section 2953.21 petition for relief from a capital conviction, denying the appellant due process and equal protection under law."

In the first assignment of error, appellant contends that the trial court erred in denying an evidentiary hearing on the claims he raised in his

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                     Page 2
1996 WL 207676 (Ohio App. 11 Dist.)
(Cite as: 1996 WL 207676 (Ohio App. 11 Dist.))

post-conviction relief petition.

R.C. 2953.21 provides, in relevant part:
"(C) Before granting a hearing, the court shall
determine whether there are substantive grounds
for relief. In making such a determination, the
court shall consider, in addition to the petition
and supporting affidavits, all the files and records
pertaining to the proceedings against the
petitioner, including, but not limited to, the
indictment, the court's journal entries, the
journalized records of the clerk of the court, and
the court reporter's transcript. * * *
*2 "(D) Within ten days after the docketing of the
petition, * * * the prosecuting attorney shall
respond by answer or motion.* * *
"(E) Unless the petition and the files and records
of the case show the petitioner is not entitled to
relief, the court shall proceed to a prompt hearing
on the issues * * *."

Thus, it is clear that the court is permitted to
dispose of a post-conviction relief petition without
holding a hearing. As this court stated in *State v.
Hill* (June 19, 1995), Trumbull App. No. 94-T-5116,
unreported, at 4:
"[I]f the court can resolve the averments
contained within the petitioner's request based
upon the material contained within the petition,
and the files and records, it may properly dismiss
the matter without conducting a hearing. *State v.
Milanovich* (1975), 42 Ohio St.2d 46."

Additionally, the Supreme Court of Ohio has held
that the doctrine of *res judicata* is applicable in
post-conviction relief proceedings. In *State v.
Perry* (1967), 10 Ohio St.2d 175, the court held:
"Under the doctrine of *res judicata,* a final
judgment of conviction bars a convicted
defendant who was represented by counsel from
raising and litigating in any proceeding except an
appeal from that judgment, any defense or any
claimed lack of due process that was *raised or
could have been raised by the defendant at the
trial,* which resulted in that judgment of
conviction, *or on an appeal* from that judgment.
*Id.* at paragraph nine of the syllabus. (Emphasis
sic.)

In the case *sub judice,* the first claim made by
appellant relates to ineffective assistance of trial

counsel. Appellant asserts that his trial counsel
were also his appellate counsel and that they made
numerous errors in his representation depriving him
of a fair trial. However, a review of the court
record reveals that appellant had three attorneys
from the public defender's office represent him at
trial, and four attorneys from the public defender's
office represent him on appeal. Of his three trial
attorneys, only one was a member of his appellate
counsel team. Thus, appellant's three different
appellate attorneys could have raised the
ineffectiveness of his trial counsel on direct appeal.

The Supreme Court of Ohio has specifically
applied the doctrine of *res judicata* to
post-conviction proceedings alleging ineffective
assistance of counsel. In *State v. Cole* (1982), 2
Ohio St.3d 112, the court held:
"Where defendant, represented by new counsel
upon direct appeal, fails to raise therein the issue
of competent trial counsel and said issue could
fairly have been determined without resort to
evidence *dehors* the record, *res judicata* is a
proper basis for dismissing defendant's petition
for postconviction relief. (*State v. Hester,* 45
Ohio St.2d 71 [74 O.O.2d 156], modified.)" *Id.* at
the syllabus.

Thus, because appellant was represented by three
different attorneys on appeal than at the trial level,
any claim of ineffective assistance of counsel had to
be brought on direct appeal or it was forever
waived. In the present case, appellant failed to
bring a claim of ineffective assistance of counsel on
direct appeal and is, therefore, barred from bringing
one in a post-conviction relief petition by the
doctrine of *res judicata.*

*3 Appellant argues that because all of his prior
counsel worked for the public defender's office,
they were, for all practical purposes, the same
attorney and, thus, unable to raise an ineffective
assistance of counsel claim on direct appeal. This
argument, however, has been specifically rejected
by the Supreme Court of Ohio in *State v. Lentz*
(1994), 70 Ohio St.3d 527, wherein the court stated:
"We hold that when a criminal defendant is
represented by two different attorneys from the
same public defender's office at trial and on direct
appeal, *res judicata* bars a claim of ineffective
assistance of trial counsel raised for the first time

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
1996 WL 207676 (Ohio App. 11 Dist.)
(Cite as: 1996 WL 207676 (Ohio App. 11 Dist.))

Page 3

in a petition for postconviction relief when such claim could have been made on direct appeal without resort to evidence beyond the record, unless the defendant proves that an actual conflict of interest enjoined appellate counsel from raising a claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 529.

In the present case, appellant failed to even allege an actual conflict of interest. Accordingly, appellant's claim of ineffective assistance of counsel must fail and the trial court did not err in denying appellant an evidentiary hearing as to this claim.

Next, appellant argues that he presented claims of "system-wide defects" which affected his conviction and sentence and that there were "numerous pretrial errors" in the proceedings. Appellant contends that these claims depend upon factual allegations that could not be determined from the record. Appellant fails, however, to elaborate or offer any argument as to how it was error for the trial court to dismiss these claims without a hearing.

Accordingly, pursuant to App.R. 16(A)(7) and App.R. 12(A)(2), we decline to address these claims as appellant has not supported these portions of his first assignment of error with necessary arguments. As the Supreme Court of Wisconsin so aptly stated in *State v. Waste Management of Wisconsin, Inc.* (Wisc.1978), 261 N.W.2d 147, 151:
  "An appellate court is not a performing bear, required to dance to each and every tune played on an appeal."

Appellant's first assignment of error is without merit.

In the second assignment of error, appellant contends that the trial court erred by failing to consider the record and by adopting the findings of fact and conclusions of law submitted by the State of Ohio.

The Ohio Revised Code imposes certain mandates upon the trial court in considering a post-conviction relief petition. R.C. 2953.21(C) provides, in relevant part:
  " * * * the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the

petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript."

The trial court, in the case *sub judice,* explicitly stated that in reaching its decision, it considered:
  *4 "Defendant-Petitioner Charles L. Lorraine's 'Petition to Vacate or Set Aside Judgment and/or Sentence Pursuant to Ohio Revised Code Annotated Section 2953.21' filed on September 30, 1994; Defendant-Petitioner's 'Amendment to Petition to Vacate of [*sic* ] Set Aside Judgment and/or Sentence Pursuant to Ohio Revised Code Annotated Section 2953.21'; *the entire record in Trumbull County Common Pleas Court Case No. 86-CR-182;* the direct appeals in Eleventh District Court of Appeals Case No. 3838 and Supreme Court of Ohio Case No. 90-1927[reported at 66 Ohio St.3d 414 (1993); the state's 'Motion for Judgment Pursuant to R.C. 2953.21(C),' and 'Petitioner's Memorandum in Opposition to Respondent's Motion for Judgment under R.C. 2953.21(C).' " (Emphasis added.)

Thus, it is clear that the trial court complied with its duty under R.C. 2953.21(C) to consider all the files and records pertaining to the proceedings against the petitioner. Appellant has failed to submit any evidence to support his claim to the contrary.

Furthermore, it should be noted that on April 14, 1995, appellant filed a motion in this court to supplement the record with evidence that would allegedly show that the trial court did not have access to the entire record from the original proceedings. On June 14, 1995, this court denied appellant's motion based upon the general rule of law that a reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and that nothing in appellant's motion indicated that the requested supplemental matter was before the trial court.

Based upon the doctrine of *res judicata,* appellant is barred from raising that issue again at this time.

Next, appellant argues that it was error for the trial court to essentially adopt the state's proposed findings of fact and conclusions of law as its own.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
1996 WL 207676 (Ohio App. 11 Dist.)
(Cite as: 1996 WL 207676 (Ohio App. 11 Dist.))

Page 4

By doing so, appellant submits that the court failed in its statutory duty to consider, determine and review the claims made by his petition. Appellant concludes that the trial court's "adopted" findings are inadequate and unreasonable.

In *State v. Sowell* (1991), 73 Ohio App.3d 672, however, the First District Court of Appeals determined that the trial court's adoption of the state's findings of fact and conclusions of law does not, by itself, deprive the petitioner of a meaningful review of his petition for post-conviction relief. *Id.* at 676. See, also, *State v. Powell* (1993), 90 Ohio App.3d 260, 263, *State v. Murphy* (May 12, 1995), Marion App. No. 9-94-52, unreported. We agree. Without showing that the trial court failed to comply with its statutory duty pursuant to R.C. 2953.21(C), appellant has failed to show that the trial court acted inappropriately by merely agreeing with the state.

Appellant's second assignment of error is without merit.

In the third assignment of error, appellant asserts that the trial court erred in its application of *res judicata* to the claims for relief he raised in his post-conviction relief petition.

*5 The issue of the application of *res judicata* to a petition for post-conviction relief was addressed in the analysis of appellant's first assignment of error, however, and will not be repeated here. The trial court did not err in its application of *res judicata.*

Appellant's third assignment of error is without merit.

In the fourth assignment of error, appellant maintains that the trial court erred when it granted the state's motion for summary judgment by failing to adhere to Civ.R. 56. Appellant argues that since the state's motion for judgment pursuant to R.C. 2953.21(C) "fundamentally asked for 'judgment as a matter of law,' " the motion should have been considered as a motion for summary judgment pursuant to Civ.R. 56. Thus, appellant asserts that the state needed to demonstrate in its motion that there were no genuine issues of material fact. Appellant states, in his brief:
"The state does not avoid the prescription [*sic* ] of

Civil Rule 56 by simply calling its pleading 'a motion for judgment.' Either the state promotes dismissal for facial insufficiency under Civ. Rule 12(B) or it claims there are no genuine issues of fact debatable by a reasonable mind under Civil Rule 56. The state cannot, now, assert that the motion claims both premises when the motion actually asserts neither."

While appellant is correct that the state's motion was neither a Civ.R. 12(B) nor a Civ.R. 56 motion, it is clear that the motion was properly made pursuant to R.C. 2953.21. As this court previously held in *Hill, supra,*
"R.C. 2953.21(D) permits the appellee to respond by either '*answer or motion.*' It does not specify that the motion be one for summary judgment. Indeed, the language employed clearly permits a pre-answer motion such as a motion to dismiss. Therefore, the court was free to consider appellee's motion." *Id.* at 13. (Emphasis *sic.*)

A review of the trial court's judgment dismissing appellant's post-conviction relief petition reveals that the court properly reviewed the material before it and granted the state's motion for judgment only after it complied with the mandates of R.C. 2953.21(C).

Appellant's fourth assignment of error is without merit.

In the fifth assignment of error, appellant contends that the trial court erred when it denied him the opportunity for discovery. We disagree.

In *State v. Smith* (1986), 30 Ohio App.3d 138, the Ninth District Court of Appeals held that R.C. 2953.21 does not permit the use of interrogatories in determining whether a hearing is warranted in a post-conviction proceeding. *Id.* at 140. Instead, the burden is on the petitioner to submit evidentiary documents containing sufficient operative facts to demonstrate his claim and to merit a hearing. It is well established that the power to conduct and compel discovery is not included within the trial court's statutorily-defined authority. *State v. Lott* (Nov. 3, 1994), Cuyahoga App. Nos. 66388, 66389, 66390, unreported; *State v. Zuern* (Dec. 4, 1991), Hamilton App. Nos. C-900481, C-910229, unreported; *State v. Robison* (June 19, 1989),

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
1996 WL 207676 (Ohio App. 11 Dist.)
**(Cite as: 1996 WL 207676 (Ohio App. 11 Dist.))**

Page 5

Pickaway App. No. 88 CA 15, unreported.

