STATE OF OHIO )     IN THE COURT OF APPEALS
) ss.
COUNTY OF TRUMBULL )     ELEVENTH DISTRICT

STATE OF OHIO,

**JUDGMENT ENTRY**

Plaintiff-Appellee

F I L E D
COURT OF APPEALS
NOV 1 9 2004

- vs -

**CASE NO. 2004-T-0089**

NATHANIEL JACKSON,

TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

Defendant-Appellant.

On September 8, 2004, Appellant filed a motion to exceed the maximum page length of his brief beyond the thirty-five-page limit set forth in Loc.R. 12(D) of the Eleventh District Court of Appeals.

No brief or memorandum in opposition to this motion has been filed.

On September 13, 2004, this Court put on an entry holding the motion in abeyance until such time as Appellant filed his brief.

On September 20, 2004, the forty-seven-page brief of Appellant was filed.

Therefore, upon consideration of Appellant's motion, and for good cause shown, it is ordered that the motion is hereby granted.

It is the further order of this Court that the Brief of Appellant is hereby, sua sponte, stricken pursuant to Loc.R. 12(B)(1) of the Eleventh District Court of Appeals since certain appendices have already been made a part of the trial court record and, therefore, attachment to Appellant's brief is not necessary,

or are not part of the trial court record and, therefore, cannot be considered by this Court on appeal.

The Clerk of Courts is instructed to strike Appellant's brief, filed with this Court on September 20, 2004, from the record of this Court.

Appellant is granted leave to file a corrected brief which complies with the rules of court on or before December 13, 2004.

_Donald R. Ford_
ADMINISTRATIVE JUDGE DONALD R. FORD

FILED
COURT OF APPEALS
NOV 1 9 2004
TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

STATE OF OHIO          )          IN THE COURT OF APPEALS
                            ) ss.
COUNTY OF TRUMBULL     )          ELEVENTH DISTRICT

STATE OF OHIO,

        Plaintiff-Appellee,                  **JUDGMENT ENTRY**

  - vs -

                                  **CASE NO. 2004-T-0089**

NATHANIEL JACKSON,

        Defendant-Appellant.

On November 15, 2004, Appellee, State of Ohio, by and through Assistant Prosecutor LuWayne Annos, filed a motion to exceed the maximum page length of its brief pursuant to Loc.R. 12(D) of the Eleventh District Court of Appeals to forty-seven (47) pages.

No brief or memorandum in opposition to this motion has been filed.

Upon consideration of Appellee's motion, and for good cause shown, it is ordered that the motion is hereby granted.

*Donald R. Ford*
ADMINISTRATIVE JUDGE DONALD R. FORD

**F I L E D**
COURT OF APPEALS
NOV 1 9 2004
TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )
                                        )
     Appellee-Appellee,                )
                                        )
-vs-                                    )      Case No. 2004-TR-89
                                        )
NATHANIEL JACKSON,                      )
                                        )
     Defendant-Appellant.              )

---

## REPLY BRIEF OF APPELLANT NATHANIEL JACKSON

---

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney

Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor Administration Building
Warren, Ohio 44481

COUNSEL FOR APPELLEE

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio 43215-2998
(614) 466-5394
Facsimile: (614) 644-0708

COUNSEL FOR APPELLANT

## TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................. i

PREFACE .................................................................................................................. iii

ASSIGNMENT OF ERROR NO. I........................................................................... 1

    THE TRIAL COURT ERRED WHEN IT DENIED PETITIONER'S POST-CONVICTION PETITION WITHOUT FIRST AFFORDING HIM THE OPPORTUNITY TO CONDUCT DISCOVERY.  [T.d. 322, pp. 5, 7, 9, 11, 13, 16, 21, 23, 26, 33. ....................................................................................... 1

    State v. Wiles, 126 Ohio App. 3d 71, 79 (1998) ................................................. 1

ASSIGNMENT OF ERROR NO. II.......................................................................... 1

    THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT PETITIONER FUNDS TO EMPLOY EXPERTS.  [T.d. 322, pp. 9, 11.]............... 1

    State v. Lott, 97 Ohio St. 3d 303, 306 (2002)....................................................... 2

ASSIGNMENT OF ERROR NO. III.......................................................................... 2

    THE POST-CONVICTION ASSISTANT PROSECUTOR ERRED BY NOT PROVIDING PETITIONER WITH THE INFORMATION CONTAINED IN THE PROSECUTOR'S FILES WHICH WAS NECESSARY TO SUPPORT THE CLAIMS CONTAINED IN THE AMENDED PETITION. [T.d. 309, pp. 8, 15-16]..................................................................................... 2

ASSIGNMENT OF ERROR NO. IV ......................................................................... 3

    THE POST-CONVICTION TRIAL JUDGE ERRED BY NOT RECUSING HIMSELF.  [T.d. 322, p. 10]. ..................................................................... 3

    State v. Smith, 242 N.W.2d 320, 324 (Iowa 1976) ............................................. 4

    United States v. Bernstein, 533 F.3d 775 (2nd Cir. 1976)................................... 4

ASSIGNMENT OF ERROR NO. V............................................................................ 4

    THE TRIAL COURT ERRED BY APPLYING THE DOCTRINE OF RES JUDICATA TO BAR CERTAIN OF PETITIONER'S CAUSES OF ACTION.  [T.d. 322, pp. 5, 7, 8-9, 10, 17, 23, 24, 25].......................................... 4

    State v. Cowans, 151 Ohio App. 3d 228, 233 (2002)......................................... 5

ASSIGNMENT OF ERROR NO. VI .................................................................................5

    THE TRIAL COURT ERRED IN DISMISSING PETITIONER'S
AMENDED POST-CONVICTION PETITION WHERE HE PRESENTED
SUFFICIENT OPERATIVE FACTS TO MERIT RELIEF OR, AT A
MINIMUM, AN EVIDENTIARY HEARING. ......................................................6

CONCLUSION.......................................................................................................9

CERTIFICATE OF SERVICE ...............................................................................10

## PREFACE

Due to the page limitation of the Local Rules of this Court, Nathaniel Jackson has limited this Reply Brief to specific portions of Appellee's arguments.  By not responding to all of Appellee's argument Nathaniel Jackson makes no concessions; rather, he relies on the arguments in his Merit Brief.

## ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED WHEN IT DENIED PETITIONER'S AMENDED POST-CONVICTION PETITION WITHOUT FIRST AFFORDING HIM THE OPPORTUNITY TO CONDUCT DISCOVERY. [T.d. 322, pp. 5, 7, 9, 11, 13, 16, 21, 23, 26, 33.**

Nathaniel Jackson argued that he met the requisite standard to be entitled to conduct discovery.  He further argued if he did not meet that standard, then the standard was constitutionally infirm.  [Appellant's Merit Brief, p. 4.]

The State concedes, citing <u>State v. Wiles</u>, 126 Ohio App. 3d 71, 79 (1998), that this Court has determined that trial courts have the authority to permit discovery in post-conviction proceedings.  [Appellee's Merit Brief, p.12.]  The State however responds that "authority from this very Court totally emasculates Petitioner's argument."  [<u>Id.</u> at p. 10.]  The State's argument is illogical.  Petitioner Jackson simply argued that he met the <u>Wiles</u> standard to be permitted to conduct discovery.  This argument did not "emasculate" the Court's holding in <u>Wiles</u>.

The Court should sustain this Assignment of Error and remand the matter with instructions that the trial court permit Nathaniel Jackson to conduct discovery.

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT PETITIONER FUNDS TO EMPLOY EXPERTS. [T.d. 322, pp. 9, 11.]**

The trial court concluded that it had no authority to grant funding for purposes of  the retention of experts, "The Eleventh District Court of Appeals has held that 'because postconviction proceedings are civil in nature, a petitioner has no constitutional right to court-appointed counsel.  Consequently, a petitioner would have no corresponding right to expert assistance'."  [T.d. 322, p. 9].  The trial court's legal determination flies directly in the face of the Ohio Supreme Court's holding that "The trial court should . . . consider expert testimony,

appointing experts if necessary, in deciding this [post-conviction] matter." State v. Lott, 97 Ohio St. 3d 303, 306 (2002)

The State initially argues that post-conviction petitioners have no right to the appointment of experts. [Appellee's Merit Brief, pp. 12-4]. The State subsequently reverses its position "Certainly, trial courts have the authority to appoint experts when the petitioners merit such an appointment." [Id. , p. 14.] The State concludes its argument by once again shifting its position. "Appellant had no right to court appointed experts." [Id.]

The trial court had the authority to appoint experts. State v. Lott, 97 Ohio St. 3d at 306. The trial court held otherwise. [T.d. 322, p. 9.] The trial court erred.

This Court should vacate the judgment of the trial court and remand the matter for the trial court to consider the appointment of experts based upon the realization that it does in fact have authority to appoint experts for purposes of post-conviction.

## ASSIGNMENT OF ERROR NO. III

**THE POST-CONVICTION ASSISTANT PROSECUTOR ERRED BY NOT PROVIDING PETITIONER WITH THE INFORMATION CONTAINED IN THE PROSECUTOR'S FILES WHICH WAS NECESSARY TO SUPPORT THE CLAIMS CONTAINED IN THE AMENDED PETITION. [T.d. 309, pp. 8, 15-16].**

The assistant prosecutor had information in her possession that she refused to divulge that Nathaniel Jackson needed to support the Causes of Action contained in the Amended Petition. The information consisted of the fact that the Prosecutor's Office had offered the Caucasian co-defendant a deal that would have spared her life and a police report that documented misconduct by the victim. [Appellant's Merit Brief, pp. 7-9.]

The prosecutor argues that she had no duty of disclosure during the post-conviction proceedings "unless it went to the correctness of the conviction." [the information in question]

[Appellee's Merit Brief, p. 17.]  The information sought, that the prosecutor maintained a racially discriminating charging policy, goes to the "correctness of the conviction."

The State accuses Nathaniel Jackson of "devot[ing] more space to attack undersigned counsel than to finding flaws within the trial court's findings of facts." [Appellee's Merit Brief, p. 16.]  A comparison of Nathaniel Jackson's and the State's Brief proves otherwise.  He simply asserted that the Assistant Prosecutor had access to the evidence that would have supported his claims.  [Appellant's Merit Brief, pp. 8-9.]  It is the State that mounted character attacks. [Appellee's Merit Brief, pp. 15-20.]

The State's personal attacks cannot change the facts.  The Assistant Prosecutor had in her possession at least two relevant facts which she still refuses to disclose.  The trial court denied Nathaniel Jackson discovery so he could access these facts, as well as other facts that he needs to support his Amended Petition.

The Court should sustain this Assignment of Error.  It should remand the case with the instructions that the trial court permit Nathaniel Jackson to conduct discovery with regard to all of the relevant facts, including information that the Assistant Prosecutor has in her possession.

## ASSIGNMENT OF ERROR NO. IV

### THE POST-CONVICTION TRIAL JUDGE ERRED BY NOT RECUSING HIMSELF. [T.d. 322, p. 10].

The trial court, in its opinion dismissing Nathaniel Jackson's post-conviction, relied upon facts not contained in the record.  [Appellant's Merit Brief, pp. 11-13.]  These extrajudicial facts related to 1) procedures for selecting grand jury forepersons in other case by other judges, [Id. at p. 11], 2) a letter sent the trial judge [Id. at p. 11] and 3)  the prevailing standards of practice in capital cases. [Id. at p. 12.]

The State does not contest the assertion that the Judge relied upon evidence outside the record when denying Nathaniel Jackson's Amended Post-conviction Petition. [Appellee's Merit Brief, pp. 22-24.] Instead the State relies upon other justifications.

The State initially contends that Nathaniel Jackson should have filed a Motion to recuse. [Id. at p. 21.] Nathaniel Jackson would have done this if he had any advance knowledge that the trial judge would rely upon facts outside the record when dismissing the Amended Petition. The first knowledge that Nathaniel Jackson had of the misconduct was after the trial court had filed its opinion, which was too late to preclude the admission of the extrajudicial facts into the record.

The State next asserts that it is acceptable for trial judges to rely upon evidence not contained in the record. [Id. p. 22.] The State cites to two cases, 1976 cases from the state of Iowa and the United States Second Circuit Court of Appeals. [Id.] The Iowa case addresses judicial bias in general, as opposed to judicial reliance upon facts outside the record. State v. Smith, 242 N.W.2d 320, 324 (Iowa 1976). The other case involved a judge who was exposed to extrajudicial facts at the co-defendants' sentencings. United States v. Bernstein, 533 F.3d 775 (2nd Cir. 1976). There was no evidence that the trial court used the information it obtained from the plea hearings in the co-defendants' cases to convict or sentence the defendants who had appealed. Id. at n.5 ("None of the statements relate to guilt or innocence of the appellants.")

This Court should sustain this Assignment of Error, vacate the judgment of the trial court and remand the matter for reconsideration that is limited to facts contained in the record.

## ASSIGNMENT OF ERROR NO. V

**THE TRIAL COURT ERRED BY APPLYING THE DOCTRINE OF RES JUDICATA TO BAR CERTAIN OF PETITIONER'S CAUSES OF ACTION. [T.d. 322, pp. 5, 7, 8-9, 10, 17, 23, 24, 25].**

Nathaniel Jackson's Amended Petition contained fifteen causes of action [T.d. 307]. The trial court erroneously ruled that eight of the causes of action were barred by res judicata. [T.d. 322, pp. 5, 6, 8-9. 10, 17, 23, 24, 25].

The State initially correctly identified that the appropriate test for the application of res judicata: "Evidence dehors the record must demonstrate that these claims could not have been raised on appeal based on the information in the original record. State v. Lawson, (1995), 103 Ohio App. 3d 307, 315" [Appellee's Merit Brief, p. 25]. If the Court applies this test, it will become readily apparent that none of the claims contained in the Amended Petition are barred by the affirmative defense of res judicata.

The State in its pleading apparently recognized that the application of the Lawson test would result in reversal of the trial court's ruling. Subsequently, throughout this Assignment of Error, the State requested this Court to apply a much different definition, "the evidence dehors the record must not be evidence which was in existence and available for use at the time of trial." State v. Cowans, 151 Ohio App. 3d 228, 233 (2002). [Appellee's Merit Brief p. 27-29.]

Nathaniel Jackson went into great detail as to the reasons that the Cowans definition is incorrect. [Appellant's Merit Brief, pp. 14-15]. The Court's holding in Cowans was dicta, as Judge Grendell in her concurring opinion observed. Cowans 151 Ohio App. at 234. [Appellant's Merit Brief p. 15]. In addition, constitutional error, for the most part, can only be predicated upon evidence that was available at the time of trial. [Id. at p. 14.]

The Court should sustain this Assignment of Error. It should conduct its own analysis, applying the correct definition of "res judicata" or remand this matter to the trial court to apply the correct definition.

## ASSIGNMENT OF ERROR NO. VI

THE TRIAL COURT ERRED IN DISMISSING PETITIONER'S AMENDED POST-CONVICTION PETITION WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT RELIEF OR, AT A MINIMUM, AN EVIDENTIARY HEARING.

Nathaniel Jackson in his Merit Brief submitted a merits argument as to each of the fifteen causes of action contained in the Amended Petition [Appellant's Merit Brief, pp. 21-47]. Because of this Court's page limitation for Reply Briefs, he is limited to responding to some of the State's more illogical or factually incorrect arguments.

**First Cause Of Action:  The Trumbull County Prosecutor's Charging Decisions Have Resulted In The Death Penalty Being Imposed In A Racially Discriminatory Manner.** [T.d. 306, ¶¶16-24.]

The State asserts that "Appellee supplies absolutely no operative" facts to support the First Cause of Action [Appellee's Merit Brief, p. 32.]  The population of Trumbull County is 7.9% African-American [T.d. 307, Exhibit 1].  In nine of the ten cases in which the trial courts of that County have sentenced a defendant to death there was a victim who was Caucasian [Id. at Exhibit 2].  In almost all of thirty-six cases in which the prosecutor has sought the death penalty, at least one of the victims was Caucasian [Id. at Exhibits 2-36].  In five of the ten cases the defendant was African-American [Id. at Exhibit 2].

The State contends that the "Caucasian, middle-class well-educated co-defendant was also capitally indicted" [Appellee's Merit Brief p. 32].  The State faults Nathaniel Jackson for not proving "his co-defendant was offered a plea bargain."  [Id.] The State and the trial court precluded Nathaniel Jackson from proving what the State recognizes as a critical fact, that the prosecutor offered the Caucasian, middle-class, well-educated, co-defendant a plea bargain that would spare her life.

**Second Cause Of Action:  The Grand Jury That Indicted Nathaniel Jackson Was Drawn From A Venire In Which There Was An Underrepresentation Of African-Americans.** [T.d. 306 ¶¶25-34.]

Nathaniel Jackson submitted the affidavit of Diane Wiley of the National Jury Project in which she concluded that the underrepresentation in another Trumbull County capital case would "not occur unless there was some kind of systemic representation [T.d. 307, Exhibit 39, ¶10]. The State argues that Nathaniel Jackson must demonstrate a "systemic or intentional culling of minorities [Appellee's Merit Brief, p. 34.] This is an incorrect statement of law. <u>Castoneda v. Partida</u>, 430 U.S. 482, 493-94 (1977). The State also argues that Roderick Davie's case, which was the case that Diane Wiley studied, took place ten years prior to the instant case [Appellee's Merit Brief, p. 34]. But that the same underrepresentation of African-Americans should still be continuing ten years later in Nathaniel Jackson and Donna Roberts' cases is significant. Nathaniel Jackson submitted, at a minimum, sufficient evidence to warrant the trial court granting discovery and an evidentiary hearing.

**Fifth Cause Of Action: The Court Failed To Hold A Hearing concerning Nathaniel Jackson's Request To Discharge His Trial Counsel** [T.d. 306 ¶¶55-62.]

Nathaniel Jackson submitted a copy of the letter that he sent to the trial judge requesting that trial counsel be removed [T.d. 320, Exhibit 2]. The State suggests that this Court should not consider Nathaniel Jackson's "own self serving statement" [Appellee's Merit Brief, p. 35]. The letter is certainly the "best evidence" that he sent a letter to the trial judge requesting a substitution of counsel. Nathaniel Jackson is hard pressed to identify other evidence he could submit to support this Cause of Action.

The State asserts that Nathaniel Jackson failed to demonstrate any prejudice [<u>Id.</u>] Nathaniel Jackson sent the letter in question because his trial attorneys were not actively investigating his case. As documented in the Sixth, Eighth, Ninth, Tenth and Eleventh Causes of

Action, Nathaniel Jackson's statements in his letter concerning the inaction of trial counsel were accurate. He suffered prejudiced as outlined in those Causes of Action.

**Sixth Cause Of Action:  Trial Counsel Failed To Retain A Competent Mitigation Specialist And As A Result The Mitigation Investigation Ws Incomplete**. [T.d. 306, ¶¶63-71.]

The State concedes that trial counsel did not have the benefit of a mitigation specialist [Appellee's Merit Brief, p. 36]. The State claims it was sufficient that the trial court appointed a psychologist because the two professions are "a distinction without a difference." [Id.]

A mitigation specialist conducts and compiles a social history of the capital defendant. The psychologist interprets that history. If no history or an incomplete history is completed, the psychologist has an incomplete basis upon which to base her opinion. This is the scenario in the present case. Because the trial court did not recognize the distinction between an investigator and a psychologist, the trial court's ruling was erroneous. Nathaniel Jackson suffered prejudice by the lack of investigation [T.d. 307, Exhibits 49-53].

**Eighth Cause Of Action:  Trial Counsel Failed To Provide Effective Assistance Of Counsel In The Pretrial Stages Of The Proceedings.**  [T.d. 306, ¶¶85-97.]

Nathaniel Jackson cited to numerous instances of trial counsel's ineffectiveness in the pretrial stages [Appellant's Merit Brief, pp. 33-37]. Nathaniel will respond, to only two of the State's replies, because of this Court's page limitation.

Trial counsel did not present evidence that co-defendant Donna Roberts manipulated Nathaniel Jackson. She had managed a medical office [T.d. 307, Exhibit 60]. Nathaniel was in special education classes. [Id. 56 and 57]. She "played him" by giving him drugs, money and cars [Id., Exhibits 50, 51, 53.] Donna Roberts had initially attempted to get another African American to commit the murder [Id. at Exhibit 67]. The State in conclusory fashion says that "the jury had ample evidence as to the conspiracy . . . " [Appellee's Merit Brief, p. 36]. What the

jury never heard was the evidence that Donna Robert's manipulated Nathaniel Jackson into his involvement in the offenses.

The State argues that trial counsel conducted an extensive and unparalleled investigation into the personal and family history of Nathaniel Jackson.  [Id. at p. 41.]  That trial counsel initially met Appellant's family outside the courtroom just prior to their testimony rebuts this "fact" [T.d. 307, Exhibits 49-53].  This courthouse meeting did not constitute an extensive and unparalleled investigation into the personal and family history of Nathaniel Jackson.

**Tenth Cause Of Action:  The Actions Of Trial Counsel During The Culpability Stage Of The Proceedings Denied Nathaniel Of His Right To Effective Assistance Of Counsel.**  [T.d. 306, ¶¶110-122].

The State concedes that the trial court made a "last minute substitution of attorney Thomas Wright" which occurred just prior to the actual commencement of the mitigation phase [Appellee's Merit Brief, p. 42].  Yet the State argues that Nathaniel Jackson failed "to demonstrate that Attorney Wright was ineffective."  [Id.]  The State cites no case or explanation for the conclusion that an attorney, who trial court appointed just prior to the sentencing phase, is effective.

## CONCLUSION

The trial court's decisions to deny post-conviction relief, and to dismiss Nathaniel Jackson's Amended Post-conviction Petition without discovery, funds for experts, or an evidentiary hearing were error. This Court should reverse the trial court's dismissal of the Amended Petition and grant him a new trial or mitigation hearing;  or alternatively, remand his post-conviction case to the trial court with instructions to allow Nathaniel Jackson to conduct the discovery to be followed by an evidentiary hearing on the merits of his claims.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER # 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio  43215-2998
(614) 466-5394

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **REPLY BRIEF OF APPELLANT NATHANIEL JACKSON** was forwarded by first-class, postage prepaid U.S. Mail to Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio 44481 on this 29th day of November, 2004.

RANDALL L. PORTER
COUNSEL FOR NATHANIEL JACKSON

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

F I L E D
COURT OF APPEALS

DEC 1 3 2004

TRUMBULL COUNTY, OHIO
MARGARET R. O'BRIEN, Clerk

STATE OF OHIO,                    )
                                  )
    Appellee-Appellee,            )
                                  )
-vs-                              )       Case No. 2004-TR-89
                                  )
NATHANIEL JACKSON,                )
                                  )
    Defendant-Appellant.          )

---

## CORRECTED BRIEF OF APPELLANT NATHANIEL JACKSON

---

| | |
|---|---|
| DENNIS WATKINS - 0009949<br>Trumbull County Prosecuting Attorney | DAVID H. BODIKER<br>Ohio Public Defender |
| LUWAYNE ANNOS - 0055651<br>Assistant Prosecuting Attorney | RANDALL L. PORTER - 0005835<br>Assistant State Public Defender |
| Trumbull County Prosecutor's Office<br>160 High Street, N.W.<br>4th Floor Administration Building<br>Warren, Ohio 44481 | Office of the Ohio Public Defender<br>8 East Long Street - 11th Floor<br>Columbus, Ohio  43215-2998<br>(614) 466-5394<br>Facsimile:  (614) 644-0708 |
| COUNSEL FOR APPELLEE | COUNSEL FOR APPELLANT |



# TABLE OF CONTENTS

..................................................................................................................................... i

TABLE OF CONTENTS.............................................................................................................1

STATEMENT OF THE CASE....................................................................................................3

ASSIGNMENT OF ERROR NO. I...........................................................................................

