THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | O P I N I O N |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2004-T-0089 |
| NATHANIEL JACKSON, | : | F I L E D |
| | | COURT OF APPEALS |
| Defendant-Appellant. | : | MAR 0 3 2006 |

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

Civil Appeal from the Court of Common Pleas, Case No. 2001 CR 794.

Judgment:  Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *LuWayne Annos*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*David H. Bodiker*, Ohio Public Defender, and *Randall L. Porter*, Assistant State Public Defender, 8 East Long Street, 11th Floor, Columbus, OH 43215-2998 (For Defendant-Appellant).

JUDITH A. CHRISTLEY, J., Ret., Eleventh Appellate District, sitting by assignment.

{¶1}   The instant appeal emanates from a final judgment of the Trumbull County Court of Common Pleas.  Appellant, Nathaniel Jackson, seeks the reversal of the trial court's decision to dismiss his original and amended petitions for postconviction relief from his underlying criminal conviction.  For the following reasons, this court holds that appellant has failed to demonstrate any reversible error.

{¶2}   In November 2002, following a jury trial of approximately four weeks,

appellant was found guilty of two counts of aggravated murder, one count of aggravated burglary, and one count of aggravated robbery.  Under both of the aggravated murder counts, the jury also returned a guilty verdict on two death penalty specifications.  In addition, under each of the aggravated burglary and aggravated robbery counts, he was found guilty of a firearm specification.

{¶3}   The foregoing charges against appellant were based upon the shooting death of Robert S. Fingerhut in December 2001.  At the time of his death, Fingerhut was residing with his former wife, Donna Roberts, at a home in Howland Township, Ohio.  During the months prior to the incident, Roberts had been exchanging letters with appellant while he was being held in a state prison on a prior criminal offense.  As part of these letters, Roberts and appellant specifically discussed a plan under which appellant would murder Fingerhut so that Roberts could collect the proceeds from Fingerhut's insurance policies.

{¶4}   Appellant was released from prison on December 9, 2001.  Just two days later, the local police responded to a 9-1-1 call which Roberts had placed from the home she shared with Fingerhut.  Once the police had arrived at the scene, Roberts informed them that when she had returned home that evening, she had found Fingerhut dead on their kitchen floor with three bullet wounds to his body.  Roberts also informed the police that Fingerhut's car had been stolen from their garage.

{¶5}   During the ensuing investigation, Roberts gave the police her consent to search the home she had shared with Fingerhut.  As part of this search, the police found some of the letters appellant had sent to Roberts from the state prison.  At a subsequent point of the investigation, the police not only found some of Roberts' letters

2

to appellant, but also learned that she had placed a number of telephone calls to him at the prison in the weeks immediately prior to his release.  In addition, it was discovered that, on the evening of the murder, Roberts had rented a motel room in which the police later found blood and bandages.

{¶6}    In reviewing the letters between Roberts and appellant, the police noticed that he had requested that she purchase a specific type of glove to use in committing the murder.  When the police subsequently found appellant in a home in Youngstown, Ohio, he had in his possession a set of gloves which were similar to the gloves described in the letter.  Besides having gun residue and blood on it, one of the gloves found on appellant had a hole on the index finger which was consistent with an injury appellant had.  Moreover, when the police located Fingerhut's vehicle also in Youngstown, they found bloodstains which matched the DNA profile of appellant.

{¶7}    Following his arrest, appellant admitted to the police that he had shot Fingerhut, but asserted that he had acted in self-defense.  Under appellant's version of the events, the two men had met when appellant had asked Fingerhut for a job at his business in Youngstown.  After appellant had helped Fingerhut purchase certain illicit drugs, Fingerhut drove the men back to Fingerhut's home.  While at the home, the men started to argue and Fingerhut allegedly drew a gun on appellant.  Appellant claimed he was eventually able to take the gun from Fingerhut, but the gun went off several times and injured both of them.  After the incident, appellant took Fingerhut's car to escape, and then discarded both the gun and the car in Youngstown.

{¶8}    At the subsequent trial, the state presented evidence which tended to refute the version of events provided by appellant.  For example, the state's evidence

3

indicated in part that no one had seen appellant at Fingerhut's place of business on the evening of the murder. There was evidence that Roberts and appellant had planned for appellant to already be inside the home before Fingerhut arrived from work. The state's evidence also tended to establish that Fingerhut had suffered certain defensive wounds, that one of the bullets fired at him had hit him in the back, and that the "fatal" bullet had been fired through the top of his skull from a short distance. In addition, the state demonstrated that Fingerhut's life was insured under two policies which would have paid death benefits to Roberts in the sum of $550,000.

{¶9} As was noted above, the jury accepted the state's evidence and found appellant guilty of the murder and the two underlying offenses. The state then dismissed one of the two aggravated murder charges, and a one-day mitigation hearing was conducted in November 2002. During this separate proceeding, appellant's trial counsel presented the testimony of one expert witness and five lay witnesses. This evidence was intended to show that appellant had certain antisocial tendencies due to a lack of a father figure during his childhood; that he had attention deficit disorder; and, that he had been infatuated with Roberts. Notwithstanding this evidence, the jury found that the aggravating circumstances of the case outweighed the mitigating facts, and therefore recommended that the death penalty be imposed.

{¶10} After independently weighing the aggravating circumstances and the mitigating facts, the trial court also held that the imposition of the death penalty was appropriate in the instant case. In addition, the trial court imposed separate sentences on the charges of aggravated burglary, aggravated robbery, and the merged firearm specifications. In January 2003, appellant then filed a direct appeal from his conviction

and sentence to the Supreme Court of Ohio.  Upon full consideration of the matter, the Supreme Court upheld appellant's basic conviction and the imposition of the death penalty.  See *State v. Jackson*, 107 Ohio St.3d 300, 2006-Ohio-1.

{¶11}  Approximately one year after taking his direct appeal, appellant filed his original petition for postconviction relief under R.C. 2953.21.  Nearly ninety days later, appellant then submitted an amended petition for such relief.  Under the new petition, he asserted fifteen separate claims for relief.  Under the majority of these claims, appellant argued that he had been denied effective assistance of trial counsel during the penalty phase of his trial.  For example, he contended under one claim that the performance of his trial counsel had been deficient because they had not obtained the services of a specialist in mitigation.  Four of appellant's remaining claims raised issues of possible discrimination in the manner in which the grand jury proceedings and the petit trial had been conducted.  Finally, appellant also challenged the constitutionality of Ohio's execution procedure and the statutory procedure for postconviction relief.  In support of his various claims, he submitted two volumes of exhibits.

{¶12}  In responding to the two petitions, the state moved the trial court to dismiss each of the claims without a hearing on the basis that appellant had not made a prima facie showing that his constitutional rights had been violated during his trial.  In June 2004, the trial court rendered a thirty-three page judgment in which it dismissed each of the claims raised by appellant.  As to all of the claims in both petitions, the trial court held that appellant had failed to establish substantive grounds to warrant any postconviction relief.  The trial court further held that many of the claims were barred under res judicata because the issues either were, or could have been, raised in his

direct appeal from his conviction.

{¶13}  In now appealing from the instant judgment, appellant has assigned the following as error:

{¶14}  "[1] The trial court erred when it denied [appellant's] postconviction petition without first affording him the opportunity to conduct discovery.

{¶15}  "[2] The trial court erred when it refused to grant [appellant] funds to employ experts.

{¶16}  "[3] The postconviction assistant prosecutor erred by not providing [appellant] with the information contained in the prosecutor's files which was necessary to support the claims contained in the amended petition.

{¶17}  "[4] The postconviction trial judge erred by not recusing himself.

{¶18}  "[5] The trial court erred by applying the doctrine of res judicata to bar certain of [appellant's] causes of action.

{¶19}  "[6] The trial court erred in dismissing [appellant's] amended postconviction petition where he presented sufficient operative facts to merit relief or, at a minimum, an evidentiary hearing."

{¶20}  As part of his postconviction petitions, appellant made several requests that he be allowed to conduct discovery before a final decision was made on the matter. In its final judgment on both petitions, the trial court overruled each of the requests. Under his first assignment, appellant contends that it was improper to consider the final merits of his petitions until he had had a full opportunity to conduct discovery on the issues he had raised.

{¶21}  In interpreting R.C. 2953.21 et seq., the provisions which govern

postconviction relief in this state, the Supreme Court of Ohio has stated that there is no specific requirement that civil discovery must be afforded to the defendant in this type of proceeding. *State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office* (1999), 87 Ohio St.3d 158. As a result, the decision to grant discovery in a given situation lies within the sound discretion of the trial judge. *State v. Davie*, 11th Dist. No. 2000-T-0104, 2001-Ohio-8813. Furthermore, it has been expressly held that if the trial court concludes that the petitioner has failed to state substantive grounds to warrant an evidentiary hearing on a petition, that court does not abuse its discretion in overruling a request for discovery. *State v. Samatar*, 10th Dist. No. 03AP-1057, 2004-Ohio-2641.

{¶22} As will be discussed below, this court holds that the trial court in the instant case did not err in concluding that none of appellant's claims for relief were sufficient to state substantive grounds for reversing his conviction. Under such circumstances, it follows that the trial court did not abuse its discretion in denying any civil discovery to appellant. Thus, the first assignment in this appeal lacks merit.

{¶23} In conjunction with his requests for discovery, appellant also moved the trial court for the appointment of unspecified experts to assist in preparing additional materials in support of his two petitions. Similar to the analysis it employed regarding the discovery matters, the trial court overruled this separate motion on the grounds that no experts were needed because appellant had failed to satisfy his initial burden in submitting his petitions. Under his second assignment, appellant asserts that the trial court's analysis on this question was also flawed.

{¶24} Like the discovery issue, this court has already addressed the question of the appointment of an expert in a postconviction proceeding. In *State v. Williams* (Oct.

16, 1998), 11th Dist. No. 97-T-0153, 1998 Ohio App. LEXIS 4884, we began our discussion by stating that the right to an expert was tied to the constitutional right to counsel.  The *Williams* court further noted that, under the relevant Ohio Supreme Court precedent, a criminal defendant's constitutional right to counsel did not extend to a proceeding under R.C. 2953.21 because a postconviction proceeding was civil in nature.  Based upon this precedent, the *Williams* court ultimately held that the same logic would apply to experts; i.e., since a proceeding under R.C. 2953.21 is considered civil, there is no constitutional right to expert assistance.

{¶25}  In applying the *Williams* logic in subsequent cases, this court has also held that if a postconviction petitioner does not initially demonstrate substantial grounds to support an evidentiary hearing on a petition, he is not entitled to the appointment of any experts.  *State v. Getsy* (Oct. 22, 1999), 11th Dist. No. 98-T-0140, 1999 Ohio App. LEXIS 4975

{¶26}  In essentially arguing that the foregoing analysis is flawed, appellant states that the *Williams* opinion did not acknowledge the fact that R.C. 2953.21 contains a specific provision regarding the appointment of counsel.  That is, subsection (I) of the statute provides that an indigent defendant who has been given the death penalty has a statutory right to have counsel appointed for the purpose of filing a petition for postconviction relief in his behalf.  In light of this, appellant asserts that the basic underlying premise for the *Williams* analysis as to the appointment of experts was simply incorrect.

{¶27}  However, in adopting the same general logic which we followed in *Williams* and *Getsy*, other courts have concluded that the existence of a statutory right

to counsel is not the same as a constitutional right to counsel; hence, these courts have held that the provisions of R.C. 2953.21(I) has no effect upon the validity of their logic as to whether there is a constitutional right to an appointed expert.  For example, in *State v. Monroe*, 10th Dist. No. 04AP-658, 2005-Ohio-5242, the court first noted that, although R.C. 2953.21(I) provided for the appointment of counsel in a postconviction proceeding, it did not have any provision for the appointment of experts.  Upon then referring again to the Ohio Supreme Court precedent as to the lack of a constitutional right to counsel, the *Monroe* court stated that it would not recognize a constitutional right to an appointed expert based entirely upon a statutory right to counsel: "There is no authority holding that a corresponding constitutional right would exist to provide appointment of an expert *** predicated upon the specific statutory entitlement to counsel in a proceeding in which a constitutional right to counsel would not attach." *Monroe*, at ¶15.  Pursuant to this analysis, appellant has failed to establish any flaw in our *Williams* holding.

{¶28}  This court has recently recognized an exception to the *Williams* logic when the petitioner has asserted a question as to whether he is mentally retarded.  See *State v. Lorraine*, 11th Dist. No. 2003-T-0159, 2005-Ohio-2529.  However, although this court held that an expert should be appointed for purposes of the "mental retardation" issue prior to any determination on the final merits of the petition, there was no indication in *Lorraine* that the court intended to invalidate the general holding of *Williams*.

{¶29}  In contesting the trial court's denial of his request for experts in the instant case, appellant has not specifically raised the "mental retardation" issue in the context

of this assignment.[1]  Furthermore, this court would reiterate that, except for his request for a psychologist, appellant's expert requests before the trial court were framed in general terms.  Accordingly, because we conclude that appellant's petitions failed to state any substantial grounds warranting an evidentiary hearing, the trial court did not err in this instance in denying the motion for the appointment of experts.  Under this analysis, the second assignment does not have merit.

{¶30}  Appellant's next assignment also challenges the procedure which was followed by the trial court prior to the granting of the motion to dismiss.  As part of his original and amended petitions, appellant asked that the state be required to give him access to two documents which were allegedly contained in the prosecutor's file.  Appellant stated that the documents would assist him in supporting two of his claims for relief.  Under his third assignment, he essentially contends that the trial court erred in not compelling the state to release the documents in question.

{¶31}  As to this point, this court would first note that the Supreme Court of Ohio has held that the prosecution's duty to provide discovery under Crim.R. 16 does not extend beyond the conclusion of the criminal trial.  *Love*, supra.  Furthermore, it has been held that a criminal defendant cannot employ R.C. 149.43 to gain access to the prosecutor's file when discovery under Crim.R. 16 is not permissible.  *State v. Twyford*, 7th Dist. No. 98-JE-56, 2001-Ohio-3241.  Accordingly, because appellant was not entitled to access the state's documents as part of the postconviction proceedings, the state could not be compelled to release any documents in this instance.  For this reason, appellant's third assignment of error is not well-taken.

---

1.  Although appellant has raised certain questions pertaining to his intelligence level under his sixth assignment, no such issues have been asserted in his second assignment of error.

{¶32}  In his fourth assignment, appellant submits that certain aspects of the trial court's judgment on his postconviction petitions should be reversed because the court erred in considering improper information.  Specifically, appellant asserts that the trial court incorrectly relied upon its own personal knowledge of certain "facts" in disposing of some of his claims for relief.  Based on this, he argues that the trial judge should have recused himself so that the issues in question could be reviewed by an unbiased judge.

{¶33}  In raising the foregoing issue, appellant refers to two general instances in which the trial judge cited his personal knowledge in explaining his reasoning for rejecting a claim.  The first instance occurred when the trial judge was reviewing appellant's contention that, at the outset of the guilt phase of the underlying trial, he had given the trial judge a letter in which he stated that he was not satisfied with the performance of his trial counsel.  In ruling upon this contention, the trial judge first stated in his final judgment that he could not recall receiving this letter.  Even so, the trial judge concluded that appellant had not shown that he had been unable to communicate with his counsel, since the trial judge could recall specific instances during the trial in which he had observed appellant conversing with his counsel.

{¶34}  As to this point, this court would indicate that the information to which the trial judge referred in his judgment was predicated on observations he had made during the course of appellant's trial.  In considering the effect of a trial judge's knowledge of prior proceedings in a case, the courts of this state have held that such knowledge does not warrant the judge's recusal from further proceedings in the same matter:

{¶35}  "A judge need not recuse himself on the basis that he acquired knowledge of the facts during a prior proceeding.  *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185,

188 ***.  What a judge learns in his judicial capacity, whether from pretrial proceedings, co-defendant pleas, or evidence presented in a prior case, is properly considered as judicial observations and creates no bias requiring recusal. Id.  In this case, the mere fact that the same trial judge presided over separate proceedings involving both appellant and a co-defendant does not require the judge to disqualify himself." *In re: Daniel E.* (1997), 122 Ohio App.3d 139, 140-141.

{¶36}  Of course, the issue of whether a judge should recuse himself is separate from the question of the extent to which he can rely upon his prior knowledge in making a judicial determination.  If the prior knowledge stems from a distinct legal proceeding, the judge cannot rely upon it at all.  This court has consistently held that a trial judge cannot take judicial notice of events in other legal cases, even if the prior cases involved the same parties.  See *Frinkley v. Meeker*, 11th Dist No. 2004-P-0022, 2004-Ohio-6696; *State v. Raymundo* (Aug. 18, 1995), 11th Dist. No. 94-T-5025, 1995 Ohio App. LEXIS 3395.  However, the foregoing basic rule does not apply to prior events within the same action; i.e., a trial judge can take judicial notice of prior matters before him in the same case. *In re: Veverka* (Sept. 30, 1999), 11th Dist. No. 98-A-0053, 1999 Ohio App. LEXIS 4654.

{¶37}  In the instant case, the trial judge indicated in the appealed judgment that, during trial, he had observed appellant interacting with his trial attorneys.  The trial judge further stated in the judgment that the transcript of the trial contained specific references to communications between appellant and his counsel.  By citing to the transcript in support of his observations, the trial judge was implicitly taking judicial notice of a proceeding before him in the same case.  Under the foregoing precedent, the trial

judge's reliance upon the trial transcript was permissible under the Ohio Rules of Evidence.

{¶38} If the trial judge's reference to his observations had not been supported by citations to the trial transcript, the outcome of our analysis on this point may have been different. Unless a judge's observations are either stated upon the record or verified by the record, a party simply has no means of challenging the veracity of those observations. Therefore, as to facts which are not of record, the better procedure may have been to have held a hearing to allow appellant to object to any such "off record" judicial notice. In the absence of such a hearing, it can be argued that a party may be denied due process unless he is allowed to question the judge as to the accuracy of the observations. But cf., *State v. Morrow* (Aug. 8, 1987), 2d Dist. Nos. CA 9420 and CA 9447, 1987 Ohio App. LEXIS 8195, in which it was held that the trial court had not abused its discretion in predicating the denial of a claim of ineffective assistance upon its general observation of counsel at trial.

{¶39} Nevertheless, because the trial judge in this particular instance also referred to the trial record in support of his factual finding, it is unnecessary to resolve the foregoing point for purposes of this analysis. As an additional point, we would further note that appellant has not challenged the accuracy of the references to the record, or the accuracy of the record itself.

{¶40} In regard to the "letter" issue, appellant further asserts that he was entitled to question the trial judge as to the statement in the appealed judgment that he, the judge, had no independent recollection of seeing the letter. As to this point, this court would simply note that the trial judge did not deny appellant's claim of ineffective

assistance on the grounds that the letter did not exist and that it had been fabricated by appellant.  Instead, the trial court assumed in its analysis that the letter was authentic and addressed the merits of appellant's underlying claim for relief.  To this extent, appellant's inability to challenge the trial judge's lack of recall had no effect on the ultimate resolution of that particular claim.

{¶41}  As an aside, this court would also emphasize that a copy of the disputed letter was submitted in support of appellant's postconviction claim that he had been denied effective assistance of trial counsel.  In rejecting this claim, the trial court did not base its decision solely on the fact that appellant had communicated with his two attorneys during the trial.  As a separate grounds for the decision, the trial court also concluded that the assertions in the letter were insufficient to establish that there had been a total "breakdown" of the attorney-client relationship between appellant and counsel.  Upon reviewing the disputed letter and the relevant case law, we can find no error in the trial court's separate holding.

{¶42}  Reviewing the assertions of the letter itself, it was essentially a request for the substitution of counsel.  As the primary basis for this request, appellant stated that his present counsel was not representing him in the manner he would prefer.  Specifically, appellant stated that, even though he had repeatedly asked one of his attorneys to let him listen to certain tape recordings, the attorney had refused to bring the tapes to his jail cell.  In addition, appellant asserted in the letter that he had a verbal argument with one of the attorneys after he had questioned whether the attorney had been devoting enough time to his case.

{¶43}  As a general proposition, an indigent criminal defendant does not have a

constitutional right to choose the attorney who will represent him at the expense of the state; rather, he is only entitled to competent legal representation. *State v. Horn*, 6th Dist. No. OT-03-016, 2005-Ohio-5257, at ¶11. As a result, the request of a defendant to discharge his court-appointed counsel will be granted only if he can "show a breakdown in the attorney-client relationship of such a magnitude as to jeopardize the defendant's right to effective assistance of counsel." *State v. Coleman* (1988), 37 Ohio St.3d 286, paragraph four of the syllabus. See, also, *State v. Henness* (1997), 79 Ohio St.3d 53, 65.

{¶44} In applying the foregoing basic standard, the courts of this state have recognized three examples of good cause which would warrant the discharge of court-appointed counsel: (1) a conflict of interest; (2) a complete breakdown of communication; and (3) an irreconcilable conflict which could cause an apparent unjust result. *Horn*, 2005-Ohio-5257, at ¶11, quoting *State v. Blankenship* (1995), 102 Ohio App.3d 534, 558. In light of the nature of the three examples, it has been further held that the substitution of counsel should be allowed only if extreme circumstances exist. *State v. Glasure* (1999), 132 Ohio App.3d 227, 239.

{¶45} In regard to a possible breakdown of the attorney-client relationship due to a lack of communication, the Supreme Court of Ohio has expressly said that the Sixth Amendment right to counsel was not intended to guarantee that a criminal defendant will have a "rapport" with his attorney. *Henness*, 79 Ohio St.3d at 65, citing *Morris v. Slappy* (1983), 461 U.S. 1. Accordingly, the existence of hostility or a personal conflict between the attorney and the defendant does not constitute a total breakdown so long as it does not inhibit the attorney from both preparing and presenting a competent

defense.  *State v. Meridy*, 12th Dist. No. CA2003-11-091, 2005-Ohio-241; *State v. Mayes*, 4th Dist. No. 03CA9, 2004-Ohio-2027.  Moreover, the lack of communication must be permanent in nature before a finding of a complete breakdown can be made.  *State v. Evans*, 153 Ohio App.3d 226, 2003-Ohio-3475, at ¶32.  Finally, a dispute over the trial tactics or strategy of the attorney is not sufficient to establish the requisite breakdown.  Id.

{¶46}  In the instant case, our review of the alleged letter indicates that appellant did not state in his letter why he thought the unspecified tape recordings were relevant to his case; thus, the reference in the letter to the attorney's failure to provide the tapes only showed a possible disagreement as to the manner in which the tapes could be used at trial.  Moreover, although the letter does state that appellant had an argument with one of his attorneys, it does not allege that, due to the argument, there was a total breakdown of communication with that attorney during the trial.

{¶47}  Therefore, as the trial court correctly noted in the appealed judgment, the assertions in appellant's letter only established that he was not entirely satisfied with the nature of the representation he was receiving from his court-appointed counsel.  This dissatisfaction was not sufficient to show a complete breakdown of the attorney-client relationship which would have warranted the granting of appellant's request for substitution of counsel.  Based upon this, this court holds that, even if the trial court did err in referring to its own personal observations of the relationship between appellant and his two attorneys, its determination on the "ineffective assistance" claim could have been predicated solely upon the trial court's holding that appellant's letter did not raise any substantive issue on that point.

{¶48}  As was noted above, appellant has asserted under this assignment that there was a second basic instance in which the trial court improperly relied upon its own personal observations.   The second instance cited by appellant pertains to the trial court's disposition of his "racial discrimination" claims.  For example, in ruling upon the claim that discrimination occurred in regard to the appointment of the foreperson for the grand jury proceedings, the trial court specifically referred to his knowledge of the procedure used by the Trumbull County Court of Common Pleas in appointing the foreperson.

