6/2/2017                                    CourtView Justice Solutions

## 2001 CR 00794

| | | | |
|---|---|---|---|
| **Case Type** | CR - Criminal | **Action:** | Agg. Murder |
| **Case Status:** | CLOSED | **Status Date:** | 12/20/2001 |
| **File Date:** | 12/20/2001 | **Case Judge:** | STUARD, JOHN M |
| **DCM Track:** | | **Next Event:** | |

All Information   Party   Charge   Event   Docket   Financial   Receipt   Disposition

### Docket Information

| Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 12/20/2001 | FILING FEE FOR EACH CAUSE OF ACTION AND EACH UNDERTAKING<br>Amount Owed: $27.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $27.00 | |
| 12/20/2001 | PRISONER FEES<br>Amount Owed: $11.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $11.00 | |
| 12/20/2001 | GENERAL REVENUE FUND<br>Amount Owed: $11.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $11.00 | |
| 12/20/2001 | VICTIMS OF CRIME<br>Amount Owed: $30.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $30.00 | |
| 12/20/2001 | SPECIAL PROJECTS JUDGES<br>Amount Owed: $50.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $50.00 | |
| 12/21/2001 | WARRANT ON COMPLAINT AND RETURN OF SERVICE FILED. | $0.00 | |
| 12/21/2001 | COMPLAINT AND AFFIDAVIT FILED UNDER SEAL BY ORDER OF THE COURT | $0.00 | |
| 12/21/2001 | NOT GUILTY PLEA TO ARRAIGNMENT. NO BOND SET. | $0.00 | |
| 12/28/2001 | PRELIMINARY HEARING 12/31/2001  11:00 AM<br>BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 12/28/2001 | DIRECT PRESENTMENT FOR<br>CT 1: AGG MURDER (F) W/SPECS OF AGG CIRCUMSTANCES<br>CT 2: AGG MURDER (F) W/SPECS OF AGG CIRCUMSTANCES<br>CT 3: AGG BURGLARY (F1) W/FIREARM SPEC<br>CT 4: AGG ROBBERY (F1) W/FIREARM SPEC | $0.00 | |
| 12/28/2001 | INDICTMENT AND SUMMONS FILED BY PROSECUTOR'S OFFICE AND COPIES OF SAME ISSUED TO SHERIFF.<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 12/31/2001 | NOT GUILTY PLEA TO ARRAIGNMENT ON INDICTMENT & SUMMONS NO BOND SET | $0.00 | |
| 12/31/2001 | SUMMONS ON INDICTMENT RETURNED BY SHERIFF<br>NATHANIEL E JACKSON<br>SHERIFF ALTIERE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 12/31/2001 | CAPIAS RETURNED AND ENDORSED BY SHERIFF ON<br>NATHANIEL E JACKSON<br>SHERIFF ALTIERE | $0.00 | |
| 01/03/2002 | PRE TRIAL 01/30/2002  09:00 AM<br>JUDGE:HON. JOHN M. STUARD LOC:COURT 2<br>(N1-3-02) | $0.00 | |

CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 01/03/2002 | PRE TRIAL 01/23/2002  01:00 PM<br>JUDGE:HON. JOHN M. STUARD LOC:COURT 2<br>RESET FROM 1/30/2002 | $0.00 | |
| 01/03/2002 | COPY OF LETTER SENT TO THE SUPREME COURT OF OHIO<br>APPOINTMENT OF TRIAL COUNSEL IN A CAPITAL CASE<br>JUST A COPY FILED BY ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/04/2002 | CERTIFIED MAILER NUMBER 0891 802 SENT TO:<br>THE SUPREME COURT OF OHIO<br>Amount Owed: $5.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $5.00 | |
| 01/07/2002 | VICTIM'S RIGHTS NOTIFICATION FILED. | $0.00 | |
| 01/07/2002 | DEFENDANT'S MOTION FOR BILL OF PARTICULARS FILED<br>BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/07/2002 | DEFENDANT'S DEMAND FOR DISCOVERY FILED BY THE<br>DEFENDANT'S ATTORNEY ANTHONY CONSOLANDE | $0.00 | |
| 01/07/2002 | DEFENDANT'S MOTION FOR APPOINTMENT OF INVESTIGATOR<br>AND MITIGATION FILED BY THE DEFENDANT'S ATTORNEY<br>ANTHONY CONSOLDANE | $0.00 | |
| 01/09/2002 | 961/279 DEFTS MOTION TO EMPLOY DR SANDRA MCPHERSON<br>AND DONALD MCPHERSON AS EXPERT ASSISTANCE TO AID IN<br>THE DEFENSE IS GRANTED. 1/9/02 COPIES SENT TO:<br>PROSECUTOR & A CONSOLDANE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 01/09/2002 | POSTAGE<br>Amount Owed: $0.68<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $0.68 | |
| 01/10/2002 | CERTIFIED MAIL NUMBER 891802 RETURNED ENDORSED FROM<br>THE SUPREME COURT OF OHIO ON 1/10/02 BY ? | $0.00 | |
| 01/18/2002 | 962/354 ORDER REGARDING THE DEFENSE EMPLOYING DR.<br>SANDRA MCPHERSON PH.D AS EXPERT ASSITANCE TO AID IN<br>THE DEFENSE. 1-22-02 SENT COPIES TO PROS., AND A<br>CONSOLDANE.<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 01/23/2002 | MOTION FILED ON BEHALF OF DEFENDANT FILED BY THE<br>DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOR A COMPREHENSIVE VIOR DIRE<br>FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOR INDIVIDUAL SEQUESTERED VOIR<br>DIRE FILED BY THE DEFENANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOE A RULE 104 HEARING FILED BY<br>THE DEFENDANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO RECORD ALL SIDE BAR<br>PROCEEEDING FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION IN LIMINE REGARDING OTHER ACTS<br>EVIDENCE FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | MOTION TO PROHIBIT REFERENCES TO THE JURY AT ANY<br>POINT IN THESE PROCEEDINGS THAT A VERDICT AS TO<br>DEATH IS ONLY A RECOMMENDATION IN THE ALTERNATIVE<br>MOTION TO PROHIBIT REFERENCES TO THE BINDING OR NON<br>BINDING NATURE OF THE JURY'S DETERMINATION FILED BY<br>THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOR DISCLOSURE OF REBUTTAL<br>WITNESSES FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO SUPPRESS STATEMENTS FILED BY<br>THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |

NATHANIEL JACKSON v. WARDEN<br>CASE NO. 4:07-cv-0880<br>SUPP. APPENDIX - Page 2

6/2/2017                                    CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 01/23/2002 | DEFENDANT'S MOTION IN LIMINE REGARDING<br>A-NO COMMENTS ON DEFENSE WITNESS LIST<br>B-NO COMMENTS ON THE FACT DEFENSE EXPERTS DID NOT<br>  PRODUCE WRITTEN REPORTS; AND<br>C-NO COMMENTS ON COSTS CONNECTED WITH DEFENSE<br>  EXPERETS<br>  FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO PROPERLY PRESERVE AND CATALOG<br>ALL PHYSICAL EVIDENCE FILED BY THE DEFENDANT'S<br>ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO PERMIT DEFENDANT TO APPEAR IN<br>CIVILIAN CLOTHING AT ALL COURT PROCEEDINGS FILED<br>BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION IN LIMINE TO PROHIBIT DISPLAY OF<br>EXHIBITS FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOR DISCLOSURE OF ANY AND ALL<br>AGREEMENTS AND OR BENEFITS AND OR DEALS INVOLING<br>PROSECUTING WITNESS FILED BY THE DEFENDANT'S<br>ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOR DISCLOSURE OF WITNESS<br>STATEMENTS PRIOR TO TRIAL FILED BY THE DEFENDANT'S<br>ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO EXTEND TIME TO FILE<br>MOTIONS FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOR DISCLOSURE OF THE TRAMSCRIPT<br>OF PROCEEDING BEFORE THE GRAND JURY FILED BY THE<br>DEFENDANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOR SEQUESTRATION OF JURORS FOR<br>DURATION OF TRIAL FILED BY THE DEFENDANT'S<br>ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO PERMIT DEFENSE TO ADMIT ALL<br>RELEVANT EVIDENCE AT MITGATION PHASE FILED BY THE<br>DEFENDANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO REQUIRE THE JURY TP<br>ARTICULATE THE METHOD BY WHICH IT WEIGHS THE<br>AGGRAVATING AGAINST THE MITIGATING CIRCUMSTANCES<br>FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION REQUESTING MITIGATION PHASE<br>INSTRUCTIONS ON REMNANT DOUBT ABOUT GUILT AND MERCY<br>AS MITIGATING FACTORS FILED BY THE DEFENDANT'S<br>ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION IN LIMINE TO LIMIT THE STATE'S<br>ARGUMENT AT MITGATION TO THE AGGRVATING<br>CIRCUMSTANCES PROVEN AT THE TRIAL PHASE FILED BY<br>THE DEFENDANT'S ATTORNEY ANTHONHY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO PROHIBIT PROSECUTOR FROM<br>COIMMENTING ON DEFENDANT'S UNSWORN STATEMENT FILED<br>BY THE DEFENDANT'S ATTORNEY ANTHINY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOR A SECOND VOIR DIRE OF THE<br>JURY IF THE DEFENDANT IS FOUND GUILTY AT THE TRIAL<br>PHASE FILED BY THE DEFENDANT'S ATTORNEY ANTHONY<br>CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO ALLOW FULL STATEMENT OF<br>DEFENSE OBJECTIONS AT TRIAL AND TO REQUIRE A<br>STATEMENT OF REASON FOR OVERRULING SAME ON THE<br>RECORD FILED BY THE DEFENDANT'S ATTORNEY ANTHONY<br>CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOR CLOSURE OF PRETRIAL HEARING<br>AND TO INSULATE VEMIRE AND JURY FILED BY THE<br>DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION IN LIMINE TO EXCLUE PHOTOGRAPHS<br>OF THE DECEDENTS FILED BY THE DEFENDANT'S<br>ATTORNEY ANTHONY CONSOLDANE | $0.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 3

6/2/2017 CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 01/23/2002 | DEFENDANT'S MOTION TO RESTRAIN CERTAIN PARTIES FROM DISCUSSING THE CASE WITH DEFENDANT FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOR AN ORDER REGULATING THE TRANSFER OF DEFENDANT FROM JAIL TO THE COURTROOM FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO PROHIBIT THE FILMING PHOTOGRAPHING OR VIDEOTAPING OF THE DEFENDANT WHILE IN THE COURTROOM FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO INCREASE THE DURDEN OF PROOF TO PROOF BEYOND ALL DOUBT IN BOTH THE TRIAL AND SENENCING PHASES FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOR ALL MOTIONS TO BE HEARD ON THE RECORDS FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S REQUEST FOR RULINGS ON ALL MOTIONS PRIOR TO COMMENCEMENT OF TRIAL FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLANDE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOR TRANSCRIPTS FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOR AN INCREASE IN THE NUMBER OF PEREMPTORY CHALLENGES FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOR ALTERNATING VOIR DIRE FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO REDUCE BIAS IN THE ANNUAL JURY LIST FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOR INDIVIDUAL SEQUESTERED VOIR DIRE ON DELECT TOPICS FILED THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO REQUIRE PROSECUTOR TO STATE REASONS FOR EXERCISING PEREMPTORY CHALLENGES FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO SUBMIT QUESTIONNAIRE TO PROSPECTIVE JURORS FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO PROHIBIT THE STATE FROM USING PEREMPTORY CHALLENGES TO EXCULDE JURORS WHO EXPRESS CONCERNS ABOURT CAPITAL PUNISHMENT FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO PROHIBIT DEATH QUALIFICATION OF POTENTIAL JURORS ND UNTIL THE PROSECUTION HAS SHOWN PROBABLE CAUSE THAT THE CASE WILL PROCEED TO MITIGATION FILED BY THE DEFENDANT'S ATTONREY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO COMPEL ALL STATE AGENTS TO TURN OVER TO THE PROSECYTING ATTORNEY'S AND TO ADVISE THEM OF ALL INFORMATION ACQUIRED DURING THE COURSE OF THE INVESTIGATION OF THIS CASE FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF EXCULPATORY AND IMPEACHMENT EVIDENCE FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S MOTION FOR AN ORDER DIRECTING THAT A COMPLETE COPY OF THE PROSECUTOR'S FILED BY MADE AND TURNED OVER TO THE COURT FOR REVIEW AND TO BE SEALED FOR APPELLATE REVIEW IF NECESSARY FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONDOLDANE | $0.00 | |
| 01/23/2002 | DEFENDANT'S CONSTITUTIONAL MOTION TO DISMISS DILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 4

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 01/23/2002 | MOTION FOR PENALTY PHASE JURY INSRUCTION RESPECTING ORDER OF DELIBERATIONS AND LACK OF NECEDDITY TO FIRST AGREE UNANIMOUSLY ON A VERDICT OF DEATH FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION TO INSTRUCT THE JURY REGARDING PAROLE FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONDSOLDANE | $0.00 | |
| 01/23/2002 | MOTION TO INSTRUCT THE JURY THAT IT IS TO RETURN A VERDICT OF DEATH ONLY AFTER THE PROPER WEIGHING AND DETERMINING THAT DEATH IS THE APPROPRIATE PUNISHMENT FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION FOR INSTRUCTION THAT THE STATE BEARS THE BURDEN OF PROVING THE ABBSENCE OF ANY MITIGATING FACTORS OFFERED BY THE DEFENSE FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION TO INSTRUCT ON SPECIFIC MITIGSATING FACTORS RAISED BY DEFENDNSE FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION TO PROHIBIT REFERENCE TO NATURE AND CIRCUMSTANCES OF THE OFFENSE AS A FACTOR TO BE CONSIDERED IN MIGATION OR IN INTRODUCTORY LANGUAGE RESPECTING MITIGATION FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION TO INSYTRUCT THE JURY THAT IT IS TO WEIGH ONLY THE AGGRAVARING CIRCUMSTANCE AND NOT THE AGGRAVATED MURDER ITSELF IN DETERMINING PUNISHMENT AND TO SO LIMIT THE PROSECUTOR IN ARGUMENT FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION TO ALTER DEFINITION OF MITGATING CIRCUMSTANCES TO REMOVE REFERNCE TO REDUCING THE DEGREE OF BLAME TO AND TO REPLACE4 THIS WITH OTHER LANGUAGE AND TO SO LIMIT THE PROSECUTOR IN ARGUMENT FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION FOR WRITTEN JURY INSTRUCTION AND OPPORTUNITY TO REVIEW FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION FOR ARGUMENTED UNANIMITY INSTRUCTION FOR CAPITAL SPECIFICATION FILED  BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION IN LIMINE TO PROHIBIT PREJUDICIAL ARGUMENTS AND THEMES AT THE CLOSING ARGUMENT OF THE PENALTY PHASE FILED BY THE DEFENDANT'S ATTONREY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION TO PROHIBIT THE PROSECUTOR FROM ARGUING AND THE COURT FROM GIVING INSTRUCTIONS REGARDING STATUTORY MITIGATING FACTORS NOT RAISED BY THE DEFENSE FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION TO PROHIBIT ANY EVIDENCE BEARING ON THE CHARCTER OF THE VICTIM OR VICTIM IMPACT FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSODLANE | $0.00 | |
| 01/23/2002 | MOTION TO PRECLUDE READMISSION OF TRIAL PHASE EVIDENCE AND EXLIBITS IN PENALTY PHASE AND RELATED PROSECUTORIAL COMMENT FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLANDE | $0.00 | |
| 01/23/2002 | MOTION TO PROHIBIT ANY REFERENCES TO THE FIRST PHASE AS THE "GUILT PHASE" FILED BY THE DEFENDANT'S ATTTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION TO ALLOW THE DEFENSE TO ARGUE FIRST AND LAST AT THE SENTENCING HEARING FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION TO CHALLENGE THE ARRAY OF THE GRAND JURY AND PETIT JURY FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 5

6/2/2017                                        CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 01/23/2002 | MOTION FOR A CHANGE OF VENUE FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | VOIR DIRE MEMORANDUM THE DEFENSE MUST BE ALLOWED TO EXAMINE PROSPECTIVE JURORS REGARDING THEIR VIEWS ON CAPITAL PUNISHMENT PRIOR TO THEIR EXCUSAL FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 01/23/2002 | VIOR DIRE MEMORANDUM VENIREPERSONS WHO CANNOT FAIRLY CONSIDER MITIGATING EVIDENCE AND WHO WOULD AUTOMATICALLY VOTE FOR DEATH UPON A SHOWING OG GUILT MUST BY EXCUSED FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION TO PROHIBIT DEATH QUALIFICATION OF THE JURY OR IN THE ALTERNATIVE IF NECESSARY TO SEAT A SEPARATE JURY DURING THE PENALTY PHASE OF TRIAL FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION TO COMPEL DISCLOSURE OF PROSECUTING ATTORNEY'S JURY SELECTION DATA FILED BY THE DEFENDANT'S ATTORNEY  ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION TO ALLOW THE DEFENSE TO ARGUE LAST AT THE PENALTY PHASE FIELD BY THE DEFENDANT'S ATTONREY | $0.00 | |
| 01/23/2002 | MOTION FOR TRANSCRIPT FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/23/2002 | MOTION FOR TRANSCRIPT FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 01/24/2002 | HEARING ON PENDING MOTIONS 03/20/2002  09:00 AM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 01/24/2002 | HRG ON MOTION TO SUPPRESS 04/17/2002  09:00 AM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 01/24/2002 | JURY TRIAL 10/08/2002  09:00 AM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 01/25/2002 | 962/905 WAIVER OF SPEEDY TRIAL FOR 250 DAYS UNTIL 10/8/02 Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 02/14/2002 | STATE'S OPPOSITION TO DEFENDANT'S MOTION FOR A SECOND VOIR DIRE AFTER GUILT PHASE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 02/15/2002 | MOTION TO HAVE STATEMENTS TRANSCRIBED FILED BY THE DEFENDANT | $0.00 | |
| 03/13/2002 | MNOTICE TO SUPREME COURT RETURNED (COPY) CC02007 | $0.00 | |
| 03/14/2002 | STATE'S RESPONSE TO DEFENDANT'S REQUEST FOR DISCOVERY FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | STATE'S RESPONSE TO DEFENDANT'S REQUEST BILL OF PARTICULARS FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | STATE'S REQUEST FOR RECIPROCAL DISCOVERY FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPREHENSIVE VOIR DIRE FILED BY THE PROSEDCUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR INDIVIDUAL SEQUESTERED VOIR DIRE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OIPPOSITION TO DEFENDANT'S MOTION FOR A RULE FILED BY THE PROSEUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMENORANDUM IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE REGARDING "OTHER ACTS" EVIDENCE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 6

6/2/2017            CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR DISCLOSURE OF REBUTTAL WITNESSES FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDYM IN OPPOSITION TO DEFENDANT'S MOTYION TO PROPERLY PRESERVE AND CATALOG ALL PHYCISAL EVIDENCE FILED BY PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO PROHIBIT DISPLAU OF EXHIBITS FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | STATE'S RESPONSE TO DEFENDANT'S MOTION TO DISCLOSE AND DEALS FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSTION TO DEFENDANT'S MOTION FOR DISCLOSURE OF WITNESS STATEMENTS FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO EXTEND TIME TO FILE MOTION FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | STATE'S RESPONSE TO DEFENDANT'S MOTION FOR SEQUESTRATION OF JURORS FOR DURATION OF TRIAL FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OIPPOSITION TO DEFENDANT'S MOTION TO PERMIT DEFENSE TO DMIT ALL RELEEVANT EVIDENCE AT MITIGATION PHASE FILED THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO REQUIRE THE JURY TO ARTICULATE THE METHOD BY WHWICH IT WEIGHTS THE AGGRAVATED FACTORS AGAINST THE MITIGATING CIRCUMSTANCE FILED BY THE PROSEXYTOR'S OFFICE | $0.00 | |
| 03/14/2002 | STATE'S RESPONSE TO DEFENDANT'S MOTION TO INSTRUCT THE JURY TO CONSIDER REMNANT DOUBT AND MERCY IN ITS MITIGATION PHASE INSTRUCTIONS FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | STATE'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO LIMIT THE STATE'S ARGUMENT AT MITIGATION TO AGGRAVATING CIRCUMSTANCES PROVEN AT THE TRIAL OHASE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM CONTRA DEFENDANT'S MOTION TO PROHIBIT PROSECUTOR FROM COMMMETING ON ACCUSED'S UNSWWORN STATEMENT FILED BY THE PROSECUTOR'S OFFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSTION TO DEFENDANT'S MOTION TO HAVE REASONS FOR DEFENSE OBJECTIONS AND REASONS FOR OVERRULING DEFENDANT'S OBJECTIONS PLACED ON RECORD FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE PHOTOGRAPHS OF DECEDENTS FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION  TO DEFENDANT'S MOTION TO RESTRAIN CERTAIN PARTIES FROM DISCUSSING THE  CASE WITH THE DEFENDANT FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN RESPO9NSE TO DEFENDANT'S MOTION FOR AND ORDER REGULATING THE TRANSFER OF THE DEFENDANT FROM JAIL TO THE COURTROOM FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN RESOONSE TO DEFENDANT'S MOTION TO PROHIBIT THE FILMING PHOTOGRA[HING OR VIDEOTAPING OF DEFENDANT WHILE IN THE COURTROOM FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO INCREASE BURDEN OF PROOF TO BEYOND ALL DOUBT FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | STATE'S RESPONSE TO DEFENDANT'S MOTION TO HAVE ALL MOTION HEARD ON THE RECORD FILED THE PROSECUTOR'S OFFICE | $0.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7

6/2/2017                                CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFEMDAMT'S REQUEST FOR RULING ON MOTION PRIOR TO COMMENCEMENT OF TRIAL FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR TRANSCRIPT FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S  MOTION FOR INCREASE IN THE NUMBER OF PEREMPTORY CHALLENGES FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM  IN OPPOSITION OT DEFENDANT'S MOTION FOR ALTERNATING VOIR DIRE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO REDUCE BIAS IN THE ANNUAL JURY LIST FILED BY THE PROSECUTOR'S | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR INDIVIDUAL SEQUESTERED VOIR DIRE ON SELECT TOPICS FILED BY THE PROSCUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO REQUIRE PROSECUTOR TO STATE REASONS FOR EXCERISING PEREMPTORY CHALLENGES FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO SUBMIT QUESTIONNAIRE TO PROSECITIVE JURORS FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSTION TO DEFENDANT'S MOTION TO PROHIBIT THE USE OF PEREMPTORY CHALLENGES TO EXCLUDE JURORS WHO EXPRESS CONCERNS ABOUT CAPITAL PUNISHMENT FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITIIUON TO DEFENDANT'S MOTION TO PROHIBIT DEATH QUALIFICATIONS UNTIL PROSECUTION HAS SHOWN PROBABLE CAUSE FOR MITGATION FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM CONTRA TO DEFENDANT'S MOTION TO COMPEL LAW ENFORCEMENT OFFICIALS TO TURN ALL INFORMATION ACQUIRED DURING INVESTIGATION FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL EXCULPATORY AND IMPEACHMENT EVIDENCE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR AND ORDER DIRECTING THAT A COMPLETE COPY OF THE PROSECUTING ATTORNEY'S FILE BE MADE TURNED OVER TO THE COURT FRO REVIEW AND EALED FOR APPELLATE REVIEW FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S CONSTITUTIONAL  MOTION TO DISMISS FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDYM IN OPPOSITION TO DEFENDANT'S MOTION FOR PENALTY PHASE INSTRUCTION RESPECTING ORDER OF DELIBERATIONS AND LACK OF NECESSITY TO FIRST AGREE UNANIMOUSLY ON A RECOMMENDATION OF DEATH FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO INSTRUCT THE JURY THAT IT IS TO RECOMMEND A SENTENCE OF DEATH ONLY AFTER THE PROPER WEIGHING AND DETERMINING THAT DEATH IS THE APPROPRIATE PUNSHIMENT FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR INSTRUCTIONS THAT STATE BEARS THE BURDEN OF PROVING THE ABSENCE OF ANY MITIGATING FACTORS OFFERED BY THE DEFENSE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO INSTRUCT ON SPECIFIC MITIGATING FACTORS RAIDED BY DEFENSE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 8

6/2/2017 CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 03/14/2002 | MEMORANDYM IN OPPOSITION OT DEFENDANT'S MOTION TO INSTRUCT THE JURY THAT IT IS TO WEIGH ONLY THE AGGRAVATING CIRCUMSTANCES AND NOT THE AGGRAVATED MURDER ITSELF IN DETERMINING PUNISHMENT AND TO SO LIMIT THE PROSECUTOR IN ARGUMENT FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDYM IN OPPOSITION TO DEFENDANT'S MOTIO TO REMOVE REFERENCE TO REDUCING THE DEGREE OF BLAME FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN REPSONSE TO DEFENDANT'S  MOTION FOR WRITTEN JURY INSTRUCTIONS AND OPPORTUNITY TO REVIEW FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MOTION IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO PROIHIBIT PREJUDICIAL ARGUMENTS AND THEMES AT THE CLOSING ARGUMENTS OF THE PENTALTY PHASE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S ,OTION TO PROHIBIT THE PROSECUTOR FROM ARGUING AND THE COURT FROM GIVING INSTRUCTIONS REGARDING STATUTORY MITIGATING FACTORS NOT RAISED BY THE DEFENSE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM CONTRA DEFENDANT'S MOTION TO PROHIBIT ANY EVIDENCE BEARING ON THE CHARCTER OF THE VICTIM OR VICTIM IMPACT FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM CONTRA MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO PRRECLUDE READMISSION OF TRIAL PHASE EVIDENCE AND EXHIBITS IN PENALTY PHASE AND RELATED PROSECUTORIAL COMMENT FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM CONTRA MOTION TO PROHIBIT ABT RECFDERENCES TO THE FIRST OHASE AS THE "GUILT PHASE" FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDYM IN OPPOSITION TO DEFENDANT'S MOTION TO ALLOW DEFENSE TO ARGUE FIRST AND LAST AT SENTENCING HEARING FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO CHALLENGE ARRAY OF GRAND JURY AND PETIT JURY FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR A CHANGE OF VENUE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OIPPOSITION TO DEFENDANT'S MOTION FOR FDISCLOSE OF PROSECUTOR'S JURY SELECTION DATA FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/14/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION O PROHIBIT REFERENCES TO THE JURY THAT A VERDICT AS TO DEATH IS ONLY A RECOMMENDATION IUN THE ALTERNATIVE MOTION TO PROHIBIT REFERENCES TO THE BINDING OR NON-BINDING NATURE OF THE JURY DETERMINATION FILED BY THE PROSECUTOR'S | $0.00 | |
| 03/19/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR CLOSURE OF PRE TRIAL HEARINGS AND TO INSULATE VENIRE AND JURY FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/19/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO PROHIBIT THE USE OF PEREMPTORY CHALLENGES TO EXCLUDE JURORS WHO EXPRESS CONCERNS ABOUT CAPITAL PUNISHMENT FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/19/2002 | STATE'S OPPOSITION TO DEFENDANT'S MOTION TO HAVE COURT FOLLOW THE O.R.C. 2945.25 STANDARD FOR "DEATH QUALIFICATION " OF VENIRE PERSONS FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/19/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'SMOTION FOR DISCLOSURE OF PROSECUTOR'S JURY SELECTION DATA FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |

6/2/2017                                  CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 03/19/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR DISCLOSURE OF GRAND JURY TRANSCRIPT FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/20/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO PROHIBIT DEATH QUALIFICATION OR IN TH E ALTERNATIVE TO SEAT A SEPARATE JURY DURING THE PENALTY PHASE OF THE TRIAL FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/20/2002 | STATE'S RESPONSE TO DEFENDANT'S MOTION TO ALLOW THE DEFENSE TO ARGUE FIRST AND LAST AQT PENALTY OHASE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/20/2002 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO INSTRUCT THE JURY REGARDING PAROLE FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 04/09/2002 | PLTFS SUPPLEMENTAL RESPONSE TO DEFTS REQUEST FOR DISCOVERY WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 04/15/2002 | STATES SECOND SUPPLEMENTAL RESPONSE TO DEFTS REQUEST FOR DISCOVERY WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 04/17/2002 | MOTION FOR AN ORDER TO TAKE HANDWRITING EXEMPLARS WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 04/18/2002 | STATES THIRD SUPPLEMENTAL RESPONSE TO DEFTS REQUEST FOR DISCOVERY WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 04/24/2002 | 969/878 STATES MOTION FOR AN ORDER TO TAKE HANDWRITING EXEMPLARS FROM THE DEFT IS GRANTED. 4/24/02 COPIES SENT TO: PROSECUTOR & A CONSOLDANE. 4/24/02 INSTRUCTIONS FILED - COPIES SENT TO: SGT PETER PIZULLO, D WATKINS, J LEWIS & A CONSOLDANE Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 04/24/2002 | POSTAGE Amount Owed: $2.04 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.04 | |
| 05/03/2002 | STATES FOURTH SUPPLEMENTAL RESPONSE TO DEFTS REQUEST FOR DISCOVERY WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 05/31/2002 | STATE'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 07/29/2002 | STATE'S FIFTH SUPPLEMENTAL RESPONSE TO DEFENDANT'S REQUEST FOR DISCOVERY FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 08/07/2002 | NOTICE OF REQUEST FOR SPECIFIC DISCOVERY FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 08/23/2002 | HEARING ON MOTION 08/29/2002  01:00 PM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 HEARING ON MOTION FOR SPECIFIC DISCOVERY (N8/23/02) | $0.00 | |
| 08/23/2002 | STATES SIXTH SUPPLEMENTAL RESPONSE TO DEFTS REQUEST FOR DISCOVERY WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 08/29/2002 | MOTION TO CONTINUE FILED BY PROSECUTOR | $0.00 | |
| 08/29/2002 | HEARING 09/05/2002  01:00 PM BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 08/30/2002 | 980/518 STATES MOTION FOR CONTINUANCE GRANTED Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/05/2002 | MEMORANDUM IN OPPOSITION TO DEFTS MOTION FOR SPECIFIC DISCOVERY WITH SERVICE FILED BY PROSECUTOR | $0.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 10

6/2/2017                                    CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 09/11/2002 | 981/510 DEFENDANTS MOTION FOR WRITTEN INSTRUCTION AND OPPORTUNITY TO REVIEW GRANTED  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/511 MOTION TO INSTRUCT ON SPECIFIC MITIGATING FACTORS RAISED BY DEFENSE DENIED  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/512 MOTION TO INSTRUCT JURY REGARDING PAROLE DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/513 CONSTITUTIONAL MOTION TO DISMISS DENIED. SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/514 MOTION TO COMPEL DISCLOSURE OF EXCULPATORY AND IMPEACHMENT EVIDENCE GRANTED. SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/515 MOTION TO SUBMIT QUESTIONAIRE TO PROSPECTIVE JURORS DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/516 MOTION TO REQUIRE PROSECUTOR TO STATE REASONS FOR EXERCISING PEREMPTORY CHALLENGES DENIED. SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/517 MOTION FOR INDIVIDUAL SEQUESTERED VOIR DIRE ON SELECT TOPICS GRANTED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/518 MOTION TO PROHIBIT ANY REFERENCES TO THE FIRST PHRASE AS THE GUILT PHASE GRANTED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/519 MOTION TO PROHIBIT ANY EVIDENCE BEARING ON THE VICTIM OR VICTIM IMPACT DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/520 MOTION FOR AUGMENTED UNAMIMITY INSTRUCTION FOR CAPITAL SPECIFICATION DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/521 MOTION FOR A CHANGE OF VENUE CONTINUED. SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/522 MOTION TO CHALLENGE THE ARRAY OF THE GRAND JURY AND PETIT JURY DENIED. SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 11

6/2/2017                                         CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 09/11/2002 | 981/523 MOTION TO ALLOW THE DEFENSE TO ARGUE FIRST AND LAST AT THE SENTENCING HEARING DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/524 DEFENDANTS MOTION TO PROHIBIT THE USE OF PEREMPTORY CHALLENGES TO EXCLUDE JURORS WHO EXPRESS CONCERNS ABOUT CAPITAL PUNISHMENT DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/525 DEFENDANTS MOTION TO HAVE THE COURT FOLLOW THE OHIO REV CODE 2945-25(C) STANDARD FOR DEATH QUALIFICATIONS DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/526 MOTION TO ALLOW THE DEFENSE TO ARGUE LAST AT THE PENALTY PHASE DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/527 MOTION TO COMPEL DISCLOSURE OF THE PROSECUTING ATTORNEYS JURY SELECTION DATA DENIED. SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/528 MOTION TO PROHIBIT DEATH QUALIFICATION OF JURY: IN THE ALTERNATIVE, IF NECCESARY, TO SEAT A SEPERATE JURY DURING PENALTY PHASE OF TRIAL DENIED. SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/529 MOTION FOR DISCLOSURE OF ANY AND ALL AGREEMENTS AND OR BENEFITS AND OR DEALS INVOLVING PROSECUTING WITNESSES GRANTED. SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/530 DEFENDANTS MOTION REGARDING (A) NO COMMENTS ON DEFENSE WITNESS LIST GRANTED. (B) NO COMMENTS ON THE FACT THAT DEFENSE EXPERTS DENIED. SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/531 MOTION TO PROHIBIT REFERENCES TO THE JURY AT ANY POINT IN THESE PROCEEDINGS THAT A VERDICT AS TO DEATH IS ONLY A RECOMMENDATION IN THE ALTERNATIVE MOTION TO PROHIBIT REFERENCES TO THE BINDING OR NON BINDING NATURE OF THE JURY'S DETERMINATION DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/532 MOTION FOR PENALTY PHASE JURY INSTRUCTION RESPECTING ORDER OF DELIBERATIONS AND LACK OF NECESSITY TO FIRST AGREE UNANIMOUSLY ON A VERDICT OF DEATH DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/533 MOTION FOR AN ORDER DIRECTING THAT A COMPLETE COPY BE MADE AND TURNED OVER TO THE COURT FOR REVIEW AND TO BE SEALED FOR APPELLATE REVIEW DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 12

CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 09/11/2002 | 981/534 MOTION TO COMPEL ALL STATE AGENTS TO TURN OVER TO THE PROSECUTING ATTORNEYS AND TO ADVISE THEM OF ALL INFORMATION ACQUIRED DURING THE COURSE OF THE INVESTIGATION OF THIS CASE GRANTED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/535 MOTION TO PROHIBIT DEATH QUALIFICATION OF POTENTIAL JURORS UNLESS AND UNTIL THE PROSECUTION HAS SHOWN PROBABLE CAUSE THAT THE CASE WILL PROCEED TO MITIGATION DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/536 MOTION TO PROHIBIT STATE FROM USING PEREMPTORY CHALLENGES TO EXCLUDE JURORS WHO EXPRESS CONCERNS ABOUT CAPITAL PUNISHMENT DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/537 MOTION REQUESTING MITIGATING PHASE INSTRUCTIONS ON REMNANT DOUBT ABOUT GUILTY AND MERCY AS MITIGATING FACTORS DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/538 MOTION TO REDUCE BIAS IN THE ANNUAL JURY LIST DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/539 MOTION FOR AN ALTERNATING VOIR DIRE DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/540 MOTION FOR AN INCREASE IN THE NUMBER OF PEREMPTORY CHALLENGES DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/541 MOTION FOR TRANSCRIPTS DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/542 DEFENDANTS REQUEST FOR RULING ON ALL MOTIONS PRIOR TO COMMENCEMENT OF TRIAL GRANTED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/543 MOTION FOR ALL MOTIONS TO BE HEARD ON THE RECORD GRANTED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/544 MOTION TO INCREASE THE BURDEN OF PROOF TO BEYOND ALL DOUBT IN BOTH THE TRIAL AND SENTENCING PHRASES DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 13

6/2/2017                                                    CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 09/11/2002 | 981/545 MOTION TO PROHIBIT THE FILMING, PHOTOGRAPHING OR VIDEOTAPING OF THE DEFENDANT WHILE IN THE COURTROOM IN THE EVENT THE DEFENDANT BECOMES A WITNESS AT TRIAL GRANTED, BUT DENIES DEFENDANTS MOTION TO THE EXTENT THAT THE DEFENDANT IS MERELY PRESENT IN THE COURTEOOM.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/546 MOTION FOR AN ORDER REGULATING THE TRANSFER OF THE DEFENDANT FROM JAIL TO THE COURTROOM CONTINUED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/547 MOTION TO RESTRAIN PARTIES FROM DISCUSSING THE CASE WITH THE DEFENDANT GRANTED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/548 MOTION IN LIMINE TO EXCLUDE PHOTOGRAPHS OF THE DECEDENTS DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/549 MOTION FOR CLOSURE OF THE PRETRIAL HEARINGS AND TO INSULATE VENIRE AND JURY DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/550 MOTION TO INSTRUCT THE JURY THAT IT IS TO RETURN A VERDICT OF DEATH ONLY AFTER THE PROPER WEIGHING AND DETERMINING THAT DEATH IS THE APPROPRIATE PUNISHMENT DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/582 FINDINGS OF FACTS AND CONCLUSIONS OF LAW. DEFTS MOTION TO SUPPRESS IS OVERRULED. SEE J/E. 9/11/02 COPIES SENT TO: PROSECUTOR & A CONSOLDANE<br>Amount Owed: $30.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $30.00 | |
| 09/11/2002 | POSTAGE<br>Amount Owed: $0.74<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $0.74 | |
| 09/11/2002 | 981/551 MOTION FOR INSTRUCTION THAT THE STATE BEARS THE BURDEN OF PROVING THE ABSENCE OF ANY MITIGATING FACTORS OFFERED BY THE DEFENSE DENIED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/552 VOIR DIRE MEMORANDUM:THE DEFENSE MUST BE ALLOWED TO EXAMINE PROSPECTIVE JURORS REGARDING THEIR VIEWS ON CAPITAL PUNISHMENT PRIOR TO THEIR EXCUSAL IS TAKEN UNDER ADVISMENT.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 09/11/2002 | 981/553 MOTION TO PRECLUDE READMISSION OF TRIAL PHRASE EVIDENCE AND EXHIBITS IN THE PENALTY PHRASE AND RELATED PROSECUTORIAL COMMENT DENIED. SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $2.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 14

6/2/2017 CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 09/11/2002 | 981/554 MOTION TO PROHIBIT THE PROSECUTOR FROM ARGUING AND THE COURT FROM GIVING INSTRUCTIONS REGARDING STATUTORY MITIGATING FACTORS NOT RAISED BY THE DEFENSE GRANTED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/555 MOTION IN LIMINE TO PROHIBIT PREJUDICIAL ARGUMENTS AND THEMES AT THE CLOSING ARGUMENT OF THE PENALTY PHASE GRANTED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/556 MOTION TO ALTER DEFINTION OF MITIGATING CIRCUMSTANCES TO REMOVE REFERENCE TO REDUCING THE DEGREE OF BLAME AND TO REPLACE THIS WITH OTHER LANGUAGE AND TO SO LIMIT THE PROSECUTOR IN ARGUMENT DENIED. SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 988/557 MOTION TO INSTRUCT THE JURY THAT IT IS TO WEIGH ONLY THE AGGRAVATING CIRCUMSTANCES AND NOT THE AGGRAVATED MURDER ITSELF GRANTED.  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/558 DEFTS MOTION TO PROHIBIT REFERENCE TO NATURE AND CIRCUMSTANCES OF THE OFFENSE AS A FACTOR TO BE CONSIDERED IN MITIGATION IS GRANTED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/559 DEFTS VOIR DIRE MEMORANDUM: VENIRE PERSONS WHO CANNOT FAIRLY CONSIDER MITIGATING EVIDENCE AND WHO WOULD AUTOMATICALLY VOTE FOR DEATH UPON A SHOWING OF GUILTY MUST BE EXCUSED - GRANTED IN PART AND DENIED IN PART. SEE J/E<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/560 DEFTS MOTION IN LIMINE REGARDING OTHER ACTS EVIDENCE GRANTED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/561 DEFTS MOTION TO RECORD ALL SIDE BAR PROCEEDINGS GRANTED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/562 DEFTS MOTION FOR A RULE 104 HEARING DENIED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/563 DEFTS MOTION FOR INDIVIDUAL SEQUESTERED VOIR DIRE DENIED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/564 DEFTS MOTION FOR A COMPREHENSIVE VOIR DIRE GRANTED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 15

6/2/2017                                CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 09/11/2002 | 981/565 DEFTS MOTION FOR A SECOND VOIR DIRE OF THE JURY IF DEFT IS FOUND GUILTY  DENIED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/566 DEFTS MOTION TO PROHIBIT PROSECUTOR FROM COMMENTING ON DEFTS UNSWORN STATEMENT GRANTED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/567 DEFTS MOTION TO PERMIT DEFENSE TO ADMIT ALL RELEVANT EVIDENCE AT MITIGATION PHASE GRANTED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/568 DEFTS MOTION FOR SEQUESTRATION OF JURORS FOR DURATION OF TRIAL DENIED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/569 DEFTS MOTION FOR DISCLOSURE OF THE TRANSCRIPT OF PROCEEDINGS BEFORE THE GRAND JURY DENIED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/570 DEFTS MOTION TO EXTEND TIME TO FILE MOTIONS DENIED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/571 DEFTS MOTION FOR DISCLOSURE OF WITNESS STATEMENTS PRIOR TO TRIAL DENIED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/572 DEFTS MOTION IN LIMINE TO PROHIBIT DISPLAY OF EXHIBITS GRANTED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/573 DEFTS MOTION TO PERMIT DEFT TO APPEAR IN CIVILIAN CLOTHING AT ALL COURT PROCEEDINGS DENIED IN PART AND GRANTED IN PART. SEE J/E<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/574 DEFTS MOTION TO PROPERLY PRESERVE AND CATALOG ALL PHYSICAL EVIDENCE DENIED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/575 DEFTS MOTION FOR DISCLOSURE OF REBUTTAL WITNESSES GRANTED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/576 DEFTS MOTION IN LIMINE TO LIMIT THE STATES ARGUMENT AT MITIGATION TO THE AGGRAVATING CIRCUMSTANCES PROVEN AT THE TRIAL PHASE DENIED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 16

6/2/2017                                   CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 09/11/2002 | 981/577 DEFTS MOTION TO ALLOW FULL STATEMENT OF DEFENSE OBJECTIONS AT TRIAL AND TO REQUIRE A STATEMENT OF REASON FOR OVERRULING SAME ON THE RECORD DENIED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/578 DEFTS MOTION TO REQUIRE THE JURY TO ARTICULATE THE METHOD BY WHICH IT WEIGHS THE AGGRAVATING AGAINST THE MITIGATING CIRCUMSTANCES DENIED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/11/2002 | 981/579 DEFTS MOTION FOR SPECIFIC DISCOVERY DENIED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 09/16/2002 | STATES SEVENTH SUPPLEMENTAL REPSONSE TO DEFTS REQUEST FOR DISCOVERY WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 09/24/2002 | STATES EIGHTH SUPPLENTAL RESPONSE TO DEFTS REQUEST FOR DISCOVERY FILED BY PROSECUTOR | $0.00 | |
| 10/08/2002 | STATES NINTH SUPPLEMENTAL RESPONSE TO DEFTS REQUEST FOR DISCOVERY WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/11/2002 | STATES TENTH SUPPLEMENTAL RESPONSE TO DEFTS REQUEST FOR DISCOVERY WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/16/2002 | STATES TENTH SUPPLEMENTAL RESPONSE TO DEFTS REQUEST FOR DISCOVERY WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/16/2002 | STATES REQUEST FOR JURY VIEW WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/17/2002 | STATES ELEVENTH SUPPLEMENTAL RESPONSE TO DEFTS REQUEST FOR DISCOVERY WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/21/2002 | STATES TWELFTH SUPPLEMENTAL RESPONSE TO DEFTS REQUEST FOR DISCOVERY WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/23/2002 | WITNESS FEES FOR PAULA CARSON<br>Amount Owed: $6.30<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $6.30 | |
| 10/23/2002 | WITNESS FEES FOR JAMES C DANIELS<br>Amount Owed: $28.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $28.00 | |
| 10/23/2002 | WITNESS FEES FOR FRANK REYNOLDS<br>Amount Owed: $14.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $14.00 | |
| 10/24/2002 | SUBPOENA RETURNED AND ENDORSED ON JENNIFER ROBISON BY SGT FRANK DILLON | $0.00 | |
| 10/24/2002 | SUBPOENA RETURNED AND ENDORSED ON KRIS ELLINGTON BY SGT FRANK DILLON | $0.00 | |
| 10/24/2002 | SUBPOENA RETURNED AND ENDORSED ON JILL KENYON BY SGT FRANK DILLON | $0.00 | |
| 10/25/2002 | CERTIFIED MAILER NUMBER P 00001278833 SENT TO: MICHAEL ROBERTS<br>Amount Owed: $5.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $5.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 17

6/2/2017                                      CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 10/25/2002 | CERTIFIED MAILER NUMBER P 00001278834 SENT TO: DONNA ROSE<br>Amount Owed: $5.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 120861 Date: 03/18/2008 | $5.00 | |
| 10/25/2002 | CERTIFIED MAILER NUMBER P 00001278835 SENT TO: BRENDA K GERARDI<br>Amount Owed: $5.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 120861 Date: 03/18/2008 | $5.00 | |
| 10/28/2002 | SUBPOENA RETURNED AND ENDORSED ON BRIDGET PAUL BY WARREN PD | $0.00 | |
| 10/28/2002 | SUBPOENA RETURNED AND ENDORSED ON KATHY KIHM BY HOWLAND PD | $0.00 | |
| 10/28/2002 | SUBPOENA RETURNED AND ENDORSED ON CATHY THOMAS BY HOWLAND PD | $0.00 | |
| 10/28/2002 | WITNESS FEES FOR JOSE FLORES<br>Amount Owed: $33.40<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 120861 Date: 03/18/2008 | $33.40 | |
| 10/29/2002 | 985/362 JURORS EXCUSED BY COUNSEL<br>Amount Owed: $18.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 120861 Date: 03/18/2008 | $18.00 | |
| 10/30/2002 | SUBPOENA RETURNED AND ENDORSED ON BMV RECORDS DEPT ON 10-30-02 | $0.00 | |
| 10/30/2002 | SUBPOENA RETURNED AND ENDORSED ON BRAD CAIN ON 10-30-02 | $0.00 | |
| 10/30/2002 | MOTION FOR PROCESS SERVER WITH SERVICE FILED BY ATTY ANTHONY CONSOLDANE | $0.00 | |
| 10/30/2002 | CERTIFIED MAIL NUMBER 1278834 RETURNED ENDORSED FROM DONNA ROSE ON 10/29/02 BY KELLY LUMAN | $0.00 | |
| 10/30/2002 | CERTIFIED MAIL NUMBER 1278835 RETURNED ENDORSED FROM BRENDA K GERARDI ON 10/29/02 BY KELLY LUMAN | $0.00 | |
| 10/30/2002 | SUBPOENA RETURNED BY SHERIFF.  UNABLE TO SERVE JANET CLAY IN TIME FOR HEARING<br>Amount Owed: $1.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 113326 Date: 11/28/2007 | $1.00 | |
| 10/31/2002 | SUBPOENA RETURNED AND ENDORSED ON SKY BANK BY PROCESS SERVER | $0.00 | |
| 10/31/2002 | SUBPOENA RETURNED BY SHERIFF. NO SERVICE ON SANTIAGO MASON<br>Amount Owed: $1.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 113326 Date: 11/28/2007 | $1.00 | |
| 10/31/2002 | SUBPOENA RETURNED AND ENDORSED ON DAND HINES BY TRUMBULL COUNTY SHERIFF<br>Amount Owed: $1.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 113326 Date: 11/28/2007 | $1.00 | |
| 10/31/2002 | SUBPOENA RETURNED AND ENDORSED ON DIANA MARCHESE BY TRUMBULL COUNTY SHERIFF<br>Amount Owed: $1.00<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 113326 Date: 11/28/2007 | $1.00 | |
| 10/31/2002 | SUBPOENA RETURNED AND ENDORSED ON TAMMY KAYE BY TRUMBULL COUNTY SHERIFF<br>Amount Owed: $2.30<br>Paid Before Conversion: $0.00<br>Receipt Number: Receipt: 114916 Date: 12/21/2007 | $2.30 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 18

6/2/2017                                          CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 11/01/2002 | 985/837 ORDERED THAT INVESTIGATORS MORRIS HILL AND BEN DIGIOVANNI SHALL RECEIVE, SERVE AND MAKE RETURN OF SUBPEONAS  SEE JE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 11/08/2002 | CERTIFIED MAIL NUMBER 1278833 RETURNED ENDORSED FROM MICHAEL ROBERTS ON 10/29/02 BY KELLY LUMAN | $0.00 | |
| 11/12/2002 | 986/713 VERDICT FOR PLAINTIFF. COUNT ONE: INDICTMENT FOR AGGRAVATED MURDER<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 11/12/2002 | 986/714 VERDICT FOR PLAINTIFF - SPECIFICATION #1 TO THE FIRST COUNT OF THE INDICTMENT<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 11/12/2002 | 986/715 VERDICT FOR PLAINTIFF - SPECIFICATION #2 TO THE FIRST COUNT OF THE INDICTMENT<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 11/12/2002 | 986/716 VERDICT FOR PLAINTIFF - COUNT TWO: INDICTMENT FOR AGGRAVATED MURDER<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 11/12/2002 | 986/717 VERDICT FOR PLAINTIFF - SPECIFICATION #1 TO THE SECOND COUNT OF THE INDICTMENT<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 11/12/2002 | 986/718 VERDICT FOR PLAINTIFF - SPECIFICATION #2 TO THE SECOND COUNT OF THE INDICTMENT<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 11/12/2002 | 986/719 VERDICT FOR PLAINTIFF - COUNT THREE: INDICTMENT FOR AGGRAVATED BURGLARY<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 11/12/2002 | 986/720 VERDICT FOR PLAINTIFF - SPECIFICATION #1 TO THE THIRD COUNT OF THE INDICTMENT<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 11/12/2002 | 986/721 VERDICT FOR PLAINTIFF - COUNT FOUR: INDICTMENT FOR AGGRAVATED ROBBERY<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 11/12/2002 | 986/722 VERDICT FOR PLAINTIFF - SPECIFICATION #1 TO THE FOURTH COUNT OF THE INDICTMENT<br>Amount Owed: $10.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $10.00 | |
| 11/18/2002 | HEARING 11/26/2002  01:00 PM<br>BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 11/18/2002 | SENTENCING HEARING 12/09/2002  10:00 AM<br>BEFORE:HON. JOHN M. STUARD LOC:COURT 2 | $0.00 | |
| 11/18/2002 | 987/116 COUNT ONE: JURY FINDING AND RECOMMENDATION OF DEATH SENTENCE<br>Amount Owed: $4.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $4.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 19

6/2/2017                                    CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 11/19/2002 | STENOGRAPHER FEE<br>KELLY J WILSON<br>OFFICIAL COURT REPORTER<br>Amount Owed: $125.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $125.00 | |
| 12/09/2002 | 988/789 OPINION OF THE COURT - FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING IMPOSITION OF DEATH PENALTY<br>Amount Owed: $24.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $24.00 | |
| 12/10/2002 | MOTION FOR PAYMENT OF EXPERT FEES FILED BY THE DEFENDANT'S ATTORNEY ANTHONY CONSOLDANE | $0.00 | |
| 12/10/2002 | POST SENTENCING RIGHTS FILED BY PROSECUTOR'S OFFICE | $0.00 | |
| 12/10/2002 | COMPLETE RECORD<br>Amount Owed: $20.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $20.00 | |
| 12/10/2002 | STENOGRAPHER FEE<br>Amount Owed: $25.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $25.00 | |
| 12/10/2002 | WARRANT TO CONVEY TO CORRECTIONAL RECEPTION CENTER ISSUED TO SHERIFF ON 12-10-02 | $0.00 | |
| 12/10/2002 | EXECUTION FOR COSTS IN FELONY. ISSUED TO SHERIFF ON 12-10-02 | $0.00 | |
| 12/10/2002 | 988/873 SENTENCING: DECEMBER 9, 2002 - DEFENDANT TO BE TAKEN FROM COURTROOM TO TRUMBULL COUNTY JAIL AND FROM THERE TO CORRECTION RECEPTION CENTER AT LORAIN OHIO AND THEREAFTER SENTENCED TO DEATH ON DECEMBER 10, 2003 ON COUNT ONE; IMPRISONED THEREIN FOR STATED PRISON TERM OF 10 YEARS ON COUNT THREE; PLUS MANDATORY TERM OF 3 YEARS ON FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE TO SENTENCE IMPOSED IN COUNT THREE; 10 YEARS ON COUNT FOUR, PLUS MANDATORY TERM OF 3 YEARS ON FIREARM SPECIFICATION TO BE SERVED PRIOR TO AND CONSECUTIVE TO SENTENCE IMPOSED IN COUNT FOUR, SENTENCE IN COUNT FOUR TO BE SERVED CONSECUTIVELY TO SENTENCE IMPOSED ON COUNT THREE. FIREARM SPECIFICATIONS IN COUNT 3 AND COUNT 4 SHALL MERGE AS ONE SENTENCE IN COUNT 3 AS MATTER OF LAW. DEFENDANT TO PAY COSTS. 12/10/02 COPIES SENT: PROSECUTOR, A CONSOLDANE, SUPREME COURT OF OHIO.<br>Amount Owed: $8.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $8.00 | |
| 12/10/2002 | 988/877 ORDER ON WARRANT TO CONVEY<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 12/10/2002 | 988/878 APPROVAL OF PAYMENT OF COUNSEL FEES.<br>12/10/02 CC TO AUDITOR<br>Amount Owed: $12.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $12.00 | |
| 12/11/2002 | 989/004 DEFENDANT'S MOTION FOR PROPORTIONALITY REVIEW IS DENIED. 12/11/02 COPIES SENT" PROSECUTOR, A CONSOLDANA<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 20

6/2/2017                                    CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 12/11/2002 | 989/005 DEFENDANT'S MOTION FOR NEW TRIL DENIED. 12/11/02 COPIES SENT: PROSECUTOR, A CONSOLDANE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 12/13/2002 | WARRANT RETURNED SHOWING SERVICE ON DEFENDANT SHERIFF ALTIEE<br>Amount Owed: $34.90<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $34.90 | |
| 12/16/2002 | MOTION TO PROVIDE FINDING OF FACT AND CONCLUSION FILED BY THE DEFENDANT'S ATTORNEY | $0.00 | |
| 12/17/2002 | EXECUTION OF COSTS RETURNED ENDORSED BY SHERIFF<br>Amount Owed: $5.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $5.00 | |
| 12/17/2002 | 989/422 JUDGMENT ON VERDICT<br>Amount Owed: $4.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007  Receipt: 120861  Date: 03/18/2008 | $4.00 | |
| 12/17/2002 | 989/424 DEFTS MOTION FOR A NEW TRIAL IS DENIED. SEE J/E. 4/17/02 COPIES SENT TO: PROSECUTOR & A CONSOLIDANE<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 12/17/2002 | POSTAGE<br>Amount Owed: $0.74<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $0.74 | |
| 01/03/2003 | 990/462 APPROVAL OF PAYMENT OF EXPERT EXPENSES<br>Amount Owed: $12.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 120861  Date: 03/18/2008 | $12.00 | |
| 01/21/2003 | MOTION FOR TRANSCRIPTS FILED BY ATTORNEY JOHN LACZKO. | $0.00 | |
| 01/21/2003 | 991/929 ORDER FOR MARY ANN MILLS, KELLY WILSON AND LORI RITTWADGE, OFFICIAL COURT REPORTERS, PRODUCE COPY OF ALL PROCEEDINGS FOR PURPOSES OF APPEAL.<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 01/27/2003 | NOTICE OF APPEAL OF APPELLANT,NATHANIEL E JACKSON FILED BY THE SUPREME COURT OF OHIO ALSO ORDER TO CERTIFY RECORD IN DEATH PENALTY CASE FILED | $0.00 | |
| 02/04/2003 | 993/384 DEFTS MOTION FOR TRANSCRIPTS GRANTED<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 03/14/2003 | MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO PROHIBIT REFERENCE TO NATURE ANND CIRCUMSTANCES OF THE OFFENSE AS A FACTOR TO BE CONSIDERED  IN MITIGATION OR IN INTRODUCTORY LANGUAGE RESPECTING MITIGATION FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 05/12/2003 | 1001/428 MOTION FOR EXTENSION OF TIME TO TRANSMIT THE RECORD IS GRANTED AND THE TIME FOR TRANSMITTING THE RECORD IS EXTENDED TO 7/7/03<br>Amount Owed: $2.00<br>Paid Before Conversion: $0.00<br>Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 06/25/2003 | HERAING FILED BY MARY ANN MILLS<br>          OFFICIAL COURT REPORTER<br>EXHIBITS FROM JURY TRIAL PROCEEDINGS AND MITIGATION | $0.00 | |
| 06/25/2003 | TRANSCRIPT OF PROCEEDINGS(16 VOLUMES) FILED BY COURT REPORTER | $0.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 21

6/2/2017 CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 07/03/2003 | RECORD FILED WITH THE SUPREME COURT OF OHIO. RECORD CONSISTS OF 7 BOXES AND ONE POSTER INCLUDING EVIDENCE,16 VOL TRANSCRIPTS, ORIGINAL PAPERS, AND CERTIFIED COPY OF TRANSCRIPT OF DOCKET AND JOURNAL ENTRIES AND  EXHIBIT LIST. CERTIFIED COPIES TO COUNSEL. | $0.00 | |
| 01/05/2004 | NATHANIEL JACKSON'S POST-CONVICTION PETITION VOLUME 1 FILED BY ATTY RANDALL PORTER | $0.00 | |
| 01/05/2004 | NATHANIEL JACKSON'S POST CONVICTION PETITION VOLUME II FILED BY ATTY RANDALL PORTER | $0.00 | |
| 01/12/2004 | COPIES OF NATHANIEL JACKSON POST-CONVICTION PETITION VOLUME 1 & 2 FILED BY THE OFFICE OF THE OHIO PUBLIC DEFENDER GIVEN TO THE TRUMBULL COUNTY PROSECUTOR'S OFFICE ON JANUARY 12 2004 | $0.00 | |
| 01/14/2004 | MOTION TO EXTEND TIME TO REPSOND WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 01/21/2004 | 1021/395 PURSUANT TO A MOTION BY THE PLAINTIFF-RESPONDENT, THE STATE OF OHIO, AND R.C. 2953.21(D), THIS COURT FIXES THE DUE DATE FOR THE STATE'S RESPONSE BY ANSWER OR MOTION AT 3/1/04. THE STATE, PER MOTION, HAS SHOWN GOOD CAUSE TO EXTEND THE DUE DATE FROM 1/15/04 TO 3/1/04. 1/21/04 COPIES SENT TO: PROSECUTOR, D BODIKER & R PORTER Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 01/21/2004 | POSTAGE Amount Owed: $1.11 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $1.11 | |
| 02/24/2004 | MOTION TO EXTEND TIME TO RESPOND FILED BY THE PROSECUTOR'S OFFICE | $0.00 | |
| 03/05/2004 | 1025/038 THE DATE FOR THE STATES RESPONSE BY ANSWER OR MOTION IS EXTENDED FROM 3/1/04 TO 3/31/04. 3/8/04 COPIES SENT TO: PROSECUTOR, D BODIKER & R PORTER Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 03/08/2004 | POSTAGE Amount Owed: $1.11 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $1.11 | |
| 03/29/2004 | NATHANIEL JACKSON'S AMENDED POST-CONVICTION PETITION FILED BY ATTORNEY RANDALL PORTER COUNSEL FOR PETITIONER | $0.00 | |
| 03/29/2004 | VOLUME I,II EXHIBITS TO NATHANIEL JACKSON'S AMENDED POST-CONVICTION PETITION FILED BY ATTORNEY RANDALL PORTER | $0.00 | |
| 03/29/2004 | COPY OF NATHANIEL JACKSON'S AMENDED POST-CONVICTION PETITION AND COPY OF VOLUME,I,II EXHIBITS TO NATHANIEL JACKSON'S AMENDED POST-CONVICTION PETITION GIVEN TO THE TRUMBULL COUNTY PROSECUTOR'S OFFICE ON 3-29-04 PERSONAL SERVICE TO LUWAYNE ANNOS | $0.00 | |
| 03/30/2004 | MOTION TO DISMISS FILED BY THE PROSECUTOR'S OFFICE ATTORNEY LUWAYNE ANNOS | $0.00 | |
| 03/30/2004 | MOTION FOR ADDITIONAL TIME TO FILE RESPONSIVE PLEADING FILED BY THE PROSECUTOR'S OFFICE ATTORNEY LUWAYNE ANNOS | $0.00 | |

6/2/2017                                    CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 03/31/2004 | 1027/311 THIS COURT FIXED THE DUE DATE FOR THE STATES RESPONSE BY ANSWER OR MOTION TO PETITIONER'S AMENDED POSTCONVICTION PETITION TO 4/30/04. 3/31/04 COPIES SENT TO: D BODIKER, R PORTER & PROSECUTOR Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 03/31/2004 | POSTAGE Amount Owed: $1.11 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $1.11 | |
| 04/13/2004 | MOTION TO DISMISS AMENDED PETITION FILED BY THE PROSECUTOR'S  OFFICE | $0.00 | |
| 04/22/2004 | MOTION FOR APPOINTMENT OF COUNSEL FILED BY ATTORNEY RANDALL L PORTER  ASSISTANT  STATE PUBLIC DEFENDER OF THE OHIO PUBLIC DEFENDER | $0.00 | |
| 04/23/2004 | NATHANIEL JACKSON'S MOTION TO GRANT HIM UNTIL MAY 20 2004 IN WHICH TO RESPONSE TO THE STATE'S MOTION TO DISMISS FILED BY THE DEFENDANT'S ATTORNEY RANDALL L PORTER OFFICE OF THE OHIO PUBLIC DEFENDER | $0.00 | |
| 04/27/2004 | 1029/415 ORDER FOR DEFENDANT NATHANIEL JACKSON'S MOTION FOR APPOINTMENT OF COUNSEL GRANTED. COURT APPOINTS ASSISTANT STATE PUBLIC DEFENDER RANDALL L PORTER. ORDER IS EFFECTIVE NUN PRO TUNC TO JULY 9, 2003. 4/27/04 COPIES SENT TO: A CONSOLDANE, J LEWIS, J LACZKO, R PORTER, PROSECUTOR Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 04/27/2004 | POSTAGE Amount Owed: $1.85 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 113326  Date: 11/28/2007 | $1.85 | |
| 05/13/2004 | NATHANIEL E JACKSON'S OTION TO GRANT HIM UNTIL MAY 20 2004 IN WHICH TO RESPOND TO THE STATE'S MOTION TO DISMISS FILED THE DEFENDANT'S ATTORNEY RANDALL PORTER ASSISTANT STATE PUBLIC DEFENDER | $0.00 | |
| 05/13/2004 | 1030/743 THE DUE DATE FOR NATHANIEL JACKSON'S REPLY TO THE STATE'S MOTIONS TO DISMISS AT 5/20/04. SEE J/E. Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number:  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 05/20/2004 | NATHANIEL JACKSON'S MEMORANDUM CONTRA TO THE PROSECUTOR'S MOTION TO DISMISS FILED BY THE THE DEFENDANT'S ATTORNEY | $0.00 | |
| 05/27/2004 | NATHANIEL JACKSON'S FIRST NOTICE OF ADDITIONAL AUTHORITY IN SUPPORT OF HIS MEMORANDUM CONTRA FILED BY ATTORNEY RANDALL PORTER ASSISTANT STATE PUBLIC DEFENDER | $0.00 | |
| 06/02/2004 | NATHANIEL JACKSON'S APPENDIX TO HIS MEMORANDUM CONTRA TO THE PROSECUTOR'S MOTION TO DISMISS FILED BY THE OHIO PUBLIC DEFENDER ATTORNEY DAVID BODIKER | $0.00 | |
| 06/10/2004 | FILE SENT UP TO JUDGE JOHN M STUARD  ON 6-10-04 | $0.00 | |
| 06/14/2004 | NATHANIEL JACKSON'S MOTION FOR LEAVE OF COURT TO CONDUCT DISCOVERY FILED BY THE DEFENDANT'S ATTORNEY RANDALL L PORTER ASSISTANT STATE PUBLIC DEFENDER | $0.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 23

6/2/2017                                   CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 06/14/2004 | 1032/878 FINDINGS OF FACT AND CONCLUSIONS OF LAW DISMISSING PETITIONER'S ORIGINAL AND AMENDED PETITION FOR POST CONVICTION RELIEF. IT IS ORDERED THAT PETITIONER'S PETITION TO VACATE OR SET ASIDE SENTENCE IS DISMISSED WITHOUT A HEARING. Amount Owed: $66.00 Paid Before Conversion: $0.00 Receipt Number: Receipt: 120861  Date: 03/18/2008 | $66.00 | |
| 06/18/2004 | NATHANIEL JACKSON'S MOTION REQUESTING THE COURT NOT DELEGATE ITS JUDICIAL FUNCTION TO THE PREVAILING PARTY IN DRAFTING FINDINGS OF CACT AND CONCLUSIONS OF LAW FILED BY RANDALL L PORTER ASSISTANT STATE PUBLIC DEFENDER | $0.00 | |
| 07/12/2004 | NOTICE OF APPEAL TO THE ELEVENTH DISTRICT COURT OF APPEALS FILED BY ATTY RANDALL PORTER | $0.00 | |
| 08/30/2004 | 1039/809 DEFTS MOTION FOR LEAVE OF COURT TO CONDUCT DISCOVERY RENDERED MOOT. SEE FINDINGS OF FACT FILED ON 6/14/04. 8/31/04 COPIES SENT TO: PROSECUTOR, A CONSOLDANE, J LEWIS, J LACZKO & R PORTER Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number: Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 08/30/2004 | POSTAGE Amount Owed: $1.85 Paid Before Conversion: $0.00 Receipt Number: Receipt: 113326  Date: 11/28/2007 | $1.85 | |
| 06/29/2005 | 1064/918 MOTION FOR APPOINTMENT OF OCUNSEL IS GRANTED. ATTY DENNIS LAGER IS APPOINTED AS COUNSEL. THIS ORDER IS EFFECTIVE NUNC PRO TUNC TO FEBRUARY 6, 2003. 6/30/05 COPIES: PROSECUTOR, A CONSOLDANE, J LEWIS, J LACZKO, R PORTER Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number: Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 06/30/2005 | POSTAGE Amount Owed: $1.85 Paid Before Conversion: $0.00 Receipt Number: Receipt: 113326  Date: 11/28/2007 | $1.85 | |
| 01/24/2006 | 1084/393 OPINION OF THE SUPREME COURT OF OHIO (SEE JE) Amount Owed: $76.00 Paid Before Conversion: $0.00 Receipt Number: Receipt: 120861  Date: 03/18/2008 | $76.00 | |
| 01/26/2006 | 1084/622 ORDER FROM THE SUPREME COURT OF OHIO RE MOTION FOR STAY IS GRANTED Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number: Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 03/07/2006 | 1088/969 MANDATE FROM COURT OF APPEALS - JUDGMENT OF TRIAL COURT IS AFFIRMED Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number: Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 05/30/2006 | 1097/689 MANDATE FROM COURT OF APPEALS Amount Owed: $2.00 Paid Before Conversion: $0.00 Receipt Number: Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 08/15/2006 | REQUEST FOR LEAVE TO FILE HIS MOTION FOR A NEW SENTENCING HEARING FILED BY THE DEFENDANT'S ATTORNEY RANDALL PORTER | $0.00 | |
| 08/25/2006 | STATES RESPONSE TO DEFTS REQUEST FOR LEAVE TO FILE A MOTION FOR NEW SENTENCING HEARING WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 09/05/2006 | NATHANIEL JACKSON'S MOTION FOR RELIEF FROM JUDGMENT WITH SERVICE FILED BY ATTY RANDALL PORTER | $0.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 24

6/2/2017                                    CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 09/13/2006 | NATHANIEL JACKSON'S MOTION FOR RECUSAL WITH SERVICE FILED BY ATTY RANDALL PORTER | $0.00 | |
| 09/13/2006 | NOTICE FILE REQUESTED BY JUDGE STUARD FROM CLERK'S OFFICE | $0.00 | |
| 09/13/2006 | MOTION TO EXTEND TIME TO FILE REPSONSE WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 09/19/2006 | STATES MOTION TO ENTEND TIME TO FILE ITS RESPONSE IS GRANTED. STATES RESPONSE IS DUE BY OCTOBER 19, 2006. | $0.00 | |
| 09/19/2006 | POSTAGE - 09/22/06 COPIES SENT TO PROS, A.CONSOLDANE, R.PORTER, J.LEWIS & J.LACZKO Receipt: 113326  Date: 11/28/2007 | $1.95 | |
| 09/20/2006 | NATHANIEL JACKSON'S MOTION TO DISQUALIFY THE OFFICE OF THE TRUMBULL COUNTY PROSECUTING ATTORNEY FILED BY THE DEFENDANT'S ATTORNEY RANDALL PORTER | $0.00 | |
| 09/20/2006 | NOTICE | $0.00 | |
| 09/27/2006 | STATES ANSWER TO DEFTS MOTION FOR RECUSAL OF JUDGE STUARD WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/04/2006 | MOTION TO CONTINUE WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/05/2006 | NATHANIEL JACKSON'S REPLY TO MOTION FOR RECUSAL WITH SERVICE FILED BY ATTY RANDALL PORTER | $0.00 | |
| 10/10/2006 | NATHANIEL JACKSON'S APPLICATION FOR DISQUALIFICATION OF TRUMBULL COUNTY COMMON PLEAS JUDGE JOHN M STUARD WITH SERVICE FILED BY ATTY RANDALL PORTER ALONG WITH LETTER FROM SUPREME COURT OF OHIO STATING THAT THIS APPLICATION WAS FILED AT THE SUPREME COURT - CASE NO 06AP102 | $0.00 | |
| 10/19/2006 | STATES ANSWER TO DEFTS MOTION FOR RELIEF FROM JUDGMENT WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 10/26/2006 | NATHANIEL JACKSON'S REPLY IN SUPPORT OF HIS MOTION FOR RELIEF FROM JUDGMENT WITH SERVICE FILED BY ATTY RANDALL PORTER | $0.00 | |
| 10/27/2006 | NATHANIEL JACKSON'S CORRECTED REPLY IN SUPPORT OF HIS MOTION FOR RELIEF FROM JUDGMENT WITH SERVICE FILED BY ATTY RANDALL PORTER | $0.00 | |
| 12/01/2006 | ORDERED THAT THE AFFIDAVIT OF DISQUALIFICATION IS DENIED  Receipt: 113326  Date: 11/28/2007 | $1.56 | |
| 12/26/2006 | JUDGMENT ENTRY ON THE DEFTS 12-8-06 MOTION FOR CLARIFICATION. SEE JE  Receipt: 113326  Date: 11/28/2007 | $2.00 | |
| 01/22/2007 | CONTINUANCE GRANTED TO RESPOND TO DEFT'S MOTION TO DISQUALITY THE PROS. OFFICE IS GRANTED UNTIL JAN 24 2007. 1-22-07 COPIES TO A. CONSOLDANE, R. PORTER, J. LEWIS, J. LACZKO, D LAGER AND PROS.  Receipt: 114916  Date: 12/21/2007 | $2.00 | |
| 01/23/2007 | STATES RESPONSE TO DEFT JACKSON'S MOTION TO DISQUALIFY THE OFFICE OF THE TRUMBULL COUNTY PROSECUTING ATTY WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 01/29/2007 | POSTAGE  Receipt: 114916  Date: 12/21/2007 | $2.34 | |
| 04/24/2007 | RECEIPT FROM THE SUPREME COURT OF OHIO.  ALL ORIGINAL PAPERS (7 BOXES AND 1 POSTER) RETURNED TO THE TRUMBULL COUNTY CLERK OF COURTS | $0.00 | |
| 04/27/2007 | NOTICE OF APPEARANCE AND REQUEST FOR STATUS CONFERENCE WITH SERVICE FILED BY ATTY JOHN PARKER | $0.00 | |
| 08/07/2007 | XXX COSTS SENT TO CORRECTIONAL FACILITY FOR INMATE PAYMENT OF COSTS | $0.00 | |
| 09/06/2007 | LETTER FILED BY DEFT REGARDING PAYMENT OF COURT COSTS | $0.00 | |
| 12/03/2007 | LETTER FILED BY DEFT REGARDING COURT COSTS | $0.00 | |
| 02/15/2008 | 6 BOXES OF EXHIBITS AND 1 POSTER TAKEN TO SUPREME COURT OF OHIO TO BE USED FOR DONNA ROBERTS HEARING (COMPANION CASE) | $0.00 | |
| 02/15/2008 | ORDERED THAT DEFENDANTS MOTION FOR STATUS CONFERENCE IS GRANTED. ASSIGNMENT OFFICE ORDERED TO SET STATUS CONFERENCE AT CONVENIENCE OF COURT. 2-15-08 COPIES TO: PROS, N. JACKSON, J. PARKER  Receipt: 120861  Date: 03/18/2008 | $4.00 | Image |
| 02/15/2008 | POSTAGE  Receipt: 120861  Date: 03/18/2008 | $0.82 | |
| 02/27/2008 | HEARING SET:<br>Event: STATUS CONFERENCE<br>Date: 04/18/2008    Time: 1:30 pm<br>Judge: STUARD, JOHN M   Location: COURTROOM 2<br><br>Result: BRIEFS TO BE SUBMITTED | | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 25

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 02/27/2008 | NOTICE SENT:<br><br>SPEEDY MAILER<br>Sent on:  02/27/2008  11:58:28 | | |
| 02/29/2008 | NATHANIEL JACKSON'S MOTION FOR A NEW TRIAL AND/OR SENTENCING HEARING WITH SERVICE FILED BY<br>RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | |
| 03/05/2008 | STATES MOTION FOR ADDITIONAL TIME TO FILE RESPONSE TO DEFTS MOTION FOR NEW TRIAL AND/OR SENTENCING WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 03/14/2008 | NOTICE OF APPEAL TO THE  11TH DISTRICT COURT OF APPEALS FILED BY ATTY R PORTER | $0.00 | |
| 03/17/2008 | STATES MOTION FOR ADDITIONAL TIME TO FILE RESPONSE TO DEFENDANTS MOTION FOR NEW TRIAL AND/OR SENTENCING HEARING IS GRANTED. | $4.00 | Image |
| 03/18/2008 | COUNTY FEES WITNESS FEES FOR FRANK REYNOLDS, JAMES C DANIELS AND PAULA CARONS Receipt: 120871  Date: 03/18/2008 | $48.30 | |
| 03/18/2008 | COUNTY FEES WITNESS FEES FOR JOSE FLORES  Receipt: 120873  Date: 03/18/2008 | $33.40 | |
| 04/10/2008 | STATES MEMORANDUM IN OPPOSITION TO DEFTS MOTION FOR NEW TRIAL AND/OR SENTENCING HEARING WITH SERVICE FILED BY PROSECUTOR | $0.00 | Image |
| 05/09/2008 | NATHANIEL JACKSON'S REPLY IN SUPPORT OF HIS MOTION FOR A NEW TRIAL AND/OR SENTENCING HEARING WITH SERVICE FILED BY<br>RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |
| 05/09/2008 | APPENDIX TO NATHANIEL JACKSON'S REPLY IN SUPPORT OF HIS MOTION FOR A NEW TRIAL AND/OR SENTENCING HEARING - VOLUME 1, EXHIBITS A-B FILED BY ATTY RANDALL PORTER | $0.00 | Image |
| 05/09/2008 | APPENDIX TO NATHANIEL JACKSON'S REPLY IN SUPPORT OF HIS MOTION FOR A NEW TRIAL AND/OR SENTENCING HEARING - VOLUME 11, EXHIBITS C-F FILED BY ATTY RANDALL PORTER | $0.00 | Image |
| 05/13/2008 | STATES RESPONSE TO DEFTS REPLY IN SUPPORT OF HIS MOTION FOR NEW TRIAL AND/OR SENTENCING HEARING WITH SERVICE FILED BY PROSECUTOR | $0.00 | Image |
| 05/15/2008 | NATHANIEL JACKSON'S SECOND APPLICATION FOR DISQUALIFICATION OF TRUMBULL COUNTY COMMON PLEAS JUDGE JOHN M STUARD WITH SERVICE FILED BY<br>JOHN P PARKER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | |
| 05/15/2008 | VOLUME I, EXHIBITS 1-6 APPENDIX TO NATHANIEL JACKSON'S SECOND APPLICATION FOR DISQUALIFICATION OF TRUMBULL COUNTY COMMON PLEAS JUDGE JOHN M STUARD WITH SERVICE FILED BY<br>JOHN P PARKER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | |
| 05/15/2008 | VOLUME II, EXHIBITS 7-19, APPENDIX TO NATHANIEL JACKSON'S SECOND APPLICATION FOR DISQUALIFICATION OF TRUMBULL COUNTY COMMON PLEAS JUDGE JOHN M STUARD WITH SERVICE FILED BY<br>JOHN P PARKER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | |
| 06/24/2008 | NATHANIEL JACKSONS REQUEST FOR LEAVE TO FILE HIS MOTION FOR A NEW TRIAL WITH MEMORANDUM OF LAW WITH CERTIFICATE OF SERVICE FILED BY<br>RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | |
| 06/24/2008 | APPENDIX TO NATHANIEL JACKSONS MOTION FOR A NEW TRIAL. VOLUME 1, EXHIBITS B, B-1 TO B-4 WITH EXHIBITS WITH CERTIFICATE OF SERVICE FILED BY<br>RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | |
| 06/24/2008 | APPENDIX TO NATHANIEL JACKSONS MOTION FOR A NEW TRIAL. VOLUME II, EXHIBITS B-5 TO B-10 WITH EXHIBITS FILED BY<br>RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | |
| 07/08/2008 | STATES MEMORANDUM IN OPPOSITION TO DEFTS MOTION FOR LEAVE TO FILE MOTION FOR NEW TRIAL AND TO DEFTS MOTION FOR NEW TRIAL WITH SERVICE FILED BY PROSECUTOR | $0.00 | |
| 07/16/2008 | ORDERED THAT DEFENDANTS MOTION FOR LEAVE TO FILE MOTION FOR NEW TRIAL IS GRANTED. DEFENDANTS MOTION FOR NEW TRIAL IS OVERRULED.<br>7-17-08 COPIES TO: PROS, R. PORTER | $4.00 | Image |
| 07/16/2008 | POSTAGE | $0.42 | |
| 07/28/2008 | REPLY IN SUPPORT OF HIS SECOND APPLICATON FOR DISQUALIFICATION OF TRUMBULL COUNTY COMMON PLEAS JUDGE JOHN M. STUARD AND CERTIFICATION FILED BY ATTY R PORTER | $0.00 | |
| 08/13/2008 | NOTICE OF FILING OF PLEADING FROM HIS SECOND APPLICATION FOR DISQUALIFICATION ALONG WITH 3 VOLUMES FILED BY<br>RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | |
| 08/14/2008 | NOTICE OF APPEAL TO THE  11TH DISTRICT COURT OF APPEALS FILED BY BY ATTY R PORTER | $0.00 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 26

6/2/2017                                    CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|---|---|---|---|
| 08/19/2008 | ORDER TO CERTIFY RECORD IN DEATH PENALTY CASE. | $4.00 | Image |
| 08/25/2008 | JUDGMENT ENTRY: THE AFFIDAVIT OF DISQUALIFICATION IS DENIED. THE CASE MAY PROCEED BEFORE JUDGE STUARD. | $10.00 | Image |
| 09/04/2008 | 1 VOL TRANSCRIPT OF PROCEEDINGS FILED BY MARY ANN MILLS, OFFICIAL COURT REPORTER | $0.00 | |
| 09/25/2008 | INDEXES PREPARED FOR APPEAL AND COMMON PLEAS CASES AND SENT TO ATTORNEY'S ON 09/25/08 | $0.00 | |
| 10/17/2008 | RECEIPT OF RECORD - 3 BOXES OF PAPERS AND 1 BOX OF TP RECEIVED IN THE SUPREME COURT OF OHIO ON 10/14/08 (01CR794 AND 08TR24) (APPEAL NO. 2008-1610) | $0.00 | Image |
| 01/16/2009 | MANDATE FROM SUPREME COURT OF OHIO. IT IS ORDERED THAT MOTION TO DISMISS IS GRANTED. THIS CAUSE IS DISMISSED. | $2.00 | Image |
| 05/04/2009 | ORDERED THAT DEFENDANTS MOTION TO DISQUALIFY THE PROSECUTORS OFFICE IS DENIED AS MOOT. 5-4-09 COPIES TO: PROS, J. PARKER | $4.00 | Image |
| 05/04/2009 | POSTAGE | $0.42 | |
| 06/03/2009 | NOTICE OF APPEAL TO THE 11TH DISTRICT COURT OF APPEALS FILED BY ATTY R PORTER AND J PARKER | $0.00 | |
| 03/29/2010 | MANDATE FROM COURT OF APPEALS. IT IS THE JUDGMENT AND ORDER OF THIS COURT THAT THE TRUMBULL COMMON PLEAS COURT IF AFFIRMED. | $2.00 | Image |
| 10/18/2010 | MANDATE FROM COURT OF APPEALS. IT IS THE JUDGMENT AND ORDER OF THIS COURT THAT JUDGMENT OF TRUMBULL COMMON PLEAS IS VACATED AND CASE IS REMANDED FRO RESENTENCING AND FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. | $2.00 | Image |
| 10/27/2010 | STATE'S MOTION TO SET RE-SENTENCING DATE WITH SERVICE FILED BY PROSECUTOR. | $0.00 | Image |
| 11/05/2010 | NATHANIEL JACKSON'S MEMORANDUM IN OPPOSITION TO THE STATE'S MOTION TO SET A DATE FOR RESENTENCING WITH SERVICE FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |
| 02/17/2011 | RECORD RETURNED FROM THE SUPREME COURT OF OHIO. | $0.00 | Image |
| 02/13/2012 | STATES RENEWED MOTION TO SET SENTENCING WITH PROOF OF SERVICE FILED BY ASSISTANT PROSECUTING ATTORNEY CHARLES L MORROW | $0.00 | Image |
| 02/22/2012 | NATHANIEL JACKSON'S RESPONSE TO THE STATES RENEWED MOTION TO SET A DATE FOR RESENTENCING WITH CERTIFICATE OF SERVICE FILED BY JOHN P PARKER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |
| 04/16/2012 | AFTER COURT HAS AGAIN REVIEWED THE RECORDS OF THE CASE RECENTLY DELIEVERED BY THE SUPREME COURT A HEARING DATE WILL BE SET FOR RESENTENCING. 4-16-12 COPIES TO: PRPS, PARKER, PORTER, LAGER, PENTZ, LACKZO | $4.00 | Image |
| 04/16/2012 | POSTAGE | $2.25 | |
| 07/20/2012 | HEARING SET: Event: RE-SENTENCING HEARING Date: 08/14/2012   Time: 1:00 pm Judge: STUARD, JOHN M   Location: COURTROOM 2 <br><br>Result: COMPLETED | | |
| 07/20/2012 | NOTICE SENT: <br><br>SPEEDY MAILER Sent on:  07/20/2012  12:24:26.29 | | |
| 08/01/2012 | NATHANIEL JACKSONS MOTION TO APPOINT COUNSEL WITH CERTIFICATE OF SERVICE FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |
| 08/01/2012 | NATHANIEL JACKSONS MOTION FOR A CONTINUANCE WITH CERTIFICATE OF SERVICE FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |
| 08/06/2012 | STATE'S OPPOSITION TO DEFENDANTS MOTION TO CONTINUE WITH PROOF OF SERVICE FILED BY CHARLES MORROW (Prosecuting Attorney); | $0.00 | Image |
| 08/10/2012 | "COPY" OF NATHANIEL JACKSONS APPLICATION FOR DISQUALIFICATION OF TRUMBULL COUNTY COMMON PLEAS JUDGE JOHN M STUARD SENT TO TRUMBULL COUNTY COURT OF COMMON PLEAS BY THE SUPREME COURT OF OHIO | $0.00 | |
| 08/13/2012 | WARRANT TO CONVEY TO TRUMBULL CORRECTIONAL INSTITUTION  ISSUED TO SHERIFF ON: AUGUST 13, 2012 | $0.00 | |

6/2/2017 CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 08/13/2012 | JOURNAL ENTRY WARRANT TO CONVEY ( FROM TRUMBULL CORRECTIONAL INSTITUTION TO TRUMBULL COUNTY JAIL ) 8-16-12 COPIES TO PROS & R PORTER | $2.00 | Image |
| 08/13/2012 | MOTION FOR DISQUALIFICATION OF JUDGE JOHN M STUARD DENIED 8-15-12 COPIES TO PROS & R PORTER | $2.00 | Image |
| 08/13/2012 | DEFENDANTS MOTION FOR CONTINUANCE OF RESENTENCING DENIED. 8-15-12 | $2.00 | Image |
| 08/14/2012 | MOTION TO DISMISS DEATH PENALTY SPECIFICATIONS WITH CERTFICATE OF SERVICE FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |
| 08/14/2012 | NATHANIEL JACKSONS MOTION FOR VOLUNTARY RECUSAL WITH CERTIFICATE OF SERVICE FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |
| 08/14/2012 | NATHANIEL JACKSONS MEMORANDUM CONCERNING THE SCOPE OF THE RESENTENCING HEARING WITH CERTIFICATE OF SERVICE FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |
| 08/14/2012 | EXHIBIT 1 IN SUPPORT OF NATHANIEL JACKSONS MOTION FOR VOLUNTARY RECUSAL FILED | $0.00 | |
| 08/14/2012 | EXHIBIT 2 IN SUPPORT OF NATHANIEL JACKSONS MOTION FOR VOLUNTARY RECUSAL FILED | $0.00 | |
| 08/14/2012 | EXHIBIT 3 IN SUPPORT OF NATHANIEL JACKSONS MOTION FOR VOLUNTARY RECUSAL FILED | $0.00 | |
| 08/14/2012 | EXHIBITS IN SUPPORT OF NATHANIEL JACKSONS RENEWED MOTION FOR A CONTINUANCE FILED | $0.00 | |
| 08/14/2012 | NATHANIEL JACKSONS PROFFER VOLUME I | $0.00 | |
| 08/14/2012 | NATHANIEL JACKSONS PROFFER VOLUME II | $0.00 | |
| 08/14/2012 | NATHANIEL JACKSONS PROFFER VOLUME III | $0.00 | |
| 08/14/2012 | SENTENCING: CORRECTED ENTRY ON SENTENCE FILED 8-15-12 COPIES TO PROS & R PORTER | $8.00 | Image |
| 08/14/2012 | FINDINGS OF FACT AND CONCLUSIONS OF LAW FILED 8-15-12 COPIES TO PROS & R PORTER | $34.00 | Image |
| 08/15/2012 | WARRANT RETURNED SHOWING SERVICE ON DEFENDANT | $21.00 | Image |
| 08/15/2012 | STATES MOTION TO CORRECT ENTRY ON SENTENCE WITH PROOF OF SERVICE FILED BY CHARLES MORROW (Prosecuting Attorney); | $0.00 | Image |
| 08/16/2012 | DEFENDANT'S MOTION FOR VOLUNTARY RECUSAL IS DENIED 8-16-12 COPIES TO PROS & R PORTER | $2.00 | Image |
| 08/16/2012 | DEFENDANT'S MOTION TO DISMISS DEATH PENALTY SPECIFICATIONS IS DENIED 8-16-12 COPIES TO PROS & R PORTER | $2.00 | Image |
| 08/16/2012 | DEFENDANT'S RENEWED MOTION FOR CONTINUANCE DENIED. 8-16-12 COPIES TO PROS & R PORTER | $2.00 | Image |
| 08/16/2012 | SENTENCING: NUNC PRO TUNCE JUDGMENT ENTRY ON SENTENCE TO THE LORAIN CORRECTIONAL INSTITUTION 8-16-12 COPIES TO PROS & R PORTER | $10.00 | Image |
| 08/22/2012 | POSTAGE | $0.90 | |
| 08/22/2012 | POSTAGE | $0.90 | |
| 08/22/2012 | POSTAGE | $0.90 | |
| 08/22/2012 | POSTAGE | $0.90 | |
| 08/22/2012 | POSTAGE | $0.90 | |
| 08/22/2012 | POSTAGE | $0.90 | |
| 08/22/2012 | NATHANIEL JACKSONS NOTICE OF INTENT TO FILE REPLY TO THE STATE OF OHIO'S AUGUST 15, 2012 MOTION TO CORRECT ENTRY ON SENTENCE WITH CERTIFICATE OF SERVICE FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |
| 08/31/2012 | ENTRY FROM THE SUPREME COURT STATING DEFENDANTS AFFIDAVIT OF DISQUALIFICATION AGAINST JUDGE STUARD IS DISMISSED AS MOOT BECAUSE THE RECORD DOES NOT INDICATE THERE IS ANY OTHER MATTER PENDING BEFORE THE JUDGE. | $6.00 | Image |
| 09/04/2012 | NATHANIEL JACKSON'S MOTION FOR APPOINTMENT OF APPELLATE COUNSEL WITH CERTIFICATE OF SERVICE FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |
| 09/12/2012 | MOTION TO APPOINT APPELLATE COUNSEL IS GRANTED. ATTY RANDALL L PORTER & ATTY DENNIS L SIPE APPOINTED AS COUNSEL 9-12-12 COPIES TO PROS., ATTY J PARKER, ATTY A CONSOLDANE, ATTY R PORTER & ATTY J LACZKO | $2.00 | Image |
| 09/20/2012 | POSTAGE | $1.80 | |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 28

6/2/2017                                    CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 10/03/2012 | ORDER TO CERTIFY THE RECORD IN DEATH PENALTY CASE FROM SUPREME COURT OF OHIO. | $2.00 | Image |
| 10/12/2012 | TRANSCRIPT OF PROCEEDINGS FILED | $0.00 | |
| 12/31/2012 | INDEXES PREPARED AND SENT TO SUPREME COURT ON 12-31-12 | $0.00 | |
| 01/02/2013 | RECEIPT OF RECORD - 5 BOXES OF PAPERS AND 6 VOL TRANSCRIPTS WERE TRANSMITTED TO THE CLERK OF COURT OF THE SUPREME COURT OF OHIO ON 12/31/12 (01 CR 794). | $0.00 | Image |
| 06/28/2013 | NATHANIEL JACKSONS POST-CONVICTION PETITION WITH CERTIFICATE OF SERVICE FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) - COPY SENT TO PROS LUWAYNE ANNOS 06-28-13 | $0.00 | Image |
| 06/28/2013 | VOLUME I, EXHIBITS TO NATHANIEL JACKSONS POST-CONVICTION PETITION FILED (COPY SENT TO PROS LUWAYNE ANNOS 06-28-13) | $0.00 | Image |
| 06/28/2013 | VOLUME II, EXHIBITS TO NATHANIEL JACKSONS POST-CONVICTION PETITION FILED (COPY SENT TO PROS LUWAYNE ANNOS 06-28-13) | $0.00 | Image |
| 06/28/2013 | APPENDIX TO NATHANIEL JACKSONS JUNE 28, 2013 POST-CONVICTION PETITION (STATE V. ROBERTS, TRANSCRIPT OF PROCEEDINGS VOLUME XXIV) - COPY SENT TO PROS LUWAYNE ANNOS 06-28-13 | $0.00 | Image |
| 06/28/2013 | APPENDIX TO NATHANIEL JACKSONS JUNE 28, 2013 POST-CONVICTION PETITION (STATE V. ROBERTS, TRANSCRIPT OF PROCEEDINGS VOLUME XXV) - COPY SENT TO PROS LUWAYNE ANNOS 06-28-13 | $0.00 | Image |
| 06/28/2013 | APPENDIX TO NATHANIEL JACKSONS JUNE 28, 2013 POST-CONVICTION PETITION (STATE V. ROBERTS, TRANSCRIPT OF PROCEEDINGS VOLUME XXVI) - COPY SENT TO PROS LUWAYNE ANNOS 06-28-13 | $0.00 | Image |
| 06/28/2013 | APPENDIX TO NATHANIEL JACKSONS JUNE 28, 2013 POST-CONVICTION PETITION (STATE V. ROBERTS, TRANSCRIPT OF PROCEEDINGS VOLUME XXVII) - COPY SENT TO PROS LUWAYNE ANNOS 06-28-13 | $0.00 | Image |
| 06/28/2013 | APPENDIX TO NATHANIEL JACKSONS JUNE 28, 2013 POST-CONVICTION PETITION (STATE V. ROBERTS, TRANSCRIPT OF PROCEEDINGS VOLUME XXVIII) - COPY SENT TO PROS LUWAYNE ANNOS 06-28-13 | $0.00 | Image |
| 06/28/2013 | APPENDIX TO NATHANIEL JACKSONS JUNE 28, 2013 POST-CONVICTION PETITION (STATE V. ROBERTS, MOTION HEARING ON TUES. MAY 13, 2003 AT 9:20 AM) - COPY SENT TO PROS LUWAYNE ANNOS 06-28-13 | $0.00 | Image |
| 06/28/2013 | APPENDIX TO NATHANIEL JACKSONS JUNE 28, 2013 POST-CONVICTION PETITION (STATE V. ROBERTS, HEARING DEC. 6, 2006, JAN. 17, 2007, SEPT. 20, 2007, OCT. 22, 2007 AND OCT. 29, 2007) - COPY SENT TO PROS LUWAYNE ANNOS 06-28-13 | $0.00 | Image |
| 07/02/2013 | VOLUME III, EXHIBITS TO NATHANIEL JACKSONS POST-CONVICTION PETITION WITH CERTIFICATE OF SERVICE FILED BY ATTY RANDALL PORTER (COPY SENT TO PROS LUWAYNE ANNOS 07-02-13) | $0.00 | Image |
| 07/02/2013 | VOLUME IV, EXHIBITS TO NATHANIEL JACKSONS POST-CONVICTION PETITION WITH CERTIFICATE OF SERVICE FILED BY ATTY RANDALL PORTER (COPY SENT TO PROS LUWAYNE ANNOS 07-02-13) | $0.00 | Image |
| 07/02/2013 | MOTION TO FIX DATE FOR STATES RESPONSE PURSUANT TO R.C. 2953.21(D) WITH PROOF OF SERVICE FILED BY LUWAYNE ANNOS (Prosecuting Attorney); | $0.00 | Image |
| 07/08/2013 | PETITIONER NATHANIEL JACKSON'S NOTICE OF FILING OF SUPPLEMENTAL EXHIBIT WITH CERTIFICATE OF SERVICE FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) -  COPY SENT TO PROS. LUWAYNE ANNOS ON 07-08-13 | $0.00 | Image |
| 07/10/2013 | JE:  THE COURT FINDS THAT THE STATE HAS DEMONSTRATED GOOD CAUSE FOR ADDITIONAL RESPONSE TIME, AND HEREBY FIXES THE DUE DATE FOR THE STATE'S ANSWER OR MOTION AT 8/29/13.<br>7/12/13--PROS, J. PARKER, A. CONSOLDANE, R. PORTER, J. LACZKO | $4.00 | Image |
| 07/12/2013 | POSTAGE | $1.84 | |
| 07/23/2013 | REGULAR MAIL ISSUED TO: ANTHONY V CONSOLDANE<br>RETURNED BY POST OFFICE FOR: NOT DELIVERABLE AS ADDRESSED UNABLE TO FORWARD | $0.46 | Image |
| 07/25/2013 | STATES MOTION TO DISMISS PURSUANT TO R.C. 2953.21(D) WITH CERTIFICATION FILED BY LUWAYNE ANNOS (Prosecuting Attorney); | $0.00 | Image |
| 08/02/2013 | NATHANIEL JACKSON'S MOTION TO ESTABLISH AUGUST 26, 2013 AS THE DATE FOR HIM TO RESPOND TO THE STATE'S MOTION TO DISMISS WITH CERTIFICATE OF SERVICE FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 29

6/2/2017                                    CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 08/12/2013 | JE:  THE COURT FINDS THAT PETITIONER HAS DEMONSTRATE GOOD CAUSE FOR SELECTING A RESPONSE DATE AS OF AUGUST 26, 2013 AND HEREBY FIXES THE DUE DATE FOR THE PETITIONER'S RESPONSE TO THE STATE'S MOTION TO DISMISS AT AUGUST 26, 2013. 8/12/13--COPIES TO:  J. PARKER, A. CONSOLDANE, R. PORTER J. LACZKO | $2.00 | Image |
| 08/12/2013 | POSTAGE | $1.84 | |
| 08/19/2013 | REGULAR MAIL ISSUED TO: ANTHONY V CONSOLDANE RETURNED BY POST OFFICE FOR: NOT DELIVERABLE AS ADDRESSED UNABLE TO FORWARD | $0.46 | |
| 08/26/2013 | NATHANIEL JACKSONS MOTION TO EXTEND THE DATE TO RESPOND TO THE STATE'S MOTION TO DISMISS TO AUGUST 30, 2013 WITH CERTIFICATE OF SERVICE FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) (COPY SENT TO PROS LUWAYNE ANNOS) | $0.00 | Image |
| 08/30/2013 | NATHANIEL JACKSON'S RESPONSE TO THE STATE'S MOTION TO DISMISS WITH CERTIFICATE OF SERVICE FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |
| 09/09/2013 | JE:  THE COURT FINDS THAT PETITIONER HAS DEMONSTRATED GOOD CAUSE FOR AN EXTENSION OF 4 DAYS AND FIXES THE DUE DATE FOR THE PETITIONER'S RESPONSE TO THE STATE'S MOTION TO DISMISS AS 8/30/13. 9/9/13--COPIES TO:  PROS, J. PARKER, A. CONSOLDANE, R. PORTER, J. LACZKO | $2.00 | Image |
| 09/09/2013 | POSTAGE | $1.84 | |
| 09/16/2013 | REGULAR MAIL ISSUED TO: ANTHONY V CONSOLDANE RETURNED BY POST OFFICE FOR: UNCLAIMED | $0.46 | |
| 09/27/2013 | JE:  THE COURT FINDS EACH OF THE PETITIONER'S GROUNDS FOR RELIEF ARE BARRED BY RES JUDICATA AND ARE NOT SUPPORTED WITH SUFFICIENT EVIDENCE.  CONSEQUENTLY, THE COURT FINDS PETITIONER IS NOT ENTITLED TO A HEARING AND THE POST-CONVICTION PETITION IS HEREBY DISMISSED IN ITS ENTIRETY.  SEE JE. 10/1/13--COPIES TO:  PROS, J. PARKER, A. CONSOLDANE, R. PORTER, J. LACZKO | $12.00 | Image |
| 10/01/2013 | POSTAGE | $1.84 | |
| 10/07/2013 | REGULAR MAIL ISSUED TO: ANTHONY V CONSOLDANE RETURNED BY POST OFFICE FOR: VACANT | $0.46 | Image |
| 10/24/2013 | NOTICE OF APPEAL TO THE 11TH DISTRICT COURT OF APPEALS FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |
| 12/31/2014 | MANDATE FROM COURT OF APPEALS JUDGMENT OF THE TRUMBULL COUNTY COURT OF COMMON PLEAS IS AFFIRMED.  COSTS TO BE TAXED AGAINST APPELLANT. | $3.00 | Image |
| 11/14/2016 | JUDGMENT ENTRY FROM SUPREME COURT OF OHIO:  JUDGMENT OF THE COURT OF COMMON PLEAS IS AFFIRMED.  SEE JE. | $3.00 | Image |
| 01/13/2017 | NATHANIEL JACKSON'S MOTION FOR LEAVE TO FILE A MOTION FOR A NEW MITIGATION TRIAL WITH CERTIFICATE OF SERVICE FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |
| 01/17/2017 | MOTION TO EXTEND TIME TO FILE RESPONSE TO DEFENDANTS MOTION FOR LEAVE WITH PROOF OF SERVICE FILED BY LUWAYNE ANNOS (Prosecuting Attorney); | $0.00 | Image |
| 01/18/2017 | JE:  PLAINTIFF IS GRANTED AN ADDITIONAL 30 DAYS, UNTIL 2/21/17, TO FILE A RESPONSE. | $3.00 | Image |
| 02/21/2017 | STATES MEMORANDUM IN OPPOSITION TO DEFENDANTS MOTION FOR LEAVE TO FILE MOTION FOR A NEW MITIGATION TRIAL WITH PROOF OF SERVICE FILED BY LUWAYNE ANNOS (Prosecuting Attorney); | $0.00 | Image |
| 02/22/2017 | HEARING SET: Event: MEMO ONLY Date: 03/24/2017   Time: 8:00 am Judge: RICE, RONALD J   Location: COURTROOM 2

Result: COMPLETED | | |
| 02/22/2017 | NOTICE SENT:

SPEEDY MAILER Sent on: 02/22/2017  15:19:18.62 | | |
| 03/03/2017 | NATHANIEL JACKSONS REPLY IN SUPPORT OF HIS MOTION FOR A NEW MITIGATION TRIAL PURSUANT TO CRIMINAL RULE 33 AND HURST V. FLORIDA WITH CERTIFICATE OF SERVICE FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |
| 03/22/2017 | PROPOSED JUDGMENT ENTRY WITH PROOF OF SERVICE FILED BY LUWAYNE ANNOS (Prosecuting Attorney); | $0.00 | Image |

6/2/2017                                            CourtView Justice Solutions

| Date | Docket Text | Amount Owed | Image Avail. |
|------|-------------|-------------|--------------|
| 03/29/2017 | JUDGMENT ENTRY:  DEFENDANTS MOTION FOR LEAVE TO FILE A MOTION FOR A NEW MITIGATION TRIAL IS DENIED.  SEE JE. | $6.00 | Image |
| 04/25/2017 | NATHANIEL E. JACKSONS PRAECIPE WITH CERTIFICATE OF SERVICE FILED BY RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |
| 04/25/2017 | NOTICE OF APPEAL TO 11TH DISTRICT COURT OF APPEALS WITH  DOCKETING STATEMENT, AFFIDAVIT OF INDIGENCY AND COPY OF JE FILED BY: RANDALL L PORTER (Attorney) on behalf of NATHANIEL E JACKSON (DEFENDANT) | $0.00 | Image |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 31

JICR79¥ 11-28-07

Mrs. Karen Infante Allen;

Yes i had sent you a letter back on 9-4-07 asking to make payments on my court cost because i only receive sixteen dollars a month from the state job that i have and i was already paying a six dollar payment to victims of crime for the last four years, but you all just stepped in and had a hold put on my account so that you all can take everything that i receive besides ten dollars and now thats making stop my payments to victim of crime because you have that hold on my account. So i'm asking very respectfully if i can make a payment to you also of six dollars a month? an could you write me back and let me know if we can agree to that.

Thank You

very Respectfully
Nathaniel Jackson

2007 DEC -3 P 3: 46

353



YOUNGSTOWN OH 445

29 NOV 2007 PM 1

USA 41

Nathaniel Jackson #A 440-091
O/S Coitsville Hubbard rd.
Youngstown, Ohio 44505

Mrs. Karen Infante Allen
Clerk of Courts
161 High Street, NW
Warren, Ohio 44481

44481110065

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO
CASE NO. 01-CR-794

STATE OF OHIO,                    )

        PLAINTIFF          )

vs.                               )          JUDGMENT ENTRY

NATHANIEL JACKSON,                )

        DEFENDANT          )


This matter is before the Court on several motions filed by Defendant, Nathaniel Jackson. Upon consideration of the motions and the briefs of counsel, this Court rules upon such motions as follows:

Defendant's motion for leave to file a motion for a new sentencing hearing is granted. Defendant shall file such a motion within fourteen (14) days of the entry of this judgment, the motion for leave attached to Defendant's pleading as Exhibit A is deemed by this Court an exhibit only. The Court will then decide the motion for leave on its merits. In making this ruling, this Court recognizes that the criminal rules, applied strictly, do not contemplate a motion for a new sentencing hearing.

(SCAN)

2

Defendant's motion to vacate this Court's findings of fact and conclusions of law and Defendant's motion for relief from judgment, filed under Civ.R. 60(B)(5), on or about September 1, 2006, are hereby denied. Ohio law permits the prosecution to draft findings of fact and conclusions of law dismissing a post-conviction petition even in death cases. See State v. Lorraine (February 23, 1996), 95 T 5196 (unreported).

Finally, Defendant's motion for a status conference is granted. This Court's assignment officer is hereby ordered to schedule such a status conference at the convenience of the Court and counsel.

IT IS SO ORDERED.

2/15/08
DATE

JUDGE JOHN M. STUARD

2-15-08
copies to:
Pros.
N Jackson
J. Parker

TO THE CLERK OF COURTS: YOU ARE ORDERED TO SERVE COPIES OF THIS JUDGMENT ON ALL COUNSEL OF RECORD OR UPON THE PARTIES WHO ARE UNREPRESENTED FORTH WITH BY ORDINARY MAIL.

JUDGE

## IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,                     :

    Plaintiff,                 : Case No. 01-CR-794

-vs-                               :

NATHANIEL JACKSON,                 : Judge John M. Stuard

    Defendant.                 : ORAL ARGUMENT REQUESTED

## NATHANIEL JACKSON'S MOTION
## FOR A NEW TRIAL AND/OR SENTENCING HEARING

Now comes Nathaniel Jackson, pursuant to Crim R. 33, Civ. R. 59 and Civ. R. 60(B), and moves this Court for a new trial and/or sentencing hearing. This Court and the prosecution impermissibly corroborated in the drafting of the sentencing opinion. *State v. Roberts,* 110 Ohio St. 3d 71, 2006 Ohio 3665 (2006) ¶¶153-167. In addition, this Court denied Nathaniel Jackson his right of allocution. A memorandum of law is attached and incorporated herein.

Respectfully submitted,

JOHN P. PARKER – 0041243
988 East 185 Street
Cleveland, Ohio 44119
1-216-881-0900 (Voice)
1-216-881-3928 (Facsimile)
johnpparker@earthlink.net
Pro Bono Counsel

And

OFFICE OF THE

355

OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street -11th Floor
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0703 (Facsimile)
PorterR@OPD.state.OH.US

By

     COUNSEL FOR NATHANIEL JACKSON

## MEMORANDUM OF LAW

## I.    INTRODUCTION.

On August 2, 2006, the Supreme Court of Ohio vacated the sentence of death in co-defendant Donna Roberts' case. *State v. Roberts,* 110 Ohio St. 3d 71, 2006 Ohio 3665 (2006) ¶¶153-167. That Court concluded that this Court and the prosecution had impermissibly collaborated in the drafting of the sentencing opinion. This Court, at Roberts' sentencing, admitted that the same collaborative process was employed to draft sentencing opinions in other Trumbull County capital cases.

Donna Roberts, in her direct appeal to the Ohio Supreme Court, also asserted that this Court had denied her the right of allocution. *State v. Roberts,* at ¶¶165-166. While the Ohio Supreme Court refused to address the error because it had already found error in the drafting of the sentencing

2

opinion, it did order this Court to provide Roberts, at the time of her re-sentencing, with her right of allocution. ¶ 166. The Ohio Supreme Court would not have entered such an order with respect to allocution if there had not been a violation of her right to allocution.

This Court committed the same errors in the present case. Based upon this Court's statements at Robert's sentencing hearing, it routinely delegates to the prosecution its duties to draft the sentencing opinions in capital cases. Furthermore, this Court had the prosecution write its sentencing opinion prior to Nathaniel Jackson making his statement at the time of sentencing.

This Court deprived Nathaniel Jackson of his rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution; O.R.C. § 2929.03 and Ohio Crim. R. 32(A)(1).

## II.  THIS COURT IN THE PRESENT CASE DELEGATED ITS JUDICIAL DUTIES

On August 2, 2006, the Supreme Court of Ohio decided *State v. Roberts*, 110 Ohio St. 3d 71, 2006 Ohio 3665 (2006) ¶¶ 153-167. The Ohio Supreme Court found therein that this Court had impermissibly delegated to the prosecution the judicial duty to review the evidence and draft the sentencing opinion. ¶¶ 156-160. That Court further found that the contacts themselves between this Court and the prosecution constituted impermissible *exparte* communications. ¶¶ 162-163.

On June 20, 2003 this Court conducted the sentencing hearing for Donna Roberts [Exhibit 1]. Unbeknownst to defense counsel, until the

3

conclusion of that hearing, the prosecution and this Court had combined efforts to draft the sentencing opinion imposing a sentence of death. [*Id.* at 6336]. Counsel for Ms. Roberts objected to the *ex parte* collaborative process. [*Id.* at 6366]. This Court attempted to defend the prosecution's involvement by citing to the fact that it had occurred in other Trumbull County capital cases, "It is the system that is used here because it is the most practical." [Exhibit 1 at p. 6371].

Since the Ohio Supreme Court's decision in *Roberts*, this Court has confirmed it employed in the same flawed drafting procedure in the present case. On October 5, 2006, Nathaniel E. Jackson filed with Chief Justice Moyer of this Court an affidavit of bias and prejudice against Judge Stuard to preclude him from further presiding over the trial level proceedings in Nathaniel Jackson's case. [Exhibit 2].[1] Judge Stuard opposed the motion. [Exhibit 3]. Chief Justice Moyer overruled the motion, but only after determining that Judge Stuard "acknowledges that he held the same kind of communications with the prosecuting attorney's offices in both the Roberts and Jackson capital cases before sentencing them to death... *The judge states that he is prepared to reconsider the evidence and impose a new sentence in this case just as he has been ordered to do so in the related Roberts case.*" *In re*

---

[1] Nathaniel Jackson has not included the exhibits attached to that pleading because, for the most part, he has attached the exhibits as separate exhibits to this pleading. If this Court determines that it also wants filed the exhibits, which are attached Affidavit of Bias and Prejudice, Nathaniel Jackson will do so forthwith.

4

*Disqualification of Stuard*, 113 Ohio St. 3d 1236, 2006-Ohio-7233, ¶ 4. (emphasis added).

Roderick Davie filed a motion for a new sentencing hearing based upon the *Robert's* decision. *State v. Davie,* Trumbull C.P Np. 91-CR-288. [Exhibit 4]. This Court denied the motion citing to the fact that "defendant's arguments, as based upon *Roberts* and *Jackson,* are inapposite in this [Davie's] case, the prosecutor played no role whatsoever in the drafting the opinion of the court filed or record on March 25, 1992. The opinion was drafted by this trial judge in its entirety, as were any other pleadings relating to Mr. Davie's sentence." [Exhibit 5]. It should be reasonably concluded therefore that the prosecutor did draft the sentencing opinion in the present case.

On February 15, 2008, this Court overruled Nathaniel Jackson's Civ. Rule 60 Motion with regard to the post conviction proceedings. [Exhibit 6]. He had premised his motion on the fact that the prosecution had drafted the post-conviction findings of facts, conclusions of law for this Court. This Court in overruling the motion conceded this prosecution's involvement in the drafting process, "Ohio law permits the prosecution to draft findings of fact and conclusions of law dismissing a post-conviction petition even in death cases." See State v. Lorraine (February 23, 1996), 95 T 5196 (unreported)." [*Id.*].

**A. The Court's Delegation Of Its Drafting Duties Violates Ohio's Statutes**

The State of Ohio has adopted a comprehensive statutory capital sentencing scheme. The purpose of the scheme is to insure, given the gravity and finality of the death penalty, that the death penalty is not imposed

5

arbitrarily or disproportionately. *State v. Maurer*, 15 Ohio St. 3d 239, 246-47 (1985); *State v. Johnson*, 24 Ohio St. 3d 87, 93 (1986); *State v. Jenkins*, 15 Ohio St. 3d 164, 176 (1984); *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980).

In the State of Ohio, the sentence of death may be imposed only where "the *court* finds, by proof beyond a reasonable doubt . . . that the aggravating circumstances of the offender was found guilty of committing outweigh the mitigating factors . . . ." O.R.C. § 2929.03(D)(3) (emphasis added). The procedure further requires the *court* to state in a separate opinion its specific findings as to the existence of any of the mitigating factors considered, as well as "the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors . . . ." O.R.C. § 2929.03(F). Similarly, the *trial court* "shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstance of the offense, the history, character, and background of the offender" and other enumerated mitigating factors." O.R.C. § 2929.03(B). The plain language of the statute dictates that the trial court and not the prosecutor must conduct this independent weighing of the aggravating circumstances and mitigating factors.

The Ohio Supreme Court has warned trial courts of the critical need to follow the weighing process set forth in O.R.C. § 2929.03(F), "The failure of *a trial court* to comply with this aspect of R.C. 2929.03(F) disrupts the review procedures enacted by the General Assembly by depriving the defendant

6

and subsequent reviewing courts of the *trial courts'* perceptions as to the weight accorded all relevant circumstances. *State v. Mauer*, 15 Ohio St. 3d at 247. (emphasis added.) The Ohio Supreme Court has vacated death sentences in cases in which the trial court has considered incorrect information. *State v. Davis*, 38 Ohio St. 3d 361, 372 (1988) (trial court considered the facts as non-statutory aggravating circumstances); *State v. Green*, 90 Ohio St. 3d 352, 361-62 (trial court considered non-statutory aggravators, and aggravators not included in the indictment, applied an improper weighing standard, and ignore mitigating evidence).

Given the repeated admonishments by the Ohio Supreme Court concerning the need for accuracy in sentencing opinions and more importantly, the requirement that the trial courts provide independent, meaningful review when considering a recommendation of death, the unanimous decision of the Court in *Roberts* is not surprising. That Court cited to a trial court's duty to weigh the evidence in a capital case as one of the "most solemn of duties that are imposed upon a judge." ¶ 160. That Court found that the statute placed on trial courts the "sole responsibility of personally preparing the opinion" and that the assistance of the prosecution tainted that responsibility. *Id.* at ¶ 159. Finally, the Supreme Court recognized that given the "immense proportions" of imposing a sentence of death, the "scales of justice may not be weighed even slightly by one with an interest in the ultimate outcome." ¶ 160

7

**B. This Court's Delegation Of Its Drafting Duties Violates The Fifth Amendment Right**

Questions involving procedural due process do not address a defendant's guilt or innocence. Instead the analysis focuses upon the fair administration of justice. *Offutt v. United States*, 348 U.S. 11, 16 (1954).

The fair administration of justice is grounded in the assumption that the judicial decisions will be based upon evidence and argument presented in open court, and not by any outside influences, whether of private talk or public support. *Patterson v. Colorado*, 205 U.S. 454, 462 (1907). The courts do not condone individuals associated with one party having contact with the trier of fact during the deliberation process. *Agnew v. Lesbach*, 250 F.3d 1123, 1135 (7th Cir. 2001), *Caliendo v. Warden of California Men's Colony*, 365 F.3d 691, 699 (9th Cir. 2004).

Trials must not only be fair, they must also appear to be fair. *Taylor v. Hayes*, 418 U.S. 488, 501 (1974). Judges must not only be fair they must appear to be fair. The courts "have always endeavored to prevent even the probability of unfairness." *In re Muchison*, 349 U.S. at 136; *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

A due process violation occurs when a party has assumes more than one role in the judicial process. *In re Oliver*, 333 U.S. 257, 272 (1948) (the judge who served as a one person grand jury also served as the judge and jury); *In re Murchison*, 349 U.S. at 137 ("It would be very strange if our system of law

8

permitted a judge to act as a grand juror and then try the person accused as a result of his investigations").

Judicial bias is not subject to a harmless error analysis. *Arizona v. Fulminate,* 499 U.S. 297, 310-311 (1991). It does not matter that the a court may actually have imposed the same sentence without impermissible contact. *Bracey v. Schoenig,* 286 F.3d 406, 414 (7th Cir. 2002). Nor does it matter that the court's sentence might be found to be harmless by an appellate court. *Id.* The error is not corrected by the fact that there exists a statutory procedure that offers a defendant an impartial adjudication on appeal. *Ward v. Village of Monroeville, Ohio,* 409 U.S. 57, 61-2 (1972).

## B.  This Court's Delegation Of Its Drafting Duty Violates the Eighth Amendment.

Capital punishment must either be imposed in a consistent, rational and fair manner, "or not at all." *Eddings v. Oklahoma,* 455 U.S. 104, 112 (1982). Where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action. *Zant v. Stephens,* 462 U.S. 862, 874 (1983) (citing *Furman v. Georgia,* 408 U.S. 238 (1972)).

A defendant's death sentence is infirm when it is based in part on the basis of information which he has had no opportunity to explain. *Gardner v. Florida,* 430 U.S. at 362. An individual sentenced to death has a constitutional right to "a complete, full and unabridged transcript of all

9

proceedings against him." *State, ex rel Spirko v. Judges of the Court of Appeals, Third Appellate District,* 27 Ohio St. 3d 13, 18 (1986). When a court an prosecution meet *ex parte* to discuss the appropriate sentence, this proscription is violated.

## C. This Court's Delegation Of Its Drafting Duty Precludes Meaningful Appellate Review.

The United States Supreme Court has repeatedly stressed that the existence of a comprehensive and functional system of meaningful appellate review is an important safeguard in ensuring that the death penalty is not imposed arbitrarily. *See, e.g., Zant v. Stephens,* 462 U.S. 862, 875 (1985); *Parker v. Dugger,* 498 U.S. 308, 321 (1991) (granting habeas relief where Florida Supreme Court failed to undertake meaningful review of death sentence); *Clemons v. Mississippi,* 494 U.S. 738, 749 (1990); *Stringer v. Black,* 503 U.S. 222, 230 (1992) (holding that where sentencer considers an invalid factor, close appellate scrutiny of effect of that factors is required).

A trial court's failure to comply with the requirements of Ohio Revised Code Section 2929.03(F) and conscription of the prosecution in the sentencing process completely frustrates the appellate review process. "The failure of a trial court to comply with [R.C. 2929.03(F)] disrupts the review procedures enacted by the General Assembly by depriving the defendant and subsequent reviewing courts of the trial court's perceptions as to the weight accorded all relevant circumstances." *State v. Maurer,* 15 Ohio St. 3d 239, 247 (1984), *See also Caldwell v. Mississippi,* 472 U.S. 320, 330 (1985) ("an appellate

10

court . . . is wholly ill-suited to evaluate the appropriateness of death in the first instance").

The importance of having a well defined record for purposes of appellate review is exemplified by the Ohio Supreme Court's decision in *State v. Tenace,* , 109 Ohio St. 3d 255, 2006 Ohio 2417 (2006). In that case the Court made a meticulous review of the mitigating factors. ¶¶ 68-104. The Court vacated the defendant's death sentence because while "a single one of these [mitigating] facts, would not" justify vacating the defendant's death sentence, the mitigating factors when "viewed cumulatively" "strongly militate against imposing the death sentence." ¶ 105.

It will be impossible for the Ohio Supreme Court to determine what information the prosecution considered when it drafted the sentencing opinion. The secret "proceedings" are not recorded. The court and the prosecution may have considered matters not in the record as well as factors prohibited by the Eighth Amendment.

## D.  This Court's Delegation Of Its Drafting Duty Violates The Fourteenth Amendment.

Because Ohio's death penalty statutes, as contained in O.R.C. §§ 2929.02-2929.04, were enacted to prevent the arbitrary imposition of the death penalty, a defendant has a legitimate interest in having Ohio abide by these sections. *State v. Davis*, 28 Ohio St. 3d 361, 369 (1988). Compliance with these statutes is not optional. *Id.* A death sentence imposed or maintained in violation of Ohio's death penalty statutes is a sentence that violates the Due

11

Process Clause of the Fourteenth Amendment, which guarantees each person's life and liberty interests.

The Due Process Clause of the Fourteenth Amendment protects a state criminal defendant from the arbitrary deprivation of his life and liberty. *Hicks v. Oklahoma*, 447 U.S. 343 (1980). The Court therein found that a defendant's federal due process rights were violated when he was denied his state statutory right to have a jury determine his punishment:

> Where, however, a State has provided for the imposition of criminal punishment in the discretion of the trial jury, it is not correct to say that the defendant's interest in the exercise of that discretion is merely a matter of state procedural law. The defendant in such a case has a substantial and legitimate expectation that he will be deprived of his liberty only to the extent determined by the jury in the exercise of its statutory discretion. and that liberty interest is one that the Fourteenth Amendment preserves against arbitrary deprivation by the State.

*Id.* at 346. Hicks' state statutory right to have a jury fix his punishment was a right that "substantially affects the punishment imposed." *Id.* at 347. Similarly, a defendant's state statutory right to have the Ohio Supreme Court *reverse his death sentence* unless it is fair and proportional is a right that "substantially affects the punishment imposed." *See also Romano v. Oklahoma*, 512 U.S. 1, 12 (1994) (defendant has Due Process rights in exclusion of evidence that unfairly infects sentencing proceeding); *Ross v. Oklahoma*, 487 U.S. 81, 89 (1988) (defendant has Due Process rights in peremptory challenges provided under state law); *Evitts v. Lucey*, at 396 (defendant has Due Process rights in appellate procedure established by State); *Morrissey v. Brewer*, 408 U.S. 471, 480-490 (1972) (defendant has Due Process rights in State's exercise

12

of discretion).

One of the cornerstones of Ohio's death penalty scheme is the independent reweighing by the trial judge of a jury's death verdict. It guarantees that the evidence is sufficient and that the death verdict is not the product of improper factors. In light of the special significance that Ohio places on the trial court's role as an "extra or thirteenth juror", a defendant has a constitutionally protected liberty interest in the Ohio courts refraining from arbitrarily deviating from statutory guidelines in performing the weighing analysis.

## III.  THIS COURT DEPRIVED NATHANIEL JACKSON OF HIS RIGHT OF ALLOCUTION

A defendant has a right to allocution at the hearing during which a trial court imposes sentence in a capital case. *State v. Myers*, 97 Ohio St. 3d 335, 358 (2002); *State v. Campbell*, 90 Ohio St. 3d 320, 323 (2000); *State v. Reynolds*, 80 Ohio St. 3d 670, 683 (1998). The conducting of a mitigation hearing in a capital case is not a substitute for a defendant's right of allocution. *State v. Reynolds*, 80 Ohio St. 3d at 684. The failure to accord the defendant his right of allocution is subject to harmless error. *State v. Myers*, 97 Ohio St. 3d at 358 (defendant gave in excess of two hundred pages of sworn testimony subject to cross examination in the mitigation phase); *State v. Reynolds*, 80 Ohio St. 3d at 684 (defendant gave an unsworn statement in mitigation phase, sent the judge a personal letter concerning sentencing after the jury returned

13

its death recommendation and defense counsel spoke on his behalf at the sentencing hearing).

Ms. Roberts, in her appeal from this Court's imposition of a sentence of death, asserted that this Court had denied her right of allocution. *State v. Roberts,* at ¶¶165-166. In her case, this Court began the sentencing hearing by reading its entire sentencing opinion into the record. [Exhibit 1, Tr. 6336-6335]. This Court, subsequently after advising Ms. Roberts' of her appellate rights, asked if she had any comment considering her sentence. [*Id.* at 6376]. The Supreme Court did not address this assigned error on Ms. Roberts' direct appeal to that Court because it had already found the existence of the error in this Court's delegation of its sentencing responsibility. *State v. Roberts,* at ¶ 166. That Court did, however, instruct this Court to "provide Roberts with her right of allocution before imposing any new sentence." *Id.* That Court would not have so instructed this Court if it had already provided Ms. Roberts with her right of allocution. The Court did not find the error harmless, despite the fact that Roberts had given a "lengthy unsworn statement" to the jury in the mitigation phase. *Id.* at ¶ 89.

In the present case this Court, at the sentencing hearing, did permit Nathaniel Jackson to make a statement prior to reading its sentencing opinion. [Sent. Tr. 212-214]. The fact that the procedural order in the present case was different from Ms. Roberts' case does not make a difference. This Court, when it began to read its sentencing opinion stated "I have prepared and *signed* a finding of fact [sic] and conclusion of law regarding the imposition of

14

the death sentence. [Sent. Tr. 212] (emphasis added). The fact that the prosecution had already written for this Court its sentencing opinion prior to the sentencing hearing and this Court had signed the opinion means that Nathaniel Jackson's statement at sentencing was no more than a mere formality. A defendant's constitutional right to speak at his sentencing is more than just a matter of going through the motions. Four years prior to Nathaniel Jackson's sentencing hearing, the Ohio Supreme Court instructed trial courts that they should not prepare and file their sentencing opinions prior to the sentencing hearings. *State v. Reynolds*, 80 Ohio St. 3d at 683. Courts should instead wait unit after the hearing to take into account "new evidence or information" that was presented at the hearing that was relevant to the appropriate sentence. *Id.* This Court's signing of the sentencing opinion and entry prior to the hearing meant that this Court had prejudged the appropriate sentence.

## IV. Conclusion: This Court should grant this motion.

Trial courts can grant motions for new trials and/or sentencing hearings for any of the reasons set forth in Ohio R. Crim. P. 33(A) if they "affect materially [a defendant's] substantial right." Nathaniel Jackson's right to a fair sentencing hearing as guaranteed by the Fifths, Sixth, Eighth and Fourteenth Amendments were violated when this Court 1) permitted the prosecutor in an *ex parte* manner to participate in the Court's sentencing phase deliberations and 2) then denied Nathaniel Jackson any meaningful opportunity to

15

participate in the sentencing hearing held in open court by having already prejudged that death was the appropriate sentence.

The Ohio Supreme Court in Ms. Roberts' case ordered only that this Court had to again conduct the final sentencing hearing and then personally redraft the sentencing opinion. *Roberts* at ¶167. Nathaniel Jackson does not believe that the Ohio Supreme Court ordered the appropriate remedy and therefore requests not a limited final sentencing hearing, but that the he be provided an entirely new mitigation hearing including the presentation of evidence. Once the prosecution began its impermissible involvement in the sentencing process, it became impossible to remove the taint or "unring the bell."

Respectfully submitted,

JOHN P. PARKER – 0041243
988 East 185 Street
Cleveland, Ohio 44119
1-216-881-0900 (Voice)
1-216-881-3928 (Facsimile)
johnpparker@earthlink.net
Pro Bono Counsel

And

OFFICE OF THE
OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street -11th Floor
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0703 (Facsimile)
PorterR@OPD.state.OH.US

16

By_____
    COUNSEL FOR NATHANIEL JACKSON

17

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *NATHANIEL JACKSON'S MOTION FOR A NEW SENTENCING HEARING* was forwarded by first-class, postage prepaid U.S. Mail to Luwayne Annos, Assistant Prosecuting Attorney, Trumbull County Prosecutor's Office, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio  44481, on this 28th day of February, 2008.

RANDALL L. PORTER
COUNSEL FOR PETITIONER

18

**IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO**

STATE OF OHIO,                          :

    Plaintiff,                          :  Case No. 01-CR-794

-vs-                                    :

NATHANIEL JACKSON,                      :  Judge John M. Stuard

    Defendant.                         :

---

### AFFIDAVIT OF RANDALL L. PORTER

---

State of Ohio

County of Franklin,

      Randall L. Porter, after being duly sworn according to law, states a as follows:

    1.   I am an attorney duly licensed in the State of Ohio.

    2.   I am employed by the Office of the Ohio Public Defender as an Assistant State Public Defender.  In that capacity, I am assigned to the Death Penalty Division of that Office.

    3.   I am currently one of the two attorneys who represent Nathaniel Jackson in the proceedings pending before this Court.

    4.   The historical facts alleged in Nathaniel Jackson's Motion for a New Trial and/or Sentencing Hearing are true and accurate to best of my knowledge.

    5.   The exhibits attached to the Motion for a New Trial and/or Sentencing hearing are true and accurate copies of the originals.

      Further affiant sayeth naught.

                            Randall L. Porter

19

Sworn and subscribed to me this the 28th day of February, 2008.

_Kathryn Sandford_
NOTARY

**KATHRYN L. SANDFORD, ATTORNEY AT LAW**
NOTARY PUBLIC, STATE OF OHIO
My commission has no expiration date.
Section 147.03 R.C.

20

6054

```
 1              IN THE COURT OF COMMON PLEAS
                    TRUMBULL COUNTY, OHIO
 2              TRIAL COURT CASE NO. 01-CR-793
              SUPREME COURT OF OHIO CASE NO. 03-1441
 3

 4    STATE OF OHIO        )
                           )        VOLUME XXVIII
 5            Plaintiff    )
                           )
 6    -vs-                 )
                           )
 7    DONNA M. ROBERTS     )
                           )
 8            Defendant    )

 9

10            BE IT REMEMBERED, that on Friday, May 23,

11    2003, Tuesday, May 27, 2003, Wednesday, May 28, 2003,

12    Tuesday, June 3, 2003, Wednesday, June 4, 2003, and

13    Friday, June 20, 2003, these proceedings came on to

14    be heard before one of the Judges of this Court,

15    John M. Stuard, in Courtroom No. 2, on High Street,

16    Warren, Ohio, before the case heretofore filed herein.

17

18

19    Mary Ann Mills, RPR
      Official Court Reporter
20    Trumbull County, Ohio

21

22
```



EXHIBIT 1

6336

1  easier to get through, and I suspect it makes for a

2  more just result, also.

3          Everybody has had their say and I hope

4  have been afforded a fair trial.  This will be

5  reset for sentencing once the Court has reviewed

6  the matter.  I thank you all very much.

7  (Court adjourned at 4:25 p.m.)

8

9

10

11  Friday, June 20, 2003; In Open Court at 1:50 p.m.:

12  Sentencing Hearing before Judge Stuard:

13          THE COURT:  On May 28, 2003, a

14  Trumbull County Petit Jury returned a unanimous

15  verdict finding the Defendant, Donna Marie Roberts,

16  guilty of two counts of complicity to commit

17  aggravated murder, arising from the death of Robert

18  S. Fingerhut.  Each count contained two

19  specifications of aggravating circumstances, listed

20  in division A of section 2929.04 of the Revised

21  Code.

22          Since Counts One and Two of the

6337

1    indictment merge for sentencing purposes, the State

2    elected to dismiss Count Two and the specifications

3    thereto prior to the commencement of the mitigation

4    phase.  Therefore, for purposes of this opinion,

5    the Defendant was convicted of the first count of

6    the indictment or purposely and with prior

7    calculation and design, causing the death of Robert

8    S. Fingerhut.

9          On June 4, 2003, the mitigation or second

10   phase of the trial began.  The Jury in that phase,

11   unanimously found that the State had proven beyond

12   a reasonable doubt, that the aggravating

13   circumstances, to-wit, Specification One to Count

14   One, that the Defendant was a complicitor in

15   committing or attempting to commit or in fleeing

16   immediately after committing, or attempting to

17   commit aggravated burglary, and that the Defendant

18   committed the aggravated murder with prior

19   calculation and design.  And Specification Two to

20   Count One, that the Defendant was a complicitor in

21   committing or attempting to commit or in fleeing

22   immediately after committing or attempting to

6338

1   commit aggravated robbery.  And that the Defendant

2   committed the Aggravated Murder with prior

3   calculation and design outweighed the mitigating

4   factors, and returned two verdicts recommending the

5   death sentence.

6           Pursuant to Revised Code, Section

7   2929.04(F), the Court is now obligated to file a

8   separate written opinion independently weighing the

9   aggravating circumstances of each specification

10  against the mitigating factors.  The weighing

11  process reflected in this opinion is based upon

12  evidence heard by the Jury, but is done

13  independently and without regard to the findings of

14  the Jury.

15          Factually, the evidence at trial revealed

16  that the Defendant planned the murder of her

17  ex-husband and housemate, Robert S. Fingerhut, for

18  $550,000 in insurance proceeds.  The Defendant

19  plotted the murder for at least three months prior

20  to December 11, 2001.  The Defendant corresponded

21  with her convict lover and codefendant, Nathaniel

22  Jackson while he was in prison at the Lorain

6339

1    Correctional Institution.

2         She also accepted 19 collect telephone

3    calls from Jackson while he was incarcerated,

4    wherein they planned the details of the murder.

5    The telephone calls were recorded, and the letters

6    and phone calls were seized by police during the

7    course of the murder investigation.

8         The murder plot included a plan whereby

9    the Defendant would pick up Jackson from prison on

10   December 9, 2001, and take him to the Wagon Wheel

11   Motel in Boardman, Ohio, and rent a room with a

12   mirrored ceiling and Jacuzzi tub where they would

13   have sexual relations.  The Defendant would obtain

14   handcuffs, a firearm, ski mask, leather gloves to

15   conceal fingerprints and would ensure Jackson

16   access to the Defendant's residence so that Jackson

17   could abduct the victim and take him out of the

18   house and kill him.  The conspirators discussed

19   forcing the victim to watch the Defendant perform

20   oral sex on Jackson before executing the victim.

21        The Defendant planned to set up an alibi

22   at the time of the murder by driving around and

6340

1   going to various retail outlets and shopping, where

2   she would be filmed by the store's video security

3   cameras, and the Defendant made several telephone

4   calls to Fingerhut's place of employment, the

5   Greyhound bus station in Youngstown, Ohio, to

6   ensure that Fingerhut timely left work at

7   approximately 9:00 p.m. on December 11, 2001.

8          The Defendant also provided Jackson with

9   a cellular phone to keep in contact with her while

10  she was driving a red Chrysler 300-M, which

11  contained its own cellular phone.

12         The Defendant had previously checked on

13  the insurance policies, to ensure that they were in

14  effect, and that the premiums were paid until the

15  end of 2001.  The Defendant also discussed in the

16  letters and phone calls, obtaining a motel room for

17  Jackson after the killing, so Jackson could hide

18  out after the murder.

19         However, the plan began to go bad when

20  Jackson, who was in Fingerhut's residence,

21  sustained a gunshot wound to his left index finger

22  during a struggle with the victim.  Jackson shot

6341

1    Fingerhut three times including one fatal shot to

2    the head.  Jackson left the victim's body in the

3    residence, took Fingerhut's car keys, and

4    Fingerhut's silver Chrysler 300-M from the garage

5    of the residence.  Jackson drove Fingerhut's car to

6    Youngstown, Ohio, where he abandoned it

7    approximately three blocks from where he was

8    ultimately arrested on December 20, 2001.

9            A series of telephone calls occurred

10   between the Defendant's telephone and her red

11   Chrysler and her cellular telephone, which was in

12   the possession of Jackson during the time frame of

13   approximately 9:30 p.m. and 12 midnight, on

14   December 11, 2001.  Between 9:30 p.m. and 10:30

15   p.m., the Defendant drove Jackson to the Days Inn,

16   in Boardman, Ohio, and rented him a room for one

17   week.  Jackson's wound was treated and bandaged in

18   the room.

19           The Defendant returned to the residence

20   in Howland Township, Trumbull County, Ohio and

21   discovered her ex-husband's body just inside the

22   main door leading from the garage.  The Defendant

6342

1    called 911, and feigned hysteria.  The Defendant in

2    her letters to Jackson, had discussed how she would

3    fake grief upon discovering that her ex-husband had

4    been killed.

5         Howland Township police officers

6    responded to the 911 call, and were met by the

7    Defendant.  The police did not find any signs of

8    forced entry, and the only thing missing from the

9    residence were the victim's car keys and the

10   victim's automobile.  Two wallets containing a

11   large sum of cash and credit cards as well as other

12   valuables were undisturbed inside the residence.

13        The Defendant told the officers that her

14   husband's car was missing, and granted them

15   permission to search the residence, and her vehicle

16   for evidence that might lead to the killer.  And

17   during this search, police found approximately 140

18   letters from Jackson to the Defendant in her

19   dresser.  And approximately 140 letters from the

20   Defendant to Jackson, in the trunk of the

21   Defendant's red car, in a paper bag bearing

22   Jackson's name, prison number.

6343

1          As the investigation progressed, the law
2     enforcement officers were able to obtain the 19
3     recorded telephone conversations between the
4     Defendant and Jackson while Jackson was
5     incarcerated in the Lorain Correctional
6     Institution.  These tapes constituted approximately
7     three hours of conversation.  These telephone calls
8     along with letters which spanned the time frame of
9     approximately three months, revealed a continuing
10    and evolving plan to kill Fingerhut within days
11    after Jackson's release from prison.

12          Jackson was soon arrested at a house on
13    Wirt Street in Youngstown, Ohio, a few blocks from
14    where Fingerhut's vehicle was recovered.  And a
15    pair of black leather gloves with fleece lining
16    were recovered from that house at the time of his
17    arrest.

18          In a letter written to Jackson, the
19    Defendant acknowledged that she had found thin,
20    fleece lined leather gloves.  The recovered gloves
21    had gunshot residue, and a hole in the left index
22    finger along with the reddish substance, which

6344

1   appeared to be blood in that area.  This damaged
2   area matched the injury that Jackson had sustained
3   to his finger.
4        The evidence also revealed that the
5   Defendant, near the approximate time of the murder,
6   was seen driving her automobile in a very slow
7   manner away from the vicinity of the home where
8   Fingerhut lived.  Furthermore, within two hours
9   from the last time Fingerhut was seen alive, the
10  Defendant rented a motel room at the Days Inn in
11  Boardman, Ohio for Jackson.  In this room, bloody
12  bandages and other medical supplies were found by
13  hotel cleaning personnel and were subsequently
14  collected by the police.
15       Fingerhut's silver Chrysler, which had
16  been stolen by Jackson from the residence was
17  recovered in Youngstown, Ohio.  Blood stains in and
18  on the vehicle were collected by law enforcement
19  officers.  DNA analysis of the blood stains
20  collected on the trunk latch and the interior sun
21  visor, revealed that the blood matched the DNA
22  profiles of Nate Jackson, and the victim.  Blood

6345

1    stains collected from the Days Inn also matched the

2    DNA profile of Nathaniel Jackson.

3            The State also introduced evidence from

4    the letters that the Defendant and Jackson

5    discussed purchasing a new Lincoln or a Cadillac

6    Deville for Jackson.  The Defendant and Jackson

7    repeatedly discussed waking up together on

8    Christmas morning.  And the Defendant repeatedly

9    stated how much she hated Fingerhut.

10           Additionally, Fingerhut had two life

11   insurance policies with a combined benefit of

12   $550,000.  On December 12, 2001, shortly after

13   calling 911, Howland police officers noted the

14   Defendant's behavior, which included feigned crying

15   and listening in on conversations of investigators.

16   On December 12, 2001, shortly after calling 911,

17   the Defendant told investigators that she had been

18   out shopping at Wal-Mart, Super K-Mart, and Giant

19   Eagle.  Police could only confirm that the

20   Defendant was at Wal-Mart at approximately 9:30

21   p.m.  The Defendant never stated to police that she

22   had taken Jackson to the Days Inn in Boardman,

6346

1    Ohio.

2            Later in the afternoon of December 12,

3    2001, the Defendant provided police with a list of

4    suspects who may have wanted to kill Fingerhut,

5    including an alleged homosexual lover of the

6    victim.  A half Hispanic, half black man that the

7    Defendant had dated, a man named Santiago Mason.

8    And a number of people from the Greyhound bus

9    station.  When investigators asked the Defendant

10   about Nathaniel Jackson and the Defendant stated,

11   "Oh, I almost forgot about him."  And proceeded to

12   tell the officers that she had last seen Jackson on

13   Monday, December 10, 2001, and had last spoken to

14   him in the morning of Tuesday, December 11, 2001.

15            The investigation revealed that the

16   Defendant and Jackson worked together throughout

17   the afternoon and evening of December 11, 2001.

18   And the State presented evidence and testimony that

19   the Defendant took Jackson to get a haircut, ate

20   dinner with him at Red Lobster and was with him at

21   the Warren Greyhound bus terminal in Warren, Ohio,

22   which was the Defendant's place of employment.

6347

1            One witness, Frank Reynolds, testified

2    that after Jackson's release from prison and prior

3    to the murder, he was present at the Youngstown bus

4    terminal when the Defendant asked Fingerhut for

5    $3,000.  When Fingerhut refused to give her the

6    money, she gave him a dirty look.  The Defendant

7    had stated in her letters that she was tired of the

8    grinch doling out the money.  And was referring to

9    Fingerhut providing her with a set amount of cash

10   to spend each week.  The Defendant planned to

11   obtain a firearm for Jackson and to use it in order

12   to kill Fingerhut.

13           While the Defendant was supposedly in a

14   torrid love relationship with Jackson, she invited

15   the ex-con, Santiago Mason, into her residence

16   where she performed oral sex on him.  When he

17   refused her further sexual advances to engage in

18   intercourse, Mason was accused by the Defendant of

19   stealing a .38 caliber firearm.  Forensic evidence

20   revealed that the weapon used to kill Fingerhut was

21   consistent with the .38 caliber firearm.  The

22   investigation revealed that Roberts was missing two

6348

1   .38 caliber firearms at the time of Fingerhut's

2   murder.

3           In this case, the Jury found the

4   existence beyond a reasonable doubt, of two

5   aggravating circumstances, pursuant to Section

6   2929.04 (A)(7) of the Revised Code, to-wit,

7   Specification One to Count One, that the Defendant

8   was a complicitor in committing or attempting to

9   commit or in fleeing immediately after committing

10  or attempting to commit aggravated burglary, and

11  that the Defendant committed the aggravated murder

12  with prior calculation and design.  And

13  Specification Two to Count One, that the Defendant

14  was a complicitor in committing or attempting to

15  commit, or in fleeing immediately after committing

16  or attempting to commit aggravated robbery, and

17  that the Defendant committed the Aggravated Murder

18  with prior calculation and design.

19          With respect to the aggravating

20  circumstances relating to the aggravated burglary,

21  the evidence presented at trial proved that the

22  Defendant allowed Jackson to trespass in

6349

1  Fingerhut's residence, located at 254 Fonderlac

2  Drive, Howland Township, Trumbull County, Ohio,

3  with the specific purpose of killing Fingerhut with

4  prior calculation and design.

5          Jackson was wearing leather gloves and

6  armed with a firearm, which he used to shoot the

7  victim three times causing his death.  The gloves

8  and the ski mask, firearm and access to the house

9  were all provided by the Defendant with prior

10  calculation and design, as evidenced by the

11  telephone calls and letters introduced by the

12  State.  The Defendant assured the victim's arrival,

13  by checking at his place of employment, and

14  determining when he left work by calling him on the

15  telephone while he was on his way home.

16          The Defendant also checked on the status

17  of the life insurance policies and determined that

18  the premiums paid were up to the end of 2001, and

19  advised Jackson of the same.  Pursuant to her plan

20  to kill Fingerhut, the Defendant took Jackson to a

21  motel room in Boardman, Ohio, and rented the room

22  for one week which was consistent with the plans

6350

1  discussed in the letters and phone calls prior to
2  the murder.

3           Upon discovering Fingerhut's body, the
4  Defendant feigned grief exactly as discussed in her
5  letters with Jackson.  During the course of the
6  investigation, the Defendant continually threw out
7  red herrings to the Howland Police by mentioning a
8  number of possible suspects, including alleged
9  homosexual lovers of the victim, her ex-boyfriends,
10  crazy people from the bus terminal in Youngstown,
11  and Santiago Mason.  The Defendant only mentioned
12  Jackson, the convict she had corresponded with by
13  letters for three months, spoken to on the
14  telephone 19 times, picked up from prison and
15  engaged in sexual relations with just two days
16  prior, taken to get a haircut and ate dinner with
17  just hours previously and the person whom she had
18  driven to Boardman, Ohio on the night of the
19  murder, and who had an injured index finger, only
20  after the investigators confronted her with his
21  name.

22           From the aforementioned evidence, the

6351

1    Court concludes that the Defendant committed the

2    aggravated murder as a complicitor, while

3    committing or attempting to commit or in fleeing

4    immediately after committing or attempting to

5    commit aggravated burglary.  And that the Defendant

6    committed the aggravated murder with prior

7    calculation and design.  With respect to the

8    aggravating circumstance related to the aggravated

9    robbery, after Jackson had murdered the victim, he

10   took the victim's set of keys and the silver

11   Chrysler, 300-M.  Although the planned crime

12   involved Jackson stealing Fingerhut's car in order

13   to kidnap Fingerhut, it is clear that Jackson was

14   to take the victim's car to flee the residence.

15            The fact that Fingerhut struggled with

16   Jackson in the residence and was killed in the

17   residence, in no way, negates the Defendant's plan

18   that Jackson should steal the victim's car to

19   facilitate Jackson's own flight from the residence.

20   Ample DNA evidence was presented indicating that

21   Jackson was in the silver Chrysler 300-M following

22   the murder of Fingerhut.  Additionally, phone

6352

1    records were introduced showing that Jackson and

2    the Defendant called each other after the murder to

3    check on the status of the plan.

4            Finally, the vehicle was recovered a few

5    blocks from the location where Jackson was

6    arrested.  The Defendant, in accordance with the

7    plan to kill Fingerhut, paid for a hotel room for

8    Jackson following the murder.  The fact that the

9    silver Chrysler 300-M was found abandoned with the

10   victim's keys in the ignition, coupled with the

11   fact that the victim's wallet, money, credit cards

12   and other valuables were not stolen, clearly shows

13   that the plan to steal the victim's car with a

14   means of escape following the kidnapping and murder

15   of the victim was carried out in accordance with

16   the prior calculation and design, as set out by the

17   Defendant and Jackson.

18           From the aforementioned evidence, this

19   Court concludes that the Defendant committed the

20   Aggravated Murder, as a complicitor, while

21   committing or attempting to commit or in fleeing

22   immediately after committing or attempting to

6353

1  commit aggravated robbery, and that the Defendant

2  committed the aggravated murder with prior

3  calculation and design.

4       Now, to be weighed against the

5  aggravating circumstances, the Court must weigh any

6  mitigating factors.  On Tuesday, June 3, 2003, the

7  Defendant appeared in-chambers and on the record

8  with her retained attorneys, J. Gerald Ingram and

9  John B. Juhasz, and her retained psychologist,

10  Thomas Eberle.  The State was present and

11  represented by Assistant prosecutor Kenneth N.

12  Bailey and Christopher D. Becker.

13       At that time, the Defense indicated to

14  the Court that the Defendant had been evaluated by

15  Dr. Eberle for her competency to waive mitigating

16  evidence.  And that in the doctor's opinion, she

17  was competent to do same.

18       This Court personally addressed the

19  Defendant and inquired of her as to the importance

20  of presenting mitigating evidence, the use of such

21  evidence to offset the aggravating circumstances,

22  and the effect of failing to present such evidence.

6354

1   The Court was assured at that time by the
2   Defendant, that she understood these concepts by
3   both Defense counsel and Dr. Eberle.  This Court
4   personally inquired whether the Defendant desired
5   to waive the right to present mitigating evidence.
6   The Court having found no evidence to contradict
7   Dr. Eberle's findings on the Defendant's
8   statements, and her express desire to waive the
9   presentation of mitigating evidence, then found
10  that the Defendant was competent to waive her
11  presentation of mitigating evidence, and had done
12  so knowingly, voluntarily and intelligently, and
13  the Defendant indicated to the Court, that she only
14  desired to make an unsworn statement to the Jury,
15  which she was advised she was permitted to do and
16  would be permitted to make on June 4, 2003, which
17  was the date previously scheduled for the
18  mitigation or second phase.
19          On Wednesday, June 4, 2003, the Defendant
20  made an unsworn statement during which she stated
21  to the Jury that there were no mitigating factors,
22  and during which she requested the Jury to impose

6355

1  the death sentence.  This statement was articulate,

2  coherent and well organized.  The statement lasted

3  approximately one hour, during which the Defendant

4  showed no difficulty or fear in addressing a large

5  group of individuals, including the Jury, and a

6  large number of Courtroom observers.  The Defendant

7  spoke freely and although she had with her prepared

8  notes, she often extemporized.

9         Despite the preceding that I have

10  outlined, the Court is still bound to make an

11  independent weighing of any and all mitigating

12  factors that it feels may exist in this case

13  against the aggravating circumstances.  The

14  Defendant in this case was not the principal

15  offender.  Pursuant to section 2929.04 (B)(6), the

16  Court considers this factor, but gives it very

17  little weight.

18         The Defendant committed the Aggravated

19  Murder during the course of the commission of both

20  an aggravated burglary and aggravated robbery.  The

21  record is replete with instances where the

22  Defendant actively planned this Aggravated Murder

6356

1  with prior calculation and design in order to

2  collect $550,000 in life insurance proceeds.  The

3  Defendant's plan included buying her codefendant a

4  new Cadillac or Lincoln in exchange for killing her

5  ex-husband, promises of trips, a nice home in a

6  wealthy neighborhood, an overall 180 degree change

7  in life style for Nathaniel Jackson, her

8  codefendant.

9       The record is overwhelming that, but for

10  the Defendant's planning and actions, the victim

11  would be alive today.  The Defendant discussed and

12  planned for months with the principal offender, how

13  they would kill the victim.  The Defendant checked

14  on the status of the insurance policies in order to

15  ensure that she would be able to collect the

16  proceeds, and advised the principal offender of the

17  status of the policies.  The Defendant then

18  transported the principal offender in the

19  Aggravated Murder from prison to a predetermined

20  location, in order to engage in love making before

21  the murder.

22       The Defendant fed the principal offender

6357

1    prior to the crime.  The Defendant provided the

2    principal offender with gloves, a ski mask, murder

3    weapon and hideout after the Aggravated Murder, all

4    as planned and discussed prior to the Aggravated

5    Murder.

6           The Defendant gave the principal offender

7    entry into the residence of the victim for the sole

8    and exclusive purpose of killing the victim.  This

9    plan was clearly discussed in both the letters, and

10   recorded telephone conversations, including the

11   last telephone call on December 8, 2001, the day

12   before the principal offender was released from

13   prison.  The Defendant failed to advise police of

14   her relationship with the principal offender until

15   she was confronted with the evidence of the

16   relationship by the police.  And prior to being

17   confronted by the existence of this relationship,

18   the Defendant gave the police a number of red

19   herrings implicating a number of potential

20   suspects, but never mentioned the relationship with

21   the principal offender, and her discussions with

22   him regarding the Aggravated Murder of Robert

6358

1   Fingerhut.

2          The Court gives very slight weight to the

3   fact that the Defendant indicates in her letters

4   that the victim may have been physically abusive to

5   her.  This factor is pursuant to section 2929.04

6   (B)(1)(2).  However, the existence of this factor

7   is given very slight weight due to the fact that it

8   is unsubstantiated, and even if it were true, would

9   not warrant the Defendant's action in this case.

10          The Court gives very little weight to the

11  Defendant's unsworn statement.  During the course

12  of her unsworn statement the Defendant apologized

13  to her Defense team and thanked them for the hard

14  work.  The few positive things gleaned from this

15  statement were overshadowed by the Defendant's

16  personal attacks, and statements that were clearly

17  contrary to the evidence.  The Defendant denied

18  guilt and personally attacked the jurors by

19  claiming they were not a judge of her peers, not a

20  Jury of her peers.

21          The Defendant accused the lead

22  investigator as being motivated solely by career

6359

1  advancement and accusing him of obstruction of
2  justice and perjury.  The Defendant referred to the
3  other investigators as lackeys and claimed that one
4  member of the Prosecution team was anti-Semetic and
5  racist.

6           The Defendant also chastised jurors for
7  being uninformed about current events.  The
8  Defendant also stated to the Jury that she and the
9  victim had a loving relationship, and planned to
10  live happily ever after.

11           These statements are in direct
12  contravention of her statements in the letters and
13  the phone calls expressing her desire and wishes
14  that the victim meet an untimely death, and her
15  desire to marry and live with Nathaniel Jackson.

16           The Defendant also appeared to brag to
17  the Jury that she and the deceased have earned over
18  $200,000 per year and that the $550,000 in life
19  insurance proceeds was of little value to her,
20  because of that sum would only sustain her for a
21  few years.  It is difficult for this Court or any
22  finder of fact to give any weight to such a

6360

1   statement.

2          Pursuant to section 2929.04 (A)(7), the

3   Court will give very slight weight to the

4   Defendant's behavior during the course of this

5   trial.  The Defendant was courteous, pleasant and

6   properly addressed the Court at all times.  The

7   Defendant appeared intelligent and interested in

8   the proceedings, and appeared to assist in her

9   defense at all times.  The Defendant presented no

10  security problems to this Court and those who

11  transported her to Court each day.

12         Now the Court has carefully and

13  independently weighed the accumulation of all of

14  the mitigating factors against each aggravating

15  circumstance separately, as to each of the two

16  specifications.  In other words, the Court has

17  weighed the evidence twice, first the Court weighed

18  all of the mitigating factors against the

19  aggravating circumstances surrounding the

20  aggravated burglary, and then the Court engaged in

21  second weighing, whereby the Court again weighed

22  all of the mitigating factors against the

6361

1  aggravating circumstances surround the aggravating

2  robbery.

3          With respect to the first weighing of the

4  aggravating circumstances relating to the

5  aggravated burglary against all of the mitigating

6  factors, this Court finds that the aggravating

7  circumstances not only outweigh the mitigating

8  factors by proof beyond a reasonable doubt, but in

9  fact, they almost completely overshadow them.

10          The legislature of the State of Ohio, has

11  recognized that under certain circumstances, the

12  death penalty is an appropriate sanction to a

13  Defendant who commits an Aggravated Murder during

14  the commission of certain felonies.  In the case at

15  bar, the underlying felonies were aggravated

16  burglary and aggravated robbery.  In this

17  particular case, the Court accords substantial

18  weight to the aggravated burglary specification and

19  the weighing process.

20          In order to prove an aggravated burglary,

21  the State is required to prove that a Defendant

22  trespassed in an occupied structure, for the

6362

1    purpose of committing a criminal offense.  In this
2    particular case, the Defendant purposely had her
3    codefendant trespass in the occupied structure of
4    Robert S. Fingerhut, with the specific purpose of
5    committing an Aggravated Murder, which had been
6    meticulously planned over a number of months with
7    prior calculation and design.

8           Under the facts of this case, this Court
9    cannot see any other form of aggravated burglary
10   where the weight of this particular aggravating
11   circumstance could ever be greater.  The evidence
12   reveals that the aggravated burglary was committed
13   for the sole purpose of killing Robert S.
14   Fingerhut, pursuant to a planned and methodical
15   execution scheme designed by the Defendant and her
16   codefendant and whereby the Defendant would collect
17   $550,000 in insurance proceeds.  This is a most
18   heinous form of aggravated burglary and is entitled
19   to unsurpassed weight.

20          In this Court's view, this aggravating
21   circumstance standing alone, outweighs all of the
22   mitigating evidence in this case.  Therefore, with

6363

1  respect to Specification One to Count One, this
2  Court concurs with the Jury's recommendation, and
3  finds that the death sentence is an appropriate
4  penalty.

5          With respect to the aggravating
6  circumstances of the aggravated robbery, the Court
7  concedes that this offense is not quite heinous as
8  the circumstances surrounding those concerned with
9  the aggravated burglary; however, the aggravated
10 robbery was clearly committed to facilitate the
11 escape from the Aggravated Murder, and is extremely
12 close to being the worst form of aggravated
13 robbery.  This statement is galvanized by the fact
14 that the aggravated robbery was planned by the
15 Defendant to be part of a kidnapping, whereby the
16 victim was to be removed, taken to a different
17 location where the Defendant would then engage in
18 oral sex with her codefendant, while the Defendant
19 was forced to watch prior to his execution.  This
20 plot is clearly spelled out in the letters between
21 the Defendant and codefendant.  The plan clearly
22 went awry when the victim engaged the codefendant

6364

1   in the struggle at the residence.  Again this

2   scheme was hatched for the purpose of the Defendant

3   collecting the $550,000 in insurance proceeds.

4           Therefore, the aggravating circumstance

5   specification relating to the aggravated robbery,

6   when weighed against all of the mitigating factors

7   in this case, clearly and undeniably outweighs by

8   proof beyond a reasonable doubt, all of the

9   mitigating evidence in this case.

10          Therefore, with respect to Specification

11  Two to Count One, the Court concurs with the Jury's

12  recommendation and finds that the death sentence is

13  the appropriate penalty.  The Court recognizes that

14  the death sentence recommendation by the Jury must

15  be merged and the Court does hereby merge the death

16  sentences for purposes of sentencing.

17          For the reasons set forth herein, and

18  after independently and separately weighing the

19  aggravating circumstances against all of the

20  mitigating factors, it is the judgment of this

21  Court that the Jury's recommendation is accepted,

22  and the Court does find that the sentence of death

6365

1  is the appropriate penalty in this case.

2  Counsel approach the bench, please.

3  (SIDE BAR DISCUSSION, OFF THE RECORD AND OUT OF

4  HEARING)

5  THE COURT:  The Court has asked at

6  side bar if counsel for either side wish to place

7  anything on the record before this Court proceeds

8  with sentencing.  Mr. Ingram, I believe you wish to

9  address something.

10  MR. INGRAM:  Your Honor, the record

11  should reflect that in pronouncing sentence, you

12  have apparently read from a written decision that

13  you have prepared in advance.  I guess I would ask

14  if I am correct in that assumption?

15  THE COURT:  That is correct.

16  MR. INGRAM:  As you read that

17  decision, Mr. Bailey sat at the Prosecution table

18  and reviewed a document as if he was reading along.

19  Every time you turned the page, Mr. Bailey turned

20  the page.  I would now ask on the record, that

21  Mr. Bailey be required to identify the documents

22  which are sitting in front of him.

6366

1              THE COURT:  Mr. Bailey is referring
2    to a document that I have had prepared.  I have
3    outlined the sum and substance of it to the
4    Prosecution.  They have a computer over there which
5    you are aware of, Mr. Ingram, we have used
6    throughout the trial, which makes it convenient to
7    correct, delete from a master copy and to come up
8    with a form that is present, which I presently
9    used.
10             MR. INGRAM:  Well, the record should
11   reflect the vehement Defense objection to the
12   State's participation in the drafting of the
13   Court's sentencing decision in ex parte proceeding.
14   We did not know this, we did not know of this.
15   That is prohibited.  I would ask that those
16   documents be sealed and become part of the
17   Appellate record in this case.
18             THE COURT:  That will be done.
19             MR. INGRAM:  I would ask that they
20   be given to the Court Reporter at this point.
21             THE COURT:  Mr. Bailey, please
22   deliver that copy.

6367

1          MR. INGRAM:  May I see it?  May I

2    ask Your Honor, when at what point in time, the

3    exchanges between you and Mr. Bailey occurred?

4          THE COURT:  I don't recall.  That

5    was probably about Wednesday.

6          MR. INGRAM:  Was there one such

7    exchange or more than one exchange?

8          THE COURT:  I believe that there was

9    one exchange.

10          MR. INGRAM:  We would also note an

11    objection to the Court's depriving the Defendant of

12    the right of allocution.  We object to the Court

13    depriving the Defendant of her right of allocution.

14          THE COURT:  Your objection is noted.

15          MR. BAILEY:  We haven't reached a

16    point of allocution yet.  We're just getting to

17    that point.  The Court had to do the independent

18    weighing and now we're at the point where the Court

19    has to advise the Defendant of her Appellate rights

20    and of allocution.

21          THE COURT:  I have to advise of Rule

22    32 now.

6368

1           MR. JUHASZ:   The objection is

2    because the Court has already determined sentence

3    without having heard from the Defendant.  Normally

4    in sentencing proceedings, the Court hears from the

5    Defendant before making a determination of the

6    appropriate sentence.   That is the basis for the

7    objection.

8           THE COURT:   Okay.   Could I see

9    counsel?

10   (In-chambers at 2:30 p.m.)

11   (OFF THE RECORD)

12           THE COURT:   We're in-chambers in

13   conference.   Are you waiving presence of the

14   Defendant?

15           MR. INGRAM:   Yes.

16           THE COURT:   Mr. Ingram, you have

17   another question?

18           MR. INGRAM:   Based upon our exchange

19   a few moments ago in the Courtroom, it is my

20   understanding that a draft or some document

21   relating to the Court's pronouncement of sentence

22   was provided to the Prosecuting Attorney on

```
                                              6369
 1   Wednesday.
 2               THE COURT:  I believe it was
 3   Wednesday.  I asked them to type this up and get a
 4   copy back, so that we would all have it when I was
 5   reading through it.  You weren't given a copy of
 6   it, and I apologize for that.
 7               MR. INGRAM:  We should probably ask
 8   that that document that was provided to the
 9   Prosecuting Attorney on Wednesday also be marked
10   and sealed as part of the Court's Exhibit in this
11   matter.
12               THE COURT:  Okay.
13               MR. BAILEY:  The only thing left is
14   the final one.  All prior ones were thrown out.
15   There were six or seven of them.
16               MR. INGRAM:  There's six or seven
17   drafts?
18               MR. BAILEY:  Not six or seven
19   drafts, there's one draft and there's corrections
20   and all of the corrections with the draft were
21   pitched.
22               MR. INGRAM:  Who made the
```

6370

1  corrections?

2          MR. BAILEY:  We made or the Court.

3  We kept finding typo's.

4          THE COURT:  Whatever you have, if

5  you have something, bring it over.

6          MR. BECKER:  Let me explain

7  something here.  This is my understanding of what

8  we were supposed to do.  We were to take that and

9  put it on the computer and print out the hard copy

10  of the sentencing order, which is what we did.  As

11  Ken and I would proofread it for typographical

12  errors, it was changed and just saved on the hard

13  drive of the computer.  It was never printed out

14  and kept as draft after draft after draft.  I would

15  type over the hard drive, and prepare it.

16  Eventually a final copy was provided to the Court

17  and I think the Court had some typographical errors

18  and maybe some changes.

19          THE COURT:  I made one phone call

20  back to you.

21          MR. BECKER:  And the Court had

22  indicated some changes.  I just simply changed

6371

1   that.  Essentially what I did, because I typed the
2   whole thing was I was the Court's typewriter, the
3   Court's secretary.
4              THE COURT:  We used that -- we don't
5   have the equipment here or the know-how to do
6   things expeditiously.  That is the way we were able
7   to get the final instructions.
8              MR. BECKER:  That is the way Jury
9   instructions are done.  Now I think --
10             THE COURT:  We have had this come
11  up.  Tony Consoldane always raises this issue about
12  the Prosecutor typing stuff as if the Prosecutor
13  is -- and it may be a legitimate point, I don't
14  know.  It is the system that is used here because
15  it is the most practical.
16             MR. INGRAM:  Does anybody have the
17  first draft?  They do not.  Do you?
18             THE COURT:  No.  I don't have
19  anything, no.
20             MR. INGRAM:  Who wrote the first
21  draft?
22             THE COURT:  I gave notes saying this

6372

1   is what I want.  This, this and this, and they sent
2   it back.  I read it over, made some corrections,
3   went back from there.
4              MR. INGRAM:  The record should
5   simply reflect that in this process, Defense
6   counsel was never involved, nor consulted.  Other
7   than that, I have nothing further.
8              MR. BECKER:  I just want to address
9   something on record here.  Rule 32 states that
10  sentence shall be imposed without unnecessary
11  delay.  Sentence shall be imposed without
12  unnecessary delay.  Pending sentence, the Court may
13  commit the Defendant or continue or alter the bail.
14  At the time of imposing sentence, and it doesn't
15  necessarily say before sentence is imposed, it says
16  at the time of imposing sentence, the Court shall
17  do all of the following:  Afford counsel an
18  opportunity to speak on behalf of the Defendant and
19  address the Defendant personally and ask if he or
20  she wishes to make a statement in his or her own
21  behalf; afford the Prosecution to make an
22  opportunity to speak; afford the victims the right

6373

1   provided by law; and then notify and then after --

2   it is very specific, the rule says after imposing

3   sentence in a serious offense, the Court shall

4   advise the Defendant has the right to appeal.  I

5   think what is important is Rule 32 does not say

6   before imposing sentence, Defendant or counsel

7   should be afforded an opportunity, it says at the

8   time of imposing sentence.  We haven't had the .

9   sentence.  I don't think the actual sentence has

10  been handed down.  That is an important

11  distinction.  The Court by law had to make an

12  independent weighing and circumstances.

13               THE COURT:  Well, the record is

14  clear as to what has happened.  If you have a point

15  on appeal, you have got a point on appeal.

16               MR. INGRAM:  Thank you.

17  (End of in-chamber discussion)

18  (Back in Open Court)

19               THE COURT:  Gentlemen, would you

20  have your client come forward, please?  Does the

21  Defendant wish to address anything prior to

22  sentencing?

6374

1              THE DEFENDANT:  Yes, I think I

2      would.  I would like to have one of those notes

3      back.  Short and sweet this time.  You probably

4      wonder why I did what I did about asking for the

5      death penalty.  Because I think one small voice for

6      justice is going to count.  Maybe if it is for only

7      one person some day.  I didn't want to take the

8      stand on race equality and the criminal justice

9      system.  Criminal justice, an oxymoron, and two, to

10     expose and ask corrupt police officials who use a

11     badge to destroy rather than protect lives for

12     their own gain by committing perjury, planting and

13     transferring evidence, tampering, and using race

14     and religion to condemn.  Thank you.

15              Thank you for your decision.  I was a

16     little worried you might try to find something not

17     to do that.  I appreciate what you did.  Thank you.

18              MR. INGRAM:  The record should

19     reflect my migraine has returned.  We have nothing.

20              THE COURT:  Counsel have nothing

21     further?

22              MR. INGRAM:  No.

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 95

6375

1              THE COURT: Miss Roberts, you have a

2    right to appeal the conviction filed in this case.

3    I would ask you, it is my duty to appoint counsel

4    to perfect that appeal for you. I have had some

5    indication from someone that you may wish to hire

6    your own counsel or do you wish the Court to

7    appoint someone to represent you?

8              MR. INGRAM: May I answer this

9    question?

10             THE COURT: Yes.

11             MR. INGRAM: The appeal in this

12   matter would be due in 45 days. Donna, along with

13   Mr. Juhasz and I will make Appellate decisions in

14   due course, and at this time, there's no request

15   for Court appointed Appellate counsel.

16             THE COURT: There's no request?

17             MR. INGRAM: No request not at this

18   juncture.

19             THE COURT: I would ask you to

20   apprise me, because the Supreme Court insists that

21   within a certain time period, within two weeks, I

22   have to either appoint Appellate counsel or they

6376

1    are not completely happy with me.

2            MR. INGRAM:  Okay.

3            THE COURT:  As I said, you have an

4    absolute right to file an appeal in this case, it

5    would be the Supreme Court to review the actions of

6    this Court and this Jury.  If you are unable to pay

7    the cost of that appeal, the appeal will be

8    perfected with no cost to yourself and counsel will

9    be appointed with no cost to you.  Any papers,

10   other expenses you are unable to pay for will be

11   provided by this Court.  You have the right to have

12   a notice of timely appeal filed on your behalf.  If

13   you fail to do that, this Court will see that that

14   is done.  Do you have any other questions about any

15   of that at this time?

16           THE DEFENDANT:  No.  Jerry says no.

17           THE COURT:  Anything that the

18   Defense or the Prosecution wish to place on the

19   record at this time before the Court enters

20   sentence?

21           MR. INGRAM:  Only that you take this

22   and mark it as a Court's Exhibit for sentencing

6377

1    purposes.

2              THE DEFENDANT:  I just request that

3    that fairy tale you told, not be told to children

4    at night.  Thank you.

5              THE COURT:  The Court has considered

6    the record and oral statements made as well as the

7    principles and purposes of sentencing under Ohio

8    Revised Code 2929.11, and has balanced the

9    seriousness and recidivism factors of O.R.C.

10   Section 2929.12.  Pursuant to law, the Trial Court,

11   this day, June 20, 2003, having determined in a

12   separate opinion of specific findings that the

13   aggravating circumstances as to the count of

14   Aggravated Murder, outweigh the mitigating factors

15   by proof beyond a reasonable doubt, then made

16   inquiry as to whether the Defendant had anything to

17   say, why judgment should not be pronounced against

18   her.  And the Defendant in answer showed no good

19   cause or sufficient reason why sentence should not

20   be pronounced.  Are you wondering what I am reading

21   from?

22             MR. INGRAM:  I am wondering what

6378

1   Mr. Bailey is reading from.  Mr. Bailey is reading

2   from a sentence.

3                  MR. BAILEY:  This is Nathaniel

4   Jackson's.

5                  THE COURT:  This is a copy of

6   Nathaniel Jackson's, which I have altered.  The

7   Court has considered the factors under Ohio Revised

8   Code 2929.14 and makes the following findings.  The

9   shortest prison term will demean the seriousness of

10  the Defendant's conduct; two, the longest prison

11  term is appropriate because the Defendant committed

12  the worst form of the offense; number three,

13  multiple prison terms are necessary to protect the

14  public from future crime and to punish the

15  offender; number four, consecutive prison sentences

16  are not disproportionate to the seriousness of the

17  Defendant's conduct and to the danger the

18  Defendant, the offender, opposes to the public.

19  Five, the harm caused by the multiple offenses was

20  so great that no single prison term for any of the

21  offenses committed as part of a single course of

22  conduct adequately reflects the seriousness of the

6379

1   Defendant's conduct.

2          It is therefore Ordered and Adjudged and

3   Decreed that the Defendant, Donna M. Roberts, be

4   taken from the Courtroom to the Trumbull County

5   jail, and from thence to the correction reception

6   center at Lorain -- I'm sorry, at Marysville, Ohio.

7          Counsel approach for a moment, please.

8   (SIDE BAR DISCUSSION, OFF THE RECORD AND

9   OUT OF HEARING)

10         THE COURT:  I'll read this over

11  again.  It is therefore Ordered and Adjudged and

12  Decreed that Defendant, Donna M. Roberts, be taken

13  from the Courtroom to the Trumbull County jail,

14  from thence to the correction reception center at

15  Marysville, Ohio, and thereafter be sentenced to

16  death on January 11, 2004 on Count One.  And

17  imprisoned therein for the stated prison term of

18  ten years on Count Three, plus a mandatory term of

19  three years on the firearms specification, to be

20  served prior to and consecutive to the sentence

21  imposed in Count Three.  Ten years on Count Four,

22  plus a mandatory term of three years on the

6380

1  firearms specification, to be served prior to and
2  consecutive to the sentence imposed in Count Four.
3  Sentence in Count Four to be served consecutively
4  to the sentence imposed on Count Three.  The
5  firearms specification in Counts Three and Four
6  shall merge as one sentence in Count Three as
7  matter of law.

8  The Defendant is ordered to pay the cost
9  of prosecution, once that is determined, for which
10  execution is awarded.  That is the judgment of this
11  Court.

12  Miss Roberts, I can't think of a more
13  unpleasant thing that anybody is called upon to do
14  than to sit here and review a record like this.

15  THE DEFENDANT:  I know.

16  THE COURT:  My heart goes out to
17  everyone that was involved in this thing.  I think
18  as most people who look at it, think that you used,
19  you appear from all of the contact I have had with
20  you, to be a normal person, which makes it more
21  difficult to explain the actions that the State has
22  been able to put forth.  And it almost appears to

6381

1  me that it was an abandoned, where there was no
2  thought of what was going to happen tomorrow or the
3  next day or down the road, almost some sort of a
4  fantasy world that you were living in. But all of
5  our actions have consequences, and sadly, yours
6  have brought you to this point. I do say this,
7  with heartfelt sincerity though, I wish you well.
8            THE DEFENDANT: Thank you, Sir.
9            MR. INGRAM: Thank you.
10  (End of Sentencing Hearing at 3:00 p.m.)
11
12
13
14
15
16
17
18
19
20
21
22

IN THE SUPREME COURT OF OHIO

STATE OF OHIO,                          :          **06AP102**

    Plaintiff-Respondent,              :          Case No.

-vs-                                    :          Trumbull County Case No. 01-CR-794

NATHANIEL JACKSON,                      :

    Defendant-Petitioner.              :

---

## NATHANIEL JACKSON'S APPLICATION FOR DISQUALIFICATION OF TRUMBULL COUNTY COMMON PLEAS JUDGE JOHN M. STUARD

---

DENNIS WATKINS - 0009949
Prosecutor

LUWAYNE ANNOS - 0055651
Assistant Prosecutor

Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor Administration Bldg.
Warren, Ohio 44481
(330) 675-2426

COUNSEL FOR STATE OF OHIO

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Counsel of Record

Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, OH 43215
(614) 466-5394
(614) 644-0703 - Fax

COUNSEL FOR NATHANIEL JACKSON



FILED

OCT 0 5 2006

MARCIA J MENGEL CLERK
SUPREME COURT OF OHIO

**EXHIBIT**
2

IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Respondent, | : | Case No. |
| -vs- | : | Trumbull County Case No. 01-CR-794 |
| NATHANIEL JACKSON, | : | |
| Defendant-Petitioner. | : | |

## NATHANIEL JACKSON'S APPLICATION FOR DISQUALIFICATION OF TRUMBULL COUNTY COMMON PLEAS JUDGE JOHN M. STUARD

Nathaniel Jackson, pursuant to Ohio Const. Art. IV § 5 and R.C. 2701.03, requests that the Chief Justice, or his designee, disqualify Trumbull County Common Pleas Court Judge John M. Stuard from further presiding over his trial level and post-conviction petition proceedings. The disqualification is necessary to avoid the appearance of partiality because 1) Judge Stuard has a personal stake in the outcome, 2) Judge Stuard has personal knowledge of disputed evidentiary facts and 3) Judge Stuard will be called as a material witness.

Respectfully submitted,

DAVID H. BODIKER
Ohio Public Defender

RANDALL PORTER - 0005835
Assistant State Public Defender
Counsel of Record

Office of the Ohio Public Defender
8 E. Long Street, 11th Floor
Columbus, Ohio 43215
(614) 466-5394

1

(614) 644-0703 - Fax

COUNSEL FOR NATHANIEL JACKSON

2

IN THE SUPREME COURT OF OHIO

STATE OF OHIO,                              :

    Plaintiff-Respondent,               :    Case No.

-vs-                                       :    Trumbull County Case No. 01-CR-794

NATHANIEL JACKSON,                         :    **This is a death penalty case**

    Defendant-Petitioner.               :

### AFFIDAVIT OF RANDALL L. PORTER

State of Ohio

County of Franklin, ss:

    I, Randall L. Porter, being duly sworn, state as follows:

    1)    The Honorable John M. Stuard, Trumbull County Court of Common Pleas Judge should be disqualified

        a) to avoid even the appearance of partiality and to ensure public confidence,

        b) he has personal knowledge of disputed evidentiary facts concerning pending proceedings before him,

        c) he is likely to be a material witness in the proceeding before him.

        d) he has an interest in the outcome given the findings of misconduct made by this Court against him in the co-defendant Donna Robert's case.

    2)    Nathaniel Jackson was convicted of capital murder and Judge Stuard sentenced him to death. This Court affirmed his convictions and death sentence. *State v. Jackson*, 107 Ohio St. 3d 300, 2006 Ohio 1.

    3)    Nathaniel Jackson sought post-conviction relief from his conviction and death sentence. On June 14, 2004, Judge Stuard summarily denied the amended petition. The Trumbull County Court of Appeals affirmed that decision. *State v. Jackson*, No. 2004-T-0089,

3

2006 Ohio 2651, 2006 Oho App. LEXIS 2512. Nathaniel Jackson's appeal from that decision is pending before this Court.

4)  The Trumbull County Grand Jury indicted Donna Roberts for the same murder for which Nathaniel Jackson was sentenced to death. Her case was also assigned to Judge Stuard, who sentenced Donna Roberts to death.

5)  On August 2, 2006, this Court reversed Ms. Roberts' death sentence. *State v. Roberts*, 110 Ohio St. 3d 71, 2006 Ohio 3665 (2006). This Court held that it was improper for Judge Stuard to have collaborated with the prosecution in the drafting the sentencing opinion. *Id. at* ¶¶153-164. This Court held that "our confidence in the trial court's sentencing opinion is undermined by the fact that the trial court directly involved the prosecutor in preparing the sentencing opinion and did so on an ex parte basis." *Id.* at ¶159. This Court concluded that "we must vacate the sentence because of the critical constitutional interests and notions of justice that are implicated by the prosecutor's participation in drafting the sentencing opinion." *Id.* at ¶163

6)  At the original sentencing hearing for co-defendant, Donna Roberts, Judge Stuard affirmed that in other capital cases he had routinely employed the *ex parte* drafting process, which this Court found to be infirm, "It is the system that is used here because it is the most practical." [Exhibit 1, p. 6371].

7)  On August 15, 2006, Nathaniel Jackson filed a Request for Leave to File His Motion for a New Sentencing Hearing. [Exhibit 2]. That pleading is premised upon Judge Stuard's statement that the drafting process that he employed in the Robert's case is the same process that he has employed in other capital cases. [Exhibit 1, p. 6371]. The prosecutor has opposed that motion and it is still pending before Judge Stuard.

4

8) On September 15, 2006, Nathaniel Jackson filed a motion for relief from judgment regarding his post-conviction case. [Exhibit 3]. He premised that motion on Judge Stuard's statement in open court that the prosecution's participation is not limited to drafting of sentencing opinions in capital cases, "we have had this come up. Tony Consoldane always raises this issue about the prosecutor typing stuff as if the prosecutor is - - and it may be a legitimate point, I don't know." [Exhibit 1, p. 6371]. Judge Stuard defended the prosecution's participation in the sentencing drafting process because "we [this Court] don't have the equipment here or the know-how to do things expeditiously." [*Id.*] Post-conviction findings of fact and conclusions in capital cases tend to be very lengthy documents, which would require the "know-how to do things expeditiously."

10) On September 13, 2006, Nathaniel Jackson filed a motion for Judge Stuard to voluntarily recuse himself. [Exhibit 4]. Nathaniel Jackson referenced Judge Stuard to the fact that he cannot preside over either of Nathaniel Jackson's pending motions because Judge Stuard has personal knowledge of disputed material facts and will be a witness if an evidentiary hearing is held. The prosecutor, upon behalf of the judge, has opposed that motion and it is still pending.

11) The thrust of both of Nathaniel Jackson's motions is that Judge Stuard and the Trumbull County Prosecutor's Office had improper ex parte contacts during both the trial and post-convictions proceedings. That is a reasonable assertion given this Court's holding in *Roberts* and Judge Stuard's own comments on the record that he has continually employed the Trumbull County Prosecutor's Office to draft pleadings for him.

12) A fair trial includes the right to an unbiased judge with no interest in the outcome of the case. *In re Murchison*, 349 U.S. 133, 136 (1955); *Tumey v. Ohio*, 273 U.S. 510, 523 (1927). Moreover, a fair trial means more than simply the absence of actual bias; rather, "justice

5

must satisfy the appearance of justice." *Liljeberg v. Health Services Acquisition Corp*, 486 U.S. 847, 865, n.12 (1988); *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971). A trial judge is required to step aside when there is a likelihood of bias or even an appearance of bias or when there is too great a temptation to not hold the balance of neutrality. *Taylor v. Hayes*, 418 U.S. 488, 501 (1974); *Unger v. Sarafite*, 376 U.S. 575, 588 (1964); *Ward v. Monroeville*, 409 U.S. 57, 60 (1972); *Tumey v. Ohio*, 273 U.S. at 532. While "[s]uch a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties, due process of law requires no less." *In re Murchison*, 349 U.S. at 136.[1]

13) In co-defendant Roberts' case, this Court found Judge Stuard's involvement of the prosecution in the drafting process was inconsistent with the judicial and disciplinary standards, "both the trial judge and the prosecutor should have known that any ex parte assistance in the preparation of the court's sentencing opinion was wholly inconsistent with these vital ethical constraints [The Code of Judicial Conduct, Cannon 3(B)(7)]. See Disciplinary Rule 7-110(B)(2) and (3)." *State v. Roberts*, at ¶161. For Judge Stuard, in the present case, to determine if he has committed the same violations of the Judicial and Disciplinary standards, creates at least an appearance of bias, if not an outright bias.

---

[1] Because of the unique role of the trial judge in a capital case in Ohio, it is especially important that there be no risk of bias. Where, as in this case, the trial is by jury, the sentence of death may be imposed only after the jury recommends the death penalty and "the *court* finds, by proof beyond a reasonable doubt . . . that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors . . . ." O.R.C. § 2929.03(D)(3) (emphasis added). The court is also required to issue an opinion identifying its findings as to the mitigating factors and aggravating circumstances, and the reasons the aggravating circumstances outweigh the mitigating factors. O.R.C. § 2929.03(F). This opinion serves the basis for the appellate court to determine the appropriateness and proportionality of the death sentence.

6

14)     Even when there is insufficient evidence to support an allegation of actual bias, this Court has disqualified trial judges when their impartiality "might reasonably be questioned" or where they have "personal knowledge of disputed evidentiary facts concerning the proceedings." *In re Disqualification of Celebrese*, 74 Ohio St. 3d 1233 (1991); *In re Disqualification of McMonagle*, 74 Ohio St. 3d 1226 (1990); *In re Disqualification of O'Neill*, 81 Ohio St. 3d 1213 (1997); *In re Disqualification of Crawford*, 81 Ohio St. 3d 1204 (1996); and *In re Disqualification of Morrissey*, 77 Ohio St. 3d 1252 (1996).

15)     This resolution of the disqualification issue of does not hinge on whether there is an evidentiary hearing. The guidelines require disqualification if the judge has personal knowledge of a disputed evidentiary fact or for any other reason that his impartiality is called into question:

> (1) A Judge shall disqualify himself or herself in a proceeding *in which the judge's impartiality might reasonably be questioned, including but not limited to instances* where: . . .
>
> (a) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or *personal knowledge of disputed evidentiary facts concerning the proceeding...*
>
> (d) The judge or the judge's spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person;
>
> (v) *Is to the judge's knowledge likely to be a material witness in the proceeding.*

Ohio Code of Judicial Conduct, Canon 3(E) (emphasis added)

16)     Judge Stuard, it is alleged, has engaged in improper *ex parte* communications. This Court has recognized that when a judge engages in *ex parte* communications concerning a substantive matter, the judge should be recused from further proceedings on the case. *In re Disqualification of Floyd*, 101 Ohio St. 3d 1215 (2003). *In re Disqualification of Floyd*, 101 Ohio St. 3d 1217 (2003).

7

17)    This Court recently addressed an analogous situation with respect to the employment of staff attorneys. *In re Disqualification of Mason*, 110 Ohio St. 3d 1214, 2005-Ohio-7150. The trial judge therein had hired an individual who had practiced before him. *Id.* at ¶3. The Chief Justice concluded that recusal of the trial judge was not required if the new staff attorney did not perform any judicial duties for the judge in the case in question "or any other matter in which she served as a lawyer, or in any matters in which a lawyer with whom she previously practiced law served (during her association with the firm) as a lawyer." *Id.* at ¶4. In the present case, members of the Trumbull County Prosecutor's Office have served in the role of a staff attorney to the extent that they were involved in the drafting process. Thus disqualification is required.

18)    This case is postured differently then the *Roberts'* case in which this Court did not disqualify Judge Stuard. In *Roberts*, Judge Stuard and a member the Trumbull County Prosecutor's Office admitted on the record that they had collaborated in the drafting of the capital sentencing opinion. Those admissions do not appear in the face of the record in the present case. The prosecution, in its response to Nathaniel Jackson's request for leave to file the motion for a new sentencing hearing, did not address the issue concerning its participation in the drafting process. Judge Stuard has not placed anything of record addressing this factual issue.

19)    Nathaniel Jackson has attempted to resolve this matter by requesting Judge Stuard to voluntary remove himself [Exhibit 4]. Judge Stuard has not ruled on the motion

20)    In order to avoid even the appearance of any partiality, prejudice, or other impropriety, as well as to ensure confidence in the integrity of the judicial system, Nathaniel Jackson requests that the Chief Justice disqualify Judge Stuard from further participating in these proceedings

8

21)     There is no scheduled hearing on any of the motions which Nathaniel Jackson has

filed or on any other matter in the trial or post-conviction proceedings.

Further Affiant sayeth naught.

_____

RANDALL L. PORTER

Sworn to and subscribed in my presence this 5th day of October, 2006.

_____

NOTARY PUBLIC

**JOAN E. HAYES**
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES May 29, 2006

9

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Nathaniel Jackson's Application For Disqualification Of Trumbull County Common Pleas Court Judge John M. Stuard And To Assign A Visiting Judge From Outside Trumbull County was forwarded by regular U.S. Mail to Judge John Stuard, Trumbull County Common Pleas Court, 160 High Street, N.W., Warren, Ohio 44481 and Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio 44481 on this 5th day of October, 2006.

RANDALL PORTER - 0005835
Assistant State Public Defender

COUNSEL FOR NATHANIEL JACKSON

10

IN THE SUPREME COURT OF OHIO



STATE OF OHIO, )
)
    Plaintiff-Respondent, )   CASE NO. 06AP102
)
vs. )   Trumbull County Case
)   No. 01-CV-794
NATHANIEL JACKSON, )
)
    Defendant-Petitioner )
)

### AFFIDAVIT OF JUDGE JOHN M. STUARD IN OPPOSITION TO APPLICATION FOR DISQUALIFICATION

<table>
<tr><td>

DENNIS WATKINS - 0009949
Prosecutor

LUWAYNE ANNOS - 0055651
Assistant Prosecutor

Trumbull County Prosecutor's
Office
160 High Street N.W.
4th Floor Administration Bldg.
Warren, Ohio 44481
(330) 675-2426

COUNSEL FOR STATE OF OHIO

</td><td>

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Counsel of Record

Office of the Ohio Public
Defender
8 East Long Street, 11th Floor
Columbus, Ohio 43215
(614) 466-5394
(614) 644-0703 - Fax

COUNSEL FOR NATHANIEL JACKSON

</td></tr>
</table>

CHARLES L. RICHARDS - 0022128
Suite 300, The First Place
159 East Market Street
Warren, Ohio 44481-1122
(330) 373-1000
(330) 394-5291 - Fax
E-mail: 64nd@earthlink.net

COUNSEL FOR JUDGE JOHN M. STUARD

Law Office of Charles L. Richards
159 East Market Street, Warren, Ohio 44481-1122



EXHIBIT
3

John M. Stuard, being first duly sworn upon his oath, deposes and says:

1.   I am a Judge in the Court of Common Pleas, Trumbull County, Ohio. I have held this position since 1991. I make this affidavit of my own personal knowledge.

2.   I was the trial judge in two capital murder cases tried in the Court of Common Pleas, Trumbull County, Ohio. These cases, companions to each other, are known as State v. Donna Roberts (01-CR-793) and State v. Nathaniel Jackson (01-CR-794).

3.   In both State v. Roberts and State v. Jackson, the jury found the defendant guilty of murder and recommended that the defendant be sentenced to death.  Thereafter, I sentenced both Nathaniel Jackson and Donna Roberts to death under Ohio's statutory framework for the imposition of the death penalty.

4.   In an affidavit of disqualification, filed on October 5, 2006, Mr. Jackson's legal counsel states that the thrust of Nathaniel Jackson's motion for relief from judgment and motion for recusal is that I, as the sitting trial judge, and the Trumbull County Prosecutor's Office "had improper ex parte contacts during both the trial and post-conviction proceedings". (See Affidavit of Randall Porter, ¶ 11 at p. 5).

5.   Nathaniel Jackson also argues that the record in State v. Roberts establishes that I had improper ex parte communications with the Prosecuting Attorneys in Nathaniel Jackson's case. While it is true that I had communications with the Assistant Prosecuting Attorney in Donna Roberts' case, I deny that these communications

2

Law Office of Charles L. Richards
159 East Market Street, Warren, Ohio 44481-1122

were improper. (See my response to Disciplinary Counsel's inquiry attached as Exhibit A, and my affidavit about the Donna Roberts case attached as Exhibit B).

6. For the sake of argument on Nathaniel Jackson's motion to disqualify me as the trial judge, and only for that purpose, I accept the opinion of the Ohio Supreme Court in State v. Roberts, 110 Ohio State 3d 71. I also accept the Ohio Supreme Court's factual conclusions set forth in that opinion at ¶ 155-161, inclusive.

7. I had essentially the same type of communications with the Assistant Prosecuting Attorneys in Jackson as I had with the Assistant Prosecuting Attorneys in Roberts, and for the same reasons and purpose. (There is no reason to have a hearing in the Jackson case to establish these facts.)

8. It is clear from the Ohio Supreme Court's opinion in Roberts, that the Court, even after concluding that my communications with the Assistant Prosecuting Attorneys in Roberts were not harmless error and were prejudicial error (see Roberts opinion at ¶ 162, 167) did not want me to be removed from the Roberts case for the purpose of post-trial motion practice or for the purpose of re-sentencing Donna Roberts.

9. On the contrary, the Ohio Supreme Court vacated Roberts' death sentence and remanded the case to my court expressly ordering that I remain on the case. The Court said in paragraph 167 of its opinion:

... the trial court shall personally review and evaluate the evidence, weigh the aggravating circumstances against

3

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 116

any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by R.C. 2929.03. The trial court will then personally prepare an entirely new penalty opinion as required by R.C. 2929.03(F) and conduct whatever other proceedings are required by law and consistent with this opinion.

10. It is at once apparent that the Ohio Supreme Court wants me to remain in Roberts because I am the judge who the court wants to personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence and determine anew the appropriateness of the death penalty. Further, the Ohio Supreme Court has ordered me to personally prepare an entirely new penalty opinion under R.C. 2929.03(F).

11. It is noteworthy that the Roberts court did not order that a new mitigation hearing be conducted on remand. The Court has ordered me to once again consider the evidence presented at the mitigation hearing already conducted by me.

12. If, as argued by Nathaniel Jackson in his motion to disqualify me, I engaged in the same conduct determined by the Ohio Supreme Court to be prejudicial error in State v. Roberts, then, and in that event, the same result should obtain in this companion case involving Nathaniel Jackson. I should remain the trial judge in State v. Jackson, just as I was ordered to remain in State v. Roberts. The remedy in these companion cases where prejudicial error was found to have occurred is not the removal of the trial judge as the court's opinion in State v. Roberts indicates. Ms. Roberts did not get a new judge and Mr. Jackson should not get one either.

4

Law Office of Charles L. Richards
159 East Market Street, Warren, Ohio 44481-1122

End of Affidavit.

I JOHN M. STUARD
JOHN M. STUARD, JUDGE

Sworn to before me and subscribed in my presence at Warren, Ohio this 21st day of November 2006.

S/ MARY am MILLS
NOTARY PUBLIC

5

Law Office of Charles L. Richards
159 East Market Street, Warren, Ohio 44481-1122

```
IN THE MATTER OF:                )
                                 )
THE HONORABLE JOHN M. STUARD     )    CASE NO.  A6-2190J
                                 )
             RESPONDENT          )
                                 )    RESPONSE OF
                                 )    JOHN M. STUARD
```

## INTRODUCTION

Disciplinary counsel obviously claims that Judge Stuard violated the Code of Judicial Conduct Canon 3(B)(7), but it is not clear whether Disciplinary Counsel charges Judge Stuard with an alleged violation of D.R. 7-110(B).

Judge Stuard will respond as though both the Judicial Canon and the Disciplinary Rule are involved in this matter.

This memorandum is supported by the affidavits of John M. Stuard and J. Gerald Ingram, which are submitted herewith and by the transcript of the trial court proceedings pages 6365 through 6382, which are attached to Judge Stuard's affidavit.

Judge Stuard stands ready to respond to any further inquiry by Disciplinary Counsel about this matter.

## JUDGE STUARD'S RESPONSE

John M. Stuard is guilty of no ethical violation for the reasons discussed in the balance of this memorandum.

## SUMMARY

A.   The Code of Judicial Conduct, Canon 3(B)(7), was not violated because:

    1.   The ex parte communications were for administrative purposes, i.e., the task of reducing Judge Stuard's R.C. 2929.03(F) determinations to writing.

**EXHIBIT A**

Law Office of Charles L. Richards
159 East Market Street, Warren, Ohio 44481-1122

000001

2. It was clear that the State of Ohio would gain no tactical or procedural advantage as a result of Judge Stuard's request of the prosecuting attorneys that they perform the ministerial act of typing his sentencing opinion.

3. An objective person, knowing all of the circumstances, (Attorney Ingram), had no reasonable basis to doubt Judge Stuard's impartiality.

4. The conclusions set forth in paragraph 155 through paragraph 164 of the Ohio Supreme Court opinion are not supported by the facts and record in the case.

B. Disciplinary Rule 7-110 was not violated because:

1. There was never a communication as to the merits of the Roberts case or the sentencing of Donna Roberts, all communications being about an administrative matter, i.e., the ministerial act of reducing the court's R.C. 2929.03(F) analysis to written form.

C. The law in other states supports Judge Stuard's position, such that the ruling in State v. Roberts should be applied only prospectively in Ohio disciplinary actions.

DISCUSSION

CANON 3(B)(7) WAS NOT VIOLATED

The Code of Judicial Conduct, Canon 3(B)(7), prohibits certain ex parte communications. It is important to note, however, that not all ex parte communications are prohibited and some are expressly allowed. The Canon provides that ex parte

2

Law Office of Charles L. Richards
159 East Market Street, Warren, Ohio 44481-1122

000002

communications for administrative purposes are permitted if the court reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication.

As the affidavits of Judge Stuard and Attorney Ingram reflect, the ex parte communications which form the basis of this proceeding were administrative in nature. Even the Ohio Supreme Court, in its opinion, recognizes that all of the communications were about the preparation of the trial court's sentencing opinion. The trial court record and the attached affidavits reveal that those communications were limited to a ministerial act, that being the act of typing the judge's notes into a formal sentencing opinion.

The sentencing phase of the trial concluded on June 4, 2003. Donna Roberts was sentenced on June 20, 2003. In the intervening two week period, Judge Stuard carefully analyzed the matter, determined the mitigating factors which existed under R.C. 2929.04(B), determined whether any other mitigating factors existed, determined the aggravating circumstances which were proved, and the reasons why the aggravating circumstances were sufficient to outweigh the mitigating factors. Judge Stuard reduced his findings and determinations, to a set of notes, in his own handwriting, on yellow legal paper and gave the yellow legal paper to an assistant prosecuting attorney with a request that the prosecuting attorney's office reduce the notes to a formal sentencing opinion. The trial court record reflects that the prosecuting attorney's office had the format for this on a computer (Tr. 6370).

3

Law Office of Charles L. Richards
159 East Market Street, Warren, Ohio 44481-1122

000003

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 121

Judge Stuard had presided over the trial of State of Ohio v. Nathaniel Jackson. Jackson was Donna Roberts boyfriend, and was also convicted of the aggravated murder of Robert Fingerhut and sentenced to death by Judge Stuard in an earlier trial. Judge Stuard apparently believed that the sentencing opinion used in the Nathaniel Jackson case would provide the format for the sentencing opinion to be used in the Donna Roberts case. (Ingram Aff. ¶ 4). This rendered it unnecessary for the court to prepare detailed notes for the prosecutor, but the Judge's notes did reflect what he wanted to be included in the sentencing opinion in terms of his analysis, findings and determinations. (Tr. 6371, 6372).

The trial court record reveals that there was only one exchange between the court and an assistant prosecuting attorney and one telephone call about the sentencing opinion. (Tr. 6367, 6370). There was only one draft and some changes to correct typos and other similar matters.

One assistant prosecuting attorney, Chris Becker, characterized the prosecutor's role as being "the court's typewriter, the court's secretary." (Tr. 6370, 6371).

Significantly, Judge Stuard gave nobody a tactical advantage. His decisions with respect to all of the issues in the case relative to sentencing Donna Roberts were made well before he had the initial contact with the assistant prosecuting attorneys about drafting a sentencing opinion. Nobody influenced Judge Stuard and, given the nature of the evidence presented, it would have been impossible to influence him in any event. There was no mitigating

4

Law Office of Charles L. Richards
159 East Market Street, Warren, Ohio 44481-1122

Q00004

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 122

evidence presented and the aggregating factors were overwhelming.

Although the Ohio Supreme Court, in deciding <u>Roberts</u>, did not provide a standard to be used to determine when a trial court's ex parte communications in capital murder cases are wrongful, the Supreme Court in other states has done so. In <u>Saylor v. State</u>, 765 N.E.2d 535, (Indiana S.Ct.. 2002), a case involving very similar facts and issues, the Indiana Supreme Court held that the test is "whether an objective person knowing all of the circumstances, has a reasonable basis to doubt the judge's impartiality."

The Affidavit of J. Gerald Ingram establishes that, in spite of his early "vehement objection", he is satisfied that there is no basis to doubt Judge Stuard's impartiality. (Ingram Aff. ¶ 11).[1]

The Ohio Supreme Court opinion in <u>Roberts</u> contains six separate conclusions which are not supported by the record. Some of the court's conclusions can fairly be described as a spin on the facts which might have reasonably been viewed in a different light. These conclusions are found at 110 Ohio St. 3d 71, ¶ 155 through 161 and they are worthy of some discussion here.

The trial court concluded that the prosecutor participated in drafting the sentencing opinion; that the trial court directly involved the prosecutor in preparing the sentencing opinion; that the prosecutor had a direct role in preparing the sentencing opinion. See Opinion, ¶ 155, 159, 160. These conclusions are at

---

[1] Mr. Ingram, as counsel for the defendant, would be expected to argue against Judge Stuard but, as his affidavit reflects, he is strongly convinced that Judge Stuard has done nothing inappropriate.

5

000005

least overstatements of the prosecuting attorney's involvement in the preparation of the sentencing opinion. The record and the attached affidavits reveal that the prosecutor's involvement was limited to the ministerial act of typing the Judge's notes into a sentencing opinion. Any implication that the assistant prosecuting attorneys played a role in authoring the opinion is entirely unfair and not in any way supported by the trial record or the attached affidavits.

The Supreme Court concluded that the sentencing opinion had to be corrected six or seven times. The implication is that drafts were going back and forth between the trial court and the prosecutor's office, but nothing like that happened. There was but one draft and the changes made were to correct typographical errors and the like. (Tr 6370). Absolutely nothing in the trial court record demonstrates any changes of substance between Judge Stuard's notes on yellow legal paper and the initial draft prepared by the assistant prosecuting attorneys or between the initial draft and any subsequent draft.

The Supreme Court Opinion suggests that there were "various drafts". (Opinion ¶ 159). This is clearly incorrect. There was only one draft. (Tr. 6369).

The Ohio Supreme Court concluded that the trial court had ex parte communications with the assistant prosecuting attorneys "about sentencing". (Opinion ¶ 161). This conclusion is completely unwarranted on the basis of the trial court record. The trial court record and the attached affidavits reveal that all

6

communications between the trial court and the assistant prosecuting attorneys was about typing a sentencing opinion and occurred only after the Judge had made his required R.C. 2929.03(F) analysis.   There was never an ex parte communication about the merits of the case or the substance of any aspect of the case.

It was the Ohio Supreme Court which, in 1994, ruled that a judge is presumed to be unbiased and unprejudiced.  The evidence must be compelling to overcome this presumption of integrity.  In Re: Disqualification of Olivito (1994), 74 Ohio St.3d 1261, 1263. The Supreme Court opinion in Roberts is a rather stark departure from this fundamental concept.  Perhaps this can be explained by the fact that the trial court record is a little thin and by the conclusions reached by the trial court on the basis of that record, but when the record is carefully examined and the attached affidavits are considered, it is clear that the presumption that Judge Stuard was unbiased and unprejudiced has not been overcome.

## NO VIOLATION OF DISCIPLINARY RULE 7-110

Disciplinary Rule 7-110, by its very terms, applies only to lawyers.  See D.R. 7-110(A) "A Lawyer Shall Not ... "

Since Disciplinary Counsel's letter of inquiry does not specify whether Judge Stuard is alleged to have violated D.R. 7-110, it will be addressed in this memorandum.

Disciplinary Rule 7-110 prohibits ex parte communications between the court and counsel only if they relate to the "merits of the case".

Judge Stuard will not repeat what is set forth above, except

7

**000007**

Law Office of Charles L. Richards
159 East Market Street, Warren, Ohio 44481-1122

to note that the supporting affidavits reveal that no ex parte communications with assistant prosecuting attorneys took place about the merits of the Donna Roberts death sentence. All communications were limited to the preparation of a sentencing opinion. Those communications were even further limited to the typing of a sentencing opinion based upon a set of notes in the judge's own hand which notes reflected his analysis, findings and determinations made well before he had the communication with the assistant prosecuting attorneys about the matter.

### THE LAW IN OTHER STATES

The Supreme Court in other states has been called upon to decide cases involving very similar facts and legal issues. Most of these cases involve the equivalent of Ohio's Canon 3(B)(7) which is directly implicated here.

The cases most directly on point are Saylor v. State, 765 N.E.2d 535 (Indiana S.Ct.. 2002); People v. Seaton, 28 P 3d 175 (Calif. S.Ct.. 2001) and State v. Pratt, 873 P 2d 800 and 912 P 2d 94 (Idaho S.Ct..).

In Saylor, it was alleged that the court had ex parte communications with the prosecutor over a very similar thing, that is, findings of fact and conclusions of law prepared by the state in a death penalty case. The Indiana Supreme Court found this to be a communication about an administrative matter and not a violation of the equivalent of Ohio's Canon 3(B)(7).

In People v. Seaton, 28 Pacific 3d 175, the court asked the prosecutor to draft a sentencing opinion providing for the death

8

sentence. This occurred in a private conversation well before the jury returned its verdict of guilty of aggravated murder and suggested the death penalty. The court ultimately used the prosecutor's sentencing opinion in sentencing the defendant to death.

The California Supreme Court found that the communication was one for administrative purposes and was not in any way a violation of the Canons of Ethics.

### PROSPECTIVE APPLICATION

The Ohio Supreme Court's conclusions in State v. Roberts are suspect at best, given the very limited information in the record and the compelling information in the attached affidavits.

Even if State v. Roberts is accepted, it should be applied prospectively only for disciplinary purposes, as opposed to being the law on criminal procedure in Ohio.

Other states have held on very similar facts that the trial court did not violate the Code of Judicial Conduct. If Ohio is to set sail in a different direction, let the Roberts case be a compass that will guide Ohio's common pleas judges in the future handling of murder cases where the penalty of death is imposed. But to hold Judge Stuard in violation of the Code of Judicial Conduct on the facts of the within case seems more than a little unfair. A judge with fifteen years of judicial service, an unblemished record, and a reputation for competence and integrity, and who followed a well-accepted custom and practice in his courthouse and in other courthouses around the state, should be

9

disciplined only after he is given notice that such ex parte communications, believed by him to be administrative in nature, are ethical violations. This is true especially when the courts in other states have ruled otherwise.

Respectfully submitted,

CHARLES L. RICHARDS - 0022128
Suite 300, The First Place
159 East Market Street
Warren, Ohio 44481-1122
Telephone: (330) 373-1000
Fax: 330-394-5291
E-mail: 64nd@earthlink.net
Attorney for The Honorable
John M. Stuard

10

000010

IN THE MATTER OF: )
)
THE HONORABLE JOHN M. STUARD ) CASE NO. A6-2190J
)
) AFFIDAVIT OF
) JOHN M. STUARD

John M. Stuard (0018610), being duly sworn upon his oath, deposes and says:

1. I am the respondent in the within matter. I make this affidavit of my own personal knowledge, and I am competent to testify to the matters recited herein.

2. I was graduated from the University of Kentucky Law School in 1965 and was admitted to the practice of law in Ohio in the fall of 1965. From October 1965 to January 1991, I engaged in the general practice of law in Trumbull County, Ohio. In 1981, I was elected a county court judge in Trumbull County, Ohio. I was permitted to practice law while holding this position. In 1991, I was appointed by Governor Celeste to fill Judge Robert A. Nader's unexpired term on the Court of Common Pleas, Trumbull County, Ohio. I have held that position ever since. My present term expires on December 31, 2006 and I am running unopposed in November's election.

3. I have never been the subject of a disciplinary proceeding, either as a practicing lawyer or as a sitting judge on the county court or on the Common Pleas bench.

4. I have been the trial judge in four death penalty cases, including State of Ohio v. Roberts and State of Ohio v. Jackson, two cases arising out of the December 2001 murder of Robert Fingerhut in Howland Township, Trumbull County, Ohio.

5. In Roberts, the jury returned a verdict of guilty of

Law Office of Charles L. Richards
159 East Market Street, Warren, Ohio 44481-1122

EXHIBIT B
000011

aggravated murder and other counts on May 28, 2003. The sentencing phase of the case concluded on Wednesday, June 4, 2006. In the sentencing phase, the defendant refused to permit her attorneys to present evidence in mitigation and, in an unsworn statement, Roberts asked the jury quite directly to sentence her to death. Accordingly, there was little mitigation evidence for the court to consider when it imposed its sentence under R.C. 2929.03(F).

6. In sentencing Donna Roberts to death, I followed the requirements of R.C. 2929.03(F) in that:

      A. I determined the aggravating circumstances which were established by proof beyond a reasonable doubt.

      B. I carefully determined and weighed the mitigating factors which existed, after first determining that Donna Roberts was competent to waive the presentation of mitigating evidence, as she chose to do.

      C. I determined, independent of the jury's determination, that the aggravating factors were sufficient to outweigh any mitigating factors which I found to have existed, and that the death penalty was justified by the facts and the law.

7. These were my own findings, reduced to notes in my own hand. They were not the findings of the prosecuting attorney.

8. The findings and determinations set forth in paragraph 6 above were made by me independent of any discussion I had with the

2

000012

assistant prosecuting attorneys about the preparation of the sentencing opinion in <u>Roberts</u>.

9. The evidence requiring the death penalty for Donna Roberts was compelling. Ms. Roberts refused to permit her attorneys to offer evidence in mitigation and she asked the jury to sentence her to death in clear, unequivocal terms. There were significant, multiple aggravating circumstances established during the state's case-in-chief. As a result, it was not a difficult or close decision for me to sentence Donna Roberts to death, and it was not the type of case in which any judge could ever be influenced by anything that the prosecuting attorneys might say in an ex parte communication or otherwise. In fact, no ex parte communications were ever attempted by the prosecuting attorneys about the sentence, and none were had.

10. Before I ever discussed the preparation or typing of the sentencing opinion in <u>Roberts</u>, I reduced my findings and determinations to yellow legal-sized sheets of paper in my own handwriting.

11. I gave my notes on yellow legal paper to an assistant prosecuting attorney and asked him to type them into a formal sentencing opinion and he agreed to do so. It was my understanding that he would use the format that was used in the companion case of <u>State v. Jackson</u> to accomplish this. I did not ask the assistant prosecuting attorneys to do anything else with respect to the sentencing of Donna Roberts or the preparation of the sentencing opinion.

3

000013

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 131

12. There was absolutely no discussion with any assistant prosecuting attorney about my decision to sentence Donna Roberts to death or the reasons for that decision. In fact, the assistant prosecuting attorneys did not even know my decision until I handed them my notes on yellow legal paper.

13. I was not influenced at all, in any way, by any discussions with either assistant prosecuting attorney about the sentencing of Donna Roberts. Indeed, there were no such discussions. My findings and my decision were made before I gave the notes to the assistant prosecuting attorney and were made completely independent of their typing the notes into a formal sentencing opinion.

14. The Supreme Court opinion states that the assistant prosecuting attorney participated in drafting my sentencing opinion. This is correct only if "participated in" is limited in meaning to typing the sentencing opinion after I had made my findings and determinations under R.C. 2929.03(F), reduced them to notes on yellow legal size paper and gave the notes to the assistant prosecuting attorney.

15. The sentencing opinion was not "corrected six or seven times" as the Supreme Court opinion states. There was a single draft prepared, and I made no corrections or changes of substance to it, although I did correct typographical errors, grammatical mistakes and the like.

16. There were no "various drafts" involving any assistant prosecuting attorney. There was only one draft prepared as

4

Law Office of Charles L. Richards
159 East Market Street, Warren, Ohio 44481-1122

000014

indicated above.

17. I had no ex parte communications with any assistant prosecuting attorney about Donna Roberts' death sentence at all. What I did have was communications which I believe were allowed by the Code of Judicial Conduct, Canon 3(B)(7)(a) for the reason that the communications involved an administrative purpose, i.e., the ministerial act of typing into a formal document the independent findings and determinations which I had made as required by R.C. 2929.03(F).

18. I believed that my request of the assistant prosecuting attorneys to reduce my notes on yellow legal paper to a formal opinion would in no way give the state a procedural or tactical advantage and, in fact, it did not. My communications were limited to a ministerial act, there was no discussion of any substantive issue in the case, and I had already made my independent analysis before I gave my notes to the assistant prosecuting attorney.

19. Attached to this affidavit is the trial transcript, pages 6365 through 6382, inclusive. These are the pages which relate to the issues raised in Disciplinary Counsel's letter of inquiry.

End of Affidavit.

_____
JOHN M. STUARD

Sworn to before me and subscribed in my presence at Warren, Ohio, this 23 day of October, 2006.

_____
NOTARY PUBLIC
5   my commission expires 1/13/2008

Law Office of Charles L. Richards
159 East Market Street, Warren, Ohio 44481-1122

000015

6365

1   is the appropriate penalty in this case.

2          Counsel approach the bench, please.

3   (SIDE BAR DISCUSSION, OFF THE RECORD AND OUT OF

4   HEARING)

5          THE COURT:  The Court has asked at

6   side bar if counsel for either side wish to place

7   anything on the record before this Court proceeds

8   with sentencing.  Mr. Ingram, I believe you wish to

9   address something.

10         MR. INGRAM:  Your Honor, the record

11  should reflect that in pronouncing sentence, you

12  have apparently read from a written decision that

13  you have prepared in advance.  I guess I would ask

14  if I am correct in that assumption?

15         THE COURT:  That is correct.

16         MR. INGRAM:  As you read that

17  decision, Mr. Bailey sat at the Prosecution table

18  and reviewed a document as if he was reading along.

19  Every time you turned the page, Mr. Bailey turned

20  the page.  I would now ask on the record, that

21  Mr. Bailey be required to identify the documents

22  which are sitting in front of him.

000016

6366

1　　　　　THE COURT:　Mr. Bailey is referring

2　to a document that I have had prepared.　I have

3　outlined the sum and substance of it to the

4　Prosecution.　They have a computer over there which

5　you are aware of, Mr. Ingram, we have used

6　throughout the trial, which makes it convenient to

7　correct, delete from a master copy and to come up

8　with a form that is present, which I presently

9　used.

10　　　　　MR. INGRAM:　Well, the record should

11　reflect the vehement Defense objection to the

12　State's participation in the drafting of the

13　Court's sentencing decision in ex parte proceeding.

14　We did not know this, we did not know of this.

15　That is prohibited.　I would ask that those

16　documents be sealed and become part of the

17　Appellate record in this case.

18　　　　　THE COURT:　That will be done.

19　　　　　MR. INGRAM:　I would ask that they

20　be given to the Court Reporter at this point.

21　　　　　THE COURT:　Mr. Bailey, please

22　deliver that copy.

000017

6367

1              MR. INGRAM:  May I see it?  May I

2    ask Your Honor, when at what point in time, the

3    exchanges between you and Mr. Bailey occurred?

4              THE COURT:  I don't recall.  That

5    was probably about Wednesday.

6              MR. INGRAM:  Was there one such

7    exchange or more than one exchange?

8              THE COURT:  I believe that there was

9    one exchange.

10             MR. INGRAM:  We would also note an

11   objection to the Court's depriving the Defendant of

12   the right of allocution.  We object to the Court

13   depriving the Defendant of her right of allocution.

14             THE COURT:  Your objection is noted.

15             MR. BAILEY:  We haven't reached a

16   point of allocution yet.  We're just getting to

17   that point.  The Court had to do the independent

18   weighing and now we're at the point where the Court

19   has to advise the Defendant of her Appellate rights

20   and of allocution.

21             THE COURT:  I have to advise of Rule

22   32 now.

000018

6368

1                MR. JUHASZ: The objection is

2    because the Court has already determined sentence

3    without having heard from the Defendant. Normally

4    in sentencing proceedings, the Court hears from the

5    Defendant before making a determination of the

6    appropriate sentence. That is the basis for the

7    objection.

8                THE COURT: Okay. Could I see

9    counsel?

10    (In-chambers at 2:30 p.m.)

11    (OFF THE RECORD)

12               THE COURT: We're in-chambers in

13    conference. Are you waiving presence of the

14    Defendant?

15                MR. INGRAM: Yes.

16                THE COURT: Mr. Ingram, you have

17    another question?

18                MR. INGRAM: Based upon our exchange

19    a few moments ago in the Courtroom, it is my

20    understanding that a draft or some document

21    relating to the Court's pronouncement of sentence

22    was provided to the Prosecuting Attorney on

000019

6369

1   Wednesday.

2             THE COURT:  I believe it was

3   Wednesday.  I asked them to type this up and get a

4   copy back, so that we would all have it when I was

5   reading through it.  You weren't given a copy of

6   it, and I apologize for that.

7             MR. INGRAM:  We should probably ask

8   that that document that was provided to the

9   Prosecuting Attorney on Wednesday also be marked

10  and sealed as part of the Court's Exhibit in this

11  matter.

12            THE COURT:  Okay.

13            MR. BAILEY:  The only thing left is

14  the final one.  All prior ones were thrown out.

15  There were six or seven of them.

16            MR. INGRAM:  There's six or seven

17  drafts?

18            MR. BAILEY:  Not six or seven

19  drafts, there's one draft and there's corrections

20  and all of the corrections with the draft were

21  pitched.

22            MR. INGRAM:  Who made the

000020

6370

1  corrections?

2          MR. BAILEY:  We made or the Court.

3  We kept finding typo's.

4          THE COURT:  Whatever you have, if

5  you have something, bring it over.

6          MR. BECKER:  Let me explain

7  something here.  This is my understanding of what

8  we were supposed to do.  We were to take that and

9  put it on the computer and print out the hard copy

10  of the sentencing order, which is what we did.  As

11  Ken and I would proofread it for typographical

12  errors, it was changed and just saved on the hard

13  drive of the computer.  It was never printed out

14  and kept as draft after draft after draft.  I would

15  type over the hard drive, and prepare it.

16  Eventually a final copy was provided to the Court

17  and I think the Court had some typographical errors

18  and maybe some changes.

19          THE COURT:  I made one phone call

20  back to you.

21          MR. BECKER:  And the Court had

22  indicated some changes.  I just simply changed

6371

1  that. Essentially what I did, because I typed the
2  whole thing was I was the Court's typewriter, the
3  Court's secretary.
4              THE COURT: We used that -- we don't
5  have the equipment here or the know-how to do
6  things expeditiously. That is the way we were able
7  to get the final instructions.
8              MR. BECKER: That is the way Jury
9  instructions are done. Now I think --
10             THE COURT: We have had this come
11  up. Tony Consoldane always raises this issue about
12  the Prosecutor typing stuff as if the Prosecutor
13  is -- and it may be a legitimate point, I don't
14  know. It is the system that is used here because
15  it is the most practical.
16             MR. INGRAM: Does anybody have the
17  first draft? They do not. Do you?
18             THE COURT: No. I don't have
19  anything, no.
20             MR. INGRAM: Who wrote the first
21  draft?
22             THE COURT: I gave notes saying this

000022

6372

1  is what I want.  This, this and this, and they sent
2  it back.  I read it over, made some corrections,
3  went back from there.

4          MR. INGRAM:  The record should
5  simply reflect that in this process, Defense
6  counsel was never involved, nor consulted.  Other
7  than that, I have nothing further.

8          MR. BECKER:  I just want to address
9  something on record here.  Rule 32 states that
10  sentence shall be imposed without unnecessary
11  delay.  Sentence shall be imposed without
12  unnecessary delay.  Pending sentence, the Court may
13  commit the Defendant or continue or alter the bail.
14  At the time of imposing sentence, and it doesn't
15  necessarily say before sentence is imposed, it says
16  at the time of imposing sentence, the Court shall
17  do all of the following:  Afford counsel an
18  opportunity to speak on behalf of the Defendant and
19  address the Defendant personally and ask if he or
20  she wishes to make a statement in his or her own
21  behalf; afford the Prosecution to make an
22  opportunity to speak; afford the victims the right

000023

6373

1  provided by law; and then notify and then after --

2  it is very specific, the rule says after imposing

3  sentence in a serious offense, the Court shall

4  advise the Defendant has the right to appeal.  I

5  think what is important is Rule 32 does not say

6  before imposing sentence, Defendant or counsel

7  should be afforded an opportunity, it says at the

8  time of imposing sentence.  We haven't had the

9  sentence.  I don't think the actual sentence has

10  been handed down.  That is an important

11  distinction.  The Court by law had to make an

12  independent weighing and circumstances.

13            THE COURT:  Well, the record is

14  clear as to what has happened.  If you have a point

15  on appeal, you have got a point on appeal.

16            MR. INGRAM:  Thank you.

17  (End of in-chamber discussion)

18  (Back in Open Court)

19            THE COURT:  Gentlemen, would you

20  have your client come forward, please?  Does the

21  Defendant wish to address anything prior to

22  sentencing?

000024

6374

1          THE DEFENDANT: Yes, I think I
2   would. I would like to have one of those notes
3   back. Short and sweet this time. You probably
4   wonder why I did what I did about asking for the
5   death penalty. Because I think one small voice for
6   justice is going to count. Maybe if it is for only
7   one person some day. I didn't want to take the
8   stand on race equality and the criminal justice
9   system. Criminal justice, an oxymoron, and two, to
10  expose and ask corrupt police officials who use a
11  .badge to destroy rather than protect lives for
12  their own gain by committing perjury, planting and
13  transferring evidence, tampering, and using race
14  and religion to condemn. Thank you.
15          Thank you for your decision. I was a
16  little worried you might try to find something not
17  to do that. I appreciate what you did. Thank you.
18          MR. INGRAM: The record should
19  reflect my migraine has returned. We have nothing.
20          THE COURT: Counsel have nothing
21  further?
22          MR. INGRAM: No.

**000025**

6375

1          THE COURT:  Miss Roberts, you have a

2    right to appeal the conviction filed in this case.

3    I would ask you, it is my duty to appoint counsel

4    to perfect that appeal for you.  I have had some

5    indication from someone that you may wish to hire

6    your own counsel or do you wish the Court to

7    appoint someone to represent you?

8          MR. INGRAM:  May I answer this

9    question?

10          THE COURT:  Yes.

11          MR. INGRAM:  The appeal in this

12   matter would be due in 45 days.  Donna, along with

13   Mr. Juhasz and I will make Appellate decisions in

14   due course, and at this time, there's no request

15   for Court appointed Appellate counsel.

16          THE COURT:  There's no request?

17          MR. INGRAM:  No request not at this

18   juncture.

19          THE COURT:  I would ask you to

20   apprise me, because the Supreme Court insists that

21   within a certain time period, within two weeks, I

22   have to either appoint Appellate counsel or they

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 144

6376

1   are not completely happy with me.

2               MR. INGRAM:  Okay.

3               THE COURT:  As I said, you have an

4   absolute right to file an appeal in this case, it

5   would be the Supreme Court to review the actions of

6   this Court and this Jury.  If you are unable to pay

7   the cost of that appeal, the appeal will be

8   perfected with no cost to yourself and counsel will

9   be appointed with no cost to you.  Any papers,

10  other expenses you are unable to pay for will be

11  provided by this Court.  You have the right to have

12  a notice of timely appeal filed on your behalf.  If

13  you fail to do that, this Court will see that that

14  is done.  Do you have any other questions about any

15  of that at this time?

16              THE DEFENDANT:  No.  Jerry says no.

17              THE COURT:  Anything that the

18  Defense or the Prosecution wish to place on the

19  record at this time before the Court enters

20  sentence?

21              MR. INGRAM:  Only that you take this

22  and mark it as a Court's Exhibit for sentencing

000027

6377

1  purposes.

2  THE DEFENDANT:  I just request that

3  that fairy tale you told, not be told to children

4  at night.  Thank you.

5  THE COURT:  The Court has considered

6  the record and oral statements made as well as the

7  principles and purposes of sentencing under Ohio

8  Revised Code 2929.11, and has balanced the

9  seriousness and recidivism factors of O.R.C.

10  Section 2929.12.  Pursuant to law, the Trial Court,

11  this day, June 20, 2003, having determined in a

12  separate opinion of specific findings that the

13  aggravating circumstances as to the count of

14  Aggravated Murder, outweigh the mitigating factors

15  by proof beyond a reasonable doubt, then made

16  inquiry as to whether the Defendant had anything to

17  say, why judgment should not be pronounced against

18  her.  And the Defendant in answer showed no good

19  cause or sufficient reason why sentence should not

20  be pronounced.  Are you wondering what I am reading

21  from?

22  MR. INGRAM:  I am wondering what

000028

6377

1    purposes.

2                THE DEFENDANT:  I just request that

3    that fairy tale you told, not be told to children

4    at night.  Thank you.

5                THE COURT:  The Court has considered

6    the record and oral statements made as well as the

7    principles and purposes of sentencing under Ohio

8    Revised Code 2929.11, and has balanced the

9    seriousness and recidivism factors of O.R.C.

10   Section 2929.12.  Pursuant to law, the Trial Court,

11   this day, June 20, 2003, having determined in a

12   separate opinion of specific findings that the

13   aggravating circumstances as to the count of

14   Aggravated Murder, outweigh the mitigating factors

15   by proof beyond a reasonable doubt, then made

16   inquiry as to whether the Defendant had anything to

17   say, why judgment should not be pronounced against

18   her.  And the Defendant in answer showed no good

19   cause or sufficient reason why sentence should not

20   be pronounced.  Are you wondering what I am reading

21   from?

22                MR. INGRAM:  I am wondering what

000029

6378

1   Mr. Bailey is reading from.  Mr. Bailey is reading

2   from a sentence.

3                 MR. BAILEY:  This is Nathaniel

4   Jackson's.

5                 THE COURT:  This is a copy of

6   Nathaniel Jackson's, which I have altered.  The

7   Court has considered the factors under Ohio Revised

8   Code 2929.14 and makes the following findings.  The

9   shortest prison term will demean the seriousness of

10  the Defendant's conduct; two, the longest prison

11  term is appropriate because the Defendant committed

12  the worst form of the offense; number three,

13  multiple prison terms are necessary to protect the

14  public from future crime and to punish the

15  offender; number four, consecutive prison sentences

16  are not disproportionate to the seriousness of the

17  Defendant's conduct and to the danger the

18  Defendant, the offender, opposes to the public.

19  Five, the harm caused by the multiple offenses was

20  so great that no single prison term for any of the

21  offenses committed as part of a single course of

22  conduct adequately reflects the seriousness of the

000030

6379

1　Defendant's conduct.

2　　　　　It is therefore Ordered and Adjudged and

3　Decreed that the Defendant, Donna M. Roberts, be

4　taken from the Courtroom to the Trumbull County

5　jail, and from thence to the correction reception

6　center at Lorain -- I'm sorry, at Marysville, Ohio.

7　　　　　Counsel approach for a moment, please.

8　(SIDE BAR DISCUSSION, OFF THE RECORD AND

9　OUT OF HEARING)

10　　　　　THE COURT:  I'll read this over

11　again.  It is therefore Ordered and Adjudged and

12　Decreed that Defendant, Donna M. Roberts, be taken

13　from the Courtroom to the Trumbull County jail,

14　from thence to the correction reception center at

15　Marysville, Ohio, and thereafter be sentenced to

16　death on January 11, 2004 on Count One.  And

17　imprisoned therein for the stated prison term of

18　ten years on Count Three, plus a mandatory term of

19　three years on the firearms specification, to be

20　served prior to and consecutive to the sentence

21　imposed in Count Three.  Ten years on Count Four,

22　plus a mandatory term of three years on the

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 149

6380

1 | firearms specification, to be served prior to and
2 | consecutive to the sentence imposed in Count Four.
3 | Sentence in Count Four to be served consecutively
4 | to the sentence imposed on Count Three. The
5 | firearms specification in Counts Three and Four
6 | shall merge as one sentence in Count Three as
7 | matter of law.

8 | The Defendant is ordered to pay the cost
9 | of prosecution, once that is determined, for which
10 | execution is awarded. That is the judgment of this
11 | Court.

12 | Miss Roberts, I can't think of a more
13 | unpleasant thing that anybody is called upon to do
14 | than to sit here and review a record like this.

15 | THE DEFENDANT: I know.

16 | THE COURT: My heart goes out to
17 | everyone that was involved in this thing. I think
18 | as most people who look at it, think that you used,
19 | you appear from all of the contact I have had with
20 | you, to be a normal person, which makes it more
21 | difficult to explain the actions that the State has
22 | been able to put forth. And it almost appears to

000032

6381

1    me that it was an abandoned, where there was no

2    thought of what was going to happen tomorrow or the

3    next day or down the road, almost some sort of a

4    fantasy world that you were living in.  But all of

5    our actions have consequences, and sadly, yours

6    have brought you to this point.  I do say this,

7    with heartfelt sincerity though, I wish you well.

8                    THE DEFENDANT:  Thank you, Sir.

9                    MR. INGRAM:  Thank you.

10   (End of Sentencing Hearing at 3:00 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

000033

6382

1

2                    REPORTER'S  CERTIFICATE

3

4            I do hereby certify that the above and

5    foregoing is a true and correct transcript

6    of the proceedings had in the within hearing

7    as shown by stenotype notes written by me in the

8    presence of the witnesses at the time of the

9    hearing.

10

11                          _Mary Ann Mills_____
                            MARY ANN MILLS, R.P.R.
12                          Official Court Reporter
                            Trumbull County, Ohio
13

14

15

16

17

18

19

20

21

22

000034

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 152

### IN THE COURT OF COMMON PLEAS
### TRUMBULL COUNTY, OHIO

State of Ohio,                                    :

    Plaintiff,                            :  Case No. 91-cr-288

-vs-                                             :

Roderick Davie,                                  :  Judge John M. Stuard

    Defendant.                            :

---

### RODERICK DAVIES REQUEST FOR LEAVE
### TO FILE HIS MOTION FOR A NEW SENTENCING HEARING

---

        Roderick Davie requests that this Court grant him leave to file the attached Motion for a New Sentencing Hearing. [Exhibit A]. His request is premised upon the Supreme Court of Ohio's decision in *State v. Roberts*, 110 Ohio St. 3d 71, 2006 Ohio 3665 (2006) and subsequent statements by this Court in the case of *State v. Nathaniel Jackson*, Ohio Supreme Court Case No. 06AP102. A Memorandum in Support is attached hereto and incorporated herein.

                          RESPECTFULLY SUBMITTED,

                          DAVID C. STEBBINS (0005839)
                          ATTORNEY AT LAW
                          400 SOUTH FIFTH STREET
                          COLUMBUS, OH 43215
                          (614) 228-9058

                          AND



EXHIBIT
4

KATHLEEN A. MCGARRY
McGarry Law Offices
P.O. Box 310
Glorieta, NM 87535
(505) 470-6313
(888) 470-6313
kate@kmcgarrylaw.com

By: _David C. Stebbins_
David C. Stebbins

## MEMORANDUM OF LAW

On August 2, 2006 the Supreme Court of Ohio held that it was improper for this Court to collaborate with the prosecution in the drafting the sentencing opinion in a capital case. *State v. Roberts*, 110 Ohio St. 3d 71, 2006 Ohio 3665 (2006) ¶¶163-164. That Court rested its conclusion that the procedural was both unethical and unlawful because the contact between the trial judge and prosecution was *exparte*, and it was the prosecution and not this Court which supposedly reweighed the evidence. *Id.* at ¶¶161, 163.

At the sentencing of Donna Roberts, this Court affirmed that the Trumbull County Court of Common Pleas Judge routinely employed this *ex parte* drafting process in capital cases, "It is the system that is used here because it is the most practical." Because the this Court sentenced both Donna Roberts and Roderick Davie to death, it is reasonable to conclude that "the system" for drafting the

2

sentencing opinion in the Roberts' case "was used here because it is the most practical". [1] This court has likewise conceded that it had the same type of communications in the case of *State v. Nathaniel Jackson*, Case No. 01-CV-794.[2]

This Court should grant Roderick Davie a new penalty phase hearing because: 1) this Court abused its discretion when it involved the prosecution in the drafting process, Crim. R. 33(A)(1); the prosecution's involvement in the drafting of the opinion was misconduct, Crim. R. 33(A)(2), constituting an error of law, Crim. R. 33(A)(4); and Roderick Davie's motion is premised upon newly discovery evidence, Crim. R. 33(A)(6).

A defendant, whose motion for a new trial is based upon abuse of discretion, prosecutorial misconduct or an error of law, must file his motion within fourteen days after the verdict, unless he demonstrates by clear and convincing evidence that he was unavoidably prevented from filing his motion during that time period. Crim. R. 33(B). A defendant who files his motion for a new trial based upon newly discovered evidence must file his motion within one hundred twenty days

---

[1] Roderick Davie also requested that this Court grant him a new sentencing hearing so that he can meaningfully exercise his right of Allocution. That portion of the Motion is also premised on the Ohio Supreme Court's decision in *Roberts*. ¶ 166

[2] "7. I had essentially the same type of communications with the Assistant Prosecuting Attorneys in <u>Jackson</u> as I had with the Assistant Prosecuting Attorneys in <u>Roberts</u>, and for the same reasons and purpose." Affidavit of Judge John M. Stuard in Opposition to Application for Disqualification, *State v. Nathaniel Jackson*, Ohio Supreme Court, Case No. 06AP102. (Attached as Exhibit B)

3

after the verdict, unless he demonstrates by clear and convincing evidence that he was precluded from filing the motion within that time period. Crim. R. 33(B).

Roderick Davie's Motion for a New Sentencing Hearing is based upon a combination of a new Ohio Supreme Court decision and newly discovered facts. That Court's ruling in *Roberts* as well as this Court's statements in *Jackson* were outside the fourteen time period provided in the Rule.

In addition Roderick Davie could not have discovered the factual premise for his New Trial Motion until Robert's case was decided and until this Court's statements in *Jackson* came to light.

For the foregoing reasons, this Court should find that the Roderick Davie was unavoidably prevented from filing his Motion for a new trial within the time frames of Crim. 33. It should further grant Roderick Davie. leave to file his Motion for a New Trial.

RESPECTFULLY SUBMITTED,

DAVID C. STEBBINS (0005839)
ATTORNEY AT LAW
400 SOUTH FIFTH STREET
COLUMBUS, OH 43215
(614) 228-9058

AND

4

KATHLEEN A. MCGARRY
McGarry Law Offices
P.O. Box 310
Glorieta, NM 87535
(505) 470-6313
(888) 470-6313
kate@kmcgarrylaw.com

By: _____
David C. Stebbins

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **MOTION FOR LEAVE TO FILE MOTION FOR A NEW SENTENCING HEARING** was forwarded by first-class, postage prepaid U.S. Mail to Dennis Watkins, Prosecuting Attorney, Trumbull County Prosecutor's Office, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio 44481, on this 27o day of April, 2007.

_____
David C. Stebbins
Counsel for Roderick Davie

5

## IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

State of Ohio,                          :

    Plaintiff,                      :  Case No. 91-cr-288

-vs-                                     :

Roderick Davie,                         :  Judge John M. Stuard

    Defendant.                      :

---

## RODERICK DAVIES REQUEST FOR LEAVE
## TO FILE HIS MOTION FOR A NEW SENTENCING HEARING

---

## EXHIBIT A

**IN THE COURT OF COMMON PLEAS**
**TRUMBULL COUNTY, OHIO**

State of Ohio,                           :

    Plaintiff,                          : Case No. 91-cr-288

-vs-                                     :

Roderick Davie,                          : Judge John M. Stuard

    Defendant.                          :

---

## MOTION FOR A NEW SENTENCING HEARING

Now comes Roderick Davie and moves this Court for a new sentencing hearing. This Court and the prosecution impermissibly collaborated in the drafting of the sentencing opinion which is prohibited under Ohio Rev. Code § 2929.05, *State v. Roberts*, 110 Ohio St. 3d 71, 1006-Ohio-3665 (2006). A Memorandum in Support is attached hereto and specifically incorporated herein.

RESPECTFULLY SUBMITTED,

DAVID C. STEBBINS (0005839)
ATTORNEY AT LAW
400 SOUTH FIFTH STREET
COLUMBUS, OH 43215
(614) 228-9058

AND

KATHLEEN A. MCGARRY
McGarry Law Offices
P.O. Box 310
Glorieta, NM 87535
(505) 470-6313
(888) 470-6313
kate@kmcgarrylaw.com

By: _Dd C Still_
David C. Stebbins

## MEMORANDUM IN SUPPORT

### I. INTRODUCTION.

Counsel for the state may not collaborate with trial judge in the drafting of a sentencing opinion in a capital case. Such impermissible collaboration is not harmless and will constitute grounds for re-sentencing. *State v. Roberts,* 110 Ohio St. 3d 71, 2006-Ohio-3665 (2006) ¶¶153-167. Donna Roberts was tried and sentenced in this Court, as was Roderick Davie.

At Donna Roberts' trial, this Court read its sentencing opinion at sentencing. Because counsel for the state was reading along with the Court, trial counsel became aware that there had been collaboration and challenged the procedure. During an in chambers discussion of the procedure, this court admitted that this impermissible collaboration was the standard procedure employed to draft sentencing opinions in other Trumbull County capital cases.[1] This court has

---

[1] "We have had this come up. Tony Consoldane always raises this issue about the Prosecutor typing stuff as if the Prosecutor is -- and it may be a legitimate point, I

2

likewise conceded that it had the same type of communications in the case of *State v. Nathaniel Jackson,* Case No. 01-CV-794.[2]

Presumably, the "system that is used here" in Donna Roberts' case and Nathaniel Jackson's case was also used in Roderick Davie's case. Here, this Court did not read its opinion in open Court but merely announced that it would be or had been filed that day. Counsel and Davie were given no indication that this procedure had occurred and thus had no reason to challenge the procedure or the opinion.

Because this Court had already drafted its sentencing opinion prior to the sentencing hearing, the Court had made up its mind and written its opinion, prior to the time the Court gave Davie any opportunity to present allocution to the Court. On appeal, Donna Roberts alleged that she had been denied her right of allocution. *State v. Roberts,* at ¶¶165-166. The Supreme Court refused to address the error because it had already found error in the drafting of the sentencing opinion.

---

don't know. *It is the system that is used here because it is the most practical.*" (emphasis supplied). *State v. Donna Roberts,* Case No. 01-cr-793, Trumbull County Court of Common Pleas, Vol. XXVIII, pages 6368-6373 (In Chambers), at 6371. (Attached as Exhibit A)

[2] "7. I had essentially the same type of communications with the Assistant Prosecuting Attorneys in Jackson as I had with the Assistant Prosecuting Attorneys in Roberts, and for the same reasons and purpose." Affidavit of Judge John M. Stuard in Opposition to Application for Disqualification, *State v. Nathaniel Jackson,* Ohio Supreme Court, Case No. 06AP102. (Attached as Exhibit B)

3

Nevertheless, it did order this Court to provide Roberts, at the time of her re-sentencing, with her right of allocution. ¶ 166.

While the record is clear in the Donna Roberts' case that defense counsel was wholly unaware of the procedure of counsel for the state drafting the court's opinion until the opinion was read in open court, it is more clear here that defense counsel had not opportunity to become aware of this procedure and that defense counsel would have had no reason to raise any objection.

Based upon this Court's statements at Donna Robert's sentencing, this Court has routinely delegated to counsel for the state the obligation of drafting the sentencing opinions in capital cases. Furthermore, this Court announced that it had completed the sentencing opinion prior to providing Davie the limited – if any – opportunity to present allocution to the Court. The right to allocution is rendered meaningless unless the sentencer actually considers the statement prior to considering the imposition of sentence.

Because this Court employed the same or similar sentencing procedures here that were found to be impermissible in *State v. Roberts, supra,* this Court also deprived Roderick Davie of his rights as guaranteed under Ohio Rev. Code §§ 2929.03, 2929.05, Ohio R. Crim. P. 32(A)(1), as well as Art. I, §§ 2, 9, 10, and 16 of the Ohio Constitution and the Fifth, Sixth, Eighth and Fourteenth Amendments.

4

## II. THIS COURT DELEGATED ITS JUDICIAL DUTIES

In *State v. Roberts*, 110 Ohio St. 3d 71, 2006 Ohio 3665 (2006) ¶¶153-167, the Court found that this Court had impermissibly delegated to counsel for the state, its judicial duty to review and reweigh the evidence and draft a sentencing opinion. ¶¶156-160. The contacts between the Court and counsel for the state constituted impermissible *ex parte* communications. ¶¶162-163.

On June 20, 2003 this Court conducted the sentencing hearing for Donna Roberts (Exhibit 1). Unbeknownst to defense counsel until the conclusion of that hearing, the prosecution and this Court had combined efforts to draft the sentencing opinion imposing a sentence of death. (*Id.* at 6336). Counsel for Ms. Roberts objected to the *ex parte* collaborative process. (*Id.* at 6366). This Court attempted to defend the prosecution's involvement by citing to the fact that it had occurred in other Trumbull County capital cases, "It is the system that is used here because it is the most practical." (Exhibit 1 at p. 6371). Since Roderick Davie also had this Court impose a sentence of death and given this Court's statement in *Roberts* that this was the system used in this Court, it is only reasonable and logical to conclude that "the system" for drafting the sentencing opinion in Ms. Roberts' case "was used here [in Davie's case] because it is the most practical".

5

## A. Delegation of Drafting Duties Violates Ohio's Statutes

Ohio has adopted a comprehensive statutory capital sentencing scheme to insure, that the death penalty is not imposed arbitrarily or disproportionately. *State v. Maurer*, 15 Ohio St. 3d 239, 246-47 (1985); *State v. Johnson*, 24 Ohio St. 3d 87, 93 (1986); *State v. Jenkins*, 15 Ohio St. 3d 164, 176 (1984); *Godfrey v. Georgia*, 446 U.S. 420, 428 (1980).

In Ohio, the sentence of death may be imposed only where after a jury finding of the same, "the *court* finds, by proof beyond a reasonable doubt . . . that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors . . . ." Ohio Rev. Code § 2929.03(D)(3) (emphasis supplied). The *court* is required to state in a separate opinion its specific findings as to the existence of any of the mitigating factors considered, as well as "the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors . . . ." Ohio Rev. Code § 2929.03(F). Similarly the *trial court* "shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstance of the offense, the history, character, and background of the offender" and other enumerated mitigating factors." Ohio Rev. Code. § 2929.03(B). The plain language of the statutes requires the trial court -- and not

6

counsel for the state -- to conduct the weighing including the identification of the aggravating factors and mitigating circumstances.

The Ohio Supreme Court has warned trial courts of the critical need to strictly follow and comply with the sentencing process set forth in § 2929.03(F): "The failure of *a trial court* to comply with this aspect of R.C. 2929.03(F) disrupts the review procedures enacted by the General Assembly by depriving the defendant and subsequent reviewing courts of the *trial courts* perceptions as to the weight accorded all relevant circumstances. *State v. Maurer*, 15 Ohio St. 3d at 247. (emphasis supplied) The Court has vacated death sentences in cases in which the trial court has considered incorrect information or applied an improper standard. *State v. Davis*, 38 Ohio St. 3d 361, 372 (1988) (consideration of facts as non-statutory aggravating circumstances); *State v. Green*, 90 Ohio St. 3d 352, 361-62 (consideration of non-statutory aggravators, and aggravators not included in the indictment, and applied an improper weighing standard, while ignoring mitigating evidence).

Based on the clear language of the statutes and its prior admonitions, the Supreme Court in *Roberts* unanimously found that the trial court's duty to weigh the evidence in a capital case as one of the "most solemn of duties that are imposed upon a judge." ¶ 160. The "sole responsibility of personally preparing the opinion" was placed on the trial court and any assistance from counsel for one of the parties

7

-- in this case the state -- tainted that proceeding. *Id.* at ¶ 159. Given the immense responsibility placed on a trial when considering whether to impose a sentence of death, the "scales of justice may not be weighed even slightly by one with an interest in the ultimate outcome." *Id.* ¶ 160

**B.    A Court's Delegation Of Its Drafting Duties Violates The Fifth, Sixth, Eighth and Fourteenth Amendments as well as Art. I §§ 2, 9, 10, and 16 of the Ohio Constitution**

Questions involving procedural due process do not address a defendant's guilt or innocence. Instead the analysis focuses upon the fair administration of justice. *Offutt v. United States*, 348 U.S. 11, 16 (1954). Due process is premised on the assumption that the judicial decisions will be based upon evidence and argument presented in open court, and not by any outside influences, whether of private talk or public support. *Patterson v. Colorado*, 205 U.S. 454, 462 (1907). The courts do not condone individuals associated with one party, having contact with the trier of fact during the deliberation process. *Agnew v. Lesbach*, 250 F.3d 1123, 1135 (7th Cir. 2001), *Caliendo v. Warden of California Men's Colony*, 365 F.3d 691, 699 (9th Cir. 2004).

Trials must not only be fair, they must appear to be fair. *Taylor v. Hayes*, 418 U.S. 488, 501 (1974). Judges must not only be fair they must appear to be fair. The courts "have always endeavored to prevent even the probability of

8

unfairness." *In re Muchison*, 349 U.S. at 136; *Withrow v. Larkin*, 421 U.S. 35, 47 (1975).

Judicial bias is not subject to a harmless error analysis. *Arizona v. Fulminate*, 499 U.S. 297, 310-311 (1991). It does not matter that a court may actually have imposed the same sentence without impermissible contact. *Bracey v. Schoenig*, 286 F.3d 406, 414 (7th Cir. 2002). It also does not it matter that the court's sentence might be found to be harmless by another court. *Id.* The error is not corrected by the fact that there exists a statutory procedure that offers a defendant an impartial adjudication on appeal. *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 61-2 (1972).

Capital punishment must either be imposed in a consistent, rational and fair manner, "or not at all." *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982). Because some discretion must be afforded a sentencing body, that discretion must be suitably directed and limited so as to minimize the risk of arbitrary and capricious action. *Zant v. Stephens*, 462 U.S. 862, 874 (1983) (citing *Furman v. Georgia*, 408 U.S. 238 (1972)).

A death sentence may not stand when it is based in part on the basis of information which he has had no opportunity to explain. *Gardner v. Florida*, 430 U.S. at 362. Clearly *ex parte* communications involve information that a defendant has no opportunity to rebut. These matters do not appear on the record and the

9

defendant is denied "a complete, full and unabridged transcript of all proceedings against him." *State, ex rel Spirko v. Judges of the Court of Appeals, Third Appellate District*, 27 Ohio St. 3d 13, 18 (1986). When a court and counsel for the state meet secretly to discuss the appropriate sentence, *ex parte* communications occur that the defendant has no opportunity to rebut.

The existence of a comprehensive and functional system of meaningful appellate review is an important safeguard in ensuring that the death penalty is not imposed arbitrarily. *See, e.g., Zant v. Stephens*, 462 U.S. 862, 875 (1985); *Parker v. Dugger*, 498 U.S. 308, 321 (1991) (granting habeas relief where Florida Supreme Court failed to undertake meaningful review of death sentence); *Clemons v. Mississippi*, 494 U.S. 738, 749 (1990); *Stringer v. Black*, 503 U.S. 222, 230 (1992) (holding that where sentencer considers an invalid factor, close appellate scrutiny of effect of that factors is required).

A trial court's failure to comply with the mandates of the Ohio Legislature as delineated in Ohio Rev. Code § 2929.03(F) while relying on ex parte communications with counsel for the State frustrates the appellate review process. "The failure of a trial court to comply with [Ohio Rev. Code §. 2929.03(F)] disrupts the review procedures enacted by the General Assembly by depriving the defendant and subsequent reviewing courts of the trial court's perceptions as to the weight accorded all relevant circumstances." *State v. Maurer*, 15 Ohio St. 3d 239,

10

247 (1984), *see also Caldwell v. Mississippi*, 472 U.S. 320, 330 (1985) ("an appellate court . . . is wholly ill-suited to evaluate the appropriateness of death in the first instance").

It is impossible for reviewing courts to determine what decisions were made by the trial court and what information was provided and what decisions were suggested by counsel for the state when it drafted the sentencing opinion. The secret "proceedings" were not recorded. It is impossible to determine if the court and prosecutor considered improper information or made improper decisions.

Because §§2929.02-2929.05, were enacted to prevent the arbitrary imposition of the death penalty, Roderick Davie has a legitimate interest in having Ohio abide by these statutory requirements. *State v. Davis*, 28 Ohio St. 3d 361, 369 (1988). Compliance with these statutes is not optional. *Id.* A death sentence imposed or maintained in violation of Ohio's death penalty statutes is a sentence that constitutes a denial of due process in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments as well as Art. I, §§ 2, 9, 10, and 16 of the Ohio Constitution. *See, Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980). The Court therein found that a defendant's federal due process rights were violated when he was denied his state statutory right to have a jury determine his punishment. Hicks' state statutory right to have a jury fix his punishment was a right that "substantially affects the punishment imposed." *Id.* at 347. *See also Romano v.*

11

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 169

*Oklahoma*, 512 U.S. 1, 12 (1994) (defendant has Due Process rights in exclusion of evidence that unfairly infects sentencing proceeding); *Ross v. Oklahoma*, 487 U.S. 81, 89 (1988) (defendant has Due Process rights in peremptory challenges provided under state law); *Evitts v. Lucey*, at 396 (defendant has Due Process rights in appellate procedure established by State); *Morrissey v. Brewer*, 408 U.S. 471, 480-490 (1972) (defendant has Due Process rights in State's exercise of discretion).

A cornerstone of Ohio's death penalty scheme is the required independent reweighing of a jury's death verdict -- *by the trial court*. This guarantees that the evidence is sufficient and that the jury's death verdict is not the product of improper factors. In light of the special significance that Ohio places on the trial court's role as an "extra or thirteenth juror", a defendant has a constitutionally protected liberty interest in the Ohio courts refraining from arbitrarily deviating from statutory guidelines in performing the weighing analysis.

## III. THIS COURT DEPRIVED RODERICK DAVIE OF HIS RIGHT OF ALLOCUTION

A defendant has a right to allocution at the hearing during which a trial court imposes sentence in a capital case. *State v. Myers*, 97 Ohio St. 3d 335, 358 (2002); *State v. Campbell*, 90 Ohio St. 3d 320, 323 (2000); *State v. Reynolds*, 80 Ohio St. 3d 670, 683 (1998). The mitigation hearing in a capital case is not a substitute for a defendant's right of allocution. *State v. Reynolds*, 80 Ohio St. 3d at 684. Here,

12

this Court decided on the sentence and adopted a sentencing opinion prior to providing Davie the right to allocution -- rendering the right to allocution meaningless. The Supreme Court instructed this Court to "provide [Donna] Roberts with her right of allocution before imposing any new sentence." *Id.* That Court would not have so instructed this Court if it had already provided Ms. Roberts with her right of allocution. The Court did not find the error harmless, despite the fact that Roberts had given a "lengthy unsworn statement" to the jury in the mitigation phase. *Id.* at ¶ 89.

Here, prior to entering sentence, the Court summarily announced: "Would counsel and the defendant please rise? Is there anything that is to be said before sentence is pronounced in this matter?" (Transcript March 20, 1992 (March 25, 1992) at 312) Upon receiving no response to this vague statement from either counsel or Roderick Davie, this Court immediately imposed sentence: "[p]ursuant to law, the Trial Court this day, March 25, 1992, having determined in a separate opinion of specific findings that as to each of Counts 1 and 2, each of the aggravating circumstances outweigh the mitigating factors by proof beyond a reasonable doubt, then made inquiry as to whether the Defendant had anything to say . . . " (*Id.* at 314) It is clear that this Court had written its sentencing opinion, that it had decided on the sentence, and that even had Davie been given a clear opportunity to speak - such an effort would have been futile since the decision was

13

already made and the opinion already written. A defendant's constitutional right to speak at his sentencing is more than just a matter of going through the motions and even that was not done here. Courts should instead wait until after the hearing to take into account "new evidence or information" that was presented at the hearing that was relevant to the appropriate sentence. *State v. Reynolds*, 80 Ohio St. 3d at 683. This Court's signing and apparent filing of the entry prior to the hearing meant that the death sentence was a final before the hearing.

## IV. Conclusion.

Trial courts are authorized to grant motions for new trials and/or sentencing hearings for any of the causes set forth in Ohio R. Crim. P. 33(A) if they "affect materially [a defendant's] substantial right." Roderick Davie's right to a fair and reliable sentencing determination as guaranteed by Ohio Rev. Code §§ 2929.03, .04, and .05, Art. I, §§ 2, 9, 10, and 16 of the Ohio Constitution, and the Fifth, Sixth, Eighth and Fourteenth Amendments were violated when this Court 1) permitted the prosecutor in an *ex parte* manner to participate in the Court's sentencing phase deliberations and 2) then denied Roderick Davie any meaningful opportunity to participate in the sentencing hearing held in open court by having already prejudged that death was the appropriate sentence.

14

RESPECTFULLY SUBMITTED

DAVID C. STEBBINS (0005839)
ATTORNEY AT LAW
400 SOUTH FIFTH STREET
COLUMBUS, OH 43215
(614) 228-9058
DAVID@DSTEBBINS.COM

AND

KATHLEEN A. MCGARRY
McGarry Law Offices
P.O. Box 310
Glorieta, NM 87535
(505) 470-6313
(888) 470-6313
kate@kmcgarrylaw.com

By: _____
David C. Stebbins

15

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **Roderick Davie's**
**MOTION FOR A NEW SENTENCING HEARING** was forwarded by first-
class, postage prepaid U.S. Mail to Dennis Watkins, Prosecuting Attorney,
Trumbull County Prosecutor's Office, 160 High Street, N.W., 4th Floor
Administration Building, Warren, Ohio 44481, on this 27th day of April, 2007.

David C. Stebbins
Counsel for Roderick Davie

16

## IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

State of Ohio,                          :

    Plaintiff,                      : Case No. 91-cr-288

-vs-                                    :

Roderick Davie,                        : Judge John M. Stuard

    Defendant.                      :

---

## EXHIBIT A

6054

```
1                IN THE COURT OF COMMON PLEAS
                     TRUMBULL COUNTY, OHIO
2               TRIAL COURT CASE NO. 01-CR-793
              SUPREME COURT OF OHIO CASE NO. 03-1441
3

4    STATE OF OHIO        )
                          )        VOLUME XXVIII
5              Plaintiff  )
                          )
6    -vs-                 )
                          )
7    DONNA M. ROBERTS     )
                          )
8              Defendant  )

9

10           BE IT REMEMBERED, that on Friday, May 23,

11   2003, Tuesday, May 27, 2003, Wednesday, May 28, 2003,

12   Tuesday, June 3, 2003, Wednesday, June 4, 2003, and

13   Friday, June 20, 2003, these proceedings came on to

14   be heard before one of the Judges of this Court,

15   John M. Stuard, in Courtroom No. 2, on High Street,

16   Warren, Ohio, before the case heretofore filed herein.

17

18
     Mary Ann Mills, RPR
19   Official Court Reporter
     Trumbull County, Ohio
20

21

22
```

6368

1          MR. JUHASZ:  The objection is

2  because the Court has already determined sentence

3  without having heard from the Defendant.  Normally

4  in sentencing proceedings, the Court hears from the

5  Defendant before making a determination of the

6  appropriate sentence.  That is the basis for the

7  objection.

8          THE COURT:  Okay.  Could I see

9  counsel?

10 (In-chambers at 2:30 p.m.)

11 (OFF THE RECORD)

12         THE COURT:  We're in-chambers in

13 conference.  Are you waiving presence of the

14 Defendant?

15         MR. INGRAM:  Yes.

16         THE COURT:  Mr. Ingram, you have

17 another question?

18         MR. INGRAM:  Based upon our exchange

19 a few moments ago in the Courtroom, it is my

20 understanding that a draft or some document

21 relating to the Court's pronouncement of sentence

22 was provided to the Prosecuting Attorney on

6369

1  Wednesday.

2              THE COURT:  I believe it was

3  Wednesday.  I asked them to type this up and get a

4  copy back, so that we would all have it when I was

5  reading through it.  You weren't given a copy of

6  it, and I apologize for that.

7              MR. INGRAM:  We should probably ask

8  that that document that was provided to the

9  Prosecuting Attorney on Wednesday also be marked

10  and sealed as part of the Court's Exhibit in this

11  matter.

12              THE COURT:  Okay.

13              MR. BAILEY:  The only thing left is

14  the final one.  All prior ones were thrown out.

15  There were six or seven of them.

16              MR. INGRAM:  There's six or seven

17  drafts?

18              MR. BAILEY:  Not six or seven

19  drafts, there's one draft and there's corrections

20  and all of the corrections with the draft were

21  pitched.

22              MR. INGRAM:  Who made the

6370

1   corrections?

2           MR. BAILEY: We made or the Court.

3   We kept finding typo's.

4           THE COURT: Whatever you have, if

5   you have something, bring it over.

6           MR. BECKER: Let me explain

7   something here. This is my understanding of what

8   we were supposed to do. We were to take that and

9   put it on the computer and print out the hard copy

10   of the sentencing order, which is what we did. As

11   Ken and I would proofread it for typographical

12   errors, it was changed and just saved on the hard

13   drive of the computer. It was never printed out

14   and kept as draft after draft after draft. I would

15   type over the hard drive, and prepare it.

16   Eventually a final copy was provided to the Court

17   and I think the Court had some typographical errors

18   and maybe some changes.

19           THE COURT: I made one phone call

20   back to you.

21           MR. BECKER: And the Court had

22   indicated some changes. I just simply changed

6371

1    that. Essentially what I did, because I typed the

2    whole thing was I was the Court's typewriter, the

3    Court's secretary.

4              THE COURT: We used that -- we don't

5    have the equipment here or the know-how to do

6    things expeditiously. That is the way we were able

7    to get the final instructions.

8              MR. BECKER: That is the way Jury

9    instructions are done. Now I think --

10             THE COURT: We have had this come

11   up. Tony Consoldane always raises this issue about

12   the Prosecutor typing stuff as if the Prosecutor

13   is -- and it may be a legitimate point, I don't

14   know. It is the system that is used here because

15   it is the most practical.

16             MR. INGRAM: Does anybody have the

17   first draft? They do not. Do you?

18             THE COURT: No. I don't have

19   anything, no.

20             MR. INGRAM: Who wrote the first

21   draft?

22             THE COURT: I gave notes saying this

6372

1  is what I want.  This, this and this, and they sent
2  it back.  I read it over, made some corrections,
3  went back from there.
4            MR. INGRAM:  The record should
5  simply reflect that in this process, Defense
6  counsel was never involved, nor consulted.  Other
7  than that, I have nothing further.
8            MR. BECKER:  I just want to address
9  something on record here.  Rule 32 states that
10  sentence shall be imposed without unnecessary
11  delay.  Sentence shall be imposed without
12  unnecessary delay.  Pending sentence, the Court may
13  commit the Defendant or continue or alter the bail.
14  At the time of imposing sentence, and it doesn't
15  necessarily say before sentence is imposed, it says
16  at the time of imposing sentence, the Court shall
17  do all of the following:  Afford counsel an
18  opportunity to speak on behalf of the Defendant and
19  address the Defendant personally and ask if he or
20  she wishes to make a statement in his or her own
21  behalf; afford the Prosecution to make an
22  opportunity to speak; afford the victims the right

6373

1  provided by law; and then notify and then after --
2  it is very specific, the rule says after imposing
3  sentence in a serious offense, the Court shall
4  advise the Defendant has the right to appeal.  I
5  think what is important is Rule 32 does not say
6  before imposing sentence, Defendant or counsel
7  should be afforded an opportunity, it says at the
8  time of imposing sentence.  We haven't had the
9  sentence.  I don't think the actual sentence has
10  been handed down.  That is an important
11  distinction.  The Court by law had to make an
12  independent weighing and circumstances.
13           THE COURT:  Well, the record is
14  clear as to what has happened.  If you have a point
15  on appeal, you have got a point on appeal.
16           MR. INGRAM:  Thank you.
17  (End of in-chamber discussion)
18  (Back in Open Court)
19           THE COURT:  Gentlemen, would you
20  have your client come forward, please?  Does the
21  Defendant wish to address anything prior to
22  sentencing?

## IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

State of Ohio,                          :

    Plaintiff,                       : Case No. 91-cr-288

    -vs-                             :

Roderick Davie,                         : Judge John M. Stuard

    Defendant.                       :

## EXHIBIT B

IN THE SUPREME COURT OF OHIO

 COPY

STATE OF OHIO,

    Plaintiff-Respondent,

vs.

NATHANIEL JACKSON,

    Defendant-Petitioner

CASE NO. 06AP102

Trumbull County Case
No. 01-CV-794

## AFFIDAVIT OF JUDGE JOHN M. STUARD IN OPPOSITION
## TO APPLICATION FOR DISQUALIFICATION

DENNIS WATKINS - 0009949
Prosecutor

LUWAYNE ANNOS - 0055651
Assistant Prosecutor

Trumbull County Prosecutor's
Office
160 High Street N.W.
4th Floor Administration Bldg.
Warren, Ohio 44481
(330) 675-2426

COUNSEL FOR STATE OF OHIO

DAVID H. BODIKER
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Counsel of Record

Office of the Ohio Public
Defender
8 East Long Street, 11th Floor
Columbus, Ohio 43215
(614) 466-5394
(614) 644-0703 - Fax

COUNSEL FOR NATHANIEL JACKSON

CHARLES L. RICHARDS - 0022128
Suite 300, The First Place
159 East Market Street
Warren, Ohio 44481-1122
(330) 373-1000
(330) 394-5291 - Fax
E-mail: 64nd@earthlink.net

COUNSEL FOR JUDGE JOHN M. STUARD

Law Office of Charles L. Richards
159 East Market Street, Warren, Ohio 44481-1122

John M. Stuard, being first duly sworn upon his oath, deposes and says:

1.     I am a Judge in the Court of Common Pleas, Trumbull County, Ohio. I have held this position since 1991. I make this affidavit of my own personal knowledge.

2.     I was the trial judge in two capital murder cases tried in the Court of Common Pleas, Trumbull County, Ohio. These cases, companions to each other, are known as State v. Donna Roberts (01-CR-793) and State v. Nathaniel Jackson (01-CR-794).

3.     In both State v. Roberts and State v. Jackson, the jury found the defendant guilty of murder and recommended that the defendant be sentenced to death. Thereafter, I sentenced both Nathaniel Jackson and Donna Roberts to death under Ohio's statutory framework for the imposition of the death penalty.

4.     In an affidavit of disqualification, filed on October 5, 2006, Mr. Jackson's legal counsel states that the thrust of Nathaniel Jackson's motion for relief from judgment and motion for recusal is that I, as the sitting trial judge, and the Trumbull County Prosecutor's Office "had improper ex parte contacts during both the trial and post-conviction proceedings". (See Affidavit of Randall Porter, ¶ 11 at p. 5).

5.     Nathaniel Jackson also argues that the record in State v. Roberts establishes that I had improper ex parte communications with the Prosecuting Attorneys in Nathaniel Jackson's case. While it is true that I had communications with the Assistant Prosecuting Attorney in Donna Roberts' case, I deny that these communications

2

Law Office of Charles L. Richards
159 East Market Street, Warren, Ohio 44481-1122

were improper. (See my response to Disciplinary Counsel's inquiry attached as Exhibit A, and my affidavit about the Donna Roberts case attached as Exhibit B).

6.    For the sake of argument on Nathaniel Jackson's motion to disqualify me as the trial judge, and only for that purpose, I accept the opinion of the Ohio Supreme Court in State v. Roberts, 110 Ohio State 3d 71. I also accept the Ohio Supreme Court's factual conclusions set forth in that opinion at ¶ 155-161, inclusive.

7.    I had essentially the same type of communications with the Assistant Prosecuting Attorneys in Jackson as I had with the Assistant Prosecuting Attorneys in Roberts, and for the same reasons and purpose. (There is no reason to have a hearing in the Jackson case to establish these facts.)

8.    It is clear from the Ohio Supreme Court's opinion in Roberts, that the Court, even after concluding that my communications with the Assistant Prosecuting Attorneys in Roberts were not harmless error and were prejudicial error (see Roberts opinion at ¶ 162, 167) did not want me to be removed from the Roberts case for the purpose of post-trial motion practice or for the purpose of re-sentencing Donna Roberts.

9.    On the contrary, the Ohio Supreme Court vacated Roberts' death sentence and remanded the case to my court expressly ordering that I remain on the case. The Court said in paragraph 167 of its opinion:

> ... the trial court shall personally review and evaluate the evidence, weigh the aggravating circumstances against

3

Law Office of Charles L. Richards
159 East Market Street, Warren, Ohio 44481-1122

any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by R.C. 2929.03. The trial court will then personally prepare an entirely new penalty opinion as required by R.C. 2929.03(F) and conduct whatever other proceedings are required by law and consistent with this opinion.

10. It is at once apparent that the Ohio Supreme Court wants me to remain in Roberts because I am the judge who the court wants to personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence and determine anew the appropriateness of the death penalty. Further, the Ohio Supreme Court has ordered me to personally prepare an entirely new penalty opinion under R.C. 2929.03(F).

11. It is noteworthy that the Roberts court did not order that a new mitigation hearing be conducted on remand. The Court has ordered me to once again consider the evidence presented at the mitigation hearing already conducted by me.

12. If, as argued by Nathaniel Jackson in his motion to disqualify me, I engaged in the same conduct determined by the Ohio Supreme Court to be prejudicial error in State v. Roberts, then, and in that event, the same result should obtain in this companion case involving Nathaniel Jackson. I should remain the trial judge in State v. Jackson, just as I was ordered to remain in State v. Roberts. The remedy in these companion cases where prejudicial error was found to have occurred is not the removal of the trial judge as the court's opinion in State v. Roberts indicates. Ms. Roberts did not get a new judge and Mr. Jackson should not get one either.

4

Law Office of Charles L. Richards
159 East Market Street, Warren, Ohio 44481-1122

End of Affidavit.

/s/ JOHN M. STUARD
JOHN M. STUARD, JUDGE

Sworn to before me and subscribed in my presence at Warren, Ohio this 21st day of November 2006.

/s/ MARY ann MILLS
NOTARY PUBLIC

5

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO
CASE NO. 91-CR-288

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| Plaintiff | ) | |
| vs. | ) | JUDGMENT ENTRY |
| RODERICK DAVIE, | ) | |
| Defendant | ) | |

This matter is before the court on defendant Roderick Davie's request for leave to file his motion for a new sentencing hearing, and motion for new sentencing hearing, and the court having reviewed the briefs filed by defendant and by the State, finds as follows.

Defendant's motion is based upon State v. Roberts, 110 Ohio St.3d 71 (2006) and State v. Nathaniel Jackson, Ohio Supreme Court Case No. 06AP102. Defendant argues that in State v. Roberts, the Ohio Supreme Court found that this trial judge engaged in inappropriate ex parte communications with the Prosecuting Attorney.

Specifically, defendant argues in brief that:

This Court should grant Roderick Davie a new penalty phase hearing because: 1) this Court abused its discretion when it involved the prosecution in the drafting process, Crim. R. 33(A)(1); the prosecution's involvement in the drafting of the opinion was misconduct, Crim. R. 33(A)(2), constituting an error of law, Crim. R. 33(A)(4); and Roderick Davie's motion is premised upon newly discovery evidence, Crim. R. 33(A)(6).

This court engaged in no inappropriate ex parte communications in either the Roberts or Jackson case. Regrettably, the Ohio

EXHIBIT
5

Supreme Court opinion in <u>Roberts</u> is based upon a trial court record which is absent critical facts about the prosecutor's involvement in the preparation of the sentencing memorandum.  If the Ohio Supreme Court had before it all of the facts, the court would have authored a much different opinion.

In any event, defendant's arguments, as based on <u>Roberts</u> and <u>Jackson</u>, are inapposite in this case because, in this case, the prosecutor played no role whatsoever in drafting the opinion of the court filed of record on March 25, 1992.  That opinion was drafted by this trial judge in its entirety, as were any other pleadings relating to Mr. Davies' sentence.

This court further finds that the Ohio Criminal Rules make no provision for a "motion for new sentencing hearing".  Even if this court were to conclude that applicable procedural rules allow defendant's "motion for new sentencing hearing" the same is clearly time barred under Ohio law.

Based on the foregoing, defendant's motion for leave to file motion for a new sentencing hearing and motion for new sentencing hearing are hereby overruled.

6/1/07
DATE

JOHN J. STUARD, JUDGE

TO THE CLERK OF COURTS: YOU ARE ORDERED TO SERVE COPIES OF THIS JUDGMENT ON ALL COUNSEL OF RECORD OR UPON THE PARTIES WHO ARE UNREPRESENTED FORTH- WITH BY ORDINARY MAIL.
JUDGE

2

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO
CASE NO. 01-CR-794

STATE OF OHIO,                    )

        PLAINTIFF        )

vs.                               )        JUDGMENT ENTRY

NATHANIEL JACKSON,                )

        DEFENDANT        )


        This matter is before the Court on several motions filed
by Defendant, Nathaniel Jackson. Upon consideration of the
motions and the briefs of counsel, this Court rules upon such
motions as follows:

        Defendant's motion for leave to file a motion for a new
sentencing hearing is granted. Defendant shall file such a
motion within fourteen (14) days of the entry of this
judgment, the motion for leave attached to Defendant's
pleading as Exhibit A is deemed by this Court an exhibit only.
The Court will then decide the motion for leave on its merits.
In making this ruling, this Court recognizes that the criminal
rules, applied strictly, do not contemplate a motion for a new
sentencing hearing.


**EXHIBIT A**

**EXHIBIT**
6

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 191

**IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO**

STATE OF OHIO,                     )       CASE No. 01-CR-794
                Plaintiff,          )
                                    )      Judge John M. Stuard
-vs-                                )
                                    )
NATHANIEL JACKSON,                  )
                Defendant           )

---

**STATE'S MOTION FOR ADDITIONAL TIME
TO FILE RESPONSE TO DEFENDANT'S MOTION FOR
NEW TRIAL AND/OR SENTENCING HEARING**

---

Now comes the State of Ohio, by and through undersigned counsel, and moves this Court

for additional time (30 days) to file its response to Nathaniel Jackson's Motion for a New Trial

and/or Sentencing Hearing. The State's response is due March 10, 2008, and undersigned

counsel needs additional time because of her current workload.

For cause, undersigned counsel is presently researching and writing the State's merit

brief in *State v. Jermaine McKinney,* 11th Dist. Court of Appeals No. 2007-T-0004, which is

due March 20, 2008. The brief is lengthy and the record contains 20 volumes of transcripts. In

addition to the *McKinney* brief, undersigned counsel is opposing jurisdiction in the Ohio

Supreme Court in *State v. Allan Jackson* (2008-0323) and *State v. Roderick Davie* (2008-0321)

by way of memorandum which are due March 12, 2008.

This extension is not sought for purposes of delay, nor will Defendant suffer any

prejudice as a result of the extension. Therefore, the State respectfully requests this Court set the

due date for the State's above-described response at April 10, 2008.

VOL **1166** PAGE **981**

ORIGINAL



Respectfully submitted by:
DENNIS WATKINS (#0009949)
Prosecuting Attorney

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. 4th Floor
Warren, Ohio    44481

Telephone:(330) 675-2426
Fax (330) 675-2431

COUNSEL FOR PLAINTIFF
THE STATE OF OHIO

## PROOF OF SERVICE

I do hereby certify that a copy of the foregoing Motion by was sent by ordinary mail to
Atty. John P. Parker (0041243), 988 E. 185 Street, Cleveland, Ohio 44119, and Atty. Randall
Porter (0005835), Office of the Ohio Public Defender, 8 East Long St., 11th Floor, Columbus,
Ohio 43215, on this 5th Day of March, 2008.

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney

IT IS SO ORDERED.

JUDGE JOHN M STUARD

2008 MAR 17  AH 9: 54
CLERK OF COURTS
TRUMBULL COUNTY

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 193

∠C

# IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )
                                        )
    Plaintiff-Respondent,               )        Trial Court No. 01-CR-794
                                        )
    -vs-                                )        Court of Appeals No.
                                        )        08 -TR-
NATHANIEL JACKSON,                      )
                                        )                    **FILED**
    Defendant-Petitioner.               )                    **COURT OF APPEALS**
                                                 24          MAR 1 4 2008

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

## NATHANIEL JACKSON'S NOTICE OF APPEAL TO THE ELEVENTH DISTRICT COURT OF APPEALS FROM A FINAL JUDGMENT ENTRY

Notice is hereby given that Nathaniel Jackson appeals to the Eleventh District

Court of Appeals from the trial court Judgement Entry dated February 15, 2008 denying

Nathaniel Jackson's Motion for Relief from Judgment.

Respectfully submitted,

Office of the Ohio Public Defender

RANDALL L. PORTER – 0005835
Assistant State Public Defender
Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, Ohio 43215
Telephone: (614) 466-5394
Facsimile: (614) 644-0708
randall.porter@opd.ohio.gov

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. N.W., 4th Floor
Warren, Ohio 44481
Telephone: (330) 675-2426
Facsimile: (330) 675-2431

COUNSEL FOR THE STATE OF OHIO          COUNSEL FOR NATHANIEL JACKSON

357

_____ Check here is court-appointed and attach copy of appointment and Affidavit of Indigency.

__X__ Check here is any co-counsel for Appellant and attach separate sheet indicating name, address and telephone number.

---

### TRANSCRIPT INFORMATION-App. R. 9(B)

---

_____ I have ordered a complete transcript from the court reporter as evidenced by the completion of the Court Reporter Acknowledgment below.

_____ I have ordered a partial transcript from the court reporter as evidenced by the completion of the Court Reporter Acknowledgment below.

_____ A statement pursuant to App. R. 9(C) or (D) is to be prepared in lieu of transcript.

_____ Video tapes to be filed. (See App. R. 9[A] or [B].)

_____ No transcript or statement pursuant to either App. R. 9(C) or (D) is necessary.

__X__ Transcript has been completed and already made part of the record. This is a post-conviction case. The trial court did not conduct an evidentiary hearing. The transcript was prepared for the direct appeal.

Date: March 13, 2008

OFFICE OF THE OHIO PUBLIC DEFENDER

RANDALL L. PORTER (0005835
Assistant State Public Defender
Office of the Ohio Public Defender
8 East Long Street, 11th Floor
Columbus, Ohio 43215
Telephone: (614) 466-5394
Facsimile: 614-644-0708
randall.porter@opd.ohio.gov

COUNSEL FOR NATHANIEL JACKSON

2

## DESIGNATION OF CO-COUNSEL

JOHN P. PARKER – 0041243
988 East 185 Street
Cleveland, Ohio 44119
1-216-881-0900 (Voice)
1-216-881-3928 (Facsimile)
johnpparker@earthlink.net
Pro Bono Counsel

3

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Notice Of Appeal To The Eleventh District Court Of Appeals From A Final Judgment Entry* was forwarded first-class U.S. Mail to LuWayne Annos, Assistant Prosecuting Attorney, Trumbull County Prosecutor's Office, 160 High St., N.W., 4th Floor, Warren, Ohio 44481, this 13th day of March, 2008.

RANDALL L. PORTER
COUNSEL NATHANIEL JACKSON

4

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO
CASE NO. 01-CR-794

STATE OF OHIO,                    )

         PLAINTIFF        )

vs.                               )        JUDGMENT ENTRY

NATHANIEL JACKSON,                )

         DEFENDANT        )


      This matter is before the Court on several motions filed by Defendant, Nathaniel Jackson. Upon consideration of the motions and the briefs of counsel, this Court rules upon such motions as follows:

      Defendant's motion for leave to file a motion for a new sentencing hearing is granted. Defendant shall file such a motion within fourteen (14) days of the entry of this judgment, the motion for leave attached to Defendant's pleading as Exhibit A is deemed by this Court an exhibit only. The Court will then decide the motion for leave on its merits. In making this ruling, this Court recognizes that the criminal rules, applied strictly, do not contemplate a motion for a new sentencing hearing.


**EXHIBIT A**

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 198

Defendant's motion to vacate this Court's findings of fact and conclusions of law and Defendant's motion for relief from judgment, filed under Civ.R. 60(B)(5), on or about September 1, 2006, are hereby denied. Ohio law permits the prosecution to draft findings of fact and conclusions of law dismissing a post-conviction petition even in death cases. See State v. Lorraine (February 23, 1996), 95 T 5196 (unreported).

Finally, Defendant's motion for a status conference is granted. This Court's assignment officer is hereby ordered to schedule such a status conference at the convenience of the Court and counsel.

IT IS SO ORDERED.

_____
2/15/08
DATE

_____
JUDGE JOHN M. STUARD

TO THE CLERK OF COURTS: YOU ARE ORDERED TO SERVE COPIES OF THIS JUDGMENT ON ALL COUNSEL OF RECORD OR UPON THE PARTIES WHO ARE UNREPRESENTED FORTH WITH BY ORDINARY MAIL.

JUDGE

ELEVENTH DISTRICT COURT OF APPEALS
DOCKETING STATEMENT
(To be attached to and filed with Notice of Appeal)

State of Ohio                                    Name of Trial Court __Trumbull County__

Plaintiff-Respondent

                                                 Trial Court Case No. __01-CR-794__
vs.

Nathaniel Jackson

                                                 Court of Appeals Case No. _____
Defendant-Petitioner

## REGULAR CALENDAR

__X__   Case should be assigned to the Regular Calendar with full briefing.

## ACCELERATED CALENDAR - (Check if this applies)

____   I have read Loc.App.R. 11. This appeal meets those requirements, and I request that it be
       briefed and decided on the Accelerated Calendar.

## EXPEDITED APPEAL

____   This case should be heard as an expedited appeal as defined under App.R. 11.2 because: (State
provision of App.R. 11.2 or applicable statute): _____
_____

## ORAL ARGUMENT

____   To expedite oral argument, I am willing to travel to whichever adjoining county in which the
       Eleventh District has the first available date.
__X__  I want oral argument in this appeal set in the county in which the appeal originates.

## CASE TYPE

____**A. Criminal.**

Specify nature of offense(s) (e.g., assault, burglary, rape): _____
_____
(1) Is the defendant presently in jail? _____ Yes _____ No. If the answer is "Yes," give date of
incarceration _____. When is he/she due to be released (if you know)? _____
(2) Has a stay been filed in the trial court? _____ Yes _____ No. If granted, what are the terms ?
_____
(3) Does the judgment entry comply with Crim.R. 32(C) by including the plea, verdict or findings, and
a sentence? _____ Yes _____ No. If the answer is "No," this is not a final appealable order.

__X_ **B. Post-Conviction Relief.** Date of conviction: __12/9/02__

____**C. Civil**

Specify cause(s) of action: _____

____**D. App.R. 11.2 (Abortion, Adoption, or Termination of Parental Rights Appeal).**

**PROBABLE ISSUE FOR REVIEW**:   Prosecutor's  ex parte drafting of findings of facts, conclusions of law for the trial court without providing notice to the post-conviction petitioner.

**THE FOLLOWING QUESTIONS APPLY TO ALL CIVIL AND ADMINISTRATIVE APPEALS**

1. **FINAL APPEALABLE ORDER**

   (a) Has the trial court disposed of all claims by and against all parties?
   _____ Yes **(Attach copies of all judgments and orders indicating that all claims against all parties have been concluded.)**
   _X_ No - Petitioner's motion for a new trial and/or sentence remains pending in the trial court

   (b) If the answer to (a) is "No," has the trial court made an express determination that there is "no just reason for delay," pursuant to Civ.R. 54(B), with respect to the judgment or order from which the appeal is taken?
   _____ Yes (Attach a copy of that order.)
   _X_ No

   (c) Is the judgment or order subject to immediate appeal under R.C. 2505.02?  If so, set forth the specific provision(s) that authorize this appeal: ___2953.23(B)___

   (d) Does the right to an immediate appeal arise from a provision of a statute other than R.C. 2505.02?  If so, identify the statute: _____

2. **MEDIATION**

   (a) Would a pre-hearing conference or mediation assist in the resolution of this matter?
   _____ Yes    _X_ No    _____ Maybe
   Please explain (optional) _____
   _____

CERTIFICATE OF SERVICE:  I certify that I have mailed or otherwise delivered a copy of this Docketing Statement to all counsel of record, or to the parties if unrepresented.  The following is a listing of the name, address and telephone number of all counsel and the parties they represent and any parties not represented by counsel:  (attach extra sheet if necessary)

DATE: _3/13/08_

Revised 5/10/07

SIGNATURE _Randall L. Porter_

ELEVENTH DISTRICT COURT OF APPEALS
DOCKETING STATEMENT
(To be attached to and filed with Notice of Appeal)

State of Ohio                               Name of Trial Court __Trumbull County__

_____
Plaintiff-Respondent

                                            Trial Court Case No. __01-CR-794__
vs.

Nathaniel Jackson
_____
Defendant-Petitioner                        Court of Appeals Case No. _____

## REGULAR CALENDAR

**F I L E D**
**COURT OF APPEALS**

__X__   Case should be assigned to the Regular Calendar with full briefing.

MAR 1 4 2008

## ACCELERATED CALENDAR  - (Check if this applies)

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

____   I have read Loc.App.R. 11. This appeal meets those requirements, and I request that it be
briefed and decided on the Accelerated Calendar.

## EXPEDITED APPEAL

____   This case should be heard as an expedited appeal as defined under App.R. 11.2 because (State
provision of App.R. 11.2 or applicable statute): _____

## ORAL ARGUMENT

____   To expedite oral argument, I am willing to travel to whichever adjoining county in which the
Eleventh District has the first available date.
__X__   I want oral argument in this appeal set in the county in which the appeal originates.

## CASE TYPE

____**A. Criminal.**

Specify nature of offense(s) (e.g., assault, burglary, rape): _____

_____
(1) Is the defendant presently in jail? _____ Yes _____ No. If the answer is "Yes," give date of
incarceration _____. When is he/she due to be released (if you know)? _____
(2) Has a stay been filed in the trial court? _____ Yes _____ No. If granted, what are the terms ?

_____
(3) Does the judgment entry comply with Crim.R. 32(C) by including the plea, verdict or findings, and
a sentence? _____ Yes _____ No. If the answer is "No," this is not a final appealable order.

__X__ **B. Post-Conviction Relief.** Date of conviction: __12/9/02_____

____**C. Civil**

Specify cause(s) of action: _____

____**D. App.R. 11.2 (Abortion, Adoption, or Termination of Parental Rights Appeal).**

**PROBABLE ISSUE FOR REVIEW**: __Prosecutor's ex parte drafting of findings of facts, conclusions of law for the trial court without providing notice to the post-conviction petitioner.__

**THE FOLLOWING QUESTIONS APPLY TO ALL CIVIL AND ADMINISTRATIVE APPEALS**

1. **FINAL APPEALABLE ORDER**

    (a) Has the trial court disposed of all claims by and against all parties?
    _____ Yes **(Attach copies of all judgments and orders indicating that all claims against all parties have been concluded.)**
    _X_ No - Petitioner's motion for a new trial and/or sentence remains pending in the trial court

    (b) If the answer to (a) is "No," has the trial court made an express determination that there is "no just reason for delay," pursuant to Civ.R. 54(B), with respect to the judgment or order from which the appeal is taken?
    _____ Yes (Attach a copy of that order.)
    _X_ No

    (c) Is the judgment or order subject to immediate appeal under R.C. 2505.02? If so, set forth the specific provision(s) that authorize this appeal: ___2953.23(B)___

    (d) Does the right to an immediate appeal arise from a provision of a statute other than R.C. 2505.02? If so, identify the statute: _____

2. **MEDIATION**

    (a) Would a pre-hearing conference or mediation assist in the resolution of this matter?
    _____ Yes     _X_ No     _____ Maybe
    Please explain (optional) _____

CERTIFICATE OF SERVICE: I certify that I have mailed or otherwise delivered a copy of this Docketing Statement to all counsel of record, or to the parties if unrepresented. The following is a listing of the name, address and telephone number of all counsel and the parties they represent and any parties not represented by counsel: (attach extra sheet if necessary)

DATE: 3/13/08

SIGNATURE _____
Randall L. Porter

Revised 5/10/07

**IN THE COURT OF COMMON PLEAS**
**TRUMBULL COUNTY, OHIO**

STATE OF OHIO,                              )
                                           )
    Plaintiff-Respondent,                  )    Case No. 01-CR-794
                                           )
    -vs-                                   )    Judge John Stuard
                                           )
NATHANIEL JACKSON                          )
                                           )
    Defendant-Petitioner.                  )

**F I L E D**
**COURT OF APPEALS**

MAR 1 4 2008

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, **CLERK**

**AFFIDAVIT OF INDIGENCY**

I, Nathaniel Jackson do solemnly swear that I presently, this 1⟨th day of March,

2008, have no means of financial support and no assets of any value and, therefore, cannot afford

to pay for any legal services, fees, or costs on my behalf in the above-styled case; that I am

presently incarcerated at the Ohio State Correctional Facility; and that I have $ 11 00

income per month.

Nathaniel Jackson
NATHANIEL JACKSON
#440-891
Ohio State Penitentiary
878 Coitsville-Hubbard Road
Youngstown, Ohio 44505

Sworn and subscribed in my presence this 11 th day of March 2008.

Scott Nowak
NOTARY PUBLIC

expires: March 27, 2010

## FINANCIAL DISCLOSURE/AFFIDAVIT OF INDIGENCY
($25.00 application fee may be assessed—see notice on reverse side)

### I. PERSONAL INFORMATION

| Name/Applicant<br>Nathaniel Jackson | Party Represented (if applicant, enter "same")<br>Same | | D.O.B. |
|---|---|---|---|
| Mailing Address<br>Ohio State Penitentiary, 878 Coitsville-Hubbard Rd. | City<br>Youngstown | State<br>OH | ZIP<br>44505 |
| Case No.<br>Trumbull C.P. No. 2001 CR 794 | Phone<br>(    )   None | | Message Phone (within 48 hours)<br>(    ) None |

### II. OTHER PERSONS LIVING IN HOUSEHOLD

| Name<br>1)None | D.O.B | Relationship | Name<br>3) | D.O.B | Relationship |
|---|---|---|---|---|---|
| 2) | | | 4) | | |

### III. MONTHLY INCOME/EMPLOYMENT INFORMATION

| Type of Income | Applicant | Spouse (or Parents if applicant is a juvenile) | Other Household Members | Total |
|---|---|---|---|---|
| Employment (Gross) | 16.00 | | | |
| Unemployment | None | | | |
| Worker's Comp. | None | | **FILED** | |
| Pension/Social Security | None | | COURT OF APPEALS | |
| Child Support | None | | MAR 1 4 2008 | |
| Works First/TANF | None | | | |
| Disability | None | | TRUMBULL COUNTY, OH | |
| Other | None | | KAREN INFANTE ALLEN, CLERK | |

| Employer's Name (for all household members) | A. TOTAL INCOME | $ 16.00 |
|---|---|---|
| Employer's Address Ohio State Penitentiary, 878 Coitsville-Hubbard Rd., Youngstown, OH | Phone<br>(    ) | |

### IV. ALLOWABLE EXPENSES / V. TOTAL INCOME

| Type of Expense | Amount | V. TOTAL INCOME |
|---|---|---|
| Child Support Paid Out | None | |
| Child Care (if working only) | None | Total Income -- Allowable Expenses = Adjusted Total Income |
| Transportation for Work | None | |
| Insurance | None | **A. TOTAL INCOME** $16.00 |
| Medical/Dental | None | - **B. EXPENSES** $00.00 |
| Medical & Associated Costs Of Caring for Infirm Family Members | None | **C. ADJUSTED TOTAL INCOME** = $16.00 |
| **B. EXPENSES** | $00.00 | |

### VI. ASSET INFORMATION

| Type of Asset | Describe / Length of Ownership / Make, Model, Year (where applicable) | | | Estimated Value |
|---|---|---|---|---|
| Real Estate / Home | Price:$ | Date Purchased: | Amt. Owed:$ | |
| Stocks / Bonds / CD's | None | | | |
| Automobiles | None | | | |
| Trucks / Boats / Motorcycles | None | | | |
| Other Valuable Property | None | | | |
| Cash on Hand | None | | | |
| Money Owed to Applicant | None | | | |
| Other | None | | | |
| Checking Acct. (Bank / Acct. #) | None | | | |
| Savings/MM Acct. (Bank / Acct. #) | None | | | |

| | | **D. TOTAL ASSETS** | $00.00 |

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 205

| VII. MONTHLY LIABILITIES/OTHER EXPENSES | | VIII. GRAND TOTALS | |
|---|---|---|---|
| Type of Liability | Amount | | |
| Rent / Mortgage | None | | |
| Food | None | **C. ADJ. TOTAL INCOME** | 16.00 |
| Electric | None | | |
| Gas | None | **D. TOTAL ASSETS** | 00.00 |
| Fuel | None | | |
| Telephone | None | **E. LIABILITIES & OTHER** | 9.00 |
| Cable | None | | |
| Water / Sewer / Trash | None | **$25.00 APPLICATION FEE NOTICE** | |
| Credit Cards | None | By submitting this Financial Disclosure Form/Affidavit of Indigency Form, you will be assessed a non-refundable $25.00 application fee unless waived or reduced by the court. If assessed, the fee is to be paid to the clerk of courts within seven (7) days of submitting this form to the court, the public defender, your appointed counsel or any other party who will make a determination regarding your indigency. | |
| Loans | None | | |
| Taxes Owed | None | | |
| Other | 9.00 | | |
| **E. LIABILITIES & OTHER EXPENSE** | 9.00 | | |

### IX. AFFIDAVIT OF INDIGENCY

I, Nathaniel Jackson (affiant) being duly sworn, say:

1. I am financially unable to retain private counsel without substantial hardship to me or my family.

2. I understand that I must inform the public defender or appointed attorney if my financial situation should change before the disposition of the case(s) for which representation is being provided.

3. I understand that if it is determined by the county, or by the Court, that legal representation should not have been provided, I may be required to reimburse the county for the costs of representation provided. Any action filed by the county to collect legal fees hereunder must be brought within two years form the last date legal representation was provided.

4. I understand that I am subject to criminal charges for providing false financial information in connection with the above application for legal representation pursuant to Ohio Revised Code Sections 120.05 and 2921.13.

5. I hereby certify that the information I have provided on this financial disclosure form is true to the best of my knowledge.

Nathaniel Jackson    3-13-2008<br>Affiant's Signature    Date

**Notary Public/Individual duly authorized to administer oath:**
Subscribed and duly sworn before me according to law, by the above named applicant this 13th day of March, 2008, at Youngstown, County of Mahoning and State of Ohio.

Scott Nowak    Case Manager
Signature of person administering oath    Title    Expires: March 27, 2010

### X. JUDGE CERTIFICATION

I hereby certify that above-noted applicant is unable to fill out and/or sign this financial disclosure/affidavit for the following reason: _____.

I have determined that the applicant meets the criteria for receiving court appointed counsel.

_____    _____
Judge's Signature    Date

OPD-206R rev. 9/2005

## IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,                          )
                                        )
    Plaintiff-Respondent,               )        Trial Court No. 01-CR-794
                                        )
    -vs-                                )        Court of Appeals No.
                                        )
NATHANIEL JACKSON,                      )
                                        )        **FILED**
    Defendant-Petitioner.               )        COURT OF APPEALS

MAR 1 4 2008

**PRAECIPE**                            TRUMBULL COUNTY, OH
                                        KAREN INFANTE ALLEN, CLERK

---

        This is to direct the Clerk of the Trumbull County Common Pleas Court to prepare a record of the original papers and exhibits filed in the trial court, a copy of any post-conviction proceedings before the court, a copy of any Rule 60 (Motion for Relief from Judgment) proceedings, a certified copy of the docket and all journal entries, and a certified copy of the trial transcript, including exhibits, in the above-captioned case, pursuant to Appellate Rule 9, along with the affidavit of indigency and all documents necessary under the Local Appellate Rules. These documents are to be forwarded to the Eleventh District Court of Appeals, Trumbull County, Ohio.

                          Respectfully submitted,

                          JOHN P. PARKER – 0041243
                          988 East 185 Street
                          Cleveland, Ohio 44119
                          1-216-881-0900 (Voice)
                          1-216-881-3928 (Facsimile)
                          johnpparker@earthlink.net
                          Pro Bono Counsel

And

OFFICE OF THE
OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender

Office of the Ohio Public Defender
8 East Long Street -11th Floor
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0703 (Facsimile)
PorterR@OPD.state.OH.US

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Praecipe* was sent by regular U.S.

Mail to LuWayne Annos, Assistant Trumbull County Prosecuting Attorney, 160 High Street,

N.W. 4th Floor Administration Building, Warren, Ohio 44481 on this 13th day of March, 2008.

RANDALL L. PORTER
COUNSEL FOR NATHANIEL JACKSON

2

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

STATE OF OHIO,          )    CASE No. 01-CR-794
     Plaintiff,      )
                 )    Judge John M. Stuard
-vs-             )
                 )
NATHANIEL JACKSON,   )
     Defendant     )

---

### STATE'S MEMORANDUM IN OPPOSITION
### TO DEFENDANT'S MOTION FOR
### NEW TRIAL AND/OR SENTENCING HEARING

---

Pursuant to leave granted by this Court, Defendant Nathaniel Jackson ("Defendant") has

moved this Court for a New Trial and/or Sentencing hearing. For the reasons stated herein, the

Plaintiff State of Ohio ("State") argues Defendant is not entitled to either a new trial or a new

sentencing hearing and this Court should deny Defendant's motion without hearing.

#### Crim.R. 33(A) Makes No Provision for a Motion for New Sentencing

Defendant's one-paragraph, introductory motion references Crim. R. 33 (motion for new

trial), though he gives absolutely no analysis in the Memorandum portion of his motion as to

how the rule applies to his case. Defendant's belief that "[t]rial courts can grant motions for new

... sentencing hearings for any reasons set forth in Ohio R. Crim. P. 33(A)" is not a product of

the Ohio Criminal Rules. (Defendant's Motion for New Trial and/or New Sentencing Hearing,

p. 15) Rather, it is a non-existent remedy Defendant attempts to use as a collateral attack on his

sentence. For the reasons below, this Court should deny Defendant's *Motion for New Trial*

*and/or New Sentencing Hearing*.



ORI....JAL



359

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 209

The Eleventh District Court of Appeals has recently and unequivocally ruled that "there is *no provision* in the Ohio Criminal Rules that provides for a new sentencing hearing." *State v. Davie*, 11th Dist. No. 2007-T-0069, 2007-Ohio-6940, ¶8.[1] (Emphasis added). Roderick Davie is another capital defendant sentenced to death by this Court. Just as Defendant attempts here, Davie sought to force a re-sentencing hearing based on the Ohio Supreme Court's decision in *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665. This Court overruled Davie's identical motion for leave to file a motion for a new sentencing hearing. Like Defendant, Davie sought to use Crim. R. 33 to obtain a new sentencing hearing. The Eleventh District Court affirmed this Court's decision in *Davie* stating that Crim. R. 33 is *not* the appropriate vehicle for a new sentencing hearing. "[A]s the trial court so aptly noted, there is no provision in the Ohio Criminal Rules that provides for a new sentencing hearing. Crim.R. 33, upon which Mr. Davie relies, only applies to motions for a new trial. A 'motion for a new sentencing hearing' is an anomaly and does not fall within the purview of Crim.R. 33. Therefore, Mr. Davie's reliance on Crim.R. 33 is misplaced." *Davie,* supra, at ¶8.

Unlike Davie, this Court has granted Defendant leave to file a motion for re-sentencing. Defendant has done so, even in light of the *Davie* decision, and continues to intermittently reference Crim. R. 33 as authority for such a hearing. For this Court to grant that motion and to schedule a hearing is to run afoul of the clear and unambiguous holding of the Eleventh District on this very topic.

Even if a Motion for New Sentencing under Crim.R. 33 was proper, Defendant's motion is otherwise procedurally deficient. Crim.R. 33(A) lists six potential grounds for new trial, *none* of which are articulated in Defendant's motion. Because Defendant does not list with specificity

---

[1] Davie is seeking a discretionary review with the Ohio Supreme Court in Case No. 2008-0321. The State has filed a memorandum in opposition to review.

- 2 -

the Crim. R. 33 grounds which apply to him, this Court should assume none of the grounds are applicable. In the alternative, the State would refer the Court to its Response to Defendant's Request for Leave to File a "Motion for New Sentencing Hearing," filed with this Court Aug. 25, 2006, for any legal analysis of Crim R. 33(A)(1)-(6). For the sake of judicial economy, the State adopts and incorporates those arguments here.

In addition to failing to articulate a single ground for a "new trial," Defendant in his Motion for Leave, admitted that his filing is well beyond the 120-day deadline mandated by Crim.R. 33(B), and that he must prove by clear and convincing evidence that he was "unavoidably prevented" from discovering said evidence.

While it is true that the Roberts *decision* was not rendered until August 2, 2006, Defendant admits in his Motion for Leave that he would have had access to the *evidence* in question when co-defendant Roberts filed her transcript on January 30, 2004. Defendant Jackson offers absolutely no explanation as to why he was "unavoidably prevented" from obtaining "new evidence" readily available in the Roberts transcript for 18 months, and certainly known to Defendant Jackson when he filed his Application to Reopen with the Ohio Supreme Court on April 4, 2006.

In *State v. Griffith*, 11th Dist. No. 2005-T-0038, 2006-Ohio-2935, the Eleventh District stated that while Crim.R. 33 does not place any time restrictions on when a motion for a new trial may be filed after avoidable prevention is determined, "[a] trial court may require a defendant to file his motion for leave to file within a reasonable time after he discovers the evidence." *Griffith* at ¶16 (emphasis added). In *Griffith*, the appellant also waited 18 months between the discovery of his new evidence and his filing of the Crim.R. 33 motion. The Eleventh District found this time frame unreasonable and affirmed the trial court's denial of his motion.

- 3 -

The Eleventh District has also noted that an unreasonable delay between the discovery of new evidence and the motion for new trial impedes the administration of justice. "Allowing the defendant to file a motion for leave for a motion for a new trial at any time would frustrate the overall objective of the criminal rules in providing the speedy and sure administration of justice, simplicity in procedure and elimination of unjustifiable delay. In addition, without some standard of reasonableness, 'a defendant could wait before filing his motion in the hope that witnesses would be unavailable or no longer remember the events clearly, if at all, or that evidence might disappear.' " *State v. Schrock*, 11th Dist. No. 2004-L-056, 2005-Ohio-4040 at ¶10, quoting *State v. Barnes* (Dec. 30, 1999), 12th Dist. No. CA99-06-057, 1999 Ohio App. LEXIS 6421, 8. Like *Griffith*, the State submits Defendant's 18-month delay between the filing of the Roberts transcript and the filing of the "Motion for New Sentence" is unreasonable and should likewise be denied.

Furthermore, Defendant's motion should not be treated as a Crim.R. 33 motion for a new trial, it should be treated as a petition for postconviction relief. "[w]here a criminal defendant, subsequent to his or her direct appeal, files a motion seeking vacation or correction of his or her sentence on the basis that his or her constitutional rights have been violated, such a motion is a petition for postconviction relief as defined in R.C. 2953.21." *State v. Reynolds,* 79 Ohio St.3d 158, 160, 1997-Ohio-304. In *Davie*, supra, the Eleventh District Court ruled that since Davie was arguing an irregularity in his sentencing, "his motion must be construed as a petition for postconviction relief." *Davie*, supra, at ¶9. The Eleventh District Court has also found that "a criminal defendant who files a motion to vacate or correct his or her sentence on the ground that his or her constitutional rights have been violated necessarily embraces the postconviction relief

- 4 -

statutes." Id. citing *State v. Foti,* 11th Dist. No.2006-L-138, 2007-Ohio-887, at ¶ 12-13, citing, *Reynolds,* supra at syllabus.

The Eleventh District Court is not alone in this line of reasoning. The Sixth District Court of Appeals has also decided that a "Motion to Vacate Sentencing Order and Motion for a New Sentence" should be construed as a petition for postconviction relief because it claimed a violation of a Constitutional right. See *State v. Green*, 6th Dist. No. S-03-045, 2004-Ohio-3456, ¶5-7. Likewise, the Tenth District Court has ruled that a "Motion to Vacate and Reconstruct Sentence Pursuant to *Blakely v. Washington*" is properly construed as a petition for postconviction relief. *State v. Martin*, 10th Dist. No. 06AP-797, 2007-Ohio-1843, ¶5.

In the alternative, Defendant turns to Civ.R. 60(B) to provide the vehicle by which his claim should be analyzed. In the same entry granting Defendant leave to file his motion for new sentencing, this Court denied his separately filed Civ. R. 60(B) motion. This portion of the Court's decision is on appeal to the Eleventh District Court of Appeals under Case No. 2008-T-0024. Nevertheless, this reliance is also misplaced. The Ohio Supreme Court, in affirming a decision of the Eleventh District Court of Appeals, has recently decided that "Crim.R. 35, which sets forth the procedure by which criminal defendants can file petitions for postconviction relief, was available to [Defendant] and serves the same purpose as the Civ.R. 60(B) motion he filed." *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, ¶11. Since the Civ.R. 60(B) motion did "not exist 'independently' from a petition for postconviction relief pursuant to Crim.R. 35 and R.C. 2953.21," the Court held that the trial court "did not err when it considered [Defendant's] Civ.R. 60(B) motion as if it were a petition for postconviction relief." *Id.* at ¶13-14. Thus, even if viewed as a Civ.R. 60(B) motion, Defendant's motion should still be categorized and interpreted as a petition for postconviction relief.

- 5 -

Even if Defendant's motion were to be construed as a petition for postconviction relief, it would still be procedurally barred as untimely. Ohio Revised Code §2953.21(A)(2) allows only one hundred eighty days (180) after the date on which the trial transcript is filed in the supreme court to file a petition for postconviction relief. Defendant has waited almost four (4) years after his conviction became final with the denial of certiorari by the United States Supreme Court. Further, this would be Defendant's second petition for postconviction relief, and R.C. 2953.23(A)(1)(a) & (b) disfavors successive petitions for postconviction relief, unless certain narrow exceptions apply. In short, the criminal defendant must demonstrate that (1) petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief *or* that the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and (2) that the petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence. A subsequent decision in another criminal case is *not* one of those exceptions.

Even if the *Roberts* case constitutes a "fact" which went undiscovered for timely filing, Defendant cannot demonstrate, pursuant to R.C. 2953.23(A)(1)(b) that there was a constitutional error at his sentencing or that he was ineligible for the death penalty. Indeed, "a postconviction relief petition is a statutory vehicle designed to rectify the violation of a convicted defendant's *constitutional rights*." (Emphasis added). *State v. Silverman*, 10th Dist. No. 06-AP-1278, 1279 & 1280, 2007-Ohio-6498, ¶15. Defendant's failure to articulate viable constitutional arguments

- 6 -

will be discussed infra. Even if this Court were to construe Defendant's Crim. R. 33 motion as a postconviction petition, he is not entitled to relief because *Roberts* provides relief for a statutory violation, not a constitutional violation. As such, Defendant is not entitled to relief pursuant to R.C. 2953.23, Crim.R. 33, or Civ.R. 60(B).

**Defendant's Case was Not Pending on Direct Review at the Time of the Roberts Decision**

Moreover, Defendant seeks a new sentencing hearing based on the outcome of the *Roberts* decision. By doing so, he improperly seeks a retroactive application of a decision which was not rendered until over three and one half (3&1/2) years after his sentence, and nearly two (2) months after his conviction became "final" with a denial of certiorari by the United States Supreme Court. The Ohio Supreme Court decided *Roberts* Aug. 2, 2006. The U.S. Supreme Court denied certiorari in Defendant's case June 5, 2006, See, *Jackson v. Ohio* (2006), 547 U.S. 1182.

It is well-settled law that a new judicial ruling may be applied only to cases that are pending on the announcement date. *State v. Evans* (1972), 32 Ohio St.2d 185, 186. The new judicial ruling may not be applied retroactively to a conviction that has become final, i.e., where the accused has exhausted all of his appellate remedies. Id.; See, also, *Ali v. State* (2004), 104 Ohio St. 328, ¶6 & 7. "Final" means that judgment of conviction was rendered, availability of appeal was exhausted and the time for petitioning for certiorari has elapsed. *State v. Vaughn* (1988), 39 Ohio App. 3d 45, citing *Allen v. Harely* (1986), 478 U.S. 255.

While it is true that Defendant did have an Application to Reopen pending at the time of the *Roberts* decision, the Ohio Supreme Court has clarified that "[a]n application [to reopen] under App.R. 26(B), whether successful or not, was never intended to constitute part of the original appeal." *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, ¶9. Therefore, there is

- 7 -

no doubt that Defendant's case was not pending on direct review at the time of the *Roberts* decision thus Defendant is not entitled to retroactively apply that case to his.

### Defendant was Not Denied his Right of Allocution

Defendant also uses his Motion to raise the issue that this Court signed its sentencing entry prior to giving him the opportunity to present allocution at his sentencing hearing. To borrow an old colloquialism, that ship has long ago sailed. If Defendant wished to take legal issue with the timing of the trial judge's filing of his sentencing entry, he should have done so in his direct appeal, and not have waited four (4) years to raise the issue. Defendant did not raise this now claimed error on direct appeal. Therefore, this argument is waived by the doctrine of res judicata. *State v. Szefcyk* (1996), 77 Ohio St. 3d 93, syllabus; *State v. Sanders* (May 19, 2000), 11th Dist. No. 1999-P-0067, at * 2.

The Eleventh District came to the identical conclusion in *Davie,* supra. Davie also attempted to argue fourteen (14) years after this Court imposed sentence that he, too, was denied his right to allocution. The Eleventh District rejected this argument. "The issue of whether the trial court afforded Mr. Davie the right to allocution should have been raised in Mr. Davie's direct appeal. A defendant is barred by the doctrine of *res judicata* from raising any defense or constitutional claim that was or could have been raised at trial or on direct appeal from his conviction. *State v. Williams,* 11th Dist. No. 97-T-0153, 1998 Ohio App. LEXIS 4884, at 5, citing *State v. Perry* (1967), 10 Ohio St.2d 175, paragraph nine of the syllabus. Consequently, because Mr. Davie did not raise this issue in his direct appeal, he is precluded from raising this issue at this late juncture." *Davie, supra,* at ¶23.

Even if this argument was not procedurally barred, it should fail on the merits. In short, Defendant simply takes facts from the Roberts case, makes assumptions based on those facts,

- 8 -

and then applies the assumptions to his own case. This Court should be wary of being led down such a tenuous path.

First, the State would submit that Defendant is using the facts from the Roberts case simply because his own case lacks any evidence that Defendant was denied his right of allocution. In fact, the record clearly refutes this claim. This Court specifically allowed Defendant a chance to make a statement at his sentencing hearing. (State's Ex. A). Defendant even admits in his motion, "this Court, at the sentencing hearing, did permit [Defendant] to make a statement prior to reading its sentencing opinion." (Motion for New Trial and/or new Sentencing Hearing, Pg. 14) In addition, Roberts was afforded her right of allocution after the reading of the sentencing opinion, while Defendant was afforded the same right *before* the sentencing opinion was read. (State's Ex.A)

Second, Defendant takes the facts from *Roberts*, and by mere speculation, explains why the Ohio Supreme Court ruled – or declined to rule – the way it did in Roberts. For example, the Supreme Court did not actually address the issue of Roberts' allocution, it declined to rule because the issue was rendered moot when the court found other error in the case. *Roberts*, supra, ¶166. However, the Court went on to direct that Roberts should again be afforded the opportunity for allocution at the new sentencing hearing. Id. Defendant posits that this comment indicates that Roberts was not actually afforded allocution at the first sentencing hearing. When a court declines to rule on an issue because it is moot, the State would submit that no further conclusions should be drawn. Defendant then goes on to assert "[t]he Court did not find the error harmless, despite the fact that Roberts had given a 'lengthy unsworn statement' to the jury in the mitigation phase." (Motion for New Trial and/or new Sentencing Hearing, Pg. 14, citing *Roberts* at ¶89). This statement is misleading, at best. While the court did not find the error

- 9 -

harmless, it also did not find that it was *not* harmless error. As noted above, the court *declined to rule* on the issue because it was moot. *Roberts*, supra, ¶166.

Finally, Defendant argues that his statement at sentencing was a mere formality, and that the Court was incorrect in drafting the sentencing entry before the sentencing hearing. By the timeline of events, it would appear that the entry was drafted prior to the actual hearing. The State submits there is no error in so doing. In fact, the entry was not filed until after the hearing had been completed, and it could have been re-written if Defendant's comments were so compelling as to warrant a change in heart. The State would note that the sentencing hearing convened at 10:15 a.m., Dec. 9, 2002, and the entry is time stamped 11:46 a.m., Dec. 9, 2002. (State's Ex. A & B).

Defendant points to *State v. Reynolds*, 80 Ohio St.3d 670, 683, and argues that a court should not draft and file the sentencing entry before the sentencing hearing. However, there are some important factual differences that Defendant fails to point out. For example, in *Reynolds*, the court actually filed the sentencing entry before the hearing, while in the instant case, the entry was not filed until after the hearing. Also, the *Reynolds* court did not offer Reynolds the opportunity for allocution in the sentencing hearing, where here, the Court clearly did. Finally, the *Reynolds* court found that this was harmless error, and still affirmed the sentence.

It is patently obvious that this Court afforded Defendant his right to allocution. (State's Ex. A). This Court asked both Defendant and his counsel if he had anything he wanted say. Defendant said he was sorry and asked this Court to spare his life. Therefore, any suggestion that Defendant was not afforded his right of allocution is flatly belied by the record in this case.

- 10 -

### This Court did not violate Defendant's Constitutional Rights

Next, Defendant in his Memorandum of Law alleges this Court violated Defendant's Fifth, Sixth, Eighth, Fourteenth Amendment rights. It is axiomatic that merely *labeling* a claim a "constitutional violation" is not tantamount to *demonstrating* a constitutional violation. As previously stated, "a postconviction relief petition is a statutory vehicle designed to rectify the violation of a convicted defendant's *constitutional rights*." (Emphasis added). S*tate v. Silverman,* 10th Dist. No. 06-AP-1278, 1279 & 1280, 2007-Ohio-6498. The burden to demonstrate a constitutional violation worthy of postconviction relief rests squarely with the petitioner. *State v. Hughbanks,* 159 Ohio App. 3d 257, 2004-Ohio-6429, at ¶9; *State v. Smith,* 1st Dist. No. C-060-387, at ¶9; *State v. Perez* 9th Dist. No. 3045-M, 2000 WL 1420341, at *1. The petitioner has the burden of showing the court's actions, or inactions, violates a constitutional guarantee.

Defendant relies upon the Ohio Supreme Court's decision in *Roberts* to advance this notion of a constitutional violation. Yet at no time did the *Roberts* court find a constitutional violation in her case by this Court's request that the prosecutor draft Roberts' sentencing entry. Instead, it found a statutory violation. "The trial court's decision to use the prosecutor in preparing the sentencing opinion constitutes a grievous violation of the statutory deliberative process. It is so severe a violation that independent reweighing cannot serve as an adequate remedy." *Roberts,* supra, at ¶163.

Therefore, even though this Court has acknowledged that "I had essentially the same type of communications with the Assistant Prosecuting Attorneys in *Jackson* as I had with the Assistant Prosecuting Attorneys in *Roberts,* and for the same reasons and purpose" (Defendant's Ex. 3, p. 3), such communication did not rise to a constitutional violation in *Roberts.* Moreover,

- 11 -

in response to this Defendant's efforts to disqualify this Court from further proceedings on this issue, Ohio Supreme Court Justice Charles Moyer left to this Court's discretion whether to schedule a new sentencing hearing. "The judge is entitled to consider the defendant's motion for relief from judgment now pending in the trial court, and *if the judge concludes that relief is appropriate,* he may grant that motion and conduct the new sentencing hearing that he has described in his response to the affidavit filed here." *In re Disqualification of Stuard,* 113 Ohio St. 3d 1235, 2006-Ohio-7233, at ¶5. Therefore, even with this Court's acknowledgment, Ohio's chief justice cited to no constitutional violation.

That having been said, the State will briefly address Defendant's constitutional arguments. Defendant first claims a Fifth Amendment violation alleging that his trial was unfair because this Court engaged in "communications" with the prosecutors. "Historically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property," *Daniels v. Williams* (1986), 474 U.S. 327, 331. "[T]he Due Process Clause ... is not implicated by the lack of due care of an official causing unintended injury to life, liberty or property." *Davidson v. Cannon* (1986), 474 U.S. 344, 347. Here, it is clear that this Court did not deliberately act to deprive Defendant of life, liberty, or property, and that any actions by the trial court were *at most* an unintended injury. The reality of the factual situation in this case is far different from the characterization by Defendant that the this Court held two roles and was biased during the proceedings. Thus, these alleged actions do not rise to the level necessary for a Fifth Amendment violation.

In passing, Defendant mentions that the Court violated his Sixth Amendment rights. However, Defendant's motion contains no Sixth Amendment analysis. Criminal Rule 47 requires that a motion "shall state with particularity the grounds upon which it is made ... be

- 12 -

supported by a memorandum containing citations of authority."  Since the State is not on notice

as to the specific issue Defendant wishes to raise, it cannot respond to Defendant's overly broad

assertion.

Next, Defendant claims that his Eighth Amendment rights have been violated. "[T]he

Eighth Amendment arbitrariness standard generally prohibits the infliction of a death sentence

discriminatorily on the basis of illegitimate and suspect factors, such as the race or socio-

economic status of the defendant and the victim, and its inconsistent or random imposition." See

*Eddings v. Oklahoma* (1982), 455 U.S. 104, 111.  Here, the imposition of the death penalty is not

in any way arbitrary and capricious.  Instead the recommendation of death came from a jury of

twelve (12) people, and was approved by this Court.  The sentencing opinion clearly explained

the circumstances that led to the Court's decision, and the facts included were supported by the

record.  Even if Defendant believed there to be factual inconsistencies that led to an arbitrary

decision, nowhere in Defendant's direct appeal does he make this claim.  See *State v. Jackson*,

107 Ohio St.3d 300, 2006-Ohio-0001.  Therefore, Defendant's Eighth Amendment rights were

not violated.

Finally, Defendant argues that he was denied his Fourteenth Amendment right of Due

Process and that his death sentence was arbitrarily imposed.  As explained above, such is not the

case.  In fact, the twelve (12) jurors who decided to recommend a death sentence obviously

believe that the punishment was proper.  Hence, the Defendant's reliance on *Hicks v. Oklahoma*,

1980, 447 U.S. 343 is misplaced.  In *Hicks*, the court found error because the Defendant was

denied the right to have a jury decide the sentence.  Defendant was afforded that right in the

instant case.  In this Court's reweighing of the verdict issued by the jury, there is no evidence

- 13 -

that the evidence relied upon by the jury was inadequate or the product of improper factors. Thus Defendant enjoyed the rights guaranteed by the Fourteenth Amendment.

Defendant enjoyed the protections of all of his Constitutional rights throughout his trial and his sentencing. Therefore his challenge to his sentence on these grounds should fail.

## CONCLUSION

Based on the foregoing arguments, Defendant is not entitled to a new sentencing hearing as was ordered in *Roberts.* He attempts to use a Crim. R. 33 motion for new trial to persuade this Court to grant him a new sentencing hearing. The Eleventh District Court of Appeals has flatly rejected this mechanism in another death penalty case from this very Court branding Crim. 33 as "inapplicable" to calls for a new sentencing hearing. *Davie,* supra, at ¶7. Moreover, Defendant seeks a retroactive application of the *Roberts* decision when his own case was *not* pending on direct appeal when the Ohio Supreme Court decided *Roberts.* For reasons previously stated, Defendant's motion is not timely filed.

Without any authority whatsoever, Defendant urges this Court to not only conduct a "re-do" of his sentencing hearing as occurred in Roberts November 6, 2007, but to conduct a new mitigation hearing as well. This remedy goes well beyond the pale of the *Roberts* decision. Defendant's jury considered the evidence presented at mitigation and unanimously recommended a death sentence. The sentencing entry now at issue was not part of the panel's deliberation or consideration. The Ohio Supreme Court did not reverse Roberts for a new mitigation hearing, but for a new sentencing hearing. Therefore, Defendant has no legal ground upon which to stand in requesting a new mitigation hearing.

Wherefore, Defendant is not entitled to a new sentencing hearing or a new mitigation hearing.

- 14 -

Respectfully submitted by:
DENNIS WATKINS (#0009949)
Prosecuting Attorney

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. 4th Floor
Warren, Ohio    44481

Telephone:(330) 675-2426
Fax (330) 675-2431

COUNSEL FOR PLAINTIFF
THE STATE OF OHIO

## PROOF OF SERVICE

I do hereby certify that a copy of the foregoing Memorandum by was sent by ordinary mail to Atty. John P. Parker (0041243), 988 E. 185 Street, Cleveland, Ohio   44119, and Atty. Randall Porter (0005835), Office of the Ohio Public Defender, 8 East Long St., 11th Floor, Columbus, Ohio 43215, on this 10th  Day of April, 2008.

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney

- 15 -

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | CASE NO.    01-CR-794 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN M. STUARD |
| | ) | |
| -vs- | ) | **OPINION OF THE COURT** |
| | ) | |
| NATHANIEL E. JACKSON, | ) | **FINDINGS  OF  FACT  AND** |
| | ) | **CONCLUSIONS OF LAW REGARDING** |
| Defendant. | ) | **IMPOSITION OF DEATH PENALTY** |

On November 8, 2002, a Trumbull County Jury returned a verdict finding the

Defendant, Nathaniel E. Jackson, guilty of two (2) counts of Aggravated Murder arising from

the death of Robert S. Fingerhut. Since Count One and Count Two of the Indictment merge for

sentencing purposes, the State elected to dismiss Count Two and proceed to the mitigation phase

on the first count of the indictment. Therefore, for purposes of this opinion, the Defendant was

convicted, under the first count of the indictment, of purposely, and with prior calculation and

design, causing the death of Robert S. Fingerhut. The jury further found that the State had

proved beyond a reasonable doubt two (2) specifications of aggravating circumstances. After

the mitigation hearing, the jury concluded that the State had proved beyond a reasonable doubt

that the aggravating circumstances outweighed the mitigating factors and returned a verdict

recommending that the sentence of death be imposed upon the Defendant.

Factually, the evidence revealed that while the Defendant was in prison for a prior

conviction unrelated to the present case, he along with the Co-Defendant, Donna Roberts, who

is precedently awaiting trial for her involvement, plotted the murder of her house mate, and ex-

husband, Robert S. Fingerhut. Indeed, both of them concocted a plan to kill Fingerhut to permit

-1-

STATE'S
EXHIBIT
A

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 224

the Defendant and Roberts to live happily ever after. However, the plan went awry when Jackson, who was in the house where Fingerhut stayed, was shot in the left index finger during the execution of Fingerhut. He then took Fingerhut's car keys, and drove the vehicle which Fingerhut typically operated to Youngstown. Shortly thereafter, Roberts took the Defendant to a motel in Boardman, getting him a room where he could hide out. Ultimately, the Defendant was captured at a home in Youngstown, and he gave a statement to the police alleging self-defense.

More specifically, the State introduced evidence that on December 11, 2001, two (2) days after the Defendant was released from prison, Robert S. Fingerhut, while in his home, was pistol whipped, and shot three(3) times, causing at least four (4) injuries from gun shots. Two of the injuries were to the back, with one grazing the back, and the other entering near the shoulder before exiting out the chest area of the victim. Fingerhut also sustained a defensive gun shot wound to the webbing of his left hand between the thumb and forefinger. The fatal gun shot was to the top of the head and from a short distance. This injury would "would have dropped him like a sack of potatoes," as testified to by Dr. Germaniuk.

Police responded to the crime scene as a result of a 911 call. When they arrived at approximately 12:01 a.m., they were met by the Co-Defendant, who informed them that her husband's car was missing. She also granted them permission to search the residence and her car. During this search, police found more than 140 letters from the Defendant to Roberts in her dresser, and an equal number of letters from Roberts to the Defendant, in the trunk of the Co-Defendant's car, in a paper bag bearing the Defendant's name and prison number.

Additionally, law enforcement officers were able to obtain nineteen (19) telephone

-2-

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 225

conversations, lasting more than three (3) hours, which were recorded while the Defendant was incarcerated in Lorain Correctional Institution. These telephone conversations, along with the letters which spanned three (3) months, revealed a continuing and evolving plan to kill Fingerhut immediately upon the Defendant's release from prison.

Specifically, during these telephone conversations, and in the written letters, the Defendant requested that Roberts obtain for him, black gloves to conceal his fingerprints, a ski mask, and a pair of handcuffs. Further, the Defendant, during the December 8, 2001, telephone conversation, which was recorded the day before he was discharged from Lorain, and three (3) days before the murder, stressed to Roberts that he "need[ed] to be in the house [in which Fingerhut lived] before he [got] home " in order to carry out the premeditated murder. Roberts, in a letter written to the Defendant acknowledged that she has found thin, fleece line, leather gloves, but was still looking for the ski mask.

Indeed, the State introduced black leather gloves with fleece lining which were recovered from the house where the Defendant was arrested. These gloves, which had gun shot residue on them, had a hole in the left index finger, and a reddish substance which appeared to be blood was also observed in that same area. This damaged matched the injury that the Defendant had sustained to his finger. Although the actual handcuffs were never recovered by police, an empty handcuff box was found in Donna Robert's car.

The evidence also revealed that Roberts, near the time of the murder, was seen driving her automobile in a very slow manner away from the vicinity of the home where Fingerhut lived. Furthermore, within two (2) hours from the last time Fingerhut was seen alive, Roberts rented a hotel room for the Defendant. In this room, bloody bandages and other medical supplies were

-3-

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 226

found by hotel cleaning people and were subsequently collected by police.

The car which was usually driven by Fingerhut, and which had been reported stolen by the Co-Defendant the night of Fingerhut's murder was recovered in Youngstown, Ohio. Blood stains were located throughout the vehicle and were collected by law enforcement. DNA analysis revealed that the blood matched that of DNA profile of the Defendant.

The State also introduced evidence that Roberts and the Defendant discussed purchasing a "new Lincoln" or "2002 Cadillac DeVille" for the Defendant. Additionally, Fingerhut had two (2) life insurance policies with a total death benefit of $550,00.00, and with Donna Roberts named as the beneficiary.

Based upon this and other evidence, the jury properly concluded that the Defendant committed a burglary to facilitate the premeditated and purposeful murder of the victim Fingerhut along with Roberts. The Defendant after executing his plan then stole Fingerhut's vehicle which allowed the jury to find that the murder was committed while committing the aggravating circumstances of Aggravated Burglary and Aggravated Robbery.

In a case of this nature, pursuant to R.C. 2929.03(D)(3), the Court is required to determine whether the State has proved beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors. Indeed, the Supreme Court of Ohio has stated in *State v. Wogenstahl* (1996), 75 Ohio St. 3d 344:

> "[T]he nature and circumstances of the offense may only enter into the statutory weighing process on the side of mitigation. *** [I]n the penalty phase of a capital trial, the 'aggravating circumstances' against which the mitigating evidence is to be weighed are limited to the specifications of aggravating circumstances set forth in R.C. 2929.04(A)(1) through (8) that have been alleged in the indictment and proved beyond a reasonable doubt." *Wogenstahl* (1996), 75 Ohio St. 3d 344 at 356.

-4-

1047

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 227

In performing its statutory duty, the a review of the aggravating circumstances is required.

    1.)    *The Defendant committed the Aggravated Murder while he was committing, attempting to commit, or fleeing immediately after committing Aggravated Burglary and that he was the principal offender.*

The evidence presented at trial reflected that the Defendant trespassed in the victim's dwelling and murdered him. The Court finds that the Defendant entered into 254 Fonderlac Drive, in Howland Township. He was wearing gloves and armed with a gun, with which he struck the victim leaving a mark on Fingerhut's face. Once in the house, he fired the gun three times causing four (4) separate wounds. The fatal shot was to the top of Fingerhut's head, and nearly straight down.

From the aforementioned evidence, the Jury concluded that the defendant committed the Aggravated Murder of while he was committing, attempting to commit, or fleeing immediately after committing Aggravated Burglary and that he was the principal offender.

    2.)    *The Defendant committed the Aggravated Murder while he was committing, attempting to commit, or fleeing immediately after committing Aggravated Robbery and that he was the principal offender.*

After the Defendant had murdered the victim, he took the victim's car keys and his car As he was driving away from the crime scene, and prior to abandoning the vehicle in Youngstown, he left blood evidence throughout the car. This evidence was subjected to DNA testing, which confirmed that forensically, it was his blood. Quite simply, the Defendant committed the Aggravated Robbery to escape the consequences of his prior murderous act.

-5-

1048

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 228

This evidence permitting the jury to conclude that the Defendant committed the Aggravated Murder while he was committing, attempting to commit, or fleeing immediately after committing Aggravated Robbery and that he was the principal offender.

To be weighed against the aggravating circumstances are the mitigating factors. In this case, the following factors were considered by the Court as possible mitigation against each specification and against the imposition of the death penalty:

1.) *The nature and circumstances of the offense, the history, character, and background of the offender.*

As was noted in *Wogenstahl, supra,* the nature and circumstances of the offense may only enter into the statutory weighing process on the side of mitigation. However, in this case, reviewing the nature and circumstances, the Court does not find any credible evidence which would allow the Court to accord any weight to the nature and circumstances of the offense against the imposition of the death penalty.

In considering the history, character and background of the offender, this Court considered the home life of the Defendant and the fact that he grew up in a relatively poor environment, and that he was cared for and raised by his mother and maternal grandmother. His biological father had little, if any, real involvement with him, and this lack of a father figure likely contributed to his behavioral problems .

Though the Court gives some weight to the Defendant's upbringing, it deserves little weight because of the credible testimony from the Defendant's step-father, his sister, his mother, and Dr. McPherson. These witnesses testified that the Defendant was respectful to both is mother and grandmother. His sister, who described as smart and really kind, noted that they

-6-

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 229

attended church. Further, there was testimony offered that he was reared in an environment, where he was not physically or sexually abused. His mother also declined to say that his home was in a "rough neighborhood, or that the Defendant had any problems in school. Dr. McPherson's report noted that the Defendant had not been hospitalized for any physical or mental condition. The witnesses also noted that they practiced moral tenets and that responsibility and respect were taught.

In conclusion, from the testimony of these witnesses, there is nothing particularly evident to show an unusual childhood or to offer an explanation for the Defendant's behavior which would be entitled any significant weight on the side of mitigation.

2.) *Whether the victim of the offense induced or facilitated the killing.*

Although under R.C. 2929.04(B)(1), the mitigating factor regarding whether the victim of the offense induced or facilitated it was not specifically argued by the Defendant during the penalty phase of the trail as mitigating, the Court did consider the Defendant's video taped statement presented in evidence during the trial phase. In the self-serving statement, the Defendant claimed that the killing of the victim was as a result of the Defendant protecting himself from an unprovoked attack by the victim.

This statement to the police attempted to construct a scenario wherein the victim approached the Defendant to purchase marijuana and then invited the Defendant into his home. The Defendant then claims that the victim then pulled a gun on him. The Defendant asserted that he attempted to disarm the victim, but the gun went off apparently striking the victim. However, the other facts illustrating the planning and execution of the murder along with the physical evidence introduced causes the Defendant's version not to be credible. As such, the

-7-

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 230

Court does not accord any weight to this mitigating factor.

    3.)   *Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation.*

Again, while the Defendant did not specifically argue this mitigating factor, the Court, upon reviewing the video tape, noticed that the Defendant claimed that the victim made derogatory statements about the Defendant's race which angered the Defendant. However, the this comment is likewise not convincing for the same reasons noted previously. This mitigating factors has no weight.

    4.)   *Any other factors that are relevant to the issue of whether the offender should be sentenced to death.*

Under R.C. 2929.04 (B)(7), commonly referred to as the "catch all provision" the Court reviewed the Defendant's capacity to appreciate the criminality of his conduct in light of the defense expert testimony regarding his mental history and mental state at the time of the offense was considered as a possible factor under R.C. 2929.04(B)(3).

This testimony revealed that the Defendant suffered from Attention Deficit Disorder/Hyperactivity Disorder, Chemical Dependency, and a reported history of alcohol abuse. Further, the evidence disclosed that the Defendant had an Antisocial Personality Disorder and was considered low average or better in intelligence.

Significantly, however, there was no evidence presented that the Defendant, at the time of the offense, had any mental disease or defect or that he lacked the capacity to appreciate the criminality of his conduct. His Antisocial Personality Disorder only showed that he had a history of inappropriate and impulsive behavior from his early childhood to the present. He was

-8-

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 231

incarcerated four (4) times. According to the Defendant's own expert, the Defendant, throughout his juvenile and adult life had received repeated treatment and/or probation for his criminal transgressions and his drug and alcohol abuse. He did not learn from his past mistakes, but only escalated his antisocial conduct.

In summary, this Court gives very little weight in mitigation to the Defendant's mental status, and his drug and alcohol abuse history especially in light of the Defendant's elaborate scheme to kill the victim, elude capture, and finally deceive police officers with a statement blaming the victim.

Further under 2929.04(B)(7), the Court examined the Defendant's ability to maintain himself in a stable fashion in a structured setting. Indeed, it was suggested by the Defense that he could be a productive member of the general prison population, and that this should be considered as mitigating. However, the Court gives slight weight to this particular factor.

The Defendant's last incarceration was the result of him not learning from his past mistakes, and from his tendency to act out impulsively without looking at the consequences. Furthermore, he repeatedly was placed on probation, but he continued to digress, committing more serious criminal acts. Indeed, during the last incarceration, the Defendant claimed to have "found God" and that he was going to straighten out his life. At the same time, it is abundantly clear that he was plotting to commit the ultimate criminal act, a premeditated burglary and murder, while pre-textually presenting himself to prison officials as a good candidate for a release program. Quite simply, in the very setting in which the Defense suggests that he could be a productive member, the Defendant defined and refined a plot, involving gloves, a mask and handcuffs, to murder Robert S. Fingerhut so that in effect he could assume Fingerhut's lifestyle,

-9-

1052

including running the Greyhound bus business, managing rental properties, and living in his home with his ex-wife.

The Defendant also offered an unsworn statement, wherein he stated that he was "very sorry for what happened." The Court likewise gives this statement slight weight as the statement lacked sincerity. The tone and tenor of the apology did not, in the Court's opinion, come from someone who was genuinely remorseful. Even assuming that the Defendant was remorseful, such retrospective remorse is not entitled to any significant weight. To the contrary, the Court believes that the Defendant's feigned remorse stems from the fact that the Defendant was apprehended. The Defendant was disappointed that the fool-proof, premeditated murder plot ,which he developed over nearly three (3) months, and which included shooting the victim "in the 'F' ing head," failed.

When independently weighing the aggravating circumstances as to the Aggravated Murder as previously outlined against the collective factors in mitigation, this Court finds that the aggravating circumstances not only outweigh the mitigating factors by proof beyond a reasonable doubt, but in fact, they almost completely overshadow them.

The State of Ohio has recognized that under certain circumstances, the death penalty is an appropriate sanction to any defendant who commits an Aggravated Murder during the commission of these certain felonies. In the case at bar, the underlying felonies are Aggravated Burglary and Aggravated Robbery.

In this particular case, the Court accords substantial weight to the Aggravated Burglary specification. In order to prove an Aggravated Burglary, the State is required to demonstrate that the Defendant trespassed in the occupied structure for the purpose of committing a criminal

-10-

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 233

act. In most instances, this criminal act is a theft offense. Occasionally, a Defendant will trespass to commit a kidnapping or even a rape. Such criminal acts provide the basis upon which a Defendant can be convicted of Aggravated Burglary. Then, if during any of these underlying criminal acts, the victim is purposely killed, an Aggravated Murder with the specification of Aggravated Burglary has been committed. These alone can permit the imposition of the death penalty should the aggravating circumstance of the Aggravated Burglary be found to outweigh the mitigating factors.

Under the facts in the instant case, this Court can not foresee of any other form of Aggravated Burglary where the weight to be given to this aggravating circumstance could ever be greater. The evidence reveals that the sole purpose for the Defendant's illegal entry in the Fingerhut residence was not to commit a theft, a kidnapping or a rape, but to rather to carry out the premeditated, cold blooded execution Robert S. Fingerhut. This is the most heinous form of Aggravated Burglary, and it is entitled to unsurpassed weight. Further, in this Court's view, this aggravating circumstance, standing alone, outweighs all of the evidence presented in mitigation.

The Court further gives weight to the Aggravated Robbery specification. After shooting the Defendant in the head, the Defendant took personal property of the victim to effectuate his escape. Indeed, the Defendant stole the victim's keys and his car.

Against this backdrop, the mitigating factors of the Defendant's background, history and character, his Antisocial Personality Disorder, his Attention Deficit Disorder, his history of drug and alcohol abuse, as well as his unsworn statement, have very little effect in minimizing, lessening, or excusing the degree of the Defendant's murderous conduct. From the

-11-

--- COURT RECORD

1054
1055
NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 234

overwhelming evidence, it is this Court's opinion that the Defendant and the Co-Defendant plotted the murder of Robert S. Fingerhut solely to collect $550,00.00 in insurance proceeds. This was accomplished by trespassing in the residence where Fingerhut resided, for the sole purpose of ambushing and murdering him.

Upon consideration of the relevant evidence raised at trial, the relevant testimony, the other evidence, the unsworn statement of the defendant, and the arguments of counsel, it is the judgment of this Court that the aggravating circumstances, outweighed, by proof beyond a reasonable doubt, the collective mitigating factors.

Dated: 13/9/02

HON. JOHN M. STUARD
Judge, Court of Common Pleas

I hereby certify that a copy of the foregoing opinion was hand delivered to Attorney James Lewis, Attorney Anthony Consoldane, and Prosecutor Dennis Watkins this ___9ᵗʰ___ day of December, 2002.

HON. JOHN M. STUARD

I also hereby certify that a copy of the foregoing opinion was duly mailed by ordinary U.S. Mail to the Clerk of the Supreme Court, Supreme Court of Ohio, State Office Tower, 30 E. Broad Street, Columbus, Ohio 43266-0419, this ___9ᵗʰ___ day of December, 2002.

HON. JOHN M. STUARD

-12-

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 235

211

1   because legitimately it may be something that the

2   upper Court will feel is proper at this level.  I

3   don't know.  But it just is very apparent that it

4   would be a real shot in the dark because of the

5   lack of information to make an informed decision.

6   But I would ask each of you to give me those cases.

7   I wish to read those over and see if there's some

8   indication that I am overlooking something.

9   Anything else before this Court?

10                  MR. WATKINS:  No, Your Honor.

11                  MR. CONSOLDANE:  No, Your Honor.

12                  THE COURT:  I thank you all.

13  (Court in recess at 2:10 p.m.)

14

15

16  Monday, December 9, 2002:

17  (In Open Court at 10:15 A.M.:

18  SENTENCING HEARING:

19                  THE COURT:  We're here today for the

20  sentencing in the case of State of Ohio vs.

21  Nathaniel E. Jackson.  Would the Defendant please

22  come forward with counsel?

STATE'S
EXHIBIT
B

212

1           Mr. Jackson, you have been found guilty

2    of aggravated murder with specifications by a Jury

3    of your peers.  Is there anything that you or your

4    counsel wish to place on the record prior to

5    sentencing?

6           THE DEFENDANT:  I'd just like for

7    the Court to spare me my life.  I'm sorry for what

8    happened, happened.  I never meant for it to

9    happen.

10          THE COURT:  Counsel, do you have

11    anything you wish to place on the record?

12          MR. CONSOLDANE:  Not at this time.

13    We do have a motion to make at the conclusion.

14          THE COURT:  I have prepared and

15    signed a finding of fact and conclusion of law

16    regarding the imposition of the death sentence.

17    I'm not going to read through this, I think it

18    speaks for itself.  I'm going to refer only to one

19    section of it.

20          Under the facts of the instant case, the

21    Court cannot foresee of any other form of

22    Aggravated Burglary where the weight to be given to

213

1   this aggravating circumstance could ever be

2   greater.  The evidence presented in this case

3   reveals that the sole purpose for the Defendant's

4   illegal entry into the Fingerhut residence was not

5   to commit a theft, a kidnapping or even a rape, but

6   to rather carry out the premeditated, cold blooded

7   execution of Robert S. Fingerhut.  This is the most

8   heinous form of Aggravated Burglary, and it is

9   entitled to unsurpassed weight.  Further in this

10  Court's view, this aggravating circumstance,

11  standing alone, outweighs all of the evidence

12  presented in mitigation.

13         And in conclusion, I have entered in this

14  record, upon consideration of the relevant evidence

15  raised at trial, relevant testimony, and the other

16  evidence, the unsworn statement of the Defendant,

17  and the arguments of counsel, it is the judgment of

18  this Court that the aggravating circumstances,

19  outweighed, by proof beyond a reasonable doubt, the

20  collective mitigating factors.

21         Throughout the history of mankind, there

22  have been and continue to be numerous reasons,

214

1    leading to murder.  Murder is often committed out

2    of fear, passion, anger, or due to some misguided

3    religious or political belief.  All such killing is

4    condemned, but killings based on those factors have

5    an emotional basis, no matter how irrational it may

6    be.  But to take the life of another human being,

7    however, for personal gain or profit, is an act

8    done rationally, without emotion, without any

9    consideration of a fellow human being's life, and

10   that life was treated with little concern, or as it

11   had little worth.  Now Robert Fingerhut had the

12   absolute right to not have his life taken.  And

13   this Jury has determined you were responsible for

14   that unlawful taking of life.  Your actions have

15   affected for all time the lives of the persons who

16   loved Mr. Fingerhut, and sadly, you have also

17   affected those persons who love and have depended

18   upon you.

19            Is there anything further that counsel

20   has to put on the record?

21            MR. CONSOLDANE:  No.  I think we

22   would just reiterate what we said at the last

215

1   hearing.

2                 THE COURT:  I have not asked, is

3   there anything that the State wishes to place on

4   the record?

5                 MR. WATKINS:  No, Your Honor.

6                 THE COURT:  Thank you.  It is the

7   sentence of this Court that Nathaniel E. Jackson,

8   will be taken from the Trumbull County Jail and

9   delivered to the Lorain Correctional Facility on

10  count three to serve a period of ten years, with

11  the mandatory three-year gun specification charge

12  to be served consecutive with and prior to that ten

13  year sentence.  That is on the Aggravated Burglary.

14          On the Aggravated Robbery, the Defendant

15  will serve a period of ten years with a three-year

16  gun specification, which will merge with the prior

17  specification to be served prior to and consecutive

18  to the ten year sentence on the robbery charge,

19  Aggravated Robbery.

20          Now this Court has considered the factors

21  under Ohio Revised Code Section 2929.14 and makes

22  the following further findings.

**IN THE COURT OF COMMON PLEAS**
**TRUMBULL COUNTY, OHIO**

STATE OF OHIO,                          :

     Plaintiff,                          : Case No. 01-CR-794

-vs-                                    : Judge John M. Stuard

NATHANIEL JACKSON,                      : ORAL ARGUMENT REQUESTED

     Defendant.                          :

                              EVIDENTIARY HEARING REQUESTED

## NATHANIEL JACKSON'S REPLY IN SUPPORT OF HIS MOTION
## FOR A NEW TRIAL AND/OR SENTENCING HEARING

On August 15, 2006, Nathaniel Jackson ("Mr. Jackson") filed a motion for leave to file his motion for a new sentencing hearing. On August 25, 2006, the prosecution filed a memorandum contra claiming that the motion should not be granted because it was untimely. On February 15, 2008, the Court granted Mr. Jackson's motion to file his motion for a new sentencing hearing.[1] The Court specifically held that "The Court will then decide the motion for leave on its merits."

On February 29, 2008, Mr. Jackson filed his motion for a new trial and/or sentencing hearing. The gravamen of his motion was that he was entitled to a new sentencing hearing pursuant to *State v. Roberts*, 110 Ohio St.

---

[1] The Court did not rule on the Motion for Leave to file a New Trial Motion until Mr. Jackson filed a complaint for Writ of Mandamus and Procedendo in the Ohio Supreme Court. *State, ex rel Nathaniel E. Jackson*, Ohio Supreme Court Case No. 08-0028



3d 71, 2006 Ohio 3665 ¶¶153-164. On April 10, 2008, the prosecution filed a memorandum opposing the new trial motion. On April 18, 2008, the Court entertained oral argument. At the conclusion of the hearing, the Court granted Mr. Jackson three weeks to file his reply in support of his motion.

Mr. Jackson will employ this pleading to address the misstatements of law and fact contained in the prosecution's April 10, 2008 Memorandum Contra ("Memo Contra'"). He will also employ this pleading to supplement his factual arguments with information that became available to him for the first time March 27, 2008, when the court reporter filed the transcript in *In re Complaint against Judge John Mason Stuard, et al.*, Supreme Court of Ohio Board of Commissioners on Grievances and Discipline, Case No. 07-078.

## I. THE PROSECUTOR AND COURT JOINTLY DRAFTED THE SENTENCING OPINION.

On March 3, 2008, the Court entered into the following stipulations concerning the process the Court and prosecution employed to draft the sentencing opinion in the case of co-defendant Donna Roberts and the appropriate sanction that should result there from:

7    On May 28, 2003, a jury found Roberts guilty on all four counts of the indictment After Roberts' June 4, 2003 penalty phase hearing, the jury recommended a sentence of death

8    Between the June 4, 2003 penalty phase hearing and the June 20, 2003 sentencing hearing, Respondent Stuard had four communications with Respondents Bailey and/or Becker regarding the Roberts sentencing opinion. These four communications were the initial conversation during which Respondent Stuard provided his notes to Respondents Bailey and/or Becker, Respondent Stuard's receipt of the draft entry

2

from Respondent's Bailey and/or Becker, a telephone conversation regarding corrections Respondent Stuard wished to have made to the draft and Respondent Stuard's receipt of final draft from Respondent's Bailey and/or Becker.

9    Respondent Stuard does not specifically recall if these communications were with Respondent Bailey or Respondent Becker. However, Respondent Stuard is aware that Respondent Becker has admitted that he was the person who communicated with Respondent Stuard, and Respondent Stuard has no basis to doubt this assertion.

10   On or about June 18, 2003, Respondent Stuard spoke to Respondents Bailey and/or Becker in the secretarial area outside of his judicial office at the Trumbull County Courthouse Respondent Stuard's conversation with Respondents Bailey *and/or Becker lasted 30 to 45 seconds.*

11.  During this conversation, Respondent gave Respondents Bailey and/or Becker two pages of handwritten notes prepared by Respondent Stuard. Respondent Stuard then asked that Respondents Bailey and/or Becker to draft the Roberts sentencing opinion based upon these notes. Respondents Bailey and/or Becker agreed to draft the entry.

12.  Respondent Stuard had already decided to sentence Roberts to death at the time he provided these notes to Respondents Bailey and/or Becker. These notes were written on the front side of two sheets of 11" x 14" paper Respondent Stuard does not recall if his notes completely filled the two pages of available space.

13   The final sentencing entry was divided into five sections. case history, facts, aggravating circumstances, mitigating factors and conclusions of law, Respondent Stuard's two pages of handwritten notes only contained detailed information for the aggravating circumstances and mitigating factors sections.

14.  Respondent Stuard did not provide any notes regarding the case history section. Respondent Stuard's notes for the fact section were limited to a statement directing Respondents Bailey and Becker to use the same facts as detailed in the earlier sentencing opinion for the companion case involving co-defendant Nathaniel Jackson.

15.  For the conclusions of law section, Respondent Stuard simply advised Respondents Bailey and Becker of his ultimate

3

conclusion that the aggravating circumstances outweighed the mitigating factors.

16. On or about June 19, 2003, Respondent Stuard was provided with a draft 17-page sentencing opinion for his review. Respondent Stuard found this entry on his desk and is without personal knowledge how the entry arrived there. Respondent Stuard reviewed this draft entry and noted one or more corrections that he wished to have made prior to his signature.

17. A short time later on June 19, 2003, Respondent Stuard made a telephone call to Respondents Bailey and/or Becker. During the resulting conversation, Respondents Bailey and/or Becker were asked to make one or more corrections to the draft sentencing opinion.

18  Subsequent to this telephone call, Respondents Bailey and/or Becker made the corrections requested by Respondent Stuard. Respondent's Bailey and/or Becker then provided Respondent Stuard with the final revised 17-page sentencing opinion.

19. At the June 20, 2003 Roberts sentencing hearing, Respondent Stuard read and signed the sentencing opinion referred to in paragraph 18.

20. This 17-page sentencing opinion consists of over six pages of facts, three pages of aggravating factors, four pages of mitigating factors and three pages of conclusions of law.

21. None of the four oral and written communications between Respondent Stuard and Respondents Bailey and/or Becker detailed above took place on the record.

22. Respondent Stuard did not inform or consult Defense Counsel Ingram and Juhasz concerning his four communications with Respondents Bailey and/or Becker regarding the Roberts sentencing entry.

23. Respondent Stuard did not inform or consult Defense Counsel Ingram and Juhasz regarding the Roberts sentencing entry drafting process.

24  Respondent Stuard did not provide Defense Counsel Ingram and Juhasz with a copy of the Roberts sentencing entry until after the June 20, 2003 sentencing hearing.

4

### STIPULATED VIOLATIONS

37    The conduct of Respondent Stuard violates the Code of Judicial Conduct Canon 2 [a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity of the judiciary] and 3(B)(7) [a judge shall not initiate, receive, permit, or consider communications made to the judge outside the presence of the parties or their representatives concerning a pending or impending proceeding]...

### STIPULATED SANCTION

42    Respondent and relator stipulate that the appropriate sanction for Respondent Stuard's misconduct in this matter is a public reprimand....

*In re Complaint against Judge John Mason Stuard, supra,* Agreed Stipulation [Exhibit A].

Both the Court and prosecutor agreed that the the Roberts' procedure for drafting the sentencing opinion was also used in Mr. Jackson's case. [Exhibits B, p. 97, 180,  Exhibit C pp. 83-84, Exhibit D, p. 19, Exhibit E].

## II. MR. JACKSON'S MOTION IS TIMELY

The State claims that the Court should not rule on the merits of the pending motion because it was not timely filed. [Memo Contra, pp. 3-5]. The State raised this issue in it pleading opposing leave to file the new trial motion. [August 25, 2006 State's Response to Defendant's Leave Request for Leave to File a "Motion for A New Sentencing Hearing," pp. 2-3]. The Court necessarily ruled on that issue when it granted Mr. Jackson leave to file his New Trial Motion [February 15, 2008, Judgment Entry, p. 1]. Even if this Court had not specifically ruled on the issue of timeliness, it was subsumed within the order granting him leave to file a new trial motion. *See* Crim R. 33(B). The

5

portion of the prosecution's argument asserting the timeliness issue is in essence a motion for reconsideration. The Criminal Rules do not provide for such a pleading and therefore it is a nullity. *Pitts v. Dept. of Transportation* (1981), 67 Ohio St. 3d 378, 380, 423 N.E. 2d 1105; *State v. Minch*, Cuyahoga App. No. 87820, 2007-Ohio-158, ¶ 10.

## III. THE COURT HAS THE AUTHORITY TO ORDER A NEW SENTENCING HEARING.

The prosecution spends a great deal of its pleading arguing that Crim R. 33 does not provide this Court with the authority to grant Mr. Jackson a new sentencing hearing. [Memo Contra, pp. 1-3]. This Court, when it granted Mr. Jackson leave to file the New Trial Motion also implied this fact [February 15, 2008 Judgment Entry, p. 1] ("this Court recognizes that the criminal rules, applied strictly, do not contemplate a motion for a new sentencing hearing.")

## A. The Ohio Supreme Court has held, pursuant to Crim R. 33, a trial court can grant a new sentencing hearing.

The Ohio Supreme Court has determined that trial courts do have the authority, pursuant to a new trial motion, to grant a defendant a new sentencing hearing. *State v. Stumpf* (1987), 32 Ohio St. 3d 95, 105 512 N.E. 2d 598, 608-09.

In *Stumpf*, the defendant pled guilty. At the conclusion of the mitigation hearing the three judge panel imposed a sentence of death. Subsequently, after the co-defendant's trial, Stumpf filed a motion to withdraw his guilty plea or "in the alternative, i.e.", requested "the Court to set aside the sentence imposed in this case and to order a new sentencing (mitigation)

6

proceeding be conducted." [Exhibit F]. Stumpf argued in his motion that the "testimony of James Eastman, which was not available to this Defendant at the time of sentencing, directly contradicts the finding of the Court. It is evidence which the Court should have available to it in determining the appropriate sentence to be imposed against John David Stumpf....It is evidence which is material to the conduct of John David Stumpf and supports the evidence offered at the sentencing hearing that this Defendant was not the principal offender in the crime charged." [*Id.*]. The trial court denied the motion for a new sentence hearing and the Court of Appeals affirmed that decision.

Stumpf appealed to the Ohio Supreme Court. *State v. Stumpf* (1987), 32 Ohio St. 3d 95, 105 512 N.E. 2d 598, 608. The Ohio Supreme Court therein specifically held that the trial court had the authority to grant Stumpf a new sentencing hearing, "[a]s to his request to have his sentence set aside and a new sentencing hearing conducted, appellant claims that the three-judge panel's finding that he was the principal offender, in light of the later testimony from Wesley's cellmate, mandates that his motion be granted.... Appellant's motion is similar to a motion for new trial based upon newly discovered evidence, under *Crim. R. 33(A)(6).* In *State v. Williams (1975), 43 Ohio St. 2d 88, 72 O.O. 2d 49, 330 N.E. 2d 891*, paragraph two of the syllabus, this court held: 'The allowance of a motion for a new trial on the grounds of newly discovered evidence is within the competence and discretion of the trial judge; and in the absence of a clear showing of abuse such decision will not be disturbed.' We

7

adopt this standard of review for the motion at issue." *State v. Stumpf*, 32 Ohio St. 3d at 105, 512 N.E. 2d at 608-09.

Therefore, pursuant to the Ohio Supreme Court's ruling in *Stumpf*, this Court does have the authority to grant Mr. Jackson a new sentencing. Given that the facts are identical to the facts in *Roberts, same* judge, *same* prosecutor's officer, *same* underlying facts, and *same* misconduct, this Court is bound by the Ohio Supreme Court decision in *Roberts*.

## B. The Trumbull County Court of Appeals lacks the authority to overrule the *Stumpf* decision.

The prosecution relies upon *State v. Davie,* 2007 Ohio 6940; 2007 Ohio App. LEXIS 6081 (Trumbull Ct. App. Dec. 24, 2007). [Memo Contra, p. 2]. The *Davie* decision is in direct conflict with the Ohio Supreme Court's decision in *Stumpf*. The appellate court in *Davie* did not even reference the Ohio Supreme Court's decision in *Stumpf*. The Ohio Supreme Court's interpretation of Crim R. 33 is controlling.

## IV. THE COURT SHOULD NOT CONVERT THE NEW TRIAL MOTION.

The prosecution urges this Court to convert Mr. Jackson's Motion for a New Sentencing Hearing to a Post-conviction Petition. [Memo Contra, pp. 4-5]. The Ohio Supreme Court recently addressed the authority of a trial court to convert motions filed the by the parties. *State v. Schlee*, 117 Ohio St. 3d 153; 2008-Ohio-545; 882 N.E.2d 431. In that case the Court held that the trial court acted properly in converting a motion for relief from judgment filed pursuant to Civ. R. 60(B) to a post-conviction petition. *Id.* at ¶ 6. The Court in

8

*Schlee* recognized, however, citing to *State v. Bush*, 96 Ohio St. 3d 235, 2002-Ohio-3993, 773 N.E. 2d 522, that trial courts were not free to "willy-nilly" convert motions to something other than what the defendant had filed. *Id.* at ¶ 12. In *Bush*, the Court held that the trial court had incorrectly converted the defendant's motion to withdraw his guilty pleas to a post-conviction petition. *State v. Bush*, 2002-Ohio-3993 at ¶ 14.

In the present case Mr. Jackson filed his motion pursuant to Crim R. 33. The Ohio Supreme Court has recognized that motions for new trials can serve as a proper basis for the granting of a new trial motion. *State v. Stumpf*, 32 Ohio St. 3d at 105, 512 N.E. 2d at 608-09.  Therefore, the Court has no basis for converting Mr. Jackson's Motion.

## V. THE DOCTRINE OF RETROACTIVITY DOES NOT BAR RELIEF.

The prosecution further contends that the Court cannot grant relief because the Ohio Supreme Court decided *Roberts* after Mr. Jackson's appeal became final. [Memo Contra, pp. 7-8]. The prosecution's analysis of the doctrine of retroactivity is superficial and as a result reaches an incorrect conclusion.

For the doctrine of retroactivity to bar relief, the decision that the defendant is requesting the court to apply must constitute a new rule of law. *Stewart v. LaGrand* (1999), 526 U.S. 115, 119; *O'Dell v. Netherland* (1997), 521 U.S. 151, 156-57. The prosecution makes no effort to explain the manner in which the Ohio Supreme Court ruling in *Roberts* constituted a new rule of law. A new rule is a decision that "breaks new ground" or imposes a new obligation.

9

*Teague v. Lane* (1989), 489 U.S. 288, 301. To constitute a new rule of law the decision must constitute an explicit and substantial break with prior precedent." *Allen v. Hardy* (1986), 478 U.S. 255, 258. In *Roberts,* the Ohio Supreme Court created no new precedent but simply relied upon a straight forwarding read of the statute, "*R.C. 2929.03(F)* clearly contemplates that the trial court itself will draft the death-sentence opinion: *'The court* * * * when it imposes sentence of death, *shall state* in a separate opinion *its* specific findings as to the existence of any of the mitigating factors.'" *State v. Roberts,* 2006-Ohio-3665, ¶ 156. The Ohio Supreme Court then looked to its earlier holdings, "[o]ur prior decisions have stressed the crucial role of the trial court's sentencing opinion in evaluating all of the evidence..." *Id.*. The Court then proceeded to again emphasize the plain wording of the statute, "[t]he trial court's delegation of any degree of responsibility in this sentencing opinion does not comply with *R.C. 2929.03(F).*" *Id. at* ¶ 160. The Court then emphasized that the plain wording of the relevant disciplinary provisions also supported its conclusion, '[t]he Code of Judicial Conduct, Canon 3(B)(7) specifies, [HN27] "A judge shall not initiate, receive, permit, or consider communications made to the judge outside the presence of the parties or their representatives concerning a pending or impending proceeding * * *" *Both the trial judge and the prosecutor should have known that [HN28] any ex parte assistance in the preparation of the court's sentencing opinion was wholly inconsistent with these vital ethical constraints. See Disciplinary Rule 7-110(B)(2) and (3).*" *Id.* at ¶ 161. Finally, the Court concluded that "the trial

court's decision to use the prosecutor in preparing the sentencing opinion constitutes a grievous violation of the statutory deliberative process. It is so severe a violation that independent reweighing cannot serve as an adequate remedy." The tone of the Ohio Supreme Court clearly establishes that it was upset because the prosecution and the Court had violated long established rules of law.

Even if *Roberts* constituted a new rule of law, the holding of the *Roberts* case would still be applicable. A new rule of law will be apply retroactively when it requires observance of those procedures that are implicit in the concept of ordered liberty. *Teague v. Lane* (1989), 489 U.S. 288, 307. The concept that a trial court will render its decision with impartiality is part of the concept of ordered liberty. *Arizona v. Fuliminate* (1991), 499 U.S. 279, 309. Similarly the Ohio Supreme Court in *Roberts* found that the "trial court's consultation with the prosecutor, particularly when undertaken without the knowledge or participation of defense counsel, can neither be ignored nor found to be harmless error." *Id.* at ¶ 162.

The Court should apply the *Roberts* holding to this case. The Ohio Supreme Court therein did not announced a new rule of law. Even if it did, it fits within one of the established exceptions to the doctrine of retroactivity.

## VI. MR. JACKSON'S FAILURE TO CITE TO ONE OR MORE GROUNDS CONTAINED IN CRIM. R. 33(A) DOES NOT MEAN EQUATE WITH THE CONCLUSION THAT HIS MOTION NOT BEING WELL TAKEN.

The prosecution faults Mr. Jackson for not citing to one or more of the grounds contained in Crim. R. 33(A). [Memo Contra., pp. 2-3]. It urges this

11

Court to find that because he cited to no grounds, "this Court should assume none of the grounds are applicable." [*Id.* at p. 3]. The prosecution cites to no authority for this argument. It is difficult to contemplate the manner in which the prosecution was prejudiced because its position is that Crim. R. 33 does not apply, regardless of the grounds that are identified. *See* § III (A), *supra*.

It is readily apparent which grounds are applicable. Mr. Jackson, consistent with the *Roberts'* decision and the Court's and prosecutor's testimony in *In re Complaint against Judge John Mason Stuard, et al .supra*, alleges that there was improper contact between the prosecution and the Court in the drafting of the sentencing opinion. The following grounds for granting a new trial motion are applicable: 1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial; 2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state; and 3) Error of law occurring at the trial. Crim R. 33(A)(1)(2) and (5).

**VII. THE COURT DENIED MR. JACKSON HIS RIGHT OF ALLOCUTION.**

The prosecution asserts this issue is procedurally barred because it was not raised on direct appeal. [Memo Contra, p. 8]. A defendant is only required to raise an issue on direct appeal, when the record before the appellate court permits the issue to be fairly and fully litigated. *State v. Smith* (1985), 17 Ohio St. 3d 98, 101, n.1, 477 N.E. 2d 1128, 1131; *State v. Cooperrider* (1984), 4 Ohio St. 3d 226, 228, 448 N.E. 2d 452, 454. In this case there was no evidence in the direct appeal record that supported the fact that

12

the Court and prosecutor had joined in the drafting of the sentencing opinion. That was attributable to the fact that neither the Court or the prosecution announced to defense counsel or anyone else that there had been corroboration in the drafting of the sentencing opinion. Thus, this issue is not procedurally defaulted.

The prosecution also claims that the issue fails on the merits. [Memo Contra, pp. 8-9]. The prosecution asserts that "Defendant simply takes facts from the Roberts case, makes assumptions based on those facts, and then applies the assumptions to his own case. This Court should be wary of being lead down such a tenuous path. [*Id.*]. As a result of the disciplinary proceedings, it is now clear that the facts underlying the misconduct in the Roberts case are the same as the facts underlying the misconduct in the present case. [Exhibits B, p. 97, 180, Exhibit C pp. 83-84, Exhibit D, p. 19, Exhibit E].

The prosecution claims that the Court granted Mr. Jackson his right of allocution. [Memo Contra, pp. 9-10]. But by that time it of his allocution, the Court had already written his its sentencing opinion. Thus, his right of allocution was simply a meaningless ritual. The Ohio Supreme in *Roberts* ordered the Court upon remand to "provide Roberts with her right of allocution before imposing any new sentence." *State v. Roberts*, 2006-Ohio-2174, ¶ 166. That Court would not have entered such an order if this Court had afforded her a meaningful right of allocution at the first sentencing hearing.

## VIII. THE DRAFTING PROCEDURE VIOLATED MR. JACKSON'S CONSTITUTIONAL AND STATUTORY RIGHTS.

The prosecution briefly addresses the merits of Mr. Jackson's claims. [Memo Contra, pp. 11-14]. The prosecution has not rebutted any of the arguments that Mr. Jackson in his Motion for a New Trial. [February 29, 2008 Motion, pp. 5-15]. For the sake of brevity, Mr. Jackson incorporates those arguments herein.

The Ohio Supreme Court in *Roberts* found that the drafting procedure employed in that case, and consequently this case since the same procedure was employed, violated R.C. 29290.03. *State v. Roberts*, 2006-Ohio-2174, ¶¶ 156-160. That Court could not have made it any more clear; "The trial court's delegation of any degree of responsibility in this sentencing opinion does not comply with *R.C. 2929.03(F)*. Nor does it comport with our firm belief that the consideration and imposition of death are the most solemn of all the duties that are imposed on a judge, as Ohio courts have also recognized." *State v. Roberts*, 2006-Ohio-2174, ¶160. The Ohio Supreme Court further "nailed" this conclusion when it stated, "The trial court's decision to use the prosecutor in preparing the sentencing opinion constitutes a grievous violation of the statutory deliberative process." *Id.* at ¶ 163.

The Ohio Supreme Court in *Roberts* also found that the drafting procedure violated the Eighth and Fourteenth Amendments to the United States Constitution, "[t]he trial court's consultation with the prosecutor, particularly when undertaken without the knowledge or participation of

14

defense counsel, can neither be ignored nor found to be harmless error. Cf. *Gardner v. Florida (1977), 430 U.S. 349, 362, 97 S.Ct. 1197, 51 L.Ed.2d 393* (defendant 'was denied due process of law when the death sentence was imposed, at least in part, on the basis of information [from a presentence report] which he had no opportunity to deny or explain')." *State v. Roberts*, 2006-Ohio-2174, ¶162.

## IX. THE COURT SHOULD GRANT NATHANIEL JACKSON A NEW SENTENCING HEARING.

The present case is indistinguishable from the Donna Robert's case with respect to the drafting process that the Court and prosecution employed. Therefore, the Court should afford Nathaniel Jackson the same remedy as the Ohio Supreme Court afforded Ms. Roberts. In the alternative, this Court should permit Mr. Jackson to conduct discovery on this issue, at the conclusion of which it conducts an evidentiary hearing. Given the fact that this Court will be a witness, this Court should recuse itself.

Respectfully submitted,

JOHN P. PARKER – 0041243
988 East 185 Street
Cleveland, Ohio 44119
1-216-881-0900 (Voice)
johnpparker@earthlink.net
Pro Bono Counsel

And

OFFICE OF THE
OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender

15

Office of the Ohio Public Defender
8 East Long Street -11th Floor
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0703 (Facsimile)
PorterR@OPD.state.OH.US


By_____
     COUNSEL FOR NATHANIEL JACKSON

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Nathaniel Jackson's Reply in Support of his Motion For A New Sentencing Hearing and the Supporting Appendix* was forwarded by first-class, postage prepaid U.S. Mail to Luwayne Annos, Assistant Prosecuting Attorney, Trumbull County Prosecutor's Office, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio 44481, on this 9th day of May, 2008.


_____
RANDALL L. PORTER
COUNSEL FOR PETITIONER

16

Defendant's motion to vacate this Court's findings of fact and conclusions of law and Defendant's motion for relief from judgment, filed under Civ.R. 60(B)(5), on or about September 1, 2006, are hereby denied. Ohio law permits the prosecution to draft findings of fact and conclusions of law dismissing a post-conviction petition even in death cases. See <u>State v. Lorraine</u> (February 23, 1996), 95 T 5196 (unreported).

Finally, Defendant's motion for a status conference is granted. This Court's assignment officer is hereby ordered to schedule such a status conference at the convenience of the Court and counsel.

IT IS SO ORDERED.

2/15/08
DATE

JUDGE JOHN M. STUARD

TO THE CLERK OF COURTS: YOU ARE ORDERED TO SERVE COPIES OF THIS JUDGMENT ON ALL COUNSEL OF RECORD OR UPON THE PARTIES WHO ARE UNREPRESENTED FORTH WITH BY ORDINARY MAIL.

JUDGE

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 257

## IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

STATE OF OHIO,                    :

    Plaintiff,                    : Case No. 01-CR-794

-vs-                              :

NATHANIEL JACKSON,                : Judge John M. Stuard

    Defendant.                    :

---

### APPENDIX TO
### NATHANIEL JACKSON'S REPLY IN SUPPORT OF HIS MOTION
### FOR A NEW TRIAL AND/OR SENTENCING HEARING

### VOLUME I, EXHIBITS A-B

---



**BEFORE THE BOARD OF COMMISSIONERS
ON GRIEVANCES AND DISCIPLINE
OF THE SUPREME COURT OF OHIO**

**JUDGE JOHN MASON STUARD**
Trumbull County Common Pleas Court
160 High Street, Northwest
Warren, OH 44481

**KENNETH NEIL BAILEY**
Trumbull County Prosecutor's Office
160 High Street
Warren, OH 44481

and

**CHRISTOPHER DEAN BECKER**
Trumbull County Prosecutor's Office
160 High Street
Warren, OH 44481

     **Respondents,**

                             **AGREED
STIPULATIONS
BOARD NO. 07-078**

**DISCIPLINARY COUNSEL**
250 Civic Center Drive, Suite 325
Columbus, Ohio 43215-7411

     **Relator.**

## AGREED STIPULATIONS

Relator, Disciplinary Counsel, and Respondent John M. Stuard do hereby stipulate

to the admission of the following facts, violations, mitigation, sanction and exhibits.



EXHIBIT

*A*

RELATOR
STUARD

JOINT EX. 1

## STIPULATED FACTS

1    Respondent, John Mason Stuard, was admitted to the practice of law in the State of

Ohio on October 27, 1965.  Respondent Stuard is subject to the Rules of

Professional Conduct, the Code of Professional Responsibility, the Code of Judicial

Conduct and the Rules for the Government of the Bar of Ohio.

2.    Respondent Stuard has served as a judge on the Trumbull County Court of

Common Pleas since 1991.

3.    On December 28, 2001, Donna Roberts was indicted by a Trumbull County grand

jury for two counts of aggravated murder with death penalty specifications,

aggravated burglary and aggravated robbery.

4.    Roberts' case was assigned to Respondent Stuard, who presided over all trial court

proceedings in this matter.

5.    Roberts was represented by Attorney J. Gerald Ingram and Attorney John Juhasz

and the state was represented by Respondents Kenneth Bailey and Christopher

Becker.

6.    Roberts pled not guilty to all charges at her arraignment on December 31, 2001

2

7    On May 28, 2003, a jury found Roberts guilty on all four counts of the indictment.
     After Roberts' June 4, 2003 penalty phase hearing, the jury recommended a
     sentence of death.

8    Between the June 4, 2003 penalty phase hearing and the June 20, 2003 sentencing
     hearing, Respondent Stuard had four communications with Respondents Bailey
     and/or Becker regarding the Roberts sentencing opinion. These four
     communications were the initial conversation during which Respondent Stuard
     provided his notes to Respondents Bailey and/or Becker, Respondent Stuard's
     receipt of the draft entry from Respondent's Bailey and/or Becker, a telephone
     conversation regarding corrections Respondent Stuard wished to have made to the
     draft and Respondent Stuard's receipt of final draft from Respondent's Bailey and/or
     Becker.

9    Respondent Stuard does not specifically recall if these communications were with
     Respondent Bailey or Respondent Becker. However, Respondent Stuard is aware
     that Respondent Becker has admitted that he was the person who communicated
     with Respondent Stuard, and Respondent Stuard has no basis to doubt this
     assertion.

10   On or about June 18, 2003, Respondent Stuard spoke to Respondents Bailey
     and/or Becker in the secretarial area outside of his judicial office at the Trumbull

3

County Courthouse. Respondent Stuard's conversation with Respondents Bailey and/or Becker lasted 30 to 45 seconds.

11.    During this conversation, Respondent gave Respondents Bailey and/or Becker two pages of handwritten notes prepared by Respondent Stuard. Respondent Stuard then asked that Respondents Bailey and/or Becker to draft the Roberts sentencing opinion based upon these notes. Respondents Bailey and/or Becker agreed to draft the entry.

12.    Respondent Stuard had already decided to sentence Roberts to death at the time he provided these notes to Respondents Bailey and/or Becker. These notes were written on the front side of two sheets of 11" x 14" paper. Respondent Stuard does not recall if his notes completely filled the two pages of available space.

13     The final sentencing entry was divided into five sections: case history, facts, aggravating circumstances, mitigating factors and conclusions of law. Respondent Stuard's two pages of handwritten notes only contained detailed information for the aggravating circumstances and mitigating factors sections.

14.    Respondent Stuard did not provide any notes regarding the case history section. Respondent Stuard's notes for the fact section were limited to a statement directing Respondents Bailey and Becker to use the same facts as detailed in the earlier

4

sentencing opinion for the companion case involving co-defendant Nathaniel
Jackson

15.   For the conclusions of law section, Respondent Stuard simply advised Respondents
Bailey and Becker of his ultimate conclusion that the aggravating circumstances
outweighed the mitigating factors.

16   On or about June 19, 2003, Respondent Stuard was provided with a draft 17-page
sentencing opinion for his review.  Respondent Stuard found this entry on his desk
and is without personal knowledge how the entry arrived there.  Respondent Stuard
reviewed this draft entry and noted one or more corrections that he wished to have
made prior to his signature.

17.   A short time later on June 19, 2003, Respondent Stuard made a telephone call to
Respondents Bailey and/or Becker.  During the resulting conversation,
Respondents Bailey and/or Becker were asked to make one or more corrections to
the draft sentencing opinion.

18   Subsequent to this telephone call, Respondents Bailey and/or Becker made the
corrections requested by Respondent Stuard.  Respondent's Bailey and/or Becker
then provided Respondent Stuard with the final revised 17-page sentencing opinion

5

19. At the June 20, 2003 Roberts sentencing hearing, Respondent Stuard read and signed the sentencing opinion referred to in paragraph 18.

20. This 17-page sentencing opinion consists of over six pages of facts, three pages of aggravating factors, four pages of mitigating factors and three pages of conclusions of law.

21. None of the four oral and written communications between Respondent Stuard and Respondents Bailey and/or Becker detailed above took place on the record.

22. Respondent Stuard did not inform or consult Defense Counsel Ingram and Juhasz concerning his four communications with Respondents Bailey and/or Becker regarding the Roberts sentencing entry.

23. Respondent Stuard did not inform or consult Defense Counsel Ingram and Juhasz regarding the Roberts sentencing entry drafting process.

24. Respondent Stuard did not provide Defense Counsel Ingram and Juhasz with a copy of the Roberts sentencing entry until after the June 20, 2003 sentencing hearing.

6

25    On June 20, 2003, Respondent Stuard sentenced Roberts to death as well as two
      consecutive 10-year sentences for the aggravated robbery and aggravated burglary
      convictions.

26    At the sentencing hearing, Respondent Stuard read aloud his sentencing opinion.
      While Respondent Stuard was reading the sentencing opinion, Defense Counsel
      Ingram made an objection on the record

27    During a sidebar discussion that followed, Ingram stated that he observed
      Respondent Bailey "reading along" and turning pages in unison with Respondent
      Stuard while holding an unidentified document

28.   Respondent Stuard then identified the document as a copy of the sentencing entry
      and acknowledged that he had given handwritten notes to the Respondent's Bailey
      and/or Becker and instructed them to draft the Roberts sentencing entry.

29.   Ingram then offered a "vehement defense objection to the state's participation in the
      drafting of the Court's sentencing decision in ex parte proceeding."  Ingram further
      stated that defense counsel "did not know this, we did not know of this."

30    Roberts filed a motion for delayed appeal with the Supreme Court of Ohio on
      August 13, 2003 and the Court granted this request on September 24, 2003

7

31    In her appeal, Roberts raised 14 propositions of law, including an objection to the
      participation of Respondent's Bailey and Becker in drafting the sentencing entry and
      to the ex parte nature of that process

32    The Supreme Court of Ohio issued its decision on Roberts appeal on August 2,
      2006. After a review of Roberts' 14 propositions of law, the Supreme Court of Ohio
      held that Roberts failed to demonstrate any "error that would justify reversal of her
      conviction."

33    However, the Court reached a different conclusion regarding Roberts' concerns
      about the ex parte drafting process utilized for the Roberts sentencing opinion.

34    The Court held that Respondent Stuard's "sentencing opinion is so grievously
      flawed that it cannot properly support the sentence as imposed " As a result, the
      Court vacated Roberts death sentence and remanded the case to Respondent
      Stuard to "reconsider the imposition of the death penalty and to prepare a proper
      sentencing opinion."

35    The Court did not find that the entry drafting process constituted a due process
      violation of Roberts' rights, nor did it require that Respondent Stuard be removed
      from further handling of the Roberts case   Instead, Respondent Stuard was
      ordered to personally review and evaluate the evidence, weigh the aggravating
      circumstances against any relevant mitigating evidence and determine anew the

8

appropriateness of the death penalty as required by R.C. 2929.03. Respondent Stuard was further ordered to prepare an entirely new penalty opinion as required by R.C. 2929.03(F) and conduct whatever other proceedings are required by law and consistent with the Court's opinion.

36. Respondent Stuard has complied with the Court's mandate, prepared a new sentencing opinion and re-sentenced Roberts to death.

## STIPULATED VIOLATIONS

37. The conduct of Respondent Stuard violates the Code of Judicial Conduct Canon 2 [a judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity of the judiciary] and 3(B)(7) [a judge shall not initiate, receive, permit, or consider communications made to the judge outside the presence of the parties or their representatives concerning a pending or impending proceeding]

## WITHDRAWN VIOLATION

38. Relator and Respondent Stuard agree to the withdrawal of the allegation of a violation of Canon 3 [a judge shall perform the duties of judicial office impartially and diligently]

9

## STIPULATED MITIGATION

39    Respondent Stuard has no prior disciplinary record.

40    Respondent Stuard has cooperated with relator in the investigation of this matter.

41    Relator and Respondent Stuard stipulate to the admission of several character
      letters which will be submitted at the hearing.

## STIPULATED SANCTION

42    Respondent and relator stipulate that the appropriate sanction for Respondent
      Stuard's misconduct in this matter is a public reprimand.

## STIPULATED EXHIBITS

Exhibit 1    *State v. Roberts*, 110 Ohio St.3d 71, 850 N.E.2d 1168, 2006-Ohio-3665
Exhibit 2    Court docket for *State v. Roberts*, Case No. 01-CR-793, Trumbull County
             Court of Common Pleas
Exhibit 3    Transcript excerpt for *State v. Roberts*, Case No. 01-CR-793, Trumbull
             County Court of Common Pleas
Exhibit 4    Sentencing opinion for *State v. Roberts*, Case No. 01-CR-793, Trumbull
             County Court of Common Pleas
Exhibit 5    Sentencing opinion for *State v. Jackson*, Case No. 01-CR-794, Trumbull
             County Court of Common Pleas
Exhibit 6    Respondent's character letters [to be submitted at hearing]

10

## CONCLUSION

The above are stipulated to and entered into by agreement by the undersigned parties on this ___3___ day of ___MARCH___ , 2008.


_____
Jonathan E. Coughlan (0026424)
Disciplinary Counsel


_____
Robert R. Berger (0064922)
Assistant Disciplinary Counsel


_____
Charles Richards (0022128)
Counsel for Respondent Stuard


_____
John M. Stuard (0018610)
Respondent


11

Page 1

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1           BEFORE THE BOARD OF COMMISSIONERS

2              ON GRIEVANCES AND DISCIPLINE OF

3                 THE SUPREME COURT OF OHIO

4    In re:                      )

5    Complaint against:          )

6    Judge John Mason Stuard,  )

7    Kenneth Neil Bailey,        )

8    Christopher Dean Becker,  )

9            Respondents,    ) Case No. 07-078

10   Office of Disciplinary    )    CERTIFIED

11   Counsel                     )      COPY

12           Relator.            )    TRANSCRIPT

13                                - - -

14                          Ohio Judicial Center

                            65 South Front Street

15                          Room 106

                            Columbus, Ohio  43215

16                          Thursday, March 13, 2008

17           Met, pursuant to assignment, at

18           10:00 o'clock a.m.

19

20   BEFORE HEARING PANEL MEMBERS:

21           Hon. Thomas F. Bryant, Chair

22           Lynn B. Jacobs, Esq.

23           Lawrence Elleman, Esq.

24                          - - -

25

WWW.MCGINNISCOURTREPORTERS.COM



EXHIBIT
B

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 270

MC GINNIS & ASSOCIATES, INC.
614.431.1344    COLUMBUS, OHIO    800.498.2451

```
 1   APPEARANCES:
 2   ON BEHALF OF THE RESPONDENT,
 3   HON. JOHN MASON STUARD:
 4        Charles Richards, Esq.
 5        8600 East Market Street
 6        Suite 1
 7        Warren, Ohio  44484
 8        (330)373-1000       FAX:  (330) 394-5291
 9   ON BEHALF OF THE RESPONDENTS, KENNETH NEIL BAILEY
10   AND CHRISTOPHER DEAN BECKER:
11        Geoffrey Stern, Esq.
12        Rasheeda Khan, Esq.
13        S. Michael Miller, Esq.
14        Kegler, Brown, Hill & Ritter
15        Capitol Square
16        65 East State Street, Ste. 1800
17        Columbus, Ohio  43215-4294
18        (614) 462-5457      FAX:  (614) 464-2634
19   ON BEHALF OF THE RELATOR:
20        Robert R. Berger, Esq.
21        Assistant Disciplinary Counsel
22        The Supreme Court of Ohio
23        250 Civic Center Drive, Ste. 325
24        Columbus, Ohio  43215-7411
25        (614) 461-0256      FAX:  (614) 461-7205
```

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 271

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1                          I N D E X

2                             - - -

3    WITNESSES                                     PAGE

4    HON. JOHN MASON STUARD

5      Cross-examination by Mr. Berger              36

6      Cross-examination by Ms. Khan                64

7      Redirect examination by Mr. Richards         75

8      Recross-examination by Mr. Berger            77

9      Examination by Member Jacobs                 79

10     Examination by Chairman Bryant               82

11     Recross-examination by Ms. Khan              86

12   CHRISTOPHER D. BECKER, ESQ

13     Cross-examination by Mr. Berger              89

14     Direct examination by Mr. Miller            145

15     Examination by Member Jacobs                174

16     Examination by Chairman Bryant              182

17   KENNETH N. BAILEY, ESQ.

18     Cross-examination by Mr. Berger             116

19     Cross-examination by Mr. Richards           129

20   JOHN C. MYERS

21     Direct examination by Ms. Khan              189

22   HON. MATTHEW PUSKARICH

23     Direct examination by Ms. Khan              193

24   MARIA ROMANOWSKI SCHIMER, ESQ.

25     Direct examination by Ms. Khan              198

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 272

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1                      I N D E X (continued)

2                          - - -

3   WITNESSES                                     PAGE

4   BRAD GESSNER, ESQ.

5     Direct examination by Ms. Khan           203

6   PAUL MONROE

7     Direct examination by Ms. Khan           208

8     Examination by Member Jacobs             214

9     Examination by Chairman Bryant           216

10    Further direct examination by Ms. Khan   216

11  JOHN D. JUHASZ, ESQ.

12    Direct examination by Mr. Stern          218

13    Cross-examination by Mr. Berger          240

14    Examination by Member Jacobs             242

15                          - - -

16  EXHIBITS                      MARKED    RECEIVED

17  Relator Stuard Joint

18    Exhibit No. 1                 --        134

19    Agreed Stipulations

20  Relator Bailey/Becker

21    Joint Exhibit No. 1           --        134

22    Agreed Stipulations

23  Relator's Exhibit No. 1         --        134

24    Judgment Entry

25

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 273

MC GINNIS & ASSOCIATES, INC.
614.431.1344    COLUMBUS, OHIO    800.498.2451

1               I N D E X (continued)

2                     - - -

3    EXHIBITS                          MARKED      RECEIVED

4    Relator's Exhibit No. 2            --         134

5      Court Docket

6    Relator's Exhibit No. 3            --         134

7      Partial Transcript

8    Relator's Exhibit No. 4            --         134

9      Sentencing Opinion

10   Relator's Exhibit No. 5           --          134

11     Findings of Fact and

12     Conclusions of Law

13   Relator's Exhibit No. 6           --          139

14     Trumbull County Common Pleas

15     Court General Division

16   Respondents' Exhibit A           --          251

17     Deposition of Judge Stuard

18   Respondents' Exhibit B           --          251

19     Deposition of Mr. Becker

20   Respondents' Exhibit C           --          251

21     Case 99-64 Findings of Fact

22     and Conclusions of Law

23   Respondents' Exhibit D           --          251

24     Case 99-54 Entry

25

Page 6

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

```
 1                I N D E X (continued)

 2                    - - -

 3   EXHIBITS                       MARKED    RECEIVED

 4   Respondents' Exhibit E           --        251

 5      Deposition of Mr. Bailey

 6   Respondents' Exhibit F           --        251

 7      Iowa Supreme Court Opinion

 8   Respondents' Exhibit G           --        251

 9      Judgment Entry

10   Respondents' Exhibit H           --         --

11      Affidavit of Mr. Ingram

12   Respondents' Exhibit I           --        251

13      Affidavit of Judge Stuard

14   Respondents' Exhibit J           --        251

15      Letters Re: Mr. Becker

16   Respondents' Exhibit K           --        251

17      Letters Re: Mr. Bailey

18                    - - -

19

20          .

21

22

23

24

25
```

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

```
 1              P R O C E E D I N G S
 2                      -  -  -
 3                      Thursday, March 13, 2008
 4                      Morning Session
 5                      -  -  -
 6              CHAIRMAN BRYANT:  This is a formal
 7   hearing on, well, two complaints filed with the
 8   Board of Commissioners on Grievances and
 9   Discipline of the Supreme Court of Ohio.
10              In a moment, I'll have counsel for the
11   respective parties identify themselves for the
12   record.
13              Let the record show that the Respondent,
14   Judge John Mason Stuard, is present in the
15   courtroom.
16              JUDGE STUARD:  I am present, sir.
17              CHAIRMAN BRYANT:  And that Respondents,
18   Kenneth Bailey and Christopher Becker, are also
19   present.
20              MR. BECKER:  Present, Your Honors.
21              CHAIRMAN BRYANT:  The proceeding this
22   morning is held pursuant to provision of Rule V of
23   the Supreme Court Rules for the Government of the
24   Bar of Ohio governing disciplinary procedures that
25   have been adopted by the Supreme Court of Ohio.
```

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1          For purposes of this hearing, we will
2     refer throughout to the Board of Commissioners,
3     which consists of 28 members as the Board.  You're
4     all aware a formal complaint is heard before a
5     panel of three Commissioners, as provided in
6     Section 6(D) of the Governing Bar Rule V.  You
7     will, therefore, refer to the three members
8     sitting here this morning as the Hearing Panel.
9          Sitting on the Hearing Panel this morning
10    to my left is Ms. Lynn Jacobs of Toledo, Ohio; and
11    to my right is Mr. Lawrence Elleman of Cincinnati;
12    and I'm retired Judge Tom Bryant from the Third
13    District Court of Appeals.  I live in Findley, and
14    I am Chairman of the Panel this morning.
15         Now, let me state for the record, none of
16    the members of the Panel is a resident of the
17    appellate district from which the complaints
18    originated in this cause, and none of us served on
19    the Probable Cause Panel that reviewed this
20    matter.
21         As members of the Panel conducting this
22    formal hearing, we're here as an arm of the
23    Supreme Court of Ohio.  As a Panel under the
24    Rules, we are empowered to make findings of fact,
25    conclusions of law and recommendations.

MC GINNIS & ASSOCIATES, INC.
614.431.1344    COLUMBUS, OHIO    800.498.2451

1          The burden of proof is on the Relator to
2    establish misconduct.  It must be proven by clear
3    and convincing evidence.

4          After this hearing is concluded, this
5    Panel may, one, dismiss these complaints, or
6    either or any of them, recommend dismissal of the
7    Board -- to the Board, or find the Respondents are
8    guilty of misconduct and make a certified report
9    to the secretary for review by the Board.  The
10   Board then makes its final decision, including the
11   making of recommendations on the sanctions to the
12   Supreme Court of Ohio.

13         I expect the ordinary and usual conduct
14   of counsel that would be given if the Supreme
15   Court were conducting this hearing.

16         As far as members of this Panel are
17   concerned, we do not want to do anything that
18   would interfere or prevent the full and proper
19   representation on each side, but whenever and
20   wherever it's possible to enter into stipulations,
21   we ask that you give this your earnest
22   consideration so this matter may move along as
23   expeditiously as possible.

24         A word of caution, while the parties may
25   submit stipulations of both fact and rule

```
 1   violations, stipulations of rule violations could
 2   still be supported by sufficient facts which may
 3   come from the stipulations.  The Panel and the
 4   Board are not bound to accept stipulations of rule
 5   violations that are not so supported.
 6          So if you're not confident that the
 7   stipulations of fact result in a violation of the
 8   professional conduct rules, you may wish to
 9   present other evidence at this hearing.
10          Counsel for each party has received
11   prehearing instructions, and we ask that you
12   comply with them to the best of your ability.
13   Ordinary Rules of Evidence are observed, and if
14   there is an objection, please wait for a ruling
15   from the Chair.
16          At the conclusion of the testimony, any
17   witness may be questioned by members of the
18   Hearing Panel.  The Respondent may be required to
19   answer Panel Member questions under oath
20   regardless of whether the Respondent is called by
21   the parties as a witness, and all witnesses
22   testify under oath.
23          I now ask that counsel for the Relator
24   and counsel for the respective Respondents
25   identify themselves for the record.  For the
```

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

1   Relator.

2          MR. BERGER:  Robert Berger, for the

3   Relator, Office of Disciplinary Counsel.

4          CHAIRMAN BRYANT:  Judge Stuard.

5          MR. RICHARDS:  Charles L. Richards,

6   Warren, Ohio, for Respondent, Judge John Stuard.

7          CHAIRMAN BRYANT:  For Respondents Bailey

8   and Becker.

9          MS. KHAN:  Rasheeda Khan, Kegler, Brown,

10  Hill & Ritter, on behalf of the Respondents,

11  Mr. Becker and Mr. Bailey.

12          CHAIRMAN BRYANT:  One final note -- We

13  have another?  Yes.

14          MR. MILLER:  S. Michael Miller, Kegler,

15  Brown, Hill & Ritter, also on behalf of the

16  Respondents.

17          MR. STERN:  Geoffrey Stern, Kegler,

18  Brown, for Mr. Bailey and Mr.  Becker.

19          CHAIRMAN BRYANT:  Are any other members

20  of the firm present today?

21          MR. STERN:  We're bringing them in this

22  afternoon.

23          (Laughter.)

24          CHAIRMAN BRYANT:  One final note, under

25  Section 11(E) of Rule V, after a complaint is

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    certified by a Probable Cause Panel, the complaint
2    and all subsequent proceedings, including this
3    hearing, are open to the public.

4            It's come to my attention that there are
5    members perhaps of the press or the other media
6    present and members of the general public, and all
7    are welcomed here today.  I do wish to advise you
8    of Rule 12, Section B, that provides, in
9    substance, that the use of cameras, the use of
10   portable recording devices is prohibited in this
11   hearing unless prior authorization to use them has
12   been obtained by an order.  And I do advise you
13   that no one has made such an application, no such
14   order has been issued.

15           The -- Also, I wish to mention that since
16   this proceeding is open to the public, that we
17   expect members of the public to observe the same
18   decorum that is observed by the lawyers in this
19   case.  And any breach of the dignity of these
20   proceedings may result in your being asked to
21   leave the courtroom.

22           Now, we've entered into some -- Recently
23   the Panel has met with counsel, and I'd just like
24   to relate the way that I understand things are to
25   proceed this morning.  Before we take opening

WWW.MCGINNISCOURTREPORTERS.COM

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

 1     statements, I wish to advise that we're going to

 2     take the case of Judge Stuard's first this

 3     morning, that evidence, and that counsel for

 4     Respondents Becker will have the opportunity to

 5     cross-examine, and that counsel have agreed to

 6     stipulate the use of that cross-examination in the

 7     proceedings involving Respondents Becker and

 8     Bailey.

 9               Now, do I have a correct understanding of

10     the proceeding that counsel agreed to?

11               MR. STERN:  Yes.

12               MR. BERGER:  Yes, sir.

13               CHAIRMAN BRYANT:  Okay.  I also

14     understand that we will then proceed.  The

15     proceedings will involve the use of some character

16     witnesses, and letters will be submitted with

17     respect to those witnesses who do not testify.

18     And there's no objection to their receipt when the

19     proper time comes; is that correct?

20               MR. BERGER:  (Nodding).

21               CHAIRMAN BRYANT:  Very well.

22               Also, one other thing, that all the

23     parties -- counsel for the parties will make their

24     opening statements in the initial case of

25     Judge Stuard, and we will not repeat those in the

WWW.MCGINNISCOURTREPORTERS.COM

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    cases with Mr. Becker or Mr. Bailey.  Is that also
2    understood and agreeable with counsel?
3                MR. BERGER:  (Nodding.)
4                CHAIRMAN BRYANT:  Mr. Berger, do you have
5    an opening statement at this time?
6                MR. BERGER:  Your Honor, before I proceed
7    with the opening statement, I did have two
8    preliminary matters I'd like to address.
9                First, in the stipulations that were
10   submitted for Judge Stuard, there was a tab for
11   character letters, but none were included.  And
12   I've already provided those to opposing counsel.
13   If I may approach.
14                CHAIRMAN BRYANT:  Yes.
15                MR. BERGER:  A second matter I wanted to
16   raise, the parties previously agreed to stipulate
17   to an amendment of both of the disciplinary
18   complaints to correct a date.  And I'd just like
19   to put that stipulation on the record, that the
20   parties have stipulated that the Judge Stuard
21   complaint would be amended in Paragraphs 7, 8 and
22   10 to reflect the correct year as 2003 and not
23   2004.
24                And then the Bailey and Becker complaint,
25   Paragraphs 8, 9 and 11 would be amended to reflect

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

1   the correct year as 2003 instead of 2004.

2           Finally, I didn't know whether the Panel

3   wished us to address the motion in limine at this

4   time.

5           CHAIRMAN BRYANT:  Let's go back to your

6   motion for the amendment.  Is that your agreement,

7   Ms. Khan?

8           MS. KHAN:  That's correct, Your Honor.

9           CHAIRMAN BRYANT:  Do I understand this is

10  to be a correction by interlineation, and there is

11  an order in hand on that matter, is there not?

12          MR. BERGER:  That's correct, Your Honor.

13          CHAIRMAN BRYANT:  Do you agree?

14          MR. RICHARDS:  Yes, sir.

15          CHAIRMAN BRYANT:  Very well.  Now, on the

16  matter of the motion in limine, it's your motion,

17  Mr. Berger, if you wish to speak to your motion.

18          MR. BERGER:  Just briefly, Your Honor.

19          Our motion is made pursuant to Evidence

20  Rules 401, 402 and 602.  It's based upon an

21  indication from counsel for Bailey and Becker that

22  they intend to use evidence that is irrelevant,

23  improper, and from witnesses that lack personal

24  knowledge.

25          Specifically, they've indicated in their

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1   interrogatory responses, in their hearing brief,

2   and also at the trial deposition of

3   Attorney Ingram that they intend to elicit four

4   types of testimony that we would ask this Court to

5   prohibit.

6           First, testimony regarding the policies

7   of various courts, including Trumbull County and

8   other courts in Ohio, and how they approach the

9   preparation of sentencing entries.

10          Having witnesses who would have no

11  personal knowledge testify regarding the

12  intentions of the Respondents.

13          Having witnesses that have no personal

14  knowledge testify regarding their opinion of the

15  purpose and the meaning of Respondents' actions.

16          And finally, eliciting from fact

17  witnesses what appears to be expert opinion as to

18  whether Respondents' actions violate the Code of

19  Professional Responsibility.

20          CHAIRMAN BRYANT:  Ms. Khan.

21          MS. KHAN:  Your Honor, in our

22  intermemorandum and opposition to Relator's motion

23  in limine, we've already explained our position.

24          Most importantly, with respect to the

25  policy regarding asking prosecutors -- judges

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    asking prosecutors to prepare entries, we plan on

2    only introducing evidence regarding the practice

3    in Trumbull County.  All of the witnesses who will

4    be testifying today will be -- have firsthand

5    knowledge of this practice.  And it's important

6    and certainly relevant to this case as it explains

7    why the conduct occurred, to suggest -- or, to not

8    allow us to introduce this evidence, or to suggest

9    that these individuals acted alone for the first

10   time in an effort to do something improper.

11          With respect to Relator's objection to

12   testimony regarding -- What I believe he's

13   objecting to is the testimony from Mr. Ingram and

14   Mr. Juhasz, the attorneys representing Donna

15   Roberts.  They were the individuals who objected

16   on the record, they were there when Mr. -- they

17   were there when the judge and the Respondents

18   explained to them what had happened, what had

19   occurred.  And this conversation, this exchange

20   and the objection that was on the record occurred

21   a day after the communications at issue today took

22   place.

23          It's our position that their observations

24   and the explanations that were provided to them at

25   that time goes to, again, why the conduct

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

    1   occurred.  And it also goes to whether -- it also
    2   goes to aggravated -- aggravation and mitigation,
    3   whether they were sincere, whether they believed
    4   that someone was trying to gain an improper
    5   advantage, whether there was an improper motive.
    6           Mr. Berger is also objecting to testimony
    7   that has already come through the trial deposition
    8   of Mr. Ingram regarding whether he believed
    9   something improper occurred, whether -- whether he
   10   believed that -- whether he believed that he
   11   should be reporting any misconduct.
   12           Again, we are all, as lawyers, required
   13   to comply with DR 7-110(b).  Their opinions,
   14   again, almost immediately after these alleged
   15   communications took place, their opinions as
   16   lawyers is relevant to this case, and we believe
   17   that it should be heard by this Panel.  This is
   18   not a jury trial.  This Panel, it can assign the
   19   appropriate weight to it when it makes its
   20   determination.
   21           Thank you.
   22           CHAIRMAN BRYANT:  Mr. Berger.
   23           MR. BERGER:  Your Honor, I would just
   24   clarify that Relator has no objection to
   25   Mr. Ingram or Mr. Juhasz testifying regarding what

MC GINNIS & ASSOCIATES, INC.
614.431.1344    COLUMBUS, OHIO    800.498.2451

1    they actually witnessed with their own eyes,

2    including what happened at the sentencing hearing.

3            Our concerns are based upon when they

4    offer opinions as to what happened before and what

5    the actions of the Respondents did and did not

6    mean when they were not present during those

7    transactions.

8            CHAIRMAN BRYANT:  Okay.  Thank you,

9    Counsel.

10           With regards to the motion in limine,

11   it's a very preliminary ruling.  How I'm ruling

12   might be different in the future in the event

13   certain evidence is offered.  It's not the same as

14   a motion to suppress.  In my own view, a motion in

15   limine, however, requires a certain amount of

16   specificity so that the Panel can understand

17   exactly what is to be excluded.

18           As I read the motion, it generally would

19   require me to issue an order that says you cannot

20   violate the Rules of Evidence.  That's, I think,

21   too general.  So in that regard, I'm going to

22   overrule the motion in limine.  However, that does

23   not foreclose the objection, the proper objection,

24   timely objection to the introduction of any

25   witness, the testimony of any witness as it may

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    relate to matters of irrelevancy, immateriality,

2    hearsay, lack of firsthand knowledge or any such

3    matters.

4            Particularly in this case, the question

5    of relevancy is intense, because there has been an

6    affirmative defense, I guess, stated.  I guess

7    that's what you would call it.  And an affirmative

8    offense that, in effect, says this is why we did

9    something.  Why we did something is the only

10   conclusion in this case, and why anything is done

11   is for the Panel to decide from the facts that

12   have been introduced and proven and accepted by

13   the Panel.  Therefore, I would not be inclined to

14   accept any expert testimony with regard to such

15   matters.  That's what the Panel is going to do.

16   You might think about that.

17           But in any event, the motion is

18   overruled.  Objections will be received and ruled

19   upon as they are appropriate throughout the

20   proceeding.

21           Mr. Stern.

22           MR. STERN:  Excuse me.  Could the Panel

23   move the microphones a little closer?

24           CHAIRMAN BRYANT:  Better?

25           MR. STERN:  Thank you.  One more time.

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344    COLUMBUS, OHIO    800.498.2451**

1    Yes, sir.  Thank you.

2              CHAIRMAN BRYANT:  Any question about the

3    ruling?

4              MS. KHAN:  No, Your Honor.

5              MR. BERGER:  Thank you.

6              CHAIRMAN BRYANT:  Very well.  You may

7    call your first witness -- or, your opening

8    statement, rather.

9              MR. BERGER:  In December of 2001, the

10   aggravated murder trial of Donna Roberts was

11   assigned to the docket of Judge John Stuard.  The

12   State was represented by Respondent, Kenneth

13   Bailey, and Respondent, Christopher Becker.

14             In May of 2003, the jury found Roberts

15   guilty; and in June of 2003, the jury recommended

16   a sentence of death.

17             Between the June 4th, 2003 jury

18   recommendation of death and the June 20th, 2003

19   sentencing hearing, the evidence will show

20   Respondents Stuard, Bailey and Becker engaged in

21   at least four ex parte communications regarding

22   the drafting and preparation of the Roberts

23   sentencing opinion.

24             With regard to the first ex parte

25   communication, the evidence will show it occurred

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

```
1   on or about June 18th, 2004.  On that date,

2   Respondent Stuard spoke to Respondent Becker and

3   gave Respondent Becker two pages of handwritten

4   notes.  Respondent Stuard then asked Respondent

5   Becker if he and Respondent Bailey would draft and

6   prepare the sentencing opinion for the Roberts

7   case based upon these notes.  Respondent Becker

8   agreed to do so.

9           Respondent Becker then advised Respondent

10  Bailey, and Respondent Bailey agreed to

11  participate.  Mr. Bailey and Mr. Becker then spent

12  four hours on June 18th and June 19th jointly

13  writing and editing the draft opinion for

14  Judge Stuard's review.

15          The evidence will show the second

16  ex parte communication took place on June 19th,

17  2003.  With the full knowledge and agreement of

18  Mr. Bailey, Mr. Becker then caused a copy of their

19  17-page typed draft opinion to be delivered to

20  Judge Stuard.  This was done so that Judge Stuard

21  could review the opinion and provide any comments

22  or corrections that were necessary.  Judge Stuard

23  received and reviewed the draft opinion and noted

24  one or more necessary changes.

25          The evidence will show the third ex parte
```

1    communication took place a short time later on

2    June 19th, 2003.  At that point, Respondent Becker

3    was contacted by Judge Stuard or a member of his

4    staff, and asked to make one or more changes to

5    the draft.

6            The evidence will show the fourth ex

7    parte communication took place next.  First,

8    Respondent Becker made the changes requested by

9    Respondent Stuard, then Mr. Becker caused a copy

10    of the final draft of this 17-page typed opinion

11    to be delivered to Judge Stuard.

12            The evidence will show that the

13    Respondents Stuard, Bailey and Becker did not

14    inform or consult defense counsel for Donna

15    Roberts about their four separate ex parte

16    communications or the ex parte sentencing entry

17    drafting process.

18            The evidence will also show that these

19    three Respondents did not provide defense counsel

20    for Donna Roberts a copy of the final sentencing

21    entry, or any of the other documents that they

22    exchanged between them.

23            Ultimately, defense counsel for Roberts

24    discovered the ex parte entry drafting process and

25    raised a vehement objection.  On appeal, the

**MC GINNIS & ASSOCIATES, INC.**
614.431.1344   COLUMBUS, OHIO   800.498.2451

1   Supreme Court of Ohio upheld Roberts' conviction,

2   but remanded the matter for Respondent Stuard to

3   prepare a proper sentencing opinion.

4           Further, the Supreme Court of Ohio held

5   that the actions of Respondents Stuard, Bailey and

6   Becker were inconsistent with the ethical rules.

7           Thank you.

8           CHAIRMAN BRYANT:  Mr. Richards.

9           MR. RICHARDS:  May it please the Panel,

10  Respondent, Judge Stuard, has entered into a set

11  of stipulations with respect to this matter.  I

12  will only briefly call to the Panel's attention a

13  couple things that it should be aware of as we

14  proceed.

15          There is no stipulation as to whether

16  Judge Stuard ever had a discussion with either

17  Prosecutor on the merits or the substance of the

18  case.

19          Secondly, if you compare the evidence

20  that you're going to hear in this hearing with the

21  evidence that appears in the Supreme Court's

22  opinion, we say that it's a fair conclusion that

23  the Supreme Court lost its way because it simply

24  did not have all the facts.

25          Thank you very much.

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1  profession and who love what they do.  They try

2  the kind of cases -- They are the kind of lawyers

3  that inspire other people to want to be lawyers.

4  Again, neither of them have a disciplinary record.

5          As Relator has explained, and as this

6  Panel is well aware, this case -- the case that

7  brought us here today is State versus Donna

8  Roberts.  The companion case to State versus Donna

9  Roberts was State versus Jackson.  Nathaniel

10  Jackson and Donna Roberts conspired together to

11  kill her husband.

12          The Nathaniel Jackson case came up before

13  Donna Roberts.  He had been sentenced to death.

14  His trial was over before Donna Roberts' case

15  began.  Judge Stuard presided over both of those

16  cases -- the trials in both of those cases.

17  Respondents, Mr. Becker and Mr. Bailey, were the

18  trial lawyers only in the Donna Roberts matter.

19          After the jury returned the verdict in

20  the Donna Roberts case, there was a mitigation

21  hearing.  As this Panel is well aware through the

22  pleadings and through our hearing briefs, that

23  Donna Roberts specifically asked for the death

24  penalty.  She did not submit any mitigating

25  evidence.  And at the close of that hearing, the

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    jury returned a verdict of death.

2            Sometime after that return of verdict,

3    but before -- but before Wednesday, June -- two

4    days before the hearing, Judge Stuard on his own,

5    independently came to his own conclusion about

6    Donna Roberts' sentence.  He, on his own, wrote

7    his notes out on two pieces of legal paper, his

8    decision -- his decision about this case.  No one

9    contributed anything to that decision.  Nobody had

10   contacted him regarding his decision.  No one

11   influenced his decision.

12           Two days before the hearing -- before the

13   sentencing hearing was to take place, Mr. --

14   Judge Stuard saw Mr. Becker standing outside his

15   chambers speaking to one of his office staff.

16   Judge Stuard approached Mr. Becker, handed him the

17   notes, and asked him to prepare the sentencing

18   entry.  This exchange lasted between 30 to 45

19   seconds.

20           Again, during this 30- to 45-second

21   exchange, no facts of the case were discussed.

22   Judge Stuard had already made his decision.  There

23   was no discussion on the merits.  There was no

24   attempt to influence his decision.

25           As you have already seen in our

Page 28

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1   pleadings, it's our position that Judge Stuard's
2   request to Mr. Becker was not an unusual or
3   unreasonable request.  The evidence will show that
4   this practice has been in place -- the practice of
5   prosecutors preparing sentencing entries at the
6   request of a judge has been in place long before
7   either Mr. Becker or Mr. Bailey began practicing
8   in Trumbull County.

9           You will hear from the Respondents and
10  probably Judge Stuard that this -- the genesis of
11  this practice, this procedure in Trumbull County
12  was probably born out of convenience.  The judges
13  in Trumbull County do not have secretaries or
14  staff attorneys.  The prosecutors, however, do
15  have secretaries and they have many more
16  resources, they have computers.

17          And, in fact, this practice has been in
18  place for so long that the courthouse and the
19  Prosecutor's Office have a shared computer drive
20  that allows for instant and convenient access of
21  providing the sentencing entries and other entries
22  to the courthouses allowing for efficient
23  dispensing of decisions.

24          You will also meet today Trumbull County
25  Prosecutor Dennis Watkins.  He's been a Prosecutor

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1     at Trumbull County for 27 years.  He will explain
2     to you the practice, and he will explain to you up
3     until -- he will explain to you, up until Judge
4     O'Connor's opinion in State versus Roberts, why he
5     didn't think anything was wrong with allowing his
6     Prosecutors to prepare sentencing entries at the
7     request of a judge.

8              You will hear from Judge Stuard.  I will
9     ask him to talk about what he had already
10    testified in his deposition, specifically that it
11    never occurred to him during that 30- to 45-second
12    exchange that the exchange was improper.

13             The same applies to Mr. Becker and
14    Mr. Bailey.  They followed the instructions of the
15    Court.  They had been around -- The practice had
16    been around for so long, they didn't question it.
17    They believed that they should comply with the
18    Court's request out of their own perceived duties
19    as officers of the Court and as Prosecutors.

20             Again, the evidence will show that there
21    was no dishonest or selfish motive.  There was no
22    intent to influence the judge.  There was no
23    intent to gain an unfair advantage.  Instead, the
24    parties here in earnest were simply working
25    together towards ensuring that deadlines were met,

MC GINNIS & ASSOCIATES, INC.
614.431.1344    COLUMBUS, OHIO    800.498.2451

1    things didn't drag on and the system was working

2    efficiently.  The evidence will show that these

3    were the only motives of Mr. Becker and Mr. Bailey

4    when they typed the sentencing entry.

5            As this Panel is aware, Judge Stuard and

6    his counsel have entered into a set of

7    stipulations with Relator, two violations of the

8    Judicial Code and a jointly recommended sanction,

9    a set of factual stipulations.  We disagree with

10    those stipulations, and believe that Mr. Becker

11    and Mr. Bailey specifically should not be held to

12    those facts in those stipulations, and certainly

13    they should not be punished more severely than

14    Judge Stuard is, as Relator has recommended in his

15    brief.  There is no basis whatsoever to suggest

16    that they should be punished more severely than

17    the Judge for the conduct at issue in this case.

18            We also believe that the stipulations,

19    specifically the factual stipulations, are

20    overstated.  Relator is saying that there were

21    four communications.  We submit to you that

22    there's only one exchange that should be -- that

23    should be considered by this Panel, that 30- to

24    45-second exchange between Mr. Becker and

25    Mr. Bailey.  The other three exchanges that took

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

```
 1    place were the delivery of the drafts via a shared
 2    computer network and the revision of typos.
 3              As we have explained in our trial brief,
 4    the Advisory -- the Advisory Committee notes --
 5    or, the official opinions under the rules
 6    specifically exclude nonmerit communications.
 7    Clearly, these last three communications were not
 8    on the merits.  These were clearly procedural,
 9    secretarial-type things.
10              More importantly, throughout the
11    stipulations, Relator is asserting that both --
12    that Becker -- Mr. Becker and/or Mr. Bailey
13    participated in these communications.  You will
14    hear no evidence that Mr. Bailey had any
15    communications with the Judge or any of his staff
16    during the time period at issue today.  There is
17    no basis for him being here today.
18              Relator suggests in his brief that by
19    participating in revising the typos or revising
20    the brief or revising the sentencing opinion is
21    somehow parlayed into a violation of DR 7-110(b).
22    Even the broadest interpretation of the rules
23    would not permit, under the standard of clear and
24    convincing evidence, that that would be permitted.
25    That's clearly an overstatement.  There is also no
```

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    evidence to suggest that Mr. Becker and Mr. Bailey
2    together participated in any communications with
3    the judge and/or his staff.

4           As we've explained in our brief, we do
5    believe that this is a case of first impression.
6    And that while DR 7-110(b) has been around for a
7    long time, there has been no guidance from this
8    Court -- from the Supreme Court on specifically
9    what constitutes nonmeritous discussion.  We
10   believe there is no case law in Ohio where lawyers
11   have been disciplined under these circumstances
12   for typing an entry at the request of a judge who
13   has already made his decision after the evidence
14   was already in.

15          The guidance in Judge O'Connor's
16   decision, again, we believe should be applied
17   prospectively.  Again, in light of the good-faith
18   intentions of everyone involved and in light of
19   this long-standing practice, we believe that an
20   advisory opinion would be more appropriate rather
21   than singling out these two honorable lawyers for
22   being responsible for a practice that they didn't
23   start and that they only participated in with only
24   good intentions.

25          You will also learn in these proceedings

MC GINNIS & ASSOCIATES, INC.
614.431.1344    COLUMBUS, OHIO    800.498.2451

1    that the practice has stopped as a result of this

2    opinion.  We all know where the boundary lies.  If

3    further clarification is needed, that should be

4    done in an advisory opinion.

5            As this Panel is well aware, the purpose

6    of the disciplinary system is to protect the

7    public.  It is simply unfair and unnecessary to

8    suggest the public needs to be protected against

9    these honorable lawyers.  They should not be

10    singled out.

11            You will also hear from numerous

12    character witnesses today, as well as in our

13    character letters who will testify as to the

14    character, reputation and integrity of Mr. Becker

15    and Mr. Bailey.

16            At the close of the hearing, we will ask

17    that, in light of the lack of clear and convincing

18    evidence of a willful breach and the abundance of

19    mitigating factors present, that the charges

20    against Mr. Becker and Mr. Bailey be dismissed.

21            Thank you.

22            CHAIRMAN BRYANT:  I think that's all

23    counsel.

24            Mr. Berger.

25            MR. BERGER:  Your Honor, prior to calling

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    our first witness, I would just ask that there be

2    a separation of witnesses if there's anyone in the

3    room that's going to be testifying.

4         CHAIRMAN BRYANT:  Very well.  There's

5    been a motion for separation of witnesses, which

6    the Chair grants.  If all persons who are in the

7    courtroom who are not parties to the proceedings

8    before the Panel will please leave the room and

9    sit in Room 108 until you are called.  I ask that

10   you not discuss your testimony with other

11   witnesses, either before or after you have

12   testified, until this proceeding has ended.

13        I'll rely on counsel to police the

14   matter.  I don't know who those witnesses might

15   be.

16        MR. BERGER:  Thank you, Your Honor.

17        Relator calls Respondent, Judge John

18   Stuard.

19        CHAIRMAN BRYANT:  Mr. Stuard, if you

20   would come forward to be sworn.

21        Judge Stuard, pull that speaker down

22   close to speak into it.  I think we'll be able to

23   hear you much more easily.

24        JUDGE STEWARD:  I do not have a loud

25   voice.  Can you hear me okay?

1          CHAIRMAN BRYANT:    Yes.

2          JUDGE STUARD:    Okay.

3          (Witness placed under oath.)

4                          - - -

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 30

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

```
 1              HONORABLE JOHN MASON STUARD
 2   of lawful age, being by me first duly placed under
 3   oath, as prescribed by law, was examined and
 4   testified as follows:
 5                   CROSS-EXAMINATION
 6   BY MR. BERGER:
 7       Q.   Good morning, Your Honor.
 8       A.   Good morning, sir.
 9       Q.   If you could state your name and your
10   business address, please.
11       A.   My name is John Mason Stuard, Senior.  I
12   am employed by Trumbull County in the State of
13   Ohio.
14            CHAIRMAN BRYANT:  Now I can't hear you,
15   Judge.
16            THE WITNESS:  Okay.  I'm sorry.  My
17   business address is 161 -- yeah, 161 High Street,
18   Warren, Ohio.
19   BY MR. BERGER:
20       Q.   And you were admitted to the practice of
21   law in October of 1965?
22       A.   I was.
23       Q.   And you entered into full stipulations in
24   this matter?
25       A.   After much debate between my attorney, he
```

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 304

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    finally convinced me that those facts are

2    factually correct.  We have arguments, of course,

3    on what they mean.

4         It took some time for Mr. Richards to

5    make me see the light that that was part of the

6    holding of the case, that there was ex parte

7    communication.  My thought was that was incorrect.

8    But even if it is, that's the holding of the case,

9    so we accept that as such.

10        We just do not agree on the implication

11   of those facts, but the facts have been stipulated

12   to as they are contained in that document.

13   Q.   And if you take a look, there's a black

14   notebook in front of you there, it says "Agreed

15   Stipulations".  If you'd open it up.

16   A.   The last page?

17   Q.   No, to the front.  All the way to the

18   front.

19   A.   Agreed stipulations.

20   Q.   Those are the stipulations labeled

21   Relator Stuard Joint Exhibit 1.  Those are the

22   stipulations that you entered into?

23   A.   I have not read this final draft.  Yes.

24   These are the correct --

25   Q.   And on the last page before the

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    stipulations begin, that's your signature -- I'm

2    sorry, the last page before the exhibits begin,

3    that's your signature?

4        A.    That is my signature.

5        Q.    All right.  And you signed these

6    stipulations voluntarily and willingly?

7        A.    I did.

8        Q.    All right.  And these stipulations

9    represent your best recollection of what occurred?

10       A.    They do.

11       Q.    All right.  You are currently a judge in

12   the Trumbull County Court of Common Pleas?

13       A.    I am.

14       Q.    And you've held that position since 1991?

15       A.    January 2nd, I believe, yes, '91.

16       Q.    And prior to that, you were a County

17   Court Judge from 1981 to 1990?

18       A.    I was.

19       Q.    And prior to that, there was a period of

20   about two, two-and-a-half years that you were a

21   Warren City Prosecutor?

22       A.    That was back in the late '60s,

23   two-and-a-half years, I believe, yes, sir.

24       Q.    All right.  And you engaged in private

25   practice from approximately 1965 to 1990?

WWW.MCGINNISCOURTREPORTERS.COM

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

1      A.    That is correct.

2      Q.    All right.  Let's talk about the Donna

3   Roberts case.  In December of 2001, Donna Roberts

4   was indicted by a Trumbull County Grand Jury for

5   two counts of aggravated murder with death penalty

6   specifications, aggravated burglary and aggravated

7   robbery?

8      A.    That is correct.

9      Q.    And her case was assigned to you?

10     A.    It was.

11     Q.    And you presided over all the trial court

12  proceedings?

13     A.    I did.

14     Q.    And Roberts was represented by Attorneys

15  J. Gerald Ingram and John Juhasz?

16     A.    Two very capable lawyers, yes, sir.

17     Q.    And the State was represented by

18  Respondent, Kenneth Bailey, and Respondent,

19  Christopher Becker?

20     A.    Also two very capable lawyers.

21     Q.    And Roberts pled not guilty to all

22  charges?

23     A.    She did.

24     Q.    And ultimately in May of 2003, a jury

25  found her guilty on all four counts of the

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344    COLUMBUS, OHIO    800.498.2451**

1    indictment?

2        A.    They did.

3        Q.    And after her June 4th, 2003 penalty

4    phase hearing, the jury recommended a sentence of

5    death?

6        A.    They did so.

7        Q.    On or about June 18th, 2003, you

8    approached Respondent Bailey or Respondent Becker

9    and asked them to draft and prepare the Roberts

10    sentencing opinion?

11        A.    I did not and do not today remember who

12    it was.  But from the facts as they have been

13    related, I believe now that it must have been

14    Mr. Becker who -- I apparently became aware he was

15    out in the hallway, or where my two ladies work.

16            I had prepared, had my decision

17    finalized, I had written it down as to the

18    information I felt was necessary for them to

19    complete the judgment entry.  Went out and

20    delivered that to him.  Had no conversation with

21    him about the merits of it.  I would not do that,

22    nor would they.  The Grievance Committee is taking

23    the position that that was a communication, an ex

24    parte communication.

25            When the draft was sent over, I have no

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    knowledge of how, it was on my desk.  That is your

2    second communication.  My remembrance was that I

3    had called and I spoke to one of them.  I don't

4    recall which one.

5           MEMBER JACOBS:  Excuse me, could you

6    speak into the microphone a little bit more?  I

7    can't hear you.

8           THE WITNESS:  Yeah.  I'm sorry.

9           There is a -- somewhat of a problem of

10   remembering what form that communication was.  I

11   understand from different depositions that it may

12   have been my Bailiff, Laurie, who called over with

13   whatever changes I wanted.  I don't truly

14   remember, although my best remembrance is, and it

15   seems natural, I would have picked the phone up

16   and called and said what corrections I wanted.

17          Then, of course, the fourth ex parte

18   that -- from the position of the stipulations is

19   that when the draft -- final draft was sent back

20   to me, that was another communication.  That's the

21   best I remember about that process.

22   BY MR. BERGER:

23   Q.   All right.  Let's back up and look at

24   these individually.

25          On June 18th of 2003, you approached

1    either Mr. Bailey or Mr. Becker.  You indicated

2    you don't remember which one.

3        A.    I truly don't remember.  I think it was

4    Mr. Bailey from what I've heard since -- or, I

5    mean, Mr. Becker.

6        Q.    But your recollection is you don't recall

7    which one?

8        A.    I do not recall.

9        Q.    All right.  And you asked one of them to

10    prepare the Roberts sentencing opinion?

11        A.    I did.

12        Q.    All right.  And then you worked with them

13    to create and finalize the Roberts sentencing

14    opinion?

15        A.    No.  That's the part no one seems to get

16    straight of it.  I didn't work with them on

17    anything.  I asked them to do it.  I believe in

18    our depositions you asked me some questions about

19    that, and I used incorrect terminology.  I said,

20    well, it's boilerplate when you questioned me on

21    that, and I said I misspoke.  That was not the

22    concept I was trying to convey.  Formalistic is a

23    better term.

24            When I started practice, even when I

25    became a Judge back in '81, sentences didn't have

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

1    all this repeating the same thing over and over

2    and over that we have now.  The form has taken

3    over as much as the substance.  There's always a

4    fear that I suspect judges are not as bright as

5    they should be, and that they're going to leave

6    out some of these things that have to be in there.

7           Once that information was given by me to

8    them, they know the criminal requirements as good

9    or better than I do as to what is necessary in a

10   judgment entry.  I have the final approval.

11   They're not producing any of the substance of the

12   case.

13          Believe me, knowing both of these

14   gentlemen, you would know that if they thought --

15   had any thought crossed their mind that this was

16   an improper action, well, you can imagine what

17   they would have told me to do with my paper.

18   There was no question in anybody's mind, and not

19   in mine for sure, and I'm sure in their minds,

20   that there was anything improper about this.  Had

21   there been, it would never have occurred.

22      Q.   Your Honor, can we get back to the

23   question that I had asked?

24      A.   Surely.

25      Q.   So are you denying that you worked with

Page 4

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1   them to finalize the Roberts sentencing opinion?

2      A.   See, you're -- we're playing with words

3   again.  Did I give them two sheets of paper and

4   ask them to prepare the final judgment entry?  I

5   did.

6           Did I work with them in the sense that I

7   take that?  No.  Definitely not.

8      Q.   Well, let's do this, let's walk through

9   what happened --

10     A.   Fine.

11     Q.   -- more specifically.

12          It's your recollection that there were

13  four interactions between you and Mr. Bailey

14  and/or Mr. Becker.  There was the in-person

15  conversation during which the request was made to

16  prepare the entry?

17     A.   That's what it was, a request and that

18  was it, the sum total of the conversation.

19     Q.   Then you received a paper copy of the

20  draft entry that had been prepared for you?

21     A.   I did.

22     Q.   All right.  Next, you had a -- it's your

23  recollection that you had a telephone conversation

24  regarding one or more changes that you wished to

25  have made?

Page 4:

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1     A.    That's my recollection, yes.

2     Q.    All right.  Finally, you were provided

3   with a final copy of the entry?

4     A.    That is correct factually.

5     Q.    All right.  You're aware that Mr. Becker

6   has testified at his deposition that he was the

7   person that you spoke with?

8     A.    I am aware of that.

9     Q.    And you don't have any reason to dispute

10  that?

11    A.    I do not.

12    Q.    All right.  Let's talk about these

13  interactions individually.

14          The first ex parte communication happened

15  on or about June 18th, 2003, outside your judicial

16  office.

17    A.    Yeah.  My office sits back along a narrow

18  corridor, and the main office, my Reporter and my

19  Bailiff have their desk.  My best recollection is

20  I heard Chris' voice out there.  Prosecutors are

21  in and out all the time out in the outer office,

22  so are defense lawyers.  I probably heard his

23  voice.

24          I had my decision made, figured it's an

25  opportune time to give it to him.  I walked out,

Page 46

1   said what I testified to.  That was the last of
2   it.  I walked back into my room.
3       Q.   And at that time, you gave Mr. Bailey or
4   Mr. Becker two pages of handwritten notes that you
5   had previously prepared?
6       A.   That's the best of my recollection, yes.
7       Q.   And these notes were written on 11-by-14
8   paper written on one side?
9       A.   Making an assumption there.  That's what
10  I always use.
11      Q.   All right.  And you're not sure if the
12  two pages were actually full of notes or not?
13      A.   I cannot tell you.  All that I can
14  remember is that I went through what I felt was
15  necessary for them to know what my decision was to
16  reduce it into a form that was required.
17           In this particular case, it was a very
18  unusual criminal case in that Ms. Roberts would
19  not permit her attorneys to offer any mitigating
20  evidence.  She gave an hour-and-15-minute
21  dissertation to the jury where she accused the
22  jury of not understanding things, of not
23  sympathizing with her, and ended up by asking the
24  jury to follow the duty she heard them testify
25  they would follow, and to go back and return a

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1   death verdict.

2            There was absolutely no mitigation

3   evidence presented; however, I'm still required

4   individually to go through the mitigating and the

5   aggravating factors and to weigh each against each

6   other and back and forth.  I did that.  That was

7   my work product that I gave to these gentlemen,

8   carrying to a final form following the formula

9   that I knew they knew was required.  That's the

10  short of it.

11       Q.   All right.  Let's go back to that

12  encounter where you provided the two pages of

13  notes.

14       A.   Uh-huh.

15       Q.   When you provided the notes, you asked

16  them to prepare the entry for you --

17       A.   I did.

18       Q.   -- based upon these notes?

19       A.   That's my recollection.

20       Q.   All right.  And Respondent Bailey or

21  Respondent Becker agreed to do so?

22       A.   I don't even remember that.  I don't

23  remember what response, because I don't even

24  remember actually who I gave them to.

25       Q.   But clearly they agreed to do so because

MC GINNIS & ASSOCIATES, INC.
614.431.1344    COLUMBUS, OHIO    800.498.2451

1    you were later provided --

2        A.    Clearly.

3        Q.    All right.  The structure of the final

4    decision was divided into five sections?

5        A.    Yes.

6        Q.    There was a Case History section, a Facts

7    section, an Aggravating Circumstances section, a

8    Mitigating Factors section and a Conclusions of

9    Law section; isn't that correct?

10       A.    That is correct.

11       Q.    All right.  And the notes that you

12   provided to Mr. Bailey or Mr. Becker only

13   contained detailed information on the aggravating

14   circumstances and the mitigating factors?

15       A.    That's correct.  Now, there's one other

16   factor here.  We had these two companion cases.

17   We all knew the facts, we had gone through --

18   through two trials.

19             I had individually in the Jackson case

20   reviewed all the evidence on the second phase.  I

21   had, again, done the same thing on the Roberts

22   case.  This was not a question of the facts not

23   being clearly available to anyone.

24             I felt it not necessary to go over all

25   the facts again.  They had gone through them, I

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    had gone through them, they were available from

2    the Jackson case.  I made an assumption, which was

3    correct, that they would just merely state the

4    facts, making the appropriate changes, and as far

5    as pronouns and whatever, and the facts were

6    entirely similar on both cases.

7         Q.   You didn't provide any information in

8    your two pages of notes on the Case History

9    section of the final decision?

10        A.   No.  Let's be clear about this.  The only

11   thing I gave to them was my decision on the second

12   phase, what was my decision based on the evidence.

13        Q.   All right.  Your notes that were related

14   to the facts said something like use facts in

15   Jackson case or same facts in Jackson case,

16   something like that?

17        A.   The best I recall on that is they told me

18   to follow the previous entries that had been

19   entered on the Jackson case.  Had I sat down and

20   gone through and written up everything detailed

21   myself, that's exactly what I would have done,

22   would have taken the entry in the Jackson case,

23   looked at the facts again from Donna Roberts'

24   standpoint, and probably used the Jackson form as

25   a form for this case.

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

```
 1              Facts were the same, everything was the

 2    same except that in Jackson, he had presented some

 3    mitigating factors, which Donna Roberts did not.

 4         Q.   Regarding the Conclusions of Law section,

 5    you advised in your notes that the aggravating

 6    circumstances outweighed the mitigating factors.

 7    That was pretty much the extent of your notes?

 8         A.   That was my conclusion.

 9         Q.   All right.  If you take a look at the

10    stipulations in front of you, there's a Stipulated

11    Exhibit 4 and a Stipulated Exhibit 5.

12              Stipulated Exhibit 4 is the Roberts entry

13    that we were just discussing; isn't that correct?

14         A.   Yes.

15         Q.   And Stipulated Exhibit 5 is the Jackson

16    entry that you --

17         A.   Yes.

18         Q.   -- were mentioning a moment ago?

19         A.   Yes.

20         Q.   All right.  Let's talk about the second

21    ex parte communication after you had provided the

22    notes on June 18th.

23         A.   Excuse me, do you mind if I have that

24    water bottle back there?  For some reason, I have

25    a dry mouth.  Thank you, Mr. Berger.
```

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

```
 1      Q.   Certainly.

 2           Let's talk about the second ex parte

 3   communication.  The next communication between you

 4   and Respondents Bailey and Becker took place on

 5   June 19th when you received a draft copy of the

 6   sentencing entry; isn't that correct?

 7      A.   Again, I assume the date is correct, but

 8   I had a conversation, yes.

 9      Q.   And this draft entry was provided to you

10   for your review.  And this draft entry had

11   expanded your two pages of notes to a 17-page

12   typed --

13      A.   That is correct.

14      Q.   -- opinion?

15           And you reviewed this entry after you had

16   received it?

17      A.   Quite thoroughly.

18      Q.   And you determined that one or more

19   changes needed to be made?

20      A.   That's correct.

21      Q.   And you don't specifically recall what

22   these changes were?

23      A.   I do not.

24      Q.   And -- But it's your belief that they

25   weren't substandard?
```

1      A.    Something I thought should be changed,

2    yes.

3      Q.    All right.   Let's talk about the third ex

4    parte communication.   After you had reviewed the

5    entry and noted one or more changes that you

6    wanted made, it's your recollection that you then

7    called Mr. Bailey or Mr. Becker about the changes?

8      A.    That is my recollection, and that is what

9    I would usually have done.   So I think my

10   recollection is probably correct.   Others I don't

11   think agree with that, and I don't remember.

12         But I would say that my ordinary course

13   of doing things, I would have picked the phone up

14   as a most expedient way of making -- having the

15   changes made.

16     Q.    And you provided a verbal list of these

17   one or more changes, you informed them of what you

18   wanted changed?

19     A.    Again, I'm assuming that's what I did.

20     Q.    All right.   Let's talk about the fourth

21   ex parte communication.

22         MS. KHAN:   I'm going to just object to

23   his continuous reference to this as an ex parte

24   communication.   That's a decision that's going to

25   be made by this Panel.

```
1            CHAIRMAN BRYANT:  He's examining about
2    his stipulations; overruled.
3    BY MR. BERGER:
4        Q.   The next communication that you had with
5    Mr. Bailey or Mr. Becker was when you received the
6    final paper copy of the entry?
7        A.   Well, it was delivered by somebody.  I
8    don't know how it got there.
9        Q.   And they had made the changes that you
10   had requested?
11       A.   They had had the changes made, yes.
12       Q.   All right.  And this was the entry that
13   you read into the record and signed on June 20th,
14   2003, at the Roberts sentencing hearing?
15       A.   That is correct.
16       Q.   All right.  You agree that Mr. Bailey and
17   Mr. Becker contributed more to the creation of the
18   Roberts sentencing opinion than just typing it?
19       A.   Well, they followed the formula, if
20   that's what you mean, yeah.
21           CHAIRMAN BRYANT:  I'm sorry, Judge --
22           THE WITNESS:  It's quite clear from my
23   two pages of notes.
24           CHAIRMAN BRYANT:  -- I can't hear you.
25           THE WITNESS:  From my two pages of notes,
```

1    it turned into a 17-page document.  That's, as I

2    said before, is necessary to follow the formula.

3    That explains that.  Right or wrong, that explains

4    it.

5    BY MR. BERGER:

6        Q.    And the communications -- the four

7    communications that we've been discussing that

8    took place between you and Mr. Bailey and

9    Mr. Becker, none of these took place on the

10   record?

11       A.    No.  There was no formal record.  Again,

12   I'm accepting your rendition of communications,

13   the delivering of a paper being a communication,

14   that's what we've stipulated to.  My attorney has

15   advised me that that's a proper way that you may

16   look at it.  We, again, disagree.  I disagree with

17   the affect of those ex parte communications, but

18   that's what we're here for.

19       Q.    You didn't inform defense counsel for

20   Ms. Roberts that you had had these communications

21   with Mr. Bailey and Mr. Becker?

22       A.    As foolish as it may seem to you at this

23   juncture, the thought never crossed my mind.  It

24   would have been so simple and I have no doubt that

25   both counsel would have said, "Fine," there's no

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

```
1    question in my mind about that.

2            If I had it to do over again, you can bet

3    I would have.  I never thought about it.  I'm sure

4    these gentlemen never thought about it or they

5    would have done that at a minimum.  That's my

6    answer.  Thank you.

7        Q.   And you didn't provide Roberts' defense

8    counsel with a copy of the notes that you gave?

9        A.   I did not, no.

10       Q.   Or a copy of the draft entry that you

11   received?

12       A.   I did not.

13       Q.   Or a copy of the final entry that you

14   received?

15       A.   I did not.  That was another mistake on

16   my part.  I'm the captain of the ship.

17           Quite clearly, they were to have been

18   given a copy of that.  They were not given a copy

19   that morning.  I'm responsible for that.

20       Q.   On June 20th, 2003, you sentenced Roberts

21   to death, as well as two consecutive 10-year

22   sentences?

23       A.   I did.

24       Q.   And at the sentencing hearing, you read

25   aloud your sentencing opinion?
```

MC GINNIS & ASSOCIATES, INC.
614.431.1344 COLUMBUS, OHIO 800.498.2451

1      A.    I did.

2      Q.    And as you were doing so, Defense Counsel

3   Ingram raised a vehement objection?

4      A.    That was a term that he used.  Very

5   good -- very good attorney.

6      Q.    And during the on-the-record discussion

7   that followed, you admitted that you had given

8   handwritten notes to Respondents Bailey and Becker

9   and instructed them to prepare the sentencing

10  entry?

11     A.    Quite clearly, that's what I did, because

12  that's what happened.

13     Q.    And if you take a look at Exhibit 3 in

14  front of you attached to your stipulations,

15  Exhibit 3 is a copy of the transcript of that

16  discussion; isn't that correct?

17     A.    They are, it is.

18     Q.    And Roberts filed a motion for delayed

19  appeal with the Supreme Court of Ohio?

20     A.    She did.

21     Q.    And the Court granted that request?

22     A.    I did.

23     Q.    And in her appeal, Roberts objected to a

24  variety of things, but one of the things that she

25  objected to was the manner in which her sentencing

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    entry was prepared?

2        A.    That is correct.

3        Q.    And the Supreme Court of Ohio issued a

4    decision on the Roberts appeal?

5        A.    They did.

6        Q.    And if you take a look at Exhibit 1

7    attached to your stipulations, Exhibit 1 is a copy

8    of that opinion; isn't that correct?

9        A.    Yes.

10       Q.    And in that opinion, the Supreme Court

11   upheld Roberts' conviction?

12       A.    They did.

13       Q.    But they also vacated her death sentence

14   and remanded the case back to you?

15       A.    That is correct.

16       Q.    And they ordered that you reconsider the

17   imposition of the death penalty?

18       A.    Well, they ordered me to go through the

19   entire thing again and to see that I had the entry

20   typed, and that was done according to their

21   orders.

22       Q.    In fact, they ordered you to prepare a

23   proper sentencing opinion; isn't that correct?

24       A.    I believe that was their terminology.

25       Q.    Exhibit 2, that's a copy of the court

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

1   case docket in the Donna Roberts matter from your

2   court; isn't that correct?

3        A.   It appears to be, yes.

4        Q.   And Exhibit 6 -- I'm sorry, wrong book.

5   If you'll go to the other book of exhibits in

6   front of you, and take a look at Exhibit 6.

7        A.   Yes.

8        Q.   Exhibit 6 is a copy of the Trumbull

9   County Court of Common Pleas Local Rules; isn't

10  that correct?

11       A.   It appears to be, yes.

12       Q.   All right. As a part of the stipulations

13  that you signed, you agreed that your conduct

14  violated the Code of Judicial Conduct?

15       A.   Which are you referring to now?

16       Q.   I'm sorry, as a part of the stipulations

17  that you signed in this matter, you stipulated

18  that your conduct violated the Code of Judicial

19  Conduct?

20       A.   No. I did not do that.

21       Q.   All right. Take a look at Page 9 of the

22  stipulations.

23       A.   Yes.

24       Q.   In the center of the page, Paragraph 37,

25  it says, "Stipulated Violations". Is that not

MC GINNIS & ASSOCIATES, INC.
614.431.1344    COLUMBUS, OHIO    800.498.2451

1    what you stipulated to?

2        A.    You're referring to Page -- or, I mean,

3    to Paragraph 37?

4        Q.    Yes.    Page 9, Paragraph 37.

5        A.    I believe your interpretation of that is

6    incorrect.    I agreed that that is the -- Now, wait

7    a minute.    If you'll allow me to explain.

8        Q.    Could you answer my question first?

9        A.    Apparently, I have, yes.    I've stipulated

10    to that.

11        Q.    All right.    So you -- you've stipulated

12    that your conduct violated Canon 2 and

13    Canon 3(B)(7)?

14            MS. KHAN:    Your Honor, I'd just ask that

15    the witness be allowed to explain as he's

16    requested.

17            CHAIRMAN BRYANT:    Objection's sustained.

18            THE WITNESS:    I may?

19            This goes back to the argument between my

20    counsel and myself for some period of time.

21            MR. RICHARDS:    Your Honor, I would

22    instruct you at this time not to discuss anything

23    that you talked to me about.

24            THE WITNESS:    Okay.

25            MR. RICHARDS:    It's privileged.

MC GINNIS & ASSOCIATES, INC.
614.431.1344    COLUMBUS, OHIO    800.498.2451

1           THE WITNESS:  Okay.

2           MR. RICHARDS:  Would you please just

3    answer his questions, Judge?

4           THE WITNESS:  Yeah, sure.  I will follow

5    your advice.

6           CHAIRMAN BRYANT:  Thank you,

7    Mr. Richards.

8           THE WITNESS:  My understanding is that

9    once the Supreme Court made their ruling, I'm

10   locked into this.  That they're saying from the

11   facts they had to go on -- which were incorrect,

12   as I think you must even be convinced by this

13   time -- they didn't have the full story, they had

14   what appeared to be, from primarily the defense's

15   arguments in the case, a story that, in my mind,

16   was quite different from the facts of this case.

17          Once they had made a decision here, that

18   becomes the law of the case.  I can't -- They, in

19   effect, to my understanding, have made a ruling

20   that there's a violation on this.  As I sit here,

21   I don't know that I agree with that, but I believe

22   I'm bound by that logic.

23          CHAIRMAN BRYANT:  Next question,

24   Mr. Berger.

25          THE WITNESS:  I'm sorry, sir.

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

```
 1          CHAIRMAN BRYANT:  Mr. Berger has another
 2    question, I suspect.  I think we're getting a
 3    little far afield in your answer, and we're
 4    treading on matters about which you've been
 5    cautioned by your counsel.  I think we should move
 6    along.
 7          THE WITNESS:  Okay.
 8    BY MR. BERGER:
 9      Q.  By signing these stipulations, you
10    acknowledge that your conduct violated those two
11    canons, correct?
12      A.  I acknowledge it.
13          CHAIRMAN BRYANT:  Mr. Berger, we're going
14    right down these stipulations.  Are you somehow
15    cross-examining these stipulations that you,
16    yourself, have entered?  I'm a little lost where
17    we are going with all of this.  We've been through
18    now at least 20 or 30 of them.
19          MR. BERGER:  All right, Your Honor.  I'm
20    nearly concluded.
21          CHAIRMAN BRYANT:  Okay.
22    BY MR. BERGER:
23      Q.  As a part of the stipulations, you also
24    stipulated that the appropriate sanction was a
25    public reprimand?
```

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1      A.    If this Panel finds that I have violated

2    my duty as a judge of the State of Ohio, a

3    private -- or, a public reprimand would be an

4    appropriate sanction.

5            MR. BERGER:  Just one moment.

6            (Pause.)

7    BY MR. BERGER:

8      Q.    Your Honor, you indicated a moment ago

9    that you thought that the Supreme Court of Ohio

10   got some of the facts incorrect in the Roberts

11   criminal decision?

12     A.    It's my impression from reading their

13   opinion, they felt that there was this continuing

14   corroboration apparently between myself and the

15   Prosecutor's Office to come up with my decision.

16   That is not correct.  Anyone that has looked at

17   this case knows that it is not correct.

18           I did what I was required to do under the

19   statutes.  I did that by my own counsel.  No one

20   would ever think of approaching me in that regard,

21   nor would I ever allow anyone to discuss anything

22   of that nature with me.  Those things are not

23   done.

24           You have been a gentleman on the

25   deposition that I took.  There was one question,

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

```
 1   though, that you asked --
 2              MR. RICHARDS:  Your Honor, you've
 3   answered the question.
 4              THE WITNESS:  Okay.
 5              MR. RICHARDS:  Please answer the
 6   question.
 7              THE WITNESS:  Thank you.
 8   BY MR. BERGER:
 9       Q.   Did you file a motion for reconsideration
10   or a motion to correct the record in the Roberts
11   case?
12       A.   I did not.  I would not.
13              MR. BERGER:  Your Honor, could I have
14   just one moment?
15              (Pause.)
16              MR. BERGER:  Thank you.
17              CHAIRMAN BRYANT:  Mr. Richards, we have
18   concluded cross-examination at this time.  Do you
19   wish to reserve your redirect until after the
20   cross-examination?
21              MR. RICHARDS:  I do.
22              CHAIRMAN BRYANT:  Very well.
23              MS. KHAN:  I'm sorry, excuse me, Your
24   Honor.
25              CHAIRMAN BRYANT:  Ms. Khan.
```

Page 64

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

1        MS. KHAN:  Thank you.

2              - - -

3              CROSS-EXAMINATION

4    BY MS. KHAN:

5        Q.   Good morning, Your Honor.

6        A.   Sorry, I tried to shortchange you.  I

7    apologize.

8        Q.   Prior to the Donna Roberts case, it's my

9    understanding that you were aware of the practice

10   where judges in Trumbull County would request

11   prosecutors to prepare entries, type the entries;

12   is that right?

13           MR. BERGER:  Objection.

14           CHAIRMAN BRYANT:  I'll allow it.

15           THE WITNESS:  I was aware that -- I came

16   to be aware of that, yes.

17   BY MS. KHAN:

18       Q.   And it's -- that was the practice at the

19   time that you came on to the bench in 1991; is

20   that right, sir?

21       A.   Well, I don't know that for sure.  I have

22   gathered that it was.  I have only had three

23   capital murder cases.  The first one I did, I even

24   had my wife type most of the thing.  It took an

25   interminable amount of time to go through all

1   that.

2      Q.   I'm sorry, Your Honor, I'm just

3   referring -- I'm sorry.

4      A.   I came to understand that it was the

5   practice, and that doesn't, in my mind, mean that

6   it was okay.

7      Q.   I understand, Your Honor.

8      A.   But I came to be aware that that is what

9   happened in most of the cases.

10     Q.   And it's my understanding that prior to

11  the Donna Roberts case, you believed that defense

12  counsel -- at least the defense Bar in Trumbull

13  County was aware of this practice?

14          MR. BERGER:  Objection.

15          CHAIRMAN BRYANT:  Sustained.

16          THE WITNESS:  Sustained?

17          CHAIRMAN BRYANT:  Sustained.

18  BY MS. KHAN:

19     Q.   Your Honor, can you tell the Panel your

20  understanding of the genesis of the practice of --

21     A.   I'm sorry, I didn't hear that.

22     Q.   Can you tell the Panel your understanding

23  of the genesis of this practice, of prosecutors

24  providing this service to judges?

25     A.   Well, Trumbull County is not a rich

Page 66

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

 1    county.  We've lost our entire industrial base

 2    there.  We're the heart of that rust belt.  The

 3    Common Pleas Courts of all the different

 4    departments in the county have been working on

 5    very tight budgets.

 6          We've never had the luxury of having a

 7    secretary for each judge.  Our reporters usually

 8    fill in in that capacity.  They get no extra

 9    compensation for it.  And on my part, there's an

10    attempt to remove as much work as possible from my

11    Reporter.  She would do anything I ask her to do,

12    but sometimes it seems burdensome on her.

13        Q.   And, Your Honor, so it's my understanding

14    that would be your reasoning why you wouldn't ask

15    your Court Reporter or your Bailiff to do the

16    typing; is that correct, sir?

17          MR. BERGER:  Objection.

18          CHAIRMAN BRYANT:  Sustained.  Sustained.

19          THE WITNESS:  Sustained.

20    BY MS. KHAN:

21        Q.   Your Honor, prior to Donna Roberts --

22    prior to the Donna Roberts case, you had asked the

23    Prosecutor's Office to type entries before,

24    correct?

25        A.   The prosecutors, since I took the bench

1    up there, have always prepared all judgment

2    entries in every criminal case.  Everybody knows

3    that's what happened.

4        Q.    Okay.

5        A.    In my poor attempt to be humorous at

6    times, I've asked defense counsel, "Do you wish to

7    prepare an entry here?"  I've never had anybody

8    accept that offer.

9             Prosecution -- The Prosecutor's Office

10   does it as a matter of form.  They were the first

11   to have computers.  Computers lend themselves to

12   very rapid preparation of paperwork.  Floods us

13   with papers.  That is the practical reason why I'm

14   sure that the system developed that way.

15            No one ever complained about it except,

16   as appears on the record, one attorney, and he

17   does it just to be a gadfly.  He's not serious

18   about it.  He would never accept, I'm sure, the

19   choice of typing up any entries on his own.

20            As to -- Well, okay.  I've answered your

21   question.

22       Q.    Thank you, Your Honor.

23            You explained during your direct

24   examination with Relator after the jury returned

25   the verdict recommending death, at that point

**MC GINNIS & ASSOCIATES, INC.**
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    that's when your job comes in, correct?

2        A.    Yes.

3        Q.    Okay.

4        A.    That is solely the way the thing is set

5    up.  Everybody's aware of it.

6        Q.    And --

7        A.    The judge's function, nobody else's.

8        Q.    Could you explain to the Panel briefly

9    what you're required to do at that time after the

10   jury returns the verdict of death, what your

11   duties are?  And I also invite you to refer to

12   Respondents' Exhibit F, that would be your

13   affidavit, as a refresher.

14            MR. RICHARDS:  While we do that, may we

15   approach the bench for one moment, Your Honor?

16            CHAIRMAN BRYANT:  Yes.

17            (Thereupon, a bench conference was

18             held off the record.)

19   BY MS. KHAN:

20       Q.    Have you turned to that exhibit, Your

21   Honor?

22       A.    I'm sorry.

23       Q.    It's Respondents' -- I'm sorry, it's

24   Respondents' Exhibit I.

25            MR. BERGER:  Your Honor, we would just

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    object to the use of this exhibit.

2           CHAIRMAN BRYANT:  I'm sorry, Mr. Berger,

3    I don't hear well in one ear.

4           MR. BERGER:  We're just objecting to the

5    use of this affidavit.

6           MS. KHAN:  Your Honor, I'm just asking

7    him to refer to it as a refresher so that he can

8    move along quickly and he can stay focused on the

9    question.

10          CHAIRMAN BRYANT:  With that

11   identification, overruled.

12          MS. KHAN:  Thank you, Your Honor.

13   BY MS. KHAN:

14      Q.   Do you see that?  Is that your affidavit?

15      A.   Yes, I do.  Affidavit of Gerald Ingram

16   (sic).

17      Q.   And if you'll turn your attention to

18   Paragraph 6.

19      A.   Yes.

20      Q.   If you could, please, in your own words,

21   using your own -- or referring to the statements

22   in the affidavit as a refresher, tell the Panel

23   how you performed your judicial duties as it

24   relates to making decisions in the sentencing of

25   Donna Roberts.

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

```
 1        A.    Well, the jury makes -- if they make a
 2   recommendation of death, the judge is required to
 3   review all the aggravating circumstances against
 4   any mitigating factors that have been presented,
 5   and vice-versa.
 6              There has to be -- The design, I imagine,
 7   is to make -- or, allow a check on a government --
 8   I'm sorry, on a jury that may have gone astray
 9   somewhere.  A judge, of course, has the power then
10   to set aside the death penalty and enter an
11   appropriate finding.
12              I know of very few cases in the State of
13   Ohio where that has been done.  There's one out of
14   Columbus here some years ago which I thought was a
15   very eloquent thing that the judge did in setting
16   aside a death penalty, but that does not happen
17   very often, for a reason.
18              The judge cannot say the jury went astray
19   and impose the death penalty, but the scheme is
20   set up so that there is still another barrier that
21   the State has to get over before the very serious
22   thing of imposing a death sentence occurs.
23              During the testimony of Mr. Berger -- or,
24   I mean, the deposition Mr. Berger took of me --
25              MR. RICHARDS:  There's no question on the
```

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1     floor about your deposition, Your Honor.

2          THE WITNESS:  Thank you.

3     BY MS. KHAN:

4          Q.   Your Honor, if you could just refer to

5     Paragraph 6, A, B and C, and review that, of the

6     affidavit, your affidavit, Paragraph 6, A, B and

7     C.

8          A.   My affidavit?

9          Q.   That's right.  Respondents' Exhibit I.

10    You should be right there.

11               If you could just confirm whether the

12    statements there are true and accurate.

13         A.   It is correct to the best of my belief.

14         Q.   Okay.  And just referring to the first

15    communication that you spoke with Relator about

16    the initial exchange between you and Mr. Becker?

17         A.   That appears to be correct.

18         Q.   The stipulation indicates that that

19    exchange lasted between 30 to 45 seconds; is that

20    correct?   .

21         A.   That is correct.

22         Q.   At that time, did you discuss the merits

23    of the case?

24         A.   I did not.

25         Q.   Did you discuss the facts of the case?

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344    COLUMBUS, OHIO    800.498.2451**

```
 1      A.   I did not.

 2      Q.   Did Mr. Becker try to influence you in

 3   any way?

 4      A.   He did not and he would not.

 5      Q.   Had you already made your decision at

 6   that point?

 7      A.   I'm sorry?

 8      Q.   Had you already made your decision at the

 9   time you handed over those notes?

10      A.   Of course I had already made my decision.

11      Q.   And at the time of the exchange, did you

12   believe that an improper ex parte communication

13   had taken place?

14      A.   I did not at that point think that

15   anything was improper with what I was doing.  I

16   may have been in error, but I think not.

17      Q.   At the time -- at the time the exchange

18   took place, did you think -- did you think that it

19   was improper?

20      A.   No, absolutely not.  I would not have

21   taken the course of action that I did if I had any

22   suspicion or any thought cross my mind that it was

23   improper.

24      Q.   It's also my understanding that you asked

25   Mr. Becker to use the Nate Jackson entry as a
```

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344    COLUMBUS, OHIO    800.498.2451**

1    guide; is that correct?

2        A.    It appeared to me to be the logical thing

3    to do.

4        Q.    And, again, isn't it true that you don't

5    have any specific recollection of communicating

6    with Mr. Bailey at that time?

7        A.    No.  I don't recall any -- I don't know

8    what any reason would be.  He could have answered

9    the phone when I called over, I don't know.  I

10   don't recall.  But as far as I know, as I sit

11   here, I don't remember any communication with

12   Mr. Bailey.

13       Q.    Your Honor, could you please turn to your

14   deposition transcript?  It should be under -- it's

15   Respondents' Exhibit -- Well, I'm going to hand

16   you my copy if that's all right.  If that's

17   permissible.

18            MS. KHAN:  May I approach the witness?

19            CHAIRMAN BRYANT:  Yes.

20            MR. BERGER:  Your Honor, we're going to

21   object to the use of his testimony.

22            CHAIRMAN BRYANT:  Basis of your

23   objection?

24            MR. BERGER:  Unless she's cross-examining

25   him on an inconsistency, it's hearsay.

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

```
 1            MS. KHAN:  Your Honor, I'm just --
 2            CHAIRMAN BRYANT:  It is hearsay.
 3            MS. KHAN:  I'm asking to just refer to
 4   it.  I'm going to ask him a question, and then I'm
 5   just going to refer to it if we get off track.
 6   That's all.
 7            CHAIRMAN BRYANT:  Very well.  All right.
 8   Subject to further objection.
 9            MS. KHAN:  Thank you.
10   BY MS. KHAN:
11       Q.  Your Honor, today -- as you stand here
12   today, do you believe that you intentionally did
13   something wrong?
14            MR. BERGER:  Objection.
15            CHAIRMAN BRYANT:  Sustained.
16   BY MS. KHAN:
17       Q.  With respect to any of the four
18   communications that you stipulated to, at the time
19   that they took place, did you believe that they
20   were improper?
21       A.  I do not believe that they were improper.
22   The attorney's going to object if I say anything
23   more, so I won't.
24       Q.  Your Honor, both Mr. Becker and
25   Mr. Bailey have been before you in your courtroom;
```

Page 75

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

```
 1    is that correct?

 2        A.    Numerous times for many years.

 3        Q.    And do you have an opinion about the

 4    character and integrity of Mr. Bailey?

 5        A.    I do.

 6        Q.    Could you please tell the Panel what that

 7    opinion is?

 8        A.    I would trust either of these gentlemen

 9    with my life.  They are dependable.  They are

10    honest.  They are men of integrity.

11          They would, in my mind, never do anything

12    that they thought was a breach of their duty.  I

13    believe that their duties are very important to

14    them.  They have had long careers.  Mr. Bailey, I

15    believe, longer than Mr. Becker.

16          They are both honorable men.  They would

17    not do anything -- I believe this -- that they

18    thought was in any way improper or unethical.

19    That's my opinion.

20          MS. KHAN:  No further questions.

21          CHAIRMAN BRYANT:  Mr. Richards, redirect?

22          MR. RICHARDS:  Very brief.

23                      -  -  -

24                REDIRECT EXAMINATION

25    BY MR. RICHARDS:
```

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344    COLUMBUS, OHIO    800.498.2451**

1       Q.    Judge Stuard, I have some questions about

2    the stipulations.  Did you read the stipulations

3    before you signed them?

4       A.    I did read them before I signed them, of

5    course.

6       Q.    Did you read them in my presence?

7       A.    I read them in your presence.

8       Q.    Did you sign them?

9       A.    I did sign them.

10      Q.    Did you understand them at the time you

11   signed them?

12      A.    I understood them at the time.  I got a

13   little bit confused here reading that one portion

14   at this point, but I acknowledge that I signed

15   them voluntarily, understanding it at the time.

16      Q.    Now, we all have the point that you don't

17   agree with the Supreme Court's conclusions,

18   correct?

19      A.    I do not agree with that.

20      Q.    All right.  Did the Supreme Court's

21   conclusions and the way they wrote their opinion

22   have an effect upon your willingness to sign the

23   stipulations?

24      A.    That's the only reason that I stipulated

25   as I did to everything that's in that stipulation.

**WWW.MCGINNISCOURTREPORTERS.COM**

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

```
 1              MR. RICHARDS:  Thank you very much.
 2              CHAIRMAN BRYANT:  Anything further,
 3      Mr. Berger?
 4              MR. BERGER:  Very briefly, Your Honor.
 5                      - - -
 6                   RECROSS-EXAMINATION
 7      BY MR. BERGER:
 8         Q.   Just two questions for you, Your Honor.
 9              You have both a court reporter and a
10      bailiff that work for you?
11         A.   I do.  Each judge has the same.
12         Q.   And for the civil cases that you hear,
13      you utilize your Court Reporter to type the
14      entries for those cases?
15         A.   That's very seldom necessary, other than
16      maybe a jury verdict.  But usually one or both
17      counsel are requested to prepare an entry.  And
18      sometimes one of those entries will be accepted as
19      having the correct facts and conclusion in it, and
20      other times the two entries make it very helpful
21      for a judge in writing his own entry up, because
22      you're not likely to miss any detail.
23              You get a home construction case that's
24      just loaded with facts and details and you listen
25      to a case, you take your notes, but when you go to
```

MC GINNIS & ASSOCIATES, INC.
614.431.1344    COLUMBUS, OHIO    800.498.2451

1    write the opinion, sometimes you miss something.

2    So I usually ask both attorneys in that case to

3    prepare an entry.  Well, they don't miss anything.

4    I, again, have something to follow.  I can go

5    through, make my own conclusion if I don't agree

6    with either one of them, and I have an entry

7    that's going to satisfy everybody, hopefully, on

8    the facts.

9            But we don't generate a lot of judgment

10    entries our self other than -- the most that she

11    types is probably summary judgment motions, and

12    that -- you know, they're filed all the time, many

13    times when they shouldn't be.  But judgment

14    entries, themselves, I don't think she types many

15    of those.

16    Q.    You mentioned a moment ago that there was

17    an attorney that had objected in the past to

18    the --

19    A.    Attorney Consoldane, he's our gadfly in

20    our Bar.  Wonderful man, but he just likes to

21    create little eddies of controversy.

22    Q.    And, in fact, he raised that issue --

23        MS. KHAN:  Objection, hearsay.

24    BY MR. BERGER:

25    Q.    -- numerous times?

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

1          CHAIRMAN BRYANT:  Sustained.

2          THE WITNESS:  Overruled or sustained?

3          CHAIRMAN BRYANT:  Sustained.

4          THE WITNESS:  Sustained.

5          MR. BERGER:  Thank you.

6          CHAIRMAN BRYANT:  Judge Stuard, at this

7    time, the members of the Panel are permitted to

8    ask questions of you, as well.

9          THE WITNESS:  I'd be happy to answer

10   them.

11         CHAIRMAN BRYANT:  If you'll just remain

12   there for a minute.  Mr. Elleman, questions?

13         MEMBER ELLEMAN:  I have no questions.

14         CHAIRMAN BRYANT:  Ms. Jacobs?

15         MEMBER JACOBS:  Okay.  I have a couple of

16   questions, yes.

17                        - - -

18                     EXAMINATION

19   BY MEMBER JACOBS:

20      Q.   One question that I have is I believe you

21   made the statement that you follow the same

22   protocol that you did in this case in all criminal

23   cases; in other words, you would have the

24   Prosecutor's Office prepare the entry in every

25   criminal case that you -- that you have before

MC GINNIS & ASSOCIATES, INC.
614.431.1344    COLUMBUS, OHIO    800.498.2451

1    you?

2        A.    That's what we've always done.  That's

3    what I've always done.  I'm not speaking for the

4    other judges.  I don't really know what they do or

5    don't do.

6        Q.    You mean the other judges in your court?

7        A.    The other three judges in our Court of

8    Common --

9        Q.    So not all the judges, to your knowledge,

10   follow the same protocol?

11       A.    To my knowledge, but I don't know exactly

12   to what degree or whatever.

13       Q.    Okay.  Now, when you say all criminal

14   cases, do you include acquittals?  If there's an

15   acquittal, would you still prepare the entry with

16   the --

17       A.    Oh, no.  That's a short thing.  My

18   secretary would type that up.  The same way with a

19   civil case.  The entry is one page, you know, a

20   jury rendered a finding of such and such.

21            It's when we get into long, convoluted

22   judgment entries, then on civil cases sometimes I

23   have to type them.  I've taken them home and had

24   my wife type them.  She doesn't mind.

25            Since this case came out, the practice

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

```
 1    has been adopted in, I believe, all the courts
 2    that after something happens in court where there
 3    is a journal entry that is necessary, I will
 4    usually ask the defense and the prosecutor, the
 5    question is directed to the defense lawyer, "Do
 6    you wish to prepare the judgment entry?"  Maybe
 7    it's on a summary, some motion.  I've not had one
 8    taker yet if they're comfortable with the
 9    prosecution preparing them.
10        Q.   But until this grievance came up, you did
11    not give them that option, is that correct, in the
12    criminal cases?
13        A.   I didn't.  I don't know what the other
14    judges did, but it was a common knowledge that the
15    prosecutors prepared it.  The prosecutors are
16    constantly in contact with them giving them the
17    copies.
18        Q.   Well, then, I think I know the answer to
19    this, but the Prosecutor's Office is not a
20    division or a subsidiary or has any formal legal
21    relationship to the judiciary?
22        A.   Oh, absolutely not.  Absolutely not.
23    They're part of the executive --
24        Q.   Fine.  In that case, why would you not
25    follow the same procedure in criminal cases just
```

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

1   as a rule that you follow in all the civil cases

2   where you give each side the opportunity to

3   prepare an entry?

4       A.   That's a very valid question, and I don't

5   have an answer for that, except that the practice

6   somewhere along the line grew up as it did.

7           Now, there's a difference between civil

8   and criminal cases, too, and on a practical basis,

9   and that is that with the criminal cases, you have

10  two people that are at odds over money.  The

11  wording of judgment entries at times are very

12  important to each side as to the correct language

13  that's in it.

14          In the criminal law, it has become so

15  formalized that whether a defendant's lawyer, if

16  he wanted to do it, drew it up, or a prosecutor

17  drew it up, they're going to be virtually the same

18  depending on the court's ruling.  Now, whether

19  that contributed to it, I don't know, but it's a

20  reason.

21          MEMBER JACOBS:  Okay.  Thank you very

22  much.

23                      - - -

24                  EXAMINATION

25  BY CHAIRMAN BRYANT:

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

```
 1      Q.   Judge, the drawing of a journal entry in
 2   general is somewhat different from the order or
 3   the entry that you're required to make in the
 4   death penalty case, is it not, that's enjoined
 5   upon you by statute, and you have --
 6      A.   That's --
 7      Q.   -- specific matters to be followed?
 8      A.   That's correct, yes.
 9      Q.   So that's a lot different from putting on
10   an entry --
11      A.   It's a total different ball game, Your
12   Honor.  You're correct.
13      Q.   And that's really the essence, I guess,
14   of what the Supreme Court did in this case?
15      A.   I believe that is the very genesis of
16   this whole problem, because they understand, as
17   well.
18      Q.   It's standard practice with the
19   prosecutor that was peculiar to a death penalty
20   case?      .
21      A.   I agree with you.
22      Q.   All right.
23      A.   I agree with you.
24      Q.   All right.  I have just another question
25   about you furnished two pages of notes, and I
```

1   don't want to get drawn off on a red herring with

2   the matter of these entries, because we're

3   concerned with ex parte communication and not the

4   content of the entry, but what I'm really

5   concerned about, you gave two pages of notes to

6   somebody, Mr. Becker maybe.  These notes did not

7   contain specific findings, did they, that you

8   wished to have included in your entry?

9       A.   I believe that the content of that would

10  have been to weigh the mitigating factors against

11  the aggravating circumstances, that I can come to

12  but one conclusion, and that is that the jury has

13  acted properly here, perhaps expanded on that

14  theme, but that's exactly what it would be.

15          I'm sure that I put in there that the

16  fact that she had actually introduced no

17  mitigating factors, and covered the fact that the

18  psychologist had found that she was competent and

19  able to, you know, make the decision that she

20  made.  The bottom line was that there was

21  absolutely no basis for me to set aside the death

22  penalty.

23      Q.   Now, with respect to the -- your

24  reference, you told -- either told Mr. Becker or

25  you had in your notes to follow the format -- or,

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    follow the sequence of the findings in Jackson, is

2    that correct, in the Jackson case?

3        A.   The case.

4        Q.   So did you point out any dissimilarities

5    in your notes between the Roberts case and that

6    Jackson opinion?

7        A.   I can't answer that, sir.  But I have to

8    be truthful and say I probably didn't, no.  The

9    facts were so clear in my mind, and I knew they

10   were so clear in their mind, that the facts were

11   the facts of the case.

12       Q.   So any differences in that opinion would

13   have been part of the preparation by Mr. Becker or

14   Mr. Bailey?

15       A.   No.  That's perhaps the one important

16   question.

17       Q.   Yes.  And I'd like to know the answer to

18   that, because I'm having difficulty.  If you

19   didn't tell them what those differences are, how

20   did those differences appear in your 17-page

21   report?  That's what I'm concerned about.  Who

22   decided what those differences are?

23       A.   Yeah.  If they're making reference to the

24   fact of these various conversations that were made

25   and recorded from prison, the conversations were

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

```
 1    the same.  It's just if you're writing it from her
 2    standpoint.
 3        Q.   A different person they're writing about?
 4        A.   Yeah.  That's all.  But the facts are the
 5    same.
 6             CHAIRMAN BRYANT:  Thank you.
 7             Anything further?
 8             MEMBER ELLEMAN:  Nothing further.
 9             MEMBER JACOBS:  Nothing.
10             CHAIRMAN BRYANT:  Thank you.
11             MS. KHAN:  I just have a couple
12    questions.
13             CHAIRMAN BRYANT:  You have further
14    questions, yes, you may.
15             Mr. Berger, you also.
16             MR. BERGER:  No, Your Honor, unless
17    there's something by Ms. Khan.
18                          - - -
19                 RECROSS-EXAMINATION
20    BY MS. KHAN:
21        Q.   Your Honor, just in follow-up to the
22    questions that the Panel has asked you, it's my
23    understanding that you -- Well, let me just ask
24    you this:  Of the times that you've asked the
25    Prosecutor's Office to type entries, were there
```

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    times that you've asked them to type entries when

2    you found in favor of the defendant?

3         A.   Oh, absolutely.  Well, it doesn't happen

4    anymore in summary because the Fourth Amendment

5    has been pretty well emasculated.  But it has

6    happened over the years many times, that they lose

7    and I ask them -- don't even ask them sometimes,

8    they just do it automatically.  That's what

9    happens.

10        Q.   And it's my understanding that you asked

11   the Prosecutor's Office to type the sentencing

12   entry for Nate Jackson; is that right?

13        A.   I'm sorry?

14        Q.   That you asked the Prosecutor's Office to

15   type the entry for Nate Jackson?

16             MR. RICHARDS:  I object to that.

17             CHAIRMAN BRYANT:  Sustained.

18             MS. KHAN:  I don't have any other

19   questions.

20             CHAIRMAN BRYANT:  Anything further,

21   Mr. Richards?

22             MR. RICHARDS:  No, Your Honor.

23             CHAIRMAN BRYANT:  Very well.  You may

24   step down.

25             THE WITNESS:  Thank you.

**MC GINNIS & ASSOCIATES, INC.**
614.431.1344   COLUMBUS, OHIO   800.498.2451

1           CHAIRMAN BRYANT:   Thank you.

2               (Witness excused.)

3           CHAIRMAN BRYANT:   Call your next witness.

4           MR. BERGER:   Your Honor, we call

5    Christopher Becker as on cross.

6               (Witness placed under oath.)

7                       - - -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

```
 1              CHRISTOPHER D. BECKER, ESQ.
 2    of lawful age, being by me first duly placed under
 3    oath, as prescribed by law, was examined and
 4    testified as follows:
 5                   CROSS-EXAMINATION
 6    BY MR. BERGER:
 7         Q.   Good morning.
 8         A.   Good morning, Mr. Berger.
 9         Q.   If you would go ahead and just state your
10    name and your business address.
11         A.   My name is Christopher D. Becker.  I work
12    for the Trumbull County Prosecutor's Office, which
13    is located at 160 High Street Northwest, it's on
14    the fourth floor, Trumbull -- Warren, Ohio 44481.
15         Q.   And you were admitted to the practice of
16    law in November of 1990?
17         A.   Yeah, that's correct.  I think Rasheeda
18    said 1991, but it was 1990.
19         Q.   And you've been employed as an Assistant
20    Prosecutor for about 16 years?
21         A.   Well, actually, I guess it would be 17
22    now.  We're in March of -- yeah, March of 2008, 17
23    full years, at least 17 plus.
24         Q.   And you've been employed in that role
25    with Trumbull County since 2000?
```

**MC GINNIS & ASSOCIATES, INC.**
614.431.1344   COLUMBUS, OHIO   800.498.2451

1          A.     Yes.  December of 2000.

2          Q.     And prior to your position at Trumbull

3    County from 1991 to 2000, you were an Assistant

4    Prosecutor for the Jefferson County Prosecutor's

5    Office?

6          A.     That's correct.

7          Q.     You entered into stipulations in this

8    matter?

9          A.     Yes, we did.

10         Q.     And if you will open the notebook in

11   front of you entitled "Stipulations".  There's a

12   tab that says "Bailey/Becker" on it.  If you would

13   open it to that.

14         A.     Okay.  I see that.

15         Q.     Those are the stipulations that you

16   entered into?

17         A.     Yes, sir.

18         Q.     And you signed those voluntarily and

19   willingly?

20         A.     Yes, I did, sir.

21         Q.     All right.  As your stipulations

22   establish the factual predicate for what we're

23   here on today, I'm going to move on to some other

24   matters.

25         A.     Okay.

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1        Q.    You and Mr. Bailey were Co-Prosecutors in
2    the Roberts case?
3        A.    Yeah.  You're correct.
4        Q.    All right.  Neither one of you was first
5    chair?
6        A.    No.  We talked about that at the
7    deposition, no.
8        Q.    All right.  On June 18, 2003, two days
9    prior to the sentencing hearing in the Roberts
10   matter, Judge Stuard asked you to prepare the
11   Roberts sentencing opinion?
12       A.    He handed me the notes and asked me to
13   prepare a sentencing opinion consistent with --
14   or, yeah.  Yes.  Yes, sir.
15       Q.    And then you worked with Judge Stuard and
16   Mr. Bailey to finalize a sentencing opinion?
17       A.    Well, I would disagree with you,
18   respectfully, that I didn't work with
19   Judge Stuard.  In fact, I don't remember ever
20   having any conversation, other than in the hallway
21   when he gave me the notes, with Judge Stuard.
22       Q.    You exchanged documents with
23   Judge Stuard?
24       A.    Well, again, my recollection is a little
25   bit different than his.  We have a shared computer

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    drive between the Common Pleas -- all four of our

2    Common Pleas Court Judges and our offices.  We

3    refer to it as a G drive, although they just

4    changed it to -- now it's the X or Y drive.

5         But when we prepared it, I did it with

6    Mr. Bailey.  And at one point, he got tired of

7    looking over my shoulder, so I just printed out

8    copies and he would make corrections, I'd do it.

9         My recollection that I have is that I

10   contacted his secretary -- he doesn't have a

11   secretary, but his Bailiff, Laurie Brown, or

12   Mary Anne, I don't remember which, and said, "It's

13   available on the G drive.  It's saved under Donna

14   Roberts sentencing entry.  Have the Judge look at

15   it."

16        So, I mean, if you want to say I had

17   contact with the Court, I did.  I don't dispute

18   that.  But I don't recall having contact directly

19   with Judge Stuard himself.

20        Q.    Other than the first conversation?

21        A.    Yes.  You're correct.

22        Q.    All right.  You spent about four hours

23   preparing the entry?

24        A.    Yeah.  I'd say that's a fair amount --

25   fair amount of time.

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

```
 -      Q.   All right.  Let's just talk about these
 2   interactions.  First, there was what you recall to
 3   be an in-person conversation with Judge Stuard,
 4   during which he asked you to prepare the
 5   sentencing entry?
 6      A.   Yeah.  That was the first conversation --
 7   or, the only conversation I recall on June 18th.
 8      Q.   All right.  Later, you arranged for a
 9   copy of the draft entry that you prepared to be
10   delivered to Judge Stuard?
11      A.   You're talking about when I called Laurie
12   Brown on Thursday -- Laurie or Mary Anne and told
13   her that it was available on the G drive?
14      Q.   Yes.
15      A.   Yeah.  I called the Court.  Like I say,
16   my recollection is a little bit different than
17   his.  I know he says he talked to either Ken or I.
18   He may have talked to Ken, but I personally don't
19   recall speaking to him about that, but I did tell
20   the Court it was available.  If he had any changes
21   or corrections, to let me know.
22      Q.   And next, it's your recollection that
23   there was a telephone conversation between you and
24   one of Judge Stuard's staff members, and they
25   relayed to you the one or more changes that need
```

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1   to be made?

2        A.   Yeah.  You're correct.  I think there was

3   a -- I want to say it was Laurie Brown, and only

4   because Laurie's the Bailiff, and I believe Laurie

5   told me that there was a correction, or

6   corrections.  It's been so long ago, I can't tell

7   you.  Because we do these kind of entries so much,

8   I can't tell you if there was more than one.

9   There was at least one.

10       Q.   All right.  And then you made the

11   corrections and delivered the final entry back to

12   Judge Stuard?

13       A.   Well, I don't know if I -- Maybe because

14   the way I'm thinking.  I called back to the Court

15   and, again, I spoke to probably Mary Anne or

16   Laurie, and I said, "Okay, the corrections have

17   been made.  It's on the G drive."

18       Q.   All right.  Let's take a look at the

19   communications individually.  The first

20   communication on June 18, 2003, you were outside

21   of Judge Stuard's office in the secretarial area.

22   He approached you and gave you some handwritten

23   notes?

24       A.   I agree with everything you said

25   except -- I'm not trying to be a smart aleck or

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    anything, but it's not called a secretarial area.

2    It's actually like the area where the Bailiff and

3    the Court Reporter sit, because he doesn't have

4    secretaries, but, yes, you're correct.

5        Q.   And you previously referred to these

6    notes as a very brief summary on 11-by-14 paper?

7        A.   They were, to the best of my

8    recollection, almost procedural form as to how I

9    should do it.

10            I don't know if you're getting into the

11   breakdown of this.  There was a Fact section, an

12   Aggravating/Mitigating Circumstance.  I think I

13   told you before, for some strange reason, there

14   was a note about Dr. Eberle, I think was the

15   psychiatrist, in the Mitigation section, and then

16   the ultimate conclusion that he agreed.

17       Q.   Judge Stuard asked that you prepare the

18   sentencing entry based upon these notes?

19       A.   And the record and the Nate Jackson

20   entry.     .

21       Q.   It's your recollection that Judge Stuard

22   said something like, "Here are my notes.  Please

23   type up a sentencing opinion like the one I used

24   in Jackson," or, "I want you to draft up an entry

25   for the Roberts hearing on Friday"?

1      A.    It was more along the first part of that

2   question.

3      Q.   All right.  And your conversation with

4   Judge Stuard lasted one to two minutes?

5      A.    As best as I remember, it was no more

6   than a minute or so, yes, two minutes absolute

7   tops.

8      Q.   And you agreed to prepare the entry?

9      A.   Yeah.  I told him I'd do it.  We've done

10   it before.

11      Q.   And you told him that you would try to

12   have something to him by the next day?

13      A.   Yeah.  That was a Wednesday, and I knew

14   the hearing was coming up Friday, so I didn't

15   think I could get it done Wednesday.

16      Q.   And you returned to your office.  And at

17   some point later, you advised Mr. Bailey that

18   Judge Stuard had requested that a sentencing entry

19   be prepared, and Mr. Bailey agreed to assist you?

20      A.    Yeah.

21      Q.   And you and Mr. Bailey then set about to

22   prepare the entry?

23      A.    Yes.

24      Q.   And on June 18th and 19th, working on

25   your computer, you turned the two pages of notes

Page 97

1    into a 17-page decision?

2        A.    Well, that's not exactly what happened.

3    I spoke to Chuck Morrow, who was on the Nate

4    Jackson case, who had already received the death

5    penalty.  I know I spoke to Chuck about where he

6    had saved the Nate Jackson entry.

7              I literally pulled that down, and then I

8    began -- I think I might have printed a copy for

9    Ken -- but I began -- but I used that as a

10   starting point.  I didn't just take two blank

11   pages and start typing away.  I mean, I took the

12   other entry and referenced that.

13       Q.    And Mr. Bailey stood behind you as you

14   were working?

15       A.    For a period of time, yes.

16       Q.    And you printed off -- periodically you'd

17   print off a copy of the draft of what you had and

18   give it to Mr. Bailey, and he would review it and

19   give you comments?

20       A.    Yes, sir.

21       Q.    All right.  And Mr. Bailey did this more

22   than one time.  There were several occasions you

23   gave him copies and said, "Go down to your office

24   and look at this, and come back and let me know

25   what you think"?

Page 98

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1      A.    Well, I don't know if I told him to go

2   down to his office, I might have.  But

3   occasionally, you know, he would come in or he

4   would have changes and I would walk them back

5   down, but, yeah, that's essentially correct.

6      Q.    All right.  And Mr. Bailey was your equal

7   partner in creating Ms. Roberts' entry?

8      A.    He didn't put his fingers on the

9   keyboard.  I would say, I mean, he checked for

10  some typos and grammatical errors and that type of

11  thing.  I wouldn't call him my equal partner.  I

12  think he was -- I don't mean to offend him, but I

13  think he was less involved in it than I was.

14     Q.    If you look at the binder in front of you

15  that says "Exhibit List" at the bottom.

16     A.    Okay.

17     Q.    If you take a look at Exhibit 4.

18     A.    Okay.

19     Q.    That's the Roberts sentencing opinion

20  that we've been discussing; isn't that correct?

21     A.    Yes, I believe it is.

22     Q.    All right.  And this is the document that

23  you prepared?

24     A.    Yeah.  Except for can I point something

25  out just very briefly?  This looks like it was

Page 99

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

1    copied from our microfilm, and the actual entry

2    obviously was on regular 8-1/2-by-11 paper.

3        Q.   All right.  But you believe --

4        A.   It is the entry.  No, it's a fair and

5    accurate copy of the original, if that's what

6    you're asking.

7        Q.   All right.  And the entry is structured

8    and divided into five different sections?

9        A.   You are correct.  Yes, sir.

10       Q.   There's a Case History section, a Fact

11   section, Aggravating Circumstances, Mitigating

12   Factors and Conclusions of Law?

13       A.   Yes, sir.

14       Q.   And the notes that Judge Stuard provided

15   to you only contain detailed information on the

16   aggravating circumstances and the mitigating

17   factors?

18       A.   I can't -- I don't recall.  I believe

19   there was mention of the facts and something

20   regarding Jackson's entries, and then I believe

21   there was a conclusion, you know, recommend death

22   or, you know, agree with recommendation.

23       Q.   Regarding the facts, Judge Stuard's notes

24   said something like, "Use facts in Jackson case"?

25       A.   Something along those lines, correct.

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

1     Q.   And that was the extent?

2     A.   As far as I can recall four, five years

3   later, yes.

4     Q.   All right.  And regarding the Conclusions

5   of Law section, Judge Stuard's notes advised you

6   of his conclusion that the aggravating

7   circumstances outweighed the mitigating factors,

8   and that he concurred with the jury

9   recommendation?

10    A.   That's my recollection, yes, sir.

11    Q.   All right.  You and Mr. Bailey did more

12  than just type Exhibit 4; isn't that correct?

13    A.   I don't think so.

14    Q.   You and Mr. Bailey added substantially to

15  what Judge Stuard gave you; isn't that correct?

16    A.   No.  I would disagree with you,

17  respectfully.

18    Q.   You and Mr. Bailey chose words?

19    A.   I think there were words obviously in

20  there that weren't in the notes, if that's what

21  you mean, yeah.

22    Q.   And you wrote and created sentences?

23    A.   We wrote and created sentences that

24  were -- came from either the Jackson entry or the

25  facts of the case, the testimony.

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344  COLUMBUS, OHIO  800.498.2451**

```
 1      Q.    And you wrote and created paragraphs?
 2      A.    Yeah.  We put it in paragraph form.  What
 3   Judge Stuard gave me was not in paragraph form.
 4      Q.    And you selected the language to be
 5   copied from the Nathaniel Jackson sentencing
 6   opinion?
 7      A.    Yeah.  We didn't use all of it.  In fact,
 8   I think if you recall, I told you at one point
 9   there was some language in there about
10   Dr. Germaniuk that Ken and I didn't have a
11   recollection of that testimony coming out in Donna
12   Roberts' case.
13      Q.    And you selected the facts to use from
14   the Nathaniel Jackson entry?
15      A.    I think we used all the facts that were
16   relevant, yeah.
17      Q.    But there were some facts that you found
18   to not be relevant, and you didn't use those?
19      A.    There were -- there were facts that were
20   not relevant for this issue.  I mean, there were
21   facts in the case that probably didn't go to --
22   because if you remember, there was an aggravated
23   robbery and a burglary, there was some other
24   charges that didn't go necessarily to the death
25   penalty charges, just they had no place in an
```

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344    COLUMBUS, OHIO    800.498.2451**

1    entry sentencing her to death.

2       Q.    Let's focus now on the second

3    communication.

4           You've received the notes, you've

5    prepared the 17-page entry, and your recollection

6    is next that you contacted Judge Stuard's Bailiff,

7    Laurie Brown?

8       A.    Yes, sir.

9       Q.    And you basically informed her that you

10   had deposited a copy of the draft decision into a

11   folder on her computer?

12      A.    Yes.

13      Q.    And you advised her that it was there and

14   that it was in her file folder, and you asked her

15   to share it with Judge Stuard?

16      A.    Well, again, I don't want to sound like

17   I'm nitpicking.  I don't know if I said share it

18   with Judge Stuard, that wouldn't have been my

19   language.  I said, "Tell him it's there.  If you

20   want to print out a copy or take it to him, that's

21   fine.  If there's any changes."  That's my

22   proposed way of saying it.

23      Q.    And you provided this draft entry to

24   Judge Stuard so that he could review it and

25   determine if any changes needed to be made?

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

1      A.    Yeah.

2      Q.    All right.  Let's talk about the third

3   communication.  It's next your recollection that

4   you received a call from Laurie Brown on

5   Judge Stuard's staff sometime on June 19th, 2003?

6           MS. KHAN:  Your Honor, I'm going to

7   object that we've been through this a couple of

8   times already.

9           CHAIRMAN BRYANT:  Overruled.

10          THE WITNESS:  Yeah.  My recollection, she

11   called me back the next day, or the 19th, because

12   I don't think I called her until the 19th, so it

13   would have been the same day.

14   BY MR. BERGER:

15     Q.    And this call lasted two to three

16   minutes?

17     A.    If that, yeah.

18     Q.    And during this conversation, Laurie

19   Brown provided you with a verbal list of changes

20   that Judge Stuard wanted made to the entry?

21     A.    That's my recollection, yes, sir.

22     Q.    And you agreed to make the changes?

23     A.    Yes.

24     Q.    And you advised Ms. Brown that you would

25   call her back when the changes were completed?

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

1      A.    Yes.

2      Q.    All right.  Let's talk about the fourth

3   communication.  After you found out the changes

4   that Judge Stuard wanted made to the entry, you

5   made the changes, and then you called either

6   Laurie Brown or Mary Anne Mills, Judge Stuard's

7   Court Reporter, and advised them that you had

8   placed a final copy of the entry into the folder

9   on their computer?

10     A.    Well, I don't know if I said final copy,

11  but, yeah, I told them that it was there.  I mean,

12  I don't know if Judge Stuard would catch any other

13  changes that he wanted, but I said, "The changes

14  that you had just given me have now been made."

15     Q.    All right.  The four communications that

16  we've just spoken about, none of these took place

17  on the record?

18     A.    No.

19     Q.    And you didn't inform defense counsel for

20  Roberts that you had had these communications?

21     A.    No, I did not.

22     Q.    And you didn't inform them that you were

23  preparing the sentencing entry?

24     A.    No, I did not.

25     Q.    And you didn't provide them with a copy

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    of the notes that you received from the Judge, a

2    copy of the draft entry that you provided to the

3    Judge, or a copy of the final entry that you

4    provided to the Judge?

5         A.    No, sir, I didn't.

6         Q.    At the time of these actions, you were

7    aware of the requirements of Disciplinary

8    Rule 7-110(b)?

9         A.    Yes, I was, sir.

10        Q.    All right.  At the June 20th, 2003

11   sentencing hearing, counsel for Donna Roberts made

12   an objection?

13        A.    Yes, sir.

14        Q.    And the objection was based upon some

15   observations he had made in the courtroom?

16        A.    Yes, sir.

17        Q.    And there was an on-the-record discussion

18   that followed, in which Judge Stuard admitted that

19   he had provided notes to you and that you guys had

20   prepared the sentencing entry?

21        A.    Yes, sir.

22        Q.    And if you take a look at Exhibit 3 in

23   the folder in front of you.

24        A.    Yes, sir.

25        Q.    Exhibit 3 is a copy of that transcript,

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

```
 1    isn't that correct, of the --

 2         A.   Of the relevant portions you're speaking

 3    of, yes, sir.

 4         Q.   Roberts appealed her death sentence?

 5         A.   Yes, sir.

 6         Q.   And part of the basis for her appeal was

 7    the process that was used to draft the sentencing

 8    entry?

 9         A.   That was one of the assignments of error,

10    yes, sir.

11         Q.   And --

12         A.   Can I say something real quick?  I don't

13    mean to interrupt, but I think at one point you

14    asked Judge Stuard about a delayed appeal.  It was

15    a direct appeal.  I just wanted to clarify that.

16         Q.   All right.  And the Supreme Court issued

17    a decision in that matter?

18         A.   Yes, sir.

19         Q.   And Exhibit 1 in the binder in front of

20    you is a copy of that decision?

21         A.   Yes, sir, it is.

22         Q.   And the Court remanded the case to

23    Judge Stuard to prepare a proper sentencing

24    opinion?

25         A.   The Court -- This is where I feel
```

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

```
 1    embarrassed and ashamed, angry at myself.  And I
 2    have heard Judge Stuard testify.  I mean, this is
 3    where I really feel that all of the facts were not
 4    before them, I don't believe.
 5             I mean, they have sort of implied that
 6    the Judge personally has to write these -- Well,
 7    they've stated that the Judge personally has to
 8    make these findings.  I believe he did personally
 9    make those findings when he gave me those notes.
10             With all due respect to them, I think
11    they think that I've done -- myself and the Judge
12    and Ken have done something terrible that's caused
13    me a lot of aggravation, caused me a lot of shame,
14    and it just didn't happen that way.  I mean, it's
15    just not -- I know there were ex parte
16    communications, but there was never an ex parte
17    communication on the merits of this case to give
18    her the death penalty.
19             But I can't change what they've written.
20    I mean, I didn't argue this case.  I know Dave
21    Doughten wrote the appeal.  He never cited the
22    disciplinary rules.  I never thought for a minute
23    until August of 2006 that I had done anything
24    wrong.  But I respectfully respect the decision
25    they've put down, and I've got to live with that.
```

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

1       Q.    The entry-drafting process that was used

2    in the Roberts matter, it's not a part of the

3    local court rules; isn't that correct?

4       A.    No, no.  It's -- Well, I guess Dennis

5    will be here this afternoon.  It existed long

6    before I ever got here.  It was a process that our

7    office -- And you've heard Judge Stuard already, I

8    mean, we -- our office for years has prepared the

9    sentencing entries, the motions to -- opinions on

10   motions to suppress, post-conviction petitions

11   after the judge has independently made his

12   decision, after the judge has said, you know, we

13   went into court, we argued the motion.

14            And historically in my eight years there,

15   I've always gotten a phone call from a judge two

16   or three days later saying, "That motion to

17   suppress, I rule in your favor, get me an entry."

18   And I've put together an entry, but, no, it's not

19   formalized in any written rules or anywhere.  I

20   mean, it's just been a practice.

21       Q.    In the open exhibit binder in front of

22   you, if you could turn to Exhibit 6.

23       A.    Yes, sir.

24       Q.    Exhibit 6 is a copy of the Common Pleas

25   Court Trumbull County Local Rules; isn't that

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

1   correct?

2       A.   Yeah, it is.

3       Q.   Turn to Page 24.

4       A.   Yes, sir.

5       Q.   I'd like to direct your attention to

6   Rule 15 entitled "Judgment Entries".

7       A.   Yes, sir.

8       Q.   Do you agree that this rule that governs

9   judgment entries directs that entries be submitted

10  to the court with notice to the opposing side?

11      A.   Well, I think we had this discussion

12  before.  I would disagree that this applies to the

13  criminal setting for a number of reasons, but it

14  does say opposing counsel should be given a copy

15  of that, correct.

16      Q.   And the rule doesn't say anywhere in it

17  that it's limited just to civil cases, does it?

18      A.   I don't see that in there, no.

19      Q.   You've previously suggested that the

20  process used to draft the entry in the Roberts

21  matter was appropriate because it was easier for

22  prosecutors to make sure that legally required

23  language is in each entry.

24      A.   Well, again, I would agree with

25  Judge Stuard, I think the formalistic nature of

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1  the entries is probably a better term.  Yeah, I

2  mean, we were better prepared to do it.

3      Q.   And you've also suggested that sometimes

4  the court leaves stuff out of the entries, and so

5  it makes sense for the Prosecutor's Office to

6  prepare it for that reason?

7      A.   I think that was on the general

8  sentencing entries, there was some language that

9  had been left out, some things that had been left

10  out, particularly before Foster came into play.

11     Q.   And you've also suggested that the

12  Prosecutor's Office has to defend the court's

13  entries, so for that reason, it also makes sense

14  for the Prosecutor's Office to have a hand in

15  drafting those entries?

16     A.   Well, I think the -- we represent the

17  courts.  I don't think any judge wants to have a

18  case resentenced or remanded.

19     Q.   So there's an advantage to the prosecutor

20  being the party that drafts the court's entries?

21     A.   Well, as I explained to you, with all due

22  respect, I think there's an advantage to the judge

23  and to the court system, to everyone involved.

24     Q.   There's a new process in place for

25  drafting entries in Trumbull County now?

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

```
 1        A.    Well, you heard Judge Stuard testify that
 2   now the process is we ask on the record, "Does the
 3   defense counsel wish to prepare the entry?"  And
 4   in the two or three years that this -- well, since
 5   August of '06, I've not heard one defense attorney
 6   say, "Yes.  I'll do the entry sentencing my client
 7   to prison," or, "I'll do the entry sustaining the
 8   court's," or, "overruling my motion to suppress."
 9             Well, we haven't had a death penalty case
10   go to conviction with the death verdict, but I'm
11   certain that there's not going to be a defense
12   attorney saying, "Yeah, I'll draw the entry up
13   putting my client on death row."
14             It's more formalistic now.  I mean, all
15   it is is a formalistic asking of the defense
16   counsel on the record, "Do you want to do this?
17   Do you have an objection to the Prosecutor's
18   Office doing it?"
19             I mean, I handle probably 150, 200 cases
20   a year.  I've never had one defense attorney in
21   all these two years say, "Yeah, I'll be happy to
22   draw the entry up."
23        Q.    You've suggested that it was your goal to
24   make sure that court entries withstood appellate
25   review and contained all the legally required
```

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344    COLUMBUS, OHIO    800.498.2451**

1    language.

2        A.    I believe I wouldn't want -- I don't want

3    to draft an entry that's going to be shoddy.

4        Q.    But isn't it true that this

5    entry-drafting process has caused several appeals,

6    delayed sentencing, created extra work for

7    appellate courts, and uncertainty for victims'

8    families?

9        A.    I don't think that this -- You're talking

10   about in this particular case?

11       Q.    In the Roberts matter, in the Jackson

12   matter.

13       A.    I mean, there's been delayed -- I mean,

14   there's been appeals and the normal that happens

15   in a death penalty case, yeah.

16       Q.    But there have been appeals specifically

17   aimed at the sentencing/entry-drafting process

18   that you've used; isn't that correct?

19       A.    Yeah.    And I feel terrible about that.    I

20   mean, I feel horrible in the fact that I'm trying

21   to help the court as best as I can.

22            And, you know, I know what -- I know what

23   the opinion says and I know what happened here,

24   but believe me, I would never, ever in a hundred

25   years for the rest of my life, I would never try

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1   and influence the judge to try and do something

2   nefarious or backboard or shoddy.

3          If I had known that this was going to

4   create a problem when he handed me those notes, I

5   would have said, "Judge, I can't do this.  This is

6   wrong.  This is improper.  I'm influencing you

7   somehow."  But his decision was made.  I mean, he

8   was going to give her the death penalty.  That's

9   what the whole hearing was for on June 4th that he

10  says, "Here, I agree with the jury's verdict, just

11  get me an entry."

12         It never once crossed my mind that

13  Mr. Fingerhut's family would have their -- the --

14  you know, the death penalty being imposed would

15  not -- would be my fault.  I mean, I would never

16  have done it if I hadn't been aware or had been

17  aware that the Supreme Court was going to look at

18  this and say that I had done something unethical.

19  I never would have done it, and I never will do

20  it.

21         I feel terrible for these people that

22  their loved one's been murdered, and now somehow

23  you're implying that I've delayed justice for

24  them.  I mean, I -- I would never want to do that,

25  and I never intentionally -- I don't want to do

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

```
 1    that.  It sickens me that I'm a part of this, and
 2    I'm sorry.  I'm just very, very sorry that this
 3    ended up this way, that I'm wasting your time,
 4    these folks' time, Mr. Bailey, the Judge.
 5             I mean, Judge Stuard's probably the most
 6    honorable person I know.  And to sit here and
 7    think that I've caused this grief by preparing
 8    this entry, I just -- you know, it's been very
 9    difficult.  I mean, it's -- it -- it's not why I
10    do what I do.  It's not why I became a Prosecutor.
11    It's not what I'm very -- I have my four kids that
12    are very proud of me.  It's not why -- I'm just
13    sick about it.
14             But if you think I've delayed justice, I
15    can't argue with that.  Yes, this appeal has
16    created all kinds of delays, and it's caused
17    problems in Jackson's case, and I'm truly and
18    deeply sorry for that.
19             MR. BERGER:  Thank you.
20             CHAIRMAN BRYANT:  Mr. Richards, do you
21    wish to cross-examine?
22             MR. RICHARDS:  None, Your Honor.
23             CHAIRMAN BRYANT:  Redirect at this time,
24    Ms. Khan, or do you wish to reserve that in your
25    case in chief?
```

**MC GINNIS & ASSOCIATES, INC.**
614.431.1344   COLUMBUS, OHIO   800.498.2451

```
 1          MR. MILLER:  We're going to reserve that
 2   for our case, Your Honor.
 3          CHAIRMAN BRYANT:  Very well.  You may
 4   step down.
 5          Mr. Berger.
 6          MR. BERGER:  Relator calls Kenneth
 7   Bailey.
 8          CHAIRMAN BRYANT:  It's 12:15.  Is this
 9   witness a long witness?
10          MR. BERGER:  Not as long as the one that
11   just finished.
12          CHAIRMAN BRYANT:  Very well.
13          MR. BERGER:  How's that for an answer?
14          (Witness placed under oath.)
15                        - - -
16
17
18
19
20
21
22
23
24
25
```

MC GINNIS & ASSOCIATES, INC.
614.431.1344    COLUMBUS, OHIO    800.498.2451

```
1                   KENNETH N. BAILEY, ESQ.
2     of lawful age, being by me first duly placed under
3     oath, as prescribed by law, was examined and
4     testified as follows:
5                    CROSS-EXAMINATION
6     BY MR. BERGER:
7          Q.   Good morning -- or, good afternoon.
8          A.   Good morning.
9          Q.   Could you state your name and business
10    address, please?
11         A.   Kenneth N. Bailey, and our business
12    address is the Trumbull County Prosecutor's
13    Office, located at 160 High Street in the City of
14    Warren, in Trumbull County, Ohio.
15         Q.   And you were admitted to the practice of
16    law in May of 1971?
17         A.   Yes.
18         Q.   And you've been employed as an Assistant
19    Prosecutor for about 34 years?
20         A.   Another two months, it will be 35.
21         Q.   And you've served as a Senior Assistant
22    Prosecuting Attorney for the Trumbull County
23    Prosecutor's Office since 1997?
24         A.   That's correct.
25         Q.   And prior to that, from 1989 to 1996, you
```

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

1    worked for the Portage County Prosecutor's Office

2    as an Assistant Prosecutor?

3        A.    '89 to '96?  I was in Mahoning County as

4    First Assistant.

5        Q.    From '89 to '96?

6        A.    Right.  And in --

7        Q.    And then Portage County was prior to

8    that?

9        A.    Before that, right, from '73 to the end

10   of '88.

11       Q.    You were in Portage County?

12       A.    That's correct.

13       Q.    All right.  You entered into stipulations

14   in this matter?

15       A.    Yes.

16       Q.    And in the binder in front of you that is

17   labeled on the front "Agreed Stipulations" at the

18   bottom, it's one of the black binders to your

19   right.

20       A.    Agreed Stipulations, okay, got it.

21       Q.    If you open the binder up, there's a tab

22   towards the back that says "Bailey/Becker" on it.

23       A.    Got it.

24       Q.    Do you see Relator Bailey/Becker Joint

25   Exhibit 1?

1      A.    Yes.

2      Q.    And that's the stipulations that you

3   signed?

4      A.    Yes.

5      Q.    And you signed those voluntarily and

6   willingly?

7      A.    Yes.

8            MEMBER ELLEMAN:   May I interrupt just a

9   second?   Is that the four-page document that says

10  Agreed Stipulations between Bailey and Becker and

11  the Relator, and signed on, I guess, the 3rd day

12  of March, 2008?

13           MR. BERGER:   That's correct.

14           MEMBER ELLEMAN:   You say there's an

15  exhibit to that?

16           MR. BERGER:   No, Your Honor, there is

17  not.

18           MEMBER ELLEMAN:   Okay.  I'm sorry.

19  BY MR. BERGER:

20     Q.    On June 18th and June 19th, 2003, you

21  assisted Mr. Becker in preparing a sentencing

22  entry for the Roberts case?

23     A.    Yes.

24     Q.    And if you take the other binder that is

25  not opened, it's labeled "Exhibit List".

**MC GINNIS & ASSOCIATES, INC.**
614.431.1344   COLUMBUS, OHIO   800.498.2451

```
 1      A.   Got it.

 2      Q.   And you open it to Exhibit 4.

 3      A.   Yes.

 4      Q.   That is the entry that we're talking

 5   about?  That's the final version of the entry that

 6   you helped prepare?

 7      A.   Yes.

 8      Q.   And at the time that you were assisting

 9   preparing this entry, you understood that it was

10   being done at the request of Judge Stuard?

11      A.   Yes.

12      Q.   And you understood that the entry that

13   you were creating with Mr. Becker was going to be

14   given to Judge Stuard?

15      A.   Yes.

16      Q.   And during this same time period, you

17   were aware that Mr. Becker had communicated with

18   Judge Stuard regarding the entry?

19      A.   I was aware that Judge Stuard had reached

20   a decision in the case, and requested us to

21   prepare an entry.

22      Q.   And at that time, you didn't have any

23   concerns about preparing the entry?

24      A.   At that time, no.

25      Q.   And you didn't object to Mr. Becker's
```

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    communicating with Judge Stuard about the entry?

2        A.    I'm sorry, did I object to it?

3        Q.    Yes.

4        A.    No.

5        Q.    And, personally, you don't recall if you

6    spoke with Judge Stuard or not?

7        A.    Well, I know now I didn't speak to

8    Judge Stuard.

9        Q.    But that's based upon hearing other

10   people's testimony?

11       A.    Right.  I heard Chris' testimony and I

12   heard Judge Stuard's testimony -- well, I didn't

13   hear Judge Stuard's, but I read his deposition,

14   and I know that I had no contact with the Judge.

15       Q.    But your personal recollection is you do

16   not know?

17       A.    Yeah.  And I think the reason for that is

18   because -- I have no recollection of that because

19   I didn't have any contact with him, as well as

20   some medical problems that I had at that time, and

21   lack of sleep and memory problems at that time.

22       Q.    This morning we've talked about four

23   different communications, and I just want to talk

24   with you so that we can establish what your

25   recollection is and is not.

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

```
 1            You heard Judge Stuard testify that there
 2   was an initial conversation during which he
 3   requested that the Roberts sentencing entry be
 4   prepared?
 5        A.   Yes.
 6        Q.   And you don't recall anything about this
 7   conversation?
 8        A.   I wasn't present at that conversation.
 9        Q.   You admit that a draft entry was written
10   and edited by you and Mr. Becker working together,
11   and that this entry was then delivered to
12   Judge Stuard?
13        A.   Chris put the entry into the computer,
14   and I know it was the prior -- the other case, the
15   Nate Jackson entry.  The entry was modified so
16   that -- that his would become hers, and that the
17   appropriate facts were in there.
18            I know I was in Chris' office and I
19   looked over his shoulder, and I was having a hard
20   time.  I don't work on a computer, it's
21   uncomfortable for me.  So I asked Chris to print
22   out a copy -- a paper copy of what was in the
23   computer.
24            I took it back to my office and I made
25   some corrections on it.  Basically I added in
```

1    typos and grammar.  That happened a number of

2    times, probably five, six or seven -- five times,

3    I'm pretty sure, but maybe six or seven, and it

4    took a while.  I mean, it took, I guess, four

5    hours is a good estimate.

6          I gave the last set of corrections to

7    Chris, and I'm pretty sure I ended up with the

8    last copy of the corrections, and basically that

9    was it.  I know that it was supposed to go back

10   over to the court.

11      Q.  All right.  This drafting activity that

12   you just described took place on June 18th and

13   19th of 2003?

14      A.  I only remember one day.  I mean, it

15   could have been two.  I know it took a while.  My

16   recollection is I was looking over his shoulder

17   and going back to my office.  Could have been two

18   days, but I really only remember one.  But I

19   remember it was a while, took a while.

20      Q.  All right.  You and Mr. Becker's actions

21   were more than just typing?

22          MS. KHAN:  Objection.  He's already

23   testified to what he did.

24          CHAIRMAN BRYANT:  Sustained.

25   BY MR. BERGER:

MC GINNIS & ASSOCIATES, INC.
614.431.1344    COLUMBUS, OHIO    800.498.2451

1      Q.    Take a look at Exhibit 4, the Roberts

2    entry.    During the several-hour process that you

3    were describing in drafting the entry, you and

4    Mr. Becker wrote and created sentences and

5    paragraphs?

6              MS. KHAN:    Objection.    That's not what he

7    testified to.

8              CHAIRMAN BRYANT:    Sustained.

9    BY MR. BERGER:

10     Q.    Judge Stuard did not provide all of the

11   text that's represented in Exhibit 4 to you or

12   Mr. Becker; isn't that correct?

13     A.    Listening to the testimony of Mr. Becker

14   and reading the deposition of Judge Stuard and

15   listening to the testimony today, I am aware that

16   Judge Stuard gave Mr. Becker a page -- two pages

17   of notes, I believe, is what the testimony was.

18     Q.    You heard Judge Stuard testify that he

19   contacted either you or Mr. Becker regarding some

20   changes that he wished to have made to the entry?

21     A.    I'm sorry?

22     Q.    Sure.

23     A.    Say it again.

24     Q.    You heard Judge Stuard testify earlier

25   that he had contacted either you or Mr. Becker

**MC GINNIS & ASSOCIATES, INC.**
614.431.1344    COLUMBUS, OHIO    800.498.2451

1    with some changes that he wanted to have made to

2    the draft entry?

3        A.    Right.

4        Q.    And you don't recall anything about any

5    such conversation?

6        A.    No.    It wasn't me.    Chris had had the

7    stuff in the computer.    The Judge wouldn't have

8    contacted me about that.

9        Q.    But you don't recall whether you were

10    contacted or not?

11        A.    I know I wasn't contacted about that.

12        Q.    And how is that?

13        A.    Because --

14            MS. KHAN:    Objection.    He knows -- He's

15    already testified no.

16            CHAIRMAN BRYANT:    He's answered.

17    BY MR. BERGER:

18        Q.    You heard Judge Stuard testify that he

19    received a final copy of the entry?

20        A.    Yes.

21        Q.    And you were aware that the final entry

22    was going to be delivered to him?

23            MS. KHAN:    Objection.

24            CHAIRMAN BRYANT:    Overruled.    He can

25    answer yes or no.

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

1          THE WITNESS:  To the best of my

2    recollection, I thought the final entry was the

3    one that I had -- the last one I corrected.  I

4    wasn't aware, I think, of other changes being

5    made.

6    BY MR. BERGER:

7        Q.   You were aware the draft entry was going

8    to be delivered to him?

9        A.   Well, as -- I had the draft entry, but

10   the corrections -- the one that was in the

11   computer that would have been corrected from the

12   draft entry, yeah, that -- I expect that would

13   have been delivered to him.

14       Q.   All right.  These communications that

15   we've just talked about, none of the ones that you

16   have personal knowledge about, they were not --

17   they didn't take place on the record?

18          MS. KHAN:  Objection.  He's testified to

19   one communication -- or, no communications.

20          CHAIRMAN BRYANT:  Overruled.

21          THE WITNESS:  You're talking about

22   which -- You're talking about when Judge Stuard

23   talked to Chris?

24   BY MR. BERGER:

25       Q.   There was the initial request to draft

MC GINNIS & ASSOCIATES, INC.
614.431.1344    COLUMBUS, OHIO    800.498.2451

1    the entry, there was the provision of the draft

2    entry to Judge Stuard, there was the request for

3    the corrections, there was the provision of the

4    final entry to Judge Stuard.

5           To the best of your knowledge, did any of

6    these communications take place on the record?

7        A.    No.

8        Q.    All right.  You didn't inform Roberts'

9    defense counsel about any of these communications?

10       A.    No.

11       Q.    You didn't tell them that your office was

12   preparing the sentencing entry?

13       A.    No.

14       Q.    You didn't provide them with a copy of

15   the notes from Judge Stuard, a copy of the draft

16   entry or the final entry?

17       A.    No.

18       Q.    At the time of your actions, you were

19   aware of the requirements of Disciplinary

20   Rule 7-110(b)?

21       A.    Yes.

22       Q.    You kept a copy of the entry that had

23   been prepared by you and Mr. Becker; isn't that

24   correct?

25       A.    Yes.

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1     Q.   And you took a copy with you to the

2     Roberts sentencing hearing?

3     A.   Yes.

4     Q.   And as Judge Stuard was reading his

5     decision, you followed along and read the copy

6     that you brought with you?

7     A.   Pretty much, yeah.

8     Q.   And at the sentencing hearing, defense

9     counsel, Gerald Ingram, objected -- raised an

10    objection?

11    A.   Yes.

12    Q.   And his objection was based in part on

13    his observation of you reading something that

14    appeared to be the same thing that the Judge was

15    reading?

16    A.   Yes.

17    Q.   And there was a discussion that followed

18    in which Judge Stuard informed Mr. Ingram that he

19    had given handwritten notes to you and Mr. Becker?

20    A.   Yes.

21    Q.   And Exhibit 3 in the binder in front of

22    you is a copy of the transcript of that hearing;

23    isn't that correct?

24    A.   Yes.

25    Q.   And Donna Roberts filed an appeal with

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 395

1    the Supreme Court of her death sentence?

2        A.    Yes.

3        Q.    And the -- in her appeal, she objected to

4    the process that was utilized to draft the

5    sentencing entry?

6        A.    Yes.

7        Q.    And the Supreme Court issued a decision?

8        A.    Yes.

9        Q.    And Exhibit 1 in the binder before you is

10   a copy of that decision?

11       A.    Yes.

12       Q.    You've previously suggested that the

13   process that was used to draft the sentencing

14   entry in the Roberts case was appropriate because

15   it was easier for prosecutors to make sure that

16   legally required language is inserted in each

17   entry?

18       A.    Yeah.

19       Q.    You've also suggested that sometimes

20   judges forget to put things in?

21       A.    Yes.

22       Q.    You've stated that the Prosecutor's

23   Office has to make sure the entries are correct?

24       A.    They have to be what the judge wants,

25   yes.

Page 125

1      Q.   And you've suggested that the

2   Prosecutor's Office has to put in all the magic

3   language required by the case law?

4      A.   Yes.

5      Q.   So there's an advantage to the prosecutor

6   being the party that drafts the court entries;

7   isn't that correct?

8      A.   To the system, yes.

9      Q.   You heard Mr. Becker testify a while ago

10   about the new process for drafting entries in

11   criminal cases in Trumbull County.

12      A.   Yes.

13      Q.   And is it your understanding the process

14   he described is the process that's in place now?

15      A.   Yes.

16      Q.   Thank you.

17      A.   You're welcome.

18         CHAIRMAN BRYANT:  Mr. Richards, do you

19   wish to cross-examine this witness?

20                  - - -

21               CROSS-EXAMINATION

22   BY MR. RICHARDS:

23      Q.   Ken, you don't mean to suggest that if

24   there were a death penalty case today, that the

25   court should -- that in Trumbull County the court

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1   would offer the defense the opportunity to draft

2   an opinion, and if the defense rejected it, that

3   your office would draft it in a death penalty

4   case?  That's not what you're suggesting, are you?

5       A.   I'm sorry, Charlie, what are you asking

6   me?

7       Q.   Okay.  I'm asking you about the procedure

8   that's going to take place going forward, okay, in

9   Trumbull County.

10      A.   Okay.

11      Q.   All right.  What is your understanding of

12  how things are going to happen going forward?

13      A.   We'd follow the Roberts opinion.

14      Q.   And does that mean that under no

15  circumstance do the people in the Prosecuting

16  Attorney's Office draft the statutorily required

17  sentencing opinion?

18      A.   In a death penalty case, a judge would

19  draft it.

20      Q.   And only the judge?

21      A.   And only the judge.

22      Q.   Going forward?

23      A.   Right.

24      Q.   Thank you.

25      A.   Did I say something different than that?

WWW.MCGINNISCOURTREPORTERS.COM

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

```
 1      Q.   Well, there's been confusion in my mind
 2   about -- there's been talk about offering the
 3   opportunity to the defense lawyer.  I'm trying to
 4   make sure that if you offer the opportunity to the
 5   defense lawyer, if the judge offers it to the
 6   defense lawyer and he says, "I don't want to do
 7   it," that doesn't mean the Prosecutor's Office
 8   will do it, does it?
 9      A.   No.
10      Q.   Okay.  Why would we offer it to the
11   defense lawyer then?
12      A.   Well, in a death penalty case?
13      Q.   Yeah.  Or am I confused between death
14   penalty cases and other cases?
15      A.   I think -- I'm talking about just regular
16   cases where the procedure that Chris described
17   would say, like, robbery or burglary or plain
18   old -- plain murder or something like that.
19      Q.   To eliminate any confusion in Trumbull
20   County in death penalty cases going forward, the
21   judge drafts the sentencing opinion; is that your
22   understanding, period?
23      A.   Right.
24      Q.   Thank you.
25      A.   You're welcome.
```

Page 132

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

```
 1            MR. BERGER:  Nothing further, Your Honor.
 2            CHAIRMAN BRYANT:  Do you wish to redirect
 3    at this time?
 4            MS. KHAN:  We'll just reserve for our
 5    case, Your Honor.
 6            CHAIRMAN BRYANT:  You may step down.
 7            THE WITNESS:  Thanks, Your Honor.
 8            (Witness excused.)
 9            CHAIRMAN BRYANT:  Is this a good time for
10    a recess?
11            MR. BERGER:  Absolutely.
12            CHAIRMAN BRYANT:  Court Reporter, is this
13    a good time for a recess?
14            THE COURT REPORTER:  Yes.
15            CHAIRMAN BRYANT:  Is this a good time for
16    lunch?
17            MR. STERN:  Are you closing or are you
18    done?
19            MR. BERGER:  I'm done with the witnesses.
20    I will just be asking to move in our exhibits.
21            CHAIRMAN BRYANT:  Well, why don't we take
22    care of that before we leave.
23            MR. BERGER:  All right.
24            First, let's start with the easiest.  We
25    would ask that the stipulations signed by
```

MC GINNIS & ASSOCIATES, INC.
614.431.1344  COLUMBUS, OHIO  800.498.2451

1   Judge Stuard be admitted into evidence with the

2   attached stipulated exhibits.  Additionally, we

3   would ask that the --

4           MEMBER ELLEMAN:  Hold on for one second.

5   How many exhibits are there attached to that

6   document?

7           MR. BERGER:  Six.

8           MEMBER ELLEMAN:  Six, okay.  Got it.  All

9   right.

10          CHAIRMAN BRYANT:  All right.

11          MR. BERGER:  We would also request that

12  the Bailey/Becker stipulations, which is simply a

13  four-page document, be admitted into evidence.

14          CHAIRMAN BRYANT:  There are no exhibits

15  to that document?

16          MR. BERGER:  That's correct.

17          CHAIRMAN BRYANT:  And it has no exhibit

18  number?

19          MR. BERGER:  Identified it as Relator

20  Bailey/Becker Joint Exhibit 1.

21          CHAIRMAN BRYANT:  Very well.

22          MR. BERGER:  And then there are the

23  remaining exhibits in the binder solely marked

24  Exhibits.

25          MS. KHAN:  I'm sorry, you're referring to

WWW.MCGINNISCOURTREPORTERS.COM

MC GINNIS & ASSOCIATES, INC.
614.431.1344   COLUMBUS, OHIO   800.498.2451

1    Relator's exhibits as it applies to Becker and

2    Bailey?

3            MR. BERGER:  I guess I wouldn't need to

4    move those in until we're done with them.

5            CHAIRMAN BRYANT:  So you're not moving

6    those exhibits in this case; is that correct?

7            MR. BERGER:  That's correct, because they

8    were already stipulated to as a part of the

9    stipulations.  Thank you.

10           CHAIRMAN BRYANT:  Mr. Richards, no

11   objection to the stipulations?

12           MR. RICHARDS:  None.

13           CHAIRMAN BRYANT:  All right.  They will

14   be received.

15                       - - -

16           Thereupon, Relator Stuard Joint

17           Exhibit No. 1 and Relator Bailey/Becker

18           Joint Exhibit No. 1 were received into

19           evidence.

20                       - - -

21           CHAIRMAN BRYANT:  Anything further?

22           MR. BERGER:  Nothing further, Your Honor.

23           CHAIRMAN BRYANT:  Then Relator rests with

24   respect to Judge Stuard?

25           MR. BERGER:  That's correct, Your Honor.

**MC GINNIS & ASSOCIATES, INC.**
**614.431.1344   COLUMBUS, OHIO   800.498.2451**

```
 1              CHAIRMAN BRYANT:  Very well.  Now it is
 2   time for lunch.  How long, an hour?  Let me talk
 3   to counsel for a minute, can I?  This need not be
 4   on the record.
 5              (Discussion held off the record.)
 6              (Luncheon recess taken.)
 7                        - - -
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```