Public Docket

# THE SUPREME COURT OF OHIO
## CASE DOCKET

**State of Ohio v. Nathaniel Jackson**

| **Case Information** | **Number** | 2012-1644 |
| --- | --- | --- |
| | **Type** | Death Penalty Case (offense committed on or after 1/1/95) |
| | **Date Filed** | 09/28/2012 |
| | **Status** | Disposed |
| | **Prior Jurisdiction** | Trumbull County, Court of Common Pleas |
| | **Prior Decision Date** | 08/14/2012 |
| | **Prior Case Numbers** | 01-CR-794 |

**Parties**  Nathaniel Jackson; Appellant
*Represented by:*
Miller, Angela Wilson (64902), Counsel of Record
Porter, Randall Lee (5835)
Sipe, Dennis Lyle (6199)

State of Ohio; Appellee
*Represented by:*
Annos, LuWayne (55651), Counsel of Record
Morrow, Charles LeRoy (40575)
Watkins, Dennis (9949)

**Docket**

| Date Filed | Description | Filed By |
| --- | --- | --- |
| 09/28/2012 | Notice of appeal of Nathaniel Jackson | Appellant |
| 09/28/2012 | Copy of praecipe to court reporter | Appellant |
| 09/28/2012 | Copy of entry of appointment of counsel | Appellant |
| 10/01/2012 | Copy of notice of appeal sent to clerk of court of common pleas | |
| 10/01/2012 | Order to clerk of court/custodian to certify record | |
| 01/02/2013 | Record | |
| 01/02/2013 | Clerk's notice of filing of record | |
| 04/03/2013 | Motion for stay of execution | Appellant |
| | **04/18/13 Granted pending final disposition of his direct appeal.** | |
| 04/25/2013 | Stipulation to extension of time to file merit brief to 7/22/13 | Appellant |
| 05/23/2013 | Suggestion of lack of a final appealable order | Appellant |
| | **04/08/15 Denied. See announcement at 2015-Ohio-1353 (https://supremecourt.ohio.gov/rod/docs/pdf/0/2015/2015-ohio-1353.pdf).** | |
| 05/31/2013 | Motion to strike/response to suggestion of lack of a final appealable order | Appellee |
| | **04/08/15 Denied. See announcement at 2015-Ohio-1353 (https://supremecourt.ohio.gov/rod/docs/pdf/0/2015/2015-ohio-1353.pdf).** | |

6/7/2017 Public Docket

| Date Filed | Description | Filed By |
|---|---|---|
| 06/10/2013 | Memo opposing motion to strike | Appellee |
| 06/14/2013 | Motion to hold proceedings in abeyance | Appellant |
| | **04/08/15 Denied. See announcement at 2015-Ohio-1353 (https://supremecourt.ohio.gov/rod/docs/pdf/0/2015/2015-ohio-1353.pdf).** | |
| 06/20/2013 | Memo in response to motion to hold proceedings in abeyance | Appellee |
| 07/22/2013 | Appellant's merit brief | Appellant |
| 11/15/2013 | Appellee's merit brief | Appellee |
| 12/30/2013 | Reply brief | Appellant |
| 12/22/2015 | Notice of recusal of Justice O'Neill, received by Clerk's Office | |
| 02/25/2016 | Oral argument scheduled for Tuesday, April 19, 2016 | |
| 02/25/2016 | Notice of oral argument to be held on Tuesday, April 19, 2016 | |
| 03/01/2016 | E-mail notification received by Clerk's Office regarding assignment of Judge William A. Klatt, Tenth District Court of Appeals, for Justice O'Neill | |
| 03/01/2016 | Assignment of Judge William Andrew Klatt of the Tenth District Court of Appeals, effective March 1, 2016 | |
| 04/19/2016 | Oral argument held | |
| 08/24/2016 | **DECISION: Affirmed; sentence to be carried into execution on July 15, 2020. See opinion at 2016-Ohio-5488 (https://supremecourt.ohio.gov/rod/docs/pdf/0/2016/2016-ohio-5488.pdf). See announcement at 2016-Ohio-5500 (https://supremecourt.ohio.gov/rod/docs/pdf/0/2016/2016-ohio-5500.pdf).** | DISPOSITIVE |
| 08/24/2016 | Copies of entry issued by certified mail | |
| 09/06/2016 | Motion for reconsideration | Appellant |
| | **11/09/16 Denied. See announcement at 2016-Ohio-7677 (https://supremecourt.ohio.gov/rod/docs/pdf/0/2016/2016-ohio-7677.pdf).** | |
| 09/14/2016 | Memo opposing motion for reconsideration | Appellee |
| 11/10/2016 | Certified copy of judgment entry/mandate sent to clerk | |
| 12/08/2016 | Motion for appointment of counsel Angela Wilson Miller | Appellant |
| | **12/23/16 Granted; Angela Wilson Miller is appointed to represent appellant for the purposes of filing an application to reopen direct appeal. See announcement at 2016-Ohio-8360 (https://supremecourt.ohio.gov/rod/docs/pdf/0/2016/2016-ohio-8360.pdf).** | |
| 01/26/2017 | Application for attorney fees of Dennis L. Sipe | Appellant |
| | **01/30/17 Granted in the amount of $5,683.50** | |
| 01/26/2017 | Personal Identifier Form - Application for attorney fees | Appellant |
| 02/07/2017 | Application for reopening under S.Ct. Prac. R. 11.06 | Appellant |
| 03/08/2017 | Opposition to application for reopening | Appellee |
| 04/20/2017 | Notice of U.S.S.C. denial of petition for writ of certiorari | |

End of Docket

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7584



## In The Supreme Court of Ohio

State of Ohio,                                    :

      Appellee,                            :    Case No.  1 2 - 1 6 4 4

-vs-                                             :    Appeal taken from Trumbull
                                     County Court of Common Pleas
Nathaniel Jackson,                               :    Case No. CR 01-CR-794

      Appellant.                           :    This is a death penalty case

---

### NOTICE OF APPEAL OF APPELLANT NATHANIEL JACKSON

---

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney


Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor Administration Building
Warren, Ohio 44481
(330) 675-2426 (Voice)
(330) 675-2431 (Facsimile)
psannos@co.trumbull.oh.us

OFFICE OF THE
OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Counsel of Record

250 E. Broad Street - Suite 1400
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0708 (Facsimile)
Randall.Porter@OPD.ohio.gov

And

DENNIS L. SIPE - 0006199

Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com



FILED

SEP 28 2012

CLERK OF COURT
SUPREME COURT OF OHIO

COUNSEL FOR APPELLEE

COUNSEL FOR APPELLANT

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7585

## In The Supreme Court of Ohio

State of Ohio,                          :

      Appellee,                       :    Case No.

-vs-                                    :    Appeal taken from Trumbull
                                                 County Court of Common Pleas
Nathaniel Jackson,                      :    Case No. 01 CR 794

      Appellant.                      :    This is a death penalty case

---

### NOTICE OF APPEAL OF APPELLANT NATHANIEL JACKSON

I

        Appellant Nathaniel hereby gives notice of appeal to the Supreme Court of Ohio from the judgment entries of the Trumbull County Court of Common Pleas, entered on August 14 and August 16, 2012. *See* Exhibits A, B, and C. This is a capital case and the date of the offense is December 12, 2001. *See* Supreme Court Rule of Practice 19.1

                              Respectfully submitted,

                              Office of the
                              Ohio Public Defender

                              RANDALL L. PORTER - 0005835
                              Assistant State Public Defender
                              250 E. Broad Street - Suite 1400
                              Columbus, Ohio  43215-9308
                              (614) 466-5394 (Telephone)
                              (614) 644-0708 (Facsimile)
                              Randall.Porter@opd.ohio.gov

                              And

                              DENNIS L. SIPE – 0006199

BuellSipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

By _____
    Randall L. Porter

Counsel for Nathaniel Jackson

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Notice Of Appeal of Appellant Nathaniel Jackson* forwarded by electronic and regular U.S. Mail to Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio  44481 on this the 28th day of September, 2012.

_____
RANDALL PORTER - 0005835
Assistant State Public Defender

COUNSEL FOR NATHANIEL JACKSON

2

1

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

CASE NO. <u>01-CR-794</u>

STATE OF OHIO,         )     JUDGE JOHN M. STUARD

        PLAINTIFF    )

vs.                )     <u>JUDGMENT ENTRY</u>

                   )

NATHANIEL JACKSON,    )     <u>ENTRY ON SENTENCE</u>

        DEFENDANT    )

On August 14, 2012, Defendant, Nathaniel Jackson's sentencing hearing was held pursuant to O.R.C. Section 2929.19. Defense Attorneys, Anthony Consoldane and James Lewis, and Prosecutor Dennis Watkins and Assistant Prosecutor Charles Morrow were present, as was Defendant, Nathaniel Jackson, who was afforded all rights pursuant to Criminal Rule 32.  The Court has considered the record and oral statements, as well as the principles and purposes of sentencing under O.R.C. Section 2929.11,and has balanced the seriousness and recidivism factors of O.R.C. Section 2929.12.

Pursuant to law, the Trial Court this day, August 14, 2012, having determined in a separate opinion of specific



EXHIBIT

A

2

findings that the aggravating circumstances as to the count of Aggravated Murder outweigh the mitigating factors by proof beyond a reasonable doubt, then made inquiry as to whether the Defendant had anything to say why judgment should not be pronounced against him, and the Defendant in answer showed no good cause or sufficient reason why sentence should not be pronounced.

The Court has considered the factors under O.R.C. Section 2929.14 and makes the following findings:

1) The shortest prison term will demean the seriousness of the Defendant's conduct;

2) The longest prison term is appropriate because the Defendant committed the worst form of the offense;

3) Multiple prison terms are necessary to protect the public from future crime and to punish the offender;

4) Consecutive prison sentences are not disproportionate to the seriousness of the Defendant's conduct and to the danger the offender poses to the public;

5) The harm caused by the multiple offenses was so great that no single prison term for any of the

offenses committed as part of a single course of conduct
adequately reflects the seriousness of the Defendant's
conduct; and

6) The Defendant's history of criminal
conduct demonstrates that consecutive sentences
are necessary to protect the public from future
crime by the Defendant.

It is, therefore, ORDERED, ADJUDGED and DECREED that the
Defendant, Nathaniel Jackson, be taken from the courtroom to
the Trumbull County Jail and from thence to the Correction
Reception Center at Lorain, Ohio, and thereafter be sentenced
to death on August 15, 2013, on Count One; and imprisoned
therein for the stated prison term of ten (10) years on Count
Three; plus a mandatory term of three (3) years on the Firearm
Specification to be served prior to and consecutive to the
sentence imposed in Count Three; ten (10) years on Count Four,
plus a mandatory term of three (3) years on the Firearm
Specification to be served prior to and consecutive to the
sentence imposed on Count Four; sentence in Count Four to be
served consecutively to the sentence imposed on Count Three.
Firearm Specifications in Count Three and Count Four shall
merge as one sentence in Count Three as a matter of law.

4

Defendant is Ordered to the cost of prosecution taxed in the amount of $_____ for which execution is awarded.

_____8/14/12_____          _____~M. Stuard_____
        DATE                    JUDGE JOHN M. STUARD

THE CLERK OF COURTS IS HEREBY
ORDERED TO SERVE COPIES OF
THIS ENTRY TO ALL COUNSEL OF RECORD.

_____~M Stuard_____
JUDGE JOHN M. STUARD

> You are hereby notified that
> you have been convicted of a
> felony of violence and pursuant
> to Section 2923.13 of the
> Ohio Revised Code, you are
> prohibited from acquiring,
> having, carrying or using any
> firearm or dangerous ordnance.

1

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO
CASE NO. 01-CR-794

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| Plaintiff | ) | |
| vs. | ) | FINDINGS OF FACTS |
| NATHANIEL E. JACKSON, | ) | AND CONCLUSIONS OF LAW |
| Defendant | ) | |

The Defendant, Nathaniel E. Jackson, having entered a plea of not guilty, this matter proceeded to trial, and the Defendant being found guilty was sentenced by this Court.

The matter is before the Court on remand from the Supreme Court of Ohio pursuant to the Court's opinion and order on remand. The remand is quite specific wherein having found no prejudicial error in regard to Defendant, Nathaniel Jackson's conviction, the conviction and judgment of the Court was affirmed. The reviewing Court went on to state the opinion that the administrative act of typing this Court's opinion evaluating the appropriateness of the death penalty as required by R.C. 2929.03(F) was defective. The Supreme Court apparently thought the prosecution participated in the Court's conclusions as set forth in the final opinion.

EXHIBIT

B

FEB540 800-631-6989

2

This writer has presided over the trials of each of the Co-Defendants, Nathaniel Jackson and Donna Roberts. He has reviewed and decided the appropriateness of the death penalty option in both cases as required by O.R.C. 2929.03 and now does so again as ordered by the Ohio Supreme Court.

On November 8, 2002, a Trumbull County jury returned a verdict finding the Defendant, Nathaniel E. Jackson, guilty of two (2) counts of Aggravated Murder arising from the death of Robert S. Fingerhut. Since Count 1 and Count 2 of the indictment merge for sentencing purposes, the State elected to dismiss Count 2 and proceed to the mitigation phase on the 1st count of the indictment. Therefore, for the purposes of this opinion, the Defendant was convicted, under the 1st count of the indictment, of purposely, and with prior calculation and design, of causing the death of Robert S. Fingerhut. The jury further found that the State had proved beyond a reasonable doubt the specifications of Aggravating Circumstances. After the mitigation hearing, the jury concluded that the State had proved beyond a reasonable doubt that the Aggravating Circumstances outweighed the mitigating factors and returned a verdict recommending that the sentence of death be imposed upon the Defendant.

Factually, the evidence presented by the State revealed that while the Defendant was in prison for a prior conviction unrelated to the present case, he along with the co-defendant, Donna Roberts, plotted the murder of her housemate and ex-husband, Robert S. Fingerhut.

The police authorities in investigating the death of Robert S. Fingerhut found two (2) boxes of personal letters written between Jackson and Roberts, wherein they planned in great detail how the murder of Robert s. Fingerhut would be carried out. The police also found numerous phone call recordings from the institution in which Jackson had been incarcerated wherein specific preparations were discussed.

The State, therefore, had a plethora of information in the handwriting of both Co-Defendants wherein they plotted the murder of Robert's housemate, and ex-husband, Robert S. Fingerhut. Indeed, both of them conceived and executed a plan to kill Fingerhut in order to permit the Defendant, Roberts, to live "happily ever after." However, the plan went awry when Jackson, who was in the house where Fingerhut resided, was shot in the left index finger during the execution of Fingerhut. He then took Fingerhut's car keys and drove the vehicle which Fingerhut typically operated to his business location in to Youngstown. Shortly thereafter, Roberts took the Defendant to

4

a motel in Boardman and rented a room where Jackson could hide out. Ultimately, the Defendant was captured at a house in Youngstown, and gave a statement to the police alleging self defense.

More specifically, the State introduced evidence that on December 11, 2001, two (2) days after the Defendant was released from prison, Robert S. Fingerhut, while in his home, was pistol whipped and shot 3 times, causing at least four injuries from gunshots. Two of the injuries were to the back, with one grazing the back, and the other entering near the shoulder before exiting out the chest area of the victim. Fingerhut also sustained a defensive gun shot wound to the webbing of his left hand between the thumb and forefinger. The fatal gunshot was to the top of Fingerhut's head and from a short distance. This injury "would have dropped him like a sack of potatoes," as testified to by Dr. Humphrey Germaniuk, the coroner.

Police responded to the crime scene as a result of a 911 call. When they arrived at approximately 12:01 a.m., they were met by the Co-Defendant, Donna Roberts, who informed them that her ex-husband's car was missing. She also granted them permission to search the residence and her car. During this search, police found more than 140 letters from the Defendant

5

to Roberts in her dresser, and an equal number of letters from Roberts to the Defendant in the trunk of Roberts' car, in a paper bag bearing the Defendant's name and prison number.

Additionally, law enforcement officers were able to obtain 19 telephone conversations, lasting more than three (3) hours, which were recorded while the Defendant was incarcerated in Lorain Correctional Institution. These telephone conversations, along with the letters which spanned three (3) months, revealed a continuing and evolving plan to kill Fingerhut immediately upon the Defendant's release from prison.

The evidence also revealed that Roberts, near the time of the murder, was seen driving her automobile in a very slow manner away from the vicinity of the home where Fingerhut lived. Furthermore, within two (2) hours from the last time Fingerhut was seen alive, Roberts rented a hotel room for the Defendant. In this room, bloody bandages and other medical supplies were found by hotel cleaning people and were subsequently collected by police.

The car which was usually driven by Fingerhut, and which had been reported stolen by the Co-Defendant, was recovered in Youngstown, Ohio. Bloodstains were located throughout the vehicle and were collected by law enforcement. DNA analysis revealed that the blood matched that of DNA profile of the

6

Defendant.

The State also introduced evidence that Roberts and the Defendant discussed purchasing a "new Lincoln" or "2002 Cadillac DeVille" for the Defendant.  Additionally, Fingerhut had two (2) life insurance policies with a total death benefit of $550,000.00 and with Donna Roberts named as the beneficiary.

Based upon this and other evidence, the jury properly concluded that the Defendant committed a burglary to facilitate the premeditated and the purposeful murder of the victim Fingerhut along with the Co-Defendant Roberts.  The Defendant after executing his plan, then stole Fingerhut's vehicle which allowed the jury to find that the murder was committed while committing the aggravating circumstances of Aggravated Burglary and Aggravated Robbery.

In a case of this nature, pursuant to O.R.C. 2929.03(D)(3), the Court is required to determine whether the State has proved beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors.  Indeed the Supreme Court of Ohio has stated in State v. Wogenstahl (1996), 75 Ohio St. 3d, 344:

> The nature and circumstances of the offense may only enter into the statutory weighing process on the side of mitigation...In the penalty phase of a capital trial, the 'aggravating circumstances' against which the mitigating evidence is to be weighed are limited to the specifications of aggravating circumstances set forth in

RC 2929.04(A)(1) through (8) that have been alleged in the indictment and proved beyond a reasonable doubt. (See Wogenstahl at 356)
In performing its statutory duty, a review of the aggravating circumstances is required.

1.) *The Defendant committed the Aggravated Murder while he was committing, attempting to commit, or fleeing immediately after committing Aggravated Burglary and that he was the principal offender.*

The evidence presented at trial reflected that the Defendant trespassed in the victim's dwelling and murdered him. The Court finds that the Defendant entered into 254 Fonderlac Drive in Howland Township.  He was wearing gloves and armed with a gun, with which he struck the victim leaving a mark on Fingerhut's face.  Once in the house, he fired the gun three times causing four (4) separate wounds.  The fatal shot was to the top of Fingerhut's head, and nearly straight down.

From the aforementioned evidence, the Jury concluded that the Defendant committed the Aggravated Murder while he was committing, attempting to commit, or fleeing immediately after committing Aggravated Burglary and that he was the principal offender.

2.) *The Defendant committed the Aggravated Murder while he was committing, attempting to commit, or fleeing immediately after committing Aggravated Robbery and*

8

*that he was the principal offender.*

As he was driving away from the crime scene, and prior to abandoning the vehicle in Youngstown, he left blood evidence throughout the car.  This evidence was subjected to DNA testing, which confirmed that forensically, it was his blood.  Quite simply, the Defendant committed the Aggravated Robbery to escape the consequences of his prior murderous act.

This evidence permitting the jury to conclude that the Defendant committed the Aggravated Murder while he was committing, attempting to commit, or fleeing immediately after committing Aggravated Robbery and that he was the principal offender.

To be weighed against the aggravating circumstances are the mitigating factors.  In this case, the following factors were considered by the Court as possible mitigation against each specification and against the imposition of the death penalty:

1.) *The nature and circumstances of the offense, the history, character, and background of the offender.*

As was noted in <u>Wogenstahl</u>, supra, the nature and circumstances of the offense may only enter into the statutory weighing process on the side of mitigation.  However, in this

case, reviewing the nature and circumstances, the Court does not find any credible evidence which would allow the Court to accord any weight to the nature and circumstances of the offense against the imposition of the death penalty.

In considering the history, character and background of the offender, this Court considered the home life of the Defendant and the fact that he grew up in a relatively poor environment, and that he was cared for and raised by his mother and maternal grandmother. His biological father had little, if any, real involvement with him, and this lack of a father figure likely contributed to his behavioral problems.

Though the Court gives some weight to the Defendant's upbringing, it deserves little weight because of the credible testimony from the Defendant's step-father, his sister, his mother, and Dr. McPherson. These witnesses testified that the Defendant was respectful to both his mother and grandmother. His sister, who described him as smart and really kind, noted that they attended church. Further, there was testimony offered that he was reared in an environment, where he was not physically or sexually abused. His mother also declined to say that his home was in a "rough neighborhood," or that the Defendant had any problems in school. Dr. McPherson's report noted that the Defendant had not been hospitalized for any

10

physical or mental condition.  The witnesses also notes that they practiced moral tenets and that responsibility and respect were taught.

In conclusion, from the testimony of these witnesses, there is nothing particularly evident to show an unusual childhood or to offer an explanation for the Defendant's behavior which would be entitled any significant weight on the side of mitigation.

2.) *Whether the victim of the offense induced or facilitated the killing.*

Although under R.C. 2929.04(B)(1), the mitigating factor regarding whether the victim of the offense induced or facilitated it, was not specifically argued by the Defendant during the penalty phase of the trial as mitigating, the Court did consider the Defendant's videotaped statement presented in evidence during the trial phase.  In the self-serving statement, the Defendant claimed that the killing of the victim was as a result of the Defendant protecting himself from an unprovoked attack by the victim.

This statement to the police attempted to construct a scenario wherein the victim approached the Defendant to purchase marijuana and then invited the Defendant into his home.  The Defendant then claims that the victim then pulled a

11

gun on him.  The Defendant asserted that he attempted to disarm the victim, but the gun went off apparently striking the victim.  However, the other facts illustrating the planning and execution of the murder, along with the physical evidence introduced, causes the Defendant's version not to be credible.  As such, the Court does not accord any weight to this mitigating factor.

> 3.) *Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation.*

Again, while the Defendant did not specifically argue this mitigating factor, the Court upon reviewing the video tape, noticed that the Defendant claimed that the victim made derogatory statements about the Defendant's race which angered the Defendant.  However, this comment is likewise not convincing for the same reasons noted previously.  This mitigating factor has no weight.

> 4.) *Any other factors that are relevant to the issue of whether the offender should be sentenced to death.*

Under R.C. 2929.04(B)(7), commonly referred to as the "catch all provision," the Court reviewed the Defendant's capacity to appreciate the criminality of his conduct in light

12

of the defense expert testimony regarding his mental history and mental state at the time of the offense was considered as a possible factor under R.C. 2929.04(B)(3).

This testimony revealed that the Defendant suffered from Attention Deficit Disorder/Hyperactivity Disorder, Chemical Dependency, and a reported history of alcohol abuse. Further, the evidence disclosed that the Defendant had an Antisocial Personality Disorder and was considered low average or better in intelligence.

Significantly, however, there was no evidence presented that the Defendant, at the time of the offense, had any mental disease or defect or that he lacked the capacity to appreciate the criminality of his conduct. His Antisocial Personality Disorder only showed that he had a history of inappropriate and impulsive behavior from his early childhood to the present. He was incarcerated four (4) times. According to the Defendant's own expert, the Defendant, throughout his juvenile and adult life had received repeated treatment and/or probation for his criminal transgressions and his drug and alcohol abuse. He did not learn from his past mistakes, but only escalated his antisocial conduct.

In summary, this Court gives very little weight in mitigation to the Defendant's mental status, and his drug and

13

alcohol abuse history especially in light of the Defendant's elaborate scheme to kill the victim, elude capture, and finally his attempt to deceive police officers with a statement blaming the victim.

Further under R.C. 2929.04(B)(7), the Court examined the Defendant's ability to maintain himself in a stable fashion in a structured setting.  Indeed, it was suggested by the Defense that he could be a productive member of the general prison population, and that this should be considered as mitigating. However, the Court gives slight weight to this particular factor.

The Defendant's last incarceration was the result of him not learning from his past mistakes, and from his tendency to act out impulsively without looking at the consequences. Furthermore, he repeatedly was placed on probation, but he continued to digress, committing more serious criminal acts. Indeed, during the last incarceration, the Defendant claimed to have "found God" and that he was going to straighten out his life.  At the same time, it is abundantly clear that he was plotting to commit the ultimate criminal act, a premeditated burglary and murder, while pre-textually presenting himself to prison officials as a good candidate for a release program. Quite simply, in the very setting in which the Defense suggests

14

that he could be a productive member, the Defendant defined and refined a plot, involving gloves, a mask and handcuffs, to murder Robert S. Fingerhut so that in effect he could assume Fingerhut's lifestyle, including running the Greyhound bus business, managing rental properties, and living in his home with Fingerhut's ex-wife.

The Defendant also offered an unsworn statement, wherein he stated that he was "very sorry for what happened." The Court likewise gives this statement slight weight as the statement lacked sincerity. The tone and tenor of the apology did not, in the Court's opinion, come from someone who was genuinely remorseful. Even assuming that the Defendant was remorseful, such retrospective remorse is not entitled to any significant weight. To the contrary, the Court believes that the Defendant's feigned remorse stems from the fact that the Defendant was apprehended. The Defendant was disappointed that the fool-proof, premeditated murder plot, which he developed over nearly three (3) months, and which included shooting the victim "in the 'F'ing head," failed.

When independently weighing the aggravating circumstances as to the Aggravated Murder as previously outlined against the collective factors in mitigation, this Court finds that the aggravating circumstances not only outweigh the mitigating

15

factors by proof beyond a reasonable doubt, but in fact, they almost completely overshadow them.

The State of Ohio has recognized that under certain circumstances, the death penalty is an appropriate sanction for any Defendant who commits an Aggravated Murder during the commission of certain felonies. In the case at bar, the underlying felonies are Aggravated Burglary and Aggravated Robbery.

In this particular case, the Court accords substantial weight to the Aggravated Burglary specification. In order to prove an Aggravated Burglary, the State is required to demonstrate that the Defendant trespassed in the occupied structure for the purpose of committing a criminal act. In most instances, this criminal act is a theft offense. Occasionally, a Defendant will trespass to commit a kidnapping or even a rape. Such criminal acts provide the basis upon which a Defendant can be convicted of Aggravated Burglary. Then, if during any of these underlying criminal acts, the victim is purposely killed, an Aggravated Murder with the specification of Aggravated Burglary has been committed. These alone can permit the imposition of the death penalty should the aggravating circumstance of the Aggravated Burglary be found to outweigh the mitigating factors.

16

Under the facts in the instant case, this Court cannot foresee of any other form of Aggravated Burglary where the weight to be given to this aggravating circumstance could ever be greater.  The evidence reveals that the sole purpose for the Defendant's illegal entry in the Fingerhut residence was not to commit a theft, a kidnapping or a rape, but rather to carry out the premeditated, cold blooded execution of Robert S. Fingerhut.  This is the most heinous form of Aggravated Burglary, and it is entitled to unsurpassed weight.  Further, in this Court's view, this aggravating circumstance, standing alone, outweighs all of the evidence presented in mitigation.

The Court further gives weight to the Aggravated Robbery specification.  After shooting the victim in the head, the Defendant took personal property of the victim to effectuate his escape.  Indeed, the Defendant stole the victim's keys and his car.

Against this backdrop, the mitigating factors of the Defendant's background, history and character, his Antisocial Personality Disorder, his Attention Deficit Disorder, his history of drug and alcohol abuse, as well as his unsworn statement, have very little effect in minimizing, lessening, or excusing the degree of the Defendant's murderous conduct.  From the overwhelming evidence, it is this Court's opinion that the

17

Defendant and the Co-Defendant plotted the murder of Robert S. Fingerhut solely to collect $550,000.00 in insurance proceeds. This was accomplished by trespassing in the residence where Fingerhut resided, for the sole purpose of ambushing and murdering him.

Upon consideration of the relevant evidence raised at trial, the relevant testimony, the other evidence, the unsworn statement of the Defendant, and the arguments of counsel, it is the judgement of this Court that the aggravating circumstances, outweigh, by proof beyond a reasonable doubt, the collective mitigating factors.

_8/14/12_

DATE

JUDGE JOHN M. STUARD
COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

TO THE CLERK OF COURTS: YOU ARE ORDERED TO SERVE
COPIES OF THIS JUDGMENT ON ALL COUNSEL OF RECORD
OR UPON THE PARTIES WHO ARE UNREPRESENTED FORTH
WITH BY ORDINARY MAIL.

JUDGE

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7608



# IN THE COURT OF COMMON PLEAS
## - GENERAL DIVISION-
### TRUMBULL COUNTY, OHIO

**CASE NUMBER: 2001 CR 00794**

**STATE OF OHIO**
**PLAINTIFF**

**VS.**

**JUDGE JOHN M STUARD**

**NATHANIEL E JACKSON**
**DEFENDANT**

**SENTENCED TO THE LORAIN**
**CORRECTIONAL FACILITY**

**NUNC PRO TUNC**
**JUDGMENT ENTRY ON SENTENCE**

**A DEATH PENALTY CASE**

The Court has prepared this Nunc Pro Tunc Judgment Entry on Sentence for the purpose of correcting the original Entry on Sentence filed in this case on August 14, 2012. On August 15, 2012, Atty. Charles Morrow filed a Motion to Correct Entry on Sentence alerting the Court to the fact that certain clerical errors were present in the August 14, 2012 sentencing entry. The Court has reviewed the motion as well as the August 14, 2012 sentencing entry and finds the entry contained several inadvertent errors. Therefore, the Court renders this Nunc Pro Tunc Judgment Entry on Sentence for the purpose of correcting the August 14, 2012 Entry on Sentence previously prepared by the Court.

On August 14, 2012, Defendant, Nathaniel Jackson, was brought before this Court for the purposes of re-sentencing after the original sentence was vacated by the Eleventh District Court of Appeals on October 18, 2010. On August 14, 2012, the Defendant's sentencing hearing was held pursuant to R.C. 2929.19. The

**EXHIBIT**

**C**

represented by Atty. Randall L. Porter. Also present in Court was Atty. John P. Parker.[1]

Atty. Charles L. Morrow and Atty. LuWayne Annos were present in Court on behalf of

the State of Ohio.

The Defendant was afforded all rights pursuant to Crim.R.32. The Court has

considered the record, oral statements, as well as the principles and purposes of

sentencing under R.C. 2929.11 and has balanced the seriousness and recidivism factors

of R.C. 2929.12.

The Court has previously set forth in a separate opinion of specific factual

findings that the aggravating circumstances as to Count One; Aggravated Murder,

outweigh the mitigating factors by proof beyond a reasonable doubt. The Court inquired

of the Defendant at the hearing in this matter as to whether he had anything to say

why judgment should not be pronounced against him. The Defendant, in answer,

showed no good cause or sufficient reason why sentence should not be pronounced.

The Court has considered the factors under R.C. 2929.14 and makes the

following findings: (1) The shortest prison term will demean the seriousness of the

Defendant's conduct; (2) the longest prison term is appropriate because the Defendant

committed the worst form of the offense; (3) multiple prison terms are necessary to

protect the public from future crime and to punish the offender; (4) consecutive prison

sentences are not disproportionate to the seriousness of the Defendant's conduct and to

the danger the offender poses to the public;(5) the harm cause by the multiple offenses

was so great that no single prison term for any of the offenses committed as part of a

single course of conduct adequately reflects the seriousness of the Defendant's conduct;

---

[1] Atty. Parker advised the Court during the sentencing hearing that a conflict existed which prevented him from representing the Defendant for the purposes of this sentencing hearing.

and (6) the Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the Defendant.

It is therefore, ORDERED, ADJUDGED and DECREED that:

1. The Defendant is hereby sentenced to death on August 15, 2013 on Count One;

2. The Defendant serve an prison term of Ten (10) Years on Count Three plus Three (3) Years on the firearm specification;

3. The Three (3) Year imprisonment term on the firearm specification shall be served prior to and consecutive to the imprisonment term for the underlying offense in Count Three for a total imprisonment term of Thirteen (13) Years on Count Three;

4. The Defendant serve a prison term of Ten (10) Years on Count Four plus Three (3) Years on the firearm specification;

5. The Three (3) Year imprisonment term on the firearm specification shall be served prior to and consecutive to the imprisonment term for the underlying offense in Count Four for a total imprisonment term of Thirteen (13) Years on Count Four;

6. The imprisonment term on Count Four shall be served consecutive to the imprisonment term imposed on Count Three;

7. The firearm specifications in Count Three and Count Four shall merge for the purposes of sentencing in Count Three as a matter of law;

8. The Defendant is ordered to submit to DNA testing;

9. The Defendant shall pay the cost of prosecution taxed in the amount of $_____ costs for which execution is awarded.

As to Counts Three and Four, the Court has further notified the Defendant that post-release control is mandatory in this case for Five (5) Years, as well as the consequences for violating conditions of post-release control imposed by the Parole Board under R.C. 2967.28. The Defendant is ordered to serve as part of this sentence any term of post-release control imposed by the Parole Board, and any prison term for violation of that post-release control.

As to Count One, the Court has further notified the Defendant that post-release control is mandatory if the Defendant is released on parole before serving the Death Sentence in Count One. The maximum possible parole period is equal to a Life Sentence imposed for the Aggravated Murder charge in Count One. A violation of any parole rule or condition may result in (1) a more restrictive sanction while released; (2) an increased duration of parole supervision, up to the maximum set out above; and/or (3) re-imprisonment for a period of time equal to the Life Sentence. If the Defendant commits another felony while subject to this period of parole or supervision, or if by some other means violates the conditions of parole, he may be sent back to prison to serve out the remainder of the Life Sentence imposed.

The Defendant is hereby advised that most prison inmates are eligible to earn days of credit against their prison sentences for each completed month of productive participation in educational or employment programs developed by ODRC with specific standards for performance by prisoners. Some inmates, including those confined for sex offenses and the most dangerous first and second degree felonies and homicides are not eligible to earn days of credit.

The Court further disapproves of the Defendant's placement in a program

of shock incarceration pursuant to R.C. 5120.031 or for placement in an intensive prison

program pursuant to R.C. 5120.032.

    IT IS SO ORDERED.

_____
JUDGE JOHN M STUARD

Date:___8/16/12___

**TO THE CLERK OF COURTS:  You Are Ordered to Serve
Copies of this Judgment on all Counsel of Record
or Upon the Parties who are Unrepresented Forthwith
by Ordinary Mail.**

_____
**JUDGE JOHN M STUARD**

8-16-12
Copies to:
Pros.
R. Porter



## In The Supreme Court of Ohio

| | |
|---|---|
| State of Ohio, | : |
| Appellee, | : Case No. 12-1644 |
| -vs- | : Appeal taken from Trumbull County Court of Common Pleas |
| Nathaniel Jackson, | : Case No. CR 01-CR-794 |
| Appellant. | : This is a death penalty case |

---

### APPELLANT NATHANIEL JACKSON' PRAECIPE

---

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney

Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor Administration Building
Warren, Ohio 44481
(330) 675-2426 (Voice)
(330) 675-2431 (Facsimile)
psannos@co.trumbull.oh.us

OFFICE OF THE
OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Counsel of Record

250 E. Broad Street - Suite 1400
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0708 (Facsimile)
Randall.Porter@OPD.ohio.gov

And

DENNIS L. SIPE - 0006199

Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

FILED

SEP 28 2012

CLERK OF COURT
SUPREME COURT OF OHIO

COUNSEL FOR APPELLEE

COUNSEL FOR APPELLANT

In The Supreme Court Of Ohio

Capital Case Praecipe

| | | |
|---|---|---|
| State Of Ohio, | : | Date Of Offense: <u>December 12, 2001</u> |
| Appellee, | : | Trial Case No.: <u>01 CR 794</u> |
| -vs- | : | Date Of Final Judgment |
| | | In Trial Court: <u>August 13 and 16, 2012</u> |
| Nathaniel Jackson, | : | |
| Appellant | : | Trial Court Judge: <u>John M. Stuard</u> |

To The Court Reporter:

Immediately prepare a complete transcript of <u>all</u> proceedings from the original trial and all post sentencing matters including post-conviction, motions for a new trial, motion from relief from judgment and re-sentencing including but not limited to the arraignment, <u>all</u> pre-trial hearings, motion hearings, in chambers conferences, trial phase (including voir dire) proceedings, penalty phase proceedings, and sentencing proceedings, in conformance with S. Ct. Prac. R. 19.4 (B), and deliver to the clerk of the court of common pleas.

Office of the
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender
250 E. Broad Street - Suite 1400
Columbus, Ohio  43215-9308
(614) 466-5394 (Telephone)
 (614) 644-0708 (Facsimile)
<u>Randall.Porter@opd.ohio.gov</u>

And

DENNIS L. SIPE – 0006199

Buell & Sipe, Co., L.P.A.
322 Third Street

Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buell.sipecom

By _____
Randall L. Porter
Counsel for Nathaniel Jackson

### Certificate Of Service

I hereby certify that the foregoing *Praecipe* was forwarded by electronic and regular U.S. Mail to Mary Ann Mills, Court Reporter, Trumbull County Court of Common Pleas, Courtroom #2, 161 High Street, NW Warren Ohio 44481 Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio 44481 on this 28th day of September, 2012.

_____
Randall L. Porter
Counsel for Nathaniel Jackson

2



# IN THE COURT OF COMMON PLEAS
## -GENERAL DIVISION-
## TRUMBULL COUNTY, OHIO

CASE NUMBER:  2001 CR 00794

## 12-1644

STATE OF OHIO
**PLAINTIFF**

vs.                                                        JUDGE JOHN M STUARD

**NATHANIEL E JACKSON
DEFENDANT**                                    <u>**JUDGMENT ENTRY**</u>


Nathaniel Jackson's Motion for Appointment of Appellate Counsel is granted.

Attorney Randall L. Porter and Attorney Dennis L. Sipe are appointed as Appellate

Counsel in this matter.

JUDGE JOHN M STUARD

Date:  _9/6/12_


FILED
COURT OF COMMON PLEAS

SEP 1 2 2012

TRUMBULL COUNTY, OH
KAREN INFANTE ALLEN, CLERK

**TO THE CLERK OF COURTS:  YOU ARE ORDERED TO SERVE
COPIES OF THIS JUDGMENT ON ALL COUNSEL OF RECORD
OR UPON THE PARTIES WHO ARE UNREPRESENTED FORTH
WITH BY ORDINARY MAIL.**

**JUDGE**

9/12/12
Copies To:
PROS
Atty J. Parker
Atty A. Consoldane
Atty R. Porter
Atty J. Laizko

FILED

SEP 2 8 2012

CLERK OF COURT
SUPREME COURT OF OHIO

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7617



# The Supreme Court of Ohio

**FILED**

OCT 0 1 2012

CLERK OF COURT
SUPREME COURT OF OHIO

To the Clerk of Court of Common Pleas for

Trumbull _____ County

ORDER TO CERTIFY RECORD
IN DEATH PENALTY CASE

S.C. Case No. _____2012-1644_____
C.P. Case No. _____01-CR-794_____

**The State of Ohio v. Nathaniel Jackson**

You are hereby ORDERED, pursuant to Rule 19.5 of the Rules of Practice of the Supreme Court of Ohio, to prepare and forward the record in the above-captioned case to the Clerk's Office of the Supreme Court, no later than 90 days from the date of this entry, unless the Supreme Court grants an extension of time under Rule 19.5(C)(1).

Pursuant to Rule 19.4(A) and 19.5(B) the record shall consist of the following:

- The original papers filed in the trial court;

- The transcript of proceedings, and computer diskettes of the transcript, if available;

- A certified copy of the docket and journal entries prepared by the clerk of the trial court; and

Pursuant to Rule 19.4(A)(3) the custodian of the record shall only transmit audio exhibits, video exhibits, and documents such as papers, maps, or photographs. Pursuant to 19.4(A)(2) no other physical exhibits shall be transmitted unless directed to do so by the Clerk of the Supreme Court.

You are further ORDERED, pursuant to Rule 19.5(B)(1), to number the documents and exhibits comprising the record; to prepare an index of the documents and exhibits, correspondingly numbered and identified; to briefly describe all exhibits listed in the index; and to send a copy of the index to all counsel of record in the case and transmit the index with the record to the Clerk of the Supreme Court.

You are further ORDERED, pursuant to Rule 19.5(D), to make a copy of the record and retain the copy for use in any postconviction proceeding. Pursuant to this Court's order in *In re: Reimbursement to Trial Court Clerks for Duplication of Death Penalty Records* (January 25, 1999), a trial court clerk shall be permitted reimbursement to the following extent: five cents per page for photocopying the original papers, transcript of proceedings, and documentary exhibits; the actual costs of duplicating photographs, videotapes, and audiotapes that are part of the record. Any request for reimbursement shall be filed simultaneously with the filing of the record, and reimbursement shall be subject to the availability of funds appropriated by the General Assembly.

_Maureen O'Connor_
_____

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7618

ORIGINAL

## In The Supreme Court of Ohio

| | | |
|---|---|---|
| State of Ohio, | : | |
| Appellee, | : | Case No. 12-1644 |
| -vs- | : | Appeal taken from Trumbull County Court of Common Pleas |
| Nathaniel Jackson, | : | Case No. CR 01-CR-794 |
| Appellant. | : | This is a death penalty case |

## APPELLANT NATHANIEL JACKSON'S
## MOTION FOR A STAY OF EXECUTION

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney

Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor Administration Building
Warren, Ohio 44481
(330) 675-2426 (Voice)
(330) 675-2431 (Facsimile)
psannos@co.trumbull.oh.us

OFFICE OF THE
OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Counsel of Record

250 E. Broad Street - Suite 1400
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0708 (Facsimile)
Randall.Porter@OPD.ohio.gov
And
DENNIS L. SIPE - 0006199
Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

COUNSEL FOR APPELLEE

COUNSEL FOR APPELLANT

FILED
APR 0 3 2013
CLERK OF COURT
SUPREME COURT OF OHIO

**In The Supreme Court of Ohio**

| | |
|---|---|
| **State of Ohio,** | : |
| **Appellee,** | : **Case No. 12-1644** |
| **-vs-** | : **Appeal taken from Trumbull County Court of Common Pleas** |
| **Nathaniel Jackson,** | : **Case No. CR 01-CR-794** |
| **Appellant.** | : **This is a death penalty case** |

---

## APPELLANT NATHANIEL JACKSON'S
## MOTION FOR A STAY OF EXECUTION

---

Appellant, Nathaniel Jackson moves this Court to stay his execution set for August 15, 2013, pending disposition of his direct appeal to this Court.

Appellant has a right to a direct appeal to the Ohio Supreme Court under Ohio Const. art. IV, § 2 (B)(2)(c). Every defendant who has a right of direct review from a sentence of death is entitled to have that review before paying the ultimate penalty. *McDonald v. Missouri*, 464 U.S. 1306 (1984). Accordingly, a stay is warranted to permit Appellant sufficient time to seek direct review of his convictions and sentences. *See State v. Steffen*, 70 Ohio St.3d 399, syl. (1994) (capital defendant entitled to stay of execution to seek both direct review and state post-conviction remedies).

1

The record was filed on January 2, 2013. Appellant's appeal will not be completed by August 15, 2013. Appellant seeks this stay of execution to allow a thorough and considered review of his conviction and sentence.

Therefore, Appellant Nathaniel Jackson requests this Court to stay his execution, pending the final disposition of his appeal.

Respectfully submitted,

Office of the
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender
250 E. Broad Street - Suite 1400
Columbus, Ohio  43215-9308
(614) 466-5394 (Telephone)
(614) 644-0708 (Facsimile)
Randall.Porter@opd.ohio.gov

And

DENNIS L. SIPE – 0006199

Buell Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

By

Randall L. Porter
Counsel for Nathaniel Jackson

2

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Appellant Nathaniel Jackson's Motion For A Stay Of Execution* was forwarded by electronic and regular U.S. Mail to Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio  44481 on this the 3rd day of April, 2012.

RANDALL PORTER - 0005835
Assistant State Public Defender

Counsel For Nathaniel Jackson

3

# The Supreme Court of Ohio

**FILED**

APR 18 2013

CLERK OF COURT
SUPREME COURT OF OHIO

State of Ohio

v.

Nathaniel Jackson

Case No. 2012-1644

ENTRY

This cause is pending before the court as a death penalty appeal from the Court of Common Pleas for Trumbull County.

Upon consideration of appellant's motion for stay of execution scheduled for August 15, 2013, it is ordered by the court that the motion is granted pending final disposition of his direct appeal.

(Trumbull County Court of Common Pleas; No. 01-CR-794)

Maureen O'Connor
Chief Justice

**ORIGINAL**

## In The Supreme Court of Ohio

| | | |
|---|---|---|
| State of Ohio, | : | |
| Appellee, | : | Case No. 12-1644 |
| -vs- | : | Appeal taken from Trumbull County Court of Common Pleas |
| Nathaniel Jackson, | : | Case No. CR 01-CR-794 |
| Appellant. | : | This is a death penalty case |

---

### Stipulated Extension Of Time To File Appellant's Merit Brief

---

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney

Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor Administration Building
Warren, Ohio 44481
(330) 675-2426 (Voice)
(330) 675-2431 (Facsimile)
psannos@co.trumbull.oh.us



FILED
APR 25 2013
CLERK OF COURT
SUPREME COURT OF OHIO

COUNSEL FOR APPELLEE

OFFICE OF THE
OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Counsel of Record

250 E. Broad Street - Suite 1400
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0708 (Facsimile)
Randall.Porter@OPD.ohio.gov
And
DENNIS L. SIPE - 0006199
Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

COUNSEL FOR APPELLANT

## In The Supreme Court of Ohio

| | | |
|---|---|---|
| State of Ohio, | : | |
| Appellee, | : | Case No. 12-1644 |
| -vs- | : | Appeal taken from Trumbull County Court of Common Pleas |
| Nathaniel Jackson, | : | Case No. CR 01-CR-794 |
| Appellant. | : | This is a death penalty case |

### Stipulated Extension Of Time To File Appellant's Merit Brief

Pursuant to S.Ct.Prac.R. 3.03(B)(2)(a)(1) and 11.05(B)(1), counsel for Appellant Nathaniel Jackson and Appellee, the State of Ohio, stipulate that Appellant may have an extension of twenty days to file his merit brief.

The filing date for Appellant's Merit Brief is extended by stipulation from July 1, 2013 to July 22, 2013 (July 21, 2013 is a Sunday).

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

OFFICE OF THE
OHIO PUBLIC DEFENDER

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Counsel of Record

Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor Administration Building
Warren, Ohio 44481
(330) 675-2426 (Voice)

250 E. Broad Street - Suite 1400
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0708 (Facsimile)
Randall.Porter@OPD.ohio.gov

2

(330) 675-2431 (Facsimile)
psannos@co.trumbull.oh.us

And

DENNIS L. SIPE - 0006199
Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

COUNSEL FOR APPELLEE

COUNSEL FOR APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Stipulated Extension Of Time To File Appellant's Merit Brief* was forwarded by electronic and regular U.S. Mail to Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio  44481 on this the 25th day of April, 2012.

RANDALL PORTER - 0005835
Assistant State Public Defender

Counsel For Nathaniel Jackson

3

**ORIGINAL**

## In The Supreme Court of Ohio

| | | |
|---|---|---|
| State of Ohio, | : | |
| Appellee, | : | |
| -vs- | : | Case No. 12-1644 |
| | : | |
| Nathaniel Jackson, | : | |
| Appellant. | : | This is a death penalty case |

---

## Nathaniel Jackson's Suggestion of Lack of a Final Appealable Order

---

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney

Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor Administration Building
Warren, Ohio 44481
(330) 675-2426 (Voice)
(330) 675-2431 (Facsimile)
psannos@co.trumbull.oh.us

**FILED**
MAY 23 2013
CLERK OF COURT
SUPREME COURT OF OHIO

COUNSEL FOR APPELLEE

OFFICE OF THE
OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Counsel of Record

250 E. Broad Street - Suite 1400
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0708 (Facsimile)
Randall.Porter@OPD.ohio.gov
And
DENNIS L. SIPE - 0006199
Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

COUNSEL FOR APPELLANT

## In The Supreme Court of Ohio

| | | |
|---|---|---|
| **State of Ohio,** | : | |
| **Appellee,** | : | |
| -vs- | : | **Case No. 12-1644** |
| **Nathaniel Jackson,** | : | |
| **Appellant.** | : | **This is a death penalty case** |

### Nathaniel Jackson's Suggestion of The Lack of a Final Appealable Order

Appellant Nathaniel Jackson suggests to this Court that the trial court's August 14, 2012 sentencing opinion that he filed almost immediately after his resentencing hearing on the same date fails to comply with the requirements contained in R.C. 2929.03(F) and therefore does not constitute a final appealable order. Specifically, the trial court: 1) acknowledged at the resentencing hearing that it had already written its opinion, 2) announced that he would not consider any new evidence and 3) failed to consider any new evidence in his sentencing opinion. Appellant has attached a memorandum of law that he incorporates in his motion.

Respectfully submitted,

Office of the
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender
250 E. Broad Street - Suite 1400
Columbus, Ohio  43215-9308
(614) 466-5394 (Telephone)
(614) 644-0708 (Facsimile)
Randall.Porter@opd.ohio.gov

And

DENNIS L. SIPE – 0006199

Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

By _____
Randall L. Porter

Counsel for Nathaniel Jackson

### Memorandum in Support

On October 18, 2010, the Trumbull County Court of Appeals ordered that the trial court conduct a new sentencing hearing for Nathaniel Jackson. *State v. Jackson,* 11th Dist. No. 2009-T-0050, 190 Ohio App.3d 319, 2010-Ohio-5054. The Court of Appeals premised its conclusion on the fact that the trial court had permitted the prosecution to draft the sentencing opinion. *Id.* at ¶¶ 29-30.

The trial judge in his subsequent sentencing opinion failed to consider any evidence that Appellant put forward at the resentencing hearing in support of a sentence less than death. Consequently, the trial court's sentencing opinion fails to constitute a final appealable order.

**I. This Court's Jurisdiction to Hear this Appeal Is Dependent Upon the Existence of a Final Appealable Order.**

Appellate courts lack jurisdiction to review an order that is not final and appealable. *State, ex rel. Bates, Pros. Atty. v. Court of Appeals.* 130 Ohio St.3d 326, 2011-Ohio-5456, 948 N.E.2d 162, ¶ 17; *Summerville, Admr. v. City of Forest Park,* 128 Ohio St.3d 221, 943 N.E.2d 522, 2010-Ohio-6280, ¶11. The final appealable order requirement extends to capital cases in

2

which the direct appeals are taken directly to this Court from the trial court. *State v. Ketterer,* 126

Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9, ¶ 19.

## II. The Trial Court's August 14, 2012 Findings of Fact and Conclusions of Law Do Not Constitute a Final Appealable Order.[1]

In cases in which a sentence of death is imposed "a final appealable order consists of both

the sentencing opinion filed pursuant to R.C. 2929.03(F) and the judgment of conviction filed

pursuant to Crim. R. 32(C). *Id.,* at ¶ 18. In *Ketterer,* this Court in ruling on the final appealable

order raised in that case, addressed whether the three judge panel had complied with Crim. R.

32(C). *Id.* at ¶¶ 6-19. Appellant raises the other issue with respect to the existence of a final

appealable order, whether the trial court complied with R.C. 2929.03(F).

A trial court when it imposes a sentence of death is required in a separate opinion to 1)

identify the aggravating circumstances, 2) identify the mitigating factors, and 3) articulate the

reasons that the aggravating factors outweigh the mitigating factors by proof beyond a

reasonable doubt. R.C. 2929.03(F). *State v. Maurer,* 15 Ohio St.3d 239, 473 N.E.2d 768 (1984),

paragraph two of the syllabus; *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d

1168, ¶ 156. The relevant portion of the statue provides:

> The court or the panel of three judges, when it imposes sentence of death, shall
> state in a separate opinion its specific findings as to the existence of any of the
> mitigating factors set forth in division (B) of section 2929.04 of the Revised
> Code, the existence of any other mitigating factors, the aggravating circumstances
> the offender was found guilty of committing, and the reasons why the aggravating
> circumstances the offender was found guilty of committing were sufficient to
> outweigh the mitigating factors.

R.C. 2929.03(F).

---

[1] The trial judge labeled the sentencing opinion as "Findings of Fact, Conclusions of Law."
Appellant will reference the trial court's entry as the "sentencing opinion."

3

The trial court did not comply with R.C. 2929.03(F). First, it refused to consider (and therefore identify) the existence of any new mitigating factors that Jackson raised at the resentencing proceeding and any evidence that Jackson submitted at the resentencing hearing in support of the mitigating factors raised in the 2002 sentencing proceedings. Second, when the trial court refused to consider the mitigating factors raised and evidence submitted at the resentencing hearing, the trial court failed to properly articulate the reasons that the aggravating circumstances outweighed the mitigating factors by proof beyond a reasonable doubt.[2]

Because the trial court failed to comply with R.C. 2929.03(F) when it drafted its sentencing opinion, the document does not constitute a final appealable order.

**A. The trial judge announced that he had already drafted his sentencing opinion.**

Twice the trial judge stated on the record that he had drafted his sentencing opinion prior to the commencement of the sentencing hearing:

> Now pursuant to law, the Trial Court this day August 14, 2012, having determined in a separate opinion of specific findings, that will be filed this afternoon, have [sic] found that the aggravating circumstances as to the count of aggravated murder outweigh the mitigating factors by proof beyond a reasonable doubt.

[*Id.* at Tr. 22].

> As I said, the Court's finding on the weighing of mitigating factors will be filed this afternoon.

[*Id.* at Tr. 27].

---

[2]Subsumed within the statutory mandate that the trial court articulate its reasoning, is the requirement that the court must consider all of the mitigating factors and evidence supporting those factors. Otherwise, a trial court's weighing analysis would necessarily be flawed. *See State v. Green,* 90 Ohio St.3d 352, 363, 738 N.E.2d 1208 (2000).

4

**B. The trial judge stated that he would not consider any new evidence.**

The trial judge repeatedly stated during the resentencing hearing that he would not consider any new evidence:

> This matter is back on the re-sentencing, and I view the matter that this re-sentencing should be conducted as the original was. To allow mitigating factors to come in, in addition at this point, there is no way that could be presented to the jury, and I think that it befuddles the whole process to allow that . . . .

[*Id.* at Tr. 5]

> So I will follow the action taken in the previous case and deny any broadening of the scope other than what had been available to Mr. Jackson at the time of trial and which he took advantage.

[*Id.*]

> I'll permit that [the proffering of mitigation evidence] in this case. I'm just saying that would only be for purposes of appeal only.

[*Id.* at p. 14].

**C. The trial court did not consider any new evidence in the sentencing opinion.**

The trial judge, consistent with his statements in open court, filed the sentencing opinion shortly after the conclusion of the sentencing hearing. In the sentencing opinion, which was seventeen pages in length, the trial court did not reference the contents of Appellant's statement at the resentencing hearing or any of the documentary evidence that he submitted at that hearing. In fact, he did not even acknowledge that Appellant had made a statement at the resentencing hearing and instead constantly referenced the unsworn statement that Appellant had made to the jury eleven years earlier. [*Id.* at p. 14].

5

**D.  The trial court's sentencing opinion does not comply with R.C. 2929.03(F).**

This Court has found that the failure of a trial court to consider mitigating evidence violates R.C. 2929.03(F). *State v. Green,* 90 Ohio St.3d 352, 363, 738 N.E.2d 1208 (2000). In that case the three judge panel in its sentencing opinion failed to consider the mitigating factor that the defendant was not the principal offender. *Id.* In this case the trial court in his sentencing opinion failed to consider *all* of the mitigating factors and evidence Appellant offered at the resentencing hearing.[3]

This Court has also found that the failure of a three judge panel to properly weigh the aggravating circumstances against the mitigating factors violates R.C. 2929.03(F). *State v. Davis,* 38 Ohio St.3d 361, 372, 528 N.E.2d 925 (1988); *Green,* 90 Ohio St.3d at 363; *Roberts,* 2006-Ohio-3665, at ¶¶ 159-160. The trial court's conscious decision to limit its consideration of all of the mitigating factors and evidence in the weighing process was an equally serious violation of R.C. 2929.03(F), as the errors this Court identified in *Davis, Green,* and *Roberts.*

While not every flaw in a trial court's sentencing opinion warrants the finding of a lack of final appealable order, given the nature of the errors in this case, such a finding is warranted. The trial court drafted its opinion prior to the sentencing hearing, it announced in open court that it

---

[3] Appellant at the resentencing hearing informed the trial court that since he had been removed from death row (after the Court of Appeals vacated his death sentence) and placed in general population he had "obtained a certificate in basic skills computer class and I passed advanced class and also become a tutor down there [at Trumbull Correctional Institute] and also got a certificate in the music program . . . ." [8/14/22 Tr. 21]. Appellant further informed  the trial court that "I haven't been in any trouble since I have been on death row since 2007 and that was a little minor situation, but I haven't been in any trouble or anything since then, your Honor." [*Id.* at Tr. 21-22]. The failure of the trial court in its opinion to even reference Appellant's exemplary behavior not only violated R.C. 2929.03(F), but also the Eight Amendmenth. *Skipper v. South Carolina,* 476 U.S. 1, 5, 106 S. Ct. 1669, 90 L. Ed  2d 1 (1986).

6

would not consider any new evidence, and consistent with that announcement, did not consider any new evidence its sentencing opinion. This Court has recognized that the cumulative effect of the errors in a sentencing opinion can warrant the granting of relief. *Green,* 90 Ohio St.3d at 363-64. Similarly, the cumulative effect of the errors in the trial court's sentencing opinion warrant a finding that there is a lack of final appealable order in this case.

**III. Appellant Did Not Waive This Issue.**

On May 3, 2013, this Court heard oral argument in the co-defendant's case. *State v. Roberts,* Ohio Supreme Court Case No. 07-2288. Ms. Roberts also raised the trial court's failure to consider the evidence that she initially put forward at her resentencing hearing. Some of the Court's questions indicated concern because Ms. Roberts in the first sentencing proceedings had waived the presentation of evidence. Appellant did not waive the presentation of evidence in either of his sentencing proceedings.[4]

**Conclusion**

This Court only has jurisdiction if Appellant has instituted this proceeding from a final appealable order. For there to be a final appealable order the trial court must have complied with Crim. R. 32(C) and R.C. 2929.03(F). The trial court's sentencing opinion does not comply with the requirements contained in R.C. 2929.03(F); the trial court refused to consider all of the mitigating factors and evidence, incorrectly believing that it was precluded from considering the

---

[4]Appellant had a strong reason to want to supplement the record at his resentencing hearing, the deficient performance of trial counsel in the initial sentencing proceedings. The attorney representing him who was responsible for the mitigation presentation portion of his case became ill just prior to the start of the mitigation hearing. The trial court appointed substitute counsel at the start of the mitigation hearing. [Sent. Tr. 4-7]. The attorney who remained on the case from the trial phase had not met with the witnesses prior to the day of the mitigation hearing. Trial counsel gave no opening statement at the mitigation phase. [Sent. Tr. 23.] Trial counsel called four lay witnesses; the cumulative length of their testimony was ten pages. [Sent. Tr. 23-33]. That testimony was both incomplete and inaccurate.

same. This resulted in the trial court conducting an infirm weighing of the aggravating circumstances and mitigating factors.

The Court should dismiss this appeal because of a lack of a final appealable order and remand the matter to the trial court.

Respectfully submitted,

Office of the
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender
250 E. Broad Street - Suite 1400
Columbus, Ohio  43215-9308
(614) 466-5394 (Telephone)
(614) 644-0708 (Facsimile)
Randall.Porter@opd.ohio.gov

And

DENNIS L. SIPE – 0006199

Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

By
Randall L. Porter
Counsel for Nathaniel Jackson

8

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Nathaniel Jackson's Suggestion of Lack of a Final Appealable Order* was forwarded by electronic and regular U.S. Mail to Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio 44481 on this the 23rd day of May, 2013.

RANDALL PORTER - 0005835
Assistant State Public Defender

COUNSEL FOR NATHANIEL JACKSON

9

ORIGINAL

## IN THE SUPREME COURT OF OHIO

STATE OF OHIO,
    Appellee,

    v.

NATHANIEL JACKSON
    Appellant.

)
)
)
)
)
)
)
)
)
)

**CASE NO. 12-1644**

On Appeal from the Trumbull
County Court of Common Pleas
No. 01-CR-794

**DEATH PENALTY CASE**

---

### STATE'S MOTION TO STRIKE/RESPONSE TO APPELLANT'S "SUGGESTION OF LACK OF A FINAL APPEALABLE ORDER"

---

DENNIS WATKINS (#0009949)
Prosecuting Attorney, by
LuWAYNE ANNOS (#0055651)
CHARLES MORROW (#0040575)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High Street, N.W.

4th Floor, Administration Building
Warren, Ohio 44481
Telephone No. (330) 675-2426
Fax No. (330) 675-2431
psannos@co.trumbull.oh.us

ATTORNEY FOR
PLAINTIFF-APPELLEE
STATE OF OHIO

RANDALL L. PORTER (#005835)
  Assistant State Public Defender
  250 E. Broad St., Suite 1400
  Columbus, Ohio   43215
  Telephone No. (614) 466-5394
  Fax No. (614) 644-0708
  Randall.Porter@OPD.ohio.gov

DENNIS L.  SIPE (#006199)
Buell & Sipe, Co. L.P.A
322 Third St.
Marrietta, Ohio 45750
Telephone No. (740) 373-3219
 Fax (740) 373-2392
dennis@buellsipe.com

DEFENDANT-APPELLANT
NATHANIEL JACKSON

RECEIVED
MAY 3 1 2013
CLERK OF COURT
SUPREME COURT OF OHIO

FILED
MAY 3 1 2013
CLERK OF COURT
SUPREME COURT OF OHIO



ORIGINAL

IN THE SUPREME COURT OF OHIO

|  |  |
|---|---|
| STATE OF OHIO,<br>Appellee,<br><br>v.<br><br>NATHANIEL JACKSON<br>Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CASE NO. 12-1644**

On Appeal from the Trumbull
County Court of Common Pleas
No. 01-CR-794

**DEATH PENALTY CASE**

---

STATE'S MOTION TO STRIKE/RESPONSE TO APPELLANT'S "SUGGESTION OF LACK
OF A FINAL APPEALABLE ORDER"

---

Now comes the Appellee, the State of Ohio ("State"), and hereby submits its response to

Appellant Nathaniel Jackson's "Suggestion of the Lack of a Final Appealable Order" filed in this

Court May 23, 2013.  For the reasons stated below, the State argues this "suggestion" should be

stricken from the Court's docket forthwith.  In the alternative, the State argues this "suggestion"

is utterly without merit, and this case should proceed with this appeal according to schedule.

Respectfully Submitted,

DENNIS WATKINS (#009949)
TRUMBULL COUNTY
PROSECUTING ATTORNEY BY:

CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. NW, 4th Floor
Warren, Ohio, 44481
Telephone No.: (330) 675-2426
Fax No.: (330) 675-2431

COUNSEL FOR APPELLEE, THE STATE OF OHIO

1

## MEMORANDUM IN SUPPORT

This capital case is before this Court as a result of a resentencing ordered by the Eleventh Court of Appeals in *State v. Jackson,*  190 Ohio App. 3d 319, 2010-Ohio-5054 (*Jackson* II). That resentencing occurred August 14, 2012.  Appellant was represented by two death-certified attorneys.  The trial court permitted Appellant to make two uninterrupted statements prior to imposing sentence for the aggravated murder which claimed the life of Robert Fingerhut, the ex-husband of Co-Defendant, Donna Roberts.   Roberts has also been twice sentenced to death for her role in Fingerhut's murder.  The trial court herein essentially re-imposed the same sentence originally imposed, which sentence was unanimously affirmed by this Court in *State v. Jackson,* 107 Ohio St. 3d 300, 2006-Ohio-1 (*Jackson,* I).  The trial court filed its sentencing entry and a separate, redrafted, Findings of Fact and Conclusions of Law on Aug. 14, 2012.  The trial court reissued a nunc pro tunc sentencing order Aug. 16, 2012.

Without objection, without notification as to any procedural deficiencies, Appellant's counsel filed a Notice of Appeal with this Court September 28, 2012.  He affixed the Findings of Fact, the original re-sentencing entry, and the nunc pro tunc sentencing entry   Now, just barely two months before a jointly agreed upon due date of July 22, 2013, for the submission of Appellant's brief, his counsel comes before this Court and argues that that the very entry *he appealed* does not constitute a final appealable order.   Appellant "suggests" that this Court dismiss an appeal which he filed due to this claimed error.  As a further remedy, he argues for a third sentencing hearing before the trial court. The State objects and maintains this "suggestion" is baseless and devoid of any legal authority or precedent.  This filing is a stall tactic, filed solely for the purpose of delay and therefore should be stricken.

Civ.R. 12(F) provides:

2

"Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within twenty-eight days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient claim or defense or any redundant, immaterial, impertinent, or scandalous matter."

With this "suggestion," Appellant is seeking to have this Court dismiss the very appeal he filed predicated upon a claimed procedural defect, which defect will no doubt form the basis of his appeal. To determine this "suggestion" this Court would be required to go beyond the face of the documents upon which the instant appeal has been raised. Quite simply, Appellant is seeking a preliminary ruling on his appeal. In essence, Appellant is asking this Court review the entire sentencing proceeding to determine whether the trial judge employed the proper procedure upon remand. This necessitates a complete review of the record, rather than simply a review of the trial court's sentence. While "novel," this approach should not be condoned by this Court and should not only be summarily denied, but should also be stricken.

This Court recently revisited the topic of the death sentence as final appealable order:

"'[I]n order to decide whether an order issued by a trial court in a criminal proceeding is a reviewable final order, appellate courts should apply the definitions of 'final order' contained in R.C. 2505.02.' *State v. Baker,* 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, ¶ 6, quoting *State v. Muncie* (2001), 91 Ohio St.3d 440, 444, 746 N.E.2d 1092, citing *State ex rel. Leis v. Kraft* (1984), 10 Ohio St.3d 34, 36, 10 OBR 237, 460 N.E.2d 1372. R.C. 2505.02(B) states: 'An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:

3

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7640

"(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment.'

"Crim.R. 32(C) sets forth the requirements for a final, appealable order in criminal cases. It states that '[a] judgment of conviction shall set forth the plea, the verdict, or findings, upon which each conviction is based, and the sentence.' It further states: 'The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal by the clerk'." *State v. Ketterer* 126 Ohio St.3d 448, 2010-Ohio-3831, at ¶8-11.

As Appellant noted in his "suggestion," "R.C. 2929.03(F) requires that a separate sentencing opinion be filed in addition to the judgment of conviction, and the statute specifies that the court's judgment is not final until the sentencing opinion has been filed. Capital cases, in which an R.C. 2929.03(F) sentencing opinion is necessary," *Ketterer, supra,* at ¶17.

Appellant first complains that the Findings of Fact is deficient because the court refused to consider any "new mitigating factors Jackson raised." (Appellant's "suggestion" at p. 4) He fails to identify what "new mitigating factors" Appellant raised at his sentencing. At his resentencing, Appellant told the court that since his incarceration, he obtained a certificate in basic computer skills and a music program and has acted as a "tutor" to unspecified tutees. He also claims to have stayed out trouble since his incarceration except for a "little minor situation." (Re-Sentencing T.p. at p.21). He also told the court he did not want to be returned to death row. (Re-Sentencing T.p. at p. 23).

The Ohio Revised Code lists possible mitigating factors a death sentencing trial court must consider in R.C. 2929.04(B). This Court has previously analyzed that section in conjunction with the evidence introduced at Appellant's trial and held as follows:

4

"Although Jackson claimed that Fingerhut pulled a gun on him, thus forcing him to kill Fingerhut in self-defense, the factor of victim-inducement under (B)(1) is not implicated because the claim of self-defense lacks any credibility under the evidence. Likewise, there is no credible evidence of the factor of victim provocation under (B)(2). Jackson's mitigation expert dispelled any claim that he suffers from a mental disease or defect, the factor under (B)(3). Since Jackson was 29 years old at the time of the homicide, the youthful-offender factor under (B)(4) does not apply. There is no mitigation in the factor of a clean record under (B)(5), for Jackson had a history of prior criminal convictions. Finally, since Jackson was the principal offender in the murder, the factor of being an accomplice rather than the principal offender under (B)(6) does not apply.

"Under R.C. 2929.04(B)(7), Jackson's ADHD and antisocial personality disorder deserve some weight in mitigation, as well as his ability to overcome his ADHD and adaption to the structured setting of prison. See *State v. Scott,* 101 Ohio St.3d 31, 2004-Ohio-10, 800 N.E.2d 1133, ¶ 106.

"On the other hand, Jackson's expression of remorse 'for what happened to the victim' deserves little weight in mitigation. See *State v. Bryan,* 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 226.

"Upon independent weighing, we find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. Jackson murdered Fingerhut during a burglary and stole his car. These were the aggravating circumstances that merit imposition of the capital penalty. Those were weighed against the mitigating evidence found in the nature and circumstances of the offense, Jackson's history, character, and background, and the statutory

5

factors of R.C. 2929.04(B). We find that the aggravating circumstances of this case outweigh the minimal mitigating factors." *Jackson* I, at ¶180-183.

None of Appellant's "evidence" presented at his resentencing qualifies as a mitigating factor pursuant to R.C. 2929.04(B)(1)-(6). As for the necessarily subjective R.C. 2929.04(B)(7), the so-called "catch all" mitigating factor, this Court has already held that previously introduced evidence concerning Appellant's adaptation to a structured prison environment does not outweigh the aggravating circumstances introduced by the State.  *Jackson,* supra, at ¶181. Therefore, the fact that the trial court did not make special mention of this "evidence" does not render the Findings of Fact a non-final or non-appealable order as defined by R.C. 2505.02.

Appellant also argues that the trial court's mere preparation of the sentencing entry prior the actual sentencing renders the document non-final, and non-appealable. It should be noted that the commentary by the court quoted at page 4 of Appellant's "suggestion" makes clear that the Findings of Fact had not been filed at the time of the oral hearing leaving open the possibility of modification in the event the trial court opted for a life sentence after hearing Appellant's allocution.  Moreover, this Court has found no prejudicial error even when the trial court *filed* the Findings of Fact *prior* to the sentencing hearing.   "We agree that the trial court should have waited until the sentencing hearing was completed to file its sentencing order. However, it is apparent to us that Reynolds was not prejudiced by the court's premature filing.*** Had new evidence or information been presented during the sentencing hearing, the trial court could have modified its sentencing order. We conclude that the premature filing was not prejudicial error." *State v. Reynolds,* 80 Ohio St.3d 670, 683-684 (1998). If Reynolds suffered no prejudice by his trial court's premature filing of sentencing opinion, Appellant suffers no prejudice in the trial court's preparation of a document prior sentencing.  It is axiomatic that the pre-hearing drafting

6

would not render the ultimate death sentence non-final or non-appealable. If Appellant or his counsel had said anything of substance to persuade the court that life was the appropriate sentence, the document could have been redrafted.

Finally, Appellant argues that his sentence is non-final because he was not permitted to introduce additional evidence at the hearing. This argument is meritless. The Eleventh District Court of Appeals ordered in *Jackson* II that Appellant be resentenced as a result of this Court's decision in *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665.

By way of review, this Court ordered that Roberts be re-sentenced because the trial court permitted the prosecutor's office to type out the Findings of Fact which sentenced her to death for her role in Fingerhut's murder. This Court issued this very narrow mandate regarding Roberts' re-sentencing:    "On remand, the trial judge will afford Roberts her right to allocute, and the trial court shall personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by R.C. 2929.03. The trial court will then personally prepare an entirely new penalty opinion as required by R.C. 2929.03(F) and conduct whatever other proceedings are required by law and consistent with this opinion." *Roberts, supra*, at ¶167. Note: This Court decidedly did not order a new evidentiary hearing wherein Roberts could supplement the record with mitigation evidence not previously considered by the trial court.

When it came to light that the same trial judge- John Stuard - had also used the prosecutor's office to type the Appellant's entry, the Eleventh District order a new sentencing hearing for him even though this Court had already affirmed his conviction and death sentence in *Jackson* I. The Eleventh District held as follows: "Based on the Supreme Court of Ohio's holding in *Roberts,* appellant is entitled to the same relief afforded to his co-defendant. Thus, the

7

trial judge must personally review and evaluate the appropriateness of the death penalty, prepare an entirely new sentencing entry as required by R.C. 2929.03(F), and conduct whatever other proceedings are required by law and consistent with this opinion. Id. at ¶ 167." *State v. Jackson,* 190 Ohio App. 3d. 319, 2010-Ohio-5054, at ¶20. The "same relief" as referenced by the Eleventh District consisted of Judge Stuard permitting Appellant to allocute, reviewing and evaluating the evidence, weighing aggravating circumstances against mitigating factors, determining anew the appropriateness of a death sentence, and personally drafting the opinion. No more. No less. This was all accomplished on August 14, 2012, without the introduction of additional evidence not previously considered by Judge Stuard or the Appellant's jury.

The State would note that Judge Stuard re-sentenced Donna Roberts in 2007. Her appeal on the re-sentencing is pending before this Court under Case No. 2007-2288. Both sides have submitted their briefs and this Court conducted oral arguments May 7, 2013. As Appellant correctly notes in his "suggestion" at page 7, Roberts raised the identical issue of the trial court's refusal to permit the introduction of additional testimonial evidence at re-sentencing. This Court has before it a plethora of proffered documents which were likewise excluded from her resentencing. However, Roberts never challenged the appealability of her death sentence at the pre-briefing stage. Like Roberts, Appellant is free to raise what he perceives to be procedural deficiencies in his re-sentencing. A dismissal of the entire appeal for a third sentencing is a preposterous "suggestion" to remedy a non-existent deficiency.

Finally, the State maintains that even if the Findings of Fact and two sentencing entry constitute is "non-final" order, Appellant has waived any such error by filing an appeal thereof. If Appellant had a good faith belief that one or any of these three entries were non-compliant with R.C. 2505.02 or Crim. R. 32(C), it was incumbent upon him to object at the trial court. The

8

"invited error doctrine" holds that a party will not be permitted to take advantage of an error which he himself invited or induced the court to make. See *State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections,* 80 Ohio St.3d 176, 181, (1997); *State ex rel. Bitter v. Missig,* 72 Ohio St.3d 249, 254 (1995). By filing the instant Notice of Appeal with this Court, he vouched for the final and appealable nature of his death sentence. If there was error in this Court accepting the instant appeal, Appellant invited it by filing the appeal.

## CONCLUSION

The State submits that the documents affixed to Appellant's Notice of Appeal comprise a final appealable order which is compliant with R.C. 2505.02, Crim. R. 32(C), and *Ketterer, supra.* Appellant's "suggestion" is wholly disingenuous and amounts to nothing more than a thinly veiled stall tactic. The State moves this Court to strike Appellant's "suggestion" from the docket, or in the alternative, to deny forthwith his "suggestion" to remand to the trial court for a third sentencing which would now occur before a new judge due to the retirement and death of Judge Stuard. Moreover, this Court should be offended at Appellant's insinuation that it would accept for filing a document which is neither final nor appealable.

Ordering a remand for resentencing at this juncture sets dangerous precedent, and quite frankly, encourages underhanded tactics by would-be litigants. Particularly in capital cases, it opens additional avenues for unnecessary delays and gamesmanship which are readily discouraged by this Court and others in non-capital cases. Appellant is asking this Court to pre-judge this case on his Notice of Appeal, rather than on arguments appropriately reserved for the briefing phase of this appeal. This Court should be wholly dismissive of Appellant's "suggestion" by either striking it from the docket, or denying it outright.

9

Respectfully Submitted,

DENNIS WATKINS (#009949)
RUMBULL COUNTY
PROSECUTING ATTORNEY BY:

CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. NW, 4th Floor
Warren, Ohio, 44481
Telephone No.: (330) 675-2426
Fax No.: (330) 675-2431

COUNSEL FOR APPELLEE, THE STATE OF OHIO

PROOF OF SERVICE

I do hereby certify that a copy of the foregoing response was sent by ordinary U.S. Mail

to Atty. Randall L. Porter, Assistant Public Defender, 250 E. Broad Street, Suite 1400,

Columbus, Ohio, 43215, and Atty. Dennis L. Sipe, 322 Third St., Marietta, Ohio, 45750,

Counsel for Appellant Nathaniel Jackson, on this 30th Day of May, 2013.

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney

10



**In The Supreme Court of Ohio**

State of Ohio,                    :

      Appellee,                :

-vs-                             :     **Case No. 12-1644**

Nathaniel Jackson,                :

      Appellant.               :     **This is a death penalty case**

---

**Nathaniel Jackson's Response to the State's Motion to Strike**

---

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney

Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor Administration Building
Warren, Ohio 44481
(330) 675-2426 (Voice)
(330) 675-2431 (Facsimile)
psannos@co.trumbull.oh.us



COUNSEL FOR APPELLEE

OFFICE OF THE
OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Counsel of Record

250 E. Broad Street - Suite 1400
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0708 (Facsimile)
Randall.Porter@OPD.ohio.gov
And
DENNIS L. SIPE - 0006199
Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

COUNSEL FOR APPELLANT

## In The Supreme Court of Ohio

| | | |
|---|---|---|
| State of Ohio, | : | |
| Appellee, | : | |
| -vs- | : | Case No. 12-1644 |
| Nathaniel Jackson, | : | |
| Appellant. | : | This is a death penalty case |

---

### Nathaniel Jackson's Response to the State's Motion to Strike

---

On May 23, 2013, the Appellant filed with this Court a suggestion that the trial court's sentencing entry and opinion did not constitute a final appealable order. On May 31, 2013, the State filed its responsive pleading titled "State's Motion to Strike/Response to Appellant's 'Suggestion of Lack of a Final Appealable Order.'" The State therein offers several reasons that its motion to strike should be granted.[1]

**I. Appellant Did Not File His Suggestion for Purposes of Delay**

The State claims that Appellant's Suggestion is "a stall tactic, filed solely for the purpose of delay and therefore should be stricken." [State's Motion, p. 2]. It is unclear the manner in which Appellant's motion will delay these proceedings. It will not change the date for the filing

---

[1] In its pleading, the State does not distinguish those arguments that are relevant to the striking of Appellant's motion as opposed to responding to the merits of Appellant's motion. The rules of this Court preclude Appellant from submitting a reply in support of his motion. S.Ct.Prac.R. 4.01(B)(2). Appellant has attempted to distinguish between the two types of arguments for purposes of this pleading. Appellant's lack of response as to an argument contained in the State's May 31, 2013 pleading should not be viewed as a concession. Instead, Appellant believed that a response was precluded by the rules of this Court.

1

of his merit brief, unless this Court finds the suggestion well taken in which case it will dismiss this appeal.

In fact just the opposite is true, the suggestion could expedite these proceedings to the extent that this Court finds that it is well taken. Appellant could have waited to raise the issue in his merit briefing and this Court would not have addressed the issue until after the completion of briefing and oral argument. If the sentencing entry and opinion do not constitute a final appealable order, it makes sense to remand the case now, rather than wait until after oral argument. It has been the experience of undersigned counsel that most appellate courts prefer to address the final appealable order in the initial portion of the appeal, rather than consume limited judicial issues reviewing the record and briefs and then dismissing the appeal.

## II. This Court Can Go Beyond the Sentencing Entry and Opinion to Determine the Existence of a Final Appealable Order.

The State claims that Appellant's pleading should be stricken because this Court in deciding the issue "is required to go beyond the face of the documents upon which the instant appeal has been raised." [State's Motion, p. 3]. The State makes this argument in response to Appellant, in his Suggestion, having cited to the transcript of the August 14, 2013 sentencing hearing. The State's argument is not well taken.

A judgment entry to constitute a final appealable order is required to contain certain information. *State v. Baker,* 119 Ohio St.3d 197, 2008-Ohio-3330, 839 N.E.2d 163, ¶ 18. Whether the entry contains all of the requisite information must be determined upon a case by case basis which often necessitates reviewing the record and not just the notice of appeal. For instance, a final appealable order must contain all of the charges for which the defendant was convicted. *State, ex rel. Davis v. Cuyahoga County Court of Common Pleas,* 127 Ohio St.3d 29, 2010-Ohio-4728, 936 N.E.2d 41, ¶ 2; *State, ex rel. Duncan v. Deweese,* 132 Ohio St.3d 525,

2

2012-Ohio-3835, 974 N.E.2d 1197, ¶ 2. An appellate court can only determine if this requirement is satisfied by examining the jury findings. A final appealable order in which the trial court has imposed an order of restitution often requires that the trial court include the amount, method, and recipient of the restitution. *State v.*, *State v. Hartley,* 3rd Dist. No. 14-09-02, 201-Ohio-2018, ¶ 5; *State v. Thompson,* 4th Dist. No. 11CA3257, 2012-Ohio-639, ¶ 9. An appellate court will often have to search the record and sentencing transcript to ascertain if the trial court entered an order of restitution that meets the requirements of a final appealable order. *State v. Phillips,* 8th Dist. No. 90124, 2008-Ohio-5101, ¶ 4; *State v. Fite,* 4th Dist. No. 10CA888, 2011-Ohio-507, ¶6.[2]

### Conclusion

Appellant requests that this Court deny the State's Motion to Strike and address the merits of Suggestion.

Respectfully submitted,

Office of the
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender
250 E. Broad Street - Suite 1400
Columbus, Ohio  43215-9308
(614) 466-5394 (Telephone)
(614) 644-0708 (Facsimile)
Randall.Porter@opd.ohio.gov

And

DENNIS L. SIPE – 0006199

---

[2] The State, in its conclusion, offers that "this Court should be offended at Appellant's insinuation that it would accept for filing a document which is neither final nor appealable." [State's Motion, p. 9]. Appellant never made any such insinuation, nor does he believe that this Court erroneously accepted any pleading in this matter.

3

Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

By

Randall L. Porter

Counsel for Nathaniel Jackson

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Nathaniel Jackson's Response To The State's Motion To Strike* was forwarded by electronic and regular U.S. Mail to Luwayne Annos and Charles Morrow, Assistant Prosecuting Attorneys, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio 44481 on this the 10th day of June, 2013.

RANDALL PORTER 0005835
Assistant State Public Defender

COUNSEL FOR NATHANIEL JACKSON

4



## In The Supreme Court of Ohio

State of Ohio,                          :

     Appellee,                         :

-vs-                                    :   Case No. 12-1644

Nathaniel Jackson,                      :

     Appellant.                        :   This is a death penalty case

---

### Nathaniel Jackson's Motion to Hold Proceedings in Abeyance

---

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney


Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor Administration Building
Warren, Ohio 44481
(330) 675-2426 (Voice)
(330) 675-2431 (Facsimile)
psannos@co.trumbull.oh.us

> FILED
> JUN 14 2013
> CLERK OF COURT
> SUPREME COURT OF OHIO

COUNSEL FOR APPELLEE

OFFICE OF THE
OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Counsel of Record

250 E. Broad Street - Suite 1400
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0708 (Facsimile)
Randall.Porter@OPD.ohio.gov
And
DENNIS L. SIPE - 0006199
Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

COUNSEL FOR APPELLANT

**In The Supreme Court of Ohio**

| | |
|---|---|
| **State of Ohio,** | : |
| **Appellee,** | : |
| **-vs-** | :  **Case No. 12-1644** |
| **Nathaniel Jackson,** | : |
| **Appellant.** | :  **This is a death penalty case** |

---

**Nathaniel Jackson's Motion to Hold Proceedings in Abeyance**

---

Appellant Nathaniel Jackson moves this Court to hold this appeal in abeyance pending resolution of his appeal to the Trumbull County Court of Appeals. This Court recently remanded that appeal to the Court of Appeals for further consideration. *State v. Jackson,* __ Ohio St.3d __, 2013-Ohio-2285. Appellant has attached a memorandum in support of this motion.

Respectfully submitted,

Office of the
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender
250 E. Broad Street - Suite 1400
Columbus, Ohio  43215-9308
(614) 466-5394 (Telephone)
(614) 644-0708 (Facsimile)
Randall.Porter@opd.ohio.gov

And

DENNIS L. SIPE – 0006199

Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750

1

(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

By _____

Randall L. Porter

Counsel for Nathaniel Jackson

## Memorandum in Support

This appeal is from the trial court's resentencing of Appellant in which it again imposed a sentence of death. The Trumbull County Court of Appeals had previously vacated Appellant's death sentence because the prosecution had drafted the capital sentencing opinion for the trial judge. *State v. Jackson,* 190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 12211, ¶¶ 28-30. That decision was premised on this Court's decision in *State v. Roberts,* in which this Court had found that the same judge had improperly permitted the prosecution to draft his sentencing opinion. *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶¶ 153-166.

On June 5, 2013, this Court remanded for consideration on the merits another appeal that Jackson had pending before this Court. *State v. Jackson,* ___ Ohio St.3d ___, 2013-Ohio-2285. That appeal involves an issue very similar to the issue on which the Trumbull County Court of Appeals had vacated Appellant's death sentence. However, the issue in that appeal challenges Jackson's conviction as opposed to his death sentence.

Prior to trial, Appellant filed a motion to suppress the recorded and oral statements that he made to the investigating officers at the time of his arrest. [T.d. 21. The critical fact at the motion to suppress was one of credibility: 1) whether the arresting officers advised Appellant of his constitutional rights and 2) whether Appellant requested counsel and that the interrogation cease. The trial court, in its findings of fact and conclusions of law, purportedly found the

2

testimony of the arresting officers credible and the testimony of Mr. Appellant incredible. [T.d. 205]. The trial court, based upon that finding, denied Appellant's motion to suppress.

Since this Court decided *Roberts*, it has come to light that the prosecution's ex parte drafting of opinions for the trial judge extended to findings of fact and conclusions of law for motions to suppress. [T.d. 361, Exhibit B, p. 108]. The Trumbull County Prosecutor's Office and Trumbull County Common Pleas Judges shared a computer drive. [*Id.* at p. 92]. The prosecutors, on their own office computers, would prepare pleadings for the judge and electronically transfer them to the judges' computers. [*Id.*]. The Assistant Prosecutor described this drafting process as an "everyday event." [*Id.* at p. 177]. The prosecutors believed this to be an exemplary system because they had to defend the judges' decisions on appeal and they would make the entries. [*Id.* at pp. 108-110, 128-29]. The Assistant Prosecutor explained, "*we* [the prosecutors] *represent the courts*. I don't think that any judge wants to have a case resentenced [sic] or remanded." [*Id.* at p. 110] (emphasis added).

If the Court of Appeals finds that the prosecution and trial judge employed this common Trumbull County practice in Appellant's case and vacates Appellant's conviction, it will moot this appeal. *State v. Were*, 94 Ohio St.3d 173, 177, 761 N.E.2d 591 (220) (this Court only addressed the issued that led to the vacation of the defendant's conviction); *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 76 (" Because of our disposition of this case, the remaining issues raised in the appellant's brief are moot"). If the Court of Appeals does not vacate Appellant's conviction, then it could consolidate that appeal with the present appeal.

Appellant requests this Court grant this motion and order that these proceedings be held in abeyance pending the Trumbull County Court of Appeals' decision in Appellant's case that this Court ordered remanded for additional consideration.

3

Respectfully submitted,

Office of the
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender
250 E. Broad Street - Suite 1400
Columbus, Ohio  43215-9308
(614) 466-5394 (Telephone)
(614) 644-0708 (Facsimile)
Randall.Porter@opd.ohio.gov

And

DENNIS L. SIPE – 0006199

Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

By _____
        Randall L. Porter

Counsel for Nathaniel Jackson

4

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing *Nathaniel Jackson's Motion to Hold Proceedings in Abeyance* was forwarded by electronic and regular U.S. Mail to Luwayne Annos and Charles Morrow, Assistant Prosecuting Attorneys, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio 44481 on this the 14th day of June, 2013.

RANDALL PORTER - 0005835
Assistant State Public Defender

COUNSEL FOR NATHANIEL JACKSON

5

ORIGINAL

IN THE SUPREME COURT OF OHIO

STATE OF OHIO,
    Appellee,

    v.

NATHANIEL JACKSON
    Appellant.

)
)
)
)
)
)
)
)
)
)
)

**CASE NO. 12-1644**

On Appeal from the Trumbull
County Court of Common Pleas
No. 01-CR-794

**DEATH PENALTY CASE**

---

**STATE'S REPLY TO JACKSON'S MOTION TO HOLD PROCEEDINGS IN ABEYANCE**

---

DENNIS WATKINS (#0009949)
Prosecuting Attorney, by
LuWAYNE ANNOS (#0055651)
CHARLES MORROW (#0040575)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High Street, N.W.

4th Floor, Administration Building
Warren, Ohio 44481
Telephone No. (330) 675-2426
Fax No. (330) 675-2431
psannos@co.trumbull.oh.us

ATTORNEY FOR
PLAINTIFF-APPELLEE
STATE OF OHIO

RANDALL L. PORTER (#005835)
 Assistant State Public Defender
250 E. Broad St., Suite 1400
Columbus, Ohio    43215
Telephone No. (614) 466-5394
Fax No. (614) 644-0708
Randall.Porter@OPD.ohio.gov

DENNIS L. SIPE (#006199)
Buell & Sipe, Co. L.P.A.
322 Third St.
Marietta, Ohio 45750
Telephone No. (740) 373-3219
 Fax (740) 373-2392
dennis@buellsipe.com

DEFENDANT-APPELLANT
NATHANIEL JACKSON



FILED
JUN 2 0 2013
CLERK OF COURT
SUPREME COURT OF OHIO



RECEIVED
JUN 2 0 2013
CLERK OF COURT
SUPREME COURT OF OHIO



ORIGINAL

N IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | ) | **CASE NO. 12-1644** |
| Appellee, | ) | |
| | ) | On Appeal from the Trumbull |
| v. | ) | County Court of Common Pleas |
| | ) | No. 01-CR-794 |
| NATHANIEL JACKSON | ) | |
| Appellant. | ) | |
| | ) | **DEATH PENALTY CASE** |

---

### STATE'S REPLY TO JACKSON'S MOTION TO HOLD PROCEEDINGS IN ABEYANCE

---

Now comes the Appellee, the State of Ohio ("State"), and hereby submits its response to Appellant Nathaniel Jackson's Motion to Hold Proceedings in Abeyance filed in this Court June 14, 2013. For the reasons stated below, the State objects and maintains that this Court should proceed with this appeal according to schedule.

Respectfully Submitted,

DENNIS WATKINS (#009949)
TRUMBULL COUNTY
PROSECUTING ATTORNEY BY:

CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney

LUWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. NW, 4th Floor
Warren, Ohio, 44481
Telephone No.: (330) 675-2426
Fax No.: (330) 675-2431

COUNSEL FOR APPELLEE, THE STATE OF OHIO

-1-

## MEMORANDUM IN SUPPORT

This capital case is before this Court as a result of a resentencing ordered by the Eleventh Court of Appeals in *State v. Jackson,* 190 Ohio App. 3d 319, 2010-Ohio-5054. That resentencing occurred August 14, 2012. Defendant-Appellant Nathaniel Jackson ("Appellant") filed a Notice of Appeal in this Court September 28, 2012. The record was filed January 2, 2013. Pursuant to a stipulated extension, Appellant's merit brief is due in this Court on or before July 22, 2013. In addition to the instant motion filed to derail and delay the proceedings in this Court, Appellant has also filed a "suggestion" that the sentencing entry which *he appealed* is not a final appealable order. This Court has not rendered a ruling on Appellant's "suggestion" or the State's motion in reply to strike the filing from the Court's docket.

Appellant has seized upon this Court's ruling June 5, 2013, to remand *State v. Jackson,* Ohio Supreme Court No. 2010-0302, to the Eleventh District Court of Appeals for further proceedings as an excuse for yet another delay in this case. The State objects. By way of review, OSC No. 2010-0302 concerns the trial court's denial of Appellant's Motion For New Trial based on the "newly discovered evidence" post-trial, post-sentencing, and post-affirmation by this Court that the trial court permitted the prosecutor's office to draft the findings and fact and conclusion of law denying Appellant's motion to suppress his statements. In briefing in the Eleventh District and in his memorandum to this Court, Appellant did not cite a single case wherein a conviction was reversed, or a new trial ordered, because a judge assigned the prevailing party on a suppression motion to draft a findings and fact and conclusion of law. Moreover, as pointed out by the State in its OSC No. 2010-0302 memorandum, the trial court requested *both* sides to submit post-suppression hearing briefs. While the State did so (T.d. #157) Appellant did not.

-2-

In his motion at page 2 Appellant argues "[t]he critical fact at the motion to suppress was one of credibility." This Court, in its opinion affirming Appellant's conviction and sentence, disagreed. First, this Court noted the record contained an initialed, written rights waiver and a video tape of that waiver. "At 2:13 a.m., police began videotaping the interview and again informed Jackson of his *Miranda* rights and gave him a waiver-of-rights form, which he initialed and signed, thereby waiving his *Miranda* rights. The interview lasted approximately an hour. Jackson claimed that he did not mean to kill Fingerhut and essentially claimed that he had acted in self-defense." *State v. Jackson*  107 Ohio St.3d 300, 2006-Ohio-1, at¶81.  Such pieces of evidence are not subjective and do not require a credibility judgment. This Court not surprisingly concluded "the trial court's finding that Jackson was properly advised of his *Miranda* rights and that he waived those rights is amply supported in the record. Jackson neither unequivocally nor unambiguously asserted his right to counsel." *Jackson,* at ¶100.  The State submits the trial court's credibility call between the police and Appellant is amply supported by not just suppression hearing testimony but tangible evidence as well. Any commentary by Appellant to the contrary is misleading if not just plain wrong.

At page 3 of his motion, Appellant employs the following logic to convince this Court it needs to set aside this case until the Eleventh District decides OSC No. 2010-0302: "If the Court of Appeals finds that the prosecution and trial judge employed this common Trumbull County practice and vacates Appellant's conviction it will moot this appeal." The State is willing to take that chance. As this Court has held while Appellant's numerous post-appeal motions have been pending: "A holding that the Supreme Court has exclusive jurisdiction over *all matters* relating to a death-penalty case would be contrary to the language of the constitutional amendments and the statute and would have the effect of delaying the review of

-3-

future cases, a scenario that the voters expressly rejected in passing the constitutional amendments [Sections 2(B)(2)(c) & 3(B)(2), Article IV, Ohio Constitution]. We see no reason why the courts of appeals may not currently entertain all appeals from the denial of postjudgment motions in which the death penalty was previously imposed." *State v. Davis* 131 Ohio St.3d 1, ¶22. Parenthetically, this Court quoted *State v. Nathaniel Jackson,* 190 Ohio App.3d 319, 2010-Ohio-5054, in reaching that conclusion.

At no point in *Davis* does this Court suggest that it must "hold in abeyance" or indefinitely suspend a direct appeal of a capital sentencing while either a trial court or an intermediate reviewing court decides a capital defendant's motion for new trial. Indeed, to do so would be contrary to the voters' intent in passing Sections 2(B)(2)(c) & 3(B)(2), Article IV, Ohio Constitution. As this Court once aptly noted, "defendants sentenced to imprisonment are usually already serving their terms and have a great interest in expediting their appeals. Capital defendants, on the other hand, while seeking to overturn their convictions, also seek to prolong the appeal process as long as possible, using every conceivable avenue of attack, and the statistics show they have been extremely successful in Ohio. As a result, lengthy delays have arisen in enforcing death penalty sentences in Ohio." *State v. Smith,* 80 Ohio St.3d 89, 100, 684 N.E.2d 668, 682 (1997). The death penalty has now been imposed on Appellant not once, but twice. He has no entitlement to any additional avenues to sidetrack this appeal.

Further delays in the direct appeal of this case are wholly unwarranted. The State is fully prepared to brief and argue Appellant's resentencing as well as address any further proceedings which may arise in the Eleventh District as a result of this Court's remand. The State objects to any delays which will unnecessarily prolong the time the instant appeal spends before this Court.

-4-

Respectfully Submitted,

DENNIS WATKINS (#009949)
RUMBULL COUNTY
PROSECUTING ATTORNEY BY:

CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney

LUWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. NW, 4th Floor
Warren, Ohio, 44481
Telephone No.: (330) 675-2426
Fax No.: (330) 675-2431

COUNSEL FOR APPELLEE, THE STATE OF OHIO

PROOF OF SERVICE

I do hereby certify that a copy of the foregoing response was sent by ordinary U.S. Mail

to Atty. Randall L. Porter, Assistant Public Defender, 250 E. Broad Street, Suite 1400,

Columbus, Ohio, 43215, and Atty. Dennis L. Sipe, 322 Third St., Marietta, Ohio, 45750,

Counsel for Appellant Nathaniel Jackson, on this 19th Day of June, 2013.

LUWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney

-5-



## In The Supreme Court of Ohio

| | | |
|---|---|---|
| State of Ohio, | : | |
| Appellee, | : | Case No. 12-1644 |
| -vs- | : | Appeal taken from Trumbull County Court of Common Pleas |
| Nathaniel Jackson, | : | Case No. CR 01-CR-794 |
| Appellant. | : | This is a death penalty case |

---

## APPELLANT NATHANIEL JACKSON'S MERIT BRIEF

---

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney
psannos@co.trumbull.oh.us

CHARLES MORROW - 0040575
Assistant Prosecuting Attorney

Trumbull County Prosecutor's Office
160 High Street, N.W
4th Floor Administration Building
Warren, Ohio 44481
(330) 675-2426 (Voice)
(330) 675-2431 (Facsimile)

COUNSEL FOR APPELLEE

OFFICE OF THE
OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Counsel of Record

250 E. Broad Street - Suite 1400
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0708 (Facsimile)
Randall.Porter@opd.ohio.gov

and

DENNIS L. SIPE - 0006199
Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

COUNSEL FOR APPELLANT



FILED

JUL 22 2013

CLERK OF COURT
SUPREME COURT OF OHIO

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7665

## Table of Contents

Table of Contents ....................................................................................................... i

Table of Authorities ................................................................................................. iv

Preface ....................................................................................................................... xii

Statement of the Case ................................................................................................ 1

Statement of the Facts ............................................................................................... 4

**Proposition of Law No. I** ........................................................................................ 12

This Court Lacks Jurisdiction to Hear a Direct Appeal in a Capital Case
When the Trial Court Fails to Enter a Sentencing Opinion that Complies
with R.C. 2929.03(F). ........................................................................................... 12

**Proposition of Law No. II** ...................................................................................... 17

A Defendant Is Deprived of the Effective Assistance of Counsel at the
Mitigation Hearing In a Capital Case When The Attorney Who Was
Supposed to Present the Sentencing Phase Evidence  Case Becomes Ill,
The Court at the Commencement of the Hearing Appoints Substitute
Counsel Who Has No Knowledge of the Case, And Remaining Counsel,
Who Had Relied Upon the Ill Attorney to Make the Mitigation
Presentation, Has Limited Knowledge of the Sentencing Phase
Presentation. ......................................................................................................... 17

**Proposition of Law No. III** ..................................................................................... 32

A Defendant Is Denied His Right to A Fair and Impartial Tribunal
When A Trial Judge, Who Has Been Found to Have Committed
Misconduct that Constitutes an Ethical Violation, Refuses to Accept the
Findings of this Court and the Mandate of the Lower Appellate Court
With Respect to His Misconduct. ........................................................................ 32

**Proposition of Law No. IV** ..................................................................................... 39

A Defendant Is Entitled to Two Appointed Counsel at a Resentencing
Hearing in a Capital Case. ................................................................................... 39

**Proposition of Law No. V** ....................................................................................... 44

A Trial Court at a Resentencing Hearing Is Required to Consider All
Relevant Evidence that the Defendant Submits In Support of A Sentence
of Less Than Death. .............................................................................................. 44

**Proposition of Law No. VI** ..................................................................................... 51

A Trial Court Denies a Capitally Convicted Defendant His Right of
Allocution When He Holds That As a  Matter of Law He Cannot
Consider the Defendant's Statement for Purposes of Determining the
Appropriate Sentence. .......................................................................................... 51

i

Proposition of Law No. VII ...........................................................................................55

    **A Trial Court Commits Prejudicial Error in a Capital Case When It Delegates Any Degree of Its Responsibility to the Prosecution For the Drafting of the Sentencing Opinion.** ...................................................................55

Proposition of Law No. VIII .........................................................................................58

    **The Accused May Not Be Punished Multiple Times For Crimes Of Similar Import That Are Committed During One Indivisible Course Of Conduct.** ....................................................................................................................58

Proposition of Law No. IX ...........................................................................................64

    **A Death Sentence Is Inappropriate When It Is the Product of Unreliable Procedures and Is Based Upon Unreliable Evidence That Infects the Weighing Process.** ...........................................................................................64

Proposition of Law No. X .............................................................................................68

    **A Defendant's Death Sentence Is Invalid When the State Is Unable to Carry Out His Execution in a Manner that is Consistent with the Constitution.** ...........................................................................................................68

Proposition of Law No. XI ...........................................................................................78

    **Ohio's Death Penalty Law Is Unconstitutional. R.C. 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, and 2929.05 Do Not Meet The Prescribed Constitutional Requirements And Are Unconstitutional On Their Face And As Applied To Appellant. U.S. Const. Amends. V, VI, VIII, And XIV; Ohio Const. Art. I, §§ 2, 9, 10, And 16. Further, Ohio's Death Penalty Statute Violates The United States' Obligations Under International Law.** ......................................................................................78

Proposition of Law No. XII ..........................................................................................91

    **A Conviction Will Be Reversed When The Cumulative Effect Of The Errors Deprives A Defendant Of The Constitutional Right To A Fair Trial.** .........................................................................................................................91

**Appendix:**

*State v. Nathaniel Jackson*, Notice of Appeal, Case No. 12-1644 .......................................A-1

*State v. Nathaniel Jackson*, Findings of Facts and Conclusions of Law, Case No. 01-CR-794 ...........................................................................................................A-4

*State v. Nathaniel Jackson*, Nunc Pro Tunc Entry, Case No. 01-CR-794 .......................A-21

*State v. Nathaniel Jackson*, Judgment Entry, Entry on Sentence, Case No. 01-CR-794 ..............................................................................................................A-26

Ohio Const. art. I, § 2 .....................................................................................................A-30

Ohio Const. art. I, § 9 .....................................................................................................A-31

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7667

Ohio Const. art. I, § 10 ....................................................................................... A-32

Ohio Const. art. I, § 16 ....................................................................................... A-33

U.S. Const. amend. I............................................................................................ A-34

U.S. Const. amend. V .......................................................................................... A-35

U.S. Const. amend. VI......................................................................................... A-36

U.S. Const. amend. VIII ...................................................................................... A-37

U.S. Const. amend. IX ......................................................................................... A-38

U.S. Const. amend. XIV ...................................................................................... A-39

U.S. Const. art. II, § 2 ......................................................................................... A-40

U.S. Const. art. VI .............................................................................................. A-42

R.C. 2903.01 ...................................................................................................... A-43

R.C. 2911.01 ...................................................................................................... A-44

R.C. 2911.11 ...................................................................................................... A-45

R.C. 2929.02 ...................................................................................................... A-46

R.C. 2929.021 .................................................................................................... A-48

R.C. 2929.022 .................................................................................................... A-49

R.C. 2929.023 .................................................................................................... A-51

R.C. 2929.03 ...................................................................................................... A-52

R.C. 2929.04 ...................................................................................................... A-58

R.C. 2929.05 ...................................................................................................... A-61

R.C. 2941.25 ...................................................................................................... A-63

R.C. 2949.22 ...................................................................................................... A-64

Ohio R. Crim. P. 11 ............................................................................................ A-65

Ohio R. Crim. P. 32 ............................................................................................ A-68

Ohio Sup. R. 20 .................................................................................................. A-70

iii

## Table of Authorities

**CASES**

*Alderman v. Zant,* 22 F.3d 1541 (11th Cir. 1994) ................................................ 46

*Ayers v. Belmontes,* 549 U.S. 7, 127 S.Ct. 469, 166 L. Ed. 2d 334 (2006) ...................... 53

*Baze v. Rees,* 553 U.S. 35, 128 S. Ct. 1520, 170 L. Ed. 2d 420 (2008) .............. 69, 71, 73, 74

*Beard v. Banks,* 542 U.S. 406, 124 S. Ct. 2504, 159 L. Ed. 2d 494 (2004) ...................... 45

*Bell v. Bradford,* 535 U.S. 685, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) ........................ 26

*Benton v. Maryland,* 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969) ..................... 59

*Bower v. Mt. Sterling,* 44 Appx. 670 (6th Cir. 2002) ........................................... 76

*Bracy v. Gramley,* 520 U.S. 899, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997) ...................... 37

*California v. Ramos,* 463 U.S. 992, 103 S. Ct. 3446, 77 L. Ed. 2d 1171
(1983) .................................................................................... 51, 64

*Catalan v. Cockrell,* 315 F.3d 491 (5th Cir. 2002) ............................................. 22

*Chambers v. Mississippi,* 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297
(1973) ...................................................................................... 45

*Citizens United v. FEC,* 130 S. Ct. 876, 558 U.S. 310, 175 L. Ed. 2d 753
(2010) ...................................................................................... 74

*City of Cleburne v. Cleburne Living Ctr. Inc.,* 473 U.S. 432, 105 S. Ct. 3249,
87 L. Ed. 2d 313 (1985) .................................................................. 72, 73

*Clemons v. Mississippi,* 494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d 725
(1990) ...................................................................................... 47

*Clinton v. City of New York,* 524 U.S. 417, 118 S. Ct. 2091, 141 L. Ed. 2d
393 (1998) ............................................................................... 88, 89

*Club Italia Soccer & Sports Org. v. Shelby,* 470 F.3d 286 (6th Cir. 2006),
*overruled on other grounds by Davis v. Prison Health Servs.,* 679 F.3d
433 (6th Cir. 2012) ...................................................................... 72, 76

*Coker v. Georgia,* 433 U.S. 584, 97 S. Ct. 2861, 53 L. Ed. 2d 982 (1977) ........................ 78

*Commonwealth v. O'Neal,* 339 N.E.2d 676 (Mass. 1975) ........................................... 79

*Cooey v. Kasich,* 801 F.Supp. 2d 623 (S.D. Ohio 2012) .......................................... 75

*Creech v. Arave,* 947 F.2d 873 (9th Cir. 1991) ................................................. 46

*Davis v. Coyle,* 475 F.3d 761 (6th Cir. 2007) .................................................. 46

*Delo v. Lashley,* 507 U.S. 272, 113 S. Ct. 1222, 122 L. Ed. 2d 620 (1993) ....................... 81

*Dickens v. Brewer,* 631 F.3d 1139 (9th Cir. 2011) .............................................. 74

*Disciplinary Counsel v. Stuard, Judge,* 121 Ohio St.3d 29, 2009-Ohio-
261, 901 N.E.2d 788 .................................................................. 2, 32, 57

iv

*Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974) ................................................................................................ 92

*Eddings v. Oklahoma*, 455 U.S. 104, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982) ........... 45, 54, 80

*Engquist v. Or. Dep't of Agriculture*, 553 U.S. 591, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008) ................................................................................... 75

*Enmund v. Florida*, 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed. 2d 1140 (1982) ................. 80

*Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) ...................... 70

*Evitts v. Lucey*, 469 U.S. 387, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985) ...................... 84

*Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980)......................................... 85, 90

*Forti v. Suarez-Mason*, 672 F.Supp. 1531 (N.D. Cal. 1987)........................................ 85

*Frazier v. Manson,* 703 F.2d 30 (2d Cir. 1983)........................................................ 77

*Free v. Peters*, 12 F.3d 700 (7th Cir. 1993).......................................................... 81

*Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370 (7th Cir. 1985) ................... 89

*Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972)........... 78, 79, 81

*Gardner v. Florida*, 430 U.S. 349, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977)...................... 54

*Gerlaugh v. Stewart,* 129 F.3d 1027 (9th Cir. 1997)................................................. 20

*Godfrey v. Georgia*, 446 U.S. 420, 100 S. Ct. 1759, 64 L. Ed. 2d 398 (1980) .............. 80, 82

*Green v. Georgia,* 442 U.S. 95, 99 S. Ct. 2150, 60 L. Ed. 2d 738 (1979)........................... 47

*Gregg v. Georgia,* 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976).................... passim

*Haliym v. Mitchell,* 492 F.3d 680 (6th Cir. 2007).................................................. 23

*Hicks v. Oklahoma,* 447 U.S. 343, 100 S. Ct. 2227, 65 L. Ed. 2d 175 (1980) .................. 43

*Hill v. Mitchell,* S.D.Ohio No. 1:98-cv-4522013 U.S. Dist. LEXIS 45919 (March 29, 2013) ..................................................................................... 69

*Hitchcock v. Dugger*, 481 U.S. 393, 107 S. Ct. 1821, 95 L. Ed. 2d 347 (1987) .................. 45

*Hodge v. Hurley*, 426 F.3d 368 (6th Cir. 2005)...................................................... 24

*Hodgson v. Warren,* 622 F.3d 591 (6th Cir. 2010)................................................... 22

*Hope v. Pelzer*, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) ........................ 70

*In re Disqualification of Stuard,* 113 Ohio St.3d 1236, 2006-Ohio-7233, 863 N.E.2d 636 ...................................................................................... 1, 34

*In re Murchison*, 349 U.S. 133, 75 S. Ct. 623, 99 L. Ed. 942 (1955)................................ 37

*In re Ohio Execution Protocol Litig.,* 840 F.Supp.2d 1044 (S.D. Ohio 2012).................... 75

*Johnson v. Bagley,* 544 F.3d 592 (6th Cir. 2008).............................................. 30, 31

*Johnson v. Mississippi,* 486 U.S. 578, 108 S. Ct. 1981, 100 L. Ed. 2d 575 (1988) ..................................................................................... 51, 64

v

*Johnson v. Texas*, 509 U.S. 350, 113 S. Ct. 2658, 125 L. Ed. 2d 290  (1993) ..................... 81

*Joseph v. Coyle*, 469 F.3d 441 (6th Cir. 2006) ....................................................................... 24

*Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S. Ct. 631, 145 L. Ed. 2d
   522 (2000).......................................................................................................................... 76

*League of Women Voters v. Brunner*, 548 F.3d 463 (6th Cir. 2008).................................... 73

*Lewis v. Jeffers*, 497 U.S. 764, 110 S. Ct. 3092, 11 L. Ed. 2d 606 (1990).......................... 82

*Liljeberg v. Health Services Acquisition Corp*, 486 U.S. 847, 108 S. Ct. 2194,
   100 L. 2d 855 (1988)......................................................................................................... 37

*Lockett v. Anderson*, 230 F.3d 695 (5th 2000) ..................................................................... 23

*Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978) ..................... passim

*Lucas v. O'Dea*, 179 F.3d 412 (6th Cir. 1999)...................................................................... 24

*Mak v. Blodgett*, 970 F.2d 614 (9th Cir. 1992)..................................................................... 20

*Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999) ..................................................................... 20

*Marbury v. Madison*, 5 U.S. 137, 2 L. Ed. 60  (1803)........................................................... 89

*Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003).................................................................. 23

*Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 96 S. Ct. 2562, 49 L. Ed. 2d 520
   (1976) ................................................................................................................................. 73

*Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S. Ct. 499, 27 L. Ed. 532 (1971)................... 37

*Maynard v. Cartwright*, 486 U.S. 356, 108 S. Ct. 1853, 100 L. Ed. 2d 372
   (1988) ................................................................................................................................. 82

*Miller v. Anderson*, 255 F.3d 455 (7th Cir. 2001) ................................................................ 25

*Miller v. City of Cincinnati*, 622 F.3d 524 (6th Cir. 2010).................................................... 73

*Mills v. Maryland*, 486 U.S. 367, 108 S. Ct. 1860, 100 L. Ed. 2d 384 (1988)..................... 45

*Mixon v. Ohio*, 193 F.3d 389 (6th Cir. 1999) ....................................................................... 73

*Penry v. Lynaugh*, 492 U.S. 302 (1989) rev'd on other grounds Penry v.
   *Johnson*, 532 U.S. 782 (2001) ......................................................................................... 80

*Penry v. Lynaugh*, 492 U.S. 302, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989) ..................... 45

*Perry v. McGinnis*, 209 F.3d 597 (6th Cir. 2000).................................................................. 72

*Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932) ............................ 20, 26

*Pulley v. Harris*, 465 U.S. 37, 104 S. Ct. 871, 79 L. Ed. 2d 29  (1984)................................ 83

*Reed v. Reed*, 404 U.S. 71, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971)..................................... 77

*Reynolds v. Sims*, 377 U.S. 533, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964)........................... 77

*Rhodes v. Chapman*, 452 U.S. 337, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)................. 70, 78

*Rinaldi v. Yeager*, 384 U.S. 305, 86 S. Ct. 1497, 16 L. Ed. 2d 577 (1966)................... 76, 77

vi

*Robinson v. California*, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758  (1962) .................. 78

*Robinson v. Moore*, 300 F.3d 1320 (11th Cir. 2002)............................................... 46

*Romer v. Evans*, 517 U.S. 620, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996) ....................... 75

*San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 93. S. Ct. 1278, 36 L. Ed. 2d 16 (1973) ............................................................... 73

*Scott v. Houk*, 127 Ohio St.3d 317, 2010-Ohio-5805, 939 N.E.2d 835................. 69

*Sears v. Upton*, 130 S. Ct. 3259, 177 L. Ed. 2d 1025 (2010) .............................. 29

*Shelton v. Tucker*, 364 U.S. 479, 488, 81 S. Ct. 247, 5 L. Ed. 2d 231  (1960)............. 79

*Sims v. Livesay,* 970 F.2d 1575 (6th Cir. 1992)................................................. 23

*Skaggs v. Parker,* 235 F.3d 261 (6th Cir. 2000) ............................................. 23

*Skipper v. South Carolina,* 476 U.S. 1, 106 S. Ct. 1669, 90 L. Ed 2d 1 (1986) ........ 45, 47, 53

*Smith v. Stewart,* 189 F.3d 1004 (9th Cir. 1999) ............................................. 46

*Spaziano v. Florida,* 468 U.S. 447, 104 S. Ct. 3154, 82 L. Ed. 2d 340  (1984)................. 84

*Spaziano v. Singletary,* 36 F.3d 1028 (11th Cir. 1994) ...................................... 46

*State ex rel. Jackson v. Stuard,* 117 Ohio St.3d 1454, 2008-Ohio-1635, 884 N.E.2d 64 ................................................................... 2, 34

*State ex. rel Pratt v. Weygandt,* 164 Ohio St. 463, 132 N.E.2d 191(1956).......................... 38

*State v. Abdi,* 4th Dist. No. 09CA35, 2011-Ohio-3550 .......................................... 62

*State v. Asefi,* 9th Dist. No. 26430, 2012-Ohio-6101 ......................................... 63

*State v. Blanda,* 12th Dist. No. CA2010-03-050, 2011-Ohio-411 ............................ 62

*State v. Cole,* 2 Ohio St.3d 112, 443 N.E.2d 169 (1982)....................................... 40

*State v. Collins,* 8th Dist. No. 95415, 2011-Ohio-3241....................................... 62

*State v. Davis,* 38 Ohio St.3d 361, 528 N.E.2d 925 (1988)................................... 16

*State v. DeMarco,* 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987)............................. 92

*State v. Elmore,* 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547 .................... 60

*State v. Fox,* 69 Ohio St.3d 183, 631 N.E.2d 124 (1994)...................................... 80

*State v. Furman,* 9th Dist. No. 26394, 2012-Ohio-6211 ...................................... 63

*State v. Grant,* 67 Ohio St.3d 465, 620 N.E.2d 50, 63 (1993)............................... 59

*State v. Green,* 90 Ohio St.3d 352, 738 N.E.2d 1208 (2000) .................... 15, 16, 52

*State v. Jackson,* 107 Ohio St.3d 300, 2006-Ohio-1....................................... 1

*State v. Jackson,* 190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221 ...................................................................... passim

*State v. Jarvi,* 11th Dist. No. 2011-A-0063, 2012-Ohio-5590 ............................ 63

vii

*State v. Jenkins,* 15 Ohio St.3d 164, 473 N.E.2d 264 (1984) .............................. 45, 59, 65, 78

*State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314 .................................................. 61, 62

*State v. Johnson,* 24 Ohio St.3d 87, 494 N.E.2d 1061 (1986) ................................................ 41

*State v. Ketterer,* 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48 ........................ 45, 59

*State v. Ketterer,* 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9 ........................ 12, 13

*State v. Linde,* 9th Dist. No. 26209, 2012-Ohio-2885 ................................................... 63, 64

*State v. Maurer,* 15 Ohio St.3d 239, 473 N.E.2d 768 (1984) .......................................... 13, 65

*State v. Monroe,* 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285 ........................... 59

*State v. Murphy,* 91 Ohio St.3d 516, 747 N.E.2d 765 (2001) ................................................ 83

*State v. Myers,* 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186 ............................... 52

*State v. Pierre,* 572 P.2d 1338 (Utah 1977) .......................................................................... 79

*State v. Poindexter,* 36 Ohio St.3d 1, 520 N.E.2d 568 (1988) ............................................. 78

*State v. Reynolds,* 80 Ohio St.3d 670, 684, 687 N.E.2d 1358 (1998) ............................ 52, 53

*State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168 .................... passim

*State v. Steffen,* 31 Ohio St.3d 111, 509 N.E.2d 383 (1987) .......................................... 60, 84

*State v. White,* 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905 ................................ 24

*State v. Williams,* 4th Dist. No. 10CA3381, 2012-Ohio-6083 ....................................... 63, 64

*State v. Wilson,* 787 P.2d 821 (N.M. 1990) ......................................................................... 92

*State, ex rel. Bates, Pros. Atty. v. Court of Appeals,* 130 Ohio St.3d 326,
2011-Ohio-5456, 948 N.E.2d 162 .................................................................................... 12

*Strickland v. Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 462
(1984) ......................................................................................................................... passim

*Summerville, Admr. v. City of Forest Park,* 128 Ohio St.3d 221, 943 N.E.2d
522, 2010-Ohio-6280 ...................................................................................................... 12

*Taylor v. Hayes,* 418 U.S. 488, 94 S. Ct. 2697, 41 L. Ed. 2d 897 (1974) ............................ 37

*Taylor v. Kentucky,* 436 U.S. 478, 98 S. Ct. 1930, 56 L. Ed.2d 468 (1978) ....................... 92

*The Paquete Habana,* 175 U.S. 677, 700 20 S. Ct. 290, 44 L. Ed. 320  (1900) ............. 85, 90

*Trihealth, Inc. v. Bd. of Comm'rs,* 430 F.3d 783 (6th Cir. 2005) ......................................... 76

*Trop v. Dulles,* 356 U.S. 86, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958) .................................... 78

*Tuilaepa v. California,* 512 U.S. 967, 114 S. Ct. 2630, 129 L. Ed. 2d 750
(1994) ................................................................................................................................. 83

*Tumey v. Ohio,* 273 U.S. 510, 47 S. Ct. 437, 71 L. Ed 749 (1927) ...................................... 37

*Turner v. Murray,* 476 U.S. 28, 106 S. Ct. 1683, 90 L. Ed. 2d 27 (1986) .................... 51, 64

*Unger v. Sarafite,* 376 U.S. 575, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964) ............................ 37

viii

*United States v. Cronic,* 535 U.S. 685, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)............................................................................................................................ 26

*United States v. Jackson*, 390 U.S. 570, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968)............................................................................................................................ 81

*United States v. Smith*, 18 U.S. (5 Wheat.) 153, 5 L. Ed. 57 (1820) ...................................... 90

*United States v. Wallace*, 848 F.2d 1464 (9th Cir. 1988)......................................................... 92

*Vill. Of Willowbrook v. Olech,* 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000) ....................................................................................................................... 75

*Walker v. Engle*, 703 F.2d 959 (6th Cir. 1983)........................................................................ 91

*Walton v. Arizona*, 497 U.S. 639 (1990), *vacated on other grounds Ring v. Arizona*, 536 U.S. 584 (2002) ................................................................................... 82

*Ward v. Monroeville*, 409 U.S. 57, 93 S. Ct. 80, 34 L. Ed 2d 267 (1972) .......................... 37

*Washington v. Hofbauer*, 228 F.3d 689 (6th Cir. 2000)...................................................... 24

*Whalen v. United States,* 445 U.S. 684, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980)............................................................................................................................ 59

*Wiggins v. Smith*, 539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003)................. 19, 31

*Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 389 (2000)........................ 31

*Wilson v. Mazzuca*, 570 F.3d 490 (2nd Cir. 2009) ................................................................ 25

*Withrow v. Larkin*, 421 U.S. 35, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975) ........................ 37

*Woodson v. North Carolina*, 428 U.S. 280,  96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976)................................................................................................... 44, 45, 53, 79

*Yick Wo v. Hopkins,* 118 U.S. 356, 6 S. Ct. 1064, 30 L. Ed. 2d 220 (1886) ....................... 72

*Zant v. Stephens*, 462 U.S. 862, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1983) ............. 44, 45, 83

*Zschernig v. Miller*, 389 U.S. 429 , 88 S. Ct. 664, 19 L. Ed. 2d 683 (1968)........................ 85

## CONSTITUTIONAL PROVISIONS

Ohio Const. art. I, § 2 ............................................................................................. 68, 78, 91

Ohio Const. art. I, § 9 ....................................................................................................... passim

Ohio Const. art. I, § 10 ..................................................................................................... passim

Ohio Const. art. I, § 16 ..................................................................................................... passim

U.S. Const. amend. I........................................................................................................... 73

U.S. Const. amend. V ......................................................................................................... passim

U.S. Const. amend. VI ....................................................................................................... passim

U.S. Const. amend. VIII ..................................................................................................... passim

U.S. Const. amend. IX ........................................................................................................ 73

ix

U.S. Const. amend. XIV ................................................................................ passim

U.S. Const. art. II, § 2 ........................................................................................ 88

U.S. Const. art. VI ............................................................................................. 85

**STATUTES**

R.C. 2903.01 ............................................................................................... 58, 78

R.C. 2911.01 ...................................................................................................... 58

R.C. 2911.11 ...................................................................................................... 58

R.C. 2929.02 ...................................................................................................... 78

R.C. 2929.021 .................................................................................................... 78

R.C. 2929.022 .................................................................................................... 78

R.C. 2929.023 .................................................................................................... 78

R.C. 2929.03 ............................................................................................... passim

R.C. 2929.04 ......................................................................................... 45, 58, 78

R.C. 2929.05 ......................................................................................... 65, 68, 78

R.C. 2941.25 ...................................................................................................... 59

R.C. 2949.22 ............................................................................................... passim

**RULES**

Ohio R. Crim. P. 11 ........................................................................................... 81

Ohio R. Crim. P. 32 .......................................................................... 13, 17, 52, 54

Ohio Sup. R. 20 .......................................................................................... 19, 42

**OTHER AUTHORITIES**

ABA Guidelines for the Appointment and Performance of Defense Counsel
in a Death Penalty Case ................................................................. 19, 21, 24, 42

Board of Commissioners on Grievances and Discipline Opinion, 2010 Ohio
Griev. Discip. LEXIS 5 ............................................................................... 40

Cho, Capital Confusion: The Effect of Jury Instructions on the Decision To
Impose Death, 85 J. Crim. L. & Criminology 532 (1994)............................... 81

Convention Against Torture and Other Cruel, Inhuman or Degrading
Treatment or Punishment........................................................................ 86, 87, 88

International Convention on the Elimination of All Forms of Racial
Discrimination (1994).............................................................................. 86, 87, 88

International Covenant on Civil and Political Rights (1992) ......................... passim

Ohio Department of Rehabilitation and Correction Policy 01-COM-11.............. 68

x

Restatement (Second) of Foreign Relations Law of the United States, Sec.
  154(1) (1965) ........................................................................................................ 89

Wechsler Adult Intelligence Test, 3rd edition .................................................... 8

Wide Range Achievement Test ............................................................................. 8

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7676

## Preface

The record from the court below was filed with this Court on January 2, 2013. Appellant reference the trial court pleadings by the following by the following citation: [T.d. _].

The court reporter consecutively numbered the pages from the pretrial through the completion of the trial phase. Appellant references the transcript for those phases of the proceeding by the following citation: [Tr. _].

The court reporter began anew numbering the pages for the penalty or sentencing phase. Appellant references the transcript for that phase of the proceeding with the following citation: [Sent. Tr. _].

The trial court conducted a resentencing hearing on August 14, 2012. Appellant references the transcript for that hearing by the following citation: [8/14/12/ Tr. _].

xii

## Statement of the Case

This is the second time that this Court has reviewed this case on direct appeal. The first time this Court affirmed Appellant's convictions and death sentence. *State v. Jackson,* 107 Ohio St.3d 300, 2006-Ohio-1. The Court of Appeals subsequently granted Appellant a new sentencing hearing because the trial judge had involved the prosecution in the drafting of his sentencing opinion. *State v. Jackson,* 190 Ohio App.3d 319, 2010-Ohio-5054.

Appellant, because his appeal is from a resentencing hearing, is raising only those issues that affect the validity of his current death sentence. Those issues can be grouped into three categories, errors: 1) from the first sentencing proceedings that impacted the resentencing hearing, 2) from the resentencing proceedings, and 3) involving general constitutional challenges to his new death sentence.

Because Appellant's appeal is limited, he focuses this statement of the case on those proceedings involving the granting and conducting of the resentencing hearing.

### A. The New Sentencing Proceedings in the Trial Court.

On August 15, 2006, Appellant moved the trial court for leave to file his motion for a new sentencing hearing. [T.d. 331]. The gravamen of his motion was that the prosecution had written the capital sentencing opinion for Judge Stuard. [*Id.*].

On October 5, 2006, Appellant filed first his application for disqualification to preclude the trial judge from presiding over his motion for leave to filed his motion for a new sentencing hearing. On November 29, 2006, the late Chief Justice Moyer denied Appellant's application for disqualification. *In re Disqualification of Stuard,* 113 Ohio St.3d 1236, 2006-Ohio-7233, 863 N.E.2d 636.

1

After waiting sixteen months for the trial court to rule on his motion for leave to file his motion for a new sentencing hearing, on Januay 8, 2008, Appellant instituted a mandamus action to require the trial judge to rule on Appellant's motion. On Februrary 15, 2008, the trial judge granted Appellant's motion for leave to file his motion for a new sentencing hearing. [T.d. 354]. On April 9, 2008, this Court dismissed Appellant's mandamus action. *State ex rel. Jackson v. Stuard*, 117 Ohio St.3d 1454, 2008-Ohio-1635, 884 N.E.2d 64.

On February 29, 2008, Appellant filed his motion for a new sentencing hearing. [T.d. 355].

On April 18, 2008, the trial judge held a status conference for Appellant's motion for a new sentencing hearing. During the hearing, Appellant became aware for the first time that disciplinary proceedings had been instituted against the trial judge as a result of his *ex parte* involvement of the prosecution in the drafting of the sentencing opinion in the co-defendant, Donna Roberts' case.

On May 12, 2008, Appellant filed a second application of disqualification. He factually premised the motion on the pending disciplinary proceedings in which the trial judge had entered into a stipulation that his actions in the co-defendant's case constituted a violation of the Code of Professional Responsibility. On August 28, 2008, the late Chief Justice Moyer denied Jackson's second application for disqualification. *State v. Jackson*, Ohio Supreme Court Case No. 08-AP-043.

On January 29, 2009, this Court issued a public reprimand for the trial judge for his ex parte involvement of the prosecution in the drafting of the sentencing opinion in the co-defendant's case. *Disciplinary Counsel v. Stuard, Judge*, 121 Ohio St.3d 29, 2009-Ohio-261, 901 N.E.2d 788, ¶ 15. This Court found that "Judge Stuard engaged in ex parte

2

communications four times with [Prosecutor] Becker about the sentencing opinion in Roberts's case." *Id.* at ¶ 5. This Court issued a reprimand as opposed to a greater sanction because the trial judge and the prosecutor had "acquiesced in the board's recommendation, assuring that they have recognized their wrongdoing and will not repeat it." *Id.* at 16.

Almost three months later, on May 1, 2009, the trial judge denied Appellant's motion for a new sentencing hearing. [T.d. 380]. The trial judge did not reference this Court's decision in the co-defendant's case. [*Id.*]. He characterized the facts underlying Appellant's motion as "the alleged involvement of the Trumbull County Prosecutor's Office in the preparation of the sentencing entry." [*Id.* at p. 1].

**B. The Appeal of the Denial of the Motion for a New Sentencing Hearing.**

Appellant timely appealed the trial court's denial of his motion for a new sentencing hearing. On October 18, 2010, the Trumbull County Court of Appeals unanimously granted Appellant a new sentencing hearing. *State v. Jackson,* 190 Ohio App.3d 319, 2010-Ohio-5054. The majority opinion found "the same drafting procedures involving the sentencing entry which occurred in *Roberts* took place in the instant matter. Judge Stuard admitted in an affidavit that he enlisted prosecutorial assistance in preparing and drafting appellant's sentencing entry but failed to include defense counsel in the process." *Id.* at ¶ 29. The appellate court ordered that the trial judge "prepare an entirely new sentencing entry as required by R.C. 2929.03(F)." *Id.* at 29.

**C. The Re-Sentencing Proceedings**

On August 14, 2012, the trial judge conducted a resentencing hearing. He announced at the beginning of the hearing that he had already written his sentencing opinion and he would file it after the hearing. [8/14/12 Tr. 22, 27]. He further announced that he was not going to consider

3

any new evidence that Appellant offered in support of a sentence of less than death. [*Id.* at 5, 14]. The trial judge filed his seventeen-page sentencing opinion shortly after the conclusion of the hearing. [T.d. 410]. It contained no references to the new sentencing hearing. [*Id.*]. It was almost word for word the same opinion that he had filed at the conclusion of the first sentencing hearing. [Td. 274, 410]. The two opinions were identical in those portions involving the discussion of the mitigating factors and the reasons the aggravating circumstances outweighed the mitigating factors by proof beyond a reasonable doubt. [*Id.*].

### Statement of the Facts

On November 14, 2002 at 1:00 p.m. the trial court called the case for purposes of the commencement of the mitigation phase. [Sent. Tr. 4]. Counsel would complete their presentation within the next three hours. [*Id.* at Tr. 107]. What transpired during those three hours would undermine all confidence in the jury's sentencing recommendation.

**A. One of the defense lawyers at mitigation hearing knew nothing about the case. The other lawyer knew very little about the sentencing phase.**

Attorneys Consoldane and Lewis had represented Appellant since his arraignment. [Tr. 9]. Pursuant to the prevailing standards of practice, the two lawyers divided trial responsibilities, Attorney Consoldane was to provide the bulk of the representation in the trial phase and Attorney Lewis was to serve the same role in the sentencing phase. Because Attorney Lewis was to present the mitigation phase, Attorney Consoldane did not interview the sentencing witnesses prior to the day of the mitigation hearing. [*Id.* at Tr. 7-8].

Between the trial and mitigation phases, Attorney Lewis became ill. [Sent. Tr. 4]. As a result, he was unable to participate in the mitigation phase. [*Id.*].

4

On the day the mitigation hearing commenced, Attorney Consoldane recruited Attorney Wright to substitute for Attorney Lewis. [*Id.* at Tr. 7]. Attorney Wright was not certified by the Rule 20 Committee of this Court to accept appointments in capital cases. [*Id.* at Tr. 4]. Attorney Wright spoke only once during the entire mitigation hearing. [*Id.* at Tr. 11]. He informed the court that the retained psychologist "knows a heck of a lot more about this stuff than we do." [*Id.*]. He did not examine any witnesses nor did he make any argument to the jury.

Because he had relied upon Attorney Lewis to make the sentencing presentation, Attorney Consoldane moved the trial court to permit the retained psychologist to be present in the courtroom during the lay witness testimony. Attorney Consoldane told the court "I think that it would be better able to help me in court, when I am *interviewing* the family members if she's here with me. She knows far more about the background of the family than I do, and it was - - *I got a little shorthanded with Mr. Lewis going into the hospital . . .*" [11/14/02 Tr. 7] (emphasis added).

### B. The Unprepared Lawyers Saw No Need to Request a Continuance.

After Attorney Consoldane announced that Attorney Lewis was ill, the court asked Attorney Consoldane if a continuance was needed "until Mr. Lewis was available?" Attorney Consoldane answered, "we do not think that any delay at this point would be wise." [*Id.* at Tr. 4].

Later the prosecutor brought up the need for a continuance to permit Attorney Lewis to participate, "I want the record to reflect that the State also would concur with the continuance if the Defendant desired to have that in order that Mr. Lewis participate in the second chair." [*Id.* at Tr. 6].

5

When Attorney Consoldane asked to have the psychologist remain in the courtroom because he was "shorthanded" [Tr. 7], the prosecutor responded "if Attorney Consoldane feels he's not prepared because of short notice, that this case should be continued until he's prepared . . ." [*Id.* at Tr. 8]. Attorney Consoldane's reply was unresponsive as to the need for a continuance. [*Id.* at Tr. 8-9].

At the conclusion of the mitigation evidence presentation, the trial court revisited the issue of a continuance. Attorney Consoldane again stated "we do not want to delay this." [Sent Tr. 155]. The State reaffirmed that it would not have objected to a continuance. [*Id.* at 156]. Attorney Consoldane explained the lack of a request for a continuance on the fact that he had made the mitigation presentation in the several cases in the last ten years and "I had the witnesses here. I didn't want to bring them back." [*Id.* at Tr. 157].

**C. Defense Counsel Did Not Give an Opening Statement.**

Defense counsel did not give an opening statement at the beginning of the mitigation phase investigation. [*Id.* at Tr. 23]. Instead, the mitigation phase went directly from the court's introductory remarks to the first witness called by the defense. [*Id.*].

**D. Defense Counsel's Direct Examination of the Lay Witness Produced Inaccurate, Prejudicial Testimony.**

During the post-conviction process, new counsel caused a thorough mitigation investigation to be conducted. Dr. Thomas Boyd submitted an affidavit concerning review of the psychological assessment that was conducted at the time and his testing of Appellant. [T.d. 407]. The mitigation specialist, Jessica Love, prepared an affidavit of the summary of the results of her investigation. [T.d. 406, Exhibit 58]. In addition, five individuals submitted affidavits concerning the substance of their testimony if they had been properly prepared to testify. [*Id.* at Exhibits 49-53]. Ms. Love's investigation revealed that:

6

Appellant was of borderline intelligence having previously score in the mental retardation range. [T.d. 406, Exhibits 56 and 57, T.d. 407 Exhibit 78, ¶ 15].

Appellant was raised by his grandmother because his mother and stepfather were severe alcoholics who could not hold down jobs and maintained a dysfunctional household. [T.d. 406, Exhibit 49, ¶ 4, Exhibit 50, ¶ 2, Exhibit 53, ¶¶ 5, 7].

Appellant experienced severe behavioral problems and was not a good student academically. [*Id.* at Exhibit 49, ¶ 3, Exhibit 50, ¶ 3].

Appellant's grandmother raised him in a high crime area. [Exhibit 512, ¶ 2].

Appellant eventually began to live on the streets where he associated with drug dealers and developed a severe substance abuse problem that led him to commit a series of property crimes. [*Id.* at Exhibit 50, ¶¶ 5, 6, Exhibit 51, ¶ 4, Exhibit 54, 3 ¶ 4]

The co-defendant, Donna Roberts, had provided Appellant with money, clothes, drugs and let him drive her car. [*Id.* at Exhibit 19, ¶ 12, Exhibit 50, ¶¶ 10-11, Exhibit 51, ¶ 7, Exhibit 53, ¶ 14].

Defense counsel at the sentencing hearing called four lay witnesses whose testimony, including cross examination, totaled ten pages. [*Id.* at Tr. 23-33]. The witnesses provided the following testimony which was much different than the information obtained during the post-conviction investigation:

Raymond Dickerson in the two pages of his testimony [Sent. Tr. 23-25] he told the jury that: 1) Appellant was always respectful of other individuals, 2) Nate lived with his mother until he lived at a place unknown, and 3) he had not seen Appellant since he was seventeen years of age (Appellant was thirty years of age at the time of trial). He was first interviewed by defense counsel at the courthouse on the day of the mitigation hearing and the questions defense asked did not relate to the questions he was asked when testifying. [T.d. 406, ¶ 52].

Taushia Kornegay (Appellant's sister) testified in the four pages of her testimony that Appellant: 1) did not live on the street, but with his grandmother, 2) was very smart and a good artist, 3) was treated well by his grandmother, mother, and stepfather, and 4) knew right from wrong and took responsibility for what he did. [Sent Tr. 25-29]

Lorraine Rule (mother of Appellant's child) testified in the two pages of her testimony [Sent. Tr. 30-31] that: 1) Appellant brought toys for their child, and 2) the child would like to continue to see her father.

7

Pauline Kornegay (Appellant's mother) in the two pages of her testimony [Sent. Tr. 31-33] testified that: 1) Appellant did well in school and did not experience any problems, 2) Appellant was not raised in a "rough" neighborhood, and 3) she would visit Appellant in prison. She was first interviewed at the courthouse on the day of the mitigation hearing and the questions defense counsel asked did not relate to the questions she was asked when testifying. [T.d. 406, Exhibit 49, ¶ 13].

## E. Defense Counsel's Direct Examination of the Retained Psychologist Produced Inaccurate and Prejudicial Testimony

Attorney Consoldane called Dr. Sandra McPherson, a psychologist, to testify. She was the only expert witness that the defense called. She provided significantly flawed testimony concerning Appellant's level of functioning.

### 1. Dr. McPherson did not understand the most basic psychological concepts concerning mental retardation.

Appellant while in school had received IQ scores of 73 and 70. [T.d. 406, Exhibits 56 and 57, Sent. Tr. 46, 82]. Dr. McPherson inaccurately testified that these scores were not in the mental retardation range. [Sent. Tr. 82]. She reached this incorrect conclusion because she believed that an individual had to scored 60 or below to be found mentally retarded. [Id. at Tr. 60].[1]

### 2. Dr. McPherson and/or her spouse incorrectly administered and scored Appellant's IQ Test

Doctor McPherson had her spouse administer the Wechsler Adult Intelligence Test, 3rd edition (WAIS-III) and Wide Range Achievement Test (WRAT) to Appellant. [Sent Tr. 62]. She testified that Appellant received a full scale score of 84 on the WAIS-III. [Id. at 48, 83]. She observed that his IQ scores had a "very unusual pattern," given that he had received two consistent, much lower scores, 70 and 73, while he was in school. [Id. at Tr. 47]. She claimed

---

[1]There is a rebuttable presumption that if an individual obtains a score above 70, not 60, that he is not mentally retarded. *State v. Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011, ¶ 12.

8

that the earlier consistent scores did not accurately reflect his IQ because: 1) Appellant had ADHD which precluded him from concentrating when taking the earlier tests, 2) Appellant was not on medication for his ADHD, and 3) IQ tests were culturally biased. [*Id.* at 46-47]. She further claimed that the much higher score that Appellant obtained on the WAIS-IIIt she administered was more due to Appellant being in a confined, structured environment (the jail) when he took the test. [*Id.*]

Dr. Thomas Boyd submitted an affidavit during the post-conviction process in which he detailed the results of his review of Dr. McPherson's evaluation of Appellant. [T.d. 407, Exhibit 78]. Dr. McPherson's spouse recorded the data from Appellant's IQ test on a blank sheet of paper as opposed to a full booklet as required by the testing protocol. [*Id. at* ¶ 8]. Either Dr. McPherson or her spouse committed eight errors in the computing, scoring, and reporting of Appellant's IQ test. [*Id.* at ¶ 10]. If properly scored Appellant would have received a full scale score of 80. [*Id.* at ¶ 12]. Dr. Boyd administered the WAIS-III to Appellant and he obtained a full scale score of 75. [*Id.* at ¶ 15]. This was convergent (consistent) with the scores that Appellant had received while in school, but not consistent with the testimony of Dr. McPherson. In addition, Dr. McPherson or her spouse committed sixteen errors in the computing and reporting of Appellant's WRAT test results. [*Id.* at ¶ 14].

**3. The inaccurate IQ test scores tainted much of Dr. McPherson's testimony.**

Dr. McPherson exacerbated the flawed testing results by claiming that Appellant functioned on a higher level than his full scale score of 84 would indicate. On direct examination, Dr. McPherson testified:

> The chances are that he's [Appellant] of average ability, and under the right circumstances could have been quite reasonably successful in life.

[Sent. Tr. 48].

9

On cross examination, Dr. McPherson further testified concerning her conclusion that Appellant functioned on a level higher than his inflated test results:

> A.   Dull normal is sometimes used or low average, and I think I already explained the ways in which I would interpret that score as referencing slightly better ability than it would indicate.
>
> Q.   I think that you said low average or better in your report?
>
> A.   Or better, right.

[*Id.* at Tr. 83].[2]

## F. The Prosecutor Relied Upon the Inaccurate Lay and Expert Testimony In His Closing Argument

The prosecutor told the jury during his closing argument in mitigation that the testimony demonstrated that Appellant: 1) was raised in a good neighborhood [*Id.* at 144, 147],  2) had a hard "working mother"  [*Id.* at 145, 147]. 3) had a mother who did a "good job" raising him [*Id.* at 147], and 4) is smart [*Id.* at 148].

## G. The Trial Judge Relied Upon the Inaccurate Lay and Expert Testimony When Imposing Appellant's Sentence of Death.

The trial judge was required to file a sentencing opinion in which he identified the factors on which he relied when imposing a sentence of death upon Appellant. R.C. 2929.03(F). The trial judge summarized the testimony as follows:

> Though the Court gives some weight to the Defendant's upbringing, it deserves little weight because of the credible testimony from the defendant's step-father, his sister, his mother, and Dr. McPherson.  These witnesses testified that the Defendant was respectful to both his mother and grandmother.  His sister, who described him as smart and really kind, noted that they attended church. Further,

---

[2] Exhibit P, Dr. McPherson's report was admitted into evidence. [Sent. Tr. 108]. She claimed therein that Appellant's full scale IQ score of 84 was impacted by "test bias factors and educational deficit." [Defense Exhibit P, p. 3] It appears that it was from this observation that she reasoned Appellant had functioned at a higher level than the score of 84 indicated.

10

there was testimony offered that he was reared in an environment, where he was not physically or sexually abused. His mother also declined to say that his home was in a "rough neighborhood, or that the Defendant had any problems in school. Dr. McPherson's report noted that the defendant had not been hospitalized for any physical or mental condition.  The witnesses also noted that they practiced moral tenets and that responsibility and respect were taught.

In conclusion, from the testimony of these witnesses, there is nothing particularly evident to show an unusual childhood or to offer an explanation for the Defendant's behavior which would be entitled any significant weight on the side of mitigation.

[T.d. 410, pp. 9-10][3]

---

[3]The trial court's two sentencing opinions were almost identical. The trial court in the first sentencing opinion relied upon the same inaccurate testimony. [T.d. 274, pp. 6-7].

11

### Proposition of Law No. I

**This Court Lacks Jurisdiction to Hear a Direct Appeal in a Capital Case When the Trial Court Fails to Enter a Sentencing Opinion that Complies with R.C. 2929.03(F).**

On October 18, 2010, the Trumbull County Court of Appeals ordered that the trial court conduct a new sentencing hearing for Nathaniel Jackson. *State v. Jackson,* 190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221. The Court of Appeals premised its conclusion on the fact that the trial court had permitted the prosecution to draft the sentencing opinion. *Id.* at ¶¶ 29-30.

The trial judge in his subsequent sentencing opinion failed to consider any evidence that Appellant put forward at the resentencing hearing in support of a sentence less than death. Furthermore he did not submit a new sentencing opinion as ordered the Court of Appeals. *See* Proposition of Law No. VII, *infra.* Consequently, the trial court's sentencing opinion fails to constitute a final appealable order.[4]

**A. This Court's Jurisdiction to Hear this Appeal Is Dependent Upon the Existence of a Final Appealable Order.**

Appellate courts lack jurisdiction to review an order that is not final and appealable. *State, ex rel. Bates, Pros. Atty. v. Court of Appeals,* 130 Ohio St.3d 326, 2011-Ohio-5456, 948 N.E.2d 162, ¶ 17; *Summerville, Admr. v. City of Forest Park,* 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶11. The final appealable order requirement extends to capital cases in which the direct appeals are taken directly to this Court from the trial court. *State v. Ketterer,* 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9, ¶ 19.

---

[4]Appellant raised this issue in a motion filed with this Court on May 23, 2013. This Court has not ruled on that motion at the time of the filing of this Merit Brief. In its response to the motion, the State argued that Appellant had prematurely raised this issue and instead should raise the issue in his merit brief. Without conceding the correctness of the State's argument and out of an abundance of caution because this is a capital case, Appellant again raises this issue.

12

**B. The Trial Court's August 14, 2012, Findings of Fact and Conclusions of Law Do Not Constitute a Final Appealable Order.[5]**

In cases in which a sentence of death is imposed "a final appealable order consists of both the sentencing opinion filed pursuant to R.C. 2929.03(F) and the judgment of conviction filed pursuant to Crim. R. 32(C). *Id.,* at ¶ 18. In *Ketterer,* this Court in ruling on the final appealable order issue raised in that case, addressed whether the three judge panel had complied with Crim. R. 32(C). *Id.* at ¶¶ 6-19. Appellant herein raises the other issue with respect to the existence of a final appealable order, whether the trial court complied with R.C. 2929.03(F).

A trial court when it imposes a sentence of death is required in a separate opinion to 1) identify the aggravating circumstances, 2) identify the mitigating factors, and 3) articulate the reasons that the aggravating factors outweigh the mitigating factors by proof beyond a reasonable doubt. R.C. 2929.03(F). *State v. Maurer,* 15 Ohio St.3d 239, 473 N.E.2d 768 (1984), paragraph two of the syllabus; *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 156. The relevant portion of the statute provides:

> The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors.

R.C. 2929.03(F).

The trial court did not comply with R.C. 2929.03(F). First, it refused to consider (and therefore identify) the existence of any new mitigating factors that Jackson raised at the resentencing proceeding and any evidence that Jackson submitted at the resentencing hearing in

---

[5]The trial judge labeled the sentencing opinion "Findings of Fact, Conclusions of Law." Appellant will reference the trial court's entry as the "sentencing opinion."

13

support of the mitigating factors that he raised in the original 2002 sentencing proceedings. Second, when the trial court refused to consider the mitigating factors raised and evidence submitted at the resentencing hearing, the trial court failed to properly articulate the reasons that the aggravating circumstances outweighed the mitigating factors by proof beyond a reasonable doubt.[6]

Because the trial court failed to comply with R.C. 2929.03(F) when it drafted its sentencing opinion, the document does not constitute a final appealable order.

**1. The trial judge announced that he had already drafted his sentencing opinion.**

Twice the trial judge stated on the record that he had drafted his sentencing opinion prior to the commencement of the resentencing hearing:

> Now pursuant to law, the Trial Court this day August 14, 2012, having determined in a separate opinion of specific findings, that will be filed this afternoon, have [sic] found that the aggravating circumstances as to the count of aggravated murder outweigh the mitigating factors by proof beyond a reasonable doubt.

[8/14/12 Tr. 22].

> As I said, the Court's finding on the weighing of mitigating factors will be filed this afternoon.

[*Id.* at Tr. 27].

**2. The trial judge stated that he would not consider any new evidence.**

The trial judge repeatedly stated during the resentencing hearing that he would not consider any new evidence:

> This matter is back on the re-sentencing, and I view the matter that this re-sentencing should be conducted as the original was. To allow mitigating factors to

---

[6] Subsumed within the statutory mandate that the trial court articulate its reasoning, is the requirement that the court must consider all of the mitigating factors and evidence supporting those factors. Otherwise, a trial court's weighing analysis would necessarily be flawed. *See State v. Green,* 90 Ohio St.3d 352, 363, 738 N.E.2d 1208 (2000).

14

come in, in addition at this point, there is no way that could be presented to the jury, and I think that it befuddles the whole process to allow that . . . .

[*Id.* at Tr. 5]

So I will follow the action taken in the previous case and deny any broadening of the scope other than what had been available to Mr. Jackson at the time of trial and which he took advantage.

[*Id.*]

I'll permit that [the proffering of mitigation evidence] in this case. I'm just saying that would only be for purposes of appeal only.

[*Id.* at p. 14].

### 3. The trial court did not consider any new evidence in the sentencing opinion.

The trial judge, consistent with his statements in open court, filed the sentencing opinion shortly after the conclusion of the sentencing hearing. In the sentencing opinion, which was seventeen pages in length, the trial court did not reference the contents of Appellant's statement at the resentencing hearing or any of the documentary evidence that he submitted at that hearing. In fact, he did not even acknowledge that Appellant had made a statement at the resentencing hearing and instead constantly referenced the unsworn statement that Appellant had made to the jury eleven years earlier in his initial sentencing hearing. [*Id.* at p. 14].

### 4. The trial court's sentencing opinion does not comply with R.C. 2929.03(F).

This Court has found that the failure of a trial court to consider mitigating evidence violates R.C. 2929.03(F). *State v. Green,* 90 Ohio St.3d 352, 363, 738 N.E.2d 1208 (2000). In that case the three judge panel in its sentencing opinion failed to consider the mitigating factor that the defendant was not the principal offender. *Id.* In this case the trial court in his sentencing

15

opinion failed to consider *all* of the mitigating factors and evidence that Appellant offered at the resentencing hearing.[7]

This Court has also found that the failure of a three judge panel to properly weigh the aggravating circumstances against the mitigating factors violates R.C. 2929.03(F). *State v. Davis*, 38 Ohio St.3d 361, 372, 528 N.E.2d 925 (1988); *Green*, 90 Ohio St.3d at 363; *Roberts*, 2006-Ohio-3665, at ¶¶ 159-160. The trial court's conscious decision to limit its consideration of the mitigating factors and evidence in the weighing process was an equally serious violation of R.C. 2929.03(F), as the errors this Court identified in *Davis, Green*, and *Roberts*.

While not every flaw in a trial court's sentencing opinion warrants the finding of a lack of final appealable order, given the nature of the errors in this case, such a finding is warranted. The trial court drafted its opinion prior to the sentencing hearing, it announced in open court that it would not consider any new evidence, and consistent with that announcement, did not consider any new evidence its sentencing opinion. This Court has recognized that the cumulative effect of the errors in a sentencing opinion can warrant the granting of relief. *Green*, 90 Ohio St.3d at 363-64. Similarly, the cumulative effect of the errors in the trial court's sentencing opinion warrant a finding that there is a lack of final appealable order in this case.

---

[7] Appellant at the resentencing hearing informed the trial court that since he had been removed from death row (after the Court of Appeals vacated his death sentence) and placed in general population, he had "obtained a certificate in basic skills computer class and I passed advanced class and also become a tutor down there [at Trumbull Correctional Institute] and also got a certificate in the music program . . . ." [8/14/22 Tr. 21]. Appellant further informed  the trial court that "I haven't been in any trouble since I have been on death row since 2007 and that was a little minor situation, but I haven't been in any trouble or anything since then, your Honor." [*Id.* at Tr. 21-22]. The failure of the trial court in its opinion to even reference Appellant's exemplary behavior not only violated R.C. 2929.03(F), but also the Eighth Amendment. *Skipper v. South Carolina*, 476 U.S. 1, 5, 106 S. Ct. 1669, 90 L. Ed  2d 1 (1986).

16

**C. Conclusion, This Appeal Is Not Properly Before this Court**

This Court only has jurisdiction if Appellant has instituted this proceeding from a final appealable order. For there to be a final appealable order the trial court must have complied with Crim. R. 32(C) and R.C. 2929.03(F). The trial court's sentencing opinion does not comply with the requirements contained in R.C. 2929.03(F); the trial court refused to consider all of the mitigating factors and evidence, incorrectly believing that it was precluded from considering the same. This resulted in the trial court conducting an infirm weighing of the aggravating circumstances and mitigating factors.

The Court should dismiss this appeal because of a lack of a final appealable order and remand the matter to the trial court.

## Proposition of Law No. II

**A Defendant Is Deprived of the Effective Assistance of Counsel at the Mitigation Hearing In a Capital Case When The Attorney Who Was Supposed to Present the Sentencing Phase Evidence Case Becomes Ill, The Court at the Commencement of the Hearing Appoints Substitute Counsel Who Has No Knowledge of the Case, And Remaining Counsel, Who Had Relied Upon the Ill Attorney to Make the Mitigation Presentation, Has Limited Knowledge of the Sentencing Phase Presentation.**

On November 15, 2002, at 1:20 p.m., the court commenced the mitigation phase of Appellant's case. [11/14/02 Tr. 17]. Two hours-thirty-five minutes the defense counsel completed its sentencing presentation. [*Id.* at Tr. 181].

Appellant was represented by two attorneys at the sentencing hearing. Attorney Wright literally did not have any contact with the case prior to the commencement of the mitigation phase and had not been certified by the Rule 20 Committee of this Court to accept appointments capital cases. [*Id.* at Tr. 7-8]. The remaining attorney, Consoldane had relied on Attorney Lewis

17

to prepare the mitigation and present the mitigation. [11/14/02, Tr. 7-8]. That attorney because of an unexpected illness, was unable to attend the mitigation hearing. [*Id.*].

Defense counsel did not give any opening statement. [*Id.* at TR. 23]. Defense counsel called four lay witnesses whose testimony, including cross examination totaled ten pages. [*Id.* at Tr. 23-33]. Defense counsel called a psychologist who testified that: 1) Appellant's IQ was 84 [*Id.* at Tr. 46, 2) this score placed Appellant in the dull normal range [*Id.* at 83], and 3) Appellant operated at on a higher level that his IQ score indicated, in the lower normal range or higher [*Id.*]. However, the witness's spouse, who administered the psychometric tests incorrectly administered or scored Appellant's IQ test as well as the Wide Range Achievement Test. [T.d. 407, Exhibit 78, ¶¶ 10-15]. Finally, defense counsel gave a six page closing statement [*Id.* at Tr. 129-135] during which he argued that Appellant did well in a structure environment prison. [*Id.* at 132-33]. As the prosecutor aptly observed in his closing argument, when Appellant was previously incarcerated, he had helped plot the capital murder charge for which he as on trial. [*Id.* at Tr. 150].

"(I)in all criminal prosecutions, the accused shall...have the Assistance of Counsel for his defense." Sixth Amendment of the United States Constitution. The right to counsel is the right to the effective assistance of counsel..." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 462 (1984). For an attorney to be found ineffective, counsel's must have performed deficiently and the defendant must have been prejudiced by that deficient performance. *Id.* at 687. This test applies to the sentencing phase of a capital case. *Id.* at 686. In this case, defense counsel's performance did not meet the then prevailing standards of practice in a capital case and there is a reasonable probability that if defense counsel had met the prevailing standards, at least one juror would have voted for a sentence of less than death.

18

## A. Defense Counsel Performed Deficiently in the Sentencing Phase.

The first prong of the *Strickland* test requires that a defendant identify those acts and omissions of counsel that constituted deficient or unreasonable performance. *Id.* at 690. The prevailing norms of practice for defense counsel serve as a basis to determine whether counsel's actions were deficient or unreasonable. *Id.* at 688. The American Bar Association standards accurately reflect the prevailing norms of practice for the purpose of evaluating counsel's performance. *Wiggins v. Smith*, 539 U.S. 510, 524, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003). Counsel performance was deficient in the following respects: 1) one counsel was not qualified, 2) neither counsel conducted a reasonable sentencing phase investigation, 3) counsel did not request a continuance, 4) counsel did not retain a reasonably qualified expert, and 5) counsel failed to lodge the necessary objections.

### 1. Attorney Wright was not qualified and lacked any knowledge of Appellant's case

Attorney Jim Lewis, who was the member of the defense team responsible for the mitigation presentation became ill and was unable to make the presentation. [11/15/02 Tr. 4, 155]. Attorney Consoldane had "just got hold of Mr. Wright this morning" with respect to substituting for Attorney Lewis. [*Id.* at Tr. 7]. Mr. Wright, while he had taken the three day training course for purposes of Rule 20 certification, had not been certified him for purposes of accepting an appointment in a capital case. [*Id.* at Tr. 4].[8] In a capital case, if a defendant is indigent, "the court shall appoint two attorneys certified pursuant to Sup. R. 20 through 20.5" Sup. R. 20 I(C). Appellant did not have the benefit of two qualified attorneys for purposes of his mitigation hearing. *See also,* 2003 ABA Guidelines for the Appointment and Performance of Defense Counsel in a Death Penalty Case, § 5.1.

---

[8]The records of this Court indicate that he never sought certification.

19

Even more disturbing than Attorney Wright's lack of certification, is his total lack of any knowledge concerning Appellant's case. In one of the seminal cases in American history, the Supreme Court struck down the convictions and death sentences of several African Americans who were represented by attorneys who the trial court appointed because they, by happenstance, were in the courtroom on the day that the trial commenced. *Powell v. Alabama,* 287 U.S. 45, 57, 53 S. Ct. 55, 77 L. Ed. 158 (1932). The only difference in this case and *Powell* is that defense counsel, as opposed to the trial court sought out the volunteer counsel on the first day of the sentencing hearing. This however, is a distinction without a difference. In both cases the defendants were represented by attorneys who knew nothing about their cases.[9]

**2. The Defense had not conducted a reasonable sentencing investigation.**

Counsel in a capital case are obligated to conduct a reasonable investigation with respect to the sentencing phase. *Strickland,* 466 U.S. at 690-91. Failure to do so renders counsel's assistance ineffective. When a client faces the prospect of being sentenced to death, the need to conduct a reasonable investigation is magnified. *Mapes v. Coyle,* 171 F.3d 408, 426 (6th Cir. 1999). "There is no more important hearing in law or equity than the penalty phase of a capital trial." *Gerlaugh v. Stewart,* 129 F.3d 1027, 1050 (9th Cir. 1997) (Reinhardt, J., concurring and dissenting). "To fail to present important mitigating evidence in the penalty phase--if there is no risk in doing so--can be as devastating as a failure to present proof of innocence in the guilt phase." *Mak v. Blodgett,* 970 F.2d 614, 619 (9th Cir. 1992) (per curiam).

---

[9]Inexplicably, Attorney Consoldane asked the prosecutor if he consented to the substitution of unqualified and unknowledgeable counsel for Attorney Lewis.[11/14/02 Tr. 6-7]. The Sixth Amendment right to counsel belonged to Appellant, not the prosecution. Counsel's question to the prosecution was singularly premised upon "certification" as opposed counsel's lack of knowledge about the case.

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7697

The two attorneys who represented Appellant in the sentencing phase had "an obligation to conduct a thorough and independent investigation relating to the issues of both guilt and punishment." 2003 ABA Guideline 10.7(A). The "penalty phase investigation requires extensive and generally unparalleled investigation into personal and family history.(citations omitted)" *Id.* at Commentary. The investigators needed to explore Appellant's: 1) medical, 2) family 3) educational, 4) military, 5) employment, and 6) social histories. *Id.* Attorney Consoldane called Raymond Dickerson, Pauline Korneagay, Taushua Korneagy, and Lorraine Rue to testify. [11/14/0 Tr. 23, 25, and 31]. The attorney first spoke with Raymond Dickerson and Pauline Korneagay when they appeared at the courthouse on the day of the mitigation hearing. [T.d 402, Exhibit 49, ¶ 13, Exhibit 52, ¶ 7]. The interviewing of family members at the courthouse the day of sentencing hearing does not satisfy the prevailing standards of practice.

Attorney Consoldane moved the trial court to permit the psychologist to be in the courtroom during the lay witness testimony because "I think that it would be better able to help me in court, when I am *interviewing* the family members if she's here with me. She knows far more about the background of the family that I do, and it was - - *I got a little shorthanded with Mr. Lewis going into the hospital . . .*" [11/14/02 Tr. 7] (emphasis added). The trial court ultimately denied the motion. [*Id.* at Tr. 15-16].[10]

Counsel did not conduct the required reasonable investigation. Attorney Wright conducted no investigation. Attorney Consoldane admitted to being "shorthanded" which was his way of referencing that he was unprepared because he had not spoken to the witnesses. Counsel performed deficiently in this aspect of the sentencing hearing.

---

[10]Counsel's lacked of preparation would not have been cured if the court had permitted the psychologist to remain in the courtroom. She herself had spoken to only two members of Appellant's family. [11/14/02 Tr. 80].

21

### 3. Defense counsel had a duty to request a continuance to permit adequate investigation and preparation

Counsel's performance is deficient when the circumstances dictate the need for a continuance and counsel fails to move the court for the additional time. *Catalan v. Cockrell,* 315 F.3d 491, 493 (5th Cir. 2002); *Hodgson v. Warren,* 622 F.3d 591, 600 (6th Cir. 2010). The circumstances dictated the need for a continuance in this case. Attorney Lewis, who was to make the mitigation presentation became ill. [11/14/02 Tr. 4]. Attorney Consoldane who remained on the case had not prepared for mitigation [*Id.* at Tr. 7-8]. The attorney who replaced Attorney Lewis was first asked to participate on the morning of the hearing. [*Id.*]. Attorney Consoldane informed the court that "we do not think that any delay at this point would be wise." [*Id.* at Tr. 4]. This statement was unreasonable given the lack of preparation by the two defense attorneys. The trial court even indicated that it would most likely be willing to grant such a request. [*Id.* at Tr. 5]. The State twice indicated that it had no objection to a continuance. [Sent. Tr. 6, 156].

Attorney Consoldane subsequently identified his reasons for not asking for a continuance. He had made mitigation presentations in other cases. [*Id.* at Tr. 157]. Furthermore, he explained "I had the witnesses here. I didn't want to have them back." [*Id.*]. The prevailing standards in most if not all cases, let alone a capital case, require more than the issuance of subpoenas for witnesses whose testimony is unknown.

Ultimately, the prosecutor recognized the possibility that a continuance was warranted. Defense counsel requested that Doctor McPherson be permitted to stay in the court room because he was unprepared to go forward, "she knows far about the family members . . . I got a little shorthanded with Mr. Lewis in the hospital going in the hospital and I just got hold of Mr. Wright this morning . . ." [*Id.* at Tr. 7]. The prosecutor responded that the correct remedy for Attorney Consoldane's lack of preparation was a continuance, "if Attorney Consoldane feels he's not

22

prepared because of short notice, that the case should be continued  until he's prepared . . ." [*Id.* at Tr. 8].

Defense counsel performed deficiently when they failed to request a continuance because they were unprepared because of the "short notice."

### 4. Defense counsel failed to retain a competent expert.

The prevailing practice in capital cases at the time of Appellant's trial dictated that defense counsel retain all reasonable and necessary experts. *Lockett v. Anderson*, 230 F.3d 695 (5th 2000); *Sims v. Livesay*, 970 F.2d 1575, 1580 (6th Cir. 1992). This prevailing standard of practice is only met if the experts defense counsel retain are competent experts. *Mason v. Mitchell*, 320 F.3d 604, 627 (6th Cir. 2003); *Halym v. Mitchell*, 492 F.3d 680, 712-14 (6th Cir. 2007); *Skaggs v. Parker*, 235 F.3d 261, 273 (6th Cir. 2000).

Counsel retained psychologist Dr. Sandra McPherson for purpose of the mitigation presentation. [8/14/12, Tr. 62]. She permitted her spouse to administered the IQ and WRAT tests to Appellant. [*Id.*]. Appellant received a full scale score of 84 on the IQ test administered by the spouse. [*Id.* at Tr. 46]. That score, according to Dr. McPherson placed Appellant intellectually in the dull normal range. [*Id.* at 83]. However, she believed that he was functioning at a higher level, "low  average or better." [*Id.*]. Appellant had previously received IQ scores in the low 70's when he was in the seventh and tenth grades. [*Id.* at Tr. 46]. Dr. McPherson attributed this very "unusual pattern" of IQ scores on the fact that Appellant's prior results were negatively impacted by his attention deficit disorder and that racial bias of the IQ tests. [*Id.* at Tr. 46-48].

However, Dr. McPherson's spouse recorded the data from the IQ test on a blank sheet of paper as opposed to a full booklet as required by the testing protocol. [T.d. 407, Exhibit 78, ¶ 8]. Either Dr. McPherson or her spouse committed eight errors in the computing scoring and

23

reporting of the IQ tests. [*Id.* at ¶ 10]. If properly scored Appellant would have received a full scale score of 80. [*Id.* at ¶ 12]. Dr. McPherson or her spouse also committed sixteen errors in the computing and reporting of Appellant's WRAT test results. [*Id.* at ¶ 14].

During the post-conviction proceedings, Appellant had another IQ test administered to him. [*Id.* at ¶ 15]. He received a full scale core of 75. [*Id.*]. This result was convergent with the IQ scores that Appellant received in school, not the results that Dr. McPherson reported. *See State v. White*, 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905, ¶ 29.

Defense counsel performed deficiently when the expert that they retained: 1) delegated the administering of the IQ and WRAT tests to her spouse, 2) incorrectly scored the tests, 3) wrongly attributed Appellant's earlier, much lower test scores to cultural bias and Appellant's ADHD, and 4) concluded that Appellant functioned at a higher level than the inflated score on the test that her spouse administered.

### 5. Defense counsel failed to lodge timely objections

Defense counsel in a capital case should "consider all legal claims potentially available . . . in light of . . . the importance of protecting the client's rights against later contentions by the government that the claim has been waived, defaulted, not exhausted, or otherwise defaulted . . ." 2003 ABA Guideline 10.8 (A)(1) and (A)(3)(c). "One of the most fundamental duties of an attorney defending a capital case at trial is the preservation of any and all conceivable errors for each stage of appellate review." *Id.* at Commentary. Defense counsel's performance is deficient when they fail to lodge a timely objection to a cross examination, prosecutorial argument, and jury instructions. *Hodge v. Hurley*, 426 F.3d 368, 376 (6th Cir. 2005); *Washington v. Hofbauer*, 228 F.3d 689, 707 (6th Cir. 2000); *Joseph v. Coyle*, 469 F.3d 441, 460-61 (6th Cir. 2006); *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999).

24

Defense counsel failed to object to the following improper cross examination by the prosecution of Dr. McPherson that Appellant: 1) hated white individuals [2/14/02 TR. 73-74], 2) was previously incarcerated in 1992 and 1993 [*Id.* at Tr. 75], 3) attempted to hit a teacher while still in school [*Id.* at Tr. 76], 4) threatened people at school [*Id.* at 76], 5) threated and attempted to hit another teacher [*Id.* at Tr. 78], 6) stalked one of his children which led to the entrance of a restraining order that preventing him from visiting that child [*Id.* at Tr. 81-82], 7) had a long history of illegal behavior [*Id.* at Tr. 88-89], 8) knew right from wrong [*Id.* at Tr. 90], 9) was placed on probation several times [*Id.* at Tr. 90], 9) was the product of a counter culture [*Id.* at Tr. 96], and could possibly kill again in prison [*Id.* at Tr. 100]. To the extent that any of these questions by the prosecutor were a proper response to issues raised by defense counsel on direct examination of the lay witnesses and psychologist, then counsel was ineffective for opening the door to those lines of questions. *Miller v. Anderson*, 255 F.3d 455, 459 (7th Cir. 2001); *Wilson v. Mazzuca*, 570 F.3d 490, 503-06 (2nd Cir. 2009).

Defense counsel also failed to object to the following improper closing argument, 1) Appellant planned the murder [11/14/02 Tr. 142], planning is an aggravating circumstance [*Id.* at 143, 145, 150], Appellant knew right from wrong [*Id.* at Tr. 145], Appellant has been in and out of prison [*Id.* at Tr. 145], Appellant partied after the murder [*Id.* at Tr. 145], and Appellant threatened to kill his teachers [*Id.* at 149].

Defense counsel performed deficiently when the failed to make requisite objections. Their failure led to the jury hearing inadmissible evidence and argument. If the court had overruled any of the objections, then those issues would have been preserved for appeal as opposed to being waived for appeal.

25

**B. Appellant Was Prejudiced By The Defense Counsel's Deficient Performance.**

For a defendant to prevail on an ineffectiveness claims, he must demonstrate more than defense counsel's failure to meet the prevailing standards of practice. He must also demonstrate that he was prejudiced by counsel's deficient performance. *Strickland,* 466 U.S. at 692.

**1. This Court should assume prejudice.**

In three limited number of circumstances, a court will presume prejudice for purpose of an ineffectiveness claim. *United States v. Cronic,* 535 U.S. 685, 658-659, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984); *Bell v. Bradford,* 535 U.S. 685, 6695-96, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002). Two of the circumstances that the Court has found to warrant a finding of presumed prejudice exist in this case.

First, prejudice will be presumed where competent counsel is called upon to render assistance under such circumstances he is unlikely to be able to render effective assistance. *Cronic,* 535 U.S. at 659-662. The Court therein cited to *Powell v. Alabama, supra* in which counsel was appointed on the day of trial commenced. As previously pointed out herein, this case is similar to the factual pattern in *Powell.* New counsel who was recruited on the day of the mitigation hearing, was substituted for Attorney Lewis the attorney who was to present the mitigation, but had suddenly become ill. [11/14/02, Tr. 4, 7]. Attorney Consoldane who remained on the case was not prepared to present the mitigation case because he believed that the Attorney Lewis would make the presentation. [*Id.* at Tr. 7-8].

Second, prejudice will be presumed when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic,* 535 U.S. at 659. Attorney Wright was not in a position to subject the prosecution's case to meaningful adversarial testing because he literally knew nothing about the case. Attorney Consoldane was in the almost identical

26

position. While he had the opportunity to prepare for the mitigation case (he had been on the case since Appellant was charged), he had not conducted the necessary investigation and review of the materials, believing that Attorney Lewis was to make the mitigation case. [11/14/02 Tr. 7-8]. His unsuccessful request that Dr. McPherson be permitted to remain in the courtroom highlighted his inability to *meaningfully* contest the State's case for death, "I think that it would be better able to help me in court, when I am *interviewing* the family members if she's here with me. She knows far more about the background of the family that I do, and it was - - I got a little shorthanded with Mr. Lewis going into the hospital . . ." [11/14/02 Tr. 7].

This Court should presume prejudice because of counsel's lack of knowledge with Appellant's case for a sentence of less than death. Counsel in the mitigation phase of a capital case is required to go forward with evidence, as opposed to merely cross examining the State's witnesses. Neither counsel was prepared to call witnesses to make the case for less than death.

**2. Appellant was prejudice.**

If this Court finds that a presumption of prejudice is not warranted, Appellant suffered actual prejudice. To establish prejudice, a petitioner must demonstrate that but for counsel's errors, there is a reasonable probability that the result of the sentencing proceedings would have been different. *Strickland* 644 U.S. at 694.

The abbreviated sentencing presentation that Attorney Consoldane made painted Appellant as: 1) being from a good home, 2) an average student in school who experienced no problems and 3) raised by a strong mother how instilled in him a strong set of values. The jury heard that Appellant operated at "low average or better" level of intelligence. [11/14/02, Tr. 83]. He was very smart and a talented artist. [*Id.* at Tr. 28]. He did "pretty good" in school and did not experience any problems. [*Id.* at Tr. 32]. He was treated well by his mother. [*Id.* at Tr. 28]. His

27

mother kept him active in the church. [*Id.* at Tr. 29]. Appellant lived most of his life with his mother. [*Id.* at Tr. 24]. His mother taught him to be responsible for his actions. [*Id.* at Tr. 29]. He was not raised in a "tough neighborhood." [*Id.* at Tr. 32]. He was always respectful of his mother and grandmother. [*Id.* at Tr. 24]. Appellant, prior to the murder, did not live on the street, but with his grandmother. [*Id.* at Tr. 27].

Furthermore, defense counsel failed to adequately develop the co-defendant's control over Appellant. She had provided him with drugs, clothes and money. [Td. 406, Exhibit 49, ¶ 12, Exhibit 50, ¶ 10, Exhibit 51, ¶ 7]. Given his poverty, low intellectual level, and failings in life, he would have been an easy mark for her.

This presentation gave a highly inaccurate portrayal of Appellant's life in all respects. First and foremost, Appellant was not functioning of the level of a person with low average or better intelligence; he was operating on the level of a person with borderline mental retardation. [T.D. 407, Exhibit 78, ¶ 15]. He experienced behavior problems in school and often talked back to his teachers. [T.d. 406, Exhibit 49, ¶ 3]. Appellant's mother was a binge drinker. [*Id.* at Exhibit 53, ¶ 5] His stepfather was a drinker who did not hold down jobs. [*Id.* at Exhibit  53 ¶ 8]. Appellant was raised by his grandmother because of his mother's addiction. [*Id.* at Exhibit 50, ¶ 2, Exhibit 53 ¶ 7 ].  He did not have a good relationship with his mother because she showed affection only for his brother. [*Id,* at ¶ 4]. He did not listen or follow the suggestions of other individuals. [*Id.* at Exhibit 52 ¶ 2] Appellant was raised in a tough neighborhood where the sound of gunshots were often heard. [*Id.* at exhibit 51, ¶ 2]. He did not do well in school and was placed in a school for children with behavioral problems. [*Id.* at Exhibit 50 ¶ 3]. Appellant  lived on the street where he associated with drug dealers. [*Id.* at ¶  6, Exhibit 52, ¶ 4]. Appellant's mother placed locks on her cabinet doors to prevent Appellant from stealing from her to support

28

his drug habit. [*Id.* at Exhibit 50 ¶ 5]. Appellant stole from so many persons to support his drug addiction that he was frequently threatened with bodily harm. [*Id.* at Exhibit 51, ¶ 4].

Recently, the United States Supreme Court reversed a death sentence based upon a very similar set of facts. *Sears v. Upton,* 130 S. Ct. 3259, 177 L. Ed. 2d 1025 (2010). Trial counsel therein presented evidence that described the defendant's childhood as "loving, stable, and essentially without incident.*" Id.* at 3261. In post-conviction, newly appointed counsel demonstrated that the defendant "was far from 'privileged in every way.'" *Id.* at 3262. His parents who separated when the defendant was of an early age were verbally abusive of him. *Id.* The defendant from an early age performed poorly in school and by the time he reached high school he was labeled severely learning disabled and behaviorally handicapped. *Id.* In post-conviction the defendant was found to suffer from brain impairment. *Id.* at 3262-63. The Court in *Sears* found that the defendant's brain impairment was consistent with "an individual with diminished judgment and reasoning skills who may have desire to follow in the footsteps of an older brother who had shut him out of his life." *Id.* at 3263.

Like *Sears,* defense counsel herein painted a picture of Appellant having coming from loving and stable environment. Like *Sears,* Appellant's background was far from privileged in every way. The only distinguishing fact between Appellant and Sears was that Sears was found to suffer from brain impairment. While that has not been found to be the case herein[11] Appellant's low IQ raises some of the same limitations as Sears' brain impairment. Appellant's intellectual deficits caused him to have diminished judgment  and reasoning skills. These limitations in turn caused him to being easy mark for the co-defendant, Roberts, who needed someone to kill her spouse so that she could receive $550,000 in life insurance proceeds.

---

[11] Appellant has not been tested for brain impairment.

29

The Sixth Circuit in an opinion authored by Judge Sutton, granted sentencing phase relief in an Ohio capital case in which defense counsel had similarly painted an inaccurate profile of the petitioner's childhood. *Johnson v. Bagley,* 544 F.3d 592 (6th Cir. 2008). At trial defense counsel went forward with evidence that the petitioner therein had been raised by the maternal grandmother who did everything possible to provide the petitioner a good upbringing. The Sixth Circuit Court of Appeals found that contrary to the defense theory at trial, the petitioner had led a difficult life and that the grandmother was anything but "a saint" when it came to raising the petitioner. *Id.* at 604. The Court held that defense counsel was on notice, given the grandmother's involvement in raising the petitioner, that the mother had abused the petitioner. Judge Sutton in finding prejudice, concluded that the post-conviction evidence differs "not only in degree but also in kind" and forms a mitigation story 'that bears no relation to the story the jury heard." *Id.* at 606 (citation omitted). The Court of Appeals held that "[c]ompetent counsel could have put on evidence that 'differ[ed] in a substantial way--in strength and subject matter-- from the evidence presented at sentencing." *Id.* at 603.

The court's conclusion is equally applicable herein. The jury heard that Appellant functioned at an average level of intelligence, was smart, a good student, a talented artist, who was raised by a loving mother in a good neighborhood. In fact Appellant was initially raised by an alcoholic mother, whose parenting was so bad that he was raised by his grandmother, in a bad neighborhood. Furthermore, the jury did not hear that Appellant is of 1) borderline intelligence, 2) was a poor student, 3) suffered from severe emotional and behavioral problems, 4) developed an addiction to crack cocaine that cause him to commit thefts (including from the residences of his family to support his habit). Judge Sutton in *Johnson* concluded that the district court had properly found that "not one witness testified about the abuse that [Johnson] and his brother

30

suffered as a way of life," and the jury "was misled into believing that [Faulkner the petitioner's grandmother]] had raised [Johnson] properly and provided for his needs." *Id.* at 604. The same can be concluded about this case, not one witness testified about the hardships and mental limitations from which Appellant suffered and the jury was misled into believing that Appellant was raised in a loving environment in which he prospered as a student, individual, and artist.

When a court decides whether a defendant was prejudiced by defense counsel's deficient performance, it must assess the cumulative impact of all of defense counsel's errors. *Strickland,* 466 U.S. at 690. A court examines the totality of the evidence; the evidence presented at trial and the evidence discovered after trial, to determine if there is a reasonable probability that the outcome would have been different. *Williams v. Taylor*, 529 U.S. 362, 397-98, 120 S. Ct. 1495, 146 L. Ed. 389 (2000).

The prejudice test focuses on whether there is a reasonable likelihood that the newly discovered evidence, in conjunction with the evidence presented at trial, would cause a single juror to reach a different conclusion. *Wiggins*, 539 U.S. at 537. If the jury had heard that: 1) Appellant was raised in a dysfunctional household, 2) suffered from extreme emotional problems, 3) was of borderline intelligence, 4) susceptible to manipulation, 5) addicted to crack, and 5) had been manipulated by the co-defendant, one or more jurors would have voted to return a sentence of less than death. [12]

This Court should sustain this proposition, reverse Appellant's death sentence, and remand the matter for a new sentencing hearing at which he is represented by two attorneys certified by the Rule 20 Committee and who have conducted a reasonable investigation.

---

[12]The converse is also true. The inaccurate portrayal of Appellant at trial (average intellect, resources, and strong values) would have caused the jury to be less likely to find that he was manipulated by the co-defendant when she came offering and promising even more gifts, drugs, and cars if he would kill her spouse so she could receive the $550,000 in insurance proceeds.

31

### Proposition of Law No. III

**A Defendant Is Denied His Right to A Fair and Impartial Tribunal When A Trial Judge, Who Has Been Found to Have Committed Misconduct that Constitutes an Ethical Violation, Refuses to Accept the Findings of this Court and the Mandate of the Lower Appellate Court With Respect to His Misconduct.**

This Court, in the case of Appellant's co-defendant, found that the trial judge had inappropriate communications with the assistant prosecutors during which he improperly delegated his statutory obligation with respect to the death penalty. *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶¶ 153-164. This Court's finding in the co-defendant's case ultimately led to this Court publicly reprimanding the trial judge. *Disciplinary Counsel v. Stuard, Judge,* 121 Ohio St.3d 29, 2009-Ohio-261, 901 N.E.2d 788, ¶ 16. Despite the fact that trial judge acknowledged that the same prejudicial communications and delegation had occurred in Appellant's case, he refused to: 1) grant Appellant relief, and 2) when so ordered by the Court of Appeals failed to comply with that Court's mandate. Appellant was denied a fair and impartial judge for purposes of his post-judgment proceedings including the August 14, 2102 resentencing proceedings in violation of the Due Process Clause, Fifth and Fourteenth Amendments Article I, Section 16 of the Ohio Constitution.

On August 2, 2006, this Court issued its opinion in *Roberts* wherein it found, "our confidence in the trial court's sentencing opinion is undermined by the fact that the trial judge directly involved the prosecutor in preparing the sentencing opinion and did so on an ex parte basis." *Roberts,* 2006-Ohio-3665, at ¶ 159. This Court further found "[t]hat conclusion is compelled particularly in light of the trial court's ex parte communications about sentencing with the prosecutor in preparing the sentencing opinion." *Id.* at ¶ 161. This Court vacated Roberts' death sentence and ordered that:

32

> On remand, the trial judge will afford Roberts her right to allocute, and the trial court shall personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by *R.C. 2929.03*. The trial court will then personally prepare an entirely new penalty opinion as required by *R.C. 2929.03(F)* and conduct whatever other proceedings are required by law and consistent with this opinion.

*Id.* at ¶ 167.

On August 15, 2006, Appellant filed with the trial court his motion for leave to file his motion for a new sentencing hearing. [T.d. 331]. He cited therein to this Court's decision in *Roberts.* [*Id.* at p. 2]. He also supported the motion with the sentencing transcript from *Roberts* sentencing hearing in which the trial court had defended the prosecutor's ex parte drafting of the capital sentencing opinion "[i]t is the system that is used here because it is the most practical." [*Id.* at Exhibit B. Tr. 6371].

On October 5, 2006, Appellant filed an application for disqualification with the late Chief Justice Moyer. *State v. Jackson,* Ohio Supreme Court Case No. 06AP102. The trial judge filed an affidavit in which he opposed the application:

> 7.  I had essentially the same type of communications with the Assistant Prosecuting Attorneys in Jackson as I had with the Assistant Prosecuting Attorneys in Roberts, and for the same reasons and purpose. (There is no reason to have a hearing in the Jackson case to establish these facts.)
>
> * * *
>
> 12.  If, as argued by Nathaniel Jackson in his motion to disqualify me, I engaged in the same conduct determined by the Ohio Supreme Court to be prejudicial error in State v. Roberts, then, and in that event, the same result should obtain in this companion case involving Nathaniel Jackson. . . .

[T.d. 406, Affidavit of Randall Porter, Exhibit 4, Judge Stuard Affidvait]

33

On November 29, 2006, the late Chief Justice Moyer denied Appellant's application for disqualification. *In re Disqualification of Stuard,* 113 Ohio St.3d 1236, 2006-Ohio-7233, 863 N.E.2d 636. He found therein:

> Judge Stuard has responded in writing to the affidavit. *He acknowledges that he held the same kind of communications with the prosecuting attorney's office in both the Roberts and Jackson capital cases* before sentencing each of them to death, and he denies that any hearing is needed in his court in the Jackson case to establish that fact. The judge states that he is prepared to reconsider the evidence and impose a new sentence in this case just as he has been ordered to do in the related Roberts case. . . .

[*Id.* at ¶ 4].

After more than sixteen months elapsed without the trial judge ruling on the motion for leave to file his motion for a new sentencing hearing, Appellant instituted a mandamus action to require the trial judge to rule on Petitioner's motion that he had filed on August 15, 2006. *State ex rel. Jackson v. Stuard,* Ohio Supreme Court Case No. 08-0028. On Februrary 15, 2008, the trial judge court granted Appellant's motion for leave to file his motion for a new sentencing hearing. [T.d. 354]. On April 9, 2008, this Court dismissed Appellant's mandamus action, presumably because the trial judge had ruled on the motion. *State ex rel. Jackson v. Stuard,* 117 Ohio St.3d 1454, 2008-Ohio-1635, 884 N.E.2d 64.

After Appellant became aware of the ongoing disciplinary proceedings against the trial judge, Appellant filed a second motion for disqualification with the Chief Justice. *State v. Jackson,* Supreme Court Case No. 08-AP-043. The trial judge filed an affidavit opposing the application for disqualification. [T.D. 404, Affidavit of Randall L. Porter, Exhibit 8 Stuard Affidavit]. In his affidavit, the trial judge acknowledged that he had engaged in the same drafting process that this Court found to be infirm in *Roberts:*

34

> 14. Since I engaged in the same conduct determined by the Ohio Supreme Court to be error in State v. Roberts then, and in that event, the same results should obtain in this companion case involving Nathaniel Jackson. I should remain the trial judge in State v. Jackson just as I was ordered to remain in State v. Roberts. The remedy under these circumstances is not the removal of the trial judge, as the court's opinion in State v. Roberts indicates. Ms. Roberts did not get a new judge and Mr. Jackson should not get one either.
>
> 15. There is no factual or legal reason why Mr. Jackson should be given a remedy different from that given to Donna Roberts.
>
> 16. I am able and willing to undertake the obligations imposed upon me by this court's opinion in State v. Roberts and to apply those requirements to the further handling of the case involving the defendant Jackson.

[*Id.*].

On August 20, 2008, the late Chief Justice Moyer denied Appellant's second application for disqualification. *State Jackson,* Ohio Supreme Court Case No. 08-AP-043 (Judgment Entry).

On May 1, 2009, the trial judge denied Appellant's Motion for a New Sentencing Hearing. [T.d. 381]. He did not reference this Court's decision in *Roberts*. [*Id.*]. He characterized the facts underlying Appellant's motion as "the *alleged involvement* of the Trumbull County Prosecutor's Office in the preparation of the sentencing entry." [*Id.* at p. 1] (emphasis added).

On October 18, 2010, the Trumbull County Court of Appeals unanimously vacated Appellant's death sentence. *State v. Jackson,* 190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221. The majority found that:

> In the case at bar, however, the fact pattern is factually the same as that in *Roberts*. The record before us establishes that the same drafting procedures involving the sentencing entry which occurred in *Roberts* took place in the instant matter. Judge Stuard admitted in an affidavit that he enlisted prosecutorial assistance in preparing and drafting appellant's sentencing entry but failed to include defense counsel in the process.

*Id.* at ¶ 29.

35

Judge Cannon filed a concurring opinion in which he found that the trial judge had misled this Chief Justice in the affidavits that he had filed opposing Appellant's applications for disqualification:

> My decision that the trial judge should conduct a new sentencing hearing is based, in large measure, upon the representations made to the Supreme Court of Ohio by the trial judge. More than one affidavit to disqualify the trial judge was filed in this case. In November 2006, the trial judge filed an affidavit in response, opposing disqualification. In that affidavit, the trial judge acknowledged doing the same thing in this case that he did in *State v. Roberts, 110 Ohio St.3d 71, 2006 Ohio 3665, 850 N.E.2d 1168,* wherein the trial judge was ordered to conduct a new sentencing hearing. . . .
>
> * * *
>
> Because he acknowledged doing the same thing that resulted in prejudicial error in the *Roberts* case, the trial judge conceded prejudicial error in Jackson's case. And, by opposing disqualification, the trial judge implicitly represented he could remain on the case for purposes of curing that error. Given the circumstances, it would appear the trial judge recognized he would be required to do the same thing he was ordered to do in *Roberts,* regardless of the nature of the proceedings (whether postconviction or direct appeal), if he were permitted to remain on the case.

*Id* at ¶¶35, 41]

On August 14, 2012, the trial judge conducted the resentencing hearing. Twice the trial judge stated that he had drafted his sentencing opinion prior to the commencement of the sentencing hearing [8/14/12 Tr. 22, 27]. He twice stated that he would not consider any new evidence or information. [*Id.* at Tr. 12, 14].

The trial judge, consistent with his statements in open court, filed the sentencing opinion shortly after the conclusion of the resentencing hearing. [T.d. 410]. The trial judge's sentencing opinion was almost an identical copy of his prior sentencing opinion that the court of appeals had found was tainted by the prosecutor's involvement. The trial judge added three paragraphs to the

36

beginning of the initial opinion. He added the second and third paragraphs contained on page 3 of the second opinion. He omitted the two full paragraphs contained on page 3 of the initial opinion. The trial judge did not change any of the remainder of the tainted initial opinion including the portions identifying: 1) the mitigating factors and 2) the reasons that the aggravating circumstances outweighed the mitigation factors.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal. *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997); *Withrow v. Larkin*, 421 U.S. 35, 46, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975). A fair trial subsumes the right to an unbiased judge with no interest in the outcome of the case. *In re Murchison*, 349 U.S. 133, 136, 75 S. Ct. 623, 99 L. Ed. 942 (1955); *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S. Ct. 437, 71 L. Ed 749 (1927). Moreover, a fair trial means more than simply the absence of actual bias; rather, "justice must satisfy the appearance of justice." *Liljeberg v. Health Services Acquisition Corp*, 486 U.S. 847, 865, n.12, 108 S. Ct. 2194, 100 L. 2d 855 (1988); *Mayberry v. Pennsylvania*, 400 U.S. 455, 465, 91 S. Ct. 499, 27 L. Ed. 532 (1971). A trial judge is required to step aside when there is a likelihood of bias or even an appearance of bias or when there is too great a temptation to not hold the balance of neutrality. *Taylor v. Hayes*, 418 U.S. 488, 501, 94 S. Ct. 2697, 41 L. Ed. 2d 897 (1974); *Unger v. Sarafite*, 376 U.S. 575, 588, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964); *Ward v. Monroeville*, 409 U.S. 57, 60, 93 S. Ct. 80, 34 L. Ed 2d 267 (1972); *Tumey*, 273 U.S. at 532. "Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties, but due process of law requires no less." *In re Murchison*, 349 U.S. at 136.

37

If a judge's words or actions convey the impression that the judge has developed "a hostile feeling or spirit of ill-will" or if the judge has reached a "fixed anticipatory judgment" that will prevent the judge from hearing the case with an "open state of mind . . . governed by the law and the facts," then the judge should not remain on the case. *State ex. rel Pratt v. Weygandt,* 164 Ohio St. 463, 469, 132 N.E.2d 191(1956).

Five actions of the trial judge point to his lack of fairness and impartiality, he: 1) repeatedly refused to accept this Court's ruling in *Roberts* and his disciplinary proceedings that he had improperly permitted the prosecutor to draft the sentencing opinion; 2) refused to rule on Appellant's motion for leave to file his motion for a new sentencing hearing until a mandamus suit was instituted against him; 3) denied Appellant's motion for a new sentencing hearing after stating in his affidavit that he was prepared to grant the motion; 4) prepared the "new" sentencing opinion after Appellant's death sentence was reversed without the benefit of Appellant's allocution; and 5) informed Appellant at the resentencing hearing that he would not consider any information that Appellant put forward in support of a sentence of less than. This Court should evaluate those five undisputed actions in light of this Court's decision in *Roberts* in which it called into question both the propriety and ethics of the trial judge's actions as well as its subsequent reprimand.

Because of the unique role of the trial judge in a capital case in Ohio, it is especially important that there be no risk of bias. Where, as in this case, the trial is by jury, the sentence of death may be imposed only after the jury recommends the death penalty and "the *court* finds, by proof beyond a reasonable doubt . . . that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors . . . ."  R.C. 2929.03(D)(3) (emphasis added).

38

The trial judge, by his consistent actions, demonstrated that he failed to serve this critical role in a neutral and detached manner. At the very least, there was an appearance of impropriety. This Court should vacate Appellant's sentence and remand this matter so that Appellant may have the benefit of an impartial and unbiased sentencer, as guaranteed by the Fifth and Fourteenth Amendments.

### Proposition of Law No. IV

#### A Defendant Is Entitled to Two Appointed Counsel at a Resentencing Hearing in a Capital Case.

Attorneys John Parker and undersigned counsel Randall Porter represented Appellant in the trial court with respect to his motions for a new trial and new sentencing hearing. Attorney Porter represented Appellant on his initial motion for leave to file his motion for a new trial. [T.d. 331]. He continued to represent Appellant through all the post-judgment proceedings at both the trial and appellate levels. This included the appeal which resulted in Appellant receiving a new sentencing hearing. *State v. Jackson*, 190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221 (11th Dist). Attorney Parker, a member of the private bar, filed his notice of appearance on April 24, 2007. [T.d. 351]. He remained on Appellant's post-judgment cases and appeals throughout including the court of appeals' grant of a new sentencing hearing. Neither attorney was appointed by any court for purposes of that extended litigation. The trial court's refusal to appoint counsel for Appellant's resentencing denied Appellant his right to effective assistance of counselas guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Ohio Constitution as well as the due process clauses of the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution.

39

After the court of appeals granted appellant a new sentencing hearing, he filed a motion for the appointment of counsel. [T.d. 391]. In that motion, Attorney Porter indicated that if the trial court saw fit, he was willing to accept the appointment. [*Id.* at p. 2]. Attorney Parker did not join in the pleading. In the motion for appointment, Attorney Porter represented that Attorney Parker would not be willing to accept appointment. [*Id.* at p. 3]. Federal District Court Judge Gwin had appointed Attorney Parker as lead counsel for Appellant's federal habeas proceedings. *Jackson v. Houk,* N.D.Ohio No. 4:07 CV 0080 (March 27, 2007 Order). Attorney Parker reasoned that because Appellant had a Sixth amendment right to counsel at the resentencing proceedings (which he did not in the earlier post-judgment pleadings), Attorney Parker faced a potential conflict. In the federal habeas proceedings, Appellant could conceivably raise an ineffective assistance of counsel claim with regard to the resentencing proceedings. Attorney Parker would be barred from raising that issue because an attorney cannot raise an ineffectiveness claim against himself. *See State v. Cole,* 2 Ohio St.3d 112, 113, 443 N.E.2d 169 (1982); Board of Commissioners on Grievances and Discipline Opinion No. 2010-5, 2010 Ohio Griev. Discip. LEXIS 5.

Concurrently with the filing of the motion for appointment, Appellant filed a motion for a continuance. [T.d. 392]. He cited therein the fact that counsel had not been appointed and Attorney Parker could not accept an appointment. [*Id.* at p. 2]. On August 13, 2012, the day prior to the resentencing hearing, the trial court denied the motion for a continuance in a two line entry that did not address the appointment issue. [T.d. 398].

On August 14, 2012, the trial court conducted the resentencing hearing. At that point the court still had not addressed the motion for appointment of counsel. Appellant raised the issue at

40

the start of the hearing. [8/14/12, Tr. 7]. The trial court adopted the position that because the resentencing was part of the appellate process, Appellant was not entitled to appointed counsel:

> We are not here because of pending charges against Mr. Jackson. We are here solely as a result of the appeal that was filed from the original trial. Therefore you [Attorney Porter] are the appropriate counsel. This Court need not reappoint you. You are merely handling the appeal process for Mr. Jackson. This Court need not reappoint you.

[8/14/12 Tr. 7].

Attorney Parker then addressed the court concerning the potential conflict that he faced when trying to serve as both resentencing and federal habeas counsel for Appellant. [*Id.* at Tr. 8-9]. The court declined to address the conflict, leaving it up to Attorney Parker to resolve, "That is something I need not determine. That is up to you, whatever you are comfortable with." [*Id.* at TR. 9]. Later in response to the State's claim that Attorney Parker did not have a conflict, the court repeated its prior ruling that it was not going to address the conflict issue, "I am merely saying that that is up to Mr. Parker. If he feels that there is some conflict, I am not going to insist that he proceed at this time." [*Id.* at Tr. 12].

Appellant requested a continuance. [*Id.* at Tr. 10]. He cited to the fact he was entitled to two appointed attorneys and Attorney Parker's withdrawal left him without second counsel. [*Id.*]. The trial court then reaffirmed its prior ruling that the appointment of one appellate attorney for the purposes of a capital resentencing hearing was sufficient. [*Id.*].

The Sixth Amendment right to effective assistance of counsel applies to capital sentencing hearings. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed .2d 462 (1984); *State v. Johnson*, 24 Ohio St.3d 87, 89, 494 N.E.2d 1061 (1986). Appellant is not aware of any case in which the defendant lost this right because he had prevailed on appeal and

41

his case was remanded for a new sentencing hearing in which the defendant again faced the possibility of being sentenced to death.

When a defendant faces the death penalty, "[a]t least two attorneys shall be appointed" by the trial court. Sup. R. 20 II(A). Similarly the American Bar Association Standards provide that "[t]he defense team should consist of no fewer than two attorneys." ABA, *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases.* § 4.1 (3rd Ed.). Appellant did not have the benefit of two attorneys. The trial court observed that the premise supporting the two attorney rule was that death penalty cases are "without a doubt, the most serious type of case that someone can be confronted with and the two heads are better than one . . ." [8/14/12 Tr. 10]. The court's reasoning was equally applicable to Appellant's resentencing. He again faced the death penalty. The issues were as equally complex as any initial capital sentencing hearing. Appellant faced a hostile judge (Proposition of Law No. III, *supra*) who did not want to hear any new evidence (Propositions of Law Nos. V and VI, *infra*) and counsel at initial the initial sentencing hearing had failed to place on the record all relevant, reliable evidence and instead placed on the record unreliable and prejudicial information. (Proposition of Law No. II, *supra*].

The judge's attempt to distinguish the resentencing proceedings for purposes of the appointment of counsel is not persuasive. He claimed that the resentencing proceedings were part of the appellate process. [8/14/12 Tr. 7, 10]. However, a process in which a trial judge must determine whether he should impose a sentence of death cannot be fairly characterized as anything other than a trial proceeding. Even assuming that the trial court's characterization of the proceedings was correct, he was still required to appoint two or more attorneys. Sup. R. 20 II(B) ("[a]t least two attorneys shall be appointed by the court to appeal cases").

42

The same situation occurred in the co-defendant's case. [T.d. 405, Tab 2 at Tr. 4]. One of the two attorneys who represented Roberts on appeal could not continue to represent her at the resentencing. The defendant moved the court for the appointment of another counsel and the trial court summarily granted the motion:

> Attorney Becker:  I guess that we are actually here on a couple of things. There's actually been three motions filed by Mr. Doughten. One for the appointment of co-counsel, that would be Robert A. Dixon. We don't have an objection to that. *Pursuant to the rules, we probably do need an appointment.*

> The Court:  I'll grant that. Prepare an entry.

[*Id.*] (emphasis added).

Appellant's request was the same as Robert's request, the appointment of a second attorney for purposes of resentencing. The prosecutor and trial believed that the rules dictated that the co-defendant was entitled to the appointment of a second attorney. For some inexplicable reason, the rules did not dictate the same right to appointed counsel in Appellant's case.

The trial court's failure to appoint two counsel for the resentencing hearing denied Appellant his right to effective assistance of counsel in violation of the Sixth Amendment and Fourteenth Amendments as well as Article I, Section 10 of the Ohio Constitution. Furthermore it denied him his right to due process as guaranteed by the Fourteenth Amendment as well as Article I, Section 16 of the Ohio Constitution. *Hicks v. Oklahoma,* 447 U.S. 343, 347, 100 S. Ct. 2227, 65 L. Ed. 2d 175 (1980).

This Court should sustain this Proposition of Law and remand the matter for resentencing in which Appellant is represented by two appointed counsel in his fight to again not be sentenced to death.

43

### Proposition of Law No. V

**A Trial Court at a Resentencing Hearing Is Required to Consider
All Relevant Evidence that the Defendant Submits In Support of A
Sentence of Less Than Death.**

On October 15, 2010, the Trumbull County Court of Appeals vacated Appellant's death sentence and ordered the trial court to conduct a resentencing hearing. *State v. Jackson,* 190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221 (11th Dis.), ¶ 33. On August 14, 2013, the trial court conducted a resentencing hearing. The trial judge three times stated that he would not consider any new or additional evidence that supported a sentence of less than death. [8/14/12 Tr. 5, 14]. Twice the judge stated that he had already drafted his sentencing opinion. [*Id.* at Tr. 22, 27]. Almost immediately following the resentencing hearing, the judge filed his sentencing opinion. [T.d. 410]. That opinion reflected that the judge had not considered any new evidence that Appellant had proffered in favor of a sentence of less than death. [*Id.*]. It also reflected that the judge had not considered any information from Appellant's allocution. [*Id.*].[13] The trial court's refusal to consider any new evidence violated the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Ohio Constitution.

**A. The Trial Court In a Capital Case Is Required to Consider Any Relevant Evidence That
the Defendant Presents in Support of a Sentence of Less Than Death.**

A defendant must receive individualized consideration based on the circumstances of the crime and the character of the individual before a sentence of death may be imposed. *Zant v. Stephens,* 462 U.S. 862, 879, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1983); *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976). A "process that accords no significance to relevant facets of the character and record of the individual offender or the

---

[13] See Proposition of Law No VI, pp. *infra.*

44

circumstances of the particular offense" violates the Eighth Amendment. *Woodson*, 428 U.S. at 304. A defendant in a capital sentencing hearing, may not be precluded from presenting *any* relevant mitigating evidence. *Penry v. Lynaugh*, 492 U.S. 302, 319, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989); *Hitchcock v. Dugger*, 481 U.S. 393, 394, 107 S. Ct. 1821, 95 L. Ed. 2d 347 (1987); *Skipper v. South Carolina*, 476 U.S. 1, 4, 106 S. Ct. 1669, 90 L. Ed. 2d 1 (1986); *Eddings v. Oklahoma*, 455 U.S. 104, 113-14, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978). The exclusion of testimony also denies the defendant due process of law. *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973).

"The source of the potential barrier" to a sentencer's ability to consider relevant mitigating evidence is immaterial. *Beard v. Banks*, 542 U.S. 406, 414, 124 S. Ct. 2504, 159 L. Ed. 2d 494 (2004) (citing *Mills v. Maryland*, 486 U.S. 367, 375 108 S. Ct. 1860, 100 L. Ed. 2d 384 (1988). A court's exclusion of the relevant mitigating evidence renders the defendant's death sentence arbitrary and capricious and in violation of the Eighth and Fourteenth Amendments. *Zant*, 462 U.S. at 879; *Eddings*, 455 U.S. at 112.

This Court has reached the same conclusion. *State v. Jenkins*, 15 Ohio St.3d 164, 189, 473 N.E.2d 264 (1984); *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 161. The Ohio Legislature, when it re-enacted Ohio's death penalty provided that "[t]he defendant shall be given great latitude in the presentation of evidence of the factors listed in division (B) of this section and of any other factors in mitigation of the imposition of the sentence of death." R.C. 2929.04(C).

45

**B. The Constitutional Requirement That the Trial Court Consider All Relevant Mitigating Evidence Extends to Capital Resentencing Proceedings**

The United States Court of Appeals for the Sixth Circuit vacated a death sentence for the same reason that Appellant asks this Court to vacate his death sentence; the three judge panel in that case had refused to consider evidence that the defendant initially submitted at a resentencing hearing. *Davis v. Coyle,* 475 F.3d 761, 775 (6th Cir. 2007). In that case this Court had remanded the defendant's case for resentencing because the three judge panel had impermissibly considered non-statutory aggravating circumstances. *Id.* at 769. On remand, the panel refused to grant the defendant a new sentencing hearing and instead limited its consideration to counsel's argument and the evidence that had been placed in the record at the initial sentencing hearing. *Id.* The panel refused to consider evidence of the defendant's post-sentence prison behavior and the testimony of a psychologist. *Id.* The Court of Appeals granted sentencing relief because the three judge panel had refused to consider the proffered evidence. *Id.* at 774 ("at resentencing, a trial court must consider any new evidence that the defendant has developed since the initial sentencing hearing.")

The Court of Appeals holding in *Davis* is consistent with the conclusions reached by other courts. *Robinson v. Moore,* 300 F.3d 1320, 1345-48 (11th Cir. 2002); *Smith v. Stewart,* 189 F.3d 1004, 1008-14 (9th Cir. 1999); *Spaziano v. Singletary,* 36 F.3d 1028, 1032-35 (11th Cir. 1994); *Alderman v. Zant,* 22 F.3d 1541, 1556-57 (11th Cir. 1994); *Creech v. Arave,* 947 F.2d 873, 881-82 (9th Cir. 1991).

**C. The Judge's Refusal to Consider the Mitigation Evidence Constituted Prejudicial Error.**

The trial court's refusal to consider Appellant's mitigation evidence constitutes prejudicial error for two separate reasons.

46

**1. The trial court's error cannot be cured by harmless error analysis or independent appellate review.**

In two separate cases involving the exclusion of mitigating evidence the United States Supreme Court has vacated death sentences without application of the harmless error doctrine. *Skipper, supra; Green v. Georgia,* 442 U.S. 95, 97, 99 S. Ct. 2150, 60 L. Ed. 2d 738 (1979). The Court in *Skipper* made it clear that the appropriate remedy was, a new sentencing hearing; "the State is of course not precluded from again seeking to impose the death sentence, provided that it does so through a new sentencing hearing at which the petitioner is permitted to present any and all relevant mitigating evidence that is available." *Skipper ,* 476 U.S. at 8.

The Sixth Circuit in *Davis* rejected the assertion that this Court's independent reweighing can cure the wrongful exclusion of mitigating evidence. The Warden therein suggested that the proper remedy with respect to the three judge panel's refusal to consider mitigation evidence at the resentencing hearing  was to permit the state appellate courts to reweigh the evidence pursuant to *Clemons v. Mississippi,* 494 U.S. 738, 110 S. Ct. 1441, 108 L. Ed. 2d 725 (1990). *Id.* at 775. The Court of Appeals rejected that suggestion, "reweighing in this case is not possible because the improperly-excluded evidence was never put in the record. Defense counsel's proffer concerning the proposed witness' testimony merely summarized his interviews with these witnesses; the actual substance of the witness' testimony was not put before any court and therefore, no factual basis for reweighing exists." *Id.* at 774. Similarly in this case, because the trial court precluded Appellant from calling witnesses, there testimony of those witness is not contained in the record.

47

**2. In the alternative, the trial court's error caused Appellant to suffer actual prejudice.**

The trial court, after refusing to consider any new evidence, permitted Appellant to proffer into the record the substance of the testimony of the witnesses who he precluded defense counsel from calling. [8/14/12, Tr. 12, 20-21]. Appellant proffered three volumes of exhibits from the prior post-conviction pleadings. [T.d. 406-408]. Those volumes contained affidavits from some of the individuals that he would have called as witnesses if the trial court had not precluded all testimony. [T.d. 406, Exhibits 46 to 53, 56-58, Td. 407, Exhibit 78]. The exhibits and affidavits would have provided the court with relevant, probative mitigation evidence.

Appellant operated on the level of a person with borderline mental retardation. [T.D. 407, Exhibit 78, ¶ 15]. He experienced behavior problems in school and often talked back to his teachers. [T.d. 406, Exhibit 49, ¶ 3]. Appellant's mother was a binge drinker. [*Id.* at Exhibit 53, ¶ 5] His stepfather was a drinker who did not hold down jobs. [*Id.* at Exhibit  53 ¶ 8]. Appellant was raised by his grandmother because of his mother's alcoholism. [*Id.* at Exhibit 50, ¶ 2, Exhibit 53 ¶ 7 ].  He did not have a good relationship with his mother because she showed affection only for his brother. [*Id,* at ¶ 4]. He did not listen or follow the suggestions of other individuals.  [*Id.* at Exhibit 52 ¶ 2] Appellant was raised in a tough neighborhood where the sounds of gunshots were often heard. [*Id.* at exhibit 51, ¶ 2]. He did not do well in school and was placed in a school for children with behavioral problems. [*Id.* at Exhibit 50 ¶ 3]. Appellant lived on the street where he associated with drug dealers. [*Id.* at ¶   6, Exhibit 52, ¶ 4]. Appellant's mother placed locks on her cabinet doors to prevent Appellant from stealing from

48

her to support his drug habit. [*Id.* at Exhibit 50 ¶ 5]. Appellant stole from so many persons to support his habit that he was frequently threatened with bodily harm. [*Id.* at Exhibit 51, ¶ 4].[14]

In addition, Appellant allocated at the resentencing hearing. [8/14/12 Tr. 21-22]. He detailed for the court that he had been of good behavior and furthered his education since the court had sentenced him to death. [*Id.*].[15] Like the information contained in the post-conviction exhibits, the trial judge refused to consider the same.

Appellant suffered actual prejudice for two reasons. First, there was no information in the record (other than Appellant's allocution, which the court refused to consider) as to his exemplary behavior in prison. Thus, the court had no information from which to consider that mitigating factor. Second, while there was some information in the record from the initial sentencing hearing as to Appellant's background, that information was inaccurate. Defense counsel did not conduct the necessary sentencing investigation, did not retain a competent psychologist, and did not prepare for the sentencing hearing.[16]

The extent Appellant was prejudiced by the trial court's refusal to hear additional evidence is highlighted by the factual inaccuracies in the trial judge's sentencing opinion. The opinion contained the following summary of the mitigating factors:

> Though the Court gives some weight to the Defendant's upbringing, it deserves little weight because of the credible testimony from the defendant's step-father, his sister, his mother, and Dr. McPherson. These witnesses testified that the Defendant was respectful to both his mother and grandmother. His sister, who described him as smart and really kind, noted that they attended church. Further, there was testimony offered that he was reared in an environment, where he was not physically or sexually abused. His mother also declined to say that his home was in a "rough neighborhood, or that the Defendant had any problems in school. Dr. McPherson's report noted that the defendant had not been hospitalized for any

---

[14] *See* Proposition of Law No. II, *supra.*
[15] See Proposition of Law No. VI *infra.*
[16] *See* Proposition of Law No. II, *supra.*

49

physical or mental condition. The witnesses also noted that they practiced moral tenets and that responsibility and respect were taught.

In conclusion, from the testimony of these witnesses, there is nothing particularly evident to show an unusual childhood or to offer an explanation for the Defendant's behavior which would be entitled any significant weight on the side of mitigation.

[T.d. 410, pp. pp. 6-7.]

Because the trial judge limited his consideration to the inaccurate testimony and exhibits from the first sentencing hearing, his sentencing opinion is equally inaccurate. The evidence that the trial judge refused to consider highlights the numerous inaccuracies in the sentencing opinion from which the court concluded that the aggravating circumstances outweighed the mitigating factors:

- Appellant's mother was a substance abuser, who after she separated from his biological father entered into another long term relationship with yet another substance abuser.  [T.d. 406, Exhibits 53, 58.]

- Appellant was raised by his maternal grandmother who did not have adequate resources to raise him.  [*Id.* at Exhibits 49-53, 58.]

- Appellant as a result of his attention deficit disorder, learning disabilities and low intelligence was not a good student.  From the first grade on he was very disruptive.  When he was in the junior high he could not add fractions or identify the subject and verb in a sentence.  He came to school without having bathed and clean clothes. [*Id. at* Exhibit 46.]

- Appellant had been placed in at least two treatment facilities because of his substance abuse. [*Id.* at Exhibit 58]. Substance abuse is widely recognized as a mental illness.

- The judge cited to the testimony of Dr. McPherson that Appellant "was considered low average or better in intelligence." [T.d. 410, p. 12.] However, either Dr. McPherson or her spouse incorrectly scored Appellant's IQ and WRAT tests, thereby inflating his scores. [T.d. 407 Exhibit 78, ¶¶ 8-14 ]. When retested Appellant scored in the borderline range with a full scale IQ of 75. [*Id.* at ¶ 15]. This score is consistent with his prior IQ test scores. [T.d. 406, Exhibit 56 and 57].

50

The Eighth Amendment requires heightened reliability and individualized consideration in capital sentencing. *Johnson v. Mississippi,* 486 U.S. 578, 584, 108 S. Ct. 1981, 100 L. Ed. 2d 575 (1988); *Turner v. Murray,* 476 U.S. 28, 35-36, 106 S. Ct. 1683, 90 L. Ed. 2d 27 (1986); *California v. Ramos,* 463 U.S. 992, 998, 103 S. Ct. 3446, 77 L. Ed. 2d 1171 (1983). The requirement of reliability and accuracy in imposing the death penalty is well-rooted in case law and is fundamental to the Supreme Court's capital jurisprudence. *Gregg v. Georgia,* 428 U.S. 153, 194-95, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976). Events that occur after a sentence can render a death sentence constitutionally unreliable. *See Johnson,* 486 U.S. 582.

The trial court's refusal, in violation of the Eighth Amendment, to entertain additional evidence at the resentencing hearing caused Appellant to suffer actual prejudice. It resulted in the trial court's sentencing calculus being both incomplete and inaccurate. This Court should vacate Appellant's death sentence and remand the matter to permit him to place into evidence all relevant information that supports a sentence of less than death.

**Proposition of Law No. VI**

> **A Trial Court Denies a Capitally Convicted Defendant His Right of Allocution When He Holds That As a Matter of Law He Cannot Consider the Defendant's Statement for Purposes of Determining the Appropriate Sentence.**

On August 14, 2012, the trial court conducted the resentencing hearing at which it was called upon to decide whether Appellant should be sentenced to death. The court at the commencement of the proceeding emphasized two points. First, it would not consider any new evidence and information that Appellant or his counsel offered in support of a sentence of less than death. [8/14/12 Tr. 5, 14]. Second, the trial court made it clear that it had already written his sentencing opinion and it would be filing that opinion at the conclusion of the hearing. [*Id.* at Tr. 22, 27]. Appellant made a statement during the sentencing hearing. [*Id.* at Tr. 21-22]. Shortly

51

after the conclusion of the resentencing hearing, the trial court filed its sentencing opinion. [T.d. 410]. The trial court's opinion did not reference Appellant's allocution at the resentencing hearing or the information contained therein. [*Id.*]. The trial court's refusal to consider Appellant's August 14, 2012, statement violated the cruel and unusual punishment clause of the Eighth and Fourteenth Amendments of the United States Constitution and Article I, Section 9 of the Ohio Constitution, the due process clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution and Ohio Criminal Rule 32(A)(1).

The Ohio Criminal Rules provide that, "[b]efore imposing sentence the Court shall afford counsel an opportunity to speak on behalf of the defendant, and shall also address the defendant personally and ask him if he wishes to make a statement on his own behalf or present any information in mitigation of punishment." Crim.R. 32 (A)(1). The rule applies to capital, as well as non-capital cases. *State v. Reynolds,* 80 Ohio St.3d 670, 684, 687 N.E.2d 1358 (1998). Trial courts in capital cases "must painstakingly adhere to Crim. R. 32 . . . it is more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse." *State v. Green,* 90 Ohio St.3d 352, 738 N.E.2d 1208 (2000). The mitigation phase in a death penalty case "is not a substitute for a defendant's right of allocution." *State v. Myers,* 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶ 134. When the trial court does not provide the defendant with the right of allocution, it commits error. *Reynolds,* 80 Ohio St.3d at 683.

This Court has twice addressed the issue of the trial court filing its opinion prior to the sentencing hearing. *Reynolds,* 80 Ohio St.3d at 683; *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶¶ 165-66. In *Roberts.* while, this Court found the issue involving the trial court's filing of the sentencing opinion moot because it had already ordered vacated the defendant's death sentence, it found that the "trial court *shall* provide Roberts with her right of

allocution before imposing any new sentence." *Id.* at ¶ 166 (emphasis added). In *Reynolds,* this Court found that the trial court erred when it filed its sentencing opinion prior to the sentencing hearing, but that the error harmless because "[h]ad new evidence or information been presented during the sentencing hearing, the trial court could have modified its sentencing order." *Reynolds,* 80 Ohio St.3d at 684.

In this case there was new evidence and information presented. Appellant in his allocution informed the court that he had been of good behavior since 2007, obtained educational certificates, served as a tutor and most importantly not receive any disciplinary reprimands since he was removed from death row and placed in general population. [*Id.* at Tr. 21-22]. The United States Supreme Court has twice held that behavior in prison can constitute strong mitigation evidence. *Skipper v. South Carolina,* 476 U.S. 1, 5, 106 S. Ct. 1669, 90 L.Ed. 2d 1 (1986) ("evidence that the defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating. Under *Eddings,* such evidence may not be excluded from the sentencer's consideration.") (footnote omitted); *Ayers v. Belmontes,* 549 U.S. 7, 15, 127 S.Ct. 469, 166 L. Ed. 2d 334 (2006) ("just as precrime background and character *(Boyde)* and postcrime rehabilitation *(Payton)* may 'extenuat[e] the gravity of the crime,' so may some likelihood of future good conduct count as a circumstance tending to make a defendant less deserving of the death penalty.")   All valid capital sentencing schemes must afford individualized sentencing to the defendant. *See Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976); *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978). The trial court's refusal to consider Appellant's allocution unduly restricted the his mitigation. *Lockett,* 438 U.S. at 604; *Skipper v. South Carolina,* 476 U.S. 1, 8, 106 S. Ct. 1669, 90 L. Ed. 2d 1 (1986).  While a sentencer is free to give a defendant's mitigating

53

evidence the weight it believes appropriate, it "may not give it no weight by excluding such evidence from consideration." *Eddings v. Oklahoma,* 455 U.S. 104, 114-15, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982).

Exclusion of the evidence in this case was especially prejudicial in this case because the prosecutor cross examined Doctor McPherson concerning the likelihood that Appellant would committed another murder in prison if the jury returned a sentence of less than death. [Sent. Tr. 93, 100]. It was a constant theme of the prosecutor's closing argument in the sentencing phase. [*Id.* at 142, 143, 150]. "Where the prosecution specifically relies on a prediction of future dangerousness in asking for the death penalty, it is not only the rule of *Lockett* and *Eddings* that requires that the defendant be afforded an opportunity to introduce evidence on this point; it is also the elemental due process requirement that a defendant not be sentenced to death "'on the basis of information which he had no opportunity to deny or explain.'" *Skipper,* 476 U.S. at 5, n. 1 (quoting *Gardner v. Florida,* 430 U.S. 349, 362, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977)).

Despite the importance of this evidence, the trial court did not, pursuant to its no new evidence pronouncements [8/14/12, Tr. 5, 14] modify its prematurely filed sentencing opinion. The trial court's affording Appellant the opportunity to make a statement, but its refusal to consider that statement, reduced his allocution to "an empty ritual."

The trial court's refusal to consider Appellant's allocution violated his rights as guaranteed by the Eighth and Fourteenth Amendments as well as Crim. R. 32(A)(1). It denied Appellant his last opportunity to plead his case or express remorse The error was not harmless. This Court should vacate all of Appellant's convictions (because he was denied his right of allocution on all charges) and remand the matter for resentencing.

54

## Proposition of Law No. VII

**A Trial Court Commits Prejudicial Error in a Capital Case When It Delegates Any Degree of Its Responsibility to the Prosecution For the Drafting of the Sentencing Opinion.**

On October 15, 2010, the Trumbull County Court of Appeals vacated Appellant's death sentence. *State v. Jackson*, 190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1211, ¶ 33 (11th Dist). The Court found that the trial judge had involved the prosecution in the drafting of its sentencing opinion. *Id.* at ¶ 29. It ordered the case be remanded and the trial judge "prepare an *entirely new sentencing entry . . .*" *Id.* (emphasis added)

On August 14, 2012, the trial judge immediately after the resentencing hearing filed a seventeen page sentencing opinion. [T.d. 410]. The trial judge did not prepare an entirely new sentencing opinion. Instead, he copied almost verbatim the prior opinion which the court of appeals had previously founded to be tainted by the prosecutor's involvement in the drafting. The trial judge added three paragraphs to the beginning of his prior opinion, he added two paragraphs which appear on the page 3 of the August 14, 2012, opinion and deleted the two full paragraphs that appeared on page 3 of the December 9, 2002, opinion. Other than those minor changes, the first and second sentencing opinions are identical including the sections reviewing the mitigating factors and the reasons that the aggravating factors outweighed the mitigating factors by proof beyond a reasonable doubt. The trial court's August 14, 2012, opinion does not comply with R.C. 2929.03(F), the Eighth and Fourteenth Amendments to the United States Constitution, Article I, Sections 9 and 10 of the Ohio Constitution, this Court's holding in *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶¶ 156-164, and the Court of Appeals order remanding the case.

55

In *Roberts,* the prosecution had participated in the drafting of the sentencing opinion without the knowledge of defense counsel. *Id.* at ¶ 155. This Court held that R.C. 2929.03 mandates that the trial judge has the sole responsibility for the drafting of the sentencing opinion. *Id.* at ¶ 159. This Court found that its "confidence in the trial court's sentencing opinion is undermined by the fact that the trial judge directly involved the prosecutor in preparing the sentencing on an ex parte basis." *Id.* Finally, this Court concluded that it was immaterial as to the degree of the prosecutor's involvement in the drafting process, "[t]he trial court's *delegation of any degree of responsibility* in this sentencing opinion does not comply with R.C. 2929.03(F)." *Id.* at ¶ 160 (emphasis added).

The Trumbull County Court of Appeals when it vacated Appellant's death sentence, found that again the trial judge, as in *Roberts,* had involved the prosecution in the drafting of the sentencing opinion, "Judge Stuard admitted in an affidavit that he enlisted prosecutorial assistance in preparing and drafting appellant's sentencing entry but failed to include defense counsel in the process." *Jackson,* 2010-Ohio-5054 at ¶ 29. The Court of Appeals concluded:

> Based on the Supreme Court of Ohio's holding in *Roberts*, appellant is entitled to the same relief afforded to his co-defendant. Thus, the trial judge must personally review and evaluate the appropriateness of the death penalty, *prepare an entirely new sentencing entry* as required by *R.C. 2929.03(F)*, and conduct whatever other proceedings are required by law and consistent with this opinion. *Id. at P167.*

*Id.* (emphasis added)

A comparison of the December 9, 2002, and the August 14, 2012, sentencing opinions reveals that the judge did not write an entirely new sentencing opinion. He added three introductory paragraphs, added two paragraphs and omitted two paragraphs with respect to the facts and left the remainder of the opinion untouched (the last fourteen pages of the August 14,

56

2102, opinion).[17] He left in its entirety those portions of the December 9, 2002, opinion that addressed the identification of the aggravating circumstances and the mitigating factors, and the reason the former outweighed the latter by proof beyond a reasonable doubt.

Thus, this Court now has before it an opinion that is again tainted by the trial judge's involvement of the prosecution. The trial judge, by making a few cosmetic changes in the December 2, 2002, opinion, did not remove that taint. The trial judge's delegation, caused the sentencing opinion to: 1) not be worthy of confidence, 2) not comply with R.C. 2929.03(F), and not be the product of "proper process." *Roberts*, 2006-Ohio-3665 at ¶¶ 159-160. Because the prosecutor's involvement was *ex parte*, the error cannot be ignored or found to be harmless. *Id. Roberts, 2006 Ohio-3665* at ¶ 162. This error constitutes such a "grievous violation of the statutory deliberative process . . . that independent reweighing cannot serve as an adequate remedy." *Id.* at ¶ 163.

This Court should vacate Appellant's death sentence and remand the matter so that he may receive the benefit of an unbiased and neutral evaluation of: 1) all of the evidence and 2) the weighing of the aggravating circumstances against the mitigating factors to determine the appropriate sentence. This conclusion is dictated by R.C. 2929.03(F), the due process clauses of the Fifth and Fourteenth Amendments, as well as Article I, Section 16 of the Ohio Constitution,

---

[17] The trial judge in his August 14, 2012, opinion observed that "[t]he Supreme Court apparently thought the prosecution participated in this Court's conclusions as set forth in the final opinion." [Td. 410, p. 1]. This observation is difficult to square with the fact that this trial judge at the *Roberts* sentencing hearing "conceded that the prosecution had participated in the drafting of the opinion without the knowledge of defense counsel." *Roberts* at 2006-Ohio-3665 at ¶ 155. Similarly, the Court of Appeals found that "Judge Stuard admitted in an affidavit that he enlisted prosecutorial assistance in preparing and drafting appellant's sentencing entry but failed to include defense counsel in the process." *Jackson*, 2010-Ohio-5054 at ¶ 29. Finally, the trial judge in the disciplinary proceedings "concede[d] and the board found that his ex parte communications with Becker, engaged in without the knowledge or consent of opposing counsel. *Disciplinary Counsel v. Stuard, Judge*, 121 Ohio St.3d 29, 2009-Ohio-261, 901 N.E.2d 788, ¶ 10.

57

and the Eighth Amendment and Article I, Section 9 of the federal and state prohibitions against cruel and unusual punishment.

### Proposition of Law No. VIII

**The Accused May Not Be Punished Multiple Times For Crimes Of Similar Import That Are Committed During One Indivisible Course Of Conduct.**

On December 28, 2001, the Trumbull County Grand Jury indicted Appellant for the offenses of: Aggravated Murder (Count One) in violation of R.C. 2903.01(A); Aggravated Murder (Count Two) in violation of R.C. 2903.01(B); Aggravated Burglary (Count Three) in violation of R.C. 2911.11(A)(1)(2); and Aggravated Robbery (Count Four) in violation of R.C. 2911.01(A)(1)(3). [T.d. 5]. Each count charging aggravated murder contained two capital specifications: 1) the murder was committed during the course of an aggravated burglary and Appellant was the principal offender (Specification One) in violation of R.C. 2929.04(A)(7) and 2) the murder was committed during the course of an aggravated robbery and Appellant was the principal offender (Specification Two) in violation of R.C. 2929.04(A)(7). The jury found Appellant guilty of all counts and specifications. [Tr. 3612-16].

Prior to the sentencing phase, the prosecutor dismissed Count 2 of the Indictment for the purposes of sentencing. [Sent. T. 159-160]. The jury considered both specifications in the mitigation phase. [Sent. Tr. 168-69]. At the resentencing hearing, the court considered both capital specifications when determining that the aggravated circumstances outweighed the mitigating factors. [8/14/12 Tr. 22] The court, in its August 14, 2012, sentencing opinion also weighed considered both aggravating circumstances. [T.d. 410, pp. 7-8]. The trial court imposed consecutive sentences for the aggravated burglary and aggravated robbery. [8/14/12 Tr. 24-25].

58

The Double Jeopardy Clause of the Fifth Amendment applies to the states through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The right against double jeopardy protects the criminally accused from multiple punishments, as well as multiple trials. *See Whalen v. United States,* 445 U.S. 684, 688, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980). The key to determining if multiple punishments are prohibited is whether the legislature intended separate punishments for both types of criminal conduct. *Id.* at 688-89; *State v. Grant,* 67 Ohio St.3d 465, 620 N.E.2d 50, 63 (1993).

The Revised Code provides an additional protection from multiple convictions and punishments: "Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment . . . may contain counts for all such offenses, but the defendant may be convicted of only one." R.C. 2941.25(A)

Pursuant to the double jeopardy clause of the Fifth and Fourteenth Amendments of the United States Constitution, Article I, Section 10 of the Ohio Constitution, and R.C. 2941.25(A), the capital specifications should be merged, the identical underlying felonies and the capital specifications should be merged, and the underlying felonies themselves should be merged.

**A. The Two Capital Aggravating Circumstances Should Be Merged.**

In the penalty phase of a capital prosecution, where two or more aggravating circumstances arise from the same act or indivisible course of conduct, these duplicate aggravating circumstances should be merged for purposes of sentencing. *State v. Jenkins,* 15 Ohio St.3d 164, 473 N.E.2d 264 (1984), paragraph 5 of the syllabus.

This Court has consistently held that the aggravated burglary and aggravated robbery specifications should not be merged. *see State v. Monroe,* 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 68; *State v. Ketterer,* 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶

59

119; *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 128. These and other cases have involved defendants who entered the residences in question by force, stealth or deception. *Id.* This Court has held that the aggravated burglary was committed with one animus (the improper entry of the residence) and the aggravated robbery was committed with a separate animus (the stealing of items from the victim). *Id.*

However, the reasoning in those cases does not apply herein given the unique facts of this case. The co-defendant Roberts transported Appellant to the residence and granted him permission to enter the residence. Thus, Appellant did not commit the offense of aggravated burglary at the time that he entered the residence. Instead, he committed the aggravated burglary when the victim and he became involved in the assault that led to the victim's death. *State v. Steffen*, 31 Ohio St.3d 111, 115-16, 509 N.E.2d 383 (1987). Appellant fled in the victim's vehicle immediately after the fatal shooting. The shooting occurred in the doorway between the kitchen and the garage and the victim's vehicle was parked in the garage. Thus, the burglary, shooting, and theft of the vehicle was all one act for purposes of the merger doctrine. Appellant in the indictment was charged with committing the aggravated burglary "while committing, attempting to commit, or fleeing immediately after committing or attempting to commit aggravated murder. [Td. 5, p. 2]. The jury was similarly instructed. [Tr. 3571-72]. The jury's verdict incorporated the language from the indictment. [T.d. 265].

The same analysis applies to the aggravated robbery. Appellant's commission of the aggravated robbery was part and parcel of the aggravated burglary and aggravated murder which occurred simultaneously. The capital indictment treated the aggravated murder and aggravated robbery as all one act, Appellant committed the aggravated murder while he "was committing, attempting to commit, or fleeing immediately after committing or attempting to commit the

aggravated robbery." [Td. 5, p. 2]. The jury was similarly instructed. [Tr. 3572-73]. The jury's verdict incorporated the language from the indictment. [T.d. 264].

If this Court should determine that pursuant to its prior precedent the specifications should not be merged, then this Court should revisit those holdings based upon it subsequent decision in *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314. *See* Section B, *infra.*

**B. The underlying felonies should be merged with the capital specifications.**

Count 1, Specification 1 of the indictment charged Appellant with having committed the murder while committing an aggravated burglary. [T.d. 5, p. 1] Count 3 of the indictment charged Appellant with aggravated burglary, the same conduct that comprised the specification. [*Id.* at p. 4] Count 1, Specification 2 of the indictment charged Appellant with having committed the murder while committing an aggravated robbery. [*Id.* at p 1] Count 4 of the indictment charged Appellant with the aggravated robbery, the same conduct that served as the basis for the second specification. [*Id.* at p. 5]

This Court has refined the test for purposes of determining allied offenses. *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314. This Court therein overruled its prior precedent and held that the courts should apply the following two part test: 1) whether the offenses can be committed by the same conduct and 2) if the answer is in the affirmative, whether the offenses were committed by the same conduct. *Id.* at ¶¶41-46. If the answers to both inquiries are in the affirmative, then the offenses are allied offenses and must be merged. *Id.* at ¶50.

In *Johnson,* the defendant was convicted of felony murder, based upon the predicate offense of child endangering. This Court determined that the offenses in question were allied offenses. *Id.* at ¶53. It rejected the State's invitation to find that the two offenses were "arguably two separate incidents of abuse, separated by time and brief intervention." *Id.* at ¶56. Finally, it

61

concluded that "[t]his beating was a discrete act that resulted in the simultaneous commission of allied offenses, child abuse and felony murder." *Id.*

In this case, the commission of each of the underlying felonies and the resulting specification constituted a single discrete act. When Appellant committed the aggravated burglary, he also committed the aggravated burglary specification. When he committed the aggravated robbery he also committed the aggravated robbery specification. Thus, Appellant's actions with respect to each of the felonies and specifications meets both prongs of the *Johnson* test.

Courts of appeals have reached the conclusion that  felony murder and the felony used to enhance the murder can constitute allied offenses. *State v. Blanda,* 12th Dist. No. CA2010-03-050, 2011-Ohio-411, ¶19 (The defendant could not be convicted of both the aggravated murder and the predicate offense of child endangering, because "[c]learly the state relied upon the same conduct to prove both offenses."); *State v. Collins,* 8th Dist. No. 95415, 2011-Ohio-3241, ¶45 ("In light of the state's concession [that the aggravated arson charges merge into the felony murder charges] and the recent Ohio Supreme Court decision in *Johnson,* we sustain this argument and remand the case to the trial court . . "); *State v. Abdi,* 4th Dist. No. 09CA35, 2011-Ohio-3550 ¶42 ("Because aggravated robbery and felony murder are allied offenses, we remand the present case for resentencing.").

The fact that this case involves an underlying felony and a capital specification as opposed to the offense of aggravated murder and an underlying felony is of no consequence. The felony in the context of the aggravated murder simply elevates the offense from murder to aggravated murder. The felony in the context of capital murder elevates the offense from aggravated murder to capital murder.

The felonies and related specifications should be merged. This Court should remand the matter for the state to elect as to which of the offenses it wishes to proceed.

## C. The Underlying Felonies Should Be Merged

This Court should also merge the offenses of aggravated burglary (Count 3) and aggravated robbery (Count 4). *State v. Jarvi,* 11th Dist. No. 2011-A-0063, 2012-Ohio-5590. In that case the defendant and three other individuals trespassed into the home of the victim. *Id.* at ¶ 2. The victim refused to give the defendant any money. *Id.* One of the other assailants fatally struck the victim in the head with a wooden club. *Id.* The defendant then removed the victim's wallet and took a sum of money. *Id.* Appellant pled guilty to the offenses of aggravated robbery and aggravated burglary. *Id.* at ¶ 4. The trial court denied the defendant's motion to merge the two offenses. *Id.* at ¶ 5. The defendant appealed. The court of appeals, applying the *Johnson* test, found that it was possible to commit both offenses with the same conduct and that the offenses were not committed separately or with a separate animus. *Id.* at ¶ 24. The appellate court concluded that the trial court erred when it imposed separate sentences for the offenses of aggravated burglary and aggravated robbery. *Id.* at ¶ 25. The facts in *Jarvi* are indistinguishable from the facts in Appellant's case.

Other appellate courts have remanded cases to permit the trial court to develop the facts concerning the offenses of aggravated robbery and aggravated burglary with respect to the merger issue. *State v. Linde,* 9th Dist. No. 26209, 2012-Ohio-2885, ¶ 4; *State v. Williams,* 4th Dist. No. 10CA3381, 2012-Ohio-6083, ¶ 51; *State v. Asefi,* 9th Dist. No. 26430, 2012-Ohio-6101, ¶ 8; *State v. Furman,* 9th Dist. No. 26394, 2012-Ohio-6211, ¶ 4. All of these cases involved the same scenario as the present case, the victim was robbed while his house was being burglarized. *Id.* The trial courts had not addressed the merger issue and the appellate courts

63

wanted the trial courts to have the first opportunity to address the merger issue. *See Linde* at ¶ 4; *Williams,* at ¶ 51.

The offenses of aggravated robbery and aggravated burglary should be merged. In the alternative, the case should be remanded to permit the trial court to address the issue.

**D. Conclusion: Merger Is Warranted**

This Court should merge: 1) the capital specifications, 2) the capital specifications and the related underlying felonies, and 3) the underlying felonies. It should then order the case remanded to permit the prosecution to elect as to which specification and underlying felony it wants to go forward. In the alternative, this Court should order the case be remanded to permit development of the relevant factual issues and to afford the trial court the opportunity to rule on the various merger issues.

**Proposition of Law No. IX**

**A Death Sentence Is Inappropriate When It Is the Product of Unreliable Procedures and Is Based Upon Unreliable Evidence That Infects the Weighing Process.**

The Constitution charges this Court with the duty to insure that each death sentence that it reviews is the product of a reliable procedure and that the sentence is worthy of confidence. *Johnson v. Mississippi,* 486 U.S. 578, 584, 108 S. Ct. 1981, 100 L. Ed. 2d 575 (1988); *Turner v. Murray,* 476 U.S. 28, 35-36, 106 S. Ct. 1683, 90 L. Ed. 2d 27 (1986); *California v. Ramos,* 463 U.S. 992, 998, 103 S. Ct. 3446, 77 L. Ed. 2d 1171 (1983). The requirement of reliability and accuracy in imposing the death penalty is well-rooted in case law and fundamental to the Supreme Court's capital jurisprudence. *Gregg v. Georgia,* 428 U.S. 153, 194-95, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976).

64

The Ohio Legislature, when it reenacted the death penalty also imposed a duty upon the courts to insure that a death sentence is both the product of reliable procedures and the resulting death sentence is warranted based upon properly admitted evidence. R.C. 2929.05(A). The statute directs the appellate courts to "affirm a sentence of death only if the particular court is persuaded from the record that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors present in the case and that the sentence of death is the appropriate sentence in the case." *Id.* The statute requires this Court to make an independent review of the record and decide for itself, without any deference given to the determinations below, whether it believes that this defendant should be sentenced to death. *State v. Jenkins*, 15 Ohio St.3d 164, 199, 473 N.E.2d 264 (1984); *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984), paragraph 4 of the syllabus.

The record herein merits the independent conclusion by this Court that Appellant's death sentence is inappropriate. It is not the product of a reliable process. Furthermore, Appellant's death sentence is not worthy of confidence.

**A. Appellant's Death Sentence Is Not the Product of a Reliable Process.**

Five procedural issues deprive Appellant's death sentence of sufficient reliability.

1. Ineffective assistance of counsel. Appellant at the initial sentencing hearing was represented by two counsel, one of whom knew nothing about the case and the other who knew little about the sentencing case given his reliance upon counsel who became ill. As a result most of the evidence that they placed before the jury was inaccurate and prejudicial. *See* Proposition of Law No. II, *supra.*

2. The trial judge permitted the prosecution to be involved in the drafting of the sentencing opinions. The court of appeals found that the trial judge had impermissibly involved

65

the prosecution in the drafting of the sentencing opinion and that he was required to draft an entirely *new* opinion. The second sentencing opinion the trial judge filed was almost identical to the first opinion. The prosecution's improper involvement in the drafting process was not cured by the filing of an almost identical opinion. *See* Proposition of Law No. III, *supra.*

3. The trial judge at the resentencing opinion was not impartial. The trial judge resisted all efforts to award the same relief to Appellant that this Court awarded the co-defendant, despite his statements to the contrary. Eventually, Appellant obtained the same relief after five years, but the relief came from the court of appeals and not the trial judge. The trial judge reduced the resentencing into a non-hearing. *See* Proposition of Law No. III, *supra.*

4. The trial judge refused to consider any new evidence at the resentencing. The judge announced at the resentencing that the sentencing opinion was ready to file and he would not consider any new evidence in favor of death. *See* Proposition of Law No. V, *supra.*

5. The trial judge refused to consider Appellant's allocution. Appellant at the resentencing told the trial judge that he: had been of exemplary behavior while incarcerated, 2) completed educational courses, and 3) functioned well in general population. The trial judge refused to consider this evidence. *See* Proposition of Law No. VI, *supra.*

**B. The jury and trial judge considered a duplicative specification.**

Both the jury and trial judge considered a duplicative specification when conducting the weighing. That duplicative specification impermissibly tilted the scales in favor of death. *See* Proposition of Law No. VIII, *supra.*

**C. The jury and trial court considered inaccurate, prejudicial information.**

Due to the ineffective assistance of counsel both the jury and trial judge considered inaccurate information. *See* Proposition of Law No. II, *supra.* The inaccurate information, as

66

seen by the prosecution's closing statement in the mitigation phase, supported a sentence of a death. The accurate information supports a sentence of less than death.

1. _The jury heard that Appellant was smart._ Appellant is of borderline intelligence, just above the line of mental retardation.

2. _The jury heard that Appellant received a valid IQ score of 84._ The test was incorrectly scored. He has consistently scored, other than on the incorrectly scored test, in the low to mid-seventies on recognized IQ tests.

3. _The jury heard that Appellant was raised by a loving mother._ Appellant's mother was a severe alcoholic and as a result Appellant was forced to live with his grandmother.

4. _The jury heard that Appellant was raised in a good neighborhood._ Appellant was raised in a neighborhood marked by violent crime and drug addiction.

5. _The jury heard from some witnesses that Appellant was a good student._ Appellant received bad grades, failed classes, and experienced severe behavioral issues that were the product of the environment in which he was raised.

6. _The jury heard that Appellant was living with his grandmother at the time of the murder._ Appellant, after dropping out of school, had a very severe drug problem that led him to live on the streets, associate with drug dealers, and commit property crimes to support his habit.

**D. The Jury and Trial Judge Heard Incomplete Information About The Co-Defendant And The Manner in Which He Involved Appellant In The Murder.**

Roberts was a reasonably well educated woman who had previously run a plastic surgeon's office in Miami. She and her husband lived a comfortable middle-class lifestyle. They owned the Greyhound Bus franchises in Youngstown and Warren, Ohio. She lured Appellant into a relationship and ultimately the murder by supplying him with clothes, drugs, and money.

67

Appellant, due to his limited intelligence and constant need for money to feed his drug habit, was an easy mark for Appellant.

**E.      Conclusion: Appellant's Death Sentence Is Inappropriate**

Appellant's death sentence is not the product of a constitutionally firm process. Given that infirmity, confidence in Appellant's death sentence is lacking. Accordingly, his death sentence is inappropriate. U.S. Const. amends. VIII and XIV; Ohio Const. art. I, §§ 9 and 16 and R.C. 2929.05.

This Court should vacate his death sentence and remand the matter with the instructions that the trial court impose a sentence of less than death. In the alternative, this Court should vacate his death sentence and remand the case for a new sentencing.

**Proposition of Law No. X**

**A Defendant's Death Sentence Is Invalid When the State Is Unable
to Carry Out His Execution in a Manner that is Consistent with
the Constitution.**

The State of Ohio's lethal-injection execution procedures will subject Appellant to violations of his Eighth Amendment and Article I, Section 9 right to be protected from cruel and unusual punishment and of his Fourteenth Amendment and Article I, Section 2 right to equal protection due to the State of Ohio's unequal application of Ohio Rev. Code 2949.22(A) and (C) and Ohio Department of Rehabilitation and Correction's Policy 01-COM-11. Because the State cannot constitutionally execute Appellant, his death sentence is invalid, and this Court should bar Ohio from attempting to inflict a death sentence on him.

68

## A. Appellant's Execution Will Violate the Eighth Amendment.[18]

During the execution of Reginald Brooks in November 2011, the State deviated repeatedly from core portions of its lethal-injection protocol, despite a court order not to. The State's inability to consistently follow its own rules in administering executions creates an "'objectively intolerable risk of harm' that officials may not ignore." *Baze v. Rees,* 553 U.S. 35, 50, 128 S. Ct. 1520, 170 L. Ed. 2d 420 (2008).

Appellant's Eighth Amendment claims challenge the drugs that the State will use, that those drugs alone create a substantial risk of serious physical pain, as well as "maladministration" claims. Appellant's challenges are also based on the State's inability to constitutionally implement a death sentence under both the death-penalty statute and the written execution policy and protocols. Appellant's Eighth Amendment claims further challenge Ohio Rev. Code 2949.22(A) and the State of Ohio's written execution policy as a whole: Since Appellant is subject to the statute and written policy, he is subject to an objectively intolerable risk of harm.

This harm includes severe physical and mental/psychological pain and suffering, including that the State's execution policy will require repeated applications of the execution drugs. Such an execution will not comport with the dignity of man as required by the Eighth Amendment and Article I, Section 9.

---

[18] Appellant is aware of this Court's decision in *Scott v. Houk,* 127 Ohio St.3d 317, 2010-Ohio-5805, 939 N.E.2d 835, ¶ 4 (Accordingly, until the General Assembly explicitly expands state review of death-penalty cases by creating a methodology for reviewing Ohio's lethal-injection protocol, we must answer the certified question as follows: There is no state postconviction relief or other state-law mode of action to litigate the issue of  whether a specific lethal-injection protocol is constitutional under *Baze v. Rees,* 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420, or under Ohio law."). At least one court has interpreted this Court's opinion was limited to separate causes of action as opposed to existing remedies. *Hill v. Mitchell,* S.D.Ohio No. 1:98-cv-4522013 U.S. Dist. LEXIS 45919 (March 29, 2013), pp. 346-347.

69

1.      **The Eighth Amendment prohibits an objectively intolerable risk of harm.**

"Cruel and unusual" punishments are prohibited by the Eighth Amendment. *See, e.g.,* *Rhodes v. Chapman,* 452 U.S. 337, 345-46, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). These prohibited punishments include those "which, although not physically barbarous, 'involve the unnecessary and wanton infliction of pain,' or are grossly disproportionate to the severity of the crime." *Id.* at 346 (citations omitted). "Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Id.* In drafting the Eighth Amendment, the founders' "primary concern ... was to proscribe 'torture(s)' and other 'barbar(ous)' methods of punishment." *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

The Supreme Court has never held that physical pain is the exclusive consideration under the Eighth Amendment, nor has it distinguished between challenges to the proportionality and the method of capital punishment. To the contrary, the Court has explained that "[a] penalty also must accord with 'the dignity of man,' which is the 'basic concept underlying the Eighth Amendment," *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976) (Joint Opinion). The Court "has interpreted these words ["cruel and unusual"] 'in a flexible and dynamic manner,' and has extended the Amendments reach beyond the barbarous physical punishments at issue in the Court's earliest cases." *Rhodes,* 452 U.S. at 345-46. Instead, the Court's focus is on the possible harm associated with a particular punishment. *See Hope v. Pelzer,* 536 U.S. 730, 738 & n.8, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see also Estelle,* 429 U.S. at 102 (explaining that while the Court's initial applications of the Eighth Amendment focused on whether a punishment was torturous or barbarous, the Court's "more recent cases . . have held that the Amendment proscribes more than physically barbarous punishments"). The Supreme Court reiterated in *Baze* that a prisoner can establish an Eighth Amendment violation based on the risk of future harm when the "conditions presenting the risk" of future harm are

70

"sure or very likely to cause serious illness and needless suffering and give rise to sufficiently imminent dangers." *Baze*, 553 U.S. at 49-50 (internal quotation marks omitted).

### 2. The State of Ohio cannot execute Appellant in a manner consistent with the Eighth Amendment.

There is an objectively intolerable risk of serious harm if 2949.22(A) as the written execution policy is applied to Appellant. Under *Baze*, challenges to each state's execution policy must be assessed on fact-specific basis. The evidence before the Court in *Baze* was that Kentucky had a record of a single execution, with no problems. *Baze*, 553 U.S. at 46. Based on that record, the Court concluded that *Baze* could not demonstrate a substantial risk of maladministration creating a substantial risk of serious harm on that record. The decision was fact specific and did not foreclose other plaintiffs in other states from proving a substantial risk of maladministration or other harms.

Because Appellant's Eighth Amendment claims are fact-specific, additional factual development is essential for proper adjudication of the claims. This factual development will demonstrate that Appellant will be subjected to an objectively intolerable risk of serious harm based on his individual characteristics and/or the State's maladministration of the death-penalty statute and/or the written execution policy.

### B. Appellant's Execution Will Violate the Fourteenth Amendment.

When the Ohio legislature drafted its current execution statute, it included language requiring a lethal-injection execution to "quickly and painlessly cause death." Ohio Rev. Code 2949.22(A) and (C). The law itself, as written, is fair and impartial. Its application has not been. "Though the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their

71

rights, the denial of equal justice is still within the prohibition of the Constitution." *Yick Wo v. Hopkins,* 118 U.S. 356, 373-74, 6 S. Ct. 1064, 30 L. Ed. 2d 220 (1886). Evidence developed in other lethal injection litigation demonstrates that executions under Ohio law do not afford equal protection of the mandate that the execution be "quick and painless." Executions in Ohio are not always quick or painless. The State's repeated inability to follow its own protocols contributed to the length of these executions. The State of Ohio's attempted execution of Romell Broom was not "painless.'

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr. Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985) (internal quotation marks omitted). "To establish a claim for relief under the Equal Protection Clause, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Club Italia Soccer & Sports Org. v. Shelby,* 470 F.3d. 286, 298 (6th Cir. 2006) (citations omitted), *overruled on other grounds by Davis v. Prison Health Servs.*, 679 F.3d 433, 440-41 (6th Cir. 2012).

### 1. Appellant satisfies the first prong of the equal protection analysis.

Appellant meets the first of the two-part inquiry: he is similarly situated with the other condemned inmates subject to Ohio Rev. Code 2949.22(A) and execution by the State. *See Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000) (explaining that in assessing the "similarly situated" inquiry, "courts should not demand exact correlation, but should instead seek relevant similarity").

72

**2. Appellant satisfies the second prong of the equal protection analysis, pursuant to the strict scrutiny standard.**

The State's failure to strictly comply with 2949.22(A) and its written execution policy treats each condemned inmate differently and burdens their fundamental rights, under the First, Eighth, Ninth, and Fourteenth Amendments, of the class of inmates who are under a death sentence in Ohio—including Appellant.

When an equal-protection claim implicates a burden on the fundamental rights of a class of persons, the state action involved is subjected to strict scrutiny. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312, 96 S. Ct. 2562, 49 L. Ed. 2d 520 (1976) (strict scrutiny is the standard of review where a state practice interferes with a fundamental right or discriminates against a suspect class of individuals); *Mixon v. Ohio*, 193 F.3d 389, 402 (6th Cir. 1999). Under strict scrutiny, state action will be presumptively unconstitutional, and must be enjoined if the subject state action is not necessary to achieve a compelling state interest. *See City of Cleburne*, 473 U.S. at 440. The class of persons need not be a "suspect classification" for strict scrutiny to apply, so long as the fundamental rights of a class of persons is infringed. *See Miller v. City of Cincinnati*, 622 F.3d 524, 539 (6th Cir. 2010) (identifying a class of persons, finding that the class was not a suspect class, and explaining that, therefore, "strict scrutiny is appropriate only if the classification infringes on fundamental rights"). Burdening a fundamental right is sufficient to invoke the equal-protection guarantee. *See League of Women Voters v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008).

Fundamental rights are those explicitly or implicitly derived from the Constitution itself. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-34, 93. S. Ct. 1278, 36 L. Ed. 2d 16 (1973). This includes the Eighth Amendment's explicit proscription on cruel and unusual punishment. *See Baze*, 553 U.S. at 61 ("State efforts to implement capital punishment must

73

certainly comply with the Eighth Amendment. . . ."). The Supreme Court has concluded that the procedural safeguards contained in a state's execution policy—as written and as applied, are the critical bulwark to ensure against an Eighth Amendment violation during an execution. *Baze*, 553 U.S. at 56. Applying these principles, it follows that if a state does not actually abide by its own death-penalty statute and written execution policy, those critical safeguards are a nullity. *See Dickens v. Brewer*, 631 F.3d 1139, 1146 (9th Cir. 2011). This, in turn, implicates the fundamental rights of inmates condemned to death in Ohio, including Appellant. Here, 2949.22(A) as administered through the State's written execution policy expressly codifies a burden on the inmate's free-speech rights by vesting in the Warden discretion to cut off the inmate's last words based on the Warden's subjective interpretation of those words.

The State bears the burden under strict scrutiny to demonstrate that its reasons for deviations from 2949.22(A) and the written execution policy are vital or compelling. *See Citizens United v. FEC*, 130 S. Ct. 876, 898, 558 U.S. 310, 175 L. Ed. 2d 753 (2010) (strict scrutiny review requires the government to prove that a burden on a fundamental right furthers a compelling government interest and is narrowly tailored to achieve that interest). The State likewise bears the burden to demonstrate that the State's non-compliance is necessary or the least restrictive means to achieve a purportedly compelling state interest. The State also bears the burden to prove that the State's discretionary application of 2949.22(A) and the written policy to limit an inmate's free speech is necessary or the least restrictive means to achieve a compelling state interest. The Warden is unable to meet any of these burdens.

### 3. Appellant satisfies the second prong of the equal protection analysis pursuant to the class of one test.

Appellant can also prevail on his equal protection claims under the "class-of-one" theory. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060

74

(2000)(per curiam); *In re Ohio Execution Protocol Litig.*, 840 F.Supp.2d 1044, 1054-59 (S.D. Ohio 2012). Under this theory, the challenged statute does not receive heightened judicial scrutiny, but is subject instead to the general "rational basis" test. *Olech*, 528 U.S. at 564; *see also Engquist v. Or. Dep't of Agriculture*, 553 U.S. 591, 601, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008).

The State's noncompliance with 2949.22(A) and the written execution policy arbitrarily or intentionally treats each condemned inmate differently and that such disparate treatment is not rationally related to a legitimate state interest. *See Cooey v. Kasich,* 801 F.Supp. 2d 623, 653-54 (S.D. Ohio 2012); *see also Romer v. Evans*, 517 U.S. 620, 631-32, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996) (striking down state statute on an equal protection theory by finding that the statute "fails, indeed defies, even" rational-basis review, because "it lacks a rational relationship to legitimate state interests"). The class-of-one theory of equal protection "presupposes that like individuals should be treated alike, and that to treat them differently is to classify them in a way that must survive at least rationality review." *Engquist*, 553 U.S. at 605. "What seems to have been significant in *Olech* and the cases on which it relied was the existence of a clear standard against which departures, even for a single plaintiff, could be readily assessed." *Id.* at 602. In *Olech*, There was no indication" that the governmental agency "was exercising discretionary authority based on subjective, individualized determinations." *Engquist*, 553 U.S. at 602-03.

As in *Olech*, there exists here a clear standard against which the State of Ohio's deviations can be readily assessed, namely 2949.22(A)'s commands and the provisions of the written execution policy. Additional factual development will further demonstrate that the State's actions deviating from 2949.22(A) and the written execution policy are not based on any subjective,

75

individualized concerns about the condemned inmate, but rather on interests of administrative convenience.

When the State's actions are "unrelated to the achievement of any combination of legitimate purposes," the Court "can only conclude that the [State's] actions were irrational." *Bower v. Mt. Sterling,* 44 Appx. 670, 677-78 (6th Cir. 2002) (quoting *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 84, 120 S. Ct. 631, 145 L. Ed. 2d 522 (2000)). Thus, "an equal protection violation will be made out" if the State's pattern and on-going history of non-compliance with 2949.22(A) and the written execution policy is shown to be "irrational," or unrelated to any conceivable legitimate state interest. *See Trihealth, Inc. v. Bd. of Comm'rs,* 430 F.3d 783, 791 (6th Cir. 2005).

Here, Appellant is similarly situated with other condemned inmates subject to the State's death-penalty statute and written execution policy. The State has a pattern and practice of non-compliance with 2949.22(A) and the written execution policy, which are irrational. The State's pattern and on-going history of non-compliance with 2949.22(A) and the written execution policy are irrational in several ways:

- Ohio's non-compliance is irrational because it is clearly contrary to law. The State's non-compliance with § 2949.22(A) is by definition, contrary to law. Any rational basis the state may claim for its actions therefore is negated because the relevant state actors "acted in a manner clearly contrary to law." *Club Italia Soccer,* 470 F.3d at 298; *See also Bower,* 44 App'x at 678.

- The State's actions are irrational because any of its deviations from the statute and governing policy are based on illusory differences between condemned inmates, and because any purported differences between inmates are not actually the basis for the deviations. *See, e.g., Rinaldi v. Yeager,* 384 U.S. 305, 308-09, 86 S. Ct. 1497, 16 L. Ed. 2d 577 (1966). Governmental action that disparately treats similarly situated individuals must be rationally founded on differences that are real and not illusory. *See Id.* Conversely, "[d]isparate treatment of similarly situated persons who are

76

dissimilar only in immaterial respects is not rational." *Trihealth, Inc.,* 430 F.3d at 790.

- The State's actions are also irrational because they are arbitrary and capricious. *See Reynolds v. Sims,* 377 U.S. 533, 557, 84 S. Ct. 1362, 12 L. Ed. 2d 506 (1964) (a court can find an equal-protection violation when the facts show that state action is "simply arbitrary and capricious action" rather than a state's policy); *see also Reed v. Reed,* 404 U.S. 71, 76, 92 S. Ct. 251, 30 L. Ed. 2d 225 (1971) (a State's actions "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the [state action], so that all persons similarly circumstanced shall be treated alike" (internal quotation marks omitted)). The State's non-compliant actions are wholly unrelated to the achievement of any legitimate state purpose, and are, therefore, irrational. *See Trihealth,* 430 F.3d at 788.

Not only are the State's deviations irrational, but the State has no legitimate state interest in failing to comply with the law. The State has previously advanced interests to justify its non-compliance that are arbitrary or only for administrative convenience. A state's disparate treatment of similarly situated individuals "cannot be justified on the ground of administrative convenience." *Rinaldi,* 384 U.S. at 310; *See also Frazier v. Manson,* 703 F.2d 30, 35 (2d Cir. 1983) ("The constitutional imperatives of the Equal Protection Clause cannot be satisfied by mere conjecture as to administrative inconvenience."). Accordingly, as a matter of law, the State's failures to follow the applicable law cannot be rationalized on the basis of administrative convenience.

## C. Conclusion

For the reasons identified herein, the Execution of Appellant Will Violate the Eighth and Fourteenth Amendments. The Court should vacate Appellant's death sentence and remand the case with the instructions that the trial court impose a sentence of less than death. In the alternative, this Court should remand the case with instructions to enter a sentence of less than death.

77

## Proposition of Law No. XI

**Ohio's Death Penalty Law Is Unconstitutional. R.C. 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, and 2929.05 Do Not Meet The Prescribed Constitutional Requirements And Are Unconstitutional On Their Face And As Applied To Appellant. U.S. Const. Amends. V, VI, VIII, And XIV; Ohio Const. Art. I, §§ 2, 9, 10, And 16.  Further, Ohio's Death Penalty Statute Violates The United States' Obligations Under International Law. [19]**

The Eighth Amendment to the Constitution and Article I, § 9 of the Ohio Constitution prohibit the infliction of cruel and unusual punishment. The Eighth Amendment's protections are applicable to the states through the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1962). Punishment that is "excessive" constitutes cruel and unusual punishment. *Coker v. Georgia*, 433 U.S. 584, 97 S. Ct. 2861, 53 L. Ed. 2d 982 (1977). The underlying principle of governmental respect for human dignity is the Court's guideline to determine whether this statute is constitutional. *See Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972) (Brennan, J., concurring); *Rhodes v. Chapman*, 452 U.S. 337, 361, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981); *Trop v. Dulles*, 356 U.S. 86, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958). The Ohio scheme offends this bedrock principle in the following ways:

### A.   Arbitrary and unequal punishment

The Fourteenth Amendment's guarantee of equal protection requires similar treatment of similarly situated persons. This right extends to the protection against cruel and unusual punishment. *Furman*, 408 U.S. at 249 (Douglas, J., concurring).  A death penalty imposed in violation of the Equal Protection guarantee is a cruel and unusual punishment.  *See Id.* Any arbitrary use of the death penalty also offends the Eighth Amendment.  *Id.*

---

[19] In *State v. Jenkins*, 15 Ohio St.3d 164, 473 N.E.2d 264 (1984), paragraph one of the syllabus, this Court upheld this death penalty statute and this Court may, therefore, reject this claim on its merits if it disagrees with Appellant's federal constitutional arguments. *State v. Poindexter*, 36 Ohio St.3d 1, 520 N.E.2d 568 (1988), syllabus.

78

Ohio's capital punishment scheme allows the death penalty to be imposed in an arbitrary and discriminatory manner in violation of *Furman* and its progeny. Prosecutors' virtually uncontrolled indictment discretion allows arbitrary and discriminatory imposition of the death penalty. Mandatory death penalty statutes were deemed fatally flawed because they lacked standards for imposition of a death sentence and were therefore removed from judicial review. *Woodson v. North Carolina*, 428 U.S. 280, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976). Prosecutors' uncontrolled discretion violates this requirement.

Due process prohibits the taking of life unless the state can show a legitimate and compelling state interest. *Commonwealth v. O'Neal*, 339 N.E.2d 676, 678 (Mass. 1975) (Tauro, C.J., concurring); *State v. Pierre*, 572 P.2d 1338 (Utah 1977) (Maughan, J., concurring and dissenting). Moreover, where fundamental rights are involved personal liberties cannot be broadly stifled "when the end can be more narrowly achieved." *Shelton v. Tucker*, 364 U.S. 479, 488, 81 S. Ct. 247, 5 L. Ed. 2d 231 (1960). To take a life by mandate, the State must show that it is the "least restrictive means" to a "compelling governmental end." *O'Neal II*, 339 N.E.2d at 678.

The death penalty is neither the least restrictive nor an effective means of deterrence. Both isolation of the offender and retribution can be effectively served by less restrictive means. Society's interests do not justify the death penalty.

**B.      Unreliable sentencing procedures**

The Due Process and Equal Protection Clauses prohibit arbitrary and capricious procedures in the State's application of capital punishment. *Gregg v. Georgia*, 428 U.S. 153, 188, 193-95, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976); *Furman*, 408 U.S. at 255, 274. Ohio's scheme does not

79

meet those requirements. The statute does not require the State to prove the absence of any mitigating factors or that death is the only appropriate penalty.

The statutory scheme is unconstitutionally vague, which leads to the arbitrary imposition of the death penalty. The language "that the aggravating circumstances ... outweigh the mitigating factors" invites arbitrary and capricious jury decisions. "Outweigh" preserves reliance on the lesser standard of proof by a preponderance of the evidence. The statute requires only that the sentencing body be convinced beyond a reasonable doubt that the aggravating circumstances were marginally greater than the mitigating factors. This creates an unacceptable risk of arbitrary or capricious sentencing.

Additionally, the mitigating circumstances are vague. The jury must be given "specific and detailed guidance" and be provided with "clear and objective standards" for their sentencing discretion to be adequately channeled. *Gregg*; *Godfrey v. Georgia*, 446 U.S. 420, 100 S. Ct. 1759, 64 L. Ed. 2d 398 (1980).

Ohio courts continually hold that the weighing process and the weight to be assigned to a given factor are within the individual decision-maker's discretion. *State v. Fox*, 69 Ohio St.3d 183, 193, 631 N.E.2d 124, 132 (1994). Giving so much discretion to juries inevitably leads to arbitrary and capricious judgments. The Ohio open discretion scheme further risks that constitutionally relevant mitigating factors that must be considered as mitigating [youth or childhood abuse (*Eddings v. Oklahoma*, 455 U.S. 104, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982), mental disease or defect (*Penry v. Lynaugh*, 492 U.S. 302, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989) *rev'd on other grounds Penry v. Johnson*, 532 U.S. 782, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001)), level of involvement in the crime (*Enmund v. Florida*, 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed. 2d 1140 (1982)), or lack of criminal history (*Delo v. Lashley*, 507 U.S. 272, 113 S. Ct.

80

1222, 122 L. Ed. 2d 620 (1993))] will not be factored into the sentencer's decision. While the federal constitution may allow states to shape consideration of mitigation, *see Johnson v. Texas*, 509 U.S. 350, 113 S. Ct. 2658, 125 L. Ed. 2d 290 (1993), Ohio's capital scheme fails to provide adequate guidelines to sentencers, and fails to assure against arbitrary, capricious, and discriminatory results.

Empirical evidence is developing in Ohio and around the country that, under commonly used penalty phase jury instructions, juries do not understand their responsibilities and apply inaccurate standards for decision. *See* Cho, Capital Confusion: The Effect of Jury Instructions on the Decision To Impose Death, 85 J. Crim. L. & Criminology 532, 549-557 (1994), and findings of Zeisel discussed in *Free v. Peters*, 12 F.3d 700 (7th Cir. 1993). This confusion violates the federal and state constitutions. Because of these deficiencies, Ohio's statutory scheme does not meet the requirements of *Furman* and its progeny.

## C.   Defendant's right to a jury is burdened

The Ohio scheme is unconstitutional because it imposes an impermissible risk of death on capital defendants who choose to exercise their right to a jury trial. A defendant who pleads guilty or no contest benefits from a trial judge's discretion to dismiss the specifications "in the interest of justice." Crim.R. 11(C)(3). Accordingly, the capital indictment may be dismissed regardless of mitigating circumstances. There is no corresponding provision for a capital defendant who elects to proceed to trial before a jury.

Justice Blackmun found this discrepancy to be constitutional error. *Lockett v. Ohio*, 438 U.S. 586, 617, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978) (Blackmun, J., concurring). This disparity violated *United States v. Jackson*, 390 U.S. 570, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968), and

81

needlessly burdened the defendant's exercise of his right to a trial by jury. Since *Lockett*, this infirmity has not been cured and Ohio's statute remains unconstitutional.

**D.      Mandatory submission of reports and evaluations**

Ohio's capital statutes are unconstitutional because they require submission of the pre-sentence investigation report and the mental evaluation to the jury or judge once requested by a capital defendant. R.C. 2929.03(D)(1). This mandatory submission prevents defense counsel from giving effective assistance and prevents the defendant from effectively presenting his case in mitigation.

**E.      R.C. 2929.03(D)(1) and 2929.04 are unconstitutionally vague.**

R.C. 2929.03(D)(1)'s reference to "the nature and circumstances of the aggravating circumstance" incorporates the nature and circumstances of the offense into the factors to be weighed in favor of death.  The nature and circumstances of an offense are, however, statutory mitigating factors under R.C. 2929.04(B). R.C. 2929.03(D)(1) makes Ohio's death penalty weighing scheme unconstitutionally vague because it gives the sentencer unfettered discretion to weigh a statutory mitigating factor as an aggravator.

To avoid arbitrariness in capital sentencing, states must limit and channel the sentencer's discretion with clear and specific guidance. *Lewis v. Jeffers*, 497 U.S. 764, 774, 110 S. Ct. 3092, 11 L. Ed. 2d 606 (1990); *Maynard v. Cartwright*, 486 U.S. 356, 362, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988).  A vague aggravating circumstance fails to give that guidance. *Walton v. Arizona*, 497 U.S. 639, 653, 110 S. Ct. 3047, 111 L. Ed. 2d 511 (1990), *vacated on other grounds Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002); *Godfrey*, 446 U.S. at 428. Moreover, a vague aggravating circumstance is unconstitutional whether it is an eligibility or a

82

selection factor. *Tuilaepa v. California*, 512 U.S. 967, 114 S. Ct. 2630, 129 L. Ed. 2d 750 (1994). The aggravating circumstances in R.C. 2929.04(A)(1)-(10) are both.

**F.      Proportionality and appropriateness review**

R.C. 2929.021 and 2929.03 require data be reported to the courts of appeals and to the Ohio Supreme Court. There are substantial doubts as to the adequacy of the information received after guilty pleas to lesser offenses or after charge reductions at trial. R.C. 2929.021 requires only minimal information on these cases. Additional data is necessary to make an adequate comparison in these cases. This prohibits adequate appellate review.

Adequate appellate review is a precondition to the constitutionality of a state death penalty system. *Zant v. Stephens*, 462 U.S. 862, 879, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1983); *Pulley v. Harris*, 465 U.S. 37, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984). The standard for review is one of careful scrutiny. *Zant*, 462 U.S. at 884-85. Review must be based on a comparison of similar cases and ultimately must focus on the character of the individual and the circumstances of the crime. *Id.*

Ohio's statutes' failure to require the jury or three-judge panel recommending life imprisonment to identify the mitigating factors undercuts adequate appellate review. Without this information, no significant comparison of cases is possible. Absent a significant comparison of cases, there can be no meaningful appellate review. *See State v. Murphy*, 91 Ohio St.3d 516, 562, 747 N.E.2d 765, 813 (2001) (Pfeifer, J., dissenting) ("When we compare a case in which the death penalty was imposed only to other cases in which the death penalty was imposed, we continually lower the bar of proportionality. The lowest common denominator becomes the standard.")

83

The comparison method is also constitutionally flawed.  Review of cases where the death penalty was imposed satisfies the proportionality review required by R.C. 2929.05(A).  *State v. Steffen*, 31 Ohio St.3d 111, 509 N.E.2d 383 (1987), syllabus 1 .  However, this prevents a fair proportionality review. There is no meaningful manner to distinguish capital defendants who deserve the death penalty from those who do not.

This Court's appropriateness analysis is also constitutionally infirm. R.C. 2929.05(A) requires appellate courts to determine the appropriateness of the death penalty in each case.  The statute directs affirmance only where the court is persuaded that the aggravating circumstances outweigh the mitigating factors and that death is the appropriate sentence. *Id.* This Court has not followed these dictates. The appropriateness review conducted is very cursory. It does not "rationally distinguish between those individuals for whom death is an appropriate sanction and those for whom it is not." *Spaziano v. Florida*, 468 U.S. 447, 460, 104 S. Ct. 3154, 82 L. Ed. 2d 340 (1984).

The cursory appropriateness review also violates the capital defendant's due process rights as guaranteed by the Fifth and Fourteenth Amendments to the Constitution. The General Assembly provided capital appellants with the statutory right of proportionality review.  When a state acts with significant discretion, it must act in accordance with the Due Process Clause. *Evitts v. Lucey*, 469 U.S. 387, 401, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985).  The review currently used violates this constitutional mandate. An insufficient proportionality review violates Appellant's due process and liberty interest in R.C. 2929.05.

84

G.     **Ohio's statutory death penalty scheme violates international law.**

International law binds each of the states that comprise the United States.  Ohio is bound by international law whether found in treaty or in custom.  Because the Ohio death penalty scheme violates international law, Appellant's capital conviction and sentence cannot stand.

1.     **International law binds Ohio.**

"International law is a part of our law[.]"  *The Paquete Habana*, 175 U.S. 677, 700 20 S. Ct. 290, 44 L. Ed. 320 (1900).  A treaty made by the United States is the supreme law of the land.  Article VI, United States Constitution.  Where state law conflicts with international law, it is the state law that must yield.  *See Zschernig v. Miller*, 389 U.S. 429, 440, 88 S. Ct. 664, 19 L. Ed. 2d 683 (1968).  In fact, international law creates remediable rights for United States citizens. *Filartiga v. Pena-Irala*, 630 F.2d 876 (2d Cir. 1980);  *Forti v. Suarez-Mason*, 672 F.Supp. 1531 (N.D. Cal. 1987).

2.     **Ohio's obligations under international charters, treaties, and conventions**

The United States' membership and participation in the United Nations (U.N.) and the Organization of American States (OAS) creates obligations in all fifty states.  Through the U.N. Charter, the United States committed itself to promote and encourage respect for human rights and fundamental freedoms.  Art. 1(3).  The United States bound itself to promote human rights in cooperation with the U.N.  Art. 55-56.  The United States again proclaimed the fundamental rights of the individual when it became a member of the OAS.  OAS Charter, Art. 3.

The U.N. has sought to achieve its goal of promoting human rights and fundamental freedoms through the creation of numerous treaties and conventions.  The United States has ratified several of these including:  the International Covenant on Civil and Political Rights (ICCPR) ratified in 1992, the International Convention on the Elimination of All Forms of Racial

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7762

Discrimination (ICERD) ratified in 1994, and the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT) ratified in 1994.   Ratification of these treaties by the United States expressed its willingness to be bound by these treaties.  Pursuant to the Supremacy Clause, the ICCPR, the ICERD, and the CAT are the supreme laws of the land.

Ohio is not fulfilling the United States' obligations under these conventions.  Rather, Ohio's death penalty scheme violates each convention's requirements and thus must yield to the requirements of international law.  (*See* discussion *infra* Subsection 1).

a.      **Ohio's statutory scheme violates the ICCPR's and ICERD's guarantees of equal protection and due process.**

Both the ICCPR, ratified in 1992, and the ICERD, ratified in 1994, guarantee equal protection of the law.   ICCPR Art. 2(1), 3, 14, 26; ICERD Art. 5(a). The ICCPR further guarantees due process via Articles 9 and 14, which includes numerous considerations:  a fair hearing (Art. 14(1)), an independent and impartial tribunal (Art. 14(1)), the presumption of innocence (Art. 14(2)), adequate time and facilities for the preparation of a defense (Art. 14(3)(a)), legal assistance (Art. 14(3)(d)), the opportunity to call and question witnesses (Art. 14(3)(e)), the protection against self-incrimination (Art. 14(3)(g)), and the protection against double jeopardy (Art. 14(7)). However, Ohio's statutory scheme fails to provide equal protection and due process to capital defendants as contemplated by the ICCPR and the ICERD.

b.      **Ohio's statutory scheme violates the ICCPR's protection against arbitrary execution.**

The ICCPR speaks explicitly to the use of the death penalty.  The ICCPR guarantees the right to life and provides that there shall be no arbitrary deprivation of life.  Art. 6(1).  It allows the imposition of the death penalty only for the most serious offenses.  Art. 6(2).  Juveniles and

86

pregnant women are protected from the death penalty. Art. 6(5). Moreover, the ICCPR contemplates the abolition of the death penalty.  Art. 6(6).

However, several aspects of Ohio's statutory scheme allow for the arbitrary deprivation of life. *See infra* Sections a–f.

    c.    **Ohio's statutory scheme violates the ICERD's protections against race discrimination.**

The ICERD, speaking to racial discrimination, requires that each state take affirmative steps to end race discrimination at all levels. Art. 2.  It requires specific action and does not allow states to sit idly by when confronted with practices that are racially discriminatory.  However, Ohio's statutory scheme imposes the death penalty in a racially discriminatory manner.  (*See infra* Section A).  A scheme that sentences blacks and those who kill white victims more frequently and which disproportionately places African-Americans on death row is in clear violation of the ICERD.  Ohio's failure to rectify this discrimination is a direct violation of international law and of the Supremacy Clause of the United States Constitution.

    d.    **Ohio's statutory scheme violates the ICCPR'S and the CAT'S prohibitions against cruel, inhuman or degrading punishment.**

The ICCPR prohibits subjecting any person to torture or to cruel, inhuman, or degrading treatment or punishment.  Art. 7.  Similarly, the CAT requires that states take action to prevent torture, which includes any act by which severe mental or physical pain is intentionally inflicted on a person for the purpose of punishing him for an act committed. *See* Art. 1-2.  As administered, Ohio's death penalty inflicts unnecessary pain and suffering. Thus, there is a violation of international law and the Supremacy Clause.

87

e.   **Ohio's obligations under the ICCPR, the ICERD, and the CAT are not limited by the reservations and conditions placed in these conventions by the Senate.**

While conditions, reservations, and understandings accompanied the United States' ratification of the ICCPR, the ICERD, and the CAT, those conditions, reservations, and understandings cannot stand for two reasons. Article II, § 2 of the United States Constitution provides for the advice and consent of two-thirds of the Senate when a treaty is adopted. However, the Constitution makes no provision for the Senate to modify, condition, or make reservations to treaties. The Senate is not given the power to determine what aspects of a treaty the United States will and will not follow. Their role is to simply advise and consent.

Thus, the Senate's inclusion of conditions and reservations in treaties goes beyond that role of advice and consent. The Senate picks and chooses which items of a treaty will bind the United States and which will not. This is the equivalent of the line item veto, which is unconstitutional. *Clinton v. City of New York*, 524 U.S. 417, 438, 118 S. Ct. 2091, 141 L. Ed. 2d 393 (1998). The Supreme Court specifically spoke to the enumeration of the president's powers in the Constitution in finding that the president did not possess the power to issue line item vetoes. *Id.* If it is not listed, then the President lacks the power to do it. *See id.* Similarly, the Constitution does not give the power to the Senate to make conditions and reservations, picking and choosing what aspects of a treaty will become law. Thus the Senate lacks the power to do just that. Therefore, any conditions or reservations made by the Senate are unconstitutional. *See id.*

The Vienna Convention on the Law of Treaties further restricts the Senate's imposition of reservations. It allows reservations unless: they are prohibited by the treaty, the treaty provides that only specified reservations, not including the reservation in question, may be made, or the

88

reservation is incompatible with the object and purpose of the treaty.  Art. 19(a)-(c).  The ICCPR specifically precludes derogation of Articles 6-8, 11, 15-16, and 18.  Under the Vienna Convention, the United States' reservations to these articles are invalid under the language of the treaty.  *See id.*  Further, the ICCPR's purpose is to protect the right to life and any reservation inconsistent with that purpose violates the Vienna Convention.  Thus, United States reservations cannot stand under the Vienna Convention as well.

### f.   Ohio's obligations under the ICCPR are not limited by the Senate's declaration that it is not self-executing.

The Senate indicated that the ICCPR is not self-executing.  However, the question of whether a treaty is self-executing is left to the judiciary.  *Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370 (7th Cir. 1985) (Restatement (Second) of Foreign Relations Law of the United States, Sec. 154(1) (1965)).  It is the function of the courts to say what the law is.  *See Marbury v. Madison*, 5 U.S. 137, 2 L. Ed. 60 (1803).

Further, requiring the passage of legislation to implement a treaty necessarily implicates the participation of the House of Representatives.  By requiring legislation to implement a treaty, the House can effectively veto a treaty by refusing to pass the necessary legislation.  However, Article 2, § 2 excludes the House of Representatives from the treaty process.  Therefore, declaring a treaty to be not self-executing gives power to the House of Representatives not contemplated by the United States Constitution.  Thus, any declaration that a treaty is not self-executing is unconstitutional.  *See Clinton*, 524 U.S. at 438.

### 3.   Ohio's obligations under customary international law

International law is not merely discerned in treaties, conventions and covenants. International law "may be ascertained by consulting the works of jurists, writing professedly on public law; or by the general usage and practice of nations; or by judicial decision recognizing

and enforcing that law." *United States v. Smith*, 18 U.S. (5 Wheat.) 153, 160-61, 5 L. Ed. 57 (1820). Regardless of the source "international law is a part of our law[.]" *The Paquete Habana*, 75 U.S. at 700.

The judiciary and commentators recognize the Universal Declaration of Human Rights (DHR) as binding international law. The DHR "no longer fits into the dichotomy of 'binding treaty' against 'non-binding pronouncement,' but is rather an authoritative statement of the international community." *Filartiga*, 630 F.2d at 883 (internal citations omitted).

The DHR guarantees equal protection and due process (Art. 1, 2, 7, 11), recognizes the right to life (Art. 3), prohibits the use of torture or cruel, inhuman or degrading punishment (Art. 5) and is largely reminiscent of the ICCPR. Each of the guarantees found in the DHR are violated by Ohio's statutory scheme. Thus, Ohio's statutory scheme violates customary international law as codified in the DHR and cannot stand.

However, the DHR is not alone in its codification of customary international law. *Smith* directs courts to look to "the works of jurists, writing professedly on public law; or by the general usage and practice of nations; or by judicial decision recognizing and enforcing that law" in ascertaining international law. 18 U.S. (5 Wheat.) at 160-61. Ohio should be cognizant of the fact that its statutory scheme violates numerous declarations and conventions drafted and adopted by the United Nations and the OAS, which may, because of the sheer number of countries that subscribe to them, codify customary international law. *See id.*

Ohio's statutory scheme is in violation of customary international law.

**H.      Conclusion**

Ohio's death penalty scheme fails to ensure that arbitrary and discriminatory imposition of the death penalty will not occur. The procedures actually promote the imposition of the death

90

penalty and, thus, are constitutionally intolerable.  R.C. 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, and 2929.05 violate the Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution and Article I, §§ 2, 9, 10, and 16 of the Ohio Constitution and international law.  This Court should vacate Appellant's death sentence and remand this matter with instruction to the trial court to impose a sentence of less than death.

### Proposition of Law No. XII

**A Conviction Will Be Reversed When The Cumulative Effect Of The Errors Deprives A Defendant Of The Constitutional Right To A Fair Trial.**

The errors raised herein, standing alone, are sufficient to warrant a reversal. The cumulative impact of these errors also rendered Appellant's trial fundamentally unfair. See *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983); Sixth, Eighth and Fourteenth Amendments to the United States Constitution; Article I, Sections 9, 10 and 16 of the Ohio Constitution

When a court conducts a cumulative error analysis it must step back and look at the case in its entirety. It must look at the forest instead of the individual trees. From that perspective this Court must ask itself if justice was done in this case and the result is reliable. The answer to that question in this case is an emphatic "no."

Two attorneys, Consoldane and Lewis initially represented Appellant. It was agreed between the two attorneys that Attorney Lewis present the mitigation evidence and the case for a sentence of less than death. However, Attorney Lewis became ill just prior to the start of the mitigation phase. The trial court, on the day sentencing phase commenced, substituted Attorney Wright, who knew nothing about the case, for Attorney Lewis. Attorney Consoldane stated on the record that because he had relied upon Attorney Lewis to make the mitigation presentation, he had insufficient time to "get up to speed."

91

It was learned post-trial that the judge impermissibly involved the prosecution in the drafting of the sentencing opinion. It took Appellant four years from the date of the filing of his motion for a new sentencing hearing to obtain a reversal of his death sentence because of the improper drafting of the sentencing opinion and a new sentencing hearing.

However, the trial judge so limited the resentencing hearing that it in effect became a non-hearing. The trial court refused to appoint counsel. He ruled that he would not consider any new evidence. At the conclusion of the hearing, he filed a sentencing opinion that was almost an identical copy of the opinion in which the appellate court had found that the prosecution was impermissibly involved in its drafting.

This Court has recognized that cumulative error can be a basis for granting relief. *State v. DeMarco,* 31 Ohio St.3d 191, 196, 509 N.E.2d 1256 (1987). This decision is consistent with United States Supreme Court precedent supporting a cumulative review to determine a trial's fundamental fairness. *See Taylor v. Kentucky,* 436 U.S. 478, 487-88 & n. 15, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978)(deciding cumulative effect of error violated due process); and *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974) (consideration of prosecutorial misconduct in context of entire trial). An appellate court "must reverse any conviction obtained in a proceeding in which the cumulative impact of irregularities is so prejudicial to a defendant that he is deprived of his fundamental right to a fair trial. Fourteenth Amendment, United States Constitution." *State v. Wilson,* 787 P.2d 821, 821 (N.M.1990); *United States v. Wallace,* 848 F.2d 1464, 1475 (9th Cir. 1988). That is what occurred in these proceedings, the cumulative impact of the irregularities was so prejudicial to Appellant that he was deprived of his fundamental right to a fair trial.

92

This Court should vacate Appellant's sentences and remand the matter for resentencing pursuant to this Court's findings.

### Conclusion

For all of the reasons set forth herein and any other reasons that are apparent on the face of the record, this Court should vacate all of Appellant's sentences and remand the matter for re-sentencing.

Respectfully submitted,

Office of the
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender
250 E. Broad Street - Suite 1400
Columbus, Ohio 43215-9308
(614) 466-5394 (Telephone)
(614) 644-0708 (Facsimile)
Randall.Porter@opd.ohio.gov

And

DENNIS L. SIPE – 0006199
Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

By _____
Randall L. Porter

Counsel for Nathaniel Jackson

93

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing **Appellant Nathaniel Jackson's Merit Brief and Appendix to Appellant Nathaniel Jackson Merit Brief** was forwarded by regular U.S. Mail to Luwayne Annos and Charles Morrow, Assistant Prosecuting Attorneys, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio  44481 on this the 22nd day of July, 2013.

RANDALL PORTER - 0005835
Assistant State Public Defender

Counsel For Nathaniel Jackson

397276

94

## In The Supreme Court of Ohio

| | | |
|---|---|---|
| State of Ohio, | : | |
| Appellee, | : | Case No. 12-1644 |
| -vs- | : | Appeal taken from Trumbull County Court of Common Pleas |
| Nathaniel Jackson, | : | Case No. CR 01-CR-794 |
| Appellant. | : | This is a death penalty case |

---

## APPENDIX TO APPELLANT NATHANIEL JACKSON'S MERIT BRIEF

---

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney
psannos@co.trumbull.oh.us

CHARLES MORROW - 0040575
Assistant Prosecuting Attorney

Trumbull County Prosecutor's Office
160 High Street, N.W
4th Floor Administration Building
Warren, Ohio 44481
(330) 675-2426 (Voice)
(330) 675-2431 (Facsimile)

OFFICE OF THE
OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Counsel of Record

250 E. Broad Street - Suite 1400
Columbus, Ohio  43215
(614) 466-5394 (Voice)
(614) 644-0708 (Facsimile)
Randall.Porter@opd.ohio.gov

and

DENNIS L. SIPE - 0006199
Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

COUNSEL FOR APPELLEE

COUNSEL FOR APPELLANT

### In The Supreme Court of Ohio

State of Ohio,                        :

       Appellee,          :   Case No. **12-1644**

-vs-                                  :   Appeal taken from Trumbull
                      County Court of Common Pleas
Nathaniel Jackson,                    :   Case No. CR 01-CR-794

       Appellant.         :   This is a death penalty case

---

## NOTICE OF APPEAL OF APPELLANT NATHANIEL JACKSON

---

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney


Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor Administration Building
Warren, Ohio 44481
(330) 675-2426 (Voice)
(330) 675-2431 (Facsimile)
psannos@co.trumbull.oh.us

OFFICE OF THE
OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Counsel of Record

250 E. Broad Street - Suite 1400
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0708 (Facsimile)
Randall.Porter@OPD.ohio.gov

And

DENNIS L. SIPE - 0006199

Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com



FILED

SEP 26 2012

CLERK OF COURT
SUPREME COURT OF OHIO

COUNSEL FOR APPELLEE            COUNSEL FOR APPELLANT

A-1

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7773

In The Supreme Court of Ohio

State of Ohio,                          :

     Appellee,                       :   Case No.

-vs-                                   :   Appeal taken from Trumbull
                            County Court of Common Pleas
Nathaniel Jackson,                     :   Case No. 01 CR 794

     Appellant.                      :   This is a death penalty case

---

## NOTICE OF APPEAL OF APPELLANT NATHANIEL JACKSON
I

     Appellant Nathaniel hereby gives notice of appeal to the Supreme Court of Ohio from the judgment entries of the Trumbull County Court of Common Pleas, entered on August 14 and August 16, 2012. *See* Exhibits A, B, andC. This is a capital case and the date of the offense is December 12, 2001. *See* Supreme Court Rule of Practice 19.1

                    Respectfully submitted,

                    Office of the
                    Ohio Public Defender

                    RANDALL L. PORTER - 0005835
                    Assistant State Public Defender
                    250 E. Broad Street - Suite 1400
                    Columbus, Ohio  43215-9308
                    (614) 466-5394 (Telephone)
                     (614) 644-0708 (Facsimile)
                    Randall.Porter@opd.ohio.gov

                    And

                    DENNIS L. SIPE – 0006199

                    A-2

BuellSipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

By _____
    Randall L. Porter
Counsel for Nathaniel Jackson

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Notice Of Appeal of Appellant Nathaniel Jackson* forwarded by electronic and regular U.S. Mail to Luwayne Annos, Assistant Prosecuting Attorney, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio  44481 on this the 28th day of September, 2012.

_____
RANDALL PORTER - 0005835
Assistant State Public Defender
COUNSEL FOR NATHANIEL JACKSON

A-3
2

1

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO
CASE NO. 01-CR-794

STATE OF OHIO,                    )

    Plaintiff                    )

vs.                               )        FINDINGS OF FACTS

NATHANIEL E. JACKSON,             )        AND CONCLUSIONS OF LAW

    Defendant                    )


    The Defendant, Nathaniel E. Jackson, having entered a
plea of not guilty, this matter proceeded to trial, and the
Defendant being found guilty was sentenced by this Court.

    The matter is before the Court on remand from the Supreme
Court of Ohio pursuant to the Court's opinion and order on
remand. The remand is quite specific wherein having found no
prejudicial error in regard to Defendant, Nathaniel Jackson's
conviction, the conviction and judgment of the Court was
affirmed. The reviewing Court went on to state the opinion
that the administrative act of typing this Court's opinion
evaluating the appropriateness of the death penalty as required
by R.C. 2929.03(F) was defective. The Supreme Court apparently
thought the prosecution participated in the Court's conclusions
as set forth in the final opinion.

A-4

2

This writer has presided over the trials of each of the Co-Defendants, Nathaniel Jackson and Donna Roberts. He has reviewed and decided the appropriateness of the death penalty option in both cases as required by O.R.C. 2929.03 and now does so again as ordered by the Ohio Supreme Court.

On November 8, 2002, a Trumbull County jury returned a verdict finding the Defendant, Nathaniel E. Jackson, guilty of two (2) counts of Aggravated Murder arising from the death of Robert S. Fingerhut. Since Count 1 and Count 2 of the indictment merge for sentencing purposes, the State elected to dismiss Count 2 and proceed to the mitigation phase on the 1st count of the indictment. Therefore, for the purposes of this opinion, the Defendant was convicted, under the 1st count of the indictment, of purposely, and with prior calculation and design, of causing the death of Robert S. Fingerhut. The jury further found that the State had proved beyond a reasonable doubt the specifications of Aggravating Circumstances. After the mitigation hearing, the jury concluded that the State had proved beyond a reasonable doubt that the Aggravating Circumstances outweighed the mitigating factors and returned a verdict recommending that the sentence of death be imposed upon the Defendant.

A-5

3

Factually, the evidence presented by the State revealed that while the Defendant was in prison for a prior conviction unrelated to the present case, he along with the co-defendant, Donna Roberts, plotted the murder of her housemate and ex-husband, Robert S. Fingerhut.

The police authorities in investigating the death of Robert S. Fingerhut found two (2) boxes of personal letters written between Jackson and Roberts, wherein they planned in great detail how the murder of Robert s. Fingerhut would be carried out. The police also found numerous phone call recordings from the institution in which Jackson had been incarcerated wherein specific preparations were discussed.

The State, therefore, had a plethora of information in the handwriting of both Co-Defendants wherein they plotted the murder of Robert's housemate, and ex-husband, Robert S. Fingerhut. Indeed, both of them conceived and executed a plan to kill Fingerhut in order to permit the Defendant, Roberts, to live "happily ever after." However, the plan went awry when Jackson, who was in the house where Fingerhut resided, was shot in the left index finger during the execution of Fingerhut. He then took Fingerhut's car keys and drove the vehicle which Fingerhut typically operated to his business location in to Youngstown. Shortly thereafter, Roberts took the Defendant to

A-6

4

a motel in Boardman and rented a room where Jackson could hide
out.  Ultimately, the Defendant was captured at a house in
Youngstown, and gave a statement to the police alleging self
defense.

More specifically, the State introduced evidence that on
December 11, 2001, two (2) days after the Defendant was
released from prison, Robert S. Fingerhut, while in his home,
was pistol whipped and shot 3 times, causing at least four
injuries from gunshots.  Two of the injuries were to the back,
with one grazing the back, and the other entering near the
shoulder before exiting out the chest area of the victim.
Fingerhut also sustained a defensive gun shot wound to the
webbing of his left hand between the thumb and forefinger.  The
fatal gunshot was to the top of Fingerhut's head and from a
short distance.  This injury "would have dropped him like a
sack of potatoes," as testified to by Dr. Humphrey Germaniuk,
the coroner.

Police responded to the crime scene as a result of a 911
call.  When they arrived at approximately 12:01 a.m., they were
met by the Co-Defendant, Donna Roberts, who informed them that
her ex-husband's car was missing.  She also granted them
permission to search the residence and her car.  During this
search, police found more than 140 letters from the Defendant

A-7

5

to Roberts in her dresser, and an equal number of letters from Roberts to the Defendant in the trunk of Roberts' car, in a paper bag bearing the Defendant's name and prison number.

Additionally, law enforcement officers were able to obtain 19 telephone conversations, lasting more than three (3) hours, which were recorded while the Defendant was incarcerated in Lorain Correctional Institution.  These telephone conversations, along with the letters which spanned three (3) months, revealed a continuing and evolving plan to kill Fingerhut immediately upon the Defendant's release from prison.

The evidence also revealed that Roberts, near the time of the murder, was seen driving her automobile in a very slow manner away from the vicinity of the home where Fingerhut lived.  Furthermore, within two (2) hours from the last time Fingerhut was seen alive, Roberts rented a hotel room for the Defendant.  In this room, bloody bandages and other medical supplies were found by hotel cleaning people and were subsequently collected by police.

The car which was usually driven by Fingerhut, and which had been reported stolen by the Co-Defendant, was recovered in Youngstown, Ohio.  Bloodstains were located throughout the vehicle and were collected by law enforcement.  DNA analysis revealed that the blood matched that of DNA profile of the

A-8

6

Defendant.

The State also introduced evidence that Roberts and the Defendant discussed purchasing a "new Lincoln" or "2002 Cadillac DeVille" for the Defendant.  Additionally, Fingerhut had two (2) life insurance policies with a total death benefit of $550,000.00 and with Donna Roberts named as the beneficiary.

Based upon this and other evidence, the jury properly concluded that the Defendant committed a burglary to facilitate the premeditated and the purposeful murder of the victim Fingerhut along with the Co-Defendant Roberts.  The Defendant after executing his plan, then stole Fingerhut's vehicle which allowed the jury to find that the murder was committed while committing the aggravating circumstances of Aggravated Burglary and Aggravated Robbery.

In a case of this nature, pursuant to O.R.C. 2929.03(D)(3), the Court is required to determine whether the State has proved beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating factors.  Indeed the Supreme Court of Ohio has stated in <u>State v. Wogenstahl</u> (1996), 75 Ohio St. 3d, 344:

> *The nature and circumstances of the offense may only enter into the statutory weighing process on the side of mitigation...In the penalty phase of a capital trial, the 'aggravating circumstances' against which the mitigating evidence is to be weighed are limited to the specifications of aggravating circumstances set forth in*

A-9

7

*RC 2929.04(A)(1) through (8) that have been alleged in
the indictment and proved beyond a reasonable doubt.
(See* Wogenstahl *at 356)*
In performing its statutory duty, a review of the
aggravating circumstances is required.

1.) *The Defendant committed the Aggravated Murder while*

*he was committing, attempting to commit, or fleeing*

*immediately after committing Aggravated Burglary*

*and that he was the principal offender.*

The evidence presented at trial reflected that the

Defendant trespassed in the victim's dwelling and murdered him.

The Court finds that the Defendant entered into 254 Fonderlac

Drive in Howland Township.  He was wearing gloves and armed

with a gun, with which he struck the victim leaving a mark on

Fingerhut's face.  Once in the house, he fired the gun three

times causing four (4) separate wounds.  The fatal shot was to

the top of Fingerhut's head, and nearly straight down.

From the aforementioned evidence, the Jury concluded that

the Defendant committed the Aggravated Murder while he was

committing, attempting to commit, or fleeing immediately after

committing Aggravated Burglary and that he was the principal

offender.

2.) *The Defendant committed the Aggravated Murder while*

*he was committing, attempting to commit, or fleeing*

*immediately after committing Aggravated Robbery and*

A-10

8

*that he was the principal offender.*

As he was driving away from the crime scene, and prior to abandoning the vehicle in Youngstown, he left blood evidence throughout the car.  This evidence was subjected to DNA testing, which confirmed that forensically, it was his blood. Quite simply, the Defendant committed the Aggravated Robbery to escape the consequences of his prior murderous act.

This evidence permitting the jury to conclude that the Defendant committed the Aggravated Murder while he was committing, attempting to commit, or fleeing immediately after committing Aggravated Robbery and that he was the principal offender.

To be weighed against the aggravating circumstances are the mitigating factors.  In this case, the following factors were considered by the Court as possible mitigation against each specification and against the imposition of the death penalty:

> 1.) *The nature and circumstances of the offense, the history, character, and background of the offender.*

As was noted in <u>Wogenstahl</u>, supra, the nature and circumstances of the offense may only enter into the statutory weighing process on the side of mitigation.  However, in this

A-11

9

case, reviewing the nature and circumstances, the Court does not find any credible evidence which would allow the Court to accord any weight to the nature and circumstances of the offense against the imposition of the death penalty.

In considering the history, character and background of the offender, this Court considered the home life of the Defendant and the fact that he grew up in a relatively poor environment, and that he was cared for and raised by his mother and maternal grandmother.  His biological father had little, if any, real involvement with him, and this lack of a father figure likely contributed to his behavioral problems.

Though the Court gives some weight to the Defendant's upbringing, it deserves little weight because of the credible testimony from the Defendant's step-father, his sister, his mother, and Dr. McPherson.  These witnesses testified that the Defendant was respectful to both his mother and grandmother. His sister, who described him as smart and really kind, noted that they attended church.  Further, there was testimony offered that he was reared in an environment, where he was not physically or sexually abused.  His mother also declined to say that his home was in a "rough neighborhood," or that the Defendant had any problems in school.  Dr. McPherson's report noted that the Defendant had not been hospitalized for any

A-12

10

physical or mental condition.  The witnesses also notes that they practiced moral tenets and that responsibility and respect were taught.

In conclusion, from the testimony of these witnesses, there is nothing particularly evident to show an unusual childhood or to offer an explanation for the Defendant's behavior which would be entitled any significant weight on the side of mitigation.

     2.) *Whether the victim of the offense induced or facilitated the killing.*

Although under R.C. 2929.04(B)(1), the mitigating factor regarding whether the victim of the offense induced or facilitated it, was not specifically argued by the Defendant during the penalty phase of the trial as mitigating, the Court did consider the Defendant's videotaped statement presented in evidence during the trial phase.  In the self-serving statement, the Defendant claimed that the killing of the victim was as a result of the Defendant protecting himself from an unprovoked attack by the victim.

This statement to the police attempted to construct a scenario wherein the victim approached the Defendant to purchase marijuana and then invited the Defendant into his home.  The Defendant then claims that the victim then pulled a

A-13

11

gun on him.  The Defendant asserted that he attempted to disarm
the victim, but the gun went off apparently striking the
victim.  However, the other facts illustrating the planning and
execution of the murder, along with the physical evidence
introduced, causes the Defendant's version not to be credible.
As such, the Court does not accord any weight to this
mitigating factor.

> 3.) *Whether it is unlikely that the offense would have*
> *been committed, but for the fact that the offender*
> *was under duress, coercion, or strong provocation.*

Again, while the Defendant did not specifically argue
this mitigating factor, the Court upon reviewing the video
tape, noticed that the Defendant claimed that the victim made
derogatory statements about the Defendant's race which angered
the Defendant.  However, this comment is likewise not
convincing for the same reasons noted previously.  This
mitigating factor has no weight.

> 4.) *Any other factors that are relevant to the issue of*
> *whether the offender should be sentenced to*
> *death.*

Under R.C. 2929.04(B)(7), commonly referred to as the
"catch all provision," the Court reviewed the Defendant's
capacity to appreciate the criminality of his conduct in light

A-14

12

of the defense expert testimony regarding his mental history
and mental state at the time of the offense was considered as a
possible factor under R.C. 2929.04(B)(3).

This testimony revealed that the Defendant suffered from
Attention Deficit Disorder/Hyperactivity Disorder, Chemical
Dependency, and a reported history of alcohol abuse. Further,
the evidence disclosed that the Defendant had an Antisocial
Personality Disorder and was considered low average or better
in intelligence.

Significantly, however, there was no evidence presented
that the Defendant, at the time of the offense, had any mental
disease or defect or that he lacked the capacity to appreciate
the criminality of his conduct. His Antisocial Personality
Disorder only showed that he had a history of inappropriate and
impulsive behavior from his early childhood to the present. He
was incarcerated four (4) times. According to the Defendant's
own expert, the Defendant, throughout his juvenile and adult
life had received repeated treatment and/or probation for his
criminal transgressions and his drug and alcohol abuse. He did
not learn from his past mistakes, but only escalated his
antisocial conduct.

In summary, this Court gives very little weight in
mitigation to the Defendant's mental status, and his drug and

A-15

13

alcohol abuse history especially in light of the Defendant's elaborate scheme to kill the victim, elude capture, and finally his attempt to deceive police officers with a statement blaming the victim.

Further under R.C. 2929.04(B)(7), the Court examined the Defendant's ability to maintain himself in a stable fashion in a structured setting.  Indeed, it was suggested by the Defense that he could be a productive member of the general prison population, and that this should be considered as mitigating. However, the Court gives slight weight to this particular factor.

The Defendant's last incarceration was the result of him not learning from his past mistakes, and from his tendency to act out impulsively without looking at the consequences. Furthermore, he repeatedly was placed on probation, but he continued to digress, committing more serious criminal acts. Indeed, during the last incarceration, the Defendant claimed to have "found God" and that he was going to straighten out his life.  At the same time, it is abundantly clear that he was plotting to commit the ultimate criminal act, a premeditated burglary and murder, while pre-textually presenting himself to prison officials as a good candidate for a release program. Quite simply, in the very setting in which the Defense suggests

A-16

14

that he could be a productive member, the Defendant defined and refined a plot, involving gloves, a mask and handcuffs, to murder Robert S. Fingerhut so that in effect he could assume Fingerhut's lifestyle, including running the Greyhound bus business, managing rental properties, and living in his home with Fingerhut's ex-wife.

The Defendant also offered an unsworn statement, wherein he stated that he was "very sorry for what happened." The Court likewise gives this statement slight weight as the statement lacked sincerity. The tone and tenor of the apology did not, in the Court's opinion, come from someone who was genuinely remorseful. Even assuming that the Defendant was remorseful, such retrospective remorse is not entitled to any significant weight. To the contrary, the Court believes that the Defendant's feigned remorse stems from the fact that the Defendant was apprehended. The Defendant was disappointed that the fool-proof, premeditated murder plot, which he developed over nearly three (3) months, and which included shooting the victim "in the 'F'ing head," failed.

When independently weighing the aggravating circumstances as to the Aggravated Murder as previously outlined against the collective factors in mitigation, this Court finds that the aggravating circumstances not only outweigh the mitigating

A-17

15

factors by proof beyond a reasonable doubt, but in fact, they almost completely overshadow them.

The State of Ohio has recognized that under certain circumstances, the death penalty is an appropriate sanction for any Defendant who commits an Aggravated Murder during the commission of certain felonies.  In the case at bar, the underlying felonies are Aggravated Burglary and Aggravated Robbery.

In this particular case, the Court accords substantial weight to the Aggravated Burglary specification.  In order to prove an Aggravated Burglary, the State is required to demonstrate that the Defendant trespassed in the occupied structure for the purpose of committing a criminal act.  In most instances, this criminal act is a theft offense. Occasionally, a Defendant will trespass to commit a kidnapping or even a rape.  Such criminal acts provide the basis upon which a Defendant can be convicted of Aggravated Burglary. Then, if during any of these underlying criminal acts, the victim is purposely killed, an Aggravated Murder with the specification of Aggravated Burglary has been committed.  These alone can permit the imposition of the death penalty should the aggravating circumstance of the Aggravated Burglary be found to outweigh the mitigating factors.

A-18

16

Under the facts in the instant case, this Court cannot foresee of any other form of Aggravated Burglary where the weight to be given to this aggravating circumstance could ever be greater. The evidence reveals that the sole purpose for the Defendant's illegal entry in the Fingerhut residence was not to commit a theft, a kidnapping or a rape, but rather to carry out the premeditated, cold blooded execution of Robert S. Fingerhut. This is the most heinous form of Aggravated Burglary, and it is entitled to unsurpassed weight. Further, in this Court's view, this aggravating circumstance, standing alone, outweighs all of the evidence presented in mitigation.

The Court further gives weight to the Aggravated Robbery specification. After shooting the victim in the head, the Defendant took personal property of the victim to effectuate his escape. Indeed, the Defendant stole the victim's keys and his car.

Against this backdrop, the mitigating factors of the Defendant's background, history and character, his Antisocial Personality Disorder, his Attention Deficit Disorder, his history of drug and alcohol abuse, as well as his unsworn statement, have very little effect in minimizing, lessening, or excusing the degree of the Defendant's murderous conduct. From the overwhelming evidence, it is this Court's opinion that the

A-19

17

Defendant and the Co-Defendant plotted the murder of Robert S. Fingerhut solely to collect $550,000.00 in insurance proceeds. This was accomplished by trespassing in the residence where Fingerhut resided, for the sole purpose of ambushing and murdering him.

Upon consideration of the relevant evidence raised at trial, the relevant testimony, the other evidence, the unsworn statement of the Defendant, and the arguments of counsel, it is the judgement of this Court that the aggravating circumstances, outweigh, by proof beyond a reasonable doubt, the collective mitigating factors.

8/14/12
DATE

JUDGE JOHN M. STUARD
COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

**TO THE CLERK OF COURTS:** YOU ARE ORDERED TO SERVE COPIES OF THIS JUDGMENT ON ALL COUNSEL OF RECORD OR UPON THE PARTIES WHO ARE UNREPRESENTED FORTH WITH BY ORDINARY MAIL.

JUDGE



A-20



**IN THE COURT OF COMMON PLEAS**
**- GENERAL DIVISION-**
**TRUMBULL COUNTY, OHIO**

**CASE NUMBER:  2001 CR 00794**

**STATE OF OHIO**
**PLAINTIFF**

**VS.**                                                **JUDGE JOHN M STUARD**

**NATHANIEL E JACKSON**                      **SENTENCED TO THE LORAIN**
**DEFENDANT**                                      **CORRECTIONAL FACILITY**

**NUNC PRO TUNC**
**JUDGMENT ENTRY ON SENTENCE**

**A DEATH PENALTY CASE**

    The Court has prepared this Nunc Pro Tunc Judgment Entry on Sentence for the purpose of correcting the original Entry on Sentence filed in this case on August 14, 2012. On August 15, 2012, Atty. Charles Morrow filed a Motion to Correct Entry on Sentence alerting the Court to the fact that certain clerical errors were present in the August 14, 2012 sentencing entry. The Court has reviewed the motion as well as the August 14, 2012 sentencing entry and finds the entry contained several inadvertent errors. Therefore, the Court renders this Nunc Pro Tunc Judgment Entry on Sentence for the purpose of correcting the August 14, 2012 Entry on Sentence previously prepared by the Court.

    On August 14, 2012, Defendant, Nathaniel Jackson, was brought before this Court for the purposes of re-sentencing after the original sentence was vacated by the Eleventh District Court of Appeals on October 18, 2010. On August 14, 2012, the Defendant's sentencing hearing was held pursuant to R.C. 2929.19. The Defendant was

A-21

represented by Atty. Randall L. Porter. Also present in Court was Atty. John P. Parker.[1]

Atty. Charles L. Morrow and Atty. LuWayne Annos were present in Court on behalf of

the State of Ohio.

The Defendant was afforded all rights pursuant to Crim.R.32. The Court has

considered the record, oral statements, as well as the principles and purposes of

sentencing under R.C. 2929.11 and has balanced the seriousness and recidivism factors

of R.C. 2929.12.

The Court has previously set forth in a separate opinion of specific factual

findings that the aggravating circumstances as to Count One; Aggravated Murder,

outweigh the mitigating factors by proof beyond a reasonable doubt. The Court inquired

of the Defendant at the hearing in this matter as to whether he had anything to say

why judgment should not be pronounced against him. The Defendant, in answer,

showed no good cause or sufficient reason why sentence should not be pronounced.

The Court has considered the factors under R.C. 2929.14 and makes the

following findings: (1) The shortest prison term will demean the seriousness of the

Defendant's conduct; (2) the longest prison term is appropriate because the Defendant

committed the worst form of the offense; (3) multiple prison terms are necessary to

protect the public from future crime and to punish the offender; (4) consecutive prison

sentences are not disproportionate to the seriousness of the Defendant's conduct and to

the danger the offender poses to the public;(5) the harm cause by the multiple offenses

was so great that no single prison term for any of the offenses committed as part of a

single course of conduct adequately reflects the seriousness of the Defendant's conduct;

A-22

---

[1] Atty. Parker advised the Court during the sentencing hearing that a conflict existed which prevented him from representing the Defendant for the purposes of this sentencing hearing.

and (6) the Defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the Defendant.

It is therefore, ORDERED, ADJUDGED and DECREED that:

1.  The Defendant is hereby sentenced to death on August 15, 2013 on Count One;

2.  The Defendant serve an prison term of Ten (10) Years on Count Three plus Three (3) Years on the firearm specification;

3.  The Three (3) Year imprisonment term on the firearm specification shall be served prior to and consecutive to the imprisonment term for the underlying offense in Count Three for a total imprisonment term of Thirteen (13) Years on Count Three;

4.  The Defendant serve a prison term of Ten (10) Years on Count Four plus Three (3) Years on the firearm specification;

5.  The Three (3) Year imprisonment term on the firearm specification shall be served prior to and consecutive to the imprisonment term for the underlying offense in Count Four for a total imprisonment term of Thirteen (13) Years on Count Four;

6.  The imprisonment term on Count Four shall be served consecutive to the imprisonment term imposed on Count Three;

7.  The firearm specifications in Count Three and Count Four shall merge for the purposes of sentencing in Count Three as a matter of law;

8.  The Defendant is ordered to submit to DNA testing;

9.  The Defendant shall pay the cost of prosecution taxed in the amount of $_____ costs for which execution is awarded.

As to Counts Three and Four, the Court has further notified the Defendant that post-release control is mandatory in this case for Five (5) Years, as well as the consequences for violating conditions of post-release control imposed by the Parole Board under R.C. 2967.28. The Defendant is ordered to serve as part of this sentence any term of post-release control imposed by the Parole Board, and any prison term for violation of that post-release control.

As to Count One, the Court has further notified the Defendant that post-release control is mandatory if the Defendant is released on parole before serving the Death Sentence in Count One. The maximum possible parole period is equal to a Life Sentence imposed for the Aggravated Murder charge in Count One. A violation of any parole rule or condition may result in (1) a more restrictive sanction while released; (2) an increased duration of parole supervision, up to the maximum set out above; and/or (3) re-imprisonment for a period of time equal to the Life Sentence. If the Defendant commits another felony while subject to this period of parole or supervision, or if by some other means violates the conditions of parole, he may be sent back to prison to serve out the remainder of the Life Sentence imposed.

The Defendant is hereby advised that most prison inmates are eligible to earn days of credit against their prison sentences for each completed month of productive participation in educational or employment programs developed by ODRC with specific standards for performance by prisoners. Some inmates, including those confined for sex offenses and the most dangerous first and second degree felonies and homicides are not eligible to earn days of credit.

The Court further disapproves of the Defendant's placement in a program

of shock incarceration pursuant to R.C. 5120.031 or for placement in an intensive prison program pursuant to R.C. 5120.032.

IT IS SO ORDERED.

_____
JUDGE JOHN M STUARD

Date: _8/16/12_

**TO THE CLERK OF COURTS:** **You Are Ordered to Serve Copies of this Judgment on all Counsel of Record or Upon the Parties who are Unrepresented Forthwith by Ordinary Mail.**

_____
**JUDGE JOHN M STUARD**

8-16-12
copies to:
Pros.
R. Porter

A-25

1

IN THE COURT OF COMMON PLEAS
TRUMBULL COUNTY, OHIO

CASE NO. 01-CR-794

| | | |
|---|---|---|
| STATE OF OHIO, | ) | JUDGE JOHN M. STUARD |
| PLAINTIFF | ) | |
| vs. | ) | JUDGMENT ENTRY |
| | ) | |
| NATHANIEL JACKSON, | ) | ENTRY ON SENTENCE |
| DEFENDANT | ) | |

On August 14, 2012, Defendant, Nathaniel Jackson's sentencing hearing was held pursuant to O.R.C. Section 2929.19. Defense Attorneys, Anthony Consoldane and James Lewis, and Prosecutor Dennis Watkins and Assistant Prosecutor Charles Morrow were present, as was Defendant, Nathaniel Jackson, who was afforded all rights pursuant to Criminal Rule 32. The Court has considered the record and oral statements, as well as the principles and purposes of sentencing under O.R.C. Section 2929.11,and has balanced the seriousness and recidivism factors of O.R.C. Section 2929.12.

Pursuant to law, the Trial Court this day, August 14, 2012, having determined in a separate opinion of specific

A-26

2

findings that the aggravating circumstances as to the count of Aggravated Murder outweigh the mitigating factors by proof beyond a reasonable doubt, then made inquiry as to whether the Defendant had anything to say why judgment should not be pronounced against him, and the Defendant in answer showed no good cause or sufficient reason why sentence should not be pronounced.

The Court has considered the factors under O.R.C. Section 2929.14 and makes the following findings:

1) The shortest prison term will demean the seriousness of the Defendant's conduct;

2) The longest prison term is appropriate because the Defendant committed the worst form of the offense;

3) Multiple prison terms are necessary to protect the public from future crime and to punish the offender;

4) Consecutive prison sentences are not disproportionate to the seriousness of the Defendant's conduct and to the danger the offender poses to the public;

5) The harm caused by the multiple offenses was so great that no single prison term for any of the

A-27

3

offenses committed as part of a single course of conduct
adequately reflects the seriousness of the Defendant's
conduct; and

6) The Defendant's history of criminal
conduct demonstrates that consecutive sentences
are necessary to protect the public from future
crime by the Defendant.

It is, therefore, ORDERED, ADJUDGED and DECREED that the
Defendant, Nathaniel Jackson, be taken from the courtroom to
the Trumbull County Jail and from thence to the Correction
Reception Center at Lorain, Ohio, and thereafter be sentenced
to death on August 15, 2013, on Count One; and imprisoned
therein for the stated prison term of ten (10) years on Count
Three; plus a mandatory term of three (3) years on the Firearm
Specification to be served prior to and consecutive to the
sentence imposed in Count Three; ten (10) years on Count Four,
plus a mandatory term of three (3) years on the Firearm
Specification to be served prior to and consecutive to the
sentence imposed on Count Four; sentence in Count Four to be
served consecutively to the sentence imposed on Count Three.
Firearm Specifications in Count Three and Count Four shall
merge as one sentence in Count Three as a matter of law.

A-28

4

Defendant is Ordered to the cost of prosecution taxed in the amount of $_____ for which execution is awarded.

_____8/14/12_____            _____
DATE                                 JUDGE JOHN M. STUARD

THE CLERK OF COURTS IS HEREBY
ORDERED TO SERVE COPIES OF
THIS ENTRY TO ALL COUNSEL OF RECORD.

_____
JUDGE JOHN M. STUARD

> You are hereby notified that
> you have been convicted of a
> felony of violence and pursuant
> to Section 2923.13 of the
> Ohio Revised Code, you are
> prohibited from acquiring,
> having, carrying or using any
> firearm or dangerous ordnance.

A-29

## SECTION 2, ARTICLE I, OHIO CONSTITUTION

### § 2   RIGHT TO ALTER, REFORM, OR ABOLISH GOVERNMENT, AND REPEAL SPECIAL PRIVILEGES.

All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the General Assembly.

A-30

## SECTION 9, ARTICLE I, OHIO CONSTITUTION

### § 9  BAILABLE OFFENSES; OF BAIL, FINE, AND PUNISHMENT.

All persons shall be bailable by sufficient sureties, except for a person who is charged with a capital offense where the proof is evident or the presumption great and a person who is charged with a felony where the proof is evident or the presumption great and who poses a potential serious physical danger to a victim of the offense, to a witness to the offense, or to any other person or to the community. Excessive bail shall not be required; excessive fines shall not be imposed; and cruel and unusual punishments shall not be inflicted.

A-31

## SECTION 10, ARTICLE I, OHIO CONSTITUTION

### § 10    TRIAL OF ACCUSED PERSONS AND THEIR RIGHTS; DEPOSITIONS BY STATE AND COMMENT ON FAILURE TO TESTIFY IN CRIMINAL CASES.

Except in cases of impeachment, cases arising in the army and navy, or in the militia when in actual service in time of war or public danger, and cases involving offenses for which the penalty provided is less than imprisonment in the penitentiary, no person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury; and the number of persons necessary to constitute such grand jury and the number thereof necessary to concur in finding such indictment shall be determined by law.  In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process to procure the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed; but provision may be made by law for the taking of the deposition by the accused or by the state, to be used for or against the accused, of any witness whose attendance can not be had at the trial, always securing to the accused means and the opportunity to be present in person and with counsel at the taking of such deposition, and to examine the witness face to face as fully and in the same manner as if in court.   No person shall be compelled, in any criminal case, to be a witness against himself; but his failure to testify may be considered by the court and jury and may be made the subject of comment by counsel.  No person shall be twice put in jeopardy for the same offense. (As amended September 3, 1912.)

A-32

## SECTION 16, ARTICLE I, OHIO CONSTITUTION

### § 16    REDRESS IN COURTS.

All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.

[Suits against the state.] Suits may be brought against the state, in such courts and in such manner, as may be provided by law.

A-33

## AMENDMENT I, UNITED STATES CONSTITUTION

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

A-34

## AMENDMENT V, UNITED STATES CONSTITUTION

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

A-35

## AMENDMENT VI, UNITED STATES CONSTITUTION

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

A-36

## AMENDMENT VIII, UNITED STATES CONSTITUTION

Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

A-37

## AMENDMENT IX, UNITED STATES CONSTITUTION

The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

A-38

## AMENDMENT XIV, UNITED STATES CONSTITUTION

Section. 1. All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section. 2. Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

Section. 3. No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

Section. 4. The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

Section. 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

A-39

## ARTICLE II, UNITED STATES CONSTITUTION

**Section 1.**

The executive Power shall be vested in a President of the United States of America. He shall hold his Office during the Term of four Years, and, together with the Vice President, chosen for the same Term, be elected, as follows:

Each State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress: but no Senator or Representative, or Person holding an Office of Trust or Profit under the United States, shall be appointed an Elector.

The Electors shall meet in their respective States, and vote by Ballot for two Persons, of whom one at least shall not be an Inhabitant of the same State with themselves. And they shall make a List of all the Persons voted for, and of the Number of Votes for each; which List they shall sign and certify, and transmit sealed to the Seat of the Government of the United States, directed to the President of the Senate. The President of the Senate shall, in the Presence of the Senate and House of Representatives, open all the Certificates, and the Votes shall then be counted. The Person having the greatest Number of Votes shall be the President, if such Number be a Majority of the whole Number of Electors appointed; and if there be more than one who have such Majority, and have an equal Number of Votes, then the House of Representatives shall immediately chuse by Ballot one of them for President; and if no Person have a Majority, then from the five highest on the List the said House shall in like Manner chuse the President. But in chusing the President, the Votes shall be taken by States, the Representatives from each State having one Vote; a quorum for this Purpose shall consist of a Member or Members from two thirds of the States, and a Majority of all the States shall be necessary to a Choice. In every Case, after the Choice of the President, the Person having the greatest Number of Votes of the Electors shall be the Vice President. But if there should remain two or more who have equal Votes, the Senate shall chuse from them by Ballot the Vice President.

The Congress may determine the Time of chusing the Electors, and the Day on which they shall give their Votes; which Day shall be the same throughout the United States.

No Person except a natural born Citizen, or a Citizen of the United States, at the time of the Adoption of this Constitution, shall be eligible to the Office of President; neither shall any person be eligible to that Office who shall not have attained to the Age of thirty five Years, and been fourteen Years a Resident within the United States.

In Case of the Removal of the President from Office, or of his Death, Resignation, or Inability to discharge the Powers and Duties of the said Office, the Same shall devolve on the Vice President, and the Congress may by Law provide for the Case of Removal, Death, Resignation or Inability, both of the President and Vice President, declaring what Officer shall then act as President, and such Officer shall act accordingly, until the Disability be removed, or a President shall be elected.

A-40

The President shall, at stated Times, receive for his Services, a Compensation, which shall neither be encreased nor diminished during the Period for which he shall have been elected, and he shall not receive within that Period any other Emolument from the United States, or any of them.

Before he enter on the Execution of his Office, he shall take the following Oath or Affirmation:-- "I do solemnly swear (or affirm) that I will faithfully execute the Office of President of the United States, and will to the best of my Ability, preserve, protect and defend the Constitution of the United States."

### Section 2.

The President shall be Commander in Chief of the Army and Navy of the United States, and of the Militia of the several States, when called into the actual Service of the United States; he may require the Opinion, in writing, of the principal Officer in each of the executive Departments, upon any Subject relating to the Duties of their respective Offices, and he shall have Power to Grant Reprieves and Pardons for Offences against the United States, except in Cases of Impeachment.

He shall have Power, by and with the Advice and Consent of the Senate, to make Treaties, provided two thirds of the Senators present concur; and he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

The President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session.

### Section 3.

He shall from time to time give to the Congress Information on the State of the Union, and recommend to their Consideration such Measures as he shall judge necessary and expedient; he may, on extraordinary Occasions, convene both Houses, or either of them, and in Case of Disagreement between them, with Respect to the Time of Adjournment, he may adjourn them to such Time as he shall think proper; he shall receive Ambassadors and other public Ministers; he shall take Care that the Laws be faithfully executed, and shall Commission all the Officers of the United States.

### Section 4.

The President, Vice President and all Civil Officers of the United States, shall be removed from Office on Impeachment for and Conviction of, Treason, Bribery, or other high Crimes and Misdemeanors.

A-41

## ARTICLE VI, UNITED STATES CONSTITUTION

All Debts contracted and Engagements entered into, before the Adoption of this Constitution, shall be as valid against the United States under this Constitution, as under the Confederation.

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.

The Senators and Representatives before mentioned, and the Members of the several State Legislatures, and all executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution; but no religious Test shall ever be required as a Qualification to any Office or public Trust under the United States.

A-42

Page's Ohio Revised Code Annotated;
Copyright (c) 2013 by Matthew Bender & Company, Inc., a member of the LexisNexis Group.
All rights reserved.

Current through Legislation passed by the 130th Ohio General Assembly
and filed with the Secretary of State through File 24
*** Annotations current through April 22, 2013 ***

TITLE 29.  CRIMES -- PROCEDURE
CHAPTER 2903.  HOMICIDE AND ASSAULT
HOMICIDE

**Go to the Ohio Code Archive Directory**

*ORC Ann. 2903.01  (2013)*

§ 2903.01. Aggravated murder

(A) No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy.

(B) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, trespass in a habitation when a person is present or likely to be present, terrorism, or escape.

(C) No person shall purposely cause the death of another who is under thirteen years of age at the time of the commission of the offense.

(D) No person who is under detention as a result of having been found guilty of or having pleaded guilty to a felony or who breaks that detention shall purposely cause the death of another.

(E) No person shall purposely cause the death of a law enforcement officer whom the offender knows or has reasonable cause to know is a law enforcement officer when either of the following applies:

(1) The victim, at the time of the commission of the offense, is engaged in the victim's duties.

(2) It is the offender's specific purpose to kill a law enforcement officer.

(F) Whoever violates this section is guilty of aggravated murder, and shall be punished as provided in *section 2929.02 of the Revised Code.*

(G) As used in this section:

(1) "Detention" has the same meaning as in *section 2921.01 of the Revised Code.*

(2) "Law enforcement officer" has the same meaning as in *section 2911.01 of the Revised Code.*

Page's Ohio Revised Code Annotated
Copyright (c) 2013 by Matthew Bender & Company, Inc., a member of the LexisNexis Group.
All rights reserved.

Current through Legislation passed by the 130th Ohio General Assembly
and filed with the Secretary of State through File 24
*** Annotations current through April 22, 2013 ***

TITLE 29.  CRIMES -- PROCEDURE
CHAPTER 2911.  ROBBERY, BURGLARY, TRESPASS AND SAFECRACKING
ROBBERY

**Go to the Ohio Code Archive Directory**

*ORC Ann. 2911.01  (2013)*

§ 2911.01. Aggravated robbery

(A) No person, in attempting or committing a theft offense, as defined in *section 2913.01 of the Revised Code*, or in fleeing immediately after the attempt or offense, shall do any of the following:

(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

(2) Have a dangerous ordnance on or about the offender's person or under the offender's control;

(3) Inflict, or attempt to inflict, serious physical harm on another.

(B) No person, without privilege to do so, shall knowingly remove or attempt to remove a deadly weapon from the person of a law enforcement officer, or shall knowingly deprive or attempt to deprive a law enforcement officer of a deadly weapon, when both of the following apply:

(1) The law enforcement officer, at the time of the removal, attempted removal, deprivation, or attempted deprivation, is acting within the course and scope of the officer's duties;

(2) The offender knows or has reasonable cause to know that the law enforcement officer is a law enforcement officer.

(C) Whoever violates this section is guilty of aggravated robbery, a felony of the first degree.

(D) As used in this section:

(1) "Deadly weapon" and "dangerous ordnance" have the same meanings as in *section 2923.11 of the Revised Code*.

(2) "Law enforcement officer" has the same meaning as in *section 2901.01 of the Revised Code* and also includes employees of the department of rehabilitation and correction who are authorized to carry weapons within the course and scope of their duties.

A-44

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7816

Page 1

Page's Ohio Revised Code Annotated;
Copyright (c) 2013 by Matthew Bender & Company, Inc., a member of the LexisNexis Group.
All rights reserved.

Current through Legislation passed by the 130th Ohio General Assembly
and filed with the Secretary of State through File 24
*** Annotations current through April 22, 2013 ***

TITLE 29. CRIMES -- PROCEDURE
CHAPTER 2911. ROBBERY, BURGLARY, TRESPASS AND SAFECRACKING
BURGLARY

**Go to the Ohio Code Archive Directory**

*ORC Ann. 2911.11* (2013)

§ 2911.11. Aggravated burglary

(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

(B) Whoever violates this section is guilty of aggravated burglary, a felony of the first degree.

(C) As used in this section:

(1) "Occupied structure" has the same meaning as in *section 2909.01 of the Revised Code.*

(2) "Deadly weapon" and "dangerous ordnance" have the same meanings as in *section 2923.11 of the Revised Code.*

A-45

Page 1

Page's Ohio Revised Code Annotated;
Copyright (c) 2013 by Matthew Bender & Company, Inc., a member of the LexisNexis Group.
All rights reserved.

Current through Legislation passed by the 130th Ohio General Assembly
and filed with the Secretary of State through File 24
*** Annotations current through April 22, 2013 ***

TITLE 29.  CRIMES -- PROCEDURE
CHAPTER 2929.  PENALTIES AND SENTENCING
PENALTIES FOR MURDER

**Go to the Ohio Code Archive Directory**

*ORC Ann. 2929.02  (2013)*

§ 2929.02. Penalties for aggravated murder or murder

(A) Whoever is convicted of or pleads guilty to aggravated murder in violation of *section 2903.01 of the Revised Code* shall suffer death or be imprisoned for life, as determined pursuant to *sections 2929.022 [2929.02.2], 2929.03,* and *2929.04 of the Revised Code,* except that no person who raises the matter of age pursuant to *section 2929.023 [2929.02.3] of the Revised Code* and who is not found to have been eighteen years of age or older at the time of the commission of the offense shall suffer death. In addition, the offender may be fined an amount fixed by the court, but not more than twenty-five thousand dollars.

(B) (1) Except as otherwise provided in division (B)(2) or (3) of this section, whoever is convicted of or pleads guilty to murder in violation of *section 2903.02 of the Revised Code* shall be imprisoned for an indefinite term of fifteen years to life.

(2) Except as otherwise provided in division (B)(3) of this section, if a person is convicted of or pleads guilty to murder in violation of *section 2903.02 of the Revised Code,* the victim of the offense was less than thirteen years of age, and the offender also is convicted of or pleads guilty to a sexual motivation specification that was included in the indictment, count in the indictment, or information charging the offense, the court shall impose an indefinite prison term of thirty years to life pursuant to division (B)(3) of *section 2971.03 of the Revised Code.*

(3) If a person is convicted of or pleads guilty to murder in violation of *section 2903.02 of the Revised Code* and also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that were included in the indictment, count in the indictment, or information that charged the murder, the court shall impose upon the offender a term of life imprisonment without parole that shall be served pursuant to *section 2971.03 of the Revised Code.*

(4) In addition, the offender may be fined an amount fixed by the court, but not more than fifteen thousand dollars.

(C) The court shall not impose a fine or fines for aggravated murder or murder which, in the aggregate and to the extent not suspended by the court, exceeds the amount which the offender is or will be able to pay by the method and within the time allowed without undue hardship to the offender or to the dependents of the offender, or will prevent the offender from making reparation for the victim's wrongful death.

A-46

Page 2

ORC Ann. 2929.02

(D) (1) In addition to any other sanctions imposed for a violation of *section 2903.01* or *2903.02 of the Revised Code*, if the offender used a motor vehicle as the means to commit the violation, the court shall impose upon the offender a class two suspension of the offender's driver's license, commercial driver's license, temporary instruction permit, probationary license, or nonresident operating privilege as specified in division (A)(2) of *section 4510.02 of the Revised Code*.

(2) As used in division (D) of this section, "motor vehicle" has the same meaning as in *section 4501.01 of the Revised Code*.

A-47

Page 1

Page's Ohio Revised Code Annotated:
Copyright (c) 2013 by Matthew Bender & Company, Inc., a member of the LexisNexis Group.
All rights reserved.

Current through Legislation passed by the 130th Ohio General Assembly
and filed with the Secretary of State through File 24
*** Annotations current through April 22, 2013 ***

TITLE 29. CRIMES -- PROCEDURE
CHAPTER 2929. PENALTIES AND SENTENCING
PENALTIES FOR MURDER

**Go to the Ohio Code Archive Directory**

*ORC Ann. 2929.021 (2013)*

§ 2929.021. Notice to supreme court of indictment charging aggravated murder; plea

(A) If an indictment or a count in an indictment charges the defendant with aggravated murder and contains one or more specifications of aggravating circumstances listed in division (A) of *section 2929.04 of the Revised Code,* the clerk of the court in which the indictment is filed, within fifteen days after the day on which it is filed, shall file a notice with the supreme court indicating that the indictment was filed. The notice shall be in the form prescribed by the clerk of the supreme court and shall contain, for each charge of aggravated murder with a specification, at least the following information pertaining to the charge:

(1) The name of the person charged in the indictment or count in the indictment with aggravated murder with a specification;

(2) The docket number or numbers of the case or cases arising out of the charge, if available;

(3) The court in which the case or cases will be heard;

(4) The date on which the indictment was filed.

(B) If the indictment or a count in an indictment charges the defendant with aggravated murder and contains one or more specifications of aggravating circumstances listed in division (A) of *section 2929.04 of the Revised Code* and if the defendant pleads guilty or no contest to any offense in the case or if the indictment or any count in the indictment is dismissed, the clerk of the court in which the plea is entered or the indictment or count is dismissed shall file a notice with the supreme court indicating what action was taken in the case. The notice shall be filed within fifteen days after the plea is entered or the indictment or count is dismissed, shall be in the form prescribed by the clerk of the supreme court, and shall contain at least the following information:

(1) The name of the person who entered the guilty or no contest plea or who is named in the indictment or count that is dismissed;

(2) The docket numbers of the cases in which the guilty or no contest plea is entered or in which the indictment or count is dismissed;

(3) The sentence imposed on the offender in each case.

A-48

Page 1

Page's Ohio Revised Code Annotated;
Copyright (c) 2013 by Matthew Bender & Company, Inc., a member of the LexisNexis Group.
All rights reserved.

Current through Legislation passed by the 130th Ohio General Assembly
and filed with the Secretary of State through File 24
*** Annotations current through April 22, 2013 ***

TITLE 29.  CRIMES -- PROCEDURE
CHAPTER 2929.  PENALTIES AND SENTENCING
PENALTIES FOR MURDER

**Go to the Ohio Code Archive Directory**

*ORC Ann. 2929.022*  (2013)

§ 2929.022. Determination of aggravating circumstances of prior conviction

(A) If an indictment or count in an indictment charging a defendant with aggravated murder contains a specification of the aggravating circumstance of a prior conviction listed in division (A)(5) of *section 2929.04 of the Revised Code*, the defendant may elect to have the panel of three judges, if the defendant waives trial by jury, or the trial judge, if the defendant is tried by jury, determine the existence of that aggravating circumstance at the sentencing hearing held pursuant to divisions (C) and (D) of *section 2929.03 of the Revised Code*.

(1) If the defendant does not elect to have the existence of the aggravating circumstance determined at the sentencing hearing, the defendant shall be tried on the charge of aggravated murder, on the specification of the aggravating circumstance of a prior conviction listed in division (A)(5) of *section 2929.04 of the Revised Code*, and on any other specifications of an aggravating circumstance listed in division (A) of *section 2929.04 of the Revised Code* in a single trial as in any other criminal case in which a person is charged with aggravated murder and specifications.

(2) If the defendant does elect to have the existence of the aggravating circumstance of a prior conviction listed in division (A)(5) of *section 2929.04 of the Revised Code* determined at the sentencing hearing, then, following a verdict of guilty of the charge of aggravated murder, the panel of three judges or the trial judge shall:

(a) Hold a sentencing hearing pursuant to division (B) of this section, unless required to do otherwise under division (A)(2)(b) of this section;

(b) If the offender raises the matter of age at trial pursuant to *section 2929.023 [2929.02.3] of the Revised Code* and is not found at trial to have been eighteen years of age or older at the time of the commission of the offense, conduct a hearing to determine if the specification of the aggravating circumstance of a prior conviction listed in division (A)(5) of *section 2929.04 of the Revised Code* is proven beyond a reasonable doubt. After conducting the hearing, the panel or judge shall proceed as follows:

(i) If that aggravating circumstance is proven beyond a reasonable doubt or if the defendant at trial was convicted of any other specification of an aggravating circumstance, the panel or judge shall impose sentence according to division (E) of *section 2929.03 of the Revised Code*.

(ii) If that aggravating circumstance is not proven beyond a reasonable doubt and the defendant at trial was

A-49

Page 2

ORC Ann. 2929.022

not convicted of any other specification of an aggravating circumstance, except as otherwise provided in this division, the panel or judge shall impose sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment on the offender. If that aggravating circumstance is not proven beyond a reasonable doubt, the defendant at trial was not convicted of any other specification of an aggravating circumstance, the victim of the aggravated murder was less than thirteen years of age, and the offender also is convicted of or pleads guilty to a sexual motivation specification that was included in the indictment, count in the indictment, or information charging the offense, the panel or judge shall sentence the offender pursuant to division (B)(3) of *section 2971.03 of the Revised Code* to an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment.

(B) At the sentencing hearing, the panel of judges, if the defendant was tried by a panel of three judges, or the trial judge, if the defendant was tried by jury, shall, when required pursuant to division (A)(2) of this section, first determine if the specification of the aggravating circumstance of a prior conviction listed in division (A)(5) of *section 2929.04 of the Revised Code* is proven beyond a reasonable doubt. If the panel of judges or the trial judge determines that the specification of the aggravating circumstance of a prior conviction listed in division (A)(5) of *section 2929.04 of the Revised Code* is proven beyond a reasonable doubt or if they do not determine that the specification is proven beyond a reasonable doubt but the defendant at trial was convicted of a specification of any other aggravating circumstance listed in division (A) of *section 2929.04 of the Revised Code*, the panel of judges or the trial judge and trial jury shall impose sentence on the offender pursuant to division (D) of *section 2929.03* and *section 2929.04 of the Revised Code*. If the panel of judges or the trial judge does not determine that the specification of the aggravating circumstance of a prior conviction listed in division (A)(5) of *section 2929.04 of the Revised Code* is proven beyond a reasonable doubt and the defendant at trial was not convicted of any other specification of an aggravating circumstance listed in division (A) of *section 2929.04 of the Revised Code*, the panel of judges or the trial judge shall terminate the sentencing hearing and impose sentence on the offender as follows:

(1) Subject to division (B)(2) of this section, the panel or judge shall impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment on the offender.

(2) If the victim of the aggravated murder was less than thirteen years of age and the offender also is convicted of or pleads guilty to a sexual motivation specification that was included in the indictment, count in the indictment, or information charging the offense, the panel or judge shall sentence the offender pursuant to division (B)(3) of *section 2971.03 of the Revised Code* to an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment.

A-50

Page 1

Page's Ohio Revised Code Annotated:
Copyright (c) 2013 by Matthew Bender & Company, Inc., a member of the LexisNexis Group.
All rights reserved.

Current through Legislation passed by the 130th Ohio General Assembly
and filed with the Secretary of State through File 24
*** Annotations current through April 22, 2013 ***

TITLE 29.  CRIMES -- PROCEDURE
CHAPTER 2929.  PENALTIES AND SENTENCING
PENALTIES FOR MURDER

**Go to the Ohio Code Archive Directory**

*ORC Ann. 2929.023* (2013)

§ 2929.023. Defendant may raise matter of age

A person charged with aggravated murder and one or more specifications of an aggravating circumstance may, at trial, raise the matter of his age at the time of the alleged commission of the offense and may present evidence at trial that he was not eighteen years of age or older at the time of the alleged commission of the offense. The burdens of raising the matter of age, and of going forward with the evidence relating to the matter of age, are upon the defendant. After a defendant has raised the matter of age at trial, the prosecution shall have the burden of proving, by proof beyond a reasonable doubt, that the defendant was eighteen years of age or older at the time of the alleged commission of the offense.

A-51

Page's Ohio Revised Code Annotated:
Copyright (c) 2013 by Matthew Bender & Company, Inc., a member of the LexisNexis Group.
All rights reserved.

Current through Legislation passed by the 130th Ohio General Assembly
and filed with the Secretary of State through File 24
*** Annotations current through April 22, 2013 ***

TITLE 29. CRIMES -- PROCEDURE
CHAPTER 2929. PENALTIES AND SENTENCING
PENALTIES FOR MURDER

**Go to the Ohio Code Archive Directory**

*ORC Ann. 2929.03* (2013)

§ 2929.03. Imposing sentence for aggravated murder

(A) If the indictment or count in the indictment charging aggravated murder does not contain one or more specifications of aggravating circumstances listed in division (A) of *section 2929.04 of the Revised Code*, then, following a verdict of guilty of the charge of aggravated murder, the trial court shall impose sentence on the offender as follows:

(1) Except as provided in division (A)(2) of this section, the trial court shall impose one of the following sentences on the offender:

(a) Life imprisonment without parole;

(b) Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving twenty years of imprisonment;

(c) Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;

(d) Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving thirty full years of imprisonment;

(e) If the victim of the aggravated murder was less than thirteen years of age, the offender also is convicted of or pleads guilty to a sexual motivation specification that was included in the indictment, count in the indictment, or information charging the offense, and the trial court does not impose a sentence of life imprisonment without parole on the offender pursuant to division (A)(1)(a) of this section, the trial court shall sentence the offender pursuant to division (B)(3) of *section 2971.03 of the Revised Code* to an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment that shall be served pursuant to that section.

(2) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, the trial court shall impose upon the offender a sentence of life imprisonment without parole that shall be served pursuant to *section 2971.03 of the Revised Code*.

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7824

ORC Ann. 2929.03

(B) If the indictment or count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of *section 2929.04 of the Revised Code*, the verdict shall separately state whether the accused is found guilty or not guilty of the principal charge and, if guilty of the principal charge, whether the offender was eighteen years of age or older at the time of the commission of the offense, if the matter of age was raised by the offender pursuant to *section 2929.023 [2929.02.3] of the Revised Code*, and whether the offender is guilty or not guilty of each specification. The jury shall be instructed on its duties in this regard. The instruction to the jury shall include an instruction that a specification shall be proved beyond a reasonable doubt in order to support a guilty verdict on the specification, but the instruction shall not mention the penalty that may be the consequence of a guilty or not guilty verdict on any charge or specification.

(C) (1) If the indictment or count in the indictment charging aggravated murder contains one or more specifications of aggravating circumstances listed in division (A) of *section 2929.04 of the Revised Code*, then, following a verdict of guilty of the charge but not guilty of each of the specifications, and regardless of whether the offender raised the matter of age pursuant to *section 2929.023 [2929.02.3] of the Revised Code*, the trial court shall impose sentence on the offender as follows:

(a) Except as provided in division (C)(1)(b) of this section, the trial court shall impose one of the following sentences on the offender:

(i) Life imprisonment without parole;

(ii) Subject to division (C)(1)(a)(v) of this section, life imprisonment with parole eligibility after serving twenty years of imprisonment;

(iii) Subject to division (C)(1)(a)(v) of this section, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;

(iv) Subject to division (C)(1)(a)(v) of this section, life imprisonment with parole eligibility after serving thirty full years of imprisonment;

(v) If the victim of the aggravated murder was less than thirteen years of age, the offender also is convicted of or pleads guilty to a sexual motivation specification that was included in the indictment, count in the indictment, or information charging the offense, and the trial court does not impose a sentence of life imprisonment without parole on the offender pursuant to division (C)(1)(a)(i) of this section, the trial court shall sentence the offender pursuant to division (B)(3) of *section 2971.03 of the Revised Code* to an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment.

(b) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, the trial court shall impose upon the offender a sentence of life imprisonment without parole that shall be served pursuant to *section 2971.03 of the Revised Code*.

(2) (a) If the indictment or count in the indictment contains one or more specifications of aggravating circumstances listed in division (A) of *section 2929.04 of the Revised Code* and if the offender is found guilty of both the charge and one or more of the specifications, the penalty to be imposed on the offender shall be one of the following:

(i) Except as provided in division (C)(2)(a)(ii) or (iii) of this section, the penalty to be imposed on the offender shall be death, life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment.

A-53

ORC Ann. 2929.03

(ii) Except as provided in division (C)(2)(a)(iii) of this section, if the victim of the aggravated murder was less than thirteen years of age, the offender also is convicted of or pleads guilty to a sexual motivation specification that was included in the indictment, count in the indictment, or information charging the offense, and the trial court does not impose a sentence of death or life imprisonment without parole on the offender pursuant to division (C)(2)(a)(i) of this section, the penalty to be imposed on the offender shall be an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment that shall be imposed pursuant to division (B)(3) of *section 2971.03 of the Revised Code* and served pursuant to that section.

(iii) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, the penalty to be imposed on the offender shall be death or life imprisonment without parole that shall be served pursuant to *section 2971.03 of the Revised Code*.

(b) A penalty imposed pursuant to division (C)(2)(a)(i), (ii), or (iii) of this section shall be determined pursuant to divisions (D) and (E) of this section and shall be determined by one of the following:

(i) By the panel of three judges that tried the offender upon the offender's waiver of the right to trial by jury;

(ii) By the trial jury and the trial judge, if the offender was tried by jury.

(D) (1) Death may not be imposed as a penalty for aggravated murder if the offender raised the matter of age at trial pursuant to *section 2929.023 [2929.02.3] of the Revised Code* and was not found at trial to have been eighteen years of age or older at the time of the commission of the offense. When death may be imposed as a penalty for aggravated murder, the court shall proceed under this division. When death may be imposed as a penalty, the court, upon the request of the defendant, shall require a pre-sentence investigation to be made and, upon the request of the defendant, shall require a mental examination to be made, and shall require reports of the investigation and of any mental examination submitted to the court, pursuant to *section 2947.06 of the Revised Code*. No statement made or information provided by a defendant in a mental examination or proceeding conducted pursuant to this division shall be disclosed to any person, except as provided in this division, or be used in evidence against the defendant on the issue of guilt in any retrial. A pre-sentence investigation or mental examination shall not be made except upon request of the defendant. Copies of any reports prepared under this division shall be furnished to the court, to the trial jury if the offender was tried by a jury, to the prosecutor, and to the offender or the offender's counsel for use under this division. The court, and the trial jury if the offender was tried by a jury, shall consider any report prepared pursuant to this division and furnished to it and any evidence raised at trial that is relevant to the aggravating circumstances the offender was found guilty of committing or to any factors in mitigation of the imposition of the sentence of death, shall hear testimony and other evidence that is relevant to the nature and circumstances of the aggravating circumstances the offender was found guilty of committing, the mitigating factors set forth in division (B) of *section 2929.04 of the Revised Code*, and any other factors in mitigation of the imposition of the sentence of death, and shall hear the statement, if any, of the offender, and the arguments, if any, of counsel for the defense and prosecution, that are relevant to the penalty that should be imposed on the offender. The defendant shall be given great latitude in the presentation of evidence of the mitigating factors set forth in division (B) of *section 2929.04 of the Revised Code* and of any other factors in mitigation of the imposition of the sentence of death. If the offender chooses to make a statement, the offender is subject to cross-examination only if the offender consents to make the statement under oath or affirmation.

The defendant shall have the burden of going forward with the evidence of any factors in mitigation of the imposition of the sentence of death. The prosecution shall have the burden of proving, by proof beyond a reasonable doubt, that the aggravating circumstances the defendant was found guilty of committing are sufficient to outweigh the factors in mitigation of the imposition of the sentence of death.

(2) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted pursuant to division (D)(1) of this section, the

A-54

ORC Ann. 2929.03

trial jury, if the offender was tried by a jury, shall determine whether the aggravating circumstances the offender was found guilty of committing are sufficient to outweigh the mitigating factors present in the case. If the trial jury unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, the trial jury shall recommend to the court that the sentence of death be imposed on the offender. Absent such a finding, the jury shall recommend that the offender be sentenced to one of the following:

(a) Except as provided in division (D)(2)(b) or (c) of this section, to life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, or life imprisonment with parole eligibility after serving thirty full years of imprisonment;

(b) Except as provided in division (D)(2)(c) of this section, if the victim of the aggravated murder was less than thirteen years of age, the offender also is convicted of or pleads guilty to a sexual motivation specification that was included in the indictment, count in the indictment, or information charging the offense, and the jury does not recommend a sentence of life imprisonment without parole pursuant to division (D)(2)(a) of this section, to an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment to be imposed pursuant to division (B)(3) of *section 2971.03 of the Revised Code* and served pursuant to that section.

(c) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, to life imprisonment without parole.

If the trial jury recommends that the offender be sentenced to life imprisonment without parole, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment, life imprisonment with parole eligibility after serving thirty full years of imprisonment, or an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment to be imposed pursuant to division (B)(3) of *section 2971.03 of the Revised Code*, the court shall impose the sentence recommended by the jury upon the offender. If the sentence is an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment imposed as described in division (D)(2)(b) of this section or a sentence of life imprisonment without parole imposed under division (D)(2)(c) of this section, the sentence shall be served pursuant to *section 2971.03 of the Revised Code.* If the trial jury recommends that the sentence of death be imposed upon the offender, the court shall proceed to impose sentence pursuant to division (D)(3) of this section.

(3) Upon consideration of the relevant evidence raised at trial, the testimony, other evidence, statement of the offender, arguments of counsel, and, if applicable, the reports submitted to the court pursuant to division (D)(1) of this section, if, after receiving pursuant to division (D)(2) of this section the trial jury's recommendation that the sentence of death be imposed, the court finds, by proof beyond a reasonable doubt, or if the panel of three judges unanimously finds, by proof beyond a reasonable doubt, that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors, it shall impose sentence of death on the offender. Absent such a finding by the court or panel, the court or the panel shall impose one of the following sentences on the offender:

(a) Except as provided in division (D)(3)(b) of this section, one of the following:

(i) Life imprisonment without parole;

(ii) Subject to division (D)(3)(a)(iv) of this section, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;

(iii) Subject to division (D)(3)(a)(iv) of this section, life imprisonment with parole eligibility after serving thirty full years of imprisonment;

(iv) If the victim of the aggravated murder was less than thirteen years of age, the offender also is convicted

A-55

ORC Ann. 2929.03

of or pleads guilty to a sexual motivation specification that was included in the indictment, count in the indictment, or information charging the offense, and the trial court does not impose a sentence of life imprisonment without parole on the offender pursuant to division (D)(3)(a)(i) of this section, the court or panel shall sentence the offender pursuant to division (B)(3) of *section 2971.03 of the Revised Code* to an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment.

(b) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, life imprisonment without parole that shall be served pursuant to *section 2971.03 of the Revised Code.*

(E) If the offender raised the matter of age at trial pursuant to *section 2929.023 [2929.02.3] of the Revised Code,* was convicted of aggravated murder and one or more specifications of an aggravating circumstance listed in division (A) of *section 2929.04 of the Revised Code,* and was not found at trial to have been eighteen years of age or older at the time of the commission of the offense, the court or the panel of three judges shall not impose a sentence of death on the offender. Instead, the court or panel shall impose one of the following sentences on the offender:

(1) Except as provided in division (E)(2) of this section, one of the following:

(a) Life imprisonment without parole;

(b) Subject to division (E)(2)(d) of this section, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;

(c) Subject to division (E)(2)(d) of this section, life imprisonment with parole eligibility after serving thirty full years of imprisonment;

(d) If the victim of the aggravated murder was less than thirteen years of age, the offender also is convicted of or pleads guilty to a sexual motivation specification that was included in the indictment, count in the indictment, or information charging the offense, and the trial court does not impose a sentence of life imprisonment without parole on the offender pursuant to division (E)(2)(a) of this section, the court or panel shall sentence the offender pursuant to division (B)(3) of *section 2971.03 of the Revised Code* to an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment.

(2) If the offender also is convicted of or pleads guilty to a sexual motivation specification and a sexually violent predator specification that are included in the indictment, count in the indictment, or information that charged the aggravated murder, life imprisonment without parole that shall be served pursuant to *section 2971.03 of the Revised Code.*

(F) The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of *section 2929.04 of the Revised Code,* the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. The court or panel, when it imposes life imprisonment or an indefinite term consisting of a minimum term of thirty years and a maximum term of life imprisonment under division (D) of this section, shall state in a separate opinion its specific findings of which of the mitigating factors set forth in division (B) of *section 2929.04 of the Revised Code* it found to exist, what other mitigating factors it found to exist, what aggravating circumstances the offender was found guilty of committing, and why it could not find that these aggravating circumstances were sufficient to outweigh the mitigating factors. For cases in which a sentence of death is imposed for an offense committed before January 1, 1995, the court or panel shall file the opinion required to be prepared by this division with the clerk of the appropriate court of appeals and with the clerk of the supreme court within fifteen days after the court or panel imposes sentence. For cases in which a sentence of death is imposed for an

A-56

Page 6

ORC Ann. 2929.03

offense committed on or after January 1, 1995, the court or panel shall file the opinion required to be prepared by this division with the clerk of the supreme court within fifteen days after the court or panel imposes sentence. The judgment in a case in which a sentencing hearing is held pursuant to this section is not final until the opinion is filed.

(G) (1) Whenever the court or a panel of three judges imposes a sentence of death for an offense committed before January 1, 1995, the clerk of the court in which the judgment is rendered shall deliver the entire record in the case to the appellate court.

(2) Whenever the court or a panel of three judges imposes a sentence of death for an offense committed on or after January 1, 1995, the clerk of the court in which the judgment is rendered shall deliver the entire record in the case to the supreme court.

A-57

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7829

Page 1

Page's Ohio Revised Code Annotated:
Copyright (c) 2013 by Matthew Bender & Company, Inc., a member of the LexisNexis Group.
All rights reserved.

Current through Legislation passed by the 130th Ohio General Assembly
and filed with the Secretary of State through File 24
*** Annotations current through April 22, 2013 ***

TITLE 29.  CRIMES -- PROCEDURE
CHAPTER 2929.  PENALTIES AND SENTENCING
PENALTIES FOR MURDER

**Go to the Ohio Code Archive Directory**

*ORC Ann. 2929.04  (2013)*

§ 2929.04. Criteria for imposing death or imprisonment for a capital offense

(A) Imposition of the death penalty for aggravated murder is precluded unless one or more of the following is specified in the indictment or count in the indictment pursuant to *section 2941.14 of the Revised Code* and proved beyond a reasonable doubt:

(1) The offense was the assassination of the president of the United States or a person in line of succession to the presidency, the governor or lieutenant governor of this state, the president-elect or vice president-elect of the United States, the governor-elect or lieutenant governor-elect of this state, or a candidate for any of the offices described in this division. For purposes of this division, a person is a candidate if the person has been nominated for election according to law, if the person has filed a petition or petitions according to law to have the person's name placed on the ballot in a primary or general election, or if the person campaigns as a write-in candidate in a primary or general election.

(2) The offense was committed for hire.

(3) The offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender.

(4) The offense was committed while the offender was under detention or while the offender was at large after having broken detention. As used in division (A)(4) of this section, "detention" has the same meaning as in *section 2921.01 of the Revised Code*, except that detention does not include hospitalization, institutionalization, or confinement in a mental health facility or mental retardation and developmentally disabled facility unless at the time of the commission of the offense either of the following circumstances apply:

(a) The offender was in the facility as a result of being charged with a violation of a section of the Revised Code.

(b) The offender was under detention as a result of being convicted of or pleading guilty to a violation of a section of the Revised Code.

(5) Prior to the offense at bar, the offender was convicted of an offense an essential element of which was the purposeful killing of or attempt to kill another, or the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender.

A-58

ORC Ann. 2929.04

(6) The victim of the offense was a law enforcement officer, as defined in *section 2911.01 of the Revised Code*, whom the offender had reasonable cause to know or knew to be a law enforcement officer as so defined, and either the victim, at the time of the commission of the offense, was engaged in the victim's duties, or it was the offender's specific purpose to kill a law enforcement officer as so defined.

(7) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping, rape, aggravated arson, aggravated robbery, or aggravated burglary, and either the offender was the principal offender in the commission of the aggravated murder or, if not the principal offender, committed the aggravated murder with prior calculation and design.

(8) The victim of the aggravated murder was a witness to an offense who was purposely killed to prevent the victim's testimony in any criminal proceeding and the aggravated murder was not committed during the commission, attempted commission, or flight immediately after the commission or attempted commission of the offense to which the victim was a witness, or the victim of the aggravated murder was a witness to an offense and was purposely killed in retaliation for the victim's testimony in any criminal proceeding.

(9) The offender, in the commission of the offense, purposefully caused the death of another who was under thirteen years of age at the time of the commission of the offense, and either the offender was the principal offender in the commission of the offense or, if not the principal offender, committed the offense with prior calculation and design.

(10) The offense was committed while the offender was committing, attempting to commit, or fleeing immediately after committing or attempting to commit terrorism.

(B) If one or more of the aggravating circumstances listed in division (A) of this section is specified in the indictment or count in the indictment and proved beyond a reasonable doubt, and if the offender did not raise the matter of age pursuant to *section 2929.023 [2929.02.3] of the Revised Code* or if the offender, after raising the matter of age, was found at trial to have been eighteen years of age or older at the time of the commission of the offense, the court, trial jury, or panel of three judges shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:

(1) Whether the victim of the offense induced or facilitated it;

(2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

(3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law;

(4) The youth of the offender;

(5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

(6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death.

(C) The defendant shall be given great latitude in the presentation of evidence of the factors listed in division (B) of this section and of any other factors in mitigation of the imposition of the sentence of death.

The existence of any of the mitigating factors listed in division (B) of this section does not preclude the imposition

A-59

ORC Ann. 2929.04

of a sentence of death on the offender but shall be weighed pursuant to divisions (D)(2) and (3) of *section 2929.03 of the Revised Code* by the trial court, trial jury, or the panel of three judges against the aggravating circumstances the offender was found guilty of committing.

A-60

Page's Ohio Revised Code Annotated:
Copyright (c) 2013 by Matthew Bender & Company, Inc., a member of the LexisNexis Group.
All rights reserved.

Current through Legislation passed by the 130th Ohio General Assembly
and filed with the Secretary of State through File 24
*** Annotations current through April 22, 2013 ***

TITLE 29. CRIMES -- PROCEDURE
CHAPTER 2929. PENALTIES AND SENTENCING
PENALTIES FOR MURDER

**Go to the Ohio Code Archive Directory**

*ORC Ann. 2929.05* (2013)

§ 2929.05. Appellate review of death sentence

(A) Whenever sentence of death is imposed pursuant to *sections 2929.03* and *2929.04 of the Revised Code*, the court of appeals, in a case in which a sentence of death was imposed for an offense committed before January 1, 1995, and the supreme court shall review upon appeal the sentence of death at the same time that they review the other issues in the case. The court of appeals and the supreme court shall review the judgment in the case and the sentence of death imposed by the court or panel of three judges in the same manner that they review other criminal cases, except that they shall review and independently weigh all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate. In determining whether the sentence of death is appropriate, the court of appeals, in a case in which a sentence of death was imposed for an offense committed before January 1, 1995, and the supreme court shall consider whether the sentence is excessive or disproportionate to the penalty imposed in similar cases. They also shall review all of the facts and other evidence to determine if the evidence supports the finding of the aggravating circumstances the trial jury or the panel of three judges found the offender guilty of committing, and shall determine whether the sentencing court properly weighed the aggravating circumstances the offender was found guilty of committing and the mitigating factors. The court of appeals, in a case in which a sentence of death was imposed for an offense committed before January 1, 1995, or the supreme court shall affirm a sentence of death only if the particular court is persuaded from the record that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors present in the case and that the sentence of death is the appropriate sentence in the case.

A court of appeals that reviews a case in which the sentence of death is imposed for an offense committed before January 1, 1995, shall file a separate opinion as to its findings in the case with the clerk of the supreme court. The opinion shall be filed within fifteen days after the court issues its opinion and shall contain whatever information is required by the clerk of the supreme court.

(B) The court of appeals, in a case in which a sentence of death was imposed for an offense committed before January 1, 1995, and the supreme court shall give priority over all other cases to the review of judgments in which the sentence of death is imposed and, except as otherwise provided in this section, shall conduct the review in accordance with the Rules of Appellate Procedure.

(C) At any time after a sentence of death is imposed pursuant to *section 2929.022* or *2929.03 of the Revised Code*,

A-61

ORC Ann. 2929.05

the court of common pleas that sentenced the offender shall vacate the sentence if the offender did not present evidence at trial that the offender was not eighteen years of age or older at the time of the commission of the aggravated murder for which the offender was sentenced and if the offender shows by a preponderance of the evidence that the offender was less than eighteen years of age at the time of the commission of the aggravated murder for which the offender was sentenced. The court is not required to hold a hearing on a motion filed pursuant to this division unless the court finds, based on the motion and any supporting information submitted by the defendant, any information submitted by the prosecuting attorney, and the record in the case, including any previous hearings and orders, probable cause to believe that the defendant was not eighteen years of age or older at the time of the commission of the aggravated murder for which the defendant was sentenced to death.

A-62

Page's Ohio Revised Code Annotated:
Copyright (c) 2013 by Matthew Bender & Company, Inc., a member of the LexisNexis Group.
All rights reserved.

Current through Legislation passed by the 130th Ohio General Assembly
and filed with the Secretary of State through File 24
*** Annotations current through April 22, 2013 ***

TITLE 29. CRIMES -- PROCEDURE
CHAPTER 2941. INDICTMENT
FORM AND SUFFICIENCY

**Go to the Ohio Code Archive Directory**

*ORC Ann. 2941.25 (2013)*

§ 2941.25. Multiple counts

   (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

   (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

A-63

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7835

Page 1

Page's Ohio Revised Code Annotated.
Copyright (c) 2013 by Matthew Bender & Company, Inc., a member of the LexisNexis Group.
All rights reserved.

Current through Legislation passed by the 130th Ohio General Assembly
and filed with the Secretary of State through File 24
*** Annotations current through April 22, 2013 ***

TITLE 29.  CRIMES -- PROCEDURE
CHAPTER 2949.  EXECUTION OF SENTENCE
DEATH SENTENCE

**Go to the Ohio Code Archive Directory**

*ORC Ann. 2949.22  (2013)*

§ 2949.22. Execution of death sentence

(A) Except as provided in division (C) of this section, a death sentence shall be executed by causing the application to the person, upon whom the sentence was imposed, of a lethal injection of a drug or combination of drugs of sufficient dosage to quickly and painlessly cause death. The application of the drug or combination of drugs shall be continued until the person is dead. The warden of the correctional institution in which the sentence is to be executed or another person selected by the director of rehabilitation and correction shall ensure that the death sentence is executed.

(B) A death sentence shall be executed within the walls of the state correctional institution designated by the director of rehabilitation and correction as the location for executions, within an enclosure to be prepared for that purpose, under the direction of the warden of the institution or, in the warden's absence, a deputy warden, and on the day designated by the judge passing sentence or otherwise designated by a court in the course of any appellate or postconviction proceedings. The enclosure shall exclude public view.

(C) If a person is sentenced to death, and if the execution of a death sentence by lethal injection has been determined to be unconstitutional, the death sentence shall be executed by using any different manner of execution prescribed by law subsequent to the effective date of this amendment instead of by causing the application to the person of a lethal injection of a drug or combination of drugs of sufficient dosage to quickly and painlessly cause death, provided that the subsequently prescribed different manner of execution has not been determined to be unconstitutional. The use of the subsequently prescribed different manner of execution shall be continued until the person is dead. The warden of the state correctional institution in which the sentence is to be executed or another person selected by the director of rehabilitation and correction shall ensure that the sentence of death is executed.

(D) No change in the law made by the amendment to this section that took effect on October 1, 1993, or by this amendment constitutes a declaration by or belief of the general assembly that execution of a death sentence by electrocution is a cruel and unusual punishment proscribed by the Ohio Constitution or the United States Constitution.

A-64

Page 1

OHIO RULES OF COURT SERVICE
Copyright © 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** Rules current through rule amendments received through June 1, 2013 ***
*** Annotations current through April 8, 2013 ***

Ohio Rules Of Criminal Procedure

*Ohio Crim. R 11* (2013)

Review Court Orders which may amend this Rule.

**Rule 11. Pleas, rights upon plea**

**(A) Pleas.**

A defendant may plead not guilty, not guilty by reason of insanity, guilty or, with the consent of the court, no contest. A plea of not guilty by reason of insanity shall be made in writing by either the defendant or the defendant's attorney. All other pleas may be made orally. The pleas of not guilty and not guilty by reason of insanity may be joined. If a defendant refuses to plead, the court shall enter a plea of not guilty on behalf of the defendant.

**(B) Effect of guilty or no contest pleas.**

With reference to the offense or offenses to which the plea is entered:

**(1)** The plea of guilty is a complete admission of the defendant's guilt.

**(2)** The plea of no contest is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment, information, or complaint, and the plea or admission shall not be used against the defendant in any subsequent civil or criminal proceeding.

**(3)** When a plea of guilty or no contest is accepted pursuant to this rule, the court, except as provided in divisions (C)(3) and (4) of this rule, shall proceed with sentencing under *Crim.R. 32.*

**(C) Pleas of guilty and no contest in felony cases.**

**(1)** Where in a felony case the defendant is unrepresented by counsel the court shall not accept a plea of guilty or no contest unless the defendant, after being readvised that he or she has the right to be represented by retained counsel, or pursuant to *Crim.R. 44* by appointed counsel, waives this right.

**(2)** In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

**(a)** Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

**(b)** Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or

A-65

Ohio Crim. R 11

no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

(3) With respect to aggravated murder committed on and after January 1, 1974, the defendant shall plead separately to the charge and to each specification, if any. A plea of guilty or no contest to the charge waives the defendant's right to a jury trial, and before accepting a plea of guilty or no contest the court shall so advise the defendant and determine that the defendant understands the consequences of the plea.

If the indictment contains no specification, and a plea of guilty or no contest to the charge is accepted, the court shall impose the sentence provided by law.

If the indictment contains one or more specifications, and a plea of guilty or no contest to the charge is accepted, the court may dismiss the specifications and impose sentence accordingly, in the interests of justice.

If the indictment contains one or more specifications that are not dismissed upon acceptance of a plea of guilty or no contest to the charge, or if pleas of guilty or no contest to both the charge and one or more specifications are accepted, a court composed of three judges shall: (a) determine whether the offense was aggravated murder or a lesser offense; and (b) if the offense is determined to have been a lesser offense, impose sentence accordingly; or (c) if the offense is determined to have been aggravated murder, proceed as provided by law to determine the presence or absence of the specified aggravating circumstances and of mitigating circumstances, and impose sentence accordingly.

(4) With respect to all other cases the court need not take testimony upon a plea of guilty or no contest.

**(D) Misdemeanor cases involving serious offenses.**

In misdemeanor cases involving serious offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such plea without first addressing the defendant personally and informing the defendant of the effect of the pleas of guilty, no contest, and not guilty and determining that the defendant is making the plea voluntarily. Where the defendant is unrepresented by counsel the court shall not accept a plea of guilty or no contest unless the defendant, after being readvised that he or she has the right to be represented by retained counsel, or pursuant to *Crim.R. 44* by appointed counsel, waives this right.

**(E) Misdemeanor cases involving petty offenses.**

In misdemeanor cases involving petty offenses the court may refuse to accept a plea of guilty or no contest, and shall not accept such plea without first informing the defendant of the effect of the pleas of guilty, no contest, and not guilty.

The counsel provisions of *Crim.R. 44(B)* and (C) apply to division (E) of this rule.

**(F) Negotiated plea in felony cases.**

When, in felony cases, a negotiated plea of guilty or no contest to one or more offenses charged or to one or more other or lesser offenses is offered, the underlying agreement upon which the plea is based shall be stated on the record in open court.

**(G) Refusal of court to accept plea.**

If the court refuses to accept a plea of guilty or no contest, the court shall enter a plea of not guilty on behalf of the

A-66

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7838

Page 3

Ohio Crim. R 11

defendant. In such cases neither plea shall be admissible in evidence nor be the subject of comment by the prosecuting attorney or court.

**(H) Defense of insanity.**

The defense of not guilty by reason of insanity must be pleaded at the time of arraignment, except that the court for good cause shown shall permit such a plea to be entered at any time before trial.

A-67

OHIO RULES OF COURT SERVICE
Copyright © 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** Rules current through rule amendments received through June 1, 2013 ***
*** Annotations current through April 8, 2013 ***

Ohio Rules Of Criminal Procedure

*Ohio Crim. R 32  (2013)*

Review Court Orders which may amend this Rule.

**Rule 32. Sentence**

**(A) Imposition of sentence.**

Sentence shall be imposed without unnecessary delay. Pending sentence, the court may commit the defendant or continue or alter the bail. At the time of imposing sentence, the court shall do all of the following:

(1) Afford counsel an opportunity to speak on behalf of the defendant and address the defendant personally and ask if he or she wishes to make a statement in his or her own behalf or present any information in mitigation of punishment.

(2) Afford the prosecuting attorney an opportunity to speak;

(3) Afford the victim the rights provided by law;

(4) In serious offenses, state its statutory findings and give reasons supporting those findings, if appropriate.

**(B) Notification of right to appeal.**

(1) After imposing sentence in a serious offense that has gone to trial, the court shall advise the defendant that the defendant has a right to appeal the conviction.

(2) After imposing sentence in a serious offense, the court shall advise the defendant of the defendant's right, where applicable, to appeal or to seek leave to appeal the sentence imposed.

(3) If a right to appeal or a right to seek leave to appeal applies under division (B)(1) or (B)(2) of this rule, the court shall also advise the defendant of all of the following:

(a) That if the defendant is unable to pay the cost of an appeal, the defendant has the right to appeal without payment;

(b) That if the defendant is unable to obtain counsel for an appeal, counsel will be appointed without cost;

(c) That if the defendant is unable to pay the costs of documents necessary to an appeal, the documents will be provided without cost;

(d) That the defendant has a right to have a notice of appeal timely filed on his or her behalf.

A-68

Ohio Crim. R 32

Upon defendant's request, the court shall forthwith appoint counsel for appeal.

**(C) Judgment.**

A judgment of conviction shall set forth the plea, the verdict, or findings, upon which each conviction is based, and the sentence. Multiple judgments of conviction may be addressed in one judgment entry. If the defendant is found not guilty or for any other reason is entitled to be discharged, the court shall render judgment accordingly. The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal by the clerk.

A-69

OHIO RULES OF COURT SERVICE
Copyright © 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** Rules current through rule amendments received through June 1, 2013 ***
*** Annotations current through April 8, 2013 ***

Rules Of Superintendence For The Courts Of Ohio

*Ohio Sup. R. 20*   (2013)

Review Court Orders which may amend this Rule.

**Rule 20. Appointment of counsel for indigent defendants in capital cases**

**I. Scope of rules.**

   **(A)** Rules 20 through 20.05 of the Rules of Superintendence for the Courts of Ohio shall apply in cases where an indigent defendant has been charged with aggravated murder and the indictment includes one or more specifications of aggravating circumstances listed in division (A) of *section 2929.04 of the Revised Code*. These rules shall apply in cases where a juvenile defendant is indicted for a capital offense, but because of the juvenile's age, cannot be sentenced to death.

   **(B)** The provisions for the appointment of counsel set forth in *Sup.R. 20* through *20.05* apply only in cases where the defendant is indigent and counsel is not privately retained by or for the defendant.

   **(C)** If the defendant is entitled to the appointment of counsel, the court shall appoint two attorneys certified pursuant to *Sup.R. 20* through *20.05*. If the defendant engages one privately retained attorney, the court shall not appoint a second attorney pursuant to this rule.

   **(D)** The provisions of *Sup.R. 20* through *20.05* apply in addition to the reporting requirements created by *section 2929.021 of the Revised Code*.

   **II. Appointment of counsel for indigent defendants in capital cases.**

   **(A) Trial counsel.**

   At least two attorneys shall be appointed by the court to represent an indigent defendant charged with aggravated murder and the indictment includes one or more specifications of aggravating circumstances listed in *R.C. 2929.04(A)*. At least one of the appointed counsel shall maintain a law office in Ohio and have experience in Ohio criminal trial practice. The counsel appointed shall be designated "lead counsel" and "co-counsel" and must meet the qualifications set forth in *Sup.R. 20.01*.

   **(B) Appellate counsel.**

   At least two attorneys shall be appointed by the court to appeal cases where the trial court has imposed the death penalty on an indigent defendant. At least one of the appointed counsel shall maintain a law office in Ohio. Appointed counsel shall meet the qualifications for appellate counsel set forth in *Sup.R. 20.01*.

   **(C) Exceptional circumstances.**

   If an attorney does not satisfy the requirements of divisions (A) or (B) of this section, the attorney may be certified as lead counsel, co-counsel, or appellate counsel if it can be demonstrated to the satisfaction of the Committee on the Appointment of Counsel for Indigent Defendants in Capital Cases that competent representation will be provided to the defendant. In so determining, the committee may consider all of the factors in *Sup.R. 20.01* and any other relevant considerations.

A-70

Ohio Sup. R. 20

**III. Procedures for court appointments of counsel.**

**(A) Appointing counsel.**

Only counsel who have been certified by the committee shall be appointed to represent indigent defendants charged with aggravated murder and the indictment includes one or more specifications of aggravating circumstances listed in division (A) of *section 2929.04 of the Revised Code*. Each court may adopt local rules establishing qualifications in addition to and not in conflict with those established by *Sup.R. 20.01*. Appointments of counsel for these cases should be distributed as widely as possible among the certified attorneys in the jurisdiction of the appointing court.

**(B) Workload of appointed counsel.**

**(1)** In appointing counsel, the court shall consider the nature and volume of the workload of the prospective counsel to ensure that counsel, if appointed, could direct sufficient attention to the defense of the case and provide competent representation to the defendant.

**(2)** Attorneys accepting appointments shall provide each client with competent representation in accordance with constitutional and professional standards. Appointed counsel shall not accept workloads that, by reason of their excessive size, interfere with the rendering of competent representation or lead to the breach of professional obligations.

**(C) Notice to the committee.**

**(1)** Within two weeks of appointment, the appointing court shall notify the committee secretary of the appointment on a form prescribed by the committee. The notice shall include all of the following:

    **(a)** The court and the judge assigned to the case;

    **(b)** The case name and number;

    **(c)** A copy of the indictment;

    **(d)** The names, business addresses, telephone numbers, and certification of all attorneys appointed;

    **(e)** Any other information considered relevant by the committee or appointing court.

**(2)** Within two weeks of disposition, the trial court shall notify the committee secretary of the disposition of the case on a form prescribed by the committee. The notice shall include all of the following:

    **(a)** The outcome of the case;

    **(b)** The title and section of the Revised Code of any crimes to which the defendant pleaded or was found guilty;

    **(c)** The date of dismissal, acquittal, or that sentence was imposed;

    **(d)** The sentence, if any;

    **(e)** A copy of the judgment entry reflecting the above;

    **(f)** If the death penalty was imposed, the name of counsel appointed to represent the defendant on appeal;

    **(g)** Any other information considered relevant by the Committee or trial court.

**(D) Support services.**

The appointing court shall provide appointed counsel, as required by Ohio law or the federal Constitution, federal statutes, and professional standards, with the investigator, mitigation specialists, mental health professional, and other forensic experts and other support services reasonably necessary or appropriate for counsel to prepare for and present an adequate defense at every stage of the proceedings including, but not limited to, determinations relevant to competency to stand trial, a not guilty by reason of insanity plea, cross-examination of expert witnesses called by the prosecution, disposition following conviction, and preparation for and presentation of mitigating evidence in the sentencing phase of the trial. Lead counsel bears overall responsibility for the performance of the defense team and shall allocate, direct, and supervise the work in accordance with *Sup.R. 20* through *20.04* and professional standards. In addition, all counsel bear a responsibility to comply with *Sup.R. 20* through *20.04* and professional standards.

A-71

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7843

IN THE SUPREME COURT OF OHIO

STATE OF OHIO,                          )
    Appellee,                         )        **CASE NO. 12-1644**
                                      )
    v.                                )        On Appeal from the Trumbull
                                      )        County Court of Common Pleas
                                      )        No. 01-CR-794
NATHANIEL JACKSON,                      )
    Appellant.                        )
                                      )        **DEATH PENALTY CASE**

---

### APPELLEE STATE OF OHIO'S ANSWER BRIEF

---

DENNIS WATKINS (#0009949)
Prosecuting Attorney, by
LuWAYNE ANNOS (#0055651)
CHARLES MORROW (#0040575)
Assistant Prosecuting Attorneys
Trumbull County Prosecutor's Office
160 High Street, N.W.
Fourth Floor, Administration Bldg.
Warren, Ohio 44481
Telephone No. (330) 675-2426
Fax No. (330) 675-2431
psannos@co.trumbull.oh.us

RANDALL L. PORTER (#0005835)
 Assistant State Public Defender
 250 E. Broad St., Suite 1400
 Columbus, Ohio   43215
 Telephone No. (614) 466-5394
 Fax No. (614) 644-0708
 Randall.Porter@OPD.ohio.gov

DENNIS L.  SIPE (#0006199)
Buell & Sipe, Co. L.P.A
322 Third St.
Marrietta, Ohio 45750
Telephone No. (740) 373-3219
 Fax (740) 373-2892
dennis@buellsipe.com

COUNSEL FOR
PLAINTIFF-APPELLEE
THE STATE OF OHIO

COUNSEL FOR
DEFENDANT-APPELLANT
NATHANIEL JACKSON

RECEIVED
NOV 15 2013
CLERK OF COURT
SUPREME COURT OF OHIO

FILED
NOV 15 2013
CLERK OF COURT
SUPREME COURT OF OHIO

## TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES..................................................................................................iv

STATEMENT OF FACTS................................................................................................1

ARGUMENT IN OPPOSITION TO APPELLANT'S PROPOSITIONS OF LAW.............4

State's Answer to Appellant's Proposition of Law No. I:
    A reviewing court has jurisdiction to entertain a direct appeal when the convicted
    offender files with his notice of appeal documents which comply with R.C.
    2929.03(F) and Crim. R. 32(C)......................................................................................4

State's Answer to Appellant's Proposition of Law No. II:
    A capital defendant precludes a finding of ineffective assistance of counsel when he
    voluntarily waives the right to one death-certified attorney and insists that the
    mitigation proceed with a highly qualified and trained criminal attorney...............13

State's Answer to Appellant's Proposition of Law No. III:
    A trial judge has no duty or obligation to recuse himself from a capital case
    when the Chief Justice of this Court has twice denied motions of disqualification
    because the complaining defendant fails to demonstrate bias or ill-will
    on the part of the judge...................................................................................................19

State's Answer to Appellant's Proposition of Law No. IV:
    When a capital defendant has been represented by two death-qualified
    attorneys for five years, the trial court does not abuse its discretion by denying
    an eleventh-hour motion to stall a simple resentencing hearing so that one
    of those attorneys can shirk his duty to his client and the court...............................26

State's Answer to Appellant's Proposition of Law No. V:
    A remand for re-sentencing does not require a trial court to consider
    irrelevant or cumulative "evidence" when re-imposing a death sentence
    previously affirmed by this Court..................................................................................31

State's Answer to Appellant's Proposition of Law No. VI:
    A trial court does not trample a convicted, capital murderer's allocution
    right by permitting him to speak twice during a sentencing hearing and
    withholding the filing of the sentencing entry until after the hearing.......................38

ii

**TABLE OF CONTENTS CONT'D**

PAGE(S)

State's Answer to Appellant's Proposition of Law VII:
    A trial court commits no error in relying on portions of an original sentencing entry which have been affirmed by a superior court and portions of which were prepared personally by the judge in drafting the original entry....................................................................................................43

State's Answer to Appellant's Proposition of Law VIII:
    A trial court does not err in declining to merge charges and specifications which sound in aggravated robbery and aggravated burglary and which were clearly committed with a separate animus........................................48

State's Answer to Appellant's Proposition of Law IX:
    In the total absence of evidence to the contrary, a trial court properly re-imposes a death sentence which has already survived appellate review by a superior court........................................................................................57

State's Answer to Appellant's Proposition of Law No. X:
    A capital defendant waives constitutional challenges to Ohio's death penalty statutes when he fails to articulate with specificity those challenges in the trial court......................................................................................................66

State's Response to Appellant's Proposition of Law No. XI:
    Since 1984, neither this Court, nor a federal court, has held that Ohio's death penalty statutes violate either the federal or state constitution................................73

State's Answer to Appellant's Proposition of Law No. XII:
    A defendant will not benefit from the cumulative error doctrine when he fails to demonstrate multiple errors.....................................................................78

CONCLUSION............................................................................................80

PROOF OF SERVICE..................................................................................81

iii

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Baze v. Rees,* 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008).......................67, 68

*Cooey v. Kasich,*  S.D, Ohio Nos. Nos. 2:04–cv–1156, 2:09–cv–242, 2:09–cv–823, 2:10–cv–27. (Nov. 4, 2011)................................................................................71, 72

*Davis v. Coyle,* 475 F. 3d 761 (6th Cir. 2007).........................................................33, 34

*Defiance v. Cannon,* 70 Ohio App.3d 821, 592 N.E.2d 884 (3rd Dist.1990)...........................39, 40

*Disciplinary Counsel v. Stuard.* 121 Ohio St.3d 29, 2009-Ohio-261, 901 N.E.2d 788...............44

*Fisher v. Fisher,* 8th Dist. No. 78092, 2001 WL 740100 (July 28, 2001)...........................47

*Gapen v. Bobby,* S.D. Ohio No. 3:08-CV-280, 2012 WL 3686303 (Aug. 27, 2012)...................72

*Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977)..................................45

*In re Disqualification of Eyster,* 105 Ohio St. 3d 1246, 2004-Ohio-7350....................................22

*In re Disqualification of Lawson,* 135 Ohio St. 3d 1243, 2012-Ohio-6237, 986 N.E. 2d 6..........22

*In re Disqualification of Park,* 991 N.E. 2d 244, 2013-Ohio-2834.............................................22

*In re Disqualification of Stuard,* 113 Ohio St. 1236, 2006-Ohio-7233, 863 N.E. 2d 636 ............................................................................................19, 20, 22, 23

*In re Disqualification of Stuard,* Ohio Supreme Ct. No. 08-AP-043...........................................27

*In Re Ohio Execution Protocol Litigation,* 906 F. Supp. 2d 759 (S.D.Ohio)...................69, 70, 71

*Scott v. Houk,* 127 Ohio St.3d 317, 2010-Ohio-5805, 939 N.E.2d 835.......................................67

*Moore v. Mitchell,* 708 F.3d 760 (6th Cir. 2013)........................................................34

*Perry Ed. Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37 (1983)........................................70

*Pulley v. Harris* 465 U.S. 37 (1984)..........................................................................75

*State ex rel. Bitter v. Missig,* 72 Ohio St.3d 249 (1995)..............................................12

*State ex. rel. Jackson v. Stuard,* 11th Dist. No. 2012-T-0062, 2012-Ohio-4209...................23, 24.

iv

## TABLE OF AUTHORITIES CONT'D

**PAGE(S)**

**CASES**

*State ex. rel. Jackson v. Stuard,* Ohio Supreme Court No. 2008-0028.........................................27

*State ex rel. Kline v. Carroll,* 96 Ohio St.3d 404, 2002 -Ohio- 4849, 775 N.E.2d 517................29

*State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections,* 80 Ohio St.3d 176 (1997).......................12

*State v. Awan,* 22 Ohio St.3d 120, 489 N.E.2d 277 (1986)..........................................................66

*State v. Brewer,* 2nd Dist. No. 87-CA-67, 1988 WL 88697 (Aug. 26, 1988)..........................11, 12

*State v. Buell,* 22 Ohio St.3d 124, 139-140, 489 N.E.2d 795 (1986)............................................74

*State v. Carter,* 89 Ohio St.3d 593, 2000–Ohio–172, 734 N.E.2d 345.........................................67

*State v. Chinn,* 85 Ohio St.3d 548, 709 N.E.2d 1166 (1999).................................................7, 8, 59

*State v. Coleman* 37 Ohio St.3d 286,  525 N.E.2d 792 (1988)......................................................29

*State v. Copeland,* 12th Dist. No. CA2007-02-039, 2007-Ohio-6168..........................................42

*State v. Cunigan* 195 Ohio App.3d 162, 2011-Ohio-4010, 958 N.E. 2d 1290 (2nd Dist.)......16, 78

*State v. Davis,* 63 Ohio St. 3d 44, 584 N.E. 2d 1192 (1992).........................................................59

*State v. D'Ambrosio,* 73 Ohio St.3d 141, 652 N.E.2d 710 (1995).................................................73

*State v. DeMarco,* 31 Ohio St.3d 191, 31 OBR 390, 509 N.E.2d 1256 (1987)..............................78

*State v. Esparza,* 39 Ohio St.3d 8 (1988)...................................................................................74

*State v. Ferguson,* 108 Ohio St. 3d, 2006-Ohio-1502, 844 N.E. 2d 806...............................73, 74

*State v. Frazier,* 58 Ohio St.2d 253, 12 O.O.3d 263, 389 N.E.2d 1118, (1979).....................50, 55

*State v. Fry,* 125 Ohio St. 3d 163, 2010-Ohio-1017, 929 N.E. 2d 1239............................9, 40, 41

*State v. Garner,* 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995)....................................................78

*State v. Getsy,* 84 Ohio St.3d 180, 702 N.E.2d 866 (1998).........................................................21

*State v. Gibson,* 69 Ohio App.2d 91 (8th Dist., 1980)................................................................17

v

**TABLE OF AUTHORITIES CONT'D**

**CASES**                                                                                     **PAGE(S)**

*State v. Green*  90 Ohio St.3d 352, 2000 -Ohio-182 ,738 N.E.2d 1208.......................................39

*State v. Hunter,*  131 Ohio St.3d 67,  2011-Ohio-6524, 960 N.E.2d 955..............................30, 78

*State v. Ishmail*  54 Ohio St.2d 402, 377 N.E.2d 500 (1978)................................................16, 17

*State v. Jackson,* 107 Ohio St. 3d 300, 2006-Ohio-1,839 N.E. 2d 362................................11, 14, 18, 36, 37, 45, 46, 57, 60, 61, 62, 63, 64, 65, 73, 75, 76

*State v. Jackson,* 111 Ohio St. 3d 1469, 2006-Ohio-5625, 855 N.E. 2d 1258.............................17

*State v. Jackson,* Ohio Supreme Ct. No. 2010-0865........................................................27

*State v. Jackson,* Ohio Supreme Ct. No. 2008-1610....................................................27, 28

*State v. Jackson*  190 Ohio App.3d 319,  941 N.E.2d 1221, 2010-Ohio-5054........................5, 10 11, 14, 23, 25, 27, 31, 44

*State v. Jackson,* 11th Dist. No. 2004-T-0089, 2006-Ohio-2651................................15, 16, 35, 64

*State v. Jackson,* 2008-T-0024, 2010-Ohio-1270.................................................27, 62

*State v. Jackson,* (May 13, 2010), 11th Dist. No. 2009-T-0050.....................................27

*State v. Jarvi,*  11th Dist. No. 2011-A-0063, 2012-Ohio-5590................................................54, 55

*State v. Johnson,* 128 Ohio St. 3d 153, 2010-Ohio-6314.................................................51, 52, 53

*State v. Jordan,* 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1............................................75

*State v. Ketterer,*  126 Ohio St.3d 448, 2010-Ohio-3831..........................................................5, 6

*State v. Logan*  60 Ohio St.2d 126, 397 N.E.2d 1345 (1979)..............................................48

*State v. Maynard,* 9th Dist. No. 07CAO116-M, 2009-Ohio-282.................................................40

*State v. Mitts,* 81 Ohio St.3d 223, 690 N.E.2d 522 (1998)...........................................56

*State v. Monroe,* 105 Ohio St. 3d 384, 2005-Ohio-2282.................................................50, 51

*State v. O'Neill,* 11th Dist. No. 2010-P-0041, 2011-Ohio-2202...................................17

vi

## <u>TABLE OF AUTHORITIES CONT'D</u>

<u>PAGE(S)</u>

<u>CASES</u>

*State v. Palmer,* 80 Ohio St. 3d 543, 687 N.E. 2d 685(1997)........................................................56

*State v. Perry,* 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104 (1967).....................13, 14, 58

*State v. Reynolds,* 80 Ohio St.3d 670, 1998-Ohio-171, 687 N.E.2d 1358....................9, 24, 40, 41

*State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168.........6, 24, 31, 32, 43, 46

*State v. Roberts,* --- N.E.2d ----, 2013 WL 5746121, 2013 -Ohio- 4580................6, 13, 14, 24, 37
38, 42, 59, 60, 78, 79

*State v. Short,* 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121................................76, 77

*State v. Slagle,* 65 Ohio St. 3d 597, 605 N.E.2d 916....................................................................50

*State v. Steffen,* 31 Ohio St. 3d 111, 509 N.E.383 (1987)......................................................49, 74

*State v. Unger,* 67 Ohio St. 2d 65, 423 N.E.2d 1078 (1981)...................................................27, 28

*State v. Warner,* 55 Ohio St.3d 31, 43, 564 N.E.2d 18, 30–31. (1990)........................................73

*State v. Williams,* 134 Ohio St.3d 482, 2012–Ohio–5699.........................................................48

*State v. Williams,* 74 Ohio St.3d 569,  660 N.E.2d 724 (1996).....................................................51

*State v. Wilson* 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381..............................13, 14

*Towery v. Brewer,* 672 F. 3d 650  (9th Circ., 2012)...............................................................69, 70

*Xu Yong Lu v. Ashcroft,* 259 F.3d 127 (2001)..............................................................................29

<u>CONSTITUTIONAL PROVISIONS</u>

U.S. Const. amend. VIII.........................................................................37, 42, 66, 68, 72

U.S. Const. amend. XIV...........................................................................42, 66, 68, 72

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7850

## TABLE OF AUTHORITIES CONT'D

**PAGE(S)**

**STATUTES**

R.C. 2701.03(B)(1)................................................................21

R.C. 2929.021................................................................76

R.C. 2929.03................................................................76

R.C. 2929.03(D)(1)................................................................74, 75

R.C. 2929.03(F)................................................................4

R.C. 2929.04................................................................75

R.C. 2929.04(B)................................................................10

R.C. 2929.05(A)................................................................75

R.C. 2949.22 (A)................................................................68, 69, 71

**RULES**

Crim. R. 32................................................................38, 42

Crim. R. 32(C)................................................................12

Crim. R. 52(A)................................................................30, 78

Sup. R. 20 II (A)................................................................26

viii

## STATEMENT OF FACTS

The Plaintiff-Appellee, the State of Ohio ("State"), will dispense with a recitation of the facts regarding the evidence it presented during the guilt or penalty phase of Defendant-Appellant's jury trial in 2002.  In the interest of judicial economy, the State would refer this Court to its unanimous opinion in *State v. Jackson*, 107 Ohio St. 3d 300, 2006-Ohio-1, 839 N.E.2d 362, ¶¶2-72 for a recitation of the facts concerning Appellant's role as the principal offender in the home-invasion shooting death of Robert Fingerhut. Mr. Fingerhut was a Youngstown, Ohio, businessman who resided in Howland Township, Trumbull County, Ohio, with Appellant's co-defendant, Donna Marie Roberts.  Briefly stated, while Appellant was incarcerated in an Ohio penitentiary on unrelated charges, he plotted with Roberts to kill Mr. Fingerhut for his insurance proceeds, a plot which he and his co-defendant successfully executed, killing Mr. Fingerhut.

The jury convicted Appellant on two counts of aggravated murder for killing Mr. Fingerhut in violation of R.C. 2903.01(A) and (B). Both murder counts carried two felony-murder death-penalty specifications: murder during an aggravated burglary and during an aggravated robbery. R.C. 2929.04(A)(7). The jury also convicted Appellant on separate counts of aggravated burglary and aggravated robbery with a firearm specification on each count. The jury recommended the death penalty which the trial court imposed and which this Court unanimously affirmed. *State v. Jackson*, 107 Ohio St. 3d 300, 2006-Ohio-1, 839 N.E.2d 362, ¶185.

Roberts was likewise convicted and sentenced to death for her role in the killing.  While this Court unanimously affirmed her conviction, it remanded her case for resentencing because "[t]he trial judge conceded that the prosecution had participated in the drafting of the opinion without the knowledge of defense counsel." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-

- 1 -

3665, 850 N.E.2d 1168, ¶155 (*Roberts I*).  Once this remand occurred, Appellant started a relentless campaign to, at minimum, secure a new sentencing hearing like the one this Court ordered for his co-defendant because the same judge who presided over the Roberts trial presided over Appellant's trial.  Most of these efforts are detailed in Appellant's brief at pages 1 through 4.  Suffice it say that in 2010 the Eleventh District Court of Appeals agreed that the trial court should conduct a new sentencing hearing for Appellant. *State v. Jackson,* 190 Ohio App. 3d 319, 2010-Ohio-5054, 941 N.E. 2d 1221.

Twenty-two months elapsed between the Eleventh District's remand and the August 14, 2012 re-sentencing hearing.  A mere 13 days before the scheduled hearing, Appellant's counsel from the Office of the Public Defender filed a motion with the trial court notifying the court that Atty. John Parker, who has signed on as "pro bono" counsel April 27, 2007, would be withdrawing from the case and that substitute counsel would need to be appointed. (T.d. 391). The Public Defender also requested a six-month continuance for new counsel to acquaint himself or herself with Appellant's case. (T.d. 392). The trial court denied the motion and proceeded with the re-sentencing (T.d. 415).

The trial court permitted Appellant to deliver a second allocution wherein he made no apology for his actions, no expression of remorse, but did tell the judge he did not want to go back to death row.  (Resentencing T.p. 21-22). The trial court re-imposed the identical sentence affirmed by this Court in 2006.  (T.d. 409, 410).  Pursuant to a motion to correct sentencing entry filed by the State (T.d. 412), the trial court redrafted the Judgment Entry on Sentence (T.d. 416). On October 22, 2013,  after Appellant had filed his merit brief in this matter, this Court remanded Roberts' case for a third sentencing hearing. *State v. Roberts,* --- N.E.2d ----, 2013

- 2 -

WL 5746121 (Ohio), 2013 -Ohio- 4580. ("*Roberts II*").  Other facts will be brought to the

Court's attention as necessary in the Argument portion of this brief.

- 3 -

## ARGUMENT IN OPPOSITION TO APPELLANT'S PROPOSITIONS OF LAW

**State's Answer to Appellant's Proposition of Law No. I:**
**A reviewing court has jurisdiction to entertain a direct appeal when the convicted offender files with his notice of appeal documents which comply with R.C. 2929.03(F) and Crim. R. 32(C).**

Appellant posits a jurisdictional argument that the trial court failed during the re-sentencing proceeding to comply with R.C. 2929.03(F) and that therefore this Court is without jurisdiction to entertain the instant appeal for want of a final appealable order. The record before this Court totally belies his argument.

R.C. 2929.03(F) sets forth the following criteria to establish a final appealable order in a death sentence: "The court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any of the mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors.*** The judgment in a case in which a sentencing hearing is held pursuant to this section is not final until the opinion is filed."

This Court recently revisited the topic of the death sentence as final appealable order: "'[I]n order to decide whether an order issued by a trial court in a criminal proceeding is a reviewable final order, appellate courts should apply the definitions of 'final order' contained in R.C. 2505.02.' *State v. Baker,* 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, ¶ 6, quoting *State v. Muncie* (2001), 91 Ohio St.3d 440, 444, 746 N.E.2d 1092, citing *State ex rel. Leis v. Kraft* (1984), 10 Ohio St.3d 34, 36, 10 OBR 237, 460 N.E.2d 1372. R.C. 2505.02(B) states: 'An order is a final order that may be reviewed, affirmed, modified, or reversed, with or

- 4 -

without retrial, when it is one of the following: '(1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment.'

"Crim.R. 32(C) sets forth the requirements for a final, appealable order in criminal cases. It states that '[a] judgment of conviction shall set forth the plea, the verdict, or findings, upon which each conviction is based, and the sentence.' It further states: 'The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal by the clerk'." *State v. Ketterer,* 126 Ohio St.3d 448, 2010-Ohio-3831, ¶8-11.

This Court has before it two entries filed by the trial court on August 14, 2012; (1) a Findings of Fact and Conclusions of Law (T.d. 410) and (2) an Entry on Sentence (T.d. 409). Pursuant to a motion by the State (T.d. 412), the trial court corrected the Entry on Sentence and filed a nunc pro tunc entry (T.d. 416) on August 16, 2012.  As Appellant correctly points out at page 13 of his brief, these two entries comprise a final appealable order.

Where Appellant goes astray is when he argues that the trial court failed to consider "any new mitigating factors" at the resentencing hearing.  In the remand by the Eleventh District Court of Appeals which mandated the re-sentencing, the court ordered as follows: "Based on the Supreme Court of Ohio's holding in *Roberts I* appellant is entitled to the same relief afforded to his co-defendant. Thus, the trial judge must personally review and evaluate the appropriateness of the death penalty, prepare an entirely new sentencing entry as required by R.C. 2929.03(F), and conduct whatever other proceedings are required by law and consistent with this opinion. Id. at ¶ 167." *State v. Jackson* 190 Ohio App.3d 319,  941 N.E.2d 1221, 2010-Ohio-5054, at ¶29.

By way of review, in Appellant's co-defendant's case, this Court ordered as followed: "Because of the prejudicial error in sentencing Roberts to death, the sentence of death is vacated, and the cause is hereby remanded to the trial court. On remand, the trial judge will afford

- 5 -

Roberts her right to allocute, and the trial court shall personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by R.C. 2929.03. The trial court will then personally prepare an entirely new penalty opinion as required by R.C. 2929.03(F) and conduct whatever other proceedings are required by law and consistent with this opinion." *Roberts I*, ¶167. It is noteworthy that neither court ordered that the evidentiary phase of the mitigation hearing for either offender be reopened or supplemented.

In a more recent opinion, this Court clarified any possible or perceived ambiguity with respect to its purpose in having Roberts resentenced. "In a case in which the defendant was not deprived of any constitutional right – including her Eighth Amendment right to present mitigation – at the time of her mitigation hearing, their seems to be no basis for requiring the trial court to reopen or supplement that evidence in a later proceeding." *State v. Roberts,* ---Ohio St. 3d.--,.2013-Ohio-4580, --N.E.2d--, ¶36. (*Roberts II*). This Court continued: "The concurring and dissenting opinion interprets *Roberts I* as *ordering* the trial court to hold a new mitigation hearing and to permit Roberts to introduce mitigating evidence. *Roberts I* did no such thing." *Id.* at ¶41-42. After restating its order in *Roberts I,* this Court held: " The [original Roberts resentencing] order says nothing about holding a new evidentiary hearing. Nor is a requirement to hold a new evidentiary hearing implicit in our instructing the trial court to 'weigh the aggravating circumstances against any relevant mitigating evidence' and 'determine anew the appropriateness of the death penalty'." *Roberts II,* ¶43.

As an aside, the trial court permitted Appellant to allocute at both sentencing hearings. The trial court had inadvertently omitted the allocution portion of Roberts' original sentencing hearing, but did not make the same omission in Appellant's case. Nevertheless, the trial court

- 6 -

extended the same courtesy to Appellant as was done with Appellant's co-defendant. And while this Court remanded Roberts for a third sentencing hearing because the trial court failed to note her allocution in the resentencing entry, the trial court did reference Appellant's second allocution in his second entry: "The Defendant was afforded all rights pursuant to Crim.R.32. The Court has considered the record, oral statements, as well as the principles and purposes of sentencing under R.C. 2929.11 and has balanced the seriousness and recidivism factors of R.C. 2929.12." (T.d. 409, 416).

Those distinctions aside, this Court has made clear that when a capital case is remanded for purposes of correcting errors which occurred post-mitigation hearing, the trial is required to rewind the proceedings only to where the error occurred, not before.   This Court considered a nearly identical argument to the one presented by Appellant in *State v. Chinn,*  85 Ohio St.3d 548,  709 N.E.2d 1166 (1999), and concluded that unless the capital defendant was precluded from introducing certain information during the original proceedings, he is not entitled to pad the record with additional  mitigating factors at resentencing:

"[A]ppellant also argues that he had 'an absolute right to present any new mitigating evidence at his resentencing hearing in 1994.' In support of this proposition, appellant relies on several United States Supreme Court opinions requiring that the sentencer not be precluded from considering relevant mitigating evidence in a capital case. See, *e.g., Lockett v. Ohio* (1978), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973; *Skipper v. South Carolina* (1986), 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1; and *Hitchcock v. Dugger* (1987), 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347. However, each of those cases involved a situation where the capital sentencer was prohibited, in some form or another, from considering relevant mitigating evidence at trial. In the case at bar, no relevant mitigating evidence was ever excluded from consideration during the

- 7 -

penalty phase of appellant's 1989 trial. Therefore, the case at bar is clearly distinguishable from the United States Supreme Court's pronouncements in *Lockett, Skipper,* and *Hitchcock.* Accordingly, as was the case in *State v. Davis* (1992), 63 Ohio St.3d 44, 46, 584 N.E.2d 1192, 1194-1195, we find *Lockett, Skipper,* and *Hitchcock* to be inapplicable here. It is of no consequence that the additional mitigating evidence in *Davis* involved *post-trial* accomplishments, whereas appellant's additional mitigation evidence involves matters appellant claims he could have presented but did not present during the mitigation phase of his 1989 trial. In this case, as in *Davis,* the errors requiring resentencing occurred after the close of the mitigation phase of the trial. Under these circumstances, the trial court is to proceed on remand from the point at which the error occurred." *State v. Chinn* 85 Ohio St.3d 548, 564-565, 709 N.E.2d 1166, 1180 – 1181.

Like Appellant, Chinn was a capital defendant who was subject to a remand for sentencing purposes only. Like Chinn, Appellant cites to absolutely no examples of evidence that he was precluded from presenting during his original sentencing. The point of error in Appellant's case occurred not during his mitigation hearing, but during his sentencing hearing. Therefore, he is not legally entitled to improve or expand the record to his advantage. Based on this Court's holding in *Chinn,* Appellant is simply wrong that he was entitled to present "new mitigating factors" at his resentencing.

Appellant points out next that during the resentencing hearing, the trial court read from a pre-drafted sentencing opinion. By implication he suggests that there is something improper in so doing, but fails to cite to any authority prohibiting such a practice. The idea that the trial court could improvise a reversal-proof, 17-page sentencing opinion in open court without some written

- 8 -

prompts is completely unrealistic. This Court has never imposed such a burden on trial judges and hopefully never will.

Notably, this Court has held that even when a sentencing opinion is *filed* before the oral hearing concludes, the capital defendant suffers no prejudice: "We agree that the trial court should have waited until the sentencing hearing was completed to file its sentencing order. However, it is apparent to us that Reynolds was not prejudiced by the court's premature filing.*** Had new evidence or information been presented during the sentencing hearing, the trial court could have modified its sentencing order. We conclude that the premature filing was not prejudicial error." *State v. Reynolds,* 80 Ohio St.3d 670, 683-684,1998-Ohio-171, 687 N.E.2d 1358.

This Court reached the same conclusion in another, even more recent capital case, *State v. Fry,* 125 Ohio St. 3d 163, 2010-Ohio-1017, 929 N.E. 2d 1239, wherein a judge filed the sentencing opinion eight minutes before the sentencing hearing began. Again, this Court found no reversible error. "Here, the trial court permitted Fry to make a statement, and having listened to it, did not modify the entry, though it could have done so. While it is true that the court violated Crim.R. 32(A) by filing the sentencing entry pursuant to R.C. 2929.03(F) before the sentencing hearing, in accordance with *Reynolds,* and under the facts of this case, we hold the premature filing to be harmless error." *Fry, supra,* at ¶193. If Reynolds and Fry suffered no prejudice by his trial court's premature filing of sentencing opinion, Appellant suffers no prejudice in the trial court's preparation of a document prior sentencing. It is axiomatic that the pre-hearing drafting would not render the ultimate death sentence non-final or non-appealable. If Appellant or his counsel had said anything of substance to persuade the court that life was the appropriate sentence, the document could have been redrafted.

- 9 -

Appellant argues that the trial court failed to consider *all* the mitigating factors presented at his resentencing.  His version of this omitted "mitigating evidence" appears in footnote 7 wherein he cites to completing a basic prison computer skills class, acquiring a prison music certificate, and amassing a nearly unblemished conduct record in prison.    Appellant's brief at p. 16.  Ohio Revised Code 2929.04(B ) lists the following mitigating factors for an Ohio trial court to consider in a capital case:   1) Whether the victim of the offense induced or facilitated it; (2) Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation; (3) Whether, at the time of committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of the offender's conduct or to conform the offender's conduct to the requirements of the law; (4) The youth of the offender;   (5) The offender's lack of a significant history of prior criminal convictions and delinquency adjudications; (6) If the offender was a participant in the offense but not the principal offender, the degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim; (7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death.

In its prior opinion, this Court has already found that Appellant's mitigating evidence as presented was woefully lacking: "With respect to the statutory mitigating factors of R.C. 2929.04(B), none appear applicable except for 'other mitigating factors' under (B)(7). Although Jackson claimed that Fingerhut pulled a gun on him, thus forcing him to kill Fingerhut in self-defense, the factor of victim-inducement under (B)(1) is not implicated because the claim of self-defense lacks any  credibility under the evidence. Likewise, there is no credible evidence of the factor of victim provocation under (B)(2). Jackson's mitigation expert dispelled any claim that he

- 10 -

suffers from a mental disease or defect, the factor under (B)(3). Since Jackson was 29 years old at the time of the homicide, the youthful-offender factor under (B)(4) does not apply. There is no mitigation in the factor of a clean record under (B)(5), for Jackson had a history of prior criminal convictions. Finally, since Jackson was the principal offender in the murder, the factor of being an accomplice rather than the principal offender under (B)(6) does not apply." *State v. Jackson,* 107 Ohio St. 3d 300, 2006-Ohio-001, 839 N.E. 2d 362, ¶180.

This Court continued: "Under R.C. 2929.04(B)(7), Jackson's ADHD and antisocial personality disorder deserve some weight in mitigation, as well as his ability to overcome his ADHD and adaption to the structured setting of prison.*** On the other hand, Jackson's expression of remorse 'for what happened to the victim' deserves little weight in mitigation. *** Upon independent weighing, we find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. Jackson murdered Fingerhut during a burglary and stole his car. These were the aggravating circumstances that merit imposition of the capital penalty. Those were weighed against the mitigating evidence found in the nature and circumstances of the offense, Jackson's history, character, and background, and the statutory factors of R.C. 2929.04(B). We find that the aggravating circumstances of this case outweigh the minimal mitigating factors." *Id* at ¶181-183.

The very thought that Appellant's computer skills, musical talents, and his self-reported clean conduct record would qualify as an "any other factor" sufficient to tip the balance in this weighing process is absurd.  Computers, music, and good conduct medals do not overcome the horrendous facts of this case which were proven beyond a reasonable doubt.  The catchall "any other factor" provision "necessarily implicates a subjective judgment on the part of the sentencing tribunal." *State v. Brewer,*  2nd Dist. No. 87-CA-67, 1988 WL 88697 (Aug. 26, 1988),

- 11 -

at *8. If the court found these accomplishments insignificant and unworthy of mention it did not err in so doing, much less render the sentencing order non-final, or non-appealable.

Finally, the State maintains that even if the Findings of Fact and two sentencing entries do not constitute a "non-final" order, Appellant has waived any such error by filing an appeal thereof. If Appellant had a good faith belief that one or any of these three entries were non-compliant with R.C. 2505.02 or Crim. R. 32(C), it was incumbent upon him to object at the trial court. The "invited error doctrine" holds that a party will not be permitted to take advantage of an error which he himself invited or induced the court to make. See *State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections,* 80 Ohio St.3d 176, 181, (1997); *State ex rel. Bitter v. Missig*, 72 Ohio St.3d 249, 254 (1995). By filing the instant Notice of Appeal with this Court, he vouched for the final and appealable nature of his death sentence. If there was error in this Court accepting the instant appeal, Appellant invited it by filing the appeal. The State found error in the original Entry on Sentence (T.d. 409) , brought the error to the Court's attention (T.d. 412) and the court corrected the error. (T.d. 416). There is no reason why Appellant could not have done likewise.

It is clear that this T.d. 409 and 416 constitute a final appealable order. This Court has jurisdiction to review same. Appellant's Proposition of Law No. I is without merit.

- 12 -

**State's Answer to Appellant's Proposition of Law No. II:**
**A capital defendant precludes a finding of ineffective assistance of counsel when he voluntarily waives the right to one death-certified attorney and insists that the mitigation proceed with a highly qualified and trained criminal attorney.**

In his second Proposition of Law, Appellant argues ineffective assistance of trial counsel, not from the point of his resentencing hearing occurring August 14, 2012, but from his mitigation hearing occurring November 15, 2002.  For a variety of reasons, this argument is without merit.

First, this Court has held that "[t]he scope of an appeal from a new sentencing hearing is limited to issues that arise at the new sentencing hearing." *State v. Wilson* 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶30.   The doctrine of res judicata establishes that "a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment."  Id. quoting *State v. Perry*, 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104 (1967), paragraph nine of the syllabus.

When Appellant's co-defendant attempted to raise issues from her mitigation hearing in her resentencing appeal, this Court quickly applied the doctrine of res judicata to bar further consideration of her arguments: "These claims are res judicata. They are based entirely on the record of the 2003 hearing. Thus, Roberts could have, and should have, raised these issues in *Roberts I.* She is barred from raising them now. 'Where an argument could have been raised on an initial appeal, *res judicata* dictates that it is inappropriate to consider that same argument on a second appeal following remand.' *State v. D'Ambrosio,* 73 Ohio St.3d 141, 143, 652 N.E.2d 710

- 13 -

(1995). *See also State v. Gillard,* 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997) (issues not raised on prior appeal are barred by res judicata and overruled without further consideration)." *Roberts II,* ¶95.

Appellant's argument as fashioned goes beyond the scope of an appeal from his resentencing. Appellant does not challenge his counsel's performance at his 2012 resentencing which is the subject of this appeal. Instead, he reaches back to his mitigation hearing in 2002 to argue counsel's purported ineffectiveness. That is impermissible. According to *Wilson* and *Perry,* this entire argument is barred by the doctrine of res judicata and should be dismissed outright.

Appellant had every opportunity to challenge the mitigation-stage performance of his trial counsel in his direct appeal to this Court. He did not; instead, he challenged the effectiveness of his trial counsel, Atty. James Lewis and Atty. Anthony Consoldane, in their performance in the voir dire and guilt phases of his trial. This Court spent a considerable part of its opinion rejecting any notion that Atty. Lewis or Atty. Consoldane rendered ineffective assistance of counsel. *State v. Jackson,* 107 Ohio St. 3d 300, 2006-Ohio-1, 839 N.E. 2d 362, ¶¶127-141. Therefore, this issue is res judicata barred.

Appellant raised a strikingly similar argument to his Proposition of Law No. II in his Amended Petition for Postconviction Relief filed March 29, 2006 (T.d. 306). Said argument was dismissed by the trial court without hearing. Though not controlling on this Court, the Eleventh District unanimously upheld the trial court's dismissal of this claim noting that even with his "evidence" de hors the record, Appellant did not support a claim of ineffectiveness. "***The only new argument made is that the last minute substitution of Attorney Thomas Wright for Attorney James Lewis compromised his defense during mitigation. Specifically, appellant asserts

- 14 -

that Attorney Wright was not certified by the Supreme Court of Ohio to serve in a capital case, and he was new to the case. However, none of the exhibits presented by appellant in support of this claim demonstrate that Attorney Wright was ineffective." *State v. Jackson,* 11th Dist. No. 2004-T-0089, 2006-Ohio-2651, ¶¶139-140.

More importantly, Appellant conveniently omits from this twice-rejected argument that Judge Stuard offered to recess the proceedings until Atty. Lewis could re-join the defense team, but Appellant insisted the mitigation hearing proceed. The transcript on this issue reads as follows:

> **MR. CONSOLDANE:** I have talked with Mr. Jackson and we do not think that any delay at this point would be wise. I have also talked with Tom Wright, who has a contract to work with our office. Mr. Wright has gone through the three day death penalty seminar. He also meets the other requirements. He, however, is not certified. He has not applied for the certification and would ask the Court to permit him to sit as co-counsel in this case with me, so he can get this finished.

(T.p. Vol. 16, p.4-5).

Atty. Consoldane also told the court:

> **MR. CONSOLDANE:** "[F]or the last ten years on the cases that Mr. Lewis and I have tried together, I pretty much have handled most of the mitigation. I had the witnesses here. I didn't want to have them come back.

(T.p. Vol. 16, p. 157).

The trial court personally inquired of Appellant *twice* if he agreed to proceed with Atty. Wright instead of Atty. Lewis, if he understood that the court would grant a continuance if requested, and if he felt it was in his own best interests to proceed as scheduled without Atty. Lewis. Appellant answered in the affirmative each time. (T.p. Vol. 16, p. 5, 155). Appellant told the court, after closing arguments in the mitigation phase, that he was satisfied with Atty. Wright's help. (T.p. Vol. 16, p. 155). Following an inquiry by the prosecuting attorney, Atty. Consoldane stated his client wished to waive his right to be represented by two death-certified

- 15 -

attorneys. (T.p. Vol. 16, p. 7). This waiver was also noted by the Eleventh District: "[A]ppellant was offered a continuance by the trial court to delay proceedings until Attorney Lewis could recuperate, but the court's offer was rejected by appellant who stated that he wanted to proceed with Attorney Wright. Thus, this claim was properly denied by the trial court." *State v. Jackson,* 11th Dist. No. 2004-T-0089, 2006-Ohio-2651, ¶¶140-141.

According to the doctrine of invited error, a party cannot complain of any action taken or ruling made by the court in accordance with that party's own suggestion or request. *State v. Cunigan* 195 Ohio App.3d 162, 2011-Ohio-4010, 958 N.E. 2d 1290 (2nd Dist.), ¶12. Appellant requested that the hearing proceed according to schedule; he is barred from complaining that it did.

Even though this Proposition of Law is completely barred by the doctrines of res judicata and law of the case, the State would make two observations here. First, the State takes issue with Appellant's statement at page 20 of his brief that Atty. Wright suffered from a "total lack of any knowledge concerning Appellant's case." That is absolutely unsupported by the record before this Court. Though the parties discussed Atty. Wright's lack of a Sup. R. 20 certification, nothing appears in the record as to his knowledge, or lack thereof, concerning Appellant's case. To make this self-serving, speculative, and unsupported criticism of Atty. Wright is irresponsible and unprofessional.

Second, Appellant spikes this argument with evidence de hors the mitigation record which is also improper. He relies repeatedly upon exhibits from his post-conviction claim. "Since a reviewing court can only reverse the judgment of a trial court if it finds error in the proceedings of such court, it follows that a reviewing court should be limited to what transpired in the trial court as reflected by the record made of the proceedings." *State v. Ishmail* 54 Ohio

- 16 -

St.2d 402, 406, 377 N.E.2d 500, 502 (1978). Appellant's allegations of an insufficient sentencing investigation are based on facts not present in the record. As such, neither allegation can be addressed upon direct appeal. "It is impossible for this court to determine on a direct appeal from a conviction whether an attorney was ineffective in his representation of a criminal defendant, where the allegation of ineffectiveness is based on facts dehors the record." *State v. Gibson*, 69 Ohio App.2d 91, 95 (8th Dist., 1980). Appellant's blended direct appeal and post-conviction petition is an improper invitation to decide his trial counsel's performance with evidence not properly before this Court. Even if it were permissible, the exhibits prove nothing as to the level of representation provided by trial counsel.

Moreover, this Court has previously declined an opportunity to review these very claims about which Appellant complains. Appellant sought a discretionary review of the Eleventh District's decision which affirmed the trial court's denial of his original and amended post-conviction claim. Appellant's argumentation regarding Atty. Wright's lack of Sup. R. 20 certification and complaints about pre-mitigation investigation were contained therein. This Court refused accept this discretionary appeal. See, *State v. Jackson*, 111 Ohio St. 3d 1469, 2006-Ohio-5625, 855 N.E. 2d 1258. Therefore, by way of rejecting the discretionary appeal, this Court has essentially rejected Appellant's argument as well. *State v. O'Neill*, 11th Dist. No. 2010-P-0041, 2011-Ohio-2202, ¶66.

As this Court held in Appellant's first direct appeal, "[r]eversal of a conviction for ineffective assistance requires two showings. 'First, the defendant must show that counsel's performance was deficient. Second, the defendant must show that the deficient performance prejudiced the defense. Proving prejudice requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.' *Strickland v. Washington* (1984), 466 U.S. 668, 687,

- 17 -

104 S.Ct. 2052, 80 L.Ed.2d 674. Accord *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. In no instance, however, does Jackson demonstrate prejudice, 'a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.' Id. at paragraph three of the syllabus." *State v. Jackson*  107 Ohio St.3d 300, 2006-Ohio-0001, 839 N.E.2d 362, ¶127.  Appellant failed to show ineffective assistance of counsel in his original, direct appeal and fails to show it here.

      This Proposition of Law is barred by the doctrines of res judicata, law of the case and waiver.  Appellant improperly bolsters this Proposition with evidence de hors the record.  This Court has already determined that his trial counsel's performance did not prejudice Appellant. Therefore, this Proposition of Law completely lacks merit.

- 18 -

**State's Answer to Appellant's Proposition of Law No. III:**
**A trial judge has no duty or obligation to recuse himself from a capital case**
**when the Chief Justice of this Court has twice denied motions of**
**disqualification because the complaining defendant fails to demonstrate bias**
**or ill-will on the part of the judge.**

Appellant seeks reversal under the positively unsupported allegation that the late Judge John Stuard was less than "neutral" or "detached" in the resentencing proceedings ordered by the Eleventh District Court of Appeals.  This accusation is not only contrary to the record, but contrary to arguably schizophrenic post-Roberts pleadings and motions filed by Appellant aimed at forcing Judge Stuard to a resentencing hearing, and then attempting to block the very proceeding he sought.

As Appellant notes in this Proposition of Law, he tried on at least two occasions to remove Judge Stuard from this case after this Court decided *Roberts I.*  Both efforts failed.  The late Chief Justice Thomas Moyer made it abundantly clear in both applications for disqualification that Judge Stuard was to remain on Appellant's case and decide whether he was entitled to a resentencing hearing like his co-defendant.

Appellant's first failed effort to remove Judge Stuard came about in 2006. He premised the 2006 motion for disqualification on his request for a hearing regarding the authorship of his sentencing entry, and the mere possibility that Judge Stuard would possibly be called as a witness at said hearing.  *In re Disqualification of Stuard,* 113 Ohio St. 1236, 2006-Ohio-7233, 863 N.E. 2d 636, ¶ 3.  However,  Judge Stuard staunched the need for a hearing by supplying an affidavit to this Court admitting that he "held the same kind of communications with the prosecuting attorney's office in both the Roberts and Jackson capital cases before sentencing each of them to death***." Id. at ¶4. Chief Justice Moyer found as follows: "***I conclude that the record before me does not compel his disqualification for any alleged bias or prejudice. To be

- 19 -

sure, if a judge's words or actions convey the impression that the judge has developed a 'hostile feeling or spirit of ill will,' *State ex rel. Pratt v. Weygandt* (1956), 164 Ohio St. 463, 469, 58 O.O. 315, 132 N.E.2d 191, or if the judge has reached a 'fixed anticipatory judgment' that will prevent the judge from hearing the case with 'an open state of mind * * * governed by the law and the facts,' id., then the judge should not remain on the case. There is no evidence in the record before me, however, to suggest that the judge has shown any hostility or bias toward either party, and there is no indication that he is unable or unwilling to resolve any remaining disputed matters with an open state of mind." *Id.* at ¶8.

The second affidavit for disqualification came about in 2008 wherein Appellant accused Judge Stuard of dragging his feet on his resentencing and of having an interest in the outcome of his resentencing because of pending disciplinary proceedings stemming from the Roberts sentencing entry. Again, Chief Justice Moyer refused to remove Judge Stuard from Appellant's case. "As I have previously held, a judge's action – or inaction – on a motion is within the sound discretion of the judge and is not, by itself, evidence of bias or prejudice." (T.d. 376). Chief Justice Moyer likewise refuted Appellant's allegation that Judge Stuard harbored a personal interest in the outcome of his case: "***I agree with Judge Stuard that nothing he does in the Jackson's case can affect the outcome of his disciplinary case. In addition, the judge has stated that he has no personal interest in Jackson's case and can act as an impartial trier of fact, and my review of this matter prompts me to reach the same conclusion. As I have said, '[a] judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions. *In re Disqualification of George,* 100 Ohio St. 3d 1241, 2003-Ohio-5489, ¶5. *Those presumptions have not been overcome in this case."* (Emphasis added). *Id.*

- 20 -

Further consideration of this claim at this juncture is barred by the doctrine of res judicata. As this Court held in another Trumbull County capital murder case, "[i]n *State v. Rogers* (1985), 17 Ohio St.3d 174, 185–186, 17 OBR 414, 424–425, 478 N.E.2d 984, 995, this court found that when the Chief Justice dismisses an affidavit of disqualification as not well taken, 'the Chief Justice's ruling is *res judicata* as to the question'." *State v. Getsy,* 84 Ohio St.3d 180, 185, 702 N.E.2d 866, 876 (1998).  Chief Justice Moyer considered the purported "bias" of Judge Stuard not once but twice.  In both instance he found no merit to Appellant's claim and refused to remove him from this case.  Therefore, this issue is well settled and not subject to further review.

Should this Court decline to apply the doctrine of res judicata, the State submits Appellant fails to cite any credible reason for Judge Stuard's removal. As Chief Justice Moyer correctly noted, to prevail on an affidavit of disqualification an affiant must demonstrate clearly the existence of bias, prejudice, or other disqualifying interest that requires a judge's removal. See, R.C. 2701.03(B)(1).  First, Appellant alleges at page 38 of his brief that Judge Stuard repeatedly refused to accept this Court's ruling in *Roberts* that he had improperly permitted the prosecutor to draft the sentencing opinion.  That is a complete falsehood.

In its opinion reprimanding Judge Stuard for his failure to draft his own sentencing opinion in *Roberts,* this Court found:  "Judge Stuard concedes and the board found that his ex parte communications with [Assistant Prosecuting Attorney Christopher] Becker, engaged in without the knowledge or consent of opposing counsel, violated Canon 2 (requiring a judge to 'respect and comply with the law and * * * act at all times in a manner that promotes public confidence in the integrity of the judiciary') and 3(B)(7) (providing that, except in situations not relevant here, '[a] judge shall not initiate, receive, permit, or consider communications [as to

- 21 -

substantive matters or issues on the merits] made to the judge outside the presence of the parties or their representatives concerning a pending or impending proceeding * * *')." *Disciplinary Counsel v. Stuard,* 121 Ohio St.3d 29, 901 N.E.2d 788, 2009-Ohio-261,¶10. This Court continued,  "Judge Stuard has complied with our mandate in *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168. Both he and Becker have acquiesced in the board's recommendation, assuring that they have recognized their wrongdoing and will not repeat it. A public reprimand is therefore appropriate." *Id.,* at ¶15. Conceding violations, recognizing wrongdoing, and a promising not to repeat the same conduct hardly qualifies as a "refusal" to accept this Court's ruling in *Roberts.*

Appellant next argues Judge Stuard's "lack of fairness and impartiality" by delaying ruling on his motion for leave to file a motion for new sentencing hearing.  As previously quoted, Chief Justice Moyer already has stated that a mere delay in a ruling is not dispositive a judge's bias in a case. See, also, *In re Disqualification of Eyster,* 105 Ohio St. 3d 1246, 2004-Ohio-7350 at ¶4; *In re Disqualification of Park,*  991 N.E. 2d 244, 2013-Ohio-2834, ¶6;  *In re Disqualification of Lawson,*  135 Ohio St. 3d 1243, 2012-Ohio-6237, 986 N.E. 2d 6, ¶6.  In fact, Chief Justice Moyer reached that conclusion on September 22, 2008, six months after this Court dismissed Appellant's complaint for writ of procedendo/mandamus which sought to force a ruling on the motion for leave. ( T.d. 376).  The authority from this Court is clear; the delay is not tantamount to a biased jurist.

Appellant misstates the record when he says Judge Stuard denied his motion to resentence after stating he was prepared to grant the motion.  Chief Justice Moyer apparently did not view any affidavit from Judge Stuard as affirmatively stating he would resentence Appellant. "I find no basis for ordering the disqualification of Judge Stuard. *The judge is entitled to*

- 22 -

*consider the defendant's motion for relief from judgment now pending in the trial court*, and if

the judge concludes that relief is appropriate, *he may grant that motion and conduct the new*

*sentencing hearing* that he has described in his response to the affidavit filed here. The judge

acknowledges the factual allegations in the defendant's affidavit, so the matter of a new

sentencing hearing akin to the hearing ordered by this court in the Roberts case appears not to

require the resolution of any factual disputes between the parties but rather turns on the legal

question *whether a new sentencing hearing is warranted for this defendant."* (Emphasis added).

*In Re Disqualification of Stuard, supra,* at ¶5.  This is further evidenced by the Chief Justice's

entry of September 22, 2008, when he stated "[A]ffiants have apparently overlooked my prior

statements that Judge Stuard *is entitled to determine the appropriate relief in Jackson's case,*

*including whether a new sentencing hearing is warranted."* (Emphasis added). (T.d. 376).

Therefore, while Appellant may have viewed Judge Stuard's affidavit as a promise for a new

sentencing hearing, the former Chief Justice of this Court did not.

In the interest of full disclosure, the Eleventh District Court of Appeals agreed with

Appellant's interpretation of the Stuard affidavit, and on October 15, 2010, ordered a re-

sentencing hearing akin to the one afforded Donna Roberts. *State v. Jackson,* 190 Ohio App.3d

319, 2010 -Ohio- 5054, 941 N.E.2d 1221. From that moment on, Appellant engaged in a

relentless campaign to stall the very proceedings he demanded for four years.  He opposed the

State's motion to set a resentencing date.  (T.d. 386).  Since this Court had custody of the record

of this case (T.d. 387), the State was forced to renew that motion four months later. (T.d. 388).

Again, Appellant opposed. (T.d. 389).  When Judge Stuard set August 14, 2012, as the

resentencing date, Appellant sought a continuance.  (T.d. 392).  For a *third* time Appellant

sought to disqualify Judge Stuard from the case.  (T.d. 394).  He also filed a complaint for writ of

- 23 -

prohibition in the Eleventh District Court of Appeals just 13 days before the scheduled hearing in an effort to block the resentencing. *State ex. rel. Jackson v. Stuard,* 11th Dist. No. 2012-T-0062, 2012-Ohio-4209. The record is plain: Even after Appellant had won the battle for a resentencing hearing, he did everything within his power to forestall the proceedings. Thus, commentary at page 38 of Appellant's brief claiming Judge Stuard showed bias by refusing to conduct the resentencing is belied by the record.

Appellant next argues that Judge Stuard showed a lack of fairness and impartiality by preparing the findings of fact for the sentencing prior to Appellant's allocution. As the State briefed in its response to Appellant's Proposition of Law No. I, this Court found no prejudicial error when a sentencing judge filed a capital sentencing order prior to the defendant's allocution. *State v. Reynolds,* 80 Ohio St.3d 670, 683-684 (1998). It is axiomatic that if no prejudicial error occurs by the early filing of the order, the mere preparation of the document is not indicative of bias, prejudice or ill-will. Moreover, given this Court's opinion in *Roberts II* wherein this Court makes clear that Roberts is *not* entitled to a second allocution, Appellant's second allocution is arguably rendered moot and it is inconsequential whether the trial court considered it, or completely disregarded it.

Finally, Appellant argues bias in the trial court's refusal to consider additional information which he considered relevant to the appropriateness of a death sentence. Again, this was fully briefed in the State's response to Proposition of Law No. I. This Court in *Roberts I* did not order a re-opening of the mitigation phase, but merely ordered a new sentencing hearing. Even in *Roberts II* which remanded her case for a third sentencing hearing, this Court made clear that the resentencing was not an opportunity for a re-opened mitigation hearing. *Roberts II,*

- 24 -

¶ ¶41-49.   In that the Eleventh District ruled that " [b]ased on the Supreme Court of Ohio's

holding in *Roberts,* appellant is entitled to the *same relief afforded to his co-defendant.* Thus, the

trial judge must personally review and evaluate the appropriateness of the death penalty, prepare

an entirely new sentencing entry as required by R.C. 2929.03(F), and conduct whatever other

proceedings are required by law and consistent with this opinion. *Id.* at ¶ 167." (Emphasis

added).  *State v. Jackson*  190 Ohio App.3d 319,  941 N.E.2d 1221, 2010-Ohio-5054, at ¶29.

The fact that Judge Stuard attempted to scrupulously follow the mandates of this Court and the

Eleventh District with respect to both resentencing hearings does not demonstrate a lack of

fairness or impartiality.

   To conclude, this Proposition of Law is barred by res judicata.  The issue of Judge

Stuard's disqualification was settled by this Court not once, but twice.  In the alternative,

Appellant fails to demonstrate that Judge Stuard exhibited bias, a hostile feeling toward him, or a

spirit of ill-will with respect to any post-*Roberts* decision.  Therefore, his removal from

Appellant's case was wholly unwarranted. This Proposition of Law is without merit.

**State's Answer to Appellant's Proposition of Law No. IV**
**When a capital defendant has been represented by two death-qualified attorneys for five years, the trial court does not abuse its discretion by denying an eleventh-hour motion to stall a simple resentencing hearing so that one of those attorneys can shirk his duty to his client and the court.**

In this Proposition of Law, Appellant attempts to assign error on the part of the trial court for "refusing" to appoint qualified counsel to represent him at his resentencing hearing. This argument is without merit.

To be clear, two highly experienced death penalty defense attorneys appeared with Appellant at his resentencing hearing. Atty. John Parker and Atty. Randall Porter were counsel of record during that proceeding and present for the resentencing. Both are "death certified" pursuant to Sup. R. 20 II(A), and appear on this Court's Statewide List of Rule 20 Certified Attorneys as "Lead Trial and Appeal Counsel." Atty. Porter spoke on Appellant's behalf (Resentencing T.p. 10, 12, 14-16, 18-20) and then presented the court with three volumes of proffered exhibits. (T.d. 406, 407, 408).

Appellant attempts to use this argument as a smokescreen to argue the real issue here: whether the trial court abused its discretion by denying Appellant's eleventh-hour motion to continue this case so that the trial court could "appoint" counsel for purposes of resentencing. The State submits no abuse of discretion occurred here and Appellant was ably represented by two eminently-qualified, death-certified attorneys.

By way of review, Atty. John Parker filed a notice of appearance in Appellant's case in the trial court April 27, 2007 (T.d. 351). It should be noted that he filed this notice of appearance on his own initiative, and not by court order or even a tacit invitation by the trial court. The terse notice read as follows: "Now comes John P. Parker who respectfully gives notice of his appearance as co-counsel in the above captioned case. Additionally, counsel requests a status

- 26 -

conference concerning motions pending before this Honorable Court." *Id.* In his brief to this Court, Appellant claims that that Federal Judge James Gwin had appointed Atty. Parker to Appellant's habeas proceedings on March 27, 2007, a full month ahead of Atty. Parker's voluntary entre to the trial court proceedings. Atty. Parker remained on Appellant's case filing pleadings and motions in the trial court (T.d. 355, 360, 386, 389), appeals in the Eleventh District Court of Appeals (*State v. Jackson,* 190 Ohio App.3d 319, 2010 -Ohio- 5054, 941 N.E.2d 1221; *State v. Jackson,* 2008-T-0024, 2010-Ohio-1270; *State v. Jackson,* [May 13, 2010], 11th Dist. No. 2009-T-0050) and in this Court (*State v. Jackson,* Case No. 2010-0865; *State v. Jackson,* Case No. 2008-1610; *State ex rel. Jackson v. Stuard,* Case No. 2008-0028; *In Re Disqualification of Stuard,* Case No. 08-AP-043). In most of these actions, Atty. Parker referred to himself a "pro bono counsel."

It was not until August 1, 2012, a mere 13 days before resentencing, Atty. Porter filed a motion to appoint himself as counsel for purposes of resentencing, and informed the Court, for the first time, that Atty. Parker did not seek "appointment" because he had been serving merely as Appellant's "volunteer" counsel all along, and because he was appointed five-and-half-years earlier to represent Appellant in the federal courts. (T.d. 391). Simultaneous with the motion to appoint, Appellant filed a Motion for a Continuance based on the supposition that the trial court would appoint new counsel and that counsel would need six months to acquaint him or herself with Appellant's case. (T.d. 392). The trial court denied Appellant's motion to continue, but did not immediately rule on the motion to appoint. (T.d. 393).

At the outset, it should be as clear as the nose on Cyrano de Bergerac's face that the tandem motion to continue/appoint was filed as a last-minute delay tactic. This Court has held that: "In evaluating a motion for a continuance, a court should note, inter alia: the length of the

- 27 -

delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstances which gives rise to the request for a continuance; and other relevant facts, depending on the unique facts of each case." *State v. Unger,* 67 Ohio St. 2d 65, 67–68, 423 N.E.2d 1078 (1981).

Appellant requested a six-month delay of a sentencing that for all intents and purposes had been delayed for 22 months when he filed his motion. Though it was Appellant who sought the resentencing, it was the State of Ohio that ultimately filed two motions with the trial court to schedule the resentencing. (T.d. 385, 388). In the interest of full disclosure, part of the reason for the trial court's disinclination to schedule the hearing immediately after the Eleventh District's 2010 remand was because the record for Appellant's case was with this Court for *State v. Jackson,* Ohio Supreme Court No. 2008-1610. As the trial court explained at resentencing, the court was unaware until April of 2012 that the record had been returned two months earlier. (T.p. Resentencing, p. 13). Once the court became aware that the record was back in the local court, it drafted an entry in April of 2012 stating a resentencing date would be set. (T.d. 390). While Appellant was not responsible for *that* delay, his counsel still had 22 months to inform the court that new counsel needed to be appointed. Instead, they waited until 13 days before the hearing and requested a six-month continuance. Pursuant to *Unger,* the requested continuance was for specious reasons, and filed for the sole purpose to delay the resentencing. If Atty. Parker genuinely believed he was conflicted out of the trial proceedings because of his anticipated role in the habeas proceedings, he could have withdrawn from the case months earlier rather than

- 28 -

having his co-counsel raise it at the last minute.  Thus, the trial judge did not abuse his discretion in denying a requested six-month continuance to bring new counsel up to speed.

In his brief at page 41, Appellant refers to "Attorney Parker's withdrawal" from his case in the trial court.  Point of fact:  Atty. Parker never formerly withdrew from the case in the trial court.  He filed a notice of appearance April 27, 2007 and as far as the docket below indicates, he is still the attorney of record in the court below.  Even if he had formally withdrawn it is well-settled law that a motion to withdraw as counsel is committed to the sound discretion of the trial court. *State v. Coleman* 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988). The trial court did not abuse its discretion by disallowing Atty. Parker to officially "withdraw" from the case 13 days before resentencing after five-and-half years of representation with no hint of this manufactured "conflict" with the federal courts.

Atty. Parker was well aware of his appointment in the federal case when he filed his notice of appearance in the state case in 2007.   If a conflict exists, Atty. Parker created it by accepting appointment in the federal court, and then joining the defense team in the trial court. If the trial court erred, Atty. Parker invited it.  It is well settled that a party is not entitled to take advantage of an error the he invited or induced the court to make.  *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404,  2002 -Ohio- 4849, 775 N.E.2d 517,  ¶27.  Moreover, an attorney's obligation to his client is not diminished by the pro bono nature of his representation. *Xu Yong Lu v. Ashcroft*, 259 F.3d 127, 135 (2001). Despite his "pro bono" status, Atty. Parker was still obligated to provide effective representation of Appellant.

Appellant closes this argument by stating the trial court's failure to appoint two attorneys for resentencing denied him the effective right to counsel.  This is incorrect.  As this Court explained: "Sup.R. 20(II)(A), titled 'Appointment of counsel for indigent defendants in capital

- 29 -

cases," provides that 'at least' two attorneys (with death-penalty qualifications and experience) shall be appointed by the court to represent an indigent defendant charged with capital murder. However, Sup.R. 20(I)(B) states that these rules apply 'only in cases where the defendant is indigent and counsel is not privately retained *by or for* the defendant'." (Emphasis added). *State v. Hunter,* 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶64 . Counsel was privately retained for Appellant when Atty. Parker entered his notice of appearance. He functioned as Appellant's attorney in the trial court, district appellate court, and this Court. Appellant's parsing of designations of "appointed," "pro bono" or "volunteer" counsel should be looked upon with a jaundiced eye. The fact is two death-qualified attorneys jointly represented Appellant for five-and-half years in three courts. Their designation as appointed, pro bono, volunteer or retained had no bearing on the quality of their representation.

Finally, the State submits that if this Court finds error in the trial court's refusal to further delay a resentencing hearing - already stalled for 22 months - the error is at worst harmless error. Harmless error is described as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Crim.R. 52(A). Overcoming harmless error requires a showing of undue prejudice or a violation of a substantial right.

Appellant has no substantial right to derail his case for six months so that his "volunteer counsel" can throw his co-counsel of five years under the bus with an ineffective assistance of counsel claim in the federal courts. If Atty. Parker finds his performance at resentencing to be so ineffective as to merit dragging his own professional reputation through the mud in the federal courts, he is free to formally withdraw from the habeas proceedings and let another court-appointed, federal attorney argue his ineffectiveness. These actions will have no effect on any of Appellant's substantial rights.

- 30 -

For the reasons thus state, Appellant's Proposition of Law No. IV is without merit.

**State's Answer to Appellant's Proposition of Law No. V:**
**A remand for re-sentencing does not require a trial court to consider irrelevant or cumulative "evidence" when re-imposing a death sentence previously affirmed by this Court.**

As the Court is aware, Appellant's resentencing came about as a result of a remand from the Eleventh District Court of Appeals in *State v. Jackson,* 190 Ohio App. 3d 319, 2010-Ohio-5054, 941 N.E. 2d 1221 (11th Dist). Therein, the court ordered as follows: "Based on the Supreme Court of Ohio's holding in *Roberts,* appellant is entitled to the same relief afforded to his co-defendant. Thus, the trial judge must personally review and evaluate the appropriateness of the death penalty, prepare an entirely new sentencing entry as required by R.C. 2929.03(F), and conduct whatever other proceedings are required by law and consistent with this opinion. Id. at ¶ 167." *Jackson* at ¶29.

The paragraph from this Court's decision in *"Roberts"* quoted by the lower court reads as follows: "Having found no prejudicial error in regard to Roberts's convictions, we affirm the convictions and the judgment of the trial court pertaining to them. Because of the prejudicial error in sentencing Roberts to death, the sentence of death is vacated, and the cause is hereby remanded to the trial court. On remand, the trial judge will afford Roberts her right to allocute, and the trial court shall personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by R.C. 2929.03. The trial court will then personally prepare an entirely new penalty opinion as required by R.C. 2929.03(F) and conduct whatever other proceedings are required by law and consistent with this opinion." *Roberts I,* at ¶167. The State submits the trial court's resentencing of Appellant fully complied with the directives from both courts.

- 31 -

As cited by the State in prior arguments, since the Eleventh District remanded Appellant's case for resentencing, this Court has decided *Roberts II.*  Therein this Court dispelled any notion that Roberts was entitled to present new evidence, including her prison records. Appellant can cite to no reason or authority which would suggest that he is entitled to augment his resentencing proceeding with evidence clearly available at the time of his trial when Roberts was precluded from doing the same.

The State disagrees with Appellant's statement at page 44 that "the judge had not considered any new evidence" offered from the resentencing hearing. As discussed in the State's response to Proposition of Law No. I, neither court sent this case back for the purpose of a reopened mitigation hearing.  The judge permitted Appellant to once again allocute, wherein he cited his good conduct in prison and his wish not to return to death row.  In recognition of that statement, the judge wrote in both his original sentencing entry and the revised entry that "[t]he court has considered the record, oral statements, as well as the principles and purposes of sentencing under R.C. 2929.11." (T.d. 409, 416).  The fact that the allocution was not persuasive does not mean it was not considered.

The State also disagrees that the trial court in anyway erected "barriers," precluded the presentation of relevant mitigating evidence, or excluded testimony during the mitigation proceedings as Appellant insinuates at page 45 of his brief.  During his mitigation hearing, Appellant called four lay witnesses, one of whom brought Appellant's daughter to the witness stand as some kind of a sympathy prop or ploy even though she was not sworn to testify.  (T.p. Vol. 16, p. 23-32).  The defense also called their own hand-picked clinical and forensic psychologist, Dr. Sandra McPherson.  (T.p. Vol. 16, p. 37-103). The record does not indicate that Appellant was precluded from calling any witness on his behalf in 2002.   It should be noted that

- 32 -

at no time during the resentencing hearing did Appellant alert the court to witnesses standing by to testify, nor did he proffer any testimony.  Instead, Appellant proffered three volumes of containing roughly 88 exhibits.  (T.d. 406, 407, 408).  As will be discussed infra, not one shred of relevant mitigating evidence appears in any of these exhibits not already considered by Appellant's jury during his mitigation hearing.

Appellant relies upon the U.S. Sixth Circuit Court of appeals decision in *Davis v. Coyle,* 475 F. 3d. 761 (6th Cir.2007). Therein, the court vacated a death penalty imposed at resentencing because the panel declined to consider Davis' adjustment to death row and the testimony of a psychologist.  In the three volumes of proffered exhibits, Appellant does not offer a single document from the prison to tout his post-sentence adjustment.  He offers what appears to be the entire file of Dr. McPherson, including her shorthand notes.  (T.d. 408, Ex. 87).  Curiously, while trying to convince this Court that Appellant has made just a splendid adjustment to death row, he submits Ex. 64, an affidavit from Dr. Robert G. Kaplan who opined that Appellant had a substance abuse problem in December of 2003, and this was after two full years of incarceration. Dr. Kaplan then took the remaining five out of a twelve- paragraph affidavit to set forth his fee schedule for additional testing to prove that Appellant has a "substance abuse" or "chemical dependency problem."  *Id.*

Moreover, it should not be lost on this Court that Appellant orchestrated the Fingerhut homicide *from prison* while incarcerated on an unrelated charge in the fall of 2001. This irrefutable fact merited mention in the court's findings of fact on sentencing: "***[I]t is abundantly clear that he was plotting to commit the ultimate criminal act, a premeditated burglary and murder, while pre-textually presenting himself to prison officials as a good candidate for a release program.  Quite simply, in the very setting in which the Defense suggests

- 33 -

that he could be a productive member, the Defendant defined and refined a plot, involving gloves, a mask and handcuffs, to murder Robert Fingerhut so that in effect he could assume Fingerhut's lifestyle, including running the Greyhound bus business, managing rental properties, and living with Fingerhut's ex-wife." (T.d. 410, p. 13-14).  Absolutely nothing in Appellant's 88 proffered exhibits contradicts this finding.  These findings are not speculation.  The State provided ample exhibits through prison phone calls and nearly 300 letters documenting Appellant's lust for his co-defendant and her upscale lifestyle.  In Appellant's mind, only Robert Fingerhut stood between Appellant and his personal improvement goals, but he would not stand for long.

Appellant next argues that *Davis, supra,* rejects the notion that this Court can cure any error by a reweighing of the mitigating factors and aggravating circumstances.  Given Appellant's hefty three-volume proffer, such an argument is inapplicable here.  The Sixth Circuit recently distinguished *Davis* for the following reasons: "This court held [in *Davis*] that *the trial court erred by excluding the mitigation evidence. Id.* at 774–75. We held that reweighing was not a proper remedy *because the improperly excluded evidence had never been put into the record,* and the state appellate courts could not reweigh what had never been weighed in the first place. *Id.* In Moore's case, the mitigation evidence was before the trial court; the court simply found that it was outweighed by the aggravating circumstances. The evidence was never excluded from the record altogether." (Emphasis added).  *Moore v. Mitchell,* 708 F.3d 760, 804 -805 (6th Cir. 2013). Just as in *Moore,* this Court has before a plethora of exhibits (T.d. 406, 407, 408) which it can use to reweigh whether the trial court properly imposed the death penalty for the second time.  However, this Court's decision in *Roberts II* would indicate that consideration of these extraneous exhibits may be improper.

- 34 -

Appellant argues at page 48 of his brief that his proffered exhibits contain "relevant, probative mitigation evidence." The State disagrees and submits that at best these exhibits have either no possible evidentiary value in mitigation or are simply cumulative of testimony already considered by Appellant's jury, the trial court and ultimately this Court. In his brief, Appellant argues that he suffered from "borderline mental retardation." He uses an affidavit submitted by Dr. Thomas Boyd to suggest that Dr. McPherson's scoring may have skewed Appellant's I.Q. higher than merited. The Eleventh District Court of Appeals has already reviewed this affidavit because it was submitted with his original postconviction petition. The court found as follows: "***[P]ursuant to appellant's own evidentiary materials, the alleged errors in the calculation would have only resulted in a four-point change in the final result, i.e., from 84 to 80. Under Ohio law, there is a rebuttable presumption that a criminal defendant is not mentally retarded if the result of his IQ test is greater than 70. *State v. Lott,* 97 Ohio St.3d 303, 779 N.E.2d 1011, 2002-Ohio-6625. Thus, the difference in appellant's I.Q. would not have changed his basic status under the intelligence scale. In light of the overwhelming nature of the aggravating circumstances in this case, this four-point error in calculation would not have altered the jury's weighing exercise in determining whether to recommend the death penalty." *State v. Jackson,* 11th Dist. No. 2004-T-0089, 2006-Ohio-2651, ¶143. The State acknowledges that this well-reasoned analysis from a lower court is not binding on this Court, but it should be persuasive.

It must also be mentioned that this supposed evidence as to Appellant's "borderline mental retardation" was flatly refuted by Appellant himself at his resentencing when he touted his achievements in basic and advanced computer skills classes in prison and that he tutored other inmates. (Resentencing T.p. 21). This Court has before it considerable evidence concerning Appellant's communication skills and artistic prowess. Appellant's adaptive

- 35 -

functioning level is apparently high enough to master computer skills and teach other inmates. Thus, a designation as "borderline mentally retarded" is supported by nothing more than conjecture and psychometric number crunching which has little to do with reality.

Appellant also cites to exhibits which allege he was a low achiever and a behavioral problem in school, his mother and step-father were binge drinkers, his grandmother raised him, and in true Smothers' Brothers fashion, his mom always liked his brother best. He also lists a litany of criminal activity and anti-social behavior, such as the fact that he routinely stole from others – including his own mother - to support his drug habit, he readily associated with drug dealers and lived on the street, and he refused the advice and counsel of others to change his ways. These are hardly endearing qualities. Appellant's trial counsel sought to humanize Appellant for purposes of mitigation; in retrospect, his appellate counsel thinks the better trial strategy would have been to demonize him. Reconsideration of Appellant's trial counsel's strategy is inappropriate at this juncture.

This Court has already noted the following about the mitigating factors regarding Appellant's less than idyllic upbringing: "The nature and circumstances of the offense offer *nothing in mitigation*. Jackson, with the aid and support of Roberts, planned to murder Fingerhut to get him out of the way and reap the insurance proceeds Roberts would obtain from Fingerhut's death. In correspondence and phone conversations, Jackson assured Roberts that the murder was something *he* had to do and that *he* had it all figured out. Jackson murdered Fingerhut in his home and then fled the scene in Fingerhut's car. Jackson's self-defense claim lacks credibility in light of all the evidence. Jackson's history, character, and background offer some mitigating features. His father was never part of his life, and he suffered from behavioral problems in school, mostly because of his ADHD. Although Jackson's mother denied that Jackson had grown

- 36 -

up in a rough neighborhood, the school records and evaluation by Dr. McPherson indicate otherwise. Jackson's drug dependency was fueled by his involvement in crime, which consisted mostly of burglaries.*** Upon independent weighing, we find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. Jackson murdered Fingerhut during a burglary and stole his car. These were the aggravating circumstances that merit imposition of the capital penalty. Those were weighed against the mitigating evidence found in the nature and circumstances of the offense, Jackson's history, character, and background, and the statutory factors of R.C. 2929.04(B). We find that the aggravating circumstances of this case outweigh the *minimal mitigating factors.*" (Emphasis added). *State v. Jackson* 107 Ohio St.3d 300, 2006-Ohio-0001, 839 N.E.2d 362, ¶¶177-178, 183.

Appellant argues the trial court erred in failing to consider his "new evidence" when re-imposing the death sentence. The State submits that if, in light of the *Roberts II* decision, this Court elects to review these 88 exhibits it will find that he fails to exceed the "minimal" and "nothing" thresholds previously noted by this Court. Moreover, the Eleventh District did not order a remand for additional mitigation evidence, but merely for the purposes of allocution and for the judge to personally draft the sentencing entry. Appellant further argues for a remand to the trial court "to permit him to place into evidence all relevant information that supports a sentence of less than death." Appellant's Brf. at p. 51. *Roberts II* says that should not happen. Moreover, such an exercise would be pointless, as the documents submitted by Appellant are merely cumulative of testimony already introduced and considered by this Court, or contain information so inflammatory that it borders on counsel ineffectiveness to present it. Appellant suffered no Eighth Amendment violation and his Fifth Proposition of law wholly lacks merit.

- 37 -

**State's Answer to Appellant's Proposition of Law No. VI:**
**A trial court does not trample a convicted, capital murderer's allocution**
**right by permitting him to speak twice during a sentencing hearing and**
**withholding the filing of the sentencing entry until after the hearing.**

In Proposition of Law No. VI, Appellant argues a violation of Crim. R. 32's right of

allocution because the trial court prepared his sentencing order prior to the resentencing hearing.

This argument is without merit.

First, it is arguable that this entire Proposition is rendered moot by *Roberts II*. In an

abundance of due caution, the trial court permitted Appellant to give a second allocution at

resentencing even though he offered an allocution during the original sentencing proceedings.

(T.p. Vol.  ).  Based on this Court's decision in *Roberts II*, wherein the trial court was instructed

to not accept a second allocution from Roberts, the State submits this was a gratuitous

accommodation which will not be repeated at his co-defendant's third sentencing.

In the alternative, it is irrefutable that the court afforded his right pursuant to Crim. R. 32.

The rule requires, that prior to *imposing* sentencing the court shall: "Afford counsel an

opportunity to speak on behalf of the defendant and address the defendant personally and ask if

he or she wishes to make a statement in his or her own behalf or present any information in

mitigation of punishment."  At the point that Appellant offered his allocution, sentence had not

been imposed.  It was neither announced from the bench nor filed in written form.

Indeed, during resentencing, Appellant spoke to the court not once, but twice.  In his first

presentation he stated as follows:

> **Defendant**: "Your Honor, I would just like to say, doing my time in the Trumbull
> Correctional, I went down there and obtained a certificate in basic skills computer
> class and I passed advanced class and also became a tutor down there and also got
> a certificate in the music program, and I was trying to get into other different
> programs that they have down there.  I haven't been in any trouble since I have on
> death row since 2007 and that was a little minor situation, but I haven't been in
> any trouble or anything since then.  Your Honor.  Since I have been off of death

- 38 -

row I understand a lot of things.  In a different situation and different environment
I was in, I have learned to adjust to the environment without any problem, Your
Honor.

Resentencing T.p. 21-22.

Later in the proceedings, he told the court, "I feel that doing my time, I have learned to

find myself and I know who I am right now, and I would like to be placed back on, I wouldn't

like to be placed back on death row. I really wouldn't." (Resentencing T.p. 23). It was not until

after Appellant spoke to the court twice did the trial court make the oral pronouncement of the

death sentence. (Resentencing T.p. 24).  The State takes issue with Appellant's repeated claim in

this Proposition of Law that the trial court "refused" to consider his allocution.  This so-called

refusal is patently refuted by the record.  The court personally addressed Appellant and let him

contribute to the proceedings twice.  Moreover, the trial court filed two documents stating that

"the defendant was afforded all rights pursuant to Crim. R. 32. The Court has considered the

record, oral statements, as well as the purposes and principles of sentencing under R.C.

2929.11." (T.d. 409, 416).  Appellant was one of the people making an "oral statement."

Therefore, Appellant's characterization that the court "refused" to consider his allocution is

belied by the record.

As this Court has noted:  "Trial courts must painstakingly adhere to Crim.R. 32

guaranteeing the right of allocution. A Crim.R. 32 inquiry is much more than an empty ritual: it

represents a defendant's last opportunity to plead his case or express remorse." *State v. Green* 90

Ohio St.3d 352, 359-360, 2000 -Ohio- 182 ,738 N.E.2d 1208, 1221.  The record reflects that the

court gave Appellant this opportunity *twice.* Appellant chose to plead his case, but never

expressed remorse for killing Robert Fingerhut.  Moreover, the Third Appellate District held that

"the requirement of allocution will be fulfilled where the conduct of the court is such that the

- 39 -

defendant and [defense] counsel *** know each has a right to make a statement prior to the imposition of sentence." *Defiance v. Cannon,* 70 Ohio App.3d 821, 828, 592 N.E.2d 884, 888 (3ʳᵈ Dist.1990), citing *United States v. Byars* (C.A.6, 1961), 290 F.2d 515, 517. Appellant obviously knew he had a right to allocute because he did so.

Appellant's contention that the court "refused" to consider his allocution is both empty hyperbole and unsupported by the record. As one Ohio Court has noted a "sentence [is] not finalized until the trial court file[s] its sentencing entry and, up until that time, anything it said about what that sentence would be was tentative." *State v. Maynard,* 9ᵗʰ Dist. No. 07CAO116-M, 2009-Ohio-282, ¶45.

The State would again refer the Court to its decisions in *State v. Reynolds,* 80 Ohio St.3d 670, 684, 687 N.E.2d 1358 and *State v. Fry,* 125 Ohio St.3d 163, 2010-Ohio1017, 926 N.E.2d 1239, as referenced in the State's response to Appellant's first Proposition of Law. In *Fry,* the court filed the sentencing entry eight minutes before the sentencing hearing, and before the defendant allocuted. This Court summarized just some of the memorable moments from that allocution: "After stating that he had killed [the victim] in a fit of rage and should have been convicted only of voluntary manslaughter, he told the court: 'You can do whatever you want to do. If y'all want to put a needle in my arm and poison me because I killed that thieving whore, do what you have got to, but I hope she burn in hell. She will not rob from nobody else.' He further told the victim's mother that she 'should have raised the little bitch not to be a thief'." *Fry, supra,* at ¶186.

This Court found that if this vitriolic tirade had changed the judge's mind as to the appropriate sentence, he could have amended the sentencing entry. "The trial court here allowed Fry an opportunity to personally plead for his life at the sentencing hearing, and because Fry

- 40 -

made a statement, the record is clear as to what he said. Having listened to Fry, the court had an opportunity to evaluate his statement and could have modified its sentencing entry if it had felt obliged to do so. However, the trial court chose not to modify the sentence, and as in *Reynolds,* no prejudice inured to Fry." *Id.* at ¶192. Likewise, no prejudice inures to Appellant merely because the court *prepared* but did not *file* the entry in advance of the hearing. If Appellant's recitation of his newly-acquired computer skills and aversion to death row had swayed the court's decision, the trial court could have redrafted the entry and imposed a life sentence.

In *Reynolds,* the entry was filed as the sentencing hearing was on going. As previously discussed, this Court found no reversible error in this confluence of events. *Reynolds, supra,* at 683. Another glitch in the Reynolds sentencing occurred with the allocution. While the trial court inquired as to whether Reynolds had anything to say regarding the punishment of lesser felonies, it did not personally address Reynolds regarding the penalty for aggravated murder. Instead, the court deferred to counsel who said Reynolds would rely on a letter previously presented to the court. Nevertheless, this Court found no prejudicial error: "The purpose of allocution is to permit the defendant to speak on his own behalf or present any information in mitigation of punishment. Reynolds had this opportunity in the penalty phase of the case when he presented evidence and made an unsworn statement. A court's error in failing to ask a defendant if he wants to make a statement prior to sentencing is not prejudicial where, as here, the defendant makes an unsworn statement in the penalty phase, sends a letter to the trial court, and where defense counsel makes a statement on behalf of the defendant. [This] proposition of law is rejected." *Id.* at 684.

The events as they unfolded at Appellant's resentencing are far less allocution-stifling than the *Fry* or *Reynolds* examples. In both these cases, the court had filed or was filing the

- 41 -

written entry before even inviting input from the accused. Here, the entry was filed after the hearing. If Appellant, his counsel, or the State of Ohio had made any statements meriting a change in the sentence, the sentencing entry could have been amended accordingly.

Finally, in his closing paragraph, Appellant argues that the trial court's "refusal" to consider his allocution violates his Eighth and Fourteenth Amendment rights. To reiterate, the trial court did not "refuse" to consider the allocution. Furthermore, at least one Ohio Court has held that the right to allocution is not a constitutional right. "[T]he failure of a trial court to ask a defendant whether he has anything to say before sentence is imposed is not a constitutional error. *Hill v. United States* (1962), 368 U.S. 424, 428, 82 S.Ct. 468. Although not considered a constitutional right, the right of allocution is firmly rooted in the common-law tradition. *Green v. United States* (1961), 365 U.S. 301, 304, 81 S.Ct. 653." *State v. Copeland,* 12th Dist. No. CA2007-02-039, 2007-Ohio-6168, ¶6. Citing to *Hill,* the dissent in *Roberts II* noted "[t]here is no recognized constitutional right to allocution." *Id.* at ¶100. With no constitutional right, there is no constitutional violation. Appellant cites absolutely no authority to suggest the mere preparation of a complex and detailed sentencing entry prior to a sentencing hearing somehow elevates his right to allocution to a constitutional right.

The State submits *Roberts II* rendered this argument moot. The record reflects that Appellant was afforded his full panoply of rights pursuant to Crim. R. 32 before the new death sentence was announced from the bench or filed in paper form with the clerk's office. Thus, any accusation that the trial court "refused" to consider the allocution is abundantly refuted by the record. Appellant's Proposition of Law VI is without merit.

- 42 -

**State's Answer to Appellant's Proposition of Law VII:**
**A trial court commits no error in relying on portions of an original sentencing entry which have been affirmed by a superior court and portions of which were prepared personally by the judge in drafting the original entry.**

In this Proposition of Law, Appellant argues that because the court's redrafted sentencing opinion mirrors the original entry in several places, he has suffered a constitutional violation and he is entitled to a "neutral evaluation" of the evidence and a third reweighing on the aggravating circumstances and mitigating factors. This argument lacks merit on many fronts.

First, this Court found a *statutory* violation in the prosecution's typing the sentencing entry in Donna Roberts' case, not a constitutional violation as argued by Appellant. "The trial court's decision to use the prosecutor in preparing the sentencing opinion constitutes a grievous violation of the *statutory deliberative process*. It is so severe a violation that independent reweighing cannot serve as an adequate remedy. See, *State v. Green,* 90 Ohio St.3d at 363–364, 738 N.E.2d 1208. We find that we must vacate the sentence because of the critical constitutional interests and notions of justice that are implicated by the prosecutor's participation in drafting the sentencing opinion." *State v. Roberts I,* at ¶ 163.   The State submits that if Roberts suffered no constitutional violation by the prosecution drafting her original sentencing opinion, Appellant suffers no constitutional violation if the trial court recycles undisputed portions of its original opinion in drafting the newer version.

Second, this Court noted in the Roberts' decision and in the ensuing disciplinary action that prosecutors relied upon the judge's notes in comprising the final draft of her sentencing opinion. "The trial judge stated that he had given notes to the prosecutor and had instructed the prosecutor, '[T]his is what I want.' The court added that the opinion had to be corrected six or seven times." *Roberts I, supra,* at ¶155. After the *Roberts* decision, this Court conducted

- 43 -

disciplinary proceedings against the trial judge, John Stuard, and Trumbull County Assistant Prosecuting Attorneys Christopher Becker and Kenneth Bailey.  In so doing, this Court determined that Judge Stuard had already independently weighed the aggravating circumstances and mitigating factors *prior* to handing his notes to the prosecutors during the drafting process. "Judge Stuard gave Becker two pages of notes on the aggravating circumstances and mitigating factors *that he had weighed in deciding that the death sentence was appropriate.* The notes did not relate the history and facts of the Roberts case beyond the discussion of aggravating circumstances and mitigating factors." (Emphasis added).  *Disciplinary Counsel v. Stuard.*  121 Ohio St.3d 29, 2009-Ohio-261, 901 N.E.2d 788, ¶5.

The disciplinary proceedings revealed that the judge had made his decision to accept the jury's recommendation in Roberts' case *and* had engaged in his own independent weighing of the mitigating factors and aggravating circumstances prior to involving the prosecutor's office. He reduced those thoughts to writing before handing his notes over to the prosecutor. Based on those disciplinary proceedings, the Eleventh District determined that Judge Stuard engaged in the same conduct with respect to Appellant's sentencing opinion as occurred in Roberts' case. "Because he acknowledged *doing the same thing* that resulted in prejudicial error in the *Roberts* case, the trial judge conceded prejudicial error in Jackson's case. (Emphasis added). *State v. Jackson* 190 Ohio App.3d 319, 327 , 2010-Ohio-5054, 941 N.E.2d 1221, 1227, ¶40 (11th Dist.).

It was the sameness of the conduct that caused the Eleventh District to order the resentencing.  Therefore, if the trial court engaged in the "same conduct" as in Roberts, he had decided the issue of death and had engaged in an independent weighing process before involving the prosecutor's office.  Logic follows, then, that Judge Stuard merely copied himself in compiling the redraft during the crucial exercise of weighing the aggravating circumstances

- 44 -

against the mitigating factors.  The prosecutors had no involvement in the court's initial decision and analysis, and had no involvement whatsoever in the redraft.  It is with little wonder then, as Appellant argues that "the first and second sentencing opinions are identical including the sections reviewing the mitigating factors and the reasons that the aggravating factors outweighed the mitigating factors by proof beyond a reasonable doubt."  (Appellant's Brf. p. 55).

That leaves the trial court's recitation of the facts and the application of the law in the new entry.  Indeed, much of the document is a recitation of the facts from Appellant's case which are beyond dispute, abundantly supported by the record, and were repeatedly relied upon by this Court when it drafted *State v. Jackson,* 107 Ohio St. 3d 300, 2006-Ohio-1.   In deciding *Roberts,* this Court cited to *Gardner v. Florida,* 430 U.S. 349, 362, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), wherein the U.S. Supreme Court held the defendant was denied due process of law when the death sentence was imposed, at least in part, on the basis of information from a presentence report which he had no opportunity to deny or explain.  Appellant does not highlight one shred of information contained in his redrafted opinion which was not extracted directly from the record in this case.

A side-by-side comparison of this Court's opinion in *State v. Jackson,* 107 Ohio St. 3d 300, 2006-Ohio-1, with the trial court's second entry reveals many similarities.  For example, both documents reference the plot between Roberts and Appellant to kill Fingerhut memorialized in prison phone calls and letters, the injury to Appellant during the confrontation with Fingerhut, the injuries to Fingerhut which included three gunshot wounds, Appellant's theft of Fingerhut's car, Roberts supplying a hotel hide-out for Appellant after the killing, Appellant's claim of self-defense, DNA evidence linking Appellant to Fingerhut's car, and the $550,000 in life insurance proceeds which Roberts stood to collect upon Fingerhut's demise. (T.d.410, p.3-6; *State v.*

- 45 -

*Jackson,* 107 Ohio St. 3d 300, 2006-Ohio-1, ¶¶ 3-4, 11, 13-15, 20-67, 69).  This Court managed

to extrapolate these facts on its own, from the record in this case, and without any input from the

prosecutor's office.  It should come as no surprise that the trial court - upon remand from the

Eleventh District – independently elicited many of those same facts, and, like this Court, found

them germane to whether the death penalty should be re-imposed. As Appellant does not cite to a

single, solitary error presented in the factual scenarios in either *State v. Jackson,* 107 Ohio St. 3d

300, 2006-Ohio-1, or the redrafted sentencing opinion, the fact that *both* strongly resemble the

original sentencing opinion does not mean Appellant suffers a constitutional violation  or

prejudicial error.

Finally, though the State concedes no error, the State submits that it is at worst harmless

error that the trial court apparently copied large portions of its original sentencing opinion into

the new opinion.  The Eleventh District did not order the trial court to completely deconstruct its

original opinion and rebuild it from the ground up; nor did this Court order a massive rewrite in

*Roberts.*    "On remand, the trial judge will afford Roberts her right to allocute, and the trial

court shall personally review and evaluate the evidence, weigh the aggravating circumstances

against any relevant mitigating evidence, and determine anew the appropriateness of the death

penalty as required by R.C. 2929.03. The trial court will then personally prepare an entirely new

penalty opinion as required by R.C. 2929.03(F) and conduct whatever other proceedings are

required by law and consistent with this opinion." *State v. Roberts*  110 Ohio St.3d 71, 2006-

Ohio-3665, 850 N.E.2d 1168, ¶167.   It is axiomatic that the facts in these cases do not change

over time; nor does the law, nor its applicability to the cases.  Thus, unless the court decided

upon additional reflection that the death penalty was inappropriate, it is reasonable that much of

- 46 -

the wording in the second entry would be identical to what appeared in the first entry, especially in light of the fact that this Court found no constitutional or factual error with the original draft. Therefore, the sameness of the two entries is not prejudicial to Appellant, and is at worst harmless error. A complete rewrite in the instant matter would elevate form over substance and would not be in the furtherance of judicial economy. See, *Fisher v. Fisher,* 8th Dist. No. 78092, 2001 WL 740100 (July 28, 2001), at *6.

To conclude, this Court previously affirmed a sentencing opinion which included a predetermination as to the death sentence and a weighing of the aggravating circumstances personally prepared, if not typed, by the judge. That entry also included a recitation of the facts which were unchallenged by Appellant in the prior appeal. Therefore, Appellant suffers no constitutional error if the trial court opted to re-submit those facts and findings in the new entry. Appellant's Proposition of Law VII lacks merit.

**State's Answer to Appellant's Proposition of Law VIII:**
**A trial court does not err in declining to merge charges and specifications**
**which sound in aggravated robbery and aggravated burglary and which**
**were clearly committed with a separate animus.**

Appellant alleges in Proposition of Law No. VIII that the trial court erred in failing to merge the aggravated burglary and aggravated robbery charges for sentencing purposes. He argues a Double Jeopardy violation because the trial court sentenced him separately and consecutively on the aggravated robbery and aggravated burglary counts and because the trial court failed to merge the aggravating circumstances reflected in these two separate counts at sentencing. This argument fails for a variety of reasons.

Over three decades ago, this Court described the doctrine of merger as follows: "It is apparent that the statute has attempted to codify the judicial doctrine sometimes referred to as the doctrine of merger and other times as the doctrine of divisibility of offenses which holds that 'a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime.' *State v. Botta* (1971), 27 Ohio St.2d 196, 201, 271 N.E.2d 776, 780. However, R.C. 2941.25(B), by its use of the term 'animus,' requires us to examine the defendant's mental state in determining whether two or more offenses may be chiseled from the same criminal conduct. In this sense, we believe that the General Assembly intended the term 'animus' to mean purpose or, more properly, immediate motive." *State v. Logan* 60 Ohio St.2d 126, 131, 397 N.E.2d 1345, 1349 (1979). This Court's review of an allied offenses question is de novo. *State v. Williams,* 134 Ohio St.3d 482, 2012–Ohio–5699, ¶ 12.

In subdivision A of his argument, Appellant focuses on the aggravating circumstances wherein the jury found Appellant guilty as the principal offender while committing the offense of aggravated burglary and guilty as the principal offender while committing the offense of

- 48 -

aggravated robbery.  He argues that for sentencing purposes, the trial court should have

"merged" these specifications for purposes of sentencing.  This argument is somewhat

superfluous because the specifications apply only to the death sentence.  The trial court

sentenced him to die only once, regardless of the number of aggravating circumstances.  Thus,

whether the court construed one or two underlying crimes as an aggravating circumstance,

Appellant suffers no prejudice because he can suffer the death penalty only once.

      Nevertheless, Appellant's argumentation is built on two flawed theories: (1) that

Appellant did not commit an aggravated burglary because Roberts let him into the house she

shared with Fingerhut and (2) that the aggravated robbery and aggravated burglary occurred

"simultaneously."  Appellant's Brf. at p. 60. The argument that permission to enter a home

vitiates a burglary charge was soundly rejected by this Court in a case cited by Appellant, *State

v. Steffen,* 31 Ohio St. 3d 111, 509 N.E.383 (1987). David Steffen argued he was not guilty of

aggravated burglary because the victim in the case invited him into the home when he

represented himself as a door-to-door salesman.  While in the home, he raped the victim and

slashed her throat.  She bled to death.  "Under the circumstances of this case, even assuming

lawful initial entry, the jury was justified in inferring from the evidence that appellant's privilege

to remain in [the victim's] parents' home terminated the moment he commenced his assault on

her. Appellant does not deny striking [the victim] repeatedly before killing her. From that

undisputed fact, a powerful inference arises that appellant was no longer privileged to remain in

[the victim's] parents' home, and that he knew his privilege had been terminated. In our view, this

inference is so strong that it excludes the possibility of drawing from the same facts any other

reasonable inference supporting a theory of innocence." *Steffen, supra,* at 115.     The

distinction here, however, is that Appellant *never* had a lawful purpose in entering the Fingerhut

- 49 -

residence.  His sole purpose for the entry, no matter how he gained entry, was to kidnap and murder Mr. Fingerhut.

Even if this Court were to disagree, and conclude that Appellant lawfully and without deception entered Mr. Fingerhut's home because he was Roberts' invitee, his lawful entry is still terminated at the point  he physically confronted Mr. Fingerhut, a point which Appellant concedes in his brief at p. 60. This leads to Appellant's second erroneous conclusion that he engaged in but one "single discrete act." Appellant's brf. at p. 62.  Appellant acknowledges that this Court rejects the notion that aggravated burglary and aggravated robbery specifications are subject to merger.  "Aggravated burglary and aggravated robbery are separate offenses and constitute separate aggravating circumstances because they do not arise from the same act." *State v. Williams,* 74 Ohio St.3d 569, 580, 660 N.E.2d 724, 734 (1996)   "Aggravated robbery and aggravated burglary are not allied offenses of similar import where, as here, the offenses are committed separately, see *State v. Frazier* (1979), 58 Ohio St.2d 253, 12 O.O.3d 263, 389 N.E.2d 1118, and it was proper for the jury to consider both." *State v. Slagle,*  65 Ohio St. 3d 597, 611, 605 N.E.2d 916, 929 (Defendant admitted breaking into a woman's house to steal something, and murdered her). In this case the separate act evidence is more obvious than most. As previously stated, Appellant's sole purpose in entering the Fingerhut home was to commit a murder, not a theft offense.  Once the murder was complete, Appellant moved on to his third crime, the aggravated robbery when he stole Mr. Fingerhut's car to get away.

Even in more recent cases where the trespass is committed for the purpose of a theft, this Court has found the merger of aggravated burglary and aggravated robbery unwarranted when both crimes are committed with a separate animus.  For example, in *State v. Monroe,* 105 Ohio St. 3d 384, 2005-Ohio-2282, this Court held:   "The aggravated-burglary and aggravated-

- 50 -

robbery specifications were also *not subject to merger*, since they were committed with separate animus. The burglary was complete as soon as Monroe entered the apartment by deception with the intent to commit a theft offense. Monroe then attempted to rob Quincy and Simmons of drugs that Monroe thought were in Quincy's apartment. Thus, the aggravated burglary and aggravated robbery were separate offenses and constituted separate aggravating circumstances because they did not arise from the same act. See *State v. Williams* (1996), 74 Ohio St.3d 569, 580, 660 N.E.2d 724; *State v. Fears,* 86 Ohio St.3d at 344, 715 N.E.2d 136. See, also, *State v. Frazier* (1979), 58 Ohio St.2d 253, 256, 12 O.O.3d 263, 389 N.E.2d 1118." (Emphasis added). *Monroe, supra,* at ¶68.

In *Williams, supra,* another Trumbull County capital case, this Court held "[a]ggravated burglary and aggravated robbery are separate offenses and constitute separate aggravating circumstances because they do not arise from the same act." Id. at 580, 660 N.E.2d 724, 734.

It is easily argued here that the aggravated burglary was complete as soon as Appellant confronted Mr. Fingerhut in his home.  That confrontation ended with Mr. Fingerhut's death. Appellant could have elected to flee the residence on foot, or simply wait for Roberts to return. Instead, he chose to take Mr. Fingerhut's automobile to make good his getaway.  At the point that he removed the car, he committed not just a theft offense, but a third felony in addition to the aggravated murder and aggravated burglary previously committed.  The aggravated robbery was a separate offense and did not arise from the act of burglarizing the Fingerhut residence.

At the close of the "A" subsection, Appellant briefly cites to this Court's decision in *State v. Johnson,* 128 Ohio St. 3d 153, 2010-Ohio-6314, and suggests that this Court revisit the merger issue in his case in light of the *Johnson* decision.  At this writing, it appears this Court has not decided whether or not *Johnson* affects this Court's earlier holdings that aggravated robbery and

- 51 -

aggravated burglary constitute allied offenses of similar import. For the reasons to be discussed in the State's response to Appellant's subsection "B," the State submits *Johnson* has no effect the issue of merger in this instance.

Appellant argues that when viewed in light of the *Johnson* decision, this Court should view Appellant's commission of the aggravated burglary and the aggravated robbery as "a single discrete act." "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. *Blankenship,* 38 Ohio St.3d at 119, 526 N.E.2d 816 (Whiteside, J., concurring) ('It is not necessary that both crimes are always committed by the same conduct but, rather, it is sufficient if both offenses *can be* committed by the same conduct. It is a matter of possibility, rather than certainty, that the same conduct will constitute commission of both offenses.' [Emphasis sic]). If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import. If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' *Brown,* 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50 (Lanzinger, J., dissenting).  If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged. Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." Italics original. *Johnson, supra,* at ¶48-51.

- 52 -

If Appellant's plot had worked according to plan, *Johnson* may have afforded him the benefit of merged specifications and sentences. Appellant and Roberts had originally planned for Appellant to force Mr. Fingerhut into the trunk of his own car, drive him away from his home and  execute him. However, that plan went awry when Mr. Fingerhut apparently pulled a gun on Appellant and shot Appellant in the finger as he fought for his life.  Once Appellant shot and killed Mr. Fingerhut the car was no longer necessary to facilitate the kidnapping or the murder. As it turned out, Appellant was able to commit the murder without the added necessity of commandeering the car.  But he chose to take it anyway.  There is no single act with a single state of mind, but separate acts with a separate animi.  Even when *Johnson* is placed into legal analysis, Appellant is still not entitled to merger of the specifications or the charges.

In subsection B, Appellant makes the novel argument that because Appellant was charged with aggravated robbery and aggravated burglary as separate counts, the State was obligated to choose at sentencing whether the court should sentence upon the aggravating circumstance or the charges as they appear as counts three and four in the indictment.  This argument is wholly nonsensical.  *Johnson* in no way requires the State to disappear aggravating circumstances merely because they also mirror separate charges in the indictment.  Appellant cites to *Johnson* and three other cases, all of which involve felony murder charges pursuant to R.C. 2903.02(B) wherein defendants were sentenced on the murder count in *addition* to the crimes which served as the predicate offenses, not aggravated murder counts.  He admits that a specification that elevates and a predicate offense in a felony murder charge and an aggravated murder specification represent separate legal theories. Moreover, the court instructed the jurors on the crime of aggravated burglary before instructing on aggravated murder.  The court instructed the jurors, "You will proceed to consider whether the specification has been proven,

- 53 -

again beyond a reasonable doubt, if, and only if you determine the defendant is guilty of aggravated burglary. If your verdict is not guilty, then you would not consider the specification." (T.p. Vol. 15, p. 3553). The court gave the same admonition with respect to the aggravated robbery count. (T.p. Vol. 15, p. 3557-3558). Suffice it to say the State had no obligation to dismiss either the aggravating circumstances or the additional first degree felonies upon which Appellant was convicted.

In his final "C" subsection, Appellant argues that counts three and four should be merged for sentencing purposes. Again, he is incorrect. He cites to the Eleventh District's decision in *State v. Jarvi,* 11th Dist. No. 2011-A-0063, 2012-Ohio-5590, to again argue a single course of conduct in the commission of the aggravated burglary and aggravated robbery. Though not controlling on this Court, *Jarvi* is instructive in *disproving* Appellant's argument. Because Jarvi pled guilty rather than proceeding to trial, the facts are somewhat thin. However, the Eleventh District provided this summary: "These charges were predicated upon an incident in which appellant and three other persons trespassed into the home of Richard Hackathorn, an individual who had given financial aid to appellant in the past. After Hackathorn refused to give appellant any money on that particular occasion, one of her male companions struck Hackathorn with a wooden club, causing him to fall on the floor. Appellant then removed Hackathorn's wallet from his pocket and took a sum of money. " *Jarvi, supra,* at ¶2.

It appears that the purpose of the *Jarvi* trespass was to exact additional "financial aid" from the victim, which was decidedly not why Appellant trespassed in Mr. Fingerhut's home. Unlike the instant case, the Eleventh District determined that the aggravated burglary and aggravated robbery were committed with the same animus. "[I]t is possible to commit both

- 54 -

aggravated burglary and aggravated robbery with the same conduct as occurred here. Moreover, the two crimes were not committed separately or with a separate animus." *Id.* at ¶24.

As was stated earlier in this argument, the purpose of the trespass was to kill Mr. Fingerhut, not to steal from him. Once Appellant murdered Mr. Fingerhut, the purpose of the aggravated burglary was complete. His election to take the car when he no longer needed the ample trunk space provided by the Chrysler 300M to transport Mr. Fingerhut contributes a new and separate animus to support the aggravated robbery conviction.

Appellant's case is far more factually akin to this Court's decisions in *Frazier, supra,* a non-capital case wherein the defendant assaulted a woman in her own home which he entered under the pretext of inquiring about cutting her grass. The woman's husband discovered Frazier assaulting his wife, and died of a fatal heart attack. Assuming both to be dead, Frazier ransacked the house taking jewelry, silverware, cash and other items. This Court found an aggravated burglary and aggravated robbery to be committed with a separate animus. "The forced entry into the victims' home preceded the beating and was alone sufficient to accomplish the burglary. The testimony indicates that the entry itself could not have given rise to a charge of aggravated robbery since the physical harm was caused not by Mrs. Dorr's fall as the door was forced open, but by the subsequent beating. The fall gave the defendant access to the victims and their house. The subsequent beating facilitated the theft of the victims' property. The fall and beating were accordingly distinct in time and in the functions they served. " *Frazier, supra* at 256, 389 N.E.2d 1118, 1120. Appellant's theft of Mr. Fingerhut's Chrysler was distinct in time from his shooting and killing Mr. Fingerhut. Thus, these are crimes committed with a separate animus.

- 55 -

Finally, the State would argue waiver of the merger issue.  While Appellant's counsel argued the merger issue at his resentencing, his trial counsel never argued merger before the case went to the jury at trial.  As this Court has explained: "[I]f such multiple specifications are included in an indictment, the 'trial court should instruct the jury in the penalty phase that those duplicative specifications must be considered merged for purposes of weighing the aggravating circumstances against the mitigating factors.' *State v. Garner* (1995), 74 Ohio St.3d 49, 53, 656 N.E.2d 623, 630. No such instruction was given in this case." *State v. Mitts* 81 Ohio St.3d 223, 231, 690 N.E.2d 522, 530 (1998).  Appellant did not raise these issues prior to submission to the jury, therefore the issue is waived.  *State v. Palmer,* 80 Ohio St. 3d 543, 574, 687 N.E. 2d 685(1997).

The *Palmer* court also pointed out that even *if* the trial court erred in failing to merge specifications, the error can be cured by this Court in the independent weighing process wherein this Court may merge any of the charges if so warranted.  *Id.*  And given the dearth of mitigating evidence presented in the case sub judice, it is evident that the outcome of the cause would not have changed even if the counts and specifications had merged.  See, *Id.* at 575.

For these reasons, Appellant is not entitled to the merger of either the specifications or the charges of aggravated burglary and aggravated robbery.  Two separate times were committed and two separate punishments are warranted.  Appellant's Proposition of Law No. VIII is without merit.

- 56 -

**State's Answer to Appellant's Proposition of Law IX:**
**In the total absence of evidence to the contrary, a trial court properly re-imposes a death sentence which has already survived appellate review by a superior court.**

In this Proposition of Law, Appellant recycles several arguments previously addressed to suggest that the implementation of the death penalty was unreliable and that his death sentence should be reversed. This argument lacks merit.

First and foremost, this Court has already independently weighed the appropriateness of Appellant's death sentence and has unanimously affirmed said sentence. "Upon independent weighing, we find that the aggravating circumstances outweigh the mitigating factors beyond a reasonable doubt. Jackson murdered Fingerhut during a burglary and stole his car. These were the aggravating circumstances that merit imposition of the capital penalty. Those were weighed against the mitigating evidence found in the nature and circumstances of the offense, Jackson's history, character, and background, and the statutory factors of R.C. 2929.04(B). We find that the aggravating circumstances of this case outweigh the minimal mitigating factors. We further find that the death penalty is both appropriate and proportionate when compared with capital cases also involving aggravated murder during aggravated burglary, see *State v. Davie* (1997), 80 Ohio St.3d 311, 686 N.E.2d 245, and aggravated murder during aggravated robbery, see *State v. Burke* (1995), 73 Ohio St.3d 399, 653 N.E.2d 242; *State v. Raglin* (1998), 83 Ohio St.3d 253, 699 N.E.2d 482." *State v. Jackson* 107 Ohio St.3d 300, 2006-Ohio- 839 N.E.2d 362, 2006-Ohio-0001, ¶¶183-184. Appellant presented nothing at this resentencing and presents less in his briefing to suggest that this Court was wrong.

Moreover, the bulk of the unreliability factors which Appellant argues in his brief could have easily been raised in his briefing to this Court in his original appeal and were not. Therefore, they are barred by res judicata. "Under the doctrine of res judicata, a final judgment

- 57 -

of conviction bars a convicted defendant who was represented by counsel from raising and litigating * * * any defense or any claimed lack of due process that was raised or could have been raised * * * on an appeal from that judgment." *State v. Perry* 10 Ohio St.2d 175, (1967), paragraph nine of the syllabus.

Appellant again claims ineffective assistance of counsel at the mitigation phase because of the substitution of Atty. Wright for Atty. Lewis. As was extensively discussed in the State's response to Appellant's Proposition of Law II, this substitution and its alleged ill effects on the penalty phase could have been raised in the direct appeal but was not; therefore it is res judicata barred. Moreover, the mitigation hearing proceeded with Atty. Wright at Appellant's insistence, so if any error occurred said error was invited. Appellant's claim at page 65 that veteran defense counsel Anthony Consoldane "knew little about the sentencing case" is belied by the record. Atty. Consoldane told the court: "[F]or the last ten years on the cases that Mr. Lewis and I have tried together, I pretty much have handled most of the mitigation. I had the witnesses here. I didn't want to have them come back. (T.p. Vol. 16, p. 157). Nevertheless, the place to raise a claim of ineffective assistance of counsel was in the direct appeal, not this one.

As he did in Proposition of Law III, Appellant claims his sentence is unreliable because his original sentence was drafted by the prosecution and copied in large portions by the trial court for resentencing. The State would refer to its extensive argument in its response to Appellant's Proposition of Law III, and remind the Court that Judge Stuard essentially copied himself and therefore neither the entry nor the death sentence can be classified as "unreliable."

At page 66, Appellant accuses Judge Stuard of a lack of impartiality because he declined to resentence Appellant until the Eleventh District instructed him to do so. Judge Stuard did not resentence Donna Roberts until this Court instructed him do so. Appellant fails to explain how

- 58 -

waiting from a directive from a higher court to conduct a resentencing compromises a trial judge's impartiality.

Appellant also claims that the trial judge refused to consider any new evidence at the resentencing. Relying on its prior decision in *State v. Davis,* 63 Ohio St. 3d 44, 584 N.E. 2d 1192 (1992) and *State v. Chinn,* 85 Ohio St. 3d 548, 709 N.E. 2d 1166 (1999), this Court flatly rejected the notion that Appellant's co-defendant was entitled to spike the resentencing proceeding with mitigation evidence. "In *Chinn,* we adhered to *Davis II* and held that when 'errors requiring resentencing occurred after the close of the mitigation phase,' the correct procedure was for the trial court 'to proceed on remand from the point at which the error occurred.' *Chinn,* 85 Ohio St.3d at 565, 709 N.E.2d 1166. Indeed, we stated that 'the trial court was *required* to proceed on remand from the point at which the errors had occurred, i.e., after the jury had returned its recommendation of death." (Emphasis added.) *Id.* at 564. The trial court was bound by those precedents, as well as by our remand order in *Roberts I. Roberts I* neither overruled nor modified *Davis II* or *Chinn* and did not order the trial court to hold a new penalty-phase evidentiary hearing, Thus, *Roberts I* cannot reasonably be understood as imposing a requirement that *Davis II* and *Chinn* had expressly declined to impose." *Roberts II,* at ¶¶45-46.

The so-called error in Appellant's trial occurred at the same point as in Roberts, post-mitigation. And Appellant should have even less of an expectation of contributing additional materials to the resentencing proceeding because unlike his co-defendant, Appellant presented mitigating evidence. During her original mitigation hearing, Roberts forbade her attorneys from introducing *any* mitigating evidence, and then made a lengthy unsworn statement to the jury openly urging – if not daring and demanding – them to recommend a sentence of death. *Roberts*

- 59 -

*II,* ¶¶9-10.  Appellant, on the other hand, took full advantage of his right to present mitigation evidence calling four lay witnesses and a hand-picked forensic psychologist.  *State v. Jackson,* 107 Ohio St. 3d. 300, 2006-Ohio-0001, 839 N.E. 2d 362, ¶¶163-175.  Appellant's sentence is therefore not "unreliable" because the trial court placed the same restriction on Appellant as it did Roberts.

Finally, at page 66, Appellant erroneously argues that the trial court failed to consider Appellant's allocution.  The State submits once again that *Roberts II* has rendered this point moot.  Since Roberts was permitted to allocute during her second sentencing, this Court has specifically instructed the trial court that she will not be afforded that privilege during her third sentencing.  *Id.* at ¶74.  Even if the trial court failed to specifically reference and/ or write *ad nauseam* about what Appellant said, he was apparently not entitled to say anything at all, so there is no error.  However, this issue is sufficiently covered in the State's response to Appellant's Proposition of Law No. VI.  The State would adopt and incorporate those arguments here and simply state the record is clear that his self-serving allocution was heard by the trial court and referenced in the written sentencing entry. (T.d. 409, 416).  For Appellant to state that the judge "refused" to consider Appellant's bonus allocution is just plain wrong and refuted by the record.

The State would refer this Court to its response to Proposition of Law No. VIII for any argument regarding the duplicative specifications and whether or not the mere inclusion of these specifications that represent two separate and distinct crimes "impermissibly titled the scales in favor of death." The State submits that this Court has found that the aggravating circumstances outweigh the paltry mitigating factors presented during the penalty phase both permissibly and legally tilt the scales in favor of death, not the number of "duplicative specifications."

- 60 -

For the rest of this Proposition of Law, Appellant blends the record of his guilt and penalty phase proceedings with his post-conviction and post-*Roberts I* litigation.  He makes non-specific references to exhibits generated after his original sentencing; references which *Roberts II* would preclude.  The rest of this argument should be therefore disregarded by this Court.  Should this Court disagree, the State will briefly address each of these claims.

Appellant argues that his judge and jury heard "inaccurate" information about him during the mitigation phase thus causing the panel to recommend the death penalty and the judge to impose the death penalty.  In his brief, Appellant claims the jury heard he was "smart" when in fact is of "borderline intelligence."  Appellant does not share with this Court as to who made that statement.   In reality, Dr. McPherson testified that she tested Appellant prior to trial and he scored an 84 on an I.Q. test, but also told the jury that  Appellant scored a 70 I.Q. when tested in grade school.  *State v. Jackson,* 107 Ohio St.3d 300, 2006-Ohio-0001, 839 N.E.2d 362, ¶173.  Appellant conveniently omits the fact that during his resentencing allocution he claimed to have completed basic and advanced computer skills classes in prison and was tutoring others.  This lends all the more credence to Dr. McPherson's opinion that he is a person "of average ability."  *Id.*

His claim that Dr. McPherson improperly scored his I.Q. test has no bearing on whether the aggravating circumstances outweighed the mitigating factors in this case.  First, the "proof" of this invalid scoring was presented through an affidavit submitted with his postconviction petition and proffered resentencing exhibits. Though not controlling on this Court, the Eleventh District has already dismissed this argument:

"[P]ursuant to appellant's own evidentiary materials, the alleged errors in the calculation would have only resulted in a four-point change in the final result, i.e., from 84 to 80.  Under

- 61 -

Ohio law, there is a rebuttable presumption that a criminal defendant is not mentally retarded if the result of his IQ test is greater than 70. *State v. Lott,* 97 Ohio St.3d 303, 779 N.E.2d 1011, 2002-Ohio-6625. Thus, the difference in appellant's I.Q. would not have changed his basic status under the intelligence scale. In light of the overwhelming nature of the aggravating circumstances in this case, this four-point error in calculation would not have altered the jury's weighing exercise in determining whether to recommend the death penalty." *State v. Jackson,* 11th Dist. No. 2004-T-0089, 2006-Ohio-2651, at ¶143. Thus, Appellant's death sentence is not rendered unreliable because his jury did not know that several years after his trial, another hand-picked expert would retest Appellant's I.Q. and find that he scored a meager four points lower than on the McPherson test. Parenthetically, the later I.Q. test made no reference to his computer skills, musical talent, or artistic ability.

Appellant complains that the jury did not know of his mother's alcoholism or that he was raised by his grandmother. First, since his mother was not on trial, her drinking habits are not relevant. Second, this Court found "that Jackson's father had little, if any, involvement with his son and that Jackson grew up under the care of his mother and maternal grandmother." *State v. Jackson* 107 Ohio St.3d 300, 2006-Ohio-0001, 839 N.E.2d 362, ¶168. If this Court could glean the grandmother involvement from the transcript, it is reasonable to assume Appellant's jury could as well. Thus, the information as presented was neither inaccurate nor prejudicial as to his upbringing.

Appellant claims that "some witnesses" described him as a "good student." Appellant's brief at p. 67. Whoever this mystery witness or witnesses were, they did not merit as much as a mention in this Court's opinion. His mother told the jury he did "pretty good" in school (*Id.* at ¶167) which is hardly a ringing endorsement of his academic accomplishments. The jury also

- 62 -

heard from Dr. McPherson who described Appellant as a behavioral problem who was routinely suspended from school. She said he suffered from attention-deficit hyperactivity disorder ("ADHD") characterized by impulsiveness and an inability to stop his behavior. The doctor also noted that he dropped out of school in the eleventh grade. *Id.* at ¶¶168-171. The jury may have heard differing opinions as to Appellant's performance at school, but Dr. McPherson's opinion was backed by research into his school records, not maternal instincts directed at a desire to keep a child out of Ohio's death chamber.

Finally, Appellant in his brief tells this Court that "the jury heard that Appellant was living with his grandmother at the time of the murder." Appellant's brief at p. 67. This Court did not hear that. In its opinion, this Court wrote that upon his release from an Ohio penitentiary on December 9, 2001, he stayed not with grandma, but with Donna Roberts at a Jacuzzi suite at the Wagon Wheel Motel in Boardman, Ohio. *Id.* at ¶5. Appellant killed Robert Fingerhut on December 11, 2001. After the homicide, police recovered blood samples containing Appellant's DNA and fingerprints at a Days Inn which Roberts had reserved for an entire week. *Id.* at ¶19. Neither this Court's opinion nor the record from the Court below indicated that Appellant's grandmother lived at either the Wagon Wheel or the Days Inn. By all accounts, Appellant was living in area motels at the time of the murder.

Prior to his incarceration, Dr. McPherson told the jury he was living "on the streets." "Jackson dropped out of school in the 11th grade and decided to live independently of his mother. His idea of independence was to live on the streets." *Id.* at ¶171. It is fair to assume that unless his grandmother also lived "on the streets" he was not living with her prior to the murder. The doctor also stated his drug habit fueled his ventures into other criminal activity. "Dr.

- 63 -

McPherson noted that Jackson's repeated involvement in crimes as an adult was mostly related to his drug habit." *Id.* at 170.

Lastly, Appellant complains that the jury heard too little evidence about Roberts' influence on him.  The Eleventh District dealt extensively with the Roberts control issue in the appeal of Appellant's unsuccessful postconviction petition.  "***Although there was some support in appellant's evidentiary materials that Roberts had at least moderate intelligence, *there was nothing in those materials to indicate that she used this intelligence to induce other individuals of lesser intelligence to commit criminal offenses for her.*** In addition, our review of the exhibits does not support the holding that the submission of evidence as to the difference between the intelligence of Roberts and appellant would have affected the outcome of the guilt phase of the trial. ***[W]e would emphasize that the state submitted evidence during the guilt phase concerning the communications between appellant and Roberts prior to his release from prison. This evidence showed, at the very least, that *appellant played an equal role in the planning of the murder. Therefore, it is extremely unlikely that evidence relating to Roberts' basic intelligence would have altered the jury's conception as to the nature of the relationship between her and appellant.***

[M]ost importantly, this court would emphasize that appellant's sole defense during the guilt phase of his trial was that he had acted in self-defense in the shooting of Fingerhut. Thus, the submission of evidence as to Roberts' manipulative ability would have resulted in the presentation of contradictory theories of the case to the jury." *State v. Jackson,* 11th Dist. No. 2004-T-0089, 2006-Ohio-2651, ¶¶133-135.

If the jury heard an underrepresentation of the Roberts factor during Appellant's guilt or penalty phase it is not because of a flaw in the system, but because of Appellant himself.

- 64 -

"Jackson displayed loyalty to Roberts and did not try to avoid responsibility and blame the murder on her." *State v. Jackson*  107 Ohio St.3d 300, 2006-Ohio-0001, 839 N.E.2d 362, ¶174. There is no evidence that Roberts "lured" Appellant clothes, drugs or money, only that she supplied him with same.

Appellant's death sentence is neither infirmed nor unreliable.  The opinion of this very Court reflects the various snap shots into Appellant's life that he now claims were overlooked or omitted from the jury and the trial judge's consideration. A vacation of Appellant's death sentence is wholly unwarranted and this Proposition of Law lacks merit.

- 65 -

**State's Answer to Appellant's Proposition of Law No. X:**
**A capital defendant waives constitutional challenges to Ohio's death penalty statutes when he fails to articulate with specificity those challenges in the trial court.**

In his tenth Proposition of Law, Appellant argues Ohio's death penalty scheme impinges on his Eighth Amendment right to avoid cruel and unusual punishment and his Fourteenth Amendment right to equal protection. These arguments are without merit.

The State first submits that this argument is waived for purposes of appellate review because Appellant failed to raise the specific constitutional challenges in the lower court. While Appellant filed a "Motion to Dismiss Death Penalty Specifications" (T.d. 399) prior to his resentencing, he did not raise the objections in that motion that he posits here. Appellant made broad Eighth Amendment and Fourteenth Amendment arguments, but he failed to argue that his death would be cruel and unusual through the hypothetical infliction of severe physical and mental/psychological pain and suffering or that he suffers an equal protection violation due to pure speculation that his last words will be truncated by the warden, or that he qualifies as "class-of-one" for equal protection purposes.

This Court has held, "the failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." *State v. Awan,* 22 Ohio St.3d 120, 489 N.E.2d 277 (1986) at syllabus. Therefore, this entire argument is waived.

Should this Court disagree and elect to consider these arguments, the State submits Appellant fashions the first part of this argument to aver that death by lethal injection, Ohio's sole method of execution, will violate the Eighth Amendment's prohibition against cruel and unusual punishment. This Court decided 13 years ago, in another Trumbull County capital case,

- 66 -

*State v. Carter,* 89 Ohio St.3d 593, 608, 2000–Ohio–172, 734 N.E.2d 345, that lethal injection

was not violative of the Eighth Amendment.  The U.S. Supreme Court followed suit eight years

later in  *Baze v. Rees*, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008).  Appellant cannot

and does not cite to one decision from this Court or any federal court that holds execution by

lethal injection is tantamount to cruel and unusual punishment.

      Nevertheless, he argues, without any basis of authority, that Ohio's execution protocol

will cause him to suffer "severe physical and mental/psychological pain and suffering."

Appellant's Brf. at p. 69. In her concurring opinion in *Scott v. Houk*, 127 Ohio St.3d 317, 319-

320, 2010-Ohio-5805, 939 N.E.2d 835, 837 former justice Evelyn Lundberg Stratton explained

that no inmate can be guaranteed a pain-free execution.   "Capital punishment is constitutional.

*Gregg v. Georgia* (1976), 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859. Therefore, '[i]t

necessarily follows that there  must be a means of carrying it out. Some risk of pain is inherent in

any method of execution—no matter how humane—if only from the prospect of error in

following the required procedure. It is clear, then, that *the Constitution does not demand the*

*avoidance of all risk of pain in carrying out executions.' Baze,* 553 U.S. at 47, 128 S.Ct. 1520,

170 L.Ed.2d 420." (Emphasis added).   *Scott* at ¶9

      The *Baze* court likewise rejected Appellant's argument that lethal injection presents "an

objectively intolerable risk of harm."  (Appellant's brf. at p. 70).  "Simply because an execution

method may result in pain, either by accident or as an inescapable consequence of death, does

not establish the sort of 'objectively intolerable risk of harm' that qualifies as cruel and unusual."

*Baze, supra,* at 50. *Baze* further held that "[p]ermitting an Eighth Amendment violation to be

established on [a showing that better alternatives exist] would threaten to transform courts into

boards of inquiry charged with determining 'best practices' for executions, with each ruling

- 67 -

supplanted by another round of litigation touting a new and improved methodology. Such an approach finds no support in our cases, would embroil the courts in ongoing scientific controversies beyond their expertise, and would substantially intrude on the role of state legislatures in implementing their execution procedures—a role that by all accounts the States have fulfilled with an earnest desire to provide for a progressively more humane manner of death." Id. at 51. It should be noted that Appellant fails to suggest a better alternative to execution by lethal injection.

The last portion of his Eighth Amendment argument is too non-specific for response, which is somewhat ironic because he argues that each state's execution policy must be "fact-specific." Appellant posits absolutely no facts to suggest why lethal injection will cause *him* an "intolerable risk of serious physical harm," but not cause *other* condemned prisoners the same "intolerable risk." Suffice it to say that Appellant has failed to argue, much less demonstrate that the use of lethal injection presents a sure or very likely risk of serious pain and needless suffering.

Appellant next avers his execution will violate the Fourteenth Amendment's guarantee of equal protection. He concedes that R.C. 2949.22, Ohio's execution statute, is fair and impartial on its face. Appellant's Brf. at p. 71. Once again, Appellant fails to cite to a single case – state or federal – which holds that execution by lethal injection violates a condemned prisoner's right to equal protection under the law. He makes the unfounded and unsupported statement that Ohio has failed to strictly comply with R.C. 2949.22(A). The hypothetical example that he cites is that R.C. 2949.22(A) permits a warden to cut short a condemned prisoner's last words. R.C. 2949.22(A) reads as follows: "(A) Except as provided in division (C) of this section, a death sentence shall be executed by causing the application to the person, upon whom the sentence was

- 68 -

imposed, of a lethal injection of a drug or combination of drugs of sufficient dosage to quickly and painlessly cause death. The application of the drug or combination of drugs shall be continued until the person is dead. The warden of the correctional institution in which the sentence is to be executed or another person selected by the director of rehabilitation and correction shall ensure that the death sentence is executed. R.C. § 2949.22." There are absolutely no references to a condemned prisoner's right to free speech or a warden's discretion in curtailing the prisoner's last words.

Even if one goes beyond the statute and considers the execution protocols, which Appellant fails to cite and which are not part of the appeal before this Court, his argument of free-speech/equal protection argument still fails: "[T]he Court again notes that 'the existence of discretion, standing alone, cannot be an equal protection violation.' *Towery,* 672 F.3d at 661. Even if it could, however, [a condemned prisoner] fails to establish that the relevant section of the protocol unconstitutionally burdens a fundamental right. While freedom of speech generally may be a 'fundamental right,' an inmate retains only 'those First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system.' *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Thus, state regulations in the prison context are subject to a 'lesser standard' of review than strict scrutiny. *Turner v. Safley,* 482 U.S. 78, 81, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Such regulations are valid if they are reasonable related to legitimate penological interests. *Id.* at 89, 107 S.Ct. 2254. *See also Brown v. City of Pittsburgh,* 586 F.3d 263, 283 n. 22 (3d Cir.2009) (noting that if every regulation that burdened constitutionally protected speech were subject to strict scrutiny, the varying degrees of scrutiny that the First Amendment requires in different contexts would be 'rendered obsolete')." *In Re Ohio Execution Protocol Litigation,* 906 F. Supp.

- 69 -

2d 759, 787 (S.D.Ohio, 2012), citing *Towery v. Brewer*, 672 F. 3d 650  (9th Circ., 2012).
Allowing the warden to turn off the inmate's microphone is rationally related to Ohio's interest in preserving order at the execution. Id. at 788.

Suffice it to say that once the prison door swings shut, that whole life-liberty-and-pursuit-of-happiness concept flies right out the barred penitentiary window. Moreover, even people who are not permanent guests of the Ohio Department of Rehabilitation do not enjoy an unbridled right to free speech.  See, *Perry Ed. Assn. v. Perry Local Educators' Assn.,* 460 U.S. 37, 45 (1983) in addressing legislation that regulated free speech. ("The State may * * * enforce regulations of the time, place, and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.").  In sum, prison by the very nature of being a prison, restricts certain personal, constitutional guarantees enjoyed by the law abiding population.

Appellant next evokes the so called "class-of-one" theory arguing that his equal protection claim is subject only to a "rational basis" analysis and not the more stringent "strict scrutiny standard" of review. Regardless of the standard of review, Appellant loses.  He argues that because of past minor deviations in Ohio's execution protocol which have sparked several federal court interventions, he risks being treated differently than other condemned inmates, and therefore suffers as equal protection violation.  It does not appear that this Court has weighed in on the "class-of-one" analysis yet. Ohio's federal courts give some guidance on this issue.

After extensively quoting the Ninth Circuit's decision in *Towery, supra,* Judge Gregory L. Frost came to the following conclusion: "The first point is that the evidence again does not rise to the level required for the Court to accept the contention that the past confusion invariably presents unconstitutionality." *In re Ohio Execution Protocol Litigation*  906 F.Supp.2d 759,

- 70 -

780 (S.D.Ohio,2012). It should be noted that *Towery,* the case upon which Judge Frost relies, noted that given the variety of factors which might overshadow a lethal injection execution, affording  a prison warden discretion at various phases of an execution will not necessarily impinge upon the condemned prisoner's rights to equal protection:   "It is entirely rational for these determinations to be made on a case-by-case basis, as they may well depend on individualized and changing factors such as the availability of particular people to participate in the execution, the supply of drugs available to the State at a given time, and the condition of the prisoner's veins. The Equal Protection claim, as framed here, cannot succeed on the merits." *Towery,* 672 F.3d at 661.

In other words, sometimes disparate treatment can be a beneficial happenstance for a condemned prisoner.  Sometimes, the "individualized determinations" that Appellant complains about in his brief at p. 75, and which he says are "irrational" in his brief at p. 76 & 77, are in fact the most humane way to achieve the quick and painless execution required by R.C. 2949.22(A). Having considered the class-of-one argument, Judge Frost refused to grant inmate Brett Hartman a temporary restraining order or preliminary injunction to block his execution. *In re Ohio Execution Protocol Litigation,* 906 F.Supp.2d 759, 791 (S.D.Ohio,2012).  Hartman was executed November 13, 2012.

Judge Frost also declined to apply the case-of-one argument to death row inmate Richard Cooey, stating, "the Court does not conclusively hold today that Ohio's method of execution practices are constitutional or unconstitutional. Today's decision merely recognizes that based on all of the record evidence, Plaintiff has not met his burden of persuading this Court that he is substantially likely to prove unconstitutionality and prevail in this litigation.***Based on the record evidence before this Court, there is no reason to conclude that Defendants will fail and

- 71 -

that Plaintiff is likely to prevail on his § 1983 claims." *Cooey v. Kasich,*  S.D, Ohio Nos. Nos. 2:04–cv–1156, 2:09–cv–242, 2:09–cv–823, 2:10–cv–27. (Nov. 4, 2011) at *13. The State of Ohio executed Richard Cooey October 14, 2008.

      With little commentary, an Ohio federal magistrate discounted the "class-of-one" argument and recommended against a grant of habeas corpus in another Ohio capital case: "This judge has still not been led to an understanding of how a blanket equal protection attack on lethal injection executions can arise anew from state adoption of a new protocol for such executions.***Accordingly, it is respectfully recommended that the Warden's Motion to Dismiss on the basis that Grounds Twenty–Four [cruel and unusual punishment] and Twenty–Five [equal protection/ class-of-one] are not cognizable in habeas corpus be denied on the authority of *Adams v. Bradshaw, supra."* *Gapen v. Bobby,* S.D. Ohio No. 3:08-CV-280, 2012 WL 3686303 (Aug. 27, 2012). Larry Gapen remains on Ohio's death row.

      Appellant neither argues nor demonstrates that he is being singled out as a "class of one" for disparate treatment.  Even if he had been, the guidance supplied by Ohio's federal court have held there may be rational reasons for said treatment which may inure to the condemned inmate's benefit to achieve the statutory goal of a "quick and painless" execution.  Therefore, he can show no equal protection violation.

      For the reasons thus stated, Appellant fails to articulate either an Eighth Amendment or Fourteenth Amendment violation. Moreover, these arguments are waived because they were not raised in the court below. Appellant's Proposition of Law No. X is without merit.

- 72 -

**State's Response to Appellant's Proposition of Law No. XI:**
**Since 1984, neither this Court, nor a federal court, has held that Ohio's death**
**penalty statutes violate either the federal or state constitution.**

Appellant makes his obligatory constitutional challenges to Ohio's death penalty statutes

in his Eleventh Proposition of Law.   As a preliminary matter, Appellant raised these same or

very similar arguments to the ones raised here in his original appeal to this Court.  This Court

found no merit to any of these claims.  "In propositions of law XI and XII, Jackson challenges

Ohio's death-penalty statutes on numerous constitutional grounds and concedes that many of his

constitutional claims have been rejected by this court in a number of cases. We summarily reject

all of Jackson's constitutional claims. See, e.g., *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15

OBR 311, 473 N.E.2d 264; *State v. Buell* (1986), 22 Ohio St.3d 124, 22 OBR 203, 489 N.E.2d

795; *State v. McNeill* (1998), 83 Ohio St.3d 438, 700 N.E.2d 596; *State v. Bey* (1999), 85 Ohio

St.3d 487, 502, 709 N.E.2d 484; *State v. Poindexter* (1988), 36 Ohio St.3d 1, 520 N.E.2d 568,

syllabus." *State v. Jackson*  107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362, ¶161.  The State

submits that all of these arguments and sub-arguments are barred by the doctrine of res judicata.

Where an argument could have been raised on an initial appeal, *res judicata* dictates that it is

inappropriate to consider that same argument on a second appeal following remand." *State v.*

*D'Ambrosio,* 73 Ohio St.3d 141, 143, 652 N.E.2d 710 (1995).

Should this court disagree, the State argues in the alternative that in his first subsection,

Appellant claims a Fourteenth Amendment violation of his due process rights because, he

submits, the death penalty is both arbitrary and unequally applied.  However, it is well-settled that

to challenge a statute, the challenger must overcome a strong presumption of constitutionality.

*State v. Warner*, 55 Ohio St.3d 31, 43, 564 N.E.2d 18, 30–31. (1990).  This Court tersely rejected

the "arbitrary and unequal" claim in *State v. Ferguson,* 108 Ohio St. 3d, 2006-Ohio-1502, 844

- 73 -

N.E. 2d 806, ¶86, citing *State v. Jenkins*, 15 Ohio St.3d 164, 169–170, 15 OBR 311, 473 N.E.2d 264 (1984); *State v. Steffen* , 31 Ohio St.3d 111, 124–125, 31 OBR 273, 509 N.E.2d 383 (1987). Appellant provides no new authority to bolster this old argument.

Appellant in his subsection B argues, *inter alia,* that Ohio's death penalty scheme is "unconstitutionally vague" and that the sentencing procedures are unreliable.  Appellant's brief at p. 79-80.  This Court considered and rejected this contention. *State v. Buell,*  22 Ohio St.3d 124, 139-140, 489 N.E.2d 795 (1986), certiorari denied (1986), 479 U.S. 871, 107 S.Ct. 240, 93 L.Ed.2d 165. Appellant cites to no new case law to suggest a reversal of opinion on this issue.

In subsection C Appellant claims a capital defendant's right to trial by jury is burdened because there is an "impermissible risk of death" when a defendant elects to try a capital case rather than enter a plea. This Court has dismissed this argument noting there is no guarantee that a criminal defendant, by pleading guilty to aggravated murder with a capital specification, will necessarily avoid a death sentence. *Buell, supra,* at 124, 138-139.

Next, Appellant argues that R.C. 2929.03(D)(1)'s requirement that *upon request of the capital defendant* the trial court may submit a pre-sentence investigation report and a mental health evaluation to the jury. Appellant refers to these reports as "mandatory" but there is nothing mandatory about them because it is the capital defendant who controls whether the reports are compiled in the first place.  Pursuant to R.C. 2929.03(D)(1), "the defendant decides whether to expose himself to the risk of potentially incriminating presentence investigations, including mental examinations. There is no constitutional infirmity in providing the defendant with such an option." *Buell,* 22 Ohio St .3d at 138. See, also, *State v. Esparza*, 39 Ohio St.3d 8, 10, (1988) certiorari denied (1989), 490 U.S. 1012, 109 S.Ct. 1657.

- 74 -

In subsection E, Appellant claims that R.C. 2929.03(D)(1) and R.C. 2929.04 are "unconstitutionally vague." Appellant's Brf. at 82. This Court considered and rejected this argument in *State v. McNeill*, 83 Ohio St.3d 438, 453, 700 N.E.2d 596 (1998), citing *Tuilaepa v. California* (1994), 512 U.S. 967, 973–980, 114 S.Ct. 2630, 129 L.Ed.2d 750. Again, Appellant provides no update to suggest either this Court or the federal courts have reconsidered prior holdings.

Appellant argues in subsection F that R.C.2929.05(A) is constitutionally infirmed claiming it fails to distinguish capital defendants who deserve the death penalty and those who do not. Appellant's Brf. at p. 84. This Court tersely dismissed this argument in Appellant's original appeal. "Proportionality review needs to entail only those cases in which the death sentence has been imposed." *State v. Jackson* 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362, at ¶126, quoting *State v. Steffen* (1987), 31 Ohio St.3d 111, 123–124, 31 OBR 273, 509 N.E.2d 383; *State v. Jordan,* 101 Ohio St.3d 216, 2004-Ohio-783, 804 N.E.2d 1, ¶ 86. Again, Appellant fails to cite to any Ohio case wherein a capitally charged defendant did not receive the death penalty, which by comparison would cause this Court to believe Appellant is not worthy of the death penalty.

It is also noteworthy that there is no federal constitutional right to a proportionality review. See, *Pulley v. Harris* 465 U.S. 37 (1984). This Court has already reviewed the proportionality and appropriateness of Appellant's death sentence comparing it to other Ohio capital cases. "We further find that the death penalty is both appropriate and proportionate when compared with capital cases also involving aggravated murder during aggravated burglary, see *State v. Davie* (1997), 80 Ohio St.3d 311, 686 N.E.2d 245, and aggravated murder during aggravated robbery, see *State v. Burke* (1995), 73 Ohio St.3d 399, 653 N.E.2d 242; *State v.*

- 75 -

*Raglin* (1998), 83 Ohio St.3d 253, 699 N.E.2d 482." *State v. Jackson* 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362, ¶184.

Despite his attacks on the data collection process promulgated in R.C. 2929.021 and 2929.03, Appellant provides absolutely no authority to demonstrate that this Court's finding in his case was wrong. Appellant was perfectly free to cite other capital or non-capital sentences to prove this Court's review and affirmation was incorrect, but he failed to do so. This argument is as rejection-worthy now as it was in 2006.

In the final six pages of this proposition, Appellant argues that Ohio's statutory death scheme violates international law. Appellant raised this argument in his original appeal to this Court. This Court completely disregarded such claims, opting to not even make mention of them. Despite his multiple arguments and sub-arguments on this topic, Appellant fails to cite to one court, domestic or international, that has held Ohio's death penalty scheme to be violative of international law.

On the other hand, this Court dismissed similar attacks in several other capital cases. This Court has re-visited the international-law-prohibition argument since Appellant's original appeal in *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121. In *Short*, this Court made short work of Appellant's claims: "Short's other international-law claims have all been rejected by this court and/or other courts. See *State v. Phillips* (1995), 74 Ohio St.3d 72, 101, 103–104, 656 N.E.2d 643; *Buell v. Mitchell* (C.A.6, 2001), 274 F.3d 337, 370–372 (death penalty does not violate International Covenant on Civil and Political Rights ('ICCPR') or the 'customary international law norm'); *People v. Perry* (2006), 38 Cal.4th 302, 322, 42 Cal.Rptr.3d 30, 132 P.3d 235 (death penalty does not violate ICCPR); *Sorto v. State*

- 76 -

(Tex.Crim.App.2005), 173 S.W.3d 469, 490 (death penalty does not violate United Nations Convention against Torture)." *Id.* ¶138.

This Court has repeatedly dismissed and rejected the multi-faceted arguments raised in this Proposition of Law.  In the event the State has inadvertently omitted argumentation on any of the more nuanced points, the State does not concede any issue. This Proposition of Law is wholly without merit.

NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7928

**State's Answer to Appellant's Proposition of Law No. XII:**
**A defendant will not benefit from the cumulative error doctrine when he fails**
**to demonstrate multiple errors.**

In his twelfth and final Proposition of Law, Appellant argues he had an unfair trial because of the impact of so-called "cumulative errors" in his trial in the court below. This argument lacks merit.

In *State v. DeMarco*, 31 Ohio St.3d 191, 31 OBR 390, 509 N.E.2d 1256 (1987), paragraph two of the syllabus, this Court recognized the doctrine of cumulative error. Under this doctrine, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal. Id. at 196–197, 31 OBR 390, 509 N.E.2d 1256. See also *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995). However, the doctrine of cumulative error is not applicable to a case where there are no multiple errors. *State v. Hunter*, 131 Ohio St. 3d 67, 2011-Ohio-6524, 960 N.E. 2d 955, ¶132.

The State submits Appellant has not articulated any reversible error in his previous eleven Propositions of Law. At worst, any errors are harmless. Crim. 52(A). Nonetheless, Appellant summarizes a precious few of the previously stated allegations which he views as worthy of reversal. First, he restates his Proposition of Law II argument that he was prejudiced by the last- minute substitution of Atty. Thomas Wright before his mitigation hearing. Referring the Court to the State's response to Proposition of Law II, the State submits this argument is res judicata barred and invited error doctrine barred. See, *Roberts II*, at ¶95; *State v. Cunigan* 195 Ohio App.3d 162, 2011-Ohio-4010, 958 N.E. 2d 1290 (2nd Dist.), ¶12.

Next, he argues that the trial court "limited" his re-sentencing. As discussed previously in Proposition of Law V, the *Roberts II* decision completely ratified the trial court's limitations

- 78 -

imposed at Appellant's second sentencing because he was clearly not entitled to submit additional mitigation evidence.  See *Roberts II*, ¶¶42-49. In fact, he received the added bonus of a second allocution which will not be afforded his co-defendant.  *Roberts II*, ¶ 74.  Further, the trial court committed no error, much less reversible error, in "refusing to appoint counsel" for the resentencing.  Two death-qualified attorneys were in court with Appellant as he was re-sentenced.  Atty. Parker had represented Appellant for five-a-half years in three Courts, including this one.  After lobbying the three levels of Ohio courts for nearly six years for a new sentencing hearing, Atty. Parker made a disingenuous, last-minute motion for the trial court to appoint someone other than Atty. Porter just 13 days ahead of the scheduled re-sentencing. Naturally, this would require at least a six-month continuance so fresh counsel could get up to speed for Appellant's 20-minute resentencing hearing.  The flimsy excuse for this last minute change of defense team partners was Atty. Parker's assignment to Appellant's federal case, an assignment that occurred *prior* to his voluntary notice of appearance in the trial court. The trial court committed no error in refusing to delay the court-ordered resentencing in deference to these specious delay tactics.

Finally, Appellant supplied absolutely no authority in his Proposition of Law VII to suggest a trial court cannot copy itself on a re-draft of a sentencing entry. Of particular note are the disciplinary proceeding resulting from the original entry which revealed that the prosecution, at worst, acted as a typist for the judge who had already designated and weighed aggravating circumstances and mitigating factors in compiling the original entry.  While the judge may be accused of a lack of originality, he cannot be found to have committed reversible error in electing to rely on large portions of an entry already affirmed by this Court.

- 79 -

For the reasons thus stated, Appellant enjoyed a fair trial and a fair resentencing hearing. The cumulative error doctrine does not apply to this case because Appellant fails to demonstrate multiple errors.  Appellant's Proposition of Law XII is without merit.

## **CONCLUSION**

For the reasons stated above, Appellant is not entitled to a third sentencing hearing.  The State respectfully requests this Court to affirm Appellant's death sentence.

Respectfully Submitted,

DENNIS WATKINS (#009949)
TRUMBULL COUNTY
PROSECUTING ATTORNEY BY:

CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. NW, 4th Floor
Warren, Ohio, 44481
Telephone No.: (330) 675-2426
Fax No.: (330) 675-2431

COUNSEL FOR APPELLEE, THE STATE OF OHIO

- 80 -

**PROOF OF SERVICE**

I do hereby certify that a copy of the foregoing brief was sent by ordinary U.S. Mail to

Atty. Randall L. Porter, Assistant Public Defender, 250 E. Broad Street, Suite 1400, Columbus,

Ohio, 43215, and Atty. Dennis L. Sipe, 322 Third St., Marietta, Ohio, 45750, Counsel for

Appellant Nathaniel Jackson, on this 14th Day of November 2013.

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney

- 81 -



## In The Supreme Court of Ohio

| | | |
|---|---|---|
| **State of Ohio,** | : | |
| **Appellee,** | : | **Case No. 12-1644** |
| -vs- | : | **Appeal taken from Trumbull County Court of Common Pleas** |
| **Nathaniel Jackson,** | : | **Case No. CR 01-CR-794** |
| **Appellant.** | : | **This is a death penalty case** |

---

### APPELLANT NATHANIEL JACKSON'S REPLY BRIEF

---

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney
psannos@co.trumbull.oh.us

CHARLES MORROW - 0040575
Assistant Prosecuting Attorney

Trumbull County Prosecutor's Office
160 High Street, N.W
4th Floor Administration Building
Warren, Ohio 44481
(330) 675-2426 (Voice)
(330) 675-2431 (Facsimile)



COUNSEL FOR APPELLEE

OFFICE OF THE
OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Counsel of Record

250 E. Broad Street - Suite 1400
Columbus, Ohio 43215
(614) 466-5394 (Voice)
(614) 644-0708 (Facsimile)
Randall.Porter@opd.ohio.gov

and

DENNIS L. SIPE - 0006199
Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

COUNSEL FOR APPELLANT



NATHANIEL JACKSON v. WARDEN
CASE NO. 4:07-cv-0880
SUPP. APPENDIX - Page 7933

## Table of Contents

Table of Contents ........................................................................................ i

Table of Authorities ................................................................................... iii

Preface ........................................................................................................ vi

Statement of the Facts ................................................................................ 1

Proposition of Law No. I .............................................................................. 3

    This Court Lacks Jurisdiction to Hear a Direct Appeal in a Capital Case When the Trial Court Fails to Enter a Sentencing Opinion that Complies with R.C. 2929.03(F). ......................................................................... 3

Proposition of Law No. II ............................................................................. 6

    A Defendant Is Deprived of the Effective Assistance of Counsel at the Mitigation Hearing In a Capital Case When The Attorney Who Was Supposed to Present the Sentencing Phase Evidence Case Becomes Ill, The Court at the Commencement of the Hearing Appoints Substitute Counsel Who Has No Knowledge of the Case, And Remaining Counsel, Who Had Relied Upon the Ill Attorney to Make the Mitigation Presentation, Has Limited Knowledge of the Sentencing Phase Presentation. ............................................................................................ 6

Proposition of Law No. III ............................................................................ 9

    A Defendant Is Denied His Right to A Fair and Impartial Tribunal When A Trial Judge, Who Has Been Found to Have Committed Misconduct that Constitutes an Ethical Violation, Refuses to Accept the Findings of this Court and the Mandate of the Lower Appellate Court With Respect to His Misconduct. ...................................................... 9

Proposition of Law No. IV .......................................................................... 13

    A Defendant Is Entitled to Two Appointed Counsel at a Resentencing Hearing in a Capital Case. ............................................................... 13

Proposition of Law No. V ........................................................................... 15

    A Trial Court at a Resentencing Hearing Is Required to Consider All Relevant Evidence that the Defendant Submits In Support of A Sentence of Less Than Death. ........................................................................ 15

Proposition of Law No. VI .......................................................................... 18

    A Trial Court Denies a Capitally Convicted Defendant His Right of Allocution When He Holds That As a  Matter of Law He Cannot Consider the Defendant's Statement for the Purpose of Determining the Appropriate Sentence. ..................................................................... 18

i

**Proposition of Law No. VII** ....................................................................................21

A Trial Court Commits Prejudicial Error in a Capital Case When It Delegates Any Degree of Its Responsibility to the Prosecution For the Drafting of the Sentencing Opinion. ........................................................21

**Proposition of Law No. VIII** ..................................................................................24

The Accused May Not Be Punished Multiple Times For Crimes Of Similar Import That Are Committed During One Indivisible Course Of Conduct. ..........................................................................................................24

**Proposition of Law No. IX** .....................................................................................28

A Death Sentence Is Inappropriate When It Is the Product of Unreliable Procedures and Is Based Upon Unreliable Evidence That Infects the Weighing Process. ...................................................................................28

**Proposition of Law No. X** ......................................................................................34

A Defendant's Death Sentence Is Invalid When the State Is Unable to Carry Out His Execution in a Manner that is Consistent with the Constitution. .......................................................................................34

**Proposition of Law No. XI** .....................................................................................37

Ohio's Death Penalty Law Is Unconstitutional. R.C. 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, and 2929.05 Do Not Meet The Prescribed Constitutional Requirements And Are Unconstitutional On Their Face And As Applied To Appellant. U.S. Const. Amends. V, VI, VIII, And XIV; Ohio Const. Art. I, §§ 2, 9, 10, And 16.  Further, Ohio's Death Penalty Statute Violates The United States' Obligations Under International Law. .........................................................................37

**Proposition of Law No. XII** ...................................................................................37

A Conviction Will Be Reversed When The Cumulative Effect Of The Errors Deprives A Defendant Of The Constitutional Right To A Fair Trial. ................................................................................................................37

**Conclusion** ............................................................................................................38

**Certifice of Service** ...............................................................................................39

ii

### Table of Authorities

**CASES**

*Alderman v. Zant*, 22 F.3d 1541 (11th Cir. 1994) ................................................................ 17

*Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed. 2d 640
   (1991) ........................................................................................................................ 14

*Cooey (Kenneth Smith) v. Kasich*, 801 F. Supp.2d 623 (S.D. Ohio 2011) ..................... 35

*Creech v. Arave*, 947 F.2d 873 (9th Cir. 1991) .............................................................. 17

*Davis v. Coyle*, 475 F.3d 761 (6th Cir. 2007) ................................................................ 16

*Disciplinary Counsel v. Stuard, Judge*, 121 Ohio St.3d 29, 2009-Ohio-261,
   901 N.E.2d 788. ......................................................................................................... 11

*Gardner v. Florida*, 430 U.S. 349, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977) ............. 22

*Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995) .......................... 6

*In re Disqualification of Stuard*, 113 Ohio St.3d 1236, 2006-Ohio-7233, 863
   N.E.2d 636 ................................................................................................................ 10

*In re: Ohio Execution Protocol Ligation (Lorraine)*, 671 F.3d 601 (6th Cir.
   2012) ......................................................................................................................... 36

*In re: Ohio Execution Protocol Litigation (Lorraine)*, 840 F. Supp.2d 1044
   (S.D. Ohio 2012) ................................................................................................. 35, 36

*Jackson v. Houk*, N.D. Ohio 4:07 CV 0080 ................................................................... 14

*Kasich v. Lorraine*, __ U.S. __, 132 S. Ct. 1306, 181 L. Ed. 2d 1034 (2012) ............... 36

*Martinez v. Ryan*, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012) .................................... 14

*Moore v. Mitchell*, 708 F.3d 760 (6th Cir. 2013) ......................................................... 16

*Robinson v. Moore*, 300 F.3d 1320 (11th Cir. 2002) .................................................... 17

*Smith v. Stewart*, 189 F.3d 1004 (9th Cir. 1999) ......................................................... 17

*Spaziano v. Singletary*, 36 F.3d 1028 (11th Cir. 1994) ............................................... 17

*State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989) ....................................... 9

*State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169 (1982) ............................................. 14

*State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547 ................... 32

*State v. Frazier*, 58 Ohio St.3d 235, 389 N.E.2d 1118 (1979) .................................... 27

*State v. Green*, 90 Ohio St.3d 352, 738 N.E.2d 1208 (2000) ...................................... 18

*State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678 ..................... 32

*State v. Hughbanks*, 99 Ohio St.3d 365, 3002-Ohio-4121, 792 N.E.2d 1081 .............. 32

*State v. Jackson*, 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362 ...................... 7, 33

iii

*State v. Jackson,* 11th Dist. No. 2004-T-0089, 2006-Ohio-2651 .................................... 31, 32

*State v. Jackson,* 190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221 .......... 12, 21, 23

*State v. Jarvi,* 11th Dist. No. 2011-A-0063, 2012-Ohio-5590 ............................................. 27

*State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942-N.E.2d 1061 .............. 24, 25, 26

*State v. Jones,* 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948 ................................. 32

*State v. Ketterer,* 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48 ............................... 32

*State v. Roberts,* ___ Ohio St.3d ___, 2013-Ohio-4580, ___ N.E.2d ___ ............................... passim

*State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168 ..................... passim

*State v. Roberts,* 11th Dist. No. 2005-T-034, 2007-Ohio-5616 ............................................ 7

*State v. Simpkins,* 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568 ........................... 6

*State v. Steffen,* 31 Ohio St.3d 111, 509 N.E.2d 383 (1987) ............................................. 25

*State v. Szefcyk,* 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) ............................................... 6

*State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923 ............................. 28

*State v. White,* 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905 ................................ 31

*State v. Wilson,* 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381 ....................... 28, 29

*Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984) ............ 9

## CONSTITUTIONAL PROVISIONS

Ohio Const. art. I, § 2 .................................................................................. 37

Ohio Const. art. I, § 9 .................................................................................. 37

Ohio Const. art. I, § 10 ................................................................................ 37

Ohio Const. art. I, § 16 ................................................................................ 37

U.S. Const. amend. V ................................................................................... 37

U.S. Const. amend. VI .................................................................................. 37

U.S. Const. amend. VIII ........................................................................ 19, 34, 37

U.S. Const. amend. XIV ...................................................................... 9, 22, 34, 37

## STATUTES

R.C. 2903.01 ............................................................................................ 37

R.C. 2929.02 ............................................................................................ 37

R.C. 2929.021 .......................................................................................... 37

R.C. 2929.022 .......................................................................................... 37

R.C. 2929.023 .......................................................................................... 37

R.C. 2929.03 ...................................................................................... passim

iv

R.C. 2929.04 ................................................................................................................ 37

R.C. 2929.05 ........................................................................................................ 17, 37

**RULES**

Ohio R. Crim. P. 32 ................................................................................................... 20

Ohio Sup. R. 20 II(B) ............................................................................................... 14

**OTHER AUTHORITIES**

Board of Commissioners on Grievances and Discipline Opinion, 2010 Ohio
    Griev. Discip. LEXIS 5 ....................................................................................... 14

v

## **Preface**

Appellant Nathaniel Jackson stands on each of the arguments and authorities cited in his Merit Brief. He submits this Reply Brief solely to correct the State's mischaracterizations of the record and to rebut those arguments that the State raised in its Answer Brief that Appellant did not already address in his Merit Brief.

This Court should not construe the lack of response by Appellant to an argument made by the State in its Answer Brief as an implied admission as to the correctness of the argument. Instead, the Court should construe the lack of response by Appellant as an indication that he already addressed the argument in his Merit Brief.

vi

### Statement of the Facts

The State does not contest most of the assertions contained in Jackson's Statement of the Facts. [Appellee's Answer Brief, pp. 1-2]. Specifically, in its response to Jackson's Statement of the Facts, the State has not contested the following:

> ➢ One of the defense lawyers at the initial mitigation hearing knew nothing about the case. The other lawyer knew very little about the sentencing phase.

> ➢ The lawyer who only become involved with the case on the day of the mitigation hearing and therefore knew nothing about the case, saw no need to request a continuance to familiarize himself with the case.

> ➢ Defense counsel did not give an opening statement.

> ➢ Defense Counsel's direct examination of the lay witness produced inaccurate, prejudicial testimony.

> ➢ Defense counsel's direct examination of the retained Psychologist, Dr. Sandra McPherson produced inaccurate and prejudicial testimony.

> ➢ Dr. McPherson did not understand the most basic psychological concepts concerning mental retardation. She incorrectly administered and scored Jackson's IQ Test which in turn tainted much of her testimony.

> ➢ The Prosecutor Relied Upon the Inaccurate Lay and Expert Testimony In His Closing Argument

> ➢ The trial judge relied upon the inaccurate lay and expert testimony when imposing Jackson's sentence of death.

[Jackson's Merit Brief, pp. 4-11].

These uncontroverted facts, even without the benefit of argument, demonstrate the miscarriage of justice that occurred at Jackson's initial sentencing hearing. While the trial court has resentenced Jackson, given the limited nature of the resentencing hearing, the basis for his death sentence remains the initial sentencing. At the initial sentencing hearing only one of his attorneys knew just a few facts about the case, and the other attorney knew nothing. Furthermore at the initial sentencing hearing most of both the lay and expert testimony was both incorrect and

1

incomplete. These critical flaws tainted the trial court' sentencing opinion that it filed subsequent

to the resentencing

2

## Proposition of Law No. I

### This Court Lacks Jurisdiction to Hear a Direct Appeal in a Capital Case When the Trial Court Fails to Enter a Sentencing Opinion that Complies with R.C. 2929.03(F).

Jackson limits this Proposition to whether the trial court issued a final appealable order. [Appellant's Merit Brief, pp. 12-17]. He relies on this Court's decision that in a case in which a sentence of death is imposed, the final appealable order consists of two documents, the sentencing entry and the sentencing opinion. [*Id.* at p. 13]. He then asserts that when the sentencing opinion is infirm, then the trial court has not issued a final appealable order. [*Id.*]. Finally, Jackson argues that because the trial judge in his case did not consider any evidence from the resentencing hearing as evidenced by his statements in open court and his sentencing opinion, then there is no final appealable order. [*Id.* at pp. 14-17].

### A. The State relies on the wrong law

The State begins its response by reviewing what it incorrectly believes is the law with respect to final appealable orders. [Appellee's Brief, pp. 4-5]. However, the State only relies on the law with respect to noncapital prosecutions. [*Id.*]. As a result it ignores the importance that the sentencing opinion plays in a capital case with respect to issue of the existence of a final appealable order.

### B. The trial court was required to consider newly submitted evidence at the sentencing hearing.

The State relies upon this Court's decision in *State v. Roberts,* ___ Ohio St.3d ___, 2013-Ohio-4580, ___ N.E.2d ___, ("*Roberts II*") which this Court issued subsequent to Appellant's filing of his merit brief. [Appellee's Answer Brief, p. 6]. The State argues, pursuant to *Roberts II*, that Jackson was not entitled to present any new evidence at the resentencing hearing. [*Id.*].

3

But that is exactly what this Court permitted in *Roberts II* . Roberts at her initial sentencing hearing waived the opportunity to present any evidence. Despite this waiver, which this Court upheld in *Roberts I,* this Court held that the trial judge erred when at the resentencing he did not consider any of the information contained in Robert's allocution. *Id.* at ¶¶ 55-66. Since Roberts did not present any evidence at her initial sentencing hearing, any evidence that she presented at the resentencing hearing had to constitute new evidence.

There is no reason to treat the new evidence that Jackson presented at his resentencing hearing any differently than the evidence Roberts presented at her resentencing hearing . Jackson at his initial sentencing hearing did not waive the presentation of his mitigation evidence nor did he limit the presentation by his trial attorneys. However, the presentation of his mitigation was limited by the fact that one of the attorneys had just been assigned to his case on the day of the mitigation hearing and the other attorney was unprepared because he had counted on the attorney who withdrew from the case to prepare the mitigation presentation. *See* Proposition of Law No II [Appellant's Merit Brief, pp. 17-31].

If Roberts was to get a second bite of the apple after she waived her first bite, elementary fairness dictates that Jackson, whose first bite was limited not by his own actions, but the acts and omissions of trial counsel, should  get a second bite of the apple. Therefore, the trial court erred when it failed to consider Jackson's new evidence rendering his sentencing opinion incomplete. Thus, there if no final appealable order.

**C. The trial court denied Jackson his right of allocution**

The State argues that the trial court permitted Jackson to make two statements at his resentencing and therefore it afforded him his right of allocution. [Appellee's Answer Brief, pp. 6-7]. While Jackson disputes this assertion because the trial court did not reference his allocution

4

in its resentencing opinion, *See Roberts II* at ¶ 64, it is immaterial because the fact remains that the trial judge did not consider any evidence contained in his counsel's proffer or Jackson's allocution. That failure to consider evidence is dispositive of the final appealable order issue.

**D.  The trial judge's pre-drafting of his resentencing opinion together with his announcements in open court is conclusive evidence that the trial judge did not consider any new evidence.**

The State asserts that the fact that the trial judge prepared his sentencing opinion prior to the sentencing hearing is not dispositive, because if Jackson had offered any relevant evidence that trial judge could have modified his sentencing opinion . [Appellee's Answer Brief, pp. 8-10]. However, that argument is not persuasive given that that trial judge announce that as a matter of law, he believed, *albeit* incorrectly, could not consider any new evidence. [8/14/12 Tr. 5, 14]. Those two facts deprived the sentencing opinion from constituting a final appealable order.

**E. The doctrine of harmless error is inapplicable.**

The State argues that the trial court's refusal to consider any evidence and argument error offered at the resentencing evidence constituted harmless error. [Appellee's Answer Brief, pp. 10-12]. However, the issues  involving this Court's jurisdiction are not subject to harmless error analysis.

This Court should sustain this Proposition of Law and dismiss this appeal for lack of a final appealable order.

5

### Proposition of Law No. II

**A Defendant Is Deprived of the Effective Assistance of Counsel at the Mitigation Hearing In a Capital Case When The Attorney Who Was Supposed to Present the Sentencing Phase Evidence Case Becomes Ill, The Court at the Commencement of the Hearing Appoints Substitute Counsel Who Has No Knowledge of the Case, And Remaining Counsel, Who Had Relied Upon the Ill Attorney to Make the Mitigation Presentation, Has Limited Knowledge of the Sentencing Phase Presentation.**

On the day of the sentencing hearing, Attorney Wright substituted for Attorney James Lewis who was supposed to make the sentencing presentation. [Sent. Tr. 7-8]. Attorney Consoldane who made the sentencing presentation believed that Attorney Lewis would make the sentencing presentation. [*Id.*]. The State does not dispute these two critical facts. [Appellee's Brief, pp. 13-18].

**A. This Court Should Not Apply the Procedural Bar of Res Judicata.**

The State first claims that this claim of mitigation ineffectiveness is barred by res judicata. [Appellee's Answer Brief, pp. 13-14]. *Res* judicata is a rule of fundamental and substantial justice, *State v. Simpkins,* 117 Ohio St.3d 420, 2008-Ohio-1197, 884 N.E.2d 568¶25; *State v. Szefcyk,* 77 Ohio St.3d 93, 95, 671 N.E.2d 233 (1996). It os "is to be applied in particular situations as fairness and justice require, and * * * is not to be applied so rigidly as to defeat the ends of justice or so as to work an injustice." *Grava v. Parkman Twp.,* 73 Ohio St.3d 379, 386-87, 653 N.E.2d 226 (1995) (Douglas, J., dissenting). To apply the doctrine to uphold Jackson's death sentence would work an injustice given that he was represented by one attorney who knew nothing and a second attorney who knew very little.

The State cites this Court's ruling in *Roberts II*, in which this Court found that Roberts' mitigation ineffectiveness claim was waived. [Appellee's Answer Brief, p. 13]. Her case is distinguishable. Roberts waived her right to present mitigation evidence after consulting with

6

two attorneys who were very knowledgeable about her case. Thus there was no reason for this Court to find that it would work an injustice to apply the procedural bar of res judicata. She had caused the failure to present mitigation evidence. In this case Jackson did not waive mitigation. The limited mitigation was caused not by Jackson but his two attorneys who knew little and nothing about his case.

**B. The Prior Appellate Rulings Do Not Bar Granting Sentencing Relief.**

The State cites to this Court's prior ruling in Jackson's first appeal involving a claim of ineffective assistance of counsel. [Appellee's Answer Brief, p. 14]. However, that claim involved the trial, not the mitigation phase. *State v. Jackson,* 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362, ¶¶ 127-141.

The State also cites to the court of appeals ruling on Jackson's post-conviction petition. [Appellee's Answer Brief, p. 14]. As the State notes, given that is a lower court ruling, it is not controlling. [*Id.*]. Furthermore, given the appellate court's subsequent vacation of Jackson's death sentence, that decision has ceased to have any vitality. *See State v. Roberts*, 11th Dist. No. 2005-T-034, 2007-Ohio-5616 at ¶7. ("it logically follows that when the Supreme Court vacated appellant's sentence, its ruling also had the effect of nullifying all of the proceedings in regard to her original and amended post-conviction petitions. That would include the trial court's judgment granting the state's motion to dismiss appellant's two petitions.")

**C. The Attorney's and Jackson's Assent to Proceeding Did Not Waive this Issue.**

The State cites to the fact that Attorney Consoldane twice declined to accept the court's offer for a continuance. [Appellee's Answer Brief, p. 15]. That an attorney in a capital case would elect to go forward even though: 1) he was not prepared (because he believed that the other attorney who withdrew from his case would made the mitigation presentation) and 2) his

7

replacement co-counsel had just been appointed the day of the sentencing hearing, is the epitome of ineffective assistance of counsel. Telling is Attorney Consoldane's motion to permit the psychologist to remain in the courtroom during the lay witness testimony because "I think that it would be better able to help me in court, when I am *interviewing* the family members if she's [the psychologist] here with me. She knows far more about the background of the family that I do, and it was - - *I got a little shorthanded with Mr. Lewis going into the hospital . . .*" [Sent. Tr. 7] (emphasis added).

The State also points to Jackson's agreement to proceed with Attorney Wright as one of his attorneys. [Appellee's Answer Brief, p. 15]. Jackson had previously received IQ scores in the low 70's when he was in the seventh and tenth grades. [Sent. Tr. 46]. He received an IQ score of 75 while in post-conviction. [T.D. 407, Exhibit 78, ¶ 15]. These scores placed him in the low mentally retarded borderline range. He lacked the ability to intelligently determine the need for a continuance and accept a replacement attorney. He was most likely following the lead of Attorney Consoldane.

**D. Attorney Wright Knew Nothing About Jackson's Case**

The State claims that there is nothing in the record about Attorney Wright's knowledge of the case. [Appellee's Answer Brief, p. 16]. That is incorrect. First, Attorney Wright initially appeared in the case on the day the mitigation hearing commenced. [Sent Tr. 4]. Second Attorney Consoldane stated on the day of the commencement of the sentencing hearing that "he had just got hold of Mr. Wright *this morning*" to substitute for Attorney Lewis. [*Id.* at Tr. 7] (emphasis added). Finally, Attorney Wright's participation in the sentencing hearing was limited to making one statement. [Sent. Tr. 11].

8

**E. The State's Citation to Authorities Is Not Persuasive.**

The State cites to *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984) and *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989) as support its defense counsel provided effective assistance of counsel in the mitigation phase. [State's Answer Brief, pp. 17-18]. However, in neither of those cases did the attorney who was prepared to make the sentencing presentation not appear and another attorney "just off the street," substitute for the first attorney.

This Court should sustain Proposition of Law No. II.

**Proposition of Law No. III**

**A Defendant Is Denied His Right to A Fair and Impartial Tribunal When A Trial Judge, Who Has Been Found to Have Committed Misconduct that Constitutes an Ethical Violation, Refuses to Accept the Findings of this Court and the Mandate of the Lower Appellate Court With Respect to His Misconduct.**

The State first claims that this proposition is barred by res judicata. [Appellee's Merit Brief, p. 21]. The State cites to the two rulings made by the late Chief Justice Moyer in response to affidavits of disqualification filed by Jackson. [*Id.*]. First, those two decisions did not constitute rulings on the Fourteenth Amendment due process issue. Instead, they constituted rulings premised upon the Code of Judicial Conduct. Nowhere in his decisions did Chief Justice Moyer cite to any federal constitutional provision. Second, even if Chief Justice Moyer's decision could serve as a basis for the application of a procedural bar, events that transpired after his second ruling preclude application of the bar.

In this case the juxtaposition of the various rulings is the telling factor. Judge Stuard adopts one position with respect to the ex parte communications and drafting of the sentencing

9

opinion when he has proceedings pending against him in this Court. After all of those proceedings were terminated he adopted a drastically different position in his own court.

On October 5, 2006, Appellant filed an application for disqualification with the late Chief Justice Moyer. *State v. Jackson,* Ohio Supreme Court Case No. 06AP102. Judge Stuard filed an affidavit in which he opposed the application:

> 7.    I had essentially the same type of communications with the Assistant Prosecuting Attorneys in Jackson as I had with the Assistant Prosecuting Attorneys in Roberts, and for the same reasons and purpose. (There is no reason to have a hearing in the Jackson case to establish these facts.)

[T.d. 406, Affidavit of Randall Porter, Exhibit 4, Judge Stuard Affidavit]

On November 29, 2006, the late Chief Justice Moyer denied Jackson's first application for disqualification. *In re Disqualification of Stuard,* 113 Ohio St.3d 1236, 2006-Ohio-7233, 863 N.E.2d 636. He found therein:

> Judge Stuard has responded in writing to the affidavit. *He acknowledges that he held the same kind of communications with the prosecuting attorney's office in both the Roberts and Jackson capital cases* before sentencing each of them to death, and he denies that any hearing is needed in his court in the Jackson case to establish that fact. The judge states that he is prepared to reconsider the evidence and impose a new sentence in this case just as he has been ordered to do in the related Roberts case. . . .

[*Id.* at ¶ 4].

After Appellant became aware of the ongoing disciplinary proceedings against the trial judge, Appellant filed a second motion for disqualification with the Chief Justice. *State v. Jackson,* Supreme Court Case No. 08-AP-043. The trial judge filed an affidavit opposing the application for disqualification. [T.D. 404, Affidavit of Randall L. Porter, Exhibit 8 Stuard

10

Affidavit]. In his affidavit, the trial judge acknowledged that he had engaged in the same drafting

process that this Court found to be infirm in *Roberts*:

> 14.     Since I engaged in the same conduct determined by the Ohio
> Supreme Court to be error in State v. Roberts then, and in that event,
> the same results should obtain in this companion case involving
> Nathaniel Jackson. I should remain the trial judge in State v.
> Jackson just as I was ordered to remain in State v. Roberts. The
> remedy under these circumstances is not the removal of the trial
> judge, as the court's opinion in State v. Roberts indicates. Ms.
> Roberts did not get a new judge and Mr. Jackson should not get one
> either.
>
> 15.     There is no factual or legal reason why Mr. Jackson should be
> given a remedy different from that given to Donna Roberts.
>
> 16.     I am able and willing to undertake the obligations
> imposed upon me by this court's opinion in State v. Roberts and to
> apply those requirements to the further handling of the case
> involving the defendant Jackson.

[*Id.*].

On August 20, 2008, the late Chief Justice Moyer denied Jackson's second application for

disqualification. *State v. Jackson,* Ohio Supreme Court Case No. 08-AP-043 (Judgment Entry).

On January 29, 2009, this Court issued its opinion in Judge Stuard's disciplinary

proceedings. *Disciplinary Counsel v. Stuard, Judge,* 121 Ohio St.3d 29, 2009-Ohio-261, 901

N.E.2d 788. This Court made the following findings concerning Judge Stuard:

> Judge Stuard concedes and the board found that his ex parte
> communications with Becker, engaged in without the knowledge or
> consent of opposing counsel, violated Canon 2 (requiring a judge to
> "respect and comply with the law and * * * act at all times in a manner
> that promotes public confidence in the integrity of the judiciary") and
> 3(B)(7) (providing that, except in situations not relevant here, "[a] judge
> shall not initiate, receive, permit, or consider communications [as to
> substantive matters or issues on the merits] made to the judge outside the
> presence of the parties or their representatives concerning a pending or
> impending proceeding * * *").

*Id.* at ¶ 10.

11

At this point Judge Stuard had told the Chief Justice and this Court that the communications with the prosecutor were ethically incorrect. He also told the Chief Justice that due to these improper communications in Jackson's case, Jackson is entitled to the same relief as Roberts.

However, once Judge Stuard returned to his own court, his position changed one-hundred-eighty degrees. On May 1, 2009, the trial judge denied Jackson's Motion for a New Sentencing Hearing. [T.d. 381]. He did not reference this Court's decision in *Roberts* or the confessions he made in the various proceedings in this Court. [*Id.*]. Instead, he characterized the facts underlying Jackson's motion for a new sentencing hearing as "the *alleged involvement* of the Trumbull County Prosecutor's Office in the preparation of the sentencing entry." [*Id.* at p. 1] (emphasis added).

On October 18, 2010, the Trumbull County Court of Appeals unanimously vacated Appellant's death sentence. *State v. Jackson,* 190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221, ¶ 29 (11th Dist.). Judge Cannon in his concurring opinion found, "In November 2006, the trial judge filed an affidavit in response, opposing disqualification. In that affidavit, the trial judge acknowledged doing the same thing in this case that he did in *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168 . . . And, by opposing disqualification, the trial judge implicitly represented he could remain on the case for purposes of curing that error." *Id* at ¶¶35, 41].

When the case returned to Judge Stuard's court, he again refused to concede any misconduct on his part despite the findings of this Court and the Eleventh District Court of Appeals. He announced in open court that "[t]he Supreme Court I think misunderstood what occurred, but they have made their ruling and abide by it." [8/14/12 Tr. 6]. Judge Stuard's

12

response to the appellate court's order to draft and file a new sentencing opinion was to file almost an identical copy of his prior sentencing opinion that the court of appeals had found was tainted by the prosecutor's involvement. *See* Proposition of Law No. VII. [Appellant's Merit Brief, pp. 55-58].

Appellant started litigating the *Roberts* error on August 15, 2006, when he filed his motion for leave to file his motion for a new trial. [T.d. 331]. It has now been more than seven years and he has yet to receive a review of the evidence that is not tainted by prosecutorial involvement. It has come time for him to be granted that most basic constitutional right.

This Court should sustain Proposition of Law No. III.

### Proposition of Law No. IV

### A Defendant Is Entitled to Two Appointed Counsel at a Resentencing Hearing in a Capital Case.

Jackson focuses in this Proposition on the fact that he was entitled to two appointed counsel for purposes of his resentencing. He did not have two attorneys. John Parker, who had previously represented Jackson, adopted the position that he had developed a conflict that did not have in his earlier representation of Jackson. [8/14/12 Tr. 7-9]. The trial judge deferred to Attorney Parker and concluded that "I am merely saying that that [sic]is up to Mr. Parker. If he feels there is some conflict, I am not going to insist that he proceed as this time." [*Id.* at Tr. 12].

The trial court attempted to cure the problem by finding that the court's resentencing did not involve "pending charges against Mr. Jackson," but was part of "the appeal that was filed from the original trial." [8/14/12 Tr. 7]. The court's statement was incorrect for two reasons. First, the resentencing was not part of the appeal process. Jackson was not there contesting a sentence that had already been imposed, but instead to have the court impose sentence. Even if

13

the trial court was correct that the resentencing is part of the appeal process, Jackson was entitled to two appointed counsel at the resentencing hearing. Ohio Sup. R. 20 II(B).

The State spends its response claiming that Attorney Parker did not have a conflict and therefore this proposition is just a smoke screen to challenge the trial court's failure to grant a continuance to permit the appointment of new counsel. [Appellee's Answer Brief, pp. 26-31]. The State's brief misses the point. The trial court accepted the fact that Attorney Parker had a conflict and therefore Jackson only had one attorney at the resentencing. [8/14/12, Tr. 12]. Thus, whether a conflict actually existed is beside the point. Jackson had only one attorney at the resentencing.[1]

This Court should sustain Proposition of Law No. IV.

---

[1] On March 27, 2007, Federal District Court Judge Gwin appointed Attorney Parker to represent Jackson in his federal habeas proceedings. *Jackson v. Houk,* N.D. Ohio 4:07 CV 0080. On April 27, 2007, Attorney Parker filed his notice of appearance with respect to Jackson's collateral proceedings. [T.d. 351]. The law in existence on that date did not permit the ineffective assistance of post-conviction or collateral review counsel to serve as cause to excuse a procedural default. *Coleman v. Thompson,* 501 U.S. 722, 753-54, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). Thus, Attorney Parker did not have to worry that his participation in the state court collateral litigation would lead to him having to call himself ineffective to excuse a procedural default. Five years later, on March 12, 2012, the United States Supreme Court held that the ineffective assistance of collateral review counsel could constitute cause to excuse a procedural default. *Martinez v. Ryan,* 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012). At that point Attorney Parker faced a potential conflict. His performance (potential ineffectiveness) could lead to him having to raise an ineffectiveness claim against himself. He was ethically barred from raising such a claim against himself. *State v. Cole,* 2 Ohio St.3d 112, 113, 443 N.E.2d 169 (1982); Board of Commissioners on Grievances and Discipline Opinion No. 2010-5, 2010 Ohio Griev. Discip. LEXIS 5. Hence, his refusal to participate further on the case at the resentencing hearing was solely attributable to the sea change in the law brought out by the decision in *Martinez.*

14

## Proposition of Law No. V

**A Trial Court at a Resentencing Hearing Is Required to Consider All Relevant Evidence that a Defendant Submits In Support of A Sentence of Less Than Death.**

At the resentencing, the trial judge three times stated that he would not consider any new or additional evidence that supported a sentence of less than death. [8/14/12 Tr. 5, 14]. Twice he stated that he had already drafted his sentencing opinion. [*Id.* at Tr. 22, 27]. His sentencing opinion, that he filed immediately after the resentencing hearing, reflected that the judge had not considered any new evidence that Appellant had proffered in support of a sentence of less than death. [T.d. 410]. The State in responding to this proposition of law does not dispute any of those underlying facts. [Appellee's Brief, pp. 31-37].

**A. The Trial Court Did Not Personally Review Any of the Mitigation Evidence.**

The State in its brief emphasizes that the court of appeals required the trial judge to "personally review and evaluate" and "personally prepare an entirely new opinion." [Appellee's Answer Brief, p. 31]. The trial judge never personally did any of these tasks, but instead just filed an almost verbatim copy of his prior sentencing opinion. *See* Proposition of Law No. VII [Appellant's Merit Brief, pp. 44-50].

This fact is critical. This Court in *Roberts II* distinguished between evidence that had been presented to the trial court at the initial sentencing hearing and evidence that was initially presented at the resentencing hearing. *Id.* at ¶ ¶ 23-39. Because the judge filed a copy of the flawed first sentencing opinion after the resentencing hearing, it follows that he did not personally consider any of the evidence from either sentencing hearing.

15

**B. Jackson's Case Is Distinguishable From Roberts' Case.**

The State relies on this Court's decision in *Roberts II*. [Appellee's Answer Brief, pp. 32, 37]. Jackson previously in this Brief distinguished *Roberts II. See* Proposition of Law No. I, pp. 3-4, *supra*. In *Roberts*, the judge after the resentencing hearing drafted a new sentencing opinion, thereby complying with the remand order. In this case, the trial judge merely re-filed his flawed sentencing opinion, except for minor changes, thereby not complying with the remand order.

In addition, both cases involve the presentation of "new evidence." Roberts waived presentation of  mitigating evidence at her initial sentencing hearing, and therefore all of the information contained in her allocution at the resentencing hearing constituted "new evidence." However, the new evidence (the proffered evidence) that Jackson at his resentencing hearing would have been presented at the initial sentencing hearing if his attorneys had not performed deficiently. Again, it is fundamentally unfair to give Roberts a second bite of the apple when her own actions necessitated a second bite, while denying Jackson a second bite because his attorneys had failed him and not because of his own doing.

**C. This Court Should Not Attempt to Distinguish the Decision in *Davis  v. Coyle.***

The State concedes that the Sixth Circuit in *Davis v. Coyle*, 475 F.3d 761 (6th Cir. 2007), vacated a death sentence involving the same fact patterns, the three judge panel had refused to consider new or additional evidence at the resentencing hearing. [Appellee's Brief, p. 33].

The State argues that the Sixth Circuit in *Moore v. Mitchell*, 708 F.3d 760, 840-05 (6th Cir. 2013) distinguished *Davis*. [Appellee's Brief, p. 34]. The Court in that case held "[i]n Moore's case, the mitigation evidence was before the trial court; the court simply found that it was  outweighed by the aggravating circumstances. The evidence was never excluded from the record altogether." In Jackson's case the court excluded the evidence from the record altogether

16

and only permitted it to be proffered. [8/14/12 Tr. 14]. The trial court herein did not consider the evidence in dispute, contrary to *Moore*. Jackson's case is like *Davis*, not *Moore*.

In the co-defendant's case, this Court held that it was not bound by the holding in *Davis*, because it had been issued "by a federal court other than the United States Supreme Court." *Roberts II* at ¶ 33. However, this Court failed to acknowledge that other federal courts of appeals had reached the same conclusion. *See. Robinson v. Moore*, 300 F.3d 1320, 1345-48 (11th Cir. 2002); *Smith v. Stewart*, 189 F.3d 1004, 1008-14 (9th Cir. 1999); *Spaziano v. Singletary*, 36 F.3d 1028, 1032-35 (11th Cir. 1994); *Alderman v. Zant*, 22 F.3d 1541, 1556-57 (11th Cir. 1994); *Creech v. Arave*, 947 F.2d 873, 881-82 (9th Cir. 1991). The Sixth Circuit holding in *Davis* is not an outlier, but instead represents the consensus of several federal courts.

Finally, even though this Court is not bound by the decision in *Davis*, it should still apply the holding. This Court is charged with the duty of insuring that the death penalty is fairly and consistently applied. *See* R.C. 2929.05. By not following the decision in *Davis*, this court insures just the opposite; the decision of who lives and dies is determined by which court reviews a defendant's case and that defendants with identical errors are not treated the same.

**D. This Court's Prior Appropriateness Review Is Not Relevant.**

The State cites to this Court's review of Jackson's mitigation evidence on his initial appeal to the Court. [Appellee's Brief, pp. 36-37]. The State's argument misses the point. Jackson's argues that the trial court did not consider the evidence he offered supporting a sentence of less than death. [Appellant's Merit Brief, pp. 44-51]. The State's argument is one of harmless error. However, this Court has rejected the applicability of harmless error when the prosecutor was involved in the writing of the opinion. *Roberts I* at ¶ 163. This Court has also

17

reached the same conclusion when the three judge panel refused to consider specific types of mitigation evidence. *State v. Green,* 90 Ohio St.3d 352, 363, 738 N.E.2d 1208 (2000).

Finally, the evidence that the trial judge refused to consider at the resentencing hearing was much different than the evidence that this Court considered in Jackson's first direct appeal. *See* Proposition of Law No. IX, [Appellant's Merit Brief, pp. 64-67]. For instance when this Court initially reviewed the evidence it was uncontested that Jackson had an IQ of 84 and was a good student. This is not true. He operated in the borderline mentally retarded range and dropped out of school after being a constant behavioral problem. In addition, the prior record reflected that Jackson was raised by loving grandmother and mother. Again, nothing could further from the truth.

This Court should sustain Proposition of Law No. V.

**Proposition of Law No. VI**

> **A Trial Court Denies a Capitally Convicted Defendant His Right of Allocution When He Holds That As a Matter of Law He Cannot Consider the Defendant's Statement for the Purpose of Determining the Appropriate Sentence.**

The trial judge at the commencement of the resentencing proceeding emphasized two points. First, he would not consider any new evidence and information that Jackson or his counsel offered in support of a sentence of less than death. [8/14/12 Tr. 5, 14]. Second, he would be filing his sentencing opinion at the conclusion of the hearing. [*Id.* at Tr. 22, 27]. The State does not dispute the existence of both of these statements. [Appellee's Answer Brief, pp. 38-42].

**A. This Court's Holding in *Roberts II* Does Not Render This Proposition "Moot."**

The State contends that this Court's holding in *Roberts II* renders this proposition "moot." [Appellee's Brief, pp. 38, 42]. Jackson will assume, for purposes of this reply, that the State meant to argue that this Court's holding in *Roberts II* is controlling and therefore does not

18

have merit, as opposed to this Court's holding renders this proposition "moot." Even with this clarification, the State's argument is not well taken.

## B. The Trial Judge Did Not Afford Jackson His Right of Allocution.

The State repeatedly points to the fact that the trial court permitted Jackson to make not one, but two statements at the resentencing hearing. [Appellee's Answer Brief, pp. 39, 41]. This Court addressed this issue in *Roberts II*. This Court held that the right of allocution affords a defendant more than just the right to make a statement at the time of sentencing, it also includes the right to have the trial court consider the contents of the defendant's statement. *Roberts II*, at ¶¶ 55, 63-65. Furthermore, this Court held that a trial court's failure to consider a defendant's allocution violated the Eighth Amendment. *Id.* at ¶ 69.

In *Roberts II* this Court found that the trial court's failure to reference Roberts' allocution permitted this Court to draw "the inference that when the trial judge weighed the aggravating circumstances against the mitigating factors, he did not consider Roberts' allocution." *Roberts II* at ¶ 64. In this case, the trial judge also failed to reference Jackson's allocution in his sentencing opinion. The drawing of the identical inference is equally warranted.

In addition, in this case the trial judge three times stated that he would not consider any new or additional evidence that supported a sentence of less than death. [8/14/12 Tr. 5, 14]. These statements constitute direct, as opposed to inferential evidence, that he did not consider Jackson's allocution.

## C. The Trial Judge Was Not Going to Change his Mind.

The State argues that the trial judge could have changed his mind and modified his sentencing opinion if he believed that Jackson's statement had contained noteworthy information with respect to sentencing. [Appellee's Answer Brief, pp. 40-41]. However, this assertion is

19

incorrect. The trial judge specifically stated that as a matter of law he was precluded from considering Jackson's allocution. [8/14/12 Tr. 5, 14]. Thus the trial judge would never have changed his mind given the trial judge mistaken belief concerning the law.

### D. The Holding in *Roberts II* Is Not Controlling With Respect to the Contents of the Allocution.

For purposes of allocution, in the co-defendant's case, this Court drew a distinction between old evidence and new evidence. *Roberts II* at ¶¶ 23-50. Jackson has previously distinguished this Court's holding in *Roberts II. See* Proposition of Law No. I, pp. 3-4, *supra* and Proposition of Law No. V, p. 16, *infra.* For the sake of brevity and to avoid repetition, Jackson incorporates those arguments herein.

In addition, the right of allocution incorporates both the right of the defendant to speak on his own behalf and for defense counsel to speak on the defendant's behalf. Crim. R. 32(A) ("At the time of imposing sentence, the court shall do all of the following: (1) Afford counsel an opportunity to speak on behalf of the defendant. . ."). Defense counsel, because the trial court announced that he would not consider any new evidence [Tr. 8/14/12 Tr. 5, 14], proffered three volumes of evidence. [T.d. 406-08]. Unlike Jackson's statement, counsel's proffer relied exclusively on evidence that was available at the time of Jackson's initial sentencing hearing. If trial counsel at the initial sentencing hearing had provided effective assistance of counsel, the information contained in the proffer would have already been in the record for the trial judge's consideration at the resentencing hearing. *See* Appellant's Merit Brief, Proposition of Law No. II, pp. 17-31. The trial court did not reference any of counsel's proffered evidence in the sentencing opinion that it filed immediately after the sentencing hearing.

This Court should sustain this Proposition of Law.

20

### Proposition of Law No. VII

**A Trial Court Commits Prejudicial Error in a Capital Case When It Delegates Any Degree of Its Responsibility to the Prosecution For the Drafting of the Sentencing Opinion.**

On October 15, 2010, the Trumbull County Court of Appeals vacated Appellant's death sentence. *State v. Jackson,* 190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1211, ¶ 33 (11th Dist). The Court of Appeals found that the trial judge had involved the prosecution in the drafting of its sentencing opinion. *Id.* at ¶ 29. It ordered that the trial judge "prepare an *entirely new sentencing entry . . .*" *Id.* (emphasis added). The State does not contest that the trial judge did not write an entirely new sentencing opinion. [Appellee's Answer Brief, pp. 45-46]. The State concedes that the second sentencing opinion contains "many similarities" to the initial sentencing opinion. [*Id.* at p. 45]. The State subsequently further concedes "that the trial court apparently copied large portions of its original sentencing opinion in to the new opinion." [*Id.* at p. 46].

Even the State's second concession understates the manner in which the two opinions were almost identical. The trial judge added three introductory paragraphs to update the case history since the original sentencing hearing, added two paragraphs, and omitted two paragraphs with respect to the facts. The judge left the remainder of the initial sentencing opinion unchanged (the last fourteen pages of the August 14, 2012, opinion). He left in its entirety those portions of the December 9, 2002, sentencing opinion that identified the aggravating circumstances and the mitigating factors, and the reasons the former outweighed the latter by proof beyond a reasonable doubt.

The State makes three assertions in support of its argument that the trial court did not err when it drafted/copied its second opinion. The State made the identical argument in support of

21

the first sentencing opinion. The State's arguments are no more persuasive now, than when it made them in the case in which the Court of Appeals vacated Jackson's death sentence.

**A. This Court Found the Existence of Constitutional Error in *Roberts I.***

The State contends that this Court in *Roberts I* found only a statutory violation as opposed to a constitutional violation. [Appellee's Answer Brief, p. 43]. This is simply incorrect.

This Court in *Roberts I* specifically found that the involvement of the prosecutor in the drafting of the sentencing opinion violated the Fourteenth Amendment to the United States Constitution, "[t]he trial court's consultation with the prosecutor, particularly when undertaken without the knowledge or participation of defense counsel, can neither be ignored nor found to be harmless error. Cf. *Gardner v. Florida*, 430 U.S. 349, 362, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977) (defendant 'was denied due process of law when the death sentence was imposed, at least in part, on the basis of information [from a presentence report] which he had no opportunity to deny or explain')." *State v. Roberts*, 2006-Ohio-3665, ¶162.  In *Gardner*, the United States Supreme Court found that the trial court's sentencing procedure violated the federal constitution. 430 U.S. at 362. Thus, by citing to *Gardner*, this Court found the existence of a federal constitutional violation.

Whether this Court  in *Roberts I*, found a violation of the federal constitution or R.C. 2929.03 the result remains the same, a defendant's death sentence must be vacated when the prosecution is involved in the drafting process of the sentencing opinion. As this Court concluded "[t]he trial court's delegation of any degree of responsibility in this sentencing opinion does not comply with R.C. 2929.03(F). . . . Given the prosecutor's direct role in the preparation of the sentencing opinion, we cannot conclude that the proper process was followed here." *Roberts I,*  ¶ 160.

22

**B. This Court Has Already Addressed The Significance of the Prosecutor's Involvement in the Drafting Process.**

The State contends it was appropriate for the judge to merely copy his prior sentencing opinion because the prosecutor's involvement was only minimal; the prosecution merely served as the judge's typist. [Appellee's Answer Brief, pp. 43-46]. This argument contains two flaws.

First, this Court rejected the same argument in *Robert's I.* This Court found that "[t]he trial judge stated that he had given notes to the prosecutor and had instructed the prosecutor . . ." *Roberts I,* at ¶ 155. From that finding, this Court concluded "that the trial judge provided his notes to the prosecutor to guide the prosecutor in drafting the sentencing opinion does not change the result." *Id.* at ¶ 159. This Court further held "[t]he trial court's delegation of any degree of responsibility in this sentencing opinion does not comply with R.C. 2929.03(F)." *Id.* at ¶ 160.

Second, the prosecutor does not address the fact that the Court of Appeals ordered the trial judge to "prepare an *entirely new sentencing entry . . .*" *State v. Jackson,* 2010-Ohio-5054 at ¶ 29. The trial judge did not prepare an entirely new sentencing entry. Instead, he merely copied almost entirely his old sentencing entry.

**C. The Error Is Not Harmless.**

The State, in one last effort to have this Court uphold the trial judge's copying of his prior sentencing opinion contends that "though the State concedes no error, the State submits that it is at worst harmless error that the trial court apparently copied large portions of its original sentencing opinion into the new opinion." [Appellee's Answer Brief, p. 46].

This Court has already rejected the harmless error analysis in the context of the prosecutor's involvement in the drafting of a capital sentencing opinion. This Court has found that "[t]he trial court's consultation with the prosecutor [concerning the drafting of the sentencing opinion], particularly when undertaken without the knowledge or participation of defense

23

counsel, can neither be ignored nor found to be harmless error." *Roberts I,* at ¶ 162. This Court further held "[i]t is so severe a violation that independent reweighing cannot serve as an adequate remedy.. . . We find that we must vacate the sentence because of the critical constitutional interests and notions of justice that are implicated by the prosecutor's participation in drafting the sentencing opinion." *Id.* at ¶ 163.

This Court should sustain this Proposition of Law.

<u>**Proposition of Law No. VIII**</u>

**The Accused May Not Be Punished Multiple Times For Crimes Of Similar Import That Are Committed During One Indivisible Course Of Conduct.**

The trial court sentenced Jackson for aggravated murder (prior calculation and design) with two capital specifications (aggravated robbery and aggravated burglary) and the separate offenses of aggravated robbery and aggravated burglary. [8/14/12, Tr. 22, 24-25]. The trial court erred when it failed to merge the two aggravators, the separate felonies, and the underlying felonies into the aggravators. Merger was required pursuant to this Court's decision in *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061.

**A. The Two Capital Specifications Should Have Been Merged.**

The State begins its analysis by asserting that it does not matter whether the trial court merged the two aggravators because one aggravator serves as a sufficient basis for imposing a sentence of death. [Appellee's Answer Brief, p. 49]. However, it does make a difference. The trial court instructed the jury that it should consider the two aggravator circumstances in its sentencing phase deliberations. [Sent. Tr. 163, 164, 168, 171- 173. The presence of a second aggravating circumstance may have unfairly tilted the weighing process in favor of death.

24

The State relies, to support its position, on this Court's decision in *State v. Steffen*, 31 Ohio St.3d 111, 509 N.E.2d 383 (1987). [Appellee's Answer Brief, pp. 49-50]. However, that case supports Jackson's position as to the merger of the two capital specifications. This Court held therein that when a defendant lawfully entered the premises and later assaulted the owner of the premises, the burglary occurs at the time of the assault. *Id.* at 115. It was the State's theory that Jackson entered the Fingerhut residence with Roberts' permission. Thus, Jackson did not commit the aggravated burglary until Fingerhut entered the residence and the fatal confrontation occurred. To hold otherwise would not make sense because Jackson after he entered the residence could have had a change of heart and left without confronting the victim.

That the aggravated burglary did not occur until the confrontation is critical. Again, it was the State's theory that Jackson fatally assaulted Fingerhut on the doorway leading from the garage to the kitchen and then immediately fled in Fingerhut's vehicle that was parked in the garage. This was all one act. This Court has warned that for purposes of merger analysis the courts should "not parse" a defendant's conduct "in order to sustain multiple convictions . . ." *Johnson* at ¶ 56. In that case, the offenses were "arguably two separate incidents . . . separated by time and brief intervention . . ." but this Court found that the offenses should have been merged. The State's effort to avoid the merging of the specifications requires this Court to engage in the same parsing of conduct that this Court rejected in *Johnson*.

The State suggests that if Jackson's "plot had worked according to plan, *Johnson* may have afforded him the benefit of merged specifications and sentences. Appellant and Roberts had originally planned for Appellant to force Mr. Fingerhut into the trunk of his own car, drive him away from his own home and execute him." [Appellee's Answer Brief, p. 53]. However for purposes of merger, the facts of the State's hypothetical the facts of this case are

25

indistinguishable. Under both, Jackson enters the house with permission, confronts Fingerhut in the residence, murders Fingerhut then takes Fingerhut's vehicle.

To accept the State's argument would mean that the offenses would rarely be merged because the defendant will rarely if ever rob the victim in the exact moment that he enters the residence.      Finally, it is important to note that the cases that the State cites were decided prior to this Court's decision in *Johnson*. [Appellee's Answer Brief, p. 49-53]. This Court in *Johnson* specifically recognized that it was overruling the prior controlling case law. *Johnson*, at ¶ 44.

**B. The Two Underlying Felonies Should Have Been Merged Into the Capital Specifications.**

The State characterizes Jackson assertion as a "novel argument." [Appellee's Answer Brief, p. 53].   The State, without any citation, contends that Jackson "admits the that a specification that elevates and [sic] a predicate offense in a felony murder charge and an aggravated murder specification represent separate legal theories." [Appellee's Answer Brief, p. 53]. Jackson never made such a concession.  The State does not purport to explain the manner in which a felony which elevates a murder into an aggravated murder should be treated any differently for purposes of merger than a felony that elevates an aggravated murder into capital murder. [Appellee's Answer Brief, pp. 53-54].

Finally, the State argues that the doctrine of merger is inapplicable because the jury was instructed to make distinct findings as to the specifications and the underlying capital specifications. [Appellee's Answer Brief, p. 54]. However, a trial court does not reach the merger issue until a jury has made separate findings as to felonies in question. The State's argument would eliminate the merger doctrine all together.

26

## C. The Two Underlying Felonies Should Have Been Merged.[2]

The State argues that the appellate court's decision in *State v. Jarvi*, 11th Dist. No. 2011-A-0063, 2012-Ohio-5590 supports its position that the offenses of aggravated burglary and aggravated robbery need not be merged. [Appellee's Answer Brief, pp. 54-55]. The State begins by observing that because "Jarvi pled guilty rather than proceeding to trial, the facts are somewhat thin." [*Id.* at p. 54]. The State then proceeds to use the "thin" facts to attempt to distinguish Jackson's case. In *Jarvi*, the defendant trespassed into the victim's residence to obtain money from the victim who had previously given the defendant financial assistance. *Id.* at ¶ 2. When the victim refused to "give appellant any money on that occasion," one of the defendant's companions struck the victim in the head with a wooden club. *Id.* The State contends that the defendant in that case entered the victim's residence for purposes of obtaining money. After making this assertion as to intent, the State claims that Jackson had a different intent when he entered the Fingerhut residence, to murder the victim. [Appellee's Answer Brief, pp. 54].

The State's argument with respect to *Jarvi* contains two flaws. First, the defendant therein had no intent to rob the victim until he refused to provide money as the victim had in the past. Second, the State does not explain the reason that the intent to commit a different felony makes any difference as long as a robbery takes place. The appellate court in *Jarvi* did not address this supposed distinction between the two intents.

Finally, the State cites this Court to *State v. Frazier,* 58 Ohio St.3d 235, 389 N.E.2d 1118 (1979). [Appellee's Answer Brief, p. 55]. But again this Court decided that case prior to its decision in *Johnson,* in which there was a sea change in the law with respect to merger.

---

[2] This Court only need reach this argument if it rejects the preceding argument that the underlying felonies should have been merged into the capital specifications.

27

**D. The Merger Issues Are Not Waived**

The State argues this proposition is waived because "[w]hile Appellant's counsel argued the merger issues at this resentencing, his trial counsel never argued merger before the case went to the jury at trial." [Appellee's Answer Brief, p. 56]. The State's waiver argument contains two flaws.

First, this Court has held that a defendant is not barred by the doctrine of res judicata from raising issues on appeal that arose at a resentencing hearing, even if similar issues arose and were not objected to at the original sentencing hearing. *State v. Wilson,* 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 30. This Court reasoned that because the defendant in the later appeal is taking an appeal from the judgment entered at the new sentencing hearing, res judicata is inapplicable. *Id.* That is the exact situation in this case.

Second, when a trial court fails to merge offenses at sentencing, it committed plain error. *State v. Underwood,* 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶¶31-32. The cases that the State cites to support its waiver argument were once again decided prior to *Johnson.* [Appellee's Answer, Brief, 56].

This Court should sustain this Proposition of Law.

<u>Proposition of Law No. IX</u>

**A Death Sentence Is Inappropriate When It Is the Product of
Unreliable Procedures and Is Based Upon Unreliable Evidence
That Infects the Weighing Process.**

Jackson, in this proposition, cited to five procedural irregularities that led to him receiving an inappropriate death sentence. [Appellant's Merit Brief, pp. 65-66]. He also cited to six factual areas in which the jury heard inaccurate information. [*Id.* at 66-67]. The State has responded accordingly. [Appellee's Answer Brief, pp. 57-65]. For the sake of brevity, Jackson

28

will reply to only the more egregious responses by the State. As to those procedural irregularities and factual areas that Jackson does not respond, he stands on the accuracy of his analysis in his merit brief and does not concede that the State's response was persuasive.

**A. This proposition is not barred by res judicata.**

The State first points to this Court's appropriateness analysis in Jackson's first direct appeal. [Appellee's Answer Brief, p. 57]. However, this Court's prior analysis is undercut by the vacation of Jackson's death sentence because the prosecutor was involved in the drafting of the sentencing opinion. In both *Roberts I* and *Roberts II,* this Court did not conduct an appropriateness analysis. While this Court did not state its reasons, it can be inferred that it determined that it could not conduct an appropriate assessment until the trial court filed a sentencing opinion that complied with R.C. 2929.03(F). This Court did not have such an opinion when Jackson's first direct appeal was before it because the prosecutor had engaged in the drafting of the sentencing opinion. Thus, this Court's earlier appropriateness analysis in Jackson's case should not be given any effect.

The State also suggests that Jackson's arguments in support of this proposition should have been raised in his first appeal and therefore are barred by res judicata.  [Appellee's Answer Brief, pp. 57-58]. That is not the law. a defendant is not barred by res judicata from raising issues on appeal that arose at a resentencing hearing, even if similar issues arose and were not objected to at the original sentencing hearing. *State v. Wilson,* 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 30.

**B. Trial Attorney Consoldane knew little or nothing about the case.**

The State claims that Attorney Consoldane was knowledgeable about Jackson's case as evidenced by his statement, "For the last ten years on the cases that Mr. Lewis and I have tried

29

together, I pretty much have handled most of the mitigation. I had the witnesses here. I didn't want them to have to come back." [Appellee's Answer Brief, citing Sent. Tr. 157]. This statement demonstrates at best that Attorney Consoldane believed that he was familiar with the procedures invoked in capital cases. The statement does not demonstrate that he was familiar with the unique facts in Jackson's case in support of a sentence of less than death.

In fact the record demonstrate just the opposite, that Attorney Consoldane was not familiar with the facts that supported a sentence of less than death. Attorney Consoldane moved the trial court to permit the psychologist to remain in the courtroom "I think that it would be better able to help me in court, when I am *interviewing* the family members if she's here with me. She knows far more about the background of the family than I do, and it was - - *I got a little shorthanded with Mr. Lewis going into the hospital* . . ." [Sent. Tr. 7] (emphasis added).

**C. Jackson should be afforded the same opportunity as Roberts to add facts to the record on remand.**

The State asserts that Jackson has an "even less expectation of contributing additional materials to the resentencing proceeding because unlike his co-defendant, Appellant presented mitigating evidence." [Appellee's Answer Brief, p. 59]. Jackson previously addressed the same argument in Propositions of Law Nos. I and V, *supra*, pp. 3-4, 16. The reason the record in *Roberts* was not more fully developed when her direct appeal was initially before this Court was attributable to the fact that Roberts waived the presentation of mitigation evidence. The reason that the record was not more fully developed when Jackson's direct appeal was initially before this Court was one of Jackson's attorneys knew nothing about the case and the other attorney was only familiar with the procedures employed in capital cases. The equities favored Jackson, not Roberts, with respect to the expansion of the record at resentencing.

**D. Jackson's limited intelligence is relevant to sentencing.**

On his initial direct appeal, this Court found that "(a)lthough Jackson's IQ had twice been tested at 70 in grade school, a more recent test put him at a full-scale IQ of 84. Dr. McPherson . . . Taking into account Jackson's minimal education, Dr. McPherson believes him to be of average ability." *Jackson* at ¶ 173. During the post-conviction proceedings, Appellant had another IQ test administered to him. [T.d. 407, Exhibit 78 ¶ 15]. He received a full scale IQ score of 75. [*Id.*].

The State contends this evidence of an the invalidity of the IQ score of 84 is not persuasive because it was submitted in a post-conviction affidavit as opposed to live testimony. [Appellee Brief, p. 61]. The affidavit was sworn. The affiant was precluded from presenting live testimony because the trial court at the behest of the State denied Jackson an evidentiary hearing on his post-conviction petition. *State v. Jackson,* 11th Dist. No. 2004-T-0089, 2006-Ohio-2651, ¶ 12. In addition, the Jackson's post-conviction IQ score was consistent with all of his other scores with exception of the test administered by McPherson. This post-conviction testing result was convergent with the IQ scores that Appellant received in school, not the outlier results that Dr. McPherson reported. *See State v. White,* 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905, ¶ 29.

The State cites to the court of appeals' post-conviction opinion in which the court held that the flawed score would not have made a difference. [Appellee's Answer Brief, pp. 61-62. However, the appellate court only took into account McPherson's scoring errors and not that Jackson had scored much lower during the post-conviction proceedings, but yet consistent with his scores prior to McPherson.

This Court noted that "Dr. McPherson believes him [Jackson], to be of average intelligence." Jackson's consistent IQ scores do not demonstrate that he is of average intelligence.

31

More importantly, the jury that sentenced Jackson to death heard  that Jackson had "average" [Sent. Tr. 48], and "low average or better" intelligence [*Id.* at Tr. 83]. This Court has held that low intelligence, though not low enough to constitute mental retardation, is a mitigating factor. *See i.e. State v. Elmore,* 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 164; *State v. Jones,* 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 261,

**E. That Jackson's mother suffered from substance abuse is relevant.**

The State claims that "since his mother was not on trial, her drinking habits are not relevant." [Appellee's Answer Brief, p. 62]. In approximately sixty cases this Court has held that a poor family environment is a relevant mitigating factor. *See i.e. State v. Hanna,* 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 167; *State v. Hughbanks,* 99 Ohio St.3d 365, 3002-Ohio-4121, 792 N.E.2d 1081, ¶ 136; *State v. Ketterer,* 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 199. In none of those cases or the other approximately sixty capital cases before this Court was the defendant's family on trial.

**F. Jackson was not living with his grandmother, but living on the street[3]**

The State goes to some length concerning the fact that Jackson was not living with his grandmother. [Appellee's Answer Brief, p. 67]. Jackson's sister testified that he was living with his grandmother. [Sent. Tr. 26-27].  This Court found otherwise, that Jackson lived on the street, presumably based upon the testimony of Dr. McPherson. *Jackson* at ¶ 171. The point, that the State misses, is that because counsel was unprepared, the jury heard conflicting testimony concerning where Jackson lived as well as background information. Counsel's sentencing presentation would not have been persuasive given the conflicting testimony.

---

[3] Appellate counsel in the merit brief inadvertently phrased the issue as "The jury heard that Appellant was living with his grandmother at the time of the murder." In fact it should have been worded, "They jury heard that Appellant was living with his grandmother." Jackson's sister testify he was living with his grandmother, Dr. McPherson testified otherwise.

32

**G. Roberts' role as the instigator of the plan to murder her husband and that she had the most to gain (the vehicle, house, bus franchises, and life insurance policies were in her name) constituted substantial mitigating evidence.**

The State points to the post-conviction appellate decision that Roberts' involvement in the murder would not the would not have been a persuasive mitigating factor. [Appellee's Answer Brief, p. 64]. However, the court of appeals, finding was flawed.

This Court recently found that Roberts: 1) had worked in a plastic surgeon's office for "almost 23 years," 2) she had treated wounded soldiers in Israel, 3) raised funds to rescue a person from Ethiopia, 4) ran a restaurant in a bus terminal, and 5) gaven several thousand dollars to her family members. *Roberts II,* ¶ 161. This is to be contrasted to Jackson, whose IQ was in the low to mid 70's, suffered from attention deficit disorder, was dependent upon cocaine and marijuana, lived on the streets since a young age, and dropped out of school in the eighth grade. *Jackson* at ¶¶ 169-171, 173. Roberts certainly possessed more intelligence and reasoning skills than Jackson.

Roberts had a history of currying favor with African-American males by supplying them with clothes, money, fast cars and sex [T.d. 407, Exhibits 65, 66, 67]. Roberts had previously tried to recruit another African male to commit the homicide. [*Id.* at Exhibit 67]. She "played Petitioner" by giving him drugs, money and cars [T.d. 406, Exhibits 50 ¶ 10; 51, ¶ 7; 53, ¶ 5; 53, ¶ 14.]

**H. Conclusion: Jackson's death sentence is unreliable.**

The jury was exposed to inaccurate, conflicting  and incomplete information concerning Jackson. That information pertained to his: 1) background, 2) level of functioning, and 3) his involvement in the offense visa-a-vi the codefendant.

This Court should sustain this Proposition of Law.

33

### Proposition of Law No. X

**A Defendant's Death Sentence Is Invalid When the State Is Unable to Carry Out His Execution in a Manner that is Consistent with the Constitution.**

The State's response leaves the impression that the State of Ohio's execution of its inmates has been without any issues. [Appellee's Answer Brief, pp. 66-72]. That is not accurate. In fact Ohio has the worst track record for being able to execute its citizens in a manner consistent with the Eighth and Fourteenth Amendments to the United States Constitution.

During the execution of Joseph Clark on May 2, 2006, prison officials could find only one accessible vein in Clark's arms to establish a heparin lock instead of the required two sites. Once Defendants and their agents began administering the first drug of the three-drug policy then employed, the vein collapsed. Clark informed the execution team that the process was not working, and the execution was halted.

On May 24, 2007, the State of Ohio executed Christopher Newton. It took approximately twenty-two minutes to insert the first IV into Newton's arm. It took approximately one hour and fifteen minutes to place the second IV. Placing the IVs took so long that Newton had to take a short bathroom break.

On September 15, 2009, the State of Ohio attempted to execute Romell Broom. The execution team unsuccessfully attempted to insert IV lines in eighteen different spots on Broom's body, making approximately fifty needle insertions over the course of two hours. Personnel involved in attempting to execute Broom included at least one physician, Dr. Carmelita Bautista, who was not part of the execution team and who was untrained in the written execution protocol. The State of Ohio has consistently asserted they are unable to procure participation of a physician in the execution process. The written protocol in effect at the time did not provide for physician

34

participation, and Dr. Bautista's participation in the failed Broom execution came as a distinct surprise to participating execution team members. After two hours of Defendants causing substantial, torturous physical and psychological pain to Broom, the Department of Rehabilitation and Corrections Director Terry Collins requested that Governor Ted Strickland grant a reprieve to postpone the execution process for one week. Broom, during the course of this two-hour ordeal, requested to speak with his counsel on at least one occasion and perhaps more. The State of Ohio denied these requests, citing their execution policy, and then denied counsel's request to speak with Broom.

On July 8, 2011, Federal District Court Judge Frost issued a preliminary injunction and restraining order to preclude the State of Ohio from executing Kenneth Smith. *Cooey (Kenneth Smith) v. Kasich,* 801 F. Supp.2d 623, 657 (S.D. Ohio 2011). The Judge began his opinion by stating that "[i]t is the policy of the State of Ohio that the State follows its written execution protocol, except when it does not. This is nonsense." *Id.* at 624. Later, Judge Frost observed that "Plaintiff has demonstrated that the only rationale for core deviations that eliminate safeguards and introduce greater uncertainty into the execution process is to simply complete the executions at all or nearly all costs. Mere pursuit of administrative convenience that risks flawed executions is not a legitimate state interest." *Id.* at 653 (citation omitted) Finally, he concluded "[t]he perplexing if not often shocking departures from the core components of the execution process that are set forth in the written protocol not only offend the Constitution based on irrationality but also disturb fundamental rights that the law bestows on every individual under the Constitution, regardless of the depraved nature of his or her crimes." *Id.* at 656.

On January 11, 2012, Judge Frost issued another restraining order and preliminary injunction, this time to preclude the State of Ohio from executing Charles Lorraine. *In re: Ohio*

35

*Execution Protocol Litigation (Lorraine),* 840 F. Supp.2d 1044, 1059 (S.D. Ohio 2012). Judge Frost found "[t]his is what frustrates the Court. Do not lie to the Court, do not fail to do what you tell this Court you must do, and do not place the Court in the position of being required to change course in this litigation after every hearing. It should not be so hard for Ohio to follow procedures that the state itself created. Today's adverse decision against Defendants is again a curiously if not inexplicably self-inflicted wound." *Id.* at 1058.

The State of Ohio appealed the order in Lorraine and requested that the appellate court vacate the order staying Loraine's execution. The Sixth Circuit denied the motion to lift the stay. *In re: Ohio Execution Protocol Ligation (Lorraine),* 671 F.3d 601, 602 (6th Cir. 2012). The appellate court concluded "[w]e agree with the district court that the State should do what it agreed to do: in other words it should adhere to the execution protocol it adopted." *Id.* The Sixth Circuit concluded that "the State's ongoing conduct requires the federal courts to monitor every execution on an ad hoc basis, because the State cannot be trusted to fulfill its otherwise lawful duty to execute inmates sentenced to death." *Id.* The State unsuccessfully sought to have the United States Supreme Court review the case. *Kasich v. Lorraine,* ___ U.S. ___, 132 S. Ct. 1306, 181 L. Ed. 2d 1034 (2012).

Prior to each scheduled execution of an Ohio prisoner, Judge Frost now conducts a lengthy evidentiary hearing to insure that the State of Ohio is now complying with its execution protocol. On October 10, 2013, the State of Ohio's most recent protocol became effective. This is the State of Ohio's sixth new protocol since 2009.

This Court should sustain this Proposition of Law.

### Proposition of Law No. XI

**Ohio's Death Penalty Law Is Unconstitutional. R.C. 2903.01, 2929.02, 2929.021, 2929.022, 2929.023, 2929.03, 2929.04, and 2929.05 Do Not Meet The Prescribed Constitutional Requirements And Are Unconstitutional On Their Face And As Applied To Appellant. U.S. Const. Amends. V, VI, VIII, And XIV; Ohio Const. Art. I, §§ 2, 9, 10, And 16.  Further, Ohio's Death Penalty Statute Violates The United States' Obligations Under International Law.**

The State argues that this Court has addressed most if not all of the arguments that Jackson has raised in support of this proposition. [State's Answer Brief, pp. 73-77]. To the extent that the State is correct, then this Court should reconsider those decisions for the reasons articulated in Jackson's Merit Brief. To the extent that the State is incorrect, this Court should grant Jackson relief for the reasons set forth in his merit brief.

This Court should sustain this Proposition of Law.

### Proposition of Law No. XII

**A Conviction Will Be Reversed When The Cumulative Effect Of The Errors Deprives A Defendant Of The Constitutional Right To A Fair Trial.**

The accumulation of errors raised in his merit brief and this reply brief tainted Jackson's convictions and death sentence. Each of these constitutional defects shows that Jackson should not have been convicted and sentenced to death. Taken together, these errors overwhelmingly establish that there is no question that Jackson was denied a constitutionally fair hearing as to his guilt and penalty.

This Court should sustain this proposition of law.

37

### Conclusion

The State in its Answer Brief has failed to meaningfully rebut the factual and legal arguments that he raised in his merit brief, For all of the reasons set forth in this reply brief, Jackson's July 22, 2013 merit brief, and any other reasons that are apparent on the face of the record, this Court should vacate Appellant's convictions and remand the matter a new trial. In the alternative, this Court should remand the matter for a new sentencing hearing.

Respectfully submitted,

Office of the
Ohio Public Defender

RANDALL L. PORTER - 0005835
Assistant State Public Defender
250 E. Broad Street - Suite 1400
Columbus, Ohio  43215-9308
(614) 466-5394 (Telephone)
(614) 644-0708 (Facsimile)
Randall.Porter@opd.ohio.gov

And

DENNIS L. SIPE – 0006199
Buell & Sipe, Co., L.P.A.
322 Third Street
Marietta, Ohio 45750
(740) 373-3219 (Voice)
(740) 373-2892 (Facsimile)
dennis@buellsipe.com

By

Randall L. Porter

Counsel for Nathaniel Jackson

38

## Certificate of Service

I hereby certify that a true copy of the foregoing *Appellant Nathaniel Jackson's Reply Brief* was forwarded by electronic and regular U.S. Mail to Luwayne Annos and Charles Morrow, Assistant Prosecuting Attorneys, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio  44481 on this the 30th day of December, 2013.

RANDALL PORTER – 0005835
Assistant State Public Defender

Counsel For Nathaniel Jackson

408745

39



# The Supreme Court of Ohio

**FILED**

APR -8 2015

CLERK OF COURT
SUPREME COURT OF OHIO

State of Ohio

v.

Nathaniel Jackson

Case No. 2012-1644

E N T R Y

This cause is pending before the court as a death penalty appeal from the Court of Common Pleas for Trumbull County.

Upon consideration of appellant's suggestion of lack of a final appealable order and motion to hold proceedings in abeyance, and appellee's motion to strike/response to suggestion of lack of a final appealable order, it is ordered by the court that the motions are denied.

(Trumbull County Court of Common Pleas; No. 01-CR-794)

Maureen O'Connor
Chief Justice

**The Official Case Announcement can be found at http://www.supremecourt.ohio.gov/ROD/docs/.**

# The Supreme Court of Ohio



FEB 25 2016

February 25, 2016 CLERK OF COURT
SUPREME COURT OF OHIO

State of Ohio

v.

Case No. 2012-1644

Nathaniel Jackson

## NOTICE OF ORAL ARGUMENT

TO:    LuWayne Annos                              Randall L. Porter

The Supreme Court of Ohio will hold an oral argument on the merits in this case on Tuesday, April 19, 2016. Time allowed for oral argument will be 30 minutes per side.

Attorneys who argue before the court must comply with the provisions of Rule 17.03 through 17.05 of the Rules of Practice of the Supreme Court of Ohio and the instructions that follow. Pursuant to Rule 17.03, counsel for either or both parties may waive oral argument and submit the case upon briefs. The Clerk must be notified by filing a waiver of oral argument at least seven days before the date scheduled for the oral argument.

Court convenes promptly at 9 a.m. Counsel in all cases are expected to be present when court convenes. Counsel must register with the Chief Deputy Clerk **prior to 8:45 a.m.** at the information desk outside the Courtroom on the first floor of the Ohio Judicial Center.

For more information on protocol for presenting oral argument before the Supreme Court of Ohio, counsel may refer to the "Guide for Counsel Presenting Oral Argument" located at www.supremecourt.ohio.gov/clerk.

*Note: Pursuant to S.Ct.Prac.R. 17.01(D), assignments in the Supreme Court take precedence over other assignments.*

SANDRA H. GROSKO      CLERK

_____  CHIEF DEPUTY CLERK

# The Supreme Court of Ohio

ORIGINAL

Hon. William Andrew Klatt
Tenth District Court of Appeals
373 South High Street-24th Floor
Columbus, OH 43215-6313

## CERTIFICATE OF ASSIGNMENT

The Honorable William Andrew Klatt, a judge of the Tenth District
Court of Appeals, is assigned effective March 1, 2016 to preside in
the Supreme Court of Ohio, to hear case 2012-1644, State of Ohio v.
Nathaniel Jackson and to conclude any proceedings in which he
participated.

Maureen O'Connor
Chief Justice

16JA0516



FILED

MAR 0 1 2016

CLERK OF COURT
SUPREME COURT OF OHIO

# The Supreme Court of Ohio

FILED

AUG 24 2016

CLERK OF COURT
SUPREME COURT OF OHIO

State of Ohio

v.

Nathaniel Jackson

Case No. 2012-1644

JUDGMENT ENTRY

APPEAL FROM THE
COURT OF COMMON PLEAS

This cause, here on appeal from the Court of Common Pleas for Trumbull County, was considered in the manner prescribed by law. On consideration thereof, the judgment of the Court of Common Pleas is affirmed, consistent with the opinion rendered herein.

Furthermore, it appearing to the court that the date fixed for the execution of judgment and sentence of the Court of Common Pleas has passed, it is ordered by the court that the sentence be carried into execution by the Warden of the Southern Ohio Correctional Facility or, in his absence, by the Deputy Warden on Wednesday, the 15th day of July, 2020, in accordance with the statutes so provided.

It is further ordered that a certified copy of this entry and a warrant under the seal of this court be certified to the Warden of the Southern Ohio Correctional Facility, and that the Warden shall make due return to the Clerk of the Court of Common Pleas for Trumbull County.

It is further ordered by the Court that a mandate be sent to the Court of Common Pleas for Trumbull County to carry this judgment into execution, and that a copy of this entry be certified to the Clerk of the Court of Common Pleas for Trumbull County for entry.

(Trumbull County Court of Common Pleas; No. 01-CR-794)

Maureen O'Connor
Chief Justice

**The Official Case Announcement can be found at http://www.supremecourt.ohio.gov/ROD/docs/**

[Cite as *State v. Jackson,* 149 Ohio St.3d 55, 2016-Ohio-5488.]

THE STATE OF OHIO, APPELLEE, *v.* JACKSON, APPELLANT.

[Cite as *State v. Jackson,* 149 Ohio St.3d 55, 2016-Ohio-5488.]

*Criminal Law—Aggravated murder—Sentence of death imposed after resentencing hearing—Death penalty affirmed.*

(No. 2012-1644—Submitted April 19, 2016—Decided August 24, 2016.)

APPEAL from the Court of Common Pleas of Trumbull County, No. 01-CR-794.

_____

PFEIFER, J.

{¶ 1} This is a death-penalty appeal as of right. A jury convicted the defendant-appellant, Nathaniel Jackson, of the aggravated murder of Robert Fingerhut, with two death-penalty specifications. Jackson was sentenced to death. This court affirmed Jackson's convictions and the death sentence on direct appeal. *State v. Jackson*, 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362.

{¶ 2} During a subsequent appeal from the trial court's denial of Jackson's motion for a new trial, the Eleventh District Court of Appeals vacated the death sentence, holding that the trial judge's use of the assistant prosecutor to assist in preparation of the sentencing opinion was improper. The case was remanded to the trial court for resentencing. *State v. Jackson*, 190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221, ¶ 29, 33 (11th Dist.). On remand, the trial court again sentenced Jackson to death.

{¶ 3} For the following reasons, we affirm the trial court's resentencing of Jackson. Although we hold that in the sentencing opinion the trial court improperly failed to consider Jackson's allocution, the error was harmless and will be rectified by our independent sentence evaluation.

SUPREME COURT OF OHIO

## I. Trial Evidence

{¶ 4} Our previous decision in this case sets forth the facts in detail.  107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362, at ¶ 2-74.  For purposes of this opinion, we summarize the facts as follows.

{¶ 5} Donna Roberts lived with Robert Fingerhut, her former husband, in Howland Township, Trumbull County.  Fingerhut, who operated Greyhound bus terminals in Warren and Youngstown, owned two insurance policies on his life, both of which named Roberts as sole beneficiary.  The total death benefit of the two policies was $550,000.

{¶ 6} At some point, Jackson began an affair with Roberts.  In 2001, the affair was interrupted by Jackson's confinement in the Lorain Correctional Institution.  While Jackson was in prison, he and Roberts exchanged numerous letters and spoke on the telephone.  Prison authorities recorded many of their telephone conversations.

{¶ 7} Passages from the letters and telephone calls indicated that the two plotted to murder Fingerhut.  Jackson repeatedly pledged to kill Fingerhut upon Jackson's release from prison.  In one letter, Jackson wrote, "Donna I don't care what you say but Robert has to go!  An[d] I'm not gonna let you stop me this time." At Jackson's request, Roberts purchased a ski mask and a pair of gloves for Jackson to use during the murder.  On the day before Jackson was released, he and Roberts had one final recorded conversation.  Jackson told her, "I got to do this Donna.  I got to."  He also told Roberts his plan:  "I just need to be in that house when he come home.  * * *  Baby it ain't gonna happen in the house."

{¶ 8} Jackson was released on December 9, 2001.  Roberts drove to Lorain to pick him up, spent that night with him in a motel, and spent much of the next two days with him as well.  On December 11, 2001, Fingerhut was shot to death at his home.

2

January Term, 2016

{¶ 9} When police responded to the crime scene, Roberts was hysterical and asked them to do whatever was necessary to catch the killer.  She also reported that Fingerhut's car had been stolen.  During a search of the house, the police found, in a dresser in the master bedroom, 145 handwritten letters and cards that Jackson had sent to Roberts.  In the trunk of Roberts's car, the police found a bag with Jackson's name on it containing clothes and 139 letters that Roberts had sent to Jackson.  On December 12, Fingerhut's car was found in Youngstown.

{¶ 10} On December 21, 2001, Jackson was arrested at a friend's house in Youngstown.  Jackson had a bandage around his left index finger at the time of his arrest.  The police seized a pair of bloodstained gloves with the left index finger missing and a pair of tennis shoes from the house.  The tread pattern on the shoes was consistent with a shoe print left in blood near Fingerhut's body.

{¶ 11} During a subsequent police interview, Jackson said, "I just didn't mean to do it, man."  He then related his version of what happened, essentially claiming that he shot Fingerhut in self-defense.  Jackson claimed to have known Fingerhut for a couple of years.  Jackson said that on the evening of December 11, he approached Fingerhut about getting a job at the Youngstown bus terminal.  They met later that evening, and Jackson sold Fingerhut "some weed."  He then asked Fingerhut if he could go to Fingerhut's house to "chill" before starting work the next day, and Fingerhut gave Jackson a ride to Fingerhut's home.  According to Jackson, after they went inside the home, Fingerhut started making racial comments and other disparaging remarks toward him.  Fingerhut then pulled a revolver, Jackson tried to grab it, and Fingerhut shot Jackson in the finger as Jackson reached for the gun.  Jackson then took the gun from Fingerhut during the "tussle" and shot him twice.  Jackson was unsure where the shots hit Fingerhut but said that Fingerhut was still breathing when Jackson fled the house and drove away in Fingerhut's car.

{¶ 12} Fingerhut's autopsy showed that he had been shot three times, including a penetrating gunshot wound to the top of the head that was determined

3

to be fatal.  There was also a laceration between Fingerhut's left thumb and index finger, and further examination showed that the fatal bullet hit his hand before entering the top of his head.  Gunshot residue on the body indicated that the distance from the muzzle of the firearm to the head wound was 24 inches or less.

{¶ 13} Finally, expert testimony established that the DNA profile of bloodstains found inside Fingerhut's car and on its trunk-release lever matched Jackson's DNA profile.

## II. Case History

### A. Indictment, trial, verdict, and appeal

{¶ 14} On December 28, 2001, a grand jury indicted Jackson on two counts of aggravated murder in violation of R.C. 2903.01(A) and (B).  Both murder counts carried two felony-murder death-penalty specifications:  murder during an aggravated burglary and murder during an aggravated robbery.  R.C. 2929.04(A)(7).  The grand jury also indicted Jackson on separate counts of aggravated burglary and aggravated robbery with a firearm specification on each count.

{¶ 15} During October and November 2002, Judge John Stuard presided over Jackson's capital-murder trial.  Before a jury, the state presented numerous witnesses establishing the facts.  The defense presented three witnesses whose testimony revealed that documents for most of the property shared by Roberts and Fingerhut named Roberts as the owner.  This evidence was intended to undermine the financial motive for the killing asserted by the state.  The jury found Jackson guilty as charged.

{¶ 16} At the conclusion of the penalty phase, the jury recommended death, and the court imposed the death sentence on Jackson.

{¶ 17} On January 4, 2006, we affirmed the verdict and sentence on Jackson's direct appeal.  107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362.

4

January Term, 2016

*B. Roberts's trial and direct appeal*

{¶ 18} In May and June 2003, Judge Stuard presided over the capital-murder trial of Donna Roberts.  A jury found Roberts guilty of the aggravated murder of Fingerhut and other offenses, and she was sentenced to death.

{¶ 19} On August 2, 2006, we affirmed Roberts's convictions, including the convictions regarding aggravated murder and both death-penalty specifications. *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168 ("*Roberts I*").  But we vacated the death sentence and remanded the case to the trial court because the judge had enlisted the assistant county prosecutor who tried the case to participate in drafting the sentencing opinion, and in doing so, had engaged in improper ex parte communications.  *Id.* at ¶ 153-164.  (Although Judge Stuard also presided over Jackson's trial, no allegation was raised in Jackson's direct appeal to this court that the prosecutor participated in drafting the sentencing opinion or engaged in ex parte communications with the judge during that trial, and our January 2006 opinion affirming Jackson's convictions and death sentence accordingly did not address any issues of that type.)

{¶ 20} We ordered the following relief in *Roberts I*:

> On remand, the trial judge will afford Roberts her right to allocute, and the trial court shall personally review and evaluate the evidence, weigh the aggravating circumstances against any relevant mitigating evidence, and determine anew the appropriateness of the death penalty as required by R.C. 2929.03.  The trial court will then personally prepare an entirely new penalty opinion as required by R.C. 2929.03(F) and conduct whatever other proceedings are required by law and consistent with this opinion.

*Id.* at ¶ 167.

5

SUPREME COURT OF OHIO

*C. Developments in the aftermath of* Roberts I

{¶ 21} Following *Roberts I*, on August 15, 2006, Jackson filed a motion in the trial court for leave to file a motion for a new sentencing hearing.

{¶ 22} On October 5, 2006, Jackson's attorney filed an affidavit of disqualification against Judge Stuard, seeking to prevent the judge from acting on any further trial or postconviction proceedings. On November 29, 2006, Chief Justice Moyer denied that affidavit, stating:

> Judge Stuard has responded in writing to the affidavit. He acknowledges that he held the same kind of communications with the prosecuting attorney's office in both the Roberts and Jackson capital cases before sentencing each of them to death * * *. The judge states that he is prepared to reconsider the evidence and impose a new sentence in this case just as he has been ordered to do in the related Roberts case. He contends that his ex parte communications with the prosecuting attorney's office were administrative rather than substantive, and he states that the prosecuting attorney's office simply typed up his notes after he had independently weighed the evidence and reached a decision about the proper sentences for the two defendants.

> I find no basis for ordering the disqualification of Judge Stuard. The judge is entitled to consider the defendant's motion for relief from judgment now pending in the trial court, and if the judge concludes that relief is appropriate, he may grant that motion and conduct the new sentencing hearing * * *.

*In re Disqualification of Stuard*, 113 Ohio St.3d 1236, 2006-Ohio-7233, 863 N.E.2d 636, ¶ 4-5.

6

January Term, 2016

{¶ 23} On February 15, 2008, Judge Stuard granted Jackson's motion for leave to file a motion for a new sentencing hearing.  On February 29, 2008, Jackson filed a motion "for a new trial and/or sentencing hearing" on the grounds that the prosecution impermissibly collaborated in the drafting of the sentencing opinion.

{¶ 24} On May 12, 2008, Jackson's attorneys filed a second affidavit of disqualification against Judge Stuard, premised on pending disciplinary proceedings that had been brought against Judge Stuard for enlisting the assistant prosecutor to prepare the sentencing opinion in Roberts's case and contending that Judge Stuard had shown his bias by refusing to grant Jackson the same relief that Roberts had received in her case.  On August 20, 2008, Chief Justice Moyer denied that affidavit.

{¶ 25} On January 29, 2009, we publicly reprimanded Judge Stuard for violating the Canons of the Code of Judicial Conduct by engaging in "ex parte communications four times" with the assistant prosecutor "about the sentencing opinion in Roberts's case."  *Disciplinary Counsel v. Stuard*, 121 Ohio St.3d 29, 2009-Ohio-261, 901 N.E.2d 788, ¶ 5, 16.

{¶ 26} On May 4, 2009, Judge Stuard denied Jackson's motion for a new trial or a new sentencing hearing, and Jackson appealed the denial to the Eleventh District.

*D. Remand of Jackson's case for resentencing*

{¶ 27} On October 15, 2010, the court of appeals held that the judge's use of the prosecutor to assist in preparing the sentencing opinion in Jackson's case was improper, vacated the sentence, and remanded for resentencing.  190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221, at ¶ 29, 33.  The court mandated:

In the case at bar, * * * the fact pattern is factually the same as that in *Roberts*.  The record before us establishes that the same drafting procedures involving the sentencing entry that occurred in

7

> *Roberts* took place in the instant matter.  * * *  Based on the Supreme Court of Ohio's holding in *Roberts*, appellant is entitled to the same relief afforded to his co-defendant.  Thus, the trial judge must personally review and evaluate the appropriateness of the death penalty, prepare an entirely new sentencing entry as required by R.C. 2929.03(F), and conduct whatever other proceedings are required by law and consistent with this opinion.

*Id*. at ¶ 29.

### E. Jackson's resentencing hearing

{¶ 28} On August 14, 2012, Judge Stuard conducted Jackson's resentencing hearing.  As a preliminary matter, the judge overruled a defense motion for his voluntary recusal.  He then proceeded with the hearing.  During the hearing, Judge Stuard overruled a defense motion to allow Jackson to present additional mitigating evidence.  Judge Stuard heard Jackson's allocution.  He then sentenced Jackson to death and filed a sentencing opinion pursuant to R.C. 2929.03(F).

### F. Roberts's additional proceedings and appeals

{¶ 29} On remand in Roberts's case, Judge Stuard again sentenced her to death.  Roberts appealed as of right to this court.  On October 22, 2013, we held that the trial court in its sentencing opinion had erred in failing to consider the allocution Roberts made at her resentencing hearing and that this omission rendered the sentencing opinion "so inadequate as to severely handicap our ability to exercise our power of independent review."  *State v. Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, ¶ 69-72 ("*Roberts II*").  We vacated Roberts's death sentence and remanded the case for resentencing.  *Id.* at ¶ 72, 96.

{¶ 30} On April 30, 2014, Judge Ronald Rice resentenced Roberts to death. Her appeal is currently pending in this court in case No. 2014-0989.

### III. Issues on Appeal

{¶ 31} In this appeal, Jackson raises 12 propositions of law.  We will address his propositions out of order for ease of analysis.

*A. Trial judge's impartiality on resentencing* (Proposition of law No. III)

{¶ 32} Jackson argues that he was denied a fair and impartial trial judge on resentencing.

{¶ 33} Judicial bias is defined as

> a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and facts.

*State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 132 N.E.2d 191 (1956), paragraph four of the syllabus.

{¶ 34} Under Article IV, Section 5(C) of the Ohio Constitution, the chief justice or the chief justice's designee has sole authority to determine whether a trial judge is disqualified.  *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 145; *see State v. Moore*, 93 Ohio St.3d 649, 650, 758 N.E.2d 1130 (2001); *Beer v. Griffith*, 54 Ohio St.2d 440, 441, 377 N.E.2d 775 (1978).

### 1. Res judicata

{¶ 35} Jackson renews his claims that Judge Stuard had been unfair and should not have presided over his resentencing hearing.  One of Jackson's arguments is that Judge Stuard delayed ruling on Jackson's motion for a new trial until after a mandamus action was filed against him.  But Chief Justice Moyer considered similar arguments in ruling on Jackson's attorneys' second affidavit of disqualification and determined that the allegations did not establish bias or create

a basis for disqualification. Thus, this claim is res judicata. *Hale* at ¶ 145; *State v. Rogers*, 17 Ohio St.3d 174, 186, 478 N.E.2d 984 (1985), *vacated on other grounds, sub nom. Rogers v. Ohio*, 474 U.S. 1002, 106 S.Ct. 518, 88 L.Ed.2d 452 (1985).

2. Other bias claims

{¶ 36} First, Jackson argues that Judge Stuard demonstrated bias by denying his motion for a new sentencing hearing after Judge Stuard had stated in his response to the first affidavit of disqualification that he was prepared to grant such a motion. In a related argument, Jackson asserts that Judge Stuard displayed bias by refusing to accept this court's rulings in *Roberts I* and in the disciplinary action taken against him.

{¶ 37} In his affidavit filed in the first disqualification attempt, Judge Stuard stated that he had "essentially the same type of communications" with the assistant prosecutors in both the *Roberts* and *Jackson* cases. Jackson characterizes Judge Stuard's acknowledgement of wrongdoing as implicitly representing that he would cure the error. But Jackson asserts that Judge Stuard refused to concede any wrongdoing during the resentencing hearing when the judge stated, "You are all aware of the reason why this case is back here. The Supreme Court I think misunderstood what occurred, but they have made their ruling and I must abide by that." Jackson asserts that the judge then violated his implicit promise to cure the error by filing an almost identical copy of his prior sentencing opinion.

{¶ 38} In support of this claim, Jackson relies on Judge Cannon's concurring opinion in the case in which the Eleventh District remanded the matter for resentencing. In that opinion, Judge Cannon stated:

> My decision that the trial judge should conduct a new sentencing hearing is based, in large measure, upon the representations made to the Supreme Court of Ohio by the trial judge. More than one affidavit to disqualify the trial judge was filed

January Term, 2016

in this case.  In November 2006, the trial judge filed an affidavit in response, opposing disqualification.  In that affidavit, the trial judge acknowledged doing the same thing in this case that he did in *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, wherein the trial judge was ordered to conduct a new sentencing hearing.  * * *

* * *

Because he acknowledged doing the same thing that resulted in prejudicial error in the *Roberts* case, the trial judge conceded prejudicial error in Jackson's case.  And, by opposing disqualification, the trial judge implicitly represented that he could remain on the case for purposes of curing that error.  Given the circumstances, it would appear that the trial judge recognized that he would be required to do the same thing he was ordered to do in *Roberts*, regardless of the nature of the proceedings (whether postconviction or direct appeal), if he were permitted to remain on the case.

190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221, at ¶ 35, 41 (Cannon, J., concurring).

{¶ 39} Judge Cannon in his concurrence explained his rationale for vacating Jackson's sentence and remanding the cause for resentencing.  Yet none of Judge Cannon's remarks were made in the context of a claim of judicial bias.  Thus, his concurring opinion does not support Jackson's bias claim.

{¶ 40} Despite his bias claims, Jackson fails to show that Judge Stuard displayed "a hostile feeling or spirit of ill will" toward him.  *Pratt*, 164 Ohio St. 463, 132 N.E.2d 191, at paragraph four of the syllabus.  Moreover, Judge Stuard's failure to provide the relief that Jackson believes was warranted does not establish

11

SUPREME COURT OF OHIO

actual bias.  *See In re Disqualification of Floyd*, 135 Ohio St.3d 1249, 2012-Ohio-6336, 986 N.E.2d 10, ¶ 10 (the fact that a trial judge's decision "was reversed in a critical opinion by the appeals court does not imply that she will be biased against [the appellants] or somehow retaliate against them").  Thus, these claims lack merit.

{¶ 41} Second, Jackson claims that the judge was biased during the resentencing proceedings, because he refused to consider new mitigating evidence.  The court of appeals directed Judge Stuard on remand to provide Jackson with "the same relief afforded to" Roberts.  190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221, at ¶ 29.  Roberts was not allowed to introduce new mitigating evidence during her resentencing proceedings, and Judge Stuard approached Jackson's resentencing in the same fashion.  *See Roberts II*, 137 Ohio St.3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, at ¶ 41-43 (holding that Judge Stuard acted appropriately in not permitting Roberts to introduce new mitigation evidence).  Accordingly, Judge Stuard's rulings in Jackson's case were not inconsistent with the court of appeals' directive and did not display bias.

{¶ 42} Third, Jackson argues that the judge exhibited bias by failing to consider his allocution before sentencing him to death.  As will be discussed regarding proposition of law No. IV, the trial court erred by failing to discuss Jackson's allocution in the R.C. 2929.03(F) sentencing opinion.  But that error does not prove that Judge Stuard harbored a hostile feeling or a spirit of ill will against Jackson or his attorneys during the proceedings.  Accordingly, Jackson fails to demonstrate that any omissions from the sentencing opinion resulted from judicial bias.

{¶ 43} Finally, Jackson argues that Judge Stuard's bias denied him due process in violation of the Fourteenth Amendment to the United States Constitution.  Due process requires that a criminal defendant be tried before an impartial judge.  *State v. LaMar*, 95 Ohio St.3d 181, 2002-Ohio-2128, 767 N.E.2d 166, ¶ 34.  If the record evidence indicates that the trial was infected by judicial

12

bias, the remedy is a new trial.  *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, 937 N.E.2d 97, ¶ 2.

{¶ 44} Again, Jackson fails to demonstrate that Judge Stuard had actual bias and acted with "ill will" or formed "a fixed anticipatory judgment" against him. *See Pratt*, 164 Ohio St. 463, 132 N.E.2d 191, at paragraph four of the syllabus; *see also Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).  Therefore, this claim also lacks merit.

{¶ 45} Based on the foregoing, we reject proposition of law No. III.

*B. Final, appealable order and sentencing opinion's compliance with R.C.*
*2929.03(F)* (Proposition of law No. I)

{¶ 46} Jackson argues that this court lacks jurisdiction to hear his appeal because the trial court's sentencing opinion was defective and not completed as R.C. 2929.03(F) requires.  This court lacks jurisdiction over orders that are not final and appealable.  *See* Ohio Constitution, Article IV, Section 3(B)(2); R.C. 2953.02.

{¶ 47} Crim.R. 32(C) prescribes the requirements for a final, appealable order in a criminal case.  The rule in effect at the time of Jackson's resentencing stated:

> A judgment of conviction shall set forth the plea, the verdict, or findings, upon which each conviction is based, and the sentence. Multiple judgments of conviction may be addressed in one judgment entry.  If the defendant is found not guilty or for any other reason is entitled to be discharged, the court shall render judgment accordingly.  The judge shall sign the judgment and the clerk shall enter it on the journal.  A judgment is effective only when entered on the journal by the clerk.

SUPREME COURT OF OHIO

Former Crim.R. 32(C) (2009), 122 Ohio St.3d C.  Accordingly, this court has held that "a judgment of conviction is a final order subject to appeal under R.C. 2505.02 when the judgment entry sets forth (1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk."  *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, ¶ 14.

{¶ 48} As a general matter, "[o]nly one document can constitute a final appealable order," meaning that a single entry must satisfy the requirements of Crim.R. 32(C).  *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, ¶ 17.  But there is an exception for capital cases, in which R.C. 2929.03(F) requires the court or panel to file a sentencing opinion.  *State v. Ketterer*, 126 Ohio St.3d 448, 2010-Ohio-3831, 935 N.E.2d 9, syllabus and ¶ 17-18.  In those cases, "a final, appealable order consists of both the sentencing opinion filed pursuant to R.C. 2929.03(F) and the judgment of conviction filed pursuant to Crim.R. 32(C)."  *Id.* at syllabus.

{¶ 49} On August 14, 2012, the trial court issued a sentencing opinion, as R.C. 2929.03(F) requires.  In the opinion, the trial court stated the jury's verdict and sentenced Jackson to death on the merged capital counts.  On the same date, the trial court filed a separate judgment entry imposing sentence for the noncapital counts.  On August 16, 2012, the trial court entered a nunc pro tunc entry to correct various clerical errors that were present in the judgment entry.  The sentencing opinion, the judgment entry, and the nunc pro tunc entry were signed by the judge and journalized.  Together, these documents comply with the requirements of Crim.R. 32(C) and constitute a final, appealable order.  *See State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 40.

{¶ 50} Jackson argues that there is no final, appealable order because the trial court's sentencing opinion failed to comply with R.C. 2929.03(F).  Jackson claims that these defects included (1) the trial judge's announcement during the

14

January Term, 2016

sentencing hearing that he had already drafted the sentencing opinion, (2) the sentencing opinion's omission of any consideration of new mitigating evidence and of new mitigating factors that Jackson attempted to raise at the resentencing hearing, and (3) the cumulative effect of those errors.

{¶ 51} In *Thompson*, which was also a capital case, this court addressed the argument that there was no final, appealable order because the sentencing opinion contained an error.  In that case, the trial court's sentencing opinion mistakenly referred to a five-year sentence on a noncapital count that the court had previously dismissed but then purportedly merged with a lower-degree felony.  *Id*. at ¶ 44-45. This court in rejecting Thompson's argument that there was no final, appealable order stated, " '[S]entencing errors are not jurisdictional.' "  *Id.* at ¶ 45, quoting *Manns v. Gansheimer*, 117 Ohio St.3d 251, 2008-Ohio-851, 883 N.E.2d 431, ¶ 6. "Instead, sentencing errors can be remedied on appeal in the ordinary course of law." *Thompson* at ¶ 45.

{¶ 52} Jackson's challenge to the sentencing opinion involves capital offenses rather than the noncapital offenses that were at issue in *Thompson*, but the difference in the nature of these claims makes no difference in whether there is a final, appealable order in compliance with Crim.R. 32(C).  Accordingly, as in *Thompson*, we have jurisdiction over Jackson's appeal, and we reject proposition of law No. I.

*C. Exclusion of mitigating evidence on limited remand* (Proposition of law No. V)

{¶ 53} Jackson argues that the trial court erred by precluding the defense from presenting mitigating evidence on remand.

1. Facts

{¶ 54} Before the resentencing hearing, Jackson filed a motion to permit the defense to present additional mitigating evidence.  The trial court denied that motion.

15

SUPREME COURT OF OHIO

{¶ 55} After the motion was denied, the defense proffered three volumes of mitigating evidence.  This included Ohio death-penalty statistics and information about the racial composition of juries in death-penalty cases; Jackson's school records; Jackson's criminal and probation records; psychological testing information; police reports completed following Fingerhut's murder; a psychological report, dated November 12, 2002, prepared by Dr. Sandra McPherson, who evaluated Jackson prior to the mitigation phase of his trial; affidavits from Jackson's friends and family members; documentation of medical concerns about Ohio's lethal-injection protocol; and Jackson's affidavit, dated May 20, 2004, expressing dissatisfaction about his trial counsel's representation.

2. Analysis

{¶ 56} Under the Eighth Amendment to the United States Constitution, the sentencer in a capital case may "not be precluded from considering, *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." (Emphasis sic.)  *Lockett v. Ohio*, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion).  Moreover, "[j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law,* any relevant mitigating evidence." (Emphasis sic.)  *Eddings v. Oklahoma*, 455 U.S. 104, 113-114, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); s*ee also Hitchcock v. Dugger*, 481 U.S. 393, 398-399, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).

{¶ 57} In *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), the court held that a capital defendant had an Eighth Amendment right to introduce, at his sentencing hearing, "testimony * * * regarding his good behavior during the over seven months he spent in jail awaiting trial."  *Id*. at 4.  This was relevant "evidence in mitigation" because

16

January Term, 2016

the jury could have drawn favorable inferences from this testimony regarding petitioner's character and his probable future conduct if sentenced to life in prison.  * * *  [T]here is no question but that such inferences would be "mitigating" in the sense that they might serve "as a basis for a sentence less than death."  * * *  [E]vidence that the defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating.  Under *Eddings*, such evidence may not be excluded from the sentencer's consideration.

(Footnote omitted.)  *Id*. at 4-5, quoting *Lockett* at 604.

{¶ 58} The United States Supreme Court has not determined that a capital defendant has a categorical constitutional right to introduce new mitigation evidence that is discovered after a sentencing hearing in which the defendant was given an opportunity to present all the mitigation evidence he desired.  That court has also not resolved whether a remand for a limited resentencing in a capital case that effectively excludes the presentation of newly discovered mitigation evidence is constitutionally invalid.  *See State v. Berget*, 2014 S.D. 61, 853 N.W.2d 45, ¶ 32.

{¶ 59} Jackson invokes *Davis v. Coyle*, 475 F.3d 761 (6th Cir.2007) ("*Coyle*"), in arguing that the trial court violated his constitutional rights by denying his motion to fully present mitigation at the resentencing hearing.  Jackson asserts that the Eighth Amendment, as interpreted by *Lockett* and its progeny, entitled him to present the evidence on remand.

{¶ 60} In *State v. Davis*, 63 Ohio St.3d 44, 584 N.E.2d 1192 (1992), a three-judge panel excluded posttrial mitigation evidence during a defendant's resentencing hearing.  On appeal, we held that neither *Lockett*, *Eddings*, *Skipper*, nor *Hitchcock* entitled the defendant to present the evidence on remand.  *State v. Davis* at 46.  We distinguished *Skipper* by noting that it involved the erroneous

17

exclusion of "evidence of Skipper's good prison record *between his arrest and trial*." (Emphasis sic.) *Id*.

{¶ 61} The United States Court of Appeals for the Sixth Circuit later addressed this issue in habeas corpus proceedings involving the *Davis* case.  In *Coyle*, the Sixth Circuit held that the three-judge panel's decision to exclude posttrial mitigation evidence from Davis's resentencing hearing violated his Eighth Amendment rights.  *Id*. at 773.  The Sixth Circuit stated that this court's affirmance of that ruling in *State v. Davis*, "based on the court's belief that the facts of Davis's case could be distinguished from *Skipper*'s solely on the basis of timing, was both an unreasonable application of the decision in *Skipper* and contrary to the holding in that opinion and its antecedent cases." *Id*.  The *Coyle* court concluded that "the holding in *Skipper* * * * requires that, at resentencing, a trial court must consider any new evidence that the defendant has developed since the initial sentencing hearing." *Id*. at 774, citing *Skipper*, 476 U.S. at 8, 106 S.Ct. 1669, 90 L.Ed.2d 1.

{¶ 62} In *Roberts II*, 137 Ohio St.3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, at ¶ 39, we declined to apply *Coyle* and rejected claims that the trial court's failure to admit mitigating evidence during the resentencing hearing violated Roberts's Eighth Amendment rights.  As discussed earlier, this court in *Roberts I* affirmed Roberts's convictions, but we remanded for limited resentencing because the trial judge engaged in ex parte communications with the prosecutor in drafting the sentencing opinion. *Roberts I*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 153-164.  On remand, Roberts filed a motion to introduce new mitigating evidence, but the trial judge denied that motion and resentenced Roberts to death. *Roberts II* at ¶ 12-13.

{¶ 63} In *Roberts II*, we emphasized that *Coyle* was not binding precedent, because "we are 'not bound by rulings on federal statutory or constitutional law made by a federal court other than the United States Supreme Court.' " *Roberts II* at ¶ 33, quoting *State v. Burnett*, 93 Ohio St.3d 419, 424, 755 N.E.2d 857 (2001).

18

January Term, 2016

But we considered whether *Coyle* was persuasive and on point in the case before us. This court in *Roberts II* then distinguished *Lockett*, *Eddings*, *Skipper*, and *Hitchcock* on the grounds that none of those cases involved "a proceeding on remand for the limited purpose of correcting an error that occurred *after* the defendant had had a full, unlimited opportunity to present mitigating evidence to the sentencer." (Emphasis sic.) *Roberts II* at ¶ 34.

{¶ 64} We concluded:

> In a case in which the defendant was not deprived of any constitutional right—including her Eighth Amendment right to present mitigation—at the time of her mitigation hearing, there seems to be no basis for requiring the trial court to reopen or supplement that evidence in a later proceeding. To hold, as *Coyle* does, that a new mitigation hearing must be held, even though no constitutional error infected the original one, would transform the right to present relevant mitigation into a right to *update* one's mitigation. Such a right has no clear basis in *Lockett* or its progeny.

(Emphasis sic.) *Roberts II* at ¶ 36.

{¶ 65} Jackson argues that the opinion in *Roberts II* "failed to acknowledge that other federal courts of appeals have reached the same conclusion" that the Sixth Circuit reached in *Coyle*. But that is incorrect. The opinion in *Roberts II* cited United States Court of Appeals decisions from the Ninth and Eleventh Circuit Courts of Appeals that were in accord with *Coyle*. *Roberts II* at ¶ 32, citing *Creech v. Arave*, 947 F.2d 873, 881-882 (9th Cir.1991) (en banc), and *Spaziano v. Singletary*, 36 F.3d 1028, 1032-1035 (11th Cir.1994). More importantly, those decisions do not change the fact that the United States Supreme Court has not ruled on this issue.

19

SUPREME COURT OF OHIO

{¶ 66} Jackson also argues that like the petitioner in *Coyle*, he suffered actual prejudice by not being allowed to present information as to his exemplary behavior in prison.  During allocution, Jackson stated, "I haven't been in any trouble since I have been on death row since 2007 and that was a little minor situation, but I haven't been in any trouble or anything since then.  * * *  I have learned to adjust to the environment without any problem."  Jackson proffered no other evidence relative to his good behavior in prison.

{¶ 67} In *Coyle*, the Sixth Circuit noted that although neither side was permitted to introduce new evidence during the resentencing hearing, the state had argued to the trial court that Davis's status as a repeat offender made him too dangerous to be sentenced to anything other than death.  *Coyle*, 475 F.3d at 772-773.  In rebuttal, Davis relied upon evidence presented at his first sentencing hearing, but he was not allowed to present testimony about his most recent behavior and adjustment to prison life.  *Id*. at 773.  The court in *Coyle* held that the testimony Davis was prevented from presenting was "highly relevant" and should have been allowed.  *Id*.

{¶ 68} The facts in *Coyle* are distinguishable from what occurred during Jackson's resentencing hearing.  The prosecutor at that hearing made no argument in favor of the death penalty.  Thus, unlike *Coyle*, Jackson had no arguments to rebut.  Moreover, it is unclear what other evidence about good prison behavior (besides his statement in allocution) Jackson could have presented.  Accordingly, *Coyle* does not support Jackson's claim that his constitutional rights were violated because he was not allowed to present evidence about his prison behavior.

{¶ 69} Jackson also argues that he should have been allowed to present new mitigating evidence about his background because evidence presented during his original sentencing hearing was inaccurate.  Jackson asserts that during his mitigation hearing, information was presented indicating that he was a good student, had a positive upbringing, and had average intellectual ability with an IQ

20

January Term, 2016

score of 84.  Jackson states that the court should have considered additional information during the resentencing proceedings that showed that his mother was an alcoholic, he grew up in a bad neighborhood marked by violent crime and drug addiction, he was a poor student with severe behavioral issues and borderline intelligence, and his IQ score of 84 was inaccurate.

{¶ 70} Jackson argues that mitigating evidence pertaining to his background was presented in a different light than it should have been during the sentencing phase of his jury trial.  Yet Jackson was given a full opportunity to present mitigating evidence during his initial sentencing hearing.  Accordingly, Jackson was not entitled to improve or expand his mitigating evidence simply because the court of appeals required the judge to resentence him and prepare a new sentencing opinion.  *See Roberts II*, 137 Ohio St.3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, at ¶ 36; *State v. Chinn*, 85 Ohio St.3d 548, 564-565, 709 N.E.2d 1166 (1999).  We reject this claim.

{¶ 71} In a recent decision, the South Dakota Supreme Court also held that a capital defendant does not have an Eighth Amendment right to present updated mitigation evidence on resentencing.  *Berget*, 2014 S.D. 61, 853 N.W.2d 45, at ¶ 45-46.  The court in *Berget* considered and compared the reasoning underlying *Coyle* and *Roberts II* and determined that *Roberts II* is the more persuasive authority.  *Berget* at ¶ 38.

{¶ 72} As to claims similar to those raised by Jackson, the *Berget* court reasoned that recognizing a defendant's right to present updated mitigation in this situation "would establish the incentive to turn a limited resentencing into a full-fledged, second sentencing hearing by seeking out all newly discoverable mitigation evidence conceivable, again no longer making the original sentencing proceeding the ' "main event" ' but consigning it to a mere ' "tryout on the road." ' " *Id.* at ¶ 45, quoting *Gregory v. Solem*, 449 N.W.2d 827, 833 (S.D.1989), quoting *Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).  The

21

SUPREME COURT OF OHIO

*Berget* court added, "It is also more than conceivable that Berget may claim new, positive relationships with family members, fellow prisoners, or strangers for the remainder of his life if this Court permits each assertion of a relationship to be grounds for a new sentencing hearing or grounds for ignoring our limited remand instructions." *Id.*

### 3. Conclusion

{¶ 73} No binding authority holds that the Eighth Amendment requires a resentencing judge to accept and consider new mitigation evidence at a limited resentencing when the defendant had the unrestricted opportunity to present mitigating evidence during his original mitigation hearing. Accordingly, we adhere to our precedent in *Roberts II* and reject proposition of law No. V.

### D. Failure to discuss allocution in the sentencing opinion
(Proposition of law No. VI)

{¶ 74} Jackson argues that the trial court failed to consider his allocution in determining his sentence.

### 1. Facts

{¶ 75} At the resentencing hearing on August 14, 2012, the trial court asked trial counsel if they had anything further to say. Counsel indicated that Jackson wanted to make a statement. Jackson then said:

> Your Honor, I would just like to say, doing my time in Trumbull Correctional, I went down there and obtained a certificate in basic skills computer class and I passed advanced class and also became a tutor down there and also got a certificate in the music program, and I was trying to get into other different programs that they have down there. I haven't been in any trouble since I have been on death row since 2007 and that was a little minor situation, but I haven't been in any trouble or anything since then, Your

22

January Term, 2016

Honor.  Since I have been off of death row, I understand a lot of things.  In a different situation and different environment I was in, I have learned to adjust to the environment without any problem, Your Honor.

{¶ 76} The trial court stated, "I accept what you are saying" and then also afforded Jackson the opportunity to speak before pronouncing the sentence. Jackson said, "I feel that doing my time, I have learned to find myself and I know who I am right now, and * * * I wouldn't like to be placed back on death row.  I really wouldn't."

{¶ 77} The trial court filed the sentencing opinion on the same afternoon, after the resentencing hearing concluded.  The trial court stated in the sentencing opinion that it had considered "the relevant evidence raised at trial, the relevant testimony, the other evidence, the unsworn statement of the Defendant, and the arguments of counsel."  The sentencing opinion did not mention Jackson's allocution.

### 2. Analysis

{¶ 78} Jackson argues that the trial court's failure to mention his allocution in its sentencing opinion shows that it was not considered.

{¶ 79} In *Roberts II*, the trial court did not discuss the defendant's allocution in its sentencing opinion.  137 Ohio St.3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, at ¶ 52-53.  In reviewing this omission, we stated in *Roberts II*:

We have previously rejected claims that a trial court's failure to *mention* particular mitigating factors in a sentencing opinion obliges a reviewing court to infer that the trial court failed to *consider* those factors.  " * * *  While a sentencing court must

23

SUPREME COURT OF OHIO

> consider all evidence of mitigation, it need not discuss each
> [allegedly mitigating] factor individually."

(Emphasis and brackets sic.)  *Id*. at ¶ 54, quoting *State v. Phillips*, 74 Ohio St.3d 72, 102, 656 N.E.2d 643 (1995), citing *Parker v. Dugger*, 498 U.S. 308, 314-315, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991).  In *Roberts II*, we held that "the particular circumstances" of the case warranted "the inference that the trial judge did, in fact, fail to consider Roberts's allocution in sentencing her to death."  *Id*. at ¶ 55.

{¶ 80} In *Roberts II*, allocution was "the *only* relevant matter" in mitigation that Roberts presented during her original sentencing or her resentencing. (Emphasis sic.)  *Id*. at ¶ 56.  Roberts had presented no mitigating evidence during her original trial.  *Id*.  During her allocution on resentencing, however, Roberts presented mitigating information about her childhood abuse and rape, recited her history of mental-health issues, and provided examples of her selflessness and contributions to society.  The latter included her time working in a plastic surgeon's office, her treatment of wounded soldiers in Israel, and her efforts to assist the less fortunate, including making monetary donations.  *Id*. at ¶ 57-61.

{¶ 81} In *Roberts II*, we emphasized "the presence of relevant and potentially significant mitigation in Roberts's allocution" and "the utter lack of anything else offered for the specific purpose of mitigation."  *Id*. at ¶ 64.  In addition, we had specifically called the matter of allocution to the trial judge's attention in remanding the case in *Roberts I*.  *See Roberts II* at ¶ 63, citing *Roberts I*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 166.  In *Roberts II*, we stated, "Given these unusual circumstances, we are justified in drawing the inference that when the trial judge weighed the aggravating circumstances against the mitigating factors he did not consider Roberts's allocution."  *Id*. at ¶ 64.  We concluded that this failure violated the Eighth Amendment.  *Id*. at ¶ 65, 69.

24

January Term, 2016

{¶ 82} In reviewing potential remedies, we acknowledged in *Roberts II* that this court's independent reweighing can sometimes rectify an error in the sentencing opinion.  *Id*. at ¶ 69, citing *Phillips*, 74 Ohio St.3d at 102, 656 N.E.2d 643.  Yet in *Roberts II*, we concluded that the sentencing opinion was "so inadequate as to severely handicap our ability to exercise our power of independent review," and we vacated the sentence of death.  *Id*. at ¶ 72.  We ordered the trial court on remand to consider the entire record again, including Roberts's allocution, to determine whether the aggravating circumstances outweigh the mitigating factors and then to write and file a sentencing opinion pursuant to R.C. 2929.03(F).  *Id*. at ¶ 73.

{¶ 83} In remanding Jackson's case for resentencing, the court of appeals stated, "Based on the Supreme Court of Ohio's holding" in *Roberts I*, Jackson "is entitled to the same relief afforded to his co-defendant."  190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221, at ¶ 29.  Jackson's remand proceedings involved the same judge, who did not mention Jackson's allocution in his resentencing opinion.  Although our decision in *Roberts II* was announced more than a year after Jackson's resentencing occurred, we conclude that the trial court should have considered Jackson's allocution in the resentencing opinion.

3. Remedy

{¶ 84} We now turn to the question of how to remedy the error.  We have previously stated that even if a trial court " 'should have more explicitly analyzed the mitigating evidence,' this court's independent reweighing will rectify the error."  *Phillips* at 102, quoting *State v. Lott*, 51 Ohio St.3d 160, 171, 555 N.E.2d 293 (1990).  In *State v. Maurer*, 15 Ohio St.3d 239, 473 N.E.2d 768 (1984), we used independent review to rectify a trial court's failure to enunciate its reasoning.  There, we observed that the very purpose of an independent appellate review of death sentences is, "at least in part, to correct such omissions."  *Id*. at 247.

SUPREME COURT OF OHIO

{¶ 85} In sharp contrast to *Roberts I*, Jackson presented extensive mitigating evidence during his original sentencing hearing. Jackson's mother and three other family members testified about his upbringing. *See* 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362, at ¶ 164-167. Dr. Sandra McPherson, a clinical and forensic psychologist, provided testimony about Jackson's poor school record, parental neglect, serious behavioral problems, IQ scores, and early drug use and alcohol dependency. *Id*. at ¶ 169-175. Jackson also made an unsworn statement and apologized for what happened to the victim. *Id*. at ¶ 176.

{¶ 86} Unlike the situation in *Roberts II*, Jackson's allocution during his resentencing hearing added little to the mitigation that was already before the court. Jackson told the court at his resentencing hearing that he had obtained educational certificates, had served as a tutor, and had not been in any serious trouble either on or off death row. Jackson claims that the court's failure to consider his good prison behavior was especially prejudicial. Evidence had established, however, that Jackson and Roberts planned Fingerhut's death while Jackson was in prison earlier. Under these circumstances, it is doubtful that Jackson's claim about his adaptation to prison life could have carried much weight. We hold that any omissions in the sentencing opinion were harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

{¶ 87} Based on the foregoing, we decline to remand this case for a new sentencing opinion. Instead, we shall cure any error in the sentencing opinion during our independent evaluation of Jackson's capital sentence.

*E. Prosecutorial taint of the sentencing opinion* (Proposition of law No. VII)

{¶ 88} Jackson argues that the similarities between the 2002 and 2012 sentencing opinions show that the 2012 sentencing opinion remains "tainted" by the prosecutor's involvement. He contends, therefore, that the case should be remanded to the trial court to write an entirely new sentencing opinion.

26

January Term, 2016

1. Facts

{¶ 89} On December 9, 2002, Judge Stuard filed a death-penalty sentencing opinion following Jackson's trial.  The Eleventh District later ordered the trial court to "personally review and evaluate the appropriateness of the death penalty" and "prepare an entirely new sentencing entry as required by R.C. 2929.03(F)."  190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221, at ¶ 29.

{¶ 90} On August 14, 2012, Judge Stuard filed a new sentencing opinion after resentencing Jackson to death.  In that opinion, Judge Stuard stated:

> This writer has presided over the trial of each of the Co-Defendants, Nathaniel Jackson and Donna Roberts.  He has reviewed and decided the appropriateness of the death penalty option in both cases as required by O.R.C. 2929.03 and now does so again as ordered by the Ohio Supreme Court.

{¶ 91} The 2002 and 2012 sentencing opinions are very similar.  The 2002 sentencing opinion summarized the trial-phase evidence, discussed the aggravating circumstances and mitigating evidence, and explained why the trial court concluded that "the aggravating circumstances, outweighed, by proof beyond a reasonable doubt, the collective mitigating factors."  The 2012 sentencing opinion added three new introductory paragraphs explaining the reasons for Jackson's resentencing proceedings.  Two other paragraphs were rewritten to discuss the trial-phase evidence in a different way.  Otherwise, the two opinions are almost identical.

2. Analysis

{¶ 92} Jackson argues that Judge Stuard's failure to write an entirely new sentencing opinion shows that the 2012 opinion remains impermissibly tainted by the prosecutor's earlier involvement.  He asserts that a few cosmetic changes from the old to the new sentencing opinion did not remove that taint.

27

SUPREME COURT OF OHIO

{¶ 93} In his 2012 sentencing opinion, Judge Stuard acknowledged his responsibility to review and decide the appropriateness of the death penalty anew. Nothing in the remand directed Judge Stuard to totally deconstruct the sentencing opinion in preparing a new one.  Moreover, Judge Stuard had before him the same mitigating evidence, except for the information conveyed in Jackson's 2012 allocution, in 2002 and 2012.  This helps explain the similarities between the two opinions.

{¶ 94} Jackson presents no additional evidence showing that prosecutorial taint from the 2002 sentencing opinion carried over to the 2012 sentencing opinion. Indeed, during oral argument, Jackson's counsel acknowledged that the prosecutor was not involved in writing the new sentencing opinion.  Accordingly, Jackson has failed to overcome the presumption that the judge was "capable of separating what may properly be considered from what may not be considered" and followed the law.  *In re Disqualification of Forsthoefel*, 135 Ohio St.3d 1316, 2013-Ohio-2292, 989 N.E.2d 62, ¶ 9, citing *In re Disqualification of George*, 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5.  Under these circumstances, it is unnecessary for the trial court to prepare a third sentencing opinion because of similarities in wording between the second and first sentencing opinions.

{¶ 95} Based on the foregoing, we reject proposition of law No. VII.

*F. Failure to have two appointed attorneys at the resentencing hearing*

(Proposition of law No. IV)

{¶ 96} Jackson argues that the trail court's failure to ensure that two appointed attorneys represented him at his resentencing hearing violated his rights to effective assistance of counsel and due process.

{¶ 97} To establish ineffective assistance of counsel, Jackson must show that his trial counsel's performance was both deficient and prejudicial.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989).  With respect to

28

January Term, 2016

deficiency, Jackson must show that his counsel's performance "fell below an objective standard of reasonableness." *Strickland* at 688.  With respect to prejudice, Jackson must show that there is a reasonable probability that but for his counsel's unprofessional errors, the outcome of the proceeding would have been different. *Id*. at 694.

### 1. Facts

{¶ 98} On August 1, 2012, Randall Porter, an assistant state public defender, submitted a motion requesting the trial court to appoint two attorneys, including himself, for resentencing purposes.  He also filed a motion for a continuance.  Porter stated that he was familiar with the record and had represented Jackson for eight years.  Porter stated that attorney John Parker had been serving as "volunteer counsel" for Jackson for the previous five years, but Porter also stated that Parker could not accept an appointment, because Parker had been appointed to represent Jackson in his federal habeas proceedings.  On August 13, the trial court denied the motion for a continuance.

{¶ 99} At the resentencing hearing on August 14, Porter and Parker appeared before the court.  As a preliminary matter, Porter stated that Jackson "today is technically here without appointed counsel.  I'm not appointed for this matter."  The trial court responded:

> We are not here because of pending charges against Mr. Jackson. We are here solely as a result of the appeal that was filed from the original trial.  Therefore, it appears to me that you are the appropriate counsel.  This Court need not reappoint you.  You are merely handling the appeal process for Mr. Jackson.  Otherwise we wouldn't be here.

SUPREME COURT OF OHIO

{¶ 100} Parker then told the court that he had "never been appointed in state court to represent Mr. Jackson."  Parker stated, "I have only been appointed to represent him on that federal [habeas] petition."  Parker added, "I am here as a courtesy to the Court because I received notice to be here, and I have been involved in Mr. Jackson's case, as a courtesy to Mr. Jackson and the Ohio Public Defender's Office."

{¶ 101} Parker also told the court that he was concerned that there was a conflict between his representation of Jackson in this case and in the federal habeas case.  The trial court responded, "That is something I need not determine.  That is up to you, whatever you are comfortable with."  After some additional discussion, the trial court added, "[It] is up to Mr. Parker.  If he feels there is some conflict, I am not going to insist that he proceed at this time."  Porter and Parker remained in the courtroom, but only Porter spoke during the remainder of the resentencing hearing.

## 2. Analysis

### a. Conflict of interest

{¶ 102} Jackson argues that Parker could not represent him during the resentencing proceedings due to a potential conflict of interest.  In order to satisfy a Sixth Amendment claim of ineffective assistance of counsel, Jackson must demonstrate that an actual conflict of interest adversely affected his counsel's actual performance.  *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *State v. Manross*, 40 Ohio St.3d 180, 182, 532 N.E.2d 735 (1988). Jackson invokes *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012), in arguing that Parker's "potential conflict" disqualified him from representing Jackson during the resentencing proceedings.

{¶ 103} In *Martinez* at 9, the United States Supreme Court recognized a "narrow exception" to the rule established in *Coleman v. Thompson*, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), that defendants possess no federal

30

January Term, 2016

constitutional right to the effective assistance of counsel in postconviction proceedings.  The court in *Martinez* held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez* at 17.

{¶ 104} *Martinez* is directed toward federal habeas proceedings and is intended to address issues that arise in that context.  *Howell v. State*, 109 So.3d 763, 774 (Fla.2013).  Similarly, Jackson's arguments regarding the alleged "conflict of interest" are primarily directed toward future federal proceedings and the possibility of raising ineffectiveness claims based on *Martinez* in that forum.  *See Howell* at 773.  But Jackson does not demonstrate that any actual conflict existed at the time of the resentencing hearing.

{¶ 105} Moreover, Jackson does not state with any particularity what adverse effect the claimed conflict had upon his counsel's performance.  He has not cited any specific claims that Parker failed to assert at his resentencing proceeding due to a conflict of interest.  Therefore, we reject this aspect of Jackson's argument.

*b. Appointment of counsel*

{¶ 106} At the time of Jackson's resentencing, former Sup.R. 20(II)(A) required that at least two capitally certified trial attorneys "shall be appointed by the court to represent an indigent defendant" in capital cases.  Former Sup.R. 20(II)(B) required that at least two capitally certified appellate attorneys "shall be

31

SUPREME COURT OF OHIO

appointed by the court to appeal cases where the trial court has imposed the death penalty on an indigent defendant."[1]

{¶ 107} The trial court did not appoint Porter or Parker as counsel for Jackson due to the court's belief that Jackson's resentencing was a continuation of the appellate proceedings that led to the remand. This belief was incorrect. Former Sup.R. 20 had separate requirements for the appointment of counsel during trial and appellate proceedings in capital cases. Moreover, when a case is remanded for resentencing, the trial court "must approach resentencing as an independent proceeding complete with all applicable procedures." *State v. Gray*, 8th Dist. Cuyahoga No. 81474, 2003-Ohio-436, ¶ 12; *State v. Aliane*, 10th Dist. Franklin No. 03AP-840, 2004-Ohio-3730, ¶ 11. Accordingly, the trial court erred in concluding that Jackson was not entitled to the appointment of counsel for purposes of the resentencing proceedings.

{¶ 108} The state argues that the defense requests for appointment of counsel and a continuance were last-minute delaying tactics because the requests were not made until 13 days before resentencing. The state argues, therefore, that if the trial court erred, defense counsel invited it. Under the invited-error doctrine, "a party is not entitled to take advantage of an error that he himself invited or induced the court to make." *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27, citing *Lester v. Leuck*, 142 Ohio St. 91, 50 N.E.2d 145 (1943), paragraph one of the syllabus. The state's reliance on invited error is misplaced, because Jackson was entitled to be represented by two appointed counsel.

---

[1] The provisions governing the appointment of counsel that were formerly contained in Sup.R. 20(II)(A) and (B) are now in the Rules for the Appointment of Counsel in Capital Cases, as Appt.Coun.R. 5.02(A) and 5.03(A), effective February 1, 2015. *See* 141 Ohio St.3d CLXXXIII-CLXXXIV. The former rules have been revised, but the language quoted here from the former rules is substantially similar to the corresponding current provisions in Appt.Coun.R. 5.02(A) and 5.03(A).

32

### c. Lack of prejudice

{¶ 109} The state argues that Jackson was not prejudiced, because Porter and Parker were capitally certified counsel, Parker never formally withdrew from representing Jackson prior to the resentencing hearing and was present at the hearing, and Jackson received appropriate representation up to and during the resentencing hearing. Porter and Parker had represented Jackson on numerous motions, appeals, and other matters related to these offenses. Porter had represented him for eight years, and Parker had represented him since April 2007. The matters in which they had jointly represented Jackson included filing the motion for a new trial or a new sentencing hearing, filing the second application requesting that Chief Justice Moyer disqualify Judge Stuard, filing a complaint for writs of mandamus and procedendo in this court, and filing memoranda opposing the state's motion to set a date for Jackson's resentencing hearing. They also represented Jackson on the appeal to the Eleventh District that resulted in his resentencing. *See* the attorneys listed at the start of 190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221.

{¶ 110} During the resentencing hearing, Porter proffered three volumes of mitigating information into the record, argued that the capital specifications should be merged, informed the court that Jackson would like to make a statement before being sentenced, and asked the trial court to waive costs because of Jackson's indigency.

{¶ 111} In sum, Jackson was represented at the resentencing proceedings by the same counsel who had represented him for the previous several years. Porter and Parker were eminently familiar with Jackson's case, Porter actively engaged in multiple discussions with the trial court and the prosecution, Parker spoke to the trial court and was present in the courtroom, and the record shows that Jackson was capably represented during the resentencing hearing. Under these circumstances,

SUPREME COURT OF OHIO

Jackson was not prejudiced or otherwise denied due process.  We reject proposition of law No. IV.

*G. Ineffective assistance of counsel* (Proposition of law No. II)

{¶ 112} Jackson argues that he was denied effective assistance of counsel because of the last-minute substitution of new counsel for co-counsel during his 2002 mitigation hearing.  As discussed regarding proposition of law No. IV, both deficient performance and prejudice are required to justify reversal based on ineffective assistance of counsel.  *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.

1. Facts

{¶ 113} During the 2002 trial proceedings that ended with the jury finding Jackson guilty, Jackson had been represented by lead counsel, Anthony Consoldane, and co-counsel, James Lewis.  Before the start of mitigation proceedings on November 14, 2002, and out of the jury's presence, the trial court mentioned that Lewis had been in the hospital and stated, "He's back home now, but because he's medicated, does not feel it would be appropriate to appear on the defense team today."

{¶ 114} The trial court asked Consoldane if the defense wanted a continuance.  Consoldane replied, "I have talked with Mr. Jackson and we do not think that any delay at this point would be wise."  Consoldane asked the court to allow attorney Thomas Wright to sit as co-counsel in Lewis's absence.  Consoldane stated that Wright had completed the standard three-day death-penalty seminar but was not certified and had not applied for certification.  The trial court then addressed Jackson:

> THE COURT:  Mr. Jackson, are you in agreement with proceeding without Mr. Lewis being here and having Mr. Wright and Mr. Consoldane?

34

January Term, 2016

THE DEFENDANT:  Yes, Sir, Your Honor.

THE COURT:  [You] understand that I would consider a continuance until probably Monday, if you wished.

THE DEFENDANT:  Yes, Sir.

THE COURT:  You have talked with your attorney and have agreed with him that it is in your best interest to go forward today?

THE DEFENDANT:  Yes, Sir, Your Honor.

The prosecutor then stated that the state would not object if the defense wanted a continuance.

{¶ 115} Following this questioning, the trial court allowed Wright to serve as co-counsel for this part of the proceeding.  Wright participated briefly during the hearing, arguing that Dr. McPherson, the defense psychologist, should be allowed to sit at defense counsel's table while other witnesses testified during the mitigation hearing.  Lewis returned as co-counsel at the next hearing, which was held on November 26, 2002.

{¶ 116} On his direct appeal to this court, Jackson did not raise an ineffectiveness claim based on Wright's representation as substitute co-counsel. But in his initial petition for postconviction relief, he did raise an ineffectiveness claim as to Wright's representation, arguing that Wright was not capitally certified and was new to the case.  *See State v. Jackson*, 11th Dist. Trumbull No. 2004-T-0089, 2006-Ohio-2651, ¶ 139-141.  The trial court rejected that claim, and the court of appeals agreed, stating that "none of the exhibits presented by appellant in support of this claim demonstrate that Attorney Wright was ineffective."  *Id*. at ¶ 140.  The court of appeals also noted that Jackson had rejected an offer to delay the proceedings and had said that he wanted to proceed with attorney Wright.  *Id*. The court of appeals affirmed the trial court's denial of Jackson's petition, and this court denied review.  111 Ohio St.3d 1469, 2006-Ohio-5625, 855 N.E.2d 1258.

35

SUPREME COURT OF OHIO

2. Analysis

*a. Jackson's claims*

{¶ 117} Jackson is not challenging his counsel's performance at the 2012 resentencing hearing. Instead, he claims that he was denied the effective assistance of counsel by the substitution of co-counsel during his 2002 mitigation hearing. Jackson links the substitution of co-counsel to trial counsel's deficient performance at the 2002 hearing in the following respects: (1) attorney Wright was not qualified and lacked any knowledge of Jackson's case, (2) counsel failed to conduct a reasonable sentencing investigation, (3) attorney Consoldane failed to request a continuance to permit an adequate investigation, (4) counsel failed to retain a competent expert because Dr. McPherson's investigation and performance were deficient, and (5) counsel failed to lodge timely objections during the mitigation hearing.

*b. Res judicata*

{¶ 118} Jackson's ineffectiveness claims relating to substitute counsel, trial counsel's failure to request a continuance, and counsel's failure to lodge objections during the mitigation hearing are barred by res judicata. These claims are based entirely on the 2002 hearing. He had different appellate counsel assigned to represent him on his direct appeal. Thus, he could have, and should have, challenged Wright's representation and raised these other claims on direct appeal. *State v. Szefcyk*, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996), syllabus (res judicata bars a defendant from raising and litigating any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial or on a direct appeal).

{¶ 119} In his initial petition for postconviction relief, Jackson also raised many of the ineffectiveness claims that he raises now. He challenged Wright's substitution as co-counsel and argued that Wright was new to the case and unprepared. 11th Dist. Trumbull No. 2004-T-0089, 2006-Ohio-2651, at ¶ 139. The

36

court rejected that claim. *Id*. at ¶ 140. He also challenged the adequacy of the mitigation investigation and Dr. McPherson's competency as an expert. *Id*. at ¶ 102-103, 127-129, 142. He supported these claims with evidence outside the record, including affidavits and other materials. *Id*. at ¶ 78-79, 143-145. The court rejected these claims. *Id*. at ¶ 103, 146. Thus, these related claims are also barred by res judicata. *Szefcyk* at 95.

{¶ **120**} Jackson argues that previous appellate decisions have ceased to have "any vitality," because his death sentence was vacated. This contention is incorrect. His present appeal, like the appeal in *Roberts II*, involves a proceeding on remand for the limited purpose of correcting an error that occurred after the jury's sentencing verdict. Accordingly, any previous issues of this type that were raised or could have been raised during his prior appeals are outside the scope of the remand and further review of them is precluded under the principles of res judicata. *See Roberts II*, 137 Ohio St.3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, at ¶ 95; *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, at ¶ 33.

### c. Invited error

{¶ **121**} The state argues that Jackson's claim can also be rejected based on the invited-error doctrine. As discussed regarding proposition of law No. IV, a party is not entitled to take advantage of an error that he himself invited or induced the trial court to make. *Kline*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, at ¶ 27.

{¶ **122**} Jackson told the trial court during questioning at his 2002 trial that he agreed to proceed with replacement co-counsel during the mitigation hearing. He acknowledged that he had talked with counsel and agreed that it was in his best interest to proceed with the mitigation hearing that day. This court has found invited error when a party asked a trial court to take some action later claimed to be erroneous or affirmatively consented to a procedure that the trial court proposed.

SUPREME COURT OF OHIO

*See State v. Campbell*, 90 Ohio St.3d 320, 324, 738 N.E.2d 1178 (2000).  Here, Jackson affirmatively consented to replacement counsel.  Thus, the invited-error doctrine applies.

{¶ 123} Jackson argues that he lacked the ability to intelligently determine the need for a continuance and accept a replacement attorney.  He bases this argument on evidence that his IQ scores were determined to be in the low 70s in the seventh and tenth grades and that he received an IQ score of 75 during postconviction testing.  But Dr. McPherson during the 2002 mitigation hearing acknowledged the low IQ scores that Jackson had received in school, and she testified that although he had learning disabilities that prevented him from doing well in school, she believed that those earlier tests were not accurate and that he had "average ability."  Given Dr. McPherson's testimony, there is no merit to Jackson's argument seeking to avoid application of the invited-error doctrine.

{¶ 124} Based on the foregoing, we reject proposition of law No. II.

*H. Merger* (Proposition of law No. VIII)

{¶ 125} Jackson argues that the trial court erred by failing to merge (1) the aggravated-burglary and aggravated-robbery aggravating circumstances, (2) the separate aggravated-burglary and aggravated-robbery offenses, and (3) the aggravated-robbery and aggravated-burglary aggravating circumstances with the corresponding felony offenses.

{¶ 126} Prior to sentencing in 2002, the state elected to proceed on Count One (aggravated murder with prior calculation and design) with the accompanying aggravated-burglary and aggravated-robbery aggravating circumstances.  R.C. 2929.04(A)(7).  Jackson therefore was not sentenced on Count Two.  At the resentencing hearing, the trial court overruled a defense motion to merge the aggravating circumstances.  There were also separate counts of aggravated burglary (Count Three) and aggravated robbery (Count Four).

January Term, 2016

{¶ 127} Jackson cites *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, in arguing that the aggravated-burglary and aggravated-robbery aggravating circumstances were one act for the purposes of the merger doctrine.  The lead opinion in *Johnson* stated that R.C. 2941.25(A) requires the sentencing court to first determine "whether it is possible to commit one offense *and* commit the other with the same conduct."  (Emphasis sic.)  *Id*. at ¶ 48.  If the defendant's conduct constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.  *Id*.  The court must then determine whether the offenses were committed by the same conduct.  *Id*. at ¶ 49.  "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged."  *Id*. at ¶ 50.  More recent decisions of this court, including the decision in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, "have rendered the analysis of the *Johnson* lead opinion largely obsolete."  *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 11.

{¶ 128} This court in *Ruff* applied a three-part test under R.C. 2941.25 to determine whether a defendant can be convicted of multiple offenses:

> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation?  An affirmative answer to any of the above will permit separate convictions.  The conduct, the animus, and the import must all be considered.

SUPREME COURT OF OHIO

*Id.* at ¶ 31*; see also id*. at paragraphs one, two, and three of the syllabus.  Moreover, "a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense."  *Id*. at ¶ 26.

{¶ 129} The aggravated-burglary and aggravated-robbery specifications were not subject to merger.  They were dissimilar in import and committed with a separate animus.  The burglary was complete when Jackson entered Fingerhut's residence with the intent to commit murder, theft, or kidnapping.  Jackson committed aggravated robbery when he stole Fingerhut's car after murdering him.  Thus, the aggravated burglary and aggravated robbery were separate offenses, because they did not arise from the same act*. See State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 128; *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 68.

{¶ 130} For the same reasons, we reject Jackson's argument that the separate offenses of aggravated burglary (Count Three) and aggravated robbery (Count Four) should be merged.

{¶ 131} Finally, Jackson argues that the R.C. 2929.04(A)(7) felony-murder aggravating circumstances (Count One, Specifications 1 and 2) should have been merged with the corresponding underlying felony (Counts Three and Four).  This argument relies too heavily on *Johnson* and is without merit.  *See State v. Keene*, 81 Ohio St.3d 646, 668, 693 N.E.2d 246 (1998) ("felony-murder under R.C. 2903.01(B) is not an allied offense of similar import to the underlying felony").

{¶ 132} Based on the foregoing, we reject proposition of law No. VIII.

*I. Lethal injection* (Proposition of law No. X)

{¶ 133} Jackson argues that his death penalty is invalid under the Eighth and Fourteenth Amendments because the state is unable to carry out his execution in a constitutional manner.  The state argues that Jackson waived this claim when he failed to object to the constitutionality of lethal injection before the trial court.

40

We agree that he waived or forfeited his right to challenge the constitutionality of his method of execution. *See State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 377.

{¶ 134} Nonetheless, a forfeited claim will still be considered under plain-error analysis. *Id.* at ¶ 378. A party claiming plain error must show (1) that an error occurred, (2) that the error was obvious, and (3) that the error affected the outcome of the trial. *See State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002); Crim.R. 52(B). Moreover, the burden of demonstrating plain error is on the party asserting it. *See, e.g., State v. Jester*, 32 Ohio St.3d 147, 150, 512 N.E.2d 962 (1987).

{¶ 135} No plain error occurred. As to his Eighth Amendment claim, Jackson argues that his execution by lethal injection creates a substantial risk of serious physical pain and that the state's execution policy will require the repeated application of the execution drugs. But to support these claims, Jackson would have to rely on proof outside the record. Likewise, he would need evidence outside the record "to identify a known and available alternative method of execution that entails a lesser risk of pain, a requirement of all Eighth Amendment method-of-execution claims." *Glossip v. Gross*, 576 U.S. __, 135 S.Ct. 2726, 2731, 192 L.Ed.2d 761 (2015). Therefore, Jackson's argument is not "appropriately considered on a direct appeal." *State v. Madrigal*, 87 Ohio St.3d 378, 391, 721 N.E.2d 52 (2000) (because proof outside the record was needed to establish ineffective assistance of counsel, the claim was not appropriate on direct appeal).

{¶ 136} Jackson also argues that Ohio law does not afford equal protection with respect to the requirement that lethal injection will "quickly and painlessly cause death." R.C. 2949.22(A). He asserts that the state has a pattern and practice of noncompliance with R.C. 2949.22(A) and that its written execution policy arbitrarily or intentionally treats each condemned inmate differently. He states that "[a]dditional factual development will further demonstrate" these claims. But as

41

SUPREME COURT OF OHIO

previously mentioned, proof outside the record cannot be considered on direct appeal.  *Madrigal* at 391.

{¶ 137} Based on the foregoing, we reject proposition of law No. X.

*J. Constitutionality* (Proposition of law No. XI)

{¶ 138} Jackson challenges the constitutionality of Ohio's death-penalty statutes and claims that the statutes violate international law and treaties to which the United States is a party.  These claims can be summarily rejected.  *See State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 215-216.

*K. Cumulative error* (Proposition of law No. XII)

{¶ 139} Jackson argues that this court should vacate his sentence on grounds of cumulative error.  The cumulative-error doctrine provides that "a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal." *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 223, citing *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus.

{¶ 140} Jackson cannot point to multiple instances of error.  *State v. Garner*, 74 Ohio St.3d 49, 64, 656 N.E.2d 623 (1995).  Nor does he demonstrate that the alleged errors collectively deprived him of a fair trial.  Accordingly, proposition of law No. XII fails.

*L. Reliability of the death sentence* (Proposition of law No. IX)

{¶ 141} Jackson argues that the sentencing process was unreliable and the death sentence inappropriate.  Jackson's argument here reasserts allegations of procedural irregularities and factual inaccuracies raised in other propositions of law.  As previously discussed, none of those claims go to matters that constituted prejudicial error.

{¶ 142} This proposition of law additionally invokes R.C. 2929.05(A), which requires this court to review Jackson's death sentence for appropriateness

42

January Term, 2016

and proportionality.  *See State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 188.  In conducting this review, we must determine whether the evidence supports the jury's finding of the aggravating circumstances, whether the aggravating circumstances outweigh the mitigating factors, and whether Jackson's death sentence is proportionate to those imposed in similar circumstances.

### IV. Independent Sentence Evaluation

#### A. Aggravating circumstances

{¶ 143} The two aggravating circumstances in this case were murder during aggravated burglary and murder during aggravated robbery.  R.C. 2929.04(A)(7).  As to these aggravating circumstances, this court has already determined that "the evidence proves beyond a reasonable doubt the aggravating circumstances in this case: that Nathaniel Jackson murdered Robert Fingerhut while committing aggravated burglary and aggravated robbery."  107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362, at ¶ 162.

#### B. Mitigating factors

1. Mitigation hearing

{¶ 144} During the 2002 mitigation hearing, Jackson presented five witnesses and made an unsworn statement.  We previously considered this evidence in Jackson's first appeal to this court.  Nevertheless, in the interest of a thorough review of the mitigating factors, we now review the mitigating evidence presented during Jackson's mitigation hearing and the statements he made during the resentencing hearing.

{¶ 145} Raymond Dickerson, Jackson's stepfather, has known Jackson since Jackson was 15 years old.  He testified that Jackson has been respectful to him and to Jackson's mother and grandmother.  Dickerson stated that he has not seen much of Jackson since Jackson turned 17 years old.

43

{¶ 146} Taushia Korneagay, Jackson's younger sister, testified that Jackson is "really kind" and "helped out a lot" with her four children.  She described Jackson as a "very smart" person.  She also said that she wanted the jury to spare his life.

{¶ 147} Lorraine Rue, the mother of Jackson's daughter, Shaylese, and Shaylese herself, who was in the second grade, appeared on the witness stand together.  Shaylese stated that Jackson had brought her toys and that she would like to keep seeing him.

{¶ 148} Pauline Korneagay, Jackson's mother, briefly described Jackson's upbringing.  She stated that Jackson did "pretty good" in school but later quit. Thereafter, Jackson lived with her and his grandmother at his grandmother's house. Korneagay stated that they did not live in a "rough" neighborhood.   When questioned, she said that she did not remember Jackson "being shot" when he was still attending school or that she had written a letter to the school to excuse him for that reason.   Korneagay said that she keeps in touch with Jackson and would continue to visit him in prison.

{¶ 149} Dr. McPherson was the defense's primary mitigation witness.  Dr. McPherson interviewed Jackson, talked to his family members, reviewed his school and other records, and submitted a report on her findings.  She testified that Jackson was raised by his mother and his maternal grandmother.  But Jackson had little, if any, real contact with his father.

{¶ 150} Dr. McPherson testified that Jackson had "fairly serious" behavior problems in school.  By the third grade, Jackson had already been suspended from school.  According to Dr. McPherson, Jackson suffered from an attention-deficit hyperactivity disorder ("ADHD") characterized by impulsiveness and an inability to stop his behavior.  She added that Jackson did not get into any kind of structured program to treat his ADHD until he was in the eighth grade.  Jackson did "fairly well" in that program, and that was the only time that Jackson recalled liking school.  He dropped out of school in the 11th grade.

44

January Term, 2016

{¶ 151} Jackson began using alcohol and drugs early in life.  He started using marijuana when he was 13 years old and rapidly became dependent on it. Jackson also used cocaine to some degree, though he never used other serious drugs.  Dr. McPherson testified that Jackson was repeatedly involved in nonviolent crimes as an adult and that these were mostly related to his drug habit.

{¶ 152} Dr. McPherson stated that Jackson's longest period of work "was about six months, maybe less."  Jackson lived on his own as an adult and "basically survive[d] on the streets."  During the ensuing ten years or so after he reached adulthood, Jackson was "shot at least four or five times."  Dr. McPherson testified that her investigation revealed that before Jackson dropped out of school, Jackson's mother had sent a note to the school asking for him to be excused from attending one day because two people had been shooting at him and he had to make a police report.

{¶ 153} Jackson has fathered two children but has never been in a position to assume much parental responsibility.  One of the children has cerebral palsy, and the mother's family has not allowed him to have contact with that child.

{¶ 154} Dr. McPherson's testing showed that Jackson has a full-scale IQ score of 84.  She stated that IQ testing in the seventh and tenth grades had indicated that Jackson was "at or around the 70 level."  Dr. McPherson attributed the difference in scores to the fact that Jackson had not been attentive and was not motivated to cooperate when he took the tests in school and that he did better when tested in a more structured prison environment.  She added that "based partly on the sub test and partly on what we know about the test bias, he's an African American who has not had a good education, the test is biased against him.  The chances are he's of average ability, and under the right circumstances could have been quite reasonably successful in life."

{¶ 155} Dr. McPherson diagnosed Jackson with an antisocial personality disorder.  But she added that Jackson "has shown the capacity to be loyal within his

45

SUPREME COURT OF OHIO

own group" and "does not mirror the diagnosis of an individual who is incapable of relating to people." Jackson retains a loyalty and love for his family. In addition, Dr. McPherson believed that he would function best in the structured setting of a prison environment.

{¶ 156} Dr. McPherson stated that Jackson's relationship with Roberts "was clearly a very destructive relationship." Jackson received reassurance in this relationship, and he felt like he was "somebody special." Dr. McPherson also stated that Jackson felt like he would be more stable with Roberts, because "[s]he had a job, she had an adequate living situation, certainly more adequate then he had ever experienced."

{¶ 157} Jackson made an unsworn statement during the 2002 mitigation hearing. He stated:

> I would like to apologize for what happened to the victim. I am very sorry for what happened and I know by me saying sorry ain't going to bring his life back. This is something I have to live with for the rest of my life, and also like for my daughter, to know that she still has a father that is alive and I would like to see her grow up.

{¶ 158} Jackson also made a statement in allocution prior to sentencing in 2002, stating, "I'd just like for the Court to spare me my life. I'm sorry for what happened, happened. I never meant for it to happen."

2. Resentencing hearing

{¶ 159} Before the trial court resentenced him, Jackson told the court that while at Trumbull Correctional Institution, he obtained a certificate in the basic-skills computer class, passed an advanced class, received a certificate in the music program, and become a tutor. He also told the court that he had not been in any

46

January Term, 2016

trouble "since I have been on death row since 2007." He said that the 2007 trouble was "a little minor situation" and that he had not "been in any trouble or anything since then." He also said, "Since I have been off of death row, I understand a lot of things." That includes adjusting to a different situation and environment without any problems.

{¶ 160} Jackson also made a second statement before the sentence was announced: "I feel that doing my time, I have learned to find myself and I know who I am right now, and I * * * wouldn't like to be placed back on death row. I really wouldn't."

*C. Sentence evaluation*

{¶ 161} Nothing in the nature and circumstances of the offense is mitigating. It is evident from their correspondence and phone calls that Jackson and Roberts planned to kill Fingerhut when Jackson was released from prison. Jackson assured Roberts that the murder was something that they had to do and that he had it all figured out. They planned to collect the insurance proceeds that Roberts would receive following Fingerhut's death and then live together. And after he was released from prison, Jackson murdered Fingerhut in Fingerhut's home and then fled the scene in Fingerhut's car.

{¶ 162} Jackson's history, character, and background provide some details of mitigating value. Jackson's father was never part of his life, and Jackson had behavioral problems in school, mostly because of his ADHD. He dropped out of school in the 11th grade. Although his mother denied that Jackson was raised in a rough neighborhood, Dr. McPherson's testimony showed otherwise. Jackson had a history of drug and alcohol dependency that began when he was 13 years old. Jackson also told the court during the resentencing hearing that he had obtained certificates in computer skills and in the music program while in prison.

{¶ 163} The statutory mitigating factors under R.C. 2929.04(B) include R.C. 2929.04(B)(1) (victim inducement), (B)(2) (duress, coercion, or strong

47

SUPREME COURT OF OHIO

provocation), (B)(3) (mental disease or defect), (B)(4) (youth of the offender), (B)(5) (lack of a significant criminal record), (B)(6) (accomplice only), and (B)(7) (any other relevant factors).  The factors under R.C. 2929.04(B)(1), (B)(2), (B)(3), (B)(4), (B)(5), and (B)(6) do not appear to be applicable.

{¶ 164} As to the other relevant mitigating factors under R.C. 2929.04(B)(7), we give some weight in mitigation to Jackson's ADHD and antisocial personality disorder.  Although Jackson disputes the reliability of the testing, Dr. McPherson testified that Jackson has a "full-scale IQ of 84" and that the "chances are he's of average ability."  We also give some weight to the testimony that Jackson had a troubled childhood as a R.C. 2929.04(B)(7) factor. *But see Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, at ¶ 265 (unstable childhood seldom given "decisive weight" as a mitigating factor).  And we give weight to Jackson's history of drug and alcohol abuse.  *See State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 158.  In addition, we give some weight to testimony that Jackson has the love and support of his family and cares about his daughter.  *See State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 338.

{¶ 165} During the resentencing hearing, Jackson raised his ability to adapt well to prison life.  Dr. McPherson had testified during his 2002 mitigation hearing that Jackson tended to do better in structured settings and that prison was a positive environment for him.  Jackson also stated at the resentencing hearing that he had not been in any trouble in prison since 2007 and called the 2007 incident a "minor situation."  Good behavior in prison is relevant to the lack of future dangerousness. *See State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 303.  Yet Jackson and Roberts planned Fingerhut's murder when Jackson was previously in prison.  Thus, we give little mitigating weight to this testimony.

48

January Term, 2016

{¶ 166} Finally, we give some mitigating weight to Jackson's expressions of remorse during his unsworn statement in 2002 "for what happened to the victim." *See State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 327.

{¶ 167} Upon independent weighing, we find that each aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt.  The letters and phone conversations between Jackson and Roberts show that they planned Fingerhut's murder over the course of several months.  After he was released from prison, Jackson murdered Fingerhut during a burglary and stole his car.  Jackson's mitigating evidence has little significance in comparison.

{¶ 168} As a final matter, we must determine "whether the sentence is excessive or disproportionate to the penalty imposed in similar cases."  R.C. 2929.05(A).  "The proportionality review required by R.C. 2929.05(A) is satisfied by a review of those cases already decided by the reviewing court in which the death penalty has been imposed."  *State v. Steffen*, 31 Ohio St.3d 111, 509 N.E.2d 383 (1987), paragraph one of the syllabus.  *But see State v. Murphy*, 91 Ohio St.3d 516, 562, 747 N.E.2d 765 (2001) (Pfeifer, J., dissenting) (proportionality review should include factually similar cases in which a death sentence was not imposed).

{¶ 169} We find that the death penalty is both appropriate and proportionate when compared with capital cases involving aggravated murder during an aggravated burglary, *see State v. Davie*, 80 Ohio St.3d 311, 686 N.E.2d 245 (1997); *State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, and aggravated murder during an aggravated robbery, *see State v. Burke*, 73 Ohio St.3d 399, 653 N.E.2d 242 (1995); *State v. Raglin*, 83 Ohio St.3d 253, 699 N.E.2d 482 (1998).

{¶ 170} We therefore affirm the convictions and sentences, including the death sentence.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FRENCH, and KLATT, JJ., concur.

49

SUPREME COURT OF OHIO

O'DONNELL, J., concurs in part and concurs in judgment, with an opinion.

LANZINGER, J., dissents, with an opinion.

WILLIAM A. KLATT, of the Tenth District Court of Appeals, sitting for O'NEILL, J.

_____

**O'DONNELL, J., concurring in part and concurring in judgment.**

{¶ 171} I concur with the decision of the majority to affirm the sentences imposed on Nathaniel Jackson, including the death sentence; in my view however, contrary to the majority, the trial court did not err by failing to mention Jackson's allocution in its resentencing opinion, making it unnecessary for this court to consider whether that failure is harmless error because the matter is resolved through our independent sentence evaluation.

{¶ 172} This court has previously held that in considering mitigating factors in a capital-offense sentencing opinion, the failure of the trial court to incorporate and discuss all of the mitigating factors in its opinion is not reversible error.  *See State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 125-126; *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 362-363. "While a sentencing court must consider all evidence of mitigation, it need not discuss each factor individually."  *State v. Phillips*, 74 Ohio St.3d 72, 102, 656 N.E.2d 643 (1995), citing *Parker v. Dugger*, 498 U.S. 308, 314-315, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991).  "And a trial court's failure to discuss each mitigating factor in its sentencing opinion does not give rise to an automatic inference that the factors absent from the opinion were not considered."  *Obermiller* at ¶ 125, citing *State v. Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, ¶ 54. "Further, even if 'the trial court * * * should have more explicitly analyzed the mitigating evidence,' this court's independent reweighing will rectify the error." *Phillips* at 102, quoting *State v. Lott*, 51 Ohio St.3d 160, 171, 555 N.E.2d 293 (1990).

50

January Term, 2016

{¶ 173} In my dissent in *Roberts*, I stressed that the omission of any reference to what the defendant said during allocution in the sentencing opinion was not error in that case for these same reasons, and therefore, the omission cannot be error here.  *See Roberts* at ¶ 101-120 (O'Donnell, J., dissenting).

———————————

**LANZINGER, J., dissenting.**

{¶ 174} I respectfully dissent.  The majority admits that the trial court "should have considered" Nathaniel Jackson's allocution in the resentencing opinion.  Majority opinion at ¶ 83.  But the new sentencing opinion had already been prepared prior to the resentencing hearing, and it was filed the same afternoon that the court heard Jackson's allocution and pronounced sentence.  In other words, the court did not take Jackson's words into account before reimposing a sentence of death.  This was the same trial-court error that we considered in *State v. Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, ¶ 96 ("*Roberts II*"), the case of Jackson's accomplice, Donna Roberts.  There too, the trial court did not discuss allocution in its R.C. 2929.03(F) sentencing opinion.  *Id.* at ¶ 64.

{¶ 175} I do not agree with the majority that this case differs from Roberts's case.  The majority attempts to distinguish the circumstances of this case from those in Roberts's case by saying that "[u]nlike the situation in *Roberts II*, Jackson's allocution during his resentencing hearing added little to the mitigation that was already before the court."  Majority opinion at ¶ 86.  I do not believe that this distinction puts this case in line with *State v. Phillips*, 74 Ohio St.3d 72, 656 N.E.2d 643 (1995).

{¶ 176} The majority relies upon *Phillips* to support its decision to cure the error in the sentencing opinion through independent evaluation of Jackson's capital sentence.  But *Phillips* did not involve a trial court's error of the same significance as that present in this case.  There, the appellant challenged the sentencing opinion

51

SUPREME COURT OF OHIO

for failing to give effect to *all* mitigation evidence offered.  *Id.* at 102.  We noted that the appellant's argument "erroneously assumes that evidence that is not specifically mentioned in an opinion was not considered," and we explained that "[w]hile a sentencing court must consider all evidence in mitigation, it need not discuss each factor individually."  *Id.*, citing *Parker v. Dugger*, 498 U.S. 308, 314-315, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991).  We concluded that even if the trial court should have more explicitly analyzed the mitigating evidence, our independent reweighing could rectify the error.  *Phillips* at 102, citing *State v. Lott*, 51 Ohio St.3d 160, 171-172, 555 N.E.2d 293 (1990).

{¶ 177} This case involves more than just a trial court's failure to state sufficient detail in analyzing the mitigating evidence.  Instead, there has also been a failure to even consider allocution in weighing the aggravating circumstances against the mitigating factors, a failure that, as the majority acknowledges, we found to violate the Eighth Amendment in *Roberts II*.  Majority opinion at ¶ 81, citing *Roberts II*, 137 Ohio St.3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, at ¶ 65, 69.

{¶ 178} The majority is correct in noting that our decision vacating Roberts's death sentence in *Roberts II* was premised upon the " 'unusual circumstances' " present in that case, including the potential for significant mitigation in Roberts's allocution, the lack of other offered mitigation, and the fact that the trial court had been specifically directed to consider allocution.  Majority opinion at ¶ 81, quoting *Roberts II* at ¶ 64.  These circumstances led us to determine in *Roberts II* that the trial court's failure to mention the allocution in its sentencing opinion was more than a mere oversight.  While Jackson originally presented more mitigation than Roberts did, and his allocution during his resentencing hearing was less significant than hers, I would hold that as in *Roberts II*, the failure of the trial court to mention allocution at all is more than the mere oversight found in *Phillips* and instead constitutes reversible error.

52

January Term, 2016

{¶ 179} Trial courts "must conduct proceedings in capital cases with a strict level of care that comports with their unique status."  *State v. Clinkscale*, 122 Ohio St.3d 351, 2009-Ohio-2746, 911 N.E.2d 862, ¶ 23.  As detailed in the procedural history set forth in the majority opinion, the Eleventh District Court of Appeals noted that the fact patterns in this case and in Roberts's case are "factually the same" and involved "the same drafting procedures involving the sentencing entry," and it concluded that Jackson was "entitled to the same relief afforded to his co-defendant."  *State v. Jackson*, 190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221, ¶ 29 (11th Dist.).  That relief included affording the defendant the right to allocate, requiring the trial court to personally review and evaluate the evidence, and requiring the court to personally prepare an entirely new penalty opinion.  *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, ¶ 167 ("*Roberts I*").  Just as happened during the resentencing at issue in *Roberts II*, the trial court here failed to comply with these instructions to conduct Jackson's resentencing with the strict level of care that comports with the unique status of a capital case.

{¶ 180} In vacating the death sentence of Jackson's accomplice, Roberts, we instructed the trial court in *Roberts II* how to sentence her properly:

> On remand, the trial court must consider all the mitigating evidence reflected in the record, including Roberts's allocution, weigh the aggravating circumstances against the mitigating factors, and file a sentencing opinion that reflects that it has complied with these instructions.  In doing so, the trial court must make an independent determination of whether a death sentence is appropriate and may not give deference to the sentences previously entered.

*Roberts II*, 137 Ohio St. 3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, at ¶ 96.

53

SUPREME COURT OF OHIO

{¶ 181} I would follow the mandates of this court in *Roberts I* and *Roberts II* and of the Eleventh District in *State v. Jackson* and grant Nathaniel Jackson the same remedy.  I respectfully dissent.

_____

Dennis Watkins, Trumbull County Prosecuting Attorney, and LuWayne Annos and Charles Morrow, Assistant Prosecuting Attorneys, for appellee.

Timothy Young, Ohio Public Defender, and Randall L. Porter, Assistant Public Defender; and Buell & Sipe Co., L.P.A., and Dennis L. Sipe, for appellant.

_____

54

Supreme Court of Ohio Clerk of Court - Filed September 06, 2016 - Case No. 2012-1644

## In The Supreme Court of Ohio

| | | |
|---|---|---|
| State of Ohio, | : | |
| Appellee, | : | Case No. 12-1644 |
| -vs- | : | Appeal taken from Trumbull County Court of Common Pleas |
| Nathaniel Jackson, | : | Case No. CR 01-CR-794 |
| Appellant. | : | This is a death penalty case |

---

## APPELLANT NATHANIEL JACKSON'S MOTION FOR RECONSIDERATION

---

DENNIS WATKINS - 0009949
Trumbull County Prosecuting Attorney

LUWAYNE ANNOS - 0055651
Assistant Prosecuting Attorney
psannos@co.trumbull.oh.us

CHARLES MORROW - 0040575
Assistant Prosecuting Attorney

Trumbull County Prosecutor's Office
160 High Street, N.W
4th Floor Administration Building
Warren, Ohio 44481
(330) 675-2426 (Voice)
(330) 675-2431 (Facsimile)


COUNSEL FOR APPELLEE

OFFICE OF THE
OHIO PUBLIC DEFENDER

RANDALL L. PORTER - 0005835
Assistant State Public Defender
Counsel of Record

250 E. Broad Street - Suite 1400
Columbus, Ohio  43215
(614) 466-5394 (Voice)
(614) 644-0708 (Facsimile)
Randall.Porter@opd.ohio.gov

and

DENNIS L. SIPE - 0006199
410 Front Street, Unit 2
Marietta, Ohio 45750-2166
(740) 525-7760 (Voice)
dennis@buellsipe.com


COUNSEL FOR APPELLANT

## In The Supreme Court of Ohio

| | | |
|---|---|---|
| **State of Ohio,** | : | |
| **Appellee,** | : | **Case No. 12-1644** |
| **-vs-** | : | **Appeal taken from Trumbull** |
| | | **County Court of Common Pleas** |
| **Nathaniel Jackson,** | : | **Case No. CR 01-CR-794** |
| **Appellant.** | : | **This is a death penalty case** |

## APPELLANT NATHANIEL JACKSON'S MOTION FOR RECONSIDERATION

Appellant Nathaniel Jackson, pursuant to S.Ct.Prac.R. 18.02, moves this Court for reconsideration of its August 24, 2016, opinion and decision affirming his convictions and death sentence. *State v. Jackson,__* Ohio St.3d __, 2016-Ohio-5488. The reasons for this Motion are more fully set forth in the attached memorandum in support.

Respectfully submitted,

Office of the Ohio Public Defender

/s/ Randall L. Porter
RANDALL L. PORTER - 0005835
Assistant State Public Defender
250 E. Broad Street - Suite 1400
Columbus, Ohio  43215-9308
(614) 466-5394 (Telephone)
(614) 644-0708 (Facsimile)
Randall.Porter@opd.ohio.gov

And

DENNIS L. SIPE – 0006199
410 Front Street, Unit 2
Marietta, Ohio 45750-2166
(740) 525-7760 (Voice)
dennis@buellsipe.com

Counsel for Nathaniel Jackson

## Memorandum In Support

Appellant requests that this Court revisit its August 24, 2016 opinion, with respect to Propositions of Law Nos. III, V, VI and VII. The Court should grant reconsideration to correct those portions of its opinion which "were made in error." *Dublin City Sch. Bd. of Educ. v. Franklin County Bd. of Revision,* 139 Ohio St.3d 212, 2014-Ohio-1940, 11 N.E.2d 222, ¶ 9. The Court did not fully consider the issues raised herein. *State v. Gillispie,* 2nd Dist. No. 24456, 2012-Ohio-2942, ¶ 9.

### Proposition of Law No. III

**A Defendant Is Denied His Right to A Fair and Impartial Tribunal When A Trial Judge, Who Has Been Found to Have Committed Misconduct that Constitutes an Ethical Violation, Refuses to Accept the Findings of this Court and the Mandate of the Lower Appellate Court With Respect to His Misconduct.**

This Court found that "Jackson fails to demonstrate that Judge Stuard had actual bias and acted with 'ill will' or formed 'a fixed anticipatory judgment' against him. *See* Pratt, 164 Ohio St. 463, 132 N.E.2d 191, at paragraph four of the syllabus; *see also Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Therefore, this claim also lacks merit." *Id.* at ¶ 44.

This Court properly considered Judge Cannon's concurring opinion in which he held in pertinent part that Judge Stuard had represented to Chief Justice Moyer that he (Judge Stuard) would take one course of action if he was permitted to remain on the case (grant Appellant a new sentencing hearing), but once he was permitted to remain on the case he in fact engaged in the opposite course of action (denied Appellant a new sentencing hearing). *Id.* at ¶ 38. This Court concluded that "none of Judge Cannon's remarks were made in the context of judicial bias. Thus, his concurring opinion does not support Jackson's bias claim." *Id.* at ¶ 39.

2

While Judge Cannon's remarks did not explicitly address judicial bias, they implicitly addressed the issue. Only one rationale inference can be drawn from Judge Stuard's misrepresentations to Chief Justice Moyer. He wanted to remain on the case to insure that Appellant would not receive a new sentencing hearing.

This Court in rejecting this proposition of law provided the following analysis:

> Judge Stuard's failure to provide the relief that Jackson believes was warranted does not establish actual bias. *See In re Disqualification of Floyd*, 135 Ohio St.3d 1249, 2012-Ohio-6336, 986 N.E.2d 10, ¶ 10 (the fact that a trial judge's decision 'was reversed in a critical opinion by the appeals court does not imply that she will be biased against [the appellants] or somehow retaliate against them").

*Id.* at ¶ 40.

Appellant's argument is not based on the Court of Appeals' decision reversing Judge Stuard's decision denying Appellant a new sentencing hearing. Rather, it is based on Judge Stuard's misrepresentations, as detailed by Judge Cannon to Chief Justice Moyer. At the very least Judge Stuard's misrepresentations created an appearance of bias.  Thus, he should not have permitted to preside over Appellant's resentencing. *Taylor v. Hayes*, 418 U.S. 488, 501, 94 S. Ct. 2697, 41 L. Ed. 2d 897 (1974); *Unger v. Sarafite*, 376 U.S. 575, 588, 84 S. Ct. 841, 11 L. Ed. 2d 921 (1964); *Ward v. Monroeville*, 409 U.S. 57, 60, 93 S. Ct. 80, 34 L. Ed 2d 267 (1972).

This Court should grant rehearing on Proposition of Law No. III.

### Proposition of Law No. V

**A Trial Court at a Resentencing Hearing Is Required to Consider All Relevant Evidence that the Defendant Submits In Support of A Sentence of Less Than Death.**

By the time of Jackson's resentencing, post-conviction counsel had reinvestigated the case. A superficial reading of the trial court record demonstrated the need to reinvestigate the

3

case. The attorney who was supposed to make the sentencing presentation became ill just prior to the start of the sentencing phase. (Sent. Tr. 4). The attorney who remained on the case was not prepared to make the sentencing presentation because he believed that the attorney who became ill would fulfill that role. As a result, the unprepared attorney (Consoldane) initially spoke with the sentencing witnesses at the courthouse on the day of the mitigation hearing. (*Id.* at Tr. 7-8). A second attorney was recruited on the day of the hearing to represent Appellant. (*Id.* at Tr. 7). He knew nothing about the case.

The jury heard that Appellant was: 1) from a good home, 2) raised by a responsible mother, 3) of low average or better intelligence, and 4) did well in school. *See* Appellant's Merit Brief, pp. 27-28. In actuality, nothing could have been further from the truth. The post-conviction investigation revealed that Appellant: 1) was operating on the level of a person with borderline mental retardation, 2) was placed in a school for children with behavioral problems, 3) was raised by his grandmother because his mother was a binge drinker who only showed affection for Appellant's brother, and 4) was raised in a neighborhood where gunshots were often heard. *Id.* at pp. 28-29).

This Court, when rejecting Proposition of Law No. V, found that Jackson "was given a full opportunity to present mitigation evidence during his initial sentencing hearing." *Id.* at ¶ 70. That was incorrect given that he was represented by two attorneys at his initial sentencing hearing, one of whom knew little about his background, the other who literally knew nothing. This Court concluded "Jackson [because he had been given a full opportunity] was not entitled to expand his mitigating evidence simply because the court of appeals required the judge to resentence him and prepare a new sentencing opinion." *Id.* at Appellant was not requesting the

4

opportunity to expand, but the opportunity to correct the incorrect evidence presented at the mitigation hearing.

The Constitution charges this Court with the duty to insure that each death sentence that it reviews is the product of a reliable procedure and that the sentence is worthy of confidence. *Johnson v. Mississippi,* 486 U.S. 578, 584, 108 S. Ct. 1981, 100 L. Ed. 2d 575 (1988); *Turner v. Murray,* 476 U.S. 28, 35-36, 106 S. Ct. 1683, 90 L. Ed. 2d 27 (1986); *California v. Ramos,* 463 U.S. 992, 998, 103 S. Ct. 3446, 77 L. Ed. 2d 1171 (1983). That did not occur in this case. This Court conducted a lengthy review of the evidence from the mitigation hearing. *Id.* at ¶¶ 144-64. However, it limited its review to the testimony adduced at the 2002 hearing. *Id.* It is apparent from the subsequent post-conviction investigation that the evidence put forth was not accurate.

This Court should grant rehearing on Proposition of Law No. V.

### Proposition of Law No. VI

**A Trial Court Denies a Capitally Convicted Defendant His Right of Allocution When He Holds That As a Matter of Law He Cannot Consider the Defendant's Statement for the Purpose of Determining the Appropriate Sentence.**

This Court found "we conclude that the trial court should have considered Jackson's allocution in the resentencing opinion." *Id.* at ¶ 83. However, this Court ruled that it "could cure any error in the sentencing opinion during our independent evaluation of Jackson's capital sentence." *Id.* at ¶ 86. This Court erred when it found that the appropriate remedy, contrary to its decision in *Roberts II*, was for it was to it to reweigh rather than remand for the matter for the trial court to consider Appellant's allocution.

The Court found herein that the holding in *Roberts II* distinguishable, because in that case the "only relevant matter in mitigation" was the information contained in her allocution. *Id.* at ¶ 80. However, the only reasons it was "the only relevant matter in mitigation" was because

5

Roberts had chosen not to go forward with any evidence other than a lengthy unsworn statement detailing the reason that she was not presenting any mitigation evidence. *Roberts I* at ¶ 89. This Court upheld her partial waiver of mitigation. *Id.* at ¶ ¶ 144-45.  This is to be contrasted with Appellant's case in which he wanted to present mitigation, but the evidence that was presented was unreliable because counsel had conducted an unreasonable investigation and the attorney that was supposed to present the mitigation became ill at the last moment. *See* Proposition of Law No. V, *supra.* The equities favor Appellant. Roberts did not want the court at the time of trial to consider mitigation, but yet she is entitled to have her case remanded for the court to consider her allocution. Appellant who wanted the court at the time of trial to consider his mitigation is not entitled to have the trial court consider his allocation.

Even setting aside the equities, as Justice Lanzinger set forth in here dissenting opinion:

> Trial courts "must conduct proceedings in capital cases with a strict level of care that comports with their unique status." *State v. Clinkscale,* 122 Ohio St.3d 351, 2009-Ohio-2746, 911 N.E.2d 862, ¶ 23. As detailed in the procedural history set forth in the majority opinion, the Eleventh District Court of Appeals noted that the fact patterns in this case and in Roberts's case are "factually the same" and involved "the same drafting procedures involving the sentencing entry," and it concluded that Jackson was "entitled to the same relief afforded to his codefendant." *State v. Jackson, 190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1221, ¶ 29 (11th Dist.).*

The trial court failed to conduct the resentencing proceedings "in a strict level of care that comports with the unique status" of this case. That alone warrants the case being remanded to the trial court for additional consideration. In addition, because Roberts and Appellant are co-defendants who suffer from the same trial court error, they should both be afforded the same remedy.

This Court should grant rehearing on Proposition of Law No. VI.

6

## Proposition of Law No. VII

**A Trial Court Commits Prejudicial Error in a Capital Case When It Delegates Any Degree of Its Responsibility to the Prosecution For the Drafting of the Sentencing Opinion.**

This Court properly made the following factual findings concerning the most recent sentencing opinion filed in this case:

> The 2002 and 2012 sentencing opinions are very similar. The 2002 sentencing opinion summarized the trial-phase evidence, discussed the aggravating circumstances and mitigating evidence, and explained why the trial court concluded that "the aggravating circumstances, outweighed, by proof beyond a reasonable doubt, the collective mitigating factors." The 2012 sentencing opinion added three new introductory paragraphs explaining the reasons for Jackson's resentencing proceedings. Two other paragraphs were rewritten to discuss the trial-phase evidence in a different way. Otherwise, the two opinions are almost identical,

*Id.* at ¶ 91.

This Court has previously held that "[t]he trial court's delegation of *any degree* of responsibility in this sentencing opinion does not comply with R.C. 2929.03(F)." *Roberts I,* ¶ 160. The trial court's copying of its earlier decision in which it had delegated the responsibility to the prosecution for purposes of drafting the sentencing opinion violated R.C. 2929.03(F) as well as this Court's holding in *Roberts I*.

This Court held that "[n]othing in the remand directed Judge Stuard to totally deconstruct the sentencing opinion in preparing a new one." *Id.* at ¶ 93. This is incorrect, the remand ordered Judge Stuard to "prepare an *entirely new sentencing entry . . .*" *State v. Jackson,* 190 Ohio App.3d 319, 2010-Ohio-5054, 941 N.E.2d 1211, ¶ 29 (11th Dist.) (emphasis added).

This Court cited to the fact that "Judge Stuard had before him the same mitigating evidence, except for the information conveyed in Jackson's 2012 allocution, in 2002 and 2012.

7

This helps explain the similarities between the two opinions." *Id.* at ¶ 93. While this statement is accurate, it does not explain the failure of Judge Stuard to prepare an *entirely new sentencing entry* free of prosecutorial involvement.

Finally, this Court noted "during oral argument, Jackson's counsel acknowledged that the prosecutor was not involved in writing the new sentencing opinion." *Id.* at ¶ 94. However, this did not remove the taint from the prosecutor's involvement in the drafting of the initial opinion.

Again, the difference between the two co-defendants is striking. The trial judge in *Roberts* drafted an entirely new sentencing opinion. In this case he copied almost word-for-word his prior sentencing opinion.

This Court should grant rehearing on Proposition of Law No. VII.

This Court should grant rehearing on Proposition of Law No. 3.

## CONCLUSION

For the foregoing reasons, this Court should reconsider its decision and remand Appellant's case with instructions that the trial court consider all evidence that Appellant puts forward at the resentencing hearing.

Respectfully submitted,

Office of the Ohio Public Defender

/s/ Randall L. Porter
RANDALL L. PORTER - 0005835
Assistant State Public Defender
250 E. Broad Street - Suite 1400
Columbus, Ohio  43215-9308
(614) 466-5394 (Telephone)
(614) 644-0708 (Facsimile)
Randall.Porter@opd.ohio.gov

And

8

DENNIS L. SIPE – 0006199
410 Front Street, Unit 2
Marietta, Ohio 45750-2166
(740) 525-7760 (Voice)
dennis@buellsipe.com

Counsel for Nathaniel Jackson

**<u>Certificate of Service</u>**

I hereby certify that a true copy of the foregoing *Appellant Nathaniel Jackson's Motion for Reconsideration* was forwarded by electronic and regular U.S. Mail to Luwayne Annos and Charles Morrow, Assistant Prosecuting Attorneys, 160 High Street, N.W., 4th Floor Administration Building, Warren, Ohio  44481 on this the 6th day of September, 2016.

<u>/s/ Randall L. Porter</u>
RANDALL L. PORTER - 0005835

Counsel For Nathaniel Jackson

9

Supreme Court of Ohio Clerk of Court - Filed September 14, 2016 - Case No. 2012-1644

IN THE SUPREME COURT OF OHIO

|  |  |  |
|---|---|---|
| STATE OF OHIO, Appellee, | ) ) ) | **CASE NO. 12-1644** |
| v. | ) ) ) | On Appeal from the Trumbull County Court of Common Pleas No. 01-CR-794 |
| NATHANIEL JACKSON, Appellant. | ) ) ) ) | **DEATH PENALTY CASE** |

---

**APPELLEE STATE OF OHIO'S MEMORANDUM IN RESPONSE TO APPELLANT'S MOTION FOR RECONSIDERATION**

---

DENNIS WATKINS (#0009949)
Prosecuting Attorney, by
LuWAYNE ANNOS (#0055651)
CHARLES MORROW (#0040575)
Assistant Prosecuting Attorneys
Trumbull County Prosecutor's Office
160 High Street, N.W.
Fourth Floor, Administration Bldg.
Warren, Ohio 44481
Telephone No. (330) 675-2426
Fax No. (330) 675-2431
psannos@co.trumbull.oh.us

RANDALL L. PORTER (#0005835)
Assistant State Public Defender
250 E. Broad St., Suite 1400
Columbus, Ohio    43215
Telephone No. (614) 466-5394
Fax No. (614) 644-0708
Randall.Porter@OPD.ohio.gov

DENNIS L.  SIPE (#0006199)
410 Front St, Unit 2.
Marietta, Ohio 45750
Telephone No. (740) 525-7760
dennis@buellsipe.com

COUNSEL FOR
PLAINTIFF-APPELLEE
THE STATE OF OHIO

COUNSEL FOR
DEFENDANT-APPELLANT
NATHANIEL JACKSON

Now comes the Plaintiff-Appellee, the State of Ohio, pursuant to S.Ct. Prac. R. 18.03, who through undersigned counsel **oppose** Defendant-Appellant Nathaniel Jackson's ("Appellant") Motion for Reconsideration filed in the Court September 6, 2016. Appellant seeks a reopening of this Court's decision in *State v. Jackson,* --N.E. 3d--, 2016-Ohio-5488, released by this Court on August 24, 2016.   S.Ct. Prac. R. 18.02 is clear: "A motion for reconsideration shall not constitute a reargument of the case***;" yet that is the sum and substance of Appellant's entire motion respect to Appellant's Propositions of Law III, V, VI and VII.

Before addressing the four Propositions of Law raised in Appellant's motion, the State believes it is useful to discuss the limited guidelines by which this Court reviews a S.Ct. Prac. 18.02 motion. Elaborating on the above-stated rule, this Court has said, "***[w]e use our reconsideration authority to 'correct decisions which, upon reflection, are deemed to have been made in error.' *State ex rel. Huebner v. W. Jefferson Village Council,* 75 Ohio St.3d 381, 383, 662 N.E.2d 339 (1995). We will not, however, grant reconsideration when a movant seeks merely to reargue the case at hand. S.Ct.Prac.R. 18.02(B)." *Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 139 Ohio St.3d 212, 214, 2014-Ohio-1940, 11 N.E.3d 222, 224.

The companion rule for S.Ct. R. 18.02 in Ohio's district appellate courts is App. R. 26(A) under which an application for reconsider is made. While the rule provides the procedure for such application, it is devoid of any standard a court should use on review. Such standard has evolved through caselaw, however, and is best expressed in the syllabus to *Columbus v. Hodge,* 37 Ohio App.3d 68, 523 N.E.2d 515 (10th Dist. ,1987): "The test generally applied upon the filing of a motion for reconsideration in the court of appeals is whether the motion calls to the attention of the court an obvious error in its decision, or raises an issue for consideration that was

- 1 -

either not considered at all or was not fully considered by the court when it should have been."
See, also, *Matthews v. Matthews*, 5 Ohio App.3d 140, 450 N.E.2d 278 (10th Dist., 1981).

In order to prevail in its application, a party seeking reconsideration *must* raise one of those three errors in its application and support the request with the necessary portions of the appellate record. An application for reconsideration may not be filed simply on the basis that a party disagrees with the logic used by the appellate court or the conclusions it reached. *State v. Owens*, 112 Ohio App.3d 334, 678 N.E.2d 956. (11th Dist., 1996).

With this guidance in mind, the State turns to the four propositions of law upon which Appellant seeks reconsideration.

**State's Response to Appellant's Proposition of Law No. III**

For the fourth time, Appellant tries to argue that the late Trumbull County Common Pleas Judge John Stuard should have been removed from his case. These arguments have come in the form of two motions to disqualify and in his Proposition of Law III in the instant appeal. Appellant once again argues that Judge Stuard harbored a bias against Appellant and, based on a concurring opinion from an inferior court, improperly extrapolates that he misrepresented his intentions to the late Chief Justice Moyer when he declined to recuse himself from Appellant's post-trial proceedings following this Court's decision in *State v. Roberts,* 110 Ohio St. 3d 71, 2006-Ohio-3665.

This Court wrote thirteen paragraphs to thoroughly refute this unsuccessful and recycled argument. *State v. Jackson,* --N.E. 3d--, 2016-Ohio-5488 ¶¶ 32-45. In fact, this argument has been reexamined by this Court so many times that it agreed with the State of Ohio that this argument is res judicata barred. *Id.* at ¶ 35. Nevertheless, this Court went on to conduct a point-by-point analysis as to why claims of judicial bias against Judge Stuard are meritless.

- 2 -

In an apparent fit of desperation, Appellant now tries to argue that Judge Stuard misrepresented his intentions in his first affidavit to the late Chief Justice Thomas Moyer regarding Appellant's initial unsuccessful attempt to remove the trial judge.  While the concurring opinion in *State v. Jackson,* 11th Dist. No. 190 Ohio App. 3d 319, 2010-Ohio-5054, construed that affidavit as saying Judge Stuard was pre-disposed to conduct a new sentencing hearing as it did in co-defendant Donna Roberts's case, Chief Justice Moyer decidedly *did not* interpret that affidavit in the same way. "I find no basis for ordering the disqualification of Judge Stuard. The judge *is entitled to consider the defendant's motion for relief* from judgment now pending in the trial court, and *if the judge concludes that relief is appropriate*, he may grant that motion and conduct the new sentencing hearing that he has described in his response to the affidavit filed here."*In re Disqualification of Stuard*, 113 Ohio St.3d 1236, 1237, 2006-Ohio-7233, 863 N.E.2d 636, 637, ¶ 5.  With due deference to the Eleventh District Court of Appeals, Chief Justice Moyer did not view Judge Stuard's affidavit as a guarantee of a new sentencing hearing, but as an assurance that he was prepared to decide the motion.  There is not one hint of a misrepresentation by Judge Stuard in his affidavit, only an alternate interpretation of Judge Stuard's intentions by a lower appellate court concurring opinion that had no say on whether Judge Stuard remained on Appellant's case.

Appellant's unfounded conjecture does not demonstrate a misrepresentation.  When ordered to do so by the Eleventh District, Judge Stuard conducted the re-sentencing hearing sought by Appellant. This Court made clear "Jackson fails to demonstrate that Judge Stuard had actual bias and acted with 'ill will' or formed 'a fixed anticipatory judgment' against him.***." (Internal cites omitted). *State v. Jackson,*  --N.E. 3d--, 2016-Ohio-5488, ¶44. The topic of the

- 3 -

Stuard recusal has not only been "fully considered" by this Court, it has been rehashed ad nauseam.   There is nothing to reconsider in this Proposition of Law.

**State's Response to Appellant's Proposition of Law No. V**

In this Proposition, Appellant argues that the trial judge, at resentencing, was required to integrate self-serving - yet thoroughly unconvincing - "evidence" developed about his upbringing during the re-sentencing proceedings.  This Court fully considered this argument in Appellant's direct appeal of resentencing and made no error in deciding Appellant was not permitted to augment previously admitted testimony with more recently acquired "evidence."

In deciding this Proposition of Law, this Court was fully aware that the more recently manufactured "evidence" which arguably conflicted with the testimony introduced concerning Appellant's upbringing. *State v. Jackson*, 2016-Ohio-5488, ¶69.   This Court conducted a thorough analysis of applicable federal and other state caselaw on this topic and concluded as follows: "No binding authority holds that the Eighth Amendment requires a resentencing judge to accept and consider new mitigation evidence at a limited resentencing when the defendant had the unrestricted opportunity to present mitigating evidence during his original mitigation hearing. *State v. Jackson*, 2016-Ohio-5488, ¶ 73.

Appellant also interjects into this argument the fact that just prior to the start of his mitigation hearing in 2002, one of Appellant's trial counsel fell ill, co-counsel took over as lead counsel for purposes of mitigation, and a third attorney filled in for the ailing trial counsel.  The State once again takes issue with Appellant's statement at page 4 that substitute attorney "knew nothing about the case."  That is nowhere in the record and besmirches the professional reputation of a then-experienced criminal lawyer who is now a judge on the Eleventh District Court of Appeals. The lack of a prior on-record, in-court appearance does not presuppose that

- 4 -

substitute counsel "knows nothing."   The Eleventh District has already determined this claim to

be worthless in considering Appellant's original postconviction petition. *State v. Jackson,* 11th

Dist. No. 2004-T-0089, 2006-Ohio-2651, ¶¶140-141.  Frankly, this Court did the same when it

rejected jurisdiction of that decision in *State v. Jackson,* 111 Ohio St. 1470, 2006-Ohio-5625.

Moreover, this Court addressed the last-minute substitution issue in its analysis of

Proposition of Law No. II. First, this Court correctly found that the claim was res judicata barred

because he could have raised this issue in his direct appeal and because he did previously raise in

his petition for postconviction relief.   *State v. Jackson*, 2016-Ohio-5488, ¶ 118, 119. Secondly,

because it was *Appellant himself* who insisted the mitigation proceed *with* substitute counsel, this

Court held that any potential error was invited error. *State v. Jackson*, 2016-Ohio-5488, ¶¶122-

123.

This Court has given full consideration to Appellant's claim and rejected it based on the

well-established principles of res judicata and the invited error doctrine.  No further review is

necessary because this Court made no error, obvious or otherwise, in reaching these conclusions.

Appellant's argument with respect to Proposition of Law No. V is without merit and no

rehearing is necessary.

### State's Response to Appellant's Proposition of Law VI

Appellant next argues that it was error for this Court to conclude that it could correct any

deficiencies regarding the omission from the sentencing opinion of Appellant's resentencing

allocution through its standard, capital sentencing reweighing exercise. The state disagrees.

With respect, the State takes issue with this Court's underlying conclusion: "Jackson's

remand proceedings involved the same judge, who *did not mention Jackson's allocution in his*

*resentencing opinion*. Although our decision in *Roberts II* was announced more than a year after

- 5 -

Jackson's resentencing occurred, *we conclude that the trial court should have considered Jackson's allocution in the resentencing opinion*." (Emphasis added). *State v. Jackson*, 2016-Ohio-5488, ¶ 83.

While it is true the trial court did not reference Appellant's allocution in the Findings and Fact explaining why the death penalty was the appropriate sentence, a document which appears in the record as T.d. 410, the trial court wrote in the Entry on Sentence (T.d. 409) "***Nathaniel Jackson***was afforded all rights pursuant to Criminal Rule 32. *The Court has considered the record and oral statements,* as well as the principles and purposes of sentencing under O.R.C. Section 2929.11 and has balanced the seriousness and recidivism factors of O.R.C. Section 2929.12." (T.d. 409, unnumbered page 1). That document was filed on the same day and time, Aug. 14, 2012 at 4:17 p.m. as the Findings of Fact (T.d. 410). Identical language appears in the Nunc Pro Tunc Sentencing Entry ( T.d. 416) filed two days later except Appellant is referred to as "the Defendant" rather than "Nathaniel Jackson." For whatever reason, this Court has declined to acknowledge this tandem document in determining whether the trial court considered, or did not consider, a Crim. R. 32 allocution.

That distinction being drawn, the State recognizes this Court found error in the omission by the trial court from the "sentencing opinion" itself. Appellant offers no authority as to why the independent review conducted by this Court would not remedy this error. As this Court has previously noted, "we believe the purpose of an independent review at each stage of the appellate process was designed, at least in part, to correct such omissions." *State v. Maurer*, 15 Ohio St.3d 239, 247, 473 N.E.2d 768, 778 (1984).

This Court, for the second time, listed the facts surrounding Appellant's hatching a plan, from prison, to shoot and kill Robert Fingerhut for the purposes of collecting $550,000 in

- 6 -

insurance proceeds and the affections of Mr. Fingerhut's common-law wife, Donna Roberts. And while Appellant argues error because of the "unreliable" evidence presented at Appellant's mitigation hearing (Appellant's Motion for Reconsideration p. 6), this Court considered both the second allocution and that proposed new evidence and found neither persuasive. *Jackson,* 2016-Ohio-5488, ¶167. This Court wrote of the second allocution,  "Jackson told the court at his resentencing hearing that he had obtained educational certificates, had served as a tutor, and had not been in any serious trouble either on or off death row. Jackson claims that the court's failure to consider his good prison behavior was especially prejudicial. Evidence had established, however, that Jackson and Roberts planned Fingerhut's death while Jackson was in prison earlier. Under these circumstances, it is doubtful that Jackson's claim about his adaptation to prison life could have carried much weight. We hold that any omissions in the sentencing opinion were harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)." *State v. Jackson*, 2016-Ohio-5488, ¶ 86.

This Court drew a sharp contrast between Appellant's allocution and the allocution of his co-defendant, Donna Roberts, whose case was remanded for a third sentencing hearing because the court failed to reference Roberts's allocution. *State v. Roberts,* 137 Ohio St. 3d 230, 2013-Ohio-4580, 998 N.E. 2d 1100, ¶¶69-72.  This Court found that because Roberts introduced absolutely no evidence at her mitigation hearing the omission of allocution references was more egregious than the omission in Appellant's case because he had "presented extensive mitigation evidence" during his original trial. *Jackson*  2016-Ohio-5488, ¶85.

The Appellant's efforts to inject new, and sometimes conflicting, evidence during the postconviction process does not render the original testimony and evidence as "unreliable."  As argued previously, this new evidence was considered by the trial court and the Eleventh District

- 7 -

and found meritless. *State v. Jackson,* 11th Dist. No. 2004-T-0089, 2006-Ohio-2651, This Court

was so underwhelmed with the additional mitigating evidence that it refused jurisdiction.  *State*

*v. Jackson,* 111 Ohio St. 1470, 2006-Ohio-5625.

This Court has fully considered the issue of the allocution and there is no error to correct.

Appellant's Proposition of Law VI is without merit.

**State's Response to Appellant's Proposition of Law VII**

In his final proposed Proposition for re-review, Appellant turns his attention to

Proposition of Law VII, wherein Appellant sought a remand over the similarities between the

trial court's 2002 sentencing opinion and 2012 sentencing opinion.

Appellant makes glancing references to the fact that the "trial judge in *Roberts* drafted an

entirely new sentencing opinion." (Appellant's Motion for Reconsideration p. 8).  However, that

redraft referenced by Appellant from Donna Roberts's case came about as a result of this Court's

decision in *State v. Roberts,* 137 Ohio St. 3d 230, 2013-Ohio-4588, and after the original trial

judge, John Stuard, left the bench and died shortly thereafter.  To be clear, the opinion referenced

by Appellant was written by Judge Stuard's successor, Ronald Rice, who, unlike Judge Stuard,

was required to acquaint himself with the record from the ground up, listen to Roberts's lengthy

allocution, and then proceed to write his own opinion.  The direct appeal of that entry is pending

in this Court in *State v. Roberts,* Case No. 2014-0989.

Appellant in this Proposition of Law does exactly what *Dublin City School Bd., supra,*

prohibits:  He is rearguing arguments already rejected.  As this Court correctly noted, "Jackson

presents no additional evidence showing that prosecutorial taint from the 2002 sentencing

opinion carried over to the 2012 sentencing opinion. Indeed, during oral argument, Jackson's

counsel acknowledged that the prosecutor was not involved in writing the new sentencing

- 8 -

opinion. Accordingly, Jackson has failed to overcome the presumption that the judge was 'capable of separating what may properly be considered from what may not be considered' and followed the law. *In re Disqualification of Forsthoefel,* 135 Ohio St.3d 1316, 2013-Ohio-2292, 989 N.E.2d 62, ¶ 9, citing *In re Disqualification of George,* 100 Ohio St.3d 1241, 2003-Ohio-5489, 798 N.E.2d 23, ¶ 5. Under these circumstances, it is unnecessary for the trial court to prepare a third sentencing opinion because of similarities in wording between the second and first sentencing opinions." *State v. Jackson*, 2016-Ohio-5488, ¶ 94.

As the State has argued repeatedly in both co-defendants' cases, Appellant fails to highlight a solitary sentence which reveals a "taint" by the prosecution. Appellant does not cite a single inaccuracy in the 2012 entry or a finding that cannot be supported by the record. As argued in the State's briefing, the disciplinary proceedings proved the prosecutor's office, at worst, acted as a scrivener for the trial court to reduce to the printed page a decision already weighed, considered and made by the trial court alone. *Disciplinary Counsel v. Stuard,* 121 Ohio St. 3d 29, 2009-Ohio-261, 901 N.E. 2d 788, ¶5. In its independent review of the sentencing entry, this Court found no error and independently concluded the death penalty was warranted for Mr. Fingerhut's pre-meditated murder. *State v. Jackson*, 2016-Ohio-5488, ¶¶143-167.

To order a third sentencing opinion by a successor judge solely because of the similarities would be to elevate form over substance and would not serve to promote the interests of justice; it would amount to window dressing with no practical purpose. Appellant does not cite to any error at all, let alone one which needs the attention of this Court to correct. He merely re-argues a proposition already rejected by this Court. Reconsideration is not merited.

- 9 -

## CONCLUSION

For the reasons thus stated, the State urges denial of Appellant's Motion for

Reconsideration.  Appellant fails to highlight a single issue which this Court has not already

thoroughly addressed, in some cases, several times over. Appellant's motion for reconsideration

must be denied.

Respectfully Submitted,
DENNIS WATKINS (#009949)
TRUMBULL COUNTY PROSECUTING ATTY. BY:


CHARLES L. MORROW (#0040575)
Assistant Prosecuting Attorney


LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. NW, 4th Floor
Warren, Ohio, 44481
Telephone No.: (330) 675-2426
Fax No.: (330) 675-2431

COUNSEL FOR APPELLEE, THE STATE OF OHIO

## PROOF OF SERVICE

I do hereby certify that a copy of the foregoing document was sent by ordinary U.S. Mail

to Atty. Randall L. Porter, Assistant Public Defender, 250 E. Broad Street, Suite 1400,

Columbus, Ohio, 43215, and Atty. Dennis L. Sipe, 410 Front St.,, Unit 2, Marietta, Ohio, 45750,

Counsel for Appellant Nathaniel Jackson, on this 14th Day of September, 2016.


LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney

- 10 -



# The Supreme Court of Ohio

FILED

NOV -9 2016

CLERK OF COURT
SUPREME COURT OF OHIO

State of Ohio

v.

Nathaniel Jackson

Case No. 2012-1644

RECONSIDERATION ENTRY

Trumbull County

It is ordered by the court that the motion for reconsideration in this case is denied.

(Trumbull County Court of Common Pleas; No. 01-CR-794)

_____

Maureen O'Connor
Chief Justice

**The Official Case Announcement can be found at http://www.supremecourt.ohio.gov/ROD/docs/**

Supreme Court of Ohio Clerk of Court - Filed December 08, 2016 - Case No. 2012-1644

# IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | Supreme Court Case No.  2012-1644 |
| -vs- | : | |
| NATHANIEL JACKSON, | : | **This is a capital case.** |
| Appellant. | : | |

_____

## ON APPEAL FROM THE COURT OF COMMON PLEAS, TRUMBULL COUNTY, OHIO, CASE NO. 01-CR-794
_____

## APPELLANT NATHANIEL JACKSON'S MOTION FOR APPOINTMENT OF COUNSEL
_____

Dennis Watkins (0009949)
Trumbull County Prosecuting Attorney

Luwayne Annos (0055651)
Assistant Prosecuting Attorney

160 High Street, N.W.
Administration Building, 4th Floor
Warren, Ohio 44481
Telephone: 330-675-2426
Facsimile: 330-675-2431

COUNSEL FOR APPELLEE

Angela Wilson Miller (0064902)
Attorney at Law

322 Leeward Drive
Jupiter, Florida 33477

Telephone: 561-529-0545
Facsimile: 561-422-4820
awmillerlaw@att.net

COUNSEL FOR APPELLANT

1

IN THE SUPREME COURT OF OHIO

STATE OF OHIO,                          :        Case No. 2012-1644

      Appellee,                        :

-vs-                                    :        **This is a Capital Case.**

NATHANIEL JACKSON,                      :

      Appellant.                       :
_____

**ON APPEAL FROM THE COURT OF COMMON PLEAS,
TRUMBULL COUNTY, OHIO CASE NO. 01- CR -794**

**APPELLANT NATHANIEL JACKSON'S MOTION FOR
APPOINTMENT OF COUNSEL**
_____

      Appellant Jackson moves this Court for the appointment of undersigned counsel for the purpose of preparing and filing his application for reopening.  S. Ct. Prac. R. 11.06. A memorandum of law in support of this motion is attached.

                                        Respectfully submitted,

                                        /s Angela Wilson Miller_____
                                        Angela Wilson Miller (0064902)
                                        Attorney at Law
                                        322 Leeward Drive
                                        Jupiter, FL  33477
                                        Phone: 561-529-0545
                                        awmillerlaw@att.net

                                        Counsel for Appellant Jackson

2

## MEMORANDUM IN SUPPORT

On November 9, 2016, this Court denied Appellant Nathaniel Jackson's ("Appellant") motion for reconsideration.  *State v. Jackson*, 2016-Ohio-7677.  His conviction and death sentence was affirmed.  Appellant requests that this Court appoint counsel for the purpose of preparing and filing his application for reopening pursuant to S. Ct. Prac. R. 11.06.  Appellant's application for reopening will be due February 7, 2017.

### I.  The Sixth and Fourteenth Amendments entitle Appellant to appointed counsel.

Appellant Jackson is currently under a sentence of death.   He had a direct appeal as of right to this Court.  Ohio Constitution,  Article IV, Section (B)(2)(b); O.R.C. §2929.05(A).  Because Appellant was indigent, he was entitled to, and received, appointed counsel for his direct appeal.  "Once the State chooses to establish appellate review in criminal cases, it may not foreclose indigents from access to any phase of that procedure because of their poverty."  *Burns v. Ohio*, 360 U.S. 252, 257 (1959).

The right to counsel encompasses the right to the effective assistance of counsel.  *Wainwright v. Torna*, 455 US 586 (1982); *State v. Buell*, 70 Ohio St. 3d 1211 (1994).  The only means Appellant has available to ensure that he received the effective assistance of counsel on direct appeal is to file an Application to Reopen pursuant to S. Ct. Prac. R. 11.06.  He requires the assistance of appointed counsel to review the record, identify omitted issues, and prepare and draft the application.

### II.  Appellant Jackson will be denied due process and equal protection by application of S. Ct. Prac. R. 11.06.

The state cannot premise the availability of S. Ct. Prac. R. 11.06 review on the ability to pay for the process.  *Griffin v. Illinois*, 351 U.S. 12 (1956).  S. Ct. Prac. R. 11.06(B) identifies what must be contained in an application for reopening.  Appellant must include:  "[a]ny parts of the

3

record available to the applicant and all supporting affidavits upon which the applicant relies." Appellant is indigent and unable to afford the costs of reproducing the parts of the record necessary to support the application for reopening.  Appellant is without the financial resources necessary to reproduce the materials in support of the application for reopening as well as submitting the necessary copies.

Additionally, the appointment of counsel for the Application to Reopen is currently contingent upon this Court determining that "there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal . . . If the Supreme Court grants the application, . . . The Supreme Court will . . . (1) appoint counsel."  S. Ct. Prac. R. 11.06 (F)(1).  All of this means that Appellant must proceed without counsel to challenge the performance of his court appointed appellate attorney.  This requires Appellant to research and draft this "genuine issue" of ineffective assistance of appellate counsel and to identify issues that the court appointed attorneys missed, despite their qualifications under Sup. R. 20.

Appellants with financial resources to retain counsel would not be forced to proceed alone through this litigation.  It is inconsistent with due process and fairness to require an indigent defendant to present the merits of claims before counsel can be appointed.  *Douglas v. California*, 372 U.S. 353 (1963).  See also *Draper v. Washington*, 372 U.S. 487 (1963) (state cannot make free transcript contingent on determination that appeal would not be frivolous).

Destitute defendants must be afforded appellate review that is as adequate as defendants who have enough money to buy transcripts.  *Griffin*, 351 U.S. at 19.  The thought of an indigent capital appellant attempting to draft legal documentation of such complexity demonstrates the need for the appointment of counsel.

4

**III.  The practice of this Court has been to appoint counsel to pursue applications to reopen in capital cases.**

This Court has appointed counsel to prepare S. Ct. Prac. R. 11.06 applications in death penalty cases.  *State v. Turner*, 114 Ohio St.3d 1494 (2007); *State v. Cassano*, 101 Ohio St.3d 1478 (2004); *State v. White*, 88 Ohio St.3d 1439 (2000).  The appointment of counsel not only assists Appellant but also promotes judicial economy.

**IV.  Conclusion.**

To ensure adequate review of his conviction and sentence, Appellant Nathaniel Jackson requests the appointment of undersigned counsel consistent with Sup. R. 20.  The purpose of the appointment is for the reviewing, researching, drafting and filing of an Application to Reopen pursuant to Sup. Ct. Prac. R. 11.06.

Respectfully submitted,

/s  Angela Wilson Miller
Angela Wilson Miller, #0064902
322 Leeward Drive
Jupiter, FL 33477
Telephone: (561) 529-0545
Facsimile: (561) 422-4820
awmillerlaw@att.net

Counsel for Appellant

5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 8, 2016, I served a copy of the foregoing by regular

United States mail addressed to:

Mr. Dennis Watkins
Trumbull County Prosecuting Attorney
160 High St., N.W.
Admin. Bldg., 4th Fl.
Warren, Ohio 44481

/s   Angela Wilson Miller
Angela Wilson Miller, #0064902
Counsel for Appellant

# The Supreme Court of Ohio

FILED
DEC 23 2016
CLERK OF COURT
SUPREME COURT OF OHIO

State of Ohio

    v.

Nathaniel Jackson

Case No. 2012-1644

E N T R Y

    This cause came on for further consideration upon the filing of appellant's motion for appointment of counsel. It is ordered by the court that the motion is granted and Angela Wilson Miller is appointed to represent appellant for the purpose of filing an application to reopen his direct appeal pursuant to S.Ct.Prac.R. 11.06.

    (Trumbull County Court of Common Pleas; No. 01-CR-794)

Maureen O'Connor
Chief Justice

**The Official Case Announcement can be found at http://www.supremecourt.ohio.gov/ROD/docs/**



# The Supreme Court of Ohio

FILED

JAN 30 2017

CLERK OF COURT
SUPREME COURT OF OHIO

State of Ohio

v.

Nathaniel Jackson

Case No. 2012-1644

E N T R Y

Upon review of the application for attorney fees filed on January 26, 2017, the court finds that the fees hereinafter approved are reasonable.

Accordingly, it is ordered that Dennis L. Sipe is granted appointed counsel fees in the sum of $5,683.50, which amount is ordered certified to the Trumbull County Auditor for payment.

(Trumbull County Court of Common Pleas; No. 01-CR-794)

Maureen O'Connor
Chief Justice

Supreme Court of Ohio Clerk of Court - Filed February 07, 2017 - Case No. 2012-1644

IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | Supreme Court Case No. 2012-1644 |
| -vs- | : | **This is a capital case.** |
| NATHANIEL JACKSON, | : | |
| Appellant. | : | |

## ON APPEAL FROM THE TRUMBULL COUNTY COURT OF COMMON PLEAS, CASE NO. 01-CR-794

## APPELLANT NATHANIEL JACKSON'S APPLICATION FOR REOPENING PURSUANT TO S.CT. PRAC. R. 11.06

Dennis Watkins, #0009949
Trumbull County Prosecutor

LuWayne Annos, #0055651
Charles Morrow,  #0040575
Assistant Prosecuting Attorneys

Trumbull County Prosecutor's Office
160 High Street, N.W.
Administration Building, 4th Floor
Warren, Ohio 44481
(330) 675-2426

Counsel for Appellee

Angela Wilson Miller, #0064902
Attorney at Law

322 Leeward Drive
Jupiter, Florida  33477
(561) 529-0545
awmillerlaw@att.net

Counsel for Appellant

IN THE SUPREME COURT OF OHIO

STATE OF OHIO,                    :

      Appellee,                    :        Supreme Court Case No.  2012-1644

-vs-                             :

NATHANIEL JACKSON,                :        **This is a capital case.**

      Appellant.                   :

---

**ON APPEAL FROM THE TRUMBULL COUNTY COURT OF COMMON PLEAS,
CASE NO. 01-CR-794**

---

**APPELLANT NATHANIEL JACKSON'S APPLICATION FOR REOPENING
PURSUANT TO S.Ct. Prac. R. 11.06**

---

Appellant Nathaniel Jackson asks this Court to grant his Application for Reopening based upon the ineffective assistance of counsel during his direct appeal.  S.Ct. Prac. R. 11.06 and *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992).

**I.**    **Jackson's direct appeal counsel were constitutionally ineffective.**

The Due Process Clause of the Fourteenth Amendment guarantees effective assistance of counsel on a criminal appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L. Ed.2d 821 (1985).  Appellate counsel must act as an advocate and support the cause of the client to the best of their ability.  *See, e.g.*, *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L. Ed.2d 493 (1967).  After a review of the direct appeal that was filed on Jackson's behalf, it is apparent that his appellate attorneys were prejudicially ineffective for failing to raise meritorious issues that arose his resentencing hearing.

Because appellate counsel were prejudicially ineffective in this case, this Court must reopen Jackson's appeal.  S.Ct. Prac. 11.06.  Mr. Jackson was denied the effective assistance of appellate

1

counsel as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, §§ 2, 9, 10, and 16 of the Ohio Constitution when his appellate counsel failed to include critical claims in his direct appeal.

## II.     Appellate counsel were prejudicially ineffective for failing to raise meritorious issues.

The failure to present a meritorious issue for review constitutes ineffective assistance of counsel. See e.g., *Franklin v. Anderson*, 434 F.3d 412 (6th Cir. 2007); *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48.  Had appellate counsel presented the following propositions of law, the outcome of Jackson's direct appeal would have been different.

**Proposition of Law No. I:**  **A defendant is denied the right to the effective assistance of counsel when trial counsel prejudicially fails his client during his capital proceedings.  U.S. Const. Amends. V,VI, XIV; Ohio Const. Art. I, §§ 2, 9, 10 and 16.**

The Sixth and Fourteenth Amendments guarantee the accused the right to counsel at trial. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799 (1963).  When evaluating claims of ineffective assistance of counsel, this Court must determine if counsel's performance was deficient, and if so, whether petitioner was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed.2d 674 (1984); *Glenn v. Tate*, 71 F.3d 1204, 1210-11 (6th Cir. 1995).

### A.     Trial counsel did not request that a new jury be impaneled for Jackson's sentencing proceeding.

Jackson's death sentence was vacated and his case was remanded for a new sentencing hearing due to the actions of Judge Stuard.  Specifically, Judge Stuard elicited the assistance of the state in writing Jackson's sentencing opinion and did not involve defense counsel. *State v. Jackson*, 2016-Ohio-5488.  No confidence could be had in the outcome of the sentencing proceeding or the sentencing opinion.

2

Because Jackson's sentence was vacated, and his case was remanded for sentencing, defense counsel should have requested that a new jury be impaneled. The trial court is required to impanel a new jury for a capital defendant on remand for legal errors that resulted in the death penalty being set aside. R.C. 2929.06(B) states in pertinent part:

> Whenever any court of this state or any federal court sets aside, nullifies, or vacates a sentence of death imposed upon an offender because of error that occurred at the sentencing phase of the trial and if division (A) of this section does not apply, the trial court that sentenced the offender **shall** conduct a new hearing to resentence the offender. If the offender was tried by a jury, the trial court **shall** impanel a new jury for the hearing.

(Emphasis added).

Additionally, the Supreme Court of Ohio decided *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583.  In *White*, the court held that where a capital offender had a jury trial, and the death sentence is later set aside, a new jury must be impaneled and new penalty hearing must be conducted. It is the jury that must consider whether the death penalty is imposed.

*White* was decided two months prior to Jackson's resentencing proceeding. And, recently, the United States Supreme Court held that each fact necessary to impose a sentence of death *must be made by the jury*. *Hurst v. Florida*, ___ U.S. ___, 136 S.Ct. 616 (2016).

Defendant Hurst's case was also reversed and remanded for a new sentencing hearing. A new jury was impaneled to assist in determining whether the death penalty should be re-imposed. The jury, however, issued only an advisory opinion. Under Florida's sentencing scheme, it is the judge who weighs the aggravating and mitigating circumstances and ultimately enters a sentence of life imprisonment or death.    Florida's capital sentencing scheme was found unconstitutional because the Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death. *Id.* at 619; *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L. Ed.2d 556 (2002).

3

Both *White* and *Hurst* make it clear that where death may be imposed it is the jury that must make the final determination.  Jackson, however, did not have a jury for his sentencing proceeding. In fact, Jackson's trial judge stated that he already had Jackson's sentencing opinion written before the "sentencing proceeding" began.  If Florida's hybrid sentencing scheme violates the Sixth Amendment in light *Ring,* Jackson's sentencing hearing on remand certainly violates the Sixth Amendment.

Accordingly, the trial court's subsequent independent evaluation, reweighing, and imposition of death in Jackson's case is unconstitutional. If there was any doubt about the application of *White, Hurst* makes it clear that where death is an option it is the jury, not the judge, that must find each fact necessary to impose a death sentence.

Appellate counsel should have raised as error trial counsel's failure to request the empanelment of a new jury at sentencing.  This failure resulted in Jackson being denied a full and fair sentencing hearing.

**B.  Defense counsel was ineffective for failing to adequately prepare Jackson for allocution, especially when this was the only avenue the court was allowing for Jackson to argue why his life should be spared.**

In Jackson's case, the trial court overruled counsel's efforts to present live mitigation testimony.  The court, however, did leave open one door, Jackson's opportunity to speak on his own behalf.  While experts can better explain mental retardation and substance abuse issues, Jackson needed to be prepared to put forth his story.  He was not.

Jackson informed the court that he had earned some certificates while in prison and that he had not been in trouble since he was placed on death row.  He did not present a coherent, compelling presentation. *Hamblin v. Mitchell*, 354 F.3d 482 (6th Cir. 2003) (counsel did nothing to help their client prepare or give his statement in the penalty phase).  The very purpose of

4

allocution is to allow the defendant an opportunity to personally appeal for his life.  *State v. Campbell*, 90 Ohio St.3d 320, 2000-Ohio-183, 738 N.E.2d 1178.

Allocution is a significant opportunity for the defendant and can impact the outcome of the proceedings.  *See State v. Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580, __N.E.2d __.  In *Roberts*, this Court reversed the defendant's case for a second time based on significant information she provided through allocution and the fact that the trial court did not cite it in the sentencing opinion.  Specifically, Roberts explained how she had a very abusive childhood, was raped by her cousin, had a series of head injuries, attempted suicide, and suffered auditory hallucinations.  Additionally, Roberts detailed examples of selfless contributions she made to society.

Jackson's brief, detached statement did not approach the allocution the defendant provided in *Roberts*.  Jackson did not seem to understand the importance of his statement to the court.

"A Crim. R. 32 inquiry is much more than an empty ritual: it represents a defendant's last opportunity to plead his case or express remorse."  *State v. Green*, 90 Ohio St.3d 352, 359-60, 2002-Ohio-182, 738 N.E.2d 1208.  It was counsel's duty to properly prepare Jackson and explain the importance of his statement to the court.  If Jackson needed to be guided, especially given his low IQ, the trial court could have allowed for that if defense counsel had asked.  *See State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185 (trial court has discretion to allow counsel to ask questions in presentation of unsworn statement).  Ultimately, the personal pleas, mitigation, and statements of remorse would have come from Jackson.[1]

---

[1] Jackson, with the assistance of counsel, could have informed the court about his intellectual disability, that at a young age he lived on the street and was forced to deal with violence and that he was able to adapt to prison life and was a candidate for life without parole.  A new sentencing hearing would have been warranted just as it was in *Roberts*.  *State v. Jackson*, 2016-Ohio-5488 at ¶86 ("Unlike the situation in *Roberts II*, Jackson's allocution during his resentencing hearing added little to the mitigation that was already before the court.").

5

**C.  Trial counsel was ineffective for failing to proffer supporting evidence for Jackson's claim that he had made a positive adjustment in prison.**

Sentencing is a critical stage of the criminal proceeding at which the defendant is entitled to the effective assistance of counsel. *Mempa v. Rhay*, 389 U.S. 129, **88** S.Ct. 254, 19 L. Ed.2d 336 (1967).  In capital cases, "the sentencer may not refuse to consider or be precluded from considering any relevant mitigating evidence." *Skipper v. South Carolina*, 476 U.S. 1, 106 S.Ct. 1669, 90 L. Ed.2d 1 (1986).

Here, Jackson made a passing reference to his positive adjustment and good behavior in prison during allocution.  This was the only opportunity Jackson had to make his argument that the court should spare his life.  Defense counsel did not proffer or add anything to support Jackson's statement.  Indeed, this Court specifically noted that it had nothing to review regarding Jackson's good behavior in prison.  "Moreover, it is unclear what other evidence about good prison behavior (besides his statement in allocution) Jackson could have presented." *Jackson* at ¶¶ 66, 68.

Despite the obligation of counsel to present mitigation evidence, defense counsel failed to reasonably investigate, prepare and present available information from Jackson's institutional file. The failure to proffer testimony of prison staff or information from prison records prejudiced Jackson and deprived him of his state and federal constitutional rights.  Jackson's case must be reversed and remanded for a new sentencing hearing.

**Proposition of Law No. II**:  **Appellate counsel failed to argue that the sentencing error in Jackson's case could not be rectified by an independent sentence evaluation by this Court on appeal.**

Jackson's Sixth Amendment right to a full and fair hearing in front of a jury was also denied on direct appeal.  The trial court erred again at the sentencing phase.  This time the error was failing to consider Jackson's allocution in determining his death sentence.  This Court, however, did not reverse and remand Jackson's case for a new sentencing hearing as it did in *State v. Roberts*.

6

Rather, this Court simply conducted its own sentence evaluation and determined that the error was harmless. *State v. Jackson*, 2016-Ohio-5488.

Independent sentencing evaluations and imposition of the death penalty by the court, not the jury, violate a defendant's Sixth Amendment right to trial by jury. *Hurst v. Florida,* ___U.S. ___, 136 S.Ct. 616 (2016); *Ring v. Arizona*, 536 U.S. 584 (2002). The Sixth Amendment requires a jury to find each fact necessary to impose a sentence of death, including a weighing determination. That did not occur here.

The new rule in *Hurst* invalidates appellate re-weighing, which formally was permissible. *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L. Ed.2d 725 (1990). The *Clemons* Court reasoned:

> Nothing in the Sixth Amendment as construed by our prior decisions indicates that a defendant's right to a jury trial would be infringed where an appellate court invalidates one of two or more aggravating circumstances found by the jury, but affirms the death sentence after itself finding that the one or more valid remaining aggravating factors outweigh the mitigating evidence. Any argument that the Constitution requires that a jury impose the sentence of death or make the findings prerequisite to imposition of such a sentence has soundly been rejected by prior decisions of this Court. *Cabana v. Bullock*, 474 U.S. 376, 106 S.Ct. 689, 88 L.Ed.2d 704 (1986), held that an appellate court can make the findings required by *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), in the first instance and stated that "[t]he decision whether a particular punishment - even the death penalty - is appropriate in any given case is not one that we have ever required to be made by a jury." 474 U.S., at 385, 106 S.Ct. at 696. *Spaziano v. Florida*, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), ruled that neither the Sixth Amendment, nor the Eighth Amendment, nor any other constitutional provision provides a defendant with the right to have a jury determine the appropriateness of a capital sentence; neither is there a double jeopardy prohibition on a judge's override of a jury's recommended sentence. Likewise, the Sixth Amendment does not require that a jury specify the aggravating factors that permit the imposition of capital punishment, *Hildwin v. Florida*, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989), nor does it require jury sentencing, even where the sentence turns on specific findings of fact. *McMillan v. Pennsylvania*, 477 U.S. 79, 93, 106 S.Ct. 2411, 2420, 91 L.Ed.2d 67 (1986).

7

*Id.* at 745-746.

The Supreme Court in *Hurst* explicitly overruled the central cases on which *Clemmons* relied:

> We expressly overrule *Spaziano* and *Hildwin* in relevant part.
>
> *Spaziano* and *Hildwin* summarized earlier precedent to conclude that "the Sixth Amendment does not require that the specific findings authorizing the imposition of the sentence of death be made by the jury." *Hildwin*, 490 U.S., at 640-641, 109 S.Ct. 2055. Their conclusion was wrong and irreconcilable with *Apprendi*.

*Hurst*, 136 S.Ct. at 623.

When this Court made the factual finding necessary to support Jackson's death sentence, it engaged in a practice that has now been rejected by the United States Supreme Court in *Hurst*. Appellate counsel was ineffective by not bringing *Hurst* to this Court's attention and arguing that Jackson was constitutionally entitled to a new sentencing hearing on remand with a jury.

Jackson's death sentence violates the Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, sections 5, 9, 10 and 16 of the Ohio Constitution. A jury, not an appellate court, must make the factual findings required to impose a death sentence.

**Proposition of Law No. III:** **Appellate counsel did not argue that Jackson's intellectual disability makes him ineligible for execution. Jackson's death sentence violates his rights as guaranteed by the Eighth Amendment to the United States Constitution.**

Jackson's low intellectual functioning was argued in the context of ineffective assistance of counsel at the penalty phase. Jackson's trial attorneys did a poor job of presenting his intellectual disability at his capital trial and even introduced inaccurate test scores through a psychologist. This psychologist made numerous errors in administering the tests to Jackson and grossly overstated his abilities. Jackson's low intellectual ability also makes him ineligible for execution.

8

The Eighth Amendment prohibits sentencing to death persons who are intellectually disabled. *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L. Ed.2d 335 (2002).   No legitimate purpose is served by executing a person with an intellectual disability. *See Kennedy v. Louisiana*, 554 U.S. 407, 128 S.Ct. 2641, 171 L. Ed.2d 525 (2008) (punishment is justified under one or more of three rationales: rehabilitation, deterrence or retribution).   In evaluating an individual's intellectual disability the court looks for:  (1) significantly sub-average intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before age 18. *State v. Lott*, 97 Ohio St.3d 303, 2002-Ohio-6625, 779 N.E.2d 1011.

Here, Jackson's educational records reveal IQ scores of 70 and 73 before the age of 18. Report cards repeatedly show Ds, Fs and even straight Fs.  (See Vol. I, III, Resentencing Exhibits). The individual education plan (IEP) developed for Jackson described him as "multi-handicapped" and he was later placed in severe behavior handicapped (SBH) classes.  The school attempted to discuss Jackson's inability to adjust to school and his poor adaptive skills with his parents but it was routinely noted that the "parents were invited but did not attend."  Jackson's behavior was often described as aggressive, anti-social and immature.

Jackson's more recent IQ score of 75 was recorded after years of incarceration and being in a structured environment. While still low, this most recent IQ score may be the result of the "Flynn Effect" or the artificial inflation of IQ scores over time.   This is why establishing a hard-and-fast ceiling of a single IQ score to diagnose intellectual impairment was soundly rejected by the United States Supreme Court. *Hall v. Florida*, ___U.S. ___, 134 S.Ct. 1986, 188 L. Ed.2d (2014) (Florida's statutory requirement that a capital defendant show an IQ score of 70 before presenting additional evidence of an intellectual disability violates the Eighth Amendment). Factors such as

9

school records, behavior rating scales, in addition to the IQ test, is necessary to indicate the degree and nature of the impairment. Cornell Legal Information Institute, Holly Tao and Chihiro Tomioka, Hall v. Florida (March 3, 2014).

A person's intellectual disability does not change over his lifetime. *See State v. White*, 118 Ohio St.3d 12, 2008-Ohio-1623, 885 N.E.2d 905. Jackson, is therefore not eligible for the death penalty pursuant to this Court's decision in *Lott* and the United States Supreme Court's decision in *Atkins*. Jackson's case should be reversed and remanded with an order that he be resentenced to life in prison.

### III. Conclusion.

Appellant Jackson requests that this Application for Reopening be granted and that he be afforded an opportunity to file a new appellate brief with supporting materials. S.Ct. Prac. 11.06 and *State v. Murnahan*, 63 Ohio St.3d 60 (1992). Mr. Jackson has shown that there is a genuine issue as to whether he was deprived of the effective assistance of counsel on appeal, with respect to the Propositions of Law and sub-claims.

Respectfully submitted,

Angela Wilson Miller, #0064902
322 Leeward Drive
Jupiter, FL 33477
(561) 529-0545
awmillerlaw@att.net

Counsel for Appellant Jackson

10

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2017, I served a copy of the foregoing by regular

United States mail addressed to:

Ms. LuWayne Annos, Assistant Prosecuting Attorney
160 High St., N.W.
Admin. Bldg., 4th Fl.
Warren, OH 44481

Angela Wilson Miller, #0064902
Counsel for Appellant

11

IN THE SUPREME COURT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 2012-1644 |
| -vs- | : | On Appeal from the Court of Common Pleas of Trumbull County, Ohio Case No. |
| NATHANIEL JACKSON, | : | 01 CR 794 |
| Defendant-Appellant. | : | **This is a capital case.** |

## AFFIDAVIT OF ANGELA WILSON MILLER

| | |
|---|---|
| STATE OF FLORIDA, | ) |
| | ) ss: |
| COUNTY OF PALM BEACH | ) |

I, Angela Wilson Miller, after being duly sworn, hereby state as follows:

1) I am an attorney licensed to practice law in the State of Ohio and I have practiced law for 21 years. I worked as an Assistant State Public Defender for 11 years and was assigned to the Death Penalty Unit. I am certified to practice in the United States District Court for the Southern District of Ohio, the United States District Court for the Northern District of Ohio, the Sixth Circuit Court of Appeals and the Supreme Court of the United States. I am currently in private practice and I am Rule 20 certified for appellate work.

2) Due to my focused practice of law and my attendance at several death penalty seminars, I am aware of the standards of practice involved in the appeal of a case in which the death penalty was imposed.

3) I was appointed by this Court to represent Mr. Nathaniel Jackson and prepare an Application for Reopening (S.Ct. 11.06) on December 23, 2016.

4) I have read this Court's opinion, as well as the transcripts, record and appellate briefs filed on Mr. Jackson's behalf. I also consulted with appellate counsel and the Office of the Ohio Public Defender to prepare the Application for Reopening in this case.

1

5)    The Due Process Clause of the Fourteenth Amendment guarantees the effective assistance of counsel on an appeal as of right. *Evitts v. Lucey*, 469 U.S. 587 (1985).

6)    The initial responsibility of appellate counsel, once the transcript is filed, is to make sure that the entire record is filed with the Supreme Court of Ohio. When appellate counsel files only a partial transcript on appeal, the defendant is deprived of the due process of law guaranteed by the Fourteenth Amendment of the United States Constitution. *Entsminger v. Iowa*, 386 U.S. 748 (1967).

7)    After making sure that the transcript is complete, counsel must then review the record for purposes of issue identification. This review of the record not only includes the transcript but also the pleadings and exhibits.

8)    For counsel to properly identify issues, they must have a good working knowledge of criminal law in general. Many trial issues in capital cases will be decided by criminal law that is applicable to non-capital cases. As a result, appellate counsel must be informed as to the recent developments in criminal law when identifying potential issues on direct appeal. Counsel must remain knowledgeable about recent developments in the law after the merit briefs are filed.

9)    Since the reintroduction of capital punishment in response to the Supreme Court's decision in *Furman v. Georgia*, 408 U.S. 238 (1972), the area of capital litigation in general has become a recognized specialty in the practice of criminal law. Numerous substantive and procedural areas unique to capital litigation have been carved out by the United States Supreme Court. As a result, anyone who litigates in the area of capital punishment must be familiar with these issues in order to raise and preserve them for appellate and post-conviction review.

10)    Appellate representation of a death-sentenced individual requires a recognition that the case will most likely proceed to the federal courts at least twice: first on petition for Writ of Certiorari in the United States Supreme Court, and again on a petition for Writ of Habeas Corpus filed in a federal district court. Appellate counsel must preserve all issues throughout the state court proceedings on the assumption that relief is likely to be eventually sought in federal court. The issues that must be preserved are not only issues unique to capital litigation, but also case and fact-related issues unique to the case that impinge upon federal constitutional rights.

11)    It is a basic principle of appellate practice that to preserve an issue for federal review, the issue must be exhausted in the state courts. To exhaust an issue, the issue must be presented to the state courts in such a manner that a reasonable jurist would have been

2

alerted to the existence of a violation of the United States Constitution. The better practice to exhaust an issue is to cite directly to the relevant provisions to the United States Constitution in each proposition of law and in each assignment of error to avoid any exhaustion problems in the federal courts.

12) Based on the foregoing standards, I reviewed the opinion, record, appellate briefs, and communicated with former appellate counsel.

13) I have identified additional ineffective assistance of trial counsel issues and sub-claims as well as penalty phase and sentencing errors that should have been evaluated by appellate counsel and presented to the Supreme Court of Ohio. Thus, appellate counsels' failure to present these errors raises a genuine issue as to whether or not Mr. Jackson was denied the effective assistance of appellate counsel.

14) Appellate counsel failed to raise the issue of trial counsels' failure to adequately prepare Mr. Jackson for allocution. The trial court refused to allow additional mitigation evidence at the resentencing. Thus, Mr. Jackson needed to be prepared to give a statement that could save his life. He was not.

Allocution is a significant opportunity for the defendant and can influence the outcome of the proceedings. Words from the defendant himself can have great impact. *State v. Campbell*, 90 Ohio St.3d 320, 2000-Ohio-183. In *State v. Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580, this Court reversed and remanded Defendant Robert's case for resentencing given the powerful statement provided at allocution. Roberts expressed remorse and personally detailed a very abusive childhood, rapes, lack of self-worth, history of head injuries and memory loss, history of deep depression and attempted suicide, auditory hallucinations and also provided examples of selflessness and contributions to society. This Court determined that Judge Stuard (also the trial judge for Nathaniel Jackson) could not have considered Robert's statement and handed down a death sentence.

Mr. Jackson's brief, detached statement did not approach what Roberts provided at allocution. Allocution is not an empty ritual but is the defendant's last opportunity to plead his case or express remorse. *Roberts* illustrates the difference a sincere, thoughtful statement from a defendant can make.

15) Defense counsel did not request that a new jury be impaneled for Mr. Jackson's resentencing. Mr. Jackson has never waived his right to a jury trial and a jury needed to be selected for his case on remand as the death penalty was vacated. Appellate counsel did not raise this error.

3

The trial court is required to impanel a new jury for a capital defendant on remand for legal errors that resulted in the death penalty being set aside.  R.C. 2929.06(B); *State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2538.  *White* was decided two months prior to Jackson's resentencing proceeding.  *White* made it clear that capital defendants could no longer rely on *State v. Penix*, 32 Ohio St.3d 369 (1987), to require the imposition of a life sentence after a remand.  Post-*White*, the death penalty was again a possibility for all capital defendants whose cases were reversed and remanded for penalty phase errors.  A new jury, however, was required before death could be imposed.

The United States Supreme Court has held that each fact necessary to impose a sentence of death must be made by a jury.  *Hurst v. Florida*, ___U.S. ___, 136 S.Ct. 616 (2016). Thus, where a capital defendant exercises his right to a jury trial, a judge cannot weigh the aggravating and mitigating factors and ultimately impose a death sentence.

In Mr. Jackson's case the trial judge stated that he had the sentencing opinion written and ready to be filed before the sentencing proceeding even began.  According to *Hurst*, the judge's independent evaluation, reweighing and imposition of the death penalty in Mr. Jackson's case violated the Sixth Amendment.

16) Appellate counsel did not raise trial counsel's failure to present evidence of adaptability to prison life at sentencing.  While the trial court greatly restricted sentencing, Mr. Jackson was allowed to speak on his own behalf.  Counsel offered nothing to support Mr. Jackson's statement that he had changed and improved his life.  No institutional records were offered or cited showing Nathaniel Jackson was not aggressive or a threat while in prison, which would make him a good candidate for life without parole.  Adaptability to prison life is a recognized mitigating factor.  *Skipper v. South Carolina*, 476 U.S. 1 (1986); *State v. Simko*, 71 Ohio St.3d (1994).

17) Appellate counsel failed to argue that the sentencing error in Mr. Jackson's case could not be rectified by an independent sentence evaluation by this Court on appeal.  Specifically, the trial judge in Mr. Jackson's case failed to discuss his allocution and consider it before imposing the death penalty.  In a very similar case, *State v. Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580, this Court reversed and remanded Defendant Robert's case for a new sentencing hearing for the same error.

Rather than reverse and remand Mr. Jackson's case, this Court decided to engage in its own appellate re-weighing.  The court then decided that the sentencing error was harmless and affirmed the imposition of the death penalty.  An independent sentencing evaluation and imposition of the death penalty by a court, not the jury, violates the Sixth

4

Amendment. *Hurst v. Florida* ___ U.S. ___, 136 (2016); *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002).

The trial court failed to consider Mr. Jackson's allocution before sentencing him to death. Nathaniel Jackson's case should have been reversed and remanded for a new sentencing proceeding where he could have requested a jury. The Sixth Amendment requires a jury to find each fact necessary to impose a sentence of death.

Appellate counsel should have brought *Hurst* to this Court's attention and that the practice of appellate re-weighing will no longer be upheld. An appellate court cannot make the factual findings required to impose death and circumvent the role of the jury.

18)     Appellate counsel did not argue that Nathaniel Jackson's intellectual disability makes him ineligible for execution. Mr. Jackson's sentence of death is a violation of the Eighth Amendment. *See Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242 (2002). His intellectual disability was not appropriately raised by trial counsel or considered by the courts when determining whether the death penalty should be imposed. Mr. Jackson's school records reveal that he had IQ scores of 73 and 70 before the age of 18 and that he could never adapt well to school. His behavior was described as immature by school officials. Attempts to utilize an individualized education plan (IEP) based on the determination that he was multi-handicapped was unsuccessful. The use of severe behavior handicapped (SBH) classes were also unsuccessful. Mr. Jackson's report cards ranged from Ds and Fs to straight Fs. He did not complete high school.

In *Hall v. Florida*, ___U.S. ___, 134 S.Ct. 1986 (2014), the United States Supreme Court determined that rigid state rules that foreclose exploration of a person's intellectual disability violate the Eighth Amendment. Florida's law, that any person with an IQ score above 70 was not intellectually disabled, was found unconstitutional. The *Hall* decision recognized that there was a standard five-point margin of error with IQ scores, but also that an IQ score may not accurately reflect a person's very poor adaptive skills and inability to conform or adjust to society. *Id.* at 1994-1995 ("See APA brief 15-16 ("[T]he relevant clinical authorities all agree that an individual with an IQ above 70 may be properly diagnosed with intellectual disability if significant limitations in adaptive functioning also exist"); DSM-5, at 37 ("[A] person with an IQ score above 70 may have such severe behavioral problems . . . that the person's actual functioning is comparable to that of individuals with a lower IQ score.")).

Here, Mr. Jackson has demonstrated that he suffers with a significant intellectual disability and should not be executed. At a minimum, the law requires that Mr. Jackson

5

have the opportunity to present further evidence of his intellectual disability, including deficits in adaptive functioning over time.

19) An appellate court has an independent duty to read the transcript and identify errors that are plain even if they are not presented on appeal. R.C. §2929.05. As a practical matter, however, appellate courts rely almost exclusively on appellate counsel to identify errors and the applicable law.

20) Therefore, Nathaniel Jackson, was detrimentally affected by the deficient performance of his former appellate counsel.

Further affiant sayeth naught.

Angela Wilson Miller, #0064902
Counsel for Appellant, Nathaniel Jackson

Sworn and subscribed in my presence this _6_ day of February, 2017.

JOSEPH S SULLIVAN
Notary Public - State of Florida
Commission # FF 949886
My Comm. Expires Jan 12, 2020

Notary Public

6

Supreme Court of Ohio Clerk of Court - Filed March 08, 2017 - Case No. 2012-1644

IN THE SUPREME COURT OF OHIO

STATE OF OHIO,
    Appellee ,

    v.

NATHANIEL JACKSON
    Appellant.

**CASE NO. 2012-1644**

On Appeal from the Trumbull
County Court of Common Pleas,
Case No. 2001-CR-794

**DEATH PENALTY CASE**

---

APPELLEE STATE OF OHIO'S MEMORANDUM IN RESPONSE TO APPELLANT'S
APPLICATION FOR REOPENING PURSUANT TO S.Ct. Prac. R. 11.06

---

DENNIS WATKINS (#0009949)
Prosecuting Attorney, by
LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High Street, N.W.
4th Floor, Administration Building
Warren, Ohio 44481
Telephone No. (330) 675-2426
Fax No. (330) 675-2431
psannos@co.trumbull.oh.us

ATTORNEY FOR
PLAINTIFF-APPELLEE
STATE OF OHIO

ANGELA WILSON MILLER (#0064902)
322 Leeward Drive
Jupiter, Florida 33477
Telephone No.(561) 529-0545
awmillerlaw@att.net

ATTORNEY FOR
DEFENDANT-APPELLANT
    NATHANIEL JACKSON

Now comes the Plaintiff-Appellee, the State of Ohio, pursuant to S.Ct. Prac. R. 11.06(C), who through undersigned counsel **oppose** Defendant-Appellant Nathaniel Jackson's ("Appellant") Motion for Reopening filed in the Court February 7, 2017. Appellant seeks to reopen his direct appeal after this Court denied Appellant's Motion for Reconsideration on November 10, 2016. S.Ct. Prac. R. 11.06 (E) is clear: "[an] application for reopening shall be granted **if** there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." (Emphasis added).

Before addressing the three Propositions of Law raised in Appellant's application, the State would direct this Court's attention to its opinion in *State v. Spivey*, 84 Ohio St. 3d 24, 25, 701 N.E.2d 696, 697, 1998-Ohio-704. This Court noted: "In *State v. Reed* (1996), 74 Ohio St.3d 534, 535, 660 N.E.2d 456, 458, we held that the two-prong analysis found in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, is the appropriate standard to assess a defense request for reopening under App.R. 26(B)(5). Spivey must prove that his counsel were deficient for failing to raise the issues he now presents, as well as showing that had he presented those claims on appeal, there was a 'reasonable probability' that he would have been successful. Thus Spivey bears the burden of establishing that there was a 'genuine issue' as to whether he has a 'colorable claim' of ineffective assistance of counsel on appeal." *Spivey*, *supra*. The defendant in *Spivey*, who was also convicted and sentenced to death, filed his motion for reopening in the court of appeals pursuant to App. R. 26(B). In the instant case, Appellant has filed in this Court pursuant to App.R.26(B)'s equivalent, S.Ct. Prac. R. 11.06 and *State v. Murnahan*, 63 Ohio St. 3d 60, 584 N.E.2d 1204, 1205 (1992).

Appellant in his Application alleges that his appellate counsel was ineffective for failing to raise "meritorious" claims after Appellant's resentencing including, but not limited to, failing

1

to request a new sentencing jury, to prepare Appellant for allocution, and to introduce an alleged intellectual deficiency. The record directly refutes Appellant's claims.

As this court is aware, Appellant was convicted by a jury in November 2002. (T.d. #262-271). On December 9, 2002, Appellant was sentenced to death. (T.d. #279). Appellant appealed to this Court and this Court affirmed his conviction on July 3, 2003 holding "[p]ursuant to R.C. 2929.05(A), we have also independently weighed the aggravating circumstances against the mitigating factors. We find that the aggravating circumstances outweigh any mitigation beyond a reasonable doubt." *State v. Jackson,* 107 Ohio St.3d 300, 2006-Ohio-1 ¶77, ¶183.

Despite this Court's affirmation of Appellant's conviction and sentence, the Eleventh District Court of Appeals   in October 2010 vacated Appellant's sentence and remanded the matter to the trial court for resentencing pursuant to this Court's decision in *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168. *State v. Jackson,* 11th Dist. Trumbull No. 2009-T-0050, 2010-Ohio-5054, 190 Ohio App. 3d 319, 326, 941 N.E.2d 1221, 1226, ¶ 33. Appellant was resentenced to death and this Court, once again, affirmed Appellant's conviction and sentence. *State v. Jackson*, 2016-Ohio-5488, 2016 WL 4485932, ¶ 3, *reconsideration denied*, 2016-Ohio-7677, 147 Ohio St. 3d 1439, 63 N.E.3d 157.

With this in mind, the State turns to the three propositions of law upon which Appellant seeks reopening. The State submits that Appellant has failed to establish a genuine issue as to his claim that he received ineffective assistance of counsel on appeal. In fact, several of the issues raised by Appellant have been previously litigated before this Court and in Appellant's slew of post-conviction proceedings. Importantly, none of the presented claims, if not previously presented, would have changed the outcome in this Case. As such, Appellant has failed to meet his burden and his application for reopening should be denied.

2

**State's Response to Appellant's Proposition of Law No. I**

**A. New Sentencing Jury Unnecessary**

Appellant first submits that his appellate counsel was ineffective for failing to request the trial court to impanel a new jury for resentencing pursuant to R.C. 2929.06(B) and *State v. White,* 132 Ohio St.3d 344, 2010-Ohio-2583. Neither is applicable to the instant case.

R.C. 2929.06(B) requires a new jury to be impaneled for resentencing when a court sets aside, nullifies, or vacates a sentence of death because of an error that occurred during the sentencing phase of the trial. In *White, supra,* this Court held that when a capital defendant, tried and convicted by a jury, has his sentence later set aside, a new jury will be impaneled for the new penalty hearing. First, the State submits that any "error" did not occur during the sentencing phase; therefore impanelling a new jury is unnecessary. Second, impanelling a new sentencing jury would have been contrary to the order from this Court in *Roberts, supra,* and in *State v. Jackson*, 11th Dist. Trumbull No. 2009-T-0050, 2010-Ohio-5054.

In the instant case, a jury convicted Appellant, found the necessary aggravating factors, and recommended the death penalty.  The trial court drafted the sentencing entry imposing the death penalty. In *Roberts, supra,* the trial court requested the assistance of the prosecutor's office to draft the sentencing entry which prompted this Court to remand *Roberts* back to the trial court in order for the judge to write a new sentencing entry.  The Eleventh District Court of Appeals held: "Based on the Supreme Court of Ohio's holding in *Roberts,* appellant is entitled to the same relief afforded to his co-defendant. Thus, the trial judge must *personally* review and evaluate the appropriateness of the death penalty, *prepare* an entirely new sentencing entry as required by R.C. 2929.03(F), and conduct whatever other proceedings are required by law and consistent with this opinion. [*Roberts, supra,*] at ¶ 167." (Emphasis added). *Jackson*, 2010-Ohio-5054, ¶ 29.

3

Therefore the error did not occur during the sentencing phase which would entitle Appellant to a brand new sentencing hearing. Any error was in the drafting of the sentencing entry, which was rectified by Appellant's resentencing and affirmed by the Court.

Appellant further contends that a new jury was required to be impaneled based on the recent decision in *Hurst v. Florida,* ____U.S.____M 136 S.Ct. 616 (2016). However, this Court has already reviewed and rejected the argument that the *Hurst* opinion renders Ohio's capital sentencing scheme unconstitutional. Specifically, this Court distinguished:

> "The Florida law at issue in *Hurst* limited the jury's role in capital sentencing to making an advisory recommendation; a trial court was then free to impose a death sentence even if the jury recommended against it. *Id.* at 620. And even when a jury did recommend a death sentence, a trial court was not permitted to follow that recommendation until the *judge* found the existence of an aggravating circumstance. *Id.* at 620, 622. Thus, "Florida [did] not require the jury to make the critical findings necessary to impose the death penalty." *Id.* at 622. Instead, the trial judge in *Hurst* "increased [the defendant's] authorized punishment based on her own factfinding" when she sentenced him to death. *Id.* The Supreme Court held that Florida's capital-sentencing law, like the Arizona law in *Ring,* violated the Sixth Amendment. *Id.*

> "Ohio's capital-sentencing scheme is unlike the laws at issue in *Ring* and *Hurst.* In Ohio, a capital case does not proceed to the sentencing phase until *after* the fact-finder has found a defendant guilty of one or more aggravating circumstances. *See* R.C. 2929.03(D); R.C. 2929.04(B) and (C); *State v. Thompson,* 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 147. Because the determination of guilt of an aggravating circumstance renders the defendant eligible for a capital sentence, it is not possible to make a factual finding during the sentencing phase that will expose a defendant to greater punishment. Moreover, in Ohio, if a defendant is tried by a jury, then the judge cannot impose a sentence of death unless the jury has entered a unanimous verdict for a death sentence. R.C. 2929.03(D)(2)."

> *State v. Belton*, --- N.E.3d ----, 2016 WL 1592786, 2016-Ohio-1581, ¶¶ 58-59, *reconsideration denied,* 2016-Ohio-7681, 147 Ohio St. 3d 1440, 63 N.E.3d 158

Therefore, it is inconsequential that Appellant's appellate counsel did not request that a new jury be impaneled for resentencing as such a request would have been contrary to law and to

4

the orders by this Court and the Eleventh District Court of Appeals. Moreover, since there was no error in Appellant's sentencing phase and Ohio sentencing scheme is inherently different from the Florida's sentencing scheme in *Hurst,* appellate counsel was not ineffective for failing to raise this argument.

### B.  Double Dose of Allocution

Appellant next argues his counsel's ineffectiveness for inadequately preparing Appellant for his allocution which was his "sole opportunity" or "only avenue" to plead for his life. Appellant's Application for Reconsideration, pp. 5-6.  This is factually untrue. Appellant gave an allocution after his first trial. This Court affirmed his conviction and sentence finding no errors. *State v. Jackson,* 107 Ohio St.3d 300, 2006-Ohio. After this Court's decision in *Roberts, supra,* the Eleventh Appellate District remanded the case to the trial court for the limited purpose of a new sentencing entry drafted by the trial court. On remand for the trial court to draft a new entry, Appellant was given the additional benefit of a second allocution.  Appellant claims that he was not prepared for his extra and supplemental allocution and did not put forth a "coherent or compelling presentation." Appellant's Application for Reconsideration, p. 4. The State vehemently disagrees.

Unlike, his co-defendant in *Roberts,* as this Court previously pointed out, "Jackson presented extensive mitigating evidence during his original sentencing hearing. Jackson's mother and three other family members testified about his upbringing. See 107 Ohio St.3d 300, 2006-Ohio-1, 839 N.E.2d 362, at ¶ 164–167. Dr. Sandra McPherson, a clinical and forensic psychologist, provided testimony about Jackson's poor school record, parental neglect, serious behavioral problems, IQ scores, and early drug use and alcohol dependency. *Id.* at ¶ 169–175. Jackson also made an unsworn statement and apologized for what happened to the victim. *Id.* at ¶

5

176." *State v. Jackson*, 2016-Ohio-5488, ¶¶ 85-86, *reconsideration denied*, 2016-Ohio-7677, 147 Ohio St. 3d 1439, 63 N.E.3d 157.

Also unlike his co-defendant, who waived her right to present mitigating evidence at her original sentencing hearing, Appellant took full advantage of his opportunity and presented "extensive" evidence to the court in an attempt to avoid a death sentence. Moreover, unlike his co-conspirator, Appellant also voiced his desire for a life sentence, at his original hearing in 2002, *State v. Jackson*, 2016-Ohio-5488, ¶ 158, *reconsideration denied,* 2016-Ohio-7677, 147 Ohio St. 3d 1439, 63 N.E.3d 157, and at his resentencing. T.p. Resentencing August 14, 2012, pg. 23. Therefore, Appellant had not one but two opportunities to ask for mercy from the trial court and to present two unsworn statements to assist the trial judge in determining an appropriate sentence for the aggravated murder of Robert Fingerhut planned while Appellant was within the confines of prison. As such, Appellant's counsel was not ineffective for failing to elicit additional commentary in a bonus allocution.

### C. Prison Adjustment Considered

Appellant argues ineffectiveness based on his appellate counsel's failure to present additional evidence regarding Appellant's good behavior while in prison. The State submits that this argument has been reviewed and rejected by this Court in *State v. Jackson*, 2016-Ohio-5488, ¶¶ 85-86. In that opinion, this Court noted "Jackson told the court at his resentencing hearing that he had obtained educational certificates, had served as a tutor, and had not been in any serious trouble either on or off death row. Jackson claims that the court's failure to consider his good prison behavior was especially prejudicial. Evidence had established, however, that Jackson and Roberts planned Fingerhut's death while Jackson was in prison earlier. Under these circumstances, it is doubtful that Jackson's claim about his adaptation to prison life could have

6

carried much weight. We hold that any omissions in the sentencing opinion were harmless beyond a reasonable doubt. See *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).  *State v. Jackson*, 2016-Ohio-5488, ¶¶ 85-86, *reconsideration denied,* 2016-Ohio-7677, 147 Ohio St. 3d 1439, 63 N.E.3d 157. Therefore, this argument is without merit and has already been rejected by this Court. See S.Ct. Prac. R. 11.06 (B)(3).

### State's Response to Appellant's Proposition of  Law No. II

In Appellant's Second Proposition of Law, the Appellant argues appellate counsel failed to object to this Court's independent evaluation and relies on *Hurst, supra.* The State submits that Appellant's reliance on *Hurst* is misplaced, and this Court has already ruled *Hurst* inapplicable to Ohio's capital-sentencing scheme. *Belton, supra.*

In *Hurst,* the Florida sentencing scheme was found unconstitutional where a jury does not make any aggravating findings, simply offers an advisory recommendation to the judge, and the judge makes the necessary findings to impose the death penalty regardless of the jury's recommendation. As this Court noted in *Belton,* and discussed above, Ohio's sentencing scheme is distinguishable.  This Court stated in its original opinion, "the **jury** found Jackson guilty of aggravated murder with prior calculation and design in count one. In count two, the **jury** found Jackson guilty of aggravated murder while committing aggravated burglary and aggravated robbery. The **jury** also found Jackson guilty of two specifications attached to each count****." (Emphasis added).  *State v. Jackson,* 107 Ohio St.3d 300, 2006-Ohio-1, ¶122.

It was neither the trial court nor this Court that made the necessary findings to make Appellant death-eligible under Ohio law. As required by *Hurst,* it was the jury that convicted Appellant, the jury that found the aggravating circumstances, and the jury that recommended the

death penalty. The trial court and this Court found the jury's recommendation to be well-founded and appropriate in the circumstances.

R.C. 2929.05 states in relevant part: "***the supreme court shall review the judgment in the case and the sentence of death imposed by the court or panel of three judges in the same manner that they review other criminal cases, except that they *shall review and independently weigh* all of the facts and other evidence disclosed in the record in the case and consider the offense and the offender to determine whether the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate.***" (Emphasis added). Furthermore, "[t]his [C]ourt has determined on numerous occasions that our independent evaluation of the evidence will cure any error committed by either the trial court or the court of appeals in sentencing or reviewing a sentence. See *State v. Richey* (1992), 64 Ohio St.3d 353, 370, 595 N.E.2d 915, 929; *State v. Lott, supra; State v. Landrum, supra,* 53 Ohio St.3d 107, 559 N.E.2d 710. *See, also, Clemons v. Mississippi* (1990), 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725." *State v. Phillips*, 74 Ohio St. 3d 72, 103, 656 N.E.2d 643, 670, 1995-Ohio-171.

Not only would Appellant's appellate counsel's argument be contrary to Ohio law, it's the State's opinion, that reading *Hurst* as Appellant suggests, would render this Court unable to adequately review the imposition of the death penalty. It stands to question, how could this Court ever review a death sentence on appeal? This Court is a safety net for criminal defendants, particularly capital defendants, as a major point of contention in criminal cases is regarding the appropriateness or proportionality of the sentence to the crime committed. It defies logic to seek review of a death sentence by this Court while forbidding it from conducting an independent evaluation of the evidence. As such, this Proposition of Law is without merit.

8

**State's Response to Appellant's Proposition of Law No. III**

In Appellant's final Proposition of Law, Appellant alleges appellate counsel was ineffective for failing to argue he is ineligible for the death penalty based on an intellectual disability. The State submits that this argument has been previously raised in and rejected by this Court. Specifically, this Court stated: "***Jackson states that the court should have considered additional information during the resentencing proceedings that showed that his mother was an alcoholic, he grew up in a bad neighborhood marked by violent crime and drug addiction, he was a poor student with severe behavioral issues and borderline intelligence, and his IQ score of 84 was inaccurate." *State v. Jackson*, 2016-Ohio-5488, ¶ 69, *reconsideration denied*, 2016-Ohio-7677, 147 Ohio St. 3d 1439, 63 N.E.3d 157. As this Court has previously reviewed this argument, it should not consider it as a basis for granting a motion to reopen. S.Ct. Prac. R. 11.06 (B)(3).

Furthermore, this argument has been raised in Appellant's other post-convictions proceedings with no success. The Eleventh Appellate District stated: "pursuant to appellant's own evidentiary materials, the alleged errors in the calculation would have only resulted in a four-point change in the final result, i.e., from 84 to 80. Under Ohio law, there is a rebuttable presumption that a criminal defendant is not mentally retarded if the result of his IQ test is greater than 70. *State v. Lott*, 97 Ohio St.3d 303, 779 N.E.2d 1011, 2002-Ohio-6625. Thus, the difference in appellant's I.Q. would not have changed his basic status under the intelligence scale.[3] In light of the overwhelming nature of the aggravating circumstances in this case, this four-point error in calculation would not have altered the jury's weighing exercise in determining whether to recommend the death penalty." *State v. Jackson*, 2006-Ohio-2651, ¶ 143, *cause dismissed*, 2006-Ohio-3306, 110 Ohio St. 3d 1407, 850 N.E.2d 69.

9

Moreover, Appellant, himself, flatly contradicted any claims of intellectual disability in his supplementary allocution where he informed the trial court he had received certificates in basic and advanced computers and was tutoring others. T.p. Resentencing August 14, 2012, pg. 21. *State v. Jackson*, 2016-Ohio-5488, ¶ 159. Therefore, any argument made by Appellant's appellate counsel would have been futile at best. As such, this proposition of law is without merit.

## CONCLUSION

For the reasons thus stated, the State urges denial of Appellant's Motion for Reopening. Appellant fails to present a genuine issue as to whether he received ineffective assistance of appellate counsel. None of the arguments presented by Appellant, if presented to this Court, would have affected the outcome in this case. Moreover, several of these arguments were previously raised in this Court and in Appellant's post-conviction motions and were found to be meritless. As such, Appellant's motion for reopening must be denied.

Respectfully submitted by:

DENNIS WATKINS (#0009949)
Trumbull County Prosecuting Attorney

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney
Trumbull County Prosecutor's Office
160 High St. 4th Floor
Warren, Ohio    44481

Telephone:(330) 675-2426
Fax (330) 675-2431

COUNSEL FOR PLAINTIFF-APPELLEE
THE STATE OF OHIO

10

**PROOF OF SERVICE**

I do hereby certify that a copy of the foregoing response by was sent by ordinary mail to

Atty. Angela Wilson Miller (#0064902), Counsel for Defendant-Appellant Nathaniel Jackson,

322 Leeward Drive, Jupiter, Florida 33477, on this 8th day of March, 2017.

LuWAYNE ANNOS (#0055651)
Assistant Prosecuting Attorney

11

**Supreme Court of the United States**
**Office of the Clerk**
**Washington, DC  20543-0001**

ORIGINAL

Scott S. Harris
Clerk of the Court
(202) 479-3011

April 17, 2017

Clerk
Supreme Court of Ohio
65 South Front Street
Columbus, OH  43215-3431

Re:  Nathaniel E. Jackson
     v. Ohio
     No. 16-7837
     (Your No. 2012-1644)

Dear Clerk:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

Scott S. Harris, Clerk

RECEIVED

APR 2 0 2017

CLERK OF COURT
SUPREME COURT OF OHIO

FILED

APR 2 0 2017

CLERK OF COURT
SUPREME COURT OF OHIO