IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

NATHANIEL JACKSON,                     Case No. 4: 07 CV 0880

          Petitioner,                     JUDGE GWIN

vs.                                     Capital Case


MARC C. HOUK,

          Respondent.


      Petitioner Nathaniel Jackson, by and through counsel, respectfully submits this Traverse

in response to the arguments raised by Respondent in the Return of Writ.

(Doc.#71, PageID #23534-23658)


Respectfully submitted,


/s/John P. Parker
0041243
988 E. 185th Street
Cleveland, Ohio 44119
216.881.0900
advocateparker@gmail.com

/s/Kevin M. Cafferkey
0031470
Suite 2100
55 Public Square
Cleveland, Ohio 44113
kmcafferkey@hotmail.com

Table of Contents

Page

Factual Background.................................................................................................3

Indictment and Plea of Not Guilty...........................................................................3

Trial and Sentencing................................................................................................4

Direct Appeal...........................................................................................................4

Post Conviction........................................................................................................5

Applications for Reopening (Murnahan Applications)...............................................6

Affidavits of Disqualification....................................................................................7

Federal District Court..............................................................................................8

Statement of Facts...................................................................................................9

Standard of Review................................................................................................12

Not Harmless Error................................................................................................16

Adjudicated on the Merits Defined.........................................................................16

No Deference when State Fails to Address the Merits.............................................17

All Issues Properly Preserved.................................................................................19

Petition: Pleading Requirements............................................................................19

Discovery Requests................................................................................................19

Causes of Action....................................................................................................21

Biased/Probable Bias of State Trial Judge.............................................................21

Ineffective Assistance of Counsel Mitigation Phase..............................................55

Post Conviction under 2953.21 other than Mitigation............................................77

Second Petition under 2953.21................................................................................99

Murnahan I and II....................................................................................................112

IAC: Failure to Object/Understand State Law.........................................................124

Jury Instructions......................................................................................................137

Remaining Grounds..................................................................................................139

Conclusion and Certificate of Service.....................................................................150

Procedural History

A. Factual Background

Mr. Jackson was arrested pursuant to an arrest warrant on December 20, 2001 and gave a videotaped statement of his involvement in the shooting death of Robert Fingerhut. In this statement, he describes how he met the victim and eventually arrived at his home. He further describes how an altercation took place, how the victim shot him and then Mr. Jackson disarmed the victim and killed him.

B. The Indictment and Plea of Not Guilty

On December 28, 2001 the Petitioner was indicted for Aggravated Murder, Count One, in violation of O.R.C. 2903.01(A) with capital specifications; Count Two, Aggravated Murder in violation of O.R.C. 2903.01(B) with capital specifications; Count Three, Aggravated Burglary, O.R.C. 2911.11; Count Four, Aggravated Robbery, O.R.C. 2911.01; firearm specifications were also included in the indictment alleging a violation of O.R.C. 2945.145.

Mr. Jackson entered pleas of Not Guilty to all charges and counsel were appointed.

## C. Trial and Sentencing

Jackson's trial commenced on October 8, 2002. (TR. 1-2050) Testimony began on October 23, 2002. On November 8, 2002 the jury returned guilty verdicts to all counts. (TR 3602, 3612-17) The jury also found that Jackson was the principal offender and committed the Aggravated Murder with prior calculation and design. (TR 3612-15).

One of Jackson's lawyers became ill and another lawyer took his place for the penalty phase of the trial. The new lawyer was unprepared and had met no mitigation witnesses before this phase of the trial. The defense failed to properly investigate and present meaningful mitigation evidence. In fact, the defense presented Jackson in a false light to the jury. The jury deliberated less than five hours and returned a recommendation of death to the trial judge. (TR 181-183)

On December 9, 2002 the trial court imposed a sentence of death. The signed sentencing journal entry was filed December 10, 2002. It was later learned that the trial court and prosecutor's office collaborated on the trial court's sentencing opinion. Such a flawed process was later the basis of the Ohio Supreme Court's reversal of the death sentence for Donna Roberts, the co-defendant. Mr. Jackson was tried first and then Donna Roberts.

## D. Direct Appeal

Jackson timely appealed to the Ohio Supreme Court and was represented by John P. Lackzo of Youngstown, Ohio and Dennis Day Lager of Canton, Ohio. Twelve propositions of law were presented on Jackson's behalf.

The Ohio Supreme Court affirmed the convictions and sentence on January 4, 2006.

4

A timely Petition for Writ of Certiorari was filed in the U.S. Supreme Court by new counsel from the Ohio Public Defender's office. The Petition was denied June 5, 2006.

Due to post conviction proceedings, the Eleventh District Court of Appeals vacated the death sentence and ordered a new sentencing hearing. Death was imposed again and a second direct appeal was filed in 2012 and denied in 2016. See *State v. Jackson*, 149 Ohio St.3d 55 (2016).

### E. Post Conviction

Jackson filed a timely Post Conviction Relief petition with the Trumbull County Common Pleas Court. He was represented by the Ohio Public Defender's Office. The PCR petition and the amended PCR petition contained numerous exhibits and affidavits. The Trumbull County Court of Common Pleas dismissed the petition without a hearing. The Court also denied discovery and an evidentiary hearing. Jackson took a timely appeal to the Ohio Eleventh District Court of Appeals. The judgement of the Common Pleas Court was affirmed.

Jackson next timely appealed to the Supreme Court of Ohio which declined jurisdiction. Due to the death sentence being vacated and then reimposed , Jackson filed a second post conviction petition under O.R.C. 2953.21. All relief was denied and the Petition was finally disposed of in 2017 in Ohio Supreme Court Case No. 2015-2065.

F. Applications for Reopening (Murnahan Applications)

Jackson timely filed a Murnahan application in the Supreme Court of Ohio pursuant to Supreme Court Rule XI(6) and was represented by the Ohio Public Defender's Office. The Ohio Supreme Court declined jurisdiction on October 4, 2006.

A second Murnahan was filed in Ohio Supreme Court Case number 2012-1644 and eventually denied. See Doc. 48-7, PageID # 15756-15772, *State v. Jackson*, 2017 Ohio 8371 (summary denial without opinion).

G. Affidavits of Disqualification

Mr. Jackson filed a affidavit of disqualification against Judge Stuard which was denied by the Chief Justice of the Ohio Supreme Court. See In re Disqualification of Stuard. State of Ohio v. Jackson, 113 Ohio St.3d 1236 (2006), 2006 Ohio 7233. See Doc.#36-2 for the Application. On May 12, 2008, Jackson filed a second affidavit of disqualification against Judge Stuard, premised on pending disciplinary proceedings that had been brought against Judge Stuard for enlisting the assistant prosecutor to prepare the sentencing opinion in Roberts's case and contending that Judge Stuard had shown his bias by refusing to grant Jackson the same relief that Roberts had received in her case. See Doc. # 47-3, Page ID# 8550

On August 20, 2008, Chief Justice Moyer denied that affidavit. See *State v. Jackson,* 149 Ohio St.3d 55 (2016), 2016-Ohio-5488 at paragraph 24. See Warden's Answer, Doc. # 71, PageID # 23611; Doc. 47-9, PageID 11036-11040, Case No. 08AP043.

On August 7, 2012 a third affidavit of disqualification was filed in the Ohio Supreme Court in OSC case number 12 AP 090; See Doc. 47-13, PageID # 12330-12349;  The crux of this affidavit concerned the trial judge's ability to preside over the "re-sentencing" hearing. The third affidavit was denied August 25, 2012. See Doc. #71-1, PageID # 23654-23655.

## H. Federal District Court

On March 26, 2007 the Petitioner filed a Notice of Intent to file a Petition for Writ of Habeas Corpus under 28 U.S.C. 2254 and a Motion for Appointment of Counsel. On March 27, 2007 this Court appointed counsel to represent Petitioner.

Pursuant to this Court's Case Management Order, a Petition and Memorandum was timely filed. The Respondent also filed a timely ROW. On April 18, 2008  the Court granted Jackson's Motion to Stay and Abey these proceedings so that he could exhaust in State court pending matters directly related to this case. (See Doc. 33 and 55 )

Jackson diligently pursued his State litigation and the Ohio Eleventh District Court of Appeals vacated his death sentence and ordered a new hearing. The State of Ohio did not appeal this decision. Eventually the same judge who heard his original trial reimposed a death sentence; The judge communicated ex parte with the prosecutor's who assisted him in writing his opinion imposing the death sentence. (See In re Disqualification of Stuard. State of Ohio v. Jackson, 113 Ohio St.3d 1236 (2006), 2006 Ohio 7233, para. 4 containing Judge Stuard's admission; see Disciplinary Counsel v. Stuard, Judge, 121 Ohio St.3d 29 (2009), 2009 Ohio 261. Judge Stuard eventually conducted a short hearing where he imposed a new death sentence.

Jackson perfected a new timely Direct Appeal to the Ohio Supreme Court and also diligently and timely pursued post conviction relief of various types including a new Murnahan Application, new post conviction petition under ORC 2953.21, motion for new trial/sentencing hearing, and a 60(B) motion.

The Warden has filed in his answer an appendix detailing the complex procedural history of the case in State court. See Doc.# 71-1, PageID #23648-23658

Jackson notified the Court of the exhaustion of his State litigation and requested leave to amend his original Petition due to approximately ten years of litigation in State court.    Jackson timely filed his Amended Petition and Motion for Leave to File the Amended Petition to reflect the additional federal Constitutional grounds for relief that have arisen during the Court's Stay as well as the original federal Constitutional grounds for relief. Doc. 64 and Doc. 65.  The Court issued an order construing Jackson's pleadings as a first habeas Petition and the Court later signed an order approving the parties' proposed scheduling order. See Doc. 67, 68 and 69. Counsel for Respondent filed an Answer, See Doc. 71 and Mr. Jackson now files his Traverse.

The state trial transcripts and record are found at R.47- R. 49.

Statement of Facts

Nathaniel Jackson stands convicted of aggravated murder with death penalty specifications for the homicide of Robert Fingerhut. Mr. Fingerhut's body was discovered in his home by his ex-wife, Donna Roberts, on December 12, 2001. (TR 2102, 2107, 2206, 2528)

According to the police, the victim's body was found in the kitchen near the garage door entrance. The victim had been shot several times. (TR 2205, 2540-43, 2549). There were also physical injuries consistent with a physical struggle. (TR 2556-58, 2577)

Discovered near the body was a loaded .38 caliber gun which had not been fired. (2238-39, 2242) Donna Roberts was interviewed at the scene and a search of the residence and automobile revealed more than 200 letters written between Donna Roberts and the petitioner from January 2001 to December 2001. (TR 2208; 2294-2302) The letters purported to plan the homicide of the victim upon the release of Jackson from prison. (TR 2076, 3431-37) Arrest warrants were issued in December 20, 2001 and Jackson and Donna Roberts were arrested that day. (TR 194-202; 204; 2336-37; 2408-09;2414) In custody, Jackson gave a statement on videotape and statements that were not recorded detailing his account of the case. (TR 215-218)

In summary, Jackson's statement indicated that he had met the victim at the Greyhound bus station in Youngstown, Ohio and spoke to him about getting a job.

The conversation turned to an inquiry by Fingerhut about purchasing marijuana and then later that evening Fingerhut picked up Mr. Jackson and drove him to Fingerhut's residence. Once at the residence, an argument ensued with Fingerhut drawing a weapon and shooting Mr. Jackson in the hand; then a struggle took place with Mr. Jackson wrestling the gun from Fingerhut and

shooting him dead. Mr. Jackson then drove Fingerhut's car to Youngstown and disposed of the gun along the way. (TR 215-18; Exhibit 325)

On December 28, 2001 Mr. Jackson was indicted for capital aggravated murder and related felonies.

Mr. Jackson's trial commenced October 8, 2002 and the jury found him guilty of all charges November 8, 2002.

On November 15, 2002 the jury recommended a death sentence after listening to a poorly investigated and presented mitigation hearing.

On December 9, 2002 the trial court rendered a sentence of death after secretly having had the prosecutor's office prepare his sentencing opinion.

Trial counsel and their agents interviewed only one member of Jackson's family prior to the mitigation hearing. (See Amended Post Conviction Petition, Ex. 49-53) The defense collected very few records concerning Jackson that were relevant to the sentencing hearing and failed to retain the services of a mitigation specialist or to otherwise conduct a competent mitigation investigation. (See Amended Post Conviction Petition, Ex. 46-48)

One of Mr. Jackson's lawyers became ill before the mitigation phase of the trial; was replaced by a lawyer on the day the mitigation hearing commenced; who was not Rule 20 qualified under Ohio law and who was totally unprepared for this phase of the trial. (See Sentencing TR 4-8)

The evidence presented in the Amended Post Conviction Petition demonstrates the problems with the mitigation evidence that was available and not presented.

10

The jury never learned that Jackson had little to no contact with his biological father, his mother had a substance problem; his maternal grandmother raised him and his sister without adequate resources. Mr. Jackson was not a good student due to his attention deficit disorder, learning disabilities and low intelligence. He was disruptive in school from the first grade on and in junior high school could not add fractions or identify the subject and verb in a sentence. He often came to school without bathing and without clean clothes. (Amended PC Petition, Ex. 46, 49-53, 58) Mr. Jackson also used drugs at a young age and became a thief to support his habit.

During the post conviction investigation, it was learned that the psychologist who testified for Jackson improperly scored his IQ tests. Jackson's IQ score, properly done, placed his IQ at 75 and not 84 as testified to during trial. (See Amended PC, Ex. 78) It was learned that the same psychologist wrongly scored Petitioner's WRAT (Wide Range Achievement Test). The psychologist testified that Jackson was performing arithmetic and spelling on a high school level when he was actually performing at a seventh grade level. (Ex. 78, Amended PC)

The psychologist also failed to understand Jackson's substance problems when only a year prior to this offense a substance abuse clinic scored him six out of seven on a rate of substance abuse and he reported memory problems as a result of his cocaine abuse. (Ex. 47, Amended PC)

The psychologist also improperly administered the MMPI to Jackson which resulted in an anti-social diagnosis. (See Ex. 47, 59 Amended PC)

The psychologist did not provide the jury with information that cocaine was the dominant factor in his life, that he was stealing to support his habit, that he was subjected to physical abuse as a result of not paying off his debts linked to his drug dependence and that Donna Roberts

supplied him with drugs which gave her undue influence over him. (Ex. 49- 53, Amended PC)

At age 17, the school psychological records reveal that he had the mental age of someone 11 1/2 years old and an IQ of 70. (See ex. 57, Amended PC)

The missing mitigation provides an explanation of Jackson's behavior. The incompetent mitigation presented provided no insight and gave the jury no reason to spare Mr. Jackson's life.

A properly investigated and presented mitigation hearing would have resulted in a life sentence.

Standard of Review

AEDPA Generally

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Terry Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state

court's decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[C]learly established law under [AEDPA] encompasses more than just bright-line rules laid down by the [Supreme] Court. It also clearly includes legal principles and standards enunciated in the Court's decisions." *Taylor v. Withrow,* 288 F.3d 846, 850 (6th Cir. 2002). "The lack of an explicit statement" of a rule "is not determinative" because "[t]he Court has made clear that its relevant precedents include not only bright-line rules but also the legal principles and standards flowing from precedent." *Id.* at 852; *see also Panetti v. Quarterman,* 551 U.S. 930, 953 (2007) ("AEDPA does not 'require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied.'") (quotation omitted).

AEDPA violates the U.S. Constitution

AEDPA violates the federal Constitution and this case must be decided without its application.

Under AEDPA, a writ of habeas corpus may be granted if the state court's decision:

1. Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States;

or

2. Resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. 2254(d); See *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

13

Nonetheless, AEDPA improperly and unconstitutionally restricts a federal court's ability to remedy federal Constitutional violations. See *Evans v. Thompson*, 524 F.3d 1 (1st Cir. 2008)(Lipez, Cir. Judge dissenting with opinion)(citing*Crater v. Galaza*, 508 F.3d 1261 (9th Cir. 2007);*Davis v. Straub*, 445 F.3d 908 (6th Cir. 2006)(amended order and cases cited therein); *Davis v. Straub*, 430 F.3d281, 291 (6th Cir. 2005 (Merrit, J., dissenting)

Section 2254(d)(1) requires courts to neglect the actual habeas right at issue. By directing federal courts to deny relief in the face of a constitutional violation, 2254(d)(1) requires "involuntary participation of the federal judiciary" in the continuing breach of a habeas petitioner's right not to be unlawfully detained. Crater at 1270. This restraint on the judiciary, a co-equal branch of government, is at odds with the precepts of *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803), and offends the most basic separation of powers principles in our constitutional system.

As Judge Noonan has eloquently stated:

> Legislatures exist to make laws. Courts exist to decide cases. The separation of these functions is part of our democratic system of government. To allow the legislature to decide a case is to deny the separation. To allow the legislature to tell a court how a case should be decided is worse. It allows the legislature to mask itself under judicial robes. It puts forward as the judgment of a court what in actuality is the judgment of the legislature. Impermissibly it mixes the branches. It does so to the great detriment of the judicial branch which is made to act as if it were performing its judicial task while it has its ability to perform the task removed.

*Irons v. Carey,* 505 F.3d 846,855 . (9th Cir. 2007)

14

The U.S. Supreme Court has not explicitly upheld the constitutionality of AEDPA. In fact, somewhat recently Justice Sotomayor has questioned publicly whether Congress can dictate how courts decide federal habeas corpus case such as this one. See http://www.nationallawjournal.com/id=1202742882533/Sotomayor-Says-Congress-Should-Not-Tell-Judges-How-to-Review-Cases?slreturn=20170910112142.

In addition, AEDPA in effect violates the suspension clause. See generally The Wall that AEDPA Built: Revisiting the Suspension Clause Challenge to the Antiterroism and Effective Death Penalty Act, *Case Western Reserve Law Review*, Volume 66, Issue 4 (2016). See Challenging the Habeas Process Rather Than the Result, *Washington and Lee Law Review*, Volume 69, Issue 1 (2012); Un-Incorporating the Bill of Rights: The Tension between the Fourteenth Amendment and the Federalism Concerns that Underlie Modern Criminal Procedure Reforms, *Journal of Criminal Law and Criminology*, Volume 98, Issue 4 (2008).

The U.S. Supreme Court has not yet specifically upheld Constitutional challenges to AEDPA. While it is true that the Court continues to apply AEDPA, the Court always has the ability to declare a statute unconstitutional; in fact, just recently, the Court reversed 40 year old precedent in the context of labor law. See *Janus v. American Federation of State, County and Municipal Employees, Counsel 31 et al.*, decided 6-27-18, 585 U.S.___(2018).

Academics continue to point out the constitutional problems that surround AEDPA. See *Proving AEDPA Unlawful: The Several Constitutional Defects of 2254(D)(1), by* Robert M. Black, Williamette Law Review, 54:1 Fall 2017.

AEDPA must not be applied to this case as it is unconstitutional; it violates the doctrine of the separation of powers, amounts to a suspension of the right to habeas corpus, violate Due Process under the Fourteenth Amendment and suffers other Constitutional defects as described in the above authorities. In the alternative, AEDPA does not prohibit the relief sought in this case.

Not Harmless Error

In federal habeas cases, a constitutional error may be considered "harmless" unless it had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). "If however, 'the matter is so evenly balanced' that this Court has 'grave doubt' as to the harmlessness of the error, it 'should treat the error, not as if it were harmless, but as if it affected the verdict (i.e., as if it had a 'substantial and injurious effect or influence in determining the jury's verdict'). *Stapleton v. Wolfe*, 288 F.3d 863, 867 (6th Cir. 2002) (quoting *O'Neal v. McAnich*, 513 U.S. 432, 435 (1994)); *see also O'Neal*, 513 U.S. at 445 ("[W]hen a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief").

Adjudicated on the Merits Defined

Whether AEDPA applies or not is often determined by whether the State court "adjudicated on the merits" the federal Constitutional issue raised. The U.S. Supreme Court has made clear that if a federal claim is rejected by a State court as a result of "sheer inadvertence" then it has not evaluated the claim on the "intrinsic right or wrong of the matter." *Johnson v.*

16

*Williams*, 133 S. Ct. 1088 (2013). Under such circumstances, no AEDPA deference is owed and a de novo evaluation of the federal claim in habeas is required. When the evidence very clearly shows that a federal claim was inadvertently overlooked in state court, § 2254(d) does not apply.

    No Deference When State Fails to Address the Merits

    By its very terms, AEDPA applies only to habeas claims that were "adjudicated on the merits in State court." 28 U.S.C. §2254(d). Regardless of the nature of the petitioner's claim, deference is required only where the state court in fact adjudicated a claim "on the merits." Where the state court did not address or assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003). "Regardless of whether the state courts have purported to resolve a particular claim on the merits, the federal courts are obliged to determine whether that claim in fact was addressed by the state courts." *Brown v. Smith*, 551 F.3d 424, 437 (6th Cir. 2008) (Clay, J., concurring) (citing *Cargle v. Mullin*, 317 F.3d 1196, 1206-07 (10th Cir. 2003)).

    No deference is owed the Ohio courts whatsoever under 28 U.S.C. § 2254(d)(1) or (d)(2). This court must review the claims de novo. *Bartone v. United States*, 375 U.S. 52, 54 (1963) ("Where state procedural snarls or obstacles preclude an effective state remedy against unconstitutional convictions, federal courts have no other choice but to grant relief in [a] collateral proceeding.")

17

Comity and federalism are two-way streets. Federal petitioners are required to exhaust their federal constitutional claims because doing so enables the *state courts* to have the first opportunity to address such claims, but recognizing too that *federal courts* also have an interest. When the state courts fail to take advantage of that opportunity to first address the federal claims there are no comity interests any longer at stake. The federal courts are, at that point, duty bound to proceed to a de novo adjudication of the federal constitutional claims, unconstrained by any state court decision. *Workman v. Tate*, 957 F.2d 1339, 1344 (6th Cir. 1992) ("The principle that federal courts should defer to state courts in the interest of comity assumes that the state courts will give prompt consideration to claims of violation of constitutional rights."); *Turner v. Bagley*, 401 F.3d 718, 724. (6th Cir. 2005); *see also* 28 U.S.C. § 2254(b)(1)(B) (failure to exhaust is not a barrier to habeas relief if "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant").

The Supremacy Clause, Art. VI, cl. 2 of the U.S. Constitution, provides that "the Laws of the United States…shall be the supreme Law of the Land; the Judges in every State shall be bound thereby." The Supremacy Clause dictates that federal law prevails over competing state exercises of power unless the state law affords greater constitutional protections than the federal law. State courts cannot refuse to apply federal law. *Testa v. Katt*, 330 U.S. 386, 389 (1947). The federal courts' interpretation of the federal constitution is part of the supreme law of the land. Therefore, if Ohio adopts a rule or law in conflict with the Constitution, that rule or law is hostile to federal rights and its invocation to defeat consideration of federal claims cannot be adequate for purposes of procedural default.

All Issues Are Properly Preserved

The Petitioner maintains that all issues have been properly preserved for this Court's review. *See generally Newton v. Million*, 349 F.3d 873 (6th Cir. 2003); *Fultcher v. Motley*, 444 F.3d 791 (6th Cir. 2006); *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986); *James v. Brigano*, 470 F.3d 636 (6th Cir. 2006).


Petition: Pleading Requirements

The habeas corpus statute and rules require a Petitioner to specify the grounds for relief and the facts supporting each ground. See Rule 2( c) of the Rules Governing Section 2254 Cases in the United States District Court. See *McFarland v. Scott,* 512 U.S. 849, 860 (1994). See *Dye v. Hofbauer*, 546 U.S. 1 (2005)(per curiam).

Mr. Jackson has met his pleading requirements as reflected in his original Petition, Doc. #14, and original Memorandum in Support, Doc. #15 and his Amended Petition and Supplemental Memorandum, Doc. # 64, #65.

Any argument by the Warden that the pleading requirements have not been met is unsupported by the record and law.


Discovery Requests

Jackson requests discovery consistent with Habeas Rule 6. Jackson requested discovery in State court post conviction proceedings but it was denied. Depositions and other discovery are warranted because the State unreasonably determined the facts in violation of 2254(d)(2) and otherwise unreasonably applied U.S. Supreme Court precedent under 2254(d)(1).

19

The U.S. Supreme Court has held that a petitioner should be allowed to pursue discovery so long as the requested discovery could support a constitutional claim for relief. See Bracy v. Gramley, 520 U.S. 899 (1997); Habeas Rule 6.

*Pinholster* does not alter the ability of a federal court to allow discovery, and it has no effect on the timing of discovery, either. See, e.g., *Gonzalez v. Wong*, 667 F.3d 965, 972 (9th Cir. 2011); *High v. Nevens*, No. 2:11-cv-00891-MMD, 2013 WL 1292694, at *4-*6 (D. Nev. Mar. 29, 2013) (authorizing discovery, notwithstanding *Pinholster*); *Dominguez v. Williams*, No. 2:12-cv-01608-JAD, 2014 WL 4092263, at *3-*4 (D. Nev. Aug. 14, 2014) (same); accord *Tabb v. Christianson*, 855 F.3d 757, 763-64 (7th Cir. 2017) (affirming district court's authorization of discovery, notwithstanding *Pinholster*); *Alvarado v. Warden*, *Ohio State Penitentiary*, Doc. 39, PageID #1617, Order, Judge Gaughan, USDC ND Ohio, 11-5-18.

Jackson has also filed a separate Motion for Discovery.

20

Causes of Action

Given the complex state procedural history of this case and the intertwined grounds of
relief asserted, Mr. Jackson will attempt to group or categorize some of his grounds for relief
which contain a common legal/factual basis. Mr. Jackson intends to preserve all of the grounds
contained in the Amended Petition but believes at least some grounds can be considered in the
Traverse together. The Warden used a similar method in his Answer.

Biased/Probable Bias of State Trial Judge

Throughout the various trial court proceedings, including the jury trial, two rounds of
state post conviction under ORC 2953.21, a pre-trial motion to suppress, a second sentencing
hearing in 2012, Mr. Jackson respectfully argues that the Honorable John Stuard was biased or at
least "the probability of bias........was too high to be constitutionally tolerable." *Withrow v.
Larkin*, 421 U.S. 35, 47 (1975), *Rippo v. Baker*, 137 S. Ct. 905 (2017), *Williams v. Pennsylvania*,
136 S. Ct. 1899, 1905 (2016)(as objective matter whether the average judge in his position is
likely to be neutral or whether there is an unconstitutional potential for bias); See *Caperton v.
A.T. Massey Coal Co., 556 U.S. 868, 872 (2009). See also Public Utilities Commission v. Pollak*,
343 U.S. 451, 466-467 (1952)(Frankfurter, J., in chambers)(the guiding consideration is that the
administration of justice should reasonably appear to be disinterested as well as be so in fact);
*Harrison v. McBride*, 428 F.3d 652 (7th Cir. 2005)(Due Process guarantees right to trial by a
judge free from actual bias).

