UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| | : | |
| NATHANIEL JACKSON, | : | CASE NO. 4:07-cv-00880 |
| | : | |
| Petitioner, | : | OPINION & ORDER |
| | : | [Resolving Doc. 64] |
| vs. | : | |
| | : | |
| MARC V. HOUK, | : | |
| | : | |
| Respondent. | : | |
| | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Nathaniel Jackson, an inmate sentenced to death by the State of Ohio, petitions for habeas corpus relief under 28 U.S.C. § 2254.[1]  He raises 37 Grounds of relief.  Respondent Warden Marc C. Houk answered.[2]  Petitioner filed a traverse.[3]

The Petitioner Jackson briefing does a markedly poor job.  Because of defective pleading, Petitioner Jackson gives a plausible argument with regard to only a single claim.

Indeed, most of Jackson's petition suffers two fatal flaws.  First, the petition fails to argue within the AEDPA framework.  Jackson's habeas briefing copies many of his arguments from his state-court briefs, sometimes verbatim  Because Jackson simply copies state court briefing, Jackson fails to identify the relevant last-in-time state-court adjudication for his challenges, let alone explain how the relevant adjudications are (1) contrary to or an unreasonable application of clearly established federal law or (2) based on an unreasonable interpretation of the facts.  Second, Jackson's habeas grounds consist of conclusory,

---

[1] Doc. 64; Doc. 65.
[2] Doc. 71.
[3] Doc. 73.

Case No. 4:07-cv-00880
GWIN, J.

sometimes incoherent arguments, and most arguments fail to muster any persuasive factual or legal support.

Still, in Ground 30, Petitioner Jackson establishes that the state courts violated Jackson's constitutional rights when it denied Jackson the opportunity to present updated mitigation evidence at his 2012 resentencing.

Therefore, the Court **GRANTS** Jackson's habeas corpus petition on Ground 30 and remands to the state trial court for resentencing.

I.    Background

    A.   Trial Evidence

For expediency, the Court reproduces the Ohio Supreme Court' summary of the facts established at trial.  Under 28 U.S.C. § 2254, the Court presumes these facts to be correct.[4]

> {¶ 5} Donna Roberts lived with Robert Fingerhut, her former husband, in Howland Township, Trumbull County.  Fingerhut, who operated Greyhound bus terminals in Warren and Youngstown, owned two insurance policies on his life, both of which named Roberts as sole beneficiary.  The total death benefit of the two policies was $550,000.

> {¶ 6} At some point, Jackson began an affair with Roberts.  In 2001, the affair was interrupted by Jackson's confinement in the Lorain Correctional Institution.  While Jackson was in prison, he and Roberts exchanged numerous letters and spoke on the telephone.  Prison authorities recorded many of their telephone conversations.

> {¶ 7} Passages from the letters and telephone calls indicated that the two plotted to murder Fingerhut.  Jackson repeatedly pledged to kill Fingerhut upon Jackson's release from prison.  In one letter, Jackson wrote, "Donna I don't care what you say but Robert has to go!  An[d] I'm not gonna let you stop me this time."  At Jackson's request, Roberts purchased a ski mask and a pair of gloves for Jackson to use during the murder.  On the day before Jackson was released, he and Roberts had one final recorded conversation.  Jackson told her, "I got to do this Donna.  I got to."  He also told Roberts his plan: "I just need to be in that house when he come home.  * * * Baby it ain't gonna happen in the house."

---

[4] *Davis v. Ayala*, 576 U.S. 257, 271 (2015) (citing 28 U.S.C. § 2254 (e)(1)).

Case No. 4:07-cv-00880
GWIN, J.

{¶ 8} Jackson was released on December 9, 2001. Roberts drove to Lorain to pick him up, spent that night with him in a motel, and spent much of the next two days with him as well. On December 11, 2001, Fingerhut was shot to death at his home.

{¶ 9} When police responded to the crime scene, Roberts was hysterical and asked them to do whatever was necessary to catch the killer. She also reported that Fingerhut's car had been stolen. During a search of the house, the police found, in a dresser in the master bedroom, 145 handwritten letters and cards that Jackson had sent to Roberts. In the trunk of Roberts's car, the police found a bag with Jackson's name on it containing clothes and 139 letters that Roberts had sent to Jackson. On December 12, Fingerhut's car was found in Youngstown.

{¶ 10} On December 21, 2001, Jackson was arrested at a friend's house in Youngstown. Jackson had a bandage around his left index finger at the time of his arrest. The police seized a pair of bloodstained gloves with the left index finger missing and a pair of tennis shoes from the house. The tread pattern on the shoes was consistent with a shoe print left in blood near Fingerhut's body.

{¶ 11} During a subsequent police interview, Jackson said, "I just didn't mean to do it, man." He then related his version of what happened, essentially claiming that he shot Fingerhut in self-defense. Jackson claimed to have known Fingerhut for a couple of years. Jackson said that on the evening of December 11, he approached Fingerhut about getting a job at the Youngstown bus terminal. They met later that evening, and Jackson sold Fingerhut "some weed." He then asked Fingerhut if he could go to Fingerhut's house to "chill" before starting work the next day, and Fingerhut gave Jackson a ride to Fingerhut's home. According to Jackson, after they went inside the home, Fingerhut started making racial comments and other disparaging remarks toward him. Fingerhut then pulled a revolver, Jackson tried to grab it, and Fingerhut shot Jackson in the finger as Jackson reached for the gun. Jackson then took the gun from Fingerhut during the "tussle" and shot him twice. Jackson was unsure where the shots hit Fingerhut but said that Fingerhut was still breathing when Jackson fled the house and drove away in Fingerhut's car.

{¶ 12} Fingerhut's autopsy showed that he had been shot three times, including a penetrating gunshot wound to the top of the head that was determined to be fatal. There was also a laceration between Fingerhut's left thumb and index finger, and further examination showed that the fatal bullet hit his hand before entering the top of his head. Gunshot residue on the body indicated that the distance from the muzzle of the firearm to the head wound was 24 inches or less.

Case No. 4:07-cv-00880
GWIN, J.

{¶ 13} Finally, expert testimony established that the DNA profile of bloodstains found inside Fingerhut's car and on its trunk-release lever matched Jackson's DNA profile.[5]

### B.  Relevant State-Court Procedural History

In separate trials before the same judge, two juries separately convicted Petitioner Nathaniel Jackson and Donna Roberts of capital murder and recommended death sentences for both.[6]  The trial judge, Judge Stuard, imposed death in both cases.[7]  Petitioner Jackson's sentence was affirmed after a direct appeal and a postconviction relief petition.[8]

#### 1.  Donna Roberts's Direct Appeal and Resentencing

Petitioner Jackson's coconspirator, Donna Roberts, appealed her conviction and sentence.  In Roberts's direct appeal, the Ohio Supreme Court affirmed Roberts's conviction.[9]  However, the Ohio Supreme Court vacated her death sentence based on the following facts:

{¶ 154} At the sentencing hearing, the court read aloud its sentencing opinion and imposed the death penalty on Roberts.  As the court was doing so, defense counsel noticed that the prosecutor was looking at a document and appeared to be reading along with the trial judge.  At the end of the court's reading, defense counsel raised a "vehement" objection to the prosecution's apparent ex parte involvement with the sentencing opinion.

{¶ 155} The trial judge conceded that the prosecution had participated in the drafting of the opinion without the knowledge of defense counsel.   The trial judge stated that he had given notes to the prosecutor and had instructed the prosecutor, "[T]his is what I want."  The [trial] court added that the opinion had to be corrected six or seven times.  The trial judge apologized to defense counsel for not providing them with a copy of the opinion before the sentencing hearing.[10]

---

[5] *State v. Jackson ("Jackson III")*, 73 N.E.3d 414, 419–20 (Ohio 2016).
[6] *Id.* at 420.
[7] *Id.* at 420–21.
[8] *State v. Jackson ("Jackson I")*, 839 N.E.2d 362 (Ohio 2006); *State v. Jackson*, 111 Ohio St. 3d 1469 (2006).
[9] *State v. Roberts*, 850 N.E.2d 1168, 1188 (Ohio 2006).
[10] *State v. Roberts*, 850 N.E.2d at 1188.

Case No. 4:07-cv-00880
GWIN, J.

In its decision vacating Roberts's sentence, the Ohio Supreme Court observed that Ohio law gives the trial court sole responsibility for weighing the evidence and drafting death-sentence opinions.[11]  In Roberts's case, the Ohio Supreme Court concluded that the trial court's delegation of responsibility to the prosecution violated Ohio law.[12]  The Ohio Supreme Court explained that its "conclusion is compelled particularly in light of the trial court's ex parte communications about sentencing with the prosecutor in preparing the sentencing opinion."[13]  Accordingly, the Ohio Supreme Court remanded Roberts's case to the trial court for resentencing.[14]

At the resentencing, Judge Stuard again sentenced Donna Roberts to death.[15]

## 2.   Jackson's Resentencing and Second Direct Appeal

Following the Ohio Supreme Court's decision vacating Roberts's death penalty, on August 15, 2006, Petitioner Jackson requested the trial court's permission to move for a new sentencing hearing.[16]  The trial court did not immediately rule on Jackson's motion.