*6 Thus, since the underlying petition was dismissed without a hearing, appellant was not entitled to conduct discovery.

Appellant's fifth assignment of error is without merit.

In the sixth assignment of error, appellant submits that the trial court erred when it denied his claims of ineffective assistance of counsel.

For the reasons set forth in our analysis of appellant's first assignment of error, which will not be repeated here, the trial court did not err in denying appellant's claims of ineffective assistance of counsel.

Appellant's sixth assignment of error is without merit.

In the seventh assignment of error, appellant contends that the trial court erred by its "standardized" dismissal of his petition of post-conviction relief.

Specifically, appellant claims that the trial court used what was essentially the same "standardized" judgment entry dismissing his petition as the one the court used in dismissing the post-conviction relief petition in *State v. Hill,* Trumbull County Case No. 85 CR 317, affirmed by this court in *Hill, supra.* Appellant also argues that the judgment entry was insufficient as it offered no substantive explanation for the court's dismissal.

Regarding appellant's assertion that the trial court's judgment entry was the same as the one used in *Hill,* we are unable to compare the trial court's judgment entry in *Hill* with the one used by the trial court in this case as the former is not part of the record before us. Thus, since appellant has failed to adequately support this claim, it is without merit. Additionally, it should be noted that there is no prohibition against using similar judgment entries in multiple cases if the same law is applicable to various fact scenarios. If separate petitions for post-conviction relief are without merit because of the application of the doctrine of *res judicata,* for example, the judgment entries dismissing the

petitions are bound to be similar.

Regarding appellant's claim that the trial court's judgment entry lacked substantive analysis, our review of the fifty-one page entry indicates otherwise. It is clear that the trial court individually addressed each of the twenty-nine claims for relief submitted by appellant. The fact that none of the claims warranted a hearing as they were either barred by the doctrine of *res judicata* or appellant simply failed to set forth substantive grounds for relief does not equate to error on the part of the trial court to fulfill its statutory obligation.

Appellant's seventh assignment of error is without merit.

The judgment of the trial court is affirmed.

CHRISTLEY, P.J. and DONOFRIO, J., concur.

JUDGMENT ENTRY

For the reasons stated in the opinion of this Court, appellant's assignments of error are without merit; and it is the judgment and order of this Court that the judgment of the trial court is affirmed.

1996 WL 207676 (Ohio App. 11 Dist.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

FILED
COURT OF APPEALS

COURT OF APPEALS       OCT 19 1998

ELEVENTH DISTRICT   TRUMBULL COUNTY, OHIO
                    MARGARET R. O'BRIEN, Clerk
TRUMBULL COUNTY, OHIO

J U D G E S

STATE OF OHIO,                HON. ROBERT A. NADER, P.J.,
                             HON. WILLIAM M. O'NEILL, J.,
    Plaintiff-Appellee,       HON. EDWARD J. MAHONEY, J.,
                             Ret., Ninth Appellate District,
  - vs -                     sitting by assignment.

ANDRE R. WILLIAMS,               CASE NO. 97-T-0153

    Defendant-Appellant.         O P I N I O N


CHARACTER OF PROCEEDINGS:     Civil Appeal from the
                             Court of Common Pleas
                             Case No. 88 CR 365


JUDGMENT:  Affirmed.


DENNIS WATKINS               ATTY. JOHN B. JUHASZ
TRUMBULL COUNTY PROSECUTOR   7330 Market Street
                             Youngstown, OH  44512
LUWAYNE ANNOS
ASSISTANT PROSECUTOR
Administration Bldg., Third Floor   (For Defendant-Appellant)
160 High Street, N.W.
Warren, OH  44481

(For Plaintiff-Appellee)


Jackson Apx. Vol. 16
Page 284

2

MAHONEY, J., (EDWARD), Ret.

This appeal is taken from a final judgment of the Trumbull County Court of Common Pleas that dismissed the petition for postconviction relief of appellant, Andre R. Williams, without a hearing.  We affirm.

In September 1988, the Trumbull County Grand Jury indicted appellant on three counts of aggravated murder with capital specifications, as well as attempted aggravated murder, aggravated robbery, aggravated burglary, and rape.  The charges stemmed from the brutal slaying of George Melnick and the severe beating of his wife, Katherine, on August 15, 1988 at their residence in Warren, Ohio.

Following a jury trial, appellant was convicted of all but the rape count, for which he was convicted of attempted rape.  Following the penalty phase, appellant was sentenced to death.  Appellant was also sentenced to various terms of incarceration on the non-capital convictions.  On appeal, this court affirmed the conviction and death sentence, but reversed that portion of the conviction that was predicated upon the underlying felony of attempted rape.  *State v. Williams* (Mar. 24, 1995), Trumbull App. No. 89-T-4210, unreported, 1995 WL 237092.  Thereafter, appellant appealed to the Supreme Court of Ohio and the state cross-appealed.  The Supreme Court reversed the partial reversal by this court, thereby reinstating appellant's original conviction.  *State v. Williams* (1996), 74 Ohio St.3d 569.  The United States Supreme

3

Court denied appellant's petition for a writ of certiorari.  *Williams v. Ohio* (1996), __

U.S. __, 117 S.Ct. 109, 136 L.Ed.2d 62.

On September 23, 1996, appellant filed a petition for postconviction relief.[1]  The

state responded by filing a motion for judgment, requesting that the trial court deny the

petition without a hearing.  After reviewing the petition and other materials, the trial

court determined that appellant was not entitled to relief under R.C. 2953.21 and

denied his petition without a hearing.

Appellant filed a timely notice of appeal with this court.  He asserted the following

three assignments of error for our review:

> "[1.]   The trial court erred in denying Appellant a hearing
> on his petition[,] T.d. 142, thus depriving Appellant of liberties
> secured by U.S. Const.[,] amend. VI and XIV, and Ohio
> Const.[,] art. I, [sections] 1, 2, 10, and 16, including
> meaningful access to the courts of this State.

> "[2.]   The granting of the government's motion for
> judgment by the trial court, T.d. 142, was error, depriving
> Appellant of liberties secured by U.S. Const.[,] amend. XIV
> and Ohio Const.[,] art. I, [sections] 1, 2, 10, and 16.

> "[3.]   The trial court erred in denying Appellant expert
> assistance, T.d. 136, in violation of liberties secured by U.S.
> Const.[,] amend. XIV and Ohio Const., art. I, [sections] 1, 2,
> and 16.

---

[1.]   Because appellant was convicted before the effective date of the amendment
to R.C. 2953.21, his petition was timely filed.  See *State v. Watters* (Dec. 26, 1997),
Trumbull App. No. 96-T-5606, unreported.

4

In his first assignment or error, appellant maintains that the trial court erred by denying his petition for postconviction relief without a hearing.  This assigned error focuses on the substantive merit of his petition.  R.C. 2953.21(E) provides that the trial court must hold a hearing on a petition for postconviction relief "[u]nless the petition and the files and records of the case show the petitioner is not entitled to relief[.]" R.C. 2953.21 "does not expressly mandate a hearing for every post-conviction relief petition and, therefore, a hearing is not automatically required."  *State v. Jackson* (1980), 64 Ohio St.2d 107, 110.  Under R.C. 2953.21, a petition for postconviction relief is subject to dismissal without a hearing if the petitioner fails to submit evidentiary materials setting forth sufficient operative facts to demonstrate substantive grounds for relief.  The trial court concluded, and we agree, that appellant was not entitled to postconviction relief.

Appellant asserted several claims for relief, including ineffective assistance of trial counsel, trial court errors during the trial, prosecutorial misconduct, and defects in the grand jury indictment process.  The trial court concluded that most of appellant's claims were barred by the doctrine of *res judicata* because they were, or could have been, raised on direct appeal.  We find no abuse of discretion in the application of the doctrine of *res judicata* to appellant's claims.  A defendant is barred by the doctrine of *res judicata* from raising any defense or constitutional claim that was or could have been raised at trial or on direct appeal from his conviction.  *State v. Perry* (1967), 10

5

Ohio St.2d 175, paragraph nine of the syllabus.  Because an appeal from the judgment

of conviction is limited to the trial court record, a petition for postconviction relief may

defeat the *res judicata* bar only if its claims are based on evidence outside the record.

*State v. Cole* (1982), 2 Ohio St.3d 112, 113-114.

New evidence attached to the petition for postconviction relief does not

automatically defeat the *res judicata* bar.  Evidence outside the record must meet

"'some threshold standard of cogency; otherwise it would be too easy to defeat the

holding of *Perry* by simply attaching as exhibits evidence which is only marginally

significant and does not advance the petitioner's claim[.]'"  *State v. Lawson* (1995), 103

Ohio App.3d 307, 315, quoting *State v. Coleman* (Mar. 17, 1993), Hamilton App. No.

C-900811, unreported, at 7, 1993 WL 74756.  Evidence *dehors* the record must

demonstrate that these claims could not have been raised on appeal based on the

information in the original record. *Lawson* at 315.

Appellant failed to demonstrate that his claims could not have been raised on

appeal.  Although appellant attempted to support several of his claims by attaching

affidavits to his petition, this evidence added little, if anything, to the substance of each

claim.  At best, some of the affidavits presented mere surplusage; others failed even to

support the alleged errors.

For example, appellant asserted various claims of ineffective assistance of trial

counsel.  Because he had different counsel at trial and on appeal, these claims could

6

have been, and some in fact were, raised on direct appeal. See *Cole* at syllabus. In order to establish ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. *State v. Bradley* (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland v. Washington* (1984), 466 U.S. 668, 689. Debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. *State v. Clayton* (1980), 62 Ohio St.2d 45, 49. Within the purview of trial tactics is defense counsel's selection of witnesses to call at trial. *State v. Coulter* (1992), 75 Ohio App.3d 219, 230.

The primary support appellant offered for his claims of ineffective assistance of counsel, as well as several of his other claims, were the affidavits of other attorneys familiar with capital cases. These experts found fault with the strategy taken by trial counsel and gave their opinions regarding the alleged errors. The fact that other experts differed with the strategy taken by trial counsel, however, merely established that it was a debatable strategy. Even if this evidence demonstrated that counsel did not choose the best strategy, it did not establish ineffectiveness. Appellant was constitutionally entitled to a fair trial, not a perfect one. *State v. Williams* (1992), 80

7

Ohio App.3d 648, 661.  Not only was this evidence not essential to litigating such a claim, it was entirely irrelevant.

Appellant asserted various claims relating to his need for expert assistance in preparing mitigating evidence for the penalty phase of the trial.  He again submitted evidence by way of attorney affidavits.  These affidavits failed to defeat the *res judicata* bar for a variety of reasons.  The opinion evidence was beyond the area of expertise of the attorneys, was not necessarily based on firsthand knowledge, and more importantly, merely supplemented evidence that was already in the record.  Evidence of appellant's declining I.Q. was introduced at trial and was considered in mitigation.  See *Williams*, 74 Ohio St.3d at 572.  Appellant failed to demonstrate that he could not have raised these claims based on the trial court record.

The only claim that was even arguably based on evidence beyond the record was appellant's claim that there were irregularities in the grand jury indictment process.  As to this claim, however, appellant failed to demonstrate any prejudice, and the trial court dismissed it accordingly.

Because appellant failed to demonstrate any substantive grounds for relief, the trial court did not err in dismissing his petition for postconviction relief without a hearing.  The first assignment of error is without merit.

In his second assignment of error, appellant again challenges the trial court's dismissal of his petition, this time on procedural grounds.  Specifically, he asserts that

8

the state's motion for judgment could not be considered as a response to his petition. We disagree. R.C. 2953.21(D) provides in part:

> "Within ten days after the docketing of the petition, or within any further time that the court may fix for good cause shown, the prosecuting attorney shall respond by answer or motion. Within twenty days from the date the issues are made up, either party may move for summary judgment."