THE TRIAL COURT ERRED WHEN IT DENIED PETITIONER'S POST-
CONVICTION PETITION WITHOUT FIRST AFFORDING HIM THE
OPPORTUNITY TO CONDUCT DISCOVERY.  [T.d. 322, pp. 5, 7, 9, 11,
13, 16, 21, 23, 26, 33. ..............................................................................................3

ISSUE PRESENTED FOR REVIEW .........................................................................3

A Trial Court Must Provide A Post-Conviction Petitioner With The
Opportunity To Conduct Discovery Pursuant To The Civil Rules Prior To
Considering A Dispositive Motion Filed By The State Of Ohio.  Fifth, Sixth,
Eighth and Fourteenth Amendments To The United States Constitution. ....................3

    Eighth Amendment to the United States Constitution.................................................3

    Evitts v. Lucey, 469 US. 387 (1985) ..........................................................................4

    Fifth Amendment to the United States Constitution.................................................3

    Fourteenth Amendment to the United States Constitution .........................................4

    Goldberg v. Kelly, 397 U.S. 254 (1970).....................................................................3

    Sixth Amendment to the United States Constitution .................................................3

    State v. Cole, 2 Ohio St. 3d 112 (1982) ......................................................................4

    State v. Jackson, 64 Ohio St. 2d 107 (1980)...............................................................4

    State v. Kapper, 5 Ohio St. 3d 36 (1983)....................................................................4

    State v. Lorraine, No. 95-T-5196, 1996 WL 207676 (Trumbull App. Feb.
    23, 1996) ....................................................................................................................4

    State v. Pankey, 68 Ohio St. 2d 58 (1981)..................................................................4

    State v. Wiles, 126 Ohio App. 3d 71 (1998)...............................................................

    State, ex rel Love v. Cuyahoga County Prosecutor's Office, 87 Ohio St. 3d
    158 (1999) ..................................................................................................................5

ASSIGNMENT OF ERROR NO. II..........................................................................................6

THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT PETITIONER FUNDS TO EMPLOY EXPERTS.  [T.d. 322, pp. 9, 11.].............................6

ISSUE PRESENTED FOR REVIEW ......................................................................6

A Trial Court In A Post-Conviction Proceeding, Prior To Considering A Dispositive Motion filed By The State Of Ohio, Must Provide The Indigent Petitioner With Adequate Funding To Retain All Reasonable And Necessary Experts. Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution..........................................................................................6

    Ake v. Oklahoma, 470 U.S. 68 (1985) ......................................................6

    Britt v. North Carolina, 404 U.S. 226 (1992) .........................................6

    Burns v. Ohio, 360 U.S. 252, 258 (1959) ...............................................7

    Eighth Amendment to the United States Constitution...........................6

    Fifth Amendment to the United States Consteitution ............................6

    Fourteenth Amendment to the United States Constitution ...............6, 6

    Griffin v. Illinois, 351 U.S. 12 (1956) .....................................................7

    Long v. Iowa, 385 U.S. 192 (1966) .........................................................7

    O.R.C. § 2953.21 .....................................................................................7

    Sixth Amendment to the United States Constitution .............................6

    Smith v. Bennett, 365 U.S. 708 (1961)....................................................7

    State v. Cole, 2 Ohio St. 3d 112 (1982) ..................................................7

    State v. Kapper, 5 Ohio St. 3d 36 (1983) ...............................................7

    State v. Lott, 97 Ohio St. 3d 303 (2002) .................................................8

ASSIGNMENT OF ERROR NO. III...................................................................9

THE POST-CONVICTION ASSISTANT PROSECUTOR ERRED BY NOT PROVIDING PETITIONER WITH THE INFORMATION CONTAINED IN THE PROSECUTOR'S FILES WHICH WAS NECESSARY TO SUPPORT THE CLAIMS CONTAINED IN THE AMENDED PETITION. [T.d. 309, pp. 8, 15-16]...................................................................................9

ISSUE PRESENTED FOR REVIEW ......................................................................9

The Prosecutor's Duty To Disclose Exculpatory Evidence Extends To Post Trial Proceedings.  Fifth, Sixth, Eighth and Fourteenth Amendments......................9

..................11

Banks v. Dretke, 124 S. Ct. 1256 (2004) ..............................9

Brady v. Maryland, 373 U.S. 83 (1963) .............................10

High v. Head, 209 F.3d 1257 (11th Cir. 208) ......................10

Imbler v. Pachtman, 424 U.S. 409 (1976) .........................10

Kyles v. Whitley, 514 U.S. 437 (1995)..............................11

Miller-El v. Cockell, 537 U.S. 322 (2003) .........................10

Smith v. Roberts, 115 F.3d 818 (10th Cir. 1997) ................10

Thomas v. Goldsmith, 979 F.2d 746 (9th Cir. 1992)............9

United States v. Bagley, 473 U.S. 667 (1985) ...................13

ASSIGNMENT OF ERROR NO. IV ......................................13

THE POST-CONVICTION TRIAL JUDGE ERRED BY NOT RECUSING HIMSELF.  [T.d. 322, p. 10]........................................13

ISSUED PRESENTED FOR REVIEW ....................................13

A Judge Should Recuse Himself When He Has Personal Knowledge Of Issues Being Raised Before The Court...................................15

2003 ABA Death Penalty Guideline ..................................14

Campbell v. Louisiana, 523 U.S. 392 (1988) ....................14

Code of Professional Conduct, Cannon 3 ..........................13

Fourteenth Amendment to the United States Constitution ......14

In re Disqualification of Celebrese, 74 Ohio St. 3d 1233 (1991) ......14

In re Disqualification of Crawford, 81 Ohio St. 3d 1204 (1996)......14

In re Disqualification of McMonagle, 74 Ohio St. 3d 1226 (1990) ......14

In re Disqualification of Morrissey, 77 Ohio St. 3d 1252 (1996)......14

In re Disqualification of O'Neill, 81 Ohio St. 3d 1213 (1997)......14

iii

In re Murchison, 349 U.S. 133 (1955) ..................................................13

Marshall v. Jerrice Inc., 446 U.S. 238 (1980) ..........................................13

ASSIGNMENT OF ERROR NO. V ...........................................................17

THE TRIAL COURT ERRED BY APPLYING THE DOCTRINE OF RES
JUDICATA TO BAR CERTAIN OF PETITIONER'S CAUSES OF
ACTION.  [T.d. 322, pp. 5, 7, 8-9, 10, 17, 23, 24, 25]...........................17

ISSUE PRESENTED FOR REVIEW ........................................................17

When a petitioner presents sufficient evidence dehors the record in support of
meritorious claims in a post-conviction petition, it is inappropriate for the
trial court to bar the claims through the application of the doctrine of res
judicata?.........................................................................................17

Evitts v. Lucey, 469 U.S. 387 (1985) ...........................................23

Lockett v. Ohio, 438 U.S. 586 (1978).........................................23

State v. Carter, 89 Ohio St. 3d 593 (2000)..................................22

State v. Cooperrider, 4 Ohio St. 3d 226 (1984) ..........................17

State v. Cowans, 151 Ohio App. 3d 228 (2002) ......................18, 15

State v. Ishmail, 54 Ohio St. 2d 402 (1978)................................23

State v. Keith, 79 Ohio St. 3d 514 (1997).................................18, 23

State v. Madrigal, 87 Ohio St. 3d 378 (2000)..............................22

State v. Milanovich, 42 Ohio St. 2d 46 (1975) .............................17

State v. Perry, 10 Ohio St. 2d 175 (1967)................................17, 23

State v. Scott, 63 Ohio App. 3d 304 (1989)................................22

State v. Smith, 17 Ohio St. 3d 98 (1985) ............................14, 15, 21

ASSIGNMENT OF ERROR NO. VI .........................................................25

THE  TRIAL  COURT  ERRED  IN  DISMISSING  PETITIONER'S
AMENDED POST-CONVICTION PETITION WHERE HE PRESENTED
SUFFICIENT OPERATIVE FACTS TO MERIT RELIEF OR, AT A
MINIMUM, AN EVIDENTIARY HEARING. ............................................25

ISSUE PRESENTED FOR REVIEW ........................................................25

A petitioner is entitled to relief, or in the alternative an evidentiary hearing when he presents sufficient operative facts articulating meritorious claims in his post-conviction petition that are supported by evidence dehors the record. .................... 25

2003 ABA Death Penalty Guidelines ................................................................. 39

ABA Death Penalty Guidelines ....................................................................... 35

Ake v. Oklahoma, 470 U.S. 68 (1985) ..................................................... 31, 42, 49

Alexander v. Louisiana, 405 U.S. 625 (1972) ............................................... 29

Article I, § 1 of the Ohio Constitution ........................................................... 32

Article I, § 2 of the Ohio Constitution ........................................................... 32

Article I, § 5 of the Ohio Constitution ........................................................... 32

Article I, § 9 of the Ohio Constitution ........................................................... 32

Article I, § 10 of the Ohio Constitution ......................................................... 32

Article I, § 16 of the Ohio Constitution ......................................................... 32

Article I, § 20 of the Ohio Constitution ......................................................... 32

Atwell v. Blackburn, 800 F.2d 502 (5th Cir. 1986) ........................................ 30

Beasley v. United States, 491 F.2d 687 (6th Cir. 1974) .................................. 39

Blackburn v. Foltz, 828 F.2d 1177 (6th Cir. 1987) ........................................ 39

Brady v. Maryland, 373 U.S. 83 (1963) ..................................................... 27, 33

Britt v. North Carolina, 404 U.S. 276 (1971) ................................................ 48

Campbell v. Louisiana, 523 U.S. 392 (1998) ................................................. 31

Case v. Nebraska, 381 U.S. 336 (1965) ......................................................... 52

Castaneda v. Partida, 430 U.S. 482 (1977) .................................................... 29

Duke v. Sanymetal Products Company, Inc., 31 Ohio App. 2d 78 (1972) ........ 25

Eighth Amendment to the United States Constitution .................................... 28

Fourth Amendment to the United States Constitution .................................... 53

Frazier v. Huffman, 343 F.3d 780 (6th Cir. 2004) .......................................... 50

Glenn v. Tate, 71 F.3d 1204 (6th Cir. 1995)...................................................48

Kordenbrock v. Scroggy, 919 F.2d 1091 (6th Cir. 1990)...................................48

Kyles v. Whitley, 514 U.S. 419 (1995)...............................................................32

Linton v. Perini, 656 F.2d 207 (6th Cir. 1981)....................................................33

Machetti v. Linahan, 679 F.2d 236 (11th Cir. 1982)...........................................30

Monroe v. United States, 389 A.2d 811 (D.C. Cir. 1978)....................................34

Nelson v. Campbell, 124 S. Ct. 2117 (2004).......................................................52

Ninth Amendment to the United States Constitution ..........................................31

O.R.C. § 2113.07 ...............................................................................................29

O.R.C. § 2313.08 ...............................................................................................29

O.R.C. § 2313.35 ...............................................................................................29

O.R.C. § 2929.03 ...............................................................................................50

O.R.C. § 2939.02 ...............................................................................................29

O.R.C. § 2939.02 ...............................................................................................31

O.R.C. § 2953.21 ...............................................................................................26

O.R.C. § 2953.21 ...............................................................................................52

Ohio R. Civ. P. 56 .............................................................................................25

Ohio Sup. R. 20..................................................................................................35

Oyler v. Boles, 368 U.S. 448 (1962)...................................................................27

Peters v. Kiff, 470 U.S. 493 (1972) ....................................................................37

Sims v. Livesay, 970 F.2d 1575 (6th Cir. 1992)...................................................39

State v. Bunch, 62 Ohio App. 3d 801 (1989)........................................................53

State v. Combs, 100 Ohio App. 3d 90 (1994).......................................................49

State v. Cooperrider, 4 Ohio St. 3d 226 (1994) ...................................................26

State v. Davie 80 Ohio St. 3d 311, 316 (1977).....................................................38

State v. Davie, Trumbull C.P. No. 91 CR 288 ............................................29

State v. Deal, 17 Ohio St. 2d 17 (1969) ....................................................34

State v. DeMarco, 31 Ohio St. 3d 191 (1987) ............................................53

State v. Hester, 45 Ohio St. 2d 71 (1976) ..................................................27

State v. Jackson, 64 Ohio St. 2d 107 (1980) ..............................................26

State v. Kapper, 5 Ohio St. 3d 36, 38 (1983) .............................................26

State v. Lorraine, No. 95-T-5196, 1996 WL 207676 (Trumbull App. Feb. 23, 1996) ..................................................................................................53

State v. Milanovich, 42 Ohio St. 2d 46 (1975) ..........................................25

State v. Pruitt, 18 Ohio App. 3d 50 (1984) ................................................34

State v. Renshaw, 276 Md. 259, 347 A.2d 219 (Md. 1975) ........................34

State v. Wiles, 126 Ohio App. 3d 71 (1998) ...............................................52

State v. Wolery, 46 Ohio St. 2d 316 (1976) ...............................................27

Strickland v. Washington, 486 U.S. 668 (1984) ................................. passim

Taylor v. Louisiana, 419 U.S. 522 (1975) ..............................................30, 32

United States v. Bagley, 473 U.S. 667 (1985) ............................................32

United States v. Weltz, 674 F.2d 185 (3rd Cir. 1982) ................................34

United States v. Young, 482 F.2d 993 (5th Cir. 1973) ................................34

Vahila v. Hall, 77 Ohio St. 3d 421 (1997) .................................................26

Vasquez v. Hiller, 474 U.S. 254, 263 (1986) ..............................................30

Wayte v. United States, 470 U.S. 598 (1985) .............................................27

Wiggins v. Smith, 123 S. Ct. 2527 (2003) .......................................30, 40, 50

Workman v. Tate, 957 F.2d 1339 (6th Cir. 1992) ......................................39

Zant v. Stephens, 462 U.S. 862 (1983) ......................................................28

CONCLUSION ............................................................................................53

CERTIFICATE OF SERVICE ....................................................................54

**APPENDIX:**

Fifth Amendment to the United States Constitution .................................................... A-1

Sixth Amendment to the United States Constitution ................................................... A-2

Eighth Amendment to the United States Constitution ................................................. A-3

Fourteenth Amendment to the United States Constitution ........................................... A-4

Article I, Section 1 of the Ohio Constitution ............................................................. A-5

Article I, Section 2 of the Ohio Constitution ............................................................. A-6

Article I, Section 5 of the Ohio Constitution ............................................................. A-7

Article I, Section 9 of the Ohio Constitution ............................................................. A-8

Article I, Section 10 of the Ohio Constitution ........................................................... A-9

Ohio R. Civ. P. 56 ............................................................................................... A-10

Ohio Rule of Superintendence 20 .......................................................................... A-12

Ohio Code of Judicial conduct, Cannon 3 ............................................................... A-18

O.R.C. § 2313.07 ............................................................................................... A-21

O.R.C. § 2313.08 ............................................................................................... A-22

O.R.C. § 2313.35 ............................................................................................... A-23

O.R.C. § 2929.03 ............................................................................................... A-24

O.R.C. § 2939.02 ............................................................................................... A-27

O.R.C. § 2953.21 ............................................................................................... A-28

State v. Lorraine, No. 95-T-5196, 1996 WL 207676 (Trumbull App.
        Feb. 23, 1996) ........................................................................................ A-31

#209762

## STATEMENT OF THE CASE

### I.   PROCEDURAL POSTURE

On January 5, 2004, Nathaniel E. Jackson ("Petitioner") timely filed his initial post-conviction petition which was supported by two volumes of exhibits [T.d. 299, 300]. On March 29, 204 he filed an Amended Petition with supporting exhibits. [T.d. 306, 307]. On March 30, 2004, the assistant prosecutor filed a Motion to Dismiss [T.d. 309] which she subsequently amended [T.d. 312]. On May 20, 2004 Petitioner filed his Memorandum Contra to the State's Motion to Dismiss [T.d. 318, 320]. On June 14, 2004 the trial court issued its findings of fact, conclusions of law dismissing the Amended Post-Conviction Petition. [T.d. 322].

### II.   STATEMENT OF FACTS

Petitioner's conviction for capital murder and death sentence are constitutionally flawed. There are four themes in this case that contribute to his infirm convictions and sentence.

**1.   Racial Considerations:** The Trumbull County Prosecutor in a racially discriminatory manner has systematically sought death sentences against African-Americans, especially when the victim was Caucasian. [T.d. 307, Exhibit 2]. African-Americans have been systematically excluded from petit jury venires including Petitioner's case. [Id. at 39, 55, T.p. 2846-2848]. Petitioner believes that this exclusion may extend to the grand jury venire and foreperson positions.

**2.   Prosecutorial Misconduct:** The Trumbull County Prosecutor offered a plea bargain to the Caucasian co-defendant, but did not to Petitioner, who is African-American [T.d. 307, Exhibit 35]. The prosecutor did not provide defense counsel with exculpatory evidence despite claims that he maintained a "modified" open file policy. [Id.] The prosecutor has continued to suppress exculpatory evidence in the post-conviction process including a report concerning the

victim and the fact that the Prosecutor's Office offered the Caucasian co-defendant a plea bargain. [T.d. 309, pp. 8, 15-16].

3.      **Ineffective assistance of Counsel**:  Trial counsel failed to interview all but one members of Petitioner's family.  [T.d. 307, Exhibits 49-503].  Counsel did not retain a sentencing investigator.  [Id. , Exhibit 58].  The trial investigator made insulting, racially oriented remarks to Petitioner.  [T.d. 320, Exhibit 2].  The psychologist, that trial counsel retained incorrectly scored the testing she conducted.  [T.d. 78].

4.      **The Trial Court Failed To Maintain Fair Procedures:**  It has repeatedly accepted venires in capital cases that suffered from a gross underrepresentation of African-Americans. [T.d. 307, Exhibits 39, 55, T.p. 1846-1847]. The trial court on the day of sentencing hearing permitted an attorney to be substantiated who knew nothing about the case.  [Sent. T.p. 7]. In this proceeding the Court refused to appoint experts and permit discovery.  [T.d. 322, pp. 5, 7, 9, 11, 13, 16, 21, 26, 33].  The court instead supplemented its post-conviction findings with his own personal observations.  [Id., pp. 10, 15, 25, 26].

## ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED WHEN IT DENIED PETITIONER'S AMENDED POST-CONVICTION PETITION WITHOUT FIRST AFFORDING HIM THE OPPORTUNITY TO CONDUCT DISCOVERY. [T.d. 322, pp. 5, 7, 9, 11, 13, 16, 21, 23, 26, 33.**

### ISSUE PRESENTED FOR REVIEW

A Trial Court Must Provide A Post-Conviction Petitioner With The Opportunity To Conduct Discovery Pursuant To The Civil Rules Prior To Considering A Dispositive Motion Filed By The State Of Ohio.  Fifth, Sixth, Eighth and Fourteenth Amendments To The United States Constitution.

On March 29, 2004, Petitioner filed his Amended Post-conviction Petition.  [T.d. 306-307].  In his prayer for relief he requested the opportunity to conduct discovery.  [Id. at p. 46.]  In addition, throughout the body of the petition he requested leave of court to conduct discovery.  [Id. at ¶¶ 8, 10, 13, 16, 24, 27, 30, 33, 36, 44, 45].  He also filed a separate motion requesting discovery.  [T.d. 321].  The trial court, in its findings of facts and conclusions of law, denied Petitioner the opportunity to conduct discovery.  [T.d. 322, pp. 5, 7, 9, 11, 13, 16, 21, 23, 26, 33].

When a state establishes a program or procedure, that program or procedure must be operated within the confines of the Due Process Clause of the Fourteenth Amendment.  Goldberg v. Kelly, 397 U.S. 254, 262 (1970). When a state creates a right to appellate review (even though the state is not so required), that system of appellate review must meet the requirements of due process.  Evitts v. Lucey, 469 US. 387, 401 (1985). Accordingly, the State of Ohio's post-conviction system, pursuant to Evitts and Goldberg, must meet the requirements of due process.

In the State of Ohio, the petitioner in a post-conviction proceeding has the initial burden of submitting documentation dehors the record to demonstrate that a hearing is warranted as to the constitutional violations alleged in the petition.  State v. Kapper, 5 Ohio St. 3d 36, 38 (1983);

State v. Cole, 2 Ohio St. 3d 112, 114 (1982); State v. Pankey, 68 Ohio St. 2d 58, 59 (1981); State v. Jackson, 64 Ohio St. 2d 107, 111 (1980).

The State, consistent with the Due Process Clause of the Fourteenth Amendment, cannot place this initial evidentiary burden upon a petitioner and subsequently deny the Petitioner a meaningful opportunity to meet that burden. To deny a petitioner the opportunity to meet this burden is to emasculate his right to pursue his post-conviction remedies.

The trial court in the present case, when it denied discovery, relied upon this Court's decisions in State v. Wiles, 126 Ohio App. 3d 71, 79 (1998), and State v. Lorraine, No. 95-T-5196, 1996 WL 207676 (Trumbull App. Feb. 23, 1996). Petitioner met the standard enunciated in these cases (he was entitled to an evidentiary hearing), so he should have been granted discovery. [See Assignment of Error No. VI]. To the extent he did not meet that standard, then the Court should reconsider its holdings in Wiles and Lorraine. It is exceedingly unfair for the trial court to deny a petitioner discovery because he has been precluded access the documents that would entitle him to conduct discovery. The Ohio Supreme Court has never addressed the issue of the right to post-conviction discovery with the exception of in the comfort of original action which by its nature imposes a higher burden of proof upon the petitioner. State, ex rel Love v. Cuyahoga County Prosecutor's Office, 87 Ohio St. 3d 158, 159 (1999).

The trial court erred when it dismissed Petitioner Jackson's Amended Petition without first affording Petitioner discovery. [T.d. 322]. This Court should vacate the judgment of the trial court and remand the matter with instructions that Petitioner be permitted to conduct discovery after receiving appointed counsel.

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT PETITIONER FUNDS TO EMPLOY EXPERTS.** [T.d. 322, pp. 9, 11.]

### ISSUE PRESENTED FOR REVIEW

A Trial Court In A Post-Conviction Proceeding, Prior To Considering A Dispositive Motion filed By The State Of Ohio, Must Provide The Indigent Petitioner With Adequate Funding To Retain All Reasonable And Necessary Experts. Fifth, Sixth, Eighth And Fourteenth Amendments To The United States Constitution.

On March 29, 2004, Petitioner filed his Amended Post-conviction Petition and two volumes of supporting exhibits. [T.d. 306-307]. He concurrently requested the appointment of experts. [T.d. 306, ¶¶ 33, 43]. In addition he submitted the affidavit of an expert who identified the need for appointment of a psychological expert. [T.d. 307, Exhibit 64].

The Fourteenth Amendment entitles indigent persons to an adequate opportunity to present their claims within the adversary system. This includes the right to court-appropriated funding when the retention of experts is necessary for the indigent individual to present their claims. Britt v. North Carolina, 404 U.S. 226, 227 (1992); Ake v. Oklahoma, 470 U.S. 68, 76-77 (1985).

Likewise, the courts have long recognized that a defendant may not be denied access to the court due to his indigency status. Griffin v. Illinois, 351 U.S. 12, 18 (1956); Burns v. Ohio, 360 U.S. 252 (1959). This right of access of impoverished defendants to the courts extends to post-conviction proceedings. Smith v. Bennett, 365 U.S. 708, 712 (1961); Long v. Iowa, 385 U.S. 192, 194 (1966).

Capital petitioners face a serious dilemma under Ohio's post-conviction scheme. The text of the statute provides that a petitioner must include affidavits or evidence in support of the claim in a petition. State v. Kapper, 5 Ohio St. 3d 36, 38 (1983); State v. Cole, 2 Ohio St. 3d 112, 114

(1982). The State, consistent with the Due Process and Equal Protection Clauses of the Fourteenth Amendment, cannot place this initial evidentiary burden upon a petitioner and subsequently deny him a meaningful opportunity to meet that burden by denying him access to funding for expert assistance.

The trial court concluded that it had no authority to grant funding, "The Eleventh District Court of Appeals has held that 'because postconviction proceedings are civil in nature, a petitioner has no constitutional right to court-appointed counsel. Consequently, a petitioner would have no corresponding right to expert assistance'." [T.d. 322, p. 9].

The trial court's legal conclusion was flawed because Petitioner did have a right to appointed counsel. O.R.C. § 2953.21(I). Petitioner, in fact moved the court for appointment pursuant to O.R.C. § 2953.21(I) [T.d. 313] and the trial court granted that motion. [T.d. 315].

Trial courts in the State of Ohio do have the authority to appoint experts during post-conviction proceedings. State v. Lott, 97 Ohio St. 3d 303, 306 (2002) ("The trial court should . . . consider expert testimony, appointing experts if necessary, in deciding this [post-conviction] matter.")

The trial court erred when it dismissed the Amended Petition without appointing experts. U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20. This Court should vacate the judgment of the trial court and remand the matter with instructions that the trial court appoint all reasonable and necessary experts.