{¶49}  In regard to this specific point, this court would agree that the trial judge's reliance upon his own personal knowledge was improper in this instance.   First, we would note that any proceeding before the grand jury would be distinct from the petit trial for appellant, and the trial judge is not permitted to take judicial notice of any action separate from the proceeding before him.   Second, we would indicate that the trial judge's own knowledge of Trumbull County Grand Jury proceedings in general could not encompass all possible information on that topic.   Under such circumstances, the trial judge's knowledge could not be dispositive because there may be instances beyond his knowledge in which discrimination did occur.

{¶50}  Nevertheless, this court would further note that the trial court's dismissal of the "racial discrimination" claims was based upon either that:  (1) the claims were barred by res judicata; or (2) appellant's evidentiary materials were insufficient to raise a prima facie showing of discrimination.   As will be discussed under the fifth and sixth assignments of this appeal, we conclude that this aspect of the trial court's decision must be upheld.   Therefore, the trial court's reliance on his personal knowledge was

harmless as to these particular claims.

{¶51} Finally, as a separate part of this assignment, appellant contends that, in ruling upon some of his claims for relief, the trial judge improperly relied on his own personal opinion. For example, in dismissing one of the claims in which it was alleged that appellant had been denied effective assistance of counsel, the trial judge stated in his final judgment that the presentation of the testimony of appellant's family members during the mitigation phase should not have required "exhaustive preparation" on the part of trial counsel. Appellant now asserts that the judge's statement constituted an "opinion" which should have been subject to cross-examination by his postconviction counsel.

{¶52} When viewed in the context of the appealed judgment, it is apparent that the statements in question were only intended to set forth the trial judge's legal analysis concerning whether the actions of counsel could be deemed ineffective as a matter of law. To this extent, the trial judge's statements merely constituted his conclusions of law on the various points. Although such conclusions can be challenged on appeal and must be reviewed under a de novo standard, they are not in any respect evidential submissions to which the right to cross-examination would apply.

{¶53} Pursuant to the foregoing analysis, this court holds that appellant has failed to show that he was prejudiced by the trial judge's references to his personal knowledge. Accordingly, the fourth assignment in this appeal is also without merit.

{¶54} In the fifth assignment of error, appellant submits that the trial court erred by applying the doctrine of res judicata to bar certain causes of action that he raised in his postconviction relief petition. After reviewing this "res judicata" aspect of the trial

court's decision, this court concludes that portions of this analysis were flawed. However, in every instance in which res judicata was incorrectly applied, the trial court correctly found that appellant had failed to set forth substantial grounds in support of the respective claims for relief.

{¶55} It is well-established that the doctrine of res judicata is applicable to postconviction relief proceedings. In *State v. Perry* (1967), 10 Ohio St.2d 175, the Supreme Court of Ohio held:

{¶56} "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except on appeal from that judgment, any defense or claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in the judgment of conviction or on appeal from that judgment." Id. at 180.

{¶57} Additionally, in *State v. Cole* (1982), 2 Ohio St.3d 112, the Supreme Court of Ohio specifically indicated that res judicata is a proper basis to dismiss a postconviction relief petition where the issue sought to be presented could have been raised at trial or in a direct appeal, and where "such issue could fairly have been determined without resort to evidence *dehors* the record." Id. at paragraph one of the syllabus.

{¶58} In *State v. Jones* (Dec. 29, 2000), 1st Dist. No. C-990813, 2000 Ohio App. LEXIS 6197, the court held "[t]o overcome the *res judicata* bar, a petitioner must provide cogent evidence outside the record. This means that the evidence supporting a claim must be competent, relevant and material, must be more than marginally significant, and must 'advance the claim "beyond mere hypothesis and a desire for further

discovery.'" *** It 'must be more than evidence which was in existence and available to the defendant at the time of trial and which could and should have been submitted at trial if the defendant wished to make use of it.'" Id. at 4-5, quoting *State v. Fears* (Nov. 12, 1999), 1st Dist. No. C-990050, 1999 Ohio App. LEXIS 5365, and *State v. Coleman* (Mar. 17, 1993), 1st Dist. No. C-900811, 1993 Ohio App. LEXIS 1485.

{¶59}  Eight of appellant's claims were dismissed by the trial court based, in part, upon res judicata.  They will be individually addressed in the order they have been raised in appellant's brief.

{¶60}  In the first claim under the fifth assignment of error, appellant made the argument that the state of Ohio has an infirm postconviction relief system.  It is clear, however, that Ohio's postconviction relief system has been in place prior to appellant's trial and, therefore, could have theoretically been raised in a direct appeal.  Thus, the trial court properly denied the claim based upon res judicata.

{¶61}  Moreover, this court has previously held that the proper forum to raise such a challenge to the postconviction relief system in Ohio would be in a habeas corpus action.  *State v. Wiles* (1998), 126 Ohio App.3d 71, 83.

{¶62}  The second claim made by appellant is that the Trumbull County Prosecutor seeks the death penalty in a racially discriminatory manner.

{¶63}  We must agree with appellant that it would be extremely difficult, if not impossible, to raise this issue at trial.  Instead, it is most appropriate to raise this issue in postconviction relief proceedings, when evidence to support such a claim would be outside the record.  However, now that appellant has the opportunity to do so, he has

failed to present any specific evidence of discriminatory intent against him.  Thus, he has failed to support this claim beyond mere speculation.

{¶64}  Appellant does argue that his trial counsel was ineffective by not raising this issue at trial, but that is a separate argument which will be addressed later.

{¶65}  The third claim made by appellant is that the Trumbull County Grand Jury that indicted him contained an underrepresentation of African-Americans.

{¶66}  First, appellant made no effort to challenge the indictment prior to trial. Second, as pointed out by the trial court, appellant failed to present any evidence whatsoever as to the racial composition of the grand jury that indicted him.  Additionally, even if appellant could establish that the grand jury that indicted him was proportionately underrepresented as to African-Americans, he would have to establish that "an intentional and systematic exclusion of blacks had occurred." *State v. Hill* (June 22, 1990), 4th Dist. No. 1619, 1990 Ohio App. LEXIS 2509, at 5.  Appellant presented no evidence of an intentional exclusion of African-Americans from the grand jury that indicted him.  Accordingly, the trial court properly rejected this claim.

{¶67}  In the fourth claim made by appellant, he asserts that the Trumbull County Court of Common Pleas selected a grand jury foreperson in a racially discriminatory manner.

{¶68}  Evidence as to the manner by which the grand jury foreperson was chosen could have been sought prior to appellant's actual trial.  Moreover, in *State v. Hughbanks,* 1st Dist. No. C-010372, 2003-Ohio-187, the court held that "[i]f a grand-jury foreperson is selected from within the ranks of a properly constituted grand jury, and the foreperson's role is essentially ministerial, purposeful discrimination in the selection of a

grand-jury foreperson will not provide a basis for reversing a conviction." Id. at ¶35. We agree with that reasoning.

{¶69}  The fifth claim made by appellant is that the petit jury venire was selected in a racially discriminatory manner.

{¶70}  It was noted by trial counsel on the record that there was an absence of African-Americans on the jury, and that fact was acknowledged by the trial court. Realistically, the simple unexplained absence of African-Americans from the jury venire would be insufficient support for a successful appeal.  Evidence beyond the record would certainly be necessary.  However, in now raising this issue in his postconviction challenge, appellant still failed to offer or proffer any new evidence to support his postconviction petition.  It is, therefore, either barred from being raised in a postconviction relief petition by the doctrine of res judicata, or in the alternative, for failing to support his claim during the postconviction phase. *State v. Johnson* (June 14, 1989), 9th Dist. No. 13987, 1989 Ohio App. LEXIS 2421.

{¶71}  The sixth claim presented by appellant is that he did not receive effective assistance of counsel during the trial phase.

{¶72}  The trial court applied the doctrine of res judicata to this sixth claim because appellant raised a similar ineffective assistance of counsel claim in his brief to the Supreme Court of Ohio in his direct appeal.

{¶73}  Appellant argues that he supported his sixth claim with copies of nine police reports containing new evidence of ineffective assistance of counsel.  The trial court, however, correctly observed that these "new" exhibits only raised facts and theories that were patently obvious from the face of the record.  Hence, there is no

demonstration of ineffective assistance as to these nine documents. Additionally, most of these "reports" were nothing more than uncertified statements which were not dated nor did they rise to the level of being admissible documents. Therefore, this claim was also barred by res judicata or, in the alternative, insufficient support. See *Jones*, supra, 2000 Ohio App. LEXIS 6197, at 7.

{¶74} The seventh claim made by appellant is that he did not receive effective assistance of counsel during the mitigation phase.

{¶75} Appellant correctly points out that a claim of ineffective assistance of counsel in the mitigation phase that is dependant upon the affidavits of individuals who would have provided additional testimony is not subject to the bar of res judicata. *State v. Keith*, 79 Ohio St.3d 514, 536, 1997-Ohio-367; *State v. Scott* (1989), 63 Ohio App.3d 304, 308. Clearly, that evidence was not available until after the mitigation portion of the trial.

{¶76} However, from a review of the judgment entry, it is apparent that the trial court rejected this claim on its merits in addition to relying on res judicata. With respect to the affidavits of appellant's friends and family who did not get to testify during the mitigation phase, the trial court stated that "[n]othing in these affidavits offer[s] (sic) mitigating factors at all, let alone enough to outweigh the aggravating circumstances."

{¶77} Similarly, none of the other exhibits presented by appellant were found to be germane to the mitigation phase. Accordingly, it is clear that the trial court did not rely solely on res judicata but, instead, decided this claim was not well-taken on the merits.

{¶78}  The eighth claim advanced by appellant is that the state of Ohio's use of lethal injection is constitutionally infirm.

{¶79}  In support, he presented the affidavit of Dr. Mary J. S. Heath.  However, the substance of this affidavit does not change the clear holding of the Supreme Court of Ohio that Ohio's use of lethal injection is constitutional.  *State v. Carter*, 89 Ohio St.3d 593, 608, 2000-Ohio-172.

{¶80}  Based upon the foregoing analysis, we hold that, even when the trial court's analysis concerning the application of res judicata was flawed, the error was not prejudicial to appellant.  Thus, his fifth assignment of error is without merit.

{¶81}  In the sixth assignment of error, appellant contends that the trial court erred in dismissing his postconviction relief petition without a hearing.

{¶82}  It is well-established that a petitioner is not automatically entitled to a hearing.  Before a hearing will be granted, a petitioner must establish that there are substantive grounds for relief.  R.C. 2953.21(C); *State v. Calhoun*, 86 Ohio St.3d 279, 282-283, 1999-Ohio-102.

{¶83}  In the present case, appellant asserts that his causes of action were supported by sufficient operative facts to establish substantive grounds for relief.  Appellant set forth fifteen causes of action and they will be addressed in seriatim.

{¶84}  In the first claim in this assignment raised by appellant, he contends that the Trumbull County Prosecutor has made decisions regarding who should be charged with the death penalty in a racially discriminatory manner.

{¶85}  However, appellant failed to provide any evidence whatsoever that the charges against him were racially motivated.  Appellant claims that his Caucasian co-

defendant was offered a better plea bargain, but he fails to provide any support for this claim, beyond the bare assertion itself. Further, he fails to note that his co-defendant did not commit the actual killing; thus, their circumstances were arguably different.

{¶86} Due to a lack of supporting evidence for his assertion, the trial court properly denied this claim.

{¶87} In the second cause of action, appellant submits that the grand jury that indicted him was drawn from a venire that lacked sufficient representation of African-Americans.

{¶88} Yet, appellant failed to provide the trial court with any evidence of the racial composition of the actual grand jury that indicted him, or the venire from which the grand jury was selected. In short, while appellant filed numerous exhibits with his postconviction relief petition, none of them concerned, either directly or indirectly, the grand jury composition in the present case.

{¶89} Moreover, as the trial court noted, the Supreme Court of Ohio has held that "not every grand jury has to represent a 'fair cross section,' so long as the selection process is nondiscriminatory." *State v. Williams* (1997), 79 Ohio St.3d 1, 17. More recently, the Supreme Court of Ohio ruled that the use of voter registration roles as a source for grand jurors does not intentionally exclude any specific racial group, and is an acceptable method of selecting jury venires. *State v. Nields* (2001), 93 Ohio St.3d 6, 19.

{¶90} In the third cause of action, appellant contends that it is the good faith belief of his counsel that the Trumbull County Court of Common Pleas has employed a

system to choose grand jury forepersons that can lead to discrimination in the selection process.

{¶91}  While the state does not dispute the fact that the foreperson in this case was a Causacian woman, appellant provided no evidence that this woman was handpicked by a Trumbull County judge, that she was chosen because she was Causasian, or that she was responsible for indicting appellant because of his race. Moreover, with all due respect to appellant's trial counsel, personal belief is a far cry from personal knowledge.  No operative facts were set forth which laid a foundation to support or put this belief beyond mere speculation.  Furthermore, there is no indication that the foreperson was chosen from outside the system that was used to comprise the balance of the grand jury.   Therefore, appellant cannot prevail on this claim. *Hughbanks*, supra, at ¶35.

{¶92}  Thus, the trial court properly found that appellant's contention "is far too tangential to be substantive."

{¶93}  In the fourth cause of action, appellant contends that the prosecutors at trial failed to provide him with exculpatory evidence.  Specifically, appellant alleges that certain undisclosed law enforcement agents suppressed a police report that the decedent had made plans to fake his own death.  Somehow, appellant believes that such a report would have been favorable to his case.

{¶94}  The trial court found that, if this report actually existed, it would not have been exculpatory because appellant admitted to shooting a man in Robert Fingerhut's home whom he, himself, identified as Fingerhut.  The overwhelming evidence was that the victim was Robert Fingerhut and that it was appellant who shot him.

{¶95}  The trial court also found that appellant supplied no credible evidence to support his claim that a police report stating that Fingerhut planned to fake his own death ever existed.  On this point, appellant supplied the trial court with an unsigned, handwritten letter wherein the unknown author stated that "RSF" had an "obsession about faking his own death."  There was also an affidavit from his counsel of record in this case stating that trial counsel for co-defendant, Roberts, also told him about this alleged police report.  However, there was no affidavit from Roberts' trial counsel.  Again, we note that appellant admitted to shooting Fingerhut, albeit in self-defense.  Thus, the exculpatory value of any such report is non-existent.  There may be a dispute of fact about its existence, but it is not a material or relevant dispute of fact as is required.

{¶96}  The trial court did not err by dismissing this cause of action.

{¶97}  In the fifth cause of action, appellant maintains that the trial court failed to hold a hearing concerning his request to discharge his trial counsel.  His allegation is that he sent a letter to the trial court judge prior to trial in which he complained that one of his trial attorneys was not paying enough attention to him.

{¶98}  Assuming that he sent such a letter, there is no allegation that appellant could not communicate with this attorney or that communication had irretrievably broken down.  He made no claim that he was somehow denied his constitutional right to counsel in this case.  In short, there was no claim of prejudice.  It is almost axiomatic that every defendant feels his or her attorney is not paying enough personal attention to the case.  That is not per se indicative that the attorney is professionally deficient.  Additionally, it is well-established that a petitioner's own self-serving statement does not

compel a hearing.  *State v. Kapper* (1983), 5 Ohio St.3d 36, 37-38.  Thus, without more, the trial court properly denied this cause of action.

{¶99}  In the sixth cause of action, appellant asserts that trial counsel failed to retain a competent mitigation specialist and, as a result, the mitigation investigation was incomplete.

{¶100} From the record, it is clear that Dr. Sandra McPherson was hired as appellant's expert witness.  It is also clear that Dr. McPherson has filled a similar role in at least five prior capital murder cases.  Thus, appellant's claim that Dr. McPherson was less than competent was an unsupported allegation.  As an expert psychological witness, Dr. McPherson testified very capably.  There is nothing to indicate she was intended to be the mitigation specialist.  Furthermore, appellant's evidentiary materials were not sufficient to demonstrate that an actual mitigation expert would have made a difference under the facts of this case.  Accordingly, appellant failed to present substantive grounds for relief as to this claim.

{¶101} In the seventh cause of action, appellant argues that the petit jury that convicted him was drawn from a venire that was underrepresented by African-Americans.

{¶102} For the reasons set forth in this court's analysis of appellant's fifth assignment of error, this claim was either barred by the doctrine of res judicata or, in the alternative, was not supported by sufficient evidentiary materials during the postconviction phase of appellant's case.[2]

---

2.  In disposing of appellant's contentions concerning the underrepresentation of African-Americans on the petit jury, this court considered appellant's two supplemental submissions which were filed after oral arguments in this appeal.

{¶103} In the eighth cause of action, appellant contends that he was denied the effective assistance of trial counsel during the pretrial stages of the proceedings.

{¶104} In *State v. Pierce* (1998), 127 Ohio App.3d 578, 586, this court explained that in asserting a claim of ineffective assistance of counsel, a petitioner must submit material containing operative facts that demonstrate both prongs of the two-part test set forth in *Strickland v. Washington* (1984), 446 U.S. 668, 687.  The first part is that counsel's performance was deficient, and the second part is that the deficient performance prejudiced the defense.  In order to demonstrate prejudice, a petitioner needs to show a reasonable probability that, if not for counsel's errors, the result of the trial would have been different.  *State v. Bradley* (1989), 42 Ohio St. 3d 136, 143.

{¶105} In the case at bar, the trial court determined that none of the exhibits attached to appellant's petition even remotely suggested that his trial counsel was ineffective.

{¶106} First, appellant argues that his counsel failed to develop any significant information concerning his co-defendant's role in the homicide.  Yet, it is clear that the conspiracy and relationship between appellant and Roberts was presented to the jury. The jury was made aware that Roberts would be able to collect the victim's insurance proceeds.

{¶107} The jury also heard appellant admit that he did, indeed, shoot Fingerhut, albeit in self defense.  Thus, at trial, appellant essentially conceded that Roberts did not play a role in the actual shooting.  Moreover, appellant presented no additional evidence in his postconviction petition that Roberts played a greater role than was set out at trial.

{¶108} Second, appellant asserts that the victim, Fingerhut, was involved in illegal activities that were not brought to the attention of the jury.  However, appellant failed to inform the court as to what those activities were, or, more importantly, how they had any effect on the shooting.

{¶109} Next, appellant claims that his trial counsel did not delve into the "dysfunctional" relationship between Roberts and Fingerhut.  Contrary to appellant's claim, the jury was aware that the couple had been divorced yet still lived together; and, during this time, Roberts was involved in a relationship with appellant.  Beyond the classic triangle, appellant has failed to elucidate any other oddities of their relationship. It is worth noting once again, his defense was self-defense.  Without further facts, the relevance of these allegations to appellant's self-defense theory is nonexistent.

{¶110} Appellant also contends that his trial counsel at mitigation failed to fully develop the extent of his "significant mental impairment."  It is clear to this court that the claim of appellant's mental impairment was questionable at best.  He was tested shortly after his arrest in this case and his scores were significantly higher than when he had been tested in high school.  Thus, this lack of emphasis was, arguably, a matter of trial strategy that trial counsel employed.

{¶111} Next, appellant maintains that his trial counsel did not challenge the grand jury or petit jury venires, nor the grand jury foreperson, for lacking in adequate African-American representation.

{¶112} As previously held, appellant has failed to demonstrate any improprieties in the selection process for the grand jury, the petit jury, or the grand jury foreperson. We note that this argument addresses only the failure to raise this issue at trial.  The

only evidence that appellant provided the trial court to support this claim was a list of names and addresses that was used for the petit jury venire, and a report provided by Diane Wiley that addressed the Roderick Davie murder case from 1992.[3]  Those two items were irrelevant to his assertion of ineffective assistance of counsel.

{¶113} Clearly, the names and addresses of the jurors who comprised the venire is meaningless information since it does not indicate how they were chosen, nor does it identify the race of the individuals.  Even if we were to assume all of the names were non African-Americans, that evidence does not address the "selection" process. Furthermore, the Wiley report was over ten years old; thus, its present accuracy was suspect.  A proper challenge on this subject at trial would have required counsel to present evidence that this grand jury, this petit jury, and/or this jury foreperson were improperly selected.   There was no such evidence offered in postconviction, so presumably there was no such evidence available to trial counsel.  Thus, appellant failed to support his claim on the merits.

{¶114} We further note that even if appellant had established ineffective assistance of counsel in this regard, he still had to show prejudice.  He failed to show that any of the selection processes were flawed or that any of the results were the result of bigotry.

{¶115} Appellant next complains that his trial counsel did not attempt to suppress appellant's statement to the police on the grounds that his school records showed an I.Q. of 70 and 72 when he was 13 and 17 years old, respectively.  However, as the trial

---

3. Diane Wiley is the president of the National Jury Project Midwest and was retained by the Ohio Public Defender Office to evaluate whether the special jury venire drawn in State v. Davie, Case No. 91-CR-288 in Trumbull County, Ohio was representative of the population of African-Americans in Trumbull County at that time.

court stated in its judgment, those facts would not have affected its opinion that appellant gave a voluntary and self-serving statement to the investigators.

{¶116} A failure to move to suppress is not per se ineffective assistance of counsel unless there is prejudice. *State v. Loza* (1994), 71 Ohio St.3d 61, 83. The facts indicate that it would have been extremely unlikely that such a motion would have been granted. Even without this statement admitting the shooting, the physical evidence coupled with the numerous letters planning this murder were abundantly sufficient to convict him.

{¶117} Next, appellant contends that his trial attorneys conducted an inadequate investigation into the power and control that Roberts had over him, including her manipulation of him that was possible due to her superior intellect. There is no evidence in or out of the record to suggest that appellant was a reluctant or unwilling participant, or that Roberts had a superior intellect. As previously indicated, the defense of self-defense had little relevance to appellant's relationship with Roberts. Thus, the trial court properly denied this argument.

{¶118} Appellant then claims that no family members besides his mother were interviewed in preparation for the mitigation phase of the proceedings. Accordingly, he argues that Dr. McPherson's testimony was based upon an inadequate and incomplete social history.

{¶119} However, appellant fails to cite any new relevant or non-cumulative information which the jury did not already hear, and which could be considered as mitigating evidence. Thus, appellant failed to meet the burden placed upon him in postconviction relief proceedings.

{¶120} In the ninth cause of action, appellant submits that his trial counsels' actions during the culpability stage of the proceedings denied him his right to effective assistance of counsel.  Once again appellant raises the argument that his trial counsel did not adequately exploit the unique relationship between himself and Roberts, especially in regard to Roberts' role in the homicide.  By failing to demonstrate the existence of specific facts which he apparently claims were available to counsel, appellant has failed to properly support this claim.

{¶121} In his original petition under the tenth cause of action, appellant asserted that his trial counsels' actions during the culpability stage of the proceedings denied him his right to effective assistance of counsel.  However, appellant's tenth cause of action in his amended petition raised the issue of ineffective assistance of counsel during the mitigation phase of the proceedings rather than the culpability phase.  Thus, this court will address appellant's argument as amended.

{¶122} This claim was addressed, for the most part, in this court's analysis of appellant's fifth assignment of error.  The only new argument made is that the last minute substitution of Attorney Thomas Wright for Attorney James Lewis compromised his defense during mitigation.  Specifically, appellant asserts that Attorney Wright was not certified by the Supreme Court of Ohio to serve in a capital case, and he was new to the case.

{¶123} However, none of the exhibits presented by appellant in support of this claim demonstrate that Attorney Wright was ineffective.  Additionally, appellant was offered a continuance by the trial court to delay proceedings until Attorney Lewis could

recuperate, but the court's offer was rejected by appellant who stated that he wanted to proceed with Attorney Wright.

{¶124} Thus, this claim was properly denied by the trial court.