21

Mr. Jackson was tried and convicted and sentenced to death before his co-defendant went to trial with the same judge. Thus, Mr. Jackson's appeals and other attacks on his conviction and sentence proceeded through the state system first. However, on August 2, 2006 the Ohio Supreme Court held in the co-defendant's direct appeal that it was improper for the trial judge to collaborate with the prosecutors and for the prosecutors to write the judge's sentencing opinion imposing death on Donna Roberts. *State v. Roberts*, 110 Ohio St.3d 71 (2006). The revelation during the *Roberts* case that the prosecutor and trial judge regularly collaborate and the judge often delegates his judicial duties concerning fact finding and legal conclusions to the prosecutor without defense knowledge or consent and that he did that in Jackson's case and many others was startling and considered by many to be a legal quagmire.

In fact, the prosecutors and Judge Stuard were subjected to disciplinary proceedings, depositions and sanctions for their improper conduct. See *Disciplinary Counsel v. Stuard*, 121 Ohio St. 3d 29 (2009), Judge Stuard Stipulations, Doc. 47-1 Page ID # 7945-7955, Judge Stuard Deposition, Doc. 47-2, PageID # 8233-8329, APA Becker deposition, Doc. 47-2 PageID# 8330-8430, APA Ken Bailey deposition, Doc. 47-2 PageID# 8431-8544, Hearing Transcript Doc. 47-2 PageID # 7956-8230.

Three different affidavits of disqualification were filed against the judge: in 2006, 2008 and 2012. All of these disqualification efforts were a result of the biased judge or apparent bias of the trial judge. Nonetheless, Judge Stuard was allowed to remain on the case and reimpose his death sentence opinion (originally written by the prosecutors) and rule on various forms of post conviction relief sought by Jackson.

The federal Constitution prohibited Judge Stuard's conduct in this case. The Ohio court's refusal to disqualify him and his refusal to recuse himself is contrary to clearly established law as determined by the U.S. Supreme Court. See 18 U.S.C. 2254(d)(1). Any determination of the facts to the contrary is an unreasonable determination of the facts under 2254(d)(2). The Ohio Supreme Court used the wrong legal standard in denying at least one of the affidavits of disqualification. *In re Disqualification of Stuard*, 113 Ohio St.3d 1236, 2006 Ohio 7233 at para. 9 "[a] judge is presumed to follow the law and not to be biased, and the appearance of bias or prejudice must be compelling to overcome these presumptions." See *Caperton*, supra; *Rippo*, supra; *Withrow v. Larkin*, supra; *Bracy v. Gramley*, 520 U.S. 899 (1997); *Harrison v. McBride*, 428 F.3d 652 (7th Cir. 2005)(Due Process violation where trial judge is biased).

Even under the incorrect standard relied upon by the Ohio Supreme Court, the presumption of bias or the appearance of bias has been overcome by the undisputed facts concerning Judge Stuard's conduct by secretly having the prosecutors write his sentencing opinion and otherwise writing findings of facts and conclusions of law throughout this case. With respect to the death sentence, in Ohio the trial judge must make independent factual and legal findings and conclusions.

The probability of actual bias by the trial judge was too high to be constitutionally tolerable in this case and is involved in Grounds for Relief 16, 19, 20, 21, 22, 26, 28, 29, 30, 31, 32 and 35.

Ground XIX.

Petitioner's trial judge had improper ex parte communication with the prosecutor's office during the trial and post conviction proceedings which denied Petitioner Due Process and an impartial, neutral and detached judge in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution.

The finding's by the Ohio courts were in violation of 2254(d)(1) and (d)(2). The Warden's response and interpretation of clear U.S. Supreme Court precedent, cited above, is incredibly narrow and incorrect. In short, the Warden claims these issues have no federal Constitutional consequences.

On August 2, 2006 the Ohio Supreme Court held it was improper for the trial judge to collaborate with the prosecution in the drafting of the trial judge's sentencing opinion imposing death. *State v. Roberts*, 110 Ohio St. 3d 71 (2006), para. 153-154.  During the Roberts' sentencing hearing, the trial judge stated on the record that it routinely employed this system in other capital cases.

The trial judge in Jackson is the same as the trial judge in Roberts. Jackson and Roberts are co-defendants with Jackson's case being tried first.

The original and second sentencing hearing conducted in Jackson's case was a sham with the same biased judge that had the prosecutor's office write the original death opinion which was the judge's responsibility.

The trial judge here improperly delegated his judicial duties to the prosecutor's office and then imposed a death sentence. Such ex parte communications violates the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution and Ohio statutes.

24

This process is not the fair administration of justice. *Offut v. United States*, 348 U.S. 11 (1954); *Patterson v.Colorado,* 205 U.S. 454 (1907); *Agnew v.Lesbach* , 250 F.3d 1123 (7th Cir. 2001); *Taylor v. Hayes*, 418 U.S. 488 (1974);*Arizona  v.  Fulminate*, 499 U.S. 297 (1991);*Ward v. Village of Monroeville, Ohio*, 409 U.S. 57 (1972).

The trial judge also violated the Eighth Amendment. Capital punishment must be imposed in a consistent, rational and fair manner "or not at all." *Eddings v. Oklahoma*, 455 U.S. 104 (1982); *Zant v. Stephens*, 462 U.S. 862 (1983);*Gardner v. Florida*, 430 U.S. at 362.

Jackson is entitled to meaningful appellate review under the Eighth and Fourteenth Amendments of the federal Constitution. *Zant*, supra; *Parker v. Dugger*, 498 U.S. 308 (1991); *Clemons v. Mississippi*, 494 U.S. 738 (1990); *Stringer v. Black*, 503 U.S. 222 (1992). 232.

The trial judge's delegation to the prosecutor's office to secretly draft or write his opinion imposing death also violates the Fourteenth Amendment of the federal Constitution. See *Hicks v. Oklahoma*, 447 U.S. 343 (1980); *Evitts*, supra;*Morrissey v. Brewer*, 408 U.S. 471 (1972). *Withrow, Rippo* supra.

Jackson's life was in the hands of the trial judge. The trial judge improperly delegated that decision to the prosecutor. Such a process can not stand federal Constitutional review.

Likewise, the trial judge delegated his duty to write findings of facts and conclusions of law in denying the original and Amended Petition for Post Conviction relief is constitutionally flawed. *Withrow, Rippo*, supra.  The prosecutor has admitted to writing such findings of facts and conclusions of law in a motion filed with the trial court opposing the disqualification of the Trumbull County Prosecutor's office.

25

On January 24, 2007 the prosecutor wrote that the prosecutor's office authoring the findings of facts and conclusions of law is a "common practice" which has never been rejected by the Ohio courts.

The prosecutor does not seem to recognize the federal Constitutional issues involved in such a common practice. Such a practice violates the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution.

In Jackson's case, he was denied a meaningful opportunity to allocute before the trial judge imposed a death sentence. The court indicated that it had a prepared and signed finding of facts and conclusions of law regarding the death sentence before allocution. (Sent. TR 212) The judge's bias against Jackson is apparent. *Withrow* and *Rippo* have been violated.

The second sentencing opinion was so true to the original that it still listed the names of the original trial attorneys instead of the defense counsel and prosecutors who were present for the re-sentencing. The error was corrected through a nunc pro tunc journal entry but not until after the State brought the errors to the trial court's attention.

The improper merging of judicial and executive branches is contrary to the separation of powers. *Marbury v. Madison*. Separation of powers is the bedrock principle that underpins both the doctrine of comity and AEDPA.

Ground XX

> The Petitioner has been denied a meaningful new sentencing hearing in spite of the fact that the trial judge collaborated with the prosecutor in drafting the trial court's sentencing opinion imposing death in violation of Ohio law and in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution.

The trial court's second sentencing hearing was essentially meaningless and effectively denied Jackson his Due Process, Equal Protection and access to the courts in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments; Jackson had only one lawyer, no jury and the same biased judge issued the same death opinion that had been authored by or with the prosecutor. The second death opinion only reflected minor changes and was written well before the hearing on the courtroom took place and was filed with the clerk's office just minutes after the proceedings in court concluded and did not reflect the substance of what Jackson or his one counsel stated in the courtroom.

Mr. Jackson respectfully argues that the Honorable John Stuard was biased or at least "the probability of bias........was too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), *Rippo v. Baker*, 137 S. Ct. 905 (2017), *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016)(as objective matter whether the average judge in his position is likely to be neutral or whether there is an unconstitutional potential for bias).

The conclusions by the Ohio courts contrary to Jackson are in violation of 2254(d)(1) and an unreasonable determination of the facts under (d)(2).

Ground XXI

The trial court denied the petitioner a meaningful opportunity for allocution before imposing a death sentence in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution.

As discussed above, and incorporated herein by reference, the trial judge had a signed opinion imposing death before Jackson was given his right to allocution. As such, the right to allocution was rendered meaningless. See *Goff v. Bagley*, 601 F.3d 445 (6th Cir. 2010).

Mr. Jackson respectfully argues that the Honorable John Stuard was biased or at least "the probability of bias........was too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), *Rippo v. Baker*, 137 S. Ct. 905 (2017), *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016)(as objective matter whether the average judge in his position is likely to be neutral or whether there is an unconstitutional potential for bias).

Even though the co-defendant, Donna Roberts' case, was reversed for a new sentencing hearing for the same issue as is present in this case, the trial judge refused to give Jackson the same relief even though he indicated to the Ohio Supreme Court in writing that he would.In fact, he denied a new sentencing hearing and Jackson was forced to appeal to the Eleventh District Court of Appeals which eventually ordered the new hearing.

Then, the judge wrote a sham death sentencing opinion which did not differ significantly from the earlier one written by the prosecutor and which completely failed to take into account Jackson's allocution and the materials Jackson presented or wanted to present but which were proffered.

28

There is sufficient evidence that the Judge was biased or at least the probability of bias was too high to be tolerable under the federal Constitution. *Withrow, Rippo*, supra. 28 USC 2254(d)(1) and (d)(2) were violated.

Ground XXII

Trumbull County Judge John Stuard was not a neutral and detached judge who could preside over Jackson's case once it was learned (after the judge and prosecutor concealed) that the judge and prosecutor wrote, edited and otherwise produced together an opinion imposing death that was by law solely the judge's responsibility. There was not even the appearance of neutrality in this case in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments.

The trial judge secretly collaborated with the prosecutor's office in writing his sentence of death. As such, he was not a neutral and detached magistrate required by the federal Constitution in deciding any aspect of this case.

Mr. Jackson respectfully argues that the Honorable John Stuard was biased or at least "the probability of bias........was too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), *Rippo v. Baker*, 137 S. Ct. 905 (2017), *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016)(as objective matter whether the average judge in his position is likely to be neutral or whether there is an unconstitutional potential for bias).

Ohio law required Judge Stuard to carefully consider whether Jackson should live or die in light of the evidence produced at trial. Instead, Judge Stuard secretly delegated this solemn responsibility to the prosecutors who advocated for Jackson's death. It was quite fortunate that this improper and constitutionally intolerable delegation of power was discovered after the fact of Jackson's trial during the co-defendant's sentencing hearing and related disciplinary proceedings.

29

Even once it was discovered and disclosed, the Ohio courts failed to acknowledge or apply the federal Constitution in a reasonable manner. 2254(d)(1) was unreasonably applied and the Ohio courts unreasonably determined the facts under (d)(2).

The casual or nonchalant manner in which this issue was handled by Judge Stuard and the Ohio courts is quite disturbing. It was evidently routine for the judge to delegate fact finding and the judicial duty to determine the law to the prosecutor; in fact, the judge's office and the prosecutor's office shared a common computer drive or program to facilitate the ease of such duties.

Moreover, once the improper methods were discovered, the judge failed to take seriously the errors he committed, refused to grant a new sentencing even though he represented to the Ohio Supreme Court that he would; and waited to be reversed by the Eleventh District Court of Appeals and ordered specifically to conduct a new sentencing hearing. Then, he issued in essence the same flawed opinion, with superficial changes, which reflects his bias or at least the unconstitutional potential for bias prohibited by *Withrow* and other U.S. Supreme Court decisions. The judge conducted a sham "new sentencing" hearing where he refused to consider the statement of Jackson in favor of a life sentence, refused to hear witnesses or receive documents Jackson wanted to present and otherwise demonstrated that he was not unbiased.

In addition, the Ohio courts who reviewed the conduct of Judge Stuard failed to apply or unreasonably applied well established U.S. Supreme Court cases, i.e. *Withrow*, and unreasonably determined or applied the facts in violation of (d)(1) and (d)(2). The Ohio Supreme Court "reprimanded" Judge Stuard for his conduct but allowed him to continue presiding and in essence repeat his misconduct.

30

GROUND XXVI:

It Violates the Fifth and Fourteenth Amendments of the Federal
Constitution for the state trial judge to have the prosecutor's office
draft, ex parte, findings of facts and conclusions of law in a Motion to
Suppress

Since at least the time that Judge Stuard took the common pleas court bench in January

1991, it has been the practice of the Trumbull County Prosecutor's Office ("Office") to draft legal

documents for the Trumbull County Judges ("Judges"). [T.d. 368, Exhibit 2, p. 41; Exhibit 3, p.

66; Exhibit 4, pp. 58-59; T.d. 369 Exhibit 5, p. 66-67, 80]. Assistant Prosecutor Becker described

the drafting process for the Judges as an "everyday event." [T.d. 369, Exhibit 5, p.177]. Assistant

Prosecutor Bailey testified "Kontos, McKay, Stuard, Logan, there are four criminal judges, and

I've done entries for all four Judges." [T.d. 368, Exhibit 4, p. 67]. The Judges, to request that a

pleading be drafted, either telephoned the Office or made the request in person. [T.d. 368,

Exhibit 3, p. 70; Exhibit 4, p. 68; T.d. 369, Exhibit 5, p. 1 08]. Assistant Prosecutor Bailey was

asked, "When you provided this draft entry to the Judge, were there instances where you also

provided a copy to defense counsel?" Prosecutor Bailey answered "no." [T.d. 368, Exhibit 4, p.

69].

The Office's drafting of documents for the Judges extended to a wide variety of pleadings

in criminal cases including sentencing entries, opinions on motions to suppress, findings of fact

and conclusions of law for post-conviction proceedings, and sexual predator determinations.

[T.d. 368, Exhibit 3, pp. 66-68, 70; Exhibit 4, p. 96; T.d. 369, Exhibit 5, p. 1 08]. To facilitate the

drafting process, the Office and Judges shared a computer drive, referred to as either the" G

Drive" or "I Drive." [T.d. 368, Exhibit 3, pp. 19, 25, 56; Exhibit 4, pp. 48, 53; T.d. 369, Exhibit

31

5, p. 92]. The Office would prepare pleadings on its G drive and electronically transfer them to the G drive on the Judges' computers.

The Office believed this to be an exemplary system for preparing the pleadings for the Judges. The Office rationalized that because it had to defend the Judges' pleadings on appeal, the Office should draft the entries to make them error proof. [T.d. 369, Exhibit 5, pp. 108-110, 128-29]. Assistant Prosecutor Becker testified, *"we* [the prosecutors] *represent the courts.* I don't think that any judge wants to have a case resentenced [sic] or remanded." (emphasis added). Assistant Prosecutor Bailey testified '[a]ny time the Supreme Court or the Court of Appeals comes up with a decision that requires things to be added to the entries, the Judges, if- it's a lot easier for us [the Office] to make sure that the required language that the court, that the higher court requires be in the entry, that we're consistent in those entries. *Sometimes Judges tend to forget to put the language in if they would do it themselves.* If they-- I think there's - - we have to defend the entry ... " [T.d. 368, Exhibit 4, pp. 97-98]. (emphasis added).

For purposes of the drafting of documents for trial judges, Assistant Prosecutor Becker considers the following as administrative matters and not judicial or substantive matters for the purposes of drafting pleadings for the Judges: 1) typing, 2) proofreading, 3) copying language from other sentencing opinions, 4) choosing words to put in to the document, 5) "filling in blanks," 6) supplementing or adding information not supplied by the judges, 7) creating sentences, and 8) selecting facts. [T.d. 368, Exhibit 3, pp. 34-35].

On August 2, 2006, in *State v. Roberts,* 110 Ohio St.3d 71, 2006-0hio-3665, 850 N.E.2d 1168, the Ohio Supreme Court decided that a trial judge commits constitutional error when he surreptitiously involves a prosecutor in the drafting of a sentencing opinion in a capital case.

After the Court issued its decision in *Roberts,* Jackson reviewed the transcript of the Roberts' sentencing hearing. The trial judge therein had attempted to defend the prosecutor's involvement in the drafting of the sentencing opinion by asserting that it was the standard procedure in other capital cases in Trumbull County. [T.d. 368, Exhibit 1, p. 6371 ]. Jackson inferred from this statement that the trial judge may have used the same procedure for drafting the sentencing opinion in his case given it was the same judge and both Roberts and Jackson were sentenced to death for their involvement in the death of Robert Fingerhut.

Based on this inference, on August 15,2006, Jackson requested leave to file his motion for a new sentencing hearing. [T.d. 331]. On April 18, 2008, the trial court entertained argument on the motion for a new sentencing hearing. During those proceedings the trial court referred Jacksonr to the pending disciplinary proceedings against the trial court and two members of the Trumbull County Prosecutor's Office. [4/18/08 Transcript, Tr. 5-6].

Based upon the information contained in those disciplinary proceedings, Jackson, on June 24, 2008, requested leave to file a motion for a new trial. [T.d. 367]. The gravamen of this motion was that the trial prosecutors had drafted for the trial judge, without notice to defense counsel, the findings of fact and conclusions of law overruling Petitioner's motion to suppress. *[Id* at Exhibit B attached thereto, pp. 2-3 ]. The trial court denied the motion, both as to its timeliness and on the merits.

Prior to trial, Jackson filed a motion to suppress the recorded and oral statements that he made to the investigating officers at the time of his arrest. [T.d. 21A]. On April17, 2001, the trial court held an evidentiary hearing on the motion. The critical fact was one of credibility; whether the arresting officers advised Jackson of his constitutional rights and whether Jackson

affirmatively requested counsel or that the interrogation cease. The trial court, in its findings of fact and conclusions of law, purportedly found the testimony of the arresting officers credible and the testimony of Jackson incredible. [T.d. 205]. Accordingly, the trial court purportedly concluded that the interrogating officers had advised Jackson of his rights and that Jackson had not requested that the interrogation cease or that he wanted to speak with counsel. Based on this factual finding, the trial court denied the motion to suppress [T.d. 205].

During the disciplinary proceedings involving the trial judge and prosecutors, Jackson first learned that the Trumbull County Prosecutor's Office routinely drafted, with respect to motions to suppress, the findings of fact and conclusions of law for the Trumbull County Common Pleas Court Judges. [T.d. 368, Exhibit 3, pp. 66-68, 70; Exhibit 4, p. 96; T.d. 369, Exhibit 5, p. 108]. That procedure violated Jackson's right to have the trial court, when ruling on a motion to suppress "state its essential findings on the record." Crim. R. 12(F). That infirm procedure further deprived Jackson of his constitutional rights as guaranteed by the Fifth and Fourteenth Amendments.

Fifth Amendment. Questions involving procedural due process do not address a defendant's guilt or innocence but instead the analysis focuses on the fair administration of justice. *Offutt v. United States,* 348 U.S. 11, 16, 75 S. Ct. 11, 99 L. Ed. 11 (1954). The fair administration of justice is grounded in the assumption that the judicial decisions will be based upon evidence and argument presented in open court, and not by any outside influences, whether of private talk or public support. *Patterson v. Colorado,* 205 U.S. 454, 462, 27 S. Ct. 556 (1907). Courts do not condone individuals associated with one party having contact with the trier of fact during the deliberation process. *Agnew v. Lesbach,* 250 F.3d 1123, 1135 (7th Cir. 2001);

34

*Caliendo v. Warden of California Men's Colony,* 365 F.3d 691, 699 (9th Cir. 2004).

Trials must not only be fair, they must also appear to be fair. *Taylor v. Hayes,* 418 U.S. 488, 501, 94 S. Ct. 2697, (1974). *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S. Ct. 1456. (1975) Jackson had a constitutional right to a fair and reliable determination on the admissibility of his custodial statement. *Rogers v. Richmond,* 365 U.S. 534, 543-44, 81 S. Ct. 735 (1961); *Jackson v. Denno,* 378 U.S. 368, 377 (1964).

Jackson's  right to due process as guaranteed by the Fifth Amendment was violated when the trial judge abdicated his role to the prosecution with respect to the drafting of the findings that overruled Jackson's motion to suppress.

Fourteenth Amendment. Once a state creates a statutory right to appellate review, that review must be conducted in accordance with the Due Process Clause of the Fourteenth Amendment. *Evitts v. Lucey,* 469 U.S. 387, 401, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). That constitutional provision protects a state criminal defendant from the arbitrary deprivation of a state statutory right. *Hicks v. Oklahoma,* 447 U.S. 343 (1980); *Morrissey v. Brewer,* 408 U.S. 471, 480-490, 92 S. Ct. 2593 (1972).

One of the cornerstones of Ohio's criminal justice system is the statutory right to appellate review. R.C. 2501.02. When an appellate court defers to factual findings because it mistakenly believes that a neutral judicial official made the findings, as opposed to the prosecution, a criminal defendant's rights as guaranteed by R.C. 2501.02 and the due process clause of the Fourteenth Amendment are violated. This scenario is analogous to the error that  exists when a prosecutor is granted the discretion to determine whether a defendant may appeal. *State v. Sterling,* 113 Ohio St.3d 255, 2007-0hio-1790. The prosecution's ability to bind the appellate

35

courts to a specific set of facts, as occurred in the present case, has reduced Jackson's right to appeal to a nullity.

In Jackson's direct appeal to the Ohio Supreme Court, he raised as Proposition of Law No. I, the trial court's denial of his motion to suppress. *State v. Jackson,* 107 Ohio St.3d 300, 2006-0hio-1.The Ohio Supreme Court deferred to the finding of facts entered by the trial court based upon the assumption that the trial court "found that Jackson had not unambiguously or unequivocally requested counsel before or during questioning." This Court reasoned that '" [a ]t a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact."The deference in this case was ill placed given that the prosecution and not the trial court made the requisite findings.

Judicial bias is not subject to harmless error analysis. *Arizona v. Fulminate,* 499 U.S. 297, 310-311, 111 S. Ct. 1246. (1991).It does not matter that the a court may actually have reached the same result absent the impermissible conduct. *Bracey v. Schoenig,* 286 F.3d 406, 414 (7th Cir. 2002). Nor does it matter that the court's error might be found to be harmless by an appellate court. *Id.* The error is not corrected by the fact that there exists a statutory procedure that offers a defendant an impartial adjudication on appeal. *Ward v. Village of Monroeville, Ohio,* 409 U.S. 57, 61-2, 93 S. Ct. 80 (1972). The Ohio Supreme Court did not correct this error when it ruled on the propriety of the trial court's denial of the motion to suppress. It deferred to the findings of facts entered by the trial court because '" [a ]t a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact."

The Ohio Supreme Court  proceeded on the mistaken assumption that it was the trial court that had actually made the findings. Accordingly, the State court's limited review of the decision denying the motion to suppress was based upon a mistaken assumption of the facts.

Jackson supported his motion for leave to file his motion for a new trial and motion for a new trial with two volumes of exhibits. [T.d. 368 and 369]. The exhibits included the transcripts of the depositions of Judge Stuard and Prosecutors Becker and Bailey from *In re Complaint against Judge John Mason Stuard, et. al,* Ohio Supreme Court Case No. 07-078; the transcript from the evidentiary hearing in *In re Complaint against Judge John Mason Stuard, et. al.,* Ohio Supreme Court Case No. 07-078; and Judge Stuard's agreed stipulations in *In re Complaint against Judge John Mason Stuard, et. al.,* Ohio Supreme Court Case No. 07-078. [T.d. 368 and 369].

The prosecution submitted no evidence contesting the merits of either motion or calling into question the credibility of the supporting documentation. [T.d. 370]. Jackson was denied Due Process under the Fourteenth Amendment when the trial court failed to conduct an evidentiary hearing on his motion for leave to file his motion for a new trial and his motion for a new trial. [T.d. 371].

The failure of the Ohio courts to grant relief was in violation of 28 U.S.C. 2254(d)(1) and (d)(2). Mr. Jackson respectfully argues that the Honorable John Stuard was biased or at least "the probability of bias........was too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), *Rippo v. Baker*, 137 S. Ct. 905 (2017), *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016)(as objective matter whether the average judge in his position is likely to be neutral or whether there is an unconstitutional potential for bias).

37

The trial judge allowed the prosecutor's office to make findings of facts and conclusions of law and thereby improperly delegated his judicial duties so that "his" judgment could be defended on appeal, i.e. especially with respect to the motion to suppress. This unconstitutional tactic worked. The Ohio Supreme Court deferred to the "judge's" determination of credibility determinations at the suppression hearing when the prosecutor actually made the factual and legal determinations. The bias or probability of bias in this case is simply too high to be tolerable. The evidence supporting this claim is overwhelming. When the judge admits that the prosecutor is making factual findings and legal conclusions for him, and keeping secret this process, then the bias or probability of bias cannot be denied.

Ground XXVIII

Jackson was denied a fair re-sentencing hearing in August of 2012 in violation of the Fifth, Sixth, Eight and Fourteenth Amendments of the federal Constitution.

On May 1, 2009, the trial judge denied Jackson's Motion for a New Sentencing Hearing. [T.d. 381]. He did not reference the Ohio Supreme Court decision in *Roberts*.  He characterized the facts underlying Jackson's motion as "the *alleged involvement* of the Trumbull County Prosecutor's Office in the preparation of the sentencing entry." (emphasis added).

On October 18, 2010, the Trumbull County Court of Appeals unanimously vacated Jackson's death sentence. *State v. Jackson,* 190 Ohio App.3d 319, 2010-0hio-5054. The State did not appeal.

On August 14, 2012, the trial judge conducted the resentencing hearing. Twice the trial judge stated that he had drafted his sentencing opinion prior to the commencement of the sentencing hearing [8/14/12 Tr. 22, 27]. He twice stated that he would not consider any new evidence or information. [Id. at Tr. 12, 14]. The trial judge, consistent with his statements in open court, filed the sentencing opinion shortly after the conclusion of the resentencing hearing. [T.d. 41 0]. The trial judge's sentencing opinion was almost an identical copy of his prior sentencing opinion that the court of appeals had found was tainted by the prosecutor's involvement. The trial judge added three paragraphs to the beginning of the initial opinion. He added the second and third paragraphs contained on page 3 of the second opinion. He omitted the two full paragraphs contained on page 3 of the initial opinion. The trial judge did not change any of the remainder of the tainted initial opinion including the portions identifying: 1) the mitigating factors and 2) the reasons that the aggravating circumstances outweighed the mitigation factors.