On October 5, 2006, Jackson filed an affidavit of disqualification in the Ohio Supreme Court against the trial judge, Judge Stuard, seeking to prevent Judge Stuard from presiding over any further trial or postconviction proceedings in his case.[17]  Judge Stuard responded to Jackson's affidavit of disqualification, contending that he could continue to preside over

---

[11] *State v. Roberts*, 850 N.E.2d at 1188.
[12] *Id.* at 1189.
[13] *Id.*
[14] *Id.* at 1190.  Notably, in January 2009, the Ohio Supreme Court publicly reprimanded Judge Stuard for his *ex parte* communications with a prosecutor in the *Roberts* case.  *Jackson III, 73 N.E.3d at 422.*
[15] *State v. Roberts*, 998 N.E.2d 1100, 1103 (Ohio 2013).
[16] *State v. Jackson ("Jackson II"), 941 N.E.2d 1221, 1223 (Ohio Ct. App. 2010).*
[17] *Jackson III, 73 N.E.3d at 421.*

Case No. 4:07-cv-00880
GWIN, J.

Jackson's case. [18]

On November 29, 2006, Ohio Chief Justice Moyer denied Jackson's disqualification request. [19]  Chief Justice Moyer concluded that the record "does not compel [Judge Stuard's] disqualification for any alleged bias or prejudice." [20]  Justice Moyer explained:

> [Judge Stuard] acknowledges that he held the same kind of communications with the prosecuting attorney's office in both the *Roberts* and *Jackson* capital cases before sentencing each of them to death, and he denies that any hearing is needed in his courtroom in the Jackson case to establish that fact.  The judge states that he is prepared to reconsider the evidence and impose a new sentence in this case just as he has been ordered to do in the related *Roberts* case.  He contends that his ex parte communications with the prosecuting attorney's office were administrative rather than substantive, and he states that the prosecuting attorney's office simply typed up his notes after he had independently weighed the evidence and reached a decision about the proper sentences for the two defendants. [21]

As of January 2008, Judge Stuard still had not ruled on Jackson's request for leave to move for a new sentencing hearing.  On January 8, 2008, Petitioner Jackson brought a mandamus action to require Judge Stuard to rule on Petitioner's motion. [22]  On February 15, 2008, nearly 18 months after Jackson moved for leave to file a new a new sentencing hearing, the trial judge granted Jackson's motion. [23]

On February 29, 2008, Jackson moved "for a new trial and/or sentencing hearing" on the grounds that the prosecution impermissibly collaborated in the drafting of the sentencing opinion. [24]

---

[18] *In re Disqualification of Stuard*, 863 N.E.2d 636, 637 (Ohio 2006).
[19] *Id.* at 638.
[20] *Id.*
[21] *Id.* at 637.
[22] Doc. 48-8 at 49.  On April 9, 2008, the Ohio Supreme Court dismissed Petitioner's mandamus action.  *State ex rel. Jackson v. Stuard*, 884 N.E.2d 64 (Ohio 2008).
[23] *Jackson III*, 73 N.E.3d at 422.
[24] *Jackson III*, 73 N.E.3d at 422.

Case No. 4:07-cv-00880
GWIN, J.

In mid-May 2008, Petitioner Jackson filed a second disqualification affidavit against Judge Stuard in the Ohio Supreme Court.[25]  Petitioner argued, *inter alia*, that Jackson was entitled to the same relief afforded by the Ohio Supreme Court in the *Roberts* case—namely a resentencing—and implied that Judge Stuard should be disqualified for his failure to grant this relief.[26]

The Chief Justice denied this second disqualification attempt.[27]  The Chief Justice explained that "an affidavit of disqualification is not a vehicle to contest matters of substantive or procedural law," and "the judge's alleged failure to provide timely rulings on motions is not a concern that can be addressed through an affidavit of disqualification."[28]

On May 4, 2009, Judge Stuard denied Jackson's motion for a new trial and sentencing hearing.[29]  Jackson appealed the denial to the state appellate court.[30]

On October 15, 2010, the Ohio Eleventh District Court of Appeals granted Jackson's appeal and reversed Judge Stuard's denial of Jackson's motion for resentencing.[31]  The state appeals court held that the trial judge's use of the prosecutor to assist in preparing the sentencing opinion in Jackson's case was improper, vacated Jackson's sentence, and remanded for resentencing.[32]  The state appellate court mandated:

> In the case at bar, . . . the fact pattern is factually the same as that in *Roberts*. The record before us establishes that the same drafting procedures involving the sentencing entry that occurred in *Roberts* took place in the instant matter. . . .  Based on the Supreme Court of Ohio's holding in *Roberts*, appellant is entitled to the same relief afforded to his co-defendant. Thus, the

---

[25] *Jackson III*, 73 N.E.3d at 422; Doc. 47-3 Page ID 8550–8569.
[26] *Jackson III*, 73 N.E.3d at 422; Doc. 47-3 Page ID 8562–8567.
[27] Doc. 47-9.
[28] *Id.* at 203 (internal quotation marks and citation omitted).
[29] *Jackson III*, 73 N.E.3d at 422.
[30] *Id.*
[31] *Jackson II*, 941 N.E.2d at 1224.
[32] *Id.* at 1226

Case No. 4:07-cv-00880
GWIN, J.

trial judge must personally review and evaluate the appropriateness of the death penalty, prepare an entirely new sentencing entry as required by R.C. 2929.03(F), and conduct whatever other proceedings are required by law and consistent with this opinion.[33]

On August 14, 2012, the trial court conducted Jackson's resentencing hearing.[34]  At the start of the hearing, Jackson requested that Judge Stuard recuse himself.[35]  Judge Stuard denied the request.[36]

Important to this habeas action, Petitioner Jackson also sought to offer new evidence at his resentencing hearing.  Judge Stuard denied Jackson's motion to introduce additional mitigating evidence, though Judge Stuard allowed Jackson to offer an allocution.[37]

Judge Stuard resentenced Jackson to death.[38]  In his second sentencing opinion, released later that afternoon, Judge Stuard made only small changes to the original sentencing opinion that was drafted by the prosecution:

> {¶ 91} The 2002 and 2012 sentencing opinions are very similar.  The 2002 sentencing opinion summarized the trial-phase evidence, discussed the aggravating circumstances and mitigating evidence, and explained why the trial court concluded that "the aggravating circumstances, outweighed, by proof beyond a reasonable doubt, the collective mitigating factors."  The 2012 sentencing opinion added three new introductory paragraphs explaining the reasons for Jackson's resentencing proceedings.  Two other paragraphs were rewritten to discuss the trial-phase evidence in a different way.  Otherwise, the two opinions are almost identical.[39]

Additionally, the second sentencing opinion made no references to Jackson's allocution.[40]

On appeal from the resentencing, the Ohio Supreme Court upheld the second death

---

[33] *Jackson II*, 941 N.E.2d at 1226.
[34] *Jackson III*, 73 N.E.3d at 422.
[35] *Id.*
[36] *Id.*; Doc 47-17 Page ID 13507.
[37] *Jackson III*, 73 N.E.3d at 422.
[38] *Id.*
[39] *Id.* at 433.
[40] *Id.* at 430–31.

Case No. 4:07-cv-00880
GWIN, J.

sentence.[41]  The Court will describe the Ohio Supreme Court's affirmance below.

### C. Relevant Federal Habeas Procedural History

On October 31, 2007, Petitioner Nathaniel Jackson filed this habeas corpus action.[42]

On March 20, 2008, Jackson filed a motion for a stay and abeyance, indicating he had

appealed the trial court's denial of his postconviction relief petition to the Ohio Eleventh

District Court of Appeals.[43]  Jackson indicated he had also moved for a new sentencing

hearing before the trial court.[44]

On April 18, 2008, the Court granted a stay pending exhaustion of Jackson's state-

court remedies.[45]  The Court ordered Jackson to notify this Court upon exhaustion.[46]

On March 2, 2018, Jackson moved for leave to file an amended habeas petition.

Petitioner Jackson said he had finally exhausted his state-court remedies.[47]  That same day,

Petitioner filed his amended petition and a brief in support.[48]

On March 15, 2018, the Court lifted the stay and construed Petitioner's amended

petition as a first-in-time habeas petition.[49]  On October 1, 2018, the Warden filed his

return.[50]  On March 31, 2019, Petitioner Jackson filed his traverse.[51]

On February 24, 2020, Petitioner moved to stay his July 15, 2020 execution.[52]  On

March 9, 2020, the Court granted Petitioner's motion to stay his execution pending the

---

[41] *Jackson III*, 73 N.E.3d at 427.
[42] Doc. 14.
[43] Doc. 28 at 2.
[44] *Id.* at 3.
[45] Doc. 33.
[46] *Id.*
[47] Doc. 63.
[48] Doc. 64 (amended petition); Doc. 65 (brief in support).
[49] Doc. 67.
[50] Doc. 71.
[51] Doc. 73.
[52] Doc. 76.

Case No. 4:07-cv-00880
GWIN, J.

Court's adjudication of his habeas petition.[53]

## II.   Legal Standards

### A.   Substantive Law

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[54] governs a federal court's review of a state prisoner's habeas corpus petition.   AEDPA limits federal review to a petitioner's claims that he is in custody in violation of the Constitution, laws, or treaties of the United States.[55]

AEDPA prohibits federal courts from granting a habeas petition for any claim that the state court adjudicated on the merits unless the state court's decision:

> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[56]

Under the "contrary to" clause of § 2254(d)(1), "a federal court must find a violation of law 'clearly established' by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision."[57]   The state court need not have been aware of the relevant Supreme Court precedent, so long as neither its reasoning nor its result contradicts it.[58]   In order to have an "unreasonable application of . . . clearly established Federal law," the state-court decision must be "objectively unreasonable," not merely erroneous or incorrect.[59]

---

[53] Doc. 79.
[54] Pub. L. No. 104-132, 110 Stat. 1214 (1996).
[55] 28 U.S.C. § 2254(a).
[56] 28 U.S.C. § 2254(d); *see also* *Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001).
[57] *Miller*, 269 F.3d at 614 (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).
[58] *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (per curiam).
[59] *Williams*, 529 U.S. at 405.