R.C. 2953.21(D) does not mandate that the state even respond to a petition for postconviction relief, and a petitioner cannot compel a response if one is not forthcoming. *State v. Sklenar* (1991), 71 Ohio App.3d 444, 446; *State v. Roberts* (1991), 66 Ohio App.3d 654, 656. If the state does choose to respond, R.C. 2953.21(D) provides that it should do so "by answer or motion." The state's "motion" need not necessarily be one for summary judgment, but could be a pre-answer motion, such as a motion to dismiss. *State v. Hill* (June 16, 1995), Trumbull App. No. 94-T-5116, unreported, at 17-18, 1995 Ohio App. LEXIS 2684.

The state's "Motion for Judgment Pursuant to Ohio R.C. 2953.21(C)" was, in effect, a motion to dismiss the petition. In fact, this court has previously viewed a motion filed by the state with the same caption as a motion to dismiss. *Id.* at 2. Appellant has failed to demonstrate that the trial court committed any procedural error by considering the state's motion for judgment. The second assignment of error is without merit.

A - 13

9

Appellant's third assignment of error is that the trial court denied his constitutional rights by denying him the assistance of experts during his postconviction proceedings. After filing his petition for postconviction relief, appellant moved the trial court to provide him state assistance "to retain the services of an investigator, a mitigation specialist, and a neuropsychologist[.]" He cited no authority, nor does he now on appeal, to support his position that he has such a right.

The trial court denied appellant's request, stating that it would reconsider the request if it later determined that appellant's pending petition warranted an evidentiary hearing. We find no violation of appellant's constitutional rights in this ruling. The right to expert assistance is linked to the constitutional right to counsel. See *State v. Richey* (1992), 64 Ohio St.3d 353, 359. Because postconviction proceedings are civil in nature, a petitioner has no constitutional right to court-appointed counsel. *State v. Mapson* (1987), 41 Ohio App.3d 390, 391. Consequently, a petitioner would have no corresponding right to expert assistance. If the trial court grants a hearing, a petitioner may have a statutory right to legal representation by the public defender's office if his petition is found to have arguable merit. *State v. Crowder* (1991), 60 Ohio St.3d 151, paragraphs one and two of the syllabus; R.C. 120.16. The trial court's ruling fully preserved any corresponding statutory right to the assistance of experts.

The only authority cited by appellant is inapplicable here. Appellant cites a portion of Section 848(q)(4)(B), Title 21, U.S.Code which provides for the assistance of

experts during the federal habeas corpus process.  This right is created by federal statute, not the United States Constitution, and it applies only to certain types of drug-related federal capital cases.  Also, the right is not absolute.  An indigent petitioner must demonstrate that such services are "reasonably necessary" for his representation, and the decision whether to grant such services lies within the discretion of the trial court.  Section 848(q)(9), Title 21, U.S. Code.

Moreover, even if there was a right to expert assistance during the postconviction process, appellant failed to demonstrate his entitlement to it.  A criminal defendant has a right to expert assistance only upon the showing of a particularized need.  *State v. Brown* (1988), 40 Ohio St.3d 277, 283-284.  Appellant's request was not supported by such a demonstration of need.  Because appellant failed to demonstrate any infringement of his right to the assistance of experts, his third assignment of error is without merit.

The judgment of the trial court is affirmed.

JUDGE EDWARD J. MAHONEY, Ret.,
Ninth Appellate District,
sitting by assignment.

NADER, P.J.,

O'NEILL, J.,

concur.

COURT OF APPEALS OF OHIO, ELEVENTH APPELLATE DISTRICT

```
┌─────────────────────────────────┐
│         F I L E D               │
│     COURT OF APPEALS            │
│                                 │
│        OCT 19 1998              │
│                                 │
│    TRUMBULL COUNTY, OHIO        │
│   MARGARET R. O'BRIEN, Clerk    │
└─────────────────────────────────┘
```

STATE OF OHIO                    ) IN THE COURT OF APPEALS
                                 ) SS.
COUNTY OF TRUMBULL               )         ELEVENTH DISTRICT


STATE OF OHIO,

    Plaintiff-Appellee,

    - vs -

ANDRE R. WILLIAMS,

    Defendant-Appellant.

JUDGMENT ENTRY

CASE NO. 97-T-0153


For the reasons stated in the Opinion of this court, the assignments of error are

wthout merit.  It is the judgment and order of this court that the judgment of the trial court

is affirmed.


_____

JUDGE EDWARD J. MAHONEY, Ret.,
Ninth Appellate District
sitting by assignment

FOR THE COURT

Westlaw.

Not Reported in N.E.2d
1993 WL 74758 (Ohio App. 1 Dist.)
(Cite as: 1993 WL 74758 (Ohio App. 1 Dist.))

Page 1

H

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR
REPORTING OF OPINIONS AND WEIGHT OF
LEGAL AUTHORITY.

Court of Appeals of Ohio, First District, Hamilton
County.

STATE of Ohio, Respondent-Appellee,
v.
Alton COLEMAN, Petitioner-Appellant.

No. C-910083.

March 17, 1993.

Criminal Appeal from Hamilton County Court of
Common Pleas, Trial No. B-84354; affirmed.

Arthur M. Ney, Jr., Pros. Atty, and Christian J.
Schaefer, Cincinnati, for respondent-appellee.

Randall L. Porter, and Dale A. Baich, Ohio Public
Defender Com n, Columbus, for
petitioner-appellant.

DECISION

PER CURIAM.

*1 This cause came on to be heard upon the appeal,
the transcript of the docket, journal entries and
original papers from the Hamilton County Court of
Common Pleas, the transcript of the proceedings,
and the briefs and arguments of counsel.

Petitioner Alton Coleman appeals from the order of
the trial court dismissing his petition for
postconviction relief. The trial court held that an
evidentiary hearing was not necessary to determine
the issues raised in Coleman's petition. Coleman
now advances nine assignments of error for our

review. Because none of these assignments is well
taken, we affirm the trial court's judgment.

*Assignment of Error No. 1*

In his first assignment Coleman claims that the trial
court erred by denying his request to stay any
consideration of his postconviction-relief petition
pending the outcome of an action he filed in federal
district court challenging his transfer, some three
years after he had been tried and convicted for
aggravated murder, from federal prison in Marion,
Illinois, to the Southern Ohio Correctional Facility
in Lucasville, Ohio. According to Coleman, the
trial court's refusal to await the outcome of this
"collateral" civil matter violated the Due Process
and Equal Protection Clauses of the federal
constitution, as well as its prohibition against cruel
and unusual punishment.

This same assignment was raised by Coleman and
rejected by us in *State v. Coleman* (Mar. 17, 1993),
Hamilton App. No. C-900811, unreported. We,
therefore, overrule the first assignment of error.

*Assignment of Error No. 2*

Coleman's second assignment of error attacks the
trial court's denial of his motions to stay
postconviction proceedings pending the outcome of
his request for public records. According to
Coleman, the records which he seeks to obtain
through the Freedom of Information Act, Section
552 *et seq.*, Title 5, U.S.Code, "*may* be the basis for
a claim which *may* exist * * *." (Emphasis ours.)
This identical assignment was also addressed in
*State v. Coleman, supra.* On the basis of our
resolution of this issue in that case, as well as our
holdings in *State v. Zuern* (Dec. 4, 1991), Hamilton
App. No. C-900481, C-910229, unreported, and
*State v. Buerger* (Dec. 20, 1989), Hamilton App.
No. C-880664, unreported, the second assignment
of error is overruled.

*Assignment of Error No. 3*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
1993 WL 74758 (Ohio App. 1 Dist.)
(Cite as: 1993 WL 74758 (Ohio App. 1 Dist.))

Page 2

Coleman challenges in his third assignment of error the trial court's denial of an evidentiary hearing on the one hundred four causes of action contained in his R.C. 2953.21 petition for postconviction relief. Entitlement to such a hearing is not automatic, but, rather, dependent upon the petitioner adducing sufficient evidence to warrant a hearing. *State v. Jackson* (1980), 64 Ohio St.2d 107, 413 N.E.2d 819; *State v. Van Hook* (Oct. 21, 1992), Hamilton App. No. C-910505, unreported. The trial court must determine from the petition, the supporting affidavits, and the record whether there are substantive grounds for relief. R.C. 2953.21(C).

*2 In addition, the doctrine of *res judicata* may be a proper basis to dismiss an R.C. 2953.21 petition without a hearing. *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104.

Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment or conviction, or on an appeal from that judgment. *Id.,* paragraph nine of the syllabus.

In the instant case, the trial court indicated that Coleman's first, second, fourth through tenth, twelfth, fifteenth, seventeenth, twentieth, twenty-fourth through twenty-seventh, twenty-ninth through thirty-third, thirty-sixth, thirty-ninth, forty-first, forty-second, forty-fifth, forty-seventh through forty-ninth, fifty-second, fifty-fourth, fifty-fifth, part of the fifty-sixth (that portion which alleged that the trial court erred in ruling on several cited motions), fifty-ninth through sixty-second, sixty-fifth, sixty-eighth, seventy-third, seventy-sixth, seventy-seventh, seventy-ninth, eightieth, eighty-first, eighty-third through eighty-fifth, eighty-seventh, eighty-eighth, ninety-first, and ninety-sixth through one hundred third causes of action were barred by the doctrine of *res judicata*. The trial court determined that these claims either were based solely upon citations to the record or cited no particular evidentiary support, and accordingly concluded that these claims were or could have been raised at trial or on direct appeal. Our review of the record supports this

determination, and we therefore concur with the trial court and uphold its denial of an evidentiary hearing on these claims.

The trial court also applied the doctrine of *res judicata* to bar consideration of causes of action eleven, thirteen, fourteen, sixteen, eighteen, nineteen, twenty-one through twenty-three, twenty-eight, forty, forty-three, forty-four, forty-six, fifty-seven, sixty-seven, seventy-four, eighty-two, and eighty-six. In support of these claims Coleman submitted affidavits from jurors in other capital cases and/or articles about jurors in other cases. The articles and affidavits were not relevant to Coleman's trial or to the allegations in his postconviction petition. Therefore, this evidence failed to demonstrate substantive grounds for relief mandating a hearing under R.C. 2953.21. See *State v. Hicks* (Jan. 29, 1993), Hamilton App. No. C-910341, unreported. We again concur with the trial court's conclusion that these claims were or could have been raised at trial or on direct appeal. Accordingly, we uphold the trial court's denial of an evidentiary hearing in these respects.

Six additional claims for relief, which cite to several of the petition's accompanying exhibits for support, were also barred by the trial court on the basis of *res judicata*.

*3 Causes of action fifty-three, fifty-eight, seventy and ninety-five pertained to potential jurors' alleged prejudicial exposure to extensive pretrial publicity surrounding Coleman. The exhibits submitted in conjunction with these claims essentially consisted of newspaper articles detailing Coleman's (and his companion Debra Brown's) summer of 1984 crime rampage. We sustain the trial court's conclusion that these articles were in existence at the time of trial, and that, therefore, any arguments regarding their alleged prejudicial impact upon the jurors could and should have been raised at that time.

Coleman's seventy-fifth cause of action alleged that he was arrested without probable cause. This claim cited to the Evanston, Illinois, police department's written account of Coleman's apprehension, which came as the result of a former neighbor of Coleman's spotting Coleman and Brown in a park and apprising the police of the fugitives' whereabouts. Again, this constituted a claim which

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
1993 WL 74758 (Ohio App. 1 Dist.)
(Cite as: 1993 WL 74758 (Ohio App. 1 Dist.))

Page 3

should have been presented at trial or on direct appeal, and it was therefore properly barred from postconviction consideration on *res judicata* principles.