## ASSIGNMENT OF ERROR NO. III

**THE POST-CONVICTION ASSISTANT PROSECUTOR ERRED BY NOT PROVIDING PETITIONER WITH THE INFORMATION CONTAINED IN THE PROSECUTOR'S FILES WHICH WAS NECESSARY TO SUPPORT THE CLAIMS CONTAINED IN THE AMENDED PETITION. [T.d. 309, pp. 8, 15-16].**

### ISSUE PRESENTED FOR REVIEW

The Prosecutor's Duty To Disclose Exculpatory Evidence Extends To Post Trial Proceedings. Fifth, Sixth, Eighth and Fourteenth Amendments.

Petitioner, in his Amended Petition, raised Causes of Actions that alleged that the Trumbull County Prosecutor's Office engaged in a racially discriminatory application of the death penalty [T.d. 306, ¶¶ 16-24] and in the present case had failed to provide trial counsel with exculpatory evidence [Id. at ¶¶ 45-54]. Petitioner's arguments relied upon and cited to specific information that was in the exclusive possession of the prosecutor The assistant prosecutor, in her response to these claims, refused to acknowledge or deny the existence of the evidence in question. [T.d. 309, pp. 8, 15-16].

A prosecutor is required to disclose favorable evidence to an accused in a criminal proceeding. Brady v. Maryland, 373 U.S. 83, 87 (1963). The duty of disclosure includes impeachment evidence as well as exculpatory evidence. United States v. Bagley, 473 U.S. 667, 676 (1985). In conjunction with this duty of disclosure, a prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police. Kyles v. Whitley, 514 U.S. 437 (1995). Finally, the prosecutor's duty of disclosure extends to post-conviction proceedings. Imbler v. Pachtmon, 424 U.S. 409, 427, n.25 (1976); High v. Head, 209 F.3d 1257, 1264, n.8 (11th Cir. 208); Smith v. Roberts, 115 F.3d 818, 820 (10th Cir. 1997); Thomas v. Goldsmith, 979 F.2d 746, 749-50 (9th Cir. 1992).

Petitioner, in his First Cause of Action alleged that the Trumbull County Prosecutor's Office has selectively targeted African-Americans in capital cases.  [T.d. 306, ¶¶ 16-24].  A critical piece of evidence in support of his argument was that the Trumbull County Prosecutor in the instant case offered a plea bargain to the Caucasian defendant (Donna Roberts) but had not offered a similar plea bargain to the African-American defendant (Petitioner) [Id. at ¶ 23]. Petitioner was unable to obtain an affidavit from counsel for the co-defendant to confirm the offer of a plea bargain, even though that counsel had orally acknowledged the same.  [T.d. 307, Exhibit 35].

The assistant prosecutor instead of admitting to the existence of the relevant exculpatory information, as the Constitution obligated her, attacked the credibility of counsel for Petitioner:

> Petitioner argues that his case is a quintessential case of racial discrimination because his Caucasian co-defendant was purportedly offered a plea agreement which would have spared her life.  The only evidence offered is an affidavit containing the hearsay statements of an Ohio Public Defender who is representing Petitioner in the postconviction proceedings. The public defender, Randall Porter, states he was told of the Roberts plea offer by her trial counsel, Atty. John Juhasz. Even if this Court excepts this statement as credible, there is no submission from Atty. Juhasz, hearsay or otherwise, that the plea offer was based on her race.  If, in fact, such a plea offer existed, it may well have been due to the fact that Roberts, unlike Petitioner, was not the actual shooter in this homicide, nor did she have Petitioner's lengthy criminal history.

[T.d. 309, p. 8].

The prosecutor adopted a similar tactic with respect to the Fourth Cause in which Petitioner alleged that the prosecutor suppressed exculpatory evidence.  [T.d. 306, ¶¶ 45-64].  The trial court did not grant Petitioner access to the trial or police files to support this Cause of Action. [See Assignment of Error No. I].  Petitioner was unable, through his post-trial investigation, to obtain an exculpatory police report that the victim had planned to "fake" his own death, [T.d. 306,

¶ 53]. The prosecutor instead of acknowledging the existence of the report again evaded the issue by questioning the credibility of post-conviction counsel.

> First, the "evidence" as presented is pure hearsay and would not be admissible in any court of law.  If, in fact, the prosecutor's office withheld a police report, why is the report itself not attached to the Petition?  Furthermore, it should be considered highly suspect by this Court that if, in fact, Atty. Juhasz was willing to make such a statement to Atty. Porter, why Atty. Juhasz himself did not back up this allegation with an affidavit of his own . . .  The Porter affidavit on the body double topic is nothing but hearsay, which could have been easily supported with the actual police report supposedly withheld by the State, or an affidavit from Atty. Juhasz. Furthermore, the affidavit was submitted by someone with a clear interest in the outcome of this petition, namely, its author. Therefore, the credibility of the affidavit is highly suspect.

[T.d. 309, pp. 15-16].

The United States Supreme Court has twice recently vacated death sentences as a result of improper prosecutor practices, including racism and suppression of evidence.  Miller-El v. Cockell, 537 U.S. 322, 344-346 (2003), Banks v. Dretke, 124 S. Ct. 1256, 1279 (2004).  The Assistant Prosecutor instead of addressing the merits of the claims, disingenuously refused to confirm either the existence or deny the plea offer and police report.

The trial court erred when it dismissed the First and Fourth Causes of Action.  The Court should remand the case with instructions that the lower court order the Assistant Prosecutor to unequivocally confirm or deny the existence of the two pieces of evidence and other relevant exculpatory evidence that she has and continues to suppress.  U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

## ASSIGNMENT OF ERROR NO. IV

**THE POST-CONVICTION TRIAL JUDGE ERRED BY NOT RECUSING HIMSELF. [T.d. 322, p. 10].**

### ISSUED PRESENTED FOR REVIEW

A Judge Should Recuse Himself When He Has Personal Knowledge Of Issues Being Raised Before The Court.

Petitioner raised in his Amended Post-conviction Petition the constitutional claim that the Trumbull County Common Pleas Court Judges improperly selected grand jury forepersons. [T.d. 306, ¶¶ 35-44]. Petitioner also raised the issue that the trial court had failed to conduct the required pretrial hearing concerning a letter that Petitioner had sent the trial court requesting substitution of counsel. [T.d. 306, ¶¶ 55-62]. These two causes of action were "off the record issues". There was no evidence contained in the record that factually addressed these issues. The trial judge presented a personal recollection of the missing facts when he entered the Findings of Fact, Conclusions of Law. [T.d. 322, pp. 10-15]. The trial judge should have recused himself when he became aware that he personally possessed material facts concerning two of the Causes of Action.

A fair trial in a fair tribunal is a basic requirement of due process. In re Murchison, 349 U.S. 133, 136 (1955). The Due Process Clause of the Fourteenth Amendment guarantees the appearance and reality of fairness. Marshall v. Jerrice Inc., 446 U.S. 238, 242 (1980). A trial judge should recuse himself when his impartiality might reasonably be questioned, or in instances where he possessed personal knowledge of evidentiary facts that are in dispute. Code of Professional Conduct, Cannon 3(E)(1)(a).

The Ohio Supreme Court has routinely recused trial judges where their impartiality "might reasonably be questioned" or where they have "personal knowledge of disputed evidentiary facts

concerning the proceedings." In re Disqualification of Celebrese, 74 Ohio St. 3d 1233 (1991); In re Disqualification of McMonagle, 74 Ohio St. 3d 1226 (1990); In re Disqualification of O'Neill, 81 Ohio St. 3d 1213 (1997); In re Disqualification of Crawford, 81 Ohio St. 3d 1204 (1996); and In re Disqualification of Morrissey, 77 Ohio St. 3d 1252 (1996).

In his Second Cause of action, Petitioner alleged that the common pleas judges in Trumbull County have traditionally used race as a criteria for selecting forepersons for the Trumbull County Grand Juries.  [T.d. 306, ¶¶ 35-44].  The United States Supreme Court has condemned this practice.  Campbell v. Louisiana, 523 U.S. 392, 398 (1988).  The National Jury Project determined that the discrimination in the selection of grand jury forepersons exists in Hamilton County  [T.d. 307, Exhibit 39].  The trial judge in the present case became both a witness and judge when he supplied the following evidence in his Findings of Fact, Conclusions of Law:

> . . . nor is this Court aware of any instance where any of the four general division judges of this Court selected a grand jury foreman or forewoman from a source other than the annual jury list.  Indeed, the only way this Court, or the other three common pleas judges, would ever reach beyond the jury list to fill the foreman's or forewoman's position would be if no qualified citizens appeared on the list to serve in that capacity.  In the thirteen years this judge has been on the bench, there has never been a need to exercise this judge's prerogative of hand selecting a foreman or forewoman from a source other than the jury list. (Emphasis added).

[T.d. 322, p. 10].

In his Fifth Cause of Action Petitioner alleged that the trial court failed to conduct a hearing on the letter requesting a change of counsel that Petitioner sent to the trial court.  [T.d. 306, ¶¶ 55-62].  Petitioner in an affidavit swore that he mailed the letter to the trial judge.  [T.d. 320, Exhibit 3].  At some point the letter was rerouted from the Judge to trial counsel.  [Id.] The trial court supplied the following information in its finding of facts.  "This Court has no independent recollection of reviewing this letter." [T.d. 322, p. 15].  Because of the manner in

which the trial judge resolved the issue, it is unclear as to whether the Judge's recollection could be refreshed or another member of the Judge's Office forwarded the letter to trial counsel.

The trial court, in its Findings of Facts, concluded the conducting of a mitigation investigation that "the very nature of the testimony offered by family members and friends hardly requires exhaustive preparation . . . Such testimony does not require lengthy interrogations." [T.d. 322, p. 25]. The trial court's interjection of this opinion was completely incorrect. A mitigation investigation requires multiple visits with some individuals because the investigator needs to develop a relationship of trust and confidence with interviewees so that they will disclose sometimes very private and very sensitive and shameful information. [T.d. 307, Exhibit 60]. "Counsel should bear in mind that much of the information that must be elicited for the sentencing phase is very personal and may be exceedingly difficult for the client to discuss . . . . Obtaining such information requires overcoming considerable barriers . . . ." Commentary to 2003 ABA Death Penalty Guideline 10.7.

The trial court then proceeded to address the prevailing standards for psychologists, "In light of the U.S. Supreme Court's decision in Atkins v. Virginia (2002), 536 U.S. 304, it may well have been tantamount to malpractice to forego I.Q. testing, especially when the Petitioner's academic performance was below average and he previously scored in the 70s on two prior I.Q. tests." [T.d. 322, p. 26]. Again the trial court's interjection of information was not only incorrect, but the information itself was wrong. In an Atkins proceeding, the party who the most recent IQ tested favorable, will not want the defendant retested. In the present case the two most recent tests were favorable with respect to a finding of mental retardation.

The trial court's interjection of opinion information was presented without affording Petitioner the opportunity to cross examine the trial court concerning his personal observations.

Further Petitioner was not able to question the judge concerning his qualifications and basis for knowledge of the prevailing standards in capital cases.

The trial judge erred when instead of recusing himself, he dismissed the petition. The Court should vacate the judgment of the trial court and remand the case for a disinterested judge to preside. U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

## ASSIGNMENT OF ERROR NO. V

**THE TRIAL COURT ERRED BY APPLYING THE DOCTRINE OF RES JUDICATA TO BAR CERTAIN OF PETITIONER'S CAUSES OF ACTION. [T.d. 322, pp. 5, 7, 8-9, 10, 17, 23, 24, 25].**

### ISSUE PRESENTED FOR REVIEW

When a petitioner presents sufficient evidence dehors the record in support of meritorious claims in a post-conviction petition, it is inappropriate for the trial court to bar the claims through the application of the doctrine of res judicata?

Petitioner filed an Amended Post-conviction Petition that contained fifteen causes of action. [T.d. 306] and was supported by eighty-two exhibits. [T.d. 307]. The trial court erroneously ruled that eight of those causes of action could have been raised on direct appeal and therefore were barred by res judicata. [T.d. 322, pp. 5, 7, 8-9, 10, 17, 23, 24, 25].

If a post-conviction issue is supported by evidence outside the record, as well as evidence appearing in the record, the issue is not subject to the bar of res judicata. State v. Smith, 17 Ohio St. 3d 98, 101, n.1 (1985); State v. Cooperrider, 4 Ohio St. 3d 226, 228 (1984); State v. Milanovich, 42 Ohio St. 2d 46, 50 (1975).

The trial court's misapplications of the doctrine of res judicata is at least partially attributable to the incorrect definition that it applied. The court concluded that evidence, to preclude the bar of res judicata, must "not have been" in existence and available for use at the time of trial. State v. Cowans, 151 Ohio App. 3d 228 (2002), ¶15." [T.d. 322, p. 7, See also pp. 8-9]. This definition is incorrect. A court can only grant post-conviction relief if the evidence in dispute was available at the time of trial. For instance, in a post-conviction case involving a claim of ineffective assistance of counsel, a court could not find counsel ineffective for not requesting DNA testing, if the trial was conducted prior to the advent of DNA testing. Yet pursuant to the definition adopted by the trial court, defense counsel could only be found ineffective pursuant to

such a scenario.  Likewise if a defense attorney failed to call alibi witnesses, even though he had been informed of the identity of the same by defendant, defense counsel could not be deemed to be ineffective because the witnesses were evaluated at the time of trial.  This is contrary to established precedent of the Ohio Supreme Court.  State v. Smith, 17 Ohio St. 3d at 101, n.1.

This Court's holding in Cowans regarding the definition of "evidence dehors the record" was dicta and not dispositive of the issue.  In Cowans the Court held that the trial court had no jurisdiction to address the post-conviction petition.  Cowans, 151 Ohio App. 3d at 232.  The majority conceded that the second assignment of error in Cowans (in which the Court addressed the nature of the evidence attached to the post-conviction petition) was "moot".  Id.  Judge Grendall in her concurring opinion correctly observed:

> I concur with the majority's decision to affirm the lower court's ruling in this case on the grounds that the trial court lacked jurisdiction . . . I also concur with the majority's determination that the trial court's lack of jurisdiction renders appellant's second assignment of error moot.  I do not agree with the majority's decision to address the merits of appellant's second assignment of error.

Id. at 234.

When the trial court's res judicata rulings are viewed in this context of the improper definition it employed, it becomes apparent those ruling were incorrect.

**1.      The State of Ohio Has An Infirm Post-Conviction System** [T.d. 306, ¶¶162-169].

The trial court erroneously concluded that "This action is barred by the doctrine of res judicata".  [T.d. 322, p. 5].  The basis for the trial court's conclusion is unclear.  Trial counsel had no reason to raise the constitutionality of Ohio's post-conviction petition prior to trial.  Such a challenge would have been premature.  Direct appeal counsel has no reason to raise this issue.

**2.      The Trumbull County Prosecutor Seeks The Death Penalty In A Racially Discriminatory Manner.**   [T.d. 306, ¶¶25-34].

Petitioner submitted thirty-five exhibits in support of this Cause of Action. [T.d. 307, Exhibits 1-35]. The trial court found this Cause of Action was raised on direct appeal and barred by res judicata. [T.d. 322, p. 7]. The trial court, however, conceded that the evidence that was the basis of the post-conviction claim was not in the direct appeal record. [Id.] However, the trial court concluded that it could have been placed in the record if trial counsel so desired (and had conducted the necessary investigation). [Id.] Therefore because the issue could not have been fairly and fully litigated on direct appeal.

3. **The Grand Jury Contained An Underpresentation Of African-Americans.** [T.d. 306, ¶¶35-44.]

Petitioner submitted four exhibits [T.d. 307, Exhibits 36-39] in support of the Second Cause of Action including the affidavit of Diane Wiley, President of the National Jury Project, Midwest, documenting the existence of racial bias in the selection of another capital venire in Trumbull County. [T.d. 307, Exhibit 39]. The trial court found that trial counsel had mounted a challenge to the grand jury venire. [T.d. 322, p. 8]. Trial counsel, without any evidence, challenged only the petitioner's jury venire. [T.d. 48]. Therefore the evidence upon which Petitioner based his post-conviction claim was not in the direct appeal record. The trial court conceded this fact, "Clearly, all of these exhibits would have been available to Petitioner at the time of trial and could have been raised in the form of a pretrial motion." (Emphasis added.) [T.d. 322, pp. 9-10]. The logical conclusion from the trial court's factual finding is that 1) the issue is not barred by res judicata because it could not have been fully and fairly litigated on direct appeal, and 2) trial counsel was ineffective for not fully litigating this issue at the time of trial.

4. **The Trumbull County Common Pleas Court Selected Grand Jury Forepersons in a Racially Discriminatory Manner.** [T.d. 306, ¶¶25-34].

Petitioner supported this Cause of Action with four exhibits.  [T.d. 307, Exhibits 41-43, T.d. 320, Exhibit 2].  This includes the affidavit of Diane Wiley, the President of the National Jury Project, in which she found the foreperson selection procedure that the State of Ohio employs, has permitted racial discrimination in Trumbull County.  [T.d. 307, Exhibit 39].  The trial court applied the doctrine of res judicata because the supporting exhibits were available at the time of trial. [T.d. 322, p. 10].  However trial counsel did not challenge the foreperson selection procedure.  Therefore trial counsel did not place the exhibits in the record that would have permitted the issue to be fully and fairly litigated on direct appeal.  State v. Perry, 10 Ohio St. 2d 175 (1967).  This conclusion is buttressed by the fact that the trial judge, in order to resolve the factual issue, personally added facts to the record.  [See Assignment of Error No. IV].

**5.      The Petit Jury Venire Was Selected In A Racially Discriminatory Manner.  [T.d. 306, ¶¶72-84].**

Petitioner submitted six exhibits to buttress his claim that the underrepresentation of African-Americans in his venire was not due to chance.  [T.d. 307, Exhibits 1, 36-39, 55].  This included the affidavit of Diane Wiley, President of the National Jury Project, Midwest.  She documented that minorities had been systemically culled from the petit jury venire in another capital case before the same trial judge.  [Id. at 39].

Trial counsel challenged the venire, but only as to limit issue of use of the voter registration lists as the source list. Counsel submitted no exhibits in support of the claim.  [T.d. 48.] Therefore the Ohio Supreme Court and counsel for petitioner on direct appeal did not have a factual basis for raising the post-conviction issue that minorities were systematically culled from the venire.  Thus the trial court erred [T.d. 322, p. 26] when it determined that the issue was barred by res judicata.

6.    **Petitioner Did Not Receive Effective Assistance Of Counsel In The Trial Phase. [T.d. 306, ¶¶98-109].**

Petitioner submitted thirteen exhibits in support of his trial ineffectiveness claim. [T.d. 307, Exhibits 65-77]. These exhibits included nine police reports that documented evidence dehors the record that trial counsel should have placed in the record for the jury's consideration. [Id.]

The trial court found that "Petitioner raised an ineffective assistance of counsel claim in his brief to the Ohio Supreme Court. Therefore the doctrine of res judicata applies." [T.d. 322, p. 23]. The trial court failed to explain in its findings the reason that the new examples of ineffective assistance of counsel, which were supported solely by the police reports were barred by res judicata. [Id.] These allegations were in fact not subject to the bar. State v. Smith, 17 Ohio St. 3d 98, 101, n.1 (1985).

7.    **Petitioner Did Not Receive In The Mitigation Phase Effective Assistance Of Counsel. [T.d. 306, ¶¶110-122].**

Petitioner submitted seven exhibits in support of the Tenth Cause of Action, that trial counsel was ineffective in the mitigation phase. [T.d. 307, Exhibits 44, 49-53, 56-59, 66-67]. The exhibits included the affidavits of five family members [Id. Exhibits 49-53] and two mitigation specialists [Id. Exhibits 58-59].

When a defendant raises a claim of ineffective assistance of counsel in the mitigation phase that is dependent upon the affidavits of individuals who would have provided additional testimony, the claim is not subject to the bar of res judicata. State v. Keith, 79 Ohio St. 3d 514, 536-537 (a "claim of failure to present mitigating evidence is properly considered in a post-conviction proceeding"), See also State v. Scott, 63 Ohio App. 3d 304, 308 (1989). The trial court erred when it applied the bar of res judicata to the Tenth Cause of Action [T.d. 322, p. 24].

8.   **The State Of Ohio's Use Of Lethal Injection Is Constitutionally Infirm.** [T.d. 306, ¶¶ 153-161].

Petitioner submitted three exhibits in support of the Thirteenth Cause of Action which challenged lethal injection as a means of execution. [T.d. 307, Exhibits 82, 83]. This included the affidavit of Dr. Mark J.S. Heath, M.D. who concluded within a reasonable degree of medical certainty "it can and should be presumed that the lethal injection procedure Ohio employs creates medically unacceptable risks of infliction excruciating pain and suffering on inmates during the lethal injection procedure". [Id. Exhibit 82, p. 26].

The trial court concluded that "the claim is barred by the doctrine of res judicata as the constitutionality of lethal injection could have been raised in Petitioner's direct appeal and was not. Perry, Cole, supra". [T.d. 322, ¶31]. Petitioner's post-conviction claim was dependent upon the affidavit of Dr. Heath.  A claim based upon the affidavit testimony of an expert who was not called at trial must be raised in post-conviction because a direct appeal court, absent speculation, has "no way of knowing, what if anything the expert testimony would have demonstrated". State v. Carter, 89 Ohio St. 3d 593, 606 (2000); See also State v. Madrigal, 87 Ohio St. 3d 378, 391 (2000) (establishing prejudice from lack of expert testimony "would require proof outside the record, such as affidavits demonstrating the probable testimony.)"

The trial court erred when it found that the Thirteenth Cause of Action was barred by res judicata.

9.   **This Court Should Remand The Case For A Merits Review Of These Causes Of Action That The Trial Court Improperly Found To be Procedurally Barred.**

Because the evidence supporting the First, Second, Third, Seventh, Ninth, Tenth, Thirteenth and Fourteenth Causes of Action was outside the record, these Causes could not have been raised by his counsel on direct appeal. The direct appeal is limited to issues and evidence on

the trial record.  State v. Ishmail, 54 Ohio St. 2d 402, 405 (1978); State v. Keith, 79 Ohio St. 3d 514, 536-537 (1997).  Furthermore, Petitioner requested discovery to obtain additional evidence in support of these causes of action.  See Assignment of Error No. I.  These causes of action could be "fully litigated" on direct appeal within the meaning of State v. Perry, 10 Ohio St. 2d 175 (1967).

Ohio established a post-conviction procedure to effectuate constitutional rights for those defendants convicted of felonies.  These procedures must "operate in accord with the dictates of the Constitution – and, in particular, in accord with the Due Process Clause."  Evitts v. Lucey, 469 U.S. 387, 401 (1985);  Lockett v. Ohio, 438 U.S. 586, 604-605 (1978).

The trial court violated Petitioner's constitutional rights for the reasons set forth in this Assignment of Error.  Thus, in the alternative to granting relief under the errors raised in the remaining Assignments of Error, Petitioner requests that this court grant relief by way of finding that the trial court improperly applied res judicata to dismiss Petitioner's grounds for relief.  U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

## ASSIGNMENT OF ERROR NO. VI

THE TRIAL COURT ERRED IN DISMISSING PETITIONER'S AMENDED POST-CONVICTION PETITION WHERE HE PRESENTED SUFFICIENT OPERATIVE FACTS TO MERIT RELIEF OR, AT A MINIMUM, AN EVIDENTIARY HEARING.

### ISSUE PRESENTED FOR REVIEW

A petitioner is entitled to relief, or in the alternative an evidentiary hearing when he presents sufficient operative facts articulating meritorious claims in his post-conviction petition that are supported by evidence dehors the record.

The trial court erred in dismissing Petitioner's Amended Post-Conviction Petition for the following reasons: (1) Petitioner raised violations of his constitutional rights that warranted relief; (2) the amended petition contained causes of action that were supported by sufficient operative facts which required discovery, the funding of experts, and an evidentiary hearing.