{¶125} Appellant's next argument under this assignment pertains to his claim regarding the performance of Dr. Sandra McPherson during the mitigation phase. Specifically, he contends that her preparation and actual testimony at trial was deficient in three respects:  (1) she did not calculate appellant's score on an I.Q. test correctly; (2) she did not perform the proper psychological testing on him; and (3) her testimony did not set forth any meaningful insight into his psychological development.

{¶126} As to the first assertion, this court would note that, pursuant to appellant's own evidentiary materials, the alleged errors in the calculation would have only resulted in a four-point change in the final result, i.e., from 84 to 80.  Under Ohio law, there is a rebuttable presumption that a criminal defendant is not mentally retarded if the result of his IQ test is greater than 70.  *State v. Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625.  Thus, the difference in appellant's I.Q. would not have changed his basic status under the intelligence scale.[4]  In light of the overwhelming nature of the aggravating circumstances in this case, this four-point error in calculation would not have altered the jury's weighing exercise in determining whether to recommend the death penalty.

{¶127} In relation to the second assertion, we would indicate that the determination of which psychological test to perform was clearly within the discretion of Dr. McPherson.  Although appellant's evidentiary materials were sufficient to show that

---

4.  In addition to recaiculating the final score based upon the findings of Dr. McPherson, the new psychologist also administered a new "I.Q." test on appellant.  Although the final score of the new test was different than the proper score under Dr. McPherson's test, it still did not fall within the range of scores which must be found in order for a person to be considered mentally retarded.

other tests could have been performed, the materials did not establish that Dr. McPherson had acted below the standard of care for psychologists in choosing which test to perform. In other words, there is no indication in the record that Dr. McPherson's actions did not fall within the acceptable range for her profession.

{¶128} Finally, as to the quality of Dr. McPherson's testimony, our review of the trial transcript shows that her testimony during the mitigation phase was clearly intended to emphasize certain facts about appellant's background, i.e., that he had attention deficit disorder and that he had been infatuated with Roberts. In the evidentiary materials attached to his postconviction petition, appellant merely raised the possibility that other aspects of his childhood should have been given greater emphasis by Dr. McPherson. There is nothing to suggest that Dr. McPherson's testimony was below the professional level of proper evaluation. Moreover, this disagreement in strategy is not sufficient to establish that appellant was denied access to proper expert assistance during his trial.

{¶129} Pursuant to the foregoing analysis, this court concludes that the trial court did not err in rejecting appellant's claims regarding the competency of Dr. McPherson. Thus, his eleventh argument lacks merit.

{¶130} Under his twelfth argument, appellant submits that the trial court should have vacated its original sentencing judgment because his evidentiary materials showed that the court's prior weighing exercise had been based on insufficient evidence. In support of this argument, appellant again cites Dr. McPherson's failure to refer to his miserable childhood during her testimony at trial.

{¶131} Simply stated, appellant's twelfth argument merely restates the basic points set forth under his eleventh argument.  That is, appellant asserts that the trial court did not base its weighing exercise upon the proper facts because Dr. McPherson failed to emphasize those facts in her testimony.  As to this point, this court would again indicate that the choice of which aspects of appellant's childhood to emphasize before the jury was a matter of strategy for trial counsel and professional judgment for Dr. McPherson.  After reviewing the transcript of the mitigation phase, this court concludes that the trial court did not err in finding that Dr. McPherson's testimony set forth a viable mitigation argument for appellant.

{¶132} Under his thirteenth argument, appellant contends that the trial court erred when it rejected his claim that the state's use of a lethal injection in the imposition of the death penalty constitutes cruel and unusual punishment.  In regard to this point, we would first indicate that this claim does not raise an issue pertaining to the propriety of appellant's criminal trial.  To this extent, a postconviction proceeding is not the proper legal context in which to litigate this issue; instead, this type of issue should be raised in a declaratory judgment or habeas corpus action.

{¶133} Moreover, as to the substance of this argument, our review of the relevant case law shows that the basic assertions raised in the evidentiary materials relating to this point have previously been rejected as insufficient to establish that Ohio's use of the lethal-injection method is unconstitutional.  See *Cooper v. Rimmer* (6th Cir., 2004), 358 F.3d 655.

{¶134} Under his fourteenth argument of the sixth assignment, appellant maintains that Ohio's postconviction relief procedure should be declared

unconstitutional because the statutes create so many procedural hurdles for a criminal defendant to overcome that it is simply too difficult to obtain relief.  As to this point, this court would first note that we have expressly held that the constitutionality of the postconviction procedure can only be properly challenged in a habeas corpus proceeding.  *State v. Wiles* (1998), 126 Ohio App.3d 71.  Furthermore, the appellate courts of this state have generally upheld the constitutionality of R.C. 2953.21 et seq.  See, e.g., *State v. Hutton*, 8th Dist. No. 76348, 2004-Ohio-3731.  In again raising this issue in the present case, appellant has failed to assert any new argument which would warrant the reconsideration of this matter.

{¶135} In the fifteenth cause of action, appellant contends that even if this court finds no merit to his first fourteen causes of action, the "cumulative effect" of those causes of action violated his constitutional rights.  Under the doctrine of cumulative error, a judgment can be reversed when the cumulative effect of numerous errors deprives a defendant of his constitutional rights, even if the individual errors are so small that not one in particular rises to the level of prejudicial error.  *State v. DeMarco* (1987), 31 Ohio St.3d 191, 196-197.

{¶136} However, it is clear appellant failed to demonstrate that even one cause of action amounted to harmless error.  Although there were some instances in which the trial court's res judicata analysis was incorrect, there was no need for any harmless error analysis in regard to the trial court's findings as to the actual substance of the

claims for postconviction relief.  To this extent, the cumulative effect amounts to nothing.

{¶137} Based upon the foregoing analysis, appellant's sixth assignment of error is without merit.

{¶138} The judgment of the trial court is hereby affirmed.


WILLIAM M. O'NEILL, J., concurs with Concurring Opinion,

COLLEEN MARY O'TOOLE, J., concurs.

———————————————

WILLIAM M. O'NEILL, J., concurring.

{¶139} I concur with the well-reasoned majority opinion, but write separately to emphasize the significance of this court's application of the doctrine of res judicata in a capital murder case.  Nowhere is the concept of "one bite at the apple" more important than when the state is seeking to impose the death penalty upon one accused of murdering another.  When a client is facing the death penalty, both the client and his counsel are on notice that decisions on trial strategies will have profound consequences.

{¶140} In a petition for postconviction relief, Jackson's counsel has raised the very serious question of racial imbalance in both jury selection and prosecution of capital murder cases in Trumbull County.  This is a constitutional question of significant import.  As stated by the Supreme Court of Ohio, "'the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial.'"[5]  The court went on further to hold that:

_____

5.  *State v. Fulton* (1991), 57 Ohio St.3d 120, 123, quoting *Taylor v. Louisiana* (1975), 419 U.S. 522, 528.

{¶141} "A defendant may also reasonably bring a federal equal protection challenge to the selection and composition of the petit jury by adducing statistical evidence which shows a significant discrepancy between the percentage of a certain class of people in the community and the percentage of that class on the jury venires, which evidence tends to show discriminatory purpose, an essential element of such cases."[6]

{¶142} In addition to the question of racial imbalance, appellant challenges the trial court's refusal to appoint an expert to assist him in researching and clarifying the extent of the problem.

{¶143} In support of this position, appellant's counsel directs this court's attention to the recently decided case of *United States v. Rodriguez-Lara*, which is clearly on point. As stated by the court:

{¶144} "The selection of a grand or petit jury in violation of either the equal protection or the fair cross-section guarantee is structural error that entitles a defendant to relief without a demonstration of prejudice."[7]

{¶145} In reversing the conviction, the federal appellate court went on to explain the inherent injustice in the denial of expert assistance in a statistical analysis case.

{¶146} "Rodriguez's failure to complete his prima facie case is not fatal to his appeal of the denial of his motion to have an expert appointed. Indeed, conditioning the entitlement to an expert on a defendant's establishing a prima facie case would make little sense: such a rule would provide assistance to a defendant **only upon a demonstration that he does not require it**. Instead, we must determine whether (1)

---

6. Id. at 123-124.
7. (Citations omitted.) *United States v. Rodriguez-Lara* (C.A.9, 2005), 421 F.3d 932, 940.

'reasonably competent counsel would have required the assistance of the requested expert for a paying client,' and (2) the defendant 'was prejudiced by the lack of expert assistance.'"[8]

{¶147} This court has recently addressed this very question in a postconviction petition dealing with the mental retardation of an individual who was found guilty in a capital murder case.  As we stated in *State v. Lorraine*:

{¶148} "[T]he logic utilized by the trial court, that Lorraine failed to present any evidence demonstrating that an expert is necessary to achieve a different result, falls in on itself.  An indigent, postconviction petitioner cannot be required to show that an expert is needed to prove he is mentally retarded if an expert would indeed be required to make that showing.

{¶149} "We conclude the trial court erred and abused its discretion in denying Lorraine's request for expert assistance for the purposes of demonstrating he is mentally retarded pursuant to *Atkins*[9]."[10]

{¶150} Unlike the matter at hand, the *Lorraine* decision was not hampered by the doctrine of res judicata, as the Supreme Court of Ohio had ruled in *State v. Lott* that the rights being protected in mental retardation/capital punishment cases were to be applied retrospectively.[11]  Thus, even though Lorraine was convicted in 1986, he could proceed with his petition for postconviction relief because of the retrospective application ordered by the Supreme Court of Ohio in *State v. Lott*.

---

8. (Emphasis added.)  Id. at 946, quoting *United States v. Nelson* (C.A.9, 1998), 137 F.3d 1094, 1101, fn. 2.
9. *Atkins v. Virginia* (2002), 536 U.S. 304.
10. *State v. Lorraine*, 11th Dist. No. 2003-T-0159, 2005-Ohio-2529, at ¶30-31.
11. *State v. Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625, at ¶17.

{¶151} The inquiry in this matter, however, does not stop with the question of whether or not the appointment of an expert would have assisted this appellant in this proceeding. Undoubtedly, it would have assisted him. However, in a res judicata and ineffective assistance of counsel hybrid analysis, there is the additional distinction to be made between theories of defense that should have been raised, and those that could have been raised. It is not possible to raise every single conceivable defense in every case. Nor is it logical to require defense counsel to waste his or her, or the court's, limited resources searching to the very end of every blind alley.

{¶152} The evidence in this case was overwhelming. Appellant fired the fatal shots. In my opinion, the most racially balanced and favorable jury in the world, composed of appellant's friends, relatives, and acquaintances, would have readily accepted that proposition. A self-defense theory was the only avenue open to defense counsel. When the strategic decision to mount the self-defense theory was in play, obviously any racial imbalance in the composition of the jury was also in existence on that same day. Counsel clearly could have explored that defense strategy at that time. He did not.

{¶153} Conversely, it is intellectually disingenuous to fault counsel for an unsuccessful self-defense strategy and for not turning every stone in his search for a different defense. In the instant matter, defense counsel made a defensible, tactical, and strategic decision to pursue a self-defense theory. It did not work. Pursuant to the doctrine of res judicata, defense counsel is not now required or permitted to change course and pursue a different strategy. As the trial court properly held, a defense that could have been raised, and was not, is barred by res judicata.

{¶154} I write also to defend the doctrine of res judicata.  Much attention is directed to the beneficial effect of the doctrine in bringing finality to a proceeding.  All trials must end at some point.  But there is a second, and perhaps more compelling, aspect to the doctrine.  In order for outcomes to be worthy of support, they must be the result of a fair trial.  And fairness at its core requires that all the cards be placed on the table at the same time.  I refer to that as the "could have, should have" aspect of res judicata.  Errors in proceedings must be raised and addressed at a time when they can reasonably be corrected.  It would be wrong to allow a party to remain silent prior to or during trial, where he has knowledge of a reversible error that could be corrected at the time, only to raise the error after he has been convicted and sentenced.  Under the doctrine of "invited error," "[a] party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make."[12]  To permit Jackson to pursue his claim at this time would be tantamount to condoning an invited error.  Such a proposition would reduce courts to the position of referees in an elaborate game of "gotcha" designed to determine who had the most skillful lawyer.  That is not the law in Ohio.

{¶155} In conclusion, I feel the trial court's ruling was correct.  Is there racial imbalance in the Trumbull County jury selection process?  I do not know.  Could that have been raised at the trial?  Yes.  Was it?  No.  Therefore, the trial court properly held that, as far as the composition of the jury is concerned, the doctrine of res judicata applies to bar this claim.

---

12. *Lester v. Leuck* (1943), 142 Ohio St. 91, paragraph one of the syllabus.

STATE OF OHIO          )            IN THE COURT OF APPEALS
                             )SS.
COUNTY OF TRUMBULL   )        ELEVENTH DISTRICT


STATE OF OHIO,

        Plaintiff-Appellee,

                                  JUDGMENT ENTRY

   - vs -

                                  CASE NO. 2004-T-0089

NATHANIEL JACKSON,

        Defendant-Appellant.


     For the reasons stated in the opinion of this court, the assignments of error are without merit.  It is the judgment and order of this court that the judgment of the trial court is affirmed.

                                     JUDGE JUDITH A. CHRISTLEY, Ret.,
                                     Eleventh Appellate District
                                     sitting by assignment.

COLLEEN MARY O'TOOLE, J., concurs,

WILLIAM M. O'NEILL, J., concurs with Concurring Opinion.


                                     F I L E D
                                COURT OF APPEALS

                             MAR 0 6 2006

                          TRUMBULL COUNTY, OH
                       KAREN INFANTE ALLEN, CLERK

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| Appellee-Appellee, | ) | |
| | ) | |
| -vs- | ) | Case No. 2004-TR-89 |
| | ) | |
| NATHANIEL JACKSON, | ) | *Our Response Due* |
| | ) | *MARCH 27, 2006* |
| Defendant-Appellant. | ) | |

---

## NATHANIEL JACKSON'S MOTION FOR RECONSIDERATION

---

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney

Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor Administration Building
Warren, Ohio 44481

COUNSEL FOR APPELLEE

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio 43215
(614) 466-5394
Facsimile: (614) 644-0708

COUNSEL FOR APPELLANT

IN THE COURT OF APPEALS
ELEVENTH APPELLATE DISTRICT
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )
                                        )
      Appellee-Appellee,               )
                                        )
-vs-                                    )        Case No. 2004-TR-89
                                        )
NATHANIEL JACKSON,                      )
                                        )
      Defendant-Appellant.             )

---

## NATHANIEL JACKSON'S MOTION FOR RECONSIDERATION

---

      Nathan Jackson, pursuant to App. R. 26(A) moves this Court to reconsider its

March 6, 2006 Opinion and Judgment.  He has attached hereto a Memorandum of Law which he

incorporates in this Motion.

                                Respectfully submitted,

                                DAVID H. BODIKER
                                Ohio Public Defender

                                RANDALL L. PORTER - 0005835
                                Assistant State Public Defender

                                Office of the Ohio Public Defender
                                8 East Long Street 11th Floor
                                Columbus, Ohio  43215
                                (614) 466-5394
                                Facsimile:  (614) 644-0708

                                COUNSEL FOR NATHANIEL JACKSON

## MEMORANDUM OF LAW

### I.    Introduction

On March 6, 2006, this Court rendered its opinion and judgment affirming the trial court's dismissal, without permitting any factual development, of Nathaniel Jackson's amended post-conviction petition.  That court had sentenced Nathaniel Jackson to death.

This Court should, pursuant to App. R. 26(A), reconsider that judgment for the reasons identified herein. An appellate court should grant a motion for reconsideration when it calls to attention of the court an obvious error in its prior decision or raises an issue that was not considered at all or was not fully consider in the earlier decision.  *Woerner v. Mentor Exempted Village School District Board of Education*, 84 Ohio App. 3d 844, 846 (1993); *Matthews v. Matthews*, 5 Ohio App. 3d 140, 143 (1982).  A motion for reconsideration should not be granted where the moving party, in its motion, merely re-raises the same arguments contained in its initial briefing.  *State v. Owens*, 112 Ohio App.3d 334, 336 (1996)[1].

In the present case, this Court incorrectly stated that Nathaniel Jackson had failed to submit *any* evidence *de hors* the record in support of the claim that there was an underrepresentation of African-Americans in the petit jury venire.   With respect to his ineffectiveness claim in the trial phase, this Court perfunctorily dismissed the supporting evidence, thereby not fully considering the significance of that evidence.

---

[1] As a result of the restrictions that the courts have placed on the scope of motions filed pursuant to App. R. 26(A), Nathaniel Jackson does not request this Court to reconsider its entire decision.  His decision to not cite to additional errors in this Court's opinion, should not be construed as an implicit waiver of any other error.  Instead it should be construed as reflecting the limitations imposed in the cases interpreting App. R. 26(A) and the decision of undersigned counsel to raise the other errors in Nathaniel Jackson's appeal to the Ohio Supreme Court, and if unsuccessful, in the federal courts pursuant to 28 U.S.C. 2241 *et seq*.

II.     **This Court erred when it determined that the challenge to the venire was barred by** *res judicata*

In the Seventh Cause of Action Nathaniel Jackson challenged the manner in which the trial court and jury commissioners chose the individuals who were included in the venire from which his petit jury was chosen. Nathaniel Jackson submitted six exhibits to buttress his claim that the underrepresentation of African-Americans in his venire was not due to chance.  [T.d. 307, Exhibits 1, 36-39, 55].  This included the affidavit of Diane Wiley, President of the National Jury Project, Midwest.  She documented that minorities had been systemically culled from the petit jury venire in another capital case before the same trial judge. [*Id.* at 39].

This Court made the following findings concerning Nathaniel Jackson's challenge to the venire:

> The *fifth* claim made by appellant is that the petit jury venire was selected in a racially discriminatory manner.... Realistically, the simple unexplained absence of African-Americans from the jury venire would be insufficient for a successful appeal.  Evidence beyond the record would certainly be necessary.  However, in raising this in his post-conviction challenge, appellant *still failed to offer or proffer any new evidence* to support his post-conviction petition.  (emphasis added)

[Slip Opinion, p. 22]

This Court was correct in its findings that the issue could not have been raised on direct appeal.[2] This Court's other findings as to this claim, however, were in error.  First, the petit venire discrimination issue was raised in the Seventh Cause of Action, not the Fifth Cause of Action.  More importantly, Nathaniel Jackson did support the Cause of Action with evidence concerning two other capital cases before the same trial judge in which there was an underrepresentation of African Americans. That documentation was sufficient to overcome *res judicata*.  It was also sufficient to establish a *prima facie* case that shifted the burden of proof to

---

[2] Nathaniel Jackson did not raise this issue on direct appeal, precisely for the reason identified by this Court.

3

the prosecution. A defendant establishes a prima facie case of discrimination by demonstrating that there has been a significant underrepresentation of the group in question over a period of time. *Hernandez v. Texas*, 347 U.S. 475, 480 (1954).  *Castaneda v. Partida*, 430 U.S. 482, 494-95 (1977); *Duren v. Mississippi*, 439 U.S. 357, 366 (1979).[3]

This Court made a similar error when it addressed the failure of trial counsel to raise a challenge to the petit jury venire.  This Court began its analysis by citing to the fact that the "only evidence that appellant provided the trial court to support his claim was a list of names and addresses that were used for the petit jury venire, and a report provided by Diane Wiley that addressed the Roderick Davie murder case from 1992." [Slip Op. p. 31, footnote omitted].  This Court proceeded to declare that Nathaniel Jackson never submitted information to "identify the race of the jurors." [*Id.*].  However, the race of all of the prospective jurors who appeared for jury duty was contained on the face of the record. [Tr. 1846-48].  One-hundred and forty-one individuals appeared and only was African American [*Id.*]. This Court faulted the Diane Wiley's affidavit because it "was over ten years old." [Slip Op. p. 31].  The Wiley report was signed on January 31, 2000.  [Td. 307, Exhibit 39].  Thus the report was not ten, but two years old at the time of Nathaniel Jackson's trial.  The fact that the report involved an older case supports the conclusion that discrimination which existed in the present case has been a systemic problem in Trumbull County. The Supreme Court has warned against examining only a single venire when addressing jury discrimination. *Patton v. Mississippi*, 332 U.S. 463, 468 (1947) ("The above statement of the Mississippi Supreme Court illustrated the unwisdom of attempting to disprove

---

[3] This Court observed "in disposing of appellant's contentions concerning the underrepresentation of African-Americans on the petit jury, this court considered appellant's two supplemental submissions which were filed after oral arguments in this appeal. [Slip Op. p. 28, n.2]  There were in fact three such submissions. In those submissions Nathaniel Jackson referenced sixteen United States Supreme Court cases.  The majority opinion cited to none of the Supreme Court cases cited therein or any other United States Supreme Court addressing race in the selection of venires.

racial discrimination in the selection of jurors by percentage calculations applied to the composition of a single venire").

III.   **This Court erred when it determined that the trial phase ineffectiveness claim was barred by res judicata**

In the Ninth Cause of Action Nathaniel Jackson asserted that his trial counsel, in the innocence-guilt phase unreasonably failed to present evidence minimizing his role in the murder *vis-a-vis* Donna Roberts and he was prejudiced by this failure. [T.d. 306, 307]. Donna Roberts was much more intelligent than Nathaniel Jackson [T.d. 307, Exhibits 44, 68, 56, 57]. Ms. Roberts' had been involved in prior relationships in which she curried favor with African-American males by supplying them with clothes, money, fast cars and sex [*Id.*, Exhibits 65, 66, 67]. She supplied Nathaniel Jackson with money, sex, clothes, and a car [*Id.* Exhibits 49-53, 58, 69].

This Court made the following observations when it determined that this constitutional violation was barred by *res judicata:*

> The *Sixth* Claim presented by appellant is that he did not receive effective assistance of counsel in the trial phase. Appellant *argues* that he supported his sixth claim with copies of nine police reports concerning new evidence of ineffective assistance of counsel. The trial court, however, correctly observed that these "new" exhibits only raised facts and theories *that were patently obvious from the face of the record.* Hence there is no demonstration of ineffective assistance as to those nine documents. (emphasis added)

These findings were in error. First, Nathaniel Jackson raised his innocence-guilt phase claim in the Ninth Cause of Action, not the Sixth Cause of Action. Second, Nathaniel Jackson did support this Cause of Action with nine police reports.[4] That is a verifiable fact. It is not an issue subject to debate or argument. Third, the facts contained in those reports are not

---

[4] He also submitted other exhibits, including affidavits, which this Court did not reference in its Opinion.

5

patently obvious on the face of the record in the innocence-guilt stage. [5] Those facts do not exist any place in that phase of the proceedings. Donna Jackson's history of manipulating African-American males and her superior intelligence would certainly have provided the jury with an explanation as to the reason that Nathaniel Jackson was involved in a murder from which he had nothing to gain.

IV.    Conclusion: This Court should grant Nathaniel Jackson's Motion

The errors that Nathaniel Jackson has pointed out herein are of the type that Ohio courts have recognized can be corrected by the granting of a Motion for Reconsideration. *See* Section I, *supra*. There are especially compelling reasons that the Motion should be granted in this case.

The United States Supreme has always recognized a need for a heightened degree of reliability in capital cases. *Ford v. Wainwright*, 477 U.S. 399, 410 (1986); *Gardner v. Florida*, 430 U.S. 349, 362 (1977); *Johnson v. Mississippi*, 486 U.S. 578, 585-86 (1988). The need for reliability extends to appellate procedures. *Sochor v. Florida*, 504 U.S. 527, 540-41 (1992). In addition, this Court's two incorrect findings involve causes of action addressing race, 1) the failure of trial counsel to address the Caucasian co-defendant's superior intellectual and monetary resources and 2) the seating of an all white jury. In this last term the United States Supreme Court struck down a death sentence that was the product of a discriminatory process. *Miller-El v. Dretke*, 125 S.Ct. 2317, 2340 (2005).