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal. *Bracy v. Gramley,* 520 U.S. 899, 904, 117 S. Ct. 1793.(1997); *Withrow v. Larkin,* 421 U.S. 35, 46, 95 S. Ct. 1456. (1975) A fair trial includes the right to an unbiased judge with no interest in the outcome of the case. *In re Murchison,* 349 U.S. 133, 136 (1955); *Tumey v. Ohio,* 273 U.S. 510, 523, 47 S. Ct. 437, 71 L. Ed 749 (1927). Moreover, a fair trial means more than simply the absence of actual bias; rather, "justice must satisfy the appearance of justice." *Liljeberg v. Health Services Acquisition Corp,* 486 U.S. 847, 865, n.l2, 108 S. Ct. 2194, 100 L. 2d 855 (1988); *Mayberry v. Pennsylvania,* 400 U.S. 455, 465, 91 S. Ct. 499 (1971)

A trial judge is required to step aside when there is a likelihood of bias or even an appearance of bias or when there is too great a temptation to not hold the balance of neutrality. *Taylor v. Hayes,* 418 U.S. 488, 501, 94 S. Ct. 2697, 41 L. Ed. 2d 897 (1974); *Unger v. Sarafite,* 376 U.S. 575, 588, 84 S. Ct. 841 (1964); "Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties, but due process of law requires no less." *In re Murchison,* 349 U.S. at 136.

Five actions of the trial judge point to his lack of fairness and impartiality, he: 1) repeatedly refused to accept this Court's ruling in *Roberts* and his disciplinary proceedings that he had improperly permitted the prosecutor to draft the sentencing opinion; 2) refused to rule on Jackson's motion for leave to file his motion for a new sentencing hearing until a mandamus suit was instituted against him; 3) denied Jackson's motion for a new sentencing hearing after stating in his affidavit that he was prepared to grant the motion; 4) prepared the "new" sentencing opinion after Jackson's death sentence was reversed without the benefit of Jackson's allocution; and 5) informed Jackson at the resentencing hearing that he would not consider any information that Jackson put forward in support of a sentence of less than death.

Because of the unique role of the trial judge in a capital case in Ohio, it is especially important that there be no risk of bias. When he trial is by jury, the sentence of death may be imposed only after the jury recommends the death penalty and "the *court* finds, by proof beyond a reasonable doubt ... that the aggravating circumstances the offender was found guilty of committing outweigh the mitigating factors." R.C. 2929.03(0)(3) (emphasis added).

Mr. Jackson respectfully argues that the Honorable John Stuard was biased or at least "the probability of bias........was too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), *Rippo v. Baker*, 137 S. Ct. 905 (2017), *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016)(as objective matter whether the average judge in his position is likely to be neutral or whether there is an unconstitutional potential for bias).

Ground XXVIV

The trial court's failure to appoint two qualified counsel for the re-
sentencing hearing in August 2012 denied Jackson Due Process and the
right to counsel under the Fifth, Sixth, Eighth and Fourteenth
Amendments of the federal Constitution.

The trial court's failure to appoint two counsel for the resentencing hearing denied Jackson his right to effective assistance of counsel in violation of the Sixth Amendment and Fourteenth Amendments. Furthermore,  it denied him his right to due process as guaranteed by the Fourteenth Amendment as well as *Hicks v. Oklahoma,* 447 U.S. 343, 347, 100 S. Ct. 2227 (1980).

After the court of appeals granted appellant a new sentencing hearing, Jackson filed a motion for the appointment of counsel. [T.d. 391]. In that motion, Attorney Porter indicated that if the trial court saw fit, he was willing to accept the appointment. Attorney Parker did not join in the pleading. In the motion for appointment, Attorney Porter represented that Attorney Parker would not be willing to accept appointment. Federal District Court Judge Gwin had appointed Attorney Parker as lead counsel for Appellant's federal habeas proceedings. *Jackson v. Houk,*

N.D.Ohio No. 4:07 CV 0080 (March 27, 2007 Order). Attorney Parker reasoned that because

Jackson had a Sixth Amendment right to counsel at the resentencing proceedings (which he did

not in the earlier post-judgment pleadings), Attorney Parker faced a potential conflict. In the

federal habeas proceedings, Jackson could conceivably raise an ineffective assistance of counsel

claim with regard to the resentencing proceedings. Attorney Parker would be barred from raising

that issue because an attorney cannot raise an ineffectiveness claim against himself. *See State v.

Cole,* 2 Ohio St.3d 112, 113(1982); Board of Commissioners on Grievances and Discipline

Opinion No. 2010-5. Concurrently with the filing of the motion for appointment, Jackson filed a

motion for a continuance. [T.d. 392]. He cited therein the fact that counsel had not been

appointed and Attorney Parker could not accept an appointment.

On August 13, 2012, the day prior to the resentencing hearing, the trial court denied the

motion for a continuance.

On August 14, 2012, the trial court conducted the resentencing hearing. At that point the

court still had not addressed the motion for appointment of counsel. Jackson raised the issue at

the start of the hearing. [8/14/12, Tr. 7]. The trial court adopted the position that because the

resentencing was part of the appellate process, Jackson was not entitled to appointed counsel:

> We are not here because of pending charges against Mr. Jackson.
> We are here solely as a result of the appeal that was filed from the
> original trial Therefore you [Attorney Porter] are the appropriate
> counsel This Court need not reappoint you. You are merely
> handling the appeal process for Mr. Jackson. This Court need not
> reappoint you.

[8/14/12 Tr. 7].

42

Attorney Parker then addressed the court concerning the potential conflict that he faced when trying to serve as both resentencing and federal habeas counsel for Jackson. The court declined to address the conflict, leaving it up to Attorney Parker to resolve "That is something I need not determine. That is up to you, whatever you are comfortable with." The court later repeated its prior ruling that it was not going to address the conflict issue, "I am merely saying that that is up to Mr. Parker. If he feels that there is some conflict, I am not going to insist that he proceed at this time." Attorney Parker declined to represent Jackson at the re-sentencing hearing.

When a defendant faces the death penalty, "[a ]t least two attorneys shall be appointed" by the trial court. Ohio Sup. R. 20 II(A). Similarly the American Bar Association Standards provide that "[t]he defense team should consist of no fewer than two attorneys." ABA, *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases.*

Jackson did not have the benefit of two attorneys. Jackson again faced the death penalty. In fact, the trial court once again imposed a death sentence. The trial court had its mind made up before this hearing; the court refused to appoint qualified counsel in accordance with Ohio law and the standards of the profession as reflected in the ABA Guidelines. Due Process and the right to counsel under the Sixth and Fourteenth Amendment have been violated. The death sentence imposed under these circumstances is cruel and unusual punishment and in violation of the Eighth Amendment of the federal Constitution.

Mr. Jackson respectfully argues that the Honorable John Stuard was biased or at least "the probability of bias........was too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), *Rippo v. Baker*, 137 S. Ct. 905 (2017), *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016)(as objective matter whether the average judge in his position is likely to be

neutral or whether there is an unconstitutional potential for bias).

The judge's bias or probability of bias is abundantly clear when he won't appoint two qualified counsel for the re-sentencing hearing ordered by a superior court. The judge would not even acknowledge the right to counsel at the re-sentencing hearing where Jackson's life was being determined. Mr. Porter was merely part of the appellate process; yet the judge filed a nearly identical death sentencing opinion that the prosecutor had previously written for the judge. The re-sentencing hearing was treated as a mere formality with the outcome predetermined. The bias or probability of bias is clear. Evidently, there was no need for two qualified counsel under these circumstances.

Ground XXX:

It is a violation of the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution for a state trial court to refuse to consider relevant evidence in support of a life sentence in a death penalty case.

On October 15, 2010, the Trumbull County Court of Appeals vacated Appellant's death sentence and ordered the trial court to conduct a resentencing hearing. *State v. Jackson,* 190 Ohio App.3d 319, 2010-Ohio-5054.

On August 14,2013, the trial court conducted a resentencing hearing. The trial judge three times stated that he would not consider any new or additional evidence that supported a sentence of less than death. [8/14/12 Tr. 5, 14].

Twice the judge stated that he had already drafted his sentencing opinion. [Tr 22, 27]. Almost immediately following the resentencing hearing, the judge filed his sentencing opinion.

44

That opinion reflected that the judge had not considered any new evidence that Jackson had proffered in favor of a sentence of less than death. It also reflected that the judge had not considered any information from Jackson's allocution.

Mr. Jackson respectfully argues that the Honorable John Stuard was biased or at least "the probability of bias........was too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), *Rippo v. Baker*, 137 S. Ct. 905 (2017), *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016)(as objective matter whether the average judge in his position is likely to be neutral or whether there is an unconstitutional potential for bias.)

 A defendant must receive individualized consideration based on the circumstances of the crime and the character of the individual before a sentence of death may be imposed. *Zant v. Stephens,* 462 U.S. 862, 879, 103 S. Ct. 2733, 77 L. Ed. 2d 235 (1983); *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976). A "process that accords no significance to relevant facets of the character and record of the individual offender or the circumstances of the particular offense" violates the Eighth Amendment. *Woodson,* 428 U.S. at 304. A defendant in a capital sentencing hearing, may not be precluded from presenting *any* relevant mitigating evidence. *Penry v. Lynaugh,* 492 U.S. 302, 319, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989); *Hitchcock v. Dugger,* 481 U.S. 393, 394, 107 S. Ct. 1821, 95 L. Ed. 2d 347 (1987); *Skipper v. South Carolina,* 476 U.S. 1, 4, 106 S. Ct. 1669, 90 L. Ed. 2d **1** (1986); *Eddings v. Oklahoma,* 455 U.S. 104, 113-14, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982); *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978). The exclusion of testimony also denies the defendant due process of law. *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). "The source of the potential barrier" to a sentencer's ability to

consider relevant mitigating evidence is immaterial. *Beard v. Banks,* 542 U.S. 406, 414, 124 S. Ct. 2504, 159 L.Ed. 2d 494 (2004). A court's exclusion of the relevant mitigating evidence renders the defendant's death sentence arbitrary and capricious and in violation of the Eighth and Fourteenth Amendments. *Zant,* 462 U.S. at 879; *Eddings,* 455 U.S. at 112.

The United States Court of Appeals for the Sixth Circuit vacated a death sentence for the same reason that Jackson asks this Court to vacate his death sentence; the three judge panel in that case had refused to consider evidence that the defendant initially submitted at a resentencing hearing. *Davis v. Coyle,* 475 F.3d 761, 775 (6th Cir. 2007). On remand, the panel refused to grant the defendant a new sentencing hearing and instead limited its consideration to counsel's argument and the evidence that had been placed in the record at the initial sentencing hearing. The panel refused to consider evidence of the defendant's post-sentence prison behavior and the testimony of a psychologist. The Court of Appeals granted sentencing relief because the three judge panel had refused to consider the proffered evidence. at 774 ("at resentencing, a trial court must consider any new evidence that the defendant has developed since the initial sentencing hearing.") Like *Davis*, Jackson was denied consideration of additional mitigation at his resentencing. The prejudice suffered by Jackson however is even greater than that suffered by *Davis*. Jackson presented evidence of intellectual disability which is not just a mitigating factor. Intellectual disability renders Jackson ineligible for a death sentence under *Atkins, Hall, Moore I and Moore II.*

Jackson was improperly prevented from presenting mitigating evidence at his re-sentencing and that mitigation was not considered by either the trial court or the Ohio Supreme Court. The subsequent Amended Post Conviction Petition was denied without a hearing and no Ohio court has properly considered this evidence, including evidence of Intellectual Disability, and this court owes no deference under AEDPA. De novo review is required. Further, at the very least an evidentiary may be required by this Court and discovery to further develop the evidence of Intellectual Disability. It must be emphasized that even of low intelligence is always mitigating, *Tenard v. Dretke*, even if one concludes that the evidence is insufficient for Intellectual Disability.

Jackson has never had a jury or Ohio court to properly consider this evidence in spite of his best efforts.

*Davis* received habeas relief and so should Jackson.

In two separate cases involving the exclusion of mitigating evidence, the United States Supreme Court has vacated death sentences without application of the harmless error doctrine. *Skipper. supra; Green v. Georgia,* 442 U.S. 95, 97, (1979). The Court in *Skipper* made it clear that the appropriate remedy was, a new sentencing hearing; "the State is of course not precluded from again seeking to impose the death sentence, provided that it does so through a new sentencing hearing at which the petitioner is permitted to present any and all relevant mitigating evidence that is available." *Skipper,* 476 U.S. at 8.

The trial court, after refusing to consider any new evidence, permitted Jackson to proffer into the record the substance of the testimony of the witnesses who he precluded defense counsel from calling. [8/14/12, Tr. 12, 20-21].

47

Jackson proffered three volumes of exhibits from the prior post-conviction pleadings. [T.d. 406-408]. Those volumes contained affidavits from some of the individuals that he would have called as witnesses if the trial court had not precluded all testimony. [T.d. 406, Exhibits 46 to 53, 56-58, Td. 407, Exhibit 78]. The exhibits and affidavits would have provided the court with relevant, probative mitigation evidence.

The Eighth Amendment requires heightened reliability and individualized consideration in capital sentencing. *Johnson v. Mississippi,* 486 U.S. 578, 584, 108 S. Ct. 1981, (1988); *Turner v. Murray,* 476 U.S. 28, 35-36, 106 S. Ct. 1683, 90 L. Ed. 2d 27 (1986); *California v. Ramos,* 463 U.S. 992, 998, 103 S. Ct. 3446 (1983). The requirement of reliability and accuracy in imposing the death penalty is well-rooted in case law and is fundamental to the Supreme Court's capital jurisprudence. *Gregg v. Georgia,* 428 U.S. 153, 194-95, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976). Events that occur after a sentence can render a death sentence constitutionally unreliable. *See Johnson,* 486 U.S. 582.

The trial court's refusal, in violation of the Eighth Amendment, to entertain additional evidence at the resentencing hearing caused Jackson to suffer actual prejudice. It resulted in the trial court's sentencing calculus being both incomplete and inaccurate.

The Judge's refusal to consider mitigating evidence that was proffered is based on the opinion imposing death where none of the evidence is discussed, analyzed or even mentioned. Perhaps this is because the death sentence was filed very shortly after the court room hearing; it would have been impossible for the judge to have considered the submitted evidence. Plus, the judge's statements in open court that he would not consider any new evidence leaves no doubt as to his bias or probability of bias. *Withrow*, supra.

48

The Ohio courts violated 2254(d)(1) and (d)(2).

Ground XXXI

Jackson was denied his rights under the Fifth, Sixth, Eighth and
Fourteenth Amendments of the federal Constitution when the trial court
refused to consider his allocution at the re-sentencing hearing.

On August 14, 2012, the trial court conducted the resentencing hearing at which *it* was
called upon to decide whether Jackson should be sentenced to death. The court at the
commencement of the proceeding emphasized two points. First, it would not consider any new
evidence and information that Jackson or his counsel offered in support of a sentence of less than
death. [8/14/12 Tr. 5, 14]. Second, the trial court made it clear that it had already written his
sentencing opinion and it would be filing that opinion at the conclusion of the hearing. [Tr.22,
27].

Jackson made a statement during the sentencing hearing. [Tr. 21-22]. Shortly after the
conclusion of the resentencing hearing, the trial court filed its sentencing opinion. The trial
court's opinion did not reference Jackson's allocution at the resentencing hearing or the
information contained therein.  The trial court's refusal to consider Jackson's August 14, 2012,
statement violated the cruel and unusual punishment clause of the Eighth and Fourteenth
Amendments of the United States Constitution, and the due process clause of the Fourteenth
Amendment to the United States Constitution.

49

Jackson in his allocution informed the court that he had been of good behavior since 2007, obtained educational certificates, served as a tutor and most importantly did not receive any disciplinary reprimands since he was removed from death row and placed in general population. *[Id.* at Tr. 21-22].

The United States Supreme Court has twice held that behavior in prison can constitute strong mitigation evidence. *Skipper v. South Carolina,* 476 U.S. 1, 5 (1986) ("evidence that the defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating. Under *Eddings,* such evidence may not be excluded from the sentencer's consideration.") *Ayers v. Belmontes,* 549 U.S. 7, 15, (2006) ("just as precrime background and character *(Boyde)* and postcrime rehabilitation *(Payton)* may extenuat[e] the gravity of the crime; so may some likelihood of future good conduct count as a circumstance tending to make a defendant less deserving of the death penalty.")

All valid capital sentencing schemes must afford individualized sentencing to the defendant. *See Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S. Ct. 2978(1976); *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S. Ct. 2954 (1978). The trial court's refusal to consider Jackson's allocution unduly restricted his mitigation. While a sentencer is free to give a defendant's mitigating evidence the weight it believes appropriate, it "may not give it no weight by excluding such evidence from consideration." *Eddings v. Oklahoma,* 455 U.S. 104, 114-15 (1982).

Exclusion of the evidence in this case was especially prejudicial because the prosecutor cross examined Dr. McPherson concerning the likelihood that Jackson would commit another murder in prison if the jury returned a sentence of less than death. [Sent. Tr. 93, 100]. It was a constant theme of the prosecutor's closing argument in the sentencing phase. *[Id.* at 142, 143,

50

150].

"Where the prosecution specifically relies on a prediction of future dangerousness in asking for the death penalty, it is not only the rule of *Lockett* and *Eddings* that requires that the defendant be afforded an opportunity to introduce evidence on this point; it *is* also the elemental due process requirement that a defendant not be sentenced to death '"on the basis of information which he had no opportunity to deny or explain.'" *Skipper,* 476 U.S. at 5, n. 1 (quoting *Gardner v. Florida,* 430 U.S. 349, 362 (1977)).

The trial court's refusal to consider Jackson's statement reduced his allocution to "an empty ritual" and violated the Fifth, Sixth, Eighth and Fourteenth Amendments.

The right to allocution is of the utmost importance. *United States v. Green*, 365 U.S. 30, 304 (1961). The right is not an empty formality. *United States v. Riascos-Suarez*, 73 F.3d 616, 627 (6th Cir. 1996); See *United States v. Barnes*, 948 F.2d 325, 328 (7th Cir. 1991).

It is improper for a sentencing court to unreasonably discount mitigation evidence. *Porter v. McCollum*, 558 US 30 (2009). Here, the trial court completely refused to consider mitigation evidence.

Mr. Jackson respectfully argues that the Honorable John Stuard was biased or at least "the probability of bias........was too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), *Rippo v. Baker*, 137 S. Ct. 905 (2017), *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016)(as objective matter whether the average judge in his position is likely to be neutral or whether there is an unconstitutional potential for bias.)

The Ohio courts violated 2254(d)(1) and (d)(2).

Ground XXXII

The sentencing opinion delivered in August 2012 violates the Fifth, Sixth, Eighth
and Fourteenth Amendments.

A Trial Court violates the Fifth, Sixth, Eight and Fourteenth Amendments  in a Capital
Case when it delegates its responsibility to the prosecution for the drafting of the sentencing
opinion.

On October 15, 2010, the Trumbull County Court of Appeals vacated Jackson's death
sentence. *State v. Jackson,* 190 Ohio App.3d 319, 2010-0hio-5054. The Court found that the trial
judge had involved the prosecution in the drafting of its sentencing opinion. It ordered the case
be remanded and the trial judge "prepare an *entirely new sentencing entry*" (emphasis added)

On August 14, 2012, the trial judge immediately after the resentencing hearing filed a
seventeen page sentencing opinion. The trial judge did not prepare an entirely new sentencing
opinion. Instead, he copied almost verbatim the prior opinion which the court of appeals had
previously found to be tainted by the prosecutor's involvement in the drafting.

The trial judge added three paragraphs to the beginning of his prior opinion, he added two
paragraphs which appear on the page 3 of the August 14, 2012 opinion and deleted the two full
paragraphs that appeared on page 3 of the December 9, 2002 opinion.

Other than those minor changes, the first and second sentencing opinions are identical
including the sections reviewing the mitigating factors and the reasons that the aggravating
factors outweighed the mitigating factors by proof beyond a reasonable doubt.

The trial court's August 14, 2012, opinion does not comply ·with R.C. 2929.03(F), the Eighth and Fourteenth Amendments to the United States Constitution, or the Fifth and Sixth Amendments.

Mr. Jackson respectfully argues that the Honorable John Stuard was biased or at least "the probability of bias........was too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), *Rippo v. Baker*, 137 S. Ct. 905 (2017), *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016)(as objective matter whether the average judge in his position is likely to be neutral or whether there is an unconstitutional potential for bias.)

The court failed to follow the orders of the Eleventh District Court of Appeals and instead of conducting a new sentencing hearing and writing a new sentencing opinion in which life or death would be imposed, the trial judge simply put lipstick on a pig. The pig being the first sentencing opinion secretly written by the prosecutor at the judge's direction which resulted in disciplinary action against the judge; and which resulted in vacating of Jackson's death sentence and his co-defendant's death sentence.

Undeterred, the judge simply made minor alterations to the original opinion, refused to consider additional mitigating evidence and made no changes to the portion of the opinion where he supposedly made findings of facts and conclusions of law concerning the mitigating factors and aggravating circumstances and the weight to be given to each in determining whether Jackson should live or die.

2254(d)(1) and (d)(2) have been violated. The judge was biased or the probability of bias was too high to be tolerated. The judge was ordered to correct his previous errors at sentencing; instead, he repeated the same constitutional errors with little disguise as to his actions. The judge's conduct reflects contempt for the Constitution, bias or at least the probability of bias, in violation of <u>Withrow</u> and other well established U.S. Supreme Court cases.

Ground XXXIV

The death sentence must be vacated because it was obtained in violation
of the Fifth, Sixth, Eighth and Fourteenth Amendments.

The Constitution requires that each death sentence is the product of a reliable procedure and that the sentence is worthy of confidence. *Johnson v. Mississippi,* 486 U.S. 578, 584 (1988); *Turner v. Murray,* 476 U.S. 28, 35-36, 106 S. Ct. 1683 (1986); *California v. Ramos,* 463 U.S. 992, 998, 103 S. Ct. 3446 (1983 ). The requirement of reliability and accuracy in imposing the death penalty is well-rooted in case law and fundamental to the Supreme Court's capital jurisprudence. *Gregg v. Georgia,* 428 U.S. 153, 194-95, 96 S. Ct. 2909, (1976).

Here, there was ineffective assistance of counsel, a trial judge who had ex parte communications with the prosecutor who drafted the sentencing opinions, the sentencing and resentencing opinion was not done by an impartial and unbiased judge, the judge refused to hear new mitigation evidence at the resentencing and refused to consider the allocution of Jackson.

The death sentence is based on a constitutionally flawed process and inaccurate and incomplete information about Jackson.

54

The trial judge had the ultimate duty to determine whether Jackson should live in prison forever or be executed. Instead of taking this solemn duty responsibly, the judge delegated the fact finding and legal responsibility to the prosecutors who had actually advocated for Jackson's death. The judge did all of this in secret without letting the defense know. Only when the errors were discovered later in the co-defendant's trial and appeal and the resulting disciplinary action against the judge and prosecutors did it come to light what happened in Jackson's case.

Mr. Jackson respectfully argues that the Honorable Judge John Stuard was biased or at least "the probability of bias........was too high to be constitutionally tolerable." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), *Rippo v. Baker*, 137 S. Ct. 905 (2017), *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016)(as objective matter whether the average judge in his position is likely to be neutral or whether there is an unconstitutional potential for bias.)

2254(d)(1) and (d)(2) have been violated by the Ohio courts.


Ineffective Assistance of Counsel Mitigation Phase


Ground XXVII:

Jackson was deprived of the effective assistance of counsel during the mitigation phase of his trial in violation of the Sixth, Eight and Fourteenth Amendments of the federal Constitution.

Mr. Jackson had two lawyers appointed to represent him, i.e. Mr. Consoldane and Mr Lewis. On the day the mitigation phase was scheduled to start, Mr. Lewis was in the hospital and unavailable. Mr. Lewis had prepared the mitigation phase of the case. Mr. Consoldane was unprepared to present the mitigation witnesses.

Attorney Wright entered the courtroom. He was not qualified under Ohio Rule 20 to represent anyone charged with a capital offense and knew nothing about Jackson or the case. Nonetheless, Attorney Wright became Jackson's second lawyer to replace the ill and hospitalized Mr. Lewis.

No opening statement was given by the defense in the mitigation phase. Only four lay witnesses testified; the total pages of the transcript for these four witnesses is 10 pages which includes cross examination. A defense psychologist was called to testify but she did more harm than good when she relied on inaccurate IQ test scores.

Defense counsel gave a 6 page closing argument where he argued Jackson did well in a structured environment which was aptly rebutted by the State's argument that Jackson had planned, with his co-defendant, this Aggravated Murder while in prison.

On November 15, 2002, at 1:20 p.m., the court commenced the mitigation phase of Jackson's case. [11/14/02 Tr. 17]. In two hours-thirty-five minutes the defense counsel completed its sentencing presentation. Tr. 181.

Jackson was represented by two attorneys at the sentencing hearing. Attorney Wright literally did not have any contact with the case prior to the commencement of the mitigation phase and had not been certified by the Rule 20 Committee of the Ohio Supreme Court to accept appointments in capital cases. (Tr. 7-8). The remaining attorney, Consoldane had relied on

Attorney Lewis to prepare the mitigation and present the mitigation. [11/14/02, Tr. 7-8]. That attorney because of an unexpected illness, was unable to attend the mitigation hearing.

Defense counsel did not give any opening statement. Defense counsel called four lay witnesses whose testimony, including cross examination totaled ten pages. (Tr. 23-33). Defense counsel called a psychologist who testified that:  Jackson's IQ was 84; this score placed him in the dull normal range; and Jackson operated at on a higher level that his IQ score indicated, in the lower normal range or higher. However, the witness's spouse, who administered the psychometric tests incorrectly administered or scored Jackson's IQ test as well as the Wide Range Achievement Test.

Finally, defense counsel gave a six page closing statement during which he argued that Jackson did well in a structured prison environment. As the prosecutor aptly observed in his closing argument, when Jackson was previously incarcerated, he had helped plot the capital murder charge on which the jury had convicted him.

In all criminal prosecutions, the accused shall  have the Assistance of Counsel for his defense. Sixth Amendment of the United States Constitution. The right to counsel is the right to the effective assistance of counsel.  *Strickland v. Washington,* 466 U.S. 668, 686, 104 S. Ct. 2052. (1984) For an attorney to be found ineffective, counsel must have performed deficiently and the defendant must have been prejudiced by that deficient performance. This test applies to the sentencing phase of a capital case.

In this case, defense counsel's performance did not meet the then prevailing standards of practice in a capital case and there is a reasonable probability that if defense counsel had met the prevailing standards, at least one juror would have voted for a sentence of less than death.