Case No. 4:07-cv-00880
GWIN, J.

Under § 2254(d)(2), a state court's determination of fact will be unreasonable only if it represents a "clear factual error."[60] Therefore, the state court's determination of facts must conflict with clear and convincing evidence to the contrary.[61] "This standard requires the federal courts to give considerable deference to state-court decisions."[62] State court factual determinations are presumed to be correct.[63]

### B. Procedural Barriers to Habeas Review

Before a federal court will review the merits of a petition for a writ of habeas corpus, a petitioner must overcome several procedural hurdles. Specifically, the petitioner must surmount the barriers of exhaustion, procedural default, and time limitation.

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus.[64]

To be properly exhausted, each claim must have been "fairly presented" to the state courts.[65] Fair presentation requires that the state courts be given the opportunity to see both the factual and legal basis for each claim.[66] Each claim must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law.[67]

Moreover, the claim must be presented to the state courts under the same legal theory

---

[60] *Wiggins v. Smith*, 539 U.S. 510, 528–29 (2003).

[61] *Id.*

[62] *Ferensic v. Birkett*, 501 F.3d 469, 472 (6th Cir. 2007).

[63] *Ayala*, 576 U.S. 271.

[64] 28 U.S.C. § 2254(b) and (c); *see Baldwin v. Reese*, 541 U.S. 27 (2004).

[65] *See e.g. Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Frazier v. Huffman*, 343 F.3d 780, 797 (6th Cir. 2003).

[66] *Wagner*, 581 F.3d at 414.

[67] *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).

Case No. 4:07-cv-00880
GWIN, J.

in which it is later presented in federal court.[68]  It cannot rest on a legal theory which is separate and distinct from the one previously considered and rejected in state court.[69]

The procedural default doctrine serves to bar habeas review of federal claims that a state court declined to address because the petitioner did not comply with a state procedural requirement.[70]  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.[71]  Failure to exhaust applies where state remedies are still available at the time of the federal petition.[72]  In contrast, where state court remedies are no longer available, procedural default rather than exhaustion applies.[73]

Procedural default may occur in two ways.  First, a petitioner procedurally defaults a claim if he fails to comply with state procedural rules in presenting his claim to the appropriate state court, and the state court enforced that rule and declined to reach the merits of a petitioner's claims.[74]  Second, a petitioner may procedurally default a claim by failing to raise a claim in state court and no longer having a remedy available to him to exhaust his claims.[75]

To overcome procedural default, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law.[76]  "Cause" is a

---

[68] *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

[69] *Wong*, 142 F.3d at 322.

[70] *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

[71] *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

[72] *Id.* at 806 (citing *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982)).

[73] *Williams*, 460 F.3d at 806.

[74] *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

[75] *Williams*, 460 F.3d at 806 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal Habeas Corpus Petition."); *see also State v. Moreland*, 50 Ohio St. 3d 58, 62 (1990) (failure to present a claim to a state court of appeals constituted a waiver).

[76] *Coleman v. Thompson*, 501 U.S. 722, 730 (1991).

Case No. 4:07-cv-00880
GWIN, J.

legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation.[77]  If a petitioner fails to show cause for his procedural default, the Court need not address the issue of prejudice.[78]  A petitioner may also demonstrate a fundamental miscarriage of justice will occur if the claims are not considered; a fundamental miscarriage of justice results from the conviction of one who is "actually innocent."[79]

Simply stated, a federal court may review only federal claims that were evaluated on the merits by a state court.  Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

Furthermore, there is a one-year statute of limitation for filing a § 2254 petition.[80]  The limitation period runs from the date on which the judgment became final by the conclusion of a petitioner's direct appeals or the date on which the time for seeking such review expired, whichever later occurs.[81]

## III.   Discussion

Petitioner Jackson raises 37 claims in his habeas corpus petition.  Due to defective pleading, Jackson fails to satisfy his burden as to most claims.  As to Ground 30, however, Petitioner establishes that the state courts denied Jackson his constitutional rights under the Eighth and Fourteenth Amendments to the U.S. Constitution.

---

[77] *Castro v. Harris*, No. 1:18-CV-1167, 2018 WL 3829101, at *3 (N.D. Ohio Aug. 13, 2018).
[78] *See Smith v. Murray*, 477 U.S. 527, 532 (1986).
[79] *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).
[80] 28 U.S.C. § 2244(d)(1) and (2).
[81] *Id.*

Case No. 4:07-cv-00880
GWIN, J.

The analysis below explains why Petitioner succeeds on Ground 30, but fails on all other Grounds. The Court addresses claims that share the same deficiency together.[82]

### A. Petitioner Establishes in Ground 30 that the Trial Court Violated His Constitutional Rights When It Denied Jackson the Opportunity to Present New Mitigation Evidence at His Resentencing.

Ground 30 argues that, at Petitioner's 2012 resentencing, the trial court constitutionally erred by not considering "any new evidence that Jackson had proffered in favor of a sentence of less than death."[83] Specifically, Petitioner alleges:

> The trial judge three times stated that he would not consider any new or additional evidence that supported a sentence of less than death. [8/14/12 Tr. 5, 14]. Twice the judge stated that he had already drafted his sentencing opinion. [Tr22, 27]. Almost immediately following the resentencing hearing, the judge filed his sentencing opinion. That opinion reflected that the judge had not considered any new evidence that Jackson had proffered in favor of a sentence of less than death. It also reflected that the judge had not considered any information from Appellant's allocution.[84]

In response, the Warden argues that there is no clearly established law "as to whether a defendant on resentencing like Jackson is entitled to a complete 'do-over' of mitigation."[85]

As a preliminary matter, the Court observes that Petitioner's Ground 30 is a mere rewrite of an argument Jackson made to the Ohio Supreme Court.[86]

---

[82] Some Grounds are discussed in more than one grouping. ]

[83] Doc. 65 at 99.

[84] *Id.* at 99–100. Because Petitioner copies this argument from a state-court brief, his provided citations are unhelpful.

[85] Doc. 71 at 48. In the alternative, the Warden implies that, to the extent the trial court erred by not considering mitigation evidence, this error was cured by the Ohio Supreme Court's consideration of the evidence in its independent sentencing under O.R.C. 2929.05. *Id.* at 47. The Court rejects this alternative argument. Though the Ohio Supreme Court discussed the evidence that Jackson *wanted* to introduce at his resentencing, the Ohio Supreme Court held that such evidence could not be introduced. *Jackson III,* 73 N.E.3d at 430. Thus, assuming the trial court erred in excluding the updated mitigation evidence at the resentencing, it is not fair to say that the Ohio Supreme Court cured the error by considering Jackson's desired new evidence—because the new evidence was never in the record.

[86] Compare the text of habeas Ground 30, Doc. 65 Page ID 23496–23499, with the text of Proposition 5, Jackson's second direct appeal brief, Doc 48-7 Page ID 15409–15416.

- 14 -

Case No. 4:07-cv-00880
GWIN, J.

Despite Jackson's responsibility to identify the last reasoned state court opinion on Ground 30, Petitioner fails to identify the last relevant state-court ruling, let alone explain how that relevant ruling is contrary to clearly established federal law. Given this briefing failure, the Court could find that Petitioner defectively pleaded Ground 30. The Court declines to do so, however, because it is persuaded that it should overlook the briefing inadequacies to consider the merits.

Clearly established federal law provides that a capital defendant has a constitutional right to mitigate his sentence.[87] In *Lockett v. Ohio*,[88] the U.S. Supreme Court overturned an Ohio death-penalty statute that permitted a sentencer to consider only a limited range of mitigating circumstances.[89] The Court held that "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."[90]

In *Eddings v. Oklahoma*,[91] the U.S. Supreme Court extended its *Lockett* rule, holding that sentencers considering capital punishment "may not give [mitigating evidence] no weight by excluding such evidence from their consideration."[92] In other words, "[j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor,

---

[87] *Lockett v. Ohio*, 438 U.S. 586, 608–09 (1978) (plurality); *Furman v. Georgia,* 408 U.S. 238 (1972).

[88] 438 U.S. 586 (1978).

[89] *Id.*

[90] *Id.* at 604 (emphasis in original).

[91] 455 U.S. 104 (1982).

[92] *Eddings,* 455 U.S. at 115 (emphasis in original).

- 15 -

Case No. 4:07-cv-00880
GWIN, J.

neither may the sentencer refuse to consider, *as a matter of law,* any relevant mitigating evidence."[93]

In *Skipper v. South Carolina,*[94] the U.S. Supreme Court applied its *Lockett-Eddings* rule to the prison-behavior context.[95]  Skipper involved near identical claims to Jackson's Ground 30 claim.

South Carolina convicted Skipper of capital murder and rape.[96]  The South Carolina trial court sentenced Skipper to death.

After conviction and at Skipper's sentencing hearing, the trial court rejected as irrelevant Skipper's offer of evidence "regarding [Skipper's] good behavior during the other seven months he spent in jail awaiting trial" and testimony that Skipper "made a good adjustment" while awaiting trial.[97]  The jury sentenced Skipper to death.[98]

The U.S. Supreme Court vacated Skipper's death sentence because Skipper had a right to place before the sentencing jury all relevant evidence in mitigation of punishment—including his good prison behavior.[99]

In the capital context, a sentencing authority may consider a defendant's past conduct as indicative of his probable future behavior, so "evidence that the defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating" and, under *Eddings,* may not be excluded from the sentencer's consideration.[100]

---

[93] *Eddings,* 455 U.S. at 113–14.
[94] 476 U.S. 1 (1986).
[95] *Skipper,* 476 U.S. at 3.
[96] *Id.* at 2.
[97] *Id.* at 4.
[98] *Id.*
[99] *Id.* at 4.
[100] *Id.* at 5.