The ninety-fourth cause of action asserted that the FBI executed an improper warrant to search Coleman's maternal grandmother's apartment, where Coleman maintained a "private" room. Reference is made to three exhibits which consist of a consent form, an inventory sheet and the allegedly infirm search warrant. We agree with the trial court's conclusion that any claim regarding the defectiveness of the search warrant or the execution thereof could and should have been raised at trial or upon direct appeal, and is, therefore, barred by the doctrine of *res judicata*, thus obviating the need for an evidentiary hearing.

Causes of action thirty-four, thirty-seven, sixty-three, seventy-eight, and eighty-nine alleged errors that occurred in courts superior to the court of common pleas and therefore are not cognizable in R.C. 2953.21 proceedings. An inferior court has no jurisdictional basis to review the actions and decisions of superior courts. *State v. Van Hook, supra.* Accordingly, we conclude that the trial court correctly denied Coleman an evidentiary hearing on these claims.

Causes of action sixty-nine, seventy-one, and seventy-two, and portions of causes of action fifty-six, [FN1] ninety-two, [FN2] and ninety-three, [FN3] claimed that the state withheld evidence favorable to Coleman resulting in his counsel's inability to effectively prepare a defense.

   FN1. See T.d. B-24, paragraphs 366, 378.

   FN2. See T.d. B-24, paragraphs 612, 613.

   FN3. See T.d. B-24, paragraph 632.

When the prosecution withholds material, exculpatory evidence in a criminal proceeding it violates the due process rights of the defendant to a fair trial. *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194. In determining whether the prosecution improperly suppressed evidence favorable to an accused, a court may deem such evidence material for due process purposes only if

there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by the defense. *United States v. Bagley* (1985), 473 U.S. 667, 105 S.Ct. 3375; *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898.

*4 Upon review of Coleman's claims and the corresponding evidentiary documents involved, we conclude, as did the trial court, that none of the items allegedly withheld by the state constituted "material" evidence within the meaning of *Brady, supra,* and *Johnston, supra.* Thus, the trial court correctly concluded that these claims were patently insufficient to warrant an evidentiary hearing.

Several of Coleman's causes of action addressed the fact that essentially no mitigating evidence was presented on Coleman's behalf. The record reflects that the only evidence presented by the defense during the penalty phase was Coleman's unsworn statement, which contained absolutely no mitigation. The record further reflects that Coleman did not cooperate with his attorneys' attempts to obtain possible mitigating evidence. According to paragraph 364 of Coleman's postconviction-relief petition, he refused to provide his attorneys with names of individuals that would have been useful in presenting mitigation, and further refused to allow counsel to discuss with any potential witnesses their willingness to testify on his behalf.

The constitutional requirement that mitigation be considered in the penalty phase of a capital case is met by giving the defendant an opportunity to introduce the mitigating evidence available to him, and requiring the sentencer to consider it. However, if the defendant chooses to forgo the opportunity, no societal interest counterbalances the defendant's right to control his own defense. *State v. Tyler* (1990), 50 Ohio St.3d 24, 553 N.E.2d 576.
The same value that guarantees a defendant a right to present mitigating evidence--the right of the defendant to be treated with dignity as a human being--also gives him the right to decide what is in his own best interest.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
1993 WL 74758 (Ohio App. 1 Dist.)
(Cite as: 1993 WL 74758 (Ohio App. 1 Dist.))

Page 4

* * *

So long as the 'definitional predicates' [the elements of the crime and one or more aggravating circumstances] for the death penalty are proven, the trial court [is] obliged to honor the [defendant's] choice [to not present mitigating evidence] * * . [Citations omitted.]
*Id.* at 29, 553 N.E.2d at 585.

In applying the above authority to the case before us, we uphold the trial court's refusal to grant an evidentiary hearing on causes of action fifty-six, three, thirty-five, thirty-eight, and ninety, as such claims do not involve the violation of any constitutional rights, and, consequently, fail to set forth substantive grounds for relief under R.C. 2953.21.

Coleman contended in his fiftieth, part of his fifty-sixth, [FN4] sixty-sixth, seventy-first, seventy-second, seventy-fourth, [FN5] eightieth, [FN6] ninety-second, and ninety-third causes of action that he was denied the effective assistance of counsel. [FN7] Coleman's claims of ineffective assistance of counsel were three-pronged. A broad array of errors on the part of defense counsel during various stages of the lower court proceedings were argued, as well as charges that the state's failure to disclose exculpatory evidence deprived trial counsel of information material to Coleman's defense. Additionally, Coleman charged that the trial court, by frequently resetting the trial date upon the state's requests, prevented his counsel from properly preparing a defense.

FN4. The portion of the fifty-sixth cause of action discussed here consists of Coleman's allegation that he had no "rapport" with his trial attorneys, and his listing of what could have been presented as mitigation evidence.

FN5. The trial court barred this claim, as noted *supra*, on *res judicata* grounds.

FN6. This claim was barred by the trial court on *res judicata* grounds.

FN7. Also, in his seventy-eighth cause of action Coleman alleged ineffective assistance of appellate counsel. As we

stated *supra*, such a claim is not entertainable in R.C. 2953.21 proceedings.

*5 The standard for determining whether Coleman's trial attorneys were ineffective requires him to show: (1) that they made errors so egregious that they were not functioning as the "counsel" guaranteed him under the Sixth Amendment, and (2) that their deficient performance prejudiced his defense. *Strickland v. Washington* (1984), 466 U.S. 668, 686, 104 S.Ct. 2052, 2068. In essence, Coleman must show that his trial, due to his attorneys' ineffectiveness, was so demonstrably unfair that there is a reasonable probability that the result would have been different absent his attorneys' deficient performance. *Id.* at 693, 104 S.Ct. at 2068.

Furthermore, a court must be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" in reviewing a claim of ineffective assistance of counsel. *Id.* at 690, 104 S.Ct. at 2065. It is well established that the constitution does not guarantee a perfect trial or even the best available defense.
We deem it misleading to decide an issue of competency by using, as a measuring rod, only those criteria defined as the best of available practice in the defense field. There are many attorneys who fail to use the best available practices, yet relatively few who are found to be incompetent.
*State v. Lytle* (1976), 48 Ohio St.2d 391, 396, 358 N.E.2d 627; see, also, *State v. Post* (1987), 32 Ohio St.3d 380, 513 N.E.2d 754.

We have reviewed the performance of Coleman's trial counsel in light of the errors of practice he asserts, in addition to the overwhelming evidence of his guilt and the absence of mitigation evidence.
We conclude that his evidentiary materials fail to create a genuine issue of material fact, and that, on the state of this record, he has failed to demonstrate that his trial attorneys' conduct at trial was either ineffective or prejudicial.

Furthermore, in accordance with our resolution of Coleman's claims regarding the state's withholding of exculpatory evidence (see causes of action sixty-nine, seventy-one, seventy-two, and portions

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
1993 WL 74758 (Ohio App. 1 Dist.)
(Cite as: 1993 WL 74758 (Ohio App. 1 Dist.))

of fifty-six, ninety-two and ninety-three), we find no basis to conclude that the state's failure to provide him with certain documentation deprived him of evidence material to his defense. Moreover, we conclude that Coleman failed to demonstrate that the resetting of his trial date prejudiced his defense. Consequently, we hold that the trial court correctly determined that an evidentiary hearing was not warranted regarding any of Coleman's ineffective-assistance-of-counsel claims.

In his sixty-fourth cause of action Coleman alleged that he was not afforded a right to discovery in preparing his petition for postconviction relief. We sustain the trial court's dismissal of this claim, as it is well established that a trial court is not required to grant discovery during the initial stages of proceedings for postconviction relief. *State v. Van Hook, supra; State v. Zuern, supra.* [FN8]

FN8. See, also, Assignment of Error No. 8, *infra.*

*6 Coleman's fifty-first cause of action claimed that he was not properly transferred to Ohio and that any consideration of his postconviction petition should have been stayed during the pendency of his "collateral" federal lawsuit, as discussed in the first assignment. As we stated in that assignment, this argument has no merit, and we accordingly conclude that the trial court correctly dismissed this claim without conducting an evidentiary hearing.

Coleman's one-hundred-fourth, and final, cause of action alleged cumulative error based on his previous one hundred three claims. Upon our determination that each claim presented in Coleman's petition for postconviction relief was subject to dismissal without an evidentiary hearing, we uphold the trial court's decision regarding Coleman's one-hundred-fourth cause of action, and we accordingly overrule the third assignment of error.

*Assignment of Error No. 4*

In his fourth assignment of error, Coleman alleges that the trial court erred by adopting verbatim the prosecutor's findings of fact and conclusions of law. This allegation is meritless, as it is well established that a trial court's adoption of the findings of fact

and conclusions of law submitted by the state does not, by itself, deprive the petitioner of a meaningful review of his petition for postconviction relief and does not constitute error in the absence of demonstrated prejudice. See *State v. Coleman, supra; State v. Van Hook, supra.*

*Assignment of Error No. 5*

In his fifth assignment of error, Coleman argues that the trial court erred in its application of the doctrine of *res judicata* to the causes of action raised in his petition. Our resolution of Coleman's third assignment of error takes care of the issues raised within this assignment as to the application of *res judicata;* therefore, the fifth assignment of error is overruled.

*Assignment of Error No. 6*

In his sixth assignment of error, Coleman alleges that the trial court erred when it granted the state's motion for summary judgment "when each of the one-hundred-four claims for relief set forth a constitutional violation upon which relief should have been granted."

Upon a thorough review of Coleman's arguments, we conclude that they essentially are but another restatement of the same arguments raised and disposed of within the third assignment of error. Because we examined the merits of his causes of action and arguments at that time, it serves no purpose to discuss them again. Consequently, Coleman's sixth assignment of error is overruled.

*Assignment of Error No. 7*

Coleman's seventh assignment of error asserts that this court erred in denying his motion to file a brief in excess of thirty-five pages. We overrule this assignment of error on the authority of *State v. Zuern, supra,* wherein we wrote that a page-limitation claim is unrelated to anything which occurred at trial, and, therefore, is not cognizable in the review of a claim for postconviction relief.

*Assignment of Error No. 8*

*7 In his eighth assignment of error, Coleman argues that the trial court erred by denying him any

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
1993 WL 74758 (Ohio App. 1 Dist.)
**(Cite as: 1993 WL 74758 (Ohio App. 1 Dist.))**

opportunity to conduct discovery of facts and evidence essential to justify his opposition to summary judgment.

This assignment of error is overruled on the authority of *State v. Zuern, supra,* and *State v. Buerger, supra,* in which we held that a trial court is not required to grant discovery during the initial stages of proceedings for postconviction relief.

*Assignment of Error No. 9*

Coleman's ninth and final assignment of error alleges that this court erred in failing to **recuse** itself from the instant appeal. The claimed error does not concern any act or omission occurring at trial and is, therefore, not an appropriate claim in an appeal from the dismissal of a petition for **postconviction** relief. *State v. Hicks, supra.* Accordingly, this assignment of error is overruled.

The judgment of the trial court is affirmed.

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
2003 WL 131937 (Ohio App. 1 Dist.), 2003-Ohio-187
(Cite as: 2003 WL 131937 (Ohio App. 1 Dist.))

thus, res judicata barred consideration of claim that could have been raised at trial or on direct appeal, where affidavits presented essentially notarized arguments.

**[6] Criminal Law** ⟜1614
110k1614 Most Cited Cases
Affidavits of defense counsel and linguistics expert who analyzed death penalty instructions did not constitute evidence aliunde offered to impeach jury's conclusion that death sentence was appropriate in trial for aggravated murder and aggravated burglary, and thus, trial court was precluded from considering, on petition for post-conviction relief, juror's affidavits to show effect of instructions on juror's minds; averments were not based on firsthand knowledge of juror's deliberations. Rules of Evid., Rule 606(B).