In construing the post-conviction statutes, the Ohio Supreme Court has held that Ohio R. Civ. P. 56, sets out the procedures on a motion for summary judgment, applies to post-conviction, as well as other civil cases.  State v. Milanovich, 42 Ohio St. 2d 46, 51 (1975) Summary judgment and motion to dismiss are only appropriate where no genuine issue of fact exists.  See Duke v. Sanymetal Products Company, Inc., 31 Ohio App. 2d 78 (1972)..  The nonmoving party is entitled to have the evidence construed most strongly in its favor.  Id.  There must be a "complete failure of proof concerning an essential element of the nonmoving party's case," for summary judgment should be granted.  Dresher v. Burt, 75 Ohio St. 3d 280, 288 (1996).  See also Vahila v. Hall, 77 Ohio St. 3d 421 (1997).  Each ground for relief must be considered separately.  Ohio R. Civ. P. 56(D).[1]

To obtain an evidentiary hearing, a petitioner bears the initial burden of submitting evidentiary documents that contain sufficient operative facts to the existence of a constitutional

violation.  Broad assertions, without further demonstrating prejudice, do not warrant a hearing for all post-conviction petitions.  State v. Jackson, 64 Ohio St. 2d 107, 111 (1980); State v. Kapper, 5 Ohio St. 3d 36 (1983).  Unlike the petitioners in Jackson and Kapper, however, Petitioner pled sufficient operative facts to warrant a hearing.  He specifically pled the deprivation of constitutional rights and submitted evidence demonstrating the resulting harm.

The statute directs that a hearing shall be held "[u]nless the petition and the files and records of the case show the petitioner is not entitled to relief."  O.R.C. § 2953.21(E).  The plain language of the statute *creates a presumption in favor of a hearing* in this case and against dismissal or summary judgment for the State.

Petitioner is not required to **prove** his claims and prejudice based solely on his petition, and to adopt such a position simply reads the evidentiary hearing provision out of the statute.  While a petitioner is required to raise sufficient operative facts demonstrating prejudice, an evidentiary hearing, with proper discovery, is the proper forum for a post-conviction petitioner to **prove** prejudice. State v. Cooperrider, 4 Ohio St. 3d 226, 228 (1994) citing State v. Hester, 45 Ohio St. 2d 71 (1976).

Petitioner supported the causes of action in his Amended Petition with facts adequate to justify relief. In the alternative he submitted sufficient documentation to be entitled to discovery and an evidentiary hearing.

**First Cause Of Action:  The Trumbull County Prosecutor's Charging Decisions Have Resulted In The Death Penalty Being Imposed In A Racially Discriminatory Manner**. [T.d. 306, ¶¶[16-24.]

The population of Trumbull County is 7.9% African-American [T.d. 307, Exhibit 1].  In nine of the ten cases in which the trial courts of that County have sentenced a defendant to death

---

[1] Even though the State as filed a pleading entitled "Motion to Dismiss" the Court should apply the standard contained in Civ. R. 56 because the prosecutor has argued the merits of issues.

there was a victim who was Caucasian [Id. at Exhibit 2]. In almost all of thirty-six cases in which the prosecutor has sought the death penalty, at least one of the victims was Caucasian [Id. at Exhibits 2-36]. In five of the ten cases the defendant was African-American. [Id. at Exhibit 2]. The prosecutor in the present case offered the Caucasian co-defendant a plea bargain, but did not similarly offer Nathaniel Jackson, who is African-American,. a plea bargain. [Id., at Exhibit 35].

The prosecutor is forbidden by the Fourteenth Amendment from basing his choice of whom to prosecute upon "impermissible factors" such as race or religion. Wayte v. United States, 470 U.S. 598, 607 (1985), citing Oyler v. Boles, 368 U.S. 448, 456 (1962). The Ohio Supreme Court has also recognized that a prosecutor may not choose whom to indict based upon "an unjustifiable standard . . . or . . . arbitrary classification" such as race. State v. Wolery, 46 Ohio St. 2d 316, 324, (1976), citing Oyler, 368 U.S. at 456. A death sentence which is based even in part upon "factors that are constitutionally impermissible or totally irrelevant to the sentencing process, such as . . . the race . . . of the defendant" violates the Eighth Amendment. Zant v. Stephens, 462 U.S. 862, 885 (1983).

The trial court, in granting the State's Motion to Dismiss, held that the proof Petitioner submitted to did not constitute operative facts of racial discrimination. [T.d. 322, pp. 6-7]. The court cited to the fact because "over 90% of Trumbull County population is white . . . it is likely that 90% of death row inmates' victim's will be Caucasian as well" [Id. at p. 7]. The trial court ignores the fact that ninety percent of the defendants who receive the death penalty are not Caucasian.

The trial court held that Petitioner had failed to prove "that others similarly situated" did not face the death penalty". Petitioner relied upon the fact that the Caucasian co-defendant Donna Roberts was offered a deal, which if she had accepted she would not have faced the death penalty.

[T.d. 307, Exhibit 35 at ¶4].  The trial court held this was irrelevant because she ultimately received the death penalty.  [T.d. 322, pp. 6-7].  But the trial court's reasoning was erroneous, the focus of the claim was on the charging decision.  The fact that the co-defendant ultimately received the death penalty highlights the selectivity in the charging decision.  The white co-defendant was equally culpable, but yet the prosecutor made a plea offer to her.

Petitioner's judgment and sentence are void or voidable because the Trumbull County Prosecutor has employed his discretion in capital cases in a racially discriminatory manner.  Capital cases are limited almost exclusively to those cases in which the victim is Caucasian and disproportionately when the victim is African-American. U.S. Const. amends. V, VI, VIII, IX, and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20

**Second Cause Of Action: The Grand Jury That Indicted Nathaniel Jackson Was Drawn From A Venire In Which There Was An Underrepresentation Of African Americans.** [T.d. 306 ¶¶25-34.].

The Court summoned four hundred jurors to serve on the petit jury venire [T.d. 307, Exhibit 54.]  One-hundred-forty persons appeared for jury duty [Tp. 1846-1848.]  The parties initially agreed that only one African-American was questioned during individual voir dire [Tp. 1846-1848.]  African Americans comprised 7.9 percent of the population in Trumbull County [T.d. 307, Exhibit 1.]  Consequently there should have been approximately eleven African-Americans in the one-hundred-forty-persons who appeared for jury duty. This same underrepresentation of African-Americans in the venire has occurred in other capital cases. State v. Davie, Trumbull C.P. No. 91 CR 288.  [T.d. 307, Exhibits 36-38.]  Not one African-American appeared for jury duty.  [Id.] In co-defendant Donna Roberts' case there were no African-Americans on the jury [Id. Exhibit 55].

The same court officials who selected the petit jury venires in the above cases selected the grand jury venire in the present case. They employed the same flawed procedures. O.R.C. § 2939.02, 2113.07, 2313.08 and 2313.35. Consequently it was most likely that the underrepresentation of African Americans continued in the grand jury venire in the present case.

The Supreme Court, in an unbroken line of cases, has held that a criminal conviction cannot stand under the Equal Protection Clause if it is based on an indictment returned by a grand jury from which individuals were excluded on the basis of race. Alexander v. Louisiana, 405 U.S. 625, 628 (1972); Castaneda v. Partida, 430 U.S. 482, 492-495 (1977). To achieve an impartial grand jury, the panels from which grand jurors are chosen must also be drawn from a "fair cross section" of the community. Taylor v. Louisiana, 419 U.S. 522, 527 (1975); Atwell v. Blackburn, 800 F.2d 502, 505 (5th Cir. 1986) (fair cross section requirement applies to grand jury panels); Machetti v. Linahan, 679 F.2d 236, 239 (11th Cir. 1982) (same). If racial discrimination occurs in the selection process of the grand jury, the conviction must be reversed notwithstanding "overwhelming" evidence of guilt. Vasquez v. Hiller, 474 U.S. 254, 263 (1986).

The trial court held that Petitioner had not demonstrated a systemic problem of underrepresentation. [T.d. 322, pp. 8-9]. Diane Wiley of the National Jury Project, Midwest documented that there was such a problem in 1992. [T.d. 307, Exhibit 39]. The underrepresentation problem persists eleven years later in both Petitioner's case, and the co-defendant's case. [T.d. 307, Exhibit 55]. This evidence was sufficient to warrant discovery and to avoid summary dismissal.

The trial court stated that it refused to accord Ms. Wiley's affidavit any weight because it erroneously believed that the Ohio Supreme Court offered it no weight in the Davie case. [T.d.

322, p. 9]. The Ohio Supreme Court never considered her affidavit in that case. The Ohio Supreme Court decided the Davie case in 1992. [Id.] Ms. Wiley signed her affidavit on June 14, 2000. [T.d. 307, Exhibit 39].

Petitioner's convictions and sentence are void or voidable because the grand jury that indicted him was drawn from a venire in which African-Americans were disproportionately excluded. U.S. Const. amends. V, VI, VIII, IX, and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

**Third Cause Of Action: It Is The Good Faith Belief Of Counsel That The Trumbull County Common Pleas Court Has Employed A System To Choose Grand Jury Forepersons That Can Lead To The Discrimination In The Selection Process.** [T.d. 306, ¶¶35-44.]

In the State of Ohio, the common pleas court judge may select anyone to be the grand jury foreperson who satisfies the qualifications of a juror. See O.R.C. § 2939.02. A foreperson selection procedure that results in the underrepresentation of African-Americans because the state court judges select predominantly Caucasians renders the conviction invalid. Campbell v. Louisiana, 523 U.S. 392, 398 (1998)

Janice Winons, who is Caucasian, was the foreperson of the grand jury that capitally indicted Nathaniel Jackson. [T.d. 307, Exhibit 41.]

The trial court dismissed this Cause of Action based upon its own personal observations concerning the selection system. [T.d. 322, p. 10]. Even assuming that the trial court's observations are correct, that the judges do not go outside the venire, Petitioner's claim can still succeed if the judges exercise racial discrimination in selecting the foreperson from the venire. Campbell v. Louisiana, 523 U.S. at 396 ("In Louisiana . . . the judge selects the foreperson from the grand jury before the remaining members of the grant jury have been chosen by lot"). It is undisputed that the foreperson in the present case is Caucasian. [T.d. 307, Exhibit 41].

Petitioner Jackson's convictions and sentence are void or voidable because the grand jury foreperson may have been chosen in a racially discriminatory manner. U.S. Const. amends. V, VI, VIII, IX, and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

**Fourth Cause Of Action:  The Trial Prosecutors Failed To Provide Trial Counsel With Exculpatory Evidence.**  [T.d. 306 ¶¶45-44.]

The law enforcement agencies suppressed a police report indicating that the decedent had made plans to fake his own death. Trial counsel for Ms. Roberts confirmed the existence of such a police report.  [T.d. 307, Exhibit 35.]  Ms. Roberts subsequent to Petitioner's trial herself confirmed the existence of such a plot by the decedent.  [T.d. 307, Exhibit 2.]  Because the trial court refused to grant Petitioner discovery, he was unable to identify other suppressed evidence. See Second Cause of Action.

The prosecution has a constitutional obligation to disclose evidence favorable to the accused.  Brady v. Maryland, 373 U.S. 83, 86 (1963).  Favorable evidence for Brady purposes includes both exculpatory and impeachment evidence.  Kyles v. Whitley, 514 U.S. 419, 433 (1995).  Constitutional error results when the favorable evidence that is suppressed by the government lead to the conclusion that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. at 433 (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).

The trial court denied relief, partially based upon the fact that Petitioner could not produce the report in question.  [T.d. 322, p. 13].  This is exactly the reason that Petitioner needed discovery.  [See Assignment of Error No. I].  The fact that the Assistant Prosecutor would not confirm or deny the existence of the report certainly adds credence to the conclusion the report exists.  [T.d. 309, pp. 15-16].

The trial court proceeded to determine that if the report did exist, it was not exculpatory because Petitioner killed someone who at least looked like Mr. Fingerhut.  [T.d. 322, p. 13]. However the State had to prove beyond a reasonable doubt that Petitioner shot Fingerhut and not a "body double" as the trial court suggested.

The convictions and sentences against Petitioner are void and/or voidable because the Trumbull County Prosecutor's Office failed to provide trial counsel with exculpatory evidence. U.S. Const. Amends. V, VIII, IX, XIV, Ohio Const. Art. I, §§ 1, 2, 5, 9, 10, 16, and 20, Brady v. Maryland, 373 U.S. 83 (1963).  The Court should remand Petitioner's case with instructions that he be permitted to conduct discovery to support the Fourth Ground for Relief.

**Fifth Cause Of Action:  The Court Failed To Hold A Hearing Concerning Nathaniel Jackson's Request To Discharge His Trial Counsel.**  [T.d. 306 ¶¶55-62.]

Petitioner Jackson communicated or attempted to communicate to the trial court his dissatisfaction with Attorney Consoldane and his desire to have new counsel appointed.  The trial court never addressed the issue.  [T.d. 320, Exhibit 2.]

Although the right to appointed counsel of one's own choice is not absolute, a court may not infringe upon such right in an arbitrary or unreasonable manner.  Linton v. Perini, 656 F.2d 207 (6th Cir. 1981). Whenever a defendant attempts to discharge his attorney, it is the duty of the trial judge to inquire into the complaint and to make such inquiry a part of the record. State v. Deal, 17 Ohio St. 2d 17 (1969) Syllabus.  See also State v. Pruitt, 18 Ohio App. 3d 50 (1984).

In Monroe v. United States, 389 A.2d 811 (D.C. Cir. 1978) the court held that, "where no more than a cursory colloquy transpires between appellant and the trial court, and where the trial court fails to conduct a meaningful inquiry into appellant's claim, reversible error is present." See also United States v. Weltz, 674 F.2d 185, 197 (3rd Cir. 1982); (United States v. Young, 482 F.2d 993, 995 (5th Cir. 1973); State v. Renshaw, 276 Md. 259, 270 n.6, 347 A.2d 219 (Md.

1975); <u>Monroe v. United States</u>, <u>supra</u> at 820-821. The trial court did not made the necessary inquiry in the present case.

The trial court, when it granted the prosecutor's motion to dismiss, converted the Cause of Action into an ineffectiveness claim. [T.d. 322, p. 14]. Thus the trial court applied an inapposite legal standard.

The trial court then stated that it "has no <u>current</u> recollection of reviewing the letter" (emphasis added). [<u>Id.</u> at p. 15]. This was an impermissible observation since the trial court at this point took on the role of witness. <u>See</u> Assignment of Error No. V. The Court then observed that Petitioner appeared to be getting along with his attorneys. [<u>Id.</u>] Again the court adopted the role of witness. Petitioner has now offered evidence to the contrary. [T.d. 320, Exhibit 3]. Petitioner had no choice after the trial court did not act on his letter.

Finally, the court suggested that "incarcerated defendants commonly find much to complain about with both publicly funded and even privately retained attorneys." [T.d. 322, p. 15]. The court's stereotyping explains the reasons that Petitioner did not receive a fair hearing of his grievances.

Petitioner's convictions and sentences are void or voidable because the trial court did not conduct a hearing on his motion to dismiss counsel. As a result he proceeded to trial with a pair of attorneys with whom he could not effectively communicate. U.S. Const. amends, V, VIII, IX, XIV, Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

**Sixth Cause Of Action:  Trial Counsel Failed To Retain A Competent Mitigation Specialist And As A Result The Mitigation Investigation Was Incomplete.** [T.d. 306, ¶¶63-71.

Trial counsel and their agents interviewed only one member of Nathaniel Jackson's family prior to the day of the mitigation hearing. [T.d. 307, Exhibits 49-53.) During the course of the mitigation "investigation", defense counsel collected very few records that were relevant

to the sentencing proceedings.  [Id., Exhibits 46-48.].  Trial counsel failed to retain the services of a competent mitigation specialist to conduct the sentencing phase investigation personally.

Recently the Supreme Court granted sentencing phase relief in capital case.  Wiggins v. Smith, 123 S. Ct. 2527 (2003). The Court established that counsel's performance was to be judged via the ABA Standards for Performance of Counsel in a Capital Case.  Id. at 2537.  The Relevant 2003 Guidelines provides that counsel in capital cases should assemble a defense team which includes "at least one mitigation specialist."  ABA Death Penalty Guidelines 10.4(C)(2)(a) The Ohio Supreme Court has also recognized the need for appointment of mitigation specialists in capital cases.  "The appointing court shall provide appointed counsel, as required by Ohio law or the federal Constitution, federal statutes, and professional standards with the investigator, *mitigation specialists*, . . . ." Ohio Sup. R. 20(IV)(D).  (Emphasis added.)

Trial counsel's failure to retain a competent mitigation investigator resulted in little record collection and the interviewing of only one witness.  The scope of this "investigation" was unreasonable. The 2003 ABA Death Penalty Standards provide that "Counsel at every stage have an obligation to conduct thorough and independent investigation relating to the issues of both guilt and punishment."  2003 Guideline 10.7(A).  The Commentary to this Guideline clarifies that the "penalty phase investigation requires extensive and generally unparalleled investigation into personal and family history.(citations omitted)"

The trial court denied this Cause of Action because "This Court finds that Dr. McPherson qualifies as a mitigation specialist as a result of her training, expertise, education, experience and prior testimony on behalf of capital defendants."  [Id.]

Dr. McPherson was a psychologist, not a mitigation specialist as the trial court suggested. It was her job to psychologically evaluate Petitioner, not to interview for purposes of creating a social history for a psychologist to review.

The trial court erred in dismissing this Cause of Action. Petitioner's sentence is void or voidable. He lacked the appointment of an investigator (as opposed to a psychologist) who would have conducted the necessary sentencing investigation. He was thereby prejudiced. U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20; Strickland v. Washington, 486 U.S. 668, 686 (1984); Ake v. Oklahoma, 470 U.S. 68, 83 (1985).

**Seventh Cause Of Action:  The Petit Jury That Convicted Nathaniel Jackson Of Capital Murder And Recommended That He Be Sentenced To Death Was Drawn From A Venire That Contained An Underrepresentation Of African Americans.**  [T.d. 306, ¶¶72-84.]

The trial court in the present case summoned four hundred jurors to serve on the venire [T.d. 307, Exhibit 54.] One-hundred-forty persons appeared for jury duty [Tp. 1846-1848.]

The parties agreed that only one African-American was questioned during individual voir dire [Tp. 1846-1848.] The prosecutor stated that "I'm positive we had one other black juror that was excused".  [Tp. 1854.] Subsequently the prosecutors made an effort to preclude this constitutional challenge by stating "I meant the representation of one, and I want to say there were two, maybe three."  [Tp. 1855.] African Americans comprised 7.9 percent of the population in Trumbull County [T.d. 307, Exhibit 1.] Consequently there should have been approximately eleven African-Americans in the one-hundred-forty-persons who appeared for jury duty. Even if the prosecutor's second statement was accurate, there was still a substantial underrepresentation of African-Americans.

The underrepresentation of a cognizable group in a petit jury venire constitutes a denial of the Due Process Clause of the Fourteenth Amendment,  Peters v. Kiff, 470 U.S. 493, 501

(1972); the Fair Cross Section requirement of the Sixth Amendment, <u>Taylor v. Louisiana</u>, 419 U.S. 522, 531 (1975); and the Equal Protection Clause of the Fourteenth Amendment, <u>Taylor v. Louisiana</u>, 419 U.S. at 531.

The trial court, in its dismissal entry observed that "None of the exhibits submitted by Petitioner support his claim that African Americans, or any other minority members, were "systematically culled" from the jury selection process. The fact that no African American was ultimately *seated* on either the Davie, Roberts or Jackson juries is not indicative of a systemic *removal* of any potential juror." [T.d. 322, p. 16]. Diane Wiley, the President of the National Jury Project, Midwest, in her affidavit states otherwise, "It is disturbing to find a venire of this size without even one African American juror being included in a jurisdiction with 6% African Americans. This simply should not occur unless there was some kind of <u>systematic discrimination</u>." (Emphasis added.) [T.d. 307, Exhibit 39, ¶10]. Ms. Wiley's opinion constituted direct evidence of intentional discrimination.

The trial judge attempted to discredit Ms. Wiley's affidavit because the "Ohio Supreme Court found the Wiley affidavit unpersuasive in the Davie case, and specifically held that Davie had not demonstrated an unfair lack of representation of African Americans in Trumbull County juries, nor did he show that such alleged underrepresentation resulted from a systematic exclusion by the state of that particular group." <u>State v. Davie</u> 80 Ohio St. 3d 311, 316, 317 (1977). [T.d. 322, p. 16]. Ms. Wiley executed her affidavit in 2000. [T.d. 307, Exhibit 39]. Therefore the Ohio Supreme Court did not review her affidavit in 1992 when it denied Roderick Davie relief. The Ohio Supreme Court's finding as to racial discrimination may well have been different if it had the benefit of her affidavit.

Petitioner's convictions and sentences are void and/or voidable because Petitioner was denied his right to a fair and impartial jury and equal protection because there was an underrepresentation of African Americans in the venire from which his jury was drawn. U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20

**Eighth Cause Of Action:  Trial Counsel Failed To Provide Effective Assistance Of Counsel In The Pretrial Stages Of The Proceedings.** [T.d. 306, ¶¶ 85-97.]

Counsel did not conduct an independent investigation and instead for the most part relied upon the discovery provided by the prosecution. Counsel interviewed very few witnesses. As a result counsel did not develop any significant information concerning co-defendant Roberts' role in the homicide, 2) the illegal activities of the victim Robert Fingerhut, 3) the dysfunctional relationship of Roberts and Fingerhut, 4) the significant mental impairment of Petitioner Jackson and 5) the impact that impairment had upon his actions and involvement with Roberts. [See T.d. 307, Exhibits 49-53, 58, 65-75].

To protect an accused's constitutional rights, defense counsel must conduct a reasonable pretrial investigation. Sims v. Livesay, 970 F.2d 1575, 1580 (6th Cir. 1992) (counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unreasonable). At a minimum, a reasonable pretrial investigation for purposes of the trial phase includes interviewing the state's witnesses and identifying and interviewing potential defense witnesses. Workman v. Tate, 957 F.2d 1339, 1345-46 (6th Cir. 1992); Blackburn v. Foltz, 828 F.2d 1177, 1182-83 (6th Cir. 1987); Beasley v. United States, 491 F.2d 687 (6th Cir. 1974) (defense counsel has a duty to investigate "all apparently substantial defenses"). See also 2003 ABA Death Penalty Guidelines 10.7(A).

Trial counsel did not challenge the grand jury and petit jury venire nor the selection of the grand jury foreperson. As a result, the trial court did not hear a factual challenge to the

underrepresentation of African-Americans in the grand jury and petit jury venires and the position of grand jury foreperson until Nathaniel Jackson filed his initial and Amended Petitions [See Second, Third and Seventh Cause of Action]. The record now, for the first time, contains an opinion from a nationally recognized expert concerning the selection processes for venires in Trumbull County [T.d. 307, Exhibit 39.] The same reasoning applies to trial counsel's failure to challenge the prosecutor's charging decision. [First Cause of Action]. It is now apparent that the prosecutor's office treats Caucasian and African-American co-defendants differently for purposes of the death penalty. [T.d. 307, Exhibit 35].

Trial counsel failed to adequately challenge the admissibility of Nathaniel Jackson's statement to the police. Counsel, at the motion to suppress did not place Nathaniel Jackson's school records into evidence that document his IQ scores of 70 and 72 [T.d. 307, Exhibits 56, 57]. The Court, at the Motion to Suppress, did not hear that Nathaniel Jackson performed very poorly academically and spent most of his academic career in special education classes. [T.d. 307, Exhibit 46].

Trial counsel did not conduct a reasonable investigation and as a result the jury and the trial court did not hear that co-defendant Donna Roberts was much more intelligent than Nathaniel Jackson. She had managed a medical office [T.d. 307, Exhibit 60]. Nathaniel was in special education classes. [Id. 56 and 57]. She "played him" by giving him drugs, money and cars [Id., Exhibits 50, 51, 53.] Donna Roberts had initially attempted to get another African American to commit the murder [Id. at Exhibit 67]. Because defense counsel conducted an unreasonable "investigation" the jury knew nothing about Ms. Roberts and her manipulation of Nathaniel Jackson.

The mitigation investigation suffered equally. No family members except Petitioner's mother were interviewed [Id. at Exhibits 49-53]. Dr. McPherson's testimony was based upon an inadequate and incomplete social history. [T.d. 320, Exhibit 5]. It was also based upon incorrectly scored tests [T.d. 307, Exhibit 78]. Dr. McPherson, because of the incomplete social history, never linked Petitioner's dysfunctional upbringing to his relationship with Donna Roberts' and her manipulation of him that ultimately led to his involvement in the homicide. Dr. McPherson's incomplete and inaccurate testimony is to be contrasted with the testimony of psychological experts whose testimony was based upon accurate testing and a complete social history. [Id. at Exhibit 62 and 63].