The "duty to administer justice occasionally requires busy judges to engage in a detailed review of the particular facts of a case...The current popularity of capital punishment

---

[5] This Court subsequently attempted to call into the question the credibility of the information contained in the police reports by referencing them as "nothing more than uncertified statements." [Slip Op. p. 23]. This Court never attempted to explain the manner in which the information in question could both be "patently obvious from the face of the record" and at the same time be "nothing more than uncertified statements."

makes this 'generalized principle' especially important." *Kyles v. Whitely*, 514 U.S. 419, 455 (1995)(citations omitted).   In the present case the concurring opinion's response to its own rhetorical question "Is there racial imbalance in the Trumbull County jury selection process? I do not know" is inconsistent with the Supreme Court pronouncement in *Kyles* and that Court's numerous holdings that capital sentences will only be upheld if they are the product of procedures which promote reliability and eliminate racial discrimination.

WHEREFORE Nathaniel Jackson requests this Court to grant this Motion for Reconsideration and remand this case for factual development so this Court, will have a sufficient record from which to conduct a detailed analysis of Nathaniel Jackson constitutional claims.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street - 11th Floor
Columbus, Ohio  43215
(614) 466-5394
Facsimile:  (614) 644-0708

COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **Nathaniel Jackson's Motion for Reconsideration** was forwarded by first-class, postage prepaid U.S. Mail to Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio 44481 on this the 15th day of March, 2006.

RANDALL L. PORTER
Assistant State Public Defender

COUNSEL FOR NATHANIEL JACKSON

232871

IN THE ELEVENTH DISTRICT COURT OF APPEALS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )
                                        )
        Plaintiff-Appellee              )
                                        )        CASE No.  2004-T-0089
-vs-                                    )
                                        )
                                        )
NATHANIEL E. JACKSON                    )        STATE'S ANSWER TO
                                        )        APPELLANT'S APP.R. 26(A)
        Defendant-Appellant             )        APPLICATION TO RE-OPEN
                                        )

**F I L E D**
COURT OF APPEALS

MAR 2 1 2006

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

Now comes the Plaintiff-Appellee, the State of Ohio ("State"), by and through the

undersigned counsel, and for the reasons listed below, urges this Court to OVERRULE

Defendant-Appellant Nathaniel E. Jackson's ("Appellant") "Motion for Reconsideration" filed

March 16, 2006. Appellant asks this Court to reconsider its decision of March 6, 2006, wherein it

affirmed the decision by the Trumbull County Common Pleas Court to dismiss his petition for

postconviction relief without hearing. See *State v. Jackson*, 11th Dist. No. 2004-T-0089, 2006-

Ohio-1007.

By way of introduction, App. R. 26 does not provide specific guidelines when a party to

an appeal asks a reviewing court to reconsider or modify a prior decision. *State v. Owens* (1996),

112 Ohio App. 3d 334, 335. In *Mathews v. Mathews* (1982), 5 Ohio App.3d 140, 143, the court

held:

"The test generally applied [upon the filing of a motion for reconsideration in a

COPY

court of appeals, pursuant to App.R. 26(A) ] is whether the motion for reconsideration calls to the attention of the court an obvious error in its decision or raises an issue for our consideration that was either not considered at all or was not fully considered by [the court] when it should have been."

An application for reconsideration is not designed to be used in situations where a party simply disagrees with the logic employed or conclusions reached by the court. *Owens*, supra, at 336. Moreover, it is a bedrock principle of postconviction procedure that "a final judgement of conviction bars the convicted defendant from raising and litigating in any proceeding, except on appeal from that judgment, any defense or claimed lack of due process that was raised , or could have been raised by the defendant at the trial which resulted in the judgment of conviction or appeal from that judgment." *State v. Perry* (1967) 10 Ohio St. 2d 175, 180.

Appellant first criticizes this Court's opinion for its treatment of the trial court's rejection of his claim that the selection process for his petit jurors was tainted by the "systematic exclusion of African-Americans." Appellant alleges this Court and the trial court misapplied the doctrine of res judicata to this claim. But Appellant's App. R. 26(A) application must fail because it does not cite to an "obvious error" which would have changed the outcome of this appeal, and because this Court properly applied the doctrine of res judicata in affirming the trial court's decision.

Appellant faults this Court for finding that the Diane Wiley "affidavit" was over ten years old. True, the affidavit is a mere six years old having been signed in 2000. That notwithstanding, the date stamp on the Wiley report is inconsequential. Her report referenced the *Roderick Davie* capital murder trial, not the *Nathaniel Jackson* trial. The Roderick Davie trial occurred in 1992, ten years before Appellant was tried and convicted. Even with a 2000 date,

the Wiley affidavit was clearly available to Appellant in plenty of time for his 2002 trial and could have been used to challenge the venire at that time. Such evidence which is "known and available" to the defendant does not constitute evidence to prevent the application of res judicata. *State v. Dempsey*, (June 15, 2000), 8th Dist. No. 76386, *6; *State v. McCaleb*, 11th Dist. No. 2004-L-003, 2005-Ohio-4038, at ¶21.  Therefore, the trial court and this Court properly applied the doctrine of res judicata to this claim.

Additionally, this Court made two points that demonstrate why the Wiley affidavit does not provide sufficient operative *facts* as required by R.C. 2953.21 (C) and *State v. Calhoun* (1999), 86 Ohio St. 3d 279, 282,  to support his claim of racial discrimination in jury selection. Neither the Wiley report, nor any of the other "evidence" submitted by Appellant, indicates the race of the jurors or the methods by which they were chosen.  "Even if we were to assume all of the names [of jurors] were non African-Americans, that evidence does not address the 'selection' process." *Jackson,* at ¶113.

Moreover, neither the Wiley report, nor the rest of the evidence submitted by Appellant shows that there was a *systematic exclusion* of minorities in the petit or grand jury selection process. Without a demonstration of a systematic exclusion of certain members of his venire, he cannot support his claim. *State v. Davie* (1997), 80 Ohio St. 3d 311, 316, 317.  Therefore, there is no "obvious" error that this Court must correct by reconsidering its opinion.

It cannot go unmentioned that Appellant in his application states that Ms. Wiley "documented that minorities had been systemically culled from the petit jury in another capital case before the same trial judge." Application at page 3.  This is a complete misrepresentation of the Wiley report.  Wiley never demonstrated "systematic culling" in any Trumbull County case;

she instead made a wholly unsupported theory of same based on who sat on the Davie jury, not on how they were selected.   To this day, Roderick Davie's conviction stands undisturbed by any state or federal court even with Ms. Wiley's groundless insights.

As for trial counsel's "failure" to raise the Wiley affidavit or report at Appellant's trial, such would have been to little avail without proof that jurors were (1) systematically culled from Appellant's case (2) *because* of their race. Without these two showings, which appear nowhere in the record, trial counsel cannot be branded as ineffective pursuant to *Strickland v. Washington* (1984) 466 U.S. 668. *Strickland* holds  that for a criminal defendant to succeed on a claim of ineffective assistance of counsel, he must demonstrate that counsel's performance was deficient, and that the defendant was prejudiced by that performance. Id. at 687.

In the context of an ineffective assistance of counsel claim, this Court held, "[a] proper challenge on this subject at trial would have required counsel to present evidence that this grand jury, this petit jury, and/or this jury foreperson were improperly selected." *Jackson,* supra, at ¶113.  Since no such evidence was available  for the postconviction exercise, is it unreasonable to believe it would have been available to trial counsel. Moreover, "even if appellant had established ineffective assistance of counsel in this regard, he still had to show prejudice.  He failed to show that any of the selection processes were flawed or that any of the results were the results of bigotry." Id. at ¶114.  Therefore, Appellant could not demonstrate a *Strickland* violation with or without the application of res judicata.

For these reasons, this Court properly affirmed the trial court's findings that Appellant's claims of a racially culled jury are barred by the doctrine of res judicata.  Thus, there is no "obvious error" to correct.

Appellant next claims error in this Court's opinion that it again misapplied the doctrine of res judicata in dismissing Appellant's claim that defense counsel failed to properly minimize Appellant's role in the killing by capitalizing on co-defendant Donna Roberts' penchant for African-American males and her ability to manipulate the Appellant. First, any claims that the jury was totally clueless as to the fact that Appellant and Roberts shared a mutual infatuation with each other and with victim Robert Fingerhut's money is belied by the record. The jury had before it stacks of letters and recorded phone conversation wherein the couple express their love and lust for each other, and their plot to kill Fingerhut. In addition to these well preserved expressions of lust, greed and homicidal intent, the jury heard mitigation testimony from Dr. Sandra McPherson who characterized the Appellant/Roberts relationship as "very destructive." She described how Roberts bolstered Appellant's ego, offered him structure and financial stability. (T.p. Vol.16, p. 56-58). Since the jury heard this testimony, evidence of Roberts' frustrated sexual liaisons with Santiago Mason, or her harassing bus station security for allegedly hassling black customers, or her treating three or four "black guys" to hair cuts would have been at best cumulative or irrelevant, and probably inadmissible.

Moreover, Appellant in his postconviction petition failed to present *any* evidence that Roberts' role in the Fingerhut shooting was more involved than what was presented to the jury. Indeed, Appellant, in his video-taped confession tape, never denied killing Fingerhut. He claimed the shooting was in self-defense and told police Roberts had nothing to do with it. (State's Supp. Ex. 4, p. 32). Thus, even if this Court erred in concurring with the trial court's application of the doctrine of res judicata (and the State does not concede or imply that it did), Appellant failed to submit sufficient operative *facts* as to why trial counsel were ineffective in

failing to promote a Donna-made-me-do-it defense. As this Court correctly notes in its opinion, "[t]here is no evidence in or out of the record to suggest that appellant was a reluctant or unwilling participant, or that Roberts had a superior intellect. As previously indicated, the defense of self-defense had little relevance to appellant's relationship with Roberts." *Jackson* at ¶117.

Neither this Court, nor the trial court, will find a viable claim of ineffective assistance of counsel by their "failure" to exploit Roberts' alleged superior intelligence. The nine police reports submitted by Appellant are not "verifiable facts" as to this claim. As for Appellant's claim that he had "nothing to gain" by killing Fingerhut, one need only review the record in this case to see "nothing" could be further from the truth. Even with the $550,000 life insurance proceeds earmarked for Roberts, Appellant clearly anticipated a life-style upgrade with the cars, drugs, and a shared residence in the suburbs with Fingerhut's demise.

Thus, the trial court's dismissal of the claim is legally supported, and this Court committed no obvious error in affirming the dismissal.


## CONCLUSION

The trial court properly dismissed Appellant petition without hearing because the above claims were rightly barred by the doctrine of res judicata. Even if this Court reconsidered its position regarding the application of res judicata, the petition was devoid of the sufficient operative facts necessary to merit a hearing. Thus, this Court made no obvious error in affirming the trial court's dismissal.

Therefore, this Court must overrule Appellant's application for reconsideration.

Respectfully submitted,
DENNIS WATKINS (#0009949)
Prosecuting Attorney


LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High Street, N.W.
4th  Floor, Administration Building
Warren, Ohio  44481
Telephone No.:  (330) 675-2426

COUNSEL FOR PLAINTIFF-APPELLANT,
THE STATE OF OHIO


<u>CERTIFICATION</u>

I do hereby certify that a copy of the foregoing motion  was sent by ordinary U.S. Mail on
this 21st Day of March, 2006, to Attys. Randall Porter(#0005835), and David Bodiker, Counsel
for Appellant Nathaniel Jackson, Assistant State Public Defender, Office of the Ohio Public
Defender, 8 East Long St. 11th Floor, Columbus, Ohio  43215.


LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney



Not Reported in N.E.2d
Not Reported in N.E.2d, 2000 WL 777003 (Ohio App. 8 Dist.)
**(Cite as: 2000 WL 777003 (Ohio App. 8 Dist.))**

Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Eighth District, Cuyahoga County.
STATE of Ohio Plaintiff-Appellee
v.
Jack M. DEMPSEY Defendant-Appellant
**No. 76386.**

June 15, 2000.

Character of Proceeding: Civil appeal from Court of Common Pleas Case No. CR-336481. Affirmed.

William D. Mason, Cuyahoga County Prosecutor, L. Christopher Frey, Assistant, Prosecuting Attorney, Cleveland, for Plaintiff-Appellee.

Philip J. Korey, Esq., Cleveland, for Defendant-Appellant.

JOURNAL ENTRY AND OPINION

PORTER, J.

*1 Defendant-appellant Jack M. Dempsey appeals from the denial of his petition for post-conviction relief arising from his convictions following a jury trial for aggravated arson (R.C. 2909.02) and burglary (R.C. 2911.12). Defendant contends that the trial court erred in not holding an evidentiary hearing because his petition asserted that evidence outside the record established ineffective assistance of counsel; the State's failure to timely disclose exculpatory materials prejudiced him; and the trial court should have granted a continuance of the trial. We find no reversible error and affirm.

This case arose out of a fire purposely set at a commercial/residential building at 11202 Lorain Avenue, Cleveland, Ohio around 11:00 p.m. on March 11, 1995. Thomas Padmonick, living upstairs with his two daughters, smelled smoke, called 911 and evacuated the building. The Cleveland Fire Department responded and extinguished the blaze.

Arson investigators were called in. They discovered broken glass in the back door of the building and two points of origin for the fire confirming suspicions that the fire was deliberately set.

While fire fighters were searching the basement for the electrical shut-off they found defendant in the basement lying unconscious on his stomach with his shirt pulled over his head. After CPR, defendant was taken to the hospital and was eventually treated for severe smoke inhalation and diagnosed with retrograde amnesia causing him to forget the events surrounding the fire.

Defendant claimed at trial that on the night of the fire he went to the Dollhouse, a strip club, ordered a non-alcoholic beer and passed out after drinking same. Defendant claims he has no recollection after passing out, including how he ended up in a burning building. However, he argues that Steve Gallegos, a bouncer at the Dollhouse, drugged him and then placed him in the basement of the building while setting the fire.

Steve Gallegos was the ex-boyfriend of Jean Tomusko, a friend of defendant's. Ms. Tomusko had recently discontinued her relationship with Mr. Gallegos after she discovered that he had been working at the Dollhouse and after he asked her daughter Lisa to be a dancer. Defendant allegedly went to the Dollhouse on the night of the fire to see if Gallegos was still working there.

Additional facts are contained in this Court's opinion affirming defendant's convictions on his direct appeal in State v. Dempsey (Nov. 20, 1997), Cuyahoga App. No. 71479, unreported, reversed on a sentencing issue only in 83 Ohio St.3d 107 (1998).

On June 2, 1997, defendant filed his petition for post-conviction relief (R.C. 2953.21). The trial court dismissed the petition without a hearing and entered findings of fact and conclusions of law on May 5, 1999, from which this appeal was taken.

We will address defendant's assignments of error in the order asserted and together where it is appropriate for discussion.

I. THE TRIAL COURT ERRED IN DISMISSING WITHOUT A HEARING BASED ON *RES JUDICATA* ALL OF THE COUNTS ALLEGED IN THE PETITION FOR POST-CONVICTION RELIEF.

*2 II. THE TRIAL COURT ERRED IN DISMISSING COUNT ONE OF PLAINTIFF'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING WHERE THE EVIDENCE OUTSIDE THE TRIAL RECORD DEMONSTRATED THAT THE FAILURE TO GRANT A CONTINUANCE DEPRIVED THE PETITIONER OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS, THE COMPULSORY PROCESS AND FAIR TRIAL PROVISIONS OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE APPLICABLE PROVISIONS OF THE OHIO CONSTITUTION.

III. THE TRIAL COURT ERRED IN DISMISSING COUNT TWO OF PLAINTIFF'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING WHERE THE EVIDENCE OUTSIDE THE TRIAL RECORD DEMONSTRATED THAT THE PETITIONER WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL AND DUE PROCESS AND HIS FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY THE FAILURE OF COUNSEL TO PROPERLY INVESTIGATE, INTERVIEW, LOCATE AND PRESENT THE TESTIMONY OF MATERIAL WITNESSES WHO WOULD CORROBORATE THE DEFENSE'S THEORY AND THE DEFENDANT'S TESTIMONY.

"According to the post conviction relief statute, a criminal defendant seeking to challenge his conviction through a petition for post conviction relief is not automatically entitled to a hearing." *State v. Calhoun* (1999), 86 Ohio St.3d 279, 282, citing *State v. Cole* (1982), 2 Ohio St.3d 112. The pivotal concern in determining whether to grant a hearing on a motion for post-conviction relief is whether there are substantive grounds for relief which would warrant a hearing based upon the petition, the supporting affidavits, and the files and records of the case. *State v. Swortcheck* (1995), 101 Ohio App.3d 770, 772; *State v. Strutton* (1988), 62 Ohio App.3d 248.

The post-conviction remedy statute, R.C. 2953.21(C), states in pertinent part:
  * * * Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. The court reporter's transcript, if ordered and certified by the court, shall be taxed as court costs. If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal.

Pursuant to R.C. 2953.21(C), the trial court dismissed defendant's post-conviction petition and issued findings of fact and conclusions of law on each issue raised in the petition. (Findings of Fact and Conclusions of Law filed May 5, 1999).

This Court stated the test to be applied in determining the necessity of a hearing in *State v. Pariseau* (Dec. 15, 1994), Cuyahoga App. No. 67496, unreported at 4-5:
  *3 A petition for post-conviction relief may be dismissed without a hearing when the petitioner fails to submit with his petition evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. *State v. Jackson* (1980), 64 Ohio St.2d 107. The test to be applied is "whether there are substantive grounds for relief that would warrant a hearing based upon the petition, the supporting affidavits and the files and records in the case." *State v. Strutton* (1988), 62 Ohio App.3d 248, 251. A petitioner satisfies his initial burden by submitting evidence outside the record sufficient to avoid dismissal. See *State v. Williams* (1991), 74 Ohio App.3d 686, 692.

We find, as did the trial court, that defendant's assignments of error are barred by the doctrine of *res judicata*. Because post-conviction petitions are *quasi*-civil, any claim that was or could have been raised at trial or on appeal is barred by the doctrine of *res judicata*. The Ohio Supreme Court has held:
  Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.
*State v. Perry* (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus.

However, competent, relevant, and material evidence *de hors* the record may defeat the application of *res judicata*. *State v. Lawson* (1995), 103 Ohio App.3d 307. However, this evidence must demonstrate that the petitioner could not have appealed the constitutional claim by use of information found in the original record. *Id.*

Defendant states that he submitted ample evidence outside of the record that he was "drugged and transported from the Dollhouse to the Lorain Avenue building and abandoned after the arson was committed by Steve Gallegos and/or others." (Aplt's Brf. at 14). In support of his petition for post-conviction relief, defendant attached the affidavit of Kathryn Thomas (defendant's trial counsel); the affidavit of Stephanie Wyant (a dancer at the Dollhouse); the deposition testimony of John Yatson (Chief of the Arson Unit of the Cleveland Fire Department); the affidavit of Katherine Hill (a friend of defendant); the affidavit of Jesus Cruz (an investigator for the Cuyahoga County Public Defender's Office); the affidavit of Jean Tomusko (a friend of defendant who dated Steve Gallegos); the affidavit of

Jackson Apx. Vol. 17
Page 182

Lisa Tomusko (daughter of Jean Tomusko); the deposition testimony of Julie Milano (owner of the Dollhouse); the deposition testimony of Andrew Segedy (owner of the Lorain Avenue building); and the affidavit of Thomas Tomusko (son of Jean Tomusko).

Defendant summarized the contents of the above testimony attached to his petition as follows:
*4 Mr. Segedy: [Owner of the Lorain Ave. building] He was threatened by a Mr. Gallo and Mr. Oritiz (sic) before the fire had occurred. There were threats of "Mafia."
Stephanie Wyant: [Former dancer at the Dollhouse] Recounts the evening of the fire, and confirms the presence of Jack Dempsey and Steve Gallegos at the Dollhouse, and the apparent drugging of Jack Dempsey by Steve Gallegos. Miss Wyant also discussed the later finding of the keys by Julie Milano at the Dollhouse, the description of which matched the keys of Jack Dempsey.
Chief Yatson: Confirmed that Miss Wyant provided a statement to him.
Julie Milano: [Owner of the Dollhouse] Found keys as noted above and spoke of the violent character of Steve Gallegos.
Jean Tomusko: [Friend of defendant] Gallegos told her that he would harm Jack Dempsey after seeing Dempsey's picture at her house.
Kathryn Hill: The keys described by Stephanie Wyant matched those of Jack Dempsey.
(Aplt's Brf. at 13-14).

As discussed above, in order to defeat the application of *res judicata*, defendant must present competent, relevant, and material evidence *de hors* the record that demonstrates that the defendant could not have raised these issues on direct appeal by use of information found in the original record. It is clear from the record before us that Mr. Segedy and Chief Yatson testified at defendant's trial. Regarding the other witnesses, they were known to defendant but trial counsel chose not to call them to testify. "[I]t is well established that counsel's decisions concerning which witnesses to call at trial fall within the realm of trial strategy and tactics and generally will not constitute ineffective assistance of counsel." *State v. Gillespie* (Mar. 9, 2000), Cuyahoga App. No. 75918, unreported, quoting *State v. Smith* (1996), 115 Ohio App.3d 419, 426.

All of the above witnesses were known to defendant at the time of trial. Accordingly, we find that this evidence was available on direct appeal when defendant was represented by new counsel and was therefore not evidence *de nors* the record as defendant asserts.

Defendant asserts that the trial court erred in dismissing his petition for post-conviction relief without an evidentiary hearing where the evidence outside of the record demonstrated that his motion for a continuance should have been granted. We find that this issue was properly dismissed on *res judicata* grounds.

The decision whether or not to grant a motion for continuance is a matter within the discretion of the trial court. *State v. Unger* (1981), 67 Ohio St.2d 65. In *Unger*, the Ohio Supreme Court stated:
The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion.
*Id.* at 67, citing *Ungar v. Sarafite* (1964), 376 U.S. 575. The term "abuse of discretion" connotes more than an error of law or judgment, it implies that the court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

*5 The record reflects that the trial court's failure to grant the continuance in question was raised by the defendant and fully litigated on his direct appeal. It is well established that issues cannot be considered in post-conviction proceedings where they have already been fully litigated on direct appeal. *State v. Perry* (1967), 10 Ohio St.2d 175, paragraph seven of the syllabus. On direct appeal, this Court held that the trial court's failure to grant defendant's request for a continuance was not violative of the right to effective assistance of counsel, due process, the compulsory process and fair trial provisions of the Sixth and Fourteenth Amendments to the U.S. Constitution. *State v. Dempsey* (Nov. 20, 1997), Cuyahoga App. No. 71479, unreported. Therefore, absent competent, relevant, and material evidence *de hors* the record that defendant could not have raised this issue on direct appeal, this claim is barred by *res judicata*.