57

The first prong of the *Strickland* test requires that a defendant identify those acts and omissions of counsel that constituted deficient or unreasonable performance. The prevailing norms of practice for defense counsel serve as a basis to determine whether counsel's actions were deficient or unreasonable. The American Bar Association standards accurately reflect the prevailing norms of practice for the purpose of evaluating counsel's performance. *Wiggins v. Smith,* 539 U.S. 510, 524, 123 S. Ct. 2527 (2003).

Counsel's performance was deficient in the following respects: 1) one counsel was not qualified  2) neither counsel conducted a reasonable sentencing phase investigation, 3) counsel did not request a continuance and refused the court's offer of a continuance, 4) counsel did not retain a reasonably qualified expert, and 5) counsel failed to lodge the necessary objections.

Attorney Wright was not qualified and lacked any knowledge of Jackson's case; Attorney Lewis, who was the member of the defense team responsible for the mitigation presentation, became ill and was unable to make the presentation. [11/15/02 Tr. 4, 155]. Attorney Consoldane had "just got hold of Mr. Wright this morning" with respect to substituting for Attorney Lewis.

Mr. Wright, while he had taken the three day training course for purposes of Rule 20 certification, had not been certified for purposes of accepting an appointment in a capital case. In a capital case, if a defendant is indigent, "the court shall appoint two attorneys certified pursuant to Sup. 20."

Ohio Sup. R. 20(I)( C). Jackson did not have the benefit of two qualified attorneys for purposes of his mitigation hearing. *See also,* 2003 ABA Guidelines for the Appointment and Performance of Defense Counsel in a Death Penalty Case,§ 5.1.

Even more disturbing than Attorney Wright's lack of certification, is his total lack of any knowledge concerning Jackson or his case. In one of the seminal cases in American history, the Supreme Court struck down the convictions and death sentences of several African Americans who were represented by attorneys who the trial court appointed because they, by happenstance, were in the courtroom on the day that the trial commenced. *Powell v. Alabama,* 287 U.S. 45, 57, 53 S. Ct. 55 (1932).  The only difference in this case and *Powell* is that defense counsel, as opposed to the trial court, sought out the volunteer counsel on the first day of the sentencing hearing. This however, is a distinction without a difference. In both cases the defendants were represented by attorneys who knew nothing about their cases.

Counsel in a capital case are obligated to conduct a reasonable investigation with respect to the sentencing phase. *Strickland,* 466 U.S. at 690-91. Failure to do so renders counsel's assistance ineffective. When a client faces the prospect of being sentenced to death, the need to conduct a reasonable investigation is magnified. *Mapes v. Coyle,* 171 F.3d 408, 426 (6th Cir. 1999). "There is no more important hearing in law or equity than the penalty phase of a capital trial." *Gerlaugh v. Stewart,* 129 F.3d 1027, 1050 (9th Cir. 1997) (Reinhardt, J., concurring and dissenting). "To fail to present important mitigating evidence in the penalty phase--if there is no risk in doing so--can be as devastating as a failure to present proof of innocence in the guilt phase." *Mak v. Blodgett.* 970 F.2d 614,619 (9th Cir. 1992) (per curiam).

The two attorneys who represented Jackson in the sentencing phase had "an obligation to conduct a thorough and independent investigation relating to the issues of both guilt and punishment." 2003 ABA Guideline 1 0.7(A). The "penalty phase investigation requires extensive and generally unparalleled investigation into personal and family history.( citations omitted)" *Id*

59

at Commentary. The investigators needed to explore Jackson's: l) medical, 2) family 3) educational, 4) military, 5) employment, and 6) social histories.

Attorney Consoldane called Raymond Dickerson, Pauline Korneagay, Taushua Korneagy, and Lorraine Rue to testify. [11/14/0 Tr. 23, 25, and 31]. The attorney first spoke with Raymond Dickerson and Pauline Korneagay when they appeared at the courthouse on the day of the mitigation hearing. [T.d 402, Exhibit 49, Exhibit 52.] See *Foust v. Houk*, 655F.3d 524 (6th Cir. 2011)(did not interview potential mitigation witness/prepare witnesses in advance of testimony).

The interviewing of family members at the courthouse the day of sentencing hearing does not satisfy the prevailing standards of practice. *See Foust,* supra.

Attorney Consoldane moved the trial court to permit the psychologist to be in the courtroom during the lay witness testimony because "l think that it would be better able to help me in court, when I am *interviewing* the family members if she's here with me. She knows far more about the background of the family that I do, and it was - - *I got a little shorthanded with Mr. Lewis going into the hospital* ..." [11/14/02 Tr. 7] (emphasis added). The trial court denied the motion. *[Id* at Tr. 15-16] See *Foust*, supra; *Cooper v. Secretary*, 646 F.3d 1328 (11th Cir. 2011).

Counsel did not conduct the required reasonable investigation. Attorney Wright conducted no investigation. Attorney Consoldane admitted to being "shorthanded" which was his way of referencing that he was unprepared because he had not spoken to the witnesses. Counsel performed deficiently in this aspect of the sentencing hearing.

Defense counsel had a duty to request a continuance to permit adequate investigation and preparation. Counsel' s performance is deficient when the circumstances dictate the need for a continuance and counsel fails to move the court for the additional time. *Catalan v. Cockrell,* 315 F.3d 491, 493 (5th Cir. 2002); *Hodgson v. Warren.* 622 F.3d 591, 600 (6th *Cir.* 2010). The circumstances dictated the need for a continuance in this case. Attorney Lewis, who was to make the mitigation presentation became ill. [11/14/02 Tr. 4]. Attorney Consoldane who remained on the case had not prepared for mitigation. The attorney who replaced Attorney Lewis was first asked to participate on the morning of the hearing.

Incredibly, Mr. Consoldane informed the court that "we do not think that any delay at this point would be wise." (Tr. 4). This statement was unreasonable given the lack of preparation by the two defense attorneys. The trial court even indicated that it would most likely be willing to grant such a request [Tr. 5]. The State twice indicated that it had no objection to a continuance. [Sent. Tr. 6, 156].

Mr. Consoldane subsequently identified his reasons for not asking for a continuance. He had made mitigation presentations in other cases. (TR 157)  Furthermore, he explained "I had the witnesses here. I didn't want to have them back." The prevailing standards in most if not all cases, let alone a capital case, require more than the issuance of subpoenas for witnesses whose testimony is unknown. See *Foust*, supra; *Griffin v. Pierce*, 622 F.3d 831 (7th Cir. 2010), cert denied 562 U.S. 1250 (2011)(counsel failed to conduct mitigation investigation presenting only the testimony of the defendant and a witness counsel never spoke to until a few minutes before she testified).  Here, the prosecutor recognized the possibility that a continuance was warranted.

61

Defense counsel requested that Dr. McPherson be permitted to stay in the court room because he was unprepared to go forward, "'she knows far more about the family members ...  I got a little shorthanded with Mr. Lewis going in the hospital and [just got hold of Mr. Wright this morning ... " (Tr. 7)  The prosecutor responded that the correct remedy for Attorney Consoldane's lack of preparation was a continuance, "if Attorney Consoldane feels he's not prepared because of short notice, that the case should be continued until he's prepared ... " [Tr. 8].

Defense counsel failed to retain a competent expert. The prevailing practice in capital cases at the time of Jackson's trial dictated that defense counsel retain all reasonable and necessary experts. *Lockett v. Anderson,* 230 F.3d 695 (5th 2000); *Sims v. Livesay,* 970 F.2d 1575, 1580 (6th Cir. 1992). This prevailing standard of practice is only met if the experts defense counsel retain are competent experts. *Mason v. Micthell* ,320 F.3d 604, 627 (6th Cir. 2003); *Haliym v. Mitchell,* 492 F.3d 680, 712-14 (6th Cir. 2007); *Skaggs v. Parker,* 235 F.3d 261, 273 (6th Cir. 2000).

Counsel retained psychologist Dr. Sandra McPherson for purpose of the mitigation presentation. [8/14/12, Tr. 62]. She permitted her spouse to administer the IQ and WRAT tests to Jackson. Jackson received a full scale score of 84 on the IQ test administered by the spouse. [Tr. 46]. That score, according to Dr. McPherson placed Jackson intellectually in the dull normal range. [TR at 83]. However, she believed that he was functioning at a higher level, "low average or better."

Jackson had previously received IQ scores in the low 70's when he was in the seventh and tenth grades. [Tr. 46]. Dr. McPherson attributed this very "unusual pattern" of IQ scores on the fact that Jackson's prior results were negatively impacted by his attention deficit disorder and the

racial bias of the IQ tests. [Tr. 46-48].

However, Dr. McPherson's spouse recorded the data from the IQ test on a blank sheet of paper as opposed to a full booklet as required by the testing protocol. [T.d. 407, Exhibit 78] Either Dr. McPherson or her spouse committed eight errors  in the computing scoring and reporting of the IQ tests. If properly scored Jackson would have received a full scale score of 80. Dr. McPherson or her spouse also committed sixteen errors in the computing and reporting of Jackson's WRAT test results.

During the post-conviction proceedings, Jackson had another IQ test administered to him. He received a full scale score of 75. This result was convergent with the IQ scores that Jackson received in school, not the results that Dr. McPherson reported. *See State v. White,* 118 Ohio St.3d 12, 2008-0hio-1623.

Defense counsel performed deficiently when the expert that they retained: 1) delegated the administering of the IQ and WRAT tests to her spouse, 2) incorrectly scored the tests, 3) wrongly attributed Jackson's earlier, much lower test scores to cultural bias and Jackson's ADHD, and 4) concluded that Jackson functioned at a higher level than the inflated score on the test that her spouse administered.

Defense counsel failed to lodge timely objections. Defense counsel in a capital case should "consider all legal claims potentially available ... in light of ... the importance of protecting the client's rights against later contentions by the government that the claim has been waived, defaulted, not exhausted, or otherwise defaulted ... "2003 ABA Guideline 10.8 (A)(l) and (A)(3)(c). "One of the most fundamental duties of an attorney defending a capital case at trial is the preservation of any and all conceivable errors for each stage of appellate review."

Defense counsel's performance is deficient when they fail to lodge a timely objection to a cross examination, prosecutorial argument, and jury instructions. *Hodge v. Hurley,* 426 F.3d 368, 376 (6th Cir. 2005); *Washington v. Hofbauer,* 228 F.3d 689, 707 (6th Cir. 2000); *Joseph v. Coyle,* 469 F.3d 441, 460-61 (6th Cir. 2006); *Lucas v. 0 'Dea,* 179 F.3d 412, 419 (6th Cir. 1999). 294.

Defense counsel failed to object to the following improper cross examination by the prosecution of Dr. McPherson that Jackson: 1) hated white individuals [2/14/02 TR. 73-74],  2) was previously incarcerated in 1992 and 1993 [ Tr. 75], 3) attempted to hit a teacher while still in school [ Tr. 76], 4) threatened people at school [tr  76],  5) threatened and attempted to hit another teacher [Tr. 78],  6) stalked one of his children which led to the entrance of a restraining order that preventing him from visiting that child [Tr. 81-82], 7) had a long history of illegal behavior [Tr. 88-89], 8) knew right from wrong [Tr. 90], 9) was placed on probation several times [Tr. 90],  9) was the product of a counter culture [Tr. 96], and could possibly kill again in prison [Tr 100].

To the extent that any of these questions by the prosecutor were a proper response to issues raised by defense counsel on direct examination of the lay witnesses and psychologist, then counsel was ineffective for opening the door to those lines of questions. *Miller v. Anderson,* 255 F.3d 455, 459 (7th Cir. 2001); *Wilson v. Mazzuca,* 570 F.3d 490, 503-06 (2nd Cir. 2009). 295.

Defense counsel also failed to object to the following improper closing argument, 1) Jackson planned the murder [11/14/02 Tr. 142], planning is an aggravating circumstance [TR 143, 145, 150], Jackson knew right from wrong [Tr. 145], Jackson has been in and out of prison

[Tr. 145], Jackson partied after the murder [Tr. 145], and Jackson threatened to kill his teachers [Tr 149].

Defense counsel performed deficiently when they failed to make requisite objections. This failure led to the jury hearing inadmissible evidence and argument. If the court had overruled any of the objections, then those issues would have been preserved for appeal as opposed to being waived for appeal.

Jackson was prejudiced . For a defendant to prevail on an ineffectiveness claims, he must demonstrate more than defense counsel's failure to meet the prevailing standards of practice. He must also demonstrate that he was prejudiced by counsel's deficient performance. *Strickland,* 466 U.S. at 692.

In a limited number of circumstances, a court will presume prejudice for purpose of an ineffectiveness claim. *United States v. Cronic,* 535 U.S. 685, 658-659, 104 S. Ct. 2039 (1984). *Bell v. Bradford,* 535 U.S. 685, 6695-96, 122 S. Ct. 1843, (2002).

Two of the circumstances that the Court has found to warrant a finding of presumed prejudice exist in this case.  First, prejudice will be presumed where competent counsel is called upon to render assistance under such circumstances he is unlikely to be able to render effective assistance. *Cronic,* 535 U.S. at 659-662.

*Cronic* cited to *Powell v. Alabama* in which counsel was appointed on the day trial commenced. As previously noted, this case is similar to the factual pattern in *Powell.* New counsel who was recruited on the day of the mitigation hearing, was substituted for Attorney Lewis the attorney who was to present the mitigation, but had suddenly become ill. [11114/02, Tr. 4, 7].

Attorney Consoldane who remained on the case was not prepared to present the mitigation case because he believed that Attorney Lewis would make the presentation. [Tr 7-8]

Second, prejudice will be presumed when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic,* 535 U.S. at 659. Attorney Wright was not in a position to subject the prosecution's case to meaningful adversarial testing because he literally knew nothing about the case. Attorney Consoldane was in the almost identical situation.  While he had the opportunity to prepare for the mitigation case (he had been on the case since Jackson was charged), he had not conducted the necessary investigation and review of the materials, believing that Attorney Lewis was to make the mitigation case. [11/14/02 Tr. 7-8]. The failed request that Dr. McPherson be permitted to remain in the courtroom highlighted his inability to *meaningfully* contest the State's case for death, "I think that it would be better able to help me in court, when I am *interviewing* the family members if she's here with me. She knows far more about the background of the family that I do, and it was - - I got a little shorthanded with Mr. Lewis going into the hospital ... " [11/14/02 Tr. 7].

This Court must presume prejudice because of counsel's lack of knowledge with Jackson's case for a sentence of less than death. Counsel in the mitigation phase of a capital case is required to go forward with evidence, as opposed to merely cross examining the State's witnesses. Neither counsel was prepared to call witnesses to make the case for less than death.

Jackson was prejudiced. If this Court finds that a presumption of prejudice is not warranted, Jackson suffered actual prejudice.

To establish prejudice, a petitioner must demonstrate that but for counsel's errors, there is a reasonable probability that the result of the sentencing proceedings would have been different.

66

*Strickland* 644 U.S. at 694.

The abbreviated sentencing presentation that Attorney Consoldane made painted Jackson as: 1) being from a good home, 2) an average student in school who experienced no problems and 3) raised by a strong mother who instilled in him a strong set of values. The jury heard that Jackson operated at "low average or better" level of intelligence. [11/14/02, Tr. 83]. He was very smart and a talented artist. [Tr. 28]. He did "pretty good" in school and did not experience any problems. [Tr. 32]. He was treated well by his mother. [Tr. 28]. His mother kept him active in the church. [Tr. 29]. Appellant lived most of his life with his mother. [Tr. 24]. His mother taught him to be responsible for his actions. [Tr. 29]. He was not raised in a "rough neighborhood." [Tr 32] . He was always respectful of his mother and grandmother. [Tr. 24]. Jackson, prior to the murder, did not live on the street, but with his grandmother. [Tr 27]

Defense counsel failed to adequately develop and present the co-defendant's control over Jackson. She had provided him with drugs, clothes and money. [Td. 406, Exhibit 49, Exhibit 50, 51 ]. Given his poverty, low intellectual level, and failings in life, he would have been an easy mark for her. See *White v. Ryan*, 895 F.3d 641 (9th Cir. 2018). *White* is a remarkably similar case to the underlying facts of the crime and failure to present accurate mitigation.

The mitigation presented gave a highly inaccurate portrayal of Jackson's life in all respects.  First and foremost, Jackson was not functioning at the level of a person with low average or better intelligence; he was operating on the level of a person with borderline mental retardation. [T.D. 407, Exhibit 78]  He experienced behavior problems in school and often talked back to his teachers. [T.d. 406, Exhibit 49] Jackson's mother was a binge drinker. Exhibit 53. His stepfather was a drinker who did not hold down jobs. Exhibit 53. Jackson was raised by his

67

grandmother because of his mother's addiction. Exhibit 50, Exhibit 53. He did not have a good relationship with his mother because she showed affection only for his brother. He did not listen or follow the suggestions of other individuals. Exhibit 52. Jackson was raised in a tough neighborhood where the sound of gunshots were often heard. Exhibit 51. He did not do well in school and was placed in a school for children with behavioral problems. Exhibit 50. Jackson lived on the street where he associated with drug dealers. Exhibit 52. Jackson's mother placed locks on her cabinet doors to prevent him from stealing from her to support his drug habit. Exhibit 50. Jackson stole from so many persons to support his drug addiction that he was frequently threatened with bodily harm. Exhibit 51.

The United States Supreme Court reversed a death sentence based upon a very similar set of facts. *Sears v. Upton,* 130 S. Ct. 3259 (2010). Trial counsel in *Sears* presented evidence that described the defendant's childhood as "loving, stable, and essentially without incident. *Sears* at 3261. In post-conviction, newly appointed counsel demonstrated that the defendant "was far from 'privileged in every way.'" *Sears* at 3262. His parents who separated when the defendant was of an early age were verbally abusive of him. The defendant from an early age performed poorly in school and by the time he reached high school he was labeled severely learning disabled and behaviorally handicapped. In post conviction, the defendant was found to suffer from brain impairment. *Sears* at 3262-63. The Court in *Sears* found that the defendant's brain impairment was consistent with "an individual with diminished judgment and reasoning skills who may have desire to follow in the footsteps of an older brother who had shut him out of his life." *Sears* at 3263.

Like *Sears.* defense counsel here painted a picture of Jackson having come from a loving and stable environment. Like *Sears,* Jackson's background was far from privileged in every way. The only distinguishing fact between Jackson and Sears was that Sears was found to suffer from brain impairment. Jackson's low IQ raises some of the same limitations as Sears' brain impairment. Jackson's intellectual deficits caused him to have diminished judgment and reasoning skills. These limitations caused him to be an easy mark for the co-defendant, Roberts, who needed someone to kill her spouse so that she could receive $550,000 in life insurance proceeds.

The Sixth Circuit in an opinion authored by Judge Sutton, granted sentencing phase relief in an Ohio capital case in which defense counsel had similarly painted an inaccurate profile of the petitioner's childhood. *Johnson v. Bagley,* 544 F.3d 592 (6th Cir. 2008). At trial defense counsel went forward with evidence that the petitioner therein had been raised by the maternal grandmother who did everything possible to provide the petitioner a good upbringing. The Sixth Circuit Court of Appeals found that contrary to the defense theory at trial, the petitioner had led a difficult life and that the grandmother was anything but "a saint" when it came to raising the petitioner. at 604. The Court held that defense counsel was on notice, given the grandmother's involvement in raising the petitioner, that the mother had abused the petitioner.

Judge Sutton in finding prejudice, concluded that the post-conviction evidence differs "not only in degree but also in kind" and forms a mitigation story 'that bears no relation to the story the jury heard." at 606. The Court of Appeals held that "[c]ompetent counsel could have put on evidence that 'differ[ed] in a substantial way--in strength and subject matter-from the evidence presented at sentencing." at 603.

69

The court's conclusion in *Johnson* is equally applicable herein. The jury heard that Jackson functioned at an average level of intelligence, was smart, a good student, a talented artist, who was raised by a loving mother in a good neighborhood.

In fact Jackson was initially raised by an alcoholic mother, whose parenting was so bad that he was raised by his grandmother, in a bad neighborhood. Furthermore, the jury did not hear that Jackson is of 1) borderline intelligence, 2) was a poor student, 3) suffered from severe emotional and behavioral problems, 4) developed an addiction to crack cocaine that cause him to commit thefts (including from the residences of his family to support his habit).

Judge Sutton in *Johnson* concluded that the district court had properly found that "not one witness testified about the abuse that [Johnson] and his brother suffered as a way of life," and the jury "was misled into believing that [Faulkner the petitioner's grandmother]] had raised [Johnson] properly and provided for his needs." at 604.

The same can be concluded about this case, not one witness testified about the hardships and mental limitations from which Jackson suffered and the jury was misled into believing that Jackson was raised in a loving environment in which he prospered as a student, individual, and artist.

When a court decides whether a defendant was prejudiced by defense counsel's deficient performance, it must assess the cumulative in pact of all of defense counsel's errors. *Strickland.* 466 U.S. at 690. A court examines the totality of the evidence; the evidence presented at trial and the evidence discovered after trial, to determine if there is a reasonable probability that the outcome would have been different. *Williams v. Taylor,* 529 U.S. 362, 397-98, 120 S. Ct. 1495. (2000)

The prejudice test focuses on whether there is a reasonable likelihood that the newly discovered evidence, in conjunction with the evidence presented at trial, would cause a single juror to reach a different conclusion. *Wiggins,* 539 U.S. at 537. If the jury had heard that: Jackson was raised in a dysfunctional household, 2) suffered from extreme emotional problems, 3) was of borderline intelligence, 4) susceptible to manipulation, 5) addicted to crack, and 5) had been manipulated by the co-defendant, one or more jurors would have voted to return a sentence of less than death.

The test for prejudice is an objective test. *Strickland* at 695. When an Ohio court applies the wrong test for prejudice or performance under *Strickland*, then AEDPA deference does not apply. See *Craig v. Herzog*, 798 F.3d 840, 846, 850 (9th Cir. 2015); *White v. Ryan*, 895 F.3d 641 (9th Cir. 2018).

In a weighing state, like Ohio, that means each juror is required to determine his/her own "reasoned *moral* response" to the defendant's background, character, and crime, as expressed through the weighing of aggravation and mitigation. See, e.g., *Brewer v. Quarterman*, 550 U.S.286, 289 (2007). See also *Abdul-Kabir v. Quarterman*, 550 U.S. 233, 254.  **Each juror is required to decide** a purely **moral question.** *Abdul-Kabir*, 550 U.S. at 252 (quoting *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J.,concurring). "The decision to impose the death sentence is not a product of fact-finding, but rather, a product of jurors' beliefs and experiences. A fact either exists or not, and thus a factfinder may **objectively be wrong; the answer to the question whether someone should live or die is never objectively incorrect because of the moral nature of the question."** *United States v. Con-Ui*, 2017 U.S. Dist. LEXIS 58873, at "12-13 (M.D. Pa. Apr. 18, 2017) (emphasis supplied).

The complex moral judgment each individual juror is required to make has, at its core, the question of mercy:

> Whether mitigation exists.., is largely a judgment call (or perhaps a value call); **what one juror might consider mitigating another might not. And of course the ultimate question whether mitigating circumstances outweigh aggravating circumstances is mostly a question of mercy-the** quality of which, as we know, is not strained. It would mean nothing, we think, to tell the jury that the defendants must deserve mercy beyond a reasonable doubt; or must more-likely-than-not deserve it.... [J]urors will accord mercy if they deem it appropriate, and withhold mercy if they do not, which is what our case law is designed to achieve.

*Kansas v. Carr*, 136 S. Ct. 633,642 (2016) (emphasis supplied). What's more, it is a constitutional requirement that the jury be "given a 'vehicle for expressing its reasoned moral response to [mitigation] evidence in rendering its sentencing decision.'" *Penry v. Johnson*, 532 U.S. 782, 797 (2001) (Penry II) (quoting Penry I, 492 U.S. at 328). Only then can reviewing courts be sure that the jury "has treated the defendant as a 'uniquely individual human being' and has made a reliable determination that death is the appropriate sentence." *Penry* I, 492 U.S. at 319 (quoting Woodson v. North Carolina, 428 U.S. 280, 304 (1976)).

With the core of mitigation being a fundamental moral question, it is trial counsel's *duty* to provide *evidence and argument* which empower jurors to extend mercy, or, in other words, to provide "reasons"--trial counsel does not have to label them as "excuses," if he has a hang-up with that word, but they are nonetheless "reasons" or "explanations"--why that offender is *less morally culpable* for his capital offense and should not be sentenced to death.

To prevail on that prejudice prong, Jackson does not have to prove that the jury's sentencing decision would have been different. He only needs to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Wiggins*s, 539 U.S. at 534 (quoting Strickland, 466 U.S. at 694); Herring, 142 Ohio St. 3d at 191-96. And, in a weighing state like Ohio, that standard is met by showing "a reasonable probability that *one juror* would have voted against death had defense counsel presented mitigation evidence." *Williams v. Anderson*, 460 F.3d 789, 804 (6th Cir. 2006) (citing State v. Robb, 88 Ohio St. 3d 59 (2000)). See also *Goodwin v. Johnson*, 632 F.3d 301,327 (6th Cir. 2011); *Abdul_Salaam v. Sec's of Pa. Dep't of Corr.*, 895 F.3d 254, 269 (3d Cir. 2018).

The recent case of *White v. Ryan*, 895 F.3d 641 (2018) is important for several reasons. The remarkable similarity in the facts of the crime in that case and this one are remarkable. Mr. White shot and killed the husband of his lover for "pecuniary gain." There was evidence that the dead husband's wife was going to share the proceeds of a life insurance policy with Mr. White.

Post conviction investigation in White's case revealed he acted out of love for the victim's wife and pressure repeatedly put on him to kill her husband. White also suffered from low intellectual functioning, as does Jackson, and had a troubled childhood, as did Jackson. The fact finder in White and Jackson's case were misinformed that each had a "normal" childhood. White was recently granted penalty phase relief and so should Jackson. In each case the woman was the "mastermind" and White and Jackson succumbed to pressure from her, and acted out of love or infatuation rather than pecuniary gain and in mitigation an inaccurate portrayal of each man was presented.

Another recent case demonstrates that Jackson should receive penalty phase relief due to an inaccurate portrayal of his life in mitigation. *Abdul-Sallaam v. Sec'y of Pennsylvania Department of Corrections,* 895 F.3d 254 (2018). *Abdul-Sallam*'s counsel failed to properly investigate and present mitigation evidence as did Jackson's counsel.

Defense counsel and their agents interviewed only one member of Jackson's family before the day of the mitigation hearing. Very few records were collected and counsel failed to hire a competent mitigation specialist. See Foust, supra. (6th Cir. Relief granted)

In *Wiggins v. Smith*, 539 U.S. 510 (2003), the Court established that counsel's performance was to be judged by ABA Standards for Performance of Counsel in a Capital Case. Under these standards, counsel must assemble a defense team that has at least one mitigation specialist. See Guidelines, 10.4

Counsel also has a duty at every stage to conduct a thorough and independent investigation as to guilt and punishment. Guidelines 10.7(A) The commentary to the Guidelines provides that the penalty phase investigation requires extensive and generally unparalleled investigation into personal and family history.