Case No. 4:07-cv-00880
GWIN, J.

In *Davis v. Coyle*, the Sixth Circuit interpreted *Lockett*, *Eddings*, and *Skipper* and applied their holdings to a like case.[101]  Indeed, *Davis* concerned a defendant who had been given an opportunity to present all relevant mitigating evidence at his initial sentencing hearing, but was denied an opportunity to present new mitigating evidence at his resentencing.[102]  The Sixth Circuit vacated Davis's second death sentence and held that:

> [T]he decision of the three-judge panel to exclude testimony concerning his exemplary behavior on death row in the time between the two sentencing hearings violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments, and that the state courts' decisions affirming the panel's ruling were contrary to the those of the Supreme Court of the United States in *Lockett*, *Eddings*, and *Skipper*.[103]

The *Davis* court concluded that "the holding in *Skipper* . . . requires that, at resentencing, a trial court must consider any new evidence that the defendant has developed since the initial sentencing hearing."[104]

In the instant case, the Ohio Supreme Court somehow rejected the *Davis* Court's reading of *Lockett*, *Eddings*, *Skipper*:

> To hold, as [*Davis v. Coyle*] does, that a new mitigation hearing must be held, even though no constitutional error infected the original one, would transform the right to present relevant mitigation into a right to *update* one's mitigation. Such a right has no clear basis in *Lockett* or its progeny.[105]

The Ohio Supreme Court said that it was not bound by *Davis* or any "rulings on federal statutory or constitutional law made by a federal court other than the United States Supreme Court."[106]

---

[101] *Davis v. Coyle, 475 F.3d 761, 774 (6th Cir. 2007)*.
[102] *Id.* at 768–70.
[103] *Id.* at 770.
[104] *Id.* at 774 (citing *Skipper, 476 U.S. at 8*).
[105] *Jackson III, 73 N.E.3d at 429* (quoting *Roberts, 998 N.E.2d at 1108*).
[106] *Id.* at 428 (quoting *Roberts, 998 N.E.2d at 1108*).

Case No. 4:07-cv-00880
GWIN, J.

But the *Davis* Court correctly interpreted the U.S. Supreme Court's *Lockett, Eddings, Skipper* holdings. The Ohio Supreme Court's finding guts the Supreme Court's requirement that "evidence that the defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating" and "[u]nder *Eddings,* such evidence may not be excluded from the sentencer's consideration."[107]

Rejecting the core holdings of *Lockett, Eddings, Skipper,*[108] the Ohio Supreme Court rejected Jackson's claims that he had a right to present new and updated mitigation evidence at his resentencing:

> Jackson was given a full opportunity to present mitigating evidence during his initial sentencing hearing. Accordingly, Jackson was not entitled to improve or expand his mitigating evidence simply because the court of appeals required the judge to resentence him and prepare a new sentencing opinion.[109]

*Davis v. Coyle* interpreted Supreme Court requirements. This Court is bound by *Davis* and the Sixth Circuit's understanding of the dictates of the Supreme Court's *Lockett, Eddings,* and *Skipper* precedent. In addition, the Ohio Supreme Court's interpretation destroys the Supreme Court's holding that defendants be given a chance to offer mitigating evidence.

Therefore, the Court finds that the Ohio Supreme Court's decision to prevent Jackson from presenting mitigating evidence at his resenting hearing "was both an unreasonable application of the *Skipper* decision and contrary to the holding in that opinion and its

---

[107] *Skipper,* 476 U.S. at 5.

[108] The Ohio Supreme Court concluded that "[n]o binding authority holds that the Eighth Amendment requires a resentencing judge to accept and consider new mitigation evidence at a limited resentencing when the defendant had the unrestricted opportunity to present mitigating evidence during his original mitigation hearing." *Id.* at 430.

[109] *Id.*

Case No. 4:07-cv-00880
GWIN, J.

antecedent cases."[110]

Consequently, the Court grants Jackson's habeas corpus petition on Ground 30.

**B. Petitioner Fails to Meet His § 2254 Burden as to All Other Grounds Due to His Conclusory Argumentation and His Failure to Argue Within the AEDPA Framework.**

Petitioner, represented by counsel, has submitted defective briefing. There are two primary problems.

The first problem is that Petitioner employs conclusory argumentation in nearly every Ground. Throughout the petition and traverse, Petitioner asserts that a prosecutor's conduct or a state court's decision violated his constitutional rights without explaining how his rights were violated—or pursuant to what U.S. Supreme Court authority.

For example, Ground 24 states, in its entirety:

A free standing *Atkins* claim has not yet been raised in the Ohio courts in spite of substantial credible evidence including IQ scores of 70 and 72 in high school. Petitioner is entitled to the effective assistance of counsel. *Strickland*, *Evitts*, *Martinez*.[111]

Ground 24, like many of Petitioner's other Grounds, is not a fully developed argument. It fails to provide any useful factual or legal citations. It fails to explain how it would overcome a procedural default. It does not explain the standard for effective assistance of counsel or how Petitioner's attorneys failed to meet this standard. This Ground is defective on its face.

The second and arguably more significant problem is that Petitioner does not argue within the AEDPA framework. As explained above, to secure relief under AEDPA, a state prisoner's habeas petition cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication (1) resulted in a decision that was contrary

---

[110] *Davis, 475 F.3d at 773*.
[111] Doc. 65 at 66.

- 19 -

Case No. 4:07-cv-00880
GWIN, J.

to, or involved an unreasonable application of, clearly established federal law or (2) resulted in a decision that was based upon an unreasonable determination of the facts.[112]  In making this determination, the Court looks to the last reasoned state-court adjudication of a petitioner's claim.[113]

In his opening brief, Petitioner fails to argue most Grounds within the appropriate framework.  For many Grounds, he merely copies  arguments from his various state-court briefs.  With this approach, he does not identify the relevant last-in-time state-court decision, let alone explain how the decision is (1) contrary to or an unreasonable application of federal law or (2) based on an unreasonable determination of facts.

For example, with Ground 11, Petitioner challenges the trial court's adjudication of his suppression motion.[114]  This Ground fails to acknowledge the Ohio Supreme Court's consideration (and rejection) of this challenge,[115] let alone explain how the Ohio Supreme Court's decision warrants AEDPA relief.

In the Warden's answer, the Warden argues that the Court should dismiss Jackson's petition on the basis of his defective pleading.[116]  The Warden argues that to do otherwise would require the Court to dive through thousands of pages of records, identify which state-court decisions Petitioner should have challenged, and conjure arguments for Petitioner on how the relevant state court-decisions violate clearly established law or are based on unreasonable interpretations of facts.[117]  The Warden says that such an exercise would make

---

[112] 28 U.S.C. § 2254(d).
[113] *See* *Wilson v. Sellers,* 138 S. Ct. 1188, 1192 (2018); *Williams v. Mitchell,* 792 F.3d 606, 612 (6th Cir. 2015).
[114] Doc. 65 at 35.
[115] *Jackson I,* 839 N.E.2d at 371–74.
[116] *See generally* Doc. 71; *see id.* at 102 (concise recitation of Warden's argument).
[117] *E.g., id.* at 29–31.

Case No. 4:07-cv-00880
GWIN, J.

the Court act as the Petitioner's advocate.[118]

In the Petitioner's traverse, Petitioner attempts to cure his AEDPA pleading deficiency in two ways.[119]

First, Jackson argues that AEDPA is unconstitutional.[120]  For this proposition, Jackson relies on a news article, law review articles, and non-binding judicial opinions criticizing AEDPA.[121]

This argument is unpersuasive.  Jackson cites no binding authority for his proposition that AEDPA is unconstitutional.  Moreover, the Court observes that the Sixth Circuit and the U.S. Supreme Court have considered many AEDPA cases—including challenges to the statute's constitutionality—and neither court has found the statute to be unconstitutional.[122] On the contrary, "there is universal agreement among each circuit that AEDPA deference is constitutional."[123]

Jackson's second attempt to cure his pleading deficiency also fails.  For many Grounds, Petitioner's traverse reproduces his opening brief's argument and tacks on a perfunctory statement to the effect of "the state court violated AEDPA"—without actually identifying the appropriate last state-court decision or explaining how the state-court decision

---

[118] *E.g.*, Doc. 71 at 39.

[119] Petitioner also simply states that his pleading is not defective: "Mr. Jackson has met his pleading requirements as reflected in his [filings].  Any argument by the Warden that the pleading requirements have not been met is unsupported by the record and law."  Doc. 73 at 19.  Ironically, Petitioner's assertion that his pleading is not defective is unsupported by the record and law.

[120] *Id.* at 13 ("AEDPA violates the federal Constitution and this case must be decided without its application.").

[121] *Id.* at 13–14.

[122] *See, e.g.*, *Felker v. Turpin*, 518 U.S. 651, 664 (1997) (holding that AEDPA did not unconstitutionally suspend the writ).

[123] *Betts v. Tibbals*, No. 1:11-CV-01107, 2014 WL 4794530, at *3 (N.D. Ohio Sept. 24, 2014).

Case No. 4:07-cv-00880
GWIN, J.

violates AEDPA.[124]

Jackson's belated, half-hearted attempt to situate his Grounds within the AEDPA framework misses the mark.