**[7] Criminal Law** ⟜1614
110k1614 Most Cited Cases
Affidavits of defendant's father and brother stating their belief that defendant was innocent did not constitute evidence aliunde offered in support of post-conviction claim that jury did not understand mitigation phase instructions, for purposes of impeaching jury verdict, in trial for aggravated murder and aggravated burglary, and thus juror's affidavits in support of claim could not be considered; averments did not impeach jury's conclusion that death penalty was appropriate. Rules of Evid., Rule 606(B).

**[8] Criminal Law** ⟜1429(1)
110k1429(1) Most Cited Cases
Res judicata barred consideration of postconviction claims regarding imposition of death penalty on disproportionate number of racial minorities, constitutionality of means of execution, and death penalty scheme's violation of international law, where evidence dehors record was not unavailable at trial and thus, claims could have been raised at trial.

**[9] Criminal Law** ⟜1429(1)
110k1429(1) Most Cited Cases
Res judicata barred consideration of challenge to appointment of treatment center to conduct psychiatric examination, in prosecution for aggravated murder and aggravated burglary, where such claim could have been raised at trial or on direct appeal without resort to evidence dehors record.

**[10] Criminal Law** ⟜1429(2)
110k1429(2) Most Cited Cases

Res judicata barred consideration of claims that defendant received ineffective assistance of trial counsel, in trial for aggravated murder and aggravated burglary, where defendant was represented by new counsel on appeal who could have raised claims.

**[11] Criminal Law** ⟜641.13(2.1)
110k641.13(2.1) Most Cited Cases
**[11] Grand Jury** ⟜21
193k21 Most Cited Cases
Claim that African-American and female residents were seriously underrepresented as grand jury forepersons as result of rule allowing selection of forepersons in capital cases outside jury venire, together with list showing that foreperson was selected from those eligible to serve on grand jury in instant case, did not support claim that indictment was issued by improperly constituted grand jury due to discriminatory foreperson selection process, and thus, counsel's failure to object to indictment on grounds that foreperson selection process was discriminatory did not constitute ineffective assistance. U.S.C.A. Const. Amend. 6; R.C. § 2929.02; Rules Crim.Proc., Rule 6.

**[12] Criminal Law** ⟜641.13(2.1)
110k641.13(2.1) Most Cited Cases
**[12] Indictment and Information** ⟜10.1(2)
210k10.1(2) Most Cited Cases
**[12] Indictment and Information** ⟜10.1(3)
210k10.1(3) Most Cited Cases
Indictment for aggravated murder and aggravated burglary returned by grand jury consisting of eleven jurors rather than fifteen, and signed by deputy foreperson rather than by grand jury foreperson, was not fatally defective, and thus, counsel's failure to challenge indictment did not constitute ineffective assistance of counsel, insofar as rule governing grand jury proceedings required only nine jurors and allowed for deputy foreperson to act as foreperson in appointed foreperson's absence. U.S.C.A. Const. Amend. 6; R.C. §§ 2939.02, 2939.20; Rules Crim.Proc., Rule 6.

**[13] Criminal Law** ⟜641.13(2.1)
110k641.13(2.1) Most Cited Cases
Defense counsel's failure to question prospective juror about statements in questionnaire that suggested bias in favor of prosecution did not constitute deficient performance, as required to support claim of ineffective assistance of counsel, in trial for aggravated murder and aggravated burglary; both defense counsel and prosecutor

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
2003 WL 131937 (Ohio App. 1 Dist.), 2003-Ohio-187
(Cite as: 2003 WL 131937 (Ohio App. 1 Dist.))

Page 3

directly confronted juror with, and probed at length, his statements, but were unable to shake juror from his conviction that he would determine case objectively and would follow law. U.S.C.A. Const. Amend. 6.

[14] Criminal Law ⟜641.13(6)
110k641.13(6) Most Cited Cases
Defense counsel's alleged failure to investigate evidence of defendant's history of alcohol abuse, evidence that he had been drunk when he committed crimes, and evidence of consideration given to brother for turning defendant in, did not prejudice defendant, as required to support claim of ineffective assistance of counsel, in trial for aggravated murder and aggravated burglary, in light of overwhelming evidence of guilt, including his confession to crimes. U.S.C.A. Const. Amend. 6.

[15] Criminal Law ⟜641.13(7)
110k641.13(7) Most Cited Cases
Counsel's alleged failure to adequately present mitigating evidence regarding defendant's history of chemical abuse, family background, and mental health did not prejudice defendant, as required to support claim of ineffective assistance of counsel, in penalty phase of trial for aggravated murder and aggravated burglary; counsel in fact presented mitigation evidence available to them at time of trial, and there was no reasonable probability that, but for alleged omission of counsel, outcome of penalty phase would have been different. U.S.C.A. Const. Amend. 6.

[16] Criminal Law ⟜700(3)
110k700(3) Most Cited Cases
Newspaper articles relating to particulars of murder did not constitute material evidence, and thus, prosecutor's failure to disclose articles did not deprive defendant of fair trial for aggravated murder and aggravated burglary; issue at trial was not how murders occurred but who committed them.

[17] Criminal Law ⟜1590
110k1590 Most Cited Cases
Postconviction petitioner had no statutory right to conduct discovery to factually develop claims for purposes of entitling him to evidentiary hearing.
Civil Appeal from Hamilton County Court of Common Pleas.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Paula Adams, Assistant Prosecuting Attorney, for respondent-appellee.

Lori Leon, for petitioner-appellant.

PER CURIAM.

*1 {¶ 1} Petitioner-appellant Gary L. Hughbanks, Jr., has taken the instant appeal from the judgment of the Hamilton County Court of Common Pleas denying his petition for postconviction relief. On appeal, Hughbanks advances three assignments of error, in which he challenges the denial of his motion seeking the recusal or disqualification of Hamilton County's common pleas judges to rule on his petition and the dismissal of his petition without discovery or an evidentiary hearing. Finding no merit to any aspect of these challenges, we affirm the judgment of the court below.

{¶ 2} In July of 1998, a Hamilton County jury found Hughbanks guilty on two counts of aggravated murder and a single count of aggravated burglary in connection with the 1987 stabbing deaths of William and Juanita Leeman. The trial court imposed, with respect to the aggravated-murder convictions, sentences of death. This court upheld Hughbanks's convictions on direct appeal. See *State v. Hughbanks* (Dec. 3, 1999), 1st Dist. No. C-980595. His appeal to the Ohio Supreme Court, filed in January of 2000, remains pending.

{¶ 3} In July of 2000, Hughbanks filed with the common pleas court an R.C. 2953.21 petition to vacate or set aside his convictions. In his petition, as subsequently amended, he presented forty-two claims for relief. On May 8, 2001, the court dismissed the petition, and this appeal followed. [FN1]

> FN1. This court originally set arguments in this case for June 26, 2002. On June 18, Hughbanks filed with the Ohio Supreme Court an affidavit of bias and prejudice, by which he sought the disqualification of all members of this court. We postponed arguments in the appeal pending the chief justice's disposition of the affidavit.

I. DISQUALIFICATION

{¶ 4} Hughbanks contends in his first assignment of error that the common pleas judge who presided

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
2003 WL 131937 (Ohio App. 1 Dist.), 2003-Ohio-187
(Cite as: 2003 WL 131937 (Ohio App. 1 Dist.))

Page 4

over his postconviction proceeding "erred when she failed to recuse and/or disqualify herself and all Hamilton County Common Pleas judges from the postconviction proceedings." This challenge is feckless.

{¶ 5} **Hughbanks** contended, in the first claim for relief advanced in his July 2000 postconviction petition, that Hamilton County, from 1982 through 1998, discriminated on the basis of gender and race, in violation of the due-process, equal-protection, and fair-cross-section guarantees of the state and federal constitutions, by permitting the presiding common pleas judge to select grand-jury forepersons for capital cases from outside the annual grand-jury list, as authorized by R.C. 2939.02. In August of 2000, he filed in the common pleas court a "[m]otion" requesting that the judge presiding over his postconviction petition and "all of the judges of the Hamilton County Court of Common Pleas voluntarily recuse and/or disqualify themselves from presiding over his pending post-conviction action." In support of the motion, he argued that the Code of Judicial Conduct required disqualification, because the judges' role in selecting the grand-jury foreperson called into question their ability to be impartial in determining his postconviction claims. The court denied the motion in October of 2000.

{¶ 6} Hughbanks then pursued the matter of disqualification of the common pleas bench by filing with the Ohio Supreme Court an affidavit of bias and prejudice. On March 30, 2001, the chief justice of the supreme court denied the prayer for disqualification.

*2 {¶ 7} Section 5(C), Article IV of the Ohio Constitution confers upon the Chief Justice of the Ohio Supreme Court or his designee the authority to "pass upon the disqualification of any judge of the * * * courts of common pleas * * *." R.C. 2701.03 prescribes the procedure by which a party may seek disqualification of a common pleas judge, providing in relevant part as follows: "(A) If a judge of the court of common pleas allegedly * * * has a bias or prejudice for or against a party to a proceeding pending before the court * * * or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court * * *."

[1] {¶ 8} The state's constitution confers solely upon the chief justice of the supreme court or his designee the authority to pass upon the disqualification of a common pleas judge. See *Beer v. Griffith* (1978), 54 Ohio St.2d 440, 377 N.E.2d 775. Therefore, this court has no jurisdiction to review the common pleas court's denial of Hughbank's "[m]otion to * * * [r]ecuse and/or [d]isqualify" the county's common pleas bench. See *id.* at 441-442, 377 N.E.2d 775; accord *Goddard v. Children's Hosp. Med. Ctr.* (2000), 141 Ohio App.3d 467, 751 N.E.2d 1062.

[2] {¶ 9} Moreover, the chief justice addressed and ultimately dismissed Hughbank's affidavit of bias and prejudice on the ground that it was not well taken. This decision is res judicata as to the question of disqualification. See *State v. Getsy* (1998), 84 Ohio St.3d 180, 185, 702 N.E.2d 866. We, therefore, overrule the first assignment of error.

## II. DISMISSAL OF THE PETITION

{¶ 10} In his second assignment of error, Hughbanks contends that the common pleas court erred in dismissing his postconviction petition. In his third assignment of error, he contends that the court erred in applying the doctrine of res judicata and in denying his requests for discovery and for an evidentiary hearing. We address these challenges together and find them untenable.

{¶ 11} To prevail on a postconviction claim, the petitioner must demonstrate a denial or infringement of his rights in the proceedings resulting in his conviction that rendered the conviction void or voidable under the Ohio Constitution or the United States Constitution. See R.C. 2953.21(A). Therefore, "the violation upon which the petitioner relies to establish his right to relief must be of constitutional dimension, and it must have occurred at the time the petitioner was tried and convicted of a criminal offense." *State v. Powell* (1993), 90 Ohio App.3d 260, 264, 629 N.E.2d 13. A postconviction claim is subject to dismissal without a hearing when the petitioner fails to submit with his petition evidentiary material setting forth sufficient operative facts to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
2003 WL 131937 (Ohio App. 1 Dist.), 2003-Ohio-187
(Cite as: 2003 WL 131937 (Ohio App. 1 Dist.))

demonstrate substantive grounds for relief. See R.C. 2953.21(C); *State v. Pankey* (1981), 68 Ohio St.2d 58, 428 N.E.2d 413; *State v. Jackson* (1980), 64 Ohio St.2d 107, 413 N.E.2d 819.