The trial court, when dismissing the post-conviction petition, initially determined that the affidavit of Dorian Hall, the testimony of Jill Miller and Dr. Parran had nothing to do with the instant case. [T.d. 307, Exhibits 59, 60 and 63]. To the contrary the affidavit of Ms. Hall and testimony of Jill Miller, Dr. Smith and Dr. Parran [Id., Exhibits 59, 60] established a standard for the testimony of a psychologist in the mitigation phase. The testimony of Ms. Miller and Drs. Parran and Smith [Id., Exhibits 60, 62 and 63] produced a model of what testing could have been provided in a case after a reasonable mitigation investigation was conducted. Petitioner would have liked to have submitted affidavits that were case specific to the present case, but the trial court incorrectly held that as a matter of law it had no jurisdiction to grant funding for experts. [See Assignment of Error No. II.]

The court then asserted (after acknowledging the relevance of Smith and Parran's testimony and Dr. Kaplan's affidavit) that any testimony concerning Petitioner's drug use would have been cumulative. [T.d. 322, p. 19]. However there was no testimony (as the Court

subsequently conceded), [T.d. 322, pp. 30-31] linking Petitioner's substance abuse to the environment in which he was raised and the choices he made later in life.

The trial court speculated that evidence of Petitioner's low IQ would not have changed its opinion concerning the voluntariness of his statement. [Id. at p. 11]. It may, however, have changed a reviewing court's opinion concerning the Miranda issue. A person who is borderline mentally retarded may lack the mental ability to knowingly and intelligently waive his Miranda right (which is a separate issue from the voluntariness issue).

The trial court stated that trial counsel was effective in challenging the grand and petit jury venires. [Id. at p. 19]. Yet counsel only challenged the source list and not the systematic exclusion of minorities. [T.d. 48]. As the Court noted "trial counsel admitted they had nothing to support their theory". Petitioner, in his Amended Petition, submitted evidence to support his theory. [See T.d. 306, ¶¶25-34 and 72-84, T.d. 307, Exhibits 1, 36-39, 55].

The trial court stated in its Findings of Fact that there was no proof of racially motivated charging practices. [T.d. 322, p. 20]. Petitioner has already addressed this issue. See Cause of Action No. I, supra. The trial court contended that because "the Petitioner, and his co-defendant, a Caucasian, were indicted on identical charges" supported the conclusion that there was no racial discrimination. [Id.] The trial court however ignored the critical fact, that the Trumbull County Prosecutor offered the Caucasian defendant a plea bargain, but not the African-American defendant.

The trial court found that the mitigation investigation conducted by Dr. McPherson was appropriate. [T.d. 322, p. 20-21]. But again Dr. McPherson was not a mitigation phase investigator. She was a psychologist. See Section infra. Her own file documents that she interviewed only one person. [T.d. 320, Exhibit 5]. The family members confirm this fact. [T.d.

307, Exhibits 49-53], as does Jessica Love.  [Id., Exhibit 58].  The failure to interview all but one person does not meet the ABA Death Penalty Standard that provides "penalty phase investigation <u>requires extensive</u> and generally <u>unparalleled</u> investigation into personal and family history (citations omitted)" (emphasis added) 2003 Guideline 107(A).

The trial court also concluded that "Petitioner's exhibits also do not support the claim that his trial counsel did not conduct an independent guilt phase investigation.  The very exhibits submitted by Petitioner show that Dr. McPherson conducted a full and complete investigation into Petitioner's background."  [T.d. 322, p. 21].  Dr. McPherson was not the trial phase investigator.

Trial counsel's choices were not preceded by a reasonable investigation.  Therefore trial counsel made no strategic decisions.  The Court erred when it granted the prosecutor's Motion to Dismiss this Cause of Action.

Petitioner's convictions and sentences are void and/or voidable because he was denied the effective assistance of counsel during the pretrial stage of his capital case.  U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20; <u>Strickland v. Washington</u>, 486 U.S. 668 (1984).

**Ninth Cause Of Action:  The Actions Of Trial Counsel During The Culpability Stage Of The Proceedings Denied Nathaniel Of His Right To Effective Assistance Of Counsel.**  [T.d. 306, ¶¶98-109.]

The prosecutor's theory left the jury with the mistaken impression that Petitioner was more culpable than co-defendant Donna Roberts. This was incorrect.

Trial counsel failed to introduce  evidence of Ms. Roberts' prior relationships. She had a lengthy history of currying favor with African-American males by supplying them with clothes, money, fast cars and sex [T.d. 307, Exhibits 65, 66, 67].  She supplied Nathaniel Jackson with

money, clothes, and a car [Id. 49-53, 58, 69]. Donna Roberts was much more intelligent than Nathaniel Jackson [Id. Exhibits 44, 68, 56, 57]. Her history of manipulating African-American males and her superior intelligence would certainly have provided the jury with an explanation as to the reason Petitioner was involved in the commencement of a murder for which he had nothing to gain.

Trial counsel made no effort to link the physical evidence from the shootings to Donna Roberts. While counsel made an issue concerning the blood, they never attempted to link Donna Roberts to the crime scene.

The trial court in its Findings of Fact claimed that "The jury was well informed of Roberts' planning and participation in the homicide." [T.d. 322, p. 23]. The court made no citations to the record to support its conclusion. The jury never heard of Roberts' superior intelligence and her history of dominating African-American males.

The court misconstrued the content of the Amended Petition Exhibit 77 claiming that, "His own Ex. 77 states that no experts found no gunshot residue on Roberts' hands". [Id. at p. 23]. The Exhibit instead states that "gunshot was not conclusively identified as the 'left hand' or 'right hand' samples". [T.d. 307, Exhibit 77]. In other words, the tests were inconclusive.

Finally the Court suggests that Petitioner cannot demonstrate prejudice as a result "of his admission that he shot Fingerhut." [T.d. 322, p. 23]. But Petitioner in that statement that the shooting involved self-defense not that it was a "premeditated killing" as the Court claimed. [Id.] Thus the facts surrounding the shooting, including all of the information surrounding Roberts' involvement, was critical.

Petitioner's convictions and sentences are void and/or voidable because Petitioner was denied the effective assistance of counsel during the trial stage of his capital case. U.S. Const.

amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20; <u>Strickland v. Washington</u>, 486 U.S. 668, 686 (1984).

**Tenth Cause Of Action:  The Actions Of Trial Counsel During The Culpability Stage Of The Proceedings Denied Nathaniel Of His Right To Effective Assistance Of Counsel.** [T.d. 306 ¶¶110-122].

One of Petitioner's attorneys became ill prior to the mitigation hearing and new counsel was substituted for him [Sent. Tp. 4-6.]  New counsel was not certified by the Ohio Supreme Court to provide representation in a capital case.  [Id.]

Remaining trial counsel met with the mitigation witnesses for the first time just prior to the start of the mitigation hearing [Amended Petition Exhibits 49-53, 58].  Trial counsel met with the witnesses as a group and asked questions that were unrelated to the questions that would be asked of them a few minutes later in the mitigation hearing.  [Id.]

Counsel who remained on the case admitted to knowing little about the evidence that was to be presented to the jury.  [Sent. Tp. 7.]  As a result he requested that the psychologist be permitted to sit at counsel table.  [Sent. Tp. 8.]

Trial counsel gave no opening statement at the mitigation phase.  [Sent. Tp. 23.]  Trial counsel called five lay witnesses.  The cumulative length of their testimony was ten pages. [Sent. Tp. 23-33].  Their testimony was incomplete and inaccurate in all respects.  [See Sixth Cause of Action].

Trial counsel called as his last witness Dr. Sandra McPherson.  She testified that Petitioner was not mentally retarded, but instead anti-social. [Sent. Tp. 45-52]. The witness had improperly scored his IQ test. [T.d. 307, Exhibit 78].  She provided no meaningful testimony concerning Petitioner's dysfunctional childhood, the reason that he abused substances, co-

defendant Roberts' manipulation of him with sex, drugs and cars, or his involvement in the offense in terms of his character, history, background and psychological development.

The United States Supreme Court recently granted sentencing phase relief in a capital case. Wiggins v. Smith, 123 S. Ct. 2527 (2003). The Supreme Court concluded that trial counsel's investigation did not meeting the prevailing ABA standards and therefore counsel was ineffective. Id. at 2544. The Court should reach the same conclusion in this case.

The trial court, in dismissing this cause of action determined that trial counsel was not aware that the victim had intended to "fake his own death." [T.d. 322, p. 24]. Since they were unaware [T.d. 307, Exhibit 35], the trial court should have granted relief on the Brady claim. See Fourth Cause of Action supra.

The trial court again found that Dr. McPherson "conducted a thorough review of Petitioner's background". [T.d. 322, p. 9]. Petitioner twice addressed this issue. See Sixth and Eighth Causes of Action. Dr. McPherson's file reflected that she contacted only one witness. [T.d. 320, Exhibit 5]. This is not surprising given the fact that she is a psychologist and not an investigator. See Sixth Cause of Action.

The trial court, after making its third finding that Dr. McPherson conducted a "full blown" sentencing investigation, inexplicably found that she conducted only an abbreviated sentencing phase investigation because Petitioner's family did not cooperate. [T.d. 322, p. 25]. The trial court arrived at this "conclusion" as a result of a single letter contained in Dr. McPherson's file. The document which was not dated was only addressed "To: Family of Nathaniel Jackson" indicated that Donald McPherson (her husband) was here at "your house". Dr. McPherson's letter does not indicate whose residence, if anyone's, Donald McPherson or another individual left the letter. Petitioner's family members obviously resided at more than

one house. There is no evidence in the file that the family failed to cooperate. They have fully cooperated with the post-conviction investigation. [T.d. 307, Exhibit 58]. The family members, other than the mother, were not aware of any other effort by anyone to contact them. [Id., Exhibits 50-53]. The trial court's finding as to lack of cooperation, is not supported by the record and is the product of speculation.

The trial court made findings that the prevailing standard of practice does "not require lengthy interrogations" or interviews of family members. [T.d. 322, p. 25] and that Dr. McPherson, if she had failed to conduct all the psychological testing that she did, would "have been tantamount to malpractice". [Id. at 268]. Petitioner has already addressed this erroneous finding. See Assignment of Error No. V.

The trial court found that it was appropriate to substitute Attorney Wright even though according to the trial court "he was not certified by the Ohio Supreme court . . ." and "he was brand new to the case". [Id. at p. 25]. The trial court reasoned Petitioner suffered no harm because Attorney Consoldane did all the work in the mitigation phase, "he conducted direct examination of all mitigation witnesses and gave closing argument." [Id. at p. 25]. The fact that Attorney Wright did nothing is not an indication that he was effective or that Petitioner was not prejudiced. Petitioner was entitled to the benefit of two prepared attorneys.

Finally, the trial court found that Attorney Consoldane's request to have Dr. McPherson at counsel table did not reflect that Attorney Consoldane had little knowledge about the mitigation presentation but that "Dr. McPherson knew more about the family dynamics as a result of her extensive interviews pursuant to psychological testing." [Id. at p. 26]. The Court's fact finding is correct, only because prior to the day of the mitigation hearing, Attorney Consoldane had spoken to no one. [T.d. 307, Exhibits 49-53, 58] and Dr. McPherson had spoken

to one person. [Id.] The combined knowledge of both individuals did not meet the standards for a capital case.

Petitioner's sentences are void and/or voidable because Petitioner was denied the effective assistance of counsel during the mitigation stage of his capital case. U.S. Const. amends. V, VI, VIII, IX, and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20; Strickland v. Washington, 486 U.S. 668, 686 (1984).

**Eleventh Cause Of Action:  Dr. McPherson Did Not Provide Nathaniel Jackson With The Level Of Assistance Guaranteed By The Constitution.**  [T.d. 306 ¶¶123-135].

Dr. McPherson did not perform the appropriate testing, score the testing correctly that she did administer, and more importantly provide any meaningful psychological insight into the developmental aspects of Nathaniel Jackson's life. [T.d. 307, Exhibit 78, T.d. 320, Exhibit 5]. The 2003 ABA standards direct counsel to attempt to "establish a direct cause and effect between" mitigating factors and the homicide through the testing of experts . 2003 Guideline 10.11, Commentary.

The state must as a matter of equal protection provide indigent prisoners with the basic tools of an adequate defense on appeal, when those tools are available for a price to other prisoners. Britt v. North Carolina, 404 U.S. 276, 227 (1971).  Ake v. Oklahoma, 470 U.S. 68, 76 (1985). Ake applies to expert testimony in the penalty phase of a capital case.  See Kordenbrock v. Scroggy, 919 F.2d 1091, 1104 (6th Cir. 1990); Glenn v. Tate, 71 F.3d 1204 (6th Cir. 1995).

The trial court in dismissing this Cause of Action observed that "it is refreshing to review an exhibit which references the participants and performers in Petitioner's case" (emphasis in original). [T.d. 322, p. 27].  The trial court's failure to provide funds for experts was the reason the trial court did not have to review more affidavits from experts specific to this case. See Third

Cause of Action. However, after noting that Petitioner submitted case specific affidavits, the trial court then dismissed all efforts to submit new affidavits, "a post-conviction petitioner does not show ineffective assistance merely because it presents a new expert opinion" citing State v. Combs, 100 Ohio App. 3d 90, 104 (1994). [T.d. 322, p. 27].

The trial court in dismissing the petition partially misconstrued the nature of this claim. Twice the court stated the Causes of Action involved only an ineffectiveness of counsel claim. [T.d. 322, p. 27]. Petitioner also plead a due process claim for failure to appoint competent experts. Thus the errors of Dr. McPherson constitute a violation of the Fourteenth Amendment regardless of whether her errors can be attributed to counsel.

Petitioner's convictions and sentences are void and/or voidable because Petitioner was denied the effective assistance of counsel and an expert assistance during the mitigation stage of his capital case. U.S. Const. amends. V, VI, VIII, IX, and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20; Ake v. Oklahoma, 470 U.S. 68, 83 (1985); Strickland v. Washington, 486 U.S. 668 (1984).

**Twelfth Cause Of Action:  The Trial Court's Opinion Imposing A Sentence Of Death Was Based Upon Incomplete And Inaccurate Information.**  [T.d. 322, pp. 136-152].

A comparison of the information contained in the Amended Petition and the trial court's sentencing opinion reveals that the trial court relied upon incomplete and inaccurate information when sentencing Petitioner to death. The fault is directly attributable to the ineffective assistance of counsel and the deficient performance of Dr. McPherson. The trial court's opinion highlights the prejudice that inured to Petitioner as a result of the deficient performance of trial counsel and the expert.

The trial court, when analyzing this cause of action, did not dispute the underlying premise that the post-conviction petition and exhibits contained additional information that the

jury did not hear. The court instead concluded that this additional information would not "have swayed the jury to reconsider a life sentence." [T.d. 322 p. 30]. The trial court applied the wrong legal standard. The test was whether additional information would have influenced a single juror. A sentence of death is only appropriate in the State of Ohio if the jury is unanimously convinced beyond a reasonable doubt that the aggravating facts outweigh the mitigating factors. O.R.C. § 2929.03(D)(2). Thus prejudice is demonstrated if there is a reasonable probability that one juror would have voted differently in the sentencing phase. Frazier v. Huffman, 343 F.3d 780, 799 (6th Cir. 2004); Wiggins v. Smith, 123 S. Ct. 2527, 2543 (2003).

The trial court when it dismissed this Cause of Action cited to the fact Dr. McPherson's testimony and report it provided the jury with a sufficient social history. There was no mitigation investigation (Sixth Cause of Action). Dr. McPherson interviewed only one person. [T.d. 307, Exhibit 49-52, 58] and counsel interviewed no one prior to the day of the mitigation hearing. [Id.] Therefore the jury did not receive an adequate social history.

Finally the trial court speculated "perhaps the reason no expert testified to the nexus "between his environment and substance abuse is because it does not exist" (emphasis added) [T.d. 322, p. 30]. Since trial counsel never presented the evidence of Nathaniel's substance abuse and the trial court refused to appoint a psychological expert for purposes of post-conviction, this court can only speculate as to the answer. See Second Assignment of Error.

Petitioner's death sentence is void or voidable because the jury did not receive all of the relevant information concerning the appropriate sentence. U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 98, 10, 16, and 20.

**Thirteenth Cause Of Action: The State's Present Method For Implementing Lethal Injection Constitutes Cruel And Unusual Punishment.** [T.d. 306 ¶¶[153-161].

The current execution protocol that the State of Ohio uses to execute inmates includes the administration of three drugs.  [T.d. 307, Exhibits 81 and 82].  One of these drugs—pancuronium bromide—will likely force Petitioner into a state of "chemical entombment" while he consciously experiences suffocation and the pain of cardiac arrest. Mark J.S. Heath, a medical doctor board certified in anesthesiology, maintains that "Ohio's lethal injection protocol creates an unacceptable risk that the inmate will not be anesthetized to the point of being unconscious and unaware of pain for the duration of the execution procedure.  If the inmate is not first successfully anesthetized . . . the pancuronium will paralyze all voluntary muscles and mask external, physical indications of the excruciating pain being experienced by the inmate during the process of suffocating (caused by the pancuronium) and having a cardiac arrest (caused by the potassium chloride)." [T.d. 307, Exhibit 82.]

The trial court dismissed this Cause of Action because it did not find Dr. Mark J.S. Heath offered credible [T.d. 322, pp. 31-32].  The trial court erred in making a credibility determination concerning a medical expert it has never observed testify.

On May 24, 2004, the United States Supreme Court determined that a petitioner who filed a civil complaint which was supported by an affidavit from Dr. Mark Heath was entitled to an evidentiary hearing concerning the State of Alabama's lethal injection procedure.  Nelson v. Campbell, 124 S. Ct. 2117, 2111, 2112 (2004).  The issue in Nelson involved a more limited issue (the cut-down procedure), than the issue contained in the Thirteenth Cause of Action in the present case.  The unanimous Court in Nelson, however, recognized that the complainant in that case may decide ultimately to expand his claim to include a broader challenge to lethal injection. The Court did not indicate that the a more broader challenge would be  barred by existing precedent or an incredible expert.  Id. at 2124.

The trial court erred when it dismissed this Cause of Action. The death sentence against Petitioner is void and/or voidable because the death penalty as administered by lethal injection violates his constitutional rights to protection from cruel and unusual punishment as guaranteed by the Eighth Amendment and to due process of law. U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

**Fourteenth Cause Of Action: The State Of Ohio's System For Post-Conviction Review Does Not Provide An Effective Remedy.** [T.d. 306, ¶¶162-169].

O.R.C. § 2953.21 et. seq. does not offer Petitioner a fair and full opportunity to contest the constitutional validity of his convictions and death sentence. The requirements of due process are not fulfilled by the cursory, inadequate, and ineffective process provided for in the post-conviction statutes, nor do the state courts, in practice, historically provide meaningful review in such proceedings. See Case v. Nebraska, 381 U.S. 336 (1965). Since 1982, only one death row inmate has been granted relief from a trial court on a post-conviction petition.

The trial court dismissed this Cause of Action in reliance upon this Court's decisions in State v. Wiles, 126 Ohio App. 3d 71, 79 (1998) and State v. Lorraine, No. 95-T-5196, 1996 WL 207676 (Trumbull App. Feb. 23, 1996). Petitioner would request that this Court reconsider those decisions to the extent that they are on point. The Ohio Supreme Court has never passed on the constitutionality of Ohio's post-conviction system.

The trial court erred when it dismissed the Fourteenth Cause of Action in the Amended Petition. Petitioner's judgment and sentence are void or voidable because Ohio's post-conviction procedures do not provide an adequate corrective process, in violation of the constitution. U.S. Const. amends. V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 5, 9, 10, 16, and 20.

**Fifteenth Cause Of Action: Cumulative Constitutional Prejudicial Error Infected The Instant Proceedings.** [T.d. 306, ¶¶170-172].

Petitioner asserts that, assuming *arguendo* none of the Grounds for Relief in his Amended Post-Conviction Petition individually warrant relief, the cumulative effects of the errors and omissions and violated his constitutional rights. State v. DeMarco, 31 Ohio St. 3d 191, syl. 2 (1987); see also State v. Bunch, 62 Ohio App. 3d 801, 809, 810 (1989).

The trial court erred when it dismissed this Cause of Action. U.S. Const. amends. IV, V, VI, VIII, IX and XIV; Ohio Const. art. I, §§ 1, 2, 9, 10, 16, and 20  The trial court erred by denying Appellant relief on this ground for relief.

## CONCLUSION

The trial court's decisions to deny post-conviction relief, and to dismiss Nathaniel Jackson's Amended Post-conviction Petition without discovery, funds for experts, or an evidentiary hearing were error. This Court should reverse the trial court's dismissal of the Amended Petition and grant him a new trial or mitigation hearing;  or alternatively, remand his post-conviction case to the trial court with instructions to allow Petitioner to conduct discovery and, funding for any reasonable requests for experts, followed by an evidentiary hearing on the merits of his cause of action.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, Ohio  43215-2998
(614) 466-5394

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **CORRECTED BRIEF OF APPELLANT NATHANIEL JACKSON** was forwarded by first-class, postage prepaid U.S. Mail to Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio 44481 on this 16th day of December, 2004.

_____
RANDALL L. PORTER
COUNSEL FOR NATHANIEL JACKSON

#204931

THE CONSTITUTION OF THE UNITED STATES
AMENDMENTS TO THE CONSTITUTION

US CONST AMENDMENT V

     No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

A–1

THE CONSTITUTION OF THE UNITED STATES
AMENDMENTS TO THE CONSTITUTION

US CONST AMENDMENT VI

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

A–2

THE CONSTITUTION OF THE UNITED STATES
AMENDMENTS TO THE CONSTITUTION

US CONST AMENDMENT VIII

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

THE CONSTITUTION OF THE UNITED STATES
AMENDMENTS TO THE CONSTITUTION

US CONST AMENDMENT XIV

Section 1

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section 2

Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

Section 3

No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each house, remove such disability.

Section 4

The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

Section 5

The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

A–4

BALDWIN'S OHIO REVISED CODE ANNOTATED
CONSTITUTION OF THE STATE OF OHIO
ARTICLE I. BILL OF RIGHTS

Current through 1996 portion of 121st G.A., laws passed and filed through 5-1-96.

O CONST I § 1 INALIENABLE RIGHTS

All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety.

A–5

CONSTITUTION OF THE STATE OF OHIO
ARTICLE I. BILL OF RIGHTS

Current through 1995 portion of 121st G.A., laws passed and filed through 12-31-95.

O CONST I § 2 EQUAL PROTECTION AND BENEFIT

All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the General Assembly.

A–6

CONSTITUTION OF THE STATE OF OHIO
ARTICLE I. BILL OF RIGHTS

Current through 1995 portion of 121st G.A., laws passed and filed through 12-31-95.

O CONST I § 5 RIGHT OF TRIAL BY JURY

The right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury.

CONSTITUTION OF THE STATE OF OHIO
ARTICLE I. BILL OF RIGHTS

Current through 1995 portion of 121st G.A., laws passed and filed through 12-31-95.

O CONST I § 9 BAIL; CRUEL AND UNUSUAL PUNISHMENTS

All persons shall be bailable by sufficient sureties, except for capital offences where the proof is evident, or the presumption great. Excessive bail shall not be required; nor excessive fines imposed; nor cruel and unusual punishments inflicted.

A–8

CONSTITUTION OF THE STATE OF OHIO
ARTICLE I. BILL OF RIGHTS

Current through 1995 portion of 121st G.A., laws passed and filed through 12-31-95.

O CONST I § 10 RIGHTS OF CRIMINAL DEFENDANTS

Except in cases of impeachment, cases arising in the army and navy, or in the militia when in actual service in time of war or public danger, and cases involving offenses for which the penalty provided is less than imprisonment in the penitentiary, no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury; and the number of persons necessary to constitute such grand jury and the number thereof necessary to concur in finding such indictment shall be determined by law. In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed; but provision may be made by law for the taking of the deposition by the accused or by the state, to be used for or against the accused, of any witness whose attendance can not be had at the trial, always securing to the accused means and the opportunity to be present in person and with counsel at the taking of such deposition, and to examine the witness face to face as fully and in the same manner as if in court. No person shall be compelled, in any criminal case, to be a witness against himself; but his failure to testify may be considered by the court and jury and may be the subject of comment by counsel. No person shall be twice put in jeopardy for the same offense.