On May 31, 1996, the defendant first filed a motion for continuance. Said motion was granted on June 5, 1996, with a new trial date set for August 12, 1996. As a result, defendant was given an additional two months to investigate and prepare for trial. On August 2, 1996, defendant filed another motion for continuance which the trial court denied. On the August 12, 1996 trial date, defense counsel orally requested a continuance on the basis that co-counsel was ill and that an allegedly exculpatory witness had just been made known to the defense. This Court addressed these very issues in the original direct appeal and found no abuse of discretion in the trial court's denial of the continuance. *Dempsey, supra.*

Defendant asserts that *res judicata* does not apply to this claim because he has presented new evidence to establish the trial court's error in denying the continuance. In support of this assertion, defendant relies on the affidavits of defense counsel Kathryn Thomas and investigator Jesus Cruz attached to his petition. In her May 30, 1997 affidavit, Ms. Thomas stated:
On August 2, 1996, I filed a Motion for Continuance based on Mr. Cruz's having only met Jack Dempsey on July 29, 1996. Also, Mr. Cruz had a vacation planned and needed until September 23, 1996 to properly investigate the

matter. Mr. Cruz's affidavit was attached to the Motion for a Continuance. I asserted in the motion that the continuance was necessary to provide the effective assistance of counsel.
(Thomas Aff. at ¶ 11). Ms. Thomas attached to her August 2, 1996 motion for continuance, an affidavit from Mr. Cruz in which he stated:

> On July 22, 1996 Mr. Svekric left the Public Defender's Office for a job with the Mayor's office and he returned all of his case files. No significant work has been completed on [the Dempsey] file.
> On July 29, 1996 I met with the client and his counsel, Kathryn A. Thomas.
> Due to the nature of this case and the amount of documentation to review and witnesses to contact, I am unable to complete the investigation in time to allow the attorneys to prepare for trial.
> *6 I have a scheduled vacation from August 19, 1996 to September 6, 1996. In my professional opinion, I need at least until September 23, 1996 to properly complete the criminal investigation in this matter.

The defendant attached a similar affidavit from Mr. Cruz in support of his petition for post-conviction relief in which Mr. Cruz stated:

> As a professional investigator, I respectfully submit there was insufficient time to locate and interview the witnesses and to investigate all of the circumstances surrounding the case. I signed an affidavit which was filed with the court when Kathryn Thomas submitted a Motion for a Continuance of the August 12, 1996 trial date.
(Cruz Aff. at ¶ 11).

These affidavits do not constitute evidence *de hors* the record that was not in existence or available to defendant in time to support his direct appeal. These statements both involved Mr. Cruz's inability to thoroughly investigate the witnesses prior to trial. Furthermore, the August 2, 1996 motion for continuance with its supporting affidavit of Mr. Cruz are part of the trial record.

Because this evidence was known and available to defendant on direct appeal, it does not constitute evidence *de hors* the record to prevent the application of *res judicata*. Accordingly, the trial court correctly dismissed without a hearing on *res judicata* grounds defendant's claim that the trial court erred in not granting his motion for continuance.

Defendant also asserts that the trial court erred in dismissing his petition for post-conviction relief without an evidentiary hearing where the evidence outside of the record demonstrated that he was deprived of the effective assistance of counsel. We find that this issue was also properly dismissed by the trial court based on *res judicata*.

This Court described the standard of review to make a showing of ineffective assistance of counsel in *Lakewood v. Town* (1995), 106 Ohio App.3d 521, 525- 26:

> The standard of review for ineffective assistance of counsel requires a two-part test and is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. See, also, *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland* at 687-688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The defendant must also prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

Furthermore, when determining whether counsel's performance was deficient "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland v. Washington* (1984), 466 U.S. 668, 689. A defendant's failure to satisfy either of the two *Strickland* tests is sufficient to dismiss the claim of ineffective assistance of counsel.

*7 We find that the trial court correctly determined that *res judicata* also barred defendant's ineffective assistance claim. The Ohio Supreme Court has held that a petition for post-conviction relief alleging ineffective assistance of trial counsel may be dismissed without a hearing based on *res judicata* where the petitioner had new counsel on direct appeal and the claim of ineffective assistance of counsel could have been raised on direct appeal without resorting to evidence outside of the record. See *State v. Lentz* (1994), 70 Ohio St.3d 527, 530, citing *State v. Cole* (1982), 2 Ohio St.3d 112, at syllabus.

Defendant asserts that trial counsel was ineffective in failing to insure that key witnesses were contacted and investigated. Defendant asserts that trial counsel failed to pursue available material evidence that would have corroborated defendant's version of the events and the defense's theory that defendant was drugged and placed in the burning building.

As stated above, *res judicata* is a proper basis for dismissing a petition for post-conviction relief based on ineffective assistance of counsel when such claim was or could have been raised on direct appeal. The record reflects that defendant was represented by new counsel on his direct appeal. Furthermore, it is clear that defendant's claim of ineffective assistance of trial counsel could have been raised on direct appeal. Defendant points to several failures by trial counsel to investigate and pursue his defense. Even though defendant's evidence could arguably support a claim of ineffective assistance, all of these alleged failures were known at the time of trial and could have been raised on direct appeal based solely on the trial record. This evidence does not constitute evidence *de hors* the record that defendant asserts. Therefore, the trial court properly dismissed defendant's claims of ineffective assistance of trial counsel as barred by *res judicata*.

Assignments of Error I, II and III are overruled.

    IV. THE TRIAL COURT ERRED IN DISMISSING COUNT THREE OF PLAINTIFF'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AN EVIDENTIARY HEARING WHERE THE EVIDENCE OUTSIDE THE TRIAL RECORD DEMONSTRATED THAT THE STATE'S FAILURE TO PROVIDE TIMELY EXCULPATORY INFORMATION WAS IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

In his fourth assignment of error, defendant alternatively asserts that the State failed to provide exculpatory evidence to the defendant in violation of the United States and Ohio Constitutions. Specifically, defendant asserts that the State failed to provide the defense with information regarding Mr. Oriti's threats to shoot Mr. Segedy, Bill Gallo's threats to get the mafia after Mr. Segedy and to provide him with the statement of Stephanie Wyant.

First, this issue should have been raised on direct appeal and therefore, it is barred from consideration in this post-conviction proceeding. Secondly, even if this issue is properly before this Court, we find that the trial court did not abuse its discretion in dismissing it without a hearing.

*8 Defendant relies on _Brady v. Maryland_ (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, in support of his claim. In _Brady_, the United States Supreme Court stated:
    The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.
_Id._ at 87. However, the mere possibility that non-disclosed information would have assisted the defense or might have affected the outcome of the trial does not establish "materiality" to create a constitutional violation. This Court in _State v. Apanovitch_ (1995), 107 Ohio App.3d 82, 92, citing _Kyles v. Whitley_ (1995), 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490, set forth a four-prong test to determine if evidence suppressed by the State is "material" as follows:
    First, favorable evidence is material, and constitutional error results from its suppression by the government if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. _Id._, 514 U.S. at ___, 115 S.Ct. at 1566. A " 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." _Id._; see, also, _State v. Johnston_ (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus. Second, a defendant may show a _Brady_ violation by showing that the favorable evidence could reasonably be taken to "put the whole case in such a different light as to undermine confidence in the verdict." _Id._ Third, if the reviewing court should find constitutional error, there is no need for further harmless error review. _Id._ Fourth, the state's disclosure obligation turns on the cumulative effect of all suppressed evidence favorable to the defense, not only the evidence considered item by item. _Id._, 514 U.S. at ___, 115 S.Ct. at 1567, 131 L.Ed.2d at 507-508.

Defendant claims that "the statement of Mr. Segedy concerning Mr. Gallo and Mr. Oriti should have been disclosed earlier than Friday afternoon. Also, the state should have provided the statement of Stephanie Wyant to defense counsel." (Aplt's Brf. at 35-36). We find that the cumulative effect of these statements would not have changed the outcome of defendant's trial and therefore, were not "material" as to his guilt.

The record reflects that Mr. Segedy, the owner of the Lorain Avenue building, told the police that he was threatened by Mr. Gallo and Mr. Oriti on two separate occasions. Defendant claims that if this evidence was properly introduced to the jury, it would corroborate that someone else started the fire. It is undisputed that the State did not provide the defense with the statements of Mr. Segedy and Ms. Wyant until the Friday before trial. However, the record further reflects that defense was aware of the threats made by Mr. Oriti and Mr. Gallo prior to trial. In her affidavit, Ms. Thomas also stated that on August 9, 1996, she was told by a prosecutor that Mr. Oriti had threatened to shoot Mr. Segedy and Mr. Gallo had threatened to get the Mafia after him. (Thomas Aff. at ¶ 12). Defendant's trial commenced on August 12, 1996.

*9 We find that no _Brady_ violation occurred in this case. "The Ohio Supreme Court has articulated clearly, however, that _Brady_ applies only in situations where information known to the defense is discovered _after trial_." _State v. Brown_ (1996), 112 Ohio App.3d 583, 595, citing _State v. Wickline_ (1990), 50 Ohio St.3d 114, 116. Therefore, because the information regarding Mr. Oriti and Mr. Gallo was revealed prior to trial, no _Brady_ violation occurred.

Furthermore, Ms. Wyant stated in her affidavit that approximately one to two months after the fire, she met with the defendant at his request. (Wyant Aff. at ¶ 11). She further stated that "Mr. Dempsey took Sherrie and myself down to the Police Station and I told the police basically the same information that I am providing in this Affidavit." (Wyant Aff. at ¶ 12).

Based on this evidence, defendant was obviously aware of Ms. Wyant long before trial, had full knowledge of the information that was included in her statement and could have taken advantage of any exculpatory evidence known to her at trial. Accordingly, no _Brady_ violation occurred and defendant cannot establish that he was prejudiced by the State's failure to provide the statement as there is no "reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different."

Assignment of Error IV is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

O'DONNELL, P.J., and BLACKMON, J., concur.

N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. 112, Section 2(A)(1).

Not Reported in N.E.2d, 2000 WL 777003 (Ohio App. 8 Dist.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Slip Copy
Slip Copy, 2005 WL 1862111 (Ohio App. 11 Dist.), 2005-Ohio-4038
**(Cite as: 2005 WL 1862111 (Ohio App. 11 Dist.))**

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Eleventh District, Lake County.
STATE of Ohio, Plaintiff-Appellee,
v.
Vincent S. MCCALEB, Defendant-Appellant.
**No. 2004-L-003.**

Aug. 5, 2005.

**Background:** Defendant moved for postconviction relief while his direct appeal from his convictions for felonious assault, aggravated burglary, and victim intimidation was pending. The state moved to dismiss petition. After defendant's convictions were affirmed on direct appeal, the Court of Common Pleas, Lake County, No. 02 CR 000104, dismissed petition without hearing. Defendant appealed.

**Holding:** The Court of Appeals, Grendell, J., held that doctrine of res judicata barred all arguments in defendant's motion for postconviction relief.
Affirmed.

**Criminal Law** ☞1433(2)

110k1433(2) Most Cited Cases
Doctrine of res judicata barred all arguments in defendant's motion for postconviction relief; arguments were either raised or could have been raised in defendant's direct appeal from conviction. R.C. § 2953.21(A)(1)(a), (C), (E).
Civil Appeal from the Lake County Court of Common Pleas, Case No. 02 CR 000104. Affirmed.

Charles E. Coulson, Lake County Prosecutor and Alana A. Rezaee, Assistant Prosecutor, Painesville, OH, for Plaintiff-Appellee.

Julie Mitrovich King, Lake Office of Julie Mitrovich King, Chagrin Falls, OH, for Defendant-Appellant.

OPINION

GRENDELL, J.

*1 {¶ 1} Defendant-appellant, Vincent S. McCaleb ("McCaleb"), appeals from the judgment of the Lake County Court of Common Pleas, dismissing his petition for postconviction relief under R.C. 2953.21. For the following reasons, we affirm the judgment of the trial court.

{¶ 2} On April 26, 2002, McCaleb was indicted by the Lake County Grand Jury on the following charges: Felonious Assault, in violation of R.C. 2903.11(A)(1); Aggravated Burglary, in violation of R.C. 2911.11(A)(1); and Intimidation of a Victim in a Criminal Case, in violation of R.C. 2921.04(B). These charges stemmed from two separate incidents. The events culminating in the felonious assault charge occurred in the early morning of January 26, 2002, when McCaleb allegedly beat his girlfriend, Maureen Hickey ("Hickey"), over a period of several hours, causing severe injuries. The other charges resulted from another incident, which occurred on or around 12:00 a.m., on February 14, 2002, when McCaleb allegedly broke down Hickey's front door and began threatening Hickey and demanding that she tell police that someone else was responsible for the January 26 assault.

{¶ 3} A two day trial by jury began on September 3, 2002, and McCaleb was subsequently convicted on all three counts. On October 4, 2002, the trial court sentenced McCaleb to seven years in prison for his felonious assault conviction, seven years for his aggravated burglary conviction, and two years for his intimidation of a victim conviction, to be served concurrently to each other, but consecutive to a sentence McCaleb was to serve in federal prison.

{¶ 4} McCaleb timely filed a notice of appeal of his conviction and sentence with this court. On June 24, 2003, while his appeal was pending with this court, McCaleb also filed a petition for postconviction relief pursuant to R.C. 2953.21, alleging a denial of his constitutional rights, under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution.

{¶ 5} Attached to his initial petition for postconviction relief, were twenty-four exhibits of various types. In addition to two affidavits from McCaleb himself, he presented affidavits from Judy Gain ("Gain"), Michelle Antonori ("Antonori"), Karl Kennedy ("Kennedy"), and Tim Lenk ("Lenk"), which purported to show that McCaleb was elsewhere on the night the crimes in counts two and three were committed. McCaleb also presented various medical records from a period of time preceding the incident, documenting the problems with his lower back, and his own affidavit claiming that he was physically unable to perpetrate any of the crimes.

{¶ 6} The petition also alleged ineffective assistance and unethical conduct by McCaleb's trial counsel, supporting these allegations with clippings of newspaper articles related to sanctions imposed for violations of campaign rules related to trial counsel's candidacy as an Ashtabula County Court of Common Pleas Judge, as well as McCaleb's own affidavit, which claimed that his trial counsel failed to investigate potential alibi witnesses, that he threatened to withdraw as counsel if a payment for services was not made, and that he refused to let McCaleb testify in his own defense.

*2 {¶ 7} Finally, McCaleb claimed that the jury selection process was unconstitutional, since he was black, and the jury was all white, and therefore, did not represent a fair cross-section of the community. In support of this allegation, McCaleb attached census data. McCaleb later was granted leave to amend his petition, attaching two additional medical charts to support his claim that he was physically unable to commit the crimes.

{¶ 8} On September 2, 2003, the State of Ohio, filed a response brief and motion to dismiss McCaleb's petition. On December 12, 2003, the trial court, without a hearing, denied McCaleb's petition for postconviction relief, finding that "many of McCaleb's claims are barred by res judicata," and that the affidavits and other evidence submitted failed to establish a genuine issue as to any material fact that would provide grounds for an evidentiary hearing.

{¶ 9} McCaleb now appeals, asserting two assigned errors:

{¶ 10} "[1.] The trial court committed reversible error by denying petitioner-appellant's petition for post-conviction relief without conducting an evidentiary hearing, as mandated by R.C. 2953.21, and in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I of the Ohio Constitution.

{¶ 11} "[2.] The trial court committed reversible error by denying petitioner-appellant's petition for post-conviction relief on the basis of res judicata, thereby violating appellant's right to due process under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I of the Ohio Constitution."

{¶ 12} Since McCaleb's assignments of error raise essentially the same arguments, they will be discussed together. In his second assignment of error, McCaleb claims that the trial court erred by finding that the following claims were barred by res judicata: (1) defense counsel's failure to investigate the case and call Antonori, Lenk, Gain and Kennedy as witnesses; (2) defense counsel's failure to investigate and present evidence of McCaleb's medical condition; (3) defense counsel's failure to permit McCaleb to testify on his own behalf; (4) defense counsel's "threats" to withdraw from the case; (5) defense counsel's allegedly unethical conduct at trial; and, (6) the constitutionality of the jury selection process.

{¶ 13} In his first assignment of error, McCaleb argues that the trial court erred by denying his petition without a hearing, where the evidence dehors the record establishes sufficient grounds to warrant a hearing on the evidence. McCaleb again specifically challenges the effectiveness of his trial counsel's representation, due to defense counsel's alleged failures to present exculpatory evidence/alibi witnesses; to present exculpatory evidence on the issue of appellant's "disabling medical condition"; and to present exculpatory evidence regarding McCaleb's "surgery on the day of the alleged aggravated burglary."

*3 {¶ 14} R.C. 2953.21, provides, in relevant part, as follows:

{¶ 15} "(A)(1)(a) Any person who has been convicted of a criminal offense * * * who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit or other documentary evidence in support of the claim for relief.

{¶ 16} "(C) * * * Before granting a hearing on a petition * * * the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, and supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * *

{¶ 17} "(E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues, even if a direct appeal of the case is pending. * * * "

{¶ 18} "[A] postconviction relief proceeding is not an appeal of a criminal conviction, but, rather, a collateral civil attack on the judgment." State v. Calhoun, 86 Ohio St.3d 279, 281, 1996-Ohio-102. As such, a hearing is not always required when a petition for postconviction relief is filed. Id. at 282-283; State v. Cole (1982), 2 Ohio St.3d 112, 113,

443 N.E.2d 169; *State v. Milanovich* (1975), 42 Ohio St.2d 46, 50, 325 N.E.2d 540; *State v. Pierce.* (1998), 127 Ohio App.3d 578, 585, 713 N.E.2d 498; *State v. Worthy* (May 30, 1997), 11th Dist. No. 96-P-0122, 1997 Ohio App. LEXIS 2370, at *5; *State v. Jackson* (1980), 64 Ohio St.2d, 107, 110, 413 N.E.2d 819. The test is whether there are substantive grounds for relief that would warrant a hearing based upon the petition, the supporting affidavits, and the files and records of the case. *Jackson,* 64 Ohio St.2d at 110, 413 N.E.2d 819; *State v. Strutton* (1988), 62 Ohio App.3d 248, 575 N.E.2d 466, at paragraph one of the syllabus; *Worthy,* 1997 Ohio App. LEXIS 2370, at *6. "If no such grounds exist, the trial court should dismiss the petition for post-conviction relief *sua sponte."* Id. (citation omitted).

{¶ 19} Furthermore, a petition for postconviction relief may be barred without hearing by the doctrine of res judicata, "where a petitioner *could have raised issues* in his petition at trial or on direct appeal." *Pierce,* 127 Ohio App.3d at 575, 713 N.E.2d 494, citing *State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104, at paragraph one of the syllabus (emphasis added). This is particularly true where the petitioner obtained new counsel for their direct appeal and the claim of ineffective assistance could have been raised without resorting to evidence outside the record. Id. (citations omitted).

*4 {¶ 20} The record reveals that McCaleb retained new counsel for the purposes of filing his petition for postconviction relief and the same counsel represented him on appeal. This court ruled on McCaleb's appeal on November 5, 2004, after the issues related to this appeal were briefed by the parties, and affirmed McCaleb's convictions. *State v. McCaleb,* 11th Dist. No.2002-L-157, 2004-Ohio-5940. Among the assigned errors addressed by this court was an exact duplication of McCaleb's issues raised herein, relating to ineffective assistance of counsel. McCaleb raised myriad arguments in support of his ineffective assistance of counsel claims. All of the arguments raised in McCaleb's motion for postconviction relief are duplicative of arguments raised on direct appeal. The trial court, in its judgment entry, explicitly stated that McCaleb's claims related to his counsel's alleged failure to call witnesses, to introduce potentially exonerating medical evidence, and to allow McCaleb to testify, were all raised on direct appeal. The lower court also concluded that the issue of the racial composition of the jury pool being "unconstitutional" was also raised and addressed on appeal, and therefore barred by res judicata.

{¶ 21} Furthermore, none of McCaleb's arguments, even if they arguably had not been raised previously, are based on facts which were not known to him at the time of trial and prior to the filing of the appeal. *State v. Coleman,* 1st Dist. No. C-900811, 1993 Ohio App. LEXIS 1485, at *22 ("evidence *de hors* the record must be more than evidence which was in existence and available to the defendant at the time of trial and which could and should have been submitted at trial if the defendant wished to make use of it. Simply put, the purpose of postconviction proceedings is not to afford one convicted of a crime a chance to retry his case"). For example, counsel's alleged "unethical" conduct, relating to his candidacy for judicial office, the allegations that counsel threatened McCaleb with terminating representation if payment of $2,500 was not made, and McCaleb's allegations that counsel appeared late for hearings, were all based on facts which were known prior to filing of the appeal. Moreover, the letters from Hickey to McCaleb, referenced in McCaleb's motion for post-conviction relief, in which she claimed that she had lied about McCaleb being her assailant to get even with him, while not introduced at trial, were consistent with testimony Hickey gave at trial, and the jury had a chance to hear her testimony and judge her credibility. Accordingly, all of the arguments set forth in McCaleb's petition for postconviction relief have either been raised on direct appeal, or *could have been raised,* and are therefore barred by res judicata. Thus, a hearing was unnecessary.

{¶ 22} We find McCaleb's first and second assignments of error are without merit and affirm the judgment of the Lake County Court of Common Pleas.

DONALD R. FORD, P.J., CYNTHIA WESTCOTT RICE, J., concur.

Slip Copy, 2005 WL 1862111 (Ohio App. 11 Dist.), 2005-Ohio-4038

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

STATE OF OHIO )        IN THE COURT OF APPEALS
)SS.
COUNTY OF TRUMBULL )        ELEVENTH DISTRICT

STATE OF OHIO,

     Plaintiff-Appellee,

     - vs -        JUDGMENT ENTRY

NATHANIEL JACKSON,        CASE NO. 2004-T-0089

     Defendant-Appellant.

Upon proper consideration, this Court concludes that Appellant's motion to reconsider our prior Opinion and Judgment Entry in the instant appeal has merit. Therefore, the motion to reconsider is granted.  It is the order of this Court that our Opinion and Judgment Entry of March 6, 2006 is hereby vacated.

Consistent with the foregoing, the Clerk of Courts is instructed to strike the Opinion and Judgment Entry of March 6, 2006, from the record of this appeal.

A new Opinion and Judgment Entry shall subsequently be rendered in this matter, based upon the parties' prior submissions.

JUDGE JUDITH A. CHRISTLEY, Ret.,
Eleventh Appellate District
sitting by assignment.

WILLIAM M. O'NEILL, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

FILED
COURT OF APPEALS

MAY 0 3 2006

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

TRUMBULL COUNTY, OHIO



FILED
COURT OF APPEALS

MAY 3 0 2006

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

| | | |
|---|---|---|
| STATE OF OHIO, | : | **OPINION UPON RECONSIDERATION** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2004-T-0089** |
| NATHANIEL JACKSON, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Court of Common Pleas, Case No. 2001 CR 794.

Judgment:  Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *LuWayne Annos*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481-1092 (For Plaintiff-Appellee).

*David H. Bodiker*, Ohio Public Defender, and *Randall L. Porter*, Assistant State Public Defender, 8 East Long Street, 11th Floor, Columbus, OH  43215-2998 (For Defendant-Appellant).

JUDITH A. CHRISTLEY, J., Ret., Eleventh Appellate District, sitting by assignment.

{¶1}    The instant appeal emanates from a final judgment of the Trumbull County Court of Common Pleas.  Appellant, Nathaniel Jackson, seeks the reversal of the trial court's decision to dismiss his original and amended petitions for postconviction relief from his underlying criminal conviction.  For the following reasons, this court holds that appellant has failed to demonstrate any reversible error.

{¶2}    In November 2002, following a jury trial of approximately four weeks,

appellant was found guilty of two counts of aggravated murder, one count of aggravated burglary, and one count of aggravated robbery.  Under both of the aggravated murder counts, the jury also returned a guilty verdict on two death penalty specifications.  In addition, under each of the aggravated burglary and aggravated robbery counts, he was found guilty of a firearm specification.

{¶3}   The foregoing charges against appellant were based upon the shooting death of Robert S. Fingerhut in December 2001.  At the time of his death, Fingerhut was residing with his former wife, Donna Roberts, at a home in Howland Township, Ohio.  During the months prior to the incident, Roberts had been exchanging letters with appellant while he was being held in a state prison on a prior criminal offense.  As part of these letters, Roberts and appellant specifically discussed a plan under which appellant would murder Fingerhut so that Roberts could collect the proceeds from Fingerhut's insurance policies.