Dr. McPherson was hired as a psychologist and not a mitigation specialist. The Ohio Court of Appeals acknowledged that she was not a mitigation specialist but concluded a mitigation expert would not have made a difference.

Jackson was without a mitigation specialist and counsel's failure to hire a mitigation specialist rendered his assistance ineffective under the Sixth and Fourteenth Amendments of the federal Constitution and the ABA Guidelines. Jackson was prejudiced by the absence of any meaningful mitigation being presented on his behalf. The jury was left to weigh the aggravating

circumstances against virtually no mitigation due at least in part to counsel's failure to hire one. [See Ground XVIII (F)]

Counsel never investigated how the co-defendant, Donna Roberts, manipulated Jackson and was much more intelligent than him. For example, she had managed a medical office.( Ex. 60, Amended Post Conviction Petition..

Counsel never investigated that Roberts "played" Jackson by giving him drugs, money and cars. Ex. 50, 51, 53, Amended PC pet.

The mitigation investigation was also woefully lacking in breadth and depth. Before the day of the mitigation hearing, only Jackson's mother had been interviewed. Ex. 49-53, amended PC.

Dr. McPherson's testimony was based on an inadequate and incomplete social history. It was also based on incorrectly scored tests, including IQ tests. Ex. 5, Amended PC.

Dr. McPherson never linked Jackson's dysfunctional background to Roberts and her manipulation of him which directly led to his involvement in this case. Compared to other psychological experts who testify based on accurate testing and a complete social history, Jackson was prejudiced by Dr. McPherson's errors and unpreparedness. These errors were ultimately the result of counsel's ineffectiveness.

Jackson suffered from substance abuse, a learning disability, and borderline intelligence as reflected in his high school IQ scores of 70 and 72.

In denying Post Conviction Relief on appeal, the Ohio Court of Appeals relied on the incorrectly scored tests by Dr. McPherson and thus Jackson was prejudiced. Further, Jackson was denied the funding and opportunity for a proper re-testing in post conviction by the Ohio courts.

75

*Jackson*, para 123.

The information provided at the mitigation hearing, before the jury, was inaccurate, incomplete and just wrong. Amended PC petition, Ex. 49-53, 58. Counsel's presentation at the mitigation hearing was not based on a reasonable investigation nor on strategic choices after a reasonable investigation. *Strickland v. Washington*, 466 U.S. 668 (1984).

If a properly investigated and prepared mitigation hearing had been presented to a jury, then there is a reasonable probability that at least one juror would have voted for a life sentence and Mr. Jackson's life would have been spared.   [See Ground XVIII (H) and (J)]

Dr. McPherson did not perform appropriate testing, incorrectly scored the testing that she did administer and failed to provide any meaningful psychological insight into the developmental aspects of Jackson's life. Amended PC, Ex. 5, 78.

Counsel did not elicit the cause and effect between the mitigation factors and the crime. The ABA standards require such a connection and Dr. McPherson did not provide the cause and effect. See ABA Guidelines, 10.11, Commentary.

The State must provide indigent prisoners, such as Jackson, the basic tools for an adequate defense. Such was not done here. *Britt v. North Carolina*, 404 U.S. 276 (1971); *Ake v. Oklahoma*, 470 U.S. 68 (1985); *Kordenbrock v. Scroggy*, 919 F.2d 1091 (6th Cir. 1990); *Glenn v. Tate*, 71 F.3d 1204 (6th Cir. 1995).

There was no mitigation specialist and the psychologist's performance was substandard and denied the petitioner any meaningful opportunity to have the jury spare his life. As such, Jackson was denied Due Process and Equal Protection under the Fourteenth Amendment. Further, counsel was ultimately responsible for the mitigation under *Wiggins* and was

constitutionally ineffective under *Strickland*. [See Ground XVIII (K)]

Post Conviction Claims under ORC 2953.21 other than Mitigation

Counsel for Jackson timely filed post conviction petitions under ORC 2953.21 after the first death sentence and then again when death was re-imposed after being vacated by the Ohio Eleventh District Court of Appeals.  There was never an evidentiary hearing or funding for experts  even though it was requested and even though a factual basis was provided.

The various discreet post conviction claims are found in Grounds 13-18 and 37.

Ground XIII:

In Post Conviction, the trial court violated the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution by failing to provide Jackson with the opportunity to conduct discovery.

Throughout the post conviction proceedings in the trial court, Jackson requested leave to conduct discovery repeatedly yet was denied that opportunity. (See amended post conviction petition filed March 29, 2004; separate motion for discovery; trial court's findings of facts and conclusions of law). See *Bracy v. Gramley*, 520 U.S. 899 (1997).

The State of Ohio's post conviction system must meet the requirements of Due Process. When a state establishes a program or procedure, it must operate within the confines of Due Process under the Fourteenth Amendment. *Goldberg v. Kelly*, 397 U.S. 254 (1972); *Evitts v.*

77

*Lucey*, 469 U.S. 387 (1985).

In Ohio, the petitioner has the burden to submit documentation <u>dehors</u> the record to demonstrate that an evidentiary hearing is warranted as to the Constitutional violations alleged in the post conviction petition.*State v. Kapper*, 5 Ohio St.3d 36 (1983).

The State of Ohio can not place this significant burden on the petitioner and then deny him the means to meet that burden. Otherwise, the post conviction process in Ohio is meaningless.

The State's denial of any opportunity to conduct discovery violates the Due Process Clause of the Fourteenth Amendment of the Federal Constitution. *Bracey v. Gramley*, supra.

The state court finding that since the trial court did not grant an evidentiary hearing, then it did not err in granting the discovery requests is wrong and beside the point. *State v. Jackson*, 2004 Ohio 1007 at para. 22.

Jackson was denied the opportunity to conduct discovery and support his post conviction petition. Federal Due Process requires the means to support one's claims.

Ground XIV

In Post Conviction, the Petitioner was denied adequate funding for experts
in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments of the
federal Constitution.

Jackson filed two volumes of supporting exhibits to his amended post conviction petition.

He also requested experts and submitted an affidavit of an expert concerning the need for a

psychological expert. (T.d. 306-307, paragraphs 33 and 34; Exhibit 64) See *Starr v. Lockhart*, 23

F.3d 1280 (8th Cir. 1994)(indigent denied expert needed to prove mitigating circumstance).

All funding requests were denied.

Indigents are entitled to an adequate opportunity to present their claims within the

American adversarial justice system. This includes the right to court funding when experts are

necessary. *Britt v. North Carolina*, 404 U.S. 226 (1992); *Ake v. Oklahoma*, 470 U.S. 68 (1985).

Likewise, a court can not deny one access to the courts due to his indigent status.*Griffin v.

Illinois*, 351 U.S. 12 (1956); *Burns v. Ohio*, 360 U.S. 252 (1959). The right extends to indigent

defendants access to post conviction proceedings. *Smith v. Bennett*, 365 U.S. 708 (1961);*Long v.

Iowa*, 385 U.S. 192 (1966).

Jackson filed in the trial court evidence to support a petition for post conviction relief.

*Kapper*, supra.

In this case, the Ohio courts held that Jackson had no right to the appointment of experts

unless the trial court granted an evidentiary hearing. *Jackson* at para. 29. Jackson though could

not meet his burden unless given the opportunity to fund the experts necessary to get the

evidentiary hearing. Federal Due Process requires the funding of the experts and then the

decision to hold the evidentiary hearing based on the evidence provided by the experts. See *Starr v. Lockhart*, supra.

Ohio provides funding for mental retardation claims in post conviction. Jackson at para. 28. There is no logical distinction as it relates to other post conviction claims where experts are needed, especially in the mental health field. Here, Jackson had an affidavit describing the need for a psychologist yet petitioner was denied any funding. In addition, the school records showed petitioner had a low IQ and he may in fact be mentally retarded/intellectually disabled.

Ground XV

In Post Conviction, the State failed to disclose exculpatory evidence in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution

In the Amended Post Conviction Petition, Jackson claimed the Trumbull County Prosecutor's Office engaged in a racially discriminatory application of the death penalty and failed in the petitioner's case to provide trial counsel with exculpatory evidence in the exclusive possession of the Prosecutors office. (Para. 15-24; 45-54)

A prosecutor is required to disclose favorable evidence to an accused in a criminal proceeding.*Brady v. Maryland*, 373 U.S. 83 (1963). The duty of disclosure includes impeachment evidence as well as exculpatory evidence. *United States v. Bagley*, 473 U.S. 667 (1985). The prosecutor's duty extends to post conviction proceedings. *Imbler v. Pachtmon*, 424 U.S. 409, 427 n.25 (1976); *High v. Head*, 209 F.3d 1257, 1264 n.8 (11th Cir. 2008). The duty

extends to evidence gathered by the police. *Kyles v. Whitley*, 514 U.S. 419 (1995).

In this case, Jackson alleged that the co-defendant (a Caucasian/white female) was offered a life plea bargain. See Amended Post Conviction Petition. The prosecutor refused to acknowledge or refute this allegation.

Jackson also alleged that the victim had intended to stage or fake his own death by killing another person who matched his physical description. In fact, the victim had hired an individual to find a look a like for him. Amended P.C. petition at para. 53, Ex. 35, 44.

The trial court refused to grant Jackson access to the state's trial file or the police records and Jackson had no other means to obtain the police report.

The Fourteenth Amendment requires access to information that is favorable to Jackson. The State of Ohio has refused to provide exculpatory evidence as detailed above. The U.S. Supreme Court has recently twice vacated death sentences as a result of prosecutorial practices including racism and suppression of evidence. *Miller-El v. Cockrell*, 537 U.S. 322 (2003); *Banks v. Dretke*, 540 U.S. 668 (2004). This court should grant the habeas petition and/or order discovery on this Ground for Relief.

81

Ground XVI

In Post Conviction, Jackson was denied a neutral and detached Judge when the trial judge relied upon his personal knowledge to make findings of facts in denying Jackson relief and thus violated the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution.

A fair trial in a fair tribunal is a basic requirement of Due Process. *In re Murchison*, 349 U.S. 133 (1955). The Fourteenth Amendment guarantees the appearance and reality of fairness. *Marshall v. Jerrice Inc.*, 446 U.S. 238 (1980). *Withrow, Rippo*, supra.

Jackson alleged in his amended post conviction petition that common pleas judges in Trumbull County, Ohio have traditionally used race as a criteria for selecting forepersons for the Trumbull County Grand Juries. (Para. 35-44) The U.S. Supreme Court has condemned this practice. *Campbell v. Louisiana*, 523 U.S. 392 (1988).

The trial judge, in issuing his findings of facts and conclusions of law, erred by injecting his personal beliefs and viewpoint on the facts he found in this case. In short, the judge became a witness and Jackson lost the neutral and detached judge the Constitution requires.

The error was not harmless but structural.

Another instance of the trial judge's interjection of himself as a fact witness concerns the Jackson's allegation that he mailed the trial judge a letter before the trial commenced in which he requested the appointment of new trial counsel. In denying the post conviction claim, the trial judge found that he had no independent recollection of reviewing this letter. There was never an opportunity to challenge this claim by the trial judge and the judge acted as both fact witness and fact finder thereby losing his neutrality on this issue.

82

The trial judge also erred in a similar manner with respect to mitigation issues. Jackson alleged that his trial counsel failed to properly investigate available mitigation. In dismissing this claim the trial judge found the very nature of the testimony offered by family members and friends hardly requires exhaustive preparation...Such testimony does not require lengthy interrogations. (p.25, findings of facts, conclusions of law)

The trial judge could not be more incorrect factually or legally. A mitigation investigation often requires multiple visits in order to build a relationship of trust and confidence. See Commentary, ABA Death Penalty Guidelines 10.7.

The trial judge again interjected facts and his opinion in the findings of facts and conclusions of law when he stated that in light of *Atkins* "...it may well have been tantamount to malpractice to forego IQ testing, especially when [petitioner's] academic performance was below average and he previously scored in the 70's on two prior IQ tests." (P. 26)

In an *Atkins* proceeding, the party for whom the most recent IQ score is favorable, does not want further testing. The trial judge's personal opinion notwithstanding, the two IQ tests administered before this case were favorable to Jackson's claim of mental retardation/intellectual disabiltiy. There was no need for more testing.

Jackson was never afforded an opportunity to contest the trial judge's opinions or the basis for his opinions. There was no evidence to support the judge's conclusions. Clearly, the trial judge was not neutral and detached as the Constitution demands. See *Withrow, Rippo*, supra.

83

Ground XVII

In Post Conviction, the improper application of the doctrine of res judicata to claims properly presented with evidence dehors the record violated the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution.

Jackson''s amended post conviction petition contained fifteen causes of action and 82 exhibits. The trial court erroneously ruled eight of the causes of action could have been raised on direct appeal and were thus barred by res judicata.

The trial court used an incorrect definition of res judicata. If a post conviction issue is supported by evidence outside the record, as well as evidence in the record, the issue is not subject to the bar of res judicata. *State v. Smith*, 17 Ohio St. 3d 98, 101, n.1 (1985); *State v. Cooperrider*, 4 Ohio St. 3d 226, 228 (1984).

Post conviction is supposed to offer the opportunity to test the constitutional validity of a conviction and sentence. An adequate process should be swift and simple and easily invoked and should provide for full fact hearings to resolve disputed factual issues. *Case v. Nebraska*, 381 U.S. 336 (1965)(Brennen, concurring);*Goldberg v. Kelly*, 397 U.S. 254 (1970).

O.R.C. 2953.21(A) and the cases interpreting it have denied litigants the opportunity to conduct discovery and it imposes an impossible pleading standard on petitioners.

Ohio Rule of Crim P 35(A) limit each cause of action to no more than three pages.

The Sixth Circuit has expressed concern about Ohio's inadequate system of post conviction relief. *Keener v. Ridenour*, 594 F.2d 581, 590 (6th Cir. 1979); *Coley v. Alvis*, 381 F.2d 870 (1967). Jackson's challenge to the post conviction system in Ohio was barred by res judicata, according to the trial court. The Court of Appeals said this issue should have been raised on

84

direct appeal. Neither rationale makes sense.

The Ohio post conviction system is inadequate and violates the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution.

In post conviction, Jackson submitted four exhibits that supported his claim that African Americans were under represented in his Grand Jury. One exhibit was an affidavit of Diane Wiley, President of the National Jury Project, Midwest, which documented the existence of racial bias in the selection of another capital venire in Trumbull County. The grand jury process must be free of racial discrimination. *Rose v. Mitchell* , 443 U.S. 545 (1979).

The grand jury must be drawn from a fair cross section of the community. *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975). Even if there is overwhelming evidence of guilt, racial discrimination in the grand jury selection process is structural error. *Vasquez v. Hillery*, 474 U.S. 254 (1986).

Jackson alleges that he was indicted by a Grand Jury that had a Caucasian foreperson. He further alleged that Trumbull County, Ohio Common Pleas Judges have traditionally chosen forepersons whose name was not included in the grand jury venire.

The U.S. Supreme Court recognized that an identical foreperson selection procedure in Louisiana resulted in the under representation of African Americans because state court judges used the system to select predominantly white males for the position of foreperson.*Campbell v. Louisiana*, 523 U.S. 392 (1998).

Jackson's jury venire contained an under representation of African Americans and was not due to chance. Jackson is entitled to a fair cross section of the community in his jury panel under the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution.

85

*Garcia-Dorantes v. Warren*, 801 F.3d 584 (6th Cir. 2015)(computer glitch systematically excluded African-Americans from jury pool); *Gibson v. Zant*, 705 F.2d 1543 (11th Cir. 1983)(under representation of African Americans and women in venire for both grand and petit juries). Jackson is entitled to an evidentiary hearing and/or habeas relief including discovery if necessary.

Ground XVIII

The Petitioner was entitled to relief in post conviction when he presented sufficient operative facts with evidence dehors the record; in the alternative, he was improperly denied an evidentiary hearing. The petitioner was denied the protections of the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution.

Jackson's amended post conviction petition entitled him to relief on the various federal constitutional violations. In the alternative, he was entitled to discovery, funding and an evidentiary hearing.  See *Bracy v. Gramley*, 520 U.S. 899 (1997).

A. The Trumbull County Prosecutor's charging decisions have resulted in the death penalty being imposed in a racially discriminatory manner;

The Eighth and Fourteenth Amendments of the federal Constitution prohibit a death sentence which is based in part upon the race of the defendant or the victim. *Wayte v. United States*, 470 U.S. 598 (1985). Jackson submitted in post conviction charging statistics that infer that in Trumbull County, Ohio capital cases are limited almost exclusively to those cases in which the victim is Caucasian.

86

The Caucasian co-defendant, received a plea offer of life while no such offer was made to Jackson, an African American male. Jackson's death sentence is in violation of the Eighth and Fourteenth Amendments of the federal Constitution.

The Trumbull County Prosecutor has used his discretion in a racially discriminatory manner in a disproportionate number of cases where the victim is Caucasian and the defendant is African American.

> B. The Grand Jury that indicted Jackson was drawn from a venire in which there was an under representations of African Americans;

African Americans comprise 7.9 percent of Trumbull County, Ohio. Yet, 140 persons answered their summons for petit jury duty and only one African American was questioned. There should have been about eleven African Americans. *Garcia-Dorantes v. Warren*, 801 F.3d 584 (6th Cir. 2015), cert denied 136 S.Ct. 1823 (2016)(systematic exclusion of African Americans due to computer glitch).*Gibson v. Zant*, 705 F.2d 1543 (11th Cir. 1983)(under representation of African Americans and women in venire for both grand and petit juries).

The same officials who summoned Jackson's petit jury also summoned his grand jury. It is very likely that the under representation of African Americans occurred on the grand jury as well. *Woodfox v. Cain*, 772 F.3d 358 (5th Cir. 2014), cert denied 136 S.Ct. 38 (2015)(grand jury foreperson/prima facie case of discrimination); *Gibson v. Zant*, supra.

A criminal conviction can not stand if the grand jury was selected in a manner that excluded persons based on race. *Alexander v. Louisiana*, 405 U.S. 625 (1972). *Garcia-Dorantes v. Warren*, 801 F.3d 584 (6th Cir. 2015), cert. denied 136 S.Ct. 1823 (2016)(systematic exclusion

of African Americans from jury pool due to computer glitch)

       C. The Trumbull County Common Pleas Court has employed a system of
          choosing Grand Jury forepersons that has lead to racial discrimination in the
          selection process;

Jackson's grand jury foreperson was Caucasian. A foreperson selection procedure that

racially discriminates and results in an under representation of African Americans renders the

underlying conviction and sentence invalid. *Campbell v. Louisiana*, 523 U.S. 392 (1998).

*Woodfox v. Cain*, 772 F.3d 358 (5th Cir. 2014), cert denied 136 S.Ct. 38 (2015)(grand jury

foreperson/prima facie case of discrimination)

       D. The prosecutor denied the petitioner exculpatory evidence;

The prosecutor has a constitutional obligation to disclose favorable evidence. *Brady v.*

*Maryland*, 373 U.S. 83 (1963).

In this case, the prosecutor suppressed a police report indicating the victim made plans to

fake his own death. Trial counsel for co-defendant Roberts confirmed such a report existed and

after Jackson's trial; Ms. Roberts confirmed such a plot by the victim. Jackson claimed self-

defense and the suppressed police report would have aided in his defense.

       E. The trial court failed to conduct a hearing on petitioner's request to discharge his
          attorney;

Jackson communicated to the trial court his dissatisfaction with Attorney Consoldane and his desire for new counsel.

When an indigent defendant attempts to discharge his attorney, it is the duty of the trial judge to inquire about the complaint and make a record of such inquiry. *State v. Deal*, 17 Ohio St.2d 17 (1969).

Although the right to appointed counsel of one's choosing is not absolute, a court can not infringe on such right in an arbitrary or unreasonable manner. See *United States v. Gonzalez Lopez*, 126 S. Ct. 2557 (2006).

The trial court failed to conduct any inquiry and Jackson's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments were violated.

> F. Counsel failed to hire a competent mitigation specialist and failed to conduct a complete mitigation investigation;

Defense counsel and their agents interviewed only one member of Jackson's family before the day of the mitigation hearing. Very few records were collected and counsel failed to hire a mitigation specialist.

In *Wiggins v. Smith*, 539 U.S. 510 (2003), the Court established that counsel's performance was to be judged by ABA Standards for Performance of Counsel in a Capital Case.

Under these standards, counsel must assemble a defense team that has at least one mitigation specialist. See Guidelines, 10.4

Counsel also has a duty at every stage to conduct a thorough and independent

89

investigation as to guilt and punishment. Guidelines 10.7(A) The commentary to the Guidelines provides that the penalty phase investigation requires extensive and generally unparalleled investigation into personal and family history.

Dr. McPherson was hired as a psychologist and not a mitigation specialist. The Ohio Court of Appeals acknowledged that she was not a mitigation specialist but concluded a mitigation expert would not have made a difference.

Jackson was without a mitigation specialist and counsel's failure to hire a mitigation specialist rendered his assistance ineffective under the Sixth and Fourteenth Amendments of the federal Constitution and the ABA Guidelines. Jackson was prejudiced by the absence of any meaningful mitigation being presented on his behalf. The jury was left to weigh the aggravating circumstances against virtually no mitigation due at least in part to counsel's failure to hire a mitigation specialist.

> G. The Petit Jury that convicted Petitioner of capital murder and sentenced him to death was drawn from a venire that contained an under representation of African Americans

One hundred forty-four persons appeared for jury duty in this case and the parties agreed that only one African American was questioned. (TR 1846-48)

African Americans comprise 7.9 percent of the population in Trumbull County. There should have been about eleven African Americans in the one hundred forty four.

The under representation of African Americans in the petit jury venire equals a denial of

90

the Due Process Clause of the Fourteenth Amendment, the fair cross section requirement of the

Sixth Amendment and the Equal Protection Clause of the Fourteenth Amendment. *Peters v. Kiff*,

470 U.S. 493 (1972); *Taylor v. Louisiana*, 419 U.S. 522 (1975). *Garcia-Dorantes v. Warren*, 801

F.3d 584 (6th Cir. 2015), cert denied 136 S.Ct. 1823 (2016).*Gibson v. Zant*, 705 F.2d 1543 (11th

Cir. 1983)(under representation of African Americans and women in venire for both grand and

petit juries).

The Ohio Court of Appeals found "occasional" under representation of minorities in

capital venires in Trumbull County; See *Jackson*, 2006 Ohio 2651, para. 107. Further factual

development is warranted or relief must be granted on the current record. See *Garcia-Dorantes*,

supra.


H. Trial counsel was constitutionally ineffective in the pretrial stages of the case;


Counsel must conduct a reasonable pretrial investigation. *Sims v. Livesay*, 970 F.2d. 1575

(6th Cir. 1992); 2003 ABA Death Penalty Guidelines 10.7(A).

Counsel never challenged the grand jury, petit jury nor the selection of the grand jury

foreperson. Thus, there was no pretrial factual development of these important issues.

Counsel never challenged the charging decision of the prosecutor either. In Post

Conviction, a nationally recognized expert provided an affidavit supporting Jackson's position on

these issues. (Exhibit 39, Amended P.C. Petition)

Counsel failed to adequately challenge Jackson's pretrial statements via a motion to

suppress that would have revealed Jackson's documented IQ scores of 70 and 72 and that he

91

performed poorly in school and spent most of his time in special education classes. Amended P.C. Petition, Ex 46, 56, 57.

Counsel never investigated how the co-defendant, Donna Roberts, manipulated Jackson and was much more intelligent than him. For example, she had managed a medical office. Ex. 60, Amended PC Petition.

Counsel never investigated that Roberts "played" petitioner by giving him drugs, money and cars. Ex. 50, 51, 53, Amended PC pet.

The mitigation investigation was also woefully lacking in breadth and depth. Before the day of the mitigation hearing, only Jackson's mother had been interviewed. Ex. 49-53, amended PC.

Dr. McPherson's testimony was based on an inadequate and incomplete social history. It was also based on incorrectly scored tests, including IQ tests. Ex. 5, Amended PC.

Dr. McPherson never linked Jackson's dysfunctional background to Roberts and her manipulation of him which directly led to his involvement in this case. Compared to other psychological experts who testify based on accurate testing and a complete social history, Jackson was prejudiced by Dr. McPherson's errors and unpreparedness. These errors were ultimately the result of counsel's ineffectiveness.

Jackson suffered from substance abuse, a learning disability, and borderline intelligence as reflected in his high school IQ scores of 70 and 72.

In denying Post Conviction Relief on appeal, the Ohio Court of Appeals relied on the incorrectly scored tests by Dr. McPherson and thus Jackson was prejudiced. Further, Jackson was denied the funding and opportunity for a proper re-testing in post conviction by the Ohio courts.

<u>Jackson</u>, para 123.

The information provided at the mitigation hearing, before the jury, was inaccurate, incomplete and just wrong. Amended PC petition, Ex. 49-53, 58. Counsel's presentation at the mitigation hearing was not based on a reasonable investigation nor on strategic choices after a reasonable investigation. *Strickland v. Washington*, 466 U.S. 668 (1984).

If a properly investigated and prepared mitigation hearing had been presented to a jury, then there is a reasonable probability that at least one juror would have voted for a life sentence and Mr. Jackson's life would have been spared. See *White v. Ryan*, supra.

I. Trial counsel was constitutionally ineffective in the culpability stage of the trial;

Counsel failed to introduce evidence of Roberts' prior relationships by supplying her men with clothes, money, cars and sex. Amended PC, Ex. 65-67. Roberts' history of manipulating men and her superior intelligence would have provided the jury with an explanation of how Jackson became involved in this case.

Counsel also made no effort to link the physical evidence to Roberts. Roberts had blood on her and the forensic tests were inconclusive as to whether she handled a firearm. This evidence was relevant to the culpability stage and in mitigation. *Strickland*.

J. Trial counsel was constitutionally ineffective in the mitigation phase of the trial;

Counsel gave no opening statement in mitigation. Sent Tr. 23.

93

Counsel called few lay witnesses and the testimony consumed ten pages of transcript. Sent. Tr. 23-33. The testimony was later learned to be incomplete and inaccurate in all respects. (See post conviction petition and exhibits)

New counsel came into the case the day of the mitigation hearing due to one counsel's illness. New counsel was not Rule 20 qualified and knew nothing about the case. Sent Tr. 4-6. Remaining trial counsel met with the mitigation witnesses just prior to the start of the mitigation hearing. Amended PC, Ex. 49-53, 58.

The psychological expert, Dr. McPherson, improperly scored the petitioner's IQ test and testified without a complete social history. She provided no meaningful testimony concerning the Jackson's dysfunctional childhood, the reasons he abused substances, Roberts' manipulation of him, or his involvement in this offense in terms of his history, background and psychological development.