In short, nearly all of Petitioner's Grounds are defectively pleaded and are denied on this basis. Though Petitioner has failed to meet his burden as to all but Ground 30, the Court provides further analysis as to why his other Grounds fail below.

### C. Petitioner Defectively Pleads Grounds 1-5, 11-12, 27, 31-32, and 36 by Repeating His State-Court Arguments Without Challenging the Last Reasoned State-Court Opinion.

Petitioner's Grounds 1-5, 11-12, 27, 31-32, and 36 are mere rewrites of his state-court appellate arguments.[125]

- Ground 1 copies Jackson's direct appeal brief Proposition 2.[126]
- Ground 2 copies Jackson's direct appeal brief Proposition 3.[127]
- Ground 3 copies Jackson's direct appeal brief Proposition 4.[128]
- Ground 4 copies Jackson's direct appeal brief Proposition 5.[129]
- Ground 5 copies Jackson's direct appeal brief Proposition 6.[130]
- Ground 11 copies Jackson's direct appeal brief Proposition 1.[131]

---

[124] For example, In Petitioner's traverse, he repeat's his Ground 30 argument and adds the following statement at the end with no further analysis: "The Ohio courts violated 2254(d)(1) and (d)(2)." Doc. 73 at 49.

[125] This list is not comprehensive. The Court considers other arguments Petitioner copied from his state-court briefs separately.

[126] Compare the text of habeas Ground 1, Doc. 65 Page ID 23410–23416, with the text of Proposition 2, Jackson's direct appeal brief, Doc 34-14 Page ID 1333–1342.

[127] Compare the text of habeas Ground 2, Doc. 65 Page ID 23416–23421, with the text of Proposition 3, Jackson's direct appeal brief, Doc 34-14 Page ID 1343–1357. Both arguments assert the same 10 sub claims with a concluding assertion of "cumulative error."

[128] Compare the text of habeas Ground 3, Doc. 65 Page ID 23421–23422, with the text of Proposition 4, Jackson's direct appeal brief, Doc 34-14 Page ID 1358–1362. Both arguments assert the same 4 sub claims with a concluding assertion of "cumulative error."

[129] Compare the text of habeas Ground 4, Doc. 65 Page ID 23423, with the text of Proposition 5, Jackson's direct appeal brief, Doc 34-14 Page ID 1363–1368.

[130] Compare the text of habeas Ground 5, Doc. 65 Page ID 23424, with the text of Proposition 6, Jackson's direct appeal brief, Doc 34-14 Page ID 1369–1373.

[131] Compare the text of habeas Ground 11, Doc. 65, Page ID 23430–23431, with the text of Proposition 1, Jackson's direct appeal brief, Doc 34-14 Page ID 1328–1332.

Case No. 4:07-cv-00880
GWIN, J.

- Ground 12 copies Jackson's application to reopen the first direct appeal.[132]
- Ground 27 copies Jackson's second direct appeal brief Proposition 2.[133]
- Ground 31 copies Jackson's second direct appeal brief Proposition 6.[134]
- Ground 32 copies Jackson's second direct appeal brief Proposition 7.[135]
- Ground 36 copies Jackson's application to reopen the second direct appeal.[136]

Repeating arguments presented to the state courts is not necessarily a problem. Indeed, to satisfy the exhaustion requirement explained above, petitioners must present arguments to the federal courts that the state courts have already had an opportunity to consider below.[137]

The problem is that Petitioner repeats his state-court appellate arguments—sometimes nearly verbatim—without identifying the ultimate outcome of his state-court challenges. By repeating his arguments without identifying the last relevant state-court decisions, Petitioner essentially asks this Court to conduct a de novo review.

"We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the state court was correct as a de novo matter."[138] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."[139] In answering this question, "a federal court must 'review the last state court decision

---

[132] Compare the text of habeas Ground 12, Doc. 65 Page ID 23431–23439 with the text of the application to reopen the first direct appeal, Doc 34-16 Page ID 1640–1653.

[133] Compare the text of habeas Ground 27, Doc. 65 Page ID 23477–23491, with the text of Proposition 2, Jackson's second direct appeal brief, Doc 48-7 Page ID 15382–15396.

[134] Compare the text of habeas Ground 31, Doc. 65 Page ID 23499–23501, with the text of Proposition 6, Jackson's second direct appeal brief, Doc 48-7 Page ID 15416–15419.

[135] Compare the text of habeas Ground 32, Doc. 65 Page ID 23501–23501, with the text of Proposition 7, Jackson's second direct appeal brief, Doc 48-7 Page ID 15420–15423.

[136] Compare the text of habeas Ground 36, Doc. 65 Page ID 23505–23506, with the text of the application to reopen the second direct appeal, Doc 48-7 Page ID 15756–15765.

[137] *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).

[138] *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004).

[139] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

- 23 -

Case No. 4:07-cv-00880
GWIN, J.

adjudicated on the merits.'"[140]

By repeating his state-court arguments and ignoring the last reasoned state-court opinion, Petitioner has defectively pleaded Grounds 1-5, 11-12, 27, 31-32, and 36. The Court declines to review Petitioner's state-court challenges de novo. The Court also declines to identify the relevant state-court adjudications of Petitioner's challenges and conjure arguments on Petitioner's behalf for why these adjudications violate clearly established federal law or are based on unreasonable determinations of facts.

Accordingly, Grounds 1-5, 11-12, 27, 31-32, and 36 fail.

### D. Ground 6 Improperly Challenges Petitioner's 2002 Sentencing that the Ohio Supreme Court Vacated.

In Ground 6, Petitioner Jackson attacks the trial court's December 9, 2002 sentencing.[141] Jackson argues that he "was deprived of the right to individualized sentencing and his liberty interest in the statutory sentencing scheme when the trial court considered and weighed both alternatives under R.C. 2929.04(A)(7) in violation of the Fifth, Eighth and Fourteenth Amendments of the federal Constitution."[142]

Ground 6 fails because the Ohio Supreme Court vacated the trial court's December 9, 2002 sentencing. Thus, Petitioner attacks a sentencing entry that is no longer operative.[143]

Even if Petitioner had attacked the proper judgment, his Ground would still fail. Jackson's Grounds 6 takes issue with the weight the trial judge assigned to various sentencing

---

[140] *Williams,* 792 F.3d at 612 (quoting *Gagne v. Booker,* 680 F.3d 493, 511–12 (6th Cir. 2012)).

[141] Doc. 65 at 27.

[142] *Id.*

[143] A § 2254 petitioner "seeks invalidation . . . of the judgment authorizing [his] confinement." *Wilkinson v. Dotson,* 544 U.S. 74, 83 (2005). Petitioner Jackson's Ground 6 challenges a judgment that is not authorizing his confinement.

- 24 -

Case No. 4:07-cv-00880
GWIN, J.

factors,[144] but there is no clearly established federal law mandating how factors must be weighed. Instead, clearly established federal law says that state courts imposing the death penalty "must consider all relevant mitigating evidence and weigh it against the evidence of aggravating circumstances[, but] [federal courts] do not weigh the evidence for them."[145]

> ### E. Grounds 7 and 8 Argue that Petitioner's Death Sentence Is Unconstitutional on Proportionality Grounds, But Clearly Established Federal Law Imposes No Proportionality Requirement.

In Ground 7, Petitioner argues that his death sentence was disproportional relative to other Ohio sentences.[146] With Ground 8, Petitioner argues that Ohio's proportionality-review process is flawed because it fails to include death-eligible cases in which a life sentence has been imposed.[147]

Grounds 7 and 8 fail because the U.S. Constitution does not require any assessment of "proportionality."[148] Absent a showing that the Ohio capital punishment system operates in an arbitrary and capricious manner, Jackson "cannot prove a constitutional violation by demonstrating that other defendants who may be similarly situated did not receive the death penalty."[149]

To the extent Ground 8 challenges Ohio's proportionality-review scheme directly, this argument also fails. The Sixth Circuit has upheld the constitutionality of the Ohio proportionality-review scheme on numerous occasions.[150] In fact, the Sixth Circuit has

---

[144] Doc. 65 at 27.
[145] *Eddings,* 455 U.S. at 117 (first alteration in the original).
[146] Doc. 65 at 29.
[147] *Id.* at 30.
[148] *Pulley v. Harris,* 465 U.S. 37, 44–45 (1984).
[149] *McCleskey v. Kemp,* 481 U.S. 279, 306-07 (1987); *accord Getsy v. Mitchell,* 495 F.3d 295, 305–06 (6th Cir. 2007).
[150] *Leonard v. Warden, Ohio State Penitentiary,* 846 F.3d 832, 854 (6th Cir. 2017) (collecting cases).

Case No. 4:07-cv-00880
GWIN, J.

explicitly held that in "limiting proportionality review to other cases already decided by the reviewing court in which the death penalty has been imposed, Ohio has properly acted within the wide latitude it is allowed."[151]

> ### F. Ground 9 and 10 Argue that Ohio's Capital Punishment Scheme Is Unconstitutional, But Clearly Established Federal Law Does Not Support this Claim.

In Grounds 9 and 10, Petitioner argues that "Ohio's capital punishment scheme allows the death penalty to be imposed in an arbitrary and discriminatory manner in violation of [*Furman v. Georgia*, 408 U.S. 238 (1972)] and its progeny."[152]  Specifically, Petitioner argues that Ohio's scheme unconstitutionally gives trial courts discretion to dismiss death-penalty specifications when a defendant pleads guilty but not when a defendant goes to trial.[153]

Grounds 9 and 10 fail because the U.S. Supreme Court has never held unconstitutional a state capital-punishment scheme where a trial judge has discretion to dismiss death penalty specifications only for defendants who plead guilty.