## A. Res Judicata

*3 {¶ 12} In the proceedings below, the common pleas court premised its denial of the bulk of Hughbanks's claims for relief on the doctrine of res judicata. The Ohio Supreme Court in *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104, declared that the doctrine of res judicata applies to postconviction proceedings and held that, under the doctrine, "a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial [that] resulted in that judgment of conviction, or on an appeal from that judgment." *Id.,* paragraph nine of the syllabus. A claim for relief advanced in a postconviction petition is thus subject to dismissal without an evidentiary hearing under the doctrine of res judicata, when it presents a matter that could fairly have been determined without resort to evidence dehors the record. See *State v. Cole* (1982), 2 Ohio St.3d 112, 443 N.E.2d 169, syllabus; *Perry,* supra, paragraph nine of the syllabus.

{¶ 13} Hughbanks offered outside evidence in support of each of his forty-two claims for relief. A postconviction petitioner may resist dismissal of a postconviction claim under the doctrine of res judicata by submitting outside evidence in support of the claim. But the mere submission of such evidence will not, in and of itself, preclude the application of the doctrine of res judicata to deny the claim. Evidence dehors the record submitted in support of a postconviction claim must be "competent, relevant and material" to the claim, and it must "meet some threshold standard of cogency," i.e., it must be more than "marginally significant," and it must "advance the * * * claim beyond mere hypothesis and a desire for further discovery." *State v. Coleman* (Mar. 17, 1993), 1st Dist. No. C-900811. Moreover, such evidence must be other than cumulative of or alternative to evidence presented at trial. See *State v. Combs* (1995), 100

Ohio App.3d 90, 98, 652 N.E.2d 205. And it "must be more than evidence [that] was in existence and available to the defendant at the time of trial and which could and should have been submitted at trial if the defendant wished to make use of it." *Coleman,* supra. Finally, the submission of evidence dehors the record in support of a postconviction claim will not preclude the application of the doctrine of res judicata to deny the claim if the claim could fairly have been determined on direct appeal from the judgment of conviction, based upon information contained in the trial record. See *Cole,* supra, syllabus; *Perry,* supra, paragraph nine of the syllabus.

## 1. Grand Jury Proceedings

[3] {¶ 14} In his first postconviction claim, **Hughbanks** contended that Hamilton County, from 1982 through 1998, discriminated on the basis of gender and race, in violation of the due-process, equal-protection, and fair-cross-section guarantees of the state and federal constitutions, by permitting the presiding common pleas judge to select grand-jury forepersons for capital cases from outside the list of prospective grand jurors, as authorized by R.C. 2939.02. In his second claim, he contended that the indictment upon which he had been convicted had been returned by an improperly constituted grand jury, because the grand jury had consisted of fewer grand jurors than the law required, and because one of the grand jurors had been selected from outside the list of prospective grand jurors. In his third claim, he assailed his indictment on the ground that the foreperson of the grand jury had failed, in violation of R.C. 2939.20, to "subscribe his name as foreman."

*4 {¶ 15} The evidence submitted in support of these claims was in existence and available to the defense at the time of Hughbanks's trial. See *Coleman,* supra. Therefore, the claims were subject to dismissal under the doctrine of res judicata, when they could have been raised by the defense at trial. [FN2] See *Perry,* supra, paragraph nine of the syllabus.

> FN2. As we noted supra, Hughbanks was convicted in July of 1998. Thus, **Hughbanks's** trial took place after the decision of the United States Supreme

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
2003 WL 131937 (Ohio App. 1 Dist.), 2003-Ohio-187
(Cite as: 2003 WL 131937 (Ohio App. 1 Dist.))

Court, in April of that year, in *Campbell v. Louisiana* (1998), 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551, in which the Court declared that a white criminal defendant had third-party standing to mount an equal-protection challenge, as well as standing to bring a due-process challenge, to racial discrimination in the selection of a grand jury.

*2. Penalty-Phase Instructions*

[4][5] {¶ 16} In his tenth claim, Hughbanks sought relief on the ground that the jury, in recommending the imposition of sentences of death, "failed to understand and * * * to follow the mitigation phase instructions." In support of this claim, he offered the affidavits of his father and brother, the affidavit of a linguistics professor who had analyzed the Ohio Jury Instructions pertaining to the death penalty, the affidavit of a criminal defense attorney experienced in capital murder cases, and the affidavits of seven jurors, along with the completed prospective-juror questionnaire of one of the attesting jurors.

{¶ 17} Hughbanks's father and brother attested in their affidavits to their belief that Hughbanks was not guilty of the murders. The affidavits were not cogent to the tenth claim, because they did not materially advance the contention that the penalty-phase instructions had been confusing or indecipherable to the jury.

{¶ 18} The affidavits of the linguistics professor and the defense attorney presented "essentially * * * notarized argument[s]" that could have been advanced at trial or on appeal. Therefore, neither affidavit constituted outside evidence that precluded dismissal of the tenth claim under the doctrine of res judicata. See *State v. Bies* (June 30, 1999), 1st Dist. No. C-980688.

{¶ 19} Hughbanks offered the jurors' affidavits and questionnaire to show the potential and actual effect upon the jurors' minds of the alleged linguistic deficiencies in the challenged penalty-phase instructions. Evid.R. 606(B) governs the competency of a juror to testify: "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement

occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict * * * or concerning his mental processes in connection therewith. * * * His affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying will not be received for these purposes." Evid.R. 606(B) is subject to the exception embodied in the aliunde rule, which permits a juror to offer testimony impeaching his verdict upon the presentation of impeachment evidence from a competent source other than a juror. See *State v. Kehn* (1977), 50 Ohio St.2d 11, 18, 361 N.E.2d 1330, certiorari denied (1977), 434 U.S. 858, 98 S.Ct. 180, 54 L.Ed.2d 130; *State v. Poindexter* (Mar. 6, 1991), 1st Dist. No. C-890734.

*5 [6][7] {¶ 20} Neither the affidavit of the linguistics expert nor the affidavit of the defense attorney constituted evidence aliunde, when the averments of neither expert were based on firsthand knowledge of the jurors' deliberations. See *State v. Mills* (Mar. 15, 1995), 1st Dist. No. C-930817. Nor did the affidavits of Hughbanks's father and brother provide evidence aliunde. Their statements in their affidavits that they did not believe that Hughbanks was guilty of the murders did not impeach the jury's conclusion, based upon the challenged instructions, that sentences of death were the appropriate punishment for the murders.

{¶ 21} In the absence of evidence aliunde impeaching the jury's recommendations of sentences of death, Evid.R. 606(B) precluded consideration of the jurors' affidavits to show the effect upon the jurors' minds of the challenged instructions. And because none of the evidentiary matter submitted in support of the tenth claim constituted outside evidence that precluded dismissal of the claim under the doctrine of res judicata, we hold that the tenth claim was properly dismissed on that basis.

*3. Challenges to Ohio's Death-Penalty Scheme*

[8] {¶ 22} In his twelfth, thirty-ninth and fortieth claims for relief, **Hughbanks** challenged the constitutionality of various aspects of the state's death-penalty scheme. In his twelfth claim, he

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
2003 WL 131937 (Ohio App. 1 Dist.), 2003-Ohio-187
(Cite as: 2003 WL 131937 (Ohio App. 1 Dist.))

Page 7

contended that courts in Ohio generally, and in Hamilton County specifically, have imposed the death penalty upon a disproportionate number of racial minorities. In his thirty-ninth and fortieth claims, he challenged the constitutionality of the state's means of execution. And, in his thirteenth claim, he contended that the state's death-penalty scheme violates international law.

{¶ 23} The Ohio Supreme Court has held that execution by either electrocution or lethal injection does not run afoul of the Eighth Amendment's proscription against cruel and unusual punishment. See *State v. Carter* (2000), 89 Ohio St.3d 593, 608, 734, 734 N.E.2d 345, N.E.2d 345. Moreover, the evidence offered in support of each of these claims was not demonstrably unavailable at the time of trial. Thus, despite Hughbank's submission of supporting evidentiary matter, the twelfth, thirteenth, thirty-ninth and fortieth claims were subject to dismissal under the doctrine of res judicata, when they could fairly have been determined at trial. See *Perry*, supra, paragraph nine of the syllabus.

*4. Appointment for Psychiatric Examination*

[9] {¶ 24} In his thirty-sixth claim for relief, Hughbanks contended, in part, that he was denied various rights guaranteed under the Fifth and Sixth Amendments, including the privilege against self-incrimination and the right to counsel, by the trial court's appointment of the Community Diagnostic and Treatment Center to conduct a psychiatric examination to assist the court in determining the appropriate disposition of his case. This claim, to the extent that it challenged the appointment, was subject to dismissal under the doctrine of res judicata, when it could fairly have been determined at trial or on direct appeal without resort to evidence dehors the record. See *Cole*, supra.

**B. Ineffective Assistance of Counsel**

*6 {¶ 25} In the balance of his claims for relief, Hughbanks contended that defense counsel's performance during both the guilt and the penalty phases of his trial denied him the effective assistance of counsel. The Ohio Supreme Court in *State v. Lytle* (1976), 48 Ohio St.2d 391, 358

N.E.2d 623, established a two-step inquiry into the question of whether a criminal defendant was deprived of the effective assistance of counsel at trial: "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *Id.* at 396, 358 N.E.2d 623; see, also, *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768. Trial counsel's performance will not be deemed ineffective unless it can be shown that "counsel's representation fell below an objective standard of reasonableness," *Strickland*, supra at 689, 104 S.Ct. at 2065, and that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley*, supra, paragraph three of the syllabus.

*1. Res Judicata*

[10] {¶ 26} In his fourteenth, seventeenth through nineteenth, twenty-first, twenty-second, twenty-ninth, thirtieth, and thirty-second through thirty-fourth claims for relief, **Hughbanks** contended that he was denied the effective assistance of counsel (1) by defense counsel's failure to raise at trial the challenge presented in his thirteenth claim to the state's death-penalty scheme in its alleged failure to operate in conformity with international law; (2) by counsel's failure to exercise peremptory challenges or challenges for cause to excuse various jurors; (3) by counsel's failure to object to misleading and inappropriate statements by the prosecution at voir dire and in its closing arguments during the penalty phase of the trial; (4) by counsel's own inappropriate statements, omissions, and conduct during voir dire and during the guilt and penalty phases of the trial; (5) by counsel's failure to adequately advance and advocate life-sentence options and parole eligibility or to object to the trial court's misstatements in that regard, and (6) by counsel's failure to seek admission of two defense exhibits. In his thirty-sixth claim, he challenged, in addition to the trial court's

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
2003 WL 131937 (Ohio App. 1 Dist.), 2003-Ohio-187
(Cite as: 2003 WL 131937 (Ohio App. 1 Dist.))

Page 8

appointment of the Community Diagnostic and Treatment Center to conduct a psychiatric examination, his trial counsel's effectiveness in failing to object to the appointment. He also assailed counsel's failure to object to this appointment in his sixteenth claim. Finally, in his forty-second claim, he based his challenge to counsel's performance, in part, on counsel's failure to request, and to object to the trial court's failure to deliver, a penalty-phase instruction regarding the power of "a solitary juror" to "prevent a death penalty recommendation."

*7 {¶ 27} The Ohio Supreme Court in *State v. Cole*, supra, syllabus, held that res judicata is an appropriate basis for the dismissal of a postconviction claim alleging counsel's ineffectiveness at trial, when the petitioner was represented by new counsel on appeal and the issue could fairly have been determined without evidence dehors the record. Hughbanks was represented by new counsel on appeal. The challenges to trial counsel's performance advanced in these claims, although supported by evidence dehors the record, presented matters that could fairly have been determined on direct appeal without resort to such evidence. We, therefore, hold that Hughbanks's fourteenth, seventeenth through nineteenth, twenty-first, twenty-second, twenty-ninth, thirtieth, and thirty-second through thirty-fourth claims for relief, along with the noted portions of his fifth, sixteenth, thirty-sixth and forty-second claims, were subject to dismissal under the doctrine of res judicata. See *Cole*, supra, syllabus.