Baldwin's Ohio Revised Code Annotated
Rules of Civil Procedure
**Civ R 56 Summary judgment**

**(A) For party seeking affirmative relief**
A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part of the claim, counterclaim, cross-claim, or declaratory judgment action. A party may move for summary judgment at any time after the expiration of the time permitted under these rules for a responsive motion or pleading by the adverse party, or after service of a motion for summary judgment by the adverse party. If the action has been set for pretrial or trial, a motion for summary judgment may be made only with leave of court.

**(B) For defending party**
A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part of the claim, counterclaim, cross-claim, or declaratory judgment action. If the action has been set for pretrial or trial, a motion for summary judgment may be made only with leave of court.

**(C) Motion and proceedings**
The motion shall be served at least fourteen days before the time fixed for hearing. The adverse party, prior to the day of hearing, may serve and file opposing affidavits. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**(D) Case not fully adjudicated upon motion**
If on motion under this rule summary judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court in deciding the motion, shall examine the evidence or stipulation properly before it, and shall, if practicable, ascertain what material facts exist without controversy and what material facts are actually and in good faith controverted. The court shall thereupon make an order on its journal specifying the facts that are without controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

**(E) Form of affidavits; further testimony; defense required**
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

**(F) When affidavits unavailable**
Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

**(G) Affidavits made in bad faith**

Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

*OH Sup. R.20*

PAGE'S OHIO REVISED CODE ANNOTATED
Copyright (c) 2003 Anderson Publishing Company
*** THIS DOCUMENT REFLECTS CHANGES RECEIVED THROUGH JUNE 17, 2003 ***
RULES OF SUPERINTENDENCE FOR THE COURTS OF OHIO

OH Sup. R. 20 (Anderson 2003)
SupR 20. Appointment of Counsel for Indigent Defendants in Capital Cases

-- Courts of Common Pleas.

I. Applicability.

(A) This rule shall apply in cases where an indigent defendant has been charged with or convicted of an offense for which the death penalty can be or has been imposed.

(B) The provisions for the appointment of counsel set forth in this rule apply only in cases where the defendant is indigent, counsel is not privately retained by or for the defendant, and the death penalty can be or has been imposed upon the defendant. This rule does not apply in the case of a juvenile defendant who is indicted for a "capital offense" but because of his or her age cannot be sentenced to death.

(C) If the defendant is entitled to the appointment of counsel, the court shall appoint two attorneys certified pursuant to this rule. If the defendant engages one privately retained attorney, the court shall not appoint a second attorney pursuant to this rule.

(D) The provisions of this rule apply in addition to the reporting requirements created by section 2929.021 of the Revised Code.

II. Qualifications for certification as counsel for indigent defendants in capital cases.

(A) Trial counsel.

(1) At least two attorneys shall be appointed by the court to represent an indigent defendant charged with an offense for which the death penalty may be imposed. At least one of the appointed counsel must maintain a law office in Ohio and have experience in Ohio criminal trial practice.

The counsel appointed shall be designated "lead counsel" and "co-counsel."

(2) Lead counsel shall satisfy all of the following:

(a) Be admitted to the practice of law in Ohio or admitted to practice

pro hac vice

;

(b) Have at least five years of civil or criminal litigation or appellate experience;

(c) Have specialized training, as approved by the committee, on subjects that will assist counsel in the defense of persons accused of capital crimes in the two-year period prior to making application;

(d) Have at least one of the following qualifications:

(i) Experience as "lead counsel" in the jury trial of at least one capital case;

(ii) Experience as "co-counsel" in the trial of at least two capital cases;

(e) Have at least one of the following qualifications:

(i) Experience as "lead counsel" in the jury trial of at least one murder or aggravated murder case;

(ii) Experience as "lead counsel" in ten or more criminal or civil jury trials, at least three of which were felony jury trials;

(iii) Experience as "lead counsel" in either: three murder or aggravated murder jury trials; one murder or aggravated murder jury trial and three felony jury trials; or three aggravated or first- or second-degree felony jury trials in a court of common pleas in the three years prior to making application.

(3) Co-counsel shall satisfy all of the following:

(a) Be admitted to the practice of law in Ohio or admitted to practice

A-12

pro hac vice

;

(b) Have at least three years of civil or criminal litigation or appellate experience;

(c) Have specialized training, as approved by the committee, on subjects that will assist counsel in the defense of persons accused of capital crimes in the two years prior to making application;

(d) Have at least one of the following qualifications:

(i) Experience as "co-counsel" in one murder or aggravated murder trial;

(ii) Experience as "lead counsel" in one first-degree felony jury trial;

(iii) Experience as "lead" or "co-counsel" in at least two felony jury or civil jury trials in a court of common pleas in the three years prior to making application.

(4) As used in this rule, "trial" means a case concluded with a judgment of acquittal under Criminal Rule 29 or submission to the trial court or jury for decision and verdict.

(B) Appellate counsel.

(1) At least two attorneys shall be appointed by the court to appeal cases where the trial court has imposed the death penalty on an indigent defendant. At least one of the appointed counsel shall maintain a law office in Ohio.

(2) Appellate counsel shall satisfy all of the following:

(a) Be admitted to the practice of law in Ohio or admitted to practice

pro hac vice

;

(b) Have at least three years of civil or criminal litigation or appellate experience;

(c) Have specialized training, as approved by the Committee, on subjects that will assist counsel in the defense of persons accused of capital crimes in the two years prior to making application;

(d) Have specialized training, as approved by the Committee, on subjects that will assist counsel in the appeal of cases in which the death penalty was imposed in the two years prior to making application;

(e) Have experience as counsel in the appeal of at least three felony convictions in the three years prior to making application.

(C) Exceptional circumstances.

If an attorney does not satisfy the requirements of divisions (A)(2), (A)(3), or (B)(2) of this section, the attorney may be certified as lead counsel, co-counsel, or appellate counsel if it can be demonstrated to the satisfaction of the Committee that competent representation will be provided to the defendant. In so determining, the Committee may consider the following:

(a) Specialized training on subjects that will assist counsel in the trial or appeal of cases in which the death penalty may be or was imposed;

(b) Experience in the trial or appeal of criminal or civil cases;

(c) Experience in the investigation, preparation, and litigation of capital cases that were resolved prior to trial;

(d) Any other relevant considerations.

(D) Savings clause.

Attorneys certified by the Committee prior to January 1, 1991 may maintain their certification by complying with the requirements of Section VII of this rule, notwithstanding the requirements of Sections II(A)(2)(d), II(A)(3)(b) and (d), and II(B)(2)(d) as amended effective January 1, 1991.

III. Committee on the appointment of counsel for indigent defendants in capital cases.

(A) There shall be a Committee on the Appointment of Counsel for Indigent Defendants in Capital Cases.

(B) Appointment of Committee members.

The Committee shall be composed of five attorneys. Three members shall be appointed by a majority vote of all members of the Supreme Court of Ohio; one shall be appointed by the Ohio State Bar Association; and one shall be appointed by the Ohio Public

A-13

Defender Commission.

(C) Eligibility for appointment to the Committee.

Each member of the Committee shall satisfy all of the following qualifications:

(1) Be admitted to the practice of law in Ohio;

(2) Have represented criminal defendants for not less than five years;

(3) Demonstrate a knowledge of the law and practice of capital cases;

(4) Currently not serving as a prosecuting attorney, city director of law, village solicitor, or similar officer or their assistant or employee, or an employee of any court.

(D) Overall composition.

The overall composition of the Committee shall meet both of the following criteria:

(1) No more than two members shall reside in the same county;

(2) No more than one shall be a judge.

(E) Terms; vacancies.

The term of office for each member shall be five years, each term beginning on the first day of January. Members shall be eligible for reappointment. Vacancies shall be filled in the same manner as original appointments. Any member appointed to fill a vacancy occurring prior to the expiration of a term shall hold office for the remainder of the term.

(F) Election of chair.

The Committee shall elect a chair and such other officers as are necessary. The officers shall serve for two years and may be reelected to additional terms.

(G) Powers and duties of the Committee.

The Committee shall do all of the following:

(1) Prepare and notify attorneys of procedures for applying for certification to be appointed counsel for indigent defendants in capital cases;

(2) Periodically provide all common pleas and appellate court judges and the Ohio Public Defender with a list of all attorneys who are certified to be appointed counsel for indigent capital defendants;

(3) Periodically review the list of certified counsel, all court appointments given to attorneys in capital cases, and the result and status of those cases;

(4) Develop criteria and procedures for retention of certification including, but not limited to, mandatory continuing legal education on the defense and appeal of capital cases;

(5) Expand, reduce, or otherwise modify the list of certified attorneys as appropriate and necessary in accord with division (G)(4) of this section;

(6) Review and approve specialized training programs on subjects that will assist counsel in the defense and appeal of capital cases;

(7) Recommend to the Supreme Court of Ohio amendments to this rule or any other rule or statute relative to the defense or appeal of capital cases.

(H) Meetings.

The Committee shall meet at the call of the chair, at the request of a majority of the members, or at the request of the Supreme Court of Ohio. A quorum consists of three members. A majority of the Committee is necessary for the Committee to elect a chair and take any other action.

(I) Compensation.

All members of the Committee shall receive equal compensation in an amount to be established by the Supreme Court of Ohio.

IV. Procedures for court appointments of counsel.

(A) Appointing counsel.

Only counsel who have been certified by the Committee shall be appointed to represent indigent defendants charged with or convicted of an offense for which the death penalty may be or has been imposed. Each court may adopt local rules establishing qualifications in addition to and not in conflict with those established by this rule. Appointments of counsel for these cases should be distributed as widely as possible among the certified attorneys in the jurisdiction of the appointing court.

(B) Workload of appointed counsel.

A-14

(1) In appointing counsel, the court shall consider the nature and volume of the workload of the prospective counsel to ensure that counsel, if appointed, could direct sufficient attention to the defense of the case and provide competent representation to the defendant.

(2) Attorneys accepting appointments shall provide each client with competent representation in accordance with constitutional and professional standards. Appointed counsel shall not accept workloads that, by reason of their excessive size, interfere with the rendering of competent representation or lead to the breach of professional obligations.

(C) Notice to the Committee.

(1) Within two weeks of appointment, the appointing court shall notify the Committee secretary of the appointment on a form prescribed by the Committee. The notice shall include all of the following:

(a) The court and the judge assigned to the case;

(b) The case name and number;

(c) A copy of the indictment;

(d) The names, business addresses, telephone numbers, and Sup. R. 20 certification of all attorneys appointed;

(e) Any other information considered relevant by the Committee or appointing court.

(2) Within two weeks of disposition, the trial court shall notify the Committee secretary of the disposition of the case on a form prescribed by the Committee. The notice shall include all of the following:

(a) The outcome of the case;

(b) The title and section of the Revised Code of any crimes to which the defendant pleaded or was found guilty;

(c) The date of dismissal, acquittal, or that sentence was imposed;

(d) The sentence, if any;

(e) A copy of the judgment entry reflecting the above;

(f) If the death penalty was imposed, the name of counsel appointed to represent the defendant on appeal.

(g) Any other information considered relevant by the Committee or trial court.

(D) Support services.

The appointing court shall provide appointed counsel, as required by Ohio law or the federal Constitution, federal statutes, and professional standards, with the investigator, mitigation specialists, mental health professional, and other forensic experts and other support services reasonably necessary or appropriate for counsel to prepare for and present an adequate defense at every stage of the proceedings including, but not limited to, determinations relevant to competency to stand trial, a not guilty by reason of insanity plea, cross-examination of expert witnesses called by the prosecution, disposition following conviction, and preparation for and presentation of mitigating evidence in the sentencing phase of the trial.

V. Monitoring; removal.

(A) The appointing court should monitor the performance of assigned counsel to ensure that the defendant is receiving competent representation. If there is compelling evidence before any court, trial or appellate, that an attorney has ignored basic responsibilities of providing competent counsel, which results in prejudice to the defendant's case, the court, in addition to any other action it may take, shall report this evidence to the Committee, which shall accord the attorney an opportunity to be heard.

(B) Complaints concerning the performance of attorneys assigned in the trials or appeals of indigent defendants in capital cases shall be reviewed by the Committee pursuant to the provisions of Section III(G)(3), (4), and (5) of this rule.

VI. Programs for specialized training.

(A) Programs for specialized training in the defense of persons charged with a capital offense.

(1) To be approved by the Committee, a death penalty trial seminar shall include instruction devoted to the investigation, preparation, and presentation of a death penalty trial.

(2) The curriculum for an approved death penalty

A-15

trial seminar should include, but is not limited to, specialized training in the following areas:

(a) An overview of current developments in death penalty litigation;

(b) Death penalty voir dire;

(c) Trial phase presentation;

(d) Use of experts in the trial and penalty phase;

(e) Investigation, preparation, and presentation of mitigation;

(f) Preservation of the record;

(g) Counsel's relationship with the accused and the accused's family;

(h) Death penalty appellate and post-conviction litigation in state and federal courts.

(B) Programs for specialized training in the appeal of cases in which the death penalty has been imposed.

(1) To be approved by the Committee, a death penalty appeals seminar shall include instruction devoted to the appeal of a case in which the death penalty has been imposed.

(2) The curriculum for an approved death penalty appeal seminar should include, but is not limited to, specialized training in the following areas:

(a) An overview of current developments in death penalty law;

(b) Completion, correction, and supplementation of the record on appeal;

(c) Reviewing the record for unique death penalty issues;

(d) Motion practice for death penalty appeals;

(e) Preservation and presentation of constitutional issues;

(f) Preparing and presenting oral argument;

(g) Unique aspects of death penalty practice in the courts of appeals, the Supreme Court of Ohio, and the United States Supreme Court;

(h) The relationship of counsel with the appellant and the appellant's family during the course of the appeals.

(i) Procedure and practice in collateral litigation, extraordinary remedies, state post-conviction litigation, and federal habeas corpus litigation.

(C) The sponsor of a death penalty seminar shall apply for approval from the Committee at least sixty days before the date of the proposed seminar. An application for approval shall include the curriculum for the seminar and include biographical information of each member of the seminar faculty.

(D) The Committee shall obtain a list of attendees from the Supreme Court Commission on Continuing Legal Education that shall be used to verify attendance at and grant Sup. R. 20 credit for each Committee-approved seminar. Credit for purposes of this rule shall be granted to instructors using the same ratio provided in Rule X of the Supreme Court Rules for the Government of the Bar of Ohio.

(E) The Committee may accredit programs other than those approved pursuant to divisions (A) and (B) of this section. To receive accreditation, the program shall include instructions in all areas set forth in divisions (A) and (B) of this section. Application for accreditation of an in-state program may be made by the program sponsor or a program attendee and shall be made prior to the program. Application for accreditation of an out-of-state program may be submitted by the program sponsor or a program attendee and may be made prior to or after completion of the program. The request for credit from a program sponsor shall include the program curriculum and individual faculty biographical information. The request for credit from a program attendee shall include all of the following:

(1) Program curriculum;

(2) Individual faculty biographical information;

(3) A written breakdown of sessions attended and credit hours received if the seminar held concurrent sessions;

(4) Proof of attendance.

VII. Standards for retention of Sup. R. 20 certification.

(A)(1) To retain certification, an attorney who has previously been certified by the Committee shall complete at least twelve hours of Committee-

approved specialized training every two years. To maintain certification as lead counsel or co-counsel, at least six of the twelve hours shall be devoted to instruction in the trial of capital cases. To maintain certification as appellate counsel, at least six of the twelve hours shall be devoted to instruction in the appeal of capital cases.

(2) On the first day of July of each year, the Committee shall review the list of certified counsel and revoke the certification of any attorney who has not complied with the specialized training requirements of this rule. An attorney whose certification has been revoked shall not be eligible to accept future appointment as counsel for an indigent defendant charged with or convicted of an offense for which the death penalty can be or has been imposed.

(B) The Committee may accredit an out-of-state program that provides specialized instruction devoted to the investigation, preparation, and presentation of a death penalty trial or specialized instruction devoted to the appeal of a case in which the defendant received the death penalty, or both. Requests for credit for an out-of-state program may be submitted by the seminar sponsor or a seminar attendee. The request for credit from a program sponsor shall include the program curriculum and individual faculty biographical information. The request for credit from a program attendee shall include all of the following:

(1) Program curriculum;

(2) Individual faculty biographical information;

(3) A written breakdown of sessions attended and credit hours received if the seminar held concurrent sessions;

(4) Proof of attendance.

(C) An attorney who has previously been certified but whose certification has been revoked for failure to comply with the specialized training requirements of this rule must, in order to regain certification, submit a new application that demonstrates that the attorney has completed twelve hours of Committee-approved specialized training in the two year period prior to making application for recertification.

VIII. Reserved.

IX. Effective date.

(A) The effective date of this rule shall be October 1,

1987.

(B) The amendments to Section II(A)(5)(b), Section III(B)(2), and to the Subcommittee Comments following Section II of this Rule adopted by the Supreme Court of Ohio on June 28, 1989, shall be effective on July 1, 1989.

(C) The amendments to Sections I(A)(2), I(A)(3), I(B), and II, and the addition of Sections I(C) and IV, adopted by the Supreme Court of Ohio on December 11, 1990, shall be effective on January 1, 1991.

(D) The amendments to this rule adopted by the Supreme Court of Ohio on April 19, 1995, shall take effect on July 1, 1995.

A-17

Code of Jud. Conduct Canon 3

Baldwin's Ohio Revised Code Annotated
Code of Judicial Conduct

## Canon 3 A judge shall perform the duties of judicial office impartially and diligently

**A. Judicial duties in general**
The judicial duties of a judge take precedence over all of the judge's other activities. The judge's judicial duties include all the duties of office prescribed by law. In the performance of these duties, the following standards apply.

**B. Adjudicative responsibilities**
(1) A judge shall hear and decide matters assigned to the judge except those in which disqualification is required.
(2) A judge shall be faithful to the law and maintain professional competence in it. A judge shall not be swayed by partisan interests, public clamor, or fear of criticism.
(3) A judge shall require order and decorum in proceedings before the judge.
(4) A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and shall require similar conduct of lawyers, and of staff, court officials, and others subject to the judge's direction and control.

(5) A judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon race, gender, religion, national origin, disability, age, sexual orientation, or socioeconomic status, and shall not permit staff, court officials, and others subject to the judge's direction and control to do so.
(6) A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based upon race, gender, religion, national origin, disability, age, sexual orientation, or socioeconomic status, against parties, witnesses, counsel or others. Division (B)(6) of this canon does not preclude legitimate advocacy when race, gender, religion, national origin, disability, age, sexual orientation, or socioeconomic status, or other similar factors, are issues in the proceeding.
(7) A judge shall not initiate, receive, permit, or consider communications made to the judge outside the presence of the parties or their representatives concerning a pending or impending proceeding except:

(a) Where circumstances require, *ex parte* communications for scheduling, administrative purposes, or emergencies that do not address substantive matters or issues on the merits are permitted if the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the *ex parte* communication.
(b) A judge may obtain the advice of a disinterested expert on the law applicable to the proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice and affords the parties reasonable opportunity to respond.
(c) A judge may consult with court personnel whose function is to aid the judge in carrying out the judge's adjudicative responsibilities or with other judges.
(d) As authorized by law.
(8) A judge shall dispose of all judicial matters promptly, efficiently, and fairly and comply with guidelines set forth in the Rules of Superintendence for the Courts of Ohio.
(9) While a proceeding is pending or impending in any court, a judge shall not make any public comment that might reasonably be expected to affect its outcome or impair its fairness or make any nonpublic comment that might substantially interfere with a fair trial or hearing. The judge shall require similar abstention on the part of court personnel subject to the judge's direction and control. Division (B)(9) of this canon does not prohibit judges from making public statements in the course of their official duties or from explaining for public information the procedures of the court. Division (B)(9) of this canon does not apply to proceedings in which the judge is a litigant in a personal capacity.
(10) A judge shall not commend or criticize jurors for their verdict other than in a court order or opinion in a proceeding.
(11)(a) A judge shall not knowingly disclose or cause to be disclosed, without appropriate authorization, information regarding the probable or actual decision in a case or legal proceeding pending before a court, including the vote of a justice, judge, or court in a case pending before the Supreme Court, a court of appeals, or a panel of judges of a trial court, prior to the announcement of the decision by the court or journalization of an opinion, entry, or other document reflecting that decision under either of the following circumstances:

(i) The probable or actual decision is confidential because of statutory or rule provisions;

(ii) The probable or actual decision clearly has been designated to the judge as confidential when confidentiality is warranted because of the status of the proceedings or the circumstances under which the information was received and preserving confidentiality is necessary to the proper conduct of court business.

(b) Nothing in division (B)(11)(a) of this canon shall prohibit the disclosure of any of the following:

(i) A decision that has been announced on the record or in open court, but that has not been journalized in a written opinion, entry, or other document;

(ii) Information regarding the probable or actual decision in a pending case or legal proceeding to a judge or employee of the court in which the matter is pending;

(iii) Other information that is a matter of public record or that may be disclosed pursuant to law.

(c) The imposition of discipline upon a judge for violation of division (B)(11)(a) of this canon shall not preclude prosecution for a violation of any applicable provision of the Revised Code, including, but not limited to, division (B) of section 102.03 of the Revised Code.

## C. Administrative responsibilities

(1) A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business.

(2) A judge shall require staff, court officials, and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.

(3) A judge with supervisory authority for the judicial performance of other judges shall take reasonable measures to assure the prompt disposition of matters before all judges and the proper performance of their other judicial responsibilities.

(4) A judge shall not make unnecessary appointments. A judge shall exercise the power of appointment impartially and on the basis of merit. A judge shall avoid nepotism and favoritism. A judge shall not approve compensation of appointees beyond the fair value of services rendered.

## D. Disciplinary responsibilities

(1) A judge who has knowledge that another judge has committed a violation of this Code shall report the violation to a tribunal or other authority empowered to investigate or act upon the violation.

(2) A judge who has knowledge that a lawyer has committed a violation of the Code of Professional Responsibility shall report the violation to a tribunal or other authority empowered to investigate or act upon the violation.

(3) A judge having knowledge of a violation by another judge or a lawyer shall, upon request, fully reveal the violation to a tribunal or other authority empowered to investigate or act upon the violation.

## E. Disqualification

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

(a) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) The judge served as a lawyer in the matter in controversy, a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning the matter;

(c) The judge knows that he or she, individually or as a fiduciary, or the judge's spouse, parent or child wherever residing, or any other member of the judge's family residing in the judge's household, has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than a *de minimis* interest that could be substantially affected by the proceeding;

(d) The judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

(i) Is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) Is acting as a lawyer in the proceeding;

(iii) Has acted as a judge in the proceeding;

(iv) Is known by the judge to have an economic interest that could be substantially affected by the proceeding;

(v) Is to the judge's knowledge likely to be a material witness in the proceeding.

(2) A judge shall keep informed about the judge's personal fiduciary and economic interests and make a reasonable effort to keep informed about the personal economic interests of the judge's spouse and minor children residing in the judge's household.

## F. Remittal of disqualification

If, following disclosure of any basis for disqualification other than personal bias or prejudice concerning a party, the parties and lawyers, without participation by the judge, jointly request that the

A-19

judge should remit his or her disqualification, the judge may approve and participate in the proceeding. The request and approval shall be incorporated in the record of the proceeding.

### G. Disqualification--justices of the supreme court

(1) A justice shall disqualify himself or herself in a proceeding in which the justice's impartiality might reasonably be questioned, including but not limited to instances where:
(a) the justice has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;
(b) the justice served as a lawyer in the matter in controversy, or a lawyer with whom the justice previously practiced law served during such association as a lawyer concerning the matter, or the justice or such lawyer has been a material witness concerning it;
(c)(i) For merit cases, the justice knows that, individually or as a fiduciary, the justice or the justice's spouse or minor child residing in the justice's household, has an economic interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.
(ii) For miscellaneous motions, motions to certify, or similar matters, the justice knows that, individually or as a fiduciary, the justice or the justice's spouse or minor child residing in the justice's household, has a substantial economic interest in the subject matter in controversy or in a party to the proceeding that could be substantially affected by the outcome of the proceeding.

(d) The justice or the justice's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:
(i) is a party to the proceeding, or an officer, director, or trustee of a party;
(ii) is acting as a lawyer in the proceeding;

(iii) is known by the justice to have an interest that could be substantially affected by the outcome of the proceeding;
(iv) is to the justice's knowledge likely to be a material witness in the proceeding.
(2) A justice should keep informed about the justice's personal and fiduciary economic interests, and make a reasonable effort to keep informed about the personal economic interests of the justice's spouse and minor children residing in the justice's household.