{¶4}   Appellant was released from prison on December 9, 2001.  Just two days later, the local police responded to a 9-1-1 call which Roberts had placed from the home she shared with Fingerhut.  Once the police had arrived at the scene, Roberts informed them that when she had returned home that evening, she had found Fingerhut dead on their kitchen floor with three bullet wounds to his body.  Roberts also informed the police that Fingerhut's car had been stolen from their garage.

{¶5}   During the ensuing investigation, Roberts gave the police her consent to search the home she had shared with Fingerhut.  As part of this search, the police found some of the letters appellant had sent to Roberts from the state prison.  At a subsequent point of the investigation, the police not only found some of Roberts' letters

to appellant, but also learned that she had placed a number of telephone calls to him at the prison in the weeks immediately prior to his release.  In addition, it was discovered that, on the evening of the murder, Roberts had rented a motel room in which the police later found blood and bandages.

{¶6}    In reviewing the letters between Roberts and appellant, the police noticed that he had requested that she purchase a specific type of glove to use in committing the murder.  When the police subsequently found appellant in a home in Youngstown, Ohio, he had in his possession a set of gloves which were similar to the gloves described in the letter.  Besides having gun residue and blood on it, one of the gloves found on appellant had a hole on the index finger which was consistent with an injury appellant had.   Moreover, when the police located Fingerhut's vehicle also in Youngstown, they found bloodstains which matched the DNA profile of appellant.

{¶7}    Following his arrest, appellant admitted to the police that he had shot Fingerhut, but asserted that he had acted in self-defense.  Under appellant's version of the events, the two men had met when appellant had asked Fingerhut for a job at his business in Youngstown.  After appellant had helped Fingerhut purchase certain illicit drugs, Fingerhut drove the men back to Fingerhut's home.  While at the home, the men started to argue and Fingerhut allegedly drew a gun on appellant.  Appellant claimed he was eventually able to take the gun from Fingerhut, but the gun went off several times and injured both of them.  After the incident, appellant took Fingerhut's car to escape, and then discarded both the gun and the car in Youngstown.

{¶8}    At the subsequent trial, the state presented evidence which tended to refute the version of events provided by appellant.  For example, the state's evidence

indicated in part that no one had seen appellant at Fingerhut's place of business on the evening of the murder.  There was evidence that Roberts and appellant had planned for appellant to already be inside the home before Fingerhut arrived from work.  The state's evidence also tended to establish that Fingerhut had suffered certain defensive wounds, that one of the bullets fired at him had hit him in the back, and that the "fatal" bullet had been fired through the top of his skull from a short distance.  In addition, the state demonstrated that Fingerhut's life was insured under two policies which would have paid death benefits to Roberts in the sum of $550,000.

{¶9}  As was noted above, the jury accepted the state's evidence and found appellant guilty of the murder and the two underlying offenses.  The state then dismissed one of the two aggravated murder charges, and a one-day mitigation hearing was conducted in November 2002.  During this separate proceeding, appellant's trial counsel presented the testimony of one expert witness and five lay witnesses.  This evidence was intended to show that appellant had certain antisocial tendencies due to a lack of a father figure during his childhood; that he had attention deficit disorder; and, that he had been infatuated with Roberts.  Notwithstanding this evidence, the jury found that the aggravating circumstances of the case outweighed the mitigating facts, and therefore recommended that the death penalty be imposed.

{¶10}  After independently weighing the aggravating circumstances and the mitigating facts, the trial court also held that the imposition of the death penalty was appropriate in the instant case.  In addition, the trial court imposed separate sentences on the charges of aggravated burglary, aggravated robbery, and the merged firearm specifications.  In January 2003, appellant then filed a direct appeal from his conviction

and sentence to the Supreme Court of Ohio.  Upon full consideration of the matter, the Supreme Court upheld appellant's basic conviction and the imposition of the death penalty.  See *State v. Jackson*, 107 Ohio St.3d 300, 2006-Ohio-1.

{¶11}  Approximately one year after taking his direct appeal, appellant filed his original petition for postconviction relief under R.C. 2953.21.  Nearly ninety days later, appellant then submitted an amended petition for such relief.  Under the new petition, he asserted fifteen separate claims for relief.  Under the majority of these claims, appellant argued that he had been denied effective assistance of trial counsel during the penalty phase of his trial.  For example, he contended under one claim that the performance of his trial counsel had been deficient because they had not obtained the services of a specialist in mitigation.  Four of appellant's remaining claims raised issues of possible discrimination in the manner in which the grand jury proceedings and the petit trial had been conducted.  Finally, appellant also challenged the constitutionality of Ohio's execution procedure and the statutory procedure for postconviction relief.  In support of his various claims, he submitted two volumes of exhibits.

{¶12}  In responding to the two petitions, the state moved the trial court to dismiss each of the claims without a hearing on the basis that appellant had not made a prima facie showing that his constitutional rights had been violated during his trial.  In June 2004, the trial court rendered a thirty-three page judgment in which it dismissed each of the claims raised by appellant.  As to all of the claims in both petitions, the trial court held that appellant had failed to establish substantive grounds to warrant any postconviction relief.  The trial court further held that many of the claims were barred under res judicata because the issues either were, or could have been, raised in his

direct appeal from his conviction.

{¶13}  In now appealing from the instant judgment, appellant has assigned the following as error:

{¶14}  "[1] The trial court erred when it denied [appellant's] postconviction petition without first affording him the opportunity to conduct discovery.

{¶15}  "[2] The trial court erred when it refused to grant [appellant] funds to employ experts.

{¶16}  "[3] The postconviction assistant prosecutor erred by not providing [appellant] with the information contained in the prosecutor's files which was necessary to support the claims contained in the amended petition.

{¶17}  "[4] The postconviction trial judge erred by not recusing himself.

{¶18}  "[5] The trial court erred by applying the doctrine of res judicata to bar certain of [appellant's] causes of action.

{¶19}  "[6] The trial court erred in dismissing [appellant's] amended postconviction petition where he presented sufficient operative facts to merit relief or, at a minimum, an evidentiary hearing."

{¶20}  As part of his postconviction petitions, appellant made several requests that he be allowed to conduct discovery before a final decision was made on the matter. In its final judgment on both petitions, the trial court overruled each of the requests. Under his first assignment, appellant contends that it was improper to consider the final merits of his petitions until he had had a full opportunity to conduct discovery on the issues he had raised.

{¶21}  In interpreting R.C. 2953.21 et seq., the provisions which govern

postconviction relief in this state, the Supreme Court of Ohio has stated that there is no specific requirement that civil discovery must be afforded to the defendant in this type of proceeding. *State ex rel. Love v. Cuyahoga Cty. Prosecutor's Office* (1999), 87 Ohio St.3d 158. As a result, the decision to grant discovery in a given situation lies within the sound discretion of the trial judge. *State v. Davie*, 11th Dist. No. 2000-T-0104, 2001-Ohio-8813. Furthermore, it has been expressly held that if the trial court concludes that the petitioner has failed to state substantive grounds to warrant an evidentiary hearing on a petition, that court does not abuse its discretion in overruling a request for discovery. *State v. Samatar*, 10th Dist. No. 03AP-1057, 2004-Ohio-2641.

{¶22} As will be discussed below, this court holds that the trial court in the instant case did not err in concluding that none of appellant's claims for relief were sufficient to state substantive grounds for reversing his conviction. Under such circumstances, it follows that the trial court did not abuse its discretion in denying any civil discovery to appellant. Thus, the first assignment in this appeal lacks merit.

{¶23} In conjunction with his requests for discovery, appellant also moved the trial court for the appointment of unspecified experts to assist in preparing additional materials in support of his two petitions. Similar to the analysis it employed regarding the discovery matters, the trial court overruled this separate motion on the grounds that no experts were needed because appellant had failed to satisfy his initial burden in submitting his petitions. Under his second assignment, appellant asserts that the trial court's analysis on this question was also flawed.

{¶24} Like the discovery issue, this court has already addressed the question of the appointment of an expert in a postconviction proceeding. In *State v. Williams* (Oct.

16, 1998), 11th Dist. No. 97-T-0153, 1998 Ohio App. LEXIS 4884, we began our discussion by stating that the right to an expert was tied to the constitutional right to counsel. The *Williams* court further noted that, under the relevant Ohio Supreme Court precedent, a criminal defendant's constitutional right to counsel did not extend to a proceeding under R.C. 2953.21 because a postconviction proceeding was civil in nature. Based upon this precedent, the *Williams* court ultimately held that the same logic would apply to experts; i.e., since a proceeding under R.C. 2953.21 is considered civil, there is no constitutional right to expert assistance.

{¶25} In applying the *Williams* logic in subsequent cases, this court has also held that if a postconviction petitioner does not initially demonstrate substantial grounds to support an evidentiary hearing on a petition, he is not entitled to the appointment of any experts. *State v. Getsy* (Oct. 22, 1999), 11th Dist. No. 98-T-0140, 1999 Ohio App. LEXIS 4975

{¶26} In essentially arguing that the foregoing analysis is flawed, appellant states that the *Williams* opinion did not acknowledge the fact that R.C. 2953.21 contains a specific provision regarding the appointment of counsel. That is, subsection (I) of the statute provides that an indigent defendant who has been given the death penalty has a statutory right to have counsel appointed for the purpose of filing a petition for postconviction relief in his behalf. In light of this, appellant asserts that the basic underlying premise for the *Williams* analysis as to the appointment of experts was simply incorrect.

{¶27} However, in adopting the same general logic which we followed in *Williams* and *Getsy*, other courts have concluded that the existence of a statutory right

Jackson Apx. Vol. 17
Page 198

8

to counsel is not the same as a constitutional right to counsel; hence, these courts have held that the provisions of R.C. 2953.21(I) has no effect upon the validity of their logic as to whether there is a constitutional right to an appointed expert.  For example, in *State v. Monroe*, 10th Dist. No. 04AP-658, 2005-Ohio-5242, the court first noted that, although R.C. 2953.21(I) provided for the appointment of counsel in a postconviction proceeding, it did not have any provision for the appointment of experts.  Upon then referring again to the Ohio Supreme Court precedent as to the lack of a constitutional right to counsel, the *Monroe* court stated that it would not recognize a constitutional right to an appointed expert based entirely upon a statutory right to counsel: "There is no authority holding that a corresponding constitutional right would exist to provide appointment of an expert *** predicated upon the specific statutory entitlement to counsel in a proceeding in which a constitutional right to counsel would not attach." *Monroe*, at ¶15.  Pursuant to this analysis, appellant has failed to establish any flaw in our *Williams* holding.

{¶28}  This court has recently recognized an exception to the *Williams* logic when the petitioner has asserted a question as to whether he is mentally retarded.  See *State v. Lorraine*, 11th Dist. No. 2003-T-0159, 2005-Ohio-2529.  However, although this court held that an expert should be appointed for purposes of the "mental retardation" issue prior to any determination on the final merits of the petition, there was no indication in *Lorraine* that the court intended to invalidate the general holding of *Williams*.

{¶29}  In contesting the trial court's denial of his request for experts in the instant case, appellant has not specifically raised the "mental retardation" issue in the context

of this assignment.[1]  Furthermore, this court would reiterate that, except for his request for a psychologist, appellant's expert requests before the trial court were framed in general terms.  Accordingly, because we conclude that appellant's petitions failed to state any substantial grounds warranting an evidentiary hearing, the trial court did not err in this instance in denying the motion for the appointment of experts.  Under this analysis, the second assignment does not have merit.

{¶30}  Appellant's next assignment also challenges the procedure which was followed by the trial court prior to the granting of the motion to dismiss.  As part of his original and amended petitions, appellant asked that the state be required to give him access to two documents which were allegedly contained in the prosecutor's file. Appellant stated that the documents would assist him in supporting two of his claims for relief.  Under his third assignment, he essentially contends that the trial court erred in not compelling the state to release the documents in question.

{¶31}  As to this point, this court would first note that the Supreme Court of Ohio has held that the prosecution's duty to provide discovery under Crim.R. 16 does not extend beyond the conclusion of the criminal trial.  *Love*, supra.  Furthermore, it has been held that a criminal defendant cannot employ R.C. 149.43 to gain access to the prosecutor's file when discovery under Crim.R. 16 is not permissible.  *State v. Twyford*, 7th Dist. No. 98-JE-56, 2001-Ohio-3241.  Accordingly, because appellant was not entitled to access the state's documents as part of the postconviction proceedings, the state could not be compelled to release any documents in this instance.  For this reason, appellant's third assignment of error is not well-taken.

---

1.  Although appellant has raised certain questions pertaining to his intelligence level under his sixth assignment, no such issues have been asserted in his second assignment of error.

Jackson Apx. Vol. 17
Page 200

{¶32}  In his fourth assignment, appellant submits that certain aspects of the trial court's judgment on his postconviction petitions should be reversed because the court erred in considering improper information.  Specifically, appellant asserts that the trial court incorrectly relied upon its own personal knowledge of certain "facts" in disposing of some of his claims for relief.  Based on this, he argues that the trial judge should have recused himself so that the issues in question could be reviewed by an unbiased judge.

{¶33}  In raising the foregoing issue, appellant refers to two general instances in which the trial judge cited his personal knowledge in explaining his reasoning for rejecting a claim.  The first instance occurred when the trial judge was reviewing appellant's contention that, at the outset of the guilt phase of the underlying trial, he had given the trial judge a letter in which he stated that he was not satisfied with the performance of his trial counsel.  In ruling upon this contention, the trial judge first stated in his final judgment that he could not recall receiving this letter.  Even so, the trial judge concluded that appellant had not shown that he had been unable to communicate with his counsel, since the trial judge could recall specific instances during the trial in which he had observed appellant conversing with his counsel.

{¶34}  As to this point, this court would indicate that the information to which the trial judge referred in his judgment was predicated on observations he had made during the course of appellant's trial.  In considering the effect of a trial judge's knowledge of prior proceedings in a case, the courts of this state have held that such knowledge does not warrant the judge's recusal from further proceedings in the same matter:

{¶35}  "A judge need not recuse himself on the basis that he acquired knowledge of the facts during a prior proceeding. *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185,

188 ***. What a judge learns in his judicial capacity, whether from pretrial proceedings, co-defendant pleas, or evidence presented in a prior case, is properly considered as judicial observations and creates no bias requiring recusal. Id. In this case, the mere fact that the same trial judge presided over separate proceedings involving both appellant and a co-defendant does not require the judge to disqualify himself." *In re: Daniel E.* (1997), 122 Ohio App.3d 139, 140-141.

{¶36} Of course, the issue of whether a judge should recuse himself is separate from the question of the extent to which he can rely upon his prior knowledge in making a judicial determination. If the prior knowledge stems from a distinct legal proceeding, the judge cannot rely upon it at all. This court has consistently held that a trial judge cannot take judicial notice of events in other legal cases, even if the prior cases involved the same parties. See *Frinkley v. Meeker*, 11th Dist No. 2004-P-0022, 2004-Ohio-6696; *State v. Raymundo* (Aug. 18, 1995), 11th Dist. No. 94-T-5025, 1995 Ohio App. LEXIS 3395. However, the foregoing basic rule does not apply to prior events within the same action; i.e., a trial judge can take judicial notice of prior matters before him in the same case. *In re: Veverka* (Sept. 30, 1999), 11th Dist. No. 98-A-0053, 1999 Ohio App. LEXIS 4654.

{¶37} In the instant case, the trial judge indicated in the appealed judgment that, during trial, he had observed appellant interacting with his trial attorneys. The trial judge further stated in the judgment that the transcript of the trial contained specific references to communications between appellant and his counsel. By citing to the transcript in support of his observations, the trial judge was implicitly taking judicial notice of a proceeding before him in the same case. Under the foregoing precedent, the trial

judge's reliance upon the trial transcript was permissible under the Ohio Rules of Evidence.

{¶38}  If the trial judge's reference to his observations had not been supported by citations to the trial transcript, the outcome of our analysis on this point may have been different.  Unless a judge's observations are either stated upon the record or verified by the record, a party simply has no means of challenging the veracity of those observations.  Therefore, as to facts which are not of record, the better procedure may have been to have held a hearing to allow appellant to object to any such "off record" judicial notice.  In the absence of such a hearing, it can be argued that a party may be denied due process unless he is allowed to question the judge as to the accuracy of the observations.  But cf., *State v. Morrow* (Aug. 8, 1987), 2d Dist. Nos. CA 9420 and CA 9447, 1987 Ohio App. LEXIS 8195, in which it was held that the trial court had not abused its discretion in predicating the denial of a claim of ineffective assistance upon its general observation of counsel at trial.

{¶39}  Nevertheless, because the trial judge in this particular instance also referred to the trial record in support of his factual finding, it is unnecessary to resolve the foregoing point for purposes of this analysis.  As an additional point, we would further note that appellant has not challenged the accuracy of the references to the record, or the accuracy of the record itself.

{¶40}  In regard to the "letter" issue, appellant further asserts that he was entitled to question the trial judge as to the statement in the appealed judgment that he, the judge, had no independent recollection of seeing the letter.  As to this point, this court would simply note that the trial judge did not deny appellant's claim of ineffective

assistance on the grounds that the letter did not exist and that it had been fabricated by appellant. Instead, the trial court assumed in its analysis that the letter was authentic and addressed the merits of appellant's underlying claim for relief. To this extent, appellant's inability to challenge the trial judge's lack of recall had no effect on the ultimate resolution of that particular claim.

{¶41} As an aside, this court would also emphasize that a copy of the disputed letter was submitted in support of appellant's postconviction claim that he had been denied effective assistance of trial counsel. In rejecting this claim, the trial court did not base its decision solely on the fact that appellant had communicated with his two attorneys during the trial. As a separate grounds for the decision, the trial court also concluded that the assertions in the letter were insufficient to establish that there had been a total "breakdown" of the attorney-client relationship between appellant and counsel. Upon reviewing the disputed letter and the relevant case law, we can find no error in the trial court's separate holding.

{¶42} Reviewing the assertions of the letter itself, it was essentially a request for the substitution of counsel. As the primary basis for this request, appellant stated that his present counsel was not representing him in the manner he would prefer. Specifically, appellant stated that, even though he had repeatedly asked one of his attorneys to let him listen to certain tape recordings, the attorney had refused to bring the tapes to his jail cell. In addition, appellant asserted in the letter that he had a verbal argument with one of the attorneys after he had questioned whether the attorney had been devoting enough time to his case.

{¶43} As a general proposition, an indigent criminal defendant does not have a

constitutional right to choose the attorney who will represent him at the expense of the state; rather, he is only entitled to competent legal representation.  *State v. Horn*, 6th Dist. No. OT-03-016, 2005-Ohio-5257, at ¶11.  As a result, the request of a defendant to discharge his court-appointed counsel will be granted only if he can "show a breakdown in the attorney-client relationship of such a magnitude as to jeopardize the defendant's right to effective assistance of counsel."  *State v. Coleman* (1988), 37 Ohio St.3d 286, paragraph four of the syllabus.  See, also, *State v. Henness* (1997), 79 Ohio St.3d 53, 65.

{¶44}  In applying the foregoing basic standard, the courts of this state have recognized three examples of good cause which would warrant the discharge of court-appointed counsel:  (1) a conflict of interest;  (2) a complete breakdown of communication; and (3) an irreconcilable conflict which could cause an apparent unjust result.  *Horn*, 2005-Ohio-5257, at ¶11, quoting *State v. Blankenship* (1995), 102 Ohio App.3d 534, 558.  In light of the nature of the three examples, it has been further held that the substitution of counsel should be allowed only if extreme circumstances exist.  *State v. Glasure* (1999), 132 Ohio App.3d 227, 239.

{¶45}  In regard to a possible breakdown of the attorney-client relationship due to a lack of communication, the Supreme Court of Ohio has expressly said that the Sixth Amendment right to counsel was not intended to guarantee that a criminal defendant will have a "rapport" with his attorney.  *Henness*, 79 Ohio St.3d at 65, citing *Morris v. Slappy* (1983), 461 U.S. 1.  Accordingly, the existence of hostility or a personal conflict between the attorney and the defendant does not constitute a total breakdown so long as it does not inhibit the attorney from both preparing and presenting a competent

defense. *State v. Meridy*, 12th Dist. No. CA2003-11-091, 2005-Ohio-241; *State v. Mayes*, 4th Dist. No. 03CA9, 2004-Ohio-2027. Moreover, the lack of communication must be permanent in nature before a finding of a complete breakdown can be made. *State v. Evans*, 153 Ohio App.3d 226, 2003-Ohio-3475, at ¶32. Finally, a dispute over the trial tactics or strategy of the attorney is not sufficient to establish the requisite breakdown. Id.

{¶46} In the instant case, our review of the alleged letter indicates that appellant did not state in his letter why he thought the unspecified tape recordings were relevant to his case; thus, the reference in the letter to the attorney's failure to provide the tapes only showed a possible disagreement as to the manner in which the tapes could be used at trial. Moreover, although the letter does state that appellant had an argument with one of his attorneys, it does not allege that, due to the argument, there was a total breakdown of communication with that attorney during the trial.

{¶47} Therefore, as the trial court correctly noted in the appealed judgment, the assertions in appellant's letter only established that he was not entirely satisfied with the nature of the representation he was receiving from his court-appointed counsel. This dissatisfaction was not sufficient to show a complete breakdown of the attorney-client relationship which would have warranted the granting of appellant's request for substitution of counsel. Based upon this, this court holds that, even if the trial court did err in referring to its own personal observations of the relationship between appellant and his two attorneys, its determination on the "ineffective assistance" claim could have been predicated solely upon the trial court's holding that appellant's letter did not raise any substantive issue on that point.

{¶48}  As was noted above, appellant has asserted under this assignment that there was a second basic instance in which the trial court improperly relied upon its own personal observations.  The second instance cited by appellant pertains to the trial court's disposition of his "racial discrimination" claims.  For example, in ruling upon the claim that discrimination occurred in regard to the appointment of the foreperson for the grand jury proceedings, the trial court specifically referred to his knowledge of the procedure used by the Trumbull County Court of Common Pleas in appointing the foreperson.

{¶49}  In regard to this specific point, this court would agree that the trial judge's reliance upon his own personal knowledge was improper in this instance.  First, we would note that any proceeding before the grand jury would be distinct from the petit trial for appellant, and the trial judge is not permitted to take judicial notice of any action separate from the proceeding before him.  Second, we would indicate that the trial judge's own knowledge of Trumbull County Grand Jury proceedings in general could not encompass all possible information on that topic.  Under such circumstances, the trial judge's knowledge could not be dispositive because there may be instances beyond his knowledge in which discrimination did occur.

{¶50}  Nevertheless, this court would further note that the trial court's dismissal of the "racial discrimination" claims was based upon either that:  (1) the claims were barred by res judicata; or (2) appellant's evidentiary materials were insufficient to raise a prima facie showing of discrimination.  As will be discussed under the fifth and sixth assignments of this appeal, we conclude that this aspect of the trial court's decision must be upheld.  Therefore, the trial court's reliance on his personal knowledge was

harmless as to these particular claims,

{¶51}  Finally, as a separate part of this assignment, appellant contends that, in ruling upon some of his claims for relief, the trial judge improperly relied on his own personal opinion.  For example, in dismissing one of the claims in which it was alleged that appellant had been denied effective assistance of counsel, the trial judge stated in his final judgment that the presentation of the testimony of appellant's family members during the mitigation phase should not have required "exhaustive preparation" on the part of trial counsel.  Appellant now asserts that the judge's statement constituted an "opinion" which should have been subject to cross-examination by his postconviction counsel.