Counsel's preparation and performance at the mitigation hearing was pathetic. The record speaks for itself. Jackson was entitled to the effective assistance of counsel at mitigation and certainly did not receive it. *Strickland*, *Wiggins*, ABA Guidelines.

K. The mitigation specialist/psychologist was constitutionally inadequate to the prejudice of the Petitioner;

Dr. McPherson did not perform appropriate testing, incorrectly scored the testing that she did administer and failed to provide any meaningful psychological insight into the developmental aspects of Jackson's life. Amended PC, Ex. 5, 78. Counsel did not elicit the cause and effect between the mitigation factors and the crime. The ABA standards require such a connection and Dr. McPherson did not provide the cause and effect. See ABA Guidelines, 10.11, Commentary.

The State must provide indigent prisoners, such as Jackson, the basic tools for an adequate defense. Such was not done here. *Britt v. North Carolina*, 404 U.S. 276 (1971); *Ake v. Oklahoma*, 470 U.S. 68 (1985); *Kordenbrock v. Scroggy*, 919 F.2d 1091 (6th Cir. 1990); *Glenn v. Tate*, 71 F.3d 1204 (6th Cir. 1995).

There was no mitigation specialist and the psychologist's performance was substandard and denied Jackson any meaningful opportunity to have the jury spare his life. As such, Jackson was denied Due Process and Equal Protection under the Fourteenth Amendment. Further, counsel was ultimately responsible for the mitigation under Wiggins and was constitutionally ineffective.

95

L. The trial court's imposition of the death sentence was based on incomplete and inaccurate information and is thus imposed unconstitutionally.

A comparison of the information and evidence contained in the Amended PC petition and the trial court's sentencing opinion reveals that the trial court relied on incomplete and inaccurate information when sentencing Jackson to death.

The fault is directly attributable to counsel's ineffectiveness under the Sixth and Fourteenth Amendments and Dr. McPherson's substandard performance.

Such a death sentence violates the Sixth, Eighth and Fourteenth Amendments.

N. Ohio's post conviction review, as written and/or applied, violate the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution;

ORC 2953.21 et seq does not offer a post conviction petitioner a fair and full opportunity to contest the constitutional validity of his conviction and death sentence. The requirements of Due Process are not met by the cursory, inadequate and ineffective process provided in Ohio. See *Case v. Nebraska*, 381 U.S. 336 (1965).

In this case, Jackson was denied a meaningful opportunity to challenge his conviction and death sentence when he was denied discovery, funding and an evidentiary hearing to support his claims.

O. The cumulative federal Constitutional errors in Petitioner's Post Conviction
   proceedings violated the Fifth, Sixth, Eighth and Fourteenth

The cumulative effect of the errors and omissions in the post conviction process denied Jackson

his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments of U.S.


No evidentiary hearing


   Courts have held that when a state court makes evidentiary findings without holding a hearing

then any findings from that process are unreasonable and 2254(d)(2) has been violated. See, e.g.,

*Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004); *Smith v. Aldridge*, 904 F.3d 874, 882

(10th Cir. 2018).

   Did the Ohio court reasonably determine the disputed facts? Generally- accepted norms for the

adjudication of federal constitutional questions require an evidentiary hearing. A well-pled

federal claim cannot be summarily dismissed even where the respondent "files an answer

denying some or all of the allegations." *Pennsylvania ex rel Herman v. Claudy*, 350 U.S. 116,

119 (1956); *Palmer v. Ashe*, 342 U.S. 134 (1951).

   One cannot reject a well pled federal claim by resorting to "speculation or surmise." *Palmer*

at 137. A dispute over material facts "should be decided only after a hearing." *Herman* at 121;

*McNeal v. Culver*, 365 U.S. 109, 117 (1961).

   Well-pled allegations should be taken as true when determining how to proceed. See *Cullen*

*v. Pinholster*, 563 U.S. 170, 188 n.12 (2011).

The Seventh Circuit recently remanded for an evidentiary hearing a case where the state court denied relief without a hearing on an ineffectiveness assistance of counsel claim. *Campbell v. Reardon,* 780 F.3d 752 (7th Cir. 2015).

Jackson had a right to present a complete defense which included all relevant mitigation evidence. It is up to a jury to ultimately decide the value of the mitigation and other omitted evidence.

Second Petition under ORC 2953.21


 Ground XXXVII

Numerous meritorious claims in post conviction were denied in
violation of the Fifth, Sixth, Eighth and Fourteenth Amendments of the
federal Constitution.


   On June 28, 2013, Nathaniel Jackson ("Jackson") filed his post-conviction petition that

contained nineteen grounds for relief. [T.d. 225]. He supported the petition with eighty-seven

exhibits and the transcript from co-defendant Donna Roberts' trial. [T.d. 426-436]. On July 8,

2013, he submitted an additional exhibit in support of the petition. [T.d. 438]. On July 25, 2013,

the State of Ohio filed a motion to dismiss. [T.d. 441]. On August 30, 2013, Jackson filed his

response opposing the State's motion to dismiss. [T.d. 446]. On September 27, 2013, the trial

court summarily denied all nineteen grounds for relief. [T.d. 449]. On December 31, 2014, the

Eleventh District Court of Appeals affirmed the decision of the trial court. *State v. Jackson,* 11th

Dist. No. 2013-T-0103, 2015-0hio-7.

   Jackson filed this "second" Petition due to his death sentence being re-imposed and in order to

 preserve the issues filed in his original Petition. Jackson did not want to risk any waiver or

forfeiture arguments.

   A state appellate procedure or rule must give a plaintiff a fair and reasonable opportunity to

identify all relevant claims, and to have those claims heard and decided.  *Michel v. Louisiana,*

350 U.S. 91, 93, 76 S. Ct. 158 (1955). The right to object presupposes a reasonable opportunity

to exercise that right. *Reece v. Georgia,* 350 U.S. 85, 89, 76 S. Ct. 167 (1955). In capital

proceedings, fact-finding procedures must meet a heightened standard of reliability. *Spaziano v. Florida,* 468 U.S. 447,456, 104 S. Ct. 3154,82 L. Ed. 2d 340 (1984). In this case, the post-conviction process did not afford Jackson an adequate opportunity to identify claims or conduct factual development. *Coley v. Alvis,* 381 F.2d 870, 872 (6th Cir. 1967); *Allen v. Perini,* 424 F.2d 134, 139-140 (6th Cir. 1970).

The Trumbull County Prosecutor has employed his discretion in capital cases in a racially discriminatory manner. Capital cases are limited almost exclusively to those cases in which the victim is Caucasian. U.S. Const. Amends. V, VI, VIII, IX, and XIV; [T. 425, 446 ] African-Americans comprised 7.8% of the population of Trumbull County in 2001. At the time of Jackson's trial, the common pleas courts of Trumbull County had sentenced ten persons to death since the State of Ohio re-enacted its death penalty in 1981. Five of the ten individuals sentenced to death in Trumbull County are African-Americans. At the time of Jackson's trial, the Trumbull County Prosecutor had sought the death penalty in approximately forty-six cases. The Prosecutor's Office had disproportionately limited the charging of a capital offense to situations involving Caucasian victims. [T .d. 425,  para. 69-72]. The prosecutor is forbidden by the Fourteenth Amendment from basing his choice of whom to prosecute upon "impermissible factors" such as race or religion. *Wayte v. United States,* 470 U.S. 598,607, 105 S. Ct. 1524, 84 L. Ed. 2d 547 (1985); *State v. Wolery,* 46 Ohio St.2d 316, 324, 348 N.E.2d 351 (1976). The present case invokes the quintessential discrimination in the charging decision. The prosecution sought and received the death penalty against Jackson who is African-American. The prosecution offered the Caucasian co-defendant, Donna Roberts, a plea bargain that would have spared her life [T.d. 426, Exhibit 35].

100

The grand jury that indicted him was drawn from a venire in which African-Americans were disproportionately excluded. U.S. Const. amends. V, VI, VIII, IX, and XIV;  [T.d. 425, T.d. 446, pp. 23-28]. African-Americans were underrepresented in Jackson's petit jury venire. That same under-representation has occurred in other capital cases in Trumbull County. This racial discrimination is likely not limited to the venire from which the petit jurors were selected. Jackson's grand jury venire was selected by the same procedures as the petit jury venire. R. C. § § 2939.02, 2313.07, 2313.08, 2313.35. Thus, a reasonable likelihood exists that the grand jury venire suffers from the same constitutional flaw as did the petit jury. [T.d. 425] A criminal conviction cannot stand under the Equal Protection Clause of the Fourteenth Amendment if it is based on an indictment or guilty verdict that is returned by a grand or petit jury from which individuals were excluded on the basis of race. *Alexander v. Louisiana,* 405 U.S. 625, 628, 92 S. Ct. 1221, (1972). Under the Sixth Amendment, a criminal defendant is entitled to an impartial grand and petit jury. Contained within that right is the guarantee that the jury is drawn from a fair cross section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 530, 95 S. Ct. 692  (1975).

The grand jury foreperson may have been chosen in a racially discriminatory manner. U.S. Const. amends. V, VI, VIII, IX, and XIV; [T.d. 425,  T.d. 425, T.d. 446, pp. 29-31] Janice Winans was the foreperson of the Grand Jury that indicted Jackson. Ms. Winans is Caucasian. In the State of Ohio, the common pleas court judge may select *anyone* to be the grand jury foreperson who satisfies the qualifications of a juror. *See*  R.C. § 2939.02. This foreperson's name need not be included in the grand jury venire. The grand jury foreperson has the same voting powers as other grand jury members. This selection system has resulted in a gross under

101

representation of Africans Americans in another Ohio county. [T.d. 425] The United States Supreme Court found that the same selection procedure in the State of Louisiana resulted in the under-representation of African-Americans in the position of grand jury foreperson. *Campbell v. Louisiana,* 523 U.S. 392, 395, 118 S. Ct. 1419 (1998). The state court judges used the system to select predominantly white males for the position of foreperson.

The trial court denied Jackson's motion to suppress and admitted Jackson's December 21, 2001, custodial statements to Detective Jeffrey Hoolihan of the Warren County Sheriff's Department and Detective Paul Monroe of the Howland Police Department in violation of  U.S. Const. amends. V, VI, VIII, and XIV; [T.d. 425,  T.d. 446 ,31- 40]. Jackson has an IQ that places him just above the mental retardation range. He has consistently scored in this range over time. His IQ scores place him in the 6th percentile. He reads at the level of a fifth grader and twice failed the sixth grade and received special education services. The *Miranda* form that he executed has a reading level of a sixth grader. [T.d. 425, 101-102]. The arresting officers did not advise Jackson of his Miranda rights at the time of his arrest. [Tr. 332-3]. No contrary physical evidence exists such as a written rights form or recording of the events that transpired in the police cruiser where the prosecution claimed that Jackson was read his Miranda rights. [Tr. 253, 332-3]. Detectives Hoolihan and Monroe conceded that neither of them advised Jackson of his Constitutional rights prior to interrogating him at the initial session at the police station. [Tr. 259-61]. The officers did advise Jackson of his rights subsequent to the initial interrogation session at the jail. [Tr. 267]. However, that belated waiver did not satisfy the Constitutional requirement that a defendant be advised of his Constitutional rights prior to making a statement. Jackson did not did not intelligently waive his Constitutional rights. Detective Hoolihan testified that he advised Jackson

102

of his Constitutional rights at the time of his arrest. Even assuming that he did so advise Jackson, the Detective did not testify that he obtained the required waiver. Jackson, because of his significant mental limitations, was incapable of making a knowing and intelligent waiver. [T.d. 427, Exhibit 79]. He reads at a fifth grade level and the *Miranda* form required a reading level of a sixth grader. [T.d. 427, Exhibits 78, 80]. The officers failed to honor Jackson's requests for counsel. Jackson repeatedly requested that the questioning of him cease and that counsel be provided for him. [Tr. 316, 318, 320, 323]. Neither Detectives Hoolihan nor Monroe honored these repeated requests. Detective Monroe, as the State conceded, failed to honor a similar request made by Donna Roberts just hours earlier. [Roberts Tr. 5493-98]. In addition, Jackson's statements were involuntary. He is of limited intelligence and lacked a full appreciation of his rights and of the need to exercise his rights in a meaningful manner. [T.d. 4276, Exhibit 79] His IQ is in the borderline mental retardation range. He reads below a sixth grade level. Both Detectives overtook Jackson's limited will by constantly re-emphasizing that Donna Roberts had inculpated him and other facts such as render him more likely to confess [Tr. 207, 281-282, 298, 303]. In addition, they subjected him to lengthy interrogations and Detective Monroe interacted with Jackson in such a manner as to gain his trust. [Tr. 31 0]. Individuals such as Jackson are gullible and easily manipulated. [T.d 427, Exhibit 79 ].

Jackson did not have an impartial and unbiased judge with respect to his motion to suppress. U.S. Const. amends. V, VI, VIII, and XIV; [T.d. 425,T.d. 446, pp. 40-44] From January 1991 until the time of Jackson's trial, the Trumbull County Prosecutor's Office drafted legal documents for the Trumbull County Common Pleas Court Judges. The prosecution's drafting of documents for the Judges extended to a wide variety of documents, including opinions on motions to

103

suppress. The Office did not provide the defense with copies of the documents that it drafted for the trial judges. The Trumbull County Prosecutor's Office drafted the findings of fact and conclusions of law for the court in this case.  Jackson had a Constitutional right to a fair and reliable determination on the admissibility of his statement. *Rogers v. Richmond,* 365 U.S. 534, 543-44, 81 S. Ct. 735, 5 L. Ed. 2d 653 (1961); *Jackson v. Denno,* 378 U.S. 368, 377, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1964). The Due Process Clause of the Fourteenth Amendment requires the determination be made by a fair trial and impartial tribunal.  *Bracy v. Gramley,* 520 U.S. 899,904, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997). Jackson was denied his right to a fair and impartial judge and reliable determination as to the admissibility of his custodial statements.

The Trumbull County Prosecutor's Office failed to provide trial counsel with exculpatory evidence. U.S. Const. Amends. V, VIII, IX, XIV;[T.d. 225, T.d. 446, pp. 45-47]]. The prosecution had actual or constructive possession of a police report which documented that Robert Fingerhut had intended to stage his own death by killing another person who matched his physical description. Fingerhut had hired an individual to find the look-a-like for him. The prosecution failed to provide this exculpatory information to trial counsel. Further, the prosecution failed to advise Jackson that Donna Roberts' custodial statement was inadmissible because the interrogating officers did not honor her request for counsel and to cease questioning. [T.d. 225] The prosecution has a constitutional obligation to disclose evidence favorable to the accused. *Brady v. Maryland,* 373 U.S. 83, 86, 83 S. Ct. 1194 (1963). Favorable evidence for *Brady* purposes includes both exculpatory and impeachment evidence. *Kyles v. Whitley,* 514 U.S. at 419, 433 115 S. Ct. 1555 (1995). Constitutional error results when favorable evidence is suppressed by the government "'if there is a reasonable probability that, had the evidence been

disclosed to the defense, the result of the proceeding would have been different.'" *United States v. Bagley,* 473 U.S. 667, 682, 105 S. Ct. 3375 (1985). The report containing the information that victim Fingerhut had intended to fake his own death could have been employed to contradict the evidence that the State produced concerning the victim, and would have explained the relationship between the victim and Roberts. In addition, the prosecution suppressed evidence that the officers who arrested co-defendant Roberts violated her Constitutional rights when interrogating her. They did not honor her requests for counsel. Jackson, in his motion to suppress, claimed that he had requested counsel prior to his custodial interrogation. That the co-defendant just hours earlier had requested counsel and the officers had ignored that request was relevant and supported Jackson's testimony that the officers did not honor his requests for counsel.

Jackson's right to effective assistance of counsel in both stages of his trial was dependent upon his being able to meaningfully communicate with his attorneys. The relationship became so impaired that he could not communicate with counsel and consequently he was denied the right to effective assistance of counsel. [T.d. 225, T.d. 446, pp. 48-50]. Prior to the commencement of the trial, Jackson wrote the trial court and requested the appointment of new counsel. The basis for the request was that lead counsel had failed to: 1) regularly communicate with him, 2) provide him with the information that he requested and 3) treat him in an appropriate manner. The trial court never ruled on the request. [T.d. 225] A trial court's denial of a motion to substitute counsel, without the trial court having conducted a hearing, implicates the Sixth Amendment right to counsel. *Schell vs. Witek,* 218 F.3d 1017, 1023 (9th Cir. 2000). To compel a defendant to go to trial with the assistance of an attorney with whom the defendant has become embroiled in irreconcilable conflict deprives the defendant of the effective assistance of counsel.

105

*Brown v. Craven,* 424 F.2d 1166, 1170 (9th Cir. 1970). Whenever a defendant attempts to discharge his attorney, it is the duty of the trial judge to inquire into the complaint and to make such inquiry a part of the record. *State v. Deal,* 17 Ohio St.2d 17, 244 N.E.2d 742 (1969), Syllabus *Young v. Nevada,* 120 Nev. 963, 102 P.3d 572, 576- 77 (Nev. 2004).

There was an under representation of African Americans in the venire from which his jury was drawn. U.S. Const. Amends. V, VI, VIII, and XIV[T.d. 225, T.d. 446, pp. 51-54]. The trial court summoned four hundred jurors to serve on the venire. One-hundred-forty persons appeared for jury duty. The parties agreed that only one African-American was in the venire. [Tr. 1846-1848.]. African Americans comprised 7.9 percent of the population in Trumbull County. Consequently there should have been approximately eleven African- Americans in the one hundred forty persons who appeared for jury duty. Even if the prosecutor's second statement was accurate, there was still a substantial under representation of African- Americans. There were no African-Americans on the jury that convicted Donna Roberts and recommended that she receive the death penalty. [T.d. 425] The Sixth Amendment guarantees a criminal defendant trial by "an impartial jury." Racial discrimination in the selection of the members of a petit jury venire results in a denial of an impartial jury as guaranteed by the Sixth Amendment. *Duren v. Missouri,* 439 U.S. 357, 359, 99 S. Ct. 664 (1979). Likewise, the equal protection clause of the Fourteenth Amendment is violated when a discriminatory method is employed to select members of a petit jury venire. *Castaneda v. Partida,* 430 U.S. 482, 493-94, 97 S. Ct. 1272 (1977).

Jackson was denied the effective assistance of counsel during the pretrial stage of his capital case. U.S. Const. Amends. V, VI, VIII, IX and XIV; To protect an accused's constitutional rights, defense counsel must conduct a reasonable pretrial investigation. *Sims v. Livesay,* 970 F.2d 1575,

1580 (6th Cir. 1992). Counsel has a duty to investigate all lines of defense or reasonably decide that a particular investigation is not necessary. *Strickland v. Washington,* 466 U.S. 668, 691, 104 S. Ct. 2052, 80 L. Ed. 674 (1984). Counsel in a capital case is also obligated to conduct a reasonable investigation with respect to the sentencing phase. Defense counsel did not challenge the grand jury and petit jury venire nor the selection of the grand jury foreperson. Defense trial counsel also failed to challenge the prosecutor's charging decision. Finally, defense counsel also did not adequately challenge the admissibility of Jackson's statement to the police. Defense counsel did not conduct a reasonable sentencing investigation. No family members except Jackson's mother were interviewed [T.d. 427, Exhibits 49-53]. Counsel did not factually develop the relationship between Roberts, who was intelligent and middle class, and Jackson, who was very intellectually limited and easily led. *[Id.* at Exhibits 50, 51, 53. 56, 57 67, 68]. Dr. McPherson's testimony was flawed in part because defense counsel did not provide her with a complete and adequate social history.

Jackson was denied the effective assistance of counsel during the trial stage of his capital case. U.S. Const. Amends. V, VI, VIII, IX and XIV; *Strickland v. Washington,* 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 674 (1984). Defense counsel failed to introduce evidence of Roberts' prior relationships that would have been quite relevant, e.g. that she had a history of currying favor with African-American males by supplying them with clothes, money, fast cars and sex [T.d. 227, Exhibits 65-68]. Defense counsel did introduce evidence that Roberts was much more intelligent than Jackson . [Exhibits 44, 56, 57, 68]. Roberts' history of manipulating African-American males and her superior intelligence would certainly have provided the jury with an explanation as to the reason that Jackson committed a murder for which he had nothing to gain as

107

opposed to Roberts, who had everything to gain. Defense counsel made no effort to link the physical evidence from the shootings to Roberts. The State's theory was that Jackson shot Fingerhut in the kitchen. Exhibits 71, 74 and 75 document that there was blood elsewhere in the residence, including the garage, and Fingerhut's glasses were found underneath the vehicle parked in the garage. An accident reconstruction expert could have highlighted the importance of this evidence.

Jackson was denied the effective assistance of counsel during the investigation of and presentation of mitigation. U.S. Const. amends. V, VI, VIII, IX, and XIV; If counsel had conducted or caused to be conducted a reasonable sentencing investigation, they would have obtained the record from: 1) Youngstown Alternative School, b) Community Corrections, and c) Neal Kennedy Recovery Clinic. [T.d. 425,  T.d. 227, Exhibits 46 and 47]. Defense counsel failed to interview Jackson's mother, sister, brother, mother's boyfriend of twenty years, and sister's fiance. [T.d. 425, ,-r 195; T.d. 227, Exhibits 49 to 53]. Lead defense/mitigation counsel became ill immediately prior to the mitigation hearing, and new counsel was substituted for lead counsel just prior to the start of the sentencing hearing. [Sent. Tr. 4-6]. One counsel was not Rule 20 certified and knew nothing about Jackson's case. Counsel who remained on the case admitted to knowing little about the sentencing evidence. [Sent. Tr. 7]. He met with the mitigation witnesses at the courthouse for the first time just prior to the start of the sentencing hearing [T.d. 227, Exhibits 49-53, 58]. Defense counsel gave no opening statement. [Sent. Tr. 23]. Counsel called four lay witnesses whose testimony was sparse and uninformative. [Sent. Tr. 23-33]. Their testimony was incomplete and inaccurate. [T. d. 227, Exhibits 50, 51, 56, 57, 58]. Defense counsel's final witness was Dr. Sandra McPherson, who had improperly administered and scored

Jackson's IQ test. She provided no analysis as to Jackson's involvement in the offense and provided only superficial analysis of Jackson's relationship with the co-defendant. [Sent. Tr. 54-5]. Defense counsel failed to object to repeated improper cross-examination of McPherson by the prosecution that focused on irrelevant issues given the confines of Ohio's sentencing scheme in a capital case. [Sent. Tr. 73-78, 81-82, 88-90]. Defense counsel performed deficiently in the sentencing phase and Jackson was prejudiced. *Strickland,* 466 U.S. at 687. But for counsel's errors, there is a reasonable probability the result of the sentencing proceedings would have been different.

Jackson was denied the effective assistance of counsel and expert assistance. Pursuant to the Sixth Amendment right to effective assistance, counsel has a duty to insure that a competent psychological evaluation is conducted. In addition, the Fourteenth Amendment creates an independent right to a competent psychological evaluation. U.S. Const. amends. V, VI, VIII, IX, and XIV; [T.d. 425, T.d. 446, pp. 72-79]. Dr. McPherson's spouse administered the WAIS-III and WRAT to Jackson. The spouse incorrectly administered and scored the test, which resulted in Jackson's scores being artificially inflated. [T.d. 427, Exhibit 78]. As a result, Dr. McPherson incorrectly concluded that Jackson was of average ability and in the dull normal range as to intelligence. [Sent. Tr. 48]. She also administered some of the wrong tests with regard to a mitigation phase assessment. [T.d. 427, Exhibit 59, 61]. She failed to administer the Michigan Alcohol Screening Test and Drug Abuse Screening Test [T.d. 427, Exhibit 62] and the correct test for purposes of determining the existence of brain damage. *[Id.* at Exhibit 59]. The "State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." *Britt v.*

109

*North Carolina,* 404 U.S. 226, 227, 92 S. Ct. 431, 30 L. Ed. 2d 400 (1971). The right to the

appointment of a competent mental health expert extends to cases, such as the present one, where

the defendant's mental health is a significant issue during the penalty phase. *Powell v. Collins,*

332 F.3d 376, 395 (6th Cir. 2003). Dr. McPherson's flawed participation did not satisfy Jackson's

right to the assistance of a competent expert.

   The prosecution relied on inconsistent theories with respect to its prosecution of Jackson

and Donna Roberts. U.S. Const. amends. V, VI, VIII, IX, and XIV; [T.d. 425, T.d. 446, pp. 79-

83]. The prosecution in Robert's case, contrary to Jackson's case, asserted that the murder was not

the product of both defendants, but instead was a plan concocted by Roberts in which she duped

Jackson into her plot to kill the victim to obtain his assets. [Roberts, Tr. 6140, 6304, 6307,

63117, 6143-44]. The trial court in Roberts' case accepted the State's argument concerning

Jackson's limited role and Roberts' procuring of Jackson. [T.d. 427, Exhibit 85, pp. 17-18].

   "The use of inconsistent, irreconcilable theories to convict two defendants for the same crime

is a due process violation." *Stumpf v. Robinson,* 722 F.3d 739, 749 (6th Cir. 2003); *Smith v.

Groose,* 205 F.3d 1045, 1051 (8th Cir. 2000). The use of inconsistent prosecutions is even more

egregious when the inconsistency goes to the death penalty. *Johnson v. Mississippi,* 486 U.S.

578, 584, 108 S. Ct. 1981, 100 L. Ed. 2d 575 (1988).

   The trial court refused to consider any additional evidence at Jackson's August 14, 2012 re-

sentencing hearing. U.S. Const. Amends. V, VI, VIII, IX, and XIV.

This exclusion violated Jackson's rights to present to the judge/jury all available mitigating

evidence; and to have the judge/jury make an individualized determination with respect to his

sentence.

The excluded evidence was significant because it went to Jackson's role in the death of the victim as well as critical background evidence. Roberts, not Jackson, was the instigator who stood to benefit from the murder. She was the listed beneficiary of the two life insurance policies, which paid five-hundred-fifty thousand dollars upon the victim's death. [Roberts Sent. Tr. 83; Tr. 6167, 6140]. She manipulated Jackson into participating in the murder. [Roberts Tr. 5070-75, 5084, 6122, 6125, 6167, 6144, 6303-07, 6356-57]. As the trial court found in the sentencing opinion in *Roberts,* "[t]he record is overwhelming that but for the Defendant's [Roberts] planning and actions, the victim would still be alive today." [T.d. Exhibit 85, p. 17].

A defendant must receive individualized consideration based on the circumstances of the crime and the character of the individual before a sentence of death may be imposed. *Woodson v. North Carolina,* 428 U.S. 280, 304, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976). A "process that accords no significance to relevant facets of the character and record of the individual offender or the circumstances of the particular offense" violates the Eighth Amendment.