In support of Grounds 9 and 10, Petitioner relies on a Supreme Court Justice's concurring opinion.  This concurring opinion was not endorsed by the other justices, so its rationale is not clearly established federal law.[154]

Petitioner relies on Justice Blackmun's concurrence in *Lockett v. Ohio*.[155]  As discussed above, in *Lockett*, a plurality of the Supreme Court held unconstitutional an Ohio

---

[151] *Buell v. Mitchell*, 274 F.3d 337, 369 (6th Cir. 2001).

[152] Doc. 65 at 31–32.

[153] *Id.* at 32.

[154] "'Clearly established law,' as the Supreme Court has reminded us, 'includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" *Frazier v. Jenkins*, 770 F.3d 485, 495 (6th Cir. 2014) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014)).

[155] 438 U.S. at 618 (J. Blackmun, concurring).

- 26 -

Case No. 4:07-cv-00880
GWIN, J.

death-penalty statute that did not permit individualized consideration of mitigating factors in

capital cases.[156]

In the concurrence, Justice Blackmun said that he only partially joined the plurality

and concurred "for an additional reason not relied upon by the plurality."[157]  This "additional

reason" is the argument that Petitioner now makes—that Ohio's death penalty scheme is

unconstitutional because the scheme gives trial courts discretion to dismiss death penalty

specifications when a defendant pleads guilty, but the scheme does not give this discretion

when a defendant goes to trial.[158]

Because the majority did not embrace Judge Blackman's concurrence's reasoning, the

reasoning is not clearly established federal law.[159]

### G. Grounds 10 and 35 Argue that Ohio's Capital Punishment Scheme Is Unconstitutional, But Clearly Established Federal Law Does Not So Hold.

In Grounds 10 and 35, Petitioner argues that the death penalty and Ohio's capital

punishment scheme violate international law.[160]   Specifically, Petitioner says that

"[i]nternational law is part of our law," and he lists a series of about 10 "international law

documents."[161]

Petitioner fails to elaborate on any of these allegedly binding international law

documents.  He does not explain what the documents are, what they do, why they are

binding, or how they apply here.  He does not even allege that that the documents prohibit

---

[156] *Lockett,* 438 U.S. at 605–06 (plurality).

[157] *Id.* at 613 (J. Blackmun, concurring).

[158] *Id.* at 618 (J. Blackmun, concurring).

[159] "'Clearly established law,' as the Supreme Court has reminded us, 'includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" *Frazier,* 770 F.3d at 495 (quoting *White,* 572 U.S. at 419).

[160] Doc. 65 at 32–33, 107.

[161] *Id.* at 32.

Case No. 4:07-cv-00880
GWIN, J.

the death penalty or Ohio's capital punishment scheme.  For the sake of argument, the Court

assumes that the documents prohibit the death penalty.

Grounds 10 and 35 fail due to their incomprehensibility and underdevelopment.[162]

Additionally, the Grounds fail because the Supreme Court has never held that international

law forbids the death penalty.[163]  "There is no indication that international law influences

rulings under the federal constitution regarding the death penalty."[164]

> ### H.  Ground 13 Argues that the Trial Court Violated the Constitution When It Failed to Allow Petitioner to Conduct Postconviction Discovery, But Clearly Established Law Does Not Provide a Constitutional Right to Postconviction Discovery.

With Ground 13, Petitioner argues that, in his postconviction proceeding, the trial

court violated the Fifth, Sixth, Eighth, and Fourteenth Amendments of the U.S. Constitution

by failing to provide the Petitioner with the opportunity to conduct discovery.[165]  Petitioner

fails to identify any case, let alone a Supreme Court case, that says that the Constitution gives

a right to postconviction discovery.

Ground 13 fails because there is no federal constitutional right to postconviction

discovery.[166]

---

[162] *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) ("[I]t is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.").

[163] *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, 'it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.'" [*Carey v.] Musladin*, 549 U.S. [70] at 77 [(2006)] (quoting 28 U.S.C. § 2254(d)(1)).  Under the explicit terms of § 2254(d)(1), therefore, relief is unauthorized.").

[164] *Brinkley v. Houk*, 866 F. Supp. 2d 747, 840 (N.D. Ohio 2011), *amended in part*, No. 4:06 CV 0110, 2012 WL 1537661 (N.D. Ohio Apr. 30, 2012), *and aff'd*, 831 F.3d 356 (6th Cir. 2016).

[165] Doc. 65 at 42–43.

[166] *Pennsylvania v. Ritchie*, 480 U.S. 39, 59–60 (1987) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one")).

- 28 -

Case No. 4:07-cv-00880
GWIN, J.

## I.   Grounds 14, 15, 17, and 18 Are Procedurally Defaulted.

In Grounds 14, 15, 17, and 18, Petitioner challenges alleged errors stemming from his postconviction relief proceeding.   With Ground 14, Petitioner says he was denied adequate funding for experts.[167]   With Ground 15, Petitioner says the state failed to disclose exculpatory evidence.[168]   With Ground 17, Petitioner says the trial court improperly employed res judicata.[169]  With Ground 18, Petitioner rehashes a series of his postconviction arguments.[170]

In his answer, the Warden argues that Petitioner procedurally defaulted Grounds 14, 15, 17, and 18 because the state courts denied the corresponding postconviction claims for untimely presentation.[171]

In his traverse, Petitioner fails to rebut the Government's procedural default argument. Petitioner says only the following: "The Petitioner maintains that all issues have been properly preserved for this Court's review."[172]

The Warden is correct; Grounds 14, 15, 17, and 18 are procedurally defaulted. Grounds 14, 15, 17, and 18 stem from Petitioner's second postconviction relief petition.[173] Petitioner filed this petition after his 2012 resentencing.[174]  The petition raised 19 grounds— 18 of which attacked Petitioner's 2002 conviction, rather than his limited 2012 resentencing.[175]

---

[167] Doc. 65 at 44–45.
[168] *Id.* at 45–46.
[169] *Id.* at 48–51.
[170] *Id.* at 51–62.
[171] *Id.* at 67.
[172] Doc. 73 at 19.
[173] *See* Doc. 48-8 at 32–64.
[174] *Id.*
[175] *Id.*

Case No. 4:07-cv-00880
GWIN, J.

A state trial court rejected these 18 claims as untimely:

> Defendant/Petitioner Jackson filed his post-conviction relief petition on June 28, 2013. First, the Court finds Jackson's petition is untimely pursuant to R.C. 2953.21(A)(2). Further, the Court finds Jackson's petition does not fall within the exception to the one-hundred-eighty day rule as set forth in R.C. 2953.23(A)(1)(a)&(b) & (A)(2). Despite the re-sentencing in this matter which took place on August 14, 2012, the time period does not toll again for post-conviction relief. "Ohio case law indicates that the time limit for a postconviction relief petition runs from the original appeal of the conviction, and that a resentencing hearing does not restart the clock for postconviction relief purposes as to any claims attacking the underlying conviction." *State v. Piesciuk*, 12th Dist. No. CA2009-10-251, 2010-0hio-3136, ¶ 12 (internal citations omitted).[176]

A state appeals court upheld the trial court's denial, and the Ohio Supreme Court declined to accept jurisdiction.[177]

In view of this state-court rejection on timeliness grounds, Petitioner procedurally defaulted Grounds 14, 15, 17, and 18 when (1) he failed to comply with to R.C. 2953.21(A)(2), and (2) the state court enforced that rule and declined to reach the merits of Petitioner's claims.[178]

The Petitioner does not demonstrate cause or prejudice for the procedural default of these grounds for relief and does not present a viable "actual innocence" claim.[179] Grounds 14, 15, 17, and 18 are procedurally defaulted.

---

[176] Doc. 48-15 at 51.
[177] *Id.* at 126.
[178] *Maupin,* 785 F.2d at 138.
[179] *Lundgren,* 440 F.3d at 764 (citing *Murray,* 477 U.S. at 496).

Case No. 4:07-cv-00880
GWIN, J.

**J.    Ground 16 Argues that a Trial Judge Erred by Interjecting Opinions and Personal Knowledge into Factual Findings, But Petitioner Waived this Ground Because It Is Conclusory and Undeveloped.**

In Ground 16, Petitioner argues that, in his postconviction proceeding, a trial judge violated Petitioner's constitutional rights when the judge "relied upon his personal knowledge to make findings of facts."[180]

Petitioner describes several instances in which the trial judge allegedly improperly injected his opinion and personal knowledge into the court's factual findings. For example, Petitioner says that, for one postconviction claim, Petitioner argued that his counsel had failed to adequately prepare for interviewing mitigation witnesses, such as family and friends.[181] In rejecting this claim, the judge allegedly opined that preparation for such interviews should not take too long.[182] Petitioner says that this opinion interjection, and others like it, were inappropriate.

Ground 16 fails. Petitioner fails to specifically identify the postconviction decision that he challenges. Despite the thousands of pages in the record, Petitioner provides no useful record citations for his factual allegations.[183] But even if he had provided such a citation, Petitioner fails to identify any case, let alone a Supreme Court case, that says that the Constitution prohibits the trial judge's alleged interjections.

---

[180] Doc. 65 at 46.

[181] *Id.* at 47.

[182] *Id.*

[183] Petitioner provides two record citation: "(p.25, findings of facts, conclusions of law)" and "(P. 26)." *Id.* But Petitioner fails to identify where these pincites come from or where they are on the Court's docket.

Case No. 4:07-cv-00880
GWIN, J.