*2. Grand Jury Proceedings*

{¶ 28} In his fourth claim, Hughbanks contended that he was denied the effective assistance of counsel, when counsel failed to raise at trial the challenge advanced in his first claim to the discriminatory nature of the county's grand-jury-foreperson selection process. In his fifth claim, he contended that counsel was ineffective when they failed to raise at trial (1) the challenge presented in his second claim to his indictment by a grand jury consisting of fewer grand jurors than required by law and of one grand juror from outside the list of prospective grand jurors, and (2) the challenge presented in his third claim to the return of his indictment without the foreperson's signature.

*a.*

[11] {¶ 29} R.C. 2939.02 requires that grand jurors be "selected from the persons whose names are contained in the annual jury list and from the ballots deposited in the jury wheel, or in the automation data processing storage drawer, or from the names contained in an automated data processing information storage device * * *." The statute permits a common pleas judge to select as the foreperson of a grand jury "any person who satisfies the qualifications of a juror," but whose name is *not* included among the names contained in the data bases listed above. Crim. R. 6(C) similarly permits "the administrative judge of the general division of * * * the common pleas court" to appoint as foreperson "any qualified elector or one of the [grand] jurors."

{¶ 30} In support of the challenge to counsel's performance advanced in his fourth claim, Hughbanks asserted and offered evidence to show that, in Hamilton County, from 1982 through 1998, the presiding common pleas judge exercised the permissive authority conferred by R.C. 2939.02 and Crim.R. 6 to select grand-jury forepersons for capital cases from outside the "grand jury venire," and that, as a consequence, African-American and female residents of the county were "seriously underrepresented" as grand-jury forepersons. This statistical disparity served as the basis for his contention that his conviction was procured by a procedure that contravened his due-process and equal-protection rights, along with his fair-cross-section right and unstated (and, to us, unclear) aspects of his "8th Amendment, and effective assistance of counsel rights."

*8 {¶ 31} Hughbanks cites in support of this contention the decision of the United States Supreme Court in *Campbell v. Louisiana* (1998), 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551. There, the Court held that a white criminal defendant had third-party standing to mount an equal-protection challenge, as well as standing to bring a due-process challenge, to racial discrimination in the selection of a grand-jury foreperson. [FN3]

FN3. The Court left for another day the issue of the whether Campbell also had

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
2003 WL 131937 (Ohio App. 1 Dist.), 2003-Ohio-187
(Cite as: 2003 WL 131937 (Ohio App. 1 Dist.))

standing to raise a fair-cross-section claim. We do so as well, because Hughbanks has done little more in presenting this aspect of his claim than to invoke the phrase.

{¶ 32} R.C. 2939.02 provides for the selection of grand jurors in the following manner: "At the time of the selection of the persons who are to constitute the grand jury, the commissioners of jurors shall draw from the jury wheel * * * ballots containing the names of not less than twenty-five persons. The first fifteen persons whose names are drawn shall constitute the grand jury, if they can be located and served by the sheriff, and if they are not excused by the court or a judge of the court. If any of the first fifteen persons whose names are so drawn are not located or are unable to serve and are for that reason excused by the court or by a judge of the court, whose duty it is to supervise the impaneling of the grand jury, the judge shall then designate the person whose name next appears on the list of persons drawn, to serve in the place of the person not found or excused and shall so continue to substitute the names of the persons drawn in the order in which they were drawn, to fill all vacancies resulting from persons not being found or having been excused by the court or the judge of the court, until the necessary fifteen persons are selected to make up the grand jury ."

{¶ 33} The evidence submitted in support of the fourth claim did not demonstrate when in the grand-juror-selection process the court selected the foreperson of the grand jury that indicted Hughbanks. But the evidence did include a list, certified by the Hamilton County Clerk of Courts, that showed the "qualifi[ed] * * * Electors, residents of [the] County, who * * * were legally drawn from the Jury Wheel * * * to serve as GRAND Jurors" for the month of September 1997. That list contained, along with the names of the other grand jurors, the name of the woman selected to serve as foreperson of the grand jury. Therefore, the foreperson of the grand jury, while perhaps not selected from the ranks of the already-seated grand jurors, was not, as Hughbanks contended, selected from outside the "grand jury venire."

{¶ 34} Moreover, Crim.R. 6(C), which outlines the duties of a grand-jury foreperson, grants the foreperson "the power to administer oaths and

affirmations" and requires the foreperson to "sign all indictments"; to keep, or to designate another grand juror to "keep[,] a record of the number of jurors concurring in the finding of every indictment[;] and upon the return of the indictment[,][to] file the record with the clerk of court * * *." Thus, the duties imposed upon a grand-jury foreperson are essentially clerical in nature, conferring no more authority than that possessed by the other grand jurors to determine, or to influence the determination, to indict.

*9 {¶ 35} If a grand-jury foreperson is selected from within the ranks of a properly constituted grand jury, and the foreperson's role is essentially ministerial, purposeful discrimination in the selection of a grand-jury foreperson will not provide a basis for reversing a conviction or dismissing an indictment. See *Hobby v. United States* (1984), 468 U.S. 339, 344, 104 S.Ct. 3093, 82 L.Ed.2d 260. If, on the other hand, the foreperson is selected from outside the system used to compose the balance of the grand jury, but possesses the same voting power as the other grand jurors and takes on, by virtue of the status of foreperson, duties that are merely ministerial in nature, we must treat a claim of discrimination in the selection of the grand-jury foreperson as one alleging discrimination in the composition of the grand jury itself. See *Campbell v. Louisiana* (1998), 523 U.S. 392, 396-397, 118 S.Ct. 1419, 140 L.Ed.2d 551.

{¶ 36} A state may not, consistent with the due-process guarantee of the Fourteenth Amendment, subject a criminal accused to trial upon an indictment returned by a grand jury composed in a discriminatory manner in contravention of the United States Constitution. See *Peters v. Kiff* (1972), 407 U.S. 493, 501, 92 S.Ct. 2163, 33 L.Ed.2d 83. Indictment by a grand jury from which members of an identifiable group have been purposefully excluded constitutes discrimination that denies an accused his right to equal protection under the law. See *Castaneda v. Partida* (1977), 430 U.S. 482, 492-495, 97 S.Ct. 1272, 51 L.Ed.2d 498.

{¶ 37} To prove purposeful discrimination in the selection of grand jurors, the accused must demonstrate that the procedure employed to select the grand jurors resulted in "substantial

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
2003 WL 131937 (Ohio App. 1 Dist.), 2003-Ohio-187
(Cite as: 2003 WL 131937 (Ohio App. 1 Dist.))

underrepresentation" of an "identifiable group." To show substantial underrepresentation, and thus establish a prima facie case of purposeful discrimination, the accused must (1) "establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied," (2) prove "the degree of underrepresentation * * *, by comparing the proportion of the group in the total population to the proportion called to serve as grand jurors, over a significant period of time," and (3) support "the presumption of discrimination raised by the statistical showing" with proof that "the selection procedure * * * is susceptible of abuse or is not racially neutral." Once the defendant has established a prima facie case of discriminatory purpose, the burden shifts to the state to rebut that case. *Id.* at 494-495, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498.

{¶ 38} Hughbanks offered in support of his petition evidence to show that African-American and female residents of the county were "seriously underrepresented" as grand-jury forepersons. The record is unclear, however, concerning the precise procedure employed by the county to select the foreperson for the grand jury that indicted him. And Hughbanks presented no evidence that that procedure, whatever its particulars, resulted in substantial underrepresentation of either African-Americans or women on his grand jury or on grand juries over a significant period of time.

*10 {¶ 39} Thus, the evidence offered in support of the fourth claim failed to establish a prima facie case of purposeful discrimination in the selection of grand jurors. Accordingly, we conclude that Hughbanks's counsel, in failing to raise this issue at trial, cannot be said to have violated a substantial duty to their client. See *Lytle,* supra at 396-397, 358 N.E.2d 623. We, therefore, hold that the common pleas court properly dismissed the fourth claim without an evidentiary hearing.

*b.*

[12] {¶ 40} Hughbanks predicated the challenge to counsel's performance in his fifth claim on R.C. 2939.02 and 2939.20. R.C. 2939.02 requires, in relevant portion, that a grand jury consist of fifteen grand jurors, "selected from the persons whose

names are contained in the annual jury list and from the ballots deposited in the jury wheel * * *." R.C. 2939.20 requires the grand-jury foreperson to sign the indictment.

{¶ 41} The evidence submitted in support of this claim showed that, contrary to Hughbanks's assertion, each of the grand jurors on the grand jury that indicted him was selected from the list of prospective grand jurors drawn from the jury wheel, in conformity with R.C. 2939.02. [FN4] But the evidence also confirmed that the grand jury consisted of only eleven grand jurors, and that the deputy foreperson of the grand jury, rather than the foreperson, signed Hughbanks's indictment.

> FN4. Hughbanks's complaint about the absence of grand juror "Milton" from the list of prospective grand jurors is disingenuous at best. His own evidence showed that the grand jury that indicted him included a "Harold *H* ilton," whose name appeared on the list of prospective grand jurors, but was misspelled "Harold *M* ilton" on one of four grand-jury-compensation lists.

{¶ 42} The Ohio Supreme Court, in *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523, paragraph one of the syllabus, declared that R.C. 2939.02 and 2939.20 are procedural, not substantive, provisions and held that the statutes are superceded by Crim.R. 6 to the extent that they conflict with the rule. Unlike R.C. 2939.02 and 2939.20, Crim.R. 6 requires only nine grand jurors and provides for the appointment of a "foreman," who is required to "sign all indictments," and a "deputy foreman," who is empowered to "act as foreman" in the appointed foreperson's absence. See Crim.R. 6(A) and 6(C).

{¶ 43} Thus, the grand jury that indicted Hughbanks was legally constituted, in its members and in its numbers. And, in the absence of proof that the deputy foreperson, in signing the indictment, acted outside the scope of the authority conferred by Crim.R. 6(C), we must conclude that the indictment was legally executed. Under these circumstances, Hughbanks's counsel, in failing to raise these issues at trial, cannot be said to have violated a substantial duty to their client. See *Lytle,*

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
2003 WL 131937 (Ohio App. 1 Dist.), 2003-Ohio-187
(Cite as: 2003 WL 131937 (Ohio App. 1 Dist.))

Page 11

supra at 396-397, 358 N.E.2d 623. We, therefore, hold that the common pleas court properly dismissed the fifth claim for relief without an evidentiary hearing.

*3. Voir Dire*

[13] {¶ 44} In his seventh and eighth claims for relief, Hughbanks contended that he was denied the effective assistance of counsel, when counsel failed to conduct a voir dire of prospective jurors adequate to identify, and to provide a basis for challenging, those jurors who were unqualified or were unwilling to consider mitigation evidence or to follow penalty-phase instructions. In his thirty-seventh claim, he assailed counsel's performance in failing to question juror McMurray during voir dire about various responses offered by the juror in his prospective-juror questionnaire. In support of these claims, Hughbanks submitted the affidavit of the linguistics professor and the criminal defense attorney, the affidavits of seven jurors (including that of juror McMurray), and juror McMurray's prospective-juror questionnaire.

*11 {¶ 45} The record shows, contrary to Hughbanks's assertion, that both the prosecution and defense counsel, during voir dire, directly confronted McMurray with, and probed at length, statements in his prospective-juror questionnaire that suggested a bias in favor of the prosecution. Neither party could shake him from his conviction that he would approach the case objectively and would follow the law. Therefore, the evidence offered by way of the questionnaire was merely cumulative of that contained in the record.