### H. Remittal of disqualification--justices of the supreme court

A justice disqualified by the terms of Canon 3(G)(1)(c) or Canon 3(G)(1)(d) may, instead of withdrawing from the proceeding, disclose on the record the basis of disqualification. If, based on such disclosure, the parties and lawyers, independently of the justice's participation, all agree in writing that the justice's relationship is immaterial or that the justice's disqualification should be waived, the justice is no longer disqualified, and may participate in the proceeding. The agreement, signed by all parties and lawyers, shall be incorporated in the record of the proceeding.

Code of Jud. Conduct Canon 3

A-20

R.C. § 2313.07

Baldwin's Ohio Revised Code Annotated
Title XXIII. Courts--Common Pleas
Chapter 2313. Commissioners of Jurors
Commissioners of Jurors

**02313.07 Construction of jury wheel; data processing equipment**

The commissioners of jurors shall not deposit in the jury wheel, in the automation data processing equipment, or other automated data processing information storage device, for service for the ensuing year the names of jurors who have served their legal terms as jurors within the next preceding jury year.

The jury wheel shall be constructed with an aperture large enough only to admit conveniently the hand of the person by whom the ballots are to be drawn, and the aperture shall be provided with a cover so arranged as to be securely sealed when closed. The jury wheel shall be cylindrical in form, and shall be provided with some apparatus by which the ballots can be thoroughly mixed without exposing them, and its form and construction shall be approved by the court of common pleas and may be changed with the approval of the court.

Except as provided in division (C) of this section, the automation data processing equipment, if used, shall consist of the following:

(A) A metal storage drawer for storage of the automation data processing punch card ballots. Such drawer shall be equipped with a double-nose key lock and must be securely sealed by the commissioners of jurors when closed. The keys shall be distributed to the commissioners of jurors. No commissioner of jurors shall possess more than one such key.

(B) Automation data processing equipment which will thoroughly intermix the data processing punch card ballots, without exposing them, when they are inserted into such equipment. In addition, such equipment must then be capable of accepting a designated key number and thereby selecting those ballots, according to the order they are ejected from the equipment, represented by such key number or the multiples thereof. The designation of such key number shall be made by the person or court designating the number of jurors to be drawn in accordance with sections 2313.19 and 2313.24 of the Revised Code. The form and construction of such automation data processing equipment shall be approved by the court of common pleas and may be changed with the approval of such court.

(C) If the court approves the use of automated data processing information storage device, information retrieval system, visual display apparatus, or other similar equipment described in or authorized by division (C) of section 2313.21 of the Revised Code, the process for the selection of names and compiling of lists shall conform as far as practicable to sections 2313.08 and 2313.21 of the Revised Code.

R.C. § 2313.07

A–21

R.C. § 2313.08

Baldwin's Ohio Revised Code Annotated
Title XXIII. Courts--Common Pleas
Chapter 2313. Commissioners of Jurors
Summoning and Excuse of Jurors

### 2313.08 Annual jury list

(A) The jury year in each county shall begin on the first Monday of August of each year, provided the court of common pleas may designate otherwise. A new and complete jury list shall be made up annually by the commissioners of jurors, and shall be certified by them and filed in their office before the beginning of each jury year. The names shall be entered in a suitable book or record, to be known as the "annual jury list," shall be arranged alphabetically so far as practicable and under convenient divisions by precincts, districts, and townships, and shall be properly indexed. With each name shall be recorded the occupation, place of business, place of residence, duration of residence in this state, citizenship status, date of birth, and social security number of the person, as nearly as they can be ascertained. A duplicate of the list shall be certified by the commissioners and filed in the office of the clerk of the court of common pleas. The commissioners may, by order of the court, add to the list, or enter on a supplementary list, the names of persons who shall thereafter be discovered to be qualified to serve as jurors.

(B) In the selection of names for the annual jury list, the commissioners may select all names from the list of electors certified by the board of elections pursuant to section 2313.06 of the Revised Code or may select all names from the list of qualified driver licensees certified by the registrar of motor vehicles pursuant to section 2313.06 of the Revised Code and from the list of electors certified by the board of elections pursuant to section 2313.06 of the Revised Code.

In the selection of the names for the annual jury list, unless otherwise ordered by the court, the commissioners shall assign a consecutive number to each name, starting with one, and shall use a key number that shall be designated by the court. The commissioners shall select the name of each prospective juror, starting with the name that corresponds to a randomly selected number that may range from the number one to the key number, and proceeding accordingly in the numerical sequence of the key number so designated, until the required number of prospective jurors has been selected.

(C) Automation data processing procedures and visual display apparatus may be utilized in the selection of the names for the annual jury list, and in the actual compilation of the list.

R.C. § 2313.08

R.C. § 2313.35

Baldwin's Ohio Revised Code Annotated
Title XXIII. Courts--Common Pleas
Chapter 2313. Commissioners of Jurors
General Provisions

**2313.35 Destroying of ballots**

When the annual jury list has been prepared and filed as prescribed in section 2313.08 of the Revised Code, the ballots for jurors remaining in the jury wheel or in the automation data processing storage drawer may be destroyed by the commissioners of jurors, on the order of the judges of such county.

The ballots shall be either uniform slips of paper or automation data processing punch cards, and the name of each person on the jury list who is qualified and liable for jury duty, with his residence, shall be included on an individual ballot. The ballots so prepared shall be deposited by the commissioners in the jury wheel kept by the commissioners for that purpose, or in the automation data processing storage drawer if the automation data processing equipment described in divisions (A) and (B) of section 2313.07 of the Revised Code is utilized, and they shall place their seal or lock upon the same.

When other automated data processing equipment and procedures are utilized, the method for disposing of names of persons considered for but not entered upon the annual jury list shall be specified by the court.

R.C. § 2313.35

R.C. § 2929.03

Baldwin's Ohio Revised Code Annotated
Title XXIX. Crimes--Procedure
Chapter 2929. Penalties and Sentencing
Penalties for Murder

**2929.03 Imposing sentence for a capital offense; procedures; proof of relevant factors; alternative sentences**

(A) If the indictment or count in the indictment charging aggravated murder does not contain one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge of aggravated murder, the trial court shall impose sentence on the offender as follows:

(1) Except as provided in division (A)(2) of this section, the trial court shall impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment on the offender.

(2) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, the trial court shall impose upon the offender a sentence of life imprisonment without parole that shall be served pursuant to section 2971.03 of the Revised Code.

(B) If the indictment or count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, the verdict shall separately state whether the accused is found guilty or not guilty of the principal charge and, if guilty of the principal charge, whether the offender was eighteen years of age or older at the time of the commission of the offense, if the matter of age was raised by the offender pursuant to section 2929.023 of the Revised Code, and whether the offender is guilty or not guilty of each specification. The jury shall be instructed on its duties in this regard. The instruction to the jury shall include an instruction that a specification shall be proved beyond a reasonable doubt in order to support a guilty verdict on the specification, but the instruction shall not mention the penalty that may be the consequence of a guilty or not guilty verdict on any charge or specification.

(C)(1) If the indictment or count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge but not guilty of each of the specifications, and regardless of whether the offender raised the matter of age pursuant to section 2929.023 of the Revised Code, the trial court shall impose sentence on the offender as follows:

(a) Except as provided in division (C)(1)(b) of this section, the trial court shall impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment on the offender.

(b) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, the trial court shall impose upon the offender a sentence of life imprisonment without parole that shall be served pursuant to section 2971.03 of the Revised Code.

(2)(a) If the indictment or count in the indictment contains one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code and if the offender is found guilty of both the charge and one or more of the specifications, the penalty to be imposed on the offender shall be one of the following:

(i) Except as provided in division (C)(2)(a)(ii) of this section, the penalty to be imposed on the offender shall be death, life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment.

(ii) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, the penalty to be imposed on the offender shall be death or life imprisonment without parole that shall be served pursuant to section 2971.03 of the Revised Code.

(b) A penalty imposed pursuant to division (C)(2)(a)(i) or (ii) of this section shall be determined pursuant to divisions (D) and (E) of this section and shall be determined by one of the following:

(i) By the panel of three judges that tried the offender upon the offender's waiver of the right to trial by jury;

(ii) By the trial jury and the trial judge, if the offender was tried by jury.

(D)(1) Death may not be imposed as a penalty for aggravated murder if the offender raised the matter of age at trial pursuant to section 2929.023 of the Revised Code and was not found at trial to have been eighteen years of age or older at the time of the commission of the offense. When death may be imposed as a penalty for aggravated murder, the court shall proceed under this division. When death may be imposed as a penalty, the court, upon the request of the defendant, shall require a pre-sentence investigation to be made and, upon the request of the defendant, shall require a mental examination to be made, and shall require reports of the investigation and of any mental examination submitted to the court, pursuant to section 2947.06 of the Revised Code. No statement made or information provided by a defendant in a mental examination or proceeding conducted pursuant to this division shall be disclosed to any person, except as provided in this division, or be used in evidence against the defendant on the issue of guilt in any retrial. A pre-sentence investigation or mental examination shall not be made except upon request of the defendant. Copies of any reports prepared under this division shall be furnished to the court, to the trial jury if the offender was tried by a jury, to the prosecutor, and to the offender or the offender's counsel for use under this division. The court, and the trial jury if the offender was tried by a jury, shall consider any report prepared pursuant to this division and furnished to it and any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing or to any factors in mitigation of the imposition of the sentence of death, shall hear testimony and other evidence that is relevant to the nature and circumstances of the aggravating circumstances the offender was found guilty of committing, the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, and any other factors in mitigation of the imposition of the sentence of death, and shall hear the statement, if any, of the offender, and the arguments, if any, of counsel for the defense and prosecution, that are relevant to the penalty that should be imposed on the offender. The defendant shall be given great latitude in the presentation of evidence of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code and of any other factors in mitigation of the imposition of the sentence of death. If the offender chooses to make a statement, the

offender is subject to cross-examination only if the offender consents to make the statement under oath or affirmation.

The defendant shall have the burden of going forward with the evidence of any factors in mitigation of the imposition of the sentence of death. The prosecution shall have the burden of proving, by proof beyond a reasonable doubt, that the aggravating circumstances the defendant was found guilty of committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death.

(2) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the trial jury, if the offender was tried by a jury, shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case. If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to one of the following:

(a) Except as provided in division (D)(2)(b) of this section, to life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment;

(b) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, to life imprisonment without parole.

If the trial jury recommends that the offender be sentenced to life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment, the court shall impose the sentence recommended by the jury upon the offender. If the sentence is a sentence of life imprisonment without parole imposed under division (D)(2)(b) of this section, the sentence shall be served pursuant to section 2971.03 of the Revised Code. If the trial jury recommends that the sentence of death be imposed upon the offender, the court shall proceed to impose sentence pursuant to division (D)(3) of this section.

A-225

(3) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted to the court pursuant to division (D)(1) of this section, if, after receiving pursuant to division (D)(2) of this section the trial jury's recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt, or if the panel of three judges unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender. Absent such a finding by the court or panel, the court or the panel shall impose one of the following sentences on the offender:

(a) Except as provided in division (D)(3)(b) of this section, one of the following:

(i) Life imprisonment without parole;
(ii) Life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;
(iii) Life imprisonment with parole eligibility after serving thirty full years of imprisonment.
(b) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, life imprisonment without parole that shall be served pursuant to section 2971.03 of the Revised Code.
(E) If the offender raised the matter of age at trial pursuant to section 2929.023 of the Revised Code, was convicted of aggravated murder and one or more specifications of an aggravating circumstance listed in division (A) of section 2929.04 of the Revised Code, and was not found at trial to have been eighteen years of age or older at the time of the commission of the offense, the court or the panel of three judges shall not impose a sentence of death on the offender. Instead, the court or panel shall impose one of the following sentences on the offender:
(1) Except as provided in division (E)(2) of this section, one of the following:
(a) Life imprisonment without parole;
(b) Life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;
(c) Life imprisonment with parole eligibility after serving thirty full years of imprisonment.
(2) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or

information that charged the aggravated murder, life imprisonment without parole that shall be served pursuant to section 2971.03 of the Revised Code.
(F) The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. The court or panel, when it imposes life imprisonment under division (D) of this section, shall state in a separate opinion its specific findings of which of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code it found to exist, what other mitigating factors it found to exist, what aggravating circumstances the offender was found guilty of committing, and why it could not find that these aggravating circumstances were sufficient to outweigh the mitigating factors. For cases in which a sentence of death is imposed for an offense committed before January 1, 1995, the court or panel shall file the opinion required to be prepared by this division with the clerk of the appropriate court of appeals and with the clerk of the supreme court within fifteen days after the court or panel imposes sentence. For cases in which a sentence of death is imposed for an offense committed on or after January 1, 1995, the court or panel shall file the opinion required to be prepared by this division with the clerk of the supreme court within fifteen days after the court or panel imposes sentence. The judgment in a case in which a sentencing hearing is held pursuant to this section is not final until the opinion is filed.
(G)(1) Whenever the court or a panel of three judges imposes a sentence of death for an offense committed before January 1, 1995, the clerk of the court in which the judgment is rendered shall deliver the entire record in the case to the appellate court.
(2) Whenever the court or a panel of three judges imposes a sentence of death for an offense committed on or after January 1, 1995, the clerk of the court in which the judgment is rendered shall deliver the entire record in the case to the supreme court.

R.C. § 2929.03

A-26

R.C. § 2939.02

Baldwin's Ohio Revised Code Annotated
Title XXIX. Crimes—Procedure
Chapter 2939. Grand Juries
Grand Jurors

**2939.02 Selection of grand jury**

Grand juries shall consist of fifteen persons who satisfy the qualifications of a juror specified in section 2313.42 of the Revised Code. Persons to serve as grand jurors in the court of common pleas of each county shall be selected from the persons whose names are contained in the annual jury list and from the ballots deposited in the jury wheel, or in the automation data processing storage drawer, or from the names contained in an automated data processing information storage device as prescribed by sections 2313.07, 2313.08, and 2313.35 of the Revised Code.

At the time of the selection of the persons who are to constitute the grand jury, the commissioners of jurors shall draw from the jury wheel, or draw by utilizing the automation data processing equipment and procedures described in section 2313.07 of the Revised Code, ballots containing the names of not less than twenty-five persons. The first fifteen persons whose names are drawn shall constitute the grand jury, if they can be located and served by the sheriff, and if they are not excused by the court or a judge of the court. If any of the first fifteen persons whose names are so drawn are not located or are unable to serve and are for that reason excused by the court or by a judge of the court, whose duty it is to supervise the impaneling of the grand jury, the judge shall then designate the person whose name next appears on the list of persons drawn, to serve in the place of the person not found or excused and shall so continue to substitute the names of the persons drawn in the order in which they were drawn, to fill all vacancies resulting from persons not being found or having been excused by the court or the judge of the court, until the necessary fifteen persons are selected to make up the grand jury. If all of the names appearing on the list of persons drawn are exhausted before the grand jury is complete, the judge shall order the commissioners of jurors to draw such additional names as the judge determines, and shall proceed to fill the vacancies from those names in the order in which they are drawn.

The judge of the court of common pleas may select any person who satisfies the qualifications of a juror and whose name is not included in the annual jury list or on a ballot deposited in the jury wheel or automation data processing storage drawer, or whose name is not contained in an automated data processing information storage device, to preside as foreman of the grand jury, in which event the grand jury shall consist of the foreman so selected and fourteen additional grand jurors selected from the jury wheel or by use of the automation data processing equipment and procedures in the manner provided in this section.

R.C. § 2939.02

A-27

R.C. § 2953.21

Baldwin's Ohio Revised Code Annotated
Title XXIX. Crimes--Procedure
Chapter 2953. Appeals; Other Postconviction Remedies
Postconviction Remedies

**2953.21 Petition for postconviction relief**

(A)(1)(a) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, and any person who has been convicted of a criminal offense that is a felony, who is an inmate, and for whom DNA testing that was performed under sections 2953.71 to 2953.81 of the Revised Code or under section 2953.82 of the Revised Code provided results that establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death, may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.

(b) As used in division (A)(1)(a) of this section, "actual innocence" means that, had the results of the DNA testing conducted under sections 2953.71 to 2953.81 of the Revised Code or under section 2953.82 of the Revised Code been presented at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted, or, if the person was sentenced to death, no reasonable factfinder would have found the petitioner guilty of the aggravating circumstance or circumstances the petitioner was found guilty of committing and that is or are the basis of that sentence of death.

(2) Except as otherwise provided in section 2953.23 of the Revised Code, a petition under division (A)(1) of this section shall be filed no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication or, if the direct appeal involves a sentence of death, the date on which the trial transcript is filed in the supreme court. If no appeal is taken, except as otherwise provided in section 2953.23 of the Revised Code, the petition

shall be filed no later than one hundred eighty days after the expiration of the time for filing the appeal.

(3) In a petition filed under division (A) of this section, a person who has been sentenced to death may ask the court to render void or voidable the judgment with respect to the conviction of aggravated murder or the specification of an aggravating circumstance or the sentence of death.

(4) A petitioner shall state in the original or amended petition filed under division (A) of this section all grounds for relief claimed by the petitioner. Except as provided in section 2953.23 of the Revised Code, any ground for relief that is not so stated in the petition is waived.

(5) If the petitioner in a petition filed under division (A) of this section was convicted of or pleaded guilty to a felony, the petition may include a claim that the petitioner was denied the equal protection of the laws in violation of the Ohio Constitution or the United States Constitution because the sentence imposed upon the petitioner for the felony was part of a consistent pattern of disparity in sentencing by the judge who imposed the sentence, with regard to the petitioner's race, gender, ethnic background, or religion. If the supreme court adopts a rule requiring a court of common pleas to maintain information with regard to an offender's race, gender, ethnic background, or religion, the supporting evidence for the petition shall include, but shall not be limited to, a copy of that type of information relative to the petitioner's sentence and copies of that type of information relative to sentences that the same judge imposed upon other persons.

(B) The clerk of the court in which the petition is filed shall docket the petition and bring it promptly to the attention of the court. The clerk of the court in which the petition is filed immediately shall forward a copy of the petition to the prosecuting attorney of that county.

(C) The court shall consider a petition that is timely filed under division (A)(2) of this section even if a direct appeal of the judgment is pending. Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making

such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. The court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.

(D) Within ten days after the docketing of the petition, or within any further time that the court may fix for good cause shown, the prosecuting attorney shall respond by answer or motion. Within twenty days from the date the issues are raised, either party may move for summary judgment. The right to summary judgment shall appear on the face of the record.

(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending. If the court notifies the parties that it has found grounds for granting relief, either party may request an appellate court in which a direct appeal of the judgment is pending to remand the pending case to the court.

(F) At any time before the answer or motion is filed, the petitioner may amend the petition with or without leave or prejudice to the proceedings. The petitioner may amend the petition with leave of court at any time thereafter.

(G) If the court does not find grounds for granting relief, it shall make and file findings of fact and conclusions of law and shall enter judgment denying relief on the petition. If no direct appeal of the case is pending and the court finds grounds for relief or if a pending direct appeal of the case has been remanded to the court pursuant to a request made pursuant to division (E) of this section and the court finds grounds for granting relief, it shall make and file findings of fact and conclusions of law and shall enter a judgment that vacates and sets aside the judgment in question, and, in the case of a petitioner who is a prisoner in custody, shall discharge or resentence the petitioner or grant a new trial as the court determines appropriate. The court also may make supplementary orders to the relief granted, concerning such matters as rearraignment, retrial, custody, and bail. If the trial court's order granting the petition is reversed on appeal and if the direct appeal of the case has been remanded from an appellate court pursuant to a request under division (E) of this section, the appellate court reversing the order

granting the petition shall notify the appellate court in which the direct appeal of the case was pending at the time of the remand of the reversal and remand of the trial court's order. Upon the reversal and remand of the trial court's order granting the petition, regardless of whether notice is sent or received, the direct appeal of the case that was remanded is reinstated.

(H) Upon the filing of a petition pursuant to division (A) of this section by a person sentenced to death, only the supreme court may stay execution of the sentence of death.

(I)(1) If a person sentenced to death intends to file a petition under this section, the court shall appoint counsel to represent the person upon a finding that the person is indigent and that the person either accepts the appointment of counsel or is unable to make a competent decision whether to accept or reject the appointment of counsel. The court may decline to appoint counsel for the person only upon a finding, after a hearing if necessary, that the person rejects the appointment of counsel and understands the legal consequences of that decision or upon a finding that the person is not indigent.

(2) The court shall not appoint as counsel under division (I)(1) of this section an attorney who represented the petitioner at trial in the case to which the petition relates unless the person and the attorney expressly request the appointment. The court shall appoint as counsel under division (I)(1) of this section only an attorney who is certified under Rule 20 of the Rules of Superintendence for the Courts of Ohio to represent indigent defendants charged with or convicted of an offense for which the death penalty can be or has been imposed. The ineffectiveness or incompetence of counsel during proceedings under this section does not constitute grounds for relief in a proceeding under this section, in an appeal of any action under this section, or in an application to reopen a direct appeal.

(3) Division (I) of this section does not preclude attorneys who represent the state of Ohio from invoking the provisions of 28 U.S.C. 154 with respect to capital cases that were pending in federal habeas corpus proceedings prior to the effective date of this amendment insofar as the petitioners in those cases were represented in proceedings under this section by one or more counsel appointed by the court under this section or section 120.06, 120.16, 120.26, or 120.33 of the Revised Code and those appointed counsel meet the requirements of division (I)(2) of this section.

(J) Subject to the appeal of a sentence for a felony that is authorized by section 2953.08 of the Revised Code, the remedy set forth in this section is the exclusive remedy by which a person may bring a collateral challenge to the validity of a conviction or

A–29

sentence in a criminal case or to the validity of an
adjudication of a child as a delinquent child for the
commission of an act that would be a criminal
offense if committed by an adult or the validity of a
related order of disposition.

R.C. § 2953.21

A−30

Westlaw.

Not Reported in N.E.2d
1996 WL 207676 (Ohio App. 11 Dist.)
(Cite as: 1996 WL 207676 (Ohio App. 11 Dist.))

Page 1

**H**
Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR
REPORTING OF OPINIONS AND WEIGHT OF
LEGAL AUTHORITY. ·

Court of Appeals of Ohio, Eleventh District,
Trumbull County.

STATE of Ohio, Plaintiff-Appellee,
v.
Charles L. LORRAINE, Defendant-Appellant.

No. 95-T-5196

Feb. 23, 1996.

Marc S. Triplett, Bellefontaine, Luigia Tenuta,
Dublin, for defendant-appellant.

Dennis Watkins, Trumbull County Prosecutor,
Patrick F. McCarthy, Assistant County Prosecutor,
Warren, for plaintiff-appellee.

MAHONEY.

**\*1** Appellant, Charles L. Lorraine, appeals the trial
court's decision denying his post-conviction relief
petition brought pursuant to R.C. 2953.21. On
December 9, 1986, appellant was sentenced to
death for the murders of Raymond and Doris
Montgomery. Appellant was also convicted of two
counts of aggravated burglary. On appeal, this
court affirmed the trial court's decision in *State v.
Lorraine* (Aug. 13, 1990), Trumbull App. No. 3838,
unreported. The Supreme Court of Ohio affirmed
these decisions in *State v. Lorraine* (1993), 66 Ohio
St.3d 414.

On September 30, 1994, appellant filed a

post-conviction relief petition in the trial court
claiming twenty-nine violations of his constitutional
rights. Appellee, the State of Ohio, responded to the
application by filing a motion for judgment
pursuant to R.C. 2953.21(C). The court, without
conducting a hearing, denied appellant's petition for
post-conviction relief and filed findings of fact and
conclusions of law on January 5, 1995.

Appellant timely filed a notice of appeal with the
following assignments of error:
"1. The trial court erred in denying appellant an
evidentiary hearing on the claims as raised by his
Section 2953.21 petition for post-conviction
relief."
"2. When denying this petition under Code
Section 2953.21, the trial court erred by failing to
consider the record and by adopting the findings
of fact and conclusions of law submitted by the
State of Ohio. These adopted findings, both
unreasonable and inadequate, further violate
appellant's rights guaranteed by the fifth and
fourteenth amendments to the United States
Constitution."
"3. The trial court erred in its application of the
doctrine of *res judicata* to the claims for relief
raised by appellant."
"4. The trial court erred when it granted the state's
motion for summary judgment by failing to
adhere to Civil Rule 56 when considering the
constitutional violations stated in each claim of
this petition for post-conviction relief under
Section 2953.21 of the code."
"5. The trial court erred when it denied appellant
the opportunity for discovery proceedings that are
necessary to support his claims of constitutional
violations as set forth in this petition for
post-conviction relief under Section 2953.21 of
the code."
"6. The trial court erred in denying appellant's
claims of ineffective assistance of counsel."
"7. The trial court erred by its 'standardized'
dismissal of appellant's Section 2953.21 petition
for relief from a capital conviction, denying the
appellant due process and equal protection under
law."