{¶52}  When viewed in the context of the appealed judgment, it is apparent that the statements in question were only intended to set forth the trial judge's legal analysis concerning whether the actions of counsel could be deemed ineffective as a matter of law.  To this extent, the trial judge's statements merely constituted his conclusions of law on the various points.  Although such conclusions can be challenged on appeal and must be reviewed under a de novo standard, they are not in any respect evidential submissions to which the right to cross-examination would apply.

{¶53}  Pursuant to the foregoing analysis, this court holds that appellant has failed to show that he was prejudiced by the trial judge's references to his personal knowledge.  Accordingly, the fourth assignment in this appeal is also without merit.

{¶54}  In the fifth assignment of error, appellant submits that the trial court erred by applying the doctrine of res judicata to bar certain causes of action that he raised in his postconviction relief petition.  After reviewing this "res judicata" aspect of the trial

court's decision, this court concludes that portions of this analysis were flawed. However, in every instance in which res judicata was incorrectly applied, the trial court correctly found that appellant had failed to set forth substantial grounds in support of the respective claims for relief.

{¶55}  It is well-established that the doctrine of res judicata is applicable to postconviction relief proceedings.  In *State v. Perry* (1967), 10 Ohio St.2d 175, the Supreme Court of Ohio held:

{¶56}  "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except on appeal from that judgment, any defense or claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in the judgment of conviction or on appeal from that judgment." Id. at 180.

{¶57}  Additionally, in *State v. Cole* (1982), 2 Ohio St.3d 112, the Supreme Court of Ohio specifically indicated that res judicata is a proper basis to dismiss a postconviction relief petition where the issue sought to be presented could have been raised at trial or in a direct appeal, and where "such issue could fairly have been determined without resort to evidence *dehors* the record."  Id. at paragraph one of the syllabus.

{¶58}  In *State v. Jones* (Dec. 29, 2000), 1st Dist. No. C-990813, 2000 Ohio App. LEXIS 6197, the court held "[t]o overcome the *res judicata* bar, a petitioner must provide cogent evidence outside the record.  This means that the evidence supporting a claim must be competent, relevant and material, must be more than marginally significant, and must 'advance the claim "beyond mere hypothesis and a desire for further

discovery.'" *** It 'must be more than evidence which was in existence and available to the defendant at the time of trial and which could and should have been submitted at trial if the defendant wished to make use of it.'" Id. at 4-5, quoting *State v. Fears* (Nov. 12, 1999), 1st Dist. No. C-990050, 1999 Ohio App. LEXIS 5365, and *State v. Coleman* (Mar. 17, 1993), 1st Dist. No. C-900811, 1993 Ohio App. LEXIS 1485.

{¶59}  Eight of appellant's claims were dismissed by the trial court based, in part, upon res judicata.  They will be individually addressed in the order they have been raised in appellant's brief.

{¶60}  In the first claim under the fifth assignment of error, appellant made the argument that the state of Ohio has an infirm postconviction relief system.  It is clear, however, that Ohio's postconviction relief system has been in place prior to appellant's trial and, therefore, could have theoretically been raised in a direct appeal.  Thus, the trial court properly denied the claim based upon res judicata.

{¶61}  Moreover, this court has previously held that the proper forum to raise such a challenge to the postconviction relief system in Ohio would be in a habeas corpus action.  *State v. Wiles* (1998), 126 Ohio App.3d 71, 83.

{¶62}  The second claim made by appellant is that the Trumbull County Prosecutor seeks the death penalty in a racially discriminatory manner.

{¶63}  We must agree with appellant that it would be extremely difficult, if not impossible, to raise this issue at trial.  Instead, it is most appropriate to raise this issue in postconviction relief proceedings, when evidence to support such a claim would be outside the record.  However, now that appellant has the opportunity to do so, he has

failed to present any specific evidence of discriminatory intent against him.  Thus, he has failed to support this claim beyond mere speculation.

{¶64}  Appellant does argue that his trial counsel was ineffective by not raising this issue at trial, but that is a separate argument which will be addressed later.

{¶65}  The third claim made by appellant is that the Trumbull County Grand Jury that indicted him contained an underrepresentation of African-Americans.

{¶66}  First, appellant made no effort to challenge the indictment prior to trial. Second, as pointed out by the trial court, appellant failed to present any evidence whatsoever as to the racial composition of the grand jury that indicted him.  Additionally, even if appellant could establish that the grand jury that indicted him was proportionately underrepresented as to African-Americans, he would have to establish that "an intentional and systematic exclusion of blacks had occurred."  *State v. Hill* (June 22, 1990), 4th Dist. No. 1619, 1990 Ohio App. LEXIS 2509, at 5.  Appellant presented no evidence of an intentional exclusion of African-Americans from the grand jury that indicted him.  Accordingly, the trial court properly rejected this claim.

{¶67}  In the fourth claim made by appellant, he asserts that the Trumbull County Court of Common Pleas selected a grand jury foreperson in a racially discriminatory manner.

{¶68}  Evidence as to the manner by which the grand jury foreperson was chosen could have been sought prior to appellant's actual trial.  Moreover, in *State v. Hughbanks,* 1st Dist. No. C-010372, 2003-Ohio-187, the court held that "[i]f a grand-jury foreperson is selected from within the ranks of a properly constituted grand jury, and the foreperson's role is essentially ministerial, purposeful discrimination in the selection of a

grand-jury foreperson will not provide a basis for reversing a conviction." Id. at ¶35. We agree with that reasoning.

{¶69}  The fifth claim made by appellant is that the petit jury venire was selected in a racially discriminatory manner.

{¶70}  At the outset of our analysis, this court would note that, during the jury selection process, appellant's trial counsel stated on the record that there was an absence of African-Americans on the jury.  That fact was then acknowledged by the trial court.  Realistically, the simple unexplained absence of African-Americans from the jury venire would be insufficient support for a successful appeal.  As a result, additional evidence would have been needed in order to establish discrimination in the selection of the petit jury venire.

{¶71}  In attempting to provide such additional evidence as part of his petition for postconviction relief, appellant presented six new exhibits.  The first exhibit was a summary of certain census data concerning the demographics of Trumbull County in the year 2000.  This exhibit indicated that African-Americans composed approximately eight percent of the population of Trumbull County at that time.  The next three exhibits consisted of copies of newspaper articles from February 1992.  Each of these articles stated that the jury pool for a prior death-penalty case in Trumbull County had not contained any African-Americans.  The fifth exhibit was a copy of an affidavit which an expert witness had submitted as part of a federal habeas corpus action regarding the validity of that 1992 Trumbull County death-penalty case.  In that affidavit, the expert had concluded that the underrepresentation of African-Americans in the jury pool could not have been the result of a random occurrence.  Finally, the sixth exhibit was the

affidavit of an attorney who had attended the separate trial of Donna Roberts.  In this document, the attorney merely stated that the twelve-person jury in the Roberts case had been composed solely of Caucasians.

{¶72}  Our review of the foregoing documents shows that the information in five of the six exhibits had already been in existence at the time of appellant's trial in November 2002; accordingly, these exhibits could have been presented to the trial court as part of a properly-raised argument during the trial.  In considering postconviction claims of discrimination in the selection of the petit jury venire, the First Appellate District has held that such claims are barred under the doctrine of res judicata when they are predicated upon evidence which already existed at the time of the trial.  *State v. Leonard*, 157 Ohio App.3d 653, 2004-Ohio-3323.  The underlying logic of this holding is that a defendant cannot use a postconviction proceeding to retry his case with evidence which could have been submitted during the actual trial.  See *State v. Coleman* (Mar. 17, 1993), 1st Dist. No. C-900811, 1993 Ohio App. LEXIS 1485.

{¶73}  In the instant case, the sole exhibit which was created after the end of appellant's trial was the affidavit of the attorney who had attended the trial of Donna Roberts.  In that affidavit, the attorney stated only that the twelve-person jury in the Roberts case had not contained any African-Americans; the affidavit did not address the issue of the composition of the entire petit jury venire.  Thus, the attorney's affidavit did not set forth any substantive evidence concerning the "petit jury venire" question.  In light of these circumstances, this court holds that the trial court did not err in applying res judicata to the "petit jury venire" claim because appellant's substantive evidence

consisted of five exhibits which could have been presented to the trial court during the trial itself.

{¶74}  The sixth claim presented by appellant is that he did not receive effective assistance of counsel during the trial phase.  Although appellant asserted a number of arguments before the trial court in support of his basic contention that he had been denied effective assistance, his "res judicata" assertion focuses upon that aspect of his argument in which he alleged that his trial counsel had failed to pursue the question of the specific role Donna Roberts had played in the murder.  Specifically, he asserts that the trial court erred in applying the doctrine of res judicata to this particular point because, as part of his postconviction petition, he presented thirteen new exhibits which were never submitted at trial.

{¶75}  To the extent that the new exhibits would not have been included in the record in his appeal to the Supreme Court of Ohio, this court would agree that the fact that appellant had raised an "ineffective assistance" assignment before the Supreme Court did not bar a separate argument on this point in his postconviction petition.  Even if trial counsel had been aware of these exhibits and simply chose not to submit them, it still would be impossible for the Supreme Court to make a proper decision on the merits of appellant's contention because it would not have the opportunity to review the exhibits.  Under these circumstances, the exhibits in question had to be considered "new" evidence.

{¶76}  As a result, since the only proper means for appellant to present the exhibits would be through a postconviction petition, the trial court did err in applying res judicata in this particular instance.  However, as will be discussed under the sixth

assignment of this appeal, the trial court did not err in also concluding that the exhibits in question were insufficient to demonstrate any ineffective assistance on the part of trial counsel.

{¶77}  The seventh claim made by appellant is that he did not receive effective assistance of counsel during the mitigation phase.

{¶78}  Appellant correctly points out that a claim of ineffective assistance of counsel in the mitigation phase that is dependant upon the affidavits of individuals who would have provided additional testimony is not subject to the bar of res judicata.  *State v. Keith*, 79 Ohio St.3d 514, 536, 1997-Ohio-367; *State v. Scott* (1989), 63 Ohio App.3d 304, 308.  Clearly, that evidence was not available until after the mitigation portion of the trial.

{¶79}  However, from a review of the judgment entry, it is apparent that the trial court rejected this claim on its merits in addition to relying on res judicata.  With respect to the affidavits of appellant's friends and family who did not get to testify during the mitigation phase, the trial court stated that "[n]othing in these affidavits offer[s] (sic) mitigating factors at all, let alone enough to outweigh the aggravating circumstances."

{¶80}  Similarly, none of the other exhibits presented by appellant were found to be germane to the mitigation phase.  Accordingly, it is clear that the trial court did not rely solely on res judicata but, instead, decided this claim was not well-taken on the merits.

{¶81}  The eighth claim advanced by appellant is that the state of Ohio's use of lethal injection is constitutionally infirm.

{¶82} In support, he presented the affidavit of Dr. Mary J. S. Heath.  However, the substance of this affidavit does not change the clear holding of the Supreme Court of Ohio that Ohio's use of lethal injection is constitutional.  *State v. Carter*, 89 Ohio St.3d 593, 608, 2000-Ohio-172.

{¶83} Based upon the foregoing analysis, we hold that, even when the trial court's analysis concerning the application of res judicata was flawed, the error was not prejudicial to appellant.  Thus, his fifth assignment of error is without merit.

{¶84} In the sixth assignment of error, appellant contends that the trial court erred in dismissing his postconviction relief petition without a hearing.

{¶85} It is well-established that a petitioner is not automatically entitled to a hearing.  Before a hearing will be granted, a petitioner must establish that there are substantive grounds for relief.  R.C. 2953.21(C); *State v. Calhoun*, 86 Ohio St.3d 279, 282-283, 1999-Ohio-102.

{¶86} In the present case, appellant asserts that his causes of action were supported by sufficient operative facts to establish substantive grounds for relief. Appellant set forth fifteen causes of action and they will be addressed in seriatim.

{¶87} In the first claim in this assignment raised by appellant, he contends that the Trumbull County Prosecutor has made decisions regarding who should be charged with the death penalty in a racially discriminatory manner.

{¶88} However, appellant failed to provide any evidence whatsoever that the charges against him were racially motivated.  Appellant claims that his Caucasian co-defendant was offered a better plea bargain, but he fails to provide any support for this

claim, beyond the bare assertion itself.  Further, he fails to note that his co-defendant did not commit the actual killing; thus, their circumstances were arguably different.

{¶89}  Due to a lack of supporting evidence for his assertion, the trial court properly denied this claim.

{¶90}  In the second cause of action, appellant submits that the grand jury that indicted him was drawn from a venire that lacked sufficient representation of African-Americans.

{¶91}  Yet, appellant failed to provide the trial court with any evidence of the racial composition of the actual grand jury that indicted him, or the venire from which the grand jury was selected.  In short, while appellant filed numerous exhibits with his postconviction relief petition, none of them concerned, either directly or indirectly, the grand jury composition in the present case.

{¶92}  Moreover, as the trial court noted, the Supreme Court of Ohio has held that "not every grand jury has to represent a 'fair cross section,' so long as the selection process is nondiscriminatory."  *State v. Williams* (1997), 79 Ohio St.3d 1, 17. More recently, the Supreme Court of Ohio ruled that the use of voter registration roles as a source for grand jurors does not intentionally exclude any specific racial group, and is an acceptable method of selecting jury venires.  *State v. Nields* (2001), 93 Ohio St.3d 6, 19.

{¶93}  In the third cause of action, appellant contends that it is the good faith belief of his counsel that the Trumbull County Court of Common Pleas has employed a system to choose grand jury forepersons that can lead to discrimination in the selection process.

{¶94}  While the state does not dispute the fact that the foreperson in this case was a Causacian woman, appellant provided no evidence that this woman was handpicked by a Trumbull County judge, that she was chosen because she was Causasian, or that she was responsible for indicting appellant because of his race. Moreover, with all due respect to appellant's trial counsel, personal belief is a far cry from personal knowledge.  No operative facts were set forth which laid a foundation to support or put this belief beyond mere speculation.  Furthermore, there is no indication that the foreperson was chosen from outside the system that was used to comprise the balance of the grand jury.    Therefore, appellant cannot prevail on this claim. *Hughbanks*, supra, at ¶35.

{¶95}  Thus, the trial court properly found that appellant's contention "is far too tangential to be substantive."

{¶96}  In the fourth cause of action, appellant contends that the prosecutors at trial failed to provide him with exculpatory evidence.  Specifically, appellant alleges that certain undisclosed law enforcement agents suppressed a police report that the decedent had made plans to fake his own death.  Somehow, appellant believes that such a report would have been favorable to his case.

{¶97}  The trial court found that, if this report actually existed, it would not have been exculpatory because appellant admitted to shooting a man in Robert Fingerhut's home whom he, himself, identified as Fingerhut.  The overwhelming evidence was that the victim was Robert Fingerhut and that it was appellant who shot him.

{¶98}  The trial court also found that appellant supplied no credible evidence to support his claim that a police report stating that Fingerhut planned to fake his own

death ever existed.  On this point, appellant supplied the trial court with an unsigned, handwritten letter wherein the unknown author stated that "RSF" had an "obsession about faking his own death."  There was also an affidavit from his counsel of record in this case stating that trial counsel for co-defendant, Roberts, also told him about this alleged police report.  However, there was no affidavit from Roberts' trial counsel. Again, we note that appellant admitted to shooting Fingerhut, albeit in self-defense. Thus, the exculpatory value of any such report is non-existent.  There may be a dispute of fact about its existence, but it is not a material or relevant dispute of fact as is required.

{¶99}  The trial court did not err by dismissing this cause of action.

{¶100} In the fifth cause of action, appellant maintains that the trial court failed to hold a hearing concerning his request to discharge his trial counsel.  His allegation is that he sent a letter to the trial court judge prior to trial in which he complained that one of his trial attorneys was not paying enough attention to him.

{¶101} Assuming that he sent such a letter, there is no allegation that appellant could not communicate with this attorney or that communication had irretrievably broken down.  He made no claim that he was somehow denied his constitutional right to counsel in this case.  In short, there was no claim of prejudice.  It is almost axiomatic that every defendant feels his or her attorney is not paying enough personal attention to the case.  That is not per se indicative that the attorney is professionally deficient. Additionally, it is well-established that a petitioner's own self-serving statement does not compel a hearing.  *State v. Kapper* (1983), 5 Ohio St.3d 36, 37-38.  Thus, without more, the trial court properly denied this cause of action.

{¶102} In the sixth cause of action, appellant asserts that trial counsel failed to retain a competent mitigation specialist and, as a result, the mitigation investigation was incomplete.

{¶103} From the record, it is clear that Dr. Sandra McPherson was hired as appellant's expert witness. It is also clear that Dr. McPherson has filled a similar role in at least five prior capital murder cases. Thus, appellant's claim that Dr. McPherson was less than competent was an unsupported allegation. As an expert psychological witness, Dr. McPherson testified very capably. There is nothing to indicate she was intended to be the mitigation specialist. Furthermore, appellant's evidentiary materials were not sufficient to demonstrate that an actual mitigation expert would have made a difference under the facts of this case. Accordingly, appellant failed to present substantive grounds for relief as to this claim.

{¶104} Under the seventh cause of action, appellant argues that the petit jury that convicted him was drawn from a venire which did not contain a sufficient number of African-Americans. In essence, he submits that the evidentiary materials which he filed with his postconviction petition were sufficient to raise a prima facie case that the exclusion of African-Americans from the jury pool was due to some form of systematic discrimination. In support of this point, appellant relies primarily upon an affidavit of a "jury" expert which was originally filed in a federal habeas corpus action involving a different individual who, in 1992, had been convicted of capital murder in Trumbull County.

{¶105} As an initial matter, this court would again indicate that this specific cause of action was barred under the doctrine of res judicata. As was noted in our analysis

under the fifth assignment, the doctrine was applicable to this claim because it was based upon exhibits which had been in existence at the time of his trial.  Nevertheless, consistent with the approach taken by the trial court, we will also address the merits of this particular claim.

{¶106} As part of the basic Sixth Amendment right to a jury trial, a criminal defendant is entitled to a petit jury which is composed of a representative cross-section of the local community.  *State v. Dickerson*, 9th Dist. No. 22536, 2005- Ohio-5499, at ¶7.  In order to establish a prima facie violation of this constitutional requirement, the defendant must show:  "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the representation is due to systematic exclusion of the group in the jury-selection process."  *State v. Fulton* (1991), 57 Ohio St.3d 120, paragraph two of the syllabus.  In applying the foregoing test, this court has emphasized that all three prongs of the test must be satisfied before a prima facie showing will be found.  *State v. McCaleb*, 11th Dist. No. 2002-L-157, 2004-Ohio-5940, at ¶23.

{¶107} In the instant case, our review of the evidentiary materials indicates that the six exhibits submitted in regard to this claim were sufficient to establish the first two prongs of the *Fulton* test.  As to the first prong, this court would note that the Supreme Court of Ohio has expressly stated that African-Americans are considered a "distinctive" group for purposes of this analysis.  See *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, at ¶66.  In relation to the second prong, appellant's exhibits demonstrated that African-Americans constituted approximately eight percent of the population of

Trumbull County under the census data of the year 2000; as a result, since only two or three African-Americans were called as part of the total jury venire of one hundred forty-two persons in appellant's trial, that group was not reasonably represented in the venire. Accordingly, the key point in this analysis is whether appellant's evidentiary materials made a prima facie showing that the underrepresentation of African-Americans was due to systematic discrimination.

{¶108} In attempting to satisfy the third prong of the *Fulton* test, appellant relied primarily upon a copy of the affidavit of Diane Wiley, who is the president of the National Jury Project Midwest.   The substance of Wiley's affidavit did not pertain to the composition of the jury venire in appellant's case; instead, it related to a separate capital murder case.   Specifically, in 2000, Wiley had been retained by the Ohio Public Defender Office to evaluate whether the special jury venire drawn in *State v. Davie*, Trumbull C.P. No. 91-CR-288, had been representative of the population of African-Americans in Trumbull County at the time of the *Davie* trial in 1992.  The Wiley affidavit had originally been submitted in a federal habeas corpus proceeding involving Roderick Davie.

{¶109} In her affidavit, Wiley first concluded that, since African-Americans had constituted six percent of the population of Trumbull County as of the date of the *Davie* trial, that group had been underrepresented in the *Davie* jury venire because no African-Americans had been included in that venire.   Wiley further concluded that the underrepresentation "represented" a statistically significant deviation, and that the deviation would not have occurred unless there had been some form of systematic discrimination.

Jackson Apx. Vol. 17
Page 222

{¶110} Obviously, in submitting the Wiley affidavit as part of the evidentiary materials accompanying his postconviction petition, appellant was attempting to show that African-Americans had been excluded from the jury venire in a prior death-penalty case in Trumbull County.  In further support of this point, appellant also submitted the affidavit of an attorney who stated that, in attending the separate trial of co-defendant Donna Roberts, he had noticed that the twelve-person jury in that case did not have any African-Americans.  Therefore, when considered as a whole, appellant's exhibits indicated that there had been two death-penalty cases in Trumbull County in which African-Americans had been underrepresented in the entire jury venire, and there had been a third case in which no African-Americans had sat on the final jury.

{¶111} Upon reviewing the prior precedent in this state regarding the "fair cross-section" requirement of the Sixth Amendment, this court concludes that appellant's exhibits were insufficient to make a prima facie showing of systematic exclusion of African-Americans.  In *State v. McNeill* (1998), 83 Ohio St.3d 438, the Ohio Supreme Court's analysis of the third prong of the *Fulton* test consisted of the following:

{¶112} "Moreover, [the defendant's] systematic-exclusion claim is based solely on alleged underrepresentation on *his* venire.  But underrepresentation on a single venire is not *systematic* exclusion.  See *Ford v. Seabold* (C.A. 6, 1988), 841 F.2d 677, 685.  Cf. [*Duren v. Missouri* (1979), 439 U.S. 357,] at 366, *** (discrepancy 'not just occasionally, but in every weekly venire for a period of nearly a year' showed systematic exclusion)." (Emphasis sic.)  Id. at 444.

{¶113} In light of the reference in *McNeill* to the *Duren* precedent, it follows that a prima facie showing of systematic exclusion must be predicated upon a continuing

pattern of underrepresentation.  Thus, the conclusory statement in the Wiley affidavit, based solely on her analysis of the jury venire in the *Davie* case, would not be sufficient to establish a continuing pattern.  Similarly, in light of the fact that the trial in the instant case was held approximately ten years after the trial in *Davie*, it cannot be said that the underrepresentation in both cases shows a continuing pattern.

{¶114} As an aside, this court would further note that the affidavit appellant submitted in regard to the Donna Roberts trial only related to the composition of the final jury; i.e., there was no statement in the affidavit as to the composition of the entire petit jury venire.  To this extent, the affidavit was not relevant to the issue of possible discrimination in the selection of the jury venire.  However, even if the affidavit had pertained to the entire jury venire, this still would only be sufficient to demonstrate an "occasional" discrepancy.  Therefore, since appellant's evidentiary materials did not make a prima facie showing as to each prong of the *Fulton* test, the trial court properly rejected his assertion that his petit jury venire had not consisted of a fair cross-section of the community.

{¶115} In relation to the selection and composition of the venire, appellant's brief also contains the conclusory statement that the underrepresentation of African-Americans violated his federal right to equal protection under the law.  Even though appellant failed to present a complete argument as to this point, this court would note that the Supreme Court has stated that, in using statistical evidence to establish the exclusion of a "class" of people, the defendant must be able to show that the exclusion has occurred over a significant period of time.  *McNiell* at 444.  In this case, since appellant was only able to demonstrate that the underrepresentation of African-

Americans on the petit jury venire only occurred twice in approximately ten years, his evidentiary materials were insufficient to meet the requirement that any exclusion had taken place over a "significant period."