Cumulative errors can deprive a criminal defendant of his Constitutional rights. *State vs. DeMarco,* 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987). "[A] conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial." Fifth, Sixth, Eighth, Fourteenth Amendments of the federal Constitution. *See also, Taylor vs. Kentucky,* 436 U.S. 478, 487-488 n. 15, 98 S. Ct. 1930, 56 L. Ed. 2d 468 (1978).

Murnahan I & II (Ineffective Assistance of Appellate Counsel)

After the direct appeal was denied in two separate instances, Jackson filed timely applications to re-open his direct appeal pursuant to Supreme Court of Ohio rules; such applications are commonly called "Murnahan" applications and the issues are limited to the effective assistance of appellate counsel. See *Evitts v. Lucey*, supra. See Ohio Supreme Court Rule of Practice 11.06.

The Ohio Supreme Court denied each application without opinion or explanation. Under the Ohio rule, the application will only be granted if there is a "genuine issue" of appellate counsel's ineffectiveness. If so, then the appeal is re-opened for further briefing on the merits and a decision on the merits. If not, then the application is denied. By Ohio rule, the simple denial of an application is not a decision "on the merits."  This is especially so because the Court did not provide for the intrinsic wrongs or rights of the issues presented. See *Johnson v. Williams*, 133 S. Ct. 1088 (2013).

If this Court decides the applications were decided on the merits, then there was an unreasonable application of clearly established U.S. Supreme Court law and/or an unreasonable determination of the facts under 2254(d)(1) and (d)(2).

112

Ground XII.

The Petitioner was denied the effective assistance of Appellate counsel as guaranteed by the Sixth and Fourteenth Amendments of the federal Constitution when the following meritorious issues were not presented to the Ohio Supreme Court:

The Due Process Clause of the Fourteenth Amendment guarantees the right to the effective assistance of counsel on a criminal appeal of right.*Evitts v. Lucey*, 469 U.S. 387 (1985).

In this case, counsel for Jackson failed to present the numerous propositions of law that follow which had a reasonable probability of success. See *Evitts*; *McFarland v. Yukins* , 356 F.3d 688 (6th Cir. 2004)(failure to raise argument that would likely have prevailed violates right to counsel); *Caver v. Staub*, 349 F.3d 340 (6th Cir. 2003)(counsel ineffective in failing to present claim that was much stronger than issues counsel did raise); *Richey v. Mitchell*, 395 F.3d 660 (6th Cir. 2005)(appellate counsel ineffective for failure to raise meritorious claim);*Lynch v. Dolce*, 789 F.3d 303 (2nd Cir. 2015);*Showers v. Beard*, 635 F.3d 625 (3d Cir. 2011).

It must be noted that appellate counsel did not attempt to have the trial transcript of Donna Roberts, the co-defendant, included in the record of Jackson's case.

       1. The petitioner did not knowingly and intelligently waive his constitutional rights while in custody before giving a statement which was used against him at trial;

Counsel for Jackson on direct appeal raised a related issue but failed to raise the issue that Jackson did not knowingly and intelligently waive his *Miranda* rights based on his low level of intelligence and the totality of the circumstances surrounding the purported waiver. For example,

Jackson reads on the level of a fifth grader (Sent. TR 84-85), had a low IQ (Sent. TR 46), was on medication (TR 339) and did not otherwise grasp the significance of the rights he was purportedly waiving. (TR 326, 328)

The totality of the circumstances do not reflect a knowing and intelligent waiver of important and complex Constitutional rights. Appellate counsel should have raised this issue and there is a reasonable probability of success if the issue had been raised.

> 2. The trial court improperly excluded five jurors from service based upon their views of the death penalty in violation of the Sixth, Eighth and Fourteenth Amendments of the federal Constitution; and because one juror knew a number of the State's witnesses.

A prosecutor in a capital case may not remove potential jurors because they have religious scruples or are otherwise opposed to the death penalty.

In *Wainwright v. Witt*, 469 U.S. 412 (1985), the Court held that a juror may not be challenged for cause based on his views about capital punishment unless those views would prevent or substantially impair the performance of his duties as a juror.

The following jurors were improperly excluded because of their view on the death penalty: Mr. Fenton (TR. 698-719); Lynn Bowers (TR 726-749); Carol Jigert (TR 1417-38); Tammie McCale (TR 1564-74); Brian Davis (TR 1721-1734).

In addition, the trial court should have granted defense counsel's motion to exclude Toni

Thompson, a prospective juror, who knew a number of the state's witnesses. (TR 626-640). See

*Hughes v. United States*, 258 F.3d 453, 460 (6th Cir. 2001).

 

 

      3. Counsel's performance during voir dire failed to meet prevailing professional
         standards, violated the Sixth and Fourteenth Amendments of the federal
         Constitution and was constitutionally ineffective.

The Sixth Amendment guarantees the right to an impartial jury. *Turner v.Louisiana,* 379

U.S. 466, 472 (1965). The right to the effective assistance of counsel includes voir dire. *Quintero*

*v. Bell*, 368 F.3d 892 (6th Cir. 2004). One must adequately voir dire jurors to see if they are

qualified or biased. *Morgan v. Illinois*, 504 U.S. 719, 729 (1992).

In this case, trial counsel failed to adequately question the following jurors: Jim Cuttings

(TR 436); Melba Hook (TR 506-07); Raymond Miller (TR 1066-1094); Florence Zdunick (TR

1175-1210); Joseph Miller (TR 1211-1245); Mary Menten (TR 1643-1645); Kathy DeJoy (TR

1771-74).

Counsel must also challenge for cause potential jurors who indicate they cannot be fair.

*Miller v. Webb*, 385 F.3d 666 (6th Cir. 2004). Trial counsel failed to challenge for cause the

following potential jurors: Dennis Jones (TR 575-89); Jack Schrecengast (TR 594-612); Florence

Zdunick (TR 1175-1210); Grace Melinda (TR 1462-87); Don Schoonover (TR 1529-64).

      4. The Petitioner's jury venire contained an under representation of African
         Americans and thus violated the Due Process Clause and Equal Protection
         Clause of the Fourteenth Amendment and fair cross section clause of the Sixth
         Amendment of the federal Constitution;

The trial court summoned four hundred jurors to serve on the venire and one hundred forty people appeared for jury duty. (TR 1846-48). The parties agreed that only one African American was questioned during voir dire. (TR 1846-48; 1854) African Americans comprised 7.0 percent of the population of Trumbull County, Ohio and there should have been approximately eleven African Americans in the one hundred forty persons who appeared for jury duty.

The under representation of African Americans constituted a denial of Due Process under the Fourteenth Amendment of the federal Constitution, *Peters v. Kiff*, 470 U.S. 493 of (1972); the Equal Protection Clause of the Fourteenth Amendment, *Taylor v. Louisiana*, 419 U.S. 522 (1975) and the Fair Cross Section requirement of the Sixth Amendment. *Garcia-Dorantes v. Warren* . 801 F.3d 584 (6th Cir. 2015)(computer glitch systematically excluded African-Americans from jury pool); *Gibson v. Zant*, 705 F.2d 1543 (11th Cir. 1983)(under representation of African Americans and women in venire for both grand and petit juries).

> 5. The voluminous amount of hearsay testimony that was not subjected to cross examination violated the Sixth and Fourteenth Amendments of the federal Constitution

Counsel on direct appeal raised some instances of improper hearsay evidence. However, counsel did not raise all the instances of improper hearsay evidence. Jackson's right to confrontation was violated when one considers, individually and collectively, the impact of the hearsay testimony.*Crawford v. Washington*, 541 U.S. 36 (2004); *Paris v. Turner*, 1999 U.S. App LEXIS 11101 (6th Cir. May 26, 1999), cert denied sub nom *Mack v. Paris*, 529 U.S. 1104

116

(2000)(appellate counsel ineffective in failing to raise meritorious hearsay claim); *Mason v. Hanks*, 97 F.3d 887 (7th Cir. 1996)(appellate counsel omitted meritorious claim of hearsay under Indiana law).

The trial court improperly admitted the following hearsay statements: the statements made by Donna Roberts concerning her need for money (TR 2196); the statements of Det. Dillon concerning what occurred at the hotel (TR 2316); the testimony of Det. Monroe concerning statements made by others (TR 2322); the contents of telephone records (TR 2366); a statement made by an unidentified female during the search of a Youngstown residence (TR 2432); statements made by Donna Roberts to investigating officers (TR 2528); and matters concerning the DNA testing results that were not within the personal knowledge of the BCI agent who testified as to the DNA (TR 2824-2832).

> 6. The trial court failed to allow the Petitioner to rebut the state's theory of the case and advance his own theory of the case in violation of the Sixth and Fourteenth Amendments of the federal Constitution.

The U.S. Supreme Court has held that the right to present evidence is part of Due Process under the Fourteenth Amendment. *Washington v. Texas*, 388 U.S. 14 (1967). One has the right to present evidence in his favor. *Specht v. Patterson*, 386 U.S. 605 (1967); *Ferguson v. Georgia,* 365 U.S. 570 (1961).

Here, the trial court precluded Jackson from eliciting evidence concerning the victim's background including his illegal activities. (TR 3086-3101). This evidence would have rebutted the State's good character evidence and furthered Jackson's theory of the case.

117

       7. Trial counsel was ineffective under the Sixth and Fourteenth
         Amendments when failing to present evidence minimizing
         Jackson's role in the offense in contrast to the co-defendant's role
         and made no effort to link the co-defendant to the crime scene and
         failed to hire a crime scene reconstruction expert;

Defense counsel in the trial phase unreasonably failed to present evidence minimizing

Jackson's role in this case vis a vis Donna Roberts, the co-defendant. Roberts was much more

intelligent than Jackson and she had a habit of currying favor with men such as Jackson, i.e.

African Americans, by supplying them with clothes, money, sex and cars.

Defense counsel made no effort to link Roberts with the actual shooting even though she

was seen in the immediate area of her residence at the time of the shooting. (TR 2924-2936). In

addition, she had bloodstains on her shirt and there were spots of blood in a part of the house in

which the shooting did not occur. The police administered a gun shot residue test to Roberts

which were inconclusive. Defense counsel failed to retain a crime scene reconstruction expert to

address the facts that surround the offense and the status of the crime scene.

       8. The trial court's failure to instruct the jury that it had to be unanimous on
         alternative theories of guilt and counsel's failure to object violated the Sixth
         and Fourteenth Amendments of the federal Constitution;

The trial court charged the jury in the alternative as to the capital specifications and as to

Count 2. (TR 3571-73; 3579) It did not charge the jury that it had to be unanimous as to which

118

alternative was applicable.

In *Richardson v. United States*, 526 U.S. 813 (1999), the Court held that when a criminal charge is composed of alternate theories, the court must instruct the jury that any finding has to be unanimous as to which theory applied. See *United States v. Burns*, 298 F.3d 528 (6th Cir. 2002).

       9. The trial court's "acquit first" instruction on the two counts of Aggravated Murder and counsels failure to object violated the Sixth, Eight and Fourteenth Amendments of the federal Constitution;

The trial court instructed the jury on the lesser included offense of Murder as to Counts One and Two. (TR 3565, 3577) The trial court improperly told the jury it could not consider the lesser included offense until it found Jackson not guilty of the original charge.

The trial court should have instructed the jury that it could consider the lesser included offense if it acquitted Jackson or could not agree as to his guilt on the greater offense. *State v. Thomas*, 40 Ohio St.3d 213 (1988).

The acquittal first instruction when used in this capital case improperly coerced the jury into finding the petitioner guilty of the greater offense. *Beck v. Alabama,* 447 U.S. 625 (1979).

      10. Counsel's performance at the mitigation phase of the trial violated the Sixth and Fourteenth Amendments of the federal Constitution when new unqualified counsel took over the case, no opening statement was given, no meaningful mitigation evidence was given, the psychologist was unprepared to testify and failed to analyze the Jackson's role in the offense and failed to testify about Jackson's mental retardation;

Lead counsel became ill before the mitigation hearing and new counsel was substituted who was not certified to represent a capitally indicted/convicted person and who knew nothing about petitioner's case. (Sent TR 4-6) Remaining counsel from the trial admitted to knowing little about the evidence about to be presented. (Sent TR 7) As a result, he requested that the psychologist, whom he mistakenly believed had spoken to the mitigation witnesses, be permitted to sit at counsel's table to assist the lawyers. The trial court denied the motion. (Sent TR 15)

Jackson's counsel gave no opening statement at the mitigation phase. (Sent TR 23) Only four lay witnesses were called to testify. Their direct testimony was sparse and uninformative. (TR 23-25; 25-27; 30-31; 31-33). Dr. McPherson, the final witness, testified that Jackson was not mentally retarded in spite of his low IQ as reflected in his high school records (Sent TR 45-49), was anti-social (Sent TR 50-52) and provided no meaningful analysis as to Jackson's involvement in the crime or its background. (Sent TR 54-55)

Counsel was constitutionally ineffective as no meaningful mitigation was presented and the Sixth and Fourteenth Amendments of the federal Constitution require the investigation, preparation and presentation of meaningful mitigation evidence.

11.     The trial court improperly and in violation of the Sixth, Eighth and Fourteenth Amendments of the federal Constitution delegated its duty to the Trumbull County's Prosecutor's office to write the court's sentencing opinion ordering the State to execute Jackson;

120

Appellate counsel failed to supplement the record of the co-defendant's case to Jackson 's case when it became obvious that the trial court and Prosecutor's office combined to write the court's sentencing opinion imposing death without notice to Jackson or his counsel in violation of the Sixth, Eighth and Fourteenth Amendments of the federal Constitution.

The trial court conducted the sentencing hearing for co-defendant Donna Roberts and imposed a death sentence. The prosecutor and trial judge combined efforts to draft the Court's sentencing opinion. (Roberts TR 6336, 6365) The trial court gave conflicting versions of the prosecutor's involvement in the sentencing process. (Roberts TR 6366-71) The Ohio Supreme Court reversed and vacated the death sentence for Roberts for this reason. *State v. Roberts*, 110 Ohio St.3d 71 (2006).

In the trial court, the trial judge stated "It is the system that is used here because it is the most practical." (Roberts TR 6371) The judge was biased or appeared to be biased. See *Withrow, Rippo*, supra.

Jackson's case involved the same county and the same judge as the Donna Roberts case. It is reasonable to conclude that the same system was used in sentencing Jackson to death given it was the same county, same judge and Jackson's sentencing hearing took place before that of Donna Roberts, the co-defendant.

121

Ground XXXVI

Jackson was denied the effective assistance of counsel on direct appeal in
violation of the Sixth, Eighth and Fourteenth Amendments of the federal
Constitution.

Because Jackson's sentence was vacated, and his case was remanded for sentencing,

defense counsel should have requested that a new jury be impaneled. The trial court is required to

impanel a new jury for a capital defendant on remand for legal errors that resulted in the death

penalty being set aside. R.C. 2929.06(B) states :

Whenever any court of this state or any federal court sets aside, nullifies, or vacates a
sentence of death imposed upon an offender because of error that occurred at the sentencing
phase of the trial and if division (A) of this section does not apply, the trial court that sentenced
the offender shall conduct a new hearing to resentence the offender. If the offender was tried by
a jury, the trial court **shall impanel** a new jury for the hearing.
(Emphasis added).

Additionally, the Supreme Court of Ohio decided *State v. White,* 132 Ohio St.3d

344,2012-Ohio-2583. In *White,* the court held that where a capital offender had a jury trial, and

the death sentence is later set aside, a new jury must be impaneled and new penalty hearing must

be conducted. It is the jury that must consider whether the death penalty is imposed. *White* was

decided two months prior to Jackson's resentencing proceeding. The United States Supreme

Court held recently that each fact necessary to impose a sentence of death *must be made by the*

*jury. Hurst v. Florida,*136 S. Ct. 616 (2016).

122

Counsel failed to prepare Jackson for his allocution. See *Hamblin v. Mitchell*, 354 F.3d 482 (6th Cir. 2003). Jackson's low IQ is but one factor that should have alerted counsel to the need for the guiding hand of counsel during allocution.

Counsel failed to present independent evidence of Jackson's positive prison adjustment which is relevant mitigating evidence. *Skipper v. South Carolina*, 476 U.S. 1 (1986).

The rule in *Hurst* invalidates appellate re-weighing formerly allowed under *Clemons*. Counsel failed to raise this issue on direct appeal. Had counsel raised this issue, there is a reasonable probability of a different outcome.

Counsel failed to argue that Jackson's intellectual disability prevented a death sentence under *Atkins, Hall and Moore*. Jackson had IQ scores of 70 and 73 before the age of 18. An IQ does not change over one's lifetime. *Williams v. Mitchell*, 792 F.3d 606 (6th Cir. 2015) at footnote 4 and authorities cited therein.

Further, there was no presentation to the court concerning his adaptive deficits even though exhibits detailing his history were proffered.

Jackson received constitutionally ineffective assistance of counsel on appeal and a new sentencing hearing must be ordered.

If AEDPA applies to the Murnahan issues, then the Ohio Supreme Court unreasonably applied clear U.S. Supreme Court precedent and/or unreasonably determined the facts in violation of 2254(d)(1) and (2).

123

Ineffective Assistance Of Counsel -Failure to Object/Understand State Law

Ground I:

Jackson's Right to the Effective Assistance of Counsel as guaranteed by the Sixth and Fourteenth Amendments of the federal Constitution was violated to the prejudice of Jackson and a new trial is warranted.

The Sixth and Fourteenth Amendments of the federal Constitution guarantee the right to counsel and to the effective assistance of counsel. *Gideon v. Wainwright*, 372 U.S. (1963); *Strickland v. Washington* 466 U.S. 668 (1984); *Matthews v. Abramajtys*, 319 F.3d 780 (6th Cir. 2003).

A constitutional error may only be considered harmless if it did not have a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). If however, the matter is so evenly balanced that the court has grave doubt as to the harmlessness of the error, it should treat the error, not as if it were harmless, but as if it affected the verdict (i.e. as if it had a substantial and injurious effect or influence in determining the jury's verdict).*Stapleton v. Wolfe*, 288 F.3d 863, 867 (6th Cir. 2002); *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)(When a court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief); *Stallings v. Bobby*, 464 F.3d 576 (6th Cir. 2006).

124

A. Trial counsel failed to object to the prosecution's extraction of guilty verdict and death verdict promises from all twelve impaneled jury members during the voir dire phase of the trial.

The purpose of voir dire is to determine whether a prospective juror has the qualifications to serve and is free from bias or prejudice for or against the litigants. *Pavilonis v. Valentine*, 120 Ohio St. 154 (1929).

The primary purpose of voir dire examination in a capital murder case is to determine whether a juror will truly consider aggravating circumstances and mitigating factors in determining the appropriate penalty and not ultimately impose the death penalty because a murder has been committed. See *Morgan v. Illinois*, 504 U.S. 719 (1992). The purpose of voir dire is not to prejudice a jury and predispose it towards one party or the other.

In this case, the prosecutor extracted promises from all jury members concerning its duty to return a guilty verdict and impose a death sentence. (TR 686-87, 936, 952, 955, 1044, 1163, 1165, 1260, 1289, 1316, 1346, 1389, 1400, 1494, 1502)

Jackson argues that counsel had a duty to object to the prosecutor's tactics and to ensure a fair and impartial jury was seated. By failing to object, counsel was constitutionally ineffective and the jury seated in this case was not fairly selected.

B. Counsel repeatedly failed to object during voir dire to the prosecutor's
comments and questions which sought to limit the type of mitigating
factors which might justify a sentence other than death.

During voir dire, the prosecutor asked ten of the twelve impaneled jurors on matters
relating to mitigation and limited his examples of mitigators that might compel a life sentence to
a mental disease or defect (TR 826, 923, 959, 1164, 1258,) and youthful age. (TR 1288, 1314,
1344, 1396, 1500). The prosecutor knew these mitigating factors were not applicable to Jackson.
Defense counsel failed to object to these improper questions. Counsel had a duty to object to the
prosecutor's questions knowing that these mitigating factors were not applicable to Jackson. See
*State v. Jones*, 91 Ohio St.3d 335 (2001). Counsel should have objected to this prosecutorial
misconduct and Jackson was prejudiced by his failure to object. Without counsel's objection, the
error could only be reviewed by the Ohio courts by Ohio Crim R 52. This plain error standard of
review is more difficult than the ineffective assistance of counsel standard.

C. Counsel failed repeatedly to object to inappropriate statements and misconduct
of the prosecutor during voir dire that materially prejudiced and predisposed
the jury to guilty and death sentence verdicts.

During voir dire, the prosecutor made inappropriate statements to five impaneled jurors,
either by misstating the law or discussing facts and evidence not alleged in the indictments or
proven at trial. The misstatements prejudiced Jackson and predisposed the jurors to guilty and
death verdicts by stating 1) the first trial deals with the state proving beyond a reasonable doubt,
the defendant committed aggravated murder (TR 820); 2) if you found beyond a reasonable
doubt even though there were mitigating factors, you would still, under the law, return a verdict

126

recommending the death penalty, do you understand that?(TR 826); 3) So we're dealing with charges where the person committed the crime, the defendant is alleged of killing a homeowner (TR 930); 4) in this case the aggravating circumstances accuse the defendant of purposely killing a homeowner in the commission of an aggravated burglary (TR 1046); 5) So that means that you would be able, if you were one of the 12 jurors, to listen to the evidence and decide the defendant's guilt based only on the evidence, right? (TR 1157); 6) In this case, the defendant is charged with killing a homeowner in an aggravated murder (TR 1392-93)

Jackson's trial counsel never objected to any of the above misstatements of fact or law. During voir dire, it is improper for counsel to discuss evidence. *State v. Johnson* , 1997 Ohio App. LEXIS 100 (8th App. District).

The prosecutor compounded the misstatements started in voir dire throughout the trial. The prosecutor repeated the misstatement that the defendant killed a homeowner, a misstatement acknowledged during trial as wrong. (TR 3383, 3397) Yet, the prosecutor purposely reasserted this prejudicial and factually wrong statement three times during penalty phase closing argument. First, it was his specific intent to kill the victim, to commit an aggravated murder against a homeowner (Penalty phase TR 142); secondly, it can't get any worse than being in prison and planning the execution of a homeowner who just comes home (Penalty phase TR 142); and it is the worst form. The other is that after he kills a homeowner (Penalty phase TR 143). Jackson's counsel should have objected. *Strickland,* supra Jackson was prejudiced by counsel's failure to object and there is a reasonable probability that he would not have been sentenced to death otherwise.

D. Counsel fashioned a defense to death penalty specifications of Aggravated Burglary and Aggravated Robbery under R.C. 2929.04(A)(7) which demonstrated counsel's unawareness of the law relative to the proof and elements of those specifications.

Jackson was convicted on counts one and two charging him with the aggravated murder of the victim while committing the acts of aggravated burglary and aggravated robbery while acting as the principal offender. (TR 3612-3615) Jackson was sentenced to death on count one. The State dismissed count two subsequent to Jackson's convictions. (Penalty Phase TR 159, 181-82 )

In fashioning a defense to the capital specifications of aggravated burglary and aggravated robbery, defense counsel argued that Donna Roberts, a separately indicted co-defendant, was the titled owner of the residence and titled owner of the motor vehicle in question. In short, because Donna Roberts had given Jackson permission to enter the home in question and drive the automobile in question, Jackson could not be guilty of these offenses or specifications. (TR 3355, 3361, 3365, 3366-69).

Defense counsel was obviously not aware of or ignored the well established law on this subject matter. The following cases preclude argument and instruction on the defense of burglary and robbery which defense counsel advocated, proposed and requested (TR 3369):*State v. Rhodes*, 2 Ohio St.3d 74 (1982);*State v. Steffen*, 31 Ohio St.3d 111 (1987); *State v. Lilly*, 87 Ohio St.3d 97 (1999); *State v. O'Neal*, 87 Ohio St.3d 402 (2000).

128

Given defense counsel's position, as reflected in the transcript at the close of evidence and discussion about jury instructions, counsel was ineffective under *Strickland*. (TR 3344-3371)

>    E. Defense counsel failed to object to the admission into evidence of State's
>    Exhibits 271D-1 to 271D-139, letters from Donna Roberts to Nathaniel Jackson
>    from January 2001 to December 2001, without requiring authentication of
>    writing as a predicate to admission.

Defense counsel allowed admission without objection and to the prejudice of Jackson 139 letters purportedly written by Donna Roberts to Jackson between January 2001 to December 2001. The State argued that the letters were evidence of the plan to murder the victim. (TR 2076, 2231, 2294-2302, 3151, 3431-37).

Unlike the letters from Jackson to Donna Roberts, these letters were not authenticated by their author or by way of expert testimony. (TR 2979) Accordingly, there was no reliable and appropriate means for the admission of State's Exhibits 271D-1 to 271D-139. These letters should not have been admitted into evidence and were critical proof of prior calculation and design required by count one and for which the petitioner was sentenced to death. There was no basis under Ohio law to admit such evidence and counsel had a duty to object and there was a reasonable probability that the letters would have been excluded and the jury would not have found the element of prior calculation and design beyond a reasonable doubt. In addition, there is a reasonable probability that Jackson would not have been sentenced to death. See *Hawes v. Perry*, 633Fed. Appx. 720 (11th Cir. 2015)(failure to authenticate e-mail).

Based on all of the above errors by trial counsel, considered individually and cumulatively, defense counsel was constitutionally ineffective under *Strickland* ; *Harris v. Wood* 64 F.3d 1432, 1438 (9th Cir. 1995).

129

The Ohio courts unreasonably applied *Strickland* and unreasonably determined the facts under 2254 (d)(1) and (2).


Ground II:

> Jackson's Right to Due Process and a fair trial was violated when the prosecutor engaged in extensive, deliberate, misleading and prejudicial misconduct in violation of the Sixth and Fourteenth Amendments of the federal Constitution.

Implicit in the right to a jury trial under the Sixth and Fourteenth Amendments is the right to a fair trial before a jury untainted by improper influences. Jackson's right to due process under the Fourteenth Amendment was violated when the prosecutor engaged in acts of misconduct that denied Jackson of a fair trial. *Donnely v. Christoforo*, 416 U.S. 637, 643-45 (1974). Federal law requires that errors, whether they are independently prejudicial or not, must be considered for their cumulative effect on one's Due Process rights. *Walker v. Engle*, 703 F.2d 959 (6th Circuit 1983).

The prosecutor is entitled to advocate strongly for a conviction. He or she may strike hard blows but not foul ones. *Berger v. Untied States*, 295 U.S. 78 (1935).

Prosecutorial misconduct may take many forms. *Slagel v. Bagley*, 457 F.3d 501 (6th Cir. 2006)(cases cited therein).

The Sixth Circuit analyzes a due process claim of misconduct under a two part test. *Washington v. Hofbauer*, 228 F.3d 689, 698-99 (6th Cir. 2000). First, it determines if the prosecutor's acts were improper. Then, it looks at four factors. The last factor, the strength of the evidence should not be given inordinate weight by the reviewing court. In *Boyle v. Million*, 201

F.3d 711 (6th Cir. 2000), the court reversed a habeas petitioner' conviction based on misconduct

even though the evidence of guilt was quite strong. Moreover, the strength of the evidence at the

guilt phase is not relevant to claims of misconduct at the penalty phase. This is due to the penalty

phase being an assessment of the offender's moral guilt rather than legal guilt. *California v.*

*Brown*  479 U.S. 538, 545 (1987)(Justice O'Connor concurring; *Satterville v. Texas*, 486 U.S.

249, 258-59. (Harmless error standard is stringent for penalty phase error involving prosecutorial

misconduct)

> A. During voir dire, the prosecutor improperly extracted guilty verdict and death
> verdict promises from all twelve impaneled jury members.

The prosecutor improperly extracted guilty verdict and death verdict promises from the

jurors as explained in the previous claim for ineffective assistance of counsel. Petitioner

incorporates by reference the facts and prejudice discussed earlier and incorporates the law for

prosecutorial misconduct. *Berger*, *Slagle* supra.

> B. During voir dire, the prosecutor made comments to and asked questions of ten
> impaneled jurors which sought to limit the type of mitigating factors which
> justified a sentence other than death.

Another instance of misconduct involves the prosecutor's comments and

131

questions to ten of the jurors limiting the type of mitigating factors which could justify a

life sentence. Jackson incorporates and adopts the facts and arguments on this issue

from the previous ineffective assistance of counsel claim. Petitioner incorporates the

above law on prosecutorial misconduct. *Berger, Slagle* supra.

> C. During voir dire, the prosecutor misstated the law and/or facts and evidence not alleged in the indictment or proven at trial which predisposed the jurors to guilty and death verdicts.

Another instance of misconduct involves the prosecutor's inappropriate statements to five

jurors either by misstating the law or discussing facts or evidence not alleged in the indictments

or proven at trial. Jackson incorporates the facts and arguments in the previous ineffective

assistance of counsel claims and incorporates the prosecutorial misconduct law. *Berger*, *Slagle*,

supra.

> D. During opening statement, the prosecutor improperly engaged in argument which prompted a motion for mistrial and cautionary instruction from the judge.

Another instance of misconduct occurred in opening statement when the

prosecutor improperly offered his opinion. Such misconduct prompted defense counsel to

object and the trial court to give a curative instruction. (TR 2088-89)

132

E. The prosecutor improperly elicited repetitive hearsay testimony from Detective
   Monroe prompting a mistrial motion and cautionary instruction from the judge.

During the testimony of Detective Monroe, the prosecutor sought hearsay evidence

concerning the activities of Jackson and Donna Roberts, the co-defendant. Counsel objected and

requested a mistrial, denied by the trial judge, but the judge stated that several answers have gone

beyond the scope but were hearsay nonetheless. (TR 2322-24) Eliciting such hearsay was

improper and prejudicial and Jackson incorporates the above cited misconduct law. *Berger,*

*Slagle* supra.

F. During closing argument in the first phase of the trial, the prosecutor accused
   defense counsel of creating a diversion and otherwise impugned the role of
   defense counsel and otherwise suggested counsel was defrauding the court.

Another instance of misconduct took place in final argument during the penalty phase

when the prosecutor accused defense counsel of creating a diversion for the jury so that it could

not properly determine what is important in the case. (TR 3420, 3421, 3422, 3425)

Jackson adopts the above cited law concerning prosecutorial misconduct. *Berger, Slagle*

supra.

G. During closing argument in the penalty phase of the trial, the prosecutor's
   argument went beyond the evidence.

During final closing argument in the penalty phase, the prosecutor, over objection, argued

about Donna Roberts concerning facts not in evidence in this trial. (TR 3397, 3401-02) The trial

133

court improperly ruled that the prosecutor is not limited to the stipulation or the facts of the case. (TR 3402) The improper conduct continued in the rebuttal final argument in the penalty phase when the prosecutor argued, over objection, about the supposed plan to handcuff the victim, take him to Youngstown, execute him there and leave the car there. (TR 3506) There was no evidence to support such an argument. Jackson adopts the above cited law on prosecutorial misconduct. *Berger, Slagle* supra.

> H. The prosecutor argued mitigation factors which had not been offered by Jackson.

The prosecutor argued mitigation factors that had not been introduced by Jackson. In particular, the prosecutor argued there was a lack of mental disease or defect and a lack of mental retardation. (Penalty Phase, TR 78-79, 137-41) Counsel objected but the trial court overruled the objection. (TR 140)

Ohio law is clear that the prosecutor may not comment on potential mitigating factors not raised by the defense. *State v. Garner*, 74 Ohio St.3d 49,55 (1995); *State v. Bey* 85 Ohio St. 3d 487, 495.

Jackson filed a pre-trial motion to prohibit the prosecutor from commenting on mitigating factors not raised by him. (R.69) On September 11, 2002 the trial judge granted the motion. (R. 209) Nonetheless, the prosecutor improperly argued lack of mental disease or defect and lack of mental retardation in spite of the trial court's order. The misconduct was intentional. *Berger, Slagle* supra.

134

      I. The prosecutor in final argument in the penalty phase labeled the Petitioner a
        cold blooded psychopathic killer.

Another instance of misconduct concerns the prosecutor's final argument in the penalty

phase where the prosecutor argued this is a cold blooded psychopathic killing that took place in

its planning stages in prison. (TR 134) Even though the trial judge sustained the objection and

instructed the jury to disregard, it is part of a pattern of win at all costs and intentional

misconduct that denied Jackson a fair trial and due process under the federal constitution. *Berger,*

*Slagle* supra.

      J. The cumulative effect of prosecutorial misconduct violated the due process
        clause of the Fourteenth Amendment of the federal Constitution.

For the reasons stated above, the cumulative effect of the prosecutor's misconduct

violated the Fourteenth Amendment of the federal Constitution. *Berger*, *Slagle* supra.

The Ohio Courts unreasonably applied well established U.S. Supreme Court precedent

and/or unreasonably determined the facts under 2254(d)(1) and (2).

Ground III.

      The trial court improperly allowed evidence and argument before the jury and
      inappropriately commented on the propriety of such evidence and argument in violation
      of the Due Process Clause and denied the Petitioner a fair and impartial trial in violation
      of the Sixth and Fourteenth Amendments of the federal Constitution.

      The first example of improper argument allowed by the trial judge concerns the

prosecutor's argument that defense counsel was creating a diversion so the jury could not

properly determine what is important in the case. (TR 3420-21, 3425)

The next instance of improper argument allowed by the trial judge concerned evidence outside the record cited above and incorporated herein by reference. (TR 3397, 3401-02) The trial court improperly advised defense counsel and the jury that the prosecutor is not limited to the stipulation or facts of the case. (TR 3402)

Another instance of improper argument allowed by the trial court was the prosecutor's intentional violation of the court's pre-trial order that he could not argue mitigating factors that were not presented by the defense.

Jackson incorporates the facts and law cited above in Grounds I and II for the sake of brevity. However, it must be emphasized that the prosecutor stated in front of the jury "what I said was not wrong" (Penalty Phase, TR 140) and the trial court responded in front of the jury "Anything you said up to this point, I don't think at all was improper, but please continue." (TR 140)

The trial court also allowed Frank Reynolds to testify concerning a conversation between the victim and Donna Roberts, the co-defendant, regarding her request for money. The witness allegedly heard this conversation and testified to its content including the refusal of the victim to give her the requested money and the witness's opinion that Donna Roberts was really nervous, shaky and she gave him the dirtiest look like it can kill a person. (TR 2188)

The improper admission of this hearsay testimony violated the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution. See *Mason v. Hanks*, 97 F.3d 887 (7th Cir. 1996); *Paris v. Turner*, 1999 U.S. App. LEXIS 11101 (6th Cir. 1999).

The cumulative errors in the admission of improper evidence and argument violated

Jackson's right to a fair trial and due process under the Fifth, Sixth, Eighth and

Fourteenth Amendments of the federal Constitution.

Jury Instructions

Ground IV.

Jury instructions that relieve the state of its burden of proof beyond a
reasonable doubt on the mens rea element of a capital crime violates the
Sixth, Eighth and Fourteenth Amendments of the federal Constitution.

The trial court improperly defined "purpose" when instructing the jury on Counts 1 and 2

of the indictment, i.e. the Aggravated Murder charges. (TR 3550-51) The state improperly shifted

the burden of proof regarding purpose to kill to the petitioner improperly. See *Wilbur v. Mulaney*,

421 U.S. 684 (1975); *Francis v. Franklin*, 471 U.S. 307 (1985);*Sandstrom v. Montana*,

442 U.S. 510 (1979).

The trial court should not have given the conduct definition of purpose in this capital

case. The conduct definition stated Jackson acted purposely if he engaged in prohibited conduct

regardless of what he may have intended to accomplish. This conduct definition relieved the state

of proving the specific purpose to kill in order to find Jackson guilty of the mens rea element of

Aggravated Murder.

The trial court's instruction also created a mandatory rebuttable presumption of the mens

rea element from the mere use of a deadly weapon. (TR 3551)The instruction relieved the State

of its burden to prove the element of purpose to kill because a reasonable juror could...have

137

understood that the instructions placed the burden of proof on the [petitioner][to rebut the

inference of purpose to kill] *Boyde v. California*, 494 U.S. 370 (1990).

The instruction reduced the State's burden of proof and violated Due Process.*Dixon v.

Williams*, 750 F.3d 1027 (9th Cir. 2014);*Doe v. Busby*, 661 F.3d 1001 (9th Cir. 2011);*In re

Winship*, 397 U.S. 358 (1970). At the very least, the death sentence must be vacated.

Alternatively, a new trial must be granted.

Ohio courts unreasonably applied well established U.S. Supreme Court law and/or

unreasonably determined the facts in violation of 2254 (d)(1) and (2).


Ground V.

The State was allowed to convict the Petitioner and sentence him to death
upon a standard of proof below proof beyond a reasonable doubt in violation
of the Fourteenth Amendment of the federal Constitution.


To maintain confidence in our system of laws proof beyond a reasonable doubt must be

held to be proof of guilt with utmost certainty.*In re Winship*, 397 U.S. 358 (1970). A capital

conviction and sentence of death must be reversed where the court's instruction on reasonable

doubt could have led jurors to find guilt based on a degree of proof below that required by Due

Process. *Cage v. Louisiana*, 498 U.S. 39 (1990).

The trial court's definition of reasonable doubt in both the first and second phases of the

trial violated the Due Process clause of the Fourteenth Amendment. (TR 3543; Penalty phase

162-63)

138

The willing to act language of R.C. 2901.05 is too lenient to pass Due Process review.

Additionally the firmly convinced language represents a burden of proof matching the clear and

convincing standard.

The court's use of moral evidence was also a violation of Due Process. See *Sullivan v.*

*Louisiana*, 508 U.S. 275 (1993); *Dixon v. Williams*, 750 F.3d 1027 (9th Cir. 2014);*Doe v. Busby*,

661 F.3d 1001 (9th Cir. 2011);*In re Winship*, 397 U.S. 358 (1970).

The Ohio Court unreasonably applied well established U.S. Supreme Court law in

violation of 2254 (d)(1) and (2).

Remaining Grounds

Ground VI.

The Petitioner was deprived of the right to individualized sentencing and his
liberty interest in the statutory sentencing scheme when the trial court
considered and weighed both alternatives under R.C. 2929.04(A)(7) in
violation of the Fifth, Eighth and Fourteenth Amendments of the federal
Constitution.

In both of the trial court's sentencing opinions, the trial court improperly weighed both

R.C. 2929.04(A)(7) alternatives and reduced mitigation to "justification." This denied Jackson

the individualized sentencing guaranteed by the Eighth and Fourteenth Amendments to the

federal Constitution. *Woodson v. North Carolina*, 428 U.S. 280 (1976); *Lockett v. Ohio*, 438 U.S.

586 (1978); *Eddings v. Oklahoma* , 455 U.S. 104 (1982); *Zant v. Stephens*, 462 U.S. 862 (1993).

The trial court was persuaded to impose the death penalty particularly because Jackson

was the principal offender and acted with prior calculation and design. This the type of error prohibited by the Eighth and Fourteenth Amendments of the federal constitution and *State v. Penix*, 32 Ohio St.3d 369 (1987).

The trial judge dismissed the impact of Jackson's personal background such as his low IQ, statement of remorse etc. Absent a legal justification or excuse, the court refused to give weight to compelling mitigation. The trial court applied an  incorrect and legally inaccurate standard to mitigation. The correct standard is found at *Franklin v. Lynaugh*, 487 U.S. 164, 188 (1988); *California v. Brown*, 479 U.S. 538 (1987); *Eddings v. Oklahoma*, 455 U.S. 104 (1982).

The court unreasonably discounted legitimate mitigation evidence in violation of *Porter v. McCollum*, 558 U.S. 30 (2009).

The trial court failed, independent of the jury, to properly weigh and consider the aggravating circumstances and mitigating factors. The State of Ohio has thus created a liberty interest in having the trial court make a sentencing decision concerning death in a constitutionally adequate manner. *Clemons v. Mississippi*, 494 U.S. 738, 746 (1990); *Hicks v. Oklahoma*, 447 U.S. 343 (1980).

Jackson was entitled to an individualized decision concerning the imposition of death. *Lockett, Eddings and Porter* supra. The trial court failed to follow this well established law.

The Ohio courts unreasonably applied well established U.S. Supreme Court law in violation of 2254 (d)(1) and/or (2).

140

Ground VII.


The Petitioner's sentence of death is inappropriate and disproportionate to the
penalty imposed in similar cases in violation of the Fifth, Eighth and
Fourteenth Amendments of the federal Constitution.


O.R.C. 2929.05(A) requires the Ohio Supreme Court to review all death sentences to

determine whether the sentence of death in a particular case is appropriate; and whether the

sentence of death in a particular case is excessive or disproportionate to the penalty imposed in

similar cases.

Under the Eighth and Fourteenth Amendments of the federal constitution, a sentence of

death is not appropriate in any case where there is not the highest degree of reliability to support

it. *Woodson v. North Carolina*, 428 U.S. 280 (1976).

Based on mitigation presented, including Petitioner's low IQ and the impact of and

influence of Donna Roberts, the death sentence here is not appropriate and/or is disproportionate

to similarly convicted people in Ohio.

The issue is further compounded by counsel's ineffectiveness as described earlier in the

mitigation investigation and presentation and by the biased judge who had the prosecutor's write

his findings of facts and conclusions of law throughout this case.

The Ohio courts violated 2254(d)(1) and (2).

141

Ground VIII.

The Ohio Supreme Court's proportionality review, as mandated by R.C.
2929.05 is fatally flawed and Petitioner's death sentence must be vacated
pursuant to the Fifth, Eighth and Fourteenth Amendments of the federal
Constitution.

The Ohio Supreme Court is required to conduct a proportionality review of all death

sentences. See R.C. 2929.05. Information as to cases in which a life sentence was imposed after a

capital sentencing hearing is necessary for reviewing courts to fulfill their responsibility of

assuring that excessive, disproportionate sentences of death are not imposed. Woodson, supra.

The Ohio Supreme Court has failed to require the trial courts to file sentencing opinions

in death eligible cases when a life sentence has been imposed. The result has been a system

where only death verdicts are compared to death verdicts. Such a system fails to provide for any

appropriate and/or proportionality review that is meaningful under Ohio law or the federal

constitution.

A state need not require proportionality review. *Pulley v. Harris*, 465 U.S. 37 (1984).

However, State law may create interests that are entitled to the procedural protections of the Due

Process Clause of the Fourteenth Amendment.*Vitek v. Jones*, 445 U.S. 480, 488 (1980).

The State of Ohio has created such interest entitled to the protection of the federal

Constitution in its mandated appropriateness and proportionality review. Such a liberty interest

can not be ignored without violating due process. *Hicks v. Oklahoma*, 447 U.S. 343 (1980);

*Vitek*; *Evitss v. Lucey*, 469 U.S. 387 (1985).

142

Here, Due Process has been violated in that the Court did not consider life sentences imposed after a capital trial in deciding whether the sentence in this case is appropriate or disproportional. See *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1885);*Furman v. Georgia* , 408 U.S. 238 (1972);*Gregg v. Georgia*, 428 U.S. 153 (1976).

Under O.R.C. 2929.03(F), the Ohio courts must set forth a written opinion with specific findings imposing a life sentence. A judgment is not final until this is done. Ohio's refusal to follow its own law requires Jackson to invoke the protections of the Eighth and Fourteenth Amendments of the federal Constitution.

Ohio courts improperly applied well established U.S. Supreme Court law and/or unreasonably determined the facts in violation of 2254 (d)(1) and (2).

Ground IX.

Ohio Revised Code Sections 2903.01, 2929.02, 2929.021-.23, 2929.03-.05 as read together and as applied in this case violate the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution.

Jackson filed a written motion on January 23, 2002 raising numerous constitutional challenges to the Ohio Death Penalty Scheme as codified above. The court denied the motion. For the reasons stated in the filed motion, incorporated herein by reference and for the sake of brevity, the Ohio statutory scheme violates the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution. *Hurst v. Florida*, 136 S.Ct. 616 (2016).

The Ohio Supreme Court unreasonably failed to apply well established U.S. Supreme Court decisions and/or unreasonably determined the facts in violation of 2254 (d)(1) and (2).

143

Ground X.

Ohio Revised Code Sections 2903.01, 2929.02. 2929.021-.023, 2929.03-.05
and the Ohio Death Penalty otherwise violates International Law and the treaty
obligations under Article VI and the Supremacy Clause of the federal
Constitution and violates the Fifth, Sixth, Eighth and Fourteenth
Amendments of the federal Constitution.

The arguments raised in this section were detailed in the direct appeal to the Ohio

Supreme Court as Proposition of Law No. 12. Jackson incorporates all facts and legal arguments

made there by reference and for the sake of brevity.

In short, Jackson argues that Ohio's capital punishment scheme allows the death penalty

to be imposed in an arbitrary and discriminatory manner in violation of *Furman* and its progeny.

The state can not show that taking human life is a legitimate and compelling state interest.

Further, the State can not show that the death penalty is the least restrictive nor an effective

means of deterrence.

The Fourteenth Amendment prohibits the arbitrary and capricious procedures used by

Ohio in the application of its capital punishment.*Gregg v. Georgia*, 428 U.S. 153 (1976).

The Ohio statutory scheme is unconstitutionally vague. The Ohio scheme fails to provide

adequate guidelines to sentencers and fails to prohibit the arbitrary, capricious and discriminatory

imposition of death. *Hurst v. Florida*, 136 S.Ct. 616 (2016).

There is an impermissible risk of death for one who chooses to exercise his right to a jury

trial in Ohio. One who pleads guilty or no contest may benefit from the trial court's discretion to

dismiss the capital specifications in the interest of justice. Ohio R Crim Procedure 11(C)(3).

There is no corresponding provision for one who goes to trial. Justice Blackmun found this

144

discrepancy to be constitutional error. *Lockett, supra.*

International law is a part of our law. *The Paquete Habana*, 175 U.S. 677 (1900). A treaty made by the U.S. is the supreme law of the land, including Ohio. Article VI, U.S. Constitution. Where state law conflicts with international law, state law must yield.*Zschering v. Miller*, 389 U.S. 429 (1968).

The U.S. membership in the United Nations and Organization of American States creates obligations in Ohio. The following ratified treaties and conventions bind the U.S. and Ohio: The ICCPR ratified in 1992; ICERD ratified in 1994; CAT ratified in 1994. Under the Supremacy clause, these treaties are the law of the land. See Executive Order 13107.

Ohio's continued violation of the above international treaties through its statutory scheme, and as applied in this case, renders Jackson's death sentence in violation of the federal constitution.

International law may also be ascertained by consulting the works of jurists, writing professionally public law; or by the general usage and practice of nations; or by judicial decisions recognizing and enforcing that law. *United States v. Smith*, 18 U.S. 153 (1820).

The following are binding international law documents: Universal Declaration of Human Rights (DHR); The American Convention on Human Rights, drafted by the OAS entered into force in 1978; The U.N. Declaration on the Elimination of All Forms or Racial Discrimination; the American Declaration of Rights and Duties of Man; Declaration on the Protection of All Persons from being Subjected to Torture and other Cruel, Inhuman or Degrading Treatment or Punishment adopted by U.N. in 1975; Safeguards Guaranteeing Protection of the Rights of Those Facing the Death Penalty as adopted by U.N. Economic and Social Council in 1984; The Second

145

Optional Protocol to the ICCPR adopted by the U.N. General Assembly in 1989.

The Ohio death penalty scheme as written and as applied in this case are in violation of the above cited binding international laws and are the basis of granting habeas relief.

The Ohio courts refusal to apply well established U.S. Supreme Court cases is a violation of 2254(d)(1) and Ohio has unreasonably determined the facts under 2254 (d)(2).

Ground XI.

Jackson was denied Due Process and a fair trial when the trial court overruled a motion to suppress his statement obtained in violation of the Fifth, Sixth and Fourteenth Amendments of the federal Constitution.

After his arrest and while in custody, the petitioner gave both unrecorded and videotape statements to the police concerning the shooting in this case. On April 17, 2002, the trial court conducted a hearing on Jackson's Motion to Suppress. Jackson's statements were obtained in violation of the Fifth, Sixth and Fourteenth Amendments of the federal Constitution. See *Miranda v. Arizona*, 284 U.S. 436 (1967); *Jackson v. Denno*, 378 U.S. 368 (1964); *Arizona v. Roberson*, 486 U.S. 675 (1988); *Edwards v. Arizona*, 451 U.S. 477 (1981); *Davis v. United States*, 512 U.S. 452 (1994).

Initially, the police obtained an unrecorded statement from Jackson. Then, the police obtained a videotaped statement. Jackson testified and the videotape confirms that he wanted an attorney and did not want to answer the questions posed by the police.

Nonetheless, the police obtained an unrecorded statement and a videotaped statement that was used at Jackson's trial.

146

The statements made by Jackson were obtained in violation of the Fifth, Sixth and Fourteenth Amendments of the federal Constitution and never should have been used against him at the trial. A new trial is in order where the statements will not be allowed.

The Ohio courts unreasonably applied well established U.S. Supreme Court precedent and/or unreasonably determined the facts in violation of 2254(d)(1) and (2).

Ground XXXIII

The multiple convictions and punishments in this case violated the Double Jeopardy Clause of the Fifth and Fourteenth Amendments.

The Double Jeopardy Clause of the Fifth Amendment applies to the states through the Fourteenth Amendment. *Benton v. Maryland* 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). The right against double jeopardy protects the criminally accused from multiple punishments, as well as multiple trials. *See Whalen v. United States,* 445 U.S. 684, 688 (1980).

The Ohio courts unreasonably failed to apply U.S. Supreme Court precedent when it failed to merge for the purpose of sentencing 1. the capital specifications, 2. the capital specifications and the related underlying felonies, and 3. the underlying felonies. 28 U.S.C. 2254 (d)(1) and (2) were violated.

147

Ground XXXIV

The death sentence must be vacated because it was obtained in violation
of the Fifth, Sixth, Eighth and Fourteenth Amendments.

The Constitution charges this Court with the duty to insure that each death sentence that it reviews is the product of a reliable procedure and that the sentence is worthy of confidence. *Johnson v. Mississippi,* 486 U.S. 578, 584 (1988); *Turner v. Murray,* 476 U.S. 28, 35-36, 106 S. Ct. 1683 (1986); *California v. Ramos,* 463 U.S. 992, 998, 103 S. Ct. 3446 (1983 ). The requirement of reliability and accuracy in imposing the death penalty is well-rooted in case law and fundamental to the Supreme Court's capital jurisprudence. *Gregg v. Georgia,* 428 U.S. 153, 194-95, 96 S. Ct. 2909, (1976); *Hurst v. Florida*, 136 S.Ct. 616 (2016).

Here, there were numerous Constitutional violations including the ineffective assistance of counsel; a trial judge who had ex parte communications with the prosecutor; and a prosecutor who drafted the sentencing opinions; a biased judge, who refused to hear new mitigation evidence at the re-sentencing and refused to consider the allocution of Jackson; and other violations as discussed herein this Petition and Traverse.

The death sentence is based on a constitutionally flawed process and inaccurate and incomplete information about Jackson. The Ohio court unreasonably applied well established U.S. Supreme Court precedent and/or unreasonably determined the facts in violation of 2254(d)(1) and (2).

Ground XXXV:

Ohio's Death Penalty Law Is Unconstitutional. R.C. 2903.01, 2929.02,
2929.021, 2929.022, 2929.023, 2929.03, 2929.04, and 2929.05 Do Not
Meet The Prescribed Constitutional Requirements And Are
Unconstitutional On Their Face And As Applied To Appellant. U.S.
Const. Amends. V, VI, VIII, And XIV; Ohio's Death Penalty Statute
Violates The United States' Obligations Under International Law.

The Eighth Amendment to the Constitution prohibits the infliction of cruel and unusual

punishment. The Eighth Amendment's protections are applicable to the states through the

Fourteenth Amendment. *Robinson v. California,* 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758

(1962). Punishment that is "excessive" constitutes cruel and unusual punishment. *Coker v.

Georgia,* 433 U.S. 584, 97 S. Ct. 2861, 53 L. Ed. 2d 982 (1977).

The underlying principle of governmental respect for human dignity is the Court's

guideline to determine whether this statute is constitutional. *See Furman v. Georgia,* 408 U.S.

238 (1972) (Brennan, J., concurring); *Rhodes v. Chapman,* 452 U.S. 337,361, 101 S. Ct. 2392, 69

L. Ed. 2d 59 (1981); *Trop v. Dulles,* 356 U.S. 86, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958).

Ohio's death penalty scheme fails to ensure that arbitrary and discriminatory imposition of

the death penalty will not occur. The procedures actually promote the imposition of the death

penalty and, thus, are constitutionally intolerable. R.C. 2903.01, 2929.02, 2929.021, 2929.022,

2929.023, 2929.03, 2929.04, and 2929.05 violate the Fifth, Sixth, Eighth and Fourteenth

Amendments to the Constitution and international law.

Regardless of the source "international law is a part of our law." *The Paquete Habana,* 75

U.S. at 700. The Ohio courts unreasonably applied well established U.S. Supreme Court

precedent and/or unreasonably determined the facts. 28 U.S.C. 2254 (D)(1) and (2).

149

Conclusion

For the above stated reasons, habeas relief must be granted. A new trial must be ordered or a new meaningful sentencing hearing conducted. In the meantime, a stay of execution must be granted until all available federal habeas proceedings have been completed.

Respectfully submitted,

/s/John P. Parker

/s/ Kevin M. Cafferkey

Counsel for Nathaniel Jackson

Certificate of Service

A copy of the foregoing document was served this 31st day of March 2019 on counsel for Respondent via the Court's electronic filing system.

/s/John P. Parker