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."[184]

### K. Grounds 19, 20, 22, 25, 26, 28, and 32 Generally Argue that the Trial Judge Was Unconstitutionally Biased—Primarily Due to His Reliance on a Prosecutor to Draft the Death Sentence Opinion—But the Grounds are Defectively Pleaded.

Grounds 19, 20, 22, 25, 26, 28, and 32 generally argue that Jackson's trial judge, Judge Stuard, was unconstitutionally biased. The Grounds rely on several bases but focus on the trial judge's reliance on a prosecutor to draft the death-sentence opinion.

Grounds 19, 20, 22, 25, 26, and 28 share the same deficiencies as the rest of Jackson's petition. Namely, the Grounds uniformly (1) fail to challenge the appropriate state-court decision, (2) consist of conclusory, sometimes incoherent argument, and (3) rely on arguments copied, sometimes verbatim, from state-court briefs. As described in subsection B, these Grounds fail due to their defective pleading.

But even if Petitioner had stated his argument properly, his Grounds would fail. Properly asserted, Petitioner's Grounds 19, 20, 22, 25, 26, 28 and 32 would argue that the Ohio Supreme Court's affirmance of the trial court's 2012 resentencing (1) was contrary to, or an unreasonable application of, clearly established federal law and (2) was based upon an unreasonable determination of the facts. The Court will discuss why each argument fails in turn.

#### 1. In Affirming of the Trial Court's 2012 Resentencing, the Ohio Supreme Court's Rejection of Petitioner's Judicial Bias Arguments Did Not Violate Clearly Established Federal Law.

Petitioner's above-mentioned Grounds implicate two reasons why the Ohio Supreme

---

[184] *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (citation omitted).

Case No. 4:07-cv-00880
GWIN, J.

Court's affirmance of the trial court's 2012 resentencing might have violated clearly established federal law. First, the Grounds suggest that Jackson's 2012 resentencing was tainted by Judge Stuard's *ex parte* contacts with the prosecutor. Second, the Grounds suggest that Judge Stuard was unconstitutionally biased. Neither argument is persuasive.

### a) The U.S. Supreme Court Has Not Held that Ex Parte Judge-Prosecutor Communications Violate a Defendant's Constitutional Rights.

As a preliminary matter, the Court observes that Petitioner has waived the *ex parte* contacts argument by failing to raise this argument in his final Ohio Supreme Court appeal.[185]

But even if the argument were properly before this Court, the Ground would fail because there is no clearly established federal law providing that judge-prosecutor *ex parte* communications always violate a defendant's federal constitutional rights. Petitioner identifies no such case, and the Court knows of none.

The only U.S. Supreme Court case that involves *ex parte* judicial communications—*Rushen v. Spain*[186]—concerned *ex parte* communications between a judge and a juror.[187] There, the Supreme Court held that an *ex parte* judicial communication with a juror was not structural error requiring reversal.[188] Instead, the Court held that such *ex parte* contact was subject to harmless error analysis.[189]

Relevant to the instant case, the *Rushen* Court noted that the Government had

---

[185] *Williams,* 460 F.3d at 806 (citing *O'Sullivan,* 526 U.S. at 848); *see Baston,* 282 F. Supp. 2d at 661 ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal Habeas Corpus Petition."); *see also Moreland,* 50 Ohio St. 3d at 62 (failure to present a claim to a state court of appeals constituted a waiver).

[186] 464 U.S. 114 (1983) (per curiam).

[187] *Id.* at 116.

[188] *Id.* at 117–19.

[189] *Id.*

Case No. 4:07-cv-00880
GWIN, J.

"apparently conceded, in both federal and state court, that the undisclosed *ex parte* communications established federal constitutional error."[190]   The Court thus said they "assume[d], without deciding, that respondent's constitutional rights to presence and counsel were implicated" in such a case.[191]

In light of this Supreme Court language, the Supreme Court has not said whether juror-judge *ex parte* communications—or any other *ex parte* communications—violate a defendant's constitutional rights.  Where Supreme Court cases "give no clear answer to the question presented, let alone one in [the defendant's] favor, 'it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.'"[192]  Accordingly, the *ex parte* contact argument fails.

> b)   Petitioner's Judicial Bias Claim Is Based on Factual Circumstances that the U.S. Supreme Court Has NotRecognized as Posing an Unconstitutionally High Risk of Bias.

Petitioner argues that Judge Stuard was unconstitutionally biased.  Petitioner raises various factual bases underlying his judicial bias claim: (1) Judge Stuard relied upon the prosecution to draft the initial sentencing opinion, and the 2012 revised sentencing opinion remained almost identical to the initial opinion; (2) Judge Stuard delayed ruling on several of Petitioner's motions;[193] (3) Judge Stuard denied Jackson's motion for a new sentencing hearing after stating in an affidavit that he was prepared to grant the motion; and (4) the 2012 resentencing opinion did not discuss Petitioner's 2012 allocution.[194]

---

[190] *Rushen*, 464 U.S. at 118 n.2.
[191] *Id.*
[192] *Van Patten*, 552 U.S. at 126 (quoting *Musladin*, 549 U.S. at 77).
[193] To the extent Petitioner refers to Judge Stuard's delay in ruling on Jackson's motion for a new trial until after a mandamus action was filed against him, this claim is procedurally defaulted. The Ohio Supreme Court rejected this argument as res judicata.  *Jackson III*, 73 N.E.3d at 423.
[194] Doc. 65 at 96; Doc. 73 at 40.

Case No. 4:07-cv-00880
GWIN, J.

The U.S. Supreme Court has not clearly established that any of Petitioner's factual

bases pose an unconstitutionally high risk of judicial bias.  The clearly established federal

law of judicial bias is:

> "Due process requires a fair trial before a judge without *actual bias* against the
> defendant or an interest in the outcome of his particular case."[195]  Because of the difficulty
> in determining "whether a judge harbors an actual, subjective bias," the courts look to
> "whether, as an objective matter, the average judge in [that judge's] position is likely to be
> neutral, or whether there is *an unconstitutional potential for bias*."[196]

The Supreme Court has recognized constitutionally impermissible, objective indicia

of bias in limited circumstances.  The Sixth Circuit has construed the Supreme Court judicial

bias case law narrowly and has held that the Supreme Court recognizes unconstitutional

potential for bias in only four types of circumstances[197]:

> (1) "when the judge has a financial interest in the outcome of the case";[198]
> (2) "when the judge is trying a defendant for certain criminal contempts";[199]
> (3) "when a person with a personal stake in a particular case had a significant
> and disproportionate influence in placing the judge on the case by raising
> funds or directing the judge's election campaign when the case was pending
> or imminent";[200] and
> (4) "where a judge has had an earlier significant, personal involvement as a
> prosecutor in a critical decision in the defendant's case."[201]

The Sixth Circuit characterizes these four situations as "extreme" and instructs that the

---

[195] *U.S. v. Armstrong*, 517 U.S. 456, 468 (1996) (emphasis added); *see also In re Murchison*, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process.  Fairness requires an absence of *actual* bias in the trial of cases.") (emphasis added)).

[196] *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (emphasis added) (internal quotations omitted); *see also Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 883 (2009).

[197] *Johnson*, 946 F.3d at 918 n.3.

[198] *Caperton*, 556 U.S.at 890 (Roberts, C.J., dissenting).

[199] *Id.* (Roberts, C.J., dissenting).

[200] *Id.* at 884 (majority opinion).

[201] *Williams*, 136 S. Ct. at 1910.

Case No. 4:07-cv-00880
GWIN, J.

judicial bias precedents must be framed "narrowly."[202]

Petitioner's allegations, though troubling, do not fall within the four recognized categories of constitutionally impermissible, objective indicia of bias. Therefore, the Court cannot conclude that the Ohio Supreme Court's rejection of Petitioner's judicial bias claims was contrary to or an unreasonable application of clearly established federal law.

> ### 2. The Ohio Supreme Court's Affirmance of Jackson's 2012 Resentencing Was Not Based upon an Unreasonable Determination of the Facts in Light of the Evidence Presented in the State-Court Proceeding.

Having established the Ohio Supreme Court's rejection of Petitioner's judicial bias claims was not contrary to or an unreasonable application of clearly established federal law, the Court now turns to the second AEDPA argument that Petitioner could have made. Properly asserted, Petitioner's Grounds 19, 20, 22, 25, 26, 28, and 32 would argue that the Ohio Supreme Court's finding that Judge Stuard's continued participation in the 2012 resentencing presented an unconstitutional risk of bias given the evidence presented.

The Ohio Supreme Court affirmance found that Jackson had not shown that Judge Stuard harbored an actual bias against him during the 2012 resentencing: "Despite his bias claims, Jackson fails to show that Judge Stuard displayed 'a hostile feeling or spirit of ill will' toward him."[203] The Ohio Supreme Court rejected each of Jackson's actual bias arguments, stating that (1) "Judge Stuard's failure to provide the relief that Jackson believes was warranted does not establish actual bias;"[204] (2) "Judge Stuard's rulings in Jackson's case [such as his rejection of new mitigation evidence at the resentencing hearing] were not inconsistent with

---

[202] *Williams, 136 S. Ct. at 1910*.
[203] *Jackson III,* 73 N.E.3d at 424 (quoting *State ex rel. Pratt v. Weygandt,* 132 N.E.2d 191, 192 (Ohio 1956)).
[204] *Id.*

Case No. 4:07-cv-00880
GWIN, J.

the court of appeals' directive and did not display bias;"[205] and (3) Judge Stuard's failure to consider Jackson's allocution "does not prove that Judge Stuard harbored a hostile feeling or a spirit of ill will against Jackson or his attorneys during the proceedings."[206]

Whether an individual harbors actual bias is a question of fact.[207] State-court findings of fact are "presumed to be correct."[208] The petitioner can rebut that presumption, but only upon a showing of error by clear and convincing evidence.[209] And a habeas court will not overturn a state-court adjudication unless it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[210]

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."[211]

Here, Jackson, who merely repeats his state-court arguments, offers no clear and convincing evidence why the state-court finding that Judge Stuard was not actually biased is incorrect. Without such argument or evidence, the Court cannot now find that Ohio Supreme Court's rejection of the bias argument related to the trial court's 2012 resentencing was based upon an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding.

In sum, even if properly asserted, Petitioner Jackson's judicial bias Grounds fail on

---

[205] *Jackson III*, 73 N.E.3d at 425.
[206] *Id.*
[207] *Patton v. Yount*, 467 U.S. 1025, 1036-38, 1037 n. 12 (1984) (trial court's determination of juror bias during voir dire is question of fact); *U.S. v. Powell*, 226 F.3d 1181, 1188 (10th Cir. 2000) (stating that actual bias is a question of fact).
[208] 28 U.S.C. § 2254(e)(1).
[209] *Id.*
[210] 28 U.S.C. § 2254(d)(2).
[211] *Wood v. Allen*, 558 U.S. 290, 301 (2010).

Case No. 4:07-cv-00880
GWIN, J.

the merits.

    **L.**    **Ground 21 and 31 Argue that the Trial Court Violated the Constitution When It Failed to Refer to His Allocution in the 2012 Sentencing Opinion, But Clearly Established Federal Law Does Not Provide a Constitutional Right to Allocution.**

With Ground 21 and 31, Petitioner argues that, in his 2012 resentencing, the "trial court denied the [P]etitioner a meaningful opportunity for allocution before imposing a death sentence in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments of the federal Constitution."[212]  Petitioner says that he was able to allocute, but the 2012 opinion did not reference his allocution.[213]

Ground 21 and 31 fail because the Supreme Court has not recognized a constitutional right to allocution,[214] let alone a right to have the allocution referenced in sentencing opinions.

    **M.**    **Ground 23 Argues that Jackson's Execution Would Violate *Atkins v. Virginia*, Because Jackson Has Had Low IQ Scores, But Jackson's Argument Is Underdeveloped and He Failed to Exhaust this Claim.**

With Ground 23, Petitioner argues he is not eligible for the death penalty under *Atkins v. Virginia*[215] because of his low IQ.[216]

In *Atkins*, the Supreme Court held that executions of intellectually disabled criminals were "cruel and unusual punishments" prohibited by Eighth Amendment.[217]  The Supreme Court left "to the [s]tate[s] the task of developing appropriate ways to enforce the

---

[212] Doc. 65 at 65, 102–04.

[213] *See id.*

[214] *United States v. Lawrence*, 735 F.3d 385, 407 (6th Cir. 2013).

[215] 536 U.S. 304 (2002).

[216] Doc. 65 at 65–66.

[217] *Atkins*, 536 U.S. at 320-21.  This Court uses the term "intellectual disability" in lieu of "mental retardation."

Case No. 4:07-cv-00880
GWIN, J.

constitutional restriction upon [their] execution of sentences."[218]

In *State v. Ford*, the Ohio Supreme Court mandated that trial courts consider the following factors in determining death-penalty eligibility:

> (1) intellectual-functioning deficits (indicated by an IQ score approximately two standard deviations below the mean—i.e., a score of roughly 70 or lower when adjusted for the standard error of measurement), (2) significant adaptive deficits in any of the three adaptive-skill sets (conceptual, social, and practical), and (3) the onset of these deficits while the defendant was a minor.[219]

In Ground 23, Jackson says, without any citation, that he had IQ test scores of 70 and 72 in high school and has the mind of an 11-year-old child.[220]  He says that he therefore cannot be executed.[221]  Jackson acknowledges that he did not raise this claim below.[222]

Ground 23 fails for at least two reasons.  First, Jackson failed to exhaust his state-court remedies by not raising his *Atkins* claim until federal habeas review.[223]  Second, Jackson's argument is underdeveloped—as evidenced by his failure to offer any citation or support—and he therefore fails to meet his burden.[224]

Moreover, the Court observes that Jackson's own defense psychologist determined his IQ was 84.[225]

---

[218] *Atkins*, 536 U.S. at 317 (quoting *Ford v. Wainwright*, 477 U.S. 399, 405, 416–17 (1986)) (second and third alterations in original).

[219] *State v. Ford*, 140 N.E.3d 616, 655 (2019).

[220] Doc. 65 at 65–66.

[221] *Id.* at 66.

[222] *Id.*

[223] *Williams*, 460 F.3d at 806.

[224] *Visciotti*, 537 U.S. at 25 ("[I]t is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner."); *McPherson*, 125 F.3d at 995–96 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citation omitted)).

[225] *Jackson III*, 73 N.E.3d at 429 ("Jackson asserts that during his mitigation hearing, information was presented indicating that he was a good student, had a positive upbringing, and had average intellectual ability with an IQ score of 84."); *see also* Doc. 47-16 Page ID 13007–13013 (defense psychologist Dr. McPherson report).

Case No. 4:07-cv-00880
GWIN, J.

> **N.  Ground 24 Argues that Petitioner's Trial, Appellate, and Postconviction Counsel Were Ineffective for Failing to Raise the Atkins claim in State Court, But Petitioner Waived this Ground Because It Is Conclusory and Undeveloped.**

Ground 24 states, in its entirety, the following: "A free standing *Atkins* claim has not yet been raised in the Ohio courts in spite of substantial credible evidence including IQ scores of 70 and 72 in high school.  Petitioner is entitled to the effective assistance of counsel. *Strickland, Evitts, Martinez.*"[226]

Ground 24 fails because it is not a fully developed argument.[227]

> **O.  Ground 29 Argues that Petitioner's Constitutional Rights Were Violated When He Had Only One Attorney at His 2012 Resentencing Hearing, But Clearly Established Federal Law Does Not Mandate Representation by Two Attorneys at Such a Hearing.**

Ground 29 says that an Ohio statue provides that any defendant who "faces the death penalty" must be appointed two attorneys.[228]  Petitioner says that, at his 2012 resentencing, only one attorney represented him.[229]  He argues that the trial court therefore violated the Ohio statute.[230]  Jackson argues, without elaboration, that this circumstance also violated his federal constitutional rights.[231]

Ground 29 fails because "federal habeas corpus relief does not lie for errors of state law."[232]  "[I]t is only noncompliance with federal law that renders a State's criminal

---

[226] Doc. 65 at 66.

[227] *Visciotti,* 537 U.S. at 25 ("[I]t is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner."); *McPherson,* 125 F.3d at 995–96 ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citation omitted)).

[228] Doc. 65 at 98.

[229] *Id.* at 97–99.

[230] *Id.*

[231] *Id.* at 99.

[232] *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990); *accord Cooey v. Coyle,* 289 F.3d 882, 901–02 (6th Cir. 2002) (holding that claim that "Ohio court did not apply Ohio law correctly . . . is not justiciable in federal habeas proceedings").

Case No. 4:07-cv-00880
GWIN, J.

judgments susceptible to collateral attack in the federal courts."[233]

Moreover, Ground 29 fails because the U.S. Supreme Court has never held that the U.S. Constitution mandates that defendants have two attorneys at a sentencing hearing.

### P. Ground 33 Is a Mere Rewrite of Petitioner's State-Court Brief and Is Not Cognizable on Federal Habeas Review.

In Ground 33, Petitioner copies verbatim two paragraphs from a multi-page argument Jackson presented to the Ohio Supreme Court.[234]  In the original argument, Jackson asked the Ohio Supreme Court to merge certain charges and specifications and then "remand" the case "to permit the prosecution to elect as to which specification and underlying felony it wants to go forward with."[235]  Reproduced here, out of context, Jackson's two paragraphs make no sense.  The Court reviewing this federal habeas petition is not sitting as a supervisory court over a lower state court and cannot afford the relief Petitioner requests.

Ground 33 fails because it is not a cognizable federal habeas claim.[236]

### Q. Grounds 34 and 37 Argue that Cumulative Errors in Jackson's Prosecution Require His Conviction to Be Reversed and His Death Penalty to Be Vacated, But Clearly Established Federal Law Does Not Recognize a Cumulative Error Claim.

In Grounds 34 and 37, Petitioner argues that the cumulative effect of the errors at his trial and during his appeals has deprived him of his constitutional rights.[237]  Petitioner also argues that, due to the errors' cumulative effect, his "death sentence is based on a constitutionally flawed process."[238]

---

[233] *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010) (per curiam).

[234] *Cf.* Doc. 65 at 105–06 *with* Doc. 48-7 Page ID 15423–15429.

[235] Doc. 48-7 Page ID 15429.

[236] *Visciotti*, 537 U.S. at 25 ("[I]t is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner.").

[237] Doc. 65 at 106, 109, 121–22.

[238] *Id.* at 106.

Case No. 4:07-cv-00880
GWIN, J.

Grounds 34 and 37 fail.  "[T]he law of [the Sixth] Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue."[239]

## IV.  Conclusion

The Court **GRANTS** Jackson's petition.  The Court **ISSUES** a writ of habeas corpus under 28 U.S.C. §2254.


IT IS SO ORDERED.


Dated: February 23, 2021                    _s/      James S. Gwin_
                                            JAMES S. GWIN
                                            UNITED STATES DISTRICT JUDGE

---

[239] *Williams,* 460 F.3d at 816 (citing *Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005)).