{¶ 46} Moreover, as we determined supra, Evid.R. 606(B) barred consideration of the jurors' affidavits attesting to their deliberative processes. See *Poindexter,* supra. And the affidavits of the linguistics professor and the defense attorney constituted neither evidence aliunde, see *Mills,* supra, nor outside evidence that precluded dismissal of these claims under the doctrine of res judicata. See *Bies,* supra.

{¶ 47} Thus, the challenges to counsel's performance presented in the seventh, eighth, and thirty-seventh claims were either unsupported by evidence outside the record or presented matters that could have been raised on direct appeal. These claims were, therefore, subject to dismissal under the doctrine of res judicata.

*4. Guilt- and Penalty-Phase Evidence*

[14] {¶ 48} In his sixth and thirty-fifth claims, Hughbanks contended that he was denied the effective assistance of counsel, when his trial counsel failed to adequately investigate and present, during both the guilt and the penalty phases of the trial, evidence of his history of alcohol abuse, evidence of law enforcement's belief that he had been drunk when he committed the crimes, and evidence of the "consideration" received by his brother for "turning [him] in."

{¶ 49} These claims relied principally upon the affidavits of Hughbanks's father and brother, both of whom had, by approaching law enforcement and implicating Hughbanks in the murders, set in motion the process that had resulted in his apprehension, trial, and conviction for the crimes, over ten years after their commission. Two years later, Hughbanks's brother, Larry, executed an affidavit in which he asserted that he had implicated Hughbanks, not upon a belief that Hughbanks had murdered the Leemans, but to curry favor with law enforcement and thereby to avoid imprisonment for a probation violation, and to avenge Hughbanks's unspecified role in Larry's earlier incarceration for the offense of gross sexual imposition. Larry also attested to Hughbanks's history of confessing, while intoxicated, to conduct of which he was not guilty. He further averred that Hughbanks's counsel had disregarded his attempts to communicate these matters to them before trial.

{¶ 50} Hughbanks's father, in his affidavit, similarly averred that he did not really believe that his son had murdered the Leemans. He stated that he had implicated his son in the murders in a fit of pique over Hughbanks's involvement with a woman with whom he had also been "romantically involved." He asserted that he had not contacted Hughbanks's counsel with this information, because counsel had advised his wife that they did not wish to speak to him.

*12 {¶ 51} On direct appeal, **Hughbanks** challenged trial counsel's performance in agreeing

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
2003 WL 131937 (Ohio App. 1 Dist.), 2003-Ohio-187
(Cite as: 2003 WL 131937 (Ohio App. 1 Dist.))

Page 12

not to require the state to produce his father and his brother as witnesses at trial. We rejected this challenge because the record of the proceedings at trial would not allow for a conclusion that Hughbanks had been prejudiced, or that counsel had not based their "strategic" decision not to compel the witnesses' testimony on a sound reasoning process. See *State v. Hughbanks*, supra.

{¶ 52} The evidence submitted in support of the sixth and thirty-fifth claims does not alter that assessment. When viewed with the overwhelming evidence of guilt adduced at trial, including Hughbanks's confession to the crimes, the evidence offered in support of these claims cannot be said to demonstrate a reasonable probability that, but for counsel's failure to present this evidence at trial, the results of the trial would have been different. See *Bradley*, supra. Thus, Hughbanks failed to sustain his initial burden of demonstrating substantive grounds for relief. Accordingly, we conclude that the common pleas court properly dismissed the sixth and thirty-fifth claims without an evidentiary hearing. See *Pankey*, supra; *Jackson*, supra.

*5. Penalty-Phase Omissions*

[15] {¶ 53} In his sixteenth and thirty-first claims, Hughbanks contended that he was denied the effective assistance of counsel, when his counsel failed to adequately cross-examine and failed to object to or to present testimony to rebut the trial testimony of the psychiatrist appointed, through the Community Diagnostic and Treatment Center, to examine him for the purpose of assisting the court in determining the appropriate disposition of his case. In his twentieth claim, Hughbanks contended that he was denied the effective assistance of counsel, when his counsel failed, during the penalty phase of the trial, to adequately explain, to present evidence concerning, or to advocate unspecified mitigating factors. In his twenty-third through twenty-eighth claims, he assailed counsel's performance in failing to investigate, prepare, and present, during the penalty phase of his trial, evidence concerning his history, character and background and evidence concerning his substance dependency and the bipolar and post-traumatic-stress disorders under which he suffered and the effect of these disorders on his conduct at the time of the offenses and on his ability

to function while incarcerated. In his forty-second claim, Hughbanks contended, in part, that he was denied the effective assistance of counsel, when his counsel failed to play for the jury that portion of his audiotaped statement that included his conversation with his parents, which, he argued, was "mitigating" in the sense that it would have "humanize[d]" him and revealed to the jury his "feelings" and "troubled history."

{¶ 54} Much of the evidence that Hughbanks offered in support of these postconviction claims, including evidence probative of his mental-health history, his family background, and his substance-abuse problem, had been presented at trial. Moreover, proof of the existence of mitigation evidence that was not presented at trial, but that might have supported an alternative theory of mitigation, does not constitute proof of counsel's ineffectiveness, when, as here, the record demonstrates that counsel presented the case in mitigation competently in view of the facts available to them. See *State v. Post* (1987), 32 Ohio St.3d 380, 388-389, 513 N.E.2d 754.

*13 {¶ 55} Nothing in the record before us or in the evidentiary material offered in support of these claims presents a reasonable probability that, but for the alleged omissions of counsel, the result of the penalty phase of Hughbanks's trial would have been different. See *Bradley*, supra. Thus, Hughbanks failed to sustain his initial burden of demonstrating substantive grounds for relief. We, therefore, hold that the common pleas court properly dismissed, without an evidentiary hearing, his sixteenth, twentieth, twenty-third through twenty-eighth, and thirty-first claims, along with the noted portion of his forty-second claim. See *Pankey*, supra; *Jackson*, supra.

*C. Prosecutorial Misconduct--Withholding Favorable Evidence*

[16] {¶ 56} In his ninth and thirty-eighth claims for relief, Hughbanks contended that the prosecution's failure to disclose to the defense certain evidence contradictory to its theory of the case denied him his constitutionally secured right to a fair trial. In his eleventh and fifteenth claims, he challenged his trial counsel's effectiveness in failing to unearth this evidence and to present it at trial.

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
2003 WL 131937 (Ohio App. 1 Dist.), 2003-Ohio-187
(Cite as: 2003 WL 131937 (Ohio App. 1 Dist.))

Page 13

{¶ 57} The fair-trial guarantee of the Due Process Clause imposes upon the prosecution an obligation to disclose to a criminal accused evidence material to the accused's guilt or innocence. See *Brady v. Maryland* (1963), 373 U.S. 87, 83 S.Ct. 1194. Such evidence is "material" only if there is a "reasonable probability" that its disclosure would have changed the outcome of the trial. See *United States v. Bagley* (1985), 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481. The determination of whether such a probability exists entails an inquiry not into whether a trial with the undisclosed evidence would have yielded a different verdict, but into whether the evidence, "considered collectively," "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley* (1995), 514 U.S. 419, 434-436, 115 S.Ct. 1555, 131 L.Ed.2d 490.

{¶ 58} The prosecution presented at trial evidence that, on the evening of May 13, 1987, Mr. and Mrs. Leeman died of multiple stab wounds sustained in the course of a struggle with an intruder in their home. The murderer eluded police, and the murders remained unsolved for ten years, until Hughbanks's brother and father, and then other family members, implicated him in the crimes, and Hughbanks, under police interrogation, confessed to the murders. Hughbanks's pretrial attempt to suppress his confession was unsuccessful, and he did not testify at trial.

{¶ 59} In support of his postconviction claims, Hughbanks offered a number of newspaper articles published in the wake of the murders and a copy of a composite drawing of a man seen near the scene of the crimes. Hughbanks contended that the news articles and the composite drawing revealed "evidence" that contradicted the prosecution's theory of the case against him. This "evidence" included statements by the Leemans' neighbors that they had seen Mrs. Leeman in her yard between 8:30 and 9:15 on the night of the murders; statements by law enforcement authorities that the Leemans' house had been largely undisturbed, that the front and rear doors of the house had been unlocked, and that Mr. Leeman's wallet had not been taken; statements by the police reflecting their belief that fingerprints discovered in the house were those of the murderer, and that the murderer's clothing would have been bloody; and circulation

by the police of the composite drawing that, Hughbanks contended, bore no resemblance to him.

*14 {¶ 60} The pivotal issue at trial was not how the murders had been committed, but who had committed them. The bulk of the undisclosed evidence related to the particulars of the murders, rather than to Hughbanks's identity as their perpetrator. Based upon this fact and our review of the record of the proceedings below, we conclude that the undisclosed evidence, viewed collectively, was not "material" in that it could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." See *Kyles v. Whitley,* supra at 435, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490.

{¶ 61} Upon our conclusion that the absence of the undisclosed evidence was not outcome-determinative, we conclude that Hughbanks was denied neither a fair trial by the prosecution's failure to disclose it, see *Brady v. Maryland,* supra at 87, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, nor the effective assistance of counsel by defense counsel's failure to discover it and to present it at trial. See *State v. Bradley,* supra, paragraph three of the syllabus. Accordingly, we hold that the common pleas court properly denied the ninth, eleventh, fifteenth, and thirty-eighth claims for relief without an evidentiary hearing.

*D. Cumulative Error*

{¶ 62} In his forty-first claim for relief, Hughbanks contended that the cumulative effect of the constitutional deprivations alleged in the petition's other claims denied him unspecified rights secured by the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Sections 2, 9, 10 and 16, Article I of the Ohio Constitution. This catch-all claim depended upon, and thus fell with, the petition's other claims. We, therefore, hold that the forty-first claim for relief was subject to dismissal without an evidentiary hearing.

*E. Discovery*

[17] {¶ 63} In his third assignment of error, Hughbanks assailed not only the dismissal of his claims without an evidentiary hearing, but also the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
2003 WL 131937 (Ohio App. 1 Dist.), 2003-Ohio-187
(Cite as: 2003 WL 131937 (Ohio App. 1 Dist.))

Page 14

common pleas court's refusal to permit him to conduct discovery to "factually develop" those claims. The postconviction statutes do not grant a postconviction petitioner the right to conduct discovery for the purpose of gathering evidence to establish an entitlement to an evidentiary hearing. See *State v. Byrd* (2001), 145 Ohio App.3d 318, 332-333, 762 N.E.2d 1043 And the failure of the statutes to so provide does not contravene any state or federal constitutional right. See *State v. Jones* (Dec. 29, 2000), 1st Dist. No. C-990813. We, therefore, conclude that the common pleas court properly denied Hughbanks's requests for discovery.

*F. Conclusion*

{¶ 64} Upon our determination that the common pleas court properly denied each postconviction claim without an evidentiary hearing, we hold that the court properly dismissed Hughbanks's postconviction petition. Having thus concluded that Hughbanks's petition was properly dismissed without an evidentiary hearing, and that he was not entitled to discovery in the initial stages of his postconviction proceeding, we overrule the second and third assignments of error.

*15 {¶ 65} In turn, finding no merit to any of the assignments of error advanced on appeal, we affirm the judgment of the court below.

Judgment affirmed.

DOAN, P.J., HILDEBRANDT and GORMAN, JJ., concur.

*Please Note:*

The court has placed of record its own entry in this case on the date of the release of this Decision.

2003 WL 131937 (Ohio App. 1 Dist.), 2003-Ohio-187

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.