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

A–31

Not Reported in N.E.2d
1996 WL 207676 (Ohio App. 11 Dist.)
(Cite as: 1996 WL 207676 (Ohio App. 11 Dist.))

In the first assignment of error, appellant contends that the trial court erred in denying an evidentiary hearing on the claims he raised in his post-conviction relief petition.

R.C. 2953.21 provides, in relevant part:

"(C) Before granting a hearing, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * *

*2 "(D) Within ten days after the docketing of the petition, * * * the prosecuting attorney shall respond by answer or motion.* * *

"(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues * * *."

Thus, it is clear that the court is permitted to dispose of a post-conviction relief petition without holding a hearing. As this court stated in *State v. Hill* (June 19, 1995), Trumbull App. No. 94-T-5116, unreported, at 4:

"[I]f the court can resolve the averments contained within the petitioner's request based upon the material contained within the petition, and the files and records, it may properly dismiss the matter without conducting a hearing. *State v. Milanovich* (1975), 42 Ohio St.2d 46."

Additionally, the Supreme Court of Ohio has held that the doctrine of *res judicata* is applicable in post-conviction relief proceedings. In *State v. Perry* (1967), 10 Ohio St.2d 175, the court held:

"Under the doctrine of *res judicata,* a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial,* which resulted in that judgment of conviction, *or on an appeal* from that judgment. *Id.* at paragraph nine of the syllabus. (Emphasis sic.)

In the case *sub judice,* the first claim made by appellant relates to ineffective assistance of trial counsel. Appellant asserts that his trial counsel were also his appellate counsel and that they made numerous errors in his representation depriving him of a fair trial. However, a review of the court record reveals that appellant had three attorneys from the public defender's office represent him at trial, and four attorneys from the public defender's office represent him on appeal. Of his three trial attorneys, only one was a member of his appellate counsel team. Thus, appellant's three different appellate attorneys could have raised the ineffectiveness of his trial counsel on direct appeal.

The Supreme Court of Ohio has specifically applied the doctrine of *res judicata* to post-conviction proceedings alleging ineffective assistance of counsel. In *State v. Cole* (1982), 2 Ohio St.3d 112, the court held:

"Where defendant, represented by new counsel upon direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence *dehors* the record, *res judicata* is a proper basis for dismissing defendant's petition for postconviction relief. (*State v. Hester,* 45 Ohio St.2d 71 [74 O.O.2d 156], modified.)" *Id.* at the syllabus.

Thus, because appellant was represented by three different attorneys on appeal than at the trial level, any claim of ineffective assistance of counsel had to be brought on direct appeal or it was forever waived. In the present case, appellant failed to bring a claim of ineffective assistance of counsel on direct appeal and is, therefore, barred from bringing one in a post-conviction relief petition by the doctrine of *res judicata.*

*3 Appellant argues that because all of his prior counsel worked for the public defender's office, they were, for all practical purposes, the same attorney and, thus, unable to raise an ineffective assistance of counsel claim on direct appeal. This argument, however, has been specifically rejected by the Supreme Court of Ohio in *State v. Lentz* (1994), 70 Ohio St.3d 527, wherein the court stated:

"We hold that when a criminal defendant is represented by two different attorneys from the same public defender's office at trial and on direct

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

A-32

Not Reported in N.E.2d
1996 WL 207676 (Ohio App. 11 Dist.)
(Cite as: 1996 WL 207676 (Ohio App. 11 Dist.))

appeal, *res judicata* bars a claim of ineffective assistance of trial counsel raised for the first time in a petition for postconviction relief when such claim could have been made on direct appeal without resort to evidence beyond the record, unless the defendant proves that an actual conflict of interest enjoined appellate counsel from raising a claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 529.

In the present case, appellant failed to even allege an actual conflict of interest. Accordingly, appellant's claim of ineffective assistance of counsel must fail and the trial court did not err in denying appellant an evidentiary hearing as to this claim.

Next, appellant argues that he presented claims of "system-wide defects" which affected his conviction and sentence and that there were "numerous pretrial errors" in the proceedings. Appellant contends that these claims depend upon factual allegations that could not be determined from the record. Appellant fails, however, to elaborate or offer any argument as to how it was error for the trial court to dismiss these claims without a hearing.

Accordingly, pursuant to App.R. 16(A)(7) and App.R. 12(A)(2), we decline to address these claims as appellant has not supported these portions of his first assignment of error with necessary arguments. As the Supreme Court of Wisconsin so aptly stated in *State v. Waste Management of Wisconsin, Inc.* (Wisc.1978), 261 N.W.2d 147, 151:
"An appellate court is not a performing bear, required to dance to each and every tune played on an appeal."

Appellant's first assignment of error is without merit.

In the second assignment of error, appellant contends that the trial court erred by failing to consider the record and by adopting the findings of fact and conclusions of law submitted by the State of Ohio.

The Ohio Revised Code imposes certain mandates upon the trial court in considering a post-conviction relief petition. R.C. 2953.21(C) provides, in relevant part:
" * * * the court shall consider, in addition to the

petition and supporting affidavits, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript."

The trial court, in the case *sub judice,* explicitly stated that in reaching its decision, it considered:
*4 "Defendant-Petitioner Charles L. Lorraine's 'Petition to Vacate or Set Aside Judgment and/or Sentence Pursuant to Ohio Revised Code Annotated Section 2953.21' filed on September 30, 1994; Defendant-Petitioner's 'Amendment to Petition to Vacate of [*sic* ] Set Aside Judgment and/or Sentence Pursuant to Ohio Revised Code Annotated Section 2953.21'; *the entire record in Trumbull County Common Pleas Court Case No. 86-CR-182;* the direct appeals in Eleventh District Court of Appeals Case No. 3838 and Supreme Court of Ohio Case No. 90-1927[reported at 66 Ohio St.3d 414 (1993); the state's 'Motion for Judgment Pursuant to R.C. 2953.21(C),' and 'Petitioner's Memorandum in Opposition to Respondent's Motion for Judgment under R.C. 2953.21(C).' " (Emphasis added.)

Thus, it is clear that the trial court complied with its duty under R.C. 2953.21(C) to consider all the files and records pertaining to the proceedings against the petitioner. Appellant has failed to submit any evidence to support his claim to the contrary.

Furthermore, it should be noted that on April 14, 1995, appellant filed a motion in this court to supplement the record with evidence that would allegedly show that the trial court did not have access to the entire record from the original proceedings. On June 14, 1995, this court denied appellant's motion based upon the general rule of law that a reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and that nothing in appellant's motion indicated that the requested supplemental matter was before the trial court.

Based upon the doctrine of *res judicata,* appellant is barred from raising that issue again at this time.

Next, appellant argues that it was error for the trial

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
1996 WL 207676 (Ohio App. 11 Dist.)
(Cite as: 1996 WL 207676 (Ohio App. 11 Dist.))

Page 4

court to essentially adopt the state's proposed findings of fact and conclusions of law as its own. By doing so, appellant submits that the court failed in its statutory duty to consider, determine and review the claims made by his petition. Appellant concludes that the trial court's "adopted" findings are inadequate and unreasonable.

In *State v. Sowell* (1991), 73 Ohio App.3d 672, however, the First District Court of Appeals determined that the trial court's adoption of the state's findings of fact and conclusions of law does not, by itself, deprive the petitioner of a meaningful review of his petition for post-conviction relief. *Id.* at 676. See, also, *State v. Powell* (1993), 90 Ohio App.3d 260, 263, *State v. Murphy* (May 12, 1995), Marion App. No. 9-94-52, unreported. We agree. Without showing that the trial court failed to comply with its statutory duty pursuant to R.C. 2953.21(C), appellant has failed to show that the trial court acted inappropriately by merely agreeing with the state.

Appellant's second assignment of error is without merit.

In the third assignment of error, appellant asserts that the trial court erred in its application of *res judicata* to the claims for relief he raised in his post-conviction relief petition.

**\*5** The issue of the application of *res judicata* to a petition for post-conviction relief was addressed in the analysis of appellant's first assignment of error, however, and will not be repeated here. The trial court did not err in its application of *res judicata*.

Appellant's third assignment of error is without merit.

In the fourth assignment of error, appellant maintains that the trial court erred when it granted the state's motion for summary judgment by failing to adhere to Civ.R. 56. Appellant argues that since the state's motion for judgment pursuant to R.C. 2953.21(C) "fundamentally asked for 'judgment as a matter of law,' " the motion should have been considered as a motion for summary judgment pursuant to Civ.R. 56. Thus, appellant asserts that the state needed to demonstrate in its motion that there were no genuine issues of material fact.

Appellant states, in his brief:
"The state does not avoid the prescription [*sic* ] of Civil Rule 56 by simply calling its pleading 'a motion for judgment.' Either the state promotes dismissal for facial insufficiency under Civ. Rule 12(B) or it claims there are no genuine issues of fact debatable by a reasonable mind under Civil Rule 56. The state cannot, now, assert that the motion claims both premises when the motion actually asserts neither."

While appellant is correct that the state's motion was neither a Civ.R. 12(B) nor a Civ.R. 56 motion, it is clear that the motion was properly made pursuant to R.C. 2953.21. As this court previously held in *Hill, supra,*
"R.C. 2953.21(D) permits the appellee to respond by either 'answer or motion.' It does not specify that the motion be one for summary judgment. Indeed, the language employed clearly permits a pre-answer motion such as a motion to dismiss. Therefore, the court was free to consider appellee's motion." *Id.* at 13. (Emphasis *sic*.)

A review of the trial court's judgment dismissing appellant's post-conviction relief petition reveals that the court properly reviewed the material before it and granted the state's motion for judgment only after it complied with the mandates of R.C. 2953.21(C).

Appellant's fourth assignment of error is without merit.

In the fifth assignment of error, appellant contends that the trial court erred when it denied him the opportunity for discovery. We disagree.

In *State v. Smith* (1986), 30 Ohio App.3d 138, the Ninth District Court of Appeals held that R.C. 2953.21 does not permit the use of interrogatories in determining whether a hearing is warranted in a post-conviction proceeding. *Id.* at 140. Instead, the burden is on the petitioner to submit evidentiary documents containing sufficient operative facts to demonstrate his claim and to merit a hearing. It is well established that the power to conduct and compel discovery is not included within the trial court's statutorily-defined authority. *State v. Lott* (Nov. 3, 1994), Cuyahoga App. Nos. 66388, 66389, 66390, unreported; *State v. Zuern* (Dec. 4, 1991),

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

A-34

Not Reported in N.E.2d                                          Page 5
1996 WL 207676 (Ohio App. 11 Dist.)
**(Cite as: 1996 WL 207676 (Ohio App. 11 Dist.))**

Hamilton App. Nos. C-900481, C-910229, unreported; *State v. Robison* (June 19, 1989), Pickaway App. No. 88 CA 15, unreported.

*6 Thus, since the underlying petition was dismissed without a hearing, appellant was not entitled to conduct discovery.

Appellant's fifth assignment of error is without merit.

In the sixth assignment of error, appellant submits that the trial court erred when it denied his claims of ineffective assistance of counsel.

For the reasons set forth in our analysis of appellant's first assignment of error, which will not be repeated here, the trial court did not err in denying appellant's claims of ineffective assistance of counsel.

Appellant's sixth assignment of error is without merit.

In the seventh assignment of error, appellant contends that the trial court erred by its "standardized" dismissal of his petition of post-conviction relief.

Specifically, appellant claims that the trial court used what was essentially the same "standardized" judgment entry dismissing his petition as the one the court used in dismissing the post-conviction relief petition in *State v. Hill,* Trumbull County Case No. 85 CR 317, affirmed by this court in *Hill, supra.* Appellant also argues that the judgment entry was insufficient as it offered no substantive explanation for the court's dismissal.

Regarding appellant's assertion that the trial court's judgment entry was the same as the one used in *Hill,* we are unable to compare the trial court's judgment entry in *Hill* with the one used by the trial court in this case as the former is not part of the record before us. Thus, since appellant has failed to adequately support this claim, it is without merit. Additionally, it should be noted that there is no prohibition against using similar judgment entries in multiple cases if the same law is applicable to various fact scenarios. If separate petitions for post-conviction relief are without merit because of

the application of the doctrine of *res judicata,* for example, the judgment entries dismissing the petitions are bound to be similar.

Regarding appellant's claim that the trial court's judgment entry lacked substantive analysis, our review of the fifty-one page entry indicates otherwise. It is clear that the trial court individually addressed each of the twenty-nine claims for relief submitted by appellant. The fact that none of the claims warranted a hearing as they were either barred by the doctrine of *res judicata* or appellant simply failed to set forth substantive grounds for relief does not equate to error on the part of the trial court to fulfill its statutory obligation.

Appellant's seventh assignment of error is without merit.

The judgment of the trial court is affirmed.

CHRISTLEY, P.J. and DONOFRIO, J., concur.

JUDGMENT ENTRY

For the reasons stated in the opinion of this Court, appellant's assignments of error are without merit; and it is the judgment and order of this Court that the judgment of the trial court is affirmed.

1996 WL 207676 (Ohio App. 11 Dist.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

, A-35

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

FILED
COURT OF APPEALS

SEP 2 1 2005

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

STATE OF OHIO,                    )
                                  )
    Appellee-Appellee,           )
                                  )
-vs-                              )     Case No. 2004-TR-89
                                  )
NATHANIEL JACKSON,                )
                                  )
    Defendant-Appellant.         )

---

## NATHANIEL JACKSON'S NOTICE OF ADDITIONAL AUTHORITY

---

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney

Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor Administration Building
Warren, Ohio 44481

COUNSEL FOR APPELLEE

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio 43215
(614) 466-5394
Facsimile: (614) 644-0708

COUNSEL FOR APPELLANT

ORIGINAL

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    )
                                  )
    Appellee-Appellee,      )
                                  )
-vs-                              )        Case No. 2004-TR-89
                                  )
NATHANIEL JACKSON,                )
                                  )
    Defendant-Appellant.    )

---

## NATHANIEL JACKSON'S NOTICE OF ADDITIONAL AUTHORITY

    This Court held oral argument on August 17, 2005. Nathanial Jackson submits, pursuant to App. R. 21(H), the following additional authority to assist the Court in resolving the issues it raised at oral argument.

**1.    THERE ARE TWO DISTINCT CONSTITUTIONAL VIOLATIONS.**

    Nathanial Jackson pled the exclusion of African-Americans from his venire as both a violation of the Fair Cross Section (Sixth Amendment) and Equal Protection (Fourteenth Amendment) Clauses of the United States Constitution. The Fair Cross Section provision requires that a defendant show that: 1) the group excluded is distinctive, 2) the representation of that group in the venire is not fair and reasonable in relation to that group's composition in the relevant population, and 3) the underrepresentation is due to a systemic exclusion of the group in the jury process. Duren v. Missouri, 439 U.S. 357, 364 (1979). The Equal Protection provision

requires a demonstration that there was a substantial underrepresentation of the group in question in the venire.  Castaneda v. Partida, 430 U.S. 482, 494 (1977).

## II.  THE COMPOSITIONS OF JURY VENIRES IN OTHER CASES FROM THE SAME JURISDICTION ARE RELEVANT.

Virtually in every case in which the United States Supreme Court has addressed a jury challenge, the defendant has instituted his challenge by citing to venire compositions in other cases, as well as his own case.  *See i.e.* Norris v. Alabama, 294 U.S. 587, 590-591 (1935); Hill v. Texas, 316 U.S. 400, 401-402 (1942); Eubanks v. Louisiana, 356 U.S. 584, 585-586 (1958); Campbell v. Louisiana, 523 U.S. 392, 395 (1998); Alexander v. Louisiana, 405 U.S. 625, 626 (1972).  The Supreme Court has warned against examining only a single venire when addressing jury discrimination.  Patton v. Mississippi, 332 U.S. 463, 468 (1947) ("The above statement of the Mississippi Supreme Court illustrated the unwisdom of attempting to disprove racial discrimination in the selection of jurors by percentage calculations applied to the composition of a single venire").

*stricken per ge 9-23-08*

## III.  A DEFENDANT CAN ESTABLISH A PRIMA FACIE CASE THROUGH THE USE OF STATISTICS.

The courts apply the rule of exclusion when addressing jury discrimination cases.  Hernandez v. Texas, 347 U.S. 475, 480 (1954).  A defendant establishes a prima facie case of discrimination pursuant to that rule by demonstrating that there has been a significant under representation of the group in question over a period of time.  Id.  The rule applies to both Equal Protection (Castaneda v. Partida, 430 U.S. at 494-95) and Fair Cross Section claims.  (Duren v. Mississippi, 439 U.S. at 366). See also Patton v. Mississippi, 332 U.S. at 466 (1947); Arnold v. North Carolina, 376 U.S. 773, 774 (1964); Turner v. Fouche, 396 U.S. 346, 360 (1970).

*stricken per ge 9-23-05*

The state cannot prevail on the assertion that the defendant's statistical argument left a "factual vacuum" because he did not identify a particular state official who committed particular act(s) that resulted in the under representation in question. Assuming that there is a "vacuum," the state "must fill [it] by moving in with sufficient evidence to dispel the prima facie case of discrimination." <u>Avery v. Georgian</u>, 345 U.S. 559, 562 (1953).

## IV. THE BURDEN SHIFTS TO THE STATE ONCE A DEFENDANT HAS ESTABLISHED A PRIMA FACIE CASE.

The government has the burden of proof to overcome a prima facie case. <u>Avery v. Georgia</u>, 345 U.S. at 562-3; <u>Reece v. Georgia</u>, 350 U.S. 84, 88 (1955); <u>Turner v. Fouche</u>, 396 U.S. at 360. General denials of discrimination will not rebut a defendant's claim. <u>Norris v. Alabama</u>, 294 U.S. at 598; <u>Smith v. Texas</u>, 311 U.S. 128, 132 (1940) ("If there has been discrimination, whether accomplished ingeniously or ingenuously, the conviction cannot stand); <u>Turner v. Foche</u>, 396 U.S. at 361. Neither will the application of a presumption that public officials do not discriminate. <u>Neal v. Delaware</u>, 103 U.S. 370, 397 (1881) (lower court wrongly applied "violent presumption" that there were no African-Americans who were qualified to sit on a jury); <u>Jones v. Georgia</u>, 389 U.S. 24, 25 (1967) (Court rejects theory that "public officers are presumed to have discharged their sworn official duties" in a non discriminatory manner).

*stricken per ge 9-23-05*

*stricken per ge 9-23-05*

## V. THERE IS ANOTHER CAPITAL PENDING BEFORE THIS COURT WITH THE SAME ISSUE.

<u>State v. Roberts</u>, No. 05-TR-34, Appellant's Brief and Assignments of Error pp. 13-15.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835

Assistant State Public Defender
Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio  43215
(614) 466-5394
Facsimile:  (614) 644-0708

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **NATHANIEL JACKSON'S NOTICE**

**OF ADDITIONAL AUTHORITIES** was forwarded by first-class, postage prepaid U.S. Mail to

Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor

Administration Building, Warren, Ohio 44481 on this 20th day of September, 2005.

RANDALL L. PORTER
Assistant State Public Defender

COUNSEL FOR NATHANIEL JACKSON

224203

STATE OF OHIO        )      IN THE COURT OF APPEALS
                              ) ss.

COUNTY OF TRUMBULL      )      ELEVENTH DISTRICT

STATE OF OHIO,

           Plaintiff-Appellee,                **JUDGMENT ENTRY**

      - vs -

                                        **CASE NO. 2004-T-0089**

NATHANIEL JACKSON,

           Defendant-Appellant.

Appellant's Notice of Additional Authority, filed with this Court on September 21, 2005, construed by this Court as a motion to supplement Appellant's brief with new case authority, is hereby granted instanter to the extent that this Court will consider the new case authority and include those cases in the record of this appeal. However, the motion contains comments that essentially constitute a supplemental brief, which is prohibited by Loc.R. 21(E) of the Eleventh District Court of Appeals. While this Court will consider the new case authority, the comments are hereby stricken pursuant to Loc.R. 21(E) of the Eleventh District Court of Appeals.

       The Clerk of this Court is instructed to strike the comments from the record of this appeal.

FILED
COURT OF APPEALS

SEP 2 3 2005

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

*Donald R. Ford*
ADMINISTRATIVE JUDGE DONALD R. FORD

VOL 058 PAGE 378

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )
                                        )
      Appellee-Appellee,                )
                                        )
-vs-                                    )          Case No. 2004-TR-89
                                        )
NATHANIEL JACKSON,                      )
                                        )
      Defendant-Appellant.              )

---

## NATHANIEL JACKSON'S SECOND NOTICE OF ADDITIONAL AUTHORITY

---

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney

Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor Administration Building
Warren, Ohio 44481

COUNSEL FOR APPELLEE

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio 43215
(614) 466-5394
Facsimile: (614) 644-0708

COUNSEL FOR APPELLANT

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| Appellee-Appellee, | ) | |
| | ) | |
| -vs- | ) | Case No. 2004-TR-89 |
| | ) | |
| NATHANIEL JACKSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

---

## NATHANIEL JACKSON'S SECOND NOTICE OF ADDITIONAL AUTHORITY

---

This Court held oral argument on August 17, 2005. Nathanial Jackson submits, pursuant

to App. R. 21(H), the following additional authority to assist the Court in resolving the issues

addressed at oral argument:

United States v. Rodriguez-Lara, 421 F.3d 932, 946 (9th Cir. 2005) – A defendant need

not establish a prima facie case with respect to a fair cross-section violation of the Sixth

Amendment, prior to him be entitled to the appointment of an expert to assist him in developing

that underrepresentation claim.[1]

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835

---

[1] In Rodriguez-Lara, the district court did order the jury officials to provide the defendant with current information
concerning the contents of the jury wheel. Id. at 938.

Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio  43215
(614) 466-5394
Facsimile:  (614) 644-0708

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **NATHANIEL JACKSON'S SECOND
NOTICE OF ADDITIONAL AUTHORITIES** was forwarded by first-class, postage prepaid
U.S. Mail to Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor
Administration Building, Warren, Ohio 44481 on this 25th day of October, 2005.

RANDALL L. PORTER
Assistant State Public Defender

COUNSEL FOR NATHANIEL JACKSON

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                )
                                )
       Appellee-Appellee,   )
                                )
-vs-                      )    Case No. 2004-TR-89
                                )
NATHANIEL JACKSON,    )
                                )
       Defendant-Appellant.  )

## NATHANIEL JACKSON'S THIRD NOTICE
## OF ADDITIONAL AUTHORITY

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney

Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor Administration Building
Warren, Ohio 44481

COUNSEL FOR APPELLEE

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio  43215
(614) 466-5394
Facsimile:  (614) 644-0708

COUNSEL FOR APPELLANT

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )
                                        )
    Appellee-Appellee,              )
                                        )
-vs-                                    )          Case No. 2004-TR-89
                                        )
NATHANIEL JACKSON,                      )
                                        )
    Defendant-Appellant.            )

## NATHANIEL JACKSON'S THIRD NOTICE
## OF ADDITIONAL AUTHORITY

    This Court held oral argument on August 17, 2005. Nathanial Jackson submits, pursuant to App. R. 21(H), the following additional authority to assist the Court in resolving the issues addressed at oral argument:

    *State v. Dickerson*, 2005-Ohio-5499 (Summit, C.A.) – The Court, citing to *State v. Fulton*, 57 Ohio St. 3d 120, 12304 (1991), held that a defendant may bring an equal protection challenge to the selection of a petit jury venire by documenting that there was a significant discrepancy between the percentage of a certain class of persons in a venire and the percentage of that group in the relevant community.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio  43215
(614) 466-5394
Facsimile:  (614) 644-0708

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **NATHANIEL JACKSON'S THIRD**

**NOTICE OF ADDITIONAL AUTHORITIES** was forwarded by first-class, postage prepaid

U.S. Mail to Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor

Administration Building, Warren, Ohio 44481 on this the 31st day of January, 2006.

RANDALL L. PORTER
Assistant State Public Defender
COUNSEL FOR NATHANIEL JACKSON