{¶116}  For the foregoing reasons, this court holds that the trial court did not err in concluding that appellant had failed to submit sufficient evidence to support his claim of discrimination in the selection of the petit jury venire.[2]

{¶117} In the eighth cause of action, appellant contends that he was denied the effective assistance of trial counsel during the pretrial stages of the proceedings.

{¶118} In *State v. Pierce* (1998), 127 Ohio App.3d 578, 586, this court explained that in asserting a claim of ineffective assistance of counsel, a petitioner must submit material containing operative facts that demonstrate both prongs of the two-part test set forth in *Strickland v. Washington* (1984), 446 U.S. 668, 687.  The first part is that counsel's performance was deficient, and the second part is that the deficient performance prejudiced the defense.  In order to demonstrate prejudice, a petitioner needs to show a reasonable probability that, if not for counsel's errors, the result of the trial would have been different.  *State v. Bradley* (1989), 42 Ohio St. 3d 136, 143.

{¶119} In the case at bar, the trial court determined that none of the exhibits attached to appellant's petition even remotely suggested that his trial counsel was ineffective.

{¶120} First, appellant maintains that his counsel failed to develop any significant information concerning his co-defendant's role in the homicide.   As to this point, this

---

2.  In disposing of appellant's contentions concerning the underrepresentation of African-Americans on the petit jury, this court considered appellant's two supplemental submissions which were filed after oral arguments in this appeal.

court would merely note that, under his ninth cause of action in this assignment, appellant has also presented an argument concerning whether he was denied effective assistance as a result of trial counsel's failure to submit evidence regarding the role of Donna Roberts in the murder.  For the sake of clarity, we will consider the merits of the instant argument pertaining to her as part of our discussion under the ninth cause of action.

{¶121} Second, appellant asserts that the victim, Fingerhut, was involved in illegal activities that were not brought to the attention of the jury.  However, appellant failed to inform the court as to what those activities were, or, more importantly, how they had any effect on the shooting.

{¶122} Next, appellant claims that his trial counsel did not delve into the "dysfunctional" relationship between Roberts and Fingerhut.  Contrary to appellant's claim, the jury was aware that the couple had been divorced yet still lived together; and, during this time, Roberts was involved in a relationship with appellant.  Beyond the classic triangle, appellant has failed to elucidate any other oddities of their relationship. It is worth noting once again, his defense was self-defense.  Without further facts, the relevance of these allegations to appellant's self-defense theory is nonexistent.

{¶123} Appellant also contends that his trial counsel at mitigation failed to fully develop the extent of his "significant mental impairment."  It is clear to this court that the claim of appellant's mental impairment was questionable at best.  He was tested shortly after his arrest in this case and his scores were significantly higher than when he had been tested in high school.  Thus, this lack of emphasis was, arguably, a matter of trial strategy that trial counsel employed.

Jackson Apx. Vol. 17
Page 226

{¶124} Next, appellant maintains that his trial counsel did not challenge the grand jury or petit jury venires, nor the grand jury foreperson, for lacking in adequate African-American representation. As to this issue, this court would again note that, as part of his postconviction petition, appellant tried to present evidence to establish that discrimination had occurred in the selection of the grand jury foreperson, the grand jury venire, and the petit jury venire. As was discussed previously under this assignment and the fifth assignment, we conclude that his evidence was not sufficient to make a prima facie showing of improper exclusion of African-Americans. In light of this, it follows that appellant's trial counsel was not ineffective by failing to assert these particular points during the trial.

{¶125} Appellant next complains that his trial counsel did not attempt to suppress appellant's statement to the police on the grounds that his school records showed an I.Q. of 70 and 72 when he was 13 and 17 years old, respectively. However, as the trial court stated in its judgment, those facts would not have affected its opinion that appellant gave a voluntary and self-serving statement to the investigators.

{¶126} A failure to move to suppress is not per se ineffective assistance of counsel unless there is prejudice. *State v. Loza* (1994), 71 Ohio St.3d 61, 83. The facts indicate that it would have been extremely unlikely that such a motion would have been granted. Even without this statement admitting the shooting, the physical evidence coupled with the numerous letters planning this murder were abundantly sufficient to convict him.

{¶127} Next, appellant contends that his trial attorneys conducted an inadequate investigation into the power and control that Roberts had over him, including her

manipulation of him that was possible due to her superior intellect.  There is no evidence in or out of the record to suggest that appellant was a reluctant or unwilling participant, or that Roberts had a superior intellect.  As previously indicated, the defense of self-defense had little relevance to appellant's relationship with Roberts.  Thus, the trial court properly denied this argument.

{¶128} Appellant then claims that no family members besides his mother were interviewed in preparation for the mitigation phase of the proceedings.  Accordingly, he argues that Dr. McPherson's testimony was based upon an inadequate and incomplete social history.

{¶129} However, appellant fails to cite any new relevant or non-cumulative information which the jury did not already hear, and which could be considered as mitigating evidence.  Thus, appellant failed to meet the burden placed upon him in postconviction relief proceedings.

{¶130} In the ninth cause of action, appellant submits that, as a result of the failure of his trial attorneys to present evidence to the jury concerning the role of Donna Roberts in the murder, he was denied effective assistance of counsel during both the pretrial stage of the proceeding and the "guilt" phase of the trial.  Appellant contends that his attorneys should have pursued two points in regard to Roberts.  First, according to appellant, his attorneys should have informed the jury that Roberts was very intelligent and had "manipulated" him into committing the murder.  In support of this particular point, appellant asserts that Roberts had a history of using African-American males for her own benefit.  Second, appellant states that his attorneys should have

pursued the possibility that Roberts had actually been present during the commission of the murder.

{¶131} In raising the foregoing two points in his petition for postconviction relief, appellant submitted thirteen new exhibits which, inter alia, included copies of nine police reports. Our review of these exhibits readily indicates that they can be divided into two basic categories. The first category consisted of documents that pertained to Roberts' tendency to have relationships with African-American males. For example, appellant presented a copy of a written statement which an African-American male, Santiago Mason, gave to police officers after Roberts had accused him of stealing certain property from her place of business. According to Mason, Roberts tried to seduce him immediately after they had met and offered to give him money so that he could have his driver's license reinstated. Mason further stated that when he later refused to have sexual relations with her, she started causing trouble for him at his place of employment.

{¶132} Upon reviewing all of the documents in the first category of exhibits, this court would agree that the documents demonstrate that Roberts wanted to date African-American males in general and would provide gifts to them in order to sustain the relationship. However, there is no indication in the documents that once Roberts had developed the relationship, she would then "use" the African-American males to commit illegal acts for her. Although appellant asserts in his appellate brief that the Mason statement establishes that Roberts had attempted to persuade another African-American male to commit the murder, our review of the document simply does not

support his assertion. At best, all of the exhibits only indicate that Roberts tried to treat these individuals well so that she could maintain her relationship with them.

{¶133} The same basic conclusion can be drawn in regard to appellant's assertion that Roberts was a person of superior intelligence. Although there was some support in appellant's evidentiary materials that Roberts had at least moderate intelligence, there was nothing in those materials to indicate that she used this intelligence to induce other individuals of lesser intelligence to commit criminal offenses for her. To this extent, this court concludes that the first category of appellant's exhibits would not have been admissible for the purpose of establishing a pattern of manipulative behavior on the part of Roberts.

{¶134} In addition, our review of the exhibits does not support the holding that the submission of evidence as to the difference between the intelligence of Roberts and appellant would have affected the outcome of the guilt phase of the trial. As to this point, we would emphasize that the state submitted evidence during the guilt phase concerning the communications between appellant and Roberts prior to his release from prison. This evidence showed, at the very least, that appellant played an equal role in the planning of the murder. Therefore, it is extremely unlikely that evidence relating to Roberts' basic intelligence would have altered the jury's conception as to the nature of the relationship between her and appellant.

{¶135} Finally, and most importantly, this court would emphasize that appellant's sole defense during the guilt phase of his trial was that he had acted in self-defense in the shooting of Fingerhut. Thus, the submission of evidence as to Roberts' manipulative ability would have resulted in the presentation of contradictory theories of

the case to the jury.  In light of the fact that the defense of self-defense was predicated upon appellant's own confession, it cannot be said that appellant's trial attorneys rendered ineffective assistance by failing to pursue a separate legal theory for purposes of the guilt phase of the trial.

{¶136} The second category of exhibits which appellant presented in regard to Roberts pertained to her possible role in the actual commission of the murder.  Included in this set of exhibits was a copy of a police report which noted that Roberts had specks of a red substance on her blouse while the police were conducting their initial search of the premises.  In addition, appellant submitted a copy of a report which stated that the test for gun residue on her hands immediately after the shooting had rendered inconclusive results.

{¶137} In relation to these exhibits, this court would again indicate that, under appellant's version of the various events, the shooting took place during a confrontation between himself and Fingerhut.  Accordingly, if trial counsel had presented evidence during the guilt phase as to the possibility that Roberts had committed the murder, this would have conflicted with appellant's primary theory that he had committed the offense in self-defense.  As a result, we hold that, since appellant's evidentiary materials were insufficient to establish that his trial counsel failed to raise a viable argument concerning the role of Roberts, the trial court did not err in rejecting the ninth cause of action of his postconviction petition.

{¶138} In his original petition under the tenth cause of action, appellant asserted that his trial counsels' actions during the culpability stage of the proceedings denied him his right to effective assistance of counsel.  However, appellant's tenth cause of action

in his amended petition raised the issue of ineffective assistance of counsel during the mitigation phase of the proceedings rather than the culpability phase.  Thus, this court will address appellant's argument as amended.

{¶139} This claim was addressed, for the most part, in this court's analysis of appellant's fifth assignment of error.  The only new argument made is that the last minute substitution of Attorney Thomas Wright for Attorney James Lewis compromised his defense during mitigation.  Specifically, appellant asserts that Attorney Wright was not certified by the Supreme Court of Ohio to serve in a capital case, and he was new to the case.

{¶140} However, none of the exhibits presented by appellant in support of this claim demonstrate that Attorney Wright was ineffective.  Additionally, appellant was offered a continuance by the trial court to delay proceedings until Attorney Lewis could recuperate, but the court's offer was rejected by appellant who stated that he wanted to proceed with Attorney Wright.

{¶141} Thus, this claim was properly denied by the trial court.

{¶142} Appellant's next argument under this assignment pertains to his cause of action regarding the performance of Dr. Sandra McPherson during the mitigation phase. Specifically, he contends that her preparation and actual testimony at trial was deficient in three respects:  (1) she did not calculate appellant's score on an I.Q. test correctly; (2) she did not perform the proper psychological testing on him; and (3) her testimony did not set forth any meaningful insight into his psychological development.

{¶143} As to the first assertion, this court would note that, pursuant to appellant's own evidentiary materials, the alleged errors in the calculation would have only resulted

in a four-point change in the final result, i.e., from 84 to 80.  Under Ohio law, there is a rebuttable presumption that a criminal defendant is not mentally retarded if the result of his IQ test is greater than 70.  *State v. Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625.  Thus, the difference in appellant's I.Q. would not have changed his basic status under the intelligence scale.[3]  In light of the overwhelming nature of the aggravating circumstances in this case, this four-point error in calculation would not have altered the jury's weighing exercise in determining whether to recommend the death penalty.

{¶144} In relation to the second assertion, we would indicate that the determination of which psychological test to perform was clearly within the discretion of Dr. McPherson.  Although appellant's evidentiary materials were sufficient to show that other tests could have been performed, the materials did not establish that Dr. McPherson had acted below the standard of care for psychologists in choosing which test to perform.  In other words, there is no indication in the record that Dr. McPherson's actions did not fall within the acceptable range for her profession.

{¶145} Finally, as to the quality of Dr. McPherson's testimony, our review of the trial transcript shows that her testimony during the mitigation phase was clearly intended to emphasize certain facts about appellant's background, i.e., that he had attention deficit disorder and that he had been infatuated with Roberts.  In the evidentiary materials attached to his postconviction petition, appellant merely raised the possibility that other aspects of his childhood should have been given greater emphasis by Dr. McPherson.  There is nothing to suggest that Dr. McPherson's testimony was below the

---

3.  In addition to recalculating the final score based upon the findings of Dr. McPherson, the new psychologist also administered a new "I.Q." test on appellant.  Although the final score of the new test was different than the proper score under Dr. McPherson's test, it still did not fall within the range of scores which must be found in order for a person to be considered mentally retarded.

professional level of proper evaluation.  Moreover, this disagreement in strategy is not sufficient to establish that appellant was denied access to proper expert assistance during his trial.

{¶146} Pursuant to the foregoing analysis, this court concludes that the trial court did not err in rejecting appellant's claims regarding the competency of Dr. McPherson. Thus, his eleventh argument lacks merit.

{¶147} In regard to his twelfth cause of action, appellant submits that the trial court should have vacated its original sentencing judgment because his evidentiary materials showed that the court's prior weighing exercise had been based on insufficient evidence.  In support of this argument, appellant again cites Dr. McPherson's failure to refer to his miserable childhood during her testimony at trial.

{¶148} Simply stated, appellant's this particular argument merely restates the basic points set forth under his eleventh cause of action.  That is, appellant asserts that the trial court did not base its weighing exercise upon the proper facts because Dr. McPherson failed to emphasize those facts in her testimony.  As to this point, this court would again indicate that the choice of which aspects of appellant's childhood to emphasize before the jury was a matter of strategy for trial counsel and professional judgment for Dr. McPherson.  After reviewing the transcript of the mitigation phase, this court concludes that the trial court did not err in finding that Dr. McPherson's testimony set forth a viable mitigation argument for appellant.

{¶149} Under his thirteenth cause of action, appellant contends that the trial court erred when it rejected his claim that the state's use of a lethal injection in the imposition of the death penalty constitutes cruel and unusual punishment.  In regard to this point,

we would first indicate that this claim does not raise an issue pertaining to the propriety of appellant's criminal trial.  To this extent, a postconviction proceeding is not the proper legal context in which to litigate this issue; instead, this type of issue should be raised in a declaratory judgment or habeas corpus action.

{¶150} Moreover, as to the substance of this argument, our review of the relevant case law shows that the basic assertions raised in the evidentiary materials relating to this point have previously been rejected as insufficient to establish that Ohio's use of the lethal-injection method is unconstitutional.  See *Cooper v. Rimmer* (6th Cir., 2004), 358 F.3d 655.

{¶151} As to his fourteenth cause of action in his postconviction petition, appellant maintains that Ohio's postconviction relief procedure should be declared unconstitutional because the statutes create so many procedural hurdles for a criminal defendant to overcome that it is simply too difficult to obtain relief.  As to this point, this court would first note that we have expressly held that the constitutionality of the postconviction procedure can only be properly challenged in a habeas corpus proceeding.  *State v. Wiles* (1998), 126 Ohio App.3d 71.  Furthermore, the appellate courts of this state have generally upheld the constitutionality of R.C. 2953.21 et seq. See, e.g., *State v. Hutton*, 8th Dist. No. 76348, 2004-Ohio-3731.  In again raising this issue in the present case, appellant has failed to assert any new argument which would warrant the reconsideration of this matter.

{¶152} In the fifteenth cause of action, appellant contends that even if this court finds no merit to his first fourteen causes of action, the "cumulative effect" of those causes of action violated his constitutional rights.  Under the doctrine of cumulative

Jackson Apx. Vol. 17
Page 235

error, a judgment can be reversed when the cumulative effect of numerous errors deprives a defendant of his constitutional rights, even if the individual errors are so small that not one in particular rises to the level of prejudicial error. *State v. DeMarco* (1987), 31 Ohio St.3d 191, 196-197.

{¶153} However, it is clear appellant failed to demonstrate that even one cause of action amounted to harmless error. Although there were some instances in which the trial court's res judicata analysis was incorrect, there was no need for any harmless error analysis in regard to the trial court's findings as to the actual substance of the claims for postconviction relief. To this extent, the cumulative effect amounts to nothing.

{¶154} Based upon the foregoing analysis, appellant's sixth assignment of error is without merit.

{¶155} The judgment of the trial court is hereby affirmed.


COLLEEN MARY O'TOOLE, J., concurs,

WILLIAM M. O'NEILL, J., concurs with Concurring Opinion.

————————————

WILLIAM M. O'NEILL, J., concurring.

{¶156} I concur with the well-reasoned majority opinion, but write separately to emphasize the significance of this court's application of the doctrine of res judicata in a capital murder case. Nowhere is the concept of "one bite at the apple" more important than when the state is seeking to impose the death penalty upon one accused of murdering another. When a client is facing the death penalty, both the client and his

counsel are on notice that decisions on trial strategies will have profound consequences.

{¶157} In a petition for postconviction relief, Jackson's counsel has raised the very serious question of racial imbalance in both jury selection and prosecution of capital murder cases in Trumbull County.  This is a constitutional question of significant import.  As stated by the Supreme Court of Ohio, "'the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial.'"[4]  The court went on further to hold that:

{¶158} "A defendant may also reasonably bring a federal equal protection challenge to the selection and composition of the petit jury by adducing statistical evidence which shows a significant discrepancy between the percentage of a certain class of people in the community and the percentage of that class on the jury venires, which evidence tends to show discriminatory purpose, an essential element of such cases."[5]

{¶159} In addition to the question of racial imbalance, appellant challenges the trial court's refusal to appoint an expert to assist him in researching and clarifying the extent of the problem.

{¶160} In support of this position, appellant's counsel directs this court's attention to the recently decided case of *United States v. Rodriguez-Lara*, which is clearly on point. As stated by the court:

---

4. *State v. Fulton* (1991), 57 Ohio St.3d 120, 123, quoting *Taylor v. Louisiana* (1975), 419 U.S. 522, 528.
5. Id. at 123-124.

{¶161} "The selection of a grand or petit jury in violation of either the equal protection or the fair cross-section guarantee is structural error that entitles a defendant to relief without a demonstration of prejudice."[6]

{¶162} In reversing the conviction, the federal appellate court went on to explain the inherent injustice in the denial of expert assistance in a statistical analysis case.

{¶163} "Rodriguez's failure to complete his prima facie case is not fatal to his appeal of the denial of his motion to have an expert appointed. Indeed, conditioning the entitlement to an expert on a defendant's establishing a prima facie case would make little sense: such a rule would provide assistance to a defendant **only upon a demonstration that he does not require it**. Instead, we must determine whether (1) 'reasonably competent counsel would have required the assistance of the requested expert for a paying client,' and (2) the defendant 'was prejudiced by the lack of expert assistance.'"[7]

{¶164} This court has recently addressed this very question in a postconviction petition dealing with the mental retardation of an individual who was found guilty in a capital murder case. As we stated in *State v. Lorraine*:

{¶165} "[T]he logic utilized by the trial court, that Lorraine failed to present any evidence demonstrating that an expert is necessary to achieve a different result, falls in on itself. An indigent, postconviction petitioner cannot be required to show that an expert is needed to prove he is mentally retarded if an expert would indeed be required to make that showing.

---

6. (Citations omitted.) *United States v. Rodriguez-Lara* (C.A.9, 2005), 421 F.3d 932, 940.
7. (Emphasis added.) Id. at 946, quoting *United States v. Nelson* (C.A.9, 1998), 137 F.3d 1094, 1101, fn. 2.

{¶166} "We conclude the trial court erred and abused its discretion in denying Lorraine's request for expert assistance for the purposes of demonstrating he is mentally retarded pursuant to *Atkins*[8]."[9]

{¶167} Unlike the matter at hand, the *Lorraine* decision was not hampered by the doctrine of res judicata, as the Supreme Court of Ohio had ruled in *State v. Lott* that the rights being protected in mental retardation/capital punishment cases were to be applied retrospectively.[10]  Thus, even though Lorraine was convicted in 1986, he could proceed with his petition for postconviction relief because of the retrospective application ordered by the Supreme Court of Ohio in *State v. Lott*.

{¶168} The inquiry in this matter, however, does not stop with the question of whether or not the appointment of an expert would have assisted this appellant in this proceeding.  Undoubtedly, it would have assisted him.  However, in a res judicata and ineffective assistance of counsel hybrid analysis, there is the additional distinction to be made between theories of defense that should have been raised, and those that could have been raised.  It is not possible to raise every single conceivable defense in every case.  Nor is it logical to require defense counsel to waste his or her, or the court's, limited resources searching to the very end of every blind alley.

{¶169} The evidence in this case was overwhelming.  Appellant fired the fatal shots.  In my opinion, the most racially balanced and favorable jury in the world, composed of appellant's friends, relatives, and acquaintances, would have readily accepted that proposition.  A self-defense theory was the only avenue open to defense

8. *Atkins v. Virginia* (2002), 536 U.S. 304.
9. *State v. Lorraine*, 11th Dist. No. 2003-T-0159, 2005-Ohio-2529, at ¶30-31.
10. *State v. Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625, at ¶17.

counsel.  When the strategic decision to mount the self-defense theory was in play, obviously any racial imbalance in the composition of the jury was also in existence on that same day.  Counsel clearly could have explored that defense strategy at that time. He did not.

{¶170} Conversely, it is intellectually disingenuous to fault counsel for an unsuccessful self-defense strategy and for not turning every stone in his search for a different defense.  In the instant matter, defense counsel made a defensible, tactical, and strategic decision to pursue a self-defense theory.  It did not work.  Pursuant to the doctrine of res judicata, defense counsel is not now required or permitted to change course and pursue a different strategy.  As the trial court properly held, a defense that could have been raised, and was not, is barred by res judicata.

{¶171} I write also to defend the doctrine of res judicata.  Much attention is directed to the beneficial effect of the doctrine in bringing finality to a proceeding.  All trials must end at some point.  But there is a second, and perhaps more compelling, aspect to the doctrine.  In order for outcomes to be worthy of support, they must be the result of a fair trial.  And fairness at its core requires that all the cards be placed on the table at the same time.  I refer to that as the "could have, should have" aspect of res judicata.  Errors in proceedings must be raised and addressed at a time when they can reasonably be corrected.  It would be wrong to allow a party to remain silent prior to or during trial, where he has knowledge of a reversible error that could be corrected at the time, only to raise the error after he has been convicted and sentenced.  Under the doctrine of "invited error," "[a] party will not be permitted to take advantage of an error

which he himself invited or induced the trial court to make."[11]   To permit Jackson to pursue his claim at this time would be tantamount to condoning an invited error.  Such a proposition would reduce courts to the position of referees in an elaborate game of "gotcha" designed to determine who had the most skillful lawyer.  That is not the law in Ohio.

{¶172} In conclusion, I feel the trial court's ruling was correct.  Is there racial imbalance in the Trumbull County jury selection process?  I do not know.  Could that have been raised at the trial?  Yes.  Was it?  No.  Therefore, the trial court properly held that, as far as the composition of the jury is concerned, the doctrine of res judicata applies to bar this claim.

---

11. *Lester v. Leuck* (1943), 142 Ohio St. 91, paragraph one of the syllabus.

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )SS. | |
| COUNTY OF TRUMBULL | ) | ELEVENTH DISTRICT |

STATE OF OHIO,

        Plaintiff-Appellee,

    - vs -

NATHANIEL JACKSON,

        Defendant-Appellant.

**JUDGMENT ENTRY**
**UPON RECONSIDERATION**

**CASE NO. 2004-T-0089**


For the reasons stated in the Opinion Upon Reconsideration of this court, the assignments of error are without merit.  It is the judgment and order of this court that the judgment of the trial court is affirmed.

JUDGE JUDITH A. CHRISTLEY, Ret.,
Eleventh Appellate District
sitting by assignment.

COLLEEN MARY O'TOOLE, J., concurs,

WILLIAM M. O'NEILL, J., concurs with Concurring Opinion.


**FILED**
COURT OF APPEALS

MAY 3 0 2